United States District Court
Middle District of Florida
Orlando Division

Matthew Larosiere,
          Plaintiff,

v.                                        No.  6:24-cv-1629

Cody Rutledge Wilson, DEFCAD, Inc.,
Defense Distributed, and Dioskouroi LLC,
          Defendants.

---

**Defendants' Motion to Dismiss**

**Table of Contents**

Summary of the Argument.........................................................................3

Facts.......................................................................................................3

Argument ................................................................................................7

I.  Rule 12(b)(6): The Court should dismiss counts 5, 6, and 7 for failure to state
    a claim upon which relief can be granted. ...................................................7

    A.  Count 5: The Lanham Act claims are invalid. ....................................7

    B.  Count 6: The Florida law "false designation and unfair competition"

        claims are invalid. ...........................................................................11

    C.  Count 7: The Florida law "unjust enrichment" claims are invalid. ....15

II. Rule 12(b)(2): The Court should dismiss all claims against Dioskouroi LLC
    for lack of personal jurisdiction. ...............................................................20

    A.  General personal jurisdiction does not exist...................................21

    B.  Specific personal jurisdiction does not exist. ..................................21

Conclusion..............................................................................................24

## Summary of the Argument

Plaintiff 's complaint pleads seven counts.  Doc. 1 at 35-54, ¶¶196-271. Counts 1 through 4 are the main counts that plead Copyright Act claims.  Counts 5 through 7 are secondary counts that assert non–Copyright claims about the same conduct.  All should fail soon.  Many should fail immediately.

First, all Defendants move under Rule 12(b)(6) to dismiss the complaint's Count 5-7 non-Copyright claims for failure to state a claim upon which relief can be granted.  This Rule 12(b)(6) challenge does *not* target the complaint's Count 1-4 Copyright claims, which are invalid for a litany of reasons that separate motions will address.  It targets just the Count 5-7 non-Copyright claims, which should be promptly dismissed as legally invalid.

Second, Defendant Dioskouroi LLC moves to dismiss all claims against it for lack of personal jurisdiction.  This Rule 12(b)(2) challenge does not pertain to the other Defendants, who opt not to dispute personal jurisdiction in light of forthcoming counterclaims.

## Facts

The complaint focuses on its Copyright Act claims, which involve a comprehensive discussion of the allegedly infringed works. *See*, *e.g.*, Doc. 1 at 14-19, ¶¶ 79–105.  Because the copyright infringement claims are not within the scope of this motion's Rule 12(b)(6) argument, the details of the works in question are not important.  The operative facts for now are as follows.

First, Plaintiff Larosiere alleges he is a "firearm industry attorney and author".

Doc. 1 at 1, ¶ 2. Next, Plaintiff Larosiere alleges:

> Defendant Defcad is the owner and operator of the website Defcad.com. This website hosts and distributes downloadable three dimensional models of various firearms and firearms accessories, plus documentation and photographs relating to the downloadable models.

Doc. 1 at 5, ¶ 24. Plaintiff Larosiere further alleges "Defense Distributed sells, offers for sale, and advertises USB flash drives that contain the same sorts of works found on Defcad, through its e commerce website 'Ghostguns.com.'" Doc. 1 at 6, ¶ 33. The Complaint contains other allegations explaining steps Defendants have taken to market, sell, advertise, and deliver files and information relating to 3-D printed guns.

What the Complaint does *not* contain are any well-pleaded facts alleging that Plaintiff Larosiere is a direct commercial competitor of Defense Distributed (or any other Defendant) in this same market. On the contrary, to the extent the Complaint discusses *any* commercial activity on Plaintiff Larosiere's part, it is limited to a single paragraph:

> Plaintiff Matthew Larosiere is a natural person, citizen and resident of the United States and the Great State of Florida, counties of Orange and Palm Beach. Plaintiff owns property and conducts business in Orange County, Florida. Plaintiff is a firearms industry attorney and author. Plaintiff engages in the design and development of firearms technologies, and produces pictorial, written, and visual art works related to his advocacy. Plaintiff is the exclusive owner of all works at issue in this litigation.

Doc. 1 at 1, ¶ 2.

Beyond this single paragraph (which does not allege any form of commercial competition with Defendants), nowhere does Plaintiff Larosiere allege he is involved in any form of commercial competition with any Defendant. Very much to the contrary, Plaintiff Larosiere goes so far as to angrily *deny* involvement in ana competing entity called "The Gatalog." On that point, Plaintiff Larosiere could not be clearer: "Plaintiff Matthew Larosiere <u>does not 'own' or 'direct' 'The Gatalog</u>.'" Doc 1 at 47, ¶ 238 (emphasis added).

Plaintiff Larosiere goes even further in seeking to establish that he is NOT a competitor of any Defendant. Specifically, he asserts a standalone cause of action for "*False* Designation of Origin" under the Lanham Act. In this cause of action, Plaintiff Larosiere claims Defendants made statements *falsely* stating or implying that he *was* associated with a competitor (The Gatalog). *See* Doc. 1 at 47-51, ¶¶ 236–258. As explained below, this is why Plaintiff Larosiere's Lanham Act claim fails – because it does not plausibly allege any violation of the narrow *commercial/competitive* interests which the Lanham Act protects.

Furthermore, for different (but equally clear) reasons, Plaintiff Larosiere fails to allege facts sufficient to plead a viable claim under Florida's right-of-publicity law, Fla.Stat. § 540.08. Because these types of publicity laws would otherwise broadly (and unlawfully) interfere with the First Amendment, Florida Statute § 540.08 has been narrowly construed by the Florida Supreme Court to *only* apply where the defendant uses the plaintiff's name or image<u> in a commercial</u>

advertisement (i.e., such as by placing the name "Tiger Woods" on a golf ball, thereby implying Mr. Woods endorses that specific brand of ball).

Nothing in Plaintiff Larosiere's Complaint even comes close to alleging that Defendants have used his name or likeness in a commercial advertisement (of any sort), much less in one that promotes any product or service sold by Defendants. For that reason, the Fla.Stat. § 540.08 claim fails on its face.

Finally, Plaintiff Larosiere's last claim (unjust enrichment) is predicated solely on the alleged unauthorized infringement of Plaintiff Larosiere's unregistered (but otherwise copyrighted) works. In other words, Plaintiff Larosiere seems to understand his infringement claims require that the works be *registered* with the U.S. Copyright Office. *See* 17 U.S.C. § 411. Thus, because some of the works were *not* registered, Plaintiff Larosiere takes the position that he may still recover for their infringement using other legal/equitable theories such as a state law unjust enrichment claim.

This legal gambit fails. This is so due to an extremely well-settled rule – the Copyright Act expressly preempts any and all state legal or equitable theories (including unjust enrichment) which attempt to create exclusive rights in any work that falls within the "scope of works" protected by the Copyright Act. *See* 17 U.S.C. § 301(a). For these reasons, Plaintiff Larosiere's non-copyright claims fail, and they should be dismissed without leave to amend.

## Argument

**I.      Rule 12(b)(6): The Court should dismiss counts 5, 6, and 7 for failure to state a claim upon which relief can be granted.**

All Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss counts 5, 6, and 7 of the Complaint for failure to state a claim upon which relief can be granted.  As pleaded, none of these claims warrant any relief.

### A.      Count 5: The Lanham Act claims are invalid.

Count 5 is Plaintiff Larosiere's attempt to plead a Lanham Act claim for "False Designation of Origin and Unfair Competition Under 15 U.S.C. § 1125." Doc. 1 at 47-51, ¶¶ 236–258.  These pleadings fail to state a claim upon which relief can be granted because they fail to satisfy the connectivity requirements of § 1114, and also because they fail to allege the requisite kind of confusion.

The Lanham Act's connectivity requirements stem from 15 U.S.C. § 1114(1). That provision lets such claims proceed only if a plaintiff pleads, among other elements, a mark's use "in commerce . . . in connection with the sale, offering for sale, distribution, or advertising of any goods or services."  15 U.S.C. § 1114(1)(a). No such action exists unless the mark is used "in commerce," *id.*, and even if it is, still no action exists unless that mark is also used "in connection with the sale, offering for sale, distribution, or advertising of any goods or services."  *Id.*

Count 5 both fails to plead that the marks in question were used "in commerce" and also fails to plead that the marks in question were used "in

connection with the sale, offering for sale, distribution, or advertising of any goods or services." *Id.* It therefore violates both of the § 1114 connectivity requirements.

The competitor/critic distinction is key. Precedent applying § 1114(1)(a)'s connectivity requirements rightly establishes that there is *no* valid Lanham Act cause of action for merely "fact checking" statements made online, and/or for punishing any/all forms of critical commentary. The connectivity requirement means that, whereas claims run to a true commercial competitor, they do not run to anyone that is a mere commercial *critic*.

*Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005), is on point. It rightly explains that the Lanham Act does *not* create a federal cause of action for defamation, nor does it prohibit all unauthorized uses of a mark. Instead, the law prevents "only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers":

> [T]he [Lanham] Act is designed to protect consumers who have formed particular associations with a mark from buying a competing product using the same or substantially similar mark and to allow the mark holder to distinguish his product from that of his rivals.
>
> The Supreme Court has made it clear that trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers.

*Bosley*, 403 F.3d at 676–677; *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) ("A trademark only gives the right to prohibit the use of it so far as to protect the owner's good will *against the sale of another's product as his.*" (emphasis in original); *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203,

205 (1942) (explaining that the main purpose of the Lanham Act is to prevent the use of identical or similar marks in a way that confuses the public about the actual source of goods and services)).

Especially in light of *Bosley*, Count 5 clearly fails to allege the § 1114 connectivity requirements.   Although the Complaint <u>does</u> suggest Defendants somehow falsely stated that Plaintiff Larosiere was associated with a competitor (The Gatalog; a claim Plaintiff Larosiere denies), even taking that allegation as true for the purposes of this motion, literally nothing in the Complaint suggests this was done <u>in a commercial context</u>. Nor does the Complaint establish facts plausibly showing Defendants' actions could or would mislead a consumer into purchasing a product or service from Defendants under the mistaken belief they were actually dealing with Plaintiff Larosiere (again, Plaintiff Larosiere does not allege he even offers any of the same commercial products or services as Defendants).

This rule accords with the statute's purpose—to protect the public against the misleading use of a mark to wrongfully affect commercial purchasing decisions. Hence *Bosley*'s conclusion the Act simply did not apply to online *criticism*, even when it included an unauthorized use of the Plaintiff's mark, absent proof that the use falls within the narrow scope of misleading competitive conduct the Act was intended to address. This quote, while lengthy, explains the issue perfectly:

> T]he appropriate inquiry is whether Kremer offers *competing* services to the public. <u>Kremer is not Bosley's competitor; he is their critic</u>. His use of the Bosley mark is not in connection with a sale of goods or services -- it is in connection with the expression of his opinion *about* Bosley's goods and services.

> The dangers that the Lanham Act was designed to address are simply not at issue in this case. <u>The Lanham Act, expressly enacted to be applied in commercial contexts, does not prohibit all unauthorized uses of a trademark</u>. Kremer's use of the Bosley Medical mark simply cannot mislead consumers into buying a competing product -- <u>no customer will mistakenly purchase a hair replacement service from Kremer under the belief that the service is being offered by Bosley</u>. Neither is Kremer capitalizing on the good will Bosley has created in its mark. Any harm to Bosley arises not from a competitor's sale of a similar product under Bosley's mark, but from Kremer's criticism of their services. <u>Bosley cannot use the Lanham Act either as a shield from Kremer's criticism, or as a sword to shut Kremer up</u>.

*Bosley*, 403 F. 3d at 679 (emphasis added) (citing *United We Stand America, Inc. v. United We Stand, America New York, Inc.*, 128 F.3d 86, 90 (2d Cir. 1997)).  The conclusions and logic of *Bosley* apply here with equal force.

Another reason to dismiss this action is the lack of confusion.  "The statute requires a showing that the defendant's use caused consumer confusion."  *1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 249 (2d Cir. 2024).  But this complaint has no plausible allegation of such confusion.  The only mention is paragraph 235's scant reference to "confusion," which does not count because it is conclusory.  Correct precedent often rejects similar assertoions of "confusion" as "conclusory."  *See Open Sea Distribution Corp. v. Artemis Distribution, LLC*, No. 3:20-CV-1440-TJC-PDB, 2022 WL 4547961, at *2 (M.D. Fla. July 15, 2022); *Kaniadakis v. Executive Bd. of Directors*, No. 8:17-CV-419-EAK-TBM, 2018 WL 4568871, at *4 (M.D. Fla. Jan. 26, 2018); *Amin v. Hingorani*, No. 22-CIV-9851 (PGG), 2024 WL 4696146, at *7 (S.D.N.Y. Nov. 6, 2024); *GS Holistic, LLC v. Mr Vape Smoke Shop*, No. 1:23-CV-0282 DJC SCR, 2024 WL 4545885, at *6 (E.D. Cal. Oct. 22, 2024).

**B.      Count 6: The Florida law "false designation and unfair competition" claims are invalid.**

Count 6 is Plaintiff Larosiere's attempt to plead a Florida law claim for "false designation and unfair competition."   Doc. 1 at 51-52, ¶¶ 236–258.   These pleadings fail to state a valid claim because they do not sufficiently allege that the publications in question "directly promote a product or service" under *Tyne v. Time Warner Entm't Co., L.P.*, 901 So. 2d 802 (Fla. 2005), and its progeny.

Like many states, Florida law protects an individual's "publicity rights" which arise from the common law family of privacy torts. *See Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1325 (11th Cir. 2006) (explaining, "The Florida legislature enacted section 540.08 in order to expand the remedies available under the common law right against misappropriation. Courts have interpreted the statute's commercial purpose requirement to require that a defendant's unauthorized use 'directly promote' a product or service.").   In Florida, these rights are enshrined in F.S. § 540.80 which provides: "No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by … (a) such person …"

Critically, though, the statute is so *broadly* worded that, if read literally, it would appear to prohibit ANY and ALL use of a person's name or photo by ANYONE who seeks to make money from the publication. Thus, for example, because newspapers and television news programs generally seek to make

money (and thus are "commercial" by definition), if interpreted literally, F.S. § 540.80 would appear to prevent the news media from publishing any unflattering story about any person without his/her consent.

The broad wording of laws like F.S. § 540.80 creates a trap for plaintiffs like Plaintiff Larosiere who believe (incorrectly) that the law CAN be applied literally to punish ANY commentary or criticism simply because the Defendant is a for-profit entity. For instance, in his third cause of action, Plaintiff Larosiere presents a single, extremely generic allegation that:

> Defendant Wilson, and through him Defcad and Defense Distributed, have used Plaintiff's name, photograph, or other likeness, have falsely designated their activity as being approved by or in affiliation with Plaintiff, and have made material misrepresentations and descriptions of fact and have falsely attributed numerous items as being those of Plaintiff.

Doc. 1 at ¶ 261.

Again, the problem is that Plaintiff Larosiere has failed to apprehend the exceptionally narrow scope of F.S. § 540.80 as required by Florida law. That point is demonstrated by a pair of helpful cases—*Tyne v. Time Warner Entertainment Co., L.P.*, 901 So.2d 802 (Fla.2005) and *Anderson v. Best Buy Stores LP*, 2020 WL 5122781 (M.D.Fla. 2020). These two cases underscore how exceptionally narrow the publicity tort actually is.

*Tyne* involved misappropriation claims under F.S. § 540.08 (exactly like this case) brought by the family members of fishmen who died in a severe storm at sea, as depicted in a popular film starring George Clooney called *The Perfect*

*Storm*. In sum, the family members accused the film's producers of using the names of their dead loved ones without their permission in a for-profit motion picture. They alleged this use violated F.S. § 540.08 because the names of their deceased family members were used without consent in a commercial manner (effectively the same as Plaintiff Larosiere's allegations here).

The Florida Court of Appeals rejected this argument and the Florida Supreme Court affirmed. In doing so, the Supreme Court explained that misappropriation claims under F.S. § 540.08 only arise when the defendant uses the plaintiff's name/image to advertise a commercial product or service *sold by the defendant*:

> In our view, section 540.08, by prohibiting the use of one's name or likeness for trade, commercial or advertising purposes, is designed to prevent the unauthorized use of a name *to directly promote the product or service of the publisher.* Thus, the publication is harmful not simply because it is included in a publication that is sold for a profit, but rather because of the way it associates the individual's name or his personality with something else. Such is not the case here.

*Tyne*, 901 So.2d at 806 (emphasis in original) (quoting *Loft v. Fuller*, 408 So.2d 619 (Fla. 4th DCA 1981)).

To paraphrase, *Tyne* stands for the principle that a commercial misappropriation claim under F.S. § 540.08 does not arise simply because the defendant uses the plaintiff's name/image for "pecuniary gain" or some other commercial reason. If it did, that would mean every for-profit newspaper, website and media outlet would be unable to broadcast stories or information about another person without their consent, *PERIOD*. But that is not the law.

13

That conclusion is further demonstrated by *Anderson v. Best Buy Stores L.P*, No. 5:20-CV-41-OC-30PRL, 2020 WL 5122781 (M.D. Fla. July 28, 2020), *report and recommendation adopted sub nom. Anderson v. Coupons in News*, No. 5:20-CV-41-OC-30PRL, 2020 WL 5106676 (M.D. Fla. Aug. 31, 2020), *aff'd sub nom. Anderson v. Coupons in the News*, No. 20-13677, 2021 WL 6098420 (11th Cir. Dec. 21, 2021). *Anderson* involved a website article that used the plaintiff's mugshot in connection with a story about her arrest. Like here, the plaintiff in *Anderson* claimed the defendant did not have permission to use her name or image in this manner, so she sued asserting claims for "commercial misappropriation of likeness, invasion of privacy, intentional infliction of emotional distress, and unjust enrichment". *Anderson*, 2020 WL 5122781, *1.

Citing *Tyne*, and other similar authorities, the District Court found the plaintiff's claims failed to demonstrate actionable misappropriation of her publicity rights because, among other things, it is simply not unlawful to use a person's mugshot for the purpose of broadcasting newsworthy information about that person (such as the fact of that person's arrest):

> On their face, the articles recount the events surrounding Plaintiff's arrest at the Best Buy store. <u>Crimes and arrests are newsworthy matters, falling within the scope of legitimate public concern</u>. Florida courts have confirmed that "where one becomes an actor in an occurrence of public interest, <u>it is not an invasion of her right to privacy to publish her photograph with an account of such occurrence</u>." "Just because the story and the photograph may be embarrassing or distressful to the plaintiff does not mean the newspaper cannot publish what is otherwise newsworthy."

*Anderson*, 2020 WL 5122781, *2 (emphasis added) (quoting *Cape Publications, Inc. v. Bridges*, 423 So.2d 426, 427 & n.2 (Fla. App. Ct. 1982) ("[w]ithin the scope of legitimate public concern are matters customarily regarded as 'news,'" which includes publications concerning crimes, arrests, police raids, suicides, marriages, divorces etc.")).

Here, nothing in Plaintiff Larosiere's Complaint alleges that his name or likeness was used to "directly promote a product or service" sold by Defendants. The absence of that allegation is fatal to the claim for exactly the same reason discussed in *Tyne*, above. Substantial other authority supports this conclusion. *See*, *e.g.*, *National Football League v. Alley, Inc*., 624 F. Supp. 6, 10 (S.D.Fla. 1983) (explaining, "Section 540.08 of the Florida Statutes prohibit unconsented use of an individual's name and likeness <u>only when such directly promotes a commercial product or service</u>.") (emphasis added).

**C.     Count 7: The Florida law "unjust enrichment" claims are invalid.**

Count 7 is Plaintiff Larisiere's attempt to plead Florida Law claims for unjust enrichment.  Doc. 1 at 47-51, ¶¶ 236–258.  These allegations fail to state a claim upon which relief can be granted because they are completely preempted by the Copyright Act in 17 U.S.C. § 301(a).

Since Congress amended the Copyright Act in 1976, the law has provided that, when a work falls within the general scope of the Act, a plaintiff's rights and remedies for any infringement of that work are controlled *exclusively* by the Act;

any other derivative state-law theories or causes of action are completely preempted. That rule is codified by 17 U.S.C. § 301(a), which provides as follows:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, <u>are governed exclusively by this title</u>. Thereafter, <u>no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State</u>.

17 U.S.C. § 301(a) (emphasis added).

Florida courts routinely hold that state law unjust enrichment claims are preempted by 17 U.S.C. § 301(a) where that claim is based on the alleged unauthorized publication of the plaintiff's creative works.  That rule applies here.

*Escal Institute of Advanced Technologies Inc. v. Treadstone 71, LLC*, No. 2:23-CV-630-SPC-KCD, 2024 WL 4149864 (M.D. Fla. Sept. 11, 2024), applies. That court rightly granted a Rule 12(b)(6) motion on analogous facts, in a case involving the alleged unauthorized copying of "training materials" by a competitor. In that case, the plaintiff accused the defendant of unauthorized copying of its training materials which included: "three courses on cyber crime and cyber intelligence." *Id.* at 1.  Based on those acts, the plaintiff asserted: "claims for copyright infringement (Count 1), tortious interference with a contract (Counts 2 and 3), aiding and abetting breach of the EULA (Count 4), unjust enrichment (Count 5), state deceptive and unfair trade practices (Count 6), and unfair competition (Count 7)." *Id.*

Citing 17 U.S.C. § 301(a), the *Escal Institute* explained that "preemption occurs if the rights at issue (1) fall within the subject matter of copyright set forth in sections 102 and 103 and (2) are equivalent to the exclusive rights of section 106." *Id.* at *2 (cleaned up) (quoting *Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C.*, 596 F.3d 1313, 1325 (11th Cir. 2010)). Applying that standard, the District Court concluded the plaintiff's unjust enrichment claim was preempted:

> In Count 5, Treadstone 71 alleges, "SANS have wrongfully accepted and retained, and continue to wrongfully accept and retain, the benefits of property misappropriated from Treadstone 71." (Doc. 86 at 37). Treadstone 71's course materials are the only allegedly misappropriate property here. <u>The factual basis of Count 5 is not qualitatively different than Treadstone 71's copyright infringement claim, so it is preempted</u>.
> x

*Id.* at *3. (emphasis added) (quoting *Ross v. Apple, Inc.*, No. 16-61471-CIV-WILLIAMS, 2016 WL 8808769, at *5 (S.D. Fla. Dec. 30, 2016) ("The Copyright Act preempts Ross's unjust enrichment claim, Count 2, because it is identical to his copyright infringement claim.")).

Based on this analysis, the District Court in *Escal Institute* dismissed the unjust enrichment claim because it was being used in a manner to attempt to create rights equivalent to those established by 17 U.S.C. § 106. This is, of course, exactly what 17 U.S.C. § 301(a) prohibits, as the court rightly explained:

> Treadstone 71 argues it should be allowed to maintain its **unjust enrichment** claim as an alternative in the event it cannot prove copyright infringement. But if SANS successfully defends against the copyright infringement claim, awarding Treadstone 71 damages for misappropriation of its protected works would conflict with federal copyright law. The Court will dismiss Count 5 [for unjust enrichment].

*Escal Institute*, 2024 WL 4149864 at *3.[1]

Here, Plaintiff Larosiere's unjust enrichment claim is based on *nothing* more than the alleged unauthorized reproduction of his *unregistered* works by Defendants. *See* Doc. 1 at 53, ¶ 268. The fact that Plaintiff Larosiere admits he has not yet registered these works is irrelevant.

On the contrary, when Congress amended the Copyright Act in 1976, it added 17 U.S.C. § 411 which expressly *prohibits* suits based on unregistered works; "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." Allowing Plaintiff Larosiere to assert a federal infringement claim of an unregistered (but otherwise copyrighted) work dressed up as a state-law unjust enrichment claim "would conflict with federal copyright law." *Escal Institute*, 2024 WL 4149864 at *3.

---

[1] Although other judges in other districts have reached conflicting conclusions on this issue, *see Scott v. Free Money Publications, LLC*, 2024 U.S. Dist. LEXIS 144588; 2024 WL 3757311 (S.D. Fla. June 10, 2024), the better and prevailing view accords with *Escal Institute, see Psychic Readers Network, Inc. v. Take-Two Interactive Software Inc.*, 2018 U.S. Dist. LEXIS 19435, *10 (S.D.Fla. 2018) (holding, "[Defendant] argues that [Plaintiff]'s unjust enrichment claim is preempted by the Copyright Act. The Court agrees. Accordingly, the unjust enrichment claim shall be dismissed.) (citing PATRY ON COPYRIGHT § 18:51 ("typical unjust enrichment claims are preempted because they are mere attempts to state a claim for damages for unauthorized copying or other activity encompassed by Section 106.")).

Indeed, the United States Supreme Court has recently explained that although "registration is not a condition of copyright protection," 17 U.S.C. § 411 still means exactly what it says – "§411(a) bars a copyright owner from suing for infringement until 'registration . . . has been made.'" *Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 302 (2019) (holding a copyright owner may not commence infringement suit until copyright registration certificate has been issued; resolving conflicting cases which previously held that an *application* for registration was sufficient).

These points are significant for another key reason – the Copyright Act generally (and specifically) creates the rules controlling which types of works are entitled to protection and which works are *not*. For example, the Copyright Act has always been interpreted to *exclude* protection for things such as simple shapes (i.e., a circle or square), colors, and short common phrases, among other things. Furthermore, the Copyright Act does *not* grant exclusive rights to "useful articles" which are defined as: "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 411 (2017).

This is precisely why the Copyright Act requires litigants to submit their works to the U.S. Register of Copyrights – so that the Copyright Office can review the works and make a threshold decision as to whether the work qualifies for protection. Obviously, if a work *does not* qualify for copyright protection, that

means the work can be enjoyed and used by anyone without permission (absent some other legal protection, such as a patent).

Here, allowing Plaintiff Larosiere to use a state-law unjust enrichment claim to punish Defendants for publishing or distributing an *unregistered* work would directly conflict with the express purpose of the Copyright Act – i.e., to create a set of clear, nationwide rules governing how, when, and to what extent creative works may be protected (and when they may not). Put differently, imagine all of the works within the scope of Plaintiff Larosiere's unjust enrichment claim were comprised of CAD files he *attempted* to register, but which the Copyright Office rejected on the basis that the works were unprotected "useful articles". In that case, Plaintiff Larosiere would be seeking to thwart the clear intent of Congress by using state law to create exclusive rights in a work which Congress has deemed to be unworthy of protection against unauthorized copying.

## II.  Rule 12(b)(2): The Court should dismiss all claims against Dioskouroi LLC for lack of personal jurisdiction.

Defendant Dioskouroi LLC moves under Federal Rule of Civil Procedure 12(b)(2) to dismiss the entire case against it for lack of personal jurisdiction. Though Plaintiff bears the burden of pleading facts that establish personal jurisdiction, the complaint fails to do so.  As a matter of law on this complaint, dismissal for lack of personal jurisdiction over these defendants is required.

## A.   General personal jurisdiction does not exist.

General personal jurisdiction exists only if a defendant's forum contacts are so "continuous and systematic" that it can said to be "at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).  Under that test, the State of Florida and by extension this Court lacks general personal jurisdiction over Dioskouroi LLC because Dioskouroi LLC is at home only in Texas.   The complaint essentially concedes this by acknowledging the critical material facts: Dioskouroi LLC is incorporated and otherwise at home in Texas.  *See* Doc. 1 at 7, ¶¶ 39-44.  The complaint's later assertion of Florida having general personal jurisdiction, *id.* at 10 ¶ 59, is a bare legal conclusion and erroneous at that, since the conduct alleged as triggering general personal jurisdiction ("advertising, selling, and delivering works such as the infringing works to the state of Florida," *id.*) is nowhere close to the "continuous and systematic" threshold required by *Bauman* and its progeny.

## B.   Specific personal jurisdiction does not exist.

Specific personal jurisdiction exists only if the action arises out of conduct that constitutes a defendant's purposeful availment of the forum itself.   *E.g., Walden v. Fiore*, 571 U.S. 277, 284 (2014).  That test is clearly unmet as well.

Complaint paragraphs 60 and 61 supposedly meet the test.  Yet there Plaintiff alleges extremely scant contacts—essentially just the maintenance from Texas of a website that reaches Florida like every other place on earth.  Paragraph 60 says that Dioskouroi LLC "committed tortious acts in Florida, including but not limited to the distribution of Plaintiff's copyrighted works on its website, which could

be and were accessed by Floridians, including Plaintiff," Doc. 1 at 10-11, ¶ 60, and Paragraph 61 says that it "committed tortious acts in Florida, including but not limited to the sale of copies of Plaintiff's works, which could be and were purchased by Floridians, including by Plaintiff," *id.* at 11, ¶ 61.

This effort to establish Florida's specific personal jurisdiction over Dioskouroi LLC fails because the complaint never alleges that Dioskouroi LLC actually did anything *in Florida*. Though there are allegations about this company broadcasting a website, those allegations are not about a relationship with Florida. They pertain only to conduct in Texas about the internal affairs of businesses organized under Texas law. *See* Doc. 1 at 2-4, ¶¶ 3-17. The same is true of the allegations about corporate form abuse. To the extent that any of these matters constitute "minimum contacts," they constitute contacts only with Texas—not Florida. So even if true, these pleadings do not cross the threshold of "purposeful availment."

Plaintiff's effort to establish Florida's specific personal jurisdiction over Dioskouroi LLC violates two key rules upheld by the Supreme Court in *Walden*. First, *Walden* makes specific jurisdiction over Dioskouroi LLC impossible to sustain here by reaffirming a longstanding rule about whose contacts matter: Contacts count towards purposeful availment only if they are created by the "defendant himself"—not if they are created by "plaintiffs or third parties." *Walden*, 571 U.S. at 284. The complaint's jurisdictional theory violates this rule because the only Florida connections it can muster are attributable to third parties—the Floridians

that allegedly choose to interact with Dioskouroi LLC in Texas.  The fact that Floridians chose to reach out to a Texas company is, under *Walden*, not enough.

Second, *Walden* makes specific jurisdiction impossible to sustain here by holding that "'minimum contacts' analysis looks to the defendant's contacts with *the forum State itself*, not the defendant's contacts with *persons who reside there*."" *Walden*, 571 U.S. at 285.  Whatever relationship Dioskouroi LLC created here is with Florida residents themselves—not their state.   Under *Walden*, the critical jurisdictional question is about "whether the defendant's actions connect him to the forum."  *Id.*  For everything regarding Dioskouroi LLC's , the answer is "no."

At bottom, the complaint's case for specific personal jurisdiction over Dioskouroi LLC rests on little more than the business's maintenance of a website passively offering products to the entire world that happens to also broadcast into Florida.  That does not suffice because "'merely post[ing] a passive website' does not constitute either the solicitation of business in Florida or the transaction of business in Florida, for purposes of a jurisdictional due process analysis." *Westwind Limousine, Inc. v. Shorter*, 932 So. 2d 571, 575 (Fla. Dist. Ct. App. 2006) (quoting *Miller v. Berman*, 289 F.Supp.2d 1327, 1334–35 (M.D.Fla.2003)), and likewise because "[e]lectronic communications from out-of-state offices into Florida do not establish conducting business in Florida."  *Stonepeak Partners, LP v. Tall Tower Capital, LLC*, 231 So. 3d 548, 556 (Fla. Dist. Ct. App. 2017).  Everything the complaint really focuses on happened away from Florida, lacking any of the "purposeful direction" to this forum that precedent requires.

23

For these reasons, the complaint's pleadings fail to establish that Dioskouroi LLC's relationship with Florida crosses the threshold necessary to warrant an exercise specific jurisdiction.  With general jurisdiction clearly lacking as well, the case as Dioskouroi LLC should be dismissed.

## Conclusion

The motion should granted with prejudice and without leave to amend.  The Court should enter an order that (1) dismisses Complaint counts 5, 6, and 7 for failure to state a claim upon which relief can be granted as to all Defendants, (2) dismisses the entire Complaint as to Defendant Dioskouroi LLC for lack of personal jurisdiction.

Respectfully submitted,

Chad Flores
cf@chadflores.law
Texas Bar No. 24059759
Flores Law PLLC
917 Franklin Street
Suite 600
Houston, Texas 77002
T (713) 364-6640
F (832) 645-2496

David S. Gingras
david@gingraslaw.com
Arizona Bar No. 021097
California Bar No. 218793
Gingras Law Office PLLC
4802 E. Ray Rd. #23-271
Phoenix, Arizona 85044
T (480) 264-1400
F (480) 248-3196

F. Andino Reynal
areynal@frlaw.us
Texas Bar No. 24060482
The Reynal Law Firm, PC
917 Franklin
6th Floor
Houston, Texas 77002
T (713) 228-5900
F (713) 820-6981

Counsel for Cody Wilson, DEFCAD, Inc.,
Defense Distributed, and Dioskouroi LLC