UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №: 6:24-cv-01629

MATTHEW LAROSIERE,

*Plaintiff*,

v.

CODY RUTLEDGE WILSON, DEFCAD,
Inc., DEFENSE DISTRIBUTED, and
DIOSKOUROI LLC,

*Defendants*.

_____/

**COUNTERDEFENDANTS JOHN ELIK, JOSH STROKE, AND JOHN
LETTMAN'S MOTION TO DISMISS DEFENSE DISTRIBUTED'S
COUNTERCLAIMS, TO STRIKE, AND IN THE ALTERNATIVE,
<u>FOR A MORE DEFINITE STATEMENT</u>**

Counterdefendants John Elik, Josh Stroke, and John Lettman (collectively,
"the nonresident Counterdefendants"), by and through undersigned counsel,
pursuant to *Fed. R. Civ. P. 12(b)(2)*, *(b)(6), (e), and (f)*, move to dismiss
Defendant's counterclaim for want of personal jurisdiction; for failure to state a
claim upon which relief can be granted; to strike faulty affirmative defenses; strike
irrelevant, impertinent, and scandalous material; and in the alternative, for a more
definite statement.

## <u>INTRODUCTION AND SUMMARY OF ARGUMENTS</u>

The underlying action is, at its core, a straightforward case of copyright
infringement. In response, Defendant-Counterplaintiff Defense Distributed filed a

one-hundred-and-nine-page counterclaim and answer. This is an impermissible "shotgun pleading" under the law of this circuit. The counterclaim joins 8 additional counterdefendants, and lists eight "counterclaims," none of which are separated into individual counts. Each of the "counterclaims" impermissibly lump all counterdefendants together, and each one incorporates by reference the entire 429-paragraph complaint. (Doc. 29 at para 204, 222, 232, 241, 235(e), 262, 272, 275) ("All of this pleading's other paragraphs are incorporated herein.").

Finally, the purported affirmative defenses fail to identify any factual bases, but are rather one-line assertions. These one-line affirmative defenses are insufficient and due to be struck.

## **ARGUMENT**

### I. THIS COURT LACKS PERSONAL JURISDICTION OVER THE NONRESIDENT COUNTERDEFENDANTS

When assessing a dismissal for lack of personal jurisdiction, Courts "first determine whether the applicable statute potentially confers jurisdiction over the defendant." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 199 F.3d 935, 942 (11th Cir. 1997). Jurisdiction over a non-resident defendant may be based upon a federal statute or a state long-arm statute. If a basis exists for granting jurisdiction, the court must then "determine whether the exercise of jurisdiction comports with due process." *Id*.

Supporting affidavits attached to this motion confirm that the nonresident counterdefendants do not live in the State of Florida, and do not conduct any business in the State of Florida.

Counterplaintiff Defcad asserts claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), the Lanham Act, the Computer Fraud and Abuse Act, the Digital Millenium Copyright Act, and other claims. The Eleventh Circuit has held that a potential statutory basis for jurisdiction may exist under RICO because it contains a nationwide service-of-process provision. *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 847-48 (11th Cir. 1988). The other asserted statutes lack such provisions, and thus their jurisdictional analysis must be based on the state's long-arm statute. On this, the jurisdictional analysis is different for the RICO claim and all other claims.

A. <u>There is no personal jurisdiction under RICO</u>

Even where the eleventh circuit has recognized a potential statutory basis for personal jurisdiction under RICO, Defense Distributed can only take advantage of it if its "asserted federal claim is not wholly immaterial or insubstantial." *Republic of Panama*, 119 F.3d at 941-2. "In other words, whether a basis exists for exercising personal jurisdiction under RICO depends on whether [Defense Distributed] has stated a 'colorable' RICO claim. If [Defense Distributed] has not stated a colorable claim, we do not address the applicable due-process requirements." *Courbain v. Scott*, 596 Fed.Appx. 729 at 732 (11th Cir. 2014).

Similar to the complaint in *Courbain*, Defense Distributed "makes broad allegations" but "does not connect these allegations to any predicate act as defined by 18 U.S.C. §1961." *Id*. at 733. The deficiencies in Defense Distributed's pleadings are more thoroughly argued *infra*, but no jurisdiction exists under RICO because Defense Distributed did not state a "colorable" RICO claim, and even if it did, personal jurisdiction would not comport with due process, for the same reasons the other claims do not.

B. <u>There is no personal jurisdiction for the remaining claims</u>

Because the remaining claims are not based on laws containing a nationwide service-of-process provision, we look to the long-arm statute of Florida to determine whether it authorizes exercising jurisdiction over the defendants. *See Delong Equip. Co.*, 840 F.2d at 847–48; Fed.R.Civ.P. 4(e). Under the Florida long-arm statute, specific personal jurisdiction exists if, among other things, an individual commits a tortious act within Florida, an individual carries on business within the state, or the individual injures persons within Florida due to an act or omission outside Florida if, at the time of injury, (1) the defendant was engaged in solicitation or service activities within Florida or his services were used within Florida in the ordinary course of business. Fla. Stat. § 48.193(1)(a) 6. The statute also provides for general jurisdiction over a defendant "who is engaged in substantial and not isolated activity" in Florida. Id. § 48.193(2). Florida's Supreme Court has held that economic injury, unaccompanied by physical injury or property

damage, is insufficient to subject a non-resident defendant to personal jurisdiction under § 48.193(1)(a) 6. *See Aetna Life & Cas. Co. v. Therm–O–Disc, Inc.*, 511 So.2d 992, 994 (Fla.1987) (concerning Fla. Stat. § 48.193(1)(f), which later became § 48.193(1)(a) 6).

Defense Distributed has made no jurisdictional allegations against the nonresident Counterdefendants save for the threadbare, boilerplate recital that "Specific personal jurisdiction exists because this action arises out of and relates to conduct by which [Lettman, Stroke, and Elik] purposefully availed himself of the privilege of conducting activities within the state of Florida." (Doc. 29 at para 28, 38, and 42). There are no factual allegations underlying any relationship to the forum state, likely because, as shown by the attached affidavits, no jurisdictionally relevant connection to this state exists for any of the nonresident Counterdefendants.

## II.  THE COUNTERCLAIM IS AN IMPERMISSIBLE SHOTGUN PLEADING

The nonresident Counterdefendants move to dismiss the counterclaim in its entirety under 12(b)(6) because it is an impermissible shotgun pleading. A shotgun pleading is a complaint that violates either Fed. R. Civ. P. 8(a)(2), 10(b), or both. *Weiland v. Palm Beach Cnty. Sheriff's Off.* 792 F.3d 1313, 1320 (11th Cir. 2015). 8(a)(2) requires the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) mandates a party "state its claims or defenses in numbered paragraphs, each

limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Additionally, where doing so would "promote clarity," such as with claims relating to multiple defendants, Rule 10(b) further mandates that "each claim founded on a separate transaction or occurrence...be stated in a separate count." *Id.*

These rules ensure a pleader "present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading", as well as for the benefit of the court charged with determining "which facts support which claims" and "whether the plaintiff has stated any claims upon which relief can be granted." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021). Because shotgun pleadings are "calculated to confuse the 'enemy,' and the court," they fail to state a claim and are often disposed of on a 12(b)(6) motion. *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520 at 1544 n.14 (Tjoflat, J., dissenting)

The Eleventh Circuit has "identified four...categories of shotgun pleadings." *Weiland*, 792 F.3d at 1321. These consist of 1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before it and the last count to be a combination of the entire complaint"; 2) a complaint "replate with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; 3) a complaint which fails to separate each cause of action or claim for relief into a different count; and 4) a complaint that "asserts multiple claims against

multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.". *Barmapov*, 986 F.3d 1325 (quoting *Weiland*, 792 F.3d at 1321). The counterclaims fit into each of the four categories of prohibited shotgun pleading.

A, The counterclaims are a type 1 shotgun pleading

A Type 1 shotgun pleading is one that "contains multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before it and the last count to be a combination of the entire complaint." *Id, see also Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n. 22 (11th Cir.2010) (Tjoflat, J., concurring in the appeal, No. 07–13225, and dissenting in the cross-appeal, No. 07–13477) (finding "a typical 'shotgun' pleading" where "each count incorporated by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged were not material to the claim, or cause of action, appearing in a count's heading"); *PVC Windoors, Inc. v. Babbitbay Beach Constr.*, N.V., 598 F.3d 802, 806 & n. 4 (11th Cir.2010) (finding a "typical shotgun pleading" where the last of a complaint's ten counts "amounts to an amalgamation of all counts"); *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1311 (11th Cir.2007) (en banc) (Tjoflat, J., dissenting) (stating that the practice of incorporating each count's allegations into successive counts is the "cardinal sin of 'shotgun' pleading").

The typical Type 1 shotgun pleading is deficient because each count includes irrelevant factual allegations and legal conclusions, calculated to confuse opposing counsel and the court, rather than articulate a basis of relief. Most commonly, a Type 1 shotgun pleading commits this "cadinal sin" by incorporating by reference all of a pleading's prior paragraphs until the last count comprises the entire lawsuit. *Weiland*, 792 F.3d at 1321. Defense Distributed's counterclaim is even worse than that, with each "Counterclaim" including that "All of this pleading's other paragraphs are incorporated herein." (Doc. 29 at Para. 204, 221, 232, 241, 253(e), 262, 272, 275). This amounts to each "Counterclaim" comprising the entire 429-paragraph filing, including many pages of irrelevant information and 152 paragraphs of its answer and prayer for releif.

B, <u>The counterclaims are a type 2 and type 3 shotgun pleading</u>

A type 2 shotgun pleading, the "next most common type…is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *See, e.g., Chudasama v. Mazda Motor Corp*., 123 F.3d 1353, 1359 n. 9 (11th Cir.1997) (finding a shotgun pleading where "a reader of the complaint must speculate as to which factual allegations pertain to which count"); *Cramer v. Florida*, 117 F.3d 1258 at 1261 (11th Cir. 1997) (describing the complaint at issue as "a rambling 'shotgun' pleading that is so disorganized and ambiguous that it is almost impossible to

discern precisely what it is that these appellants are claiming"); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir.1997) (describing a complaint that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants" as a "prototypical 'shotgun complaint'"); Anderson v. Dist Bd. Of Trs. Of Cent. Fla. Mty. Coll., 77 F.3d 364 at 366 (11th Cir. 1996) (complaint was "perfect example of 'shotgun' pleading in that it [was] virtually impossible to know which allegations of fact [were] intended to support which claim(s) for relief") (internal citation omitted).

Defense Distributed's counterclaim is a Type 2 shotgun pleading in that its vague factual allegations are impossible to connect to any specific purported actions of any specific Counterdefendant, largely because it is also a type 3 shotgun pleading in that it fails to separate its claims for relief into separate counts, and makes no distinction as to which alleged Counterdefendant is alleged to have committed what specific acts, and what acts are relevant to what causes of actions. For example, Defense Distributed's "statement of the parties" section contains long, unsupported criminal allegations, each concluding with a conclusory jurisdictional statement which neglects to identify a statutory basis for jurisdiction.

The counterclaim begins its "venial sin" in the second paragraph, which features only a misstatement of the law, with no relation to the underlying claims against any Counterdefendant. (Doc. 29). Paragraphs 3 through 9 are misstatements of law accompanied by vague, unparticularized criminal

allegations. Spanning many pages, paragraphs 55, 58-61, 72, 73, 79, and 81 are verbose conclusions of law and Defendant-Counterplaintiff asserting a novel, unsupported interpretation of federal regulations with no connection to the purported cause of action. Spanning many more pages, paragraphs 70, 71, 74, 75, 76, 77, 80, and 82 are all compound statements interspersed with irrelevant material, to which Counterdefendants cannot reasonably be required to reply.

C, <u>The counterclaims are a type 4 shotgun pleading</u>

The fourth type of shotgun pleading is one which commits "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d 1323.

Each of Defense Distributed's counterclaims "is asserted against all of the Counterdefendants" (Doc. 29 at Para. 143, 205, 223, 233, 242, 254, 263, 273), and each counterclaim incorporates "all of this pleading's other paragraphs". This includes Defense Distributed's DMCA claim against "all of the Counterdefendants," where the only factual aversion mentioning DMCA in the complaint is Counterplaintiff suggesting it "ignored" a takedown request because it was "not a recognizable DMCA or other legal notice." (Doc. 29 at Para. 98).

In addition, each counterclaim is entirely devoid of any articulated factual basis, but rests on the entire pleading, which includes statements made by

nonparties and a lengthy uncited discussion of what Counterplaintiff believes the law to be.

### III. NONE OF THE COUNTERCLAIMS ARTICULATE A CLAIM FOR WHICH RELEIF CAN BE GRANTED

As already explained, the complaint fails to state a claim for which releif can be granted because it is an impermissible shotgun pleading. Even if this Court were to hold it not-so, the counterclaims do not properly allege a single claim for which relief can be granted.

We begin the analysis by discussing each of the RICO predicate allegations, as to state a claim under RICO, Counterplaintiff would have to sufficiently allege the existence of an enterprise, and a pattern of racketeering activity attributable to that enterprise.

### A. RICO Predicate: Wire Fraud

Wire fraud, as it could pertain to a RICO claim, cover "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." 18

U.S.C. § 1343. As with many of Counterplaintiff's claims, circumstances constituting fraud must be stated with particularity. Fed. R. Civ. P. 9(b).

Counterplaintiffs state only that "Counterdefendants" "regularly used interstate wire communications, including social media, email, and messaging platforms, to disseminate false and defamatory statements about Defense Distributed, solicit illegal transactions, and facilitate the unlawful transfer of controlled technical data, all with the intent to deceive and defraud." (Doc. 29 Para. 154). It proceeds in this manner exclusively referring to "The Counterdefendants" as actors, without ever specifying what Counterdefendant used what communication medium, and what circumstances constituted fraud, much less how any communication was on the part of the alleged enterprise.

### B. RICO Predicate: Extortion

Extortion, as it could pertain to a RICO claim, "means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. §1951(b)(2). Counterplaintiff alleges this against "all Counterdefendants," but fails to identify a single instance of extortion under §1951(b)(2) by any Counterdefendant, much less one on the part of the alleged enterprise.

### C. RICO Predicate: Money Laundering

Counterplaintiff's money laundering allegations are very difficult to follow. It seems they are predicated on Counterplaintiff's misreading of 15 C.F.R. § 734.7. Counterplaintiff jumps straight to the final subpart (c) exception to the general rule that most "unclassified 'technology' or 'software' is 'published,' and is thus not 'technology' or 'software' subject to the EAR, when it has been made available to the public" such as through "(4) Public dissemination…in any form…including posting on the Internet on sites available to the public." Counterplaintiff asserts that unknown, undisclosed files posted by unknown, undisclosed Counterdefendants on unknown, undisclosed places are "ready for insertion" into an unknown, undisclosed machine tool and were exported in an unknown, undisclosed way. Counterplaintiff's novel interpretation—which Counterdefendants can only guess the meaning of—is inconsistent with guidance provided by the Department of Commerce and has never been applied by any court.[1]

Even if some colorable interpretation of law could be divined from Counterplaintiff's filing, it cannot be said that a party's novel interpretation of a federal regulation, itself an agency interpretation of a federal law, can properly render it "specified unlawful activity" under 18 U.S.C. § 1956(c)(7).

---

[1] *See*, Dept. of Commerce, "Revisions to Definitions in the Export Administration Regulations: Frequently Asked Questions (FAQs) Effective September 1, 2016" https://www.bis.doc.gov/index.php/documents/compliance-training/export-administration-regulations-training/1554-ear-definitions-faq/file; *See also* 2016-12734 (81 FR 35586).

Even so, Counterplaintiff does not allege money laundering. Right after Counterplaintiff articulates the elements of money laundering, which include that the transaction *actually* involve the proceeds of a specified unlawful activity, and the scienter requirement relating to the same, (Doc. 29 Para. 171). Counterplaintiff unintelligibly alleges that in May 2021 Counterdefendants directed a Counterdefendant to send money—the source of which is not alleged—to a foreign account to "fund the development" of firearm files.[2] This tracks with none of the elements of money laundering under 18 U.S.C. § 1956. The other alleged transactions concern unknown, undisclosed actors sending unknown, undisclosed amounts which came from unknown, undisclosed sources. While Counterplaintiff alleges what it believes the money was *for*, it does not allege the transactions were made "with knowledge that the transaction was designed in whole or in part to conceal the nature, location, source, ownership or control of the proceeds of that activity." (Doc. 29 Para 171-175).

### D. RICO Predicate: Obstruction of Justice

Wire fraud, as it could pertain to a RICO claim, covers "Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other

---

[2] Counterplaintiff alleges this was to "fund the development" of firearm files Counterplaintiff states on its website were completed and released a month earlier in April of 2021. https://defcad.com/library/fgc-9-mk2-9mm-pistol/

proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b)." 18 U.S.C. § 1503.

The thrust of Counterplaintiff's obstruction argument appears to be its allegation that documents were destroyed after it issued a litigation hold. However, only three of the Counterdefendants are alleged to have destroyed any communications. As to the parties presently moving the court, the claim is silent as to *what* was destroyed and whether and how it was covered by the unspecified litigation hold. The only allegation against Counterdefendant Elik is *specifically alleged to have occurred before the litigation hold was issued.* (Doc. 29, Para. 108-109).

The Obstruction predicate act allegations are simply devoid of factual basis, and given it alleges fraud, especially devoid of the particularity it is required under Fed. Rul. Civ. P. 9.

E. RICO Predicate: CFAA

Counterplaintiff's purported RICO predicate is not a proper invocation of the CFAA under RICO, as RICO references the CFAA only through 2332b(g)(5)(B), which is scope limiting to terrorism. Even so, Counterplaintiff does not identify a single discrete CFAA violation by any discrete party. Instead, its theory of unauthorized access to its public website is predicated on its own terms of service—which Counterplaintiff changed after the underlying suit was filed—to baldly assert that accessing the public-facing website was itself a CFAA violation.

F. <u>RICO Predicate: Threat of Murder</u>

As with its other purported RICO predicate acts, Defcad makes no allegation relating to any specific conduct by any Counterdefendant. Rather, the only alleged "threat" in its entire one-hundred-and-nine-page filing is that an unknown, undisclosed person communicated that some other, unknown, undisclosed person has put an unknown, undisclosed bounty on Cody Wilson. (*Cf.* Doc. 29 Para. 5 *with* Para. 196-197). This is not an indictable threat of murder, much less a RICO predicate act.

G. <u>Lanham Act</u>

As with all of Counterplaintiff's claims, the Lanham Act §43(a) allegations make no attempt to identify any discrete conduct by any discrete party. (Doc. 29 pg. 75-79). Counterplaintiff again asserts its imagined EAR violations as supporting an unfair competition claim, but has not articulated a single EAR

violation, nor how any alleged conduct violated such a provision.[3] The Lanham Act claims suggest "fraudulent copyright claims" as a basis for a §43(a) violation, without identifying what copyright claims, by whom, when, or the particularities required by Fed. Rul. Civ. P. 9.

H. CFAA

As with all of Counterplaintiff's claims, the alleged CFAA violations make no attempt to identify any discrete actions by any party. (Doc. 29, p. 79-81). Also, it predicates its CFAA claim on its own terms of service.[4]

I. DMCA

Counterplaintiff alleges that all Counterdefendants submitted fraudulent DMCA claims, however, the only other mention of DMCA is at Paragraph 98, suggesting that a notification was *not* a DMCA request.[5] Counterplaintiff does not identify a single DMCA notice in its one-hundred-and-nine-page filing. Where allegations of fraud must be stated with particularity, a total lack of allegations to support "Counterclaim Four" cannot be sufficient to state a claim.

J. Tortious Interference

To demonstrate tortious interference with a contract or business relationship in Florida, "the plaintiff must demonstrate (1) the existence of a business

---

[3] *See* discussion *supra* Part III(C).
[4] *See* discussion *supra* Part III(E).
[5] *See* discussion *supra* Part II(C).

relationship under which the plaintiff has legal rights; (2) an intentional and unjustified interference with the relationship; and (3) damage to the plaintiff as a result of the tortious interference with that relationship." *Ad–Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 849 F.2d 1336, 1348–49 (11th Cir.1987). Notably, no cause of action exists for tortious interference with a business's relationship to the community at large." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla.1994) (citation omitted). "As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Id*. at 815. Indeed, the Florida Supreme Court has stated that "in order to establish the tort of tortious interference with a business relationship, the plaintiff must prove a business relationship with identifiable customers." *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So.2d 821 (Fla.1996).

Defense Distributed failed to identify any specific relationships, failed to identify any knowing conduct of a party. Rather, it impermissibly and unsupportedly lumped all Counterdefendants together and conclusiorily alleged tortious interference by Counterdefendants against its business relationships with unknown and unidentified "users, contributors, and commercial partners." (Doc. 29, p. 83-85).

  K. <u>Trade Libel</u>

To state a claim of trade libel under Florida law, "plaintiffs must allege: (1) a falsehood; (2) has been published, or communicated to a third person; (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff; (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are proximately caused as a result of the published falsehood." *Stewart Title Guar. Co. v. Title Dynamics, Inc.*, 2005 WL 2548419 (M.D.Fla.2005). In its counterclaim, Defense Distributed makes no allegations regarding any specific communications to any specific third persons, nor has it alleged any damages proximately caused, nor actually caused by any falsehood. (Doc. 29 p. 86-87). Additionally, given the tort sounds in fraud, it must be stated with particularity. Fed. Rul. Civ. P. 9.

## L. Florida Deceptive and Unfair Trade Practices Act (FDUTPA)

To bring a FDUTPA claim for damages, a plaintiff must establish three elements: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages. *Baptist Hosp., Inc. v. Baker*, 84 So.3d 1200 at 1204 (Fla. 1st DCA 2012). Florida's supreme court has defined an "unfair practice" as "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to **consumers**." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003) (emphasis added) (citations omitted) (internal quotation marks omitted). Additionally, it has defined "deception" as "a

representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, **to the consumer's detriment**." *Id.* (emphasis added) (citation omitted) (internal quotation marks omitted). FDUTPA does not create an avenue for Defense Distributed to independently re-litigate all of its preceding causes of action, as it clearly attempts to do so here, without alleging any injury to the consuming public, nor any unfair business practices. (Doc. 29 p. 88-92).

M. <u>Spoilation</u>

Counterplaintiff asserts "a civil action for spoilation under the Federal Rules of Civil Procedure and Federal Rules of Evidence…and under Florida law." (Doc. 29 p. 92-93). No such independent cause of action exists in Florida. *James v. U.S. Airways, Inc.* 375 F.Supp.2d 1352 at 1354 (Finding that no cause of action for intentional spoilation of evidence exists under Florida law, nor does an independent cause of action clearly exist where the alleged spoiler and defendant in the underlying claim are one and the same). Counterplaintiff cites two Eleventh Circuit cases under this heading, neither of which concern an independent cause of action for spoilation.

## IV. IN THE ALTERNATIVE, IF ANY COUNTERCLAIMS SURVIVE, THEY MUST BE MORE DEFINITELY STATED

For all of the reasons explained *supra* Part II and III, the one-hundred-and-nine page counterclaims are so vague and ambiguous that Counterdefendants Elik, Stroke, and Lettman cannot reasonably prepare a response to it. It should be

dismissed in its entirety, but if it is not, it must be more definitely stated. Fed. Rul. Civ. P. 12(e).

## V. IF ANY CLAIMS SURVIVE, REDUNDANT, IMMATERIAL, AND SCANDALOUS MATERIAL IS DUE TO BE STRUCK.

Pursuant to Fed. Rul. Civ. P. 12(f), if any counterclaims survive, Counterdefendants Elik, Stroke, and Lettman respectfully move this honorable Court to strike all redundant, immaterial, impertinent, or scandalous matter in the counterclaim, including: Paragraph 2-9, 55, 58-61, 70-77, 79, 80-82.

## VI. CONCLUSION

Defense Distributed's counterclaims should be dismissed in their entirety.

Respectfully submitted,

DATED:  December 16, 2024
*/s/Matthew Larosiere*
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Counterdefendants*

## Local 3.01(g) Certification

Pursuant to M.D. Fla. R. 3.01(g), I hereby certify that I met and conferred via e-mail with opposing counsel regarding the substance of the foregoing motion. Counsel could not reach an agreement as to resolution, and thus the motion is opposed.

*/s/Matthew Larosiere*
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Counterdefendants*