United States District Court
Middle District of Florida
Orlando Division

Matthew Larosiere,
    Plaintiff,

v.

Cody Rutledge Wilson, DEFCAD, Inc.,
Defense Distributed, and Dioskouroi LLC,
    Defendants.

_____      No. 6:24-cv-1629

Defense Distributed,
    Counterplaintiff / Third-Party
    Claimant,

v.

The Gatalog, Matthew Larosiere,
John Elik, Alexander Holladay, Peter
Celentano, Josh Kiel Stroke, John Lettman,
The Gatalog Foundation, and MAF Corp,
    Counterdefendant / Third-Party
    Defendants.

_____

**Defendants' Motion to Dismiss**

## Table of Contents

Summary of the Argument..................................................................................3

Facts ....................................................................................................................3

Argument ............................................................................................................5

I.      Rule 12(b)(6): The Court should dismiss Counts 5 and 6 for failure to state a claim upon which relief can be granted. ..........................................5

         A.      Count 5: The Lanham Act claims are invalid. ...................................5

               1.      Failure to allege § 1114's connectivity requirements. ..............5

               2.      Failure to allege § 1114 confusion. ...........................................8

         B.      Count 6: The Florida law "false designation and unfair competition" claims are invalid. .......................................................9

II.     Rule 12(b)(2): The Court should dismiss all claims against Dioskouroi LLC for lack of personal jurisdiction......................................................... 12

         A.      General personal jurisdiction does not exist................................. 12

         B.      Specific personal jurisdiction does not exist. ................................ 13

III.    Leave to amend should be denied. ........................................................... 16

Conclusion ....................................................................................................... 17

Local Rule 3.1 Certification.............................................................................. 17

**Summary of the Argument**

Plaintiff Larosiere's First Amended Complaint asserts six counts. Doc. 43. Counts 1 through 4 present his main Copyright Act claims against all Defendants. Counts 5 and 6 assert secondary non-Copyright claims against all Defendants too.

First, all Defendants move under Rule 12(b)(6) to dismiss Counts 5 and 6 for failure to state a claim upon which relief can be granted. This challenge does *not* target the Copyright Act claims of Counts 1 through 4, which are invalid for a litany of reasons that separate motions will address. But as to Counts 5 and 6, the amended complaint's pleading deficiencies entitle all Defendants to dismissal.

Second, Defendant Dioskouroi LLC moves under Rule 12(b)(2) to dismiss all claims against it for lack of personal jurisdiction. This challenge does not pertain to the other Defendants, who have opted not to dispute personal jurisdiction at this time. But as to Defendant Dioskouroi LLC, the amended complaint's inability to establish general or specific personal jurisdiction warrants immediate dismissal.

**Facts**

Allegedly, Plaintiff Larosiere is "a firearms industry attorney and author" who "engages in the design and development of firearms technologies, and produces pictorial, written, and visual art works related to his advocacy." Doc. 43 at 1, ¶ 2. He claims that certain of his works have Copyright Act protection and were illegally reproduced and distributed by the Defendants, who are allegedly engaged in a similar line of business. *Id.* at 36-50, ¶¶ 260-304. The Copyright Act claims loom large and have many serious matter-of-law deficiencies but are not yet at issue.

The motion's first key facts concern the commercial relationship between Plaintiff Larosiere and the Defendants—or lack thereof—which plays a key role in the non-Copyright claims. In this respect, the complaint does *not* plead that Plaintiff Larosiere is a direct commercial competitor of any Defendant in this same market. It alleges only that Plaintiff Larosiere does certain work in isolation without ever referring to commercial competition. *See, e.g.*, Doc.43 at 1, ¶ 2. "The Gatalog" is an enterprise that *does* commercially compete with the Defendants. But according to the Complaint, Plaintiff Larosiere does not "direct" or "own" The Gatalog. Doc. 48 at 51, ¶ 309. Having affirmatively disclaimed that his work occurs as part of The Gatalog, Plaintiff Larosiere cannot use facts about The Gatalog's commercial relationships to support Count 5's non-Copyright claims.

The other key facts concern a similar issue under Florida's right-of-publicity law, Fla. Stat. § 540.08, the root of Count 6. Because these types of publicity laws would otherwise broadly (and unlawfully) interfere with the First Amendment, courts narrowly construe § 540.08 to apply *only* where the defendant uses the plaintiff's name or image *in a commercial advertisement* (i.e., such as by placing the name "Tiger Woods" on a golf ball, thereby implying Mr. Woods endorses that specific brand of ball). Yet nothing in Plaintiff Larosiere's complaint alleges that Defendants have used his name or likeness *in a commercial advertisement* (of any sort), much less in one that promotes any product or service sold by Defendants. Because of this factual shortcoming, Count 6 fails to state a claim on which relief can be granted.

4

## Argument

**I.  Rule 12(b)(6): The Court should dismiss Counts 5 and 6 for failure to state a claim upon which relief can be granted.**

All Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts 5 and 6 of the complaint. Neither states a claim upon which relief can be granted as to any Defendant.

**A.  Count 5: The Lanham Act claims are invalid.**

Count 5 is Plaintiff Larosiere's attempt to plead a Lanham Act claim for "False Designation of Origin and Unfair Competition Under 15 U.S.C. § 1125." Doc. 43 at 50-55, ¶¶ 305–337. It fails to state a claim upon which relief can be granted because it does not allege either of § 1114's connectivity requirements and also because it does not allege § 1114's requisite kind of confusion.

**1.  Failure to allege § 1114's connectivity requirements.**

The Lanham Act's connectivity requirements stem from 15 U.S.C. § 1114(1). That provision lets such claims proceed only if a plaintiff pleads, among other elements, a mark's use "in commerce . . . in connection with the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(1)(a). No such action exists unless the mark is used "in commerce," *id.*, and even if that is satisfied, still no action exists unless that mark is also used "in connection with the sale, offering for sale, distribution, or advertising of any goods or services." *Id.* Count 5 both fails to plead that the marks in question were used "in commerce" and also fails to plead that the marks in question were used "in connection with the

5

sale, offering for sale, distribution, or advertising of any goods or services." *Id.* It therefore violates both of the § 1114 connectivity requirements.

The competitor/critic distinction is key. Precedent applying § 1114(1)(a)'s connectivity requirements rightly establishes that there is *no* valid Lanham Act cause of action for merely "fact checking" statements made online, and/or for punishing any/all forms of critical commentary. The connectivity requirement means that, whereas claims run to a true commercial competitor, they do not run to anyone who is a mere commercial *critic*.

*Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005), is on point. It rightly explains that the Lanham Act does *not* create a federal cause of action for defamation, nor does it prohibit all unauthorized uses of a mark. Instead, the law prevents "only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers":

> [T]he [Lanham] Act is designed to protect consumers who have formed particular associations with a mark from buying a competing product using the same or substantially similar mark and to allow the mark holder to distinguish his product from that of his rivals.
>
> The Supreme Court has made it clear that trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers.

*Bosley*, 403 F.3d at 676–677; *see Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) ("A trademark only gives the right to prohibit the use of it so far as to protect the owner's good will *against the sale of another's product as his*." (emphasis in original); *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203,

6

205 (1942) (explaining that the main purpose of the Lanham Act is to prevent the use of identical or similar marks in a way that confuses the public about the actual source of goods and services)).

Count 5 fails to allege either of the § 1114 connectivity requirements, as *Bosley* illustrates. Plaintiff Larosiere's complaint never plausibly alleges that the supposedly-false statements in question were made *in a commercial context*. Nor does Plaintiff Larosiere's complaint plausibly allege that Defendants' actions could or would mislead a consumer into purchasing a product or service from Defendants under the mistaken belief they were dealing with Plaintiff Larosiere. Both of these shortcomings are independently dispositive reasons to dismiss Count 5.

This result accords with the statute's purpose—to protect the public against the misleading use of a mark *to wrongfully affect commercial purchasing decisions*. Hence *Bosley*'s conclusion that the Act did not apply to online *criticism*, even when it included an unauthorized use of the plaintiff's mark, absent proof that the use falls within the narrow scope of misleading competitive conduct the Act was intended to address. This long quote explains the issue perfectly:

> T]he appropriate inquiry is whether Kremer offers *competing* services to the public. *Kremer is not Bosley's competitor; he is their critic*. His use of the Bosley mark is not in connection with a sale of goods or services -- it is in connection with the expression of his opinion *about* Bosley's goods and services.
>
> The dangers that the Lanham Act was designed to address are simply not at issue in this case. *The Lanham Act, expressly enacted to be applied in commercial contexts, does not prohibit all unauthorized uses of a trademark*. Kremer's use of the Bosley Medical mark simply cannot mislead consumers into buying a competing product -- *no*

7

> *customer will mistakenly purchase a hair replacement service from Kremer under the belief that the service is being offered by Bosley. Neither is Kremer capitalizing on the good will Bosley has created in its mark. Any harm to Bosley arises not from a competitor's sale of a similar product under Bosley's mark, but from Kremer's criticism of their services. Bosley cannot use the Lanham Act either as a shield from Kremer's criticism, or as a sword to shut Kremer up.*

*Bosley*, 403 F. 3d at 679 (emphasis added) (citing *United We Stand America, Inc. v. United We Stand, America New York, Inc.*, 128 F.3d 86, 90 (2d Cir. 1997)). *Bosley*'s conclusions and logic apply here with equal force.

### 2. Failure to allege § 1114 confusion.

Another independent reason to dismiss Count 5 is the lack of confusion. "The statute requires a showing that the defendant's use caused consumer confusion." *1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 249 (2d Cir. 2024). But Plaintiff Larosiere's complaint has no plausible allegation of such confusion. The only mention is paragraph 306's scant reference to "confusion," Doc. 43 at 50, ¶ 306, which does not count because it is conclusory. Correct precedent often rejects similar assertions of "confusion" as "conclusory." *See Open Sea Distribution Corp. v. Artemis Distribution, LLC*, No. 3:20-CV-1440-TJC-PDB, 2022 WL 4547961, at *2 (M.D. Fla. July 15, 2022); *Kaniadakis v. Executive Bd. of Directors*, No. 8:17-CV-419-EAK-TBM, 2018 WL 4568871, at *4 (M.D. Fla. Jan. 26, 2018); *Amin v. Hingorani*, No. 22-CIV-9851 (PGG), 2024 WL 4696146, at *7 (S.D.N.Y. Nov. 6, 2024); *GS Holistic, LLC v. Mr Vape Smoke Shop*, No. 1:23-CV-0282 DJC SCR, 2024 WL 4545885, at *6 (E.D. Cal. Oct. 22, 2024).

### B. Count 6: The Florida law "false designation and unfair competition" claims are invalid.

Count 6 is Plaintiff Larosiere's attempt to plead a Florida law claim for "false designation and unfair competition." Doc. 43 at 55-56, ¶¶ 338-343. Count 6 fails because it does not plausibly allege that the publications in question "directly promote a product or service" under decisions construing Florida Statutes § 540.08 such as *Tyne v. Time Warner Entm't Co., L.P.*, 901 So. 2d 802 (Fla. 2005).

The rule of decision comes from well-established Florida cases construing Florida Statute § 540.80, which provides as follows: "No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by … (a) such person …". Fla. Stat. § 540.08. The controlling Florida cases refuse to read that text literally and rightly understand it to "require that a defendant's unauthorized use 'directly promote' a product or service." *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1325 (11th Cir. 2006). Under this test, Count 6 fails to state a claim upon which relief can be granted because it does *not* allege that any challenged uses promoted any product or service.

That conclusion is demonstrated by *Tyne v. Time Warner Entertainment Co., L.P.*, 901 So.2d 802 (Fla.2005). It involved misappropriation claims under F.S. § 540.08 (exactly like this case) brought by the family members of fishermen who died in a severe storm at sea, as depicted in a popular film starring George

9

Clooney called *The Perfect Storm*. In sum, the family members accused the film's producers of using the names of their dead loved ones without their permission in a for-profit motion picture. They alleged this use violated § 540.08 because the names of their deceased family members were used without consent (effectively the same as Plaintiff Larosiere's allegations here).  The Florida Supreme Court held that misappropriation claims under § 540.08 exist only when the defendant uses the plaintiff's name/image to advertise a commercial product or service *sold by the defendant*:

> In our view, section 540.08, by prohibiting the use of one's name or likeness for trade, commercial or advertising purposes, is designed to prevent the unauthorized use of a name *to directly promote the product or service of the publisher.* Thus, the publication is harmful not simply because it is included in a publication that is sold for a profit, but rather because of the way it associates the individual's name or his personality with something else. Such is not the case here.

*Tyne*, 901 So.2d at 806 (emphasis in original) (quoting *Loft v. Fuller*, 408 So.2d 619 (Fla. 4th DCA 1981)).  Thus, *Tyne* stands for the principle that a commercial misappropriation claim under § 540.08 does not arise simply because the defendant uses the plaintiff's name/image for "pecuniary gain" or some other commercial reason.

That conclusion is further demonstrated by *Anderson v. Best Buy Stores L.P,* No. 5:20-CV-41-OC-30PRL, 2020 WL 5122781 (M.D. Fla. July 28, 2020), *report and recommendation adopted sub nom. Anderson v. Coupons in News*, No. 5:20-CV-41-OC-30PRL, 2020 WL 5106676 (M.D. Fla. Aug. 31, 2020), *aff'd sub nom. Anderson v. Coupons in the News*, No. 20-13677, 2021 WL 6098420 (11th

10

Cir. Dec. 21, 2021). *Anderson* involved a website article that used the plaintiff's mugshot in connection with a story about her arrest. Like here, the plaintiff in *Anderson* claimed the defendant did not have permission to use her name or image in this manner, so she sued, asserting claims for "commercial misappropriation of likeness, invasion of privacy, intentional infliction of emotional distress, and unjust enrichment." *Anderson*, 2020 WL 5122781, *1. Citing *Tyne* and other similar authorities, the District Court found the plaintiff's claims failed to demonstrate actionable misappropriation of her publicity rights because, among other things, it is simply not unlawful to use a person's mugshot for the purpose of broadcasting newsworthy information about that person (such as the fact of that person's arrest):

> On their face, the articles recount the events surrounding Plaintiff's arrest at the Best Buy store. *Crimes and arrests are newsworthy matters, falling within the scope of legitimate public concern*. Florida courts have confirmed that "where one becomes an actor in an occurrence of public interest, *it is not an invasion of her right to privacy to publish her photograph with an account of such occurrence*." "Just because the story and the photograph may be embarrassing or distressful to the plaintiff does not mean the newspaper cannot publish what is otherwise newsworthy."

*Anderson*, 2020 WL 5122781, *2 (emphasis added) (quoting *Cape Publications, Inc. v. Bridges*, 423 So.2d 426, 427 & n.2 (Fla. App. Ct. 1982) ("[w]ithin the scope of legitimate public concern are matters customarily regarded as 'news,'" which includes publications concerning crimes, arrests, police raids, suicides, marriages, divorces etc.")).

11

Here, nothing in Plaintiff Larosiere's Complaint alleges that his name or likeness was used to "directly promote a product or service" sold by Defendants. The absence of that allegation is fatal to the claim for exactly the same reason discussed in *Tyne*. Substantial other authority supports this conclusion. *See*, *e.g.*, *National Football League v. Alley, Inc.*, 624 F. Supp. 6, 10 (S.D.Fla. 1983) (explaining, "Section 540.08 of the Florida Statutes prohibit unconsented use of an individual's name and likeness *only when such directly promotes a commercial product or service*.") (emphasis added).

## II.  Rule 12(b)(2): The Court should dismiss all claims against Dioskouroi LLC for lack of personal jurisdiction.

Defendant Dioskouroi LLC moves under Federal Rule of Civil Procedure 12(b)(2) to dismiss the entire case against it for lack of personal jurisdiction. Though Plaintiff Larosiere bears the burden of pleading facts that establish personal jurisdiction, the complaint fails to do so. As a matter of law on this complaint, dismissal for lack of personal jurisdiction over Dioskouroi LLC is required.

### A.   General personal jurisdiction does not exist.

General personal jurisdiction exists only if a defendant's forum contacts are so "continuous and systematic" that it can said to be "at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). Under that test, the State of Florida and by extension this Court lacks general personal jurisdiction over Dioskouroi LLC because Dioskouroi LLC is at home only in Texas. The complaint essentially

concedes this by acknowledging the critical material facts: Dioskouroi LLC is incorporated and otherwise at home in Texas. *See* Doc. 43 at 8, ¶¶ 64-69. The complaint's later assertion of Florida having general personal jurisdiction, *id.* at 11 ¶ 84, is a bare legal conclusion and erroneous at that, since the conduct alleged as triggering general personal jurisdiction ("advertising, selling, and delivering works such as the infringing works to the state of Florida," *id.*) is nowhere close to the "continuous and systematic" threshold required by *Bauman* and its progeny.

### B. Specific personal jurisdiction does not exist.

Specific personal jurisdiction exists only if the action arises out of conduct that constitutes a defendant's purposeful availment of the forum itself. *E.g.*, *Walden v. Fiore*, 571 U.S. 277, 284 (2014). That test is clearly unmet as well.

Complaint paragraphs 85 and 86 supposedly meet the test. Doc. 43 at 11. Yet there Plaintiff Larosiere alleges extremely scant contacts—essentially just the maintenance from Texas of a website that reaches Florida like every other place on earth. Paragraph 85 says that Dioskouroi LLC "committed tortious acts in Florida, including but not limited to the distribution of Plaintiff's copyrighted works on its website, which could be and were accessed by Floridians, including Plaintiff," Doc. 43 at 11, ¶ 85, and paragraph 86 says that it "committed tortious acts in Florida, including but not limited to the sale of copies of Plaintiff's works, which could be and were purchased by Floridians, including by Plaintiff," *id.* at 11, ¶ 86.

This effort to establish Florida's specific personal jurisdiction over Dioskouroi LLC fails because the complaint never alleges that Dioskouroi LLC actually did

anything *in Florida*. Though there are allegations about this company broadcasting a website, those allegations are not about a relationship with Florida. They pertain only to conduct in Texas about the internal affairs of businesses organized under Texas law. *See* Doc. 43 at 8, ¶¶ 64-69. The same is true of the allegations about corporate form abuse. To the extent that any of these matters constitute "minimum contacts," they constitute contacts only with Texas—not Florida. So even if true, these pleadings do not cross the threshold of "purposeful availment."

Plaintiff Larosiere's effort to establish Florida's specific personal jurisdiction over Dioskouroi LLC violates two key rules upheld by the Supreme Court in *Walden*. First, *Walden* makes specific jurisdiction over Dioskouroi LLC impossible to sustain here by reaffirming a longstanding rule about whose contacts matter: Contacts count towards purposeful availment only if they are created by the "defendant himself"—not if they are created by "plaintiffs or third parties." *Walden*, 571 U.S. at 284. The complaint's jurisdictional theory violates this rule because the only Florida connections it can muster are attributable to third parties—the Floridians that allegedly choose to interact with Dioskouroi LLC in Texas. The fact that Floridians chose to reach out to a Texas company is, under *Walden*, not enough.

Second, *Walden* makes specific jurisdiction impossible to sustain here by holding that "'minimum contacts' analysis looks to the defendant's contacts with *the forum State itself*, not the defendant's contacts with *persons who reside there*." *Walden*, 571 U.S. at 285. Whatever relationship Dioskouroi LLC created here is

14

with Florida residents themselves—not their state. Under *Walden*, the critical jurisdictional question is about "whether the defendant's actions connect him to the forum." *Id.* For everything regarding Dioskouroi LLC, the answer is "no."

At bottom, the complaint's case for specific personal jurisdiction over Dioskouroi LLC rests on little more than the business's maintenance of a website passively offering products to the entire world that happens to also broadcast into Florida. That does not suffice because "'merely post[ing] a passive website' does not constitute either the solicitation of business in Florida or the transaction of business in Florida, for purposes of a jurisdictional due process analysis." *Westwind Limousine, Inc. v. Shorter*, 932 So. 2d 571, 575 (Fla. Dist. Ct. App. 2006) (quoting *Miller v. Berman*, 289 F.Supp.2d 1327, 1334–35 (M.D.Fla.2003)), and likewise because "[e]lectronic communications from out-of-state offices into Florida do not establish conducting business in Florida." *Stonepeak Partners, LP v. Tall Tower Capital, LLC*, 231 So. 3d 548, 556 (Fla. Dist. Ct. App. 2017). Everything the complaint really focuses on happened away from Florida, lacking any of the "purposeful direction" to this forum that precedent requires.

For these reasons, the complaint's pleadings fail to establish that Dioskouroi LLC's relationship with Florida crosses the threshold necessary to warrant an exercise of specific jurisdiction. With general jurisdiction clearly lacking as well, the case as to Dioskouroi LLC should be dismissed.

### III.  Leave to amend should be denied.

Plaintiff Larosiere should not receive leave to amend because a full and fair opportunity to fix the identified shortcomings has already been supplied. He saw all of these same arguments once already, when the original complaint, Doc. 1, was met with a motion to dismiss asserting these same points, Doc. 28.[1] Yet the amended complaint maintains essentially the same position vis-à-vis this motion's challenges. As to these matters, no more chance to amend should be afforded.

---

[1] The Defendants' filed their original motion to dismiss (Document 28) *before* the Defendants filed their original answer (Document 29). Their original motion to dismiss therefore met the timing requirement of Rule 12 because it was "made before pleading." Fed. R. Civ. P. 12(b). Here as well, with the Rule 12 timing requirements having been essentially reset by the filing of an amended complaint, Doc. 42, the instant motion to dismiss is being filed *before* the Defendants' live pleading and is therefore timely.

## Conclusion

The motion should granted. The Court should enter an order that (1) dismisses with prejudice complaint Counts 5 and 6 for failure to state a claim upon which relief can be granted as to all Defendants, (2) dismisses with prejudice the entire complaint as to Defendant Dioskouroi LLC for lack of personal jurisdiction.

## Local Rule 3.1 Certification

The movant and nonmovant conferred in a good faith effort to resolve the motion's dispute via emails and telephone calls between counsel. Having so conferred, the Defendants continue to press the motion and Plaintiff Larosiere continues to oppose.

Respectfully submitted,

Chad Flores
cf@chadflores.law
Texas Bar No. 24059759
Flores Law PLLC
917 Franklin Street
Suite 600
Houston, Texas 77002
T (713) 364-6640
F (832) 645-2496

David S. Gingras
david@gingraslaw.com
Arizona Bar No. 021097
California Bar No. 218793
Gingras Law Office PLLC
4802 E. Ray Rd. #23-271
Phoenix, Arizona 85044
T (480) 264-1400
F (480) 248-3196

F. Andino Reynal
areynal@frlaw.us
Texas Bar No. 24060482
The Reynal Law Firm, PC
917 Franklin
6th Floor
Houston, Texas 77002
T (713) 228-5900
F (713) 820-6981

Counsel for Cody Wilson, DEFCAD, Inc.,
Defense Distributed, and Dioskouroi LLC