United States District Court
Middle District of Florida
Orlando Division

Matthew Larosiere,
                Plaintiff,

v.

Cody Rutledge Wilson, DEFCAD, Inc.,
Defense Distributed, and Dioskouroi LLC,
                Defendants.

_____                No.  6:24-cv-1629


Defense Distributed,
                Counterplaintiff /
                Third-Party Plaintiff,

v.

The Gatalog, Matthew Larosiere,
John Elik, Alexander Holladay, Peter
Celentano, Josh Kiel Stroke, John Lettman,
The Gatalog Foundation, and MAF Corp,
                Counterdefendants.

_____

**Defendants' First Amended**

**Answer with Counterclaims**

**Table of Contents**

Counterclaims / Third-Party Claims ........................................................5

I.      Subject Matter Jurisdiction & Venue..............................................6

II.     Facts........................................................................................7

        A.      Defense Distributed ...........................................................7

        B.      The Gatalog .....................................................................8

        C.      The Gatalog Principals .......................................................9

                1.      Matthew Larosiere ..................................................9

                2.      John Elik ............................................................12

                3.      Alexander Holladay...............................................14

                4.      Peter Celentano....................................................17

                5.      Josh Kiel Stroke...................................................18

                6.      John Lettman ......................................................20

                7.      The Gatalog Foundation.........................................22

                8.      MAF Corp. .........................................................23

        D.      DEFCAD Distributes 3D Gun Printing Files Legally. .......25

        E.      The Gatalog Competes with Defense Distributed Illegally. ...........26

                1.      The Gatalog Violates Federal ITAR regulations. ...................27

                2.      The Gatalog Violates Federal EAR regulations.....................30

3.  The Gatalog Defames and Disparages Defense Distributed. 32

4.  The Gatalog Commits Harassment and Extortion. ...............36

5.  The Gatalog Threatens Murder. .............................................39

6.  The Gatalog Uses Cyberattacks. ............................................41

F.  Joint and Several Liability. ..................................................41

G.  Damages & Irreparable Harm .............................................42

III.  Causes of Action. ...........................................................................43

A.  Civil RICO Claims. ..............................................................43

B.  Lanham Act Claims .............................................................47

C.  Computer Fraud and Abuse Act Claims ............................50

D.  Digital Millennium Copyright Act Claims. .........................53

E.  Tortious Interference Claims ..............................................55

F.  Trade Libel Claims..............................................................58

G.  Florida DUTPA Claims .......................................................61

H.  Spoliation Claims................................................................65

IV.  Prayer for Relief..............................................................................71

Answer.......................................................................................................74

I.  Denials & Admissions. ................................................................74

II.  Defenses. .....................................................................................77

III.    Attorney's Fees & Costs. .............................................................78

IV.    Prayer for Relief .......................................................................80

In response to Plaintiff Larosiere's First Amended Complaint, Doc. 43, and subject to their motion to dismiss, Doc. 48, Defendants Cody Rutledge Wilson, DEFCAD, Inc., Defense Distributed, and Dioskouroi LLC plead this answer with counterclaims and third-party claims.

## Counterclaims / Third-Party Claims

1.      This is no run-of-the-mill Copyright Act dispute, as Plaintiff Matthew Larosiere wants it to seem.  At issue is a full-fledged criminal racketeering enterprise called "The Gatalog," run by Larosiere and associated principals, that profits by dealing illegally in the digital firearms information that Defense Distributed handles legally.

2.      Defense Distributed's initial pleading recognized that The Gatalog is a black-market operator in the worst sense, achieving its illegal ends with dangerously illegal means of criminal wire fraud, money laundering, extortion, and even threatened murder, stealing business from Defense Distributed—the only firm serious enough to do the work legally—and distorting an otherwise thriving and compliance market in digital firearms information.

3.      **Just days after Defense Distributed filed its original pleading, UnitedHealthcare CEO Brian Thompson's killer used 3D-printed weaponry (a pistol and suppressor)** *that The Gatalog provided 3D printing files for in violation of the Commerce Department's EAR regime (the pistol) and the State Department's ITAR regime (the suppressor)*.  While at first The Gatalog members' social media posts foolishly touted The Gatalog's role in this tragedy,

they soon thought better and pivoted to a full-scale coverup.  Pertinent internet accounts are being deleted left and right by the very same individuals that Defense Distributed originally accused of spoliation.

4.      Hence Defense Distributed's case against The Gatalog and its key principals.  By bringing the instant claims, Defense Distributed seeks not just to be compensated for all of The Gatalog's past economic harms, but to put a definitive end to this illegal racketeering enterprise before more terrible crimes occur.

**I.      Subject Matter Jurisdiction & Venue**

5.      28 U.S.C. § 1331 gives the Court original federal question jurisdiction over this action because it arises under the laws of the United States.

6.      28 U.S.C. § 1332 gives the Court original diversity jurisdiction over this action because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

7.      28 U.S.C. § 1331 gives the Court original federal question jurisdiction over this action because its claims arise under federal laws, including the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961 et seq.) and Lanham Act.

8.      28 U.S.C. § 1367 supplies the Court with supplemental subject-matter jurisdiction over the action's state law claims because the state law claims are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. The action's state law claims do not raise novel or complex state law

issues. The action's state law claims do not substantially predominate over the claim or claims the district court has original jurisdiction over.

9.     This Court constitutes a proper venue for this action because it is brought under 18 U.S.C. § 1964(c) and is a district where one of The Gatalog resides, is found, has an agent, or transacts his affairs. *See* 18 U.S.C. § 1965(a) ("Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.").

10.     This Court constitutes a proper venue for this action because a substantial part of the events or omissions giving rise to the claims occurred here. *See* 28 U.S.C. § 1391(e)(1)(B).

11.     This Court constitutes a proper venue for this action because a substantial part of the property that is subject to the action is situated here. *See* 28 U.S.C. § 1391(b)(2).

## II.    Facts.

### A.    Defense Distributed

12.     Defcad, Inc. is a private business corporation organized under the laws of the State of Texas. Its headquarters and principal place of business are now and at all relevant times in the past have been in Austin, Texas. Defcad, Inc. is a subsidiary of Defense Distributed.

13.     Defense Distributed as a counterplaintiff brings this pleading's claims against Matthew Larosiere as a counterdefendant.

14.     Defense Distributed as a third-party plaintiff brings this pleading's claims against The Gatalog, John Elik, Alexander Holladay, Peter Celentano, Josh Kiel Stroke, John Lettman, The Gatalog Foundation, and MAF Corp. as third-party defendants.

15.     Defense Distributed claims on its own behalf and on behalf of Defcad, Inc..[1]

**B.     The Gatalog**

16.     "The Gatalog" refers to Third-Party Defendant The Gatalog

17.     "The Gatalog" is an unincorporated association under the laws of the State of Florida with the capacity to be sued.

18.     The Gatalog's principal place of business is Florida.

19.     The Gatalog can be reached for service of process in Florida.

20.     This Court has general personal jurisdiction over The Gatalog because The Gatalog resides and is domiciled in the State of Florida.

21.     This Court has specific personal jurisdiction over The Gatalog because this action arises out of and relates to conduct by which The Gatalog

---

[1] At all times relevant to this action, Defense Distributed and Defcad, Inc. constituted fully distinct legal persons with separate legal rights and obligations. But solely with respect to this action's claims, and without prejudice to the rights and obligations of any other context, Defense Distributed claims on its behalf and on behalf of Defcad, Inc. because the two entities operated as a single integrated business enterprise that suffered collective injuries harming all their shared economic interests.  Defense Distributed and Defcad, Inc. expressly reserve and do not waive their rights to assert their distinct corporate identities in other legal or regulatory contexts, including but not limited to taxation and corporate governance matters

purposefully availed itself of the privilege of conducting activities within the State of Florida.

22.    The Gatalog is an enterprise comprised of individuals who agreed to and did cooperate to further The Gatalog's objectives regarding the development, distribution, and administration of 3D printable gun files.    The individuals so comprising The Gatalog are referred to as "The Gatalog Principals."

### C.    The Gatalog Principals

#### 1.    Matthew Larosiere

23.    Matthew Larosiere is an individual resident of Florida.

24.    Larosiere has been served and has appeared in this action.

25.    This Court has personal jurisdiction over Larosiere.  General personal jurisdiction exists because he resides in the State of Florida.  Specific personal jurisdiction exists because this action arises out of and relates to conduct by which Larosiere purposefully availed himself of the privilege of conducting activities within the State of Florida.

26.    Larosiere is one of the "Gatalog Principals" who knowingly agreed to and did in fact substantially further The Gatalog's objectives regarding the development, distribution, and administration of 3D printable gun files.

27.    In particular, Larosiere is responsible for The Gatalog's past and current publication, administration, and maintenance of content regarding 3D printable gun files primarily at thegatalog.com, Odysee.com, an active Rocketchat

server hosted at chat.deterrencedispensed.com, and the "Fuddbusters" Discord server.

28.     Larosiere is also responsible for The Gatalog's past and current publication, administration, and maintenance of content regarding 3D printable gun files at deterrencedispensed.com, gatalog.com, maf-arms.com, and ctrlpew.com.

29.     Larosiere sometimes goes by the alias "Fuddbuster."

30.     On behalf of The Gatalog and in pursuit of The Gatalog's objectives, Larosiere engaged in the following additional actions that give rise to Defense Distributed's claims:

    a.  Larosiere exercised primary control over The Gatalog's Odysee.com page.

    b.  Larosiere served as administrator of The Gatalog's chat service.

    c.  Larosiere employed and/or partnered with Elik for all affairs regarding The Gatalog.

    d.  Larosiere formed The Gatalog Foundation with Elik and Holladay.

    e.  Larosiere served as director of The Gatalog Foundation.

    f.  Larosiere served as director of MAF Corp.

    g.  Larosiere "has the pleasure of representing The Gatalog and The Gatalog Foundation in all matters related to intellectual property."[2]

---

[2] Declaration of Erin Galloway in Opposition to Defendants' Motion to Dismiss and Refuting Certain Statements Made in Defendants' Declarations, Doc. 126 at 4, ¶ 17 *Everytown for Gun Safety Action Fund, Inc. v. DEFCAD, Inc. et al*, No. 21-cv-08704-PGG (S.D.N.Y).

h. Larosiere controls and implements The Gatalog's policies on compliance with the United States Department of State's "International Trafficking in Arms Regulations."

i. Larosiere controls and implements The Gatalog's policies regarding compliance with the United States Department of Commerce's Export Administration Regulations.

j. On October 23, 2023, Larosiere contacted the CTO of DEFCAD "on behalf of Ivan" to demand the takedown of every Gatalog file. However, none of these were yet patented or registered with the U.S. Copyright Office.  When DEFCAD ignored this request, since it was by text message and not a recognizable DMCA or other legal notice, Elik and Larosiere began to make fraudulent applications to register certain 3D models, manuals, and illustrations with the U.S. Copyright Office. At least five of the seven files at issue in Larosiere's complaint are designed by and publicly attributed to John Elik as "Ivan the Troll," who Larosiere sometimes claims in his copyright applications is his employee, and sometimes claims is a pseudonym for himself.

31.    On or before December 16, 2024, Larosiere and Third-Party Defendant John Elik agreed to have Larosiere represent Elik with respect to this action and serve as his counsel of record.

11

32.    On or before December 16, 2024, Larosiere and Third-Party Defendant Josh Stroke agreed to have Larosiere represent Stroke with respect to this action and serve as his counsel of record.

33.    On or before December 16, 2024, Larosiere and Third-Party Defendant John Lettman agreed to have Larosiere represent Lettman with respect to this action and serve as his counsel of record.

### 2.    John Elik

34.    John Elik is an individual resident of Illinois.

35.    Elik has been served and has appeared in this action.

36.    The Court has specific personal jurisdiction over Elik because this action arises out of and relates to conduct by which Elik purposefully availed himself of the privilege of conducting activities within the State of Florida.

37.    Elik sometimes goes by the alias "Ivan the Troll" and/or the alias "NaviGoBoom."

38.    Elik is a former employee of Defense Distributed.

39.    Elik is a digital firearms designer identified by *The New York Times* for collaborating with German citizen Jacob Duygu, aka JStark ("JStark"), on a revision to a famous and popular printable firearm design known as the FGC-9.

40.    Elik knows how both the ITAR and EAR regimes apply to the works in question because Cody Wilson thoroughly explained both systems to Elik when Elik worked with Defense Distributed.

41.    Elik is one of the "Gatalog Principals" that knowingly agreed to and did in fact substantially further The Gatalog's objectives regarding the development, distribution, and administration of 3D printable gun files.

42.    In particular, Elik is responsible for The Gatalog's past and current publication, administration, and maintenance of content regarding 3D printable gun files primarily at thegatalog.com, Odysee.com, an active Rocketchat server hosted at chat.deterrencedispensed.com, and the "Fuddbusters" Discord server.

43.    Elik is also responsible for The Gatalog's past and current publication, administration, and maintenance of content regarding 3D printable gun files at deterrencedispensed.com, gatalog.com, maf-arms.com, and ctrlpew.com.

44.    On behalf of The Gatalog and in pursuit of The Gatalog's objectives, Elik engaged in the following additional actions that give rise to Defense Distributed's claims:

    a.    Elik controls and implements The Gatalog's policies on compliance with the United States Department of State's "International Trafficking in Arms Regulations."

    b.    Elik controls and implements The Gatalog's policies on compliance with the United States Department of Commerce's "Export Administration Regulations."

    c.    Elik served as Matthew Larosiere's employee and/or business partner for all affairs regarding The Gatalog.

    d.    Elik formed The Gatalog Foundation with Larosiere and Holladay.

e.  Elik served as director of The Gatalog Foundation.

f.  Elik exercised primary control over The Gatalog's Odysee.com page.

g.  Elik served an administrator of The Gatalog enterprise's chat service and has administrative access to its Odysee page, where he directs, facilitates, and oversees the unrestricted exchange of technical data

h.  In May 2021, Elik sent one or more Bitcoin transactions to a crypto address at a German Coinbase account associated with Jacob Duygu, aka JStark, in violation of Title 18, United States Code, Section 1956 (money laundering). When Duygu uploaded his identity documents to Coinbase to verify this account and receive the funds from Elik, he was identified to European authorities through the filing of a mandated suspicious activity report (SAR).

45.    Elik was recently exposed by *The New York Times* for having violated the federal export laws at issue here.

### 3.    Alexander Holladay

46.    Alexander Holladay is an individual resident of Florida.

47.    Holladay was served with Defense Distributed's original answer and counterclaims on December 17, 2024.

48.    This Court has general personal jurisdiction over Holladay because he resides in the State of Florida.

49.    This Court has specific personal jurisdiction over Holladay because this action arises out of and relates to conduct by which Holladay purposefully availed himself of the privilege of conducting activities within the State of Florida.

50.    Holladay is one of the "Gatalog Principals" that knowingly agreed to and did in fact substantially further The Gatalog's objectives regarding the development, distribution, and administration of 3D printable gun files.

51.    In particular, Holladay is responsible for The Gatalog's past and current publication, administration, and maintenance of content regarding 3D printable gun files primarily at thegatalog.com, Odysee.com, an active Rocketchat server hosted at chat.deterrencedispensed.com, and the "Fuddbusters" Discord server.

52.    Holladay is also responsible for The Gatalog's past and current publication, administration, and maintenance of content regarding 3D printable gun files at deterrencedispensed.com, gatalog.com, maf-arms.com, and ctrlpew.com.

53.    On behalf of The Gatalog and in pursuit of The Gatalog's objectives, Holladay engaged in the following additional actions that give rise to Defense Distributed's claims:

    a.  Holladay served as director of The Gatalog Foundation and MAF Corp.

    b.  Holladay formed The Gatalog Foundation with Larosiere and Elik.

    c.  Holladay served as an employee of and partner of Larosiere in matters regarding The Gatalog.

d. Holladay served as an employee of and partner of Elik in matters regarding The Gatalog.

e. Holladay owned thegatalog.com website.

f. Holladay served as an administrator of The Gatalog enterprise's chat service and held administrative access to its Odysee page, where he facilitated and oversees the unrestricted exchange of technical data.

g. Holladay managed the enterprise's business communications, product fulfillment, and money transmitting.

h. Holladay managed The Gatalog's product fulfillment and commercial support issues and is the enterprise's official cashier, paying out bounties and "royalties."

i. Holladay maintains a complete record of the public and private communications between the enterprise's executives, members, and third-party commercial partners.

j. Holladay maintains a complete record of payments and file transfers to foreign developers.

54.    Holladay knows how both the ITAR and EAR regimes apply to the works in question because Cody Wilson thoroughly explained both systems to Holladay when Holladay worked with Defense Distributed.

### 4.    Peter Celentano

55.    Peter Celentano is an individual resident of New York.

56.    Celentano can be reached for service of process at the Niagara County Jail.

57.    This Court has specific personal jurisdiction over Celentano because this action arises out of and relates to conduct by which Celentano purposefully availed himself of the privilege of conducting activities within the State of Florida

58.    Celentano is one of the "Gatalog Principals" that knowingly agreed to and did in fact substantially further The Gatalog's objectives regarding the development, distribution, and administration of 3D printable gun files..

59.    In particular, Celentano is responsible for The Gatalog's past and current publication, administration, and maintenance of content regarding 3D printable gun files primarily at thegatalog.com, Odysee.com, an active Rocketchat server hosted at chat.deterrencedispensed.com, and the "Fuddbusters" Discord server.

60.    Celentano is also responsible for The Gatalog's past and current publication, administration, and maintenance of content regarding 3D printable gun files at deterrencedispensed.com, gatalog.com, maf-arms.com, and ctrlpew.com.

61.    On behalf of The Gatalog and in pursuit of The Gatalog's objectives, Celentano engaged in the following additional actions that give rise to Defense Distributed's claims:

17

a. Celentano served an administrator of The Gatalog, with access to its chat and direct message histories.

b. Celentano performed work on The Gatalog enterprise's activities and received compensated by MAF Corp. for it

c. Celentano spent years administering the "beta rooms" of many Gatalog projects, where he facilitated and oversaw the unrestricted exchange of technical data, especially that of projects of foreign developers, in violation of federal export law and in furtherance of the enterprise.

d. Celentano advertised his role with The Gatalog at chat.deterrencedispensed.com, a subdomain of The Gatalog web page.

62.    Celentano was recently arrested for federal firearms offenses and is being detained without bond in the Western District of New York.

### 5.    Josh Kiel Stroke

63.    Josh Stroke is an individual resident of Arizona.

64.    Stroke has been served and has appeared in this action.

65.    This Court has specific personal jurisdiction over Stroke because this action arises out of and relates to conduct by which Stroke purposefully availed himself of the privilege of conducting activities within the State of Florida.

66.    Stroke is one of the "Gatalog Principals" that knowingly agreed to and did in fact substantially further The Gatalog's objectives regarding the development, distribution, and administration of 3D printable gun files.

67.    In particular, Stroke is responsible for The Gatalog's past and current publication, administration, and maintenance of content regarding 3D printable gun files primarily at thegatalog.com, Odysee.com, an active Rocketchat server hosted at chat.deterrencedispensed.com, and the "Fuddbusters" Discord server.

68.    Stroke is also responsible for The Gatalog's past and current publication, administration, and maintenance of content regarding 3D printable gun files at deterrencedispensed.com, gatalog.com, maf-arms.com, and ctrlpew.com.

69.    On behalf of The Gatalog and in pursuit of The Gatalog's objectives, Stroke engaged in the following additional actions that give rise to Defense Distributed's claims:

a.  Stroke served as an agent of MAF Corp.

b.  Stroke acted as The Gatalog enterprise's "Chief of Propaganda" since 2022.

c.  Stroke promoted The Gatalog as an enterprise on social media.

d.  Stroke promoted MAF and sites like thegatalog.com and ctrlpew.com in commerce according to a normal e-commerce calendar.

e.  Stroke harassed and harasses DEFCAD and its employees.  The harassment was so frequent and violent that DEFCAD had to secure

a workplace harassment injunction against him in Arizona's Maricopa County Superior Court, which he is still violating.

    f. Stroke committed the extortion and threats of violence described below in II.E.4.

### 6. John Lettman

70. John Lettman is an individual resident of Pennsylvania.

71. Lettman has been served and has appeared in this action.

72. This Court has specific personal jurisdiction over Lettman because this action arises out of and relates to conduct by which Lettman purposefully availed himself of the privilege of conducting activities within the State of Florida.

73. Lettman is one of the "Gatalog Principals" that knowingly agreed to and did in fact substantially further The Gatalog's objectives regarding the development, distribution, and administration of 3D printable gun files.

74. In particular, Lettman is responsible for The Gatalog's past and current publication, administration, and maintenance of content regarding 3D printable gun files primarily at thegatalog.com, Odysee.com, and an active Rocketchat server hosted at chat.deterrencedispensed.com.

75. Lettman is also responsible for The Gatalog's past and current publication, administration, and maintenance of content regarding 3D printable gun files at deterrencedispensed.com, gatalog.com, maf-arms.com, and ctrlpew.com.

76.     On behalf of The Gatalog and in pursuit of The Gatalog's objectives, Lettman engaged in the following additional actions that give rise to Defense Distributed's claims:

a. Lettman served as a business partner of Holliday in affairs regarding The Gatalog.

b. Lettman served as The Gatalog enterprise's IT Director and a systems administrator since at least 2022.

c. Lettman collaborated with Celentano until Celentano's arrest

d. Lettman maintains access to The Gatalog's complete chat and direct message histories.

e. Lettman spent years facilitating and overseeing The Gatalog's unrestricted exchange of technical data, especially that of projects of foreign developers.

f. Lettman executed and organized cyberattacks against the DEFCAD platform under the direction of Elik and Larosiere.

g. Lettman knowingly and intentionally used an Iranian reverse proxy in an attempt to access federally controlled technical data on DEFCAD by defeating its geofencing and other standard export controls (all of which exceeded the authorization set by DEFCAD's Terms of Service.).

### 7.    The Gatalog Foundation

77.    The Gatalog Foundation is a nonprofit corporation organized under Florida law that maintains a principal place of business there.

78.    The Gatalog Foundation was served by email (with the agreement of its attorney) with Defense Distributed's original answer and counterclaims on December 17, 2024.

79.    This Court has general personal jurisdiction over The Gatalog Foundation because The Gatalog Foundation resides and is domiciled in the State of Florida.

80.    The Court has specific personal jurisdiction over The Gatalog Foundation because this action arises out of and relates to conduct by which The Gatalog Foundation purposefully availed itself of the privilege of conducting activities within the State of Florida.

81.    The Gatalog's primary agent is Matt Larosiere, 6824 Hanging Moss Rd., Orlando, FL 32807.

82.    Larosiere, Elik, and Holladay formed The Gatalog Foundation in 2021.

83.    Larosiere, Elik, and Holladay are The Gatalog Foundation's only officers and directors.

84.    The Gatalog Foundation is closely related to Larosiere and Holladay's MAF Corp and models the leadership of the current Gatalog enterprise,

85.    The Gatalog Foundation is one of the "Gatalog Principals" that knowingly agreed to and did, in fact, substantially further The Gatalog's objectives

regarding the development, distribution, and administration of 3D printable gun files.

86.     In particular, The Gatalog Foundation is responsible for The Gatalog's past and current publication, administration, and maintenance of content regarding 3D printable gun files primarily at thegatalog.com, Odysee.com, and an active Rocketchat server hosted at chat.deterrencedispensed.com, as well as at deterrencedispensed.com, gatalog.com, maf-arms.com, and ctrlpew.com.

87.     On behalf of The Gatalog and in pursuit of The Gatalog's objectives, Celentano engaged in the following other actions that give rise to Defense Distributed's claims:

    a. The Gatalog Foundation used Larosiere, Elik, and Holladay as officers, directors, and/or employees to manage The Gatalog.

    b. The Gatalog Foundation ratified the unlawful conduct of Larosiere, Elik, and Holladay by continuing to use and compensate these individuals despite their knowledge of the illegal activities and the harm caused to Defense Distributed.

### 8.     MAF Corp.

88.     MAF Corp. is a corporation organized under Florida law that maintains a principal place of business there.

89.     MAF Corp. was served by email (with the agreement of its attorney) with Defense Distributed's original answer and counterclaims on December 17, 2024.

90.     This Court has general personal jurisdiction over MAF Corp because MAF Corp. resides and is domiciled in the State of Florida.

91.     This Court has specific personal jurisdiction over MAF Corp because this action arises out of and relates to conduct by which MAF Corp. purposefully availed itself of the privilege of conducting activities within the State of Florida.

92.     MAF Corp.'s officers and directors are Larosiere and Holladay.

93.     MAF Corp. is one of the "Gatalog Principals" that knowingly agreed to and did, in fact, substantially further The Gatalog's objectives regarding the development, distribution, and administration of 3D printable gun files.

94.     In particular, MAF Corp. is responsible for The Gatalog's past and current publication, administration, and maintenance of content regarding 3D printable gun files primarily at thegatalog.com, Odysee.com, and an active Rocketchat server hosted at chat.deterrencedispensed.com, as well as at deterrencedispensed.com, gatalog.com, maf-arms.com, and ctrlpew.com.

95.     On behalf of The Gatalog and in pursuit of The Gatalog's objectives, MAF Corp. engaged in the following other actions that give rise to Defense Distributed's claims:

   a. MAF Corp. maintains the maf-arms.com website.

   b. At maf-arms.com, MAF Corp. monetizes the files released by The Gatalog by selling their related parts kits and compensates the files' domestic and international developers with development incentives and royalties.

   c.  At maf-arms.com, MAF Corp. tries to monopolize this practice through false advertising and fraudulent copyright applications.

   d.  MAF Corp sponsors Larosiere and Elik's YouTube show "This Week in Guns," and its products are promoted in concert with The Gatalog's false advertising targeting DEFCAD.

   e.  MAF Corp. used Larosiere, Elik, and Holladay as officers, directors, and/or employees to manage The Gatalog.

   f.  MAF Corp. ratified the unlawful conduct of Larosiere, Elik, and Holladay by continuing to use and compensate these individuals despite their knowledge of the illegal activities and the harm caused to Defense Distributed.

**D.    DEFCAD Distributes 3D Gun Printing Files Legally.**

96.    "DEFCAD" is the website hosted at defcad.com.

97.    Legal responsibility for DEFCAD has always belonged to Defense Distributed and its subsidiary, Defcad, Inc. DEFCAD was, is, and will remain Defense Distributed's primary (though not exclusive) content platform.

98.    DEFCAD serves as a web portal, search engine, and development hub for digital firearms information.  It focuses on the needs of designers and hobbyists who handle 3D printable and other CAD models regarding firearms.

99.    DEFCAD operates in compliance with all applicable federal and state laws governing its development and distribution of digital firearms information.

100.   DEFCAD operates in compliance with the United States Department of Commerce's "EAR" regime—the system of "Export Administration Regulations" administered by the Department's Bureau of Industry and Security under the Arms Export Control Act of 1976.

101.   DEFCAD operates in compliance with the United States Department of State's "ITAR" regime—the system of "International Traffic in Arms Regulations" administered by the Department's Directorate of Defense Trade Controls under the Arms Export Control Act of 1976.

DEFCAD operates in compliance with certain state laws being challenged in litigation, such as New Jersey Statute 2C:39-9(*l*)(2).

**E.    The Gatalog Competes with Defense Distributed Illegally.**

102.   The Gatalog's main function is to administer, facilitate, and monetize the development, distribution, and administration of 3D printable gun files.  In this respect, it competes directly with Defense Distributed.

103.   To perform these functions, The Gatalog operates through a network of websites, chat platforms, and social media accounts, each of which is controlled by one or more of The Gatalog Principals.

104.   The Gatalog's main channels for this activity are thegatalog.com, Odysee.com, the "Fuddbusters" Discord server, and a Rocketchat server hosted at chat.deterrencedispensed.com.   It also has carried out these functions at deterrencedispensed.com, gatalog.com, maf-arms.com, and ctrlpew.com.

105.   The Gatalog directs its patrons to buy accessories and parts kits associated with its files at maf-arms.com and ctrlpew.com.

106.   The Gatalog offers money transfers and financial incentives to developers at ctrlpew.com.

107.   MAF Corp. serves as one of The Gatalog's de facto banks for all this activity, paying Elik, Larosiere, Holladay, Celentano, Stroke, and others.

108.   The Gatalog, acting by and through The Gatalog Principals, has engaged in and is engaging in a "pattern of racketeering activity" as defined 18 U.S.C. § 1961(5) because it has committed at least two predicates within the last 10 years that demonstrate the existence or threat of continued criminal activity, including the following.

### 1.    The Gatalog Violates Federal ITAR regulations.

109.   The Gatalog deems the State Department's ITAR regulations inapplicable to The Gatalog's development, distribution, and administration of 3D printable gun files.   It takes this position knowingly and intentionally, after full opportunity for consideration of all available legal and factual resources.

110.   Because of that view, The Gatalog does not now have an ITAR-compliance export license or permission, never had one, and does not intend to obtain one.

111.   The Gatalog advertises this view as a feature of its work and services.

112.   The Gatalog's position regarding the State Department's ITAR regulations is wrong.  For years, it has been engaging in wire fraud indictable under

18 U.S.C. § 1343 by using interstate wire communications to violate the International Traffic in Arms Regulations, 22 C.F.R. Parts 120-130 ("the ITAR"), and its originating statute, the Arms Export Control Act of 1976.

113.   In particular, The Gatalog carries out its enterprise by violating the ITAR regulations codified at 22 C.F.R. § 127.1(a)(1), which make it unlawful to "export or attempt to export from the United States any defense article or technical data or to furnish or attempt to furnish any defense service for which a license or written approval is required" without such a license."  22 C.F.R. § 127.1(a)(1). Specific violations occurring within the last ten years include the following:

a.  The Gatalog used the Rocketchat server hosted at chat.deterrencedispensed.com and the "Fuddbusters" Discord server to facilitate the unrestricted transfer of ITAR-controlled technical data *to foreign developers*.  It hosted private, invite-only chat rooms that directly coordinated transfers of ITAR-controlled technical data and money to foreign developers of 3D printable gun files like "Ze Carioca," who lives in Brazil.

b.  The administrators and "beta managers" of The Gatalog Rocketchat at chat.deterrencedispensed.com serve under the direction of The Gatalog "leadership"[3] and promote the illegal production of NFA items

---

[3] That The Gatalog entails a distinct "leadership" is admitted by The Gatalog own public admissions.  *See, e.g.*, Deterrence Dispensed, *Product Development Lifecycle* (2024) ("product and documentation also undergoes a subjective review with Gatalog leadership"), *available at*

like machine guns and silencers, in violation 18 U.S.C. § 922 and 933 and the ITAR regulations.

c. On November 1, 2024, The Gatalog illegally published the files for the "Rogue 9," a publication that, because it contains file packs for semi-automatic and automatic receivers, violates both the EAR and ITAR simultaneously.

d. Since at least 2021, as recorded in their voluminous public and private chat records, The Gatalog has been devoted to the repeated illegal transmission of defense-related technical data to agents of the armed wing of the National Unity Government of Myanmar, better known as The People's Defence Force. File transfers or requests to the PDF are openly facilitated in the public and private chat rooms administered by The Gatalog "for the people in Myanmar fighting for their freedom." These transfers are acknowledged and approved by administrators, like Holladay, in public and private messages.

114.    In each of these respects, The Gatalog acted with the intent to promote violations of ITAR, knowing that the transfers would facilitate the illegal distribution of export-controlled firearm data. Elik, in particular, acknowledged the

---

https://gitlab.deterrencedispensed.com/deterrence-dispensed/information-and-tutorials/-/wikis/For-Developers/Process-Management/Product-Development-Lifecycle.

risk of prosecution but stated that he and Larosiere would not face consequences, demonstrating a willful disregard for federal law.

### 2.    The Gatalog Violates Federal EAR regulations.

115.   The Gatalog deems the Commerce Department's EAR regulations inapplicable to The Gatalog's development, distribution, and administration of 3D printable gun files.  It takes this position knowingly and intentionally, after full opportunity for consideration of all available legal and factual resources.

116.   Because of that view, The Gatalog does not now have an EAR-compliant license or permission, never had one, and will never obtain one.

117.   The Gatalog advertises this view as a feature of its work and services.

118.   The Gatalog's position regarding the Commerce Department's EAR regulations is wrong.  For years, it has been engaging in wire fraud indictable under 18 U.S.C. § 1343 by using interstate wire communications to violate the International Traffic in Arms Regulations, 22 C.F.R. Parts 120-130 ("the ITAR"), and its originating statute, the Arms Export Control Act of 1976.

119.   In particular, The Gatalog engaged in wire fraud indictable under 18 U.S.C. § 1343 when it used interstate wire communications to distribute—without any significant screening or restriction—"technology" or "software" that the Department of Commerce has determined meets the criteria of 15 C.F.R. § 734.7(c).  Specificlast ten years include the following:

   a.   The Gatalog has repeatedly posted on the internet without restriction files that the Department of Commerce deems covered by § 734.7(c)

because they are ready for insertion into a computer numerically controlled machine tool, additive manufacturing equipment, or any other equipment that makes use of the software or technology to produce the firearm frame or receiver or complete firearm.

b. The Gatalog has repeatedly posted on the internet without restriction files that the Department of Commerce deems covered by § 734.7(c) because they can be processed by a software program into an electronic format, such as a CAM file, with no or minimal additional information or manipulation from the operator(s), and that the file once converted will be in an executable code for the production of a firearm frame or receiver or complete firearm.

c. On November 1, 2024, The Gatalog illegally published the files for the "Rogue 9," a publication that, because it contains file packs for semi-automatic and automatic receivers, violates both the EAR and ITAR simultaneously.

120. In each of these respects, The Gatalog acted with the intent to promote violations of EAR, knowing that the transfers would facilitate the illegal distribution of export-controlled firearm data. Elik in particular acknowledged the risk of prosecution but stated that he and Larosiere would not face consequences, demonstrating a willful disregard for federal law.

### 3.    The Gatalog Defames and Disparages Defense Distributed.

121.    The Gatalog engaged in wire fraud indictable under 18 U.S.C. § 1343 when it devised and executed a scheme to defame and falsely disparage DEFCAD's business practices.

122.    In particular, The Gatalog engaged in defamation and false disparagement by publishing and encourag republication of the defamatory "FEDCAD" meme, knowing it contained false information about Defense Distributed intended to deceive the public.

    a.    In May 2023, Elik on behalf of The Gatalog began calling Defense Distributed's website "FEDCAD," falsely alleging that Defense Distributed's database had been hacked and dumped multiple times and that Defense Distributed cooperates with gun control organizations and the federal government to identify its users.

    b.    Elik, Larosiere, Holladay, and Celentano employed Stroke as their "Chief of Propaganda" to focus on promoting the FEDCAD trade libel and to tortiously interfere with DEFCAD creator partners as a way of advertising The Gatalog enterprise and MAF Corp in commerce.

    c.    On May 15, 2023, Elik on behalf of The Gatalog and with the assistance of Larosiere, Holladay, and Celentano, began circulating a meme version of the  "FEDCAD" claims.

d. Despite its key accusations being false, this meme has become a popular infographic and has been reposted hundreds, if not thousands, of times.

e. The Gatalog's FEDCAD meme is used commercially by The Gatalog to direct customers to thegatalog.com.

f. On May 15, 2023, Elik on behalf of The Gatalog again claimed the DEFCAD database had been hacked and dumped by one of "our guys."

g. Since at least late 2022, Elik has repeatedly directed and solicited others to hack, and falsely and maliciously report that others have hacked, the DEFCAD website, against its terms of service and the CFAA.

h. DEFCAD has, at great expense, retained multiple security firms to investigate The Gatalog's claimed and attempted hacks, leaks, and DDoS attacks, and to evaluate whether customer or developer information was ever "dumped" online. Reports from Mandiant confirm such leaks have never happened and that Elik's claims were made with knowledge and malice.

i. A review of open source records shows that the only time John Elik's information was leaked online was from a hack of Twitter.com, where Elik prefers to conduct his false advertising.

j.  The Gatalog's other false and malicious claims from the FEDCAD meme are that DEFCAD does not encrypt or securely store its data, that it has "doxxed developer information to anti-gunners," and that it attempted to "blackmail" Elik with his personal information to support the *Everytown* lawsuit.

k.  On December 30, 2023 -- Holladay posted the FEDCAD meme in his ctrlpew.com "quick start guide."  *See* ctrlpew.com, *Getting Started Guide 0 – How to Start 3D Printing Quickly* (March 1, 2024), *available at* [https://ctrlpew.com/getting-started-0-how-to-start-3d-printing-quickly/](https://ctrlpew.com/getting-started-0-how-to-start-3d-printing-quickly/)

123.  The Gatalog enterprise's trade libel against DEFCAD has been so consistent and successful that by the time Larosiere filed his action on September 6, 2024, the lawsuit was publicly received as the "FEDCAD lawsuit," and proponents of the action advocated that 3D gun enthusiasts "thank and support Fuddbusters and MAF [Corp]" for their work.

124.  The Gatalog also defamed and falsely disparaged Defense Distributed in September 2022 with false statements supposedly explaining why Elik and other Gatalog files were no longer being uploaded to DEFCAD.

a.  In September 2022, Elik on behalf of The Gatalog published injurious false statements supposed explaining why Defense Distributed refused to work with him.

b.  In September 2022, Elik on behalf of The Gatalog published injurious false statements saying that DEFCAD was not actually fighting the lawsuit brought by Everytown, but was instead choosing to work with Everytown to "doxx" developers; and that Defense Distributed told him he'd get a cut of Defense Distributed's profits that never materialized.

c.  Later, Elik on behalf of The Gatalog published injurious false statements saying that Defense Distributed threatened him with his own doxxing if he did not pay $100,000 to cover the expenses of the *Everytown* case, to protect Peter Celentano's identity, or to pay DEFCAD's debts.

d.  Elik deleted these posts on social media the day Larosiere filed suit,

125.  In May 2023, Elik on behalf of the Gatalog publicly called on Defense Distributed's customers to chargeback for fraud and said all developers should "bully" those who still use DEFCAD.

126.  In October 2023, The Gatalog acted in concert to promote the lie about DEFCAD's database being dumped and circulated a doctored image purported to be from DEFCAD's Twitter account. The post garnered 100k views and many disgusted replies.

127.  In August 2024, Elik on behalf of The Gatalog maliciously and falsely advertised that DEFCAD is simply making up its legal positions and compliance measures regarding the ITAR and EAR regulations for profit.

128.   In September 2024, Holladay on behalf of The Gatalog advertised that a recent round of EAR regulatory changes had "no impact" on The Gatalog.

### 4.    The Gatalog Commits Harassment and Extortion.

129.   The Gatalog competes with Defense Distributed by engaging in extortion indictable under 18 U.S.C. § 1951.

130.   Specifically, it did so by using threats of economic harm and public disparagement to coerce payments from Defense Distributed, intending to interfere with its business operations and extract financial gain unlawfully.

a.   On April 29th, 2021, and at points thereafter, Elik informed Wilson on behalf of Holladay and the rest of Deterrence Dispensed that Defense Distributed would have to pay their group more if it wanted to continue hosting their files unrestricted and for free at DEFCAD. Wilson declined to pay Elik additional money without an agreed-upon contract, and he reminded Elik that the Deterrence Dispensed files were already published unlicensed or open source and that he had no right to demand their removal, especially on anyone else's behalf.  Elik responded that if Defense Distributed did not pay him or his international collaborator Jacob Duygu, aka JStark, then he (Elik) would direct everyone he knew who used the DEFCAD site to chargeback their credit cards to damage or terminate Defense Distributed's merchant account relationships.

b. Their threats of orchestrated chargebacks posed a direct threat to DEFCAD's financial stability, given that the fraudulent chargebacks could result in the suspension or termination of DEFCAD's merchant accounts, disrupting its ability to process payments and operate its business effectively.

c. The Gatalog intended to use the threats as leverage to extract payments.

131.   Larosiere and Elik on behalf of The Gatalog continue to employ Stroke as their "top lieutenant" through MAF Corp, compensating him for his reposting and disseminating the FEDCAD trade libel, for his tortious interference with DEFCAD's customers and contributors, and for his harassment of DEFCAD's employees.

a. In August 2024, Stroke brazenly began a public campaign to interfere with DEFCAD's partners and file contributors. He harasses DEFCAD developers fully in the open, as he did with user "Unseenkiller" in September 2024. "I gave fair warning" I would do this, warns Stroke in September 2024. After being served as a part of this action, Stroke declared "bullshit legal demands will not stop me."

b. Since Larosiere filed his action in September, Stroke has only increased this tortious activity and has successfully bullied DEFCAD's top file producer and uploader, LaffsDynamics, off the platform from fear of economic losses.

c. LaffsDynamics privately admitted to a DEFCAD administrator on September 3, 2024, that the public and private coercion from Stroke was becoming too much for him.

d. After being served with a litigation hold letter for this case on September 20th, Stroke threatened LaffsDynamics and others enough that on September 22, LaffsDynamics disclaimed over six hundred files and his entire monthly partner payment.

e. Since September 27, Laffs has not used the site and has returned no communications from DEFCAD administrators.

f. On October 18, 2024, DEFCAD was forced to secure a workplace harassment injunction against Stroke in Maricopa County Superior Court, which Stroke continues to violate to this day.

g. Even after being served with an injunction against his commercial harassment, Stroke repeated his threats of physical harm, false advertising, and public coercion, most recently against DEFCAD contributors like user "Durbanpoisonpew."

h. As of November 6, Stroke is awaiting a show cause hearing for his contempt of the court's order in Arizona. Stroke's extreme and disordered behavior in service to The Gatalog enterprise is extortionate conduct chargeable under Florida state law. Not satisfied with illegal competition and false advertising against the DEFCAD platform, The Gatalog and The Gatalog Principals simply make direct

threats against DEFCAD's users and partners to realize their commercial advantage.

### 5.    The Gatalog Threatens Murder.

132.    The Gatalog competes with Defense Distributed engaged in threats involving a crime of violence, including murder, by making direct and explicit threats against Cody Wilson, CEO of Defense Distributed, intending to instill fear and intimidate him into ceasing his lawful business activities.

133.    On November 7, 2024, a Gatalog member, acting as an agent of the enterprise, sent a message to Cody Wilson via his DEFCAD account that contained a direct and explicit threat of physical violence entailing murder. The message stated: "Cody, you realize there's a bounty on your head, right? To clarify I didn't put it out and I'm not gonna claim it, I just wanna let you know that it's shit like this that is the reason you have a bounty on you. Have fun sleeping tonight with this information…."

134.    The Gatalog member's reference to a "bounty on your head" is an explicit indication of a credible threat of violence, suggesting that Cody Wilson is being targeted for a potential act of physical harm. The language used in the message was calculated to instill fear, implying that others are actively seeking to harm Wilson and that his safety is at risk.

135.    The message was sent with the clear intent to intimidate Cody Wilson and disrupt his business activities at DEFCAD and Defense Distributed. By stating, "Have fun sleeping tonight with this information," The Gatalog member sought to

cause psychological distress and instill fear of imminent harm. This conduct constitutes a crime of violence because it involves the threatened use of physical force against a specific individual.

136.   The threat made against Cody Wilson was not an isolated act but part of a broader pattern of intimidation tactics employed by The Gatalog enterprise.

137.   The Gatalog enterprise has engaged in similar acts of intimidation and harassment against individuals associated with Defense Distributed, including coordinated campaigns of online harassment, doxxing, and threats of legal action. The threat made on November 7, 2024, is part of this ongoing pattern of racketeering activity designed to instill fear and force Defense Distributed to cease its lawful activities.

138.   This threat also qualifies as a violent crime in aid of racketeering activity that is indictable under 18 U.S.C. § 1959, which criminalizes anyone who "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do."  18 U.S.C. § 1959.

### 6.    The Gatalog Uses Cyberattacks.

139.   The Gatalog employs its own IT Director, Lettman, to hack and implement Distributed Denial of Service (DDoS) attacks against DEFCAD's servers in violation of 18 U.S.C. § 1030(a)(5)(A).

140.   Since at least late 2022, Elik on behalf of The Gatalog has repeatedly directed and solicited others to hack, and falsely and maliciously report that others have hacked, the DEFCAD website, against its terms of service and the CFAA.

141.   When Cody Wilson published his "Black Flag White Paper," The Gatalog began a series of DDoS attacks against the website to censor its message. The Gatalog has executed at least four serious DDoS events since May 24, 2024, and they continue to this day.

142.   Lettman claims credit for some of the most recent attacks.

143.   After Larosiere filed his action, Lettman on behalf of The Gatalog hacked the website of Defendants' counsel David Gringras.  Lettman then advertised to Gingras that he had done this with the approval of Larosiere and Elik.

### F.    Joint and Several Liability.

144.   Larosiere, Elik, Holladay, Celentano, Stroke, Lettman, The Gatalog Foundation, and MAF Corp. are jointly and severally responsible for the activities of The Gatalog for each of the following reasons, which are borne out in detail by the Part III.C allegations above:

      a.  They conducted or participated, directly or indirectly, in the conduct of The Gatalog's affairs through a pattern of racketeering activity.

b. They operated as a single, unified business enterprise with common ownership, control, and decision-making authority that interchangeably and commingled assets and resources to further their shared unlawful objectives.

c. They shared personnel, jointly operated websites, and online platforms, using their combined resources to engage in The Gatalog's dissemination of digital firearms files.

d. They acted in concert and with a shared purpose to interfere with Defense Distributed's business and profit from their activities.

### G.   Damages & Irreparable Harm

145.   The wrongdoing of The Gatalog and The Gatalog Principals has caused and continues to cause Defense Distributed to suffer substantial, quantifiable financial damages.  Accounting just for June 2023 to present, financial accountings of these damages show lost profits amounting to at least $385,000.

146.   Additionally wrongdoing of The Gatalog and The Gatalog Principals has caused and continues to cause substantial harm that is irreparable and incapable of monetary quantification, including, but not limited to, damaged market reputation and goodwill, disruption of business relationships, and lost competitive advantages.

147.   The Gatalog's continued pattern of wrongful conduct poses an ongoing threat of future harm that is difficult to predict or calculate. Without

injunctive relief, Defense Distributed faces the prospect of repeated disruptions, further damage to their business, and an escalating risk of irreparable harm.

## III.  Causes of Action.

### A.  Civil RICO Claims.

#### 1.  Count 1: Civil RICO claim against The Gatalog.

148.  The Gatalog is liable to Defense Distributed because The Gatalog violated the civil RICO statute making it "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce," 18 U.S.C. § 1962(b), and thereby injured Defense Distributed's business.

149.  The Gatalog constitutes a "person" within the meaning of 18 U.S.C. § 1962(b) because The Gatalog itself and each of its constituent members— Larosiere, Elik, Holladay, Celentano, Stroke, Lettman, The Gatalog Foundation, and MAF Corp.—are capable of holding a legal or beneficial interest in property.

150.  The Gatalog constitutes an "enterprise" within the meaning of 18 U.S.C. § 1961(4), because its activities result from the coordinated and intentional association in fact of Larosiere, Elik, Holladay, Celentano, Stroke, Lettman, The Gatalog Foundation, and MAF Corp.

151.  The Gatalog's pattern of racketeering activity included in particular the following:

   a.  Violating federal ITAR regulations as specified in Part III.E.1 above.

43

b. Violating federal EAR regulations as specified in Part III.E.2 above.

c. Defaming and disparaging Defense Distributed as specified in Part III.E.3 above.

d. Harassing and extorting Defense Distributed as specified in Part III.E.4 above.

e. Threatening murder as specified in Part III.E.5 above.

f. Utilizing cyberattacks against Defense Distributed as specified in Part III.E.6 above.

152. The Gatalog's activities, when viewed in the aggregate, affected interstate commerce within the meaning of 18 U.S.C. § 1962 in the following ways:

a. The Gatalog used substantial amounts of digital communications that cross state lines.

b. The Gatalog used substantial amounts of financial services that transfer money across cross state lines.

c. The Gatalog substantially impacted the flow of firearm and firearm-related goods between states.

d. The Gatalog's activities targeted Defense Distributed, which is engaged in interstate commerce and impacts markets.

153. Defense Distributed incorporates the Part III allegations above.

**2.     Count 2: Civil RICO claim against Matthew Larosiere.**

154. Matthew Larosiere is liable—both directly and jointly and severally—for having violated the RICO statute making it "unlawful for any person through a

pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce," 18 U.S.C. § 1962(b), and thereby injuring Defense Distributed's business.

155.   Defense Distributed incorporates the Part III allegations above.

### 3.   Count 3: Civil RICO claim against John Elik.

156.   John Elik is liable—both directly and jointly and severally—for having violated the RICO statute making it "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce," 18 U.S.C. § 1962(b), and thereby injuring Defense Distributed's business.

157.   Defense Distributed incorporates the Part III allegations above.

### 4.   Count 4: Civil RICO claim against Alexander Holliday.

158.   Alexander Holliday is liable—both directly and jointly and severally—for having violated the RICO statute making it "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce," 18 U.S.C. § 1962(b), and thereby injuring Defense Distributed's business.

159.   Defense Distributed incorporates the Part III allegations above.

**5.      Count 5: Civil RICO claim against Josh Stroke.**

160.   Josh Stroke is liable—both directly and jointly and severally—for having violated the RICO statute making it "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce," 18 U.S.C. § 1962(b), and thereby injuring Defense Distributed's business.

161.   Defense Distributed incorporates the Part III allegations above.

**6.      Count 6: Civil RICO claim against John Lettman.**

162.   John Lettman is liable—both directly and jointly and severally—for having violated the RICO statute making it "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce," 18 U.S.C. § 1962(b), and thereby injuring Defense Distributed's business.

163.   Defense Distributed incorporates the Part III allegations above.

**7.      Count 7: Civil RICO claim against The Gatalog Foundation.**

164.   The Gatalog Foundation is liable—both directly and jointly and severally—for having violated the RICO statute making it "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the

activities of which affect, interstate or foreign commerce," 18 U.S.C. § 1962(b), and thereby injuring Defense Distributed's business.

165.   Defense Distributed incorporates the Part III allegations above.

### 8.   Count 8: Civil RICO claim against MAF Corp.

166.   MAF Corp. is liable—both directly and jointly and severally—for having violated the RICO statute making it "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce," 18 U.S.C. § 1962(b), and thereby injuring Defense Distributed's business.

167.   Defense Distributed incorporates the Part III allegations above.

### B.   Lanham Act Claims

### 1.   Count 9: Lanham Act claim against The Gatalog.

168.   The Gatalog is liable to Defense Distributed for having substantially injured Defense Distributed by knowingly engaging in false and misleading advertising and unfair competition in violation of 15 U.S.C. § 1125(a), including in particular the following:

   a.  Violating federal ITAR regulations as specified in Part III.E.1 above.

   b.  Violating federal EAR regulations as specified in Part III.E.2 above.

   c.  Defaming and disparaging Defense Distributed as specified in Part III.E.3 above.

  d. Harassing and extorting Defense Distributed as specified in Part III.E.4 above.

  e. Utilizing cyberattacks against Defense Distributed as specified in Part III.E.6 above.

169. Defense Distributed incorporates the Part III allegations above.

  **2. Count 10: Lanham Act claim against Matthew Larosiere.**

170. Matthew Larosiere is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's Lanham Act violations because of his role as a Gatalog Principal.

171. Independently, Larosiere is directly liable for the damages caused by his own acts of false advertising and/or unfair competition pleaded in Part III above.

172. Defense Distributed incorporates the Part III allegations above.

  **3. Count 11: Lanham Act claim against John Elik.**

173. John Elik is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's Lanham Act violations because of his role as a Gatalog Principal.

174. Independently, Elik is directly liable for the damages caused by his own acts of false advertising and/or unfair competition pleaded in Part III above.

175. Defense Distributed incorporates by reference what has already been pleaded above at Part I, II.A, II.B., and V,

### 4.    Count 12: Lanham Act claim against Alexander Holladay

176.    Alexander Holladay is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's Lanham Act violations because of his role as a Gatalog Principal.

177.    Independently, Holladay is directly liable for the damages caused by his own acts of false advertising and/or unfair competition pleaded in Part III above.

178.    Defense Distributed incorporates the Part III allegations above.

### 5.    Count 13: Lanham Act claim against Josh Stroke

179.    Josh Stroke is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's Lanham Act violations because of his role as a Gatalog Principal.

180.    Independently, Stroke is directly liable for the damages caused by his own acts of false advertising and/or unfair competition pleaded in Part III above.

181.    Defense Distributed incorporates the Part III allegations above.

### 6.    Count 14: Lanham Act claim against John Lettman.

182.    John Lettman is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's Lanham Act violations because of his role as a Gatalog Principal.

183.    Independently, Lettman is directly liable for the damages caused by his own acts of false advertising and/or unfair competition pleaded in Part III above.

184.    Defense Distributed incorporates the Part III allegations above.

### 7. Count 15: Lanham Act claim against The Gatalog Foundation.

185.  The Gatalog Foundation is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's Lanham Act violations because of his role as a Gatalog Principal.

186.  Independently, The Gatalog Foundation is directly liable for the damages caused by its own acts of false advertising and/or unfair competition pleaded in Part III above.

187.  Defense Distributed incorporates the Part III allegations above.

### 8. Count 16: Lanham Act claim against MAF Corp.

188.  MAF Corp.is is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's Lanham Act violations because of his role as a Gatalog Principal.

189.  Independently, The Gatalog Foundation is directly liable for the damages caused by its own acts of false advertising and/or unfair competition pleaded in Part III above.

190.  Defense Distributed incorporates the Part III allegations above.

### C. Computer Fraud and Abuse Act Claims

### 1. Count 17: CFAA claim against The Gatalog.

191.  The Gatalog is liable to Defense Distributed under the under the Computer Fraud and Abuse Act because it intentionally accessed DEFCAD's servers without authorization on multiple occasions. Specifically:

a. The Gatalog executed DDoS attacks against DEFCAD's platform, disrupting its services and causing significant operational downtime.

b. The Gatalog continues to use and access DEFCAD even though its terms of service bar the enterprise and its agents from doing so.

192. The total damages resulting from The Gatalog' violations of the CFAA exceed the $5,000 threshold required under 18 U.S.C. § 1030(c)(4)(A)(i)(I).

193. Defense Distributed incorporates the Part III allegations above.

### 2. Count 18: CFAA claim against Matthew Larosiere.

194. Matthew Larosiere is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's Computer Fraud and Abuse Act violations because of his role as a Gatalog Principal.

195. Independently, he is directly liable for the damages caused by his own CFAA violations pleaded in Part III above.

196. Defense Distributed incorporates the Part III allegations above.

### 3. Count 19: CFAA claim against John Elik.

197. John Elik is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's Computer Fraud and Abuse Act violations because of his role as a Gatalog Principal.

198. Independently, he is directly liable for the damages caused by his own CFAA violations pleaded in Part III above.

199. Defense Distributed incorporates the Part III allegations above.

### 4.    Count 20: CFAA claim against Alexander Holladay

200.   Alexander Holladay is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's Computer Fraud and Abuse Act violations because of his role as a Gatalog Principal.

201.   Independently, he is directly liable for the damages caused by his own CFAA violations pleaded in Part III above.

202.   Defense Distributed incorporates the Part III allegations above.

### 5.    Count 21: CFAA claim against Josh Stroke

203.   Josh Stroke is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's Computer Fraud and Abuse Act violations because of his role as a Gatalog Principal.

204.   Independently, he is directly liable for the damages caused by his own CFAA violations pleaded in Part III above.

205.   Defense Distributed incorporates the Part III allegations above.

### 6.    Count 22: CFAA claim against John Lettman.

206.   John Lettman is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's Computer Fraud and Abuse Act violations because of his role as a Gatalog Principal.

207.   Independently, he is directly liable for the damages caused by his own CFAA violations pleaded in Part III above.

208.   Defense Distributed incorporates the Part III allegations above.

**7.     Count 23: CFAA claim against The Gatalog Foundation.**

209.   The Gatalog Foundation is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's Computer Fraud and Abuse Act violations because of his role as a Gatalog Principal.

210.    Independently, it is directly liable for the damages caused by its own CFAA violations pleaded in Part III above.

211.   Defense Distributed incorporates the Part III allegations above.

**8.     Count 24: CFAA claim against MAF Corp.**

212.   MAF Corp. is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's Computer Fraud and Abuse Act violations because of his role as a Gatalog Principal.

213.    Independently, it is directly liable for the damages caused by his own CFAA violations pleaded in Part III above.

214.   Defense Distributed incorporates the Part III allegations above.

**D.     Digital Millennium Copyright Act Claims.**

**1.     Count 25: DMCA claim against The Gatalog.**

215.   The Gatalog is liable to Defense Distributed under the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512(f), for having knowingly and materially misrepresented copyright ownership of the 3D firearm files at issue in Plaintiff Larosiere's First Amended Complaint.

216.   Defense Distributed incorporates the Part III allegations above.

### 2.   Count 26: DMCA claim against Matthew Larosiere.

217.   Matthew Larosiere is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's DMCA violations because of his role as a Gatalog Principal.

218.   Independently, he is directly liable for the damages caused by his own DMCA violations pleaded in Part III above.

219.   Defense Distributed incorporates the Part III allegations above.

### 3.   Count 27: DMCA claim against John Elik.

220.   John Elik is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's DMCA violations because of his role as a Gatalog Principal.

221.   Defense Distributed incorporates the Part III allegations above.

### 4.   Count 28: DMCA claim against Alexander Holladay

222.   Alexander Holladay is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's DMCA violations because of his role as a Gatalog Principal.

223.   Defense Distributed incorporates the Part III allegations above.

### 5.   Count 29: DMCA claim against Josh Stroke

224.   Josh Stroke is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's DMCA violations because of his role as a Gatalog Principal.

225.   Defense Distributed incorporates the Part III allegations above.

**6.      Count 30: DMCA claim against John Lettman.**

226.   John Lettman is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's DMCA violations because of his role as a Gatalog Principal.

227.   Defense Distributed incorporates the Part III allegations above.

**7.      Count 31: DMCA claim against The Gatalog Foundation.**

228.   The Gatalog Foundation is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's DMCA violations because of his role as a Gatalog Principal.

229.   Defense Distributed incorporates the Part III allegations above.

**8.      Count 32: DMCA claim against MAF Corp.**

230.   MAF Corp. is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's DMCA violations because of his role as a Gatalog Principal.

231.   Defense Distributed incorporates the Part III allegations above.

**E.      Tortious Interference Claims**

**1.      Count 33: Tortious interference claim against The Gatalog.**

232.   The Gatalog is liable to Defense Distributed for tortious interference.

233.   Defense Distributed maintains ongoing business relationships with users, contributors, and commercial partners who rely on DEFCAD's platform for the legal distribution of digital firearms files. These relationships include contractual

agreements, long-term partnerships, and prospective business arrangements, all of which are essential to DEFCAD's operations and revenue generation.

234.   The Gatalog was fully aware of these business relationships, as several of The Gatalog Principals (including Elik and Holladay) were formerly associated with DEFCAD as paid agents and collaborators. This inside knowledge provided The Gatalog with detailed information about DEFCAD's user base, key contributors, and commercial partners.

235.   The Gatalog's wrongdoing intentionally interfered with Defense Distributed's business relationships, causing substantial economic damages.

236.   Defense Distributed incorporates the Part III allegations above.

### 2.    Count 34: Tortious interference claim against Matthew Larosiere.

237.   Matthew Larosiere is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's tortious interference because of his role as a Gatalog Principal.

238.    Independently, he is directly liable for the damages caused by his own tortious interference pleaded in Part III above.

239.   Defense Distributed incorporates the Part III allegations above.

### 3.    Count 35: Tortious interference claim against John Elik.

240.   John Elik is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's tortious interference because of his role as a Gatalog Principal.

241.  Independently, he is directly liable for the damages caused by his own tortious interference pleaded in Part III above.

242.  Defense Distributed incorporates the Part III allegations above.

### 4.    Count 36: Tortious interference claim against Alexander Holladay

243.  Alexander Holladay is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's tortious interference because of his role as a Gatalog Principal.

244.  Independently, he is directly liable for the damages caused by his own tortious interference pleaded in Part III above.

245.  Defense Distributed incorporates the Part III allegations above.

### 5.    Count 37: Tortious interference claim against Josh Stroke

246.  Josh Stroke is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's tortious interference because of his role as a Gatalog Principal.

247.  Independently, he is directly liable for the damages caused by his own tortious interference pleaded in Part III above.

248.  Defense Distributed incorporates the Part III allegations above.

### 6.    Count 38: Tortious interference claim against John Lettman.

249.  John Lettman is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's tortious interference because of his role as a Gatalog Principal.

250.   Independently, he is directly liable for the damages caused by his own tortious interference pleaded in Part III above.

251.   Defense Distributed incorporates the Part III allegations above.

### 7.   Count 39: Tortious interference claim against The Gatalog Foundation.

252.   The Gatalog Foundation is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's tortious interference because of his role as a Gatalog Principal.

253.   Independently, it is directly liable for the damages caused by its own tortious interference pleaded in Part III above.

254.   Defense Distributed incorporates the Part III allegations above.

### 8.   Count 40: Tortious interference claim against MAF Corp.

255.   MAF Corp. is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's tortious interference because of his role as a Gatalog Principal.

256.   Independently, it is directly liable for the damages caused by its own tortious interference pleaded in Part III above.

257.   Defense Distributed incorporates the Part III allegations above.

### F.   Trade Libel Claims

### 1.   Count 41: Trade libel claim against The Gatalog.

258.   The Gatalog is liable to Defense Distributed for trade libel because it knowingly and maliciously made many false and disparaging statements about

DEFCAD's business practices, causing direct and measurable pecuniary loss to Defense Distributed.

259.   Defense Distributed incorporates the Part III allegations above.

### 2.    Count 42: Trade libel claim against Matthew Larosiere.

260.   Matthew Larosiere is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's trade libel because of his role as a Gatalog Principal.

261.    Independently, he is directly liable for the damages caused by his own trade libel pleaded in Part III above.

262.   Defense Distributed incorporates the Part III allegations above.

### 3.    Count 43: Trade libel claim against John Elik.

263.   John Elik is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's trade libel because of his role as a Gatalog Principal.

264.    Independently, he is directly liable for the damages caused by his own trade libel pleaded in Part III above.

265.   Defense Distributed incorporates the Part III allegations above.

### 4.    Count 44: Trade libel claim against Alexander Holladay

266.   Alexander Holladay is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's trade libel because of his role as a Gatalog Principal.

267.    Independently, he is directly liable for the damages caused by his own trade libel pleaded in Part III above.

268.    Defense Distributed incorporates the Part III allegations above.

### 5.    Count 45: Trade libel claim against Josh Stroke

269.    Josh Stroke is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's trade libel because of his role as a Gatalog Principal.

270.    Independently, he is directly liable for the damages caused by his own trade libel pleaded in Part III above.

271.    Defense Distributed incorporates the Part III allegations above.

### 6.    Count 46: Trade libel claim against John Lettman.

272.    John Lettman is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's trade libel because of his role as a Gatalog Principal.

273.    Independently, he is directly liable for the damages caused by his own trade libel pleaded in Part III above.

274.    Defense Distributed incorporates the Part III allegations above.

### 7.    Count 47: Trade libel claim against The Gatalog Foundation.

275.    The Gatalog Foundation is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's trade libel because of his role as a Gatalog Principal.

60

276.    Independently, it is directly liable for the damages caused by its own trade libel pleaded in Part III above.

277.    Defense Distributed incorporates the Part III allegations above.

### 8.    Count 48: Trade libel claim against MAF Corp.

278.    MAF Corp. is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's trade libel because of his role as a Gatalog Principal.

279.    Independently, it is directly liable for the damages caused by its own trade libel pleaded in Part III above.

280.    Defense Distributed incorporates the Part III allegations above.

### G.    Florida DUTPA Claims

### 1.    Count 49: Florida DUTPA claim against The Gatalog.

281.    The Gatalog is liable to Defense Distributed under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204, which prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).  The statute broadly defines "deceptive acts" as practices likely to mislead a consumer acting reasonably, while "unfair practices" are those that offend established public policy or are unethical, oppressive, unscrupulous, or substantially injurious to consumers.  It is violated here because The Gatalog engaged in a pattern of deceptive and unfair business practices that have caused

substantial harm to Defense Distributed's business operations, reputation, and economic interests, including in particular the following:

    a.  Violating federal ITAR regulations as specified in Part III.E.1 above.

    b.  Violating federal EAR regulations as specified in Part III.E.2 above.

    c.  Defaming and disparaging Defense Distributed as specified in Part III.E.3 above.

    d.  Harassing and extorting Defense Distributed as specified in Part III.E.4 above.

    e.  Threatening murder as specified in Part III.E.5 above.

    f.  Utilizing cyberattacks against Defense Distributed as specified in Part III.E.6 above.

282.  Defense Distributed incorporates the Part III allegations above.

## 2.    Count 50: Florida DUTPA claim against Matthew Larosiere.

283.  Matthew Larosiere is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's DUTPA violations because of his role as a Gatalog Principal.

284.  Independently, he is directly liable for the damages caused by his own DUPTA violations pleaded in Part III above.

285.  Defense Distributed incorporates the Part III allegations above.

### 3. Count 51: Florida DUTPA claim against John Elik.

286. John Elik is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's DUTPA violations because of his role as a Gatalog Principal.

287. Independently, he is directly liable for the damages caused by his own DUPTA violations pleaded in Part III above.

288. Defense Distributed incorporates the Part III allegations above.

### 4. Count 52: Florida DUTPA claim against Alexander Holladay

289. Alexander Holladay is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's DUTPA violations because of his role as a Gatalog Principal.

290. Independently, he is directly liable for the damages caused by his own DUPTA violations pleaded in Part III above.

291. Defense Distributed incorporates the Part III allegations above.

### 5. Count 53: Florida DUTPA claim against Josh Stroke

292. Josh Stroke is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's DUTPA violations because of his role as a Gatalog Principal.

293. Independently, he is directly liable for the damages caused by his own DUPTA violations pleaded in Part III above.

294. Defense Distributed incorporates the Part III allegations above.

**6.    Count 54: Florida DUTPA claim against John Lettman.**

295.   John Lettman is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's DUTPA violations because of his role as a Gatalog Principal.

296.   Independently, he is directly liable for the damages caused by his own DUPTA violations pleaded in Part III above.

297.   Defense Distributed incorporates the Part III allegations above.

**7.    Count 55: Florida DUTPA claim against The Gatalog Foundation.**

298.   The Gatalog Foundation is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's DUTPA violations because of his role as a Gatalog Principal.

299.   Independently, he is directly liable for the damages caused by his own DUPTA violations pleaded in Part III above.

300.   Defense Distributed incorporates the Part III allegations above.

**8.    Count 56: Trade libel claim against MAF Corp.**

301.   MAF Corp. is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's DUTPA violations because of his role as a Gatalog Principal.

302.   Independently, he is directly liable for the damages caused by his own DUPTA violations pleaded in Part III above.

303.   Defense Distributed incorporates the Part III allegations above.

### H.    Spoliation Claims

#### 1.    Count 57: Spoliation claim against The Gatalog.

304.   The Gatalog is liable to Defense Distributed for spoliation under the Federal Rules of Civil Procedure and Federal Rules of Evidence, *see Malautea v. Suzuki Motor Co. 987* F.2d 1536, 1543 (11th Cir. 1993), and under Florida law, *see, e.g.*, *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003).

305.   The Gatalog engaged in spoliation (and obstruction of justice indictable under 18 U.S.C. § 1503) by knowingly destroying records and communications related to their unlawful activities after receiving litigation hold notices from Defense Distributed, intending to impair the availability of evidence and obstruct the legal process.

306.   On September 19, 2024, Defense Distributed sent a litigation hold letter to Elik, Holladay, Celentano, Stroke, and MAF.

307.   Despite receiving the notice, Celentano—a key administrator of The Gatalog enterprise's Rocketchat server—deleted his entire chat history, social media accounts, and other communications related to the enterprise's activities. This deletion occurred within hours of receiving the litigation hold notice and with the knowledge of the other Gatalog Principals, demonstrating an intent to conceal evidence.

308. Elik and Larosiere further coordinated the destruction of digital records, instructing other members of The Gatalog enterprise to delete or hide incriminating messages and transaction logs.

309. On September 6, 2024, contemporaneously with Larosiere's public announcement of the filing of his copyright suit against Defense Distributed on Twitter, Elik deleted the entire four-year comment history of his Reddit account. Likewise, he locked his public Twitter account for nine hours and hid or deleted dozens of messages related to his DEFCAD/FEDCAD trade libel, his connections to The Gatalog, his calls to harm Defense Distributed, and his claims that federal export law does not apply to his or his organization's activity.

310. These actions were designed to impede Defense Distributed's ability to gather evidence and pursue its legal claims and to prevent law enforcement authorities from obtaining critical information about the enterprise's illegal conduct.

311. In private messages obtained from remaining records, Elik acknowledged the litigation hold notice and discussed with Larosiere the need to "clean up" the Rocketchat server and delete sensitive communications. Their coordinated efforts to destroy evidence demonstrate a clear intent to hinder the legal process and evade accountability.

312. On October 17th, after being served a litigation hold notice for this case the month prior, Celentano was taken into federal custody for the possession of at least 59 machine guns.

313.   On October 22, 2024, after Celentano's criminal complaint was unsealed in the Western District of New York, Stroke and Gatalog associate Joshua Meyers, aka RK Spookware, took to Reddit to confirm Celentano had deleted all of his records and communications with the enterprise in defiance of the litigation hold letter he received on September 20th. Meyers, who admitted to direct knowledge and assistance of Celentano's spoliation, was himself served with a records preservation letter on November 1.



314.   The destruction of critical records and communications has hindered Defense Distributed's ability to present a full and complete case.  It has also required Defense Distributed to pay for costly forensic efforts to recover deleted evidence and reconstruct The Gatalog' communications.

315.   The Gatalog deleted the beta room and the history of communications of the 200 beta testers of the FTN series of suppressors like that used in the killing of UnitedHealthcare CEO Brian Thompson.

316.   Defense Distributed incorporates the Part III allegations above and paragraph 3.

### 2.    Count 58: Spoliation claim against Matthew Larosiere.

317.   Matthew Larosiere is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's spoliation because of his role as a Gatalog Principal.

318.   Independently, he is directly liable for the spoliation pleaded in Part IV.H.1 above.

319.   Defense Distributed incorporates the Part III allegations above and paragraph 3.

### 3.    Count 59: Spoliation claim against John Elik.

320.   John Elik is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's spoliation because of his role as a Gatalog Principal.

321.   Independently, he is directly liable for the spoliation pleaded in Part IV.H.1 above.

322.   Defense Distributed incorporates the Part III allegations above and paragraph 3.

### 4. Count 60: Spoliation claim against Alexander Holladay

323.    Alexander Holladay is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's spoliation because of his role as a Gatalog Principal.

324.    Independently, he is directly liable for the spoliation pleaded in Part IV.H.1 above.

325.    Defense Distributed incorporates the Part III allegations above.

### 5. Count 61: Spoliation claim against Josh Stroke

326.    Josh Stroke is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's spoliation because of his role as a Gatalog Principal.

327.    Independently, he is directly liable for the spoliation pleaded in Part IV.H.1 above.

328.    Defense Distributed incorporates the Part III allegations above.

### 6. Count 62: Spoliation claim against John Lettman.

329.    John Lettman is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's spoliation because of his role as a Gatalog Principal.

330.    Independently, he is directly liable for the spoliation pleaded in Part IV.H.1 above.

331.    Defense Distributed incorporates the Part III allegations above.

**7.    Count 63: Spoliation claim against The Gatalog Foundation.**

332.    The Gatalog Foundation is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's spoliation because of his role as a Gatalog Principal.

333.    Independently, it is directly liable for the spoliation pleaded in Part IV.H.1 above.

334.    Defense Distributed incorporates the Part III allegations above.

**8.    Count 64: Spoliation claim against MAF Corp.**

335.    MAF Corp. is jointly and severally liable to Defense Distributed for the harm caused by The Gatalog's spoliation because of his role as a Gatalog Principal.

336.    Independently, it is directly liable for the spoliation pleaded in Part IV.H.1 above.

337.    Defense Distributed incorporates the Part III allegations above.

**IV.     Prayer for Relief**

338.   For Defense Distributed's claims against Matthew Larosiere, The Gatalog, John Elik, Alexander Holladay, Peter Celentano, Josh Kiel Stroke, John Lettman, The Gatalog Foundation, and MAF Corp., Defense Distributed seeks the following relief:

  a. A judgment for Defense Distributed and DEFCAD, Inc. and against The Gatalog and all of The Gatalog Principals (John Elik, Alexander Holladay, Peter Celentano, Josh Kiel Stroke, John Lettman, The Gatalog Foundation, and MAF Corp.) as to all causes of action pleaded in this counterclaim.

  b. Compensatory Damages: An award of actual damages in an amount to be determined at trial, but no less than the $385,000 in economic losses already calculated for June 2023 to present.

  c. Compensatory Damages: An award of treble damages under 18 U.S.C. § 1964(c) and 15 U.S.C. § 1117(a) in an amount to be determined at trial, but no less than $1,155,000 for June 2023 to present.

  d. Punitive Damages: An award of exemplary/punitive damages.

  e. Disgorgement: An order requiring disgorgement by The Gatalog and all of The Gatalog Principals (John Elik, Alexander Holladay, Peter Celentano, Josh Kiel Stroke, John Lettman, The Gatalog Foundation,

and MAF Corp.) and payment to Defense Distributed of all profits wrongfully obtained as a result of their unlawful activities.

f.  Injunctive Relief: An order enjoining The Gatalog and all of The Gatalog Principals (John Elik, Alexander Holladay, Peter Celentano, Josh Kiel Stroke, John Lettman, The Gatalog Foundation, and MAF Corp.) from continuing to commit the illegal actions established here.

g.  Injunctive Relief: An order enjoining The Gatalog and all of The Gatalog Principals (John Elik, Alexander Holladay, Peter Celentano, Josh Kiel Stroke, John Lettman, The Gatalog Foundation, and MAF Corp.) to issue corrective advertising about their false and misleading statements.

h.  Dissolution: An order dissolving The Gatalog and its affiliated entities or, alternatively, an order imposing reasonable restrictions on The Gatalog's future activities to prevent further unlawful conduct.

i.  Costs: An order that Defense Distributed recover from The Gatalog and all of The Gatalog Principals (John Elik, Alexander Holladay, Peter Celentano, Josh Kiel Stroke, John Lettman, The Gatalog Foundation, and MAF Corp.) all of Defense Distributed's costs.

j.  Attorney's Fees: An order that Defense Distributed recover from The Gatalog and all of The Gatalog Principals (John Elik, Alexander Holladay, Peter Celentano, Josh Kiel Stroke, John Lettman, The Gatalog Foundation, and MAF Corp.) an award of attorney's fees.

k.  Interest: An order that Defense Distributed recover from The Gatalog and all of The Gatalog Principals (John Elik, Alexander Holladay, Peter Celentano, Josh Kiel Stroke, John Lettman, The Gatalog Foundation, and MAF Corp.) prejudgment and postjudgment interest on all monetary damages, at the highest legal rate, from the earliest date allowable under law until the date of payment.

l.  Spoliation: An order that remedies the willful and bad faith spoliation of evidence by entering a default judgment on the merits against The Gatalog and all of The Gatalog Principals (John Elik, Alexander Holladay, Peter Celentano, Josh Kiel Stroke, John Lettman, The Gatalog Foundation, and MAF Corp.) or, alternatively, a lesser sanction.

m. Any other relief deemed just and proper.

**Answer**

## I.   **Denials & Admissions.**

339.   Defendants generally deny each and every allegation of Plaintiff Larosiere's First Amended Complaint except as otherwise specified herein.

340.   Defendants deny for lack of knowledge or information sufficient to form a belief about the truth of the allegations of paragraphs 105, 126, 127, 128, 129, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 145, 148, 151, 154, 162, 163, 164, 166, 167, 185, 187, 188, 192, 197, 200, 202, 203, 206, 207, 209, 214, 216, 217, 218, 219, 220, 221, 222, 226, 264, 268, 272, 276.

341.   Defendants admit paragraphs 23, 24, 25, 26, 32, 33, 36, 37, 39, 46, 47, 48, 49, 51, 52, 53, 54, 55, 57, 58, 59, 60, 61, 62, 64, 65, 66, 70, 73, 76, 91, 92, 97, 99, 168, 169, 170, 171, 174, 181, 185, 189, 190, 194, 198, 224, 280, 284, 286, 287, 288, 289, 290, 308, 321, 322, 326, 327, 328, 329, 330, and 331.

342.   Defendants admit paragraph 2 except for the assertion that "Plaintiff is the exclusive owner of all works at issue in this litigation," as to which Defendants lack knowledge or information sufficient to form a belief about the truth of.

343.   Defendants admit paragraph 3 except for the "web" description and assertion that "each of which is an alter ego of Defendant Wilson," which Defendants deny.

344.   Defendants admit paragraph 107 except for the assertion of an "infringement" and "unauthorized" reproduction/distribution, which Defendants deny.

345.    Defendants admit paragraph 110 except for the assertion of an "infringement" and "unauthorized" reproduction/distribution, which Defendants deny.

346.    Defendants admit paragraph 115 except for the assertion of an "infringement" and "unauthorized" reproduction/distribution, which Defendants deny.

347.    Defendants admit paragraph 118 except for the assertion of an "infringement" and "unauthorized" reproduction/distribution, which Defendants deny.

348.    Defendants admit paragraph 122 except for the assertion of an "infringement" and "unauthorized" reproduction/distribution, which Defendants deny.

349.    Defendants admit paragraph 124 except for the assertion of an "infringement" and "unauthorized" reproduction/distribution, which Defendants deny.

350.    Defendants admit paragraph 144 except for the assertion of an "infringement" and "unauthorized" reproduction/distribution, which Defendants deny.

351.    Defendants admit paragraph 147 except for the assertion of an "infringement" and "unauthorized" reproduction/distribution, which Defendants deny.

352. Defendants admit paragraph 150 except for the assertion of an "infringement" and "unauthorized" reproduction/distribution, which Defendants deny.

353. Defendants admit paragraph 153 except for the assertion of an "infringement" and "unauthorized" reproduction/distribution, which Defendants deny.

354. Defendants admit paragraph 156 except for the assertion of an "infringement" and "unauthorized" reproduction/distribution, which Defendants deny.

355. Defendants admit paragraph 160 except for the assertion of an "infringement" and "unauthorized" reproduction/distribution, which Defendants deny.

356. Defendants admit paragraph 191 except for the assertion of an "infringement" and "unauthorized" reproduction/distribution, which Defendants deny.

357. Defendants admit paragraph 196 except for the assertion of an "infringement" and "unauthorized" reproduction/distribution, which Defendants deny.

358. Defendants admit paragraph 211 except for the assertion of an "infringement" and "unauthorized" reproduction/distribution, which Defendants deny.

359.   Defendants admit paragraph 212 except for the assertion of an "infringement" and "unauthorized" reproduction/distribution, which Defendants deny.

360.   Defendants admit paragraph 213 except for the assertion of an "infringement" and "unauthorized" reproduction/distribution, which Defendants deny.

## II.    Defenses.

361.   Plaintiff Larosiere's Copyright Act claims are defeated by the defense of fair use under 11 U.S.C. § 107 because each of each Defendants' industry-supporting purpose for the works in question, because of the Defendants' good-faith belief in the legality of their prior use, because of the Defendants' transformative use of the works in question, and because of the positive effect of Defendants' use upon the potential market for the work.

362.   Each of Plaintiff Larosiere's claims are defeated by the defense of illegality because they arise from illegal conduct—the conduct shown to be actionable in each of the Defendants' counterclaims against Plaintiff Larosiere— and are therefore unenforceable as a matter of public policy.

363.   Each of Plaintiff Larosiere's claims are defeated by the defense of license because the United States federal government, in an exercise of its exclusive authority to administer the Arms Export Control Act of 1976, 22 U.S.C. ch. 22, and International Trafficking in Arms Regulations, 22 C.F.R. Parts 120-130, in 2018 entered into a Settlement Agreement with Defense Distributed and granted

Defense Distributed a federal license to publish the files in question without restriction.

### III.    Attorney's Fees & Costs.

364.    The Copyright Act in 17 U.S.C. § 505 entitles the Defendants to recover from Plaintiff Larosiere all of the Defendants' costs for the action, including attorney's fees.  *See* 17 U.S.C. § 505 ("In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.").

   a.   The Copyright Act in 17 U.S.C. § 505 applies to any civil action under Chapter 5 of the Copyright Act, 17 U.S.C. § 505, which the Complaint pleads this action to be, *see* Doc. 48.

   b.   The Copyright Act in 17 U.S.C. § 505 entitles each of the Defendants to an award of all of the action's costs, including attorney's fees, insofar as each Defendant will be a § 505 "prevailing party" and such an award will advance the interests of the Copyright Act.  *See*, *e.g.*, *MiTek Holdings, Inc. v. Arce Eng'g Co. 198* F.3d 840, 842 (11th Cir. 1999) ("The touchstone of attorney's fees under § 505 is whether imposition of attorney's fees will further the interests of the Copyright Act . . . ." (applying *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)).

   c.   Each of the Defendants will be a § 505 "prevailing party"

d. Such an award will advance the interests of the Copyright Act.

365.   The Lanham Act in 15 U.S.C. § 1117 entitles the Defendants to recover from Plaintiff Larosiere all of the Defendants' costs for the action, including attorney's fees.   *See* 15 U.S.C. ¶ 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.").

    a. The Lanham Act in 15 U.S.C. § 1117 applies to cases brought under the Lanham Act, 15 U.S.C. § 1117(a), which the Complaint pleads this action to be, *see* Doc. 48.

    b. The Lanham Act in 15 U.S.C. § 1117 entitles each of the Defendants to an award of all of the action's costs, including attorney's fees, insofar as each of the Defendants is a § 1117(a) prevailing party and the action entails § 1117(a) exceptional circumstances.

    c. Each of the Defendants will be a § 1117(a) "prevailing party."

    d. The action will entail § 1117(a) "exceptional circumstances" due to the Defendants' strength of legal position and manner of litigation.   *See, e.g.*, *Tobinick v. Novella*, 884 F.3d 1110 (11th Cir. 2018).

366.   Federal Rule of Civil Procedure 54 entitles the Defendants to recover from Plaintiff Larosiere all of the Defendants' costs for the action.   *See* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party.").

a.  Federal Rule of Civil Procedure 54 applies to all civil actions, *id.*, which the Complaint pleads this action to be, *see* Doc. 48 at 1, ¶ 1.

b.  Federal Rule of Civil Procedure 54 entitles each of the Defendants to an award of all of the action's costs, including every cost made recoverable by 28 U.S.C. §§ 1920 and 1921, insofar as each of Defendants becomes a Rule 54 "prevailing party."

c.  Each of the Defendants will be a Rule 54 "prevailing party."

## IV.    Prayer for Relief

367.  For Plaintiff Larosiere's claims against the Defendants, Defendants request the following relief:

a.  An order dismissing Plaintiff Larosiere's complaint against the Defendants or, alternatively, an order that Plaintiff Larosiere take nothing on any of his claims against the Defendants.

b.  An order that Defendants recover from Plaintiff Larosiere all of the Defendants' costs for the entire action.

c.  An order that the Defendants recover from Plaintiff Larosiere an award of attorney's fees for the entire action.

d.  Any other relief deemed just and proper.

Respectfully submitted,

Chad Flores
cf@chadflores.law
Texas Bar No. 24059759
Flores Law PLLC
917 Franklin Street
Suite 600
Houston, Texas 77002
T (713) 364-6640
F (832) 645-2496

David S. Gingras
david@gingraslaw.com
Arizona Bar No. 021097
California Bar No. 218793
Gingras Law Office PLLC
4802 E. Ray Rd. #23-271
Phoenix, Arizona 85044
T (480) 264-1400
F (480) 248-3196

F. Andino Reynal
areynal@frlaw.us
Texas Bar No. 24060482
The Reynal Law Firm, PC
917 Franklin Street
6th Floor
Houston, Texas 77002
T (713) 228-5900
F (713) 820-6981

Counsel for Cody Wilson, DEFCAD, Inc.,
Defense Distributed, and Dioskouroi LLC