UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №: 6:24-cv-01629

MATTHEW LAROSIERE,

                *Plaintiff*,

v.

CODY RUTLEDGE WILSON, DEFCAD, Inc., DEFENSE DISTRIBUTED, and DIOSKOUROI LLC,

                *Defendants*.

_____/

### PLAINTIFF MATTHEW LAROSIERE'S MOTION FOR PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Plaintiff Matthew Larosiere, by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 65(a) and Local Rule 6.02, respectfully moves that this Honorable Court preliminarily enjoin and restrain Cody Rutledge Wilson, DEFCAD Inc., DEFENSE DISTRIBUTED, DIOSKOUROI LLC, and their directors, principals, officers, agents, representatives, servants, attorneys, successors and assigns (collectively, "Defendants"), from:

1. Imitating, copying, reproducing, or making any other infringing use or infringing distribution of the photographs, models, and literary works covered by the Certificate of Copyright Numbers VA0002381513, TX0009358088, VA0002385899, VA0002381769, TX0009403056, TX0009413646, VA0002412508, VA0002422527,


VA0002385901, TX0009372199, TX0009372196, TX0009412695, VA0002418947, VA0002418589, TX0009429254, TX0009429253 (collectively, the "Copyrighted Works")[1];

2. Assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any item bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of the Copyrighted Works;

3. Using any false designation of origin, providing false descriptions of the qualities or characteristics, or using graphic images of any element of any of the Copyright Works, which can or is likely to lead the trade or public or individuals erroneously to believe that any product or service or work of Defendant has been assembled, produced, distributed, offered for distribution, circulated, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for Plaintiff;

4. Engaging in any other activity constituting an infringement of the Copyrighted Works.

5. Additionally, that this court enter an order that restrains Defendants' assets (or otherwise places them in escrow) so that Plaintiff's right to an equitable accounting of Defendants' profits from their infringing activity is not impaired.

In support of this motion, Plaintiff states as follows:

---

[1] The specific works covered by these registrations are detailed in Plaintiff's First Amended Complaint (Doc. 43, p. 14-36).

## **MEMORANDUM OF POINTS AND AUTHORITIES**
## **INTRODUCTION AND SUMMARY OF ARGUMENTS**

Plaintiff Matthew Larosiere is a member of the firearms industry. He works and has worked providing expert services, legal services, design work, and has authored many articles and guides relating to multiple facets of the firearms industry. For years, Plaintiff has engaged in the design and development of firearms technologies, and produces pictorial, written, and visual art works related to his advocacy. The need for a preliminary injunction is best contextualized against the timeline of events relevant to this action:

1. December 10, 2023: Plaintiff first discovered Defendants' infringements. Shortly thereafter, while preparing to bring this action, Plaintiff registered his works with the copyright office. (Doc. 43, ¶ 132-146).

2. On January 31, 2024, Defendant Wilson registered or caused to be registered the web domain "fedcad.com," detailed below. (Doc. 43 at ¶ 178).

3. Before May 23, 2024, Defendants, through Defendant Wilson, published a manifesto admitting to removing the copyright notices from the Copyrighted Works, and admitted that Plaintiff's works were copyrightable. (Doc. 43 ¶ 169-178). In addition to describing himself therein as a pirate, Defendant Wilson complained at length in his manifesto that individuals were asserting copyright against him. (Doc. 43 at ¶ 173)

4. Before May 23, 2024, Defendant Wilson published or caused to be published a website: "FedCAD - Federal Copyrighted Arms Database" (the "FedCAD Website") which purported to track arms-related copyright registrations. At the time of first publication, the FedCAD Website referenced at

3

least nine of Plaintiff's copyright registrations, which were then actively being infringed by Defendants.

5. Before August 2, 2024,[2] Defendants, though Defendant Wilson, knew that Plaintiff's works were registered. Because Defendants expected this lawsuit, Defendant Wilson began attempting to frustrate Plaintiff's ability to recover.

6. On August 10, 2024, Defendant Wilson—a Texas resident with no privity to Plaintiff—filed a complaint with the Florida bar[3] (the "Bar Complaint"). The Bar Complaint, the allegations of which were centered around Plaintiff's enforcement of copyright, was designed to give Defendant Wilson an unfair advantage in a copyright suit he anticipated. The Florida Bar, after carefully reviewing Defendant Wilson's allegations, found that Plaintiff Larosiere did not engage in unethical conduct. The Bar Complaint and its related documents are attached hereto as Exhibit M.

7. On September 6, 2024, Plaintiff first filed this action.

8. On September 8, 2024, Plaintiff realized that Defendants had begun reproducing and distributing *more* of Plaintiff's Copyrighted Works.

9. On September 9, 2024, Defendant Wilson, through Defcad, attempted to conceal his removal of copyright notices from one of Plaintiff's Copyrighted Works.

---

[2] That Defendants knew of the registration is evinced by Defendant Wilson's posting of the certificate of registration for one of Plaintiff's copyrighted works to his website on August 2, 2024. *Archived at*: https://web.archive.org/web/20241231074301/https://defcad.com/library/sf5-step-master-application-for-copyright-registration/
[3] *See* Doc. 43 Para. 17-30.

10. On or about September 20, 2024, Defendant Wilson began serving litigation hold notices on Plaintiff's personal friends in an attempt to harass and frustrate Plaintiff.

11. On October 10, 2024, Defendant Wilson, through Defcad, infringed yet another one of Plaintiff's Copyrighted Works, this time claiming it to be the work of someone else, and advertising it as having been dedicated to the public domain. (Doc. 43 ¶ 250-259).

12. On October 18, 2024, Defendant Wilson caused his employee, Garrett Walliman, who resides in Arizona, to file an injunction against workplace harassment on behalf of Defcad against Plaintiff's personal friend Joshua Stroke in Stroke's home state of Arizona, despite Stroke never having worked for Defcad and Defcad having no business premises in Arizona.

13. On November 19, 2024, Defendants filed a wild-eyed, one-hundred-and-nine-page answer and counterclaim, joining 9 counterdefendants, including Plaintiff's aforementioned personal friends, in a legally deficient shotgun pleading.

14. On December 27, 2024, after Defendants were faced with a motion to dismiss the counterclaims as a shotgun pleading, Defendant Defcad filed an amended *sixty-four-count* shotgun countercomplaint, containing even less factual support than the previous filing, and inexplicably invoking the recent shooting death of UnitedHealth CEO Brian Thompson.

15. On December 30, 2024, Defendant Wilson, through Defcad, sent out a newsletter stating that "the next legal development in th[e UnitedHealth CEO

shooting] saga has become the civil prosecution of The Gatalog", linking to his own website[4] hosting the 64-count amended shotgun pleading, which refers to Orlando as "a Florida backwater". In the newsletter, Wilson writes that a "Florida federal court has just become the nation's instrument for discovering the details, the identities, and the even greater mysteries of America's 3D2A underground."

Two major factors contribute to the particular necessity of a preliminary injunction here: Defendants' continued intentionally infringing conduct, and the nature of that conduct. The fact that Defendants have made *additional* infringements of Plaintiff's Copyrighted Works during the pendency of this action alone creates irreparable harm, as Plaintiff would be unable to secure relief if required to continually await new registration certificates for each new work infringed by Defendants. Furthermore, that Defendants now encourage third party infringement by representing Plaintiff's work as committed to the public domain threatens to dilute Plaintiff's copyright interests.

## **ARGUMENT**

Rule 65(a) of the Federal Rules of Civil Procedure and § 502 of the Copyright Act give this Court specific authority to issue an injunction to prevent further infringement of Plaintiff's Copyrights. Fed. R. Civ. P. 65(a); 17 U.S.C. §502. Defendants, without authorization, copied Plaintiff's registered works of authorship and promoted, advertised, and sold the works over the internet, including into the Middle District of Florida. Good

---

[4] *Archived at* https://web.archive.org/web/20241229142404/https://defcad.com/library/defense-distributed-v-the-gatalog-matthew-larosiere-john-elik-et-al/

cause exists for the injunction, in part because "Injunctive relief [is] particularly appropriate in cases involving simple copying or 'piracy' of a copyrighted work." *Venus Fashions, Inc. v. ContextLogic, Inc.*, No. 3:16-CV-907-J-39MCR, 2017 WL 2901695, at *1 (M.D. Fla. Jan. 17, 2017) (quoting *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001); *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 578 n. 10 (1994)).

To prevail on this motion, Plaintiff must demonstrate: "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002). In considering a motion for preliminary injunctive relief, "a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (internal quotation marks and citation omitted).

## I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF THE COPYRIGHT INFRINGEMENT CLAIMS

Plaintiff must satisfy two requirements to establish direct copyright infringement; 1) he must show ownership of the allegedly infringed material; and (2) he must demonstrate that the alleged infringer violated at least one exclusive right granted to him as copyright holder, under 17 U.S.C. § 106. *See* 17 U.S.C. § 501(a) (infringement occurs when the alleged infringer engages in an activity listed in § 106).

7

### A.  PLAINTIFF OWNS THE INFRINGED MATERIAL

Copies of Plaintiff's certificates of registration are attached hereto as Exhibit A. These registrations serve as *prima facie* evidence of validity and ownership. 17 U.S.C. § 410(c). The Declaration of Matthew Larosiere is attached hereto as Exhibit B. (hereinafter "Larosiere Dec."). Additionally, the Declaration of John Elik is attached hereto as Exhibit C. (hereinafter "Elik Dec."). True and correct representations of the infringed works are attached hereto as exhibits C through L, each referencing its registration number, confirmed by the Larosiere Dec. (Larosiere Dec. ¶ 14).

### B.  DEFENDANTS COPIED PLAINTIFF'S COPYRIGHTED WORKS

Copying must be established by a preponderance of the evidence. *Herwitz v. National Broadcasting Co.*, 210 F. Supp. 231 (S.D. N.Y. 1962). Evidence of access and substantial similarity creates an inference of copying copyrighted work and establishes a *prima facie* case of copying. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821 (11th Cir. 1982). Access need not be proven, though where the similarities of the works are so striking and of such a nature as to preclude the possibility of coincidence, accident, or independent creation. *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308 (11th Cir. 2010).

Although evidence of access and copying prove problematic in some cases, such is not the case here, as Defendants have admitted to copying Plaintiff's registered works, both on the Defcad.com website and on the USB drives sold by Defense Distributed and Dioskouroi, quibbling only as to whether their copying was "unauthorized" or an "infringement." (Doc. 52 ¶¶ 194, 300, 302, 303, 304, 305, 306, 308, 309, 310, 311, 312).

8

Notably, Defendants previously admitted to the characterization of their copying as "infringements," both as to the downloads on Defcad.com and the USB drives sold through the other defendants. (Doc. 29 ¶¶ 180, 317, 323, 344, 368). Additionally, Defendants have admitted that the Fedcad website, created by Wilson, acknowledged that the works Wilson, through Defcad, reproduced or caused to be reproduced, were reproduced in violation of the law. (Doc. 29 ¶ 358).

Even had Defendants not admitted to copying the works at issue, the works are identical, word-for-word, (Larosiere Dec. ¶12(d); Elik Dec. ¶13(g); Exhibit L) pixel-for-pixel (Larosiere Dec. ¶12(e); Elik Dec. ¶ 12(h); Exhibits D through J), and down to the thousandth of an inch (Larosiere Dec. ¶12(a); Elik Dec. ¶13(d-f)) which is beyond striking similarity necessary to support a finding of copying. Additionally, Defendants admit access to Plaintiff's works in their counterclaims, albeit couched in a bizarre misreading of federal regulations. (Doc. 52 p. 24-28). As such, this Court can properly consider striking similarity "together with other types of circumstantial evidence relating to access", such as Defendants' own admissions regarding both copying and access. *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984).

Additional circumstantial evidence related to copying, access, and scienter can be gleaned from Defendants' admissions. Defendants admitted that the presence of watermarks "leave no doubt as to the fact that these works were copied." (Doc. 29 ¶ 323). Defendants have admitted that "[i]n Wilson's manifesto, Defendant Wilson complains at length that individuals have asserted their copyright rights against him." (Doc. 29 ¶ 355). Defendants have also admitted that "[i]n Wilson's manifesto, Defendant Wilson recognizes that in December of 2023, Plaintiff 'registered their files with the U.S.

Copyright Office." (Doc. 52 ¶ 174). Furthermore, Wilson's manifesto, and its recognition that Plaintiff's "build guides are copyrightable" showcase Wilson's intentional removal of copyright notices from Plaintiff's works. (Doc. 43 ¶ 177). Additionally, Defendants have admitted that "Similarly to the PV4," Wilson "removed the copyright notice from the registered 3D model he copied from Plaintiff and reproduced on Defcad" (Doc. 52 ¶ 310) and that the complaint "depicts the same three-dimensional work" "that Defendant Wilson distributed through Defcad." (Doc. 52 ¶ 311), and that the "models, the watermarks, and the specific spacing of individual three-dimensional components" in Defendants' reproduction "are exactly the same as Plaintiff's registered three-dimensional work." (Doc. 52 ¶ 312; Doc. 29 ¶ 180). Finally, Defendants admit to "blacklisting" Plaintiff from accessing Defendants' websites, delivering files on a USB drive that are different from what Plaintiff ordered, and otherwise attempting to frustrate Plaintiff from gaining proof of Defendants' copying. (Doc. 29 ¶ 391-392; Doc. 52 ¶ 293).

## C. DEFENDANTS' COPYING WAS NOT AUTHORIZED

Though it is difficult to glean much of substance from Defendants' latest 49-count shotgun counterclaim and answer, Defendants do assert an affirmative defense of "license because the United States federal government…in 2018…granted Defense Distributed a federal license to publish the files in question without restriction." (Doc. 52 ¶ 315). Nowhere else can a license be inferred anywhere in the pleadings, and the owner of the works at issue declares that "Defendants do not have, nor have they ever had, the right or authority to use my Copyrighted Works for any purpose." (Larosiere Dec. ¶ 7).

Plaintiff cannot undertake to find any authority to suggest that the "United States federal government" can or ever has granted a private entity a license to ignore copyright,

especially for future works. Even if this nebulous, uncited license existed, Defendants allege it to have been granted in 2018. The earliest work at issue in this litigation was registered in 2023. (Doc. 43 at 20). Additionally, the alleged license—even if it did exist—is silent as to the other Defendants.

## II. PLAINTIFF WILL SUFFER IRREPARABLE HARM IF AN INJUNCTION DOES NOT ISSUE

Plaintiff will suffer irreparable harm if Defendants are not enjoined from further infringing his copyrights in and to the Copyrighted Works. "Copyright infringements are presumed to cause irreparable harm." *Virgin Records Am., Inc. v. Courson*, No. 3:07-cv-195-J-33MCR, 2007 U.S. Dist. LEXIS 75969, *2 (M.D. Fla. Oct. 12, 2007), *citing CBS, Inc. v. PrimeTime 24 J.V.*, 9 F. Supp. 2d 1333, 1344-45 (S.D.N.Y. 1998). Irreparable harm is presumed even absent a detailed showing thereof, meaning there is no requirement to actually prove irreparable harm when seeking an injunction against copyright infringement. *Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600 (1st Cir. 1988). Further, the Eleventh Circuit, among other courts, has recognized a wide variety of harms to support a finding of irreparable harm, including:

- Harm to the copyright holder's reputation, goodwill, and brand. *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991).
- Loss of the ability to control and enforce its copyrights. *MGM Studios Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d. 1197, 1216-1218 (C.D. Cal. 2007) (irreparable harm caused by substantial likelihood of continued infringement erodes claimant's ability to enforce their exclusive rights).

Here, Defendants are openly hostile to Plaintiff's copyrights, and have aggressively attempted to undermine Plaintiff.[5] Defendants intentionally uploaded Plaintiff's works,

---

[5] On May 24, 2024, Wilson wrote "The reason you don't sue is because you got the law wrong on copyright. That and because you're a huge pussy. Anyway, I wrote a paper to

11

advertising them as committed to the public domain to encourage third party infringement of Plaintiff's registered works. (Doc. 43 ¶ 250-259). Defendants mock Plaintiff's copyrights in a manifesto urging others to ignore copyright. (Doc. 43 ¶ 169-178). Defendants' Defcad.com website asserts that any material uploaded to DEFCAD grants to DEFCAD "an irrevocable, perpetual, fully-paid, worldwide non-exclusive license to use, copy, perform, display and distribute such information and content and to prepare derivative works of, or incorporate into other works, such information and content, and to grant and authorize sublicenses of the foregoing."[6] Plaintiff has never uploaded to Defendants or given permission to Defendants to upload Plaintiff's work, and yet Defendants represent Plaintiff's work as having been uploaded to Defcad by Plaintiff. This misrepresents to third parties that Defcad has the right to derivate or sublicense Plaintiff's work, and misrepresents that Plaintiff's work is open-source.

Importantly, Defendants' erratic and oftentimes inexplicable behavior makes the perceived affiliation particularly damaging to Plaintiff's business goodwill. Defendant Wilson is infamous for having sexual relations with a child.[7] Defendant Wilson is also known for his support of hate groups, and his attempt to fund the same through his "Hatreon" project.[8] Defendants' websites promote Antelope Hill Publishing, which

---

commemorate the great pirates who lit our way. They pillaged so we could plunder." https://ddlegio.com/memorial-day-weekend/

[6] https://defcad.com/terms/

[7] Autullo, Ryan "Cody Wilson pleads guilty in child sex case." Austin American-Statesman, Aug, 9, 2019 https://www.statesman.com/story/special/2019/08/09/3d-printer-gun-activist-cody-wilson-pleads-guilty-in-child-sex-case-avoids-prison/4496277007/.

[8] Carson, Erin "Here's where Nazi sympathizers go to raise money," CNET, Dec. 4, 2017, https://www.cnet.com/culture/neo-nazi-sympathizers-crowdfunding/.

12

publishes books on "race realism" and other ideas Plaintiff does not want himself or his brand associated with.[9]

### III. THE BALANCE OF HARDSHIPS TIP SHARPLY IN PLAINTIFF'S FAVOR

The third factor likewise supports the grant of preliminary injunction. Defendants' continued, additional infringements would require Plaintiff to await new registrations and amended pleadings for each new infringement. Defendants admit to profiting from the infringements, while Plaintiff faces significant risk of lost revenue potential, lost customers, and diminished reputation. By contrast, Defendants face no hardship from an injunction prohibiting their unlawful activities. *See Chanel, Inc. v. be-sumart.com*, 240 F. Supp. 3d 1283, 1290-91 (S.D. Fla. 2016).

### IV. THE RELIEF SOUGHT SERVES THE PUBLIC INTEREST

The public interest would be served by the issuance of a preliminary injunction. The ultimate aim of copyright is "to stimulate artistic creativity." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975). Here, this goal is served by the grant of the injunction because it protects the interests of those who create original material, including visual and written works. Furthermore, the grant of injunction protects the public from unwittingly committing copyright infringement as a result of Defendants' conduct discussed *supra* part II. It certainly favors the public that Defendants' infringements be stopped, such that the public not mistakenly rely on Defendants' representations that Defendants have the ability to grant sublicenses to the works here at issue.

---

[9] DefCad Blog, "The Nutty-9 and McMaster Blaster," July 31, 2024, https://defcad.com/blog/nutty-9-mcmaster-blaster/.

## V. NO BOND IS REQUIRED

Plaintiff respectfully requests that no bond be required as a condition of the preliminary injunction because Defendants' violation of Plaintiff's copyrights in and to the Copyrighted Works is so clear.

## VI. THE EQUITABLE RELIEF SOUGHT SHOULD ISSUE

Plaintiff respectfully requests an order that directs (on a preliminary basis) Defendants and their agents, servants, employees, affiliated entities, and all of those in active concert with them to immediately cease the reproduction, distribution, advertisement, sale, and other infringements of Plaintiff's Copyrighted Works and any works derived therefrom, and to desist form all such infringing conduct until a permanent injunction is entered in this case. This remedy is specifically provided for in the Copyright Act, which empowers this Court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).

Further, Plaintiff requests an order that restrains Defendants' assets (or otherwise places them in escrow) so that Plaintiff's right to an equitable accounting of Defendants' profits from unlawful use of Plaintiff's Copyrighted Works are not impaired. Sections 504(c) and 505 of the Copyright Act provide for statutory damages between $750 and $30,000, enhanced damages for willful infringement and an award of attorneys' fees and costs. 17 U.S.C. §§ 504(c), 505. If Defendants are allowed to move or hide assets, as Defendants are known to do,[10] it will frustrate Plaintiff's ability to fully enforce his

---

[10] "Cody Wilson is on the Lam With $1 Million in Bitcoin," SPLC Blog, Sept. 20, 2018, https://www.splcenter.org/hatewatch/2018/09/20/cody-wilson-lam-1-million-bitcoin.

14

copyrights in and to the Copyrighted Works. Such restraint can be granted pursuant to Federal Rules of Civil Procedure 64 and 65 and pursuant to this Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide equitable relief. Fed. R. Civ. P. 64 and 65; *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets); *Reebok Int'l v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989)*, aff'd sub nom. Reebok Int'l v. Marnatech Enters.*, 970 F.2d 552 (9th Cir. 1992)*.* In *Reebok*, the district court granted the plaintiff a limited restraint of the defendants' assets for the purpose of preserving them, thus ensuring the availability of a meaningful accounting after trial. Accordingly, Plaintiff respectfully requests this honorable Court order Defendants and the operators of Defendants' accounts to prevent the transfer of Defendants' assets and freeze Defendants' accounts until further order of this Court.

## VII.   CONCLUSION

The Court should enter a preliminary injunction against Defendants' copyright-infringing conduct.

DATED:  January 8, 2025

                                                   */s/ Zachary Z. Zermay*
Zachary Z. Zermay, Esq.
Fla. Bar № 1002905
*Zermay Law, P.A.*
1200 Fourth Street, #1102
Key West, FL 33040
Email: zach@zermaylaw.com
Telephone: (305) 767-3529
*Lead Counsel for Plaintiff Matthew Larosiere*