**<u>EXHIBIT C</u>**

**<u>DECLARATION OF JOHN ELIK</u>**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №: 6:24-cv-01629

MATTHEW LAROSIERE,

*Plaintiff*,

v.

CODY RUTLEDGE WILSON, DEFCAD, Inc.,
DEFENSE DISTRIBUTED, and DIOSKOUROI
LLC,

*Defendants*.

_____/

## DECLARATION OF JOHN ELIK IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

I, John Elik, declare and state as follows:

1.  I submit this Declaration, which is filed in support of Plaintiff's Motion for Preliminary Injunction. I am personally knowledgeable of the matters set forth in this declaration and, if called upon to do so, I could and would competently testify to the following facts set forth below.

2.  I am a firearms designer, engineer, and technology consultant. I work in the design, engineering, and development of firearms technologies.

3.  I am based in Illinois.

4.  I have spent thousands of hours creating photographic, pictorial, written, and visual art works in the course of my work for Plaintiff Matthew Larosiere (hereinafter "Plaintiff."

5.  At all times relevant to this action, my work was regularly monitored and directed by Plaintiff. Plaintiff provided feedback and input throughout the process of

2

creation. Plaintiff provided tools, reference materials, and supplies to facilitate the process of creation.

6.  Of the works listed in the First Amended Complaint, Doc. 43, I was responsible for the creation of:

    a.  One hundred (100) photographic visual art works that depict the Amigo Grande, which are registered under VA0002381513.

    b.  Fourteen (14) photographic visual art works that depict the BUBAR, which are registered under VA0002381769.

    c.  Twenty-six (26) photographic visual art works that depict the KF5, which are registered under VA0002381769.

    d.  Thirty-four (34) photographic visual art works that depict the SF5, which are registered under VA0002381769.

    e.  A three-dimensional visual art work (3D model of the SF5) registered under VA0002385901.

    f.  A literary work (written "readme" concerning the SF5) registered under TX0009372199.

    g.  A literary work (written documentation concerning the SF5) registered under TX0009372196.

    h.  A literary work (written documentation concerning the Plastikov v4) registered under TX0009403056.

    i.  A literary work (written "readme" concerning the Plastikov v4) registered under TX0009413646.

    j.  A three-dimensional visual art work (3D model of the Plastikov v4) registered under VA0002422527.

3

    k.  Sixty-one (61) photographic visual art works that depict the Plastikov v4, which are registered under VA0002412508.

    l.  Collectively, I will refer to the above as the "Copyrighted Works".

7. I created these works pursuant to an express written agreement with Plaintiff, which I considered to be an employment agreement.

8. For each work I created for Plaintiff, it was never my intention to retain any ownership of the work, but was always my intention that Plaintiff have exclusive copyright in the work.

9. As such, I assigned any potential remaining ownership interest that I may have retained to Plaintiff in an express written agreement for compensation, executed prior to the registration of each particular work.

10. For the works concerning the NS3, Plaintiff asked if he could publish it using my pseudonym, Ivan The Troll.

11. I gave Plaintiff permission to use my pseudonym.

12. I was asked by Plaintiff to compare the suspected copyright infringement by Defendants to the works registered with the United States Copyright Office (USCO) due to my firsthand familiarity with them and my extensive experience with these sorts of works.

13. For each work I downloaded or otherwise acquired from Defendants, mentioned below, I closely examined the work and determined it to be an exact reproduction of the Copyrighted Works.

14. The methods I used to determine that the works were exact reproductions include:

a.  For the 3D models I created for Plaintiff, I was directed to include copyright notices. I compared the suspected infringing 3D models from Defcad to the registered 3D models.

b.  For the SF5, plaintiff had directed me to include a copyright notice. I found the copyright notice intact, copied exactly.

c.  Plaintiff also directed me to include a copyright notice on the Plastikov v4. This copyright notice was removed.

d.  After checking for the copyright notices, I conducted a series of inspections. First was a visual inspection, which included checking the model names, total number of models, model shading/colors, and the model orientations. Not only was the copyright notice exactly copied on the SF5 3D model, but every other aspect was identical to the original registered work. While the copyright notice on the Plastikov v4 3D model was missing, every other aspect was identical to the original registered work – including the specific shading/colors that Plaintiff had directed me to include as a deterrent to copying.

e.  After the visual inspection, I did a series of measurements on the 3D models. When designing these models, I frequently use very precise values – oftentimes to the thousandth of an inch. When comparing measurements between the suspected infringing 3D model of the SF5 and the registered original 3D model of the SF5, I found zero differences. When comparing measurements between the suspected infringing 3D model of the Plastikov v4 and the registered original 3D model of the Plastikov v4, I found zero differences aside from the deletion of the copyright notice.

5

f.   Finally, I conducted a "boolean" comparison – this is a method that allows you "subtract" one 3D model from another with a high degree of precision. After subtracting the suspected infringing 3D model of the SF5 from the registered original 3D model of the SF5, the resulting volume was 0.000 cubic inches – indicating that the suspected infringing 3D model is an exact copy.  After subtracting the suspected infringing 3D model of the Plastikov v4 from the registered original 3D model of the Plastikov v4, the resulting volume was 11.826 cubic inches. This is the exact volume of the deleted copyright notice – indicating that the suspected infringing 3D model is an exact copy, except for the deletion of the copyright notice.

g.   For written works, I compared the work word-for-word with the Copyrighted Works and found them to be word-for-word reproductions. This included reproductions of obvious copyright notices, hidden copyright notices, and typographical errors.

h.   For photographic works, I compared the work side-by-side with the Copyrighted Works and could see no difference between them.

15. A true and correct reflection of my findings from the above investigation can be seen in Exhibits C through L, attached to this filing.

16. I have reviewed the images, models, and written works seen in Exhibits C through L. For the works in Exhibits C through L that I made for Plaintiff, I can represent that the images, representations of models, and written works represented as the registered works are true and correct reproductions of the works I was directed to make in the scope of my employment.

17. I downloaded copies of the Copyrighted Works listed in Paragraph 5(a) through 5(l) from Wilson's Defcad.com.

18. I reviewed the purchased copies of the Copyrighted Works listed in Paragraph 5(a) and 5(c) from USB drive purchased from Defense Distributed's Ghostguns.com.

19. I confirmed that the copies of the Copyrighted Works acquired from Defense Distributed's Ghostguns.com were reproductions of the Copyrighted Works using the same methods disclosed above, Paragraph 14.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 8th day of January, 2025, in Alton, IL.

_John Elik_

John Elik