UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №: 6:24-cv-01629

MATTHEW LAROSIERE,

*Plaintiff*,

v.

CODY RUTLEDGE WILSON, DEFCAD, Inc.,
DEFENSE DISTRIBUTED, and DIOSKOUROI
LLC,

*Defendants*.

_____/

## PLAINTIFF LAROSIERE'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

SUMMARY OF THE ARGUMENTS ............................................................... 3

ARGUMENT ............................................................................................ 4

I.  DEFENDANTS' RULE 12(b) MOTIONS WERE MOOTED BY THE ANSWER AND COUNTERCLAIMS ............................................................................. 4

II.  EVEN IF THE MOTION WERE NOT MOOT, DEFENDANTS' RULE 12(b)(6) MOTIONS ARE WITHOUT MERIT ......................................................... 5

A.  The Lanham Act Claims in Count 5 are Valid ............................................ 5

   1.  Defendants' argument is based on the wrong law. .................................. 5

   2.  Even if Defendants had cited §1125(a), Plaintiff carried his burden. ......... 6

B.  The Florida §540.08, Fla. Stat. Claims are Valid ....................................... 9

III.  DEFENDANTS' 12(b)(2) ARGUMENTS ARE WITHOUT MERIT ........................... 10

A.  Dioskouroi LLC has Waived its Personal Jurisdiction Argument ............... 11

B.  Dioskouroi LLC is Subject to Personal Jurisdiction as an Alter Ego of Defense Distributed and Defendant Wilson ............................................... 13

C.  Dioskouroi LLC is Subject to Specific Personal Jurisdiction ................... 14

   1.  The claims against Dioskouroi LLC arise out of or are related to its contacts with the forum. .................................................................. 16

   2.  Dioskouroi LLC purposefully availed itself to jurisdiction in Florida. ......... 17

   3.  The exercise of personal jurisdiction over Dioskouroi LLC comports with fair play and substantial justice. ........................................................ 18

D.  Dioskouroi LLC Has Not Demonstrated it is Not Subject to General Jurisdiction in Florida ....................................................................... 19

CONCLUSION ......................................................................................... 20

## SUMMARY OF THE ARGUMENTS

Defendants have filed a motion to dismiss Counts 5 and 6 of the operative complaint under Rule 12(b)(6), and to dismiss the action against Dioskouroi LLC for want of personal jurisdiction. (Doc. 48). The motion is in all material respects identical to the one earlier (Doc. 28) denied *sua sponte* by this Court. (Doc. 38). While the 12(b)(6) arguments made in support of the motion have not changed between the initial and First Amended Complaint, the pleading it targets has, and none of the alleged defects remain. With respect to personal jurisdiction against Defendant Dioskouroi LLC, although sufficient nexus is alleged in the complaint, Defendant Dioskouroi LLC has substantially litigated, including expressly invoking this Court's equitable power, thereby independently subjecting itself to personal jurisdiction under Title VI, Ch. 48, § 193(4), Fla. Stat. Additionally, like before, Defendants filed a counterclaim and answer (Doc. 52) while the motion to dismiss was still pending, mooting the Rule 12 arguments.

## <u>ARGUMENT</u>

### I.  DEFENDANTS' RULE 12(b) MOTIONS WERE MOOTED BY THE ANSWER AND COUNTERCLAIMS

The simplest grounds for resolving Defendants' Rule 12 motions is the fact that Defendants filed a unified answer and counterclaims before the Rule 12 motions were resolved. Federal Rule 12(b) provides that "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b).

Defendants were already put on notice of this when this Court articulated this clear rule. (Doc. 38). Defendants appear to be attempting to game the rules by having filed the 12(b) motions on December 26 (Doc. 48) and their answer and counterclaims on December 27. (Doc. 49). This does nothing to cure the defect, though. "Where, as here, an Answer was filed prior to the **resolution** of the motion to dismiss, the motion becomes moot." *Veltre v. Sliders Seaside Grill, Inc.*, No. 3:15-cv-1102-J, 2016 WL 524658, at *1 (M.D. Fla. Feb. 10, 2016) (collecting cases) (emphasis added). "A defendant is not required to file an answer until [the] court disposes of the motion to dismiss." *Smith v. Bank of America, N.A.*, No. 2:11-cv-676-FtM-29DNF, 2014 WL 897032, at *9 (M.D. Fla. Mar. 6, 2014) (citing *Lockwood v. Beasley*, 211 F. App'x 873 (11th Cir. 2006)). The rules only allow certain types of pleadings. Rule 12(b) motions are designed to preserve judicial economy by resolving issues which might render an *action* non-justiciable *ahead* of further litigation, not in tandem with it. *Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990) (acknowledging defendant "literally complied with Rule 12(h) by including the jurisdictional issue in their answer" but finding waiver of personal jurisdiction because defendant failed to "comply with the spirit of the rule, which is 'to expedite and simply proceedings in the Federal Courts'").

4

## II.  EVEN IF THE MOTION WERE NOT MOOT, DEFENDANTS' RULE 12(b)(6) MOTIONS ARE WITHOUT MERIT

Defendants raise 12(b)(6) challenges to Counts 5 and 6 of Plaintiff's first amended complaint. (Doc. 48). The arguments raised by Defendants are, in all material respects, identical to the arguments Defendants brought in their earlier-denied motion to dismiss (Doc. 28). While Defendants' arguments have not changed, the pleadings they purport to target have.

### A.  The Lanham Act Claims in Count 5 are Valid

Defendants assert that Plaintiff's Count 5 "fails to state a claim upon which relief can be granted because it does not allege either of § 1114's connectivity requirements and also because it does not allege § 1114's requisite kind of confusion." (Doc. 48 at 5). There are two major problems with this argument: 1) Plaintiff did not bring an action under § 1114; and 2) even if Defendants had referenced the correct statute, the connectivity analogues were sufficiently alleged in Plaintiff's First Amended Complaint.

#### 1.  <u>Defendants' argument is based on the wrong law.</u>

Plaintiff's claim in Count 5 was brought pursuant to 15 U.S.C. § 1125, which covers the use

> "in commerce" of "any word, term, **name**, symbol, or device, or **any false designation of origin**, false or misleading description of fact, or false or misleading representation of fact, which (A) is **likely** to cause confusion…or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin sponsorship, or approval of his or her goods, services or commercial activities by another person" or in commercial communications "misrepresents the nature, characteristics, qualities, or geographic origin of his…services or commercial activities."

15 U.S.C. §1125(a) (emphasis added). Under this section, violators are liable to "any person who **believes** that he or she **is or is likely** to be damaged by such an act." *Id.*

5

In contrast, 15 U.S.C. §1114 is limited to the nonconsensual use of a

"registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]"

15 U.S.C. § 1114(1). §1114 features two specific connectivity requirements as to a registered mark and several other elements, where §1125 requires only one specific connectivity requirement in §1125(a)(1): that the "word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" be used "on or in connection with any goods or services" in commerce.

2.  <u>Even if Defendants had cited §1125(a), Plaintiff carried his burden.</u>

While Plaintiff's burden under §1125(a) is substantially lower than in §1114(1)—in part because fewer remedies are available to unregistered versus registered marks—Plaintiff went above and beyond the requirements in sufficiently alleging false designation of origin under §1125(a). (Doc. 43 50-55). Plaintiff will address Defendants' contention in the order they were briefed. (Doc. 48 at 5-8).

First, Defendants contend "Count 5 both fails to plead that the marks in question were used 'in commerce' and also fails to plead that the marks in question were used 'in connection with the sale, offering for sale, distribution, or advertising of any goods or services.'" (Doc. 48 at 5-6). This is counterfactual. Count 5, which falls under the second cause of action, explicitly incorporates relevant factual aversions in paragraphs 92 through 103 of the complaint. (Doc. 43 ¶ 305). Those paragraphs establish the various ways in which Defendants sell and market Plaintiff's works, including that "Defcad.com's administrators…associate a 'creator' with the file – which gives the appearance of the

files having been uploaded by their 'creator', when in reality these files were uploaded by Defcad." (Doc. 43 ¶ 103). Additionally, Count 5's ¶ 307 lays out the way Defendants changed "a category present on [Defendants'] several websites, under which [Defendants] sell[] and distribute[] both digital works and physical goods." (Doc. 43 ¶ 308). The complaint outlines that these actions falsely referred to "The Gatalog" as "Owned and directed by Matt Larosiere"[1]. The complaint's ¶ 309-316 detail the likely confusion, the fact that the misrepresentation was used in pages "directly connected" to Defendants' commercial sales of the works, that the pages "advertise designs for purchase…that Plaintiff…had no involvement in whatsoever" and that Defendants' customers "have purchased memberships and files at least in part because they believed those items were designed, made, or approved by Plaintiff Matthew Larosiere because of [Defendants'] misrepresentations." (Doc. 43 ¶ 309-316).

This is only the first actionable use of Plaintiff's name and likeness alleged in the complaint. The complaint also details false or misleading statements used on Defendants' other sites, all connected to their commercial enterprises, with more than sufficient detail to state a claim under 15 U.S.C. § 1125(a).

Defendants' invocation of the "competitor/critic distinction" (Doc. 48 at 6) is wholly irrelevant to the allegations in the complaint. The complaint's Count 5, as discussed above, refers only to the commercial misrepresentations made by Defendant Wilson both by himself and through his corporate co-defendants. Defendants' reliance on *Bosley Med.*

---

[1] Since the filing of the First Amended Complaint, Defendants have changed this misrepresentation to being "Owned and directed by Matt Larosiere and John Elik" in an attempt to harass Plaintiff's personal friend John Elik. https://defcad.com/library/?sort=created_desc&organization=The+Gatalog

*Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005) is thus entirely misplaced. The complained-of conduct, in connection with the sale of Defendants' subscriptions and other merchandise, misrepresents origin, misrepresents facts, and is likely to cause confusion or "deceive as to the affiliation, connection, or association" of Plaintiff with Defendants (Doc. 43 ¶ 313), with items Plaintiff had no involvement in (Doc. 43 ¶ 315), with fascist ideology (Doc. 43 at ¶ 325), and more.

Finally—relying on cases interpreting a different statute—Defendants contend this Court should dismiss Count 5 because "Plaintiff Larosiere's complaint has no plausible allegation of…confusion." (Doc. 48 at 8). This argument is not supportable. As discussed above, the fact that Defendants' misrepresentations and use of Plaintiff's name, likeness, and otherwise was calculated to and did confuse as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities is amply pled. Defendants' contention that the only mention of confusion "is paragraph 306's scant reference to 'confusion'" cannot flow from a reasonable reading of the complaint. *Compare* (Doc. 48 at 8) *with* (Doc. 43 ¶ 308-320) (Alleging that Defendants falsely claim "the Gatalog" is "Owned and directed by Matt Larosiere", that Defendants associate over one-hundred pages misattributed to Plaintiff, each of which directly connected to Defendants' commercial subscription program or commercial sales) *and* (Doc. 43 ¶ 321-325) (Defendant ordered an employee "to create a graphic containing a likeness of Plaintiff and to present the graphic as if Plaintiff had created it.").

### B.  The Florida §540.08, Fla. Stat. Claims are Valid

Defendants contend that Plaintiff's Count 6 fails to state a claim upon which relief can be granted because "it does *not* allege that any challenged uses promoted any protect or service." (Doc. 48 at 9). This cannot be squared with the allegations in the complaint's Count 6, the factual allegations of which overlap with those in Count 5, fully discussed *supra*, Part II(A). Defendants rely on *Tyne v. Time Warner Entertainment Co., L.P.*, 901 So.2d 802 (Fla. 2005) and *Anderson v. Coupons in the News*, No. 20-13677, 2021 WL 6098420 (11th Cir. Dec. 21, 2021). This reliance makes little sense.

*Tyne* was brought by the families of fishermen who died at sea against Time Warner over the film *The Perfect Storm*. The families contended the film used the names of their dead relatives without permission in the production of a movie. The Supreme Court of Florida held for Time Warner to avoid "a fundamental constitutional concern." *Tyne*, 901 So. 2d at 808. Central to *Tyne* was the status of the film as protected expression, irrespective of commercial purpose. This is precisely why the holding in *Tyne* was nowhere near as broad as Defendants suggest. In actuality, *Tyne* held "that the term 'commercial purpose' as used in section 540.08(1) does not apply to publications, including motion pictures, which do not directly promote a product or service." *Id* at 810.

Defendants' reliance on the unreported *Anderson* case makes even less sense. Central to *Anderson* was the fundamental free press concerns in the broadcast of newsworthy information. *Anderson v. Coupons in the News*, No. 20-13677, 2021 WL 6098420, at *1 (11th Cir. Dec. 21, 2021) ("Ms. Anderson characterized the Coupons article…as an "advertisement" in her complaint, but the district court ruled that a review of the document *demonstrated that it was an article and not an advertisement*.")

9

(emphasis added). No such concern exists here. Defendants' unauthorized misuse of Plaintiffs' name and likeness, thoroughly discussed *supra*, in directly promoting their items for sale and commercial subscription model, are at best commercial speech, not news reporting or expressive media justifying an invocation of the *Tyne* exception. The works of authorship available for purchase, both in Defendants' subscription model and direct purchase models, are the very products and services Defendants sell. Thus, Defendants' misrepresentations and use of Plaintiff's name and likeness in describing and promoting those works—the *very things defendants are selling*—are necessarily done in promotion of Defendants' products and services.

### III. DEFENDANTS' 12(b)(2) ARGUMENTS ARE WITHOUT MERIT

Defendants move to dismiss "the entire case" against Defendant Dioskouroi LLC "for lack of personal jurisdiction." (Doc. 48 at 12). This is flawed for several reasons: 1) Dioskouroi LLC has waived personal jurisdiction by seeking affirmative relief, and has independently subjected itself to jurisdiction in Florida by filing non-compulsory counterclaims and a third-party complaint; 2) Dioskouroi is subject to personal jurisdiction in this court because it is an alter ego for its codefendants; 3) the complaint sufficiently alleges that Dioskouroi is subject to specific personal jurisdiction; and 4) Dioskouroi's contention that it is not subject to general jurisdiction warrants jurisdictional discovery, not dismissal.

Common to all jurisdictional issues is the application of Florida's long arm statute and Dioskouroi's failure to properly challenge jurisdiction. "[T]he procedure for determining long-arm jurisdiction set forth in *Venetian Salami* ... is universal." *Merkin v. PCA Health Plans of Fla., Inc.*, 855 So.2d 137 at 141 (Fla. 3d DCA 2003) (citing *Bellairs*

*v. Mohrmann*, 716 So. 2d 320, 323 (Fla. Dist. Ct. App. 1998)). As summarized in *Bellairs*, the procedure set forth in Venetian Salami is as follows:

> [A] plaintiff must first allege a jurisdictional basis in his pleading. Then, if the defendant wishes to contest these allegations, he must file an affidavit specifically addressing the allegations. Once a defendant submits an appropriate affidavit, the plaintiff must support his allegations with an affidavit of his own. If no disputed factual issues appear on the face of the opposing affidavits, the trial court can decide the long-arm issue without holding an evidentiary hearing. However, if the opposing affidavits conflict with one another, the trial court must "hold a limited evidentiary hearing in order to determine the jurisdiction issue."

*Bellairs*, 716 So.2d at 323 (quoting *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502-03 (Fla.1989)).

Despite Plaintiff's ample jurisdictional allegations in the complaint, Dioskouroi LLC has not filed a single affidavit contesting jurisdiction. As such, its jurisdictional contest is due to be denied without an evidentiary hearing.

## A. Dioskouroi LLC has Waived its Personal Jurisdiction Argument

Although Dioskouroi LLC first raised personal jurisdiction on November 19, 2024 (Doc. 28), it waived jurisdiction moments later.

> "[A] timely objection to personal jurisdiction may nevertheless be waived. In jurisdictions which follow the rule that a defense on the merits is not a waiver, the courts have long held that a defendant who goes beyond matters of defense and seeks affirmative relief waives a previously asserted objection to the personal jurisdiction of the court. Thus a majority of federal courts have held that the filing of a permissive counterclaim is a request for affirmative relief which waives an objection to personal jurisdiction notwithstanding that the objection is timely made."

*Babcock v. Whitmore*, 707 So.2d 702 at 704 (Fla. 1998) (citing *Hubbard v. Cazares*, 413 So. 2d 1193 (Fla. 2d DCA 1981)) *see also Alexsam, Inc. v. WildCard Sys., Inc.*, No. 15-CIV-61736, 2015 WL 13688558, at *8 (S.D. Fla. Nov. 20, 2015) ("The Defendants' efforts in seeking affirmative relief in this action negate any claim that it has not properly submitted itself to the jurisdiction of the court.").

11

Defendant Dioskouroi LLC's seeking of affirmative relief dates back to Defendants' first Answer and Counterclaims. In the Answer and Counterclaims filed on November 19, 2024, although only "Defense Distributed" plead counterclaims, (Doc. 29 at 5) Dioskouroi LLC expressly invoked affirmative relief in its Prayer for Relief by demanding fees and costs "for the entire action" (Doc. 29 at 108) ("Defendant**s** pray for the following relief:") (emphasis added). As if this weren't enough, after its first motion to dismiss for lack of personal jurisdiction was denied because Defendants—including Dioskouroi LLC—filed an answer and counterclaims prior to resolution of the Rule 12(b) motions, Dioskouroi LLC *demanded even more affirmative relief*, demonstrating "a clear willingness to submit itself to the jurisdiction of the Court." *Salinero v. Johnson & Johnson, Inc.*, No. 18-CIV-23643-RAR, 2019 WL 2410076, at *5 (S.D. Fla. June 7, 2019).

In Defendants' first amended answer, Defendant Dioskouroi LLC did not simply file a 12(b)(2) motion and await its resolution. Rather, hours later, "Defendants Cody Rutledge Wilson, DEFCAD, Inc., Defense Distributed, **and Dioskouroi LLC**" brought "counterclaims and third-party claims" in a sixty-four count shotgun pleading, signed by all Defendants. (Doc. 49 at 5). Additionally, the prayer for relief freely conflated the codefendants. (Doc. 49 at 71) ("Defense Distributed seeks the following relief: a. A judgment for Defense Distributed and DEFCAD, Inc."). Dioskouroi LLC's concerted, active involvement in the litigation was no different in Defendants' second amended complaint, again filed with no regard to its then-waived 12(b)(2) motion. (Doc. 52).

Furthermore, Dioskouroi participated in a case management conference, and has been included on each and every pleading to this action. (Doc. 51). The complaint alleges that Dioskouroi LLC is one of several alter egos of Defendant Wilson, (Doc. 43 at 1-6)

and Dioskouroi LLC's active participation in lockstep with its codefendants does little to disprove this contention. *See Gainesville Coins, LLC v. VCG Ventures, Inc.*, Case No. 8:13-cv-1402-T-30MAP, 2013 WL 4596968, *2 (M.D. Fla. Aug 28, 2013) (personal jurisdiction waived where parties had stipulated to a preliminary injunction and participated in a case management conference). The simple fact is that Defendants are a single business entity, with common ownership, places of business, methods of operation, and even representation. (Doc. 43 at 1-6).

### B. Dioskouroi LLC is Subject to Personal Jurisdiction as an Alter Ego of Defense Distributed and Defendant Wilson

A nonresident corporation may be subject to personal jurisdiction on an alter ego theory based on the Court's personal jurisdiction over its principal or related entity. *See Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002); *RMS Titanic, Inc. v. Zaller*, 978 F.Supp.2d 1275, 1301–02 (N.D. Ga.2013); *Vogt v. Greenmarine Holding, LLC*, 2002 WL 534542, at *4–*7 (N.D. Ga.). We must look to Florida law to determine whether the exercise of personal jurisdiction on an alter ego theory is appropriate. *Meier ex rel. Meier v. Sun Int'l Hotels*, Ltd., 288 F.3d 1264, 1270–74 (11th Cir.2002) (looking to Florida law in diversity case, finding exercise of personal jurisdiction over parent based on subsidiary's contacts was consistent with Florida law and the constitution). Such jurisdiction is appropriate here, with respect to both specific jurisdiction and pursuant to an alter ego theory.

The alter ego theory of long-arm jurisdiction exists as a limited exception to the general process for establishing long-arm jurisdiction as set forth in *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla.1989). Under the alter ego theory, the complaint

need only allege facts sufficient to pierce the corporate veil of the entity already subject to jurisdiction. See *Woods v. Jorgensen*, 522 So.2d 935 at 937 (Fla. Dist. Ct. App. 1988); *Bellairs v. Mohrmann*, 716 So. 2d 320, 322 (Fla. Dist. Ct. App. 1998). The corporate veil can be pierced where Plaintiff establishes "both that the corporation is a 'mere instrumentality' or alter ego of the defendant, and that the defendant engaged in 'improper conduct' in the formation or use of the corporation." *Bellairs* 716 So. 2d at 323 (citing *Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1120–21 (Fla.1984)); *see also Gasparini v. Pordomingo*, 972 So.2d 1053, 1055 (Fla. 3d DCA 2008); *Merkin v. PCA Health Plans of Fla., Inc.*, 855 So.2d 137 (Fla. 3d DCA 2003). All of these elements are met by the First Amended Complaint. (Doc. 43 at ¶ 3-42, 64-69, 74, 84-86, 198-200, 217). Plaintiff sufficiently alleged that all the business entity defendants are alter egos of Defendant Wilson, that they share ownership, addresses, websites, and sell the same products and services, and that Dioskouroi, through "PrecursorParts," accepts credit card payments on behalf of the other Defendants, commingles assets with the other Defendants, that Defendants fail to maintain corporate formalities, and that the corporate entities were formed "to amplify [Defendant Wilson's] personal torts" and to shield assets. (Doc. 43 at ¶ 42).

### C.  Dioskouroi LLC is Subject to Specific Personal Jurisdiction

In specific personal jurisdiction analysis, the Eleventh Circuit employs a three-part due process test, which examines: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the

exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).

As a threshold matter, the "tortious act" provision of Florida's long-arm statute is applicable here. *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir.2008) (finding personal jurisdiction in a website-trademark infringement claim against a nonresident defendant and Florida's same "tortious act" provision— § 48.193(1)(a)(2)). In *Lovelady*, Licciardello alleged that Lovelady had wrongfully used Licciardello's trademarked name and picture on Lovelady's Internet website "accessible to the public in Florida that promoted Lovelady as a personal manager for music artists." *Id.* at 1282. Defendant Lovelady lived in Tennessee, created his website in Tennessee, and moved to dismiss for lack of personal jurisdiction over him in Florida. *Id.* at 1282–83. The district court granted the motion for lack of jurisdiction over defendant Lovelady in Florida. *Id.* Reversing the district court, the Eleventh Circuit concluded that the plaintiff's allegations in the complaint were sufficient to establish personal jurisdiction in Florida over defendant Lovelady under the "tortious acts" provision in § 48.193(1)(a)(2). *Id.* at 1283–84.7. Similarly, Plaintiff's copyright claims allege "tortious acts" for purposes of Florida's long-arm statute.

More importantly, *Lovelady* instructs that, under Florida law, a nonresident defendant commits "a tortious act within [Florida]" when he commits an act outside the state that causes injury within Florida. *See id.* at 1283 (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216-17 (11th Cir.1999) (collecting Florida cases and adopting Florida courts' broad interpretation of the long-arm statute that permits personal jurisdiction over

nonresident "defendants committing tortious acts outside the state that cause injury in Florida")).

1. The claims against Dioskouroi LLC arise out of or are related to its contacts with the forum.

A "fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir.2010). Here, this requirement is "easily satisfied" because there is a direct causal relationship between Dioskouroi LLC, Florida, and Plaintiff's copyright claims. *Louis Vuitton Malletier* 736 F.3d at 1356.

Defendant characterizes its website as "passive" without explanation, likely because Defendant knows the highly interactive nature of its website makes it amenable to jurisdiction. (Doc. 48 at 15). Where a website is interactive and allows an out-of-state buyer to submit an order, courts typically find that the website is "transacting business" in the buyer's state. *See, e.g., Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000). Such is clearly the case for Dioskouroi LLC's precursorparts.com.

From a computer located in Orange County, Florida, Plaintiff found his copyrighted works being sold by Defendant Defense Distributed's ghostguns.com and Dioskouroi LLC's precursorparts.com. (Doc. 43 ¶ 195-197). Plaintiff purchased an unauthorized copy of his copyrighted work from Dioskouroi LLC's precursorparts.com using a credit card, with a shipping and billing address in Florida, and the order was confirmed by Dioskouroi LLC. (Doc. 43 ¶ 198-200). On these facts, in addition to other sales to the state of Florida alleged in the complaint, Dioskouroi LLC entered into a contract to sell Plaintiff's work into

16

the State of Florida. This necessarily created a harm in Florida, regardless of whether Dioskouroi actually shipped the order. *Louis Vuitton Malletier*, 736 F.3d at 1354 ("Applying our precedent in *Lovelady*, we conclude that under Florida law where [Defendants] created the websites and posted the alleged infringing material does not matter. For purposes of § 48.193(1)(a)(2), the issue is whether [Defendant's] tortious acts caused injury in Florida. *Lovelady* says the tort of trademark infringement caused injury and thus "*occurred in Florida by virtue of the website's accessibility in Florida*.") (emphasis added).

2.  Dioskouroi LLC purposefully availed itself to jurisdiction in Florida.

The *Louis Vuitton Malletier* holding with respect to purposeful availment is directly applicable here:

> We are not saying that the mere operation of an interactive website alone gives rise to purposeful availment anywhere the website can be accessed. *See Toys "R" Us*, 318 F.3d at 453–54; *see also be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir.2011) (concluding that there was insufficient evidence that the defendant, operator of a dating website which made user accounts freely available, purposefully availed himself of doing business in Illinois); *1358 Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 400–01 (4th Cir.2003) (concluding that the Illinois defendant's semi-interactive website alone did not create personal jurisdiction in Maryland because the overall content of the defendant's website had a strongly local character emphasizing its "mission to assist Chicago-area women in pregnancy crises").

> But we are saying purposeful availment for due process was shown here because, in addition to his fully interactive "pendoza.com" website accessible in Florida, Mosseri had other contacts with Florida—through selling and distributing infringing goods through his website to Florida consumers—*and the cause of action here derives directly from those contacts*.

736 F.3d 1357-58 (emphasis in original). There is little nuance in this case. Plaintiff has made unrebutted allegations that Defendants displayed and marketed Plaintiff's copyrighted works nationwide, on fully interactive websites accessible to Floridians, accepted orders from and sold them to Floridians, and accepted an order and credit card

information from Plaintiff specifically. Not only did the accessibility of Plaintiff's works create harm in Florida, but it is alleged that Defendant Dioskouroi LLC did in fact take orders and ship Plaintiff's work into the forum state. These allegations evince purposeful availment of the privileges of doing business in Florida to the extent that Dioskouroi LLC "could reasonably foresee being haled into a Florida court." *Louis Vuitton Malletier*, 736 F.3d at 1357.

        3.  <u>The exercise of personal jurisdiction over Dioskouroi LLC comports with fair play and substantial justice.</u>

The factors stemming from *Int'l Shoe Co. v. Washington*, 326 U.S. 310 at 320 (1945) require the court consider 1) the burden on the defendant; 2) the forum's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; and 4) the judicial system's interest in resolving the dispute. *Lovelady*, 544 F.3d at 1288. As discussed above, where a defendant conducts business in the forum state, it should reasonably anticipate being sued in that state. *Mattel, Inc. v. Adventure Apparel*, No. 00-cv-4085, 2001 WL 286728 at *3 (S.D.N.Y. Mar. 22, 2001) (single internet sale in the forum state satisfied due process in a trademark infringement case).

As to the first factor, Dioskouroi LLC has not articulated any burden, nor offered any evidence of its finances or other limitations on it to show that it would be burdened by having to litigate the case in Florida. In fact, being it shares all counsel and litigates in lockstep with its codefendants—none of which contest jurisdiction—it appears no such burden *could* exist.

As to the second and fourth factor, the forum has a strong interest in hearing the case. The purpose of copyright is to "promote the progress of science and useful arts" by

inducing authors to create new works and make them available to the public. U.S. Const. Art. 1 § 8 Cl. 8. Where a Floridian author is harmed, especially by infringement directed into the forum state, courts in Florida have a strong interest in addressing it. This goes just as well for the fourth factor.

Finally, as to the third factor, Plaintiff, a Floridian, was injured by Defendants in his home forum and most evidence presently before the court relates to the harms caused by Defendants to Plaintiff in Florida. Federal court in Florida is clearly the most convenient and effective mechanism for Plaintiff's relief.

### D. Dioskouroi LLC Has Not Demonstrated it is Not Subject to General Jurisdiction in Florida

Defendant Dioskouroi LLC has not rebutted the allegations that it engages in substantial and not isolated activities within the forum state. (Doc. 43 ¶ 84-86). Its motion is premised exclusively on a theory that the contacts were initiated by Floridians—paying no mind that Floridians contacted it through the website Dioskouroi LLC made available to Floridians and transacted with. As such, Dioskouroi LLC has not rebutted Plaintiff's jurisdictional allegations.

## <u>CONCLUSION</u>

Defendants' motion to dismiss is due to be denied in its entirety. Plaintiff respectfully requests this Honorable Court enter an order denying Defendants' motion, or, in the alternative, an order allowing Plaintiff to proceed with limited jurisdictional discovery as to Dioskouroi LLC, or, in the alternative, if the Court finds any of Plaintiff's claims due to be dismissed, grant Plaintiff leave to amend.

Respectfully submitted,

DATED: January 16, 2025

/s/ Zachary Z. Zermay
Zachary Z. Zermay, Esq.
Fla. Bar № 1002905
*Zermay Law, P.A.*
1200 Fourth Street, #1102
Key West, FL 33040
Email: zach@zermaylaw.com
Telephone: (305) 767-3529
*Lead Counsel for Plaintiff Matthew Larosiere*