UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №: 6:24-cv-01629

MATTHEW LAROSIERE,

*Plaintiff*,

v.

CODY RUTLEDGE WILSON, DEFCAD, Inc.,
DEFENSE DISTRIBUTED, and DIOSKOUROI
LLC,

*Defendants*.

_____

Defense Distributed,

Counterplaintiff/ Third-
Party Plaintiff,

v.

The Gatalog, Matthew Larosiere, John Elik,
Alexander Holladay, Peter Celentano, Josh
Kiel Stroke, John Lettman, and MAF Corp.

Counterdefendants.

_____/

**COUNTERDEFENDANTS MATTHEW LAROSIERE, JOHN ELIK, ALEXANDER
HOLLADAY, JOSH KIEL STROKE, JOHN LETTMAN, AND MAF CORP'S
CONSOLIDATED MOTION TO DISMISS DEFENSE DISTRIBUTED'S
COUNTERCLAIMS, TO STRIKE, AND IN THE ALTERNATIVE, FOR A MORE
DEFINITE STATEMENT, AND FOR ATTORNEYS' FEES AND COSTS**

1

## TABLE OF CONTENTS

**INTRODUCTION AND SUMMARY OF ARGUMENTS**.................................................3

**ARGUMENT** ...........................................................................................................4

**I.    THIS COURT LACKS PERSONAL JURISDICTION OVER THE NONRESIDENT COUNTERDEFENDANTS** ........................................................................................4

A. There is no personal jurisdiction under RICO ........................................4

B. There is no personal jurisdiction for the remaining claims......................5

**II.    THE COUNTERCLAIM IS AN IMPERMISSIBLE SHOTGUN PLEADING**..............6

A, The counterclaims are a type 1 shotgun pleading..................................8

B, The counterclaims are a type 2 shotgun pleading..................................9

C, The counterclaims are a type 4 shotgun pleading ...............................11

**III.    NONE OF THE COUNTERCLAIMS ARTICULATE A CLAIM FOR WHICH RELEIF CAN BE GRANTED** ................................................................................12

A. RICO Predicate: Wire Fraud .................................................................12

B. RICO Predicate: Extortion; Money Laundering .....................................15

D. RICO Predicate: Obstruction of Justice ................................................16

E. RICO Predicate: CFAA .........................................................................17

F. RICO Predicate: Threat of Murder ........................................................18

G. Lanham Act; CFAA ..............................................................................18

I. Tortious Interference ............................................................................19

J. Trade Libel...........................................................................................20

K. Florida Deceptive and Unfair Trade Practices Act (FDUTPA)...............20

L. Spoilation.............................................................................................21

**IV.    LEAVE TO AMEND SHOULD NOT BE GRANTED** .........................................22

**V.    IN THE ALTERNATIVE, IF ANY COUNTERCLAIMS SURVIVE, THEY MUST BE MORE DEFINITELY STATED** ............................................................................23

**VI.    IF ANY CLAIMS SURVIVE, REDUNDANT, IMMATERIAL, AND SCANDALOUS MATERIAL IS DUE TO BE STRUCK.** ..........................................................................23

**VII.    PRAYER FOR RELEIF** ...................................................................................23

**Local Rule 3.01(g) Certification**..................................................................24

## INTRODUCTION AND SUMMARY OF ARGUMENTS

Counterdefendants Matthew Larosiere, John Elik, Alexander Holladay, Josh Kiel Stroke, John Lettman, and MAF Corp. (collectively, "Counterdefendants"), by and through undersigned counsel, pursuant to *Fed. R. Civ. P. 12(b)(6), (e), and (f)*, move to dismiss Defendant's counterclaim for failure to state a claim upon which relief can be granted; to strike faulty affirmative defenses; strike irrelevant, impertinent, and scandalous material; and in the alternative, for a more definite statement. Additionally, as to to John Elik, Josh Stroke, and John Lettman (collectively, "the nonresident Counterdefendants") the nonresident Counterdefendants move to dismiss Defendant's counterclaim for want of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

The underlying action is, at its core, a straightforward case of copyright infringement. In response, Defendant-Counterplaintiffs have filed a series of shotgun pleadings, culminating in a 49-count countercomplaint. All three of Defendants' countercomplaints are impermissible "shotgun pleadings" under the law of this circuit. The counterclaim joins multiple counterdefendants, lead with RICO allegations, and none of the 49 counts contain any specific factual allegations, instead pointing without explanation to some forty pages of rambling, incoherent allegations. (Doc. 52 at ¶¶ 144, 146, 148, 150, 152, 154, 156, 159, 165, 168, 171, 174, 177, 180, 183, 186, 189, 192, 195, 200, 203, 206, 209, 212, 215, 218, 220, 223, 226, 229, 232, 235, 238, 240, 243, 246, 249, 252, 255, 258, 280, 283, 286, 289) ("Defense Distributed incorporates the Part II allegations above."). The counterclaim fails to state a single claim upon which relief can be granted, and is loaded with irrelevant, impertinent, and scandalous materials. What's more, the purported affirmative defenses are legally insufficient and due to be struck.

**ARGUMENT**

**I.  THIS COURT LACKS PERSONAL JURISDICTION OVER THE NONRESIDENT COUNTERDEFENDANTS**

When assessing a dismissal for lack of personal jurisdiction, Courts "first determine whether the applicable statute potentially confers jurisdiction over the defendant." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 199 F.3d 935, 942 (11th Cir. 1997). Jurisdiction over a non-resident defendant may be based upon a federal statute or a state long-arm statute. If a basis exists for granting jurisdiction, the court must then "determine whether the exercise of jurisdiction comports with due process." *Id.* Supporting affidavits attached to this motion confirm that the nonresident counterdefendants do not live in the State of Florida, and do not conduct any business in the State of Florida.

Counterplaintiff Defense Distributed asserts claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), the Lanham Act, the Computer Fraud and Abuse Act, and other claims. The Eleventh Circuit has held that a potential statutory basis for jurisdiction may exist under RICO because it contains a nationwide service-of-process provision. *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 847-48 (11th Cir. 1988). The other asserted statutes lack such provisions, and thus their jurisdictional analysis must be based on the state's long-arm statute. On this, the jurisdictional analysis is different for the RICO claim and all other claims.

A.  There is no personal jurisdiction under RICO

Even where the eleventh circuit has recognized a potential statutory basis for personal jurisdiction under RICO, Defense Distributed can only take advantage of it if its "asserted federal claim is not wholly immaterial or insubstantial." *Republic of Panama*, 119 F.3d at 941-2. "In other words, whether a basis exists for exercising personal

4

jurisdiction under RICO depends on whether [Defense Distributed] has stated a 'colorable' RICO claim. If [Defense Distributed] has not stated a colorable claim, we do not address the applicable due-process requirements." *Courbain v. Scott*, 596 Fed.Appx. 729 at 732 (11th Cir. 2014).

Similar to the complaint in *Courbain*, Defense Distributed "makes broad allegations" but "does not connect these allegations to any predicate act as defined by 18 U.S.C. §1961." *Id.* at 733. The deficiencies in Defense Distributed's pleadings are more thoroughly argued *infra*, but no jurisdiction exists under RICO because Defense Distributed did not state a "colorable" RICO claim, and even if it did, personal jurisdiction would not comport with due process, for the same reasons the other claims do not.

B. <u>There is no personal jurisdiction for the remaining claims</u>

Because the remaining claims are not based on laws containing a nationwide service-of-process provision, we look to the long-arm statute of Florida to determine whether it authorizes exercising jurisdiction over the defendants. *See Delong Equip. Co.*, 840 F.2d at 847–48; Fed.R.Civ.P. 4(e). Under the Florida long-arm statute, specific personal jurisdiction exists if, among other things, an individual commits a tortious act within Florida, an individual carries on business within the state, or the individual injures persons within Florida due to an act or omission outside Florida if, at the time of injury, (1) the defendant was engaged in solicitation or service activities within Florida or his services were used within Florida in the ordinary course of business. Fla. Stat. § 48.193(1)(a) 6. The statute also provides for general jurisdiction over a defendant "who is engaged in substantial and not isolated activity" in Florida. Id. § 48.193(2). Florida's Supreme Court has held that economic injury, unaccompanied by physical injury or

property damage, is insufficient to subject a non-resident defendant to personal jurisdiction under § 48.193(1)(a) 6. *See Aetna Life & Cas. Co. v. Therm–O–Disc, Inc.*, 511 So.2d 992, 994 (Fla.1987) (concerning Fla. Stat. § 48.193(1)(f), which later became § 48.193(1)(a) 6).

Defense Distributed has made no jurisdictional allegations against the nonresident Counterdefendants save for the threadbare, boilerplate recital that "[t]his Court has specific personal jurisdiction over [Lettman, Stroke, and Elik] because this action arises out of and relates to conduct by which [Lettman, Stroke, and Elik] purposefully availed himself of the privilege of conducting activities within the state of Florida." (Doc. 52 ¶¶ 36, 65, and 72). There are no factual allegations underlying any relationship to the forum state, likely because, as shown by the attached affidavits, no jurisdictionally relevant connection to this state exists for any of the nonresident Counterdefendants.

## II.  THE COUNTERCLAIM IS AN IMPERMISSIBLE SHOTGUN PLEADING

Counterdefendants move to dismiss the counterclaim in its entirety under 12(b)(6) because it is an impermissible shotgun pleading. A shotgun pleading is a complaint that violates either Fed. R. Civ. P. 8(a)(2), 10(b), or both. *Weiland v. Palm Beach Cnty. Sheriff's Off.* 792 F.3d 1313, 1320 (11th Cir. 2015). 8(a)(2) requires the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) mandates a party "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).  Additionally, where doing so would "promote clarity," such as with claims relating to multiple defendants, Rule 10(b) further mandates that "each claim founded on a separate transaction or occurrence...be stated in a separate count." *Id.*

6

These rules ensure a pleader "present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading", as well as for the benefit of the court charged with determining "which facts support which claims" and "whether the plaintiff has stated any claims upon which relief can be granted." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021). Because shotgun pleadings are "calculated to confuse the 'enemy,' and the court," they fail to state a claim and are often disposed of on a 12(b)(6) motion. *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520 at 1544 n.14 (Tjoflat, J., dissenting)

The Eleventh Circuit has "identified four...categories of shotgun pleadings." *Weiland*, 792 F.3d at 1321. These consist of 1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before it and the last count to be a combination of the entire complaint"; 2) a complaint "replate with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; 3) a complaint which fails to separate each cause of action or claim for relief into a different count; and 4) a complaint that "asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.". *Barmapov*, 986 F.3d 1325 (quoting *Weiland*, 792 F.3d at 1321). The counterclaims fit into three of the four categories of prohibited shotgun pleading. In fact, the pleading is so defective that it struggles with who is making what argument. (Doc. 52 p. 63) ("Defense Distributed" seeking a "Judgment…for DEFCAD, Inc.").

A, <u>The counterclaims are a type 1 shotgun pleading</u>

A Type 1 shotgun pleading is one that "contains multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before it and the last count to be a combination of the entire complaint." *Id, see also Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n. 22 (11th Cir.2010) (Tjoflat, J., concurring in the appeal, No. 07–13225, and dissenting in the cross-appeal, No. 07–13477) (finding "a typical 'shotgun' pleading" where "each count incorporated by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged were not material to the claim, or cause of action, appearing in a count's heading"); *PVC Windoors, Inc. v. Babbitbay Beach Constr.*, N.V., 598 F.3d 802, 806 & n. 4 (11th Cir.2010) (finding a "typical shotgun pleading" where the last of a complaint's ten counts "amounts to an amalgamation of all counts"); *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1311 (11th Cir.2007) (en banc) (Tjoflat, J., dissenting) (stating that the practice of incorporating each count's allegations into successive counts is the "cardinal sin of 'shotgun' pleading").

The typical Type 1 shotgun pleading is deficient because each count includes irrelevant factual allegations and legal conclusions, calculated to confuse opposing counsel and the court, rather than articulate a basis of relief. Most commonly, a Type 1 shotgun pleading commits this "cardinal sin" by incorporating by reference all of a pleading's prior paragraphs until the last count comprises the entire lawsuit. *Weiland*, 792 F.3d at 1321. Defense Distributed's counterclaim is even worse than that, with each of the 49 counts comprising threadbare recitals of elements referencing the entirety of the counterclaim's factual aversions. The only exception to this are Counts 10 (Lanham Act

claim against John Elik, which incorporates only jurisdictional allegations, Counterplaintiffs' identification of itself and "The Gatalog", and a nonexistent "Part V") (Doc. 52 ¶ 162) and Counts 43-49 (spoilation claims, some of which incorporate "the Part II allegations above and paragraph 3"—paragraph 3 being an inexplicable invocation of the shooting death of UnitedHealth CEO Brian Thopson—and most averring to the purported Counterdefendant as being "directly liable for" conduct "pleaded in Part IV.H.1"—where no such part can be found in the counterclaims.) (Doc. 52 ¶¶ 259-289). On this, be the Count for a vague invocation of RICO liability or a novel independent claim for "spoilation," each Count—rather than just the last Count in a typical Type 1 shotgun pleading—contains the factual bases and allegations for the *entire* counterclaim "notwithstanding that many of the facts alleged were not material to the claim, or cause of action, appearing in a count's heading[.]" *PVC Windoors, Inc.*, 598 F.3d at 806 & n. 4.

B, <u>The counterclaims are a type 2 shotgun pleading</u>

A type 2 shotgun pleading, the "next most common type…is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *See, e.g., Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n. 9 (11th Cir.1997) (finding a shotgun pleading where "a reader of the complaint must speculate as to which factual allegations pertain to which count"); *Cramer v. Florida*, 117 F.3d 1258 at 1261 (11th Cir. 1997) (describing the complaint at issue as "a rambling 'shotgun' pleading that is so disorganized and ambiguous that it is almost impossible to discern precisely what it is that these appellants are claiming"); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir.1997) (describing a complaint

that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants" as a "prototypical 'shotgun complaint'"); *Anderson v. Dist Bd. Of Trs. Of Cent. Fla. Mty. Coll.*, 77 F.3d 364 at 366 (11th Cir. 1996) (complaint was "perfect example of 'shotgun' pleading in that it [was] virtually impossible to know which allegations of fact [were] intended to support which claim(s) for relief") (internal citation omitted).

Defense Distributed's counterclaim is a Type 2 shotgun pleading in that its vague factual allegations are impossible to connect to any specific purported actions of any specific Counterdefendant. This defect is largely because the pleading makes no attempt to distinguish as to which alleged Counterdefendant is alleged to have committed what specific acts, and what acts are relevant to what causes of action. For example, Defense Distributed's description of the parties section contains long, unsupported criminal allegations, each containing a conclusory jurisdictional statement which neglects to identify a statutory basis for jurisdiction. (Doc. 52 pp 6-23).

The counterclaim begins its "venial sin" in the first paragraph, which consists only of an uncited reference to another filing and an unsupported criminal allegation. (Doc. 52). Paragraph 3 inexplicably[1]—in bold—invokes the shooting death of UnitedHealthcare

---

[1] Inexplicable may be a poor choice of words, as Counterdefendants suspect this was done with the improper purpose of harassing Plaintiff and Counterdefendants through the media. Something Defendants proudly evinced by posting to their "Defcad" website—and crediting "Defense Distributed" as the creator—a News headline that the UnitedHealth CEO's murderer was "Supplied by Florida 'Black-Market Operator,'" the source for which was Defendants' own pleading. https://defcad.com/library/lawsuit-unitedhealthcare-ceos-killer-built-gun-silencer-from-3d-printing-files-supplied-by-florida-black-market-operator-1/

CEO Brian Thompson while asserting "The Gatalog" "violated" regulatory regimes.[2] Indeed, Defendant-Counterplaintiff spills no shortage of ink asserting a novel, unsupported interpretation of federal regulations with no connection to the purported cause of action or any statute. Spanning many more pages, the "Part II allegations" each Count points to are overflowing with compound statements interspersed with irrelevant material, to which Counterdefendants cannot reasonably be required to reply.

C, <u>The counterclaims are a type 4 shotgun pleading</u>

The fourth type of shotgun pleading is one which commits "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d 1323.

In its first attempt, Each of Defense Distributed's counterclaims was "asserted against all of the Counterdefendants" (Doc. 29 at ¶¶ 143, 205, 223, 233, 242, 254, 263, 273), and each counterclaim incorporated "all of this pleading's other paragraphs". Counterplaintiff's third attempt makes only the thinnest attempt at differentiating itself. Just as it did in the first counterclaim, each Count references the same swath of irrelevant factual allegations. (Doc. 52). The only separation is now there are 49-counts, none of which make any attempt to separate which facts support which claims against which Counterdefendant. Just as before, each counterclaim is entirely devoid of any articulated

---

[2] Counterdefendants feel it ought go without saying that one cannot "violate" a regulatory regime. No statutory violation is articulated in any of the countercomplaint's myriad, conclusory references to administrative regulations.

factual basis, but rests on the entire pleading, which includes statements made by nonparties and a lengthy discussion of what Counterplaintiff believes the law to be.

### III. NONE OF THE COUNTERCLAIMS ARTICULATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

As already explained, the complaint fails to state a claim for which relief can be granted because it is an impermissible shotgun pleading. Even if this Court were to hold it not-so, the counterclaims do not properly allege a single claim for which relief can be granted. As the Supreme Court has articulated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" **requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do**. Factual allegations must be enough to raise a right to relief **above the speculative level** on the assumption that all of the complaint's allegations are true.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (cleaned up, emphasis added). In the analysis below, often relevant is how the allegations in the Second Amended Complaint are even less sufficient than the first. The fact that Counterplaintiff's allegations have *lost specificity* and *abandoned elements* after having faced a motion to dismiss for the same reason (Doc. 47) ought counsel toward dismissal.

We begin the analysis by discussing each of the RICO predicate allegations, as to state a claim under RICO, Counterplaintiff would have to sufficiently allege the existence of an enterprise, and a pattern of racketeering activity attributable to that enterprise.

### A. RICO Predicate: Wire Fraud

Counterplaintiff's wire fraud allegations are very difficult to follow. It seems they are predicated on Counterplaintiff's misreading of 15 C.F.R. § 734.7. That one cannot independently violate a regulation aside, Counterplaintiff jumps straight to the final

subpart (c) exception to the general rule that most "unclassified 'technology' or 'software' is 'published,' and is thus not 'technology' or 'software' subject to the EAR, when it has been made available to the public" such as through "(4) Public dissemination…in any form…including posting on the Internet on sites available to the public." Counterplaintiff asserts that unknown, undisclosed files posted by unknown, undisclosed Counterdefendants on unknown, undisclosed places are "ready for insertion" into an unknown, undisclosed machine tool and were exported in an unknown, undisclosed way. Counterplaintiff's novel interpretation—which Counterdefendants can only guess the meaning of—is inconsistent with guidance provided by the Department of Commerce and has never been applied by any court.[3]

Even if some colorable interpretation of law could be divined from Counterplaintiff's filing, it cannot be said that a party's novel interpretation of a federal regulation, itself an agency interpretation of a federal law, can properly render it "specified unlawful activity" under 18 U.S.C. § 1956(c)(7).

Wire fraud, as it could pertain to a RICO claim, cover "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of

---

[3] *See*, Dept. of Commerce, "Revisions to Definitions in the Export Administration Regulations: Frequently Asked Questions (FAQs) Effective September 1, 2016" https://www.bis.doc.gov/index.php/documents/compliance-training/export-administration-regulations-training/1554-ear-definitions-faq/file; *See also* 2016-12734 (81 FR 35586).

executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1343. As with many of Counterplaintiff's claims, circumstances constituting fraud must be stated with particularity. Fed. R. Civ. P. 9(b).

Counterplaintiff makes only 5 references to "wire fraud" in the counterclaim. (Doc. 52 ¶¶ 2, 101, 107, 108, 109). The first of these references is an unsupported allegation, the next three assert "The Gatalog" engaged in wire fraud by posting files on the internet, which it asserts "the Department of Commerce has determined meets the criteria [of a regulation]. Specificlast [*sic*] ten years…" (Doc. 52 ¶ 108). This is not a cognizable allegation of wire fraud, and its allegation that "The Gatalog" has posted on the internet undisclosed "files" that are "ready for insertion" into an undisclosed piece of "equipment" to produce some undisclosed firearm part does not come close to the typical *who, what, where, when, why* demanded of Plaintiffs under heightened pleading standards. In fact, it articulates answers to *none* of those five questions, much less specifying the conduct of which party resulted in a statutory violation. This is in no way materially different from its first attempt, where it stated only that "Counterdefendants" "regularly used interstate wire communications, including social media, email, and messaging platforms, to disseminate false and defamatory statements about Defense Distributed, solicit illegal transactions, and facilitate the unlawful transfer of controlled technical data, all with the intent to deceive and defraud." (Doc. 29 Para. 154). The Second Amended Counterclaim proceeds in this manner exclusively referring its imagined unincorporated enterprise "The Gatalog" itself as an actor, without ever specifying what Counterdefendant used what communication medium, and what circumstances constituted fraud, much less how any communication was on the part of the alleged enterprise.

B. <u>RICO Predicate: Extortion</u>

Extortion, as it could pertain to a RICO claim, "means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. §1951(b)(2). Counterplaintiff alleges this against "The Gatalog," but fails to identify a single instance of extortion under §1951(b)(2) by any Counterdefendant, much less one on the part of the alleged enterprise. The only allegations are, like above, unparticularized references to the imagined unincorporated enterprise, and ¶ 69(f), where it, without explanation asserts "Stroke committed the extortion and threats of violence described below in II.E.4." (Doc. 52). The counterclaims' II.E.4, though, does not articulate a single instance of extortion. These attempts at obfuscation fail because "district courts are flatly forbidden from scouring shotgun complaints to craft a potentially viable claim for a plaintiff." *Barmapov*, 986 F.3d at 1328.

C. <u>RICO Predicate: Money Laundering</u>

Counterplaintiff does not allege money laundering. Previously, Counterplaintiff articulated the elements of money laundering, which include that the transaction *actually* involve the proceeds of a specified unlawful activity, and the scienter requirement relating to the same, (Doc. 29 Para. 171). Counterplaintiff has since pared down his money laundering allegations, now foregoing any discussion of the elements and simply alleging that in May 2021 Elik sent money—the source of which is not alleged—to a foreign account for an un-alleged purpose. This tracks with none of the elements of money laundering under 18 U.S.C. § 1956. The other alleged transactions concern unknown, undisclosed actors sending unknown, undisclosed amounts which came from unknown,

undisclosed sources. Counterplaintiff previously alleged what it believed the money was *for*,(Doc. 29 Para 171-175) but having been faced with this argument already, it felt the need to allege *even less* here. Simply put, the counterclaim does not allege any transactions were made "with knowledge that the transaction was designed in whole or in part to conceal the nature, location, source, ownership or control of the proceeds of that activity."

       D. <u>RICO Predicate: Obstruction of Justice</u>

Obstruction, as it could pertain to a RICO claim, covers "Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b)." 18 U.S.C. § 1503.

The thrust of Counterplaintiff's obstruction argument appears to be its allegation that documents were destroyed after it issued a litigation hold. However, only three of the Counterdefendants are alleged to have destroyed any communications. As to the parties presently moving the court, the claim is silent as to *what* was destroyed and whether and

how it was covered by the unspecified litigation hold. Previously, Counterplaintiff's only allegation against Counterdefendant Elik *was specifically alleged to have occurred before the litigation hold was issued*. (Doc. 29, Para. 108-109). Having faced this argument previously, Counterplaintiff saw fit to *remove* details and now, silent as to any time, place, or object, allege that in undisclosed communications, that "Elik...discussed with Larosiere the need to 'clean up' the Rocketchat server and delete sensitive communications." (Doc. 52 ¶ 266). The Obstruction predicate act allegations are simply devoid of factual basis, and given it alleges fraud, especially devoid of the particularity it is required under Fed. Rul. Civ. P. 9.

### E. RICO Predicate: CFAA

Counterplaintiff's purported RICO predicate is not a proper invocation of the CFAA under RICO, as RICO references the CFAA only through 2332b(g)(5)(B), which is scope-limiting to terrorism. Even so, Counterplaintiff does not identify a single discrete CFAA violation by any discrete party. Instead, its theory of unauthorized access to its public website is predicated on its own terms of service—which Counterplaintiff changed after the underlying suit was filed—to baldly assert that accessing the public-facing website was itself a CFAA violation. (Doc. 52 ¶¶ 129 ("against [DEFCAD's] terms of service and the CFAA), 175 ("terms of service bar the enterprise" from "use and access" of "DEFCAD"), *et seq.*). Counterplaintiff effectively suggests a copyright defendant could prohibit a claimant from getting proof of infringement by scribbling "No copyright holders allowed" into its public-facing website's terms of service and then invoking the CFAA. Counterplaintiff's CFAA argument is unserious and unsupportable.

F. RICO Predicate: Threat of Murder

As with its other purported RICO predicate acts, Defcad makes no allegation relating to any specific conduct by any Counterdefendant. Rather, the only alleged "threat" in its entire one-hundred-and-nine-page filing is that an unknown, undisclosed person communicated that some other, unknown, undisclosed person has put an unknown, undisclosed bounty on Cody Wilson. (Doc. 52 ¶ 122). This is not an indictable threat of murder, much less a RICO predicate act.

G. Lanham Act

As with Counterplaintiff's first counterclaim, the Lanham Act §43(a) allegations make no attempt to identify discrete conduct by any discrete party. *Compare* (Doc. 29 pg. 75-79) *with* (Doc. 52 p. 42). Counterplaintiff again asserts its imagined EAR violations as supporting an unfair competition claim, but has not articulated a single EAR violation, nor how any alleged conduct violated such a provision.[4] The Lanham Act claims, like many of Defendants' other claims, are made as to "The Gatalog," then separated without additional allegation or specificity as to each Counterdefendant. (Doc. 52 ¶¶ 155-174). This third attempt to avoid pleading particularity requirements ought not be rewarded.

H. CFAA

As with all of Counterplaintiff's claims, and as with its first counterclaim, the alleged CFAA violations make no attempt to identify any discrete actions by any party. *Compare* (Doc. 29, p. 79-81) *with* (Doc. 52 ¶¶ 175-195). Also, it predicates its CFAA claim on its own terms of service.[5]

---

[4] *See* discussion *supra* Part III(A).
[5] *See* discussion *supra* Part III(E).

I. Tortious Interference

To demonstrate tortious interference with a contract or business relationship in
Florida, "the plaintiff must demonstrate (1) the existence of a business relationship under
which the plaintiff has legal rights; (2) an intentional and unjustified interference with the
relationship; and (3) damage to the plaintiff as a result of the tortious interference with
that relationship." *Ad–Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*,
849 F.2d 1336, 1348–49 (11th Cir.1987). Notably, no cause of action exists for tortious
interference with a business's relationship to the community at large." *Ethan Allen, Inc. v.
Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla.1994) (citation omitted). "As a general
rule, an action for tortious interference with a business relationship requires a business
relationship evidenced by an actual and identifiable understanding or agreement which in
all probability would have been completed if the defendant had not interfered." *Id.* at 815.
Indeed, the Florida Supreme Court has stated that "in order to establish the tort of tortious
interference with a business relationship, the plaintiff must prove a business relationship
with identifiable customers." *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So.2d
821 (Fla.1996).

Defense Distributed failed to identify any specific relationships, and failed to
identify any knowing conduct of a party. Its first attempt at bringing this claim
impermissibly and unsupportedly lumped all Counterdefendants together and
conclusiorily alleged tortious interference by Counterdefendants against its business
relationships with unknown and unidentified "users, contributors, and commercial
partners." (Doc. 29, p. 83-85). It does the exact same thing now, except it pays thin lip
service to the arguments raised in the earlier motion to dismiss by first making a blanket

allegation as to the imagined enterprise, then identifying each Counterdefendant in a separate count with no additional or unique supporting allegation. (Doc. 52 ¶¶ 196-218).

J. <u>Trade Libel</u>

To state a claim of trade libel under Florida law, "plaintiffs must allege: (1) a falsehood; (2) has been published, or communicated to a third person; (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff; (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are proximately caused as a result of the published falsehood." *Stewart Title Guar. Co. v. Title Dynamics, Inc.*, 2005 WL 2548419 (M.D.Fla.2005). Similar to its first attempt at raising this counterclaim, Defense Distributed makes no allegations regarding any specific communications to any specific third persons, nor has it alleged any damages proximately caused, nor actually caused by any falsehood. *Compare* (Doc. 29 p. 86-87) *with* (Doc. 52 ¶¶ 219-238). Additionally, given the tort sounds in fraud, it must be stated with particularity. Fed. Rul. Civ. P. 9.

K. <u>Florida Deceptive and Unfair Trade Practices Act (FDUTPA)</u>

To bring a FDUTPA claim for damages, a plaintiff must establish three elements: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages. *Baptist Hosp., Inc. v. Baker*, 84 So.3d 1200 at 1204 (Fla. 1st DCA 2012). Florida's supreme court has defined an "unfair practice" as "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to **consumers**." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003) (emphasis added) (citations omitted) (internal quotation marks omitted). Additionally, it has defined

20

"deception" as "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, **to the consumer's detriment**." *Id.* (emphasis added) (citation omitted) (internal quotation marks omitted). Counterplaintiff was put on notice that "FDUTPA does not create an avenue for Defense Distributed to independently re-litigate all of its preceding causes of action, as it clearly attempts to do so here, without alleging any injury to the consuming public, nor any unfair business practices." (Doc. 47 pp. 19-20). Counterplaintiff addressed this issue by presenting the exact same argument. *Compare* (Doc. 29 p. 88-92) *with* (Doc. 52 ¶¶ 239-258).

L. Spoilation

In its first counterclaim, Counterplaintiff asserted "a civil action for spoilation under the Federal Rules of Civil Procedure and Federal Rules of Evidence…and under Florida law." (Doc. 29 p. 92-93). Counterplaintiff was put on notice that "No such independent cause of action exists in Florida." (Doc. 47 p. 20). Counterplaintiff's second amended counterclaim brings the same claim, citing the same two Eleventh Circuit cases under this heading, neither of which concern an independent cause of action for spoilation. (Doc. 52 ¶¶ 259-289). Additionally, as earlier discussed, the counterclaim details precisely no incidences of evidence spoilation. *See discussion supra* Part III(D). Counterplaintiff injected a new issue, referring in each spoilation Count "the spoilation pleaded in Part IV.H.1 above." (Doc. 52 ¶¶ 275-289). No such part exists in the counterclaim.

## IV. LEAVE TO AMEND SHOULD NOT BE GRANTED

Although leave to amend is usually liberally granted, Defendants-Counterplaintiffs-sometimes-Third-Party-Plaintiffs have argued aggressively against granting leave to amend from their very first motion in this action. (Doc. 28 at 24) (Arguing that Plaintiff's initial complaint should be dismissed "with prejudice and without leave to amend."). This is Defendant's *third* attempt to file a counterclaim, and it fares no better than its first. To a certain extent, Defendant ought reap what it sows, and case law supports a dismissal with prejudice as an appropriate harvest. *Barmapov v. Amuial*, 986 F.3d 1321, 1323 (11th Cir. 2021) (affirming dismissal with prejudice of second amended complaint "because Barmapov, who was represented by counsel throughout the proceedings, repeatedly failed to file a proper pleading").

While dismissing a claim with prejudice is strong medicine, it is dispensed for good reason. As Judge Tjoflat observed in his *Barmapov* concurrence:

> The federal judiciary is a system of scarce resources, and it is not the proper function of courts in this Circuit to parse out incomprehensible allegations. Our district courts have neither the manpower nor the time to sift through a morass of irrelevant facts in order to piece together claims for plaintiff's counsel. As the drafters of their pleadings and as officers of the court, lawyers practicing in this Circuit bear a responsibility to preserve the limited resources of the judiciary and present only clear, precise pleadings to the courts. In fact, I have—on multiple occasions—expressed my belief that the deliberate use of a shotgun pleading to impede the orderly process of a case is an abusive litigation tactic that could warrant a citation for criminal contempt. Though poorly drafted pleadings may not present the same concerns as those drafted for the express purpose of abusing the judicial process, they nevertheless overburden the courts with makework and impede the efficient dispensation of justice.

*Barmapov v. Amuial*, 986 F.3d 1321, 1327–28 (11th Cir. 2021) (Tjoflat, J., concurring) (cleaned up). As discussed above, Counterplaintiff was put on notice as to the myriad defects in his complaint, and none of them were addressed. In fact, the defects have *worsened.*

## V.  IN THE ALTERNATIVE, IF ANY COUNTERCLAIMS SURVIVE, THEY MUST BE MORE DEFINITELY STATED

For all of the reasons explained *supra*, Part II and III, the forty-nine-count counterclaim is so vague and ambiguous that Counterdefendants cannot reasonably prepare a response to it. It should be dismissed in its entirety, but if it is not, it must be more definitely stated. Fed. Rul. Civ. P. 12(e). Additionally, Defendants' affirmative defenses do not articulate factual bases and must be more definitely stated, if not struck.

## VI. IF ANY CLAIMS SURVIVE, REDUNDANT, IMMATERIAL, AND SCANDALOUS MATERIAL IS DUE TO BE STRUCK.

Pursuant to Fed. Rul. Civ. P. 12(f), if any counterclaims survive, Counterdefendants respectfully move this honorable Court to strike all redundant, immaterial, impertinent, or scandalous matter in the counterclaim, including: Paragraphs 1-4, 85-109 and all other paragraphs containing such material. Additionally, Defendants' affirmative defenses—especially its assertion of "license" at ¶315—are so deficient they ought be struck. There is no circumstance where "the United States federal government" can grant private actors unlimited future licenses to infringe copyright.

## VII.    PRAYER FOR RELEIF

WHEREFORE, Because the defects have only worsened, Defense Distributed's counterclaims should be dismissed with prejudice. In addition, Counterplaintiff has asserted baseless claims under the Lanham Act, entitling Counterdefendants to attorneys' fees for opposing it, if the opposition is successful. 15 U.S.C. § 1117(a). The action entails a § 1117(a) "exceptional circumstances" due to the Counterdefendants' strength of legal position and the Counterplaintiff's abusive manner of litigation. See, e.g., *Tobinick v. Novella*, 884 F.3d 1110 (11th Cir. 2018).

## Local Rule 3.01(g) Certification

Pursuant to M.D. Fla. R. 3.01(g), I hereby certify that I met and conferred telephonically with opposing counsel regarding the substance of the foregoing motion. Counsel could not reach an agreement as to resolution, and thus the motion is opposed.

Respectfully submitted,

DATED:  January 17, 2025

*/s/ Gary C. De Pury*
Gary C. De Pury
Florida Bar No: 126588
Law Offices of Gary De Pury, P.A.
21035 Leonard Road
Lutz, Florida 33558
Tel: (813) 607-6404
Email: Gary@DePury.com
*Lead Counsel for Counterdefendant Alex Holladay and MAF Corp.*

*/s/Matthew Larosiere*
Matthew Larosiere, Esq.
Fla. Bar. No. 1005581
The Law Offices of Matthew Larosiere
6964 Houlton Circle
Lake Worth, FL 33467
Email: Larosieremm@gmail.com
Tel: (561) 452-7575
*Lead Counsel for Counterdefendants Elik, Stroke, and Lettman*

*/s/ Zachary Z. Zermay*
Zachary Z. Zermay, Esq.
Fla. Bar № 1002905
*Zermay Law, P.A.*
1200 Fourth Street, #1102
Key West, FL 33040
Email: zach@zermaylaw.com
Tel: (305) 767-3529
*Lead Counsel for Plaintiff/Counterdefendant Matthew Larosiere*