United States District Court
Middle District of Florida
Orlando Division

Matthew Larosiere,
        Plaintiff,

v.

Cody Rutledge Wilson, DEFCAD, Inc.,
Defense Distributed, and Dioskouroi LLC,
        Defendants.

_____       No.  6:24-cv-1629

Defense Distributed,
        Counterplaintiff /
        Third-Party Plaintiff,

v.

The Gatalog, Matthew Larosiere,
John Elik, Alexander Holladay, Peter
Celentano, Josh Kiel Stroke, John Lettman,
and MAF Corp,
        Counterdefendant / Third-Party
        Defendants.

_____

**Defendants' Response to**

**Plaintiff's Motion for a Preliminary Injunction**

**Table of Contents**

Argument ...................................................................................................1

I.      Only 3D models are at issue. ...........................................................1

II.     None of the standard injunction prerequisites are established. ..................3

        A.      No irreparable harm is established. ...................................3

                1.      No blanket presumption of harm exists. ..................3

                2.      No proof of irreparable harm exists. ......................4

        B.      The claims are meritless. ................................................6

                1.      The 3D models at issue were not registered. ..........8

                2.      The 3D models at issue cannot be *validly* registered. ............9

                3.      False ownership claims invalidate registrations. ...................15

        C.      Equities oppose Larosiere. ...........................................17

        D.      The public interest opposes Larosiere. ............................19

III.    Alternative Arguments. ...................................................................19

        A.      The motion makes no case against the secondary defendants. .....19

        B.      Personal jurisdiction over Dioskouri is lacking. ................20

        C.      No relief as to assets is warranted. ................................20

Conclusion ...................................................................................................20

**Argument**

Plaintiff Larosiere's motion for a preliminary injunction should be denied because it fails to establish any preliminary injunction prerequisites. Irreparable harm is missing because the argued harms do not suffice legally and are unproven factually, especially since Larosiere admittedly never made money on the works at issue and never wants to. There is no likelihood of success for many reasons, including that the models in question cannot be registered. Equities and the public interest also oppose giving relief. The motion should be denied for all of these fundamental reasons and, if necessary, the additional reasons supplied in the alternative.

## I.   Only 3D models are at issue.

The motion seeks relief as to three categories of 3D-printable firearm works: 3D models, 2D photos, and text. *See* Doc. 53 at 1-2, ¶ 1 & n.1. Claims about 3D models are the most important part of both the overall action and this motion. Because their resolution will substantially impact important legal doctrines and the overall work of Defense Distributed and DEFCAD, these claims deserve maximum judicial scrutiny and immediate defeat. Specifically, the claims about 3D models that this response challenges as unworthy of a preliminary injunction are the claims concerning the 3D models allegedly covered by United States Copyright numbers VA0002385899, Doc. 43 at 15, ¶ 112, VA0002385901, *id.* at 17, ¶ 127, VA0002422527, *id.* at 22, ¶ 163, and VA0002418947, *id.* at 28, ¶ 204; *id.* at 35, ¶ 251.

The claims about 2D photos and text are less important on both fronts (importance to the jurisprudence and importance to parties) and threaten to distract from the predominant issues regarding 3D models. Yet litigating a motion for a preliminary injunction about the 2D photo and text claims is still a very costly and burdensome endeavor, especially in this posture. So while Defendants maintain that the claims about 2D photos and text are completely meritless and plan seek a final judgment against them in due course, an important mootness development pretermits the need for any preliminary-injunction decision regarding those claims.

**Plaintiff's request for a preliminary injunction regarding this action's 2D photos and texts is now moot**. Ex. A at 2, ¶7. Effective January 25, 2025, and lasting until this litigation ends, Defense Distributed and DEFCAD shall employ policies halting distribution of the 2D photos and textual works that Larosiere seeks a preliminary injunction about. *Id.* As to all of those files, the cessation going into effect until this case's conclusion is absolute, unqualified, and backed by a detailed declaration showing substantial deliberation on all key concerns. *Id.*

This showing satisfies the mootness test, *see, e.g.*, *Purpose Built Families Found., Inc. v. United States*, 95 F.4th 1346, 1353 (11th Cir. 2024), especially since continued litigation of the *retrospective* claims regarding 2D photos and texts means that no jurisdictional avoidance of those claims is happening, *see id.* For these reasons, the request for a preliminary injunction regarding any 2D photos and texts is moot. The only live issue is whether Larosiere is entitled to a preliminary injunction on his claims regarding 3D models. He is not.

## II.    None of the standard injunction prerequisites are established.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).  The motion does not meet this test because all key elements are missing.

### A.    No irreparable harm is established.

First and foremost, the motion should be denied because it fails to establish the critical element of irreparable harm.  The test requires a showing that irreparable harm is "likely"—not just "possible."  *E.g.*, *Hoop Culture, Inc. v. GAP Inc.*, 648 F. App'x 981, 985 (11th Cir. 2016).  "Likely" irreparable harm cannot be presumed.  It must be affirmatively established.  But Larosiere did not do so.

### 1.    No blanket presumption of harm exists.

The motion's leading (presumably best) irreparable harm argument invokes a blanket presumption: "Irreparable harm is presumed even absent a detailed showing thereof, meaning there is no requirement to actually prove irreparable harm when seeking an injunction against copyright infringement."  Doc. 53 at 11. The Court should reject this because no such presumption exists.

Though courts used to use certain presumptions of irreparable harm, the Supreme Court in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), and *Winter v. NRDC*, 555 U.S. 7 (2008), rejected them.  Now under *eBay* and *Winter*, litigants seeking a preliminary injunction must always show irreparable harm (and

3

every other prerequisite) with case-specific arguments that *are tailored to the particular circumstances*.  The Eleventh Circuit correctly understands that *eBay* and *Winter*'s defeat of presumed irreparable harm applies to Copyright Act actions in particular.  *See Campbell v. Bennett*, 47 F.4th 1362, 1368 (11th Cir. 2022); *Hoop Culture, Inc. v. GAP Inc.*, 648 F. App'x. 981, 984-85 & n.2 (11th Cir. 2016).

The motion's authority is plainly outdated.  It blindly invokes (at 11) the 1998 *CBS* case and a follower, not realizing that *eBay* and *Winter* clearly superseded *CBS* and put the nail in presumed-harm's coffin.  *See Wicked Grips LLC v. Badaan*, No. 8:21-CV-2131-KKM-SPF, 2021 WL 4710488, at *4 (M.D. Fla. Oct. 8, 2021) ("these cases [including *CBS*] predate the Supreme Court's decision in *eBay*").  "If it ever was, such an approach is not available after *eBay*."  *Id.*  "Based on *eBay*'s instruction that district courts are to apply the traditional, fact-intensive rules of equity, rather than general or categorical rules based on a finding of success on the merits, *see eBay Inc.*, 547 U.S. at 393–94, this Court holds that there is no presumption of irreparable harm for copyright infringement."  *Id.*

### 2.    No proof of irreparable harm exists.

Without presumptions, likely irreparable harm must be proven with evidence.  *See, e.g.*, *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1286 (11th Cir. 1990).  Yet the motion supplies none.  The brief speculates of damaged "reputation, goodwill, and brand."  Doc. 53 at 11.  But the brief gives no evidence that such harms are likely to *occur*.  Nor does it

4

ever try to prove that such harms are *irreparable*.  "Conjecture" on either front does not suffice.  *See Ne. Florida*, 896 F.2d at 1286.

Nothing is gained by the final argument (at 12-13) that "Defendants' erratic and oftentimes inexplicable behavior makes the perceived affiliation particularly damaging to Plaintiff's business goodwill."  This damage theory has to be proven as well; there is no presumption of "business goodwill" injuries occurring and no presumption of them being irreparable.  *See, e.g.*, *Castellano Cosmetic Surgery Ctr., P.A. v. Rashae Doyle, P.A.*, No. 8:21-CV-1088-KKM-CPT, 2021 WL 3188432, at *9 (M.D. Fla. July 28, 2021).  Yet the motion again presents no proof.  Even if the motion's "inexplicable behavior" story is fully believed, no evidence shows that Larosiere's "business goodwill" was actually injured by that association.  Just like the failing plaintiff in *Castellano*, Larosiere "has not provided evidence of a single client who has left" and has no evidence of anyone's "worsened impression" of him.  *Id.*  There is no proof of who these market participants might be, let alone evidence showing that they are likely to know about the reputation at issue or care.

At bottom, all of Larosiere's irreparable-harm "hypotheticals are just that— speculation that the [defendant] 'may suffer irreparable harm at some point in the future,' not concrete proof."  *Murthy v. Missouri*, 144 S. Ct. 7, 9 (2023).  "And such speculation does not establish irreparable harm."  *Id.*  The Court could therefore deny the motion on this ground alone, not needing to reach any other element.

**B.    The claims are meritless.**

Plaintiffs seeking a preliminary injunction must show a "substantial likelihood of success on the merits."  *E.g.*, *Middlebrooks v. Dist. Attorney of Floyd Cnty., Georgia*, No. 24-11498, 2025 WL 227587, at *1 (11th Cir. Jan. 17, 2025). Larosiere tries to do this with his copyright infringement claims, Doc. 53 at 8-11, which pertain to the following five 3D models:

- The "MPP99" 3D model: The 3D model for a 3D-printable firearm that depicts "a handgun frame" and is allegedly covered by registration number VA0002385899.  Doc. 43 at 15, ¶ 112.  The "MPP99" refers to a 3D-printable pistol frame for 9x19mm platforms such as "Walther P99, Walther PPQ, Walther PDP."  Doc. 43 at 14, ¶ 106 n.3.

- The "SF5" 3D model: The 3D model that "depict[s] a gun, the SF5" and is allegedly covered by registration number VA0002385901.  Doc. 43 at 17, ¶ 127.  "SF5" refers to a 3D-printable rifle receiver set—a lower receiver, upper receiver, and handguard—for a "Pistol-Caliber Carbine" utilizing .40S&W, 10mm, and 9x19mm calibers akin to an "MP5."  Doc. 43 16 ¶ 122 & n.8.

- The "Plastikov V4" 3D model: The 3D models that "depict[] parts of a firearm, the Plastikov V4," and are allegedly covered by registration number VA0002422527. Doc. 43 at 22, ¶ 163.  "Plastikov V4" refers to a 3D-printable lower receiver for a rifle utilizing the 7.62x39 caliber akin to an "AK-47."  Doc. 43 at 21, ¶ 159 & n.12.

6

- The "Hitchhiker" 3D model: The 3D models that "depict[] parts of a firearm, the Hitchhiker," and are allegedly covered by registration number VA0002418947.  Doc. 43 at 28, ¶ 204.  "Hitchhiker" refers to  a 3D-printable lower receiver for a rifle in the .22LR caliber.  Doc. 43 at 28, ¶ 201 n.21.

- The "TaxiDriver" 3D model: 3D models that "depict[] parts of a firearm, the Hitchhiker," and are allegedly covered by registration number VA0002418947.  Doc. 43 at 35, ¶ 251.  "TaxiDriver" refers to a 3D-printable "single-shot fully DIY open-bolt .22LR firearm that can be configured as a carbine (legally, a pistol) or a rifle."  Doc. 43 at 35, 250 & n.24.

Importantly, each of Larosiere's 3D model claims presents the Copyright Act "work" in question as *the entire 3D model*—not any subsidiary ingredient or aspect thereof.  *See* Doc. 43 at 37, ¶ 263(c) (the MPP99 model is one "work"); Doc. 43 at 38, ¶ 263(g) (the SF5 model is one "work"); Doc. 43 at 38, ¶ 263(*l*) (the Plastikov v4 model is one "work"); Doc. 43 at 39, ¶ 263(o) (the Hitchhiker model is one "work").  So to carry his burden for a preliminary injunction, Larosiere has to show a substantial likelihood of success with the claims *as he chose to frame them*— i.e., that there has been actionable copyright infringement *of work as the entirety of each 3D model.*  This cannot be done for multiple independent reasons.

That Larosiere's complaint unilaterally slapped the "infringement" label on everything within reach doesn't make it so as a matter of law; and this is true *regardless* of whether or not one or two paragraphs with the "infringement" label was admitted.   What actually controls are the pleaded and proven *facts*—not the

7

gamesmanship of "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

### 1.    The 3D models at issue were not registered.

First, the Court should hold that Larosiere will not succeed on the merits of his claims regarding the entirety of each 3D model because the five 3D models at issue were not registered.  The motion claims (at 8) that its attached registrations cover all of the 3D models at issue, invoking them as "*prima facie* evidence of validity and ownership."  Doc. 53 at 8.  But a close look shows that these registrations do *not* cover the 3D models at issue.  At most they cover only "technical drawings"—2D photos or renders that have not been produced, are not at issue here due to mootness, and that do not equal a 3D model.

The claimed "MPP99" 3D model is allegedly covered by registration number VA0002385899.  Doc. 43 at 15, ¶ 112.  But that registration statement says that it "extends to deposited technical drawings only," which means that it could only cover certain 2D drawings or renders of that firearm—not its 3D models:

| | |
|---|---|
| **Name:** | Matthew Larosiere |
| **Date:** | December 23, 2023 |
| **Copyright Office notes:** | Basis for Registration: Registration does not extend to any useful article depicted. Registration extends to deposited technical drawing only. 17 USC 101, 102(a), and 113. |

Doc. 53-1 at 13.  The same is true for all of the other claimed 3D models.  They all take care to say that their registration "extends to deposited technical drawings

only," Doc. 53-1 at 15 ("SF5"), and so do the statements supposedly covering the

3D models for the "Plastikov V4," Doc. 53-1 at 27 ("Registration extends to

deposited technical drawing only."), the "Hitchhiker" and "TaxiDriver," Doc. 53-1 at

34 ("Registration extends to deposited technical drawing only.").

### 2.    The 3D models at issue cannot be *validly* registered.

Second, even if the cited registrations covered all of the 3D models at issue,

the Court should hold that Larosiere will not succeed on the merits because the

3D models at issue could not be *validly* registered.  The fact of registration does

not conclusively prove a copyright's validity; it is merely evidence subject to

rebuttal.  *See* 17 U.S.C. § 410(c*); Ross v. Apple*, Inc., 741 F. App'x. 733, 736 (11th

Cir. 2018).  "[T]o rebut the presumption of validity, an infringement defendant must

simply offer some evidence or proof to dispute or deny the plaintiff's prima facie

case of infringement."  *Progressive Lighting, Inc. v. Lowe's Home Centers, Inc.*,

549 F. App'x 913, 919 (11th Cir. 2013) (cleaned up).  Multiple counterarguments

rebut the presumption and invalidate Larosierie's claimed copyrights.

### i.    3D models of guns cannot be registered.

Can 3D models of guns be registered?  The Court should conduct its

analysis of this, the most important question in the case, by adopting as correct

the leading scholarly view of Lucas Osborn, *Creativity and Utility: 3D Printable

Files and the Boundary Between Copyright and Patent Protection*, in *3D Printing

and Beyond: Intellectual Property and Regulation* (Dinusha Mendis, Mark Lemley

& Matthew Rimmer eds., Cambridge University Press 2019) (attached as Exhibit

9

B), which accords with and correctly elaborates the holdings of *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405 (2017).  As a matter of law, 3D models of guns can never be validly registered.  And alternatively, if ever one could be registered on special facts, this is no such extraordinary case.

"Congress has provided copyright protection for original works of art, but not for industrial designs."  *Star Athletica*, 580 U.S. at 409.  "The line between art and industrial design, however, is often difficult to draw."  *Id.*  "This is particularly true when an industrial design incorporates artistic elements."  *Id.*  "Congress has afforded limited protection for these artistic elements by providing that 'pictorial, graphic, or sculptural features' of the 'design of a useful article' are eligible for copyright protection as artistic works if those features 'can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.'"  *Id.* (citing 17 U.S.C. § 101).  Under this scheme, "a feature incorporated into the design of a useful article is eligible for copyright protection only if the feature (1) can be perceived as a two- or three-dimensional work of art separate from the useful article and (2) would qualify as a protectable pictorial, graphic, or sculptural work—either on its own or fixed in some other tangible medium of expression—if it were imagined separately from the useful article into which it is incorporated."  *Id.*

"Work" status is the key.  "The Copyright Act of 1976 defines copyrightable subject matter as 'original works of authorship fixed in any tangible medium of expression.'"  *Star Athletica*, 580 U.S. at 411 (quoting 17 U.S.C. § 102(a)).  A 3D

model of a gun is *not* a "work."  *See* Osborn, *supra*, at 145-146.  The gun—not the model—would be the "work" (and then only sometimes).  *See id.*  The 3D model can only be a non-"work" "material object (namely the tangible computer memory) in which the sculptural work is fixed (i.e., stored), and from which the work can be perceived (i.e., seen) with the aid of a machine (i.e., a 3D printer)."  *Id.*

"Useful article" status entails similar nuance.  "The statute does not protect useful articles as such." *Star Athletica*, 580 U.S. at 411.  "Rather, 'the design of a useful article' is 'considered a pictorial, graphical, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.'" *Id.*  A 3D model of a gun is *not* a "useful article" either.  *See* Osborn, *supra*, at 146-147.  Again, only the gun—not the model of it—could be the "useful article."  *See id.*

"Further, when the copyright statute uses the phrase 'the design of a useful article,' it is referring to things that might otherwise be copyrightable works." *Id.*  "It is not referring to substrates that contain copies of works." *Id.*  "Hence, it is a red herring to ask whether DMFs [digital manufacturing files] are useful articles." *Id.* The controlling question instead is "whether the object the DMF will manufacture or depict constitutes a useful article." *Id.*  "If the 3D printed object is purely a useful article, it is not protected by copyright."  *Id.*  But "if the 3D printed object is an aesthetic sculpture, it is copyrightable subject matter (and any DMF that would print it or display an image of it is protected by copyright)."  *Id.*

Larosiere's claims fail the statutory test because the guns that these 3D models manufacture and/or depict are purely useful articles. *See id.* In this respect, guns are part and parcel of the Copyright Office's laundry list of common "useful articles." *See* U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 900 at 42-42 (3d ed. 2021) ("Common examples of useful articles include: Machinery, such as generators, lathes, and cement mixers . . . Tools and implements, such as hammers, shovels, and saws….Instruments, such as hypodermic needles, scalpels, calipers, and hair clippers….Household appliances, such as refrigerators, stoves, toasters, food processors, vacuum cleaners, washing machines, air conditioners, clocks, and television sets . . . .). Accordingly, the Copyright Office acknowledged a firearm's "useful article" status by refusing to supply protection for "any useful article depicted" in Larosiere's submissions. Doc. 53-1 at 13; *accord* Doc. 53-1 at 15; Doc. 53-1 at 27; Doc. 53-1 at 34. Because of this underlying "useful article" status, copyright law does not protect the 3D models at issue.

Correct analysis was used in *Enterprises International, Inc. v. International Knife & Saw, Inc.*, No. C12-5638 BHS, 2014 WL 1365398, at *1 (W.D. Wash. Apr. 7, 2014), the key case about "technical drawings for knife blades." Because the "useful article" at issue there—the knife—cannot be registered, neither could a drawing that just provides information used to manufacture the useful article:

> While the [technical] drawings may not be considered "useful articles," they are designs of useful articles. The copying of these types of technical design drawings, which are used only for the fabrication of

12

specific knives or knife blades, when the designs admittedly contain only functional and utilitarian information, the sole purpose of which is to manufacture specific types of knives or blades to precisely fit certain machines, does not constitute a violation of the … Act.

*Id.* at *6  The same logic applies here.

### ii.    The requisite creativity is missing.

An additional reason to hold that Larosiere's 3D models of 3D-printable firearms cannot be registered is that they lack the requisite "originality."  The leading case is then-Judge Gorsuch's decision for the Tenth Circuit in *Meshworks v. Toyota Motor Sales U.S.A.*, 528 F.3d 1258 (10th Cir. 2008).  To qualify as "original," the work must be "independently created by the author (as opposed to copied from other works)."  *Id.*  Applying this rule, *Meshworks* correctly held that "very good" "model" "copies" of a car lacked sufficient creativity *separate from the car itself* and thus were not protected.  *Id.* at 1264-65; *see also ATC Distr. Group, Inc. v. Whatever It Takes Trans. & Parts, Inc.*, 402 F.3d 700, 712 (6th Cir. 2005) (denying protection to catalog illustrations of transmission parts "copied from photographs cut out of competitors' catalogs"); *Bridgeman Art Library, Ltd. v. Corel Corp.*, 36 F. Supp. 2d 191, 197 (S.D.N.Y. 1999) (denying protection to photographs that were "'slavish copies' of public domain works of art")).  So too here.

Yet instead of realizing that *lack* of originality defeats copyright protection for a useful article's depiction or model, Plaintiff touts that his works are *hyper-precise*, with "dimensions and angles which extend to *one thousandth of a millimeter*." Doc 53-2 at ¶ 12(a) (emphasis added). He further emphasizes that the models "copied"

13

by Defendants, and the drawings/renderings of the same, contain "identical" arbitrary dimensions, like a part measured as 26.808 millimeters.  Doc. 53-11 at 7. But whenever a model "slavishly" duplicates another work, or a useful article like a gun, with zero errors and nothing new added, the result is that the model (or drawing) lacks the very creativity needed to invoke copyright protection in the first place.   This is true whether Larosiere built his gun first and then took measurements from it, or designed it entirely in a CAD program before ever building it in the real world. "If the basic design reflected in a work of art does not owe its origin to the putative copyright holder, then that person must add something original to that design, and then only the original addition may be copyrighted." *Meshworks*, 528 F.3d at 1063.

It is no answer for Larosiere to claim that he gave these otherwise not-copyrightable 3D models a modicum of unique pictorial, graphic, or sculptural features.  That fails most obviously because the complaint does not plead the claims that way.  It pleads claims for infringement of each 3D model *as a whole*, and each 3D model *as a whole* is clearly not protected as such.

Furthermore, the Copyright Act "establishes a special rule for copyrighting a pictorial, graphic, or sculptural work incorporated into a 'useful article,' which is defined as 'an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information.'"  *Star Athletica, L.L.C.*, 580 U.S. at 408 (quoting 17 U.S.C. § 102(a)).  Under this rule, "'the design of a useful article' is 'considered a pictorial, graphical, or sculptural work only if,

14

and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.'" *Id.* This "separability.'" *Id.*

At best—and still there is very serious doubt—Larosiere might hypothetically have been able to cast an actionable claim about these 3D models by limiting it to features that comply with *Star Athletica*'s application of the severability requirement. But all that matters now is the much simpler question of whether the current case does so. Clearly it does not, since the complaint and motion never even tried to frame the claims that way in the first place.

### 3. False ownership claims invalidate registrations.

Even if the cited registrations covered all of the 3D models at issue, and even if they are copyrightable, the Court should hold that Larosiere will not succeed on the merits of his claims regarding the "SF5" model and "Plastikov v4" model because Larosiere did not own them. Elik did. The contrary statements Larosiere's applications made are intentional, material misrepresentations that invalidate the claimed registrations. *See St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1201 (11th Cir. 2009).

Two ownership theories are asserted in the motion's declarations. Larosiere claims to own Elik's files (1) as "work made for hire" under 17 U.S.C. § 101, and (2) under a written assignment from Elik and Larosiere. Doc. 53-2 at 4, ¶¶ 8-9 (Laroserie); Doc. 53-3 at 4, ¶¶ 7-9 (Elik). Both ownership theories fail.

15

i.      The "work for hire" theory fails.

First, Larosiere tries to establish that he owns Elik's files as "work made for hire" under 17 U.S.C. § 101.  *See generally Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 743 (1989) ("To determine whether a work is for hire under the Act, a court first should ascertain, using principles of general common law of agency, whether the work was prepared by an employee or an independent contractor. After making this determination, the court can apply the appropriate subsection of § 101.").

Elik did not do the work in question as a § 101 "employee" to whom the first "work made for hire" definition could apply.  He did the work in question as an independent contractor to whom only the second definition could apply.  So the applicable provision is the second § 101 "for hire" definition.  Under that test, Elik's work does not qualify as "for hire" for several independent reasons.

As an independent contractor, the second § 101 "for hire" definition requires that the work have been "specially ordered or commissioned."  17 U.S.C. § 101. No such special order or commission occurred here.  It also requires that "the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire."  17 U.S.C. § 101.  None exists here.

As an independent contractor, the second § 101 "for hire" definition also covers only nine categories of work specially enumerated by the statute (e.g., "as a part of a motion picture"... "as an atlas").  17 U.S.C. § 101.  None of the enumerated categories cover the work at issue here.

16

### ii.   The assignment theory fails.

Larosiere cannot establish that he owns Elik's files under a written assignment from Elik and Larosiere because the assignment is unproven.  The motion gives just a single sentence each in the declarations of Larosiere, Doc. 53-2 at 4, ¶9, and Elik, Doc. 53-3 at 4, ¶9.  But neither lone sentence supplies the actual assignment agreement, violating the best evidence rule that will apply at every later stage of the case, see Fed. R. Evid. 1002; *Karlson v. Red Door Homes*, LLC, 611 F. App'x 566, 569 (11th Cir. 2015) ("the grant must be in writing").  Nor do the declarations supply, via quotation or otherwise, anything close to a reasonably informative assertion of the assignment's material terms.  This triggers the rule that "the production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse."  Thelma C. Raley, Inc. v. Kleppe, 867 F.2d 1326, 1329 (11th Cir. 1989); see also McCormick on Evidence § 264 (8th ed. 2020).)  For these reasons, the  motion's assignment proof is both clearly insufficient for a permanent injunction and also not "appropriate" for the serious preliminary injunction being sought.  Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995).

### C.   Equities oppose Larosiere.

The motion should also be denied because equitable considerations oppose the requested relief.  The Eleventh Circuit's Copyright Act jurisprudence has long recognized that equitable rules like unclean hands should operate to deny special prospective relief (e.g., an injunction) irrespective of whether or not those same

17

doctrines would apply with full force to deny normal retrospective relief in a final judgment.  *See Peter Letterese And Associates, Inc. v. World Inst. Of Scientology Enterprises*, 533 F.3d 1287, 1323 (11th Cir. 2008).  Two equities loom large here.

First, delay weighs heavily against Larosiere.  He waited *over 12 months* to seek this injunction, measured from December 2023 when he admittedly knew of the supposed infringements, Doc. 43 at 133, to this motion's January 2025 filing.  Equity requires more diligence than that.  *See Wicked Grips LLC v. Badaan*, No. 8:21-CV-2131, 2021 WL 4710488, at *5 (M.D. Fla. Oct. 8, 2021) (ten-month delay blocks relief); *Study Edge, LLC v. Skoolers Tutoring Ctr.*, No. 17-cv-76, 2017 WL 6994563, at *5 (N.D. Fla. Dec. 8, 2017) (seven-month delay blocks relief).

Second, equity runs against the motion because Larosiere and/or his "employee" John Elik have committed substantial spoliation of evidence.  "On September 6, 2024, contemporaneously with Plaintiff Matthew Larosiere's public announcement of the filing of this action, third-party defendant and alleged Larosiere employee Elik deleted the entire four-year comment history of Elik's Reddit account."  Ex. A at 3, ¶8.  Larosiere and Elik, as administrators of The Gatalog Rocketchat server, have since Elik's receipt of a litigation hold notice deleted the beta rooms, file transfer histories, and communication records of many of the models they publish in violation of the EAR and ITAR, including that of PLA.boi's "FTN.3," the 3D-printable suppressor used by Luigi Mangione in the assassination of UnitedHealth CEO Brian Thompson in New York City.  *Id.*

If necessary, Defendants should be entitled to an evidentiary hearing that calls Larosiere and Elik as witnesses to develop the full extent of the spoliation. Already, though, this evidence demonstrates the kind of unclean hands that should stop the issuance of the requested preliminary injunction.

**D.    The public interest opposes Larosiere.**

The motion should be denied because the public interest opposes relief.  In this respect, the public interest is represented by the United States Department of Commerce's "EAR" regime—the system of "Export Administration Regulations" administered by the Department's Bureau of Industry and Security under the Arms Export Control Act of 1976—which Larosiere flouts by developing and distributing the 3D models in question worldwide without limitation.  *See* Doc. 52 at 24-29.  And by that same token, DEFCAD can neither be punished for honoring its federal obligations nor forced to violate them for the sake of Larosiere's invalid copyright claims.  Denying the injunction honors all of these policies.

**III.    Alternative Arguments.**

**A.    The motion makes no case against the secondary defendants.**

Alternatively, even if the injunction elements have been satisfied in general, the motion should be denied as to Defendants Wilson and Dioskouri LLC because there is no evidence implicating them.  The only two serious targets are Defcad Inc. and Defense Distributed, and the complaint's idea of veil piercing is nowhere pursued in this motion (for good reason).

**B.    Personal jurisdiction over Dioskouri is lacking.**

Even if the injunction elements have been satisfied in general, the motion should be denied as to Dioskouri LLC because the claims against it warrant dismissal for lack of personal jurisdiction for the reasons given in its Rule 12(b)(2) motion to dismiss, Doc. 48 at 12-17, which has been responded to, Doc. 60, and would need to be resolved before the issuance of any relief against this defendant, *see Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

**C.    No relief as to assets is warranted.**

Last but not least, the motion's request for an order restraining Defendants' assets, Doc. 53 at 2, 14-15, should be denied both because the main preliminary injunction factors have not been shown and because no evidence shows any risk of asset dissipation or evasion.  *See Rosen v. Cascade Intern., Inc.*, 21 F.3d 1520, 1526 (11th Cir. 1994).  The only try is a footnoted website link to a story over six years old about unrelated circumstances.  On the contrary, clear recent evidence shows that both Defcad, Inc. and Defense Distributed are fully solvent business organizations that possess substantial assets and have an established history of meeting financial obligations.  Ex. A at 2, ¶ 6.

## Conclusion

The motion should be denied.

Respectfully submitted,

| | | |
|---|---|---|
| Chad Flores | David S. Gingras | F. Andino Reynal |
| cf@chadflores.law | david@gingraslaw.com | areynal@frlaw.us |
| Texas Bar No. 24059759 | Arizona Bar No. 021097 | Texas Bar No. 24060482 |
| Flores Law PLLC | California Bar No. 218793 | The Reynal Law Firm, PC |
| 917 Franklin Street | Gingras Law Office PLLC | 917 Franklin |
| Suite 600 | 4802 E. Ray Rd. #23-271 | 6th Floor |
| Houston, Texas 77002 | Phoenix, Arizona 85044 | Houston, Texas 77002 |
| T (713) 364-6640 | T (480) 264-1400 | T (713) 228-5900 |
| F (832) 645-2496 | F (480) 248-3196 | F (713) 820-6981 |

Counsel for Cody Wilson, DEFCAD, Inc.,
Defense Distributed, and Dioskouroi LLC