**United States District Court**
**Middle District of Florida**
**Orlando Division**

Matthew Larosiere,
     Plaintiff,

v.

Cody Rutledge Wilson, DEFCAD, Inc.,
Defense Distributed, and Dioskouroi LLC,
     Defendants.

_____      No.  6:24-cv-1629

Defense Distributed,
     Counterplaintiff /
     Third-Party Plaintiff,

v.

The Gatalog, Matthew Larosiere,
John Elik, Alexander Holladay,
Peter Celentano, Josh Kiel Stroke,
John Lettman, and MAF Corp,
     Counterdefendant /
     Third-Party Defendants.

_____

**Defense Distributed's Response to the**
**Counterdefendants' Motion to Dismiss**

**Table of Contents**

Table of Contents ................................................................................................... ii

Argument ............................................................................................................... 1

I.    The motion's use of outside evidence warrants conversion to a Rule 56 motion for summary judgment, discovery, and rebriefing. ...................... 1

II.   Alternatively, the motion to dismiss is meritless. .......................................... 3

    A.    Personal jurisdiction exists. ................................................................. 3

        1.    The RICO claims supply personal jurisdiction ......................... 3

        2.    Conspiracy jurisdiction exists. ................................................. 5

    B.    The counterclaims are well-pleaded overall. ..................................... 6

    C.    The particular strains of wrongdoing are well-pleaded. ................... 10

        1.    Wire fraud is established ....................................................... 11

            i.    ITAR violations show wire fraud. ................................. 11

            ii.    EAR violations show wire fraud. .................................. 14

            iii.    The third wire fraud basis is totally unanswered.......... 16

        2.    Extortion is established........................................................... 17

        3.    The murder threat is established. ........................................... 17

        4.    Spoliation (obstruction of justice) is established................... 17

    D.    Stipulations resolve reference issues. ............................................ 18

    E.    Alternative request for leave to amend........................................... 19

Conclusion............................................................................................................ 20

Defense Distributed files this response to Document 71, the motion to dismiss and for other relief by the Counterdefendants and Third-Party Defendants.

## Argument

### I. The motion's use of outside evidence warrants conversion to a Rule 56 motion for summary judgment, discovery, and rebriefing.

Rule 12 motions should concern pleadings alone. Yet this motion attaches and invokes substantial outside evidence—the Affidavits of John Elik, Doc. 71-1, Joshua Kiel Stroke, Doc. 71-2, and John Lettman, Doc. 71-3—as material support for both its jurisdictional and merits arguments. *See* Doc. 71 at 4 (invoking "affidavits attached to this motion" to deny jurisdiction); Doc. 71 at 6 (same); *see also* Doc. 71-1 at 1 (addressing merits issues of spoliation); *id.* (addressing merits issues of agency ("employment")); Doc. 72-2 (same); Doc. 71-3 (same); Doc. 71-3 (addressing merits issues of "payment" for services). Because of this evidentiary submission, the Court should convert this filing to a Rule 56 motion for summary judgment and order that discovery proceed before these matters are re-briefed.

The conversion process is well-established and applies across Rule 12. "Federal Rule 12(d) provides that a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is to be converted into a motion for summary judgment whenever matters outside the pleading are presented to and accepted by the court." 5C Charles A. Wright & Arthur R. Miller et al., Federal Practice & Procedure: Jurisdiction & Related Matters § 1366 (3d ed. West 2025) (hereinafter "Wright & Miller"); *accord* Swinford v. Santos, 121 F.4th 179, 187 (11th

Cir. 2024) ("If a party presents, and the court considers, evidence outside of the pleadings, the general rule requires the district court to convert the motion to dismiss into a motion for summary judgment.").  While Rule 12(b)(6) motions are the most common subject of conversion, the conversion framework applies with equal force to Rule 12(b)(1) and (2) arguments that are intertwined with the merits. That conversion operates that way in that latter context is "widely recognized" nationally, *Avedis v. Herman*, 25 F. Supp. 2d 256, 262 (S.D.N.Y. 1998), *aff'd*, 8 F. App's 69 (2d Cir. 2001), and is the law of the Eleventh Circuit due to *Eaton v. Dorchester Development, Inc.*, 692 F.2d 727, 733 (11th Cir. 1982).

Applied here, the rule calls for conversion because the Counterdefendants have injected substantial evidence about both jurisdictional and merits issues that are most appropriately resolved on summary judgment after discovery.  To preempt what the reply will certainly say, "[i]t is not necessary that the moving party actually label a motion to dismiss for failure to state a claim as one under Rule 12(d) in order for it to be converted into a motion for summary judgment."  Wright & Miller § 1366.  It is also "not relevant how the defense actually is denominated in the motion."  *Id.*  Labels aside, the "element that triggers the conversion is a challenge to the sufficiency of the pleader's claim supported by extra-pleading material, *id.*, which is precisely what occurred here.  This is therefore another of the "numerous cases in which the moving party initiates the introduction of matters outside the pleading and effects a conversion of the original motion."  *Id.* Alternatively, the Court should address the pleadings alone and deny the motion.

2

**II.    Alternatively, the motion to dismiss is meritless.**

   **A.    Personal jurisdiction exists.**

      **1.    The RICO claims supply personal jurisdiction**

The motion to dismiss the claims against Counterdefendants Elik, Stroke, and Lettman for lack of personal jurisdiction, *see* Doc. 71 at 3-6, should be rejected because Defense Distributed pleads RICO actions against all three of these defendants, Doc. 52 at 6-41, 42, ¶¶ 12-142,145-46 (Elik); *id.* at 6-41, 43, ¶¶ 12-142, 149-150 (Stroke); *id.* at 6-41, 43, ¶¶ 12-142, 149-150 (Lettman), and under *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997), RICO's 18 U.S.C. § 1965 provision for nationwide service of process and personal jurisdiction directly establishes both as to all three without more.

Rule 12(b)(2)'s test for personal jurisdiction does *not* require any extra showing of the RICO claim being especially "colorable," "material," or "substantial." The motion tries (at 5) to require that kind of elevated merits showing.  But Rule 12 does *not* require that, RICO does *not* require that, and no cited Eleventh Circuit precedent requires that.  *Republic of Panama* mentions it only in dicta, *see Republic of Panama*, 119 F.3d at 942, and *Courboin v. Scott*, 596 F. App'x 729 (11th Cir. 2014) (per curiam) (cited at 5), is not precedent for a reason.

Accepted first principles of personal jurisdiction confirm that Rule 12(b)(2) requires no elevated merits showing here.  When only state-law claims and diversity jurisdiction are at issue, plaintiffs certainly do *not* have to make an elevated merits showing of their state-law claim's merit to establish personal

3

jurisdiction. Special jurisdictional *discovery* might sometimes require an elevated showing of something like "colorability" (and even then the test is really just the same "prima facie" notion as a standard Rule 12(b)(6) threshold). *See, e.g.*, *In re Sheehan*, 48 F.4th 513, 526 (7th Cir. 2022). But in a diversity action's classic Rule 12(b)(2) posture, the pleaded state-law claim giving rise to personal jurisdiction does not have to be especially "colorable," "material," or "substantial." The same un-elevated Rule 12 standard that applies in diversity cases applies here as well.

Alternatively, even if personal jurisdiction turns on the RICO claims' "colorable" status, Defense Distributed's pleading meets that test with ease. The motion's only case, *Courboin v. Scott*, 596 F. App'x 729 (11th Cir. 2014) (per curiam) (not precedent), is easily distinguished. That pleading had "not identified any predicate acts that could constitute 'racketeering activity' under RICO." *Id.* at 733. But as shown in full detail below, this pleading specifies that the Gatalog's pattern of racketeering activity included six distinct sets of predicate acts, each of which is fully explained at length. Doc. 52 at 41, ¶ 140. So even if § 1965 operates only as to "colorable" RICO claims, Defense Distributed's pleading meets that test.

Because RICO's 18 U.S.C. § 1965 provisions for nationwide service of process and personal jurisdiction apply, no state-specific showings are needed. *See, e.g., Republic of Panama*, 119 F.3d at 947. Instead, the only showing needed is purposeful availment of the nation as a whole, *id.*, which Defense Distributed's pleading undoubtedly establishes as to Counterdefendants Elik, Stroke, and Lettman, and indeed as to all of the Gatalog principals it sues.

4

## 2.    Conspiracy jurisdiction exists.

Additionally, the motion's jurisdiction denials should be rejected because of conspiracy jurisdiction.  "Florida courts have held that the state's long-arm statute can support personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida."  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1281–82 (11th Cir. 2009).  That rule applies here.  The conspiracy is the Gatalog RICO enterprise that Elik, Stroke, and Lettman served as principals of—"an enterprise comprised of individuals who agreed to and did cooperate to further The Gatalog's objectives regarding the development, distribution, and administration of 3D printable gun files."  Doc. 52 at 8, ¶ 22.  The Court clearly has jurisdiction over the three Florida-resident co-conspirators that ran the Gatalog from Florida.  Counterdefendant Matthew Larosiere resides in Florida and made Florida the Gatalog's principal place of business.  *Id.* at 8-11, ¶¶ 23-33.  So did another key Gatalog principal that resides in Florida, Counterdefendant Alex Holladay.  *Id.* at 13-15, ¶¶ 46-54.  And so did Counterdefendant MAF Corporation, which resides in Florida under the control of Larosiere and Holladay.  *Id.* at 21-22, ¶¶ 77-84.  Thus, under the Florida rule of conspiracy jurisdiction that Eleventh Circuit precedent already recognizes, *United Techs. Corp. v. Mazer*, 556 F.3d at 1281-82, Elik, Stroke, and Lettman bear jurisdictional responsibility for all of their Gatalog co-conspirators' jurisdictional connections to Florida.

**B.    The counterclaims are well-pleaded overall.**

Defense Distributed's counterclaims do not constitute "shotgun" pleadings of any kind.  The motion's central point is that the pleading is both too long and too short—that it is too detailed and yet not detailed enough.  The cognitive dissonance stems not from any real pleading failure, but from the Counterdefendants' furtive disagreement with the law of joint and several liability that applies across this case.  That critical case dynamic cannot be avoided because each Counterdefendant faces joint and several liability for every other Counterdefendants' wrongdoing on not just one but several grounds.  *See* Doc. 52 at 38-39, ¶ 133.

First and foremost, the Counterdefendants bear joint and several liability for all of the Gatalog enterprise's wrongdoing because RICO law so holds: "Every circuit in the country that has addressed the issue has concluded that the nature of both civil and criminal RICO offenses requires imposition of joint and several liability because all defendants participate in the enterprise responsible for the RICO violations."  *United States v. Philip Morris USA*, 316 F. Supp. 2d 19, 27 (D.D.C. 2004).  Defense Distributed invokes that ground for joint and several liability expressly.  Doc. 52 at 38, ¶¶ 133(a).

Second and with equal force, the Counterdefendants face joint and several liability for all of the Gatalog enterprise's wrongdoing because traditional agency law regarding common enterprises and conspiracies so holds.  Courts "have justly imposed joint and several liability where a common enterprise exists," as well as in cases of "substantial assistance" and "aiding and abetting."  *Fed. Trade Comm'n*

6

*v. WV Universal Mgmt., LLC*, 877 F.3d 1234, 1240 (11th Cir. 2017). Defense Distributed expressly invokes those grounds for joint and several liability as to all of the Counterdefendants. *See* Doc. 52 at 38-39, ¶¶ 133(b), 133(c), 133(d).

Because of the crucial role joint and several liability plays here, the scope and aim of Defense Distributed's key pleadings makes perfect sense. If each the Counterdefendants were only being sued separately for one particular aspect of the Gatalog enterprise's wrongdoing, the pleading might be shorter and simpler. But because each participating principal in the Gatalog enterprise is jointly and severally liable for *all* of the Gatalog's wrongdoing, the pleadings must proceed accordingly. Multifaceted wrongdoing necessarily entails multifaceted pleadings.

No "Type 1" shotgun pleading has occurred because this is *not* "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021). Each numbered count in this pleading's "Causes of Action" section associates a particular Counterdefendant with a particular claim and particular factual allegations, expressly incorporating some *but not all* of the allegations given elsewhere in the pleading. Doc. 52 at 40-62, ¶ 137-289.

No "Type 2" shotgun pleading has occurred because this pleading is *not* full of "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Doc. 71 at 9. Nor is there any "Type 4" failure of not specifying "which of the defendants are responsible for which acts or omissions."

7

On the contrary, the pleading both honors Rule 8's call for a "short and plain" statement of the case and Rule 9's call for particularity as to applicable matters—including the key issue of every Counterdefendant being jointly and severally liable for the wrongdoing of every other Gatalog enterprise principal.

The motion fundamentally overstates Rule 9's severity. When "particularity" is needed, the "sufficiency of a fraud pleading tends to vary with the complexity of the transaction in question in the litigation." Wright & Miller § 1298. So Rule 9 applies with special flexibility where, as here, "the issues are complicated or the transactions cover a long period of time." *Id.* Fair notice is the keystone, *id.*, and under this corrected view of the test, Defense Distributed's pleading suffices.

After Part I establishes prerequisites like jurisdiction, Part II expressly details each Counterdefendants' connection to the enterprise. Matthew Larosiere is identified (at ¶¶ 23-33) as the ring leader controlling the Gatalog overall, particularly as to its publishing and communication services. John Elik is identified (at ¶¶ 34-45) as a Gatalog principal and key developer who facilitated the Gatalog's unlawful file distribution. Alexander Holladay is identified (at ¶¶ 46-54) as a Gatalog principal and co-founder of The Gatalog Foundation, actively involved in its administration alongside Larosiere. Peter Celentano is identified (at ¶¶ 55-62) as a Gatalog principal and manager of the Gatalog's content and financial transactions. Josh Stroke is identified (at ¶¶ 63-69) as a Gatalog principal and "Chief of Propaganda" that promoted the illegal enterprise online. John Lettman is identified (at ¶¶ 70-76) as a Gatalog principal and responsible for IT and

cyberattacks against Defense Distributed. And MAF Corp. is identified (at ¶¶ 77-84) as a Gatalog principal funding and facilitating the enterprise.

All of these allegations are material. All are presented with enough granular detail to show full plausibility. And all are essentially ignored by the motion, which prefers to act as though joint and several liability is a non-issue. But it is central.

Next in Part II is the main liability story. Paragraphs 85-90 describe how Defense Distributed operates legally, adhering to ITAR and EAR regulations, before paragraphs 91-96 begin the explanation of how the Gatalog competes illegally, monetizing its violations of both those regulatory regimes and more.

Each aspect of the illegal conduct is then broken down into logically divided subsections. Paragraphs 98 through 103 address violations of the ITAR, showing that the Gatalog knowingly distributed controlled firearm data in violation of federal export laws. Paragraphs 104 through 109 address violations of the EAR, showing that the Gatalog published files that required Commerce Department approval without ever getting it. Paragraphs 110 through 117 address defamation, disparagement, and trade libel, showing the "FEDCAD" smear campaign's intentional infliction of substantial business harm (that caused the damages specifically quantified later). In a similar fashion, Paragraphs 118 through 120 cover harassment and extortion, Paragraphs 121 through 127 cover the Gatalog's threats of murder, and Paragraphs 128 through 132 cover other attempts against Defense Distributed's infrastructure.

Then the pleading gives a claim-by-claim breakdown with exactitude, asserting (at ¶¶ 137-289) distinct claims against specific defendants for each aspect of their wrongdoing. Count 1 (¶¶ 137-140) is the RICO claim against The Gatalog as an enterprise. Counts 2-7 (¶¶ 141-154) are the separate RICO claims against each Counterdefendant, asserting both their direct liability for conduct done personally and their indirect liability due to joint and several liability.

Nothing about this pleading method is threadbare, chaotic, or "calculated to confuse." The common factual story given in Part II logically tracks all of the events that are legally material. The key allegations about the Gatalog's multifaceted wrongdoing are presented swiftly and in unison precisely so that Rule 8's call for a "short and plain" statement can be met without repetition. Doc. 52 at 2-3.

As a matter of law, the Gatalog's singular course of wrongdoing gives rise to *multiple* claims under *multiple* different legal regimes. Pleading it like this is at least one of several proper ways to do so, if not the only way.

Once the Court rejects this set of threshold complaints vis-à-vis the RICO claims, it should do as well vis-à-vis the copycatted arguments put against the Lanham Act claims and CFAA claims. The motion makes no original arguments as to the latter; it just repeats the basic "shotgun" critique, which is never correct.

### C.    The particular strains of wrongdoing are well-pleaded.

All of the RICO claims' predicate acts are validly pleaded. Doc. 52 at 23-38. The motion attacks some *but not all* of the pleaded predicate act categories. At best, it just chips away at the claim's extent; in no event can this incomplete

challenge yield total claim dismissal. Indeed, the RICO claims are properly pleaded not just as to a sufficient number of predicate acts, but as to all of them.

### 1. Wire fraud is established

The RICO claims plead three distinct categories of wire fraud predicate acts: (1) Violating federal ITAR regulations as specified in Part II.E.1, (2) Violating federal EAR regulations as specified in Part II.E.2, and (3) Defaming and disparaging Defense Distributed as specified in Part II.E.3. Doc. 52 at 41, ¶ 140. The motion challenges only the first two, saying that they speak of "unknown, undisclosed files posted by unknown, undisclosed Counterdefendants on unknown, undisclosed places." Doc. 71 at 13. But the wire fraud allegations are sufficiently specific and particularized across the board—as to the allegations regarding ITAR violations, as to the allegations regarding EAR violations, *and— critically—as to a totally unanswered third category of mail fraud allegations*.

### i. ITAR violations show wire fraud.

As to category one of the mail fraud predicate acts, violating federal ITAR regulations as specified in Part II.E.1, the pleading gives all necessary specifications in paragraph 102 and its neighbors. The motion's argument against this category of mail fraud simply ignores the most critical allegations in question.

In particular, Paragraph 102 shows four distinct instances of how the "Gatalog carries out its enterprise by violating the ITAR regulations codified at 22 C.F.R. § 127.1(a)(1), which make it unlawful to 'export or attempt to export from the United States any defense article or technical data or to furnish or attempt to

furnish any defense service for which a license or written approval is required'
without such a license."  Doc. 52 at 25-26, ¶ 102.  On all of these fronts, the
pleading successfully alleges that "The Gatalog acted with the intent to promote
violations of ITAR, knowing that the transfers would facilitate the illegal distribution
of export-controlled firearm data."  Doc. 52 at 103.  "Elik, in particular,
acknowledged the risk of prosecution but stated that he and Larosiere would not
face consequences, demonstrating a willful disregard for federal law."  *Id.*

To show the first of four specific ITAR violations, Paragraph 102(a) plausibly
details the actionable wire fraud that the Gatalog conducted with respect to foreign
developers:

> a. The Gatalog used the Rocketchat server hosted at
> chat.deterrencedispensed.com and the "Fuddbusters" Discord server
> to facilitate the unrestricted transfer of ITAR-controlled technical data
> *to foreign developers*.  It hosted private, invite-only chat rooms that
> directly coordinated transfers of ITAR-controlled technical data and
> money to foreign developers of 3D printable gun files like "Ze
> Carioca," who lives in Brazil.

*Id.*  The motion never answers this.

To show the second of four specific ITAR violations, Paragraph 102(b)
plausibly details the actionable wire fraud that the Gatalog conducted with respect
to machine guns and silencers:

   b. The administrators and "beta managers" of The Gatalog Rocketchat

      at chat.deterrencedispensed.com serve under the direction of The

      Gatalog "leadership"[3] and promote the illegal production of NFA items

      like machine guns and silencers, in violation 18 U.S.C. § 922 and 933

      and the ITAR regulations.

*Id.* The motion never answers this. And because the Gatalog's wrongdoing extends to the provision of illegal suppressor files, the suppressor allegations at paragraphs 3 and 270 are indeed directly relevant to both the nature of this enterprise's liability and the measure of damages. *Contra* Doc. 71 at 9-10.

To show the third of four specific ITAR violations, Paragraph 102(c) plausibly details the actionable wire fraud that the Gatalog conducted with respect to the "Rogue 9" receivers:

   c. On November 1, 2024, The Gatalog illegally published the files for the

      "Rogue 9," a publication that, because it contains file packs for

      semi-automatic and automatic receivers, violates both the EAR and

      ITAR simultaneously.

*Id.* The motion never answers this.

And to show the fourth of four specific ITAR violations, Paragraph 102(d) plausibly details the actionable wire fraud that the Gatalog conducted with respect to the Government of Myanmar:

d.  Since at least 2021, as recorded in their voluminous public and private chat records, The Gatalog has been devoted to the repeated illegal transmission of defense-related technical data to agents of the armed wing of the National Unity Government of Myanmar, better known as The People's Defence Force. File transfers or requests to the PDF are openly facilitated in the public and private chat rooms administered by

The Gatalog "for the people in Myanmar fighting for their freedom." These transfers are acknowledged and approved by administrators, like Holladay, in public and private messages.

*Id.*  The motion never answers this either.

### ii.    EAR violations show wire fraud.

As to category two of the mail fraud predicate acts, violating federal EAR regulations as specified in Part II.E.2, Doc. 52 at 41, the pleading gives all necessary specification and detail.  The motion's argument against this category of mail fraud simply ignores the most critical allegations in question again.

In particular, Paragraph 108 performs the same kind of granular presentation of the Gatalog's EAR violations that the pleading did for ITAR.  Doc. 52 at 28-29, ¶ 108.  There too, the pleading plausibly alleges that "The Gatalog engaged in wire fraud indictable under 18 U.S.C. § 1343 when it used interstate wire communications to distribute—without any significant screening or restriction—'technology; or 'software' that the Department of Commerce has

determined meets the criteria of 15 C.F.R. §734.7(c)."  Doc. 52 at 28, ¶ 108.  There

as well, the pleading specifies particular instances of wrongdoing, giving particular

dates of publication regarding particular items. *See id.* ("On November 1, 2024,

The Gatalog illegally published the files for the 'Rogue 9,' a publication that,

because it contains file packs for semi-automatic and automatic receivers, violates

both the EAR and ITAR simultaneously.").  The motion never addresses this.

It is no answer for the motion to scoff at EAR regulations and say that "one

cannot independently violate a regulation."  Doc. 71 at 12.  15 C.F.R. § 734.7

implements statutory directives from the Export Control Reform Act of 2018, 50

U.S.C. §§ 4811-4826, giving it the force of law at least presumptively.  And though

Defense Distributed has elsewhere challenged fundamental aspects of the EAR

regulations in question, *those challenges have not (yet) succeeded in changing

the Commerce Department's position*.  So long as Defense Distributed and the rest

of the nation are required to comply with the Commerce Department's prevailing

view about what § 734.7 proscribes, The Gatalog must comply as well.

Importantly, the motion does not really assert that the Commerce

Department's prevailing position is wrong, let alone explain why.  The motion's

critique is that Defense Distributed's pleading *does not explain* that position's legal

intricacies.  But pleadings need only assert the case's facts—not the legal theories.

The real debate about what federal law proscribes is for summary judgment.

15

### iii.   The third wire fraud basis is totally unanswered.

A third pleaded basis for wire fraud—in addition to the ITAR and EAR
violations—is that "The Gatalog engaged in wire fraud indictable under 18 U.S.C.
§ 1343 when it devised and executed a scheme to defame and falsely disparage
DEFCAD's business practices."   Doc. 52 at 29.   "In particular, The Gatalog
engaged in defamation and false disparagement by publishing and encouraging
republication of the defamatory 'FEDCAD' meme, knowing it contained false
information about Defense Distributed intended to deceive the public."   *Id.*

As to this third critical category of actionable mail fraud, the pleadings go
chapter and verse through a litany of individually actionable instances, giving all
that Rule 9 requires.   Doc. 52 at 29-33.   Yet he motion never says anything about
this category of wire fraud, which is enough on its own to sustain the RICO claim
as a whole.   So on this basis alone, even if the ITAR and EAR violations were not
also validly pleaded, the motion to dismiss the RICO claims should be denied.

These same allegations, Doc. 52 at 29-33, supply what the motion says is
missing vis-à-vis the claims for trade libel and FDUTPA.   Doc. 71 at 20-21.   Though
the motion sees no mention of "specific communications" or "falsehood" for a trade
libel claim, paragraphs 110 through 117 supply it in spades.   And though the motion
sees no mention of TUFTA "consumers" or "detriment," these too are supplied in
paragraphs 110 through 117.   *See* Doc. 52 at 32 ("In May 2023, Elik on behalf of
the Gatalog publicly called on Defense Distributed's customers to chargeback for
fraud and said all developers should "bully" those who still use DEFCAD.").   The

16

motion's failure to meaningfully grapple with the FEDCAD allegations is a serious shortcoming that lets multiple claims through essentially untouched.

### 2. Extortion is established.

The extortion argument says that the pleadings are "unparticularized references to the imagined unincorporated enterprise." Doc. 71 at 15. But that simply fails to grapple with paragraphs 119(a), 119(b), 119(c), 120(a), 120(b), 120(c), 120(d), 120(e), 120(f), 120(g), and 120(h), which present the extortion predicate in all of the requisite detail and are never answered by the motion.

### 3. The murder threat is established.

The motion's sole argument about threat of murder says that the pleading gives no specific detail. Doc. 71 at 18. But that simply fails to grapple with paragraph 122, which specifies the threat's exact date, author, message content, and mode of communication. Doc. 52 at 36, ¶ 122. No authority stands for the proposition that murder threats have to be stated in magic words, and this record could not be the first. *See id.*

### 4. Spoliation (obstruction of justice) is established.

The motion says (at 16-17) that the pleading's spoliation assertions fail to explain "what was destroyed and whether and how it was covered by the unspecified litigation hold." But the demanded particulars are pleaded at paragraphs 259 through 271. Doc. 52 at 57-59. Those paragraphs allege not just that particular Counterdefendants committed spoliation in isolation, but that the spoliation occurred in a *concerted effort* to defy litigation requirements—triggering

17

joint and several liability once again.  This answer both sustains the obstruction of justice predicate and meets the motion's later demand for "details" of "incidences of evidence spoliation."  Doc. 71 at 21.

Florida law still recognizes spoliation as an independent cause of action. *See, e.g.*, *Royal & Sunalliance v. Lauderdale Marine Ctr.*, 877 So. 2d 843, 845 (Fla. Dist. Ct. App. 2004) ("The essential elements of a spoliation of evidence claim are. . .").  So the motion is wrong to deny that once again (at 21).

**D.    Stipulations resolve reference issues.**

Defense Distributed concedes that paragraph 162 inadvertently includes an errant cross-reference.  Paragraph 162 is part of the Lanham Act claim against Elik.  Doc. 52 at 45, ¶¶ 160-162.  Though every other Lanham Act claim says that "Defense Distributed incorporates the Part II allegations above," the Count 10 Lanham Act claim for Elik mistakenly says that "Defense Distributed incorporates by reference what has already been pleaded above at Part I, II.A, II.B., and V."  To cure this, Defense Distributed hereby stipulates that (1) paragraph 162 should state what all of the other Lanham Act claims do: "Defense Distributed incorporates the Part II allegations above."

Defense Distributed also concedes that, due to inadvertent typographical errors, paragraphs 274, 276, 279, 282, 285, and 288 refer to a nonexistent "Part IV.H.1 above" and should instead say "Part III.G.1."  To cure this, Defense Distributed hereby stipulates that paragraphs 274, 276, 279, 282, and 285 should say "Independently, he is directly liable for the spoliation pleaded in Part III.G.1

18

above" and paragraph 288 should say "Independently, it is directly liable for the spoliation pleaded in Part III.G.1 above."

### E. Alternative request for leave to amend.

To the extent that this Court deems the current pleading insufficient, Defense Distributed seeks leave to amend under Rule 15. *See generally* Wright & Miller § 1488. "Rule 15(a)(2) provides that after a party has amended a pleading once as of course or the time for amendments of that type has expired, a party may amend only by obtaining leave of the court or if the adverse party consents to it." Wright & Miller § 1484. "Subdivision (a)(2) encourages the court to look favorably on requests to amend." *Id.* The policy favoring leave to amend should prevail here, especially since this case remains in its infancy and no serious countervailing consideration exists.

Bad faith, delay, and prejudice are the key factors that can warrant denying leave. *See id.* But no bad faith has been alleged or shown. The parties may disagree vehemently about the key legal principles governing this action. Cut their disagreement is in good faith and based on perfectly colorable legal arguments.

Delay is a nonfactor because the pleadings have been addressed with due diligence at each turn and the Case Management Order, Doc. 58, still gives plenty of time for all sides to amend pleadings and set discovery plans accordingly. That prior amendments have occurred is *not* a dispositive or predominant factor, *see, e.g.*, *Landers v. Ford Motor Co.*, No. 23-55552, 2024 WL 489169, at *2 (9th Cir.

Feb. 8, 2024), especially where they occurred as a matter of right and by agreement *before* the court made any ruling of substance in the case.

Most importantly, prejudice is nonexistent.  Prejudice sufficient to bar amendment entails significant, tangible disadvantages like "loss of valuable evidence" or "an important witness has become unavailable." *Id.*  But none of that is argued or arguable at this case's early stage.

Thus, if the Court determines that this pleading needs to reorganize or change the level of granularity, an amended pleading can fully accomplish that in short order without causing any meaningful delay or prejudice.  And if the two unintentional cross-reference oversights described above are not cured by stipulation, the Court should grant leave to file an amended pleading making those corrections.  *See* Wright & Miller § 1488.

Finally, the Court should disregard the requests for relief pressed as motion parts V and VI, which are conclusory and lack any reasoned explanation.

### Conclusion

The motion to dismiss should be converted to a motion for summary judgment and revisited after discovery.  Alternatively, the motion to dismiss should be denied.  In the further alternative, leave to amend should be granted.

Respectfully submitted,

Chad Flores
cf@chadflores.law
Texas Bar No. 24059759
Flores Law PLLC
917 Franklin Street
Suite 600
Houston, Texas 77002
T (713) 364-6640
F (832) 645-2496

David S. Gingras
david@gingraslaw.com
Arizona Bar No. 021097
California Bar No. 218793
Gingras Law Office PLLC
4802 E. Ray Rd. #23-271
Phoenix, Arizona 85044
T (480) 264-1400
F (480) 248-3196

F. Andino Reynal
areynal@frlaw.us
Texas Bar No. 24060482
The Reynal Law Firm, PC
917 Franklin
6th Floor
Houston, Texas 77002
T (713) 228-5900
F (713) 820-6981

Counsel for Cody Wilson, DEFCAD, Inc.,
Defense Distributed, and Dioskouroi LLC