UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №: 6:24-cv-01629

MATTHEW LAROSIERE,

    *Plaintiff*,

v.

CODY RUTLEDGE WILSON, DEFCAD, Inc., DEFENSE DISTRIBUTED, and DIOSKOUROI LLC,

    *Defendants*.

_____

Defense Distributed,

    Counterplaintiff/ Third-Party Plaintiff,

v.

The Gatalog, Matthew Larosiere, John Elik, Alexander Holladay, Peter Celentano, Josh Kiel Stroke, John Lettman, and MAF Corp.

    Counterdefendants.

_____/

**PLAINTIFF AND COUNTERDEFENDANTS MATTHEW LAROSIERE, JOHN ELIK, JOSH STROKE, AND JOHN LETTMAN'S OPPOSED EMERGENCY MOTION TO QUASH IMPROPER SUBPOENAS, FOR A PROTECTIVE ORDER, TO STAY DISCOVERY, AND FOR SANCTIONS**

**Rule 3.01(e) statement**: Defendants have issued secret subpoenas, and provided notice of retroactively expired subpoenas upon only one party while refusing to take remedial action or disclose what undisclosed subpoenas are still at large. On this, relief is needed as quickly as possible, preferably by May 13, 2025.

1

Plaintiff Matthew Larosiere and Counterdefendants John Elik, Josh Stroke, and John Lettman, by and through their undersigned counsel, (collectively, the "moving parties") pursuant to Federal Rules of Civil Procedure 26(c), 37(a), and 45(d)(3), respectfully moves the Court for an order: (1) quashing subpoenas improperly issued by Defendants without notice; (2) requiring the return or destruction of all documents obtained in response to such subpoenas; (3) compelling disclosure of all such subpoenas and all responsive materials; (4) entering a protective order barring further such conduct; (5) staying discovery pending resolution of the pending motion to dismiss Defendants' counterclaims; and (6) imposing sanctions for Defendants' discovery misconduct. In support thereof, the moving parties state:

**MEMORANDUM IN SUPPORT OF THE MOVING PARTIES'
MOTION TO QUASH IMPROPER SUBPOENAS, FOR A PROTECTIVE ORDER, TO
STAY DISCOVERY, AND FOR SANCTIONS**

## I. INTRODUCTION

Defense Distributed, through its counsel Federico Reynal issued secret third-party subpoenas seeking—and receiving—a universe of personally identifiable information and the private conversations of *more than 23,000 unrelated third-parties* without providing the notice required under Rule 45(a)(4). Defense Distributed's counsel admitted to issuing these subpoenas and receiving responsive materials, but refused to disclose the recipients or the scope of production. This behavior constitutes serious misconduct, warrants immediate judicial intervention, and demonstrates that discovery in this matter should be stayed until the pending motions regarding Defendants' absurd counterclaims are resolved. Defendants' recalcitrance and refusal to withdraw any *other* subpoenas it has issued without service, coupled with its refusal to even disclose

whether and what subpoenas were still pending, and Defendant Wilson's open gloating about his intent to use the improperly gained information for improper purposes necessitates emergency relief. Compounding this, Defendants continue to engage in abusive litigation tactics by serving some but not all parties with subpoenas, also in violation of Rule 45(a)(4), and continuing to hurl absurd discovery requests while refusing to engage in remedial actions caused by their ongoing misconduct.

Established in this memorandum is that counsel for Defendants have: 1) Admitted subpoenas were served without notice; 2) Responsive materials were received to these subpoenas; 3) Defendants have disseminated and publicly referenced their improperly gained information; 4) Defendants refuse to disclose what was received or from whom, beyond providing a belated copy of a single subpoena.

## II. FACTUAL BACKGROUND

1. Defense Distributed filed expansive counterclaims under RICO (Doc. 52), among other things, which are subject to a pending motion to dismiss. (Doc. 71).

2. Counsel for Defendants began e-mailing some unsigned discovery requests in early March of 2025. (*See* Doc. 83).

3. The moving parties never agreed to accept service via e-mail, and thus no discovery requests or subpoenas were served by Defendants as required by the rules. Fed. R. Civ. P. 5(b)(2)(E).

4. Defendants were aware of their defective subpoenas and discovery requests as early as April 1, 2025, when counsel for the out-of-state Counterdefendants informed Defendants of their failure to serve any subpoenas or discovery requests.

3

5. Counsel for Defendants and the undersigned met and conferred telephonically on April 11, 2025, where the undersigned reiterated to counsel for Defendants that discovery requests and subpoenas must be served pursuant to the rules.

6. During the April 11 conference, counsel for Defendants Federico Reynal revealed that he had sent FedEx packages containing his client's discovery requests prior to the conference, and that counsel for Defendants should expect them that same day, but paradoxically insisted that all discovery requests and subpoenas had already been properly served via e-mail.

7. When pressed as to why counsel would send a FedEx package when he felt it properly served, counsel for Defendants stated the FedEx packages were "prophylactic."

8. During the April 11 conference, counsel for the out-of-state Counterdefendants asked what subpoenas had been issued, and counsel for Defendants refused to answer.

9. Following the April 11 conference, counsel for Plaintiff and counsel for the out-of-state Counterdefendants informed counsel for Defendants that they were both away from their offices at the time, and offered to accept via e-mail a copy of the documents they attempted to serve via FedEx. Counsel for Defendants refused four days later, stating "They are already in your inbox." (Ex. A-2). They were not.

10. At that point, the undersigned had no idea what subpoenas sent by any of Defendants were pending, but trusted that Defendants, having been fully informed of their failure of service, would have retracted any non-compliant requests.

11. A FedEx package from Federico Reynal's office arrived at counsel for Plaintiff's office on April 14. Because attorney Reynal refused to provide a courtesy copy, counsel for Plaintiff was not able to read the contents of the package until April 29. (Ex. G).

12. When Plaintiff's counsel was finally able to access the FedEx package, all but two of them contained compliance dates that had already passed on April 14—three days after Defendants' counsel Federico Reynal mailed them. The other two had compliance dates of May 7 and 13. (Ex. G).

13. Given the dates on the subpoenas contained in the FedEx Package received by Plaintiff's counsel, none of the requests could have been considered timely served or noticed.

14. Eleven days after the April 11 conference, Defendant Cody Rutledge Wilson posted to his blog that he had received the contents of "the entire Gatalog Rocketchat in response to a federal subpoena" from "Digital Ocean" and noted that Counterdefendant Holladay "made no public comment." Defendant Wilson averred that this information was acquired as part of "the much larger NFA investigation" of the Rocketchat server in question. (Ex. B-2) ("the Blog Post").

15. The undersigned first learned about this subpoena from the Blog Post on April 25, 2025.

16. The undersigned sent a meet and confer letter to counsel for Defendants on April 27, 2025, informing counsel for Defendants "that Defense Distributed provided discovery, including subpoenas, solely by email without written consent, contrary to Fed. R. Civ. P. 5(b) and M.D. Fla. Local Rules," that "Subpoenas were also issued and served without the prior notice required by Fed. R. Civ. P. 45(a)(4)," and that these

5

"procedural issues have unfortunately prejudiced our clients by depriving them of an opportunity to object before third parties produced documents." (Ex. C-1)

17. Counsel for all parties, save for Holladay and MAF Corp. met and conferred telephonically on April 29, 2025. ("the April 29 conference").

18. During the April 29 conference, counsel for Defendants were recalcitrant when asked about subpoenas that were outstanding, insisting that the undersigned identify which subpoena was in question.

19. It was explained again that none of the undersigned had never been served with *any* subpoenas, and the only reason the undersigned were aware of one was because of Defendant Wilson's blog post gloating about a response it received from DigitalOcean.

20. During the April 29 conference, Counsel for the out-of-state Counterdefendants informed counsel for Defendants that the FedEx package disclosed in the April 11 conference had not been delivered. Counsel for the out-of-state Counterdefendants offered to accept digital versions of whatever was sent in the subject package, and that counsel would confirm the same in writing. Counsel for Defendants refused, compounding the confusion as to what discovery was presently pending.

21. Counsel for the out-of-state Counterdefendants requested *again* that counsel for Defendants identify any subpoenas that were pending or responded to. Counsel for Defendants again refused.

22. Following the April 29 conference, counsel for Defendants Federico Reynal admitted that the Digital Ocean subpoena *was never sent to the undersigned, even by*

6

*email.* Counsel for Defendants stated that "As a corrective measure, we agree not to use the records produced by Digital Ocean in response to this subpoena." (Ex. D-1).

23. Following the April 29 conference, Defendant Wilson edited the Blog Post. (Ex. B-2).

24. Counsel for the moving parties wrote back that the bigger issue was the demonstrated impropriety of Defendants' request in the first instance. To be sure, Defendant Wilson's stated desire to engage in a "broader NFA investigation," whatever that is, is not a proper purpose of discovery. (Ex. D-1, 2).

25. The undisclosed Digital Ocean subpoena demanded from a third party the personally identifying information and private conversations of more than 23,000 individuals completely unrelated to the instant litigation, including all the contents of private chats and contact information and billing information. (Ex. F).

26. Had the moving parties had the opportunity to object to the subpoena, the objections would be myriad, including:

   a. **Overbreadth and lack of relevance:** The subpoena seeks essentially all data from the chat server—including the personally identifiable information and private communications of tens of thousands of non-party users—without any limitation to the issues in the case. This violates the proportionality requirement of Rule 26(b)(1). The request is facially overbroad, untethered to any specific factual allegations or claims in the case, and thus not "relevant to any party's claim or defense."

   b. **Invasion of privacy and confidentiality interests**: In demanding chat logs (private conversations); billing information and IP addresses;

    usernames, screen names, and administrative actions, the request chills expressive activity and exposes innocent third parties to unconsented data disclosure.

  c. **Stored Communications Act Protections**: If the chat server is considered an electronic communication service, it cannot lawfully produce the content of communications (chat logs) in response to a civil subpoena. Production of content would violate federal law, and courts routinely quash such subpoenas.

  d. **No Notice to Affected Users (Due Process/Procedural Fairness issues):** The subpoena targets a vast swath of user data—including Plaintiff's user data—without any notice to affected users. There's no opportunity for them to object or intervene. This deprives them of procedural rights and raises serious due process concerns.

  e. **Trade Secret and Proprietary System Objections**: Many individuals in the chat server discuss proprietary technology and development of the same. Compliance, then, exposes trade secrets or confidential business information.

27. Seeking to avoid the necessity of motion practice, counsel for the moving parties requested corrective measures against downstream distribution by Defendants, including that Defendants identify anyone the improperly obtained information was disclosed to, that Defendants provide assurances against further disclosure, and *again* that Defendants disclose any subpoenas it had issued or received responses to. (Ex. D-2)

28. The moving parties have suggested since very early on in this litigation that, given Defendants' demonstrated desire to abuse discovery for improper purposes, such as his expressed interest in using this Honorable Court as "the nation's instrument for discovering the details, the identities, and the even greater mysteries of America's 3D2A underground," (Doc. 53 p. 6) that any discovery provided to Defendants should be for attorney's eyes only, with an order prohibiting any public distribution by Defendants. The moving parties raised this concern repeatedly. (Ex. D-2).

29. Over the course of discussions following the April 29 conference, counsel for Defendants refused to identify who the improperly obtained information was disclosed to, stating only that it was shared with "the core litigation team," and refusing to identify "the core litigation team." (Ex. D). Counsel for Defendants suggested the movants circulate a draft protective order but refused to agree to freeze discovery or withdraw any outstanding subpoenas while such was discussed. *Id.*

30. After more than a week, Counsel for Defendants, again, ignored the request to disclose what subpoenas it had issued or received responses to, stating "Retrospective matters concerning the Digital Ocean subpoena are different, and we have nothing else to offer about that at this time." (Ex. D-4).

31. This response, sent by opposing counsel after close of business on April 8, operated as a categorical refusal to correct any of the issues caused by the existing discovery misconduct, and a refusal to disclose what other information may have been misappropriated, thus necessitating counsel for the moving parties to work over the weekend on this motion, and the refusal to disclose what other improper subpoenas it

had already served on third parties or received responses to necessitates the emergency posture of the instant motion. (Ex. D-4).

32. This motion is filed the business day following Defendants' refusal to take corrective action.

33. Defendants' discovery abuse is ongoing, and Defendants' refusal to identify what subpoenas it has already served on third parties renders it impossible for the moving parties to exercise their rights to object to any such actions.

34. As of the date of this filing, only counsel for Plaintiff has received a FedEx package from Defendants, and even so, was not able to access it until April 29 due to Defendants' counsel's refusal to provide courtesy copies while Defendants' counsel know Plaintiff's counsel was away from the office.

### III. ARGUMENT

#### A. The Subpoenas Were Procedurally Improper and Must Be Quashed

Under Rule 45(a)(4), a party must give prior notice by **serving** upon opposing counsel a subpoena for document production. Defense Distributed did not, and knew of this failure. This alone is grounds for quashing the subpoenas. Despite knowing of their failure of service, rather than attempt to correct the issue, counsel for Defendants attempted to deflect by suggesting that they need not abide by 45(a)(4) because *they* did not object to receiving 26(f) disclosures via e-mail. (Ex. C-3). This is not what the rules require, though. Courts have consistently emphasized the importance of compliance with Rule 45 of the Federal Rules of Civil Procedure, which mandates proper prior notice—through service—to opposing counsel when issuing third-party subpoenas. *See Auto Inspection Servs. V. Flint Auto Auction, Inc.* 2007 U.S. Dist.

10

LEXIS 83287 at *16 (E.D. Mich. Nov. 9, 2007) (collecting cases in emphasizing that misuse of the subpoena power and failing to comply with Rule 45 compromises the integrity of the court's processes and erodes public confidence in the judicial system.).

Defendants were repeatedly put on notice of their failure to serve discovery materials, and even admitted to *providing no notice of a subpoena at all*. (Ex. D-1). Defendants' cannot brush this off as "harmless error," as they suggested (Ex. C-3), especially where the Middle District requires "prior notice" to accompany *service* of a subpoena. *Fla. Media, Inc. v. World Publ'ns, LLC*, 236 F.R.D. 693, 695 (M.D. Fla. 2006). As convenient as it might be to those who seek to abuse the subpoena power, Defendants cannot simply say "oops" and continue waiting to receive more information after being put on notice of their Rule 45 failures. *Id.* Defendants' counsel's recalcitrance leaves the moving parties in the dark over what other secret subpoenas are currently pending, what responses have already been received, and the potential damages resulting from their discovery misconduct. It appears, given the stonewalling and delays Defendants imposed when Plaintiffs sought to rectify the discovery misconduct without court intervention, that Defendants may have been milking the clock waiting on responses to more secret subpoenas. In light of this, this Honorable Court should quash all the subpoenas Defendants issued without notice, and order Defendants and their counsel to notify any target of their subpoenas of the same. *Id.* (ordering corrective actions, including notifying non-parties that the subpoenas had been quashed and ensuring compliance with notification requirements in the future).

### B. A Protective Order Is Necessary to Prevent Further Abuse

Rule 26(c) authorizes courts to enter protective orders to prevent annoyance, oppression, or undue burden. Defense Distributed's refusal to disclose the subpoenas and responsive materials, combined with its secretive approach, clearly improper purpose, and the publication and threatened publication of the results of these abuses, justifies a protective order.

The moving parties respectfully request the entry of a protective order requiring the return, deletion, or sequestration of all documents obtained via its improper methods. To prevent further abuses, the moving parties respectfully request this honorable court prohibit Defendants from disseminating any information gained through discovery that is not otherwise publicly available, and require that certificates of service attend all future discovery communications which must be served. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984). Defendants' public statements, prior discovery misconduct, and the evasiveness and recalcitrance of Defendants' counsel suggest other abuses are likely, both in the past and in the future. It bears emphasis that the only reason the moving parties even became aware of the improperly acquired information *was because Defendant Wilson bragged about it*.

### C. The Court Should Compel Disclosure and Preclude Any Use of Improperly Obtained Materials

The moving parties cannot protect their rights without knowing what has been disclosed by or demanded of third parties. The rules require service of such for a reason. This Honorable Court should compel Defendants to identify all subpoenas issued, produce all documents received, identify all parties involved, and identify anyone Defendants or their counsel disclosed any such materials to. The disclosure

should list both anyone who *could have* had access to the misappropriated information, and who among them *actually did* access the misappropriated information. This is required to guard against improper use of the misappropriated information. Additionally, this Honorable Court should also bar Defendants from use of any improperly obtained materials.

### D.  Discovery Should Be Stayed Pending Resolution of the Counterclaims

Given the baselessness of Defense Distributed's counterclaims and its misuse of discovery, this Honorable Court should stay discovery pending a ruling on the pending motion to dismiss. (Doc. 71). As exemplified by the ongoing discovery misconduct, the counterclaims and the related discovery circus spurred by Defendants are not brought for any proper purpose, but simply to harass Counterdefendants. It is not proper to allow Defendants to benefit from wild-eyed, unintelligibly broad discovery demands by pointing to a wild-eyed, unintelligible counterclaim. This, especially where the pending motions are completely dispositive as to the out-of-state Counterdefendants—who have no connection to this forum nor to Defendants—continuing to subject Counterdefendants to Defendants' absurd discovery misconduct serves only to reward whatever nefarious intentions underlie the discovery misconduct.

Indeed, until recently, Defendants/Counterplaintiffs have *failed to serve any discovery requests or subpoena notices at all*, even after being told how to serve them. Additionally, none of the unsigned, unserved e-mailed requests relate in any plausible way to any claim or defense of Defendants. (*See* Doc. 80-1 through -4). Rather, they contain incomprehensible compound definitions and reflect the unrelated fixations of Defendants. (*See, e.g.,* Doc-80-1 at ¶56 requesting Plaintiff Larosiere "Produce Any

Materials Relating to the Everytown for Gun Safety v. DEFCAD lawsuit."). The secret DigitalOcean subpoena is a microcosm of Defendants' discovery antics, demanding the "Billing method…and identifiable information used for billing purposes" as well as the "Chat logs," and "billing info, IP addresses used, and any other identifiable information" concerning *over 23,000 people*. (Ex. E-4; Ex. F.). The undersigned believe Defendants' discovery conduct has more to do with a campaign of doxxing and harassing individuals than any reasonable discovery purpose.

### E. Sanctions Are Warranted Under Rule 37 and the Court's Inherent Authority

The conduct of Defendants constitutes willful abuse of discovery rules and bad faith litigation behavior. This Honorable Court should award the moving parties reasonable fees and costs incurred in relation to Defendants' misconduct. Additionally, the Court should preclude use of tainted materials as a sanction, consider disciplinary referral for Defendants' counsel, and also consider dismissal of Defendants' counterclaims with prejudice due to the egregious nature of Defendants' discovery misconduct. *Chambers v. NASCO, Inc.* 501 U.S. 32 (1991); *Murphy v. Board of Educ.,* 196 F.R.D. 220 (W.D. NY 2000) (ordering compensatory sanctions for undisclosed subpoenas). Defendants' subpoenas were not properly served or noticed, and they knowingly relied on those unserved materials to extract responses from third parties. While no formal court order was yet violated, Defendants' discovery misconduct is tantamount to bad faith or willful disregard for the rules.

## **CONCLUSION & PRAYER FOR RELIEF**

**WHEREFORE** the moving parties respectfully request this Honorable Court:

1. Quash all subpoenas issued by Defendants without notice under Rule 45(a)(4).

2. Order the return, deletion, or sequestration of all documents obtained via Defendants' misconduct;

3. Compel Defendants to disclose:

    a. All subpoenas issued;

    b. All responsive materials received;

    c. The identity of all recipients of said responsive materials;

4. Enter a protective order:

    a. Prohibiting Defendants from disseminating information gained through the discovery process not otherwise publicly available;

    b. Barring future non-noticed subpoenas;

    c. Requiring all future discovery communications requiring service to include a certificate of service;

    d. Precluding use of any documents obtained via improper means;

5. Stay discovery pending resolution of the pending motion to dismiss;

6. Impose sanctions, including

    a. Attorney's fees and costs;

    b. Preclusion of tainted discovery,

    c. Any further sanctions the Court deems just and proper;

7. Order Defendants to isolate and preserve improperly obtained documents, prohibiting further review or dissemination;

8. Schedule a discovery status conference to address this and future misconduct; and

9. Grant such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted,

DATED: May 11, 2025

| | |
|---|---|
| */s/Matthew Larosiere*___ | */s/ Zachary Z. Zermay*____ |
| Matthew Larosiere, Esq. | Zachary Z. Zermay, Esq. |
| Fla. Bar. No. 1005581 | Fla. Bar № 1002905 |
| The Law Offices of Matthew Larosiere | *Zermay Law, P.A.* |
| 6964 Houlton Circle | 1200 Fourth Street, #1102 |
| Lake Worth, FL 33467 | Key West, FL 33040 |
| Email: Larosieremm@gmail.com | Email: zach@zermaylaw.com |
| Tel: (561) 452-7575 | Tel: (305) 767-3529 |
| *Lead Counsel for Counterdefendants Elik, Stroke, and Lettman* | *Lead Counsel for Plaintiff/Counterdefendant Matthew Larosiere* |

## **Local Rule 3.01(g) Certification**

Pursuant to M.D. Fla. R. 3.01(g), I hereby certify that I met and conferred with opposing counsel regarding the substance of the foregoing motion telephonically. Counsel for Defendants-Counterplaintiffs oppose this motion.

Respectfully submitted,

DATED:  May 11, 2025

| | |
|---|---|
| /s/Matthew Larosiere<br>Matthew Larosiere, Esq.<br>Fla. Bar. No. 1005581<br>The Law Offices of<br>Matthew Larosiere<br>6964 Houlton Circle<br>Lake Worth, FL 33467<br>Email:<br>Larosieremm@gmail.com<br>Tel: (561) 452-7575<br>*Lead Counsel for*<br>*Counterdefendants Elik,*<br>*Stroke, and Lettman* | /s/ Zachary Z. Zermay<br>Zachary Z. Zermay, Esq.<br>Fla. Bar № 1002905<br>*Zermay Law, P.A.*<br>1200 Fourth Street, #1102<br>Key West, FL 33040<br>Email:<br>zach@zermaylaw.com<br>Tel: (305) 767-3529<br>*Lead Counsel for*<br>*Plaintiff/Counterdefendant*<br>*Matthew Larosiere* |