1                   UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
2                        ORLANDO DIVISION

3       MATTHEW LAROSIERE,                    :
                                              :
4            Plaintiff,                        :
                                              :     Case No.:
5       v.                                    :     6:24-cv-01629-WWB-LHP
                                              :     Orlando, Florida
6                                             :     June 13, 2025
                                              :     10:05 a.m.
7       CODY RUTLEDGE WILSON, DEFCAD, :
        INC., DEFENSE DISTRIBUTED, and:
8       DIOSKOUROI, LLC,                      :
                                              :
9            Defendants.                       :
        _____       :
10      DEFENSE DISTRIBUTED,                   :
                                              :
11           Counter-Plaintiff/               :
             Third-Party Plaintiff            :
12                                            :
        v.                                    :
13                                            :
        THE GATALOG, MATTHEW                  :
14      LAROSIER, JOHN ELIK, ALEXANDER:
        HOLLADAY, PETER CELENTANO,            :
15      JOSH KIEL STROKE, JOHN                :
        LETTMAN, and MAF CORP.,               :
16                                            :
             Counter-Defendants/             :
17           Third-Party Defendants.  :

18

19                   TRANSCRIPT OF MOTION HEARING
               BEFORE THE HONORABLE LESLIE HOFFMAN PRICE
20                 UNITED STATES MAGISTRATE JUDGE

21

22      Proceedings recorded by electronic recording.
        Transcript produced by computer-aided transcription.
23
                            Transcribed by:
24              Suzanne L. Trimble, RPR, WACCR, CRR
                     U.S. Official Court Reporter
25          (407) 900-8775 | trimblecourtreporter@outlook.com
        401 West Central Boulevard, Suite 4600, Orlando, Florida 32801

```
 1                    A P P E A R A N C E S

 2    For the Plaintiff/Counter-      Zachary Z. Zermay
      Defendant Matthew Larosiere:    Zermay Law, P.A.
 3                                    203 Labelle Avenue
                                      Fort Myers, FL 33905
 4

 5    For the Counter-Defendants/     Matthew Larosiere
      Third-Party Defendants          6964 Houlton Circle
 6    Josh Kiel Stroke,               Lake Worth, FL 33467
      John Elik, John Lettman:
 7

 8    For the Counter-Defendants/     Gary C. De Pury
      Third-Party Defendants          Law Offices of Gary De Pury, P.A.
 9    MAF Corp.                       21035 Leonard Road
      Alexander Holladay:             Lutz, FL 33558
10

11    For the Defendants/            Charles (Chad) Flores
      Counter-Plaintiff/            Flores Law PLLC
12    Third-Party Plaintiff          917 Franklin Street
      Cody Rutledge Wilson,          Suite 600
13    Defcad,Inc., Defense           Houston, TX 77002
      Distributed, and
14    Dioskouroi:                     Federico Andino Reynal
                                      The Reynal Law Firm, P.C.
15                                    917 Franklin Street
                                      Sixth Floor
16                                    Houston, TX 77002

17

18

19

20

21

22

23

24

25
```

1                       P R O C E E D I N G S

2          **THE COURTROOM DEPUTY:**  Case No. 6:24-cv-1629, Matthew

3     Larosiere v. Cody Rutledge Wilson, et al.

4          Please state your appearances for the record.

5          **MR. LAROSIERE:**  Matthew Larosiere on behalf of John

6     Elik --

7          **THE COURT:**  We need to stand up in court.  Thank you.

8          **MR. LAROSIERE:**  My apologies, Your Honor.

9          **THE COURT:**  No problem.

10         **MR. LAROSIERE:**  Matthew Larosiere on behalf of John

11    Elik, Josh Kiel Stroke, and John Lettman.

12         **THE COURT:**  Okay.  And is it Larosiere?  Did I butcher

13    that?

14         **MR. LAROSIERE:**  No, ma'am.  You did fantastic.  I

15    apologize for the genetic disability of being French.

16         **THE COURT:**  No.  That's fine.  And I apologize for

17    double-checking that.  I will probably butcher it during this

18    hearing, and I apologize in advance.

19         **MR. ZERMAY:**  Good morning, Your Honor.  Zachary Zermay

20    on behalf of Matthew Larosiere.

21         **THE COURT:**  Good morning.

22         **MR. DE PURY:**  Good morning, Judge.  Attorney Gary De

23    Pury on behalf of Mr. Holladay, who is present.

24         **THE COURT:**  Good morning.  Good morning, Mr. Holladay.

25         **MR. HOLLADAY:**  Good morning.

1          **THE COURT:**  You can sit back there, or you're welcome

2    to sit at the table right behind the attorneys, whatever you're

3    comfortable with.  You're a party to the case, so you're

4    welcome to.

5          **MR. FLORES:**  For Defense Distributed side of the case,

6    I'm Charles Flores.

7          **THE COURT:**  Good morning.

8          **MR. REYNAL:**  Good morning, Your Honor.  Andino Reynal

9    on behalf of Defense Distributed.

10         **THE COURT:**  Good morning, Mr. Reynal.  Good morning,

11   Mr. Flores.

12         So the way I run hearings is, whoever is in the first

13   chair is the person that I'm going to pick on the most.  I

14   understand we have different attorneys representing different

15   parties, but it is a joint motion.  I will try to come to you,

16   Mr. Zermay and Mr. --

17         Where's my -- do you have -- I don't have everybody

18   else's names on here.

19         I'm sorry.  Would you state your name again, sir?

20         **MR. DE PURY:**  Of course, Judge.  Gary De Pury.

21         **THE COURT:**  De Pury.  Okay.  Oh, Mr. -- thank you.

22   All right.  So, Mr. De Pury, I will try -- and I'm probably

23   going to butcher your name, as well.  I will try to make sure I

24   come back to both of you to see if there is anything you would

25   like to add, but, Mr. Larosiere, I'm going to primarily focus

1    on you for argument, and then, Mr. Flores, I'm going to

2    primarily focus on you, but, Mr. Reynal, I will also try to do

3    the same thing and come back to you too, if there's anything

4    you want to add at the end.

5            And so what I would like to do is just kind of say the

6    framework, then, of how this is going to work.  We have that

7    emergency motion regarding the subpoenas and service issues.

8            A couple of things that we're not going to address

9    today:  The motion to stay discovery has been ruled on.  Judge

10   Berger has overruled the objection, so that's not going to be

11   discussed here today.

12           We're going to discuss the other requests for relief

13   that were brought in there and then I have a couple of issues

14   at the end that I want to raise.

15           So what I thought would be the easiest thing to do is

16   start off with maybe about a five-minute or so -- if you would

17   like to give your position or argument or whatever, however you

18   want to do it.  I'm not looking for an opening statement, but

19   your key points.  And then I have a whole host of questions

20   that I would like to raise, and then I'll come to you,

21   Mr. Flores.  I'm going to get everything from the plaintiffs,

22   as much as I can, and counter-defendants, and then I'll come to

23   you for defendants' and counter-plaintiffs' points, and I have

24   a whole bunch of questions for you as well.

25           So with that, if you will just give me one more

1    second.  We have technology here, so I need to just log on

2    here.  That way, I will be able to, if necessary, pull up

3    anything in the docket as necessary.  So just give me one more

4    second here.  All right.  Well, I'm not going to make you all

5    wait because I know a lot of you came from out of town -- oh,

6    there we go.  All right.  Let's get this started.

7          All right.  Do you want to go ahead and start, sir?

8    And if you wouldn't mind going to the lectern, I would

9    appreciate it.

10         **MR. LAROSIERE:**  Your Honor, may it please the Court?

11         **THE COURT:**  Yes.

12         **MR. LAROSIERE:**  So this is kind of an interesting

13   position we're in, right?  The main concern, the thrust of the

14   motion, is the subpoenas which -- none of which complied with

15   Rule 45(a)(4).  45(a)(4) requires notice:  A, noticed; B,

16   served on each party.

17         And I think a very important thing here is that

18   counsel on our side only became aware because defendant, Cody

19   Rutledge Wilson, was blogging about receiving information from

20   one of these subpoenas, the DigitalOcean subpoenas, on his

21   blog.

22         **THE COURT:**  Well, let me stop you right there, because

23   I have a question about that.  First of all, in the response

24   from the defendants -- and I'm just going to just, for ease of

25   reference, say "plaintiffs" and defendants," but I'm aware of

1    the procedural posture with the counterclaims and third-party

2    claims.  So the defendants in their response have attached a

3    host of emails that have attachments of these subpoenas that

4    were emailed on February 27th and in early March.

5           By the way, let's put the DigitalOcean subpoena to the

6    side.  I don't think there's too much disagreement on that one.

7    We'll come back to that one.

8           So are you saying that you never received any of those

9    emails?

10           MR. LAROSIERE:  Your Honor, we did not receive -- each

11    of -- and so that's the interesting thing.  I can say I, as

12    counsel for the out-of-state counter-defendants, did not

13    receive the majority of those.

14           THE COURT:  Okay.

15           MR. LAROSIERE:  And, in fact, once this issue with

16    DigitalOcean -- or I believe it may have been a little bit

17    earlier -- came up, we pointed out that, Hey, these were not

18    code compliantly served, and that's in the record as well.  We

19    have the, you know, the email originally indicating none of

20    these were served properly.

21           THE COURT:  To make sure I'm understanding -- because

22    I'm looking at a subpoena that says outgoing subpoenas Coinbase

23    and Reddit, for example.  It's document 103-1, page 10, dated

24    March 19, 1:49 p.m.  It's addressed to Mr. Zermay; it's

25    addressed to you; and it's addressed to Mr. De Pury.  And then

1    it says, "Please see attached," with two subpoenas attached.

2              Your position is you never received that email?

3         **MR. LAROSIERE:**  So, Your Honor, I think the best thing

4    to do there would be for us to each file affidavits as to which

5    emails were actually received because there was a host of

6    different subpoenas.

7         **THE COURT:**  Okay.

8         **MR. LAROSIERE:**  But I don't think that really matters

9    because --

10        **THE COURT:**  Actually, sir, it does.

11        **MR. LAROSIERE:**  Okay.

12        **THE COURT:**  And here's -- and I'm asking you a

13   yes-or-no question.  Did you receive this March 19 email, yes

14   or no?

15        **MR. LAROSIERE:**  That particular one, I'm not sure.

16        **THE COURT:**  Okay.  Then let's talk about another one

17   we have.  On April 2nd, we have an email that is sent to -- oh,

18   no.  That's an email about discussions.

19             There's an email on March 10th that goes back

20   nine days.  It's from Mr. Zermay, and it's to Mr. Flores and

21   Mr. Reynal, and to Mr. Gingras, and it is copying you on it,

22   and it's copying Mr. De Pury.  And it says:  "Do you have time

23   to meet and confer about joint motions for protective order

24   and/or to quash your clients' subpoenas?"

25             Are you saying you didn't receive that email?

1        **MR. LAROSIERE:**  So that email, again, we were all on,

2    and the impetus for that email was discovering -- I believe

3    that was discovering the DigitalOcean subpoena.

4        **THE COURT:**  Okay.  The DigitalOcean subpoena didn't

5    happen until early April, and in your motion, you say that

6    you -- and what you just said in the beginning of your opening

7    argument -- is that you weren't aware of any of the subpoenas

8    until the blog post went out.  This is an email dated

9    March 10th.  It's document 103-2, and it's at 12:58 p.m., and

10   it is in direct response -- I have an email chain -- to an

11   email from Mr. Reynal dated February 27, 2025, sent at

12   3:20 p.m. saying:  "Gentlemen, please see attached third-party

13   subpoenas pursuant to Rule 45."

14       So this is the issue I have.  Let's put aside Rule

15   5(b) for a second, because I understand that argument there, as

16   to whether the service was proper.

17       But what I'm having difficulty saying is, based on

18   this evidence that was submitted, is that you're saying that

19   all three of you never, ever saw any of these secret

20   subpoenas -- which is what you call them in your motion --

21   until a blog post in April, when I have these emails that are

22   clearly showing that you were put on notice of the subpoenas.

23       Again, Rule 45(a)(4) says "service," and so we will

24   get to that point.  But I'm having real difficulty with that

25   statement.

1          So if you could elaborate on that because I have for

2    each of the subpoenas, with the exception of DigitalOcean,

3    emails saying, "Gentlemen, here are attached," and your email

4    address, Mr. Zermay's and Mr. De Pury, is on every single one

5    of these emails.

6          **MR. LAROSIERE:**  Yes, Your Honor.  I totally

7    understand, and I may not have been clear in my framing.

8          We had received some of those emails.  I can certainly

9    say that once we saw the response that was filed a couple weeks

10   ago, that was the first time I became aware of some of those

11   subpoenas.  I don't feel comfortable representing exactly which

12   ones I did receive, certainly.

13         I do know that Mr. De Pury had spoken with counsel for

14   the opposing side saying that he never received any of these

15   because they were in his spam folder.

16         **THE COURT:**  Well, let me ask you a question there.  If

17   they're going to your spam folder, how is that a violation of

18   any rule?  That's your responsibility to make sure your

19   email -- you're checking your email.

20         **MR. LAROSIERE:**  So, Your Honor, that's -- and there is

21   a Florida Bar rule that says we have to occasionally go through

22   our spam folder.

23         **THE COURT:**  Mm-hm.

24         **MR. LAROSIERE:**  But it doesn't say we have to

25   proactively, every single day.

1          And, in fact, when the rule guards against this by

2     specifying that things must be served, that's the safeguard,

3     right?

4          **THE COURT:**  Well, let me say this, okay, because with

5     all due respect, sir, this response was served on May 28th.

6     It's June 13th.  There's been no request for reply brief.

7     You've had 15, 16 days to file anything you wanted to, to

8     refute these emails.  You have not.  So as far as I'm

9     concerned, they're undisputed.

10          And let's also be clear.  This motion was filed as an

11     emergency.  I dropped everything to address it the first time;

12     Judge Berger dropped everything to address the objections; and

13     I set this for a hearing.  So if there's going to be a request

14     to submit additional evidence, the answer is no.  We're dealing

15     with what we have here today.

16          So what I'm still struggling with -- we'll get to

17     whether the service was proper -- is your statements in a

18     filing, signed as a member of the Middle District of Florida

19     bar, that these are secret subpoenas that you didn't know

20     about, implying that they were never served, when I have

21     emails.  And the fact that you all didn't check your email or

22     the fact that you all went on vacation for two weeks and no one

23     checked your physical mail, is not contempt behavior on

24     defendants and is not a violation of any rule that I'm aware of

25     in the Federal Rules of Civil Procedure.

```
 1              So that's what I'm trying to get to because my concern
 2     is when I get -- when I saw this motion -- and it's why I set
 3     all these procedures in place -- was, your motion said:
 4     They're filing subpoenas and serving them on parties that you
 5     have absolutely no idea about because they didn't serve you.
 6              And now what I'm seeing is:  They emailed you and you
 7     either didn't check your spam folders, you didn't check your
 8     email, or you knew about them on March 10th when you sent the
 9     email to the other side, and you still chose to sit back and do
10     nothing until you filed your motion on May 13.  That's how it's
11     looking now, and that's what I'm trying to get to the bottom
12     of.
13              MR. LAROSIERE:  Your Honor, I completely understand --
14              THE COURT:  Okay.
15              MR. LAROSIERE:  -- your position.  That is not how it
16     went.
17              THE COURT:  Okay.
18              MR. LAROSIERE:  And let me be clear as to why a reply
19     was not sought was, frankly, it was brought on an emergency
20     basis.  We're not contesting any of the findings by yourself --
21     you didn't make a finding, but Judge Berger did not.  Again,
22     that's explained in the motion itself, and we have no contest
23     with that.
24              THE COURT:  Sure.
25              MR. LAROSIERE:  We -- frankly, we had discussed the
```

1    subpoenas that were not -- that we hadn't actually gotten

2    notice of after, and we determined that we probably shouldn't

3    file the reply because that doesn't matter because of 45(a)(4)

4    that requires service.  So we didn't get notice, but that

5    doesn't matter because the rule requires service, so let's not

6    burden the Court with that, where we have effectively the other

7    side admitting that they never served them.  That's why we

8    didn't do that.

9         **THE COURT:**  Then let's talk about service then.  Let's

10   go to Rule 5(b).

11        **MR. LAROSIERE:**  Yes, Your Honor.

12        **THE COURT:**  So in their response, defendants say that

13   they served discovery on you in late January/early February and

14   that it was served via email and that you accepted that

15   service, and I believe there's even emails talking about

16   objections that you filed in response to that discovery.

17             And now let me be also very clear.  I don't like

18   when -- and this is just my own personal preference -- when we

19   look and we try to cherry-pick words out of motions to try to

20   prove a point.

21             So the statement that defendants make, their argument,

22   that in your motion to stay, document 80, that you mentioned

23   the word "served."  That is not held against you.  Those are

24   terms of art.  We're not -- you know, you didn't waive your

25   right to say they were improperly served.

1          But there's a different issue.  They're also saying

2     that they served them and that you filed objections to them.

3     So can you speak to that?

4          **MR. LAROSIERE:**  We filed objections to their discovery

5     requests, which those aren't on this motion.

6          **THE COURT:**  That's not my question.

7          **MR. LAROSIERE:**  Okay.

8          **THE COURT:**  Here's my point:  You're saying that you

9     never consented to service via email.  If you accepted other

10    discovery in late January/early February by email and didn't

11    raise that issue then, I have a big problem with you now trying

12    to raise it regarding subpoenas.

13         **MR. LAROSIERE:**  Oh, Your Honor, sorry.  Let me be

14    clear in my response.  We raised the issue.

15         **THE COURT:**  When?

16         **MR. LAROSIERE:**  We have email correspondence -- again,

17    I wasn't prepared to give you the exact date and entirety of

18    the email, because that wasn't --

19         **THE COURT:**  It's your motion, sir.

20         **MR. LAROSIERE:**  Your Honor, the discovery requests

21    were not on the motion, so I --

22         **THE COURT:**  But they were in the response, which I

23    know you reviewed.

24         Well, let's go to your motion then.  In your motion,

25    you say you notified them, and you attach an email dated -- or

1    I don't know if it's an email or a Teams message or something.

2    It's a weird formatting of it.  And that is dated April 1st.

3    Is that the first time you raised the issue of proper service

4    of discovery with the defendants?

5         **MR. LAROSIERE:**  I'm not sure, Your Honor.

6         **THE COURT:**  Okay.

7         **MR. LAROSIERE:**  I'm not sure.  I wasn't -- and Your

8    Honor is getting to a reliance argument, effectively.

9         **THE COURT:**  No.  I'm getting at a waiver argument.

10        **MR. LAROSIERE:**  Waiver argument.

11        **THE COURT:**  Because here's the issue I also have:  I'm

12   a stickler for the rules.  Anybody who's looked into the last

13   six and a half years on the bench, I follow the rules as

14   closely as I can.  That's why I made some of those statements

15   in the beginning of my order about how we need to follow the

16   standing order, we need to do this, do this -- but I, you know,

17   to use layman's terms, gave everybody a mulligan on that, and

18   we are moving forward.

19        But if you cannot, and I will not -- it's not

20   well-taken to try to use the same rule as a sword and a shield.

21   You cannot have it both ways.  You cannot consent to service

22   via email here and then six weeks later say no, and then in

23   April, when you realize things have gone out, say, Okay, now

24   I'll consent, and then cast aspersions on the other side for

25   not sending them a second time via email, when they've already

1    also sent them via mail, and then say on April 11th --

2    according to your timeline in your motion -- that now you're

3    consenting in writing to service, and they're refusing to do it

4    and to cast them in this horrible light, when there's some

5    inconsistency.  That's what I'm trying to get at, because

6    that's the argument they're making.  And I'm asking you to tell

7    me how they're wrong, because right now it looks like you have

8    accepted in the past discovery via email.

9            **MR. LAROSIERE:**  So, Your Honor, we never accepted

10   discovery via email in writing.  Then the rule requires -- the

11   rule is very specific about this.  It doesn't simply say

12   accepted.  The rule says:  "Accepted in writing."

13           And then in addition to that, we can go all the way to

14   Rule 5, which says:  "In the event that such was accepted."

15   Right?

16           **THE COURT:**  What rule says:  "Accepted in writing"?

17   I'm sorry.  I'm getting a little --

18           **MR. LAROSIERE:**  Rule 45(a)(4).

19           **THE COURT:**  No, it does not.

20           **MR. LAROSIERE:**  Or consented to, right?

21           **THE COURT:**  No, it does not.  Rule 45(a)(4) says:  If

22   you're going to do a subpoena duces tecum -- I'm using that

23   term.

24           **MR. LAROSIERE:**  Oh, you're right.  You're right.

25           **THE COURT:**  That it is -- you have to give advanced

1    notice to the opposing party by service.

2         **MR. LAROSIERE:**  Yes.

3         **THE COURT:**  Period.  It does not discuss manner of

4    service.  And then the argument that you're making is, we go to

5    Rule 5 to see how you do service.  And Rule 5 says that, you

6    know:  CM/ECF is for pleadings and all of that, and unlike the

7    Southern District of Florida, our administrative procedures do

8    not automatically waive Rule 5.52 -- excuse me.  Rule 5(2)(b)

9    by agreeing to CM/ECF.  You still have to have that separate

10   consent.

11        But what I've been trying to research is, I am unable

12   to find a situation where a party stays completely silent,

13   accepts the service via email, responds to the discovery with

14   objections via email, engages in 3.01(g) and discovery

15   conferrals left, right, and center via email, states in an

16   email, I'm going to move to quash your subpoenas in email; and

17   now comes in and says, We never consented to anything via

18   email, you didn't serve it via writing.  So everything we've

19   done before, ignore all of that.  Your service is defective.

20   No discovery.

21        That's what I'm trying to understand.  And if you have

22   some legal authority that says that you can waive your right

23   for some things, not waive it for others, please share it with

24   me because I can't find it.

25        **MR. LAROSIERE:**  So, Your Honor, I'm not sure that one

1    can waive an affirmative obligation in the rules like that.  I

2    think that when the rules require -- and we're talking about

3    Rule 5.  When Rule 5 requires an agreement in writing, and,

4    Your Honor --

5            **THE COURT:**  Sir, let's -- let's not overread the rule.

6            **MR. LAROSIERE:**  Right.

7            **THE COURT:**  It requires the party accepting service to

8    consent in writing.

9            **MR. LAROSIERE:**  Yep.

10           **THE COURT:**  Now, it doesn't say that you can consent

11   for some things and not others.

12           And I understand you're saying it has to be in

13   writing.  Okay.  Then, isn't there an argument that by you

14   filing written objections to the discovery that do not raise

15   the improper service issue, that that could be deemed your

16   consent to service in writing?

17           **MR. LAROSIERE:**  So there were different objections --

18   and I'm struggling in understanding here because there was, of

19   course, the -- the discovery requests at the first blush, which

20   were deficient, and we pointed those out in our initial motion,

21   that they weren't even signed, right?

22           **THE COURT:**  Right.

23           **MR. LAROSIERE:**  And so we were acknowledging that we

24   had no obligation to act on those.

25           Is Your Honor referring to a subsequent conversation

1    about --

2        **THE COURT:**  No.  What I'm referring to is what

3    defendants have said in their response and which I have emails

4    that seem to back up what they're saying, is that that

5    discovery that was served, that was unsigned, is that at some

6    point that objections to that discovery were filed.  Like, you

7    know, you have RFPs and you file your objections:  Overbreadth,

8    undue burden, lack of relevancy, you know, improper temporal

9    scope, et cetera, et cetera, attorney-client privilege, all

10   those type of things.  That objections were filed because

11   there's a request for a meet and confer to discuss those

12   objections.

13       So, I guess, I'll ask this question:  How did you

14   serve your objections and your responses?  Did you serve them

15   via email or did you mail them?

16       **MR. LAROSIERE:**  Your Honor, I don't recall.

17       **THE COURT:**  All right.  Well, let me stop you right

18   there.

19       Mr. Zermay, can you shed some light on this?  How was

20   that discovery responded to?  Was it served via email or in

21   writing -- or, excuse me, via U.S. mail?

22       **MR. ZERMAY:**  Um --

23       **THE COURT:**  And, Mr. Zermay, I, please, need you to

24   stand up.

25       **MR. ZERMAY:**  Yes, Your Honor.

1          **THE COURT:**  Go ahead, sir.

2          **MR. ZERMAY:**  Again, I can't conclusively say one way

3     or the other, because, again, Mr. Larosiere here said that, you

4     know, we're sort of going beyond the motion record, so I'm not

5     necessarily --

6          **THE COURT:**  No.  We're not, sir.  This is in the

7     response to the motion.  And here's the thing that you all need

8     to understand:  You file a motion.  You bring it to the Court's

9     attention.  They have every ability to respond to it.

10          It is your obligation, all three of you, to understand

11     what that response is and be prepared to address every single

12     issue.  So saying you're not prepared to respond, I treat it as

13     it's an unopposed argument and undisputed fact.

14          So if there's anything else you want to add to that,

15     I'm asking you:  How was that discovery served?  And if you're

16     telling me you don't know how you're serving your own

17     discovery, we have a bigger problem.

18          **MR. ZERMAY:**  Your Honor, if I could, I mean --

19          **THE COURT:**  Sure.

20          **MR. ZERMAY:**  Yeah.  I believe it was sent via email.

21     That's my recollection, again.

22          **THE COURT:**  Okay.  And you had written consent from

23     Mr. Flores or Mr. Reynal to accept via email, correct?

24          **MR. ZERMAY:**  Well, Your Honor, it's the initial,

25     underlying discovery wasn't served initially in writing and so

1    it was a -- of course, my understanding is -- and, again, with

2    the qualifications that I was prepared to address subpoenas and

3    not written discovery -- is that because it wasn't properly

4    served initially, this would not necessarily be service, per

5    se, of objections.  It would be a communication to them that

6    wouldn't be subject to Rule 5.

7        **THE COURT:**  Okay.  Then let me ask this then --

8    because here's the other problem I have.  It's what's good for

9    the goose is good for the gander.  If you're going to sit here

10   and say that anything they've served you on discovery -- and

11   pleadings we know is completely separate -- is ineffective

12   because they didn't send it to you via U.S. mail or Federal

13   Express or hand deliver, but yet you're doing everything in

14   email back to them and you don't have written consent, how is

15   that -- how is that argument ever going to fly before any

16   federal judge, much less me, to say, Well, we can do it, but

17   they can't?

18       **MR. LAROSIERE:**  Your Honor, if I may?

19       **THE COURT:**  Sure.

20       **MR. LAROSIERE:**  We're talking about one chain of

21   emails responding to requests for discovery.  This motion is

22   about what was, when we filed it, an unknown quantity of

23   subpoenas, and we have the emails that show when we identified

24   the DigitalOcean by defendant's bragging.  Before referring to

25   it as the DigitalOcean subpoena, they refused to tell us which

1    subpoena.  They refused to tell us which subpoenas were sent.

2         **THE COURT:**  Because they had already emailed them to

3    you in late February and early March, and they went to

4    Mr. De Pury's spam folder, and you all didn't catch the emails,

5    but I have copies.

6         **MR. LAROSIERE:**  DigitalOcean --

7         **THE COURT:**  Sir --

8         **MR. LAROSIERE:**  Sorry.  Sorry.

9         **THE COURT:**  All nine -- I'm only going to focus on the

10   nine because the tenth DigitalOcean you're going to get

11   requested relief on that one because they also admit that was

12   never properly served -- wasn't served at all before sent off

13   to the third party.

14        But the issue I have here is, I have nothing -- other

15   than it went to his spam folder, or I can't say, or I'm not

16   sure -- about each of the emails that is attached to a response

17   that was filed on May 28th to refute that those emails were

18   sent.

19        So to say that they're secret subpoenas because you

20   either didn't look for an email or didn't open the email,

21   particularly when I have an email from you on March 10th

22   saying, I want to talk to you about quashing at least some of

23   these subpoenas, I'm having a really hard time believing your

24   argument.

25        **MR. LAROSIERE:**  So, Your Honor, again, we understand

1       that DigitalOcean was never sent notice or --

2               THE COURT:  Sure.

3               MR. LAROSIERE:  At that time, when we made this motion

4       alleging the secret subpoenas, the other side was recalcitrant

5       about even disclosing that the DigitalOcean subpoena existed.

6       And so it was natural to say that there are subpoenas out there

7       because -- and, again, this is in the record -- they were cagey

8       about this question.  So we were completely within our right to

9       say, There are secret subpoenas out there and we know for a

10      fact, as a result of all this, that there is at least one

11      and --

12              THE COURT:  You are, but what you're not allowed to do

13      as an officer of the court is to file a motion saying, We don't

14      know anything about anything, and we never consented to

15      anything, when you know you have emails doing the exact

16      opposite.  That's the problem I have.

17              The DigitalOcean, I agree with you on that one.  And I

18      agree with the positioning at the time you filed the motion

19      that there may be others out there because you weren't sure.

20              But what I don't agree with is you saying that they

21      didn't say anything, and we never got notice of anything ever,

22      when I clearly have emails, including emails from Mr. Zermay

23      that you're copied on, saying I want to move to quash

24      subpoenas, but yet you're saying I don't know anything about

25      the subpoenas.

1    **MR. LAROSIERE:**  Your Honor, we never said we don't

2    know anything about any subpoenas.  And, again, I will fully

3    represent to this Court that I was aware of some of the

4    subpoenas.

5        **THE COURT:**  Okay.

6        **MR. LAROSIERE:**  I will also fully represent to this

7    Court that I was not aware of some of the subpoenas until the

8    response and, again, that we decided not to raise that because

9    of the Rule 5 issue, that they admit they weren't properly

10   served.

11       **THE COURT:**  Okay.  So let me ask this then.  Let's go

12   back to the service issue.  I want to put it into a bow.

13       What legal authority do you have that says -- because

14   we've already talked about this earlier discovery -- and the

15   reason I bring up the earlier discovery is we're talking about

16   service of discovery.  We're not talking about email

17   conferrals.  We're not talking about email communications and

18   working through issues.  We're not talking about case filings

19   because, obviously, we get all those through our NEFs on our

20   CM/ECF system.

21       We're talking solely about service of discovery.  What

22   legal authority do you have that says:  When a party is

23   accepting service via email and responding to that discovery

24   via email they can later raise this issue of Rule 5 and say

25   everything was never served properly because you didn't send it

1    by U.S. mail or hard copy, when you've been engaging in

2    discovery for months via email and you're sending discovery via

3    email, when you don't have a written consent from the other

4    side?  What legal authority do you have that would say:  I

5    should -- the relief that you're asking for, which is pretty

6    extensive, why any of that relief would be appropriate under

7    those facts?

8            **MR. LAROSIERE:**  Okay.  So, Your Honor, two things -- I

9    fully understand your reservations.  So let me just touch on,

10   just for a moment, the difference between a discovery request

11   and a subpoena.  Discovery requests are between the parties.

12   The subpoena presumptively allows the sending party to serve

13   this request for information onto a third party immediately,

14   which is why -- immediately upon service, which is why there

15   are such specific and strict procedural safeguards, therefore,

16   and why Rule 5 is the backbone of that safeguard.  And, Your

17   Honor, particularly when we have facts here that indicate that

18   the purpose of the discovery may have been improper -- and,

19   again, we don't have to litigate that if that doesn't have to

20   be arrived at -- I think it's very relevant that in the

21   instance of subpoenas, which are the only things that this

22   motion is about, when the other side was given an opportunity

23   to correct and refused to, and, in fact, the only thing they

24   did was, then, subsequently commit additional Rule 45

25   violations by mailing expired subpoenas.

1          That's problematic because the issue is in the harm,

2     right?  So in a normal discovery situation, like you say, we

3     have emails going back and forth, what's the harm?  Well,

4     ultimately it's cured by a -- you know, compelling response --

5          **THE COURT:**  I'll stop you there.  Because Rule 5,

6     5(a)(1), says when is service required.  Right?  Unless the

7     rules provide otherwise, each of the following papers must be

8     served on every party:  Subsection C, a discovery paper

9     required to be served on a party unless the Court orders

10    otherwise.  That's in 5(a) before we even get to 5(b), and

11    you're trying to say that, Oh, well, discovery amongst the

12    parties, we don't have to worry about 5(b), but when it comes

13    to subpoenas to non-parties, we do?

14         **MR. LAROSIERE:**  Your Honor, I'm not saying we don't

15    have to worry about subpoenas.  I'm saying there's a --

16         **THE COURT:**  No, no, no, no, no.  I'm flipping it

17    around.

18         **MR. LAROSIERE:**  Yeah.  Yeah.

19         **THE COURT:**  Because you're focusing on the service of

20    subpoenas, and your words that you just said to me was, Well,

21    it's just discovery amongst the parties, and we can go back and

22    forth on that, but subpoenas are so much more important --

23    which I understand because you need to have the opportunity to

24    object and respond to the subpoenas, because they could be

25    getting information that parties would not otherwise be

1    entitled to through direct discovery requests to you.  I

2    completely understand that point.

3         But what I'm having difficulty with is, it seems

4    you're trying to carve out exceptions to this consent issue for

5    discovery served on you versus subpoenas served on other

6    parties.  And that's what I'm trying to -- I'm just playing off

7    the words that you're saying.  So do you want to clarify that?

8         **MR. LAROSIERE:**  Yes.  I understand, Your Honor.  Thank

9    you very much.

10        The argument I would make in response is that:  One,

11   the rules do not contemplate an ascent elimination of Rule 5,

12   right?  It doesn't contemplate Rule 5 disappearing because in

13   some other context we failed to follow the rules.  What we have

14   is, in the context with serious important issues, where our

15   position is we were denied the opportunity to object completely

16   and categorically, we brought up the procedural safeguards as

17   they existed.  That would be my response there, Your Honor.

18        **THE COURT:**  So when was the first time you -- because

19   of the -- I have an email that you sent on April 1st saying,

20   We've never been properly served with any discovery.  When is

21   the first time you notified the other side that you were never

22   properly served with subpoenas?

23        **MR. LAROSIERE:**  Your Honor, it would either have

24   been -- with the subpoenas?

25        **THE COURT:**  With the subpoenas.

1          **MR. LAROSIERE:**  Okay.

2          **THE COURT:**  With the subpoenas that are at issue in

3    your motion.

4          **MR. LAROSIERE:**  All right.  It would have been that

5    date or before is all I can -- is all I can say.

6          **THE COURT:**  So sometime in early April, then.  Is that

7    safe to say?

8          **MR. LAROSIERE:**  I can't -- I mean, obviously --

9          **THE COURT:**  It's what -- well, I'll go with what's in

10   your motion, because I think there's a timeline there.

11         **MR. LAROSIERE:**  Thank you, Your Honor.  Yes.

12         **THE COURT:**  And I think in the timeline there it talks

13   about April 1st.  Okay.

14         **MR. LAROSIERE:**  Right.

15         **THE COURT:**  The defendants were aware of the defective

16   subpoenas and discovery requests as early as April 1st.  Okay.

17         **MR. LAROSIERE:**  Which was -- Your Honor, if I may,

18   which was prior to the expiry of those requests that it was

19   made about.

20         **THE COURT:**  Right.  And the position -- and I'm not

21   going to put words in defendants' mouth.  They're going to have

22   an opportunity to respond -- from reading this is that they're

23   already in your inbox.  Meaning, we sent them.  And I have

24   their timeline in their response was February 27th -- there

25   were three subpoenas that were emailed to you on February 27th,

1    three on March 5th, two on March 19th, and then one on

2    April 2nd that were all emailed to you, and they've attached

3    copies of the emails, in which all counsel are copied on, with

4    the little indication that there were attachments to it.

5         And I understand the position is, we're not -- you're

6    not admitting or agreeing that you received all those emails.

7    I have asked you which ones.  You're not able to identify which

8    ones you did and which ones you didn't.  So I understand that

9    so -- and if I'm misconstruing your words, please correct me.

10         **MR. LAROSIERE:**  No, Your Honor.  And, again, on the

11    record I'm happy to admit that we received some.

12         **THE COURT:**  Okay.

13         **MR. LAROSIERE:**  I would also very forcefully state on

14    the record that we did not receive all.  I do not believe we

15    received the majority.  And also Rule 45 very importantly means

16    even if we had accepted some other alternative means of

17    service, it would not be effective the moment the other side

18    became aware of it.

19         **THE COURT:**  So let me ask you this:  Other than citing

20    to Rule 5 itself, what legal authority have you cited to in

21    your motion or that you have that says:  In these circumstances

22    I should be quashing all of the subpoenas?  DigitalOcean is

23    going to be quashed.  I don't think that's a surprise to

24    anybody.  But beyond the DigitalOcean one, the other nine, that

25    they should all be quashed, given that there was some sort of

 1    notice provided, albeit we're arguing that service was

 2    ineffective and improper, but what legal authority do you have

 3    for that?

 4          And I'll explain to you why, because I've done some

 5    research, and there's case law within this circuit that talks

 6    about harmless error and has denied motions to compel and

 7    motions to quash and motions for protective order, because you

 8    were on notice already.  The fact that you weren't served

 9    pursuant to Rule 5(b) is not, by itself, grounds to do it.

10          And I'll give you one more step.  Under 45(a)(4),

11    every case I found or when there was no notice whatsoever, like

12    the DigitalOcean situation, not when a party was given some

13    sort of notice, even if it wasn't in the manner that it should

14    have been, those subpoenas are not being quashed.

15          **MR. LAROSIERE:**  Yes, Your Honor.  I don't have case

16    law for it now, because, again, we did not expect we would get

17    this.  We expected the argument would end much farther up the

18    tree.

19          **THE COURT:**  Where did you think it would end?

20          **MR. LAROSIERE:**  That they admitted that they had not

21    served these items and that Rule 45 requires that service.

22          **THE COURT:**  I don't think they've admitted they

23    haven't served them.  I think they've said that they sent them

24    via email, and they're arguing that that was sufficient, based

25    on your prior conduct in discovery in this case.

```
1            MR. LAROSIERE:  And, Your Honor, I don't believe
2       they --
3            THE COURT:  You disagree with that argument, which I
4       completely understand.
5            MR. LAROSIERE:  Right.  They assert that these were
6       notice.  They're very careful with their words, which, you
7       know, we must respect.  That they received notice, notice,
8       notice, right?  But the rule does not talk about notice.  It
9       talks about notice -- a notice must be served.
10           THE COURT:  Mm-hm.
11           MR. LAROSIERE:  Okay.  So when the rule is that clear,
12      Your Honor -- and I had the same issue.  I could not find
13      anything on point.  I tried very hard.  And I could not find
14      anything that was against us.  And respectfully, if I would
15      have, we would have abandoned this, so as to not waste the
16      Court's time.
17           THE COURT:  I appreciate that.
18           MR. LAROSIERE:  Yes.
19           THE COURT:  Now let me --
20           MR. LAROSIERE:  Yeah.
21           THE COURT:  I'm sorry.  Go ahead.  I don't mean to
22      interrupt.
23           MR. LAROSIERE:  But, again, importantly, from the
24      beginning we were requesting very simple ways of resolving
25      this.  What did you send out?  What did you get responses to?
```

1    Wouldn't do it.  In the --

2            **THE COURT:**  Under what authority do they have to tell

3    you that?

4            **MR. LAROSIERE:**  They don't.

5            **THE COURT:**  Okay.

6            **MR. LAROSIERE:**  They don't.  So we requested -- this

7    is just a background picture, right?  So we had no choice --

8            **THE COURT:**  And this is the other thing.  And I think

9    both sides are guilty of this.  It's clear you all don't get

10   along.  It's very clear to me that you all -- your clients

11   don't like each other, and the attorneys are engaging in what

12   we would say is uncivil, uncooperative discovery.  And, again,

13   don't worry, Mr. Larosiere.  I am going to be picking on the

14   other side just as much as I'm going to be picking on you.  It

15   is very clear.

16           That is not what we allow in this court.  The Middle

17   District of Florida Discovery Handbook requires civil and

18   cooperative discovery.  It requires cooperation.

19           Both sides in their filings are very guilty of

20   cherry-picking and twisting people's words in such a way that

21   it is borderline disingenuous, and it's not been well-taken.  I

22   just want to make that clear.  And that at the end of this,

23   there will be some orders put out there about how discovery is

24   going to go forward from this point forward, because this all

25   here could have been addressed without any court intervention

1    on both sides.

2            And I want to say this:  To be quite frank, this whole

3    thing about holding to writing, when there's clearly -- and you

4    haven't been able to refute it, that there's been discovery via

5    email for the months before all of this, it's just I'm

6    having -- it's a hard pill for me to swallow to say, Now I'm

7    going to hold their feet to the fire that in this particular

8    discovery they have to do it in writing, but all the other

9    stuff was okay, and I objected to it, and I've served discovery

10   on them via email.  That's what I'm having a problem with.

11           But putting that aside, because you're adding all this

12   flavor in, like the flavor about:  Well, I couldn't look at

13   anything until April 29th.  Well, whose fault was that?  You

14   were on vacation.  That's not their fault.  You said in your

15   motion Mr. Zermay and yourself were out of town for two weeks.

16           It's not the Court's responsibility to make sure -- I

17   can't order them to go to your offices and make sure somebody

18   is there checking your mail every day.  And so, I mean, this is

19   the type -- these are the words you put in your motion, sir.

20   I'm not coming up with this.  So this is a problem I have is,

21   you try to cast them in such a horrible light and you overplay

22   your hand.

23           So with that, go ahead and finish what you want to

24   say.

25           **MR. LAROSIERE:**  Your Honor, let me just make clear.  I

1    did not think for a second that Your Honor was picking on us.

2    **THE COURT:**  Okay.

3    **MR. LAROSIERE:**  I didn't think for a second that Your

4    Honor was going to be anything but impartial.

5    And, again, this is -- I believe we're -- Your Honor

6    may be very frustrated with counsel for being uncivilized.  I

7    completely understand that, Your Honor.  But this is not -- we

8    are certainly missing the forest for the trees.

9    **THE COURT:**  Okay.

10    **MR. LAROSIERE:**  These objections were brought about

11    very manifestly improper discovery itself, which the record is

12    full of, and the record is full of admissions on their side

13    that the purpose of these were for doxing.  And if Your Honor

14    wants to get to resolution without the Court, what did we

15    request as a way of solving this?  A simple order that said,

16    Let's follow the rules.

17    **THE COURT:**  A simple two-page order asking for all

18    sorts of sanctions.  All the stuff that you just said, there's

19    no authority for them to do and no requirement for them to do.

20    It's a two-page -- it's two pages in your motion of all the

21    different things that you asked for.

22    So, you know, this whole meet and confer thing, what I

23    would say is -- I know you say I'm missing the forest for the

24    trees.  I would throw back to you, sir, is you're focusing on

25    one tree in the entire forest, and that's all that you're

1    focusing on is that you keep coming back to, I didn't consent

2    in writing, and, therefore, it's not valid.

3           And what I keep telling you is, you have to look at

4    the bigger picture and that you cannot use the rules to say

5    they're going to apply in these situations but not apply in

6    these situations.  And that's what I keep trying to impress

7    upon you is, you can't decide -- it's, to use another

8    colloquial, you can't be a little bit pregnant.  You either are

9    or you're not.

10          So to sit here and say, For these subpoenas, I'm

11   not -- I didn't consent so, therefore, I didn't know about

12   them, and the emails either went to spam folders or I didn't

13   get them and all that argument on that point, but while you're

14   also serving things yourself via email.

15          I asked you and Mr. Zermay, where's their written

16   consent to that.  You could not answer that.

17          I asked if you gave objections, and you tried to

18   distinguish discovery from subpoenas.

19          To now say I have to hold their feet to the fire on

20   subpoenas but not on all the others, that's what I think you're

21   missing the point of, is that's not how the rules work.  You

22   don't get to engage in discovery in a certain way and then do,

23   for lack of a better phrase, a gotcha moment and say, Well,

24   with respect to these, I'm going to hold you to a rule that I

25   haven't held you to up to this date.

1          **MR. LAROSIERE:**  And, Your Honor, if I may just real

2    quick.

3          **THE COURT:**  Please.

4          **MR. LAROSIERE:**  I believe that your framing would have

5    made perfect sense if not for the fact that we never

6    actually -- again, the position that Mr. Zermay gave you and

7    the position that I would echo is, there was no responsive or

8    offensive discovery served on opposing counsel, because,

9    frankly, one, we feel it's inappropriate at this stage, that it

10   would be a waste of resources.  Because we know they're going

11   to be recalcitrant, so we were going to wait until the

12   pleadings were narrowed to accomplish all that.

13         **THE COURT:**  Let me just give you one piece of advice

14   here, gentlemen.  That is a very, very, very dangerous -- and,

15   I mean, I cannot impose upon you how dangerous that course of

16   conduct is, because here's what's going to happen.  Discovery

17   closes in May of 2026.  If you don't engage in discovery -- and

18   let them be recalcitrant, file a motion, and then I will be

19   asking them why they're not responding to your discovery.  You

20   use the discovery rules.  But if you all sit back and don't

21   serve discovery and then you get to January/February -- because

22   Judge Berger has two dockets, in Jacksonville and here, to work

23   on -- I can't tell you when she's going to rule on your motions

24   to dismiss, and as I said in the order denying the stay, I

25   don't think it's going to get rid of the entire case in any

1    event.

2              So if you choose to not engage in discovery and then

3    comes January and then they're recalcitrant and then they're

4    refusing and you have objections and you have to do your meet

5    and confers, and here we are on April 30, 2026, and you don't

6    have your discovery, and you're going to come to the Court and

7    say, Can I have more time?  I will tell you right now the

8    answer will be no, and you will have no discovery for your

9    case.

10             And I say this in every case.  Sitting back and

11   waiting for a motion to be ruled on as a tactic to delay

12   discovery is the worst tactic in federal court you could ever

13   do.  You will not get more time.

14             So I understand your position, and, believe me, I

15   understand wanting to reduce costs, and I understand you're the

16   party that brought the case.  The problem is, you're in the

17   Middle District of Florida, and we're the most strict district

18   on all these rules.

19             So I would say if you are holding off, don't do it

20   because it's only going to hurt you.  Go ahead.

21             **MR. LAROSIERE:**  Very well-taken, Your Honor.  Thank

22   you very much for that.

23             So, again, to address the one point that makes -- that

24   I believe makes the framing incorrect, is that we did not serve

25   responsive discovery.  Again, this was a communication.  It was

1    deficient, and so it was not served in the beginning, and so

2    the response, which was not served, is not a discovery

3    response.  These are just communications.  That's our position

4    on that, Your Honor, and --

5            **THE COURT:**  Okay.  I see what you're saying.

6            **MR. LAROSIERE:**  Yes.

7            **THE COURT:**  So even though you attached objections to

8    discovery requests to an email, you're not saying those were

9    your official responses.  So in other words then, they would be

10   in their -- all within their rights tomorrow to file a motion

11   to compel against you seeking sanctions for never responding to

12   their discovery, to which you would object and say it was never

13   properly served.

14           **MR. LAROSIERE:**  Yes, Your Honor.

15           **THE COURT:**  Okay.

16           **MR. LAROSIERE:**  I understand, Your Honor.

17           **THE COURT:**  I know.  I understand that.

18           So let me ask you one more thing.  In your request for

19   relief, you asked for -- and I want to just make sure because I

20   want to touch on every single thing here -- is that, you know,

21   you're asking to have all the subpoenas quashed under Rule

22   45(a)(4).  We talked about ordering the return or deletion of

23   sequestration of the documents.  And I asked you what authority

24   you had for that, and you candidly -- and I appreciate that --

25   said no.  You asked to compel them to disclose the subpoenas

1   issued.  So, obviously, the materials received and the identity

2   of recipients that -- those two parts, we've already talked

3   about that.

4           But on the subpoenas issued, they've given this list

5   in the response.  Is it your position that those are all the

6   subpoenas that have been issued that are the subject of this

7   dispute?

8           **MR. LAROSIERE:**  Your Honor, we don't know.  We would

9   like -- we would like there to be an order so that it can be

10  put to bed, and then I think --

11          **THE COURT:**  Didn't I -- didn't I do that?  Wasn't that

12  my order?

13          **MR. LAROSIERE:**  Your Honor, so I believe the -- I

14  believe the other side may have taken a --

15          **THE COURT:**  Taken some liberty with my words?

16          **MR. LAROSIERE:**  Yes.  And so that's why I think it

17  needs to be clear.

18          **THE COURT:**  All right.  Well, I'll ask them now to

19  make sure --

20          **MR. LAROSIERE:**  Right.

21          **THE COURT:**  -- that we're talking about these 10

22  subpoenas and nothing else.  That, absolutely -- I'm sorry.

23          **MR. LAROSIERE:**  And then going forward, I think an

24  obvious way to solve this is the language that we proposed in

25  our -- in the meet and confer conference, which was just, Hey,

1    let's have a protective order saying:  It's all right.  You all

2    have been bad boys.  These are the rules.  You're going to file

3    it by -- you're going to serve it properly and then send a

4    courtesy copy and then there's going to be -- there'll be no

5    problem.  Everything will be solved.

6        **THE COURT:**  And I appreciate that.  Here's the thing

7    is, the judges here in the Middle District of Florida don't

8    like to do orders directing people to comply with the rules.

9    The rules are self-executing, as you all know, which is the

10    subject of this motion.

11        **MR. LAROSIERE:**  Right.

12        **THE COURT:**  So as far as the service, we can talk

13    about a little bit of it because I can place an order saying

14    for third-party discovery it needs to be served, and I can set

15    up a certain amount of time for notice, which, again, will cut

16    both ways, because it's going to put some implications as to

17    that May 2026 discovery deadline.

18        But let me ask you this.  So I know on April 11th, I

19    believe it was, there was that conversation where you said, Can

20    we please have them?  And they said, We're sending them via

21    FedEx.  When will we get them?  They said within two days.  I

22    think they wound up being there on the 14th or thereafter.  And

23    you asked -- and I think you said in your motion you consented

24    in writing at that point to service.  So is it -- go ahead.

25        **MR. LAROSIERE:**  No, Your Honor.  This was on a

1      meet-and-confer call, where we had discussed this, and we

2      had -- it's not in the record, Your Honor.  And it's also not

3      in the record that we consented in writing.

4              We said, Hey, just send them over now, and I will --

5      if you send them over, I will respond in writing accepting

6      them.  That's what was said.  And it didn't happen, which is

7      what it is.

8              **THE COURT:**  So where are we on consent to email

9      service today?

10             **MR. LAROSIERE:**  There is none.  We wanted it to be --

11     simply because, Your Honor, there has been issues with stuff

12     that was purportedly emailed with that we never got.  That just

13     is what it is.  And so that's why we had put forward and why

14     it's also -- it's not an order to comply with the rules.  It

15     goes beyond the rules a little bit.  It's serve and email, and

16     then that would solve every problem, and then there can be no

17     more, Oh, well, spam folder or it never went through because --

18     Your Honor, and, again, it's not before the Court because we

19     didn't think we would get down this branch, but some of these

20     just didn't come, at least as far as my inbox is concerned --

21     not spam folder, just not there.

22             **THE COURT:**  Okay.

23             **MR. LAROSIERE:**  I can't tell you why.  But I think

24     that -- that order, which is -- it just takes all of the

25     gamesmanship out.  It's do it both ways.  Send the email and

1    send it by mail and that solves everything, and they wouldn't

2    even accept that.

3          **THE COURT:**  Okay.  And I want to -- I want to make

4    clear that you have not served any discovery in this case in

5    any way, shape, or form at all, period.

6          **MR. LAROSIERE:**  Save for the 28 --

7          **MR. ZERMAY:**  Twenty-six.

8          **THE COURT:**  The Rules 26 disclosures?

9          **MR. LAROSIERE:**  Yeah.

10         **THE COURT:**  And, by the way, and those I know the

11   deadline for that was January 30th.  So those were served via

12   email?

13         **MR. LAROSIERE:**  No.  They were -- so they were

14   originally emailed, and then it was pointed out that that was a

15   failure, and we immediately mailed them upon notice --

16         **THE COURT:**  So they said, You can't serve them to me

17   via e-mail?

18         **MR. LAROSIERE:**  Yep.

19         **THE COURT:**  Okay.  And let me ask you a question --

20         **MR. LAROSIERE:**  Well, let me make that super clear,

21   because I don't want to mischaracterize anything they've said.

22   They pointed out, for the first time last month -- I'm not

23   sure -- that that was not properly served.  It was only

24   emailed.  And we immediately mailed it.  That's what -- so upon

25   notice that it wasn't properly served, we mailed it.

1           **THE COURT:**  All right.

2           **MR. LAROSIERE:**  That's the only discovery that we've

3      sent out.

4           **THE COURT:**  Now, let me ask you another question.  You

5      ask for sanctions and you cite to Rule 37.  What authority

6      under Rule 37 do you have to do sanctions for a Rule 45

7      violation?

8           **MR. LAROSIERE:**  Your Honor, I think this -- I think

9      that this motion was drafted by multiple parties.  It's my

10     position that the Court's inherent authority is probably the

11     most appropriate and I think that the -- I think the biggest

12     thing here that counsels toward sanctions is the degree of

13     recalcitrance and the refusal to even respond to the

14     DigitalOcean information that this Court ordered to -- there's

15     no reason that we should have all had to be dragged to Orlando.

16     Granted, it's less of an expense for us, but it's our position

17     that this was forced by opposing counsel.

18           It's our position that the suggestions in the meet and

19     confer, a letter which is served, would have completely solved

20     this.

21           And, additionally, I just point out one thing is that,

22     if we wanted to talk about waiver, in their response, the other

23     side never addressed the Historic Communications Act concerns,

24     which were what made this an emergency motion to begin with.

25     We were talking about this is for doxing.  Your client is

1    saying this is for doxing.  We put all of that out there.  This

2    is why it's an emergency.  And what's their response?  Silence.

3    I feel like that needs to be hit on because that was the only

4    reason this was --

5          **THE COURT:**  No.  And like I said, again, it's clear to

6    me that there's a lack of a troubling -- and I want to also be

7    clear.  I'm not frustrated.  This is my job, and this is what

8    I'm happy to do.  I hate that I have to bring everybody in here

9    on a Friday, and, of course, it's not lost on me that it's

10   Friday the 13th.

11         **MR. LAROSIERE:**  It wasn't lost on me.

12         **THE COURT:**  Yeah.  So that is -- that is not it.

13         It's just disappointing.  And I also want to say this

14   is not the first time we see it, where the attorneys and the

15   parties get so caught in the battle that they forget that this

16   is part of the third branch, and you're all officers of the

17   court when you come in here, and we expect you to engage in

18   civil and cooperative -- and so refusals to cooperate on either

19   side are not well taken.

20         So I hear your side, and I understand your clients'

21   frustrations in what happened.

22         I want to also be clear.  There's been no requested

23   relief regarding the blog.  I'm not going to touch on that.

24   I'm not even going to go down that road because that's First

25   Amendment implications I don't want to even worry about.

1        We're talking about these subpoenas.  That's the

2    request in the motion here and what relief we can do.

3        I will say this, and I'm going to now turn to the

4    defendants, with respect to the DigitalOcean subpoena, for

5    sure, that one will be quashed, and there will be orders

6    related to that.

7        But as far as sanctions go, when it's a Rule 45

8    motion, the only sanction available is to hold a party in

9    contempt.  It's not Rule 37 sanctions.  That's for violations

10   of other rules of discovery.  So that's what I'm considering,

11   is whether or not there should be a contempt finding and

12   sanctions under that.

13       Inherent authority, that is briefly mentioned, but

14   there's no legal analysis or brief on that, and that

15   requires -- my understanding of inherent authority, has to show

16   repeated, deliberate, intentional violations of court orders,

17   and we're not there, and hopefully we'll never get there.

18       **MR. LAROSIERE:**  Right.  For monetary sanctions, just

19   to point out that one of the orders that we had requested does

20   clearly fall under inherent authority, which was the disclosure

21   order.

22       **THE COURT:**  Oh, yes.

23       **MR. LAROSIERE:**  Okay.

24       **THE COURT:**  No.  My inherent authority to manage

25   discovery --

1          **MR. LAROSIERE:**  Yeah.

2          **THE COURT:**  -- is a different story.  Inherent

3    authority to sanction is what I'm talking about.  So I just

4    want to make sure everybody understands what kind of sanctions

5    we're talking about here.  It's that Rule 37 is off the table.

6    Any sort of inherent authority sanctions are off the table.

7    But managing discovery is what we're all here for.

8          **MR. LAROSIERE:**  Right.  Yeah.  I just wanted to make

9    that clear.

10          **THE COURT:**  I appreciate that.

11          Mr. Zermay, before I turn to the other side, is there

12    anything you want to add?

13          **MR. ZERMAY:**  Just, Your Honor, I would like to

14    reiterate that the reason why this was designated as an

15    emergency motion was, again, because of the Electronic Privacy

16    Act, and there's 30,000 people's electronically stored

17    information.  It includes personally identifiable information.

18    That was the basis for designating it as such.  And so I'll

19    leave that there, Your Honor.

20          **THE COURT:**  That brings up another issue.  Since this

21    is a Rule 45 motion, what standing do you have to even raise

22    that issue, since it's not your personal identifying

23    information?  It's all these other 30,000 -- or I think there's

24    20-something -- between 27,000 and 30,000 individuals here.

25    What standing do you have to raise the issue?

1          **MR. LAROSIERE:**  My clients, Your Honor, which is

2     asserted in the affidavits.

3          **THE COURT:**  Okay.  That's right.  I do have the

4     affidavits.  You're correct.

5          Okay.  What about you, Mr. Zermay?

6          **MR. ZERMAY:**  Your Honor, it was a joint motion, Your

7     Honor.  I'll just leave it at that.

8          **THE COURT:**  Okay.  Thank you.  Last but not least,

9     Mr. De Pury, you've been very patient and quiet there.

10          **MR. DE PURY:**  Judge, first of all, I would begin with

11     the Court's very well-worded comments about everybody getting

12     along.  I practice a lot in family law.  I thought we were

13     being very cordial with each other.  And I say that slightly in

14     jest.

15          But when we do get on meet and confer, we do seem to

16     get along.  I think that the goal today, as the Court has

17     already eloquently stated, is that we need to make sure that

18     everybody is just -- there are some rules in effect, that we

19     can go forward from that point.

20          **THE COURT:**  I agree and I'm happy to set that up.

21     And, you know, I see this a lot, and there's a saying I've said

22     in court before:  You can say it and forget it.  You write it,

23     regret it.

24          And it sounds like we've got some keyboard warriors,

25     possibly, that are putting things in writing that are now

1    coming back to haunt you, both sides, in this hearing.  I mean,

2    that's something I can consider.  I mean, and I'll make sure

3    everybody understands this.  I can enter an order saying you're

4    not allowed to communicate via email, that you have to

5    communicate in person or on Zoom with a court reporter.  And

6    that's going to make your discovery incredibly expensive, but

7    if that's what we need to make sure we don't have these type of

8    issues and we're not clogging up the docket with motions

9    practice, I can order that.

10         I can also order a special master to take over

11   discovery.  Going rates in the Middle District of Florida for a

12   special master are between 600 and $1,000 an hour.  That's

13   going to be split 50/50, and then at the end of discovery, the

14   special master gives a report to me and tells me which side is

15   more of the bad actor, if there is one, and then I reapportion

16   the fees.

17         So I can make discovery incredibly expensive for both

18   sides, if that's what we need, because we can't communicate via

19   email or you're not checking your e-mail or it's going to spam

20   folders.  So I want you all to think about that.  I'm not at

21   that stage today, unless that's what the parties really want me

22   to do.  And it will.  It will make your discovery incredibly

23   expensive.

24         And let me also be very clear, because at the end of

25   the case, if one party or the other prevails and you ask for

1    fees, it's going to come to me.  And so if you think you're

2    going to get your fees and costs back for a special master or

3    for a court reporter because I ordered it because the parties

4    can't work together, you are sadly mistaken.  So your clients

5    or your firms will be absorbing this cost if we have to go down

6    that road.  So I just want to make sure everybody really thinks

7    long and hard about this.

8             If we need to go down that road, I will do it.  I've

9    done it before.  The district judges have done it before.  I

10   don't want to.  I think you all are very competent attorneys.

11   I think you all can get past this hurdle and move forward in a

12   cooperative manner, but if that's what I need to do, I will do

13   it.  So I just want you all to think about that while I talk to

14   the defendants.  And I'll have the defendants think about that

15   too.  I mean, I hope I don't have to do that, but I will.

16             **MR. DE PURY:**  Thank you.

17             **THE COURT:**  Thank you very much.

18             All right.  Thank you very much, Mr. Larosiere.  I

19   will come back and give you the last words, since it's

20   ultimately your motion, but I'm going to talk to the defendants

21   now.

22             **MR. LAROSIERE:**  May I take my seat, Your Honor?

23             **THE COURT:**  Absolutely.  Thank you very much, and I

24   appreciate you answering all of my questions.

25             All right.  Mr. Flores, you've been sitting over there

1    patiently.  So let me start.  First question.  These emails,

2    you've attached copies of them.  Did you get any bounce backs

3    or any indications that those emails did not go forward to all

4    three counsel?

5            **MR. FLORES:**  I did not.  I checked.  Mr. Reynal also

6    did not.  He also checked.

7            **THE COURT:**  Okay.

8            **MR. FLORES:**  I have one additional factual point.

9            **THE COURT:**  Sure.

10           **MR. FLORES:**  We checked our records about how they

11   sent objections to discovery, and our records show that those

12   were sent via email --

13           **THE COURT:**  Okay.

14           **MR. FLORES:**  -- on March 14, from Mr. Zermay.  I know

15   he doesn't have time to check that now, but that's our

16   recollection.  The Court thought they had responded via email,

17   and our records show that they did.

18           **THE COURT:**  Okay.  And did they also respond in hard

19   copy, do you know?

20           **MR. FLORES:**  No, Your Honor.  They sent a PDF of

21   objections via email.

22           **THE COURT:**  Okay.  And that begat the email, then,

23   back from you saying, "We need to discuss your objections"?

24           **MR. FLORES:**  Correct.  And these are the objections,

25   not about service method but about scope and so forth.

1              **THE COURT:**  Right.  Right, and undue burden and

2      privileges --

3              **MR. FLORES:**  Yes.

4              **THE COURT:**  -- and whatnot.

5          So the other question I have, then, when is the first

6      time that any of plaintiff's counsel --

7      plaintiff's/counter-defendants' counsel raised the issue of

8      improper service of discovery/subpoenas with either you or

9      Mr. Reynal?

10             **MR. FLORES:**  That's in April, Your Honor.

11             **THE COURT:**  So that April 1st --

12             **MR. FLORES:**  That would have been.

13             **THE COURT:**  -- from Mr. Larosiere?  Okay.  So let me

14     ask you, then, also when you -- so that was the first time.  So

15     then the discovery, that was the -- formed the basis of

16     plaintiff's motion to stay discovery, when did you serve that

17     discovery?  Was it early January -- or, excuse me, late

18     January/early February?

19             **MR. FLORES:**  Yes, Your Honor, so via email --

20             **THE COURT:**  Okay.

21             **MR. FLORES:**  -- we sent requests for production.

22     There were three items there.  That's right.

23             **THE COURT:**  And then, they responded via email on

24     March 14th, and then April 1st was the first time anybody was

25     notified that service was not proper?

1          **MR. FLORES:**  Yes, Your Honor.

2          **THE COURT:**  And then Mr. Larosiere mentioned something

3    about the initial disclosures, that you raised an issue about

4    them not being served properly.  Can you speak to that?

5          **MR. FLORES:**  Yes.  During our conferral process, I was

6    trying to --

7          **THE COURT:**  Which conferral process?  Because there's

8    a lot of dates.

9          **MR. FLORES:**  Yes, yes, yes.  The conferral process for

10   this instant motion.

11         **THE COURT:**  So, like, the April 11th time period?

12         **MR. FLORES:**  Yes.

13         **THE COURT:**  Okay.

14         **MR. FLORES:**  That was the most recent.

15         **THE COURT:**  Okay.

16         **MR. FLORES:**  I asked the other side, What is your

17   position about what service has occurred?  And I asked, Is it

18   your position that your disclosures haven't been served?

19         And they thought -- they concurred were wrong, and

20   they said, Oh, they probably have that.  We will mail them.

21         **THE COURT:**  Okay.

22         **MR. FLORES:**  I asked them, Will you consent to service

23   by email?  And they said, No.

24         **THE COURT:**  Okay.

25         **MR. FLORES:**  We will consent to service by email.  We

1    hereby in court consent to service by email.  We had thought

2    that had been the going rule for both sides the entire time.

3        **THE COURT:**  And I'll say this.  I would say -- and my

4    law clerk can back me up.  At least once a week I'm dealing

5    with this issue because parties assume when they're on CM/ECF,

6    that everything can be done via email.  And normally it's not

7    an issue because the parties just go forward with email because

8    it never dawns on them.

9        Where it really comes up a lot is with pro se

10   litigants, because they don't have access to CM/ECF, and then

11   we have opposing counsel who just emails.  And I have to say,

12   No, no, no.  They're not on CM/ECF.  You have to do it via

13   mail.

14       This is the first time I've had it in a situation

15   where I have counsel on both sides who are litigating via

16   email, who are doing other discovery via email, but are now

17   arguing over this.

18       So let me, then, make sure.  Mr. Larosiere said he

19   offered to consent in writing, somewhere between April 11th and

20   April 29th, to accept service, and his position was that you

21   refused to accept that consent, because you would not serve

22   everything again.  Can you speak to that statement?

23       **MR. FLORES:**  I don't understand their side to have

24   ever consented to service via email.  We asked them.  They said

25   no.  And the reason given during conferral, as I understand it,

1   was problems about email, like things going to spam folders and

2   so forth.

3          THE COURT:  Okay.

4          MR. FLORES:  That's the exchange that I recall.

5          THE COURT:  So I'm looking at paragraph 20 on document

6   96, page 6.  "During the April 29 conference, counsel for the

7   out-of-state counter-defendants informed counsel for defendants

8   that the FedEx package disclosed in the April 11 conference had

9   not been delivered.  Counsel for the out-of-state

10  counter-defendants" -- I'm assuming that's you, Mr. Larosiere,

11  or Mr. De Pury, because since you're here in Florida, it must

12  not be Mr. Zermay -- "offered to accept digital versions of

13  whatever was sent in the subject package and that counsel would

14  confirm the same in writing.  Counsel for defendants refused."

15         Can you speak to that paragraph?

16         MR. FLORES:  Yes, Your Honor.  On May 8th, I told, via

17  email, I will report back on what subpoenas.

18         THE COURT:  On May 8th?

19         MR. FLORES:  Yes, on May 8.

20         THE COURT:  So what about this refusal on April 29th?

21         MR. FLORES:  So in the moment during the conferral, we

22  didn't supply the list --

23         THE COURT:  Mm-hm.

24         MR. FLORES:  -- because our position was that we

25  didn't have to because the rules don't require us to do so.

1    Further emails went back and forth after the conferral

2    process --

3            **THE COURT:**  Mm-hm.

4            **MR. FLORES:**  -- and after the further emails went back

5    and forth, I told the other side, On May 8th will report back

6    to you about what subpoenas have been issued --

7            **THE COURT:**  Okay.

8            **MR. FLORES:**  -- and then I did supply that report.

9    That is the report that's in the Court's record.  That is the

10   May 15th report.

11           **THE COURT:**  So let me ask you this.  Why wouldn't you

12   just tell them on April 11th, April 14th, April 29th, when they

13   say, Hey, which subpoenas did you serve?  Because your position

14   is we told them all of them email, why wouldn't you just tell

15   them again?  Because they already had the emails, why wouldn't

16   you just tell them, Hey, these are the ones we sent?  You

17   should have them in your email.  Why wouldn't you give those

18   names?

19           **MR. FLORES:**  We did.  I just couldn't do it in the

20   moment during the conference.

21           **THE COURT:**  Right.  So you waited four weeks to do it

22   because --

23           **MR. FLORES:**  No, no.

24           **THE COURT:**  -- April 11th to May 8th.  You waited

25   until May 8th to tell them after they asked for it multiple

1    times?

2        **MR. FLORES:**  They asked for it in the conference of

3    April 29th and then emails went back and forth, and on

4    May 8th -- yeah.

5        **THE COURT:**  See, this is the problem that I have with

6    you all --

7        **MR. FLORES:**  Yes.

8        **THE COURT:**  -- is that, they're saying to you on

9    April 11th, What did you do, and when can I get copies of them?

10   Can I get another copy?  And you're taking them very literally

11   and saying, I already sent them to you.  I'm not sending you

12   another copy.  And then you're waiting for them to specifically

13   use the precise words, Please, sir, may I have the names of the

14   subpoenas?  And then when they ask that specific question, you

15   still wait another 11 days to give them those names.

16          And that's where, as much as there was -- that I'm not

17   100 percent convinced on their side, your behavior is not

18   well-taken either.

19       **MR. FLORES:**  I understand.

20       **THE COURT:**  You've already sent the emails.  The cat's

21   already left the bag.  The train has already left the station.

22   And you're refusing to give those names.  And it's disingenuous

23   to say that you didn't know what those subpoenas were, because

24   the purpose for the meet and confer was the subpoenas.  To say

25   you can't give them the names when you're having a meet and

1    confer about subpoenas holds no water.  And that's the problem

2    I have here as well.

3            And that's why I'm saying, If I need to go down this

4    road with a court reporter or special master to get you all to

5    actually answer each others' questions that you're -- I

6    understand the questions they're asking on top of that, Give me

7    all the information you got from them.  That's a different

8    story.  But to refuse to even give the names of the subpoenas

9    to them, when they've asked for it at least twice is, quite

10   frankly, inexcusable.  And I want to make sure you understand

11   that, because you may get lucky on this one because of the way

12   this motion was postured, but if there's another motion filed

13   in the future and you're playing these games, and that's the

14   only way I can say it, you will be sanctioned.

15            **MR. FLORES:**  We understand, Your Honor.

16            **THE COURT:**  Okay.

17            **MR. FLORES:**  The point is very well-taken.  Thank you.

18            **THE COURT:**  Okay.  So we have these emails that went

19   out.  Let me ask this other question, because Mr. Larosiere

20   states that he wanted me to ask it, and I think it's a valid

21   question.  These 10 subpoenas -- and we'll factor in

22   DigitalOcean for right now.  These 10 subpoenas that are the

23   subject of this motion, are these the only third-party

24   subpoenas that defendants/counter-plaintiffs have served to

25   date?

1          **MR. FLORES:** Yes, Your Honor.

2          **THE COURT:** Go ahead. Go ahead.

3          **MR. FLORES:** Ten is the number. One of the 10 was

4     issued by Mr. Reynal and emailed, but never actually served on

5     the target.

6          **THE COURT:** Okay.

7          **MR. FLORES:** But, yes, these are the only 10, yes.

8          **THE COURT:** So which one was emailed but not ever

9     served?

10          **MR. FLORES:** There are two subpoenas to the Odysee

11     entity and the second of the two was never served.

12          **THE COURT:** Is that just a duplicate?

13          **MR. FLORES:** No. It's a --

14          **THE COURT:** Okay. Okay.

15          **MR. FLORES:** -- separate set of requests.

16          **THE COURT:** Okay. So that one never --

17          **MR. FLORES:** That was the last one on our list.

18          **THE COURT:** I'm sorry. So let me --

19          **MR. FLORES:** If you are looking at page 2 of document

20     103.

21          **THE COURT:** Yes. Is it the one --

22          **MR. FLORES:** There's a bullet list.

23          **THE COURT:** -- on April 2nd, that one was never

24     served.

25          **MR. FLORES:** Yeah. The bottom Odysee was never

 1    served.

 2         **THE COURT:**  Okay.  So the other nine -- well, excuse

 3    me.  We have one, two, three, four, five, six, seven, eight --

 4    so we have nine others; eight that are not at issue -- or eight

 5    that we say were emailed, and then we have the DigitalOcean.

 6    So we're talking about nine, really.

 7         **MR. FLORES:**  Correct.

 8         **THE COURT:**  Okay.  So the second Odysee.com was never

 9    served, and then we have the DigitalOcean one.  Okay.

10         **MR. FLORES:**  Yes.

11         **THE COURT:**  And so let me ask this question:  We have

12    the dates of when these email notices were provided, and all of

13    these other eight, plus DigitalOcean, have been served.

14         **MR. FLORES:**  Yes.

15         **THE COURT:**  Have they been responded to?

16         **MR. FLORES:**  Some and not others.  I can tell you

17    which.

18         **THE COURT:**  Okay.

19         **MR. FLORES:**  We have received responses to three.

20         **THE COURT:**  Okay.

21         **MR. FLORES:**  We received responses to DigitalOcean.

22         **THE COURT:**  Mm-hm.

23         **MR. FLORES:**  We received responses to the first

24    Odysee.

25         **THE COURT:**  The one from February 27?

1          **MR. FLORES:**  Yes, Your Honor.  And PayPal.

2          **THE COURT:**  And PayPal.

3          **MR. FLORES:**  Those are the three that we've received

4    responses to.  All of those documents remain in the custody of

5    counsel.  We haven't shared them outside with any third

6    parties.

7          **THE COURT:**  Okay.

8          **MR. FLORES:**  The others have not been responded to.

9          **THE COURT:**  Okay.  All right.  So with respect to

10   DigitalOcean, on this one, the law is pretty clear.  When there

11   hasn't been notice served, the subpoena needs to be quashed.

12         I know that DigitalOcean already responded.  So what

13   I'm going to do is, in an order I'm going to direct you within

14   seven days to return all of the documents to DigitalOcean and

15   to file a notice of compliance with the court.

16         **MR. FLORES:**  Very well.

17         **THE COURT:**  And that takes care of that -- any

18   concerns.

19         Let me ask this.  Do the parties have a

20   confidentiality agreement, because we do have the Historic

21   Communication Act.  We have all these other issues at play.  Do

22   we have a confidentiality order between the parties yet?

23         **MR. FLORES:**  The answer is no.  We asked if they would

24   like to enter into a two-sided agreement, and they said no.

25         **THE COURT:**  Okay.  Well, part of my order is going to

1    be directing the parties -- I'm going to keep my fingers

2    crossed that after this hearing today that you all will be able

3    to work together on this.  I'm going to direct the parties to

4    meet and confer and to agree to a confidentiality order.  We

5    normally don't have them filed with the court, but in this

6    instance I think it's probably appropriate -- to agree on one

7    and either file a fully-executed confidentiality agreement

8    within 14 days or file a notice saying you haven't been able

9    to.

10           In which case, I will draft one.  And let me be very

11   clear.  You don't want that.  You don't want me doing it

12   because nobody is going to like it.

13           But if you all can agree to it, great.  If not, I'll

14   enter one on my own.  I have done it before.  I have a form

15   I'll do, but it's going to put very strict requirements.  And

16   I'll be very clear, to put a finer point on it, your clients

17   aren't going to like it because your clients are going to have

18   very limited access to the discovery as a result.  So if you

19   don't want -- you know, be carefully what you ask for when you

20   come to court, because, you know, the name of the game here is

21   everybody is supposed to leave hurting a little bit.

22           So try to work one out.  I think it's very critical,

23   given these issues and the sensitive personal identifying

24   information that plaintiff's claim -- or plaintiff and

25   counter-defendants claims is there, that we should have a

1   confidentiality order in place.

2          **MR. FLORES:**  Your Honor --

3          **THE COURT:**  Yes, sir.

4          **MR. FLORES:**  Would you like to order to be two-sided

5   and impose obligations on --

6          **THE COURT:**  Yes.  It has to be mutual.

7          **MR. FLORES:**  Okay.  Thank you.  That was our only

8   sticking point.

9          **THE COURT:**  Absolutely.  We're not -- we're not --

10  this is the other thing.  And I hate to use these words.  We're

11  not playing these games, where one side agrees to something and

12  the other doesn't.

13         If we're going to have a confidentiality order, if

14  we're going to have provisions for how discovery is going to go

15  forward, it applies to both sides equally.  So I want to make

16  sure that's clear, is it should be a mutual confidentiality

17  order.

18         If you can't agree to it, and that has unfortunately

19  happened, I will enter one, and it will be mutual.

20         **MR. FLORES:**  We understand.

21         **THE COURT:**  And also, just for everybody's record, a

22  confidentiality order, even if I enter it, doesn't mean you get

23  to file things under seal without complying with our separate

24  local rules.  People fall into that pitfall all the time.

25         Okay.  So that answers the question about which ones

1    have been responded to.  So let me ask this, to try to just

2    streamline things:  I would like to try to -- to kind of put a

3    bow on this issue, I would like to give

4    plaintiff/counter-defendants 14 days from today to file any

5    motion they so wish regarding the other subpoenas that have

6    been served and not responded to.  I understand the objection

7    period has long expired.

8                **MR. FLORES:**  We agree.

9                **THE COURT:**  Okay.

10               **MR. FLORES:**  That's fine.

11               **THE COURT:**  And then you'll have the opportunity to

12   respond.

13               Let me be clear.  On those motions and those motions

14   only -- and I'm going to be a little bit hypocritical here,

15   because I'm going to pick and choose when rules apply -- the

16   standing order won't apply.  If you want to file one omnibus

17   motion on -- and we're talking about the Buymeacoffee.com, Aves

18   Engineering, Firearms Policy Coalition, Parts Dispensed,

19   Reddit.com and Coinbase Global, Inc.  For those one, two,

20   three, four -- those seven subpoenas, if

21   plaintiff/counter-defendants so wish, they may file a motion

22   seeking to challenge -- under whatever rules apply, whatever

23   objections apply, a motion challenging the subpoenas.

24   Defendants/counter-plaintiffs will have 14 days to file a

25   response.  Standing order will not apply.

1          Let me be clear.  One omnibus motion of up to 25

2     pages.  So I don't want seven motions -- just one.  It doesn't

3     have to attack all seven.  Whichever ones you want to attack,

4     that's fine, or if you don't file anything, that's fine as

5     well.  But, basically, what I'm doing, to make sure the

6     plaintiff/counter-defendants understand, I'm reopening your

7     objections period because I think that is one of the potential

8     harms that may have occurred here.

9          Let me be very clear.  I am in no way, shape, or form

10    saying that you all didn't serve them properly.  That will

11    be -- I'll make that finding in a moment regarding the emails.

12    I'm giving you additional relief and giving you -- reopening

13    the period to object or challenge these subpoenas.  Again, I'll

14    leave it to you to look at the rules to see what objections you

15    can raise, what standing you have to raise them, et cetera, et

16    cetera.  But that's for those.

17         The PayPal and the Odysee have already been responded

18    to.  If you want to do motions practice on that, like we talked

19    about, there's no authority that I know of that I can order

20    today for them to tell you what they received or disgorge it.

21    I'll let you all decide how you want to litigate that going

22    forward.

23         But for the other seven that have not yet been

24    responded to, I'm reopening the objections period.

25         The Odysee.com was never served.  So that's a

1    nonissue.

2         DigitalOcean, I've already said, is being quashed.

3    Everything is being returned to DigitalOcean within seven days.

4         And as far as service, because it's clear that both

5    sides have served some things -- I understand the position

6    plaintiffs make is that's just correspondence and not service.

7    But I'm going to do this.  I am now ordering that service of

8    discovery may be made by email.  Okay.  You're going to have it

9    in my order.

10        So you can serve it via email.  If you've got an issue

11   with your spam folder, get an IT tech to fix it.  It's your

12   responsibility.  You have a law firm.  You have business email.

13   Get it all fixed, because if it's going to spam, that's not a

14   basis for filing an objection.

15        I am also -- and I'm not placing an order saying

16   "comply with the rule," and I'm not placing an order saying

17   "certificate of service" because the rule already says that

18   unless it's filed on CM/ECF you have to have a certificate of

19   service.  So follow the rules.

20        But I am going to put a different request in as well.

21   Any third-party discovery, which will obviously be 99 percent

22   of the time subpoenas, you must give the other side 14 days'

23   advance notice.  That notice can be via email.  And that will

24   take care of these issues going forward.

25        And, again, there's all three of you that are getting

1    these emails.  If they're going to your spam folder or whatnot,

2    that's not going to be -- that's not going to be a basis to get

3    relief in this court.  So you're responsible for checking them.

4    You're responsible for making sure you receive what you want to

5    receive.

6           And I will say this:  If the other side comes back to

7    the defendants -- or one side comes to the other and says, "I

8    didn't get your email," resend it.  Don't refuse to resend it.

9    Don't say, No, I'm not going to do that.  That's the antithesis

10   of how we engage in discovery in this court.

11          And I'm telling you -- I cannot make this more

12   clear -- if I get another motion and that's happening again,

13   I'm going to make you all fly in.  I'll make your clients fly

14   in.  And we're going to have a conversation that you're really

15   not going to like, because Judge Berger won't tolerate it

16   either.

17          You know, these are easy things that can be done.

18   That said, checking your spam folder and making sure you're

19   getting your emails is a very easy thing that you should be

20   doing as well.

21          All right.  So what else, Mr. Flores, with respect to

22   what Mr. Larosiere said you would like to address?

23          **MR. FLORES:**  We have nothing else, Your Honor.

24          **THE COURT:**  Okay.  So here's what -- so you've heard

25   some of the rulings.  The other thing I'm going to do --

1    because, again, I've been looking for this legal authority --

2    with respect to these other subpoenas, I am not granting it.  I

3    am not quashing them.  I am not granting any other sanction at

4    this time.

5            Mr. Flores, is there anything you want to add about

6    this whole statement I made about having only meet and confers

7    in person or via Zoom with a court reporter or special master?

8    Anything you want to add on that?

9            **MR. FLORES:**  Your Honor, we believe that the meet and

10    confers via Zoom will suffice, and we will endeavor, with more

11    force now, to do them effectively.  Thank you.

12            **THE COURT:**  Okay.  Without a court reporter at this

13    time?

14            **MR. FLORES:**  Yes.

15            **THE COURT:**  Okay.  Again, I'm very, very -- I'm

16    cautiously optimistic you won't need this again, but if it gets

17    that way, that will be the next step.

18            **MR. FLORES:**  We understand.  Thank you, Your Honor.

19            **THE COURT:**  So let me just go through any other

20    requests for relief here to make sure I'm not missing anything.

21            We've talked about the quashing.

22            We've talked about the return, deletion, and

23    sequestration.

24            We've talked about what you have disclosed.  You've

25    now disclosed what subpoenas were issued and which have been

1    responded to.

2          I've given a time period for objections, if necessary,

3    and, again, I'll be happy to address them if a motion is filed.

4    You don't have to if you think it's okay.

5          If you can work it out amongst yourselves -- because

6    that's the thing.  I'm not -- I'm excusing the 500-word limit

7    on the standing order.  I'm not excusing your conferral

8    obligations.  So if you haven't conferred on these other

9    subpoenas yet, you will have to before you file your motion.

10   That's why I'm giving you 14 days to do it.

11         The protective order, I think I've addressed just

12   about all of it here by saying if it's going to be third-party

13   discovery, 14-day notice.  Also I'm saying that service can be,

14   for discovery purposes -- and when I say "discovery," it's all

15   discovery, whether it's third-party or between the parties,

16   both sides are now going to be able to accept service via

17   email.

18         Any other sanctions I do not believe are appropriate

19   at this time.

20         We're having the status conference right now.

21         Anything that you want to address, Mr. Flores, on

22   anything I've just said?

23         **MR. FLORES:**  No.

24         **THE COURT:**  All right.  Thank you very much.

25         Mr. Reynal, you've been there very patient.  Anything

1    you want to add, sir?

2            **MR. FLORES:**  No, Your Honor.  Thank you.

3            **THE COURT:**  All right.  Thank you very much.

4            Let me turn back then, as I promised, I would give the

5    plaintiff/counter-defendants the last word.  Mr. Larosiere,

6    anything else you want to add on all of the rulings?  And don't

7    worry.  It's all going to be in writing.  I'll get an order out

8    either today or Monday.

9            **MR. LAROSIERE:**  Your Honor, may we confer for a

10   moment?

11           **THE COURT:**  Sure.

12           **MR. LAROSIERE:**  Your Honor, may it please the Court?

13           **THE COURT:**  Sure.

14           **MR. LAROSIERE:**  It's just one small nit that I think

15   would solve all of the technical issues we see with email.  Is

16   it possible that the order could direct that the email come

17   from the registered email address of the filer in CM/ECF, so

18   that it's not coming from some weird other email address?

19           **THE COURT:**  Any objections to that, Mr. Flores?

20           **MR. FLORES:**  No objection.

21           **THE COURT:**  Mr. Reynal?

22           **MR. REYNAL:**  No, Your Honor.

23           **THE COURT:**  All right.  I will put that in there.

24   That way you'll know which email address to look for.  I'm not

25   going to say it has to be only from Mr. Flores or Mr. Reynal,

 1    but it will be from their specific -- whatever has been

 2    registered on CM/ECF.

 3            **MR. LAROSIERE:**  Yeah.  Just because we know those

 4    emails, so we can be sure to, you know --

 5            **THE COURT:**  Okay.

 6            **MR. LAROSIERE:**  -- look for it.  Thank you so much.

 7            **THE COURT:**  And that's going to go both ways, so it

 8    will be your registered emails as well.

 9            Okay.  So anything else on this?  Because I have

10    another issue I would like to raise with you.

11            **MR. LAROSIERE:**  Not on this, Your Honor.

12            **THE COURT:**  Okay.  Now this one, I'm not going to ask

13    for a specific answer now, but I did have a question.  On your

14    initial disclosures that were served, are you listed as a

15    witness?

16            **MR. LAROSIERE:**  No.

17            **THE COURT:**  You're plaintiff in the case.  I'm

18    assuming you're listed in your initial disclosures.  The

19    initial disclosures had to be submitted by Rule 26 and were

20    served on January 30th, I understand via email and then later

21    by email.  One of the things it asks you to list is potential

22    witnesses.

23            Mr. Zermay, is Mr. Larosiere here listed as a witness?

24            **MR. ZERMAY:**  Your Honor, if he's not, we'll make sure

25    we amend it.  It's the initial.

 1          **THE COURT:**  I haven't seen them.  So in other words,

 2     Mr. Larosiere intends to be a witness, correct?

 3          **MR. ZERMAY:**  Yes, Your Honor, he does.

 4          **THE COURT:**  Okay.  So, Mr. Larosiere, let me ask you a

 5     question.

 6          Thank you, Mr. Zermay.

 7          Rule 4-3.7 of the Florida Bar rules entitled "Lawyer

 8     As Witness."  It says that:  "A lawyer shall not act as an

 9     advocate at a trial in which the lawyer is likely to be a

10     necessary witness."

11          So I'm concerned about you being client for -- excuse

12     me, attorney for three of the counter-defendants while also

13     being a party and a counter-defendant.  So I know I'm catching

14     you a little bit unawares here, but I have some concerns that

15     we have a Florida Bar -- potential Florida Bar rule violation

16     by you continuing to be an attorney in this matter.

17          So go ahead, Mr. Zermay.

18          **MR. ZERMAY:**  Yes, Your Honor.  And I am tangentially

19     familiar with this in some other litigation in Texas.

20          **THE COURT:**  Okay.

21          **MR. ZERMAY:**  So the Florida Bar rule says, "at trial

22     in this matter."

23          **THE COURT:**  Mm-hm.

24          **MR. ZERMAY:**  So it's my understanding we're still in

25     the pretrial stages, so it's -- again, it's my understanding he

1    could serve as counsel for parties up to we actually have the

2    trial itself, and so at some point, if the defendants he's

3    representing aren't dealt with on either the motion to dismiss

4    or summary judgment, then he would have to substitute out

5    before trial, but we're still on the pretrial hearing stage of

6    this cause.  So that's my two cents on that matter.

7            **THE COURT:**  I appreciate that.  And let me ask this

8    also, then, Mr. Larosiere.  Without touching into

9    attorney-client privilege -- so I'm going to try to -- and if

10   my question is too broad, feel free to narrow it.  There's

11   another Florida Bar Rule, 4-1.7, which is conflict of interest.

12   My other concern is that you all are counter-defendants in this

13   case.  At some point, there may be a divergence of position

14   interests here.  Conflicts can be waived.

15           Yes or no, has there been a discussion, and have

16   conflicts been waived?

17           **MR. LAROSIERE:**  Yes, Your Honor.

18           **THE COURT:**  Okay, so, then, that's all there.  I just

19   wanted to address it.  I don't believe I have the authority to

20   sua sponte do anything about it, but I wanted to put that on

21   the record, because it did give me pause when I saw that you're

22   both client and attorney for some people and not for others.

23           I very much understand you have pending motions to

24   dismiss that could impact whether or not your clients stay in

25   the case.  So I'm aware of that as well.

1      **MR. LAROSIERE:**  And, Your Honor, if I may for the

2   record?

3      **THE COURT:**  Absolutely.

4      **MR. LAROSIERE:**  The record very clearly reflects why.

5   The counterclaims were brought against -- and this is, again,

6   on the record -- a series of personal friends, so we have in

7   our office dealt with such conflicts before, so it was handled

8   competently and thoroughly, but it may seem odd, but, again,

9   the record shows the counterclaims were likely just to harass

10  and intimidate personal friends, and so one can imagine why

11  they would choose the representation they chose.

12     **THE COURT:**  I understand.  And like I said, I'm not

13  even going to put anything about this in my order.  I just

14  wanted to address it while we're all together, because it gave

15  me -- it's a situation I haven't seen in a while.  And I just

16  wanted to make sure that was on the record.  And it sounds like

17  you all have it under control.  And I'll leave it at that.  And

18  there's nothing else before me on that issue, in any event.

19         So with that, anything else you want to add within the

20  context of your motion?

21     **MR. LAROSIERE:**  No, Your Honor.

22     **THE COURT:**  All right.  Mr. Flores, Mr. Reynal,

23  anything else you would like to add?

24     **MR. FLORES:**  Nothing further, Your Honor.

25     **THE COURT:**  All right.  Mr. Zermay?

1        **MR. ZERMAY:**  No, Your Honor.

2        **THE COURT:**  All right.  Mr. De Pury?

3        **MR. DE PURY:**  Thank you, Judge.  Nothing.

4        **THE COURT:**  Thank you very much.  I appreciate it.

5    We'll be in recess.  You all have a good weekend.

6        (WHEREUPON, this matter was concluded at 11:21 a.m.)

7                        -    -    -

**CERTIFICATE OF REPORTER**

8    I certify that the foregoing is a correct transcript from the
     official electronic sound recording of the proceedings in the
9    above-titled matter.

10   s/Suzanne L. Trimble _____        6/26/25
     Suzanne L. Trimble, CRR, RPR, WACCR          Date
11   U.S. Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25