**United States District Court**
**Middle District of Florida**
**Orlando Division**

Matthew Larosiere,
        Plaintiff,

v.                                          No. 6:24-cv-1629

Cody Rutledge Wilson, DEFCAD, Inc.,
Defense Distributed, and Dioskouroi LLC,
        Defendants.

---

**Defense Distributed's**
**Motion for Rule 37(e) Spoliation Relief with**
**Appointment of a Special Master**

## Table of Contents

Table of Contents ........................................................................2

Summary of the Argument..........................................................3

Argument ...................................................................................4

I.      Rule 37(e) relief about the Rocket.Chat ESI is warranted. ...............5

        A.      Larosiere and Elik had a duty to preserve. ...........................5

        B.      Larosiere and Elik allowed spoliation. ...................................7

        C.      Prejudice warrants relief. ......................................................13

II.     A special master and further relief is warranted. ...........................17

        A.      The Court should appoint a special master. ..........................17

        B.      Rule 37(e)(2) remedies are likely warranted.........................20

Conclusion ..................................................................................22

Defense Distributed respectfully moves pursuant to Federal Rule of Civil Procedure 37(e) for an order of spoliation relief against Plaintiff Matthew Larosiere that appoints a special master and enters adverse inferences.

## Summary of the Argument

Plaintiff Matthew Larosiere and his employee John Elik have long held administrator roles over the Rocket.Chat server at chat.deterrencedispensed.com, a digital communications platform that once housed substantial ESI about Plaintiff's claims. *See* Ex. B; Ex. I. Both were therefore obliged to "take reasonable steps to preserve" that platform's ESI no later than this action's inception. Fed. R. Civ. P. 37(e). Yet after litigation began, this Rocket.Chat's ESI was severely spoliated by the systematic deletion of over 73,000 messages and the elimination of 89 beta rooms—much of which is very relevant to Plaintiff's claims. *See* Ex. B; Ex. I. Their discovery responses now disclaim possession or knowledge of the missing ESI. It is therefore clear that they "failed to take reasonable steps to preserve" this ESI, which now "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).  Rule 37 spoliation relief is thus warranted.

The Court should hold that this constitutes Rule 37(e) spoliation warranting an order that (1) appoints a special master to take charge of this Rocket.Chat server and determine the full scope and nature of spoliation, and (2) assesses the special master's costs against Plaintiff Larosiere. And once the special master finds the anticipated Rule 37(e)(2) "intent to deprive," the Court should (3) enter an order presuming that the lost information was unfavorable to the Plaintiff.

3

**Argument**

Defendant Defense Distributed moves for an order of spoliation relief against the Plaintiff pursuant to Federal Rule of Civil Procedure 37(e). *See generally Skanska USA Civil Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1314 (11th Cir. 2023); 8B Charles A. Wright & Arthur R. Miller et al., Federal Practice & Procedure: Jurisdiction & Related Matters § 2284.2 (3d ed. West 2025) (hereinafter "Wright & Miller"). The Court should resolve this motion with an evidentiary hearing and first find that Rule 37(e)'s primary relief threshold is met because "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because [the Plaintiff and the employee he is responsible for] failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. Civ. P. 37(e). The Court should then find, again with the benefit of an evidentiary hearing, that this "loss of information" caused "prejudice" under Rule 37(e)(1), and that the Plaintiff and the employees he is responsible for "acted with the intent to deprive another party of the information's use in the litigation" under Rule 37(e)(2). To facilitate these factual findings, the Court should appoint a special master pursuant to Federal Rule of Civil Procedure 37 and 53 and order that the special master take charge of this Rocket.Chat server to determine the full scope and nature of spoliation. *See generally Trump v. United States*, 54 F.4th 689, 696 (11th Cir. 2022). Upon a finding by the special master of a Rule 37(e)(2) "intent to deprive," the Court should then enter an order presuming that the lost information was unfavorable to the Plaintiff.

4

I.    **Rule 37(e) relief about the Rocket.Chat ESI is warranted.**

Federal Rule of Civil Procedure 37(e) authorizes spoliation relief if the movant first shows that "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e). The Court should make that finding as to Plaintiff Matthew Larosiere for the reasons set forth below and after an evidentiary hearing with appointment of a special master.

A.    **Larosiere and Elik had a duty to preserve.**

Rule 37(e) spoliation relief depends first on the existence of a duty to preserve evidence. *See*, *e.g.*, Wright & Miller § 2284.2. Usually and in this case, a duty to preserve evidence is triggered as soon as a party should foresee litigation and appreciate that information within its custody or control should be maintained for possible use in that litigation. *See id.*; *Point Blank Sols., Inc. v. Toyobo Am., Inc.*, No. 09-61166-CIV, 2011 WL 1456029, *24 (S.D. Fla. Apr. 5, 2011) ("It is well-settled that the duty to preserve potentially relevant evidence arises when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable.").

Under the well-settled inquiry about when litigation is "pending or probable," this action's duty to preserve ESI existed as to all parties no later than September 21, 2024. By then, every person at issue had either (1) become an actual party to the litigation, or (2) received a litigation hold letter about the ESI at issue.

As to Plaintiff Matthew Larosiere, this action's duty to preserve ESI existed no later than September 6, 2024. On that date, Larosiere filed this action's original complaint, Doc. 1, which puts at issue his "design and development of firearms technologies" and associated "pictorial, written, and visual art works related to his advocacy." Doc. 1 at 1-2. The ESI at issue concerns the files he sues about.

As to former Counterdefendant John Elik, this action's duty to preserve ESI existed no later than September 20, 2024. On that date, Elik received a litigation hold letter from counsel for Defense Distributed alerting him to the preservation requirement for this action's ESI. Ex. C. He became a party when sued on November 19, 2024. Doc. 29. He ceased being a party when the claims against him were dismissed without prejudice on September 5, 2025. *See* Doc. 123.

Elik's preservation duties also stem from his role as Plaintiff Larosiere's employee. Elik swears that he created the works Plaintiff sues about as an employee of the Plaintiff: "I created these works pursuant to an express written agreement with Plaintiff, which I considered to be an employment agreement." Doc. 53-3 at 3; *accord id.* at 6 ("the images, representations of models, and written works represented as the registered works are true and correct reproductions of the works I was directed to make in the scope of my employment"); *id.* at 2 ("At all times relevant to this action, my work was regularly monitored and directed by Plaintiff."). Because the employment relationship between Larosiere and Elik is central to Plaintiff's action, Larosiere bears Rule 37 responsibility for Elik's preservation failures. *See, e.g.*, *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212,

218 (S.D.N.Y. 2003) ("the duty to preserve extends to those employees likely to have relevant information—the 'key players' in the case"); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 497 (E.D. Va. 2011) (same); *see also Chan v. Triple 8 Palace, Inc.*, No. 03CIV6048(GEL)(JCF), 2005 WL 1925579, at *6 (S.D.N.Y. Aug. 11, 2005) ("The defendants had the obligation to inform their employees of the requirements of preservation….The failure to take any affirmative steps to inform their employees of the need to retain the tip distribution sheets renders the defendants responsible for their loss as well."); *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987) ("It is no defense to suggest…that particular employees were not on notice."); *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 139 (S.D.N.Y. 2009) ("There can be no dispute that the Defendants were under an obligation to preserve all documents and communications stored on their employees' computers, at least as early as the start of this litigation.").

## B. Larosiere and Elik allowed spoliation.

Given those preservation duties, Rule 37 next requires proof that "a party failed to take reasonable steps to preserve" evidence it had a duty to preserve. Fed. R. Civ. P. 37(e). Sufficient proof of such spoliation exists already and more should be uncovered by a special master. Instead of taking reasonable steps to preserve the Rocket.Chat ESI that is clearly material to this action, Larosiere and Elik either conducted or allowed its deletion on a massive scale.

### 1. Severe spoliation occurred.

The Declarations of Garret Walliman, Ex. B; Ex. I, establish every material aspect of the Gatalog Rocket.Chat's spoliation. That evidence shows that Larosiere and Elik possessed administrative power over the Rocket.Chat server at issue, which was configured to facilitate evidence destruction rather than preservation. Ex. B at 5-10. According to this evidence, Larosiere and Elik operated as administrators of the Rocket.Chat at issue with administrative privileges sufficient to preserve some or all of its recently deleted electronically stored information; yet the system was configured to "allow users to destroy their own data, and to obscure this evidence destruction from review. *Id.* They possessed unilateral authority to delete any communications across public and private rooms, implement bulk deletion operations, and eliminate entire conversation histories, while deliberately maintaining the server on a Community version lacking audit logging capabilities that would have created forensic trails of their destruction activities. *Id.*

The extent of this spoliation exceeds 73,000 deleted messages and at least 89 deleted beta rooms since September 2024—including substantial discussions of the files that Plaintiff sues about. An example is the Rocket.Chat's "beta.Ivan.Amigo_Grande_CETME_C" location, which pertains to the development, testing, and preparation of the "Amigo Grande" files Plaintiff Larosiere now sues about. *See* Doc. 43 at 14, 16, 18, 19, 20, 25, 26, 37, 40, 42, 44. That Rocket.Chat beta room's ESI was not sufficiently preserved. *See* Ex. B at

9-10. Another example is the Rocket.Chat's "beta.MattLaAtLaw.P99" ESI, which pertains to the development, testing, and preparation of the "P99" files Plaintiff Larosiere now sues about. *See* Doc. 43 at 14, 15, 16, 19, 20, 25, 37, 40, 42, 44. That Rocket.Chat beta room's ESI was not sufficiently preserved either. *See* Ex. B at 9-10. Evidence also suggests spoliation of " beta.Fuddbusters.Hitchhiker," Ex. B. at 10, which Plaintiff sues about too, *see* Doc. 43 at 3, 4, 28-31, 35, 39, 46.

On the question of spoliating intent, the declaration goes on to show that, on October 22, 2024, an associate of Larosiere and Elik publicly announced on Rocket.Chat that the leadership of The Gatalog would at that time begin deleting evidence, while John Lettman simultaneously advised followers on X/Twitter to destroy evidence that is the subject of this action. Ex. B at 10-11 ("Consider destroying or relocating anything spicy you possess").

In sum, this evidence establishes that spoliation of this Rocket.Chat's ESI was both extensive and largely if not totally irreversible. Though they had tools to implement litigation holds and prevent deletions once preservation duties arose, Larosiere and Elik as administrators failed to utilize them and instead oversaw utilization of multiple evidence destruction mechanisms.

Elik also likely committed more Rule 37(e) spoliation with respect to his Reddit account. "Before this action began, Counterdefendant John Elik maintained an online social media account at Reddit as 'IvanTTroll' that included substantial content regarding material issues related to this litigation." Ex. B at 2. "On the same day that Plaintiff Larosiere filed this lawsuit, Elik deleted the entire publication

history of his "IvanTTroll" Reddit account, leaving behind essentially none of his prior Reddit publications and none of those prior Reddit publications' thousands of comments." *Id.* Elik's discovery responses now concede that he "deleted his Reddit account and removed certain posts from Twitter," quibbling only about whether he did so with "any intention of concealing discoverable material." Ex. C at 14.

### 2. Larosiere is responsible for the spoliated ESI.

As to the Rocket.Chat ESI in question, Plaintiff Larosiere bears full Rule 37(e) responsibility for the spoliation detailed above because both he and his employee, Elik, served as an "administrator" at the relevant times.

Proof of Larosiere's "administrator" status comes from Elik, who swore in his discovery responses that Larosiere had an "administrative role or privileges during the relevant period." Ex. C at 6. It also comes from former Counterdefendant Lettman, who swore in discovery responses that Larosiere "held some form of administrative role or privileges during the relevant period." Ex. D at 6. (Larosiere signed both of these discovery responses as counsel.) Outside evidence also confirms that Larosiere had and still has an administrator status that should have been used to take "reasonable steps to preserve" the ESI there. *See* Ex. B at 10.

Larosiere's own discovery responses (as opposed to the responses he signed as Elik and Lettman's counsel), swear to this: "Larosiere adds that he recalls being told he had administrative privileges on the chat page, but has not ever accessed them or seen such for himself, and was unable to access his account to verify." Ex. E at 6. Yet screenshots from the relevant period show that

Larosiere was actively logging into the Rocket.Chat server and was utilizing administrative powers to manage a "beta room." Ex. I at 8. He posts here that "I am pleased to announce the opening of my beta for the PXX, a frame compatible with Walther's P99.... If you have any of the above kits and want into the beta, please DM me":



Ex. I at 8. And the "fact that other Gatalog users are recommending that users send Larosiere access requests on the Rocket.Chat platform indicates that Larosiere was actively logging in to the Rocket.Chat server at this time, and was utilizing administrative privileges to grant access requests":



Ex. I at 7.

11

As to Elik's "administrator" status, Elik's own discovery responses (from when he was a party) concede that "he has held administrative privileges" at the Gatalog Rocket.Chat. Ex. C at 5. And here as well, outside evidence also confirms that Elik had and still has an administrator status that should have been used to take "reasonable steps to preserve" the ESI there. *See* Ex. B at 10. "John Elik utilized the Gatalog Rocket.Chat with username 'Ivan', and had ***and still has*** administrative privileges sufficient to preserve some or all of its recently deleted electronically stored information." *Id.* (emphasis added). He appeared there as "Ivan" with the "Admin" and "Owner" badge:



Ex. I at 4.

Thus, in their administrator roles, Larosiere and Elik had "possession, custody, or control" under Rule 34 of the Gatalog Rocket.Chat ESI, with authority to preserve or destroy communications, set retention policies, and manage backups. That control triggered affirmative preservation duties under Rule 37(e) once litigation was reasonably anticipated. Federal courts consistently hold that parties with such custody and control over ESI repositories bear heightened preservation obligations precisely because their administrative authority makes them uniquely capable of either preserving or destroying evidence at will. *See,*

*e.g.*, *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007), *aff'd sub nom. Gordon Partners v. Blumenthal*, No. 02 CIV 7377 LAK, 2007 WL 1518632 (S.D.N.Y. May 17, 2007).

"Where a party fails to timely institute 'a formal litigation hold and…otherwise informally preserve ESI,' the Court can conclude that it did not undertake reasonable steps to preserve ESI." *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 61 (S.D.N.Y., 2020). The same finding is warranted here as to Plaintiff Larosiere—both for his own failures and for those of his employee, Elik, for whom he bears responsibility.

### C.    Prejudice warrants relief.

"If electronically stored information has been lost due to the failure of a party to take reasonable steps to preserve after the duty to preserve has been triggered, the court may take measures under Rule 37(e)(1) if it finds that the loss of the information has prejudiced another party." Wright & Miller § 2284.2. So it is here.

Initially, the ESI in question has been "lost." To meet this part of the test, "[a] party need not 'pursue every possible avenue for replacing or restoring the ESI, but it must show that it made some good-faith attempt to explore its alternatives before pursuing spoliation sanctions.'" *Gill v. JUS Broad. Corp.*, No. 19-CV-4216 (DLI)(PK), 2023 WL 7412275, at *6 (E.D.N.Y. Nov. 9, 2023) (quoting *Steves and Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 109 (E.D. Va. 2018)). Defense Distributed did so here, to no avail.

13

Discovery requests to Plaintiff Larosiere sought the ESI at issue in various ways. Ex. H at 14-15. But instead of producing any of the spoliated material, Plaintiff Larosiere responded by saying that he has essentially nothing, except maybe documents that are privileged by Plaintiff Larosiere's representation of Elik and the action's former Counterdefendants. When asked for ESI about this Rocket.Chat, Plaintiff Larosiere responded that he has no non-privileged "communications concerning chat.deterrencedispensed.com, including any selection or delegation of Rocketchat administrative responsibilities." Ex. E at 10. Plaintiff Larosiere also responded that he has no non-privileged "financial or transactional records concerning third-party platforms or domains—including chat.deterrencedispensed.com." Ex. E at 11. And when asked to produce materials about "the management, deletion, or alteration of records or communications during the 6 months preceding the filing of this lawsuit," Ex. H at 15, Plaintiff Larosiere responded that "after conducting a diligent search," he "is not aware of any materials responsive to this Request." Ex. E at 15.

Elik too was asked for the Rocket.Chat's ESI. Ex. F at 12-14. But he too failed to supply any of the spoliated material and responded that he is "not aware of any deletions or alterations of records or communications during the relevant time period, except for minor deletions to correct typographical errors or rephrasing in informal posts, for which no records were retained." Ex. C at 14.

14

Given that this ESI was "lost," relief-worthy Rule 37(e) "prejudice" stems from the now-spoliated evidence that Defense Distributed knew to have once existed. *Connor v. Sun Trust Bank*, 546 F. Supp. 2d 1360 (N.D. Ga. 2008), found sanctionable prejudice on analogous facts. Its key conclusion applies squarely here: "If relevant evidence is not produced, for whatever reason, and then is destroyed before either party learns of the existence of that evidence, then the absence of the relevant evidence prejudices the party that would have relied on it to prove its case." *Id.* at 1376.

Second, relief-worthy Rule 37(e) "prejudice" exists because the spoliation of *known* evidence raises a question about what *unknown* evidence these same opponents spoliated as well. Again, *Connor v. Sun Trust Bank*, 546 F. Supp. 2d 1360, 1376 (N.D. Ga. 2008), found sanctionable prejudice on analogous facts. *See id.* at 1376 ("In other words, the plaintiff is prejudiced by Sun Trust's destruction of the February 12 email because it raises a question of whether there were other relevant emails in existence at that time but which were also not produced, and there is no satisfactory answer because all emails not archived by the email users had since been automatically deleted from the server.").

In these respects, the spoliated Rocket.Chat data was central to this case because it contained contemporaneous communications documenting how Plaintiff and his employee conceived, created, modified, published and licensed the very files he now claims as his own. *See* generally Ex. B. As detailed above, the ESI labeled in the Rocket.Chat as "beta.Ivan.Amigo_Grande_CETME_C," *see*

Ex. B at 9-10, corresponds to the "Amigo Grande" files Plaintiff Larosiere now sues about, *see, e.g.*, Doc. 43 at 14, the ESI labeled in the Rocket.Chat as "beta.MattLaAtLaw.P99," Ex. B. at 9-10, corresponds to the "P99" files Plaintiff Larosiere now sues about, *see, e.g.*, Doc. 43 at 14, and evidence also suggests spoliation of "the room beta.Fuddbusters.Hitchhiker," Ex. B. at 10, which Plaintiff sues about too, *see* Doc. 43 at 3. Without that evidence, the Court and jury are deprived of the clearest record of authorship, collaboration, publication, license and ownership relating to the works Plaintiff put at issue in his suit.

Indeed, a comprehensive academic study of 3D-printed firearms from 2013-2024 demonstrates the critical evidentiary value of this specific Rocket.Chat server in understanding the overall enterprise of 3D-printed firearms development. Rueben Dass, *3D-Printed Firearms: Global Proliferation Trends and Analyses*, 38 Stud. Conflict & Terrorism 1 (2025). It shows that the Plaintiff's 3D-printed firearms development is heavily dependent on an online ecosystem where participants coordinate development, production, the exchange of technical expertise, conduct "beta testing" through closed groups of select individuals, and package and distribute the design files—precisely the type of communications that were systematically destroyed from The Gatalog's Rocket.Chat server.

## II.    A special master and further relief is warranted.

"Rule 37 is flexible." Wright & Miller § 2284. "The sanctions enumerated in the rule are not exclusive and arbitrary but flexible, selective, and plural." *Id.* "The district court may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even." *Id.*

### A.    The Court should appoint a special master.

As a remedy for the spoliation established above, the Court should first enter an order pursuant to Federal Rule of Civil Procedure 37(e)(1) "finding prejudice to another party from loss of the information" and therefore ordering all measures "necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Specifically, the Court should cure the prejudice pursuant to Rule 37(e)(1) by issuing an order that (1) appoints a special master to take charge of the Rocket.Chat server at chat.deterrencedispensed.com and determine the full scope of spoliation, and (2) assesses the special master's costs against Plaintiff Larosiere, utilizing the additional authority of Federal Rule of Civil Procedure 53(b) as necessary. *See Trump v. United States*, 54 F.4th 689, 696 (11th Cir. 2022).

The Court has already indicated that it "will not hesitate to appoint a special master in this case at the expense of the parties." Doc. 120 at 3. That step is especially warranted here because of the inquiry's highly-technical subject matter and heavy consequences. The Rocket.Chat platform requires specialized expertise to assess data recovery from server logs, backup systems, or cached files; analyze metadata for deletion timestamps and user attribution; and

implement forensic preservation protocols. *See generally* Ex. B. at 2-5. A technically qualified special master can secure the server infrastructure, conduct comprehensive forensic analysis, and provide objective findings about both the scope of past spoliation and data recovery feasibility—tasks beyond traditional discovery motion practice capabilities—as well as the "intent to deprive" inquiry defined by *Skanska USA Civil Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1312 (11th Cir. 2023).

Precedent supports this approach. "The only way to determine if relevant evidence currently exists or previously existed and was lost or destroyed is to conduct a forensic examination to see if such evidence exists." *Nacco Materials Handling Group, Inc. v. Lilly Co.*, 278 F.R.D. 395, 406 (W.D. Tenn. 2011). So special masters are often used to conduct analogous ESI inquiries. *See, e.g.*, *Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2015 WL 1880346, at *2 (S.D. Fla. Apr. 24, 2015).[1] The kind of granular guidance issued in *Procaps* and *Nacco* can be used here to ensure an effective resolution of the instant ESI issues.

---

[1] *See also Hofmann v. EMI Resorts, Inc.*, 689 F. Supp. 2d 1361, 1372 (S.D. Fla. 2010) ("the Monitor Order provided the Special Master with the 'full power and authority necessary to carry out' investigations regarding 'monies, property, assets, records or other tangible things that the Monitor may believe have wrongfully, illegally, or otherwise improperly been misappropriated or transferred.'"); *FinancialApps, LLC v. Envestnet, Inc.*, No. CV 19-1337-JLH, 2025 WL 2399303, at *1 (D. Del. Aug. 7, 2025) ("The Court appointed me as a Special Master in this case and asked that I provide a Report and Recommendation on Plaintiff FinancialApps, LLC's Motion for Finding of Spoliation and for Sanctions (D.I. 612) and Defendants Envestnet, Inc. and Yodlee, Inc.'s Motion for Finding of Spoliation and for Sanctions (D.I. 657)."); *Ecolab Inc. v. Ridley*, No. 1:22-CV-50, 2023 WL 11762890, at *1 (E.D. Tenn. Dec. 18, 2023) ("The Court appointed the

"[U]nder Rule 53(g), the Court retains the discretion to apportion the costs of a special master among the parties 'after considering the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to the master.'" *Ecolab Inc. v. Ridley*, No. 1:22-CV-50, 2023 WL 11762828, at *18 (E.D. Tenn. Aug. 1, 2023). Applying that standard here, the Court should assess the special master's cost against Plaintiff alone because his "deficient preservation and collection efforts necessitated these actions." *Nacco Materials Handling Group, Inc.*, 278 F.R.D. at 406; *see id.* ("Again, because Lilly's deficient preservation and collection efforts necessitates a forensic analysis of the data, the court finds that analyses of the data on the hard drives of some of the computers is warranted at this time and that Lilly should bear these costs.").

---

Special Master to oversee a limited reopening of discovery to mitigate the prejudice caused by the parties' spoliation."); *Sec. & Exch. Comm'n v. Yin*, No. 17-CV-972 (JPO), 2023 WL 2753094, at *1 (S.D.N.Y. Mar. 31, 2023) ("the Court granted the SEC's request for the appointment of a special master to address the question of whether Yin engaged in spoliation by deleting responsive documents from his personal computer"), *aff'd sub nom. Sec. & Exch. Comm'n v. Su*, No. 23-575, 2023 WL 5970952 (2d Cir. Sept. 14, 2023); *EPAC Techs., Inc. v. Harpercollins Christian Publ'g, Inc.*, No. 3:12-CV-00463, 2023 WL 2505905, at *1 (M.D. Tenn. Mar. 14, 2023) ("Magistrate Judge Bryant appointed a Special Master to advise the Court on Thomas Nelson's participation in discovery following accusations of spoliation"); *Litton Sys., Inc. v. Ssangyong Cement Indus. Co., Ltd.*, 107 F.3d 30 (Fed. Cir. 1997) ("The district court appointed a special master to conduct a hearing on "whether any parties to this litigation have destroyed documents or other evidence relevant to this litigation with actual or constructive knowledge that such destruction constituted spoliation of evidence.").

**B.     Rule 37(e)(2) remedies are likely warranted.**

The timing of the Rocket.Chat deletions strongly supports a finding of intent to deprive, as evidence destruction escalated immediately after Larosiere filed suit and after Elik received a litigation hold letter. Such close temporal proximity between the onset of preservation duties and large-scale deletions is regularly held to constitute circumstantial proof of bad faith. *See Skanska USA Civil Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1303 (11th Cir. 2023); *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 946 (11th Cir. 2005).

The scale of loss compels a serious remedy as well. Tens of thousands of deleted messages and nearly ninety beta rooms represent not isolated oversights but systemic destruction. Courts in this Circuit have found sanctions appropriate on far smaller records. *See Connor v. Sun Trust Bank*, 546 F. Supp. 2d 1360, 1376 (N.D. Ga. 2008) (prejudice found due to one lost email).

Assuming that the special master finds a Rule 37(e)(2) "intent to deprive," Fed. R. Civ. P. 37(e)(2)(A), Defense Distributed moves for an order entering a presumption that the lost information was unfavorable to the Plaintiff. *See* Fed. R. Civ. P. 37(e)(2)(A). The systematic deletion of over 73,000 messages from a primary collaboration platform central to this litigation, occurring after preservation duties attached and despite express litigation hold notices, would establish the requisite intent to deprive Defense Distributed of critical evidence. Given that Plaintiff and his employee possessed administrative control over this evidence and

chose not to preserve it, the adverse inference presumption is both legally warranted and factually appropriate.

The correct bar is set by *Skanska USA Civil Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290 (11th Cir. 2023) ("Skanska can provide no reasonable explanation for its conduct other than to plead negligence. True enough, much of the evidence was destroyed through 'routine' document destruction policies. But a hands-off implementation of an ordinary corporate destruction policy is not a silver bullet. We have already explained that we would be 'highly skeptical' of a claim that evidence was unintentionally destroyed 'pursuant to a routine policy' after a request that the evidence be preserved."). "As we have explained, the rule provides for sanctions when 'electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party *failed to take reasonable steps to preserve it'.*" *Id.* (quoting Fed. R. Civ. P. 37(e) (emphasis by *Skanska*). "Failure to act can thus—by definition—be a violation of Rule 37." *Id.* "Our caselaw on spoliation also shows that failures to act can be just as harmful as affirmative acts of destruction." *Id.* "So too here." *Id.* Plaintiff and his employee's "passivity does not change the basic fact that the evidence was destroyed." *Id.* "Given that other circumstances pointed to a reasonable inference of bad faith by [Plaintiff], it is irrelevant whether an act or a failure to act directly caused the spoliation." *Id.*

### Local Rule 3.1 Certification

Movant Defense Distributed conferred with counsel for Plaintiff in a good faith effort to resolve this motion's dispute via emails and teleconferences. Having

so conferred, Defense Distributed continues to press the motion, which is opposed by the Plaintiff. The Court authorized the filing of this motion with the Document 124 Order allowing full-length briefs.

## Conclusion

The motion should be granted. The Court should resolve this motion with an evidentiary hearing and issue an order that (1) appoints a special master to take charge of the Rocket.Chat server at chat.deterrencedispensed.com and determine the full scope and nature of spoliation, (2) assesses the special master's costs against Plaintiff, and then (3) if the special master finds an "intent to deprive," Fed. R. Civ. P. 37(e)(2)(A), issue an order entering a presumption that the lost information was unfavorable to the Plaintiff.

Respectfully submitted,

/s/ Chad Flores
Chad Flores
cf@chadflores.law
Texas Bar No. 24059759
Flores Law PLLC
917 Franklin Street
Suite 600
Houston, Texas 77002
T (713) 364-6640
F (832) 645-2496

Counsel for Defense Distributed