UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MATTHEW LAROSIERE,

               *Plaintiff*,

v.

CODY RUTLEDGE WILSON, DEFCAD, Inc.,
DEFENSE DISTRIBUTED, and DIOSKOUROI
LLC,

               *Defendants*.           CASE No.: 6:24-cv-01629

_____

Defense Distributed,

               Counterplaintiff/ Third
               Party Plaintiff,

v.

The Gatalog, Matthew Larosiere, John Elik,
Alexander Holladay, Peter Celentano, Josh
Kiel Stroke, John Lettman, and MAF Corp.

               Counterdefendants.

_____/

**DEFENSE DISTRIBUTED'S OBJECTIONS AND RESPONSES TO JOHN ELIK'S
INTERROGATORIES TO DEFENSE DISTRIBUTED**

To: Counterdefendant, John Elik, through his attorney of record, Matthew Larosiere, 6964

Houlton Circle Lake Worth, FL 33467.

Defendant/Counterplaintiff, Defense Distributed, serves these answers to John Elik's interrogatories.

## Responses to Interrogatories

1. Identify and describe in detail the complete basis, including all facts, documents, communications, and analyses (whether internal or external), that support your contention that any Counterdefendant or "The Gatalog" violated the International Traffic in Arms Regulations ("ITAR"), as alleged in your Counterclaims. Your response must include:

   a. Identification of each file, dataset, or communication you contend constitutes "technical data" under ITAR;

   b. An explanation of how you determined that such material required licensing or other authorization under ITAR;

   c. A statement as to whether you consulted or communicated with the U.S. Department of State, Directorate of Defense Trade Controls (DDTC), or any expert or consultant regarding classification or jurisdiction under ITAR, and if so, identify all such persons or agencies and summarize the substance of each communication;

   d. The identity of all persons involved in making or communicating this determination.

**Response**: Defendant/Counterplaintiff objects to this request as overbroad, oppressive, and violating the attorney work-product doctrine. *See* Middle District of Florida Discovery Handbook Section IV.C.2 ("Interrogatories that purport to require a detailed narrative of the opposing parties' case are generally improper because they are overbroad and oppressive.").

Ex. B COMPOSITE DEFENDANTS' DISCOVERY RESPONSES

Counterdefendant's Interrogatory contains four discrete subparts (a., b., c., and d.), to which Defense Distributed answers as follows:

a.  There are at least twelve (12) defense articles, but many more violations have occurred whose records were deleted at Mr. Larosiere's direction at chat.deterrencedispensed.com after September 2024. The technical data Defense Distributed has identified includes the eight (8) technical data packages hosted at https://odysee.com/@TheGatalog-Suppressors:a, uploaded by John Elik, the NFA Bi-Poly (1) technical data package hosted at: https://odysee.com/@TheGatalog-PrintableFramesReceivers:9/NFA-BiPoly:8, uploaded by John Elik, the MAC Super Safety (1) technical data package hosted at: https://odysee.com/@TheGatalog-PrintableFramesReceivers:9/MAC-Super-Safety-System:b, uploaded by John Elik, and the machine gun receivers for the Rebel-9 and Rogue-9 (2) technical packages hosted at: https://odysee.com/@TheGatalog-HybridDesigns:0, uploaded by John Elik.

b.  The United States Munitions List codified in 22 CFR § 121.1 designates technical data related to the defense articles listed in (e), (g), and (h)(2) as subject to the Arms Export Control Act. This control was confirmed by BIS agent Ronald Rolfe.

c.  Cody Wilson communicated by phone with Ronald Rolfe, Senior Engineer at the U.S. Department of Commerce, Bureau of Industry and Security, concerning a CCATS request for the suppressor and machine gun files published by The Gatalog. Mr. Rolfe said these files, in any format, were so obviously controlled by the ITAR that a CCATS submission would be returned without action with a recommendation to contact the Dept. of State. He further stated that a State Department CJ request would be inappropriate since there is

Ex. B COMPOSITE DEFENDANTS' DISCOVERY RESPONSES

no question of suppressor and machine gun 3D models qualifying as defense articles on
the USML.

    d.  Ronald Rolfe, Department of Commerce, Bureau of Industry and Security

2.  Identify and describe in detail the complete basis, including all facts, documents,
communications, and analyses (whether internal or external), that support your contention
that any Counterdefendant or "The Gatalog" violated the Export Administration
Regulations ("EAR"), as alleged in Paragraphs 104–109 and 140(a) of your
Counterclaims. Your response must include:

    a.  Identification of each file, dataset, or communication you contend constitutes
"technology" or "software" subject to EAR controls;

    b.  An explanation of how you determined that the publication, transfer, or
availability of such material required a license under the EAR;

    c.  A statement as to whether you consulted or communicated with the U.S.
Department of Commerce, Bureau of Industry and Security (BIS), or any expert
regarding classification or licensability under EAR, and if so, identify all such
persons or agencies and summarize each such communication;

    d.  The identity of all persons involved in making or communicating this
determination on your behalf.

**Response**: Defendant/Counterplaintiff objects to this request as overbroad, oppressive, and
violating the attorney work-product doctrine. *See* Middle District of Florida Discovery

Handbook Section IV.C.2. Counterdefendant's Interrogatory contains four discrete subparts (a., b., c., and d.), to which Defense Distributed answers as follows:

a. There are at least forty-nine (49) items, including every file for a frame, receiver, or complete firearm assembly discoverable at Thegatalog.com and hosted on Odysee by John Elik. There are hundreds more violations on chat.deterrencedispensed.com, the evidence of which has been in part deleted at the direction of Mr. Holladay and Mr. Larosiere since September 2024.

b. The Export Administration Regulations are codified in 15 CFR § 734.7. The Hitchhiker STEP files, and by extension all Gatalog receiver and assembly files, are classified as 0E501.a and controlled for National Security (NS1), Regional Stability (RS1), Crime Control (CC2), Anti-Terrorism (AT1) and UN (see 746.1(b) of the EAR) reasons. Their unrestricted publication without a license is a criminal offense.

c. Cody Wilson communicated by phone with Ronald Rolfe, Senior Engineer at the U.S. Department of Commerce, Bureau of Industry and Security, concerning a CCATS request for the CAD files for the frame and firearm assembly files published without restriction by The Gatalog. Mr. Rolfe said these files, in any format, were technology controlled by the EAR. A CCATS request submitted to BIS confirmed this designation. Mr. Rolfe invited Mr. Wilson to submit an enforcement request to BIS after receiving the CCATS determination, which we are now preparing. This submission will include John Elik's full Odysee upload history.

d. Ronald Rolfe, Department of Commerce, Bureau of Industry and Security

3. Identify and describe in detail the complete basis, including all facts, documents, communications, and analyses (whether internal or external), that support your contention that a member or agent of "The Gatalog," as you allege, made the threat described in Paragraph 122 of your Counterclaims. Your response must include:

    a. The identity of the person who sent the alleged message.

    b. The method and platform of transmission;

    c. The basis for your belief that the sender was acting on behalf of or in furtherance of the alleged Gatalog enterprise;

    d. Whether the message or incident was reported to law enforcement or any other authority, and if so, identify each such report or communication.

**Response**: Defendant/Counterplaintiff objects to this request as overbroad, oppressive, and violating the attorney work-product doctrine. *See* Middle District of Florida Discovery Handbook Section IV.C.2. Counterdefendant's Interrogatory contains four discrete subparts (a., b., c., and d.), to which Defense Distributed answers as follows:

    a. The complete identity is unknown to Defendant/Counterplaintiff; however the person is a member of the Gatalog.

    b. Twitter

    c. See screenshots produced in response to Counterdefendant's Request for Production No. 4, which include the statement "I am extremely loyal to my friends and The Gatalog."

    d. No.

4. Identify and describe in detail the complete basis, including all facts, documents, communications, and analyses (whether internal or external), that support your contention that any Counterdefendant was involved in conducting, attempting, or soliciting cyberattacks or DDoS activity, as alleged in your Counterclaims. Your response must include:

   a. The date(s) of each alleged attack;

   b. The nature and impact of each incident;

   c. The identity of the person(s) you allege were responsible or complicit;

   d. The sources of any technical or forensic information on which you rely to make these claims.

**Response**: Defendant/Counterplaintiff objects to this request as overbroad, oppressive, and violating the attorney work-product doctrine. *See* Middle District of Florida Discovery Handbook Section IV.C.2. Counterdefendant's Interrogatory contains four discrete subparts (a., b., c., and d.), to which Defense Distributed answers as follows:

   a. May 24th, 2024. July 25th, 2024. August 29th - August 30th, 2024.

   b. See the report produced as part of Defense Distributed's Response to RFP #5

   c. Peter Celentano, Alexander Holladay, John Elik, and John Lettman

   d. See screenshots showing false and fraudulent DEFCAD IP addresses posted by John Lettman on Twitter and soliciting DDoS attacks against Defcad, produced as part of Defense Distributed's Response to RFP #5.

5. Identify and describe in detail the complete basis, including all facts, documents, communications, and analyses (whether internal or external), that support your contention

that any Counterdefendant committed money laundering in violation of 18 U.S.C. § 1956,

as alleged in your Counterclaims. Your response must include:

- a. Each transaction (including date, amount, and cryptocurrency or method used) you contend was part of a money laundering scheme;

- b. The identity of the sender and recipient of each such transaction;

- c. The unlawful activity that allegedly generated the funds used or transferred;

- d. Whether you reported any such transaction to law enforcement or a regulatory body, and if so, identify the report or agency.

**Response**: Defendant/Counterplaintiff objects to this request as overbroad, oppressive, and violating the attorney work-product doctrine. *See* Middle District of Florida Discovery Handbook Section IV.C.2. Counterdefendant's Interrogatory contains four discrete subparts (a., b., c., and d.), to which Defense Distributed answers as follows:

- a. See the reports and transaction logs produced as part of Defense Distributed's Response to Request for Production #6.

- b. Xpub68h" - Alexander Holladay. The majority of recipients traced to Binance, HitBTC, KuCoin and bitFlyer.

   "Zpub6rr" - John Elik. The majority of recipients traced to PayPal, Binance, Bybit and Bitfinex.

   zpub6oR" - Alexander Holladay. Outflows traced to Binance.

   "Bc1qzr6" - Alexander Holladay. The majority is still on the chain, outflows to Bittrex and Binance.

 

    c.   The unlawful activity which generated the funds included but was not limited to money laundering involving the use of a five-year-old peel chain to disguise the proceeds from the publication of the export-controlled files hosted at Odysee.com by John Elik, developed on Rocketchat with the material and logistical assistance of Alexander Holladay, John Lettman, and Matthew Larosiere, and paid for in part by funds generated by MAF Corp, Aves Rails, and Parts Dispensed.

    d.   No.

 

6.   Identify and describe in detail the complete basis, including all facts, documents, communications, and analyses (whether internal or external), that support your contention that any Counterdefendant violated 18 U.S.C. § 1030 as alleged in your Counterclaims. Your response must include:

    a.   The identity of each system or server allegedly accessed without authorization or in excess of authorization;

    b.   The identity of each Counterdefendant you claim committed such access;

    c.   The date(s) and time(s) of each alleged access;

    d.   A description of the information allegedly obtained or altered;

    e.   Whether you reported any such conduct to law enforcement or a cybersecurity authority, and if so, identify the agency and the date of the report.

**Response**: Defendant/Counterplaintiff objects to this Interrogatory on the ground that Counterdefendant has exceeded the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). Defendant/Counterplaintiff objects to this request as overbroad,

oppressive, and violating the attorney work-product doctrine. *See* Middle District of Florida

Discovery Handbook Section IV.C.2. Counterdefendant's Interrogatory contains four discrete

subparts (a., b., c., and d.), to which Defense Distributed answers as follows:

    a. Larosiere and Elik admit in their filings to visiting the DEFCAD and Ghost Guns websites in excess of their authorization to do so. John Lettman has publicly attempted to access DEFCAD through an Iranian mirror site multiple times.

    b. John Lettman, Joshua Stroke, John Elik, Matthew Larosiere by admission

    c. Our investigation is still underway; however, we know that at least the following unlawful attempts occurred: 11/22/2024 by Lettman; 11/29/2024 by the Counterdefendants: https://www.youtube.com/watch?v=9ICNpBwGatU

    d. RTT9 images and entity information

    e. No


7. Identify and describe in detail each statement you contend was false or misleading and made in commercial advertising or promotion, as alleged in your Counterclaims. Your response must include:

    a. The specific wording of each statement (or a transcript or image, if available);

    b. The date and manner of dissemination;

    c. The platform or medium used (e.g., website, social media, printed ad);

    d. The name of the person or entity you allege made or authorized the statement;

    e. The factual basis for your contention that the statement was false or misleading;

    f. Whether and how you believe the statement caused harm to Defense Distributed.

**Response**: Defendant/Counterplaintiff objects to this Interrogatory on the ground that Counterdefendant has exceeded the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). Counterdefendant's Interrogatory contains at least one discrete subpart (f.) Defendant/Counterplaintiff objects to (f.) to the extent it seeks expert opinions or reports prior to the deadline for expert disclosures established by the Court's Scheduling Order and Rule 26(a)(2). Defendant/Counterplaintiff will provide expert disclosures in accordance with those deadlines. Subject to and without waiving its objection, Defense Distributed answers as follows: All claims about DEFCAD being hacked and dumped multiple times in Elik's original FEDCAD commentary; all claims DEFCAD knew it was hacked and did not disclose; all claims DEFCAD hosts knowingly bad models; all claims DEFCAD extorted, blackmailed, or tried to bribe John Elik or any counterdefendant; all claims that DEFCAD is hosted internationally or in Iran. See also Elik's deleted commercial advertisements in response to Interrogatory 11; Mr. Larosiere's admission that the purpose of his lawsuit is to be an existential threat to DEFCAD's business, found at https://3dprintingindustry.com/news/3d-printed-gunfight-matthew-larosiere-v-cody-wilson-in-copyright-battle-236544/

    a. See the screenshots produced as part of Defense Distributed's Response to Request for Production #8.

    b. See the screenshots produced as part of Defense Distributed's Response to Request for Production #8.

    c. Twitter, Reddit and YouTube.

    d. John Elik, Joshua Stroke, John Lettman, Alex Holladay, Matthew Larosiere, Peter Celentano

e.  See Mandiant Report, produced in response to RFP 8, showing no hacks, dumps or
incursions into the Defense Distributed's computer systems. Furthermore, Elik wholly
invented his claims of blackmail, hacking, and doxxing to interrupt Defense Distributed's
business.

f.  The statements were intended to and did harm Defense Distributed's business. Plaintiff
will timely disclose any expert opinions and reports consistent with Fed. R. Civ. P. 26(a)
(2) and the Court's Scheduling Order.

8.  Identify each business relationship, contract, or economic opportunity you allege was
interfered with by a Counterdefendant, as described in your Counterclaims. Your response
must include:

a.  The name of each business or individual with whom you had an actual or
prospective relationship;

b.  The nature of the relationship or opportunity;

c.  The actions taken by each Counterdefendant that you contend constituted
interference;

d.  The date(s) of such conduct;

e.  The harm you claim resulted, including any specific losses in revenue, contracts,
or goodwill.

**Response**: Defendant/Counterplaintiff objects to this Interrogatory on the ground that
Counterdefendant has exceeded the number of interrogatories permitted under Federal Rule of
Civil Procedure 33(a)(1). Counterdefendant's Interrogatory contains at least one discrete subpart

(e.) Defendant/Counterplaintiff objects to (e.) to the extent it seeks expert opinions or reports prior to the deadline for expert disclosures established by the Court's Scheduling Order and Rule 26(a)(2). Defendant/Counterplaintiff will provide expert disclosures in accordance with those deadlines. Subject to and without waiving its objection, Defense Distributed answers as follows:

    a.  Polymer80, Loran Kelly. G100, Matt Hall, Karl Kasada, InRangeTV, Eric Goldhaber, Unseenkiller.com, Barret Collier, Kieren Philo., COMBATTECH, and every LEGIO partner and member who has reported leaving DEFCAD citing "FEDCAD" trade libel.

    b.  Commercial

    c.  See the statements by Josh Stroke, John Elik, and Matt Larosiere produced as part of Defense Distributed's Response to Request for Production #9

    d.  See Defense Distributed's Response to Request for Production #9

    e.  Plaintiff will timely disclose any expert opinions and reports consistent with Fed. R. Civ. P. 26(a)(2) and the Court's Scheduling Order.

9.  Identify each allegedly false and disparaging statement made by any Counterdefendant that you contend constitutes trade libel against Defense Distributed, as described in your Counterclaims. Your response must include:

    a.  The specific content of each statement;

    b.  The date of publication and the platform or medium used;

    c.  The identity of the speaker or author;

    d.  The audience to whom it was published;

      e.   The reason you contend the statement was false or misleading;

      f.   Any harm you allege resulted to Defense Distributed, including reputational or

          financial harm.

**Response**: Defendant/Counterplaintiff objects to this Interrogatory on the ground that Counterdefendant has exceeded the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). Counterdefendant's Interrogatory contains at least one discrete subpart (f.) Defendant/Counterplaintiff objects to (f.) to the extent it seeks expert opinions or reports prior to the deadline for expert disclosures established by the Court's Scheduling Order and Rule 26(a)(2). Defendant/Counterplaintiff will provide expert disclosures in accordance with those deadlines. Subject to and without waiving its objection, Defense Distributed answers as follows: All claims about DEFCAD being hacked and dumped multiple times in Elik's original FEDCAD commentary; all claims DEFCAD knew it was hacked and did not disclose; all claims DEFCAD hosts knowingly bad models; all claims DEFCAD extorted, blackmailed, or tried to bribe John Elik or any counterdefendant; all claims that DEFCAD is hosted internationally or in Iran. See also Elik's deleted commercial advertisements in response to Interrogatory 11 and Larosiere's admission that the purpose of his lawsuit is to be an existential threat to DEFCAD's business: https://3dprintingindustry.com/news/3d-printed-gunfight-matthew-larosiere-v-cody-wilson-in-copyright-battle-236544/

      a.   See the screenshots produced as part of Defense Distributed's Response to Request for

          Production #8.

      b.   See the screenshots produced as part of Defense Distributed's Response to Request for

          Production #8.

   c.  Twitter, Reddit and YouTube.

   d.  John Elik, Joshua Stroke, John Lettman, Alex Holladay, Matthew Larosiere, Peter Celentano

   e.  Mandiant Report. Furthermore, Elik wholly invented his claims of blackmail, hacking, and doxxing to interrupt Defense Distributed's business.

   f.  The statements were intended to and did harm Defense Distributed's business. Plaintiff will timely disclose any expert opinions and reports consistent with Fed. R. Civ. P. 26(a)(2) and the Court's Scheduling Order.

10. Identify and describe in detail the complete basis, including all facts, documents, communications, and analyses (whether internal or external), that support your contention that any Counterdefendant committed obstruction of justice or witness tampering as alleged in your Counterclaims.

**Response**: Defendant/Counterplaintiff objects to this Interrogatory on the ground that Counterdefendant has exceeded the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). Defendant/Counterplaintiff objects to this request as overbroad, oppressive, and violating the attorney work-product doctrine. *See* Middle District of Florida Discovery Handbook Section IV.C.2. Subject to this objection, Defendant/Counterplaintiff responds: In *Everytown v. DEFCAD*, 21-cv-08704-PGG-RWL (SDNY), in order to conceal the identity of The Gatalog, Matthew Larosiere directly advised Peter Celentano to lie to the court, withhold his identity, not participate in discovery and finally abandon contact with his attorney Dan Schmutter. Peter Celentano admitted to this obstruction and its purpose as obstruction on

Reddit. Alex Holladay lied to the court to shield the identities and involvement of John Elik,

Peter Celentano and Matthew Larosiere. Furthermore, Mr. Larosiere has advised and consented

to all counterdefendants' acts of spoliation in this matter, publicly declaring that the litigation

hold letters do not bind them to preserve evidence. Mr. Larosiere is an administrator of The

Gatalog Rocketchat and has overseen the systematic destruction of all evidence related to his

claims and our counterclaims on that platform, attempting to stall discovery to give The Gatalog

time to destroy evidence. Mr. Larosiere has coordinated with Aves Rails and Parts Dispensed to

advise them not to produce evidence in response to our subpoenas. The language they have used

to object to these subpoenas is almost identical boilerplate offered by Mr. Larosiere. John Elik

has communicated with and intimidated witnesses in this case, including Gary Flowers and

Kieran Philo, through the undeclared pseudonym "Guard Denver."

See:  https://gnet-research.org/2024/09/10/lawsuits-rivalries-and-trolls-examining-the-behaviour-

of-the-3d-printed-gun-movement/


11. Identify and describe in detail the complete basis, including all facts, documents,

    communications, and analyses (whether internal or external), that support your contention

    that any Counterdefendant destroyed, altered, or failed to preserve evidence relevant to

    this matter, including what the evidence was and its relevance to your claims or defenses.

**Response**: Defendant/Counterplaintiff objects to this Interrogatory on the ground that

Counterdefendant has exceeded the number of interrogatories permitted under Federal Rule of

Civil Procedure 33(a)(1).Defendant/Counterplaintiff objects to this request as overbroad,

oppressive, and violating the attorney work-product doctrine. *See* Middle District of Florida

Discovery Handbook Section IV.C.2. Subject to this objection, Defendant/Counterplaintiff states that Peter Celentano deleted his accounts and posts. John Elik has also deleted accounts and posts. John Elik and Alexander Holladay have deleted posts and Beta Rooms in the Gatalog RocketChat. *See* screenshots and spoliation report produced as part of Defense Distributed's Responses to Request for Production #12. Furthermore, Larosiere as an administrator of the RocketChat, failed to preserve evidence and supported his clients and co-counterdefendants spoliation.

12. Identify and describe in detail the complete basis, including all facts, documents, communications, and analyses (whether internal or external), that support your contention that any Counterdefendant violated the Florida Deceptive and Unfair Trade Practices Act.

**Response**: Defendant/Counterplaintiff objects to this Interrogatory on the ground that Counterdefendant has exceeded the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). Defendant/Counterplaintiff objects to this request as overbroad, oppressive, and violating the attorney work-product doctrine. *See* Middle District of Florida Discovery Handbook Section IV.C.2.

13. Identify and describe in detail all facts, circumstances, documents, and communications that support your contention that Defcad Inc. is a subsidiary of Defense Distributed.

**Response**: Defendant/Counterplaintiff objects to this Interrogatory on the ground that Counterdefendant has exceeded the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). Defendant/Counterplaintiff objects to this request as overbroad,

B-17

oppressive, and violating the attorney work-product doctrine. *See* Middle District of Florida

Discovery Handbook Section IV.C.2. Subject to this objection, Defendant/Counterplaintiff states

that DEFCAD is wholly owned by Cody Wilson, who also owns Defense Distributed and is

operated with overlapping management as a subsidiary.

14. For each alias in your countercomplaint, identify in detail the complete basis for your

contention that any specific alias (e.g., 'Fuddbuster', 'Ivan the Troll', and so on) used

online corresponds to any particular named Counterdefendant.

**Response**: Defendant/Counterplaintiff objects to this Interrogatory on the ground that

Counterdefendant has exceeded the number of interrogatories permitted under Federal Rule of

Civil Procedure 33(a)(1). Defendant/Counterplaintiff objects to this request as overbroad,

oppressive, and violating the attorney work-product doctrine. *See* Middle District of Florida

Discovery Handbook Section IV.C.2. Subject to this objection, Defendant/Counterplaintiff states

that Counterdefendants identified many of their various screennames and aliases in their

responses to Counterplaintiff's Interrogatory #1, further aliases have been uncovered through

research and cross referencing of other documents produced in discovery.

15. Identify each monetary payment, asset, or resource obtained or controlled by "The

Gatalog" that you contend is a 'proceed of racketeering activity' within the meaning of 18

U.S.C. § 1961(1).

**Response:** Defendant/Counterplaintiff objects to this Interrogatory on the ground that

Counterdefendant has exceeded the number of interrogatories permitted under Federal Rule of

Civil Procedure 33(a)(1). Defendant/Counterplaintiff objects to this request as overbroad, oppressive, and violating the attorney work-product doctrine. *See* Middle District of Florida Discovery Handbook Section IV.C.2. Subject to this objection, Defendant/Counterplaintiff states, see Defense Distributed's Response to Interrogatory #5.

16. Identify all instances where you or any affiliated person or entity responded to or publicly denied any allegedly false or disparaging statements made by any Counterdefendant or Counterdefendants.

**Response**: Defendant/Counterplaintiff objects to this Interrogatory on the ground that Counterdefendant has exceeded the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). Defendant/Counterplaintiff states that Defendant/Counterplaintiff's denial of Counterdefendants' disparaging statements can be found in the GunCAD History and Value Youtube video (https://www.youtube.com/watch?v=V7iuyS5WMEs) DEFCAD FAQs located at https://defcad.com/faq/, Gatology LEGIO post: https://ddlegio.com/gatalogy/ and Garret Walliman's Reddit posts located at

https://www.reddit.com/r/fosscad/comments/qf1gei/comment/hhzx6ma/?context=3
https://www.reddit.com/r/fosscad/comments/rr1lur/comment/hqf2oz3/?context=3
https://www.reddit.com/r/fosscad/comments/rwhviu/comment/hrcz8qr/?context=3
https://www.reddit.com/r/fosscad/comments/sv2xw6/defcad_and_ffl

17. Identify and describe in detail the complete basis, including all facts, documents, communications, and analyses (whether internal or external), that support your contention

and/or you rely on to show that "The Gatalog" had continuity, structure, or shared purpose sufficient to constitute a RICO enterprise.

**Response**: Defendant/Counterplaintiff objects to this Interrogatory on the ground that Counterdefendant has exceeded the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). Defendant/Counterplaintiff objects to this request as overbroad, oppressive, and violating the attorney work-product doctrine. *See* Middle District of Florida Discovery Handbook Section IV.C.2. Subject to this objection, Defendant/Counterplaintiff refers Counterdefendant to

- Matthew Larosiere's admissions to Venable in the *Everytown v. DEFCAD* lawsuit, where he stated it is his "honor to represent the Gatalog, The Gatalog Foundation, and its members."
- The Gatalog wiki with policy statements and administrative outlines, edited consistently by Alex Holladay
- Alex Holladay and John Elik's public statements describing the enterprise, its continuity, structure and shared purpose, as seen at https://www.deterrencedispensed.com/; https://ctrlpew.com/getting-started-0-how-to-start-3d-printing-quickly/ -
- Gatalog as organization mentioned multiple times; https://defcad.com/library/lawsuits-rivalries-and-trolls-examining-the-behaviour-of-the-3d-printed-gun-movement/.
- The Gatalog Foundation public filings,
- Gatalog Foundation website listing the "Power Full Founders!", and
- Deterrence Dispensed listing of Elik as "publishing director".

Respectfully submitted this 21st day of August 2025

F. Andino Reynal
areynal@frlaw.us
Texas Bar No. 24060482
The Reynal Law Firm, PC
917 Franklin, 6th Floor
Houston, Texas 77002
T (713) 228-5900

<u>Certificate of Service</u>

I certify on August 21, 2025  that I served the foregoing Responses to Requests for

Interrogatories on counsel of record via email.

F. Andino Reynal

## Verification

I, Cody Wilson, Owner of Defense Distributed, do solemnly declare and affirm under the penalty of perjury that the foregoing Responses to Interrogatories on behalf of Defense Distributed are true and correct to the best of my knowledge, information, and belief.

Executed on August 21, 2025

Cody R. Wilson
Director of Defense Distributed

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MATTHEW LAROSIERE,

*Plaintiff*,

v.

CODY RUTLEDGE WILSON, DEFCAD, Inc.,
DEFENSE DISTRIBUTED, and DIOSKOUROI
LLC,

*Defendants*.                                    CASE No. 6:24-cv-01629

_____

Defense Distributed,

Counterplaintiff/ Third
Party Plaintiff,

v.

The Gatalog, Matthew Larosiere, John Elik,
Alexander Holladay, Peter Celentano, Josh
Kiel Stroke, John Lettman, and MAF Corp.

Counterdefendants.

_____/

**DEFENSE DISTRIBUTED'S OBJECTIONS AND RESPONSES TO JOHN ELIK'S
REQUEST FOR ADMISSIONS TO DEFENSE DISTRIBUTED**

To: Counterdefendant, John Elik, through his attorney of record, Matthew Larosiere, 6964
Houlton Circle Lake Worth, FL 33467.

Defendant/Counterplaintiff Defense Distributed makes these objections and responses pursuant
to Rules 26 and 36 of the Federal Rules of Civil Procedure.

1.       Admit that you did not submit a Commodity Jurisdiction request to the U.S. Department of State, Directorate of Defense Trade Controls ("DDTC"), seeking a determination as to whether any file, dataset, or material allegedly published or transmitted by any Counterdefendant constitutes "technical data" subject to the International Traffic in Arms Regulations ("ITAR").

**Response**: Defendant/Counterplaintiff admits this statement.

2.       Admit that, prior to asserting in your Counterclaims that any Counterdefendant violated the International Traffic in Arms Regulations ("ITAR"), you did not consult with or receive any classification guidance from the U.S. Department of State regarding whether any file or data allegedly published by a Counterdefendant constituted ITAR-controlled "technical data".

**Response**: Defendant/Counterplaintiff denies this statement.

3.       Admit that you did not possess, at the time you filed your Counterclaims, any document issued by the U.S. Department of State determining that any file or material allegedly published by a Counterdefendant was subject to the International Traffic in Arms Regulations ("ITAR").

**Response**:  Defendant/Counterplaintiff admits this statement.

4.       Admit that you do not now possess any document issued by the U.S. Department of State determining that any file or material allegedly published by a Counterdefendant was subject to the International Traffic in Arms Regulations ("ITAR").

**Response**: Defendant/Counterplaintiff denies this statement.

5.      Admit that you did not report any alleged ITAR violations by any
Counterdefendant to the U.S. Department of State or any federal enforcement
agency.

**Response**: Defendant/Counterplaintiff denies this statement.

6.      Admit that no agency of the United States government has advised you that any
Counterdefendant violated the International Traffic in Arms Regulations.

**Response**: Defendant/Counterplaintiff denies this statement.

7.      Admit that you did not submit a Commodity Classification Request ("CCR") to
the U.S. Department of Commerce, Bureau of Industry and Security ("BIS"),
regarding any file, dataset, or material allegedly published by a Counterdefendant.

**Response**: Defendant denies this statement.

8.      Admit that you did not consult with or receive any classification guidance from
the U.S. Department of Commerce regarding whether any file or data allegedly
published by a Counterdefendant was subject to the Export Administration
Regulations ("EAR").

**Response**: Defendant/Counterplaintiff denies this statement.

9.      Admit that, prior to asserting in your Counterclaims that any Counterdefendant
violated the Export Administration Regulations ("EAR"), you did not consult with
or receive any classification guidance from the U.S. Department of Commerce
concerning any file, dataset, or material allegedly published or transmitted by any
Counterdefendant.

**Response**: Defendant/Counterplaintiff denies this statement.

Ex 4 B: COMPOSITE DEFENDANTS' DISCOVERY RESPONSES

10.     Admit that you did not possess, at the time you filed your Counterclaims, any
document issued by the U.S. Department of Commerce determining that any file
or material allegedly published by a Counterdefendant was subject to the EAR.

**Response**: Defendant/Counterplaintiff denies this statement.

11.     Admit that you did not report any alleged EAR violations by any
Counterdefendant to the U.S. Department of Commerce or any federal
enforcement agency.

**Response**: Defendant/Counterplaintiff denies this statement.

12.     Admit that no agency of the United States government has advised you that any
Counterdefendant violated the Export Administration Regulations.

**Response**: Defendant/Counterplaintiff denies this statement.

13.     Admit that you possess no document issued by the U.S. Department of State or
the U.S. Department of Commerce determining that any specific file or material
allegedly published by a Counterdefendant required a license under the
International Traffic in Arms Regulations ("ITAR") or the Export Administration
Regulations ("EAR").

**Response**: Defendant/Counterplaintiff denies this statement

14.     Admit that you did not possess, at the time you filed your Counterclaims, any
legal opinion, agency guidance, or official correspondence stating that any
Counterdefendant was required to obtain a license before publishing or
transmitting the files or materials referenced in your pleading.

**Response**: Defendant/Counterplaintiff denies this statement.

15.     Admit that you cannot identify the individual who allegedly sent the message described in Paragraph 122 of your Counterclaims, threatening Cody Wilson with murder.

**Response**: Defendant/Counterplaintiff denies this statement.

16.     Admit that you do not possess any metadata, IP address logs, or authentication records establishing the identity of the person who allegedly made the threat described in Paragraph 122.

**Response**: Defendant/Counterplaintiff admits this statement.

17.     Admit that you do not possess any evidence that the individual who sent the message described in Paragraph 122 was affiliated with or acting on behalf of any Counterdefendant.

**Response**: Defendant/Counterplaintiff denies this statement.

18.     Admit that you did not report the alleged threat described in Paragraph 122 to any law enforcement authority.

**Response**: Defendant/Counterplaintiff admits this statement.

19.     Admit that you are not aware of any criminal investigation into the threat described in Paragraph 122 of your Counterclaims.

**Response**: Defendant/Counterplaintiff admits this statement.

20.     Admit that you do not possess any digital forensic report, server log, or technical analysis confirming that any Counterdefendant conducted a cyberattack or distributed denial-of-service (DDoS) attack against DEFCAD.

**Response**: Defendant/Counterplaintiff denies this statement.

21.     Admit that you did not report any cyberattack allegedly committed by a
Counterdefendant to the Federal Bureau of Investigation, the U.S. Department of
Justice, or any other law enforcement or cybersecurity agency.

**Response**: Defendant/Counterplaintiff admits it has not reported the cyberattack to any law
enforcement agency.

22.     Admit that no government agency has confirmed that any Counterdefendant was
responsible for any cyberattack against DEFCAD.

**Response**: Defendant/Counterplaintiff admits this statement.

23.     Admit that you cannot identify any specific server, IP address, or device allegedly
used by a Counterdefendant to conduct or facilitate a cyberattack.

**Response**: Defendant/Counterplaintiff denies this statement.

24.     Admit that you have no evidence that any Counterdefendant accessed any server
or computer belonging to Defense Distributed without authorization.

**Response**: Defendant/Counterplaintiff denies this statement.

25.     Admit that you do not possess any documentation linking any financial or
cryptocurrency transaction by any Counterdefendant to a violation of 18 U.S.C.
§ 1956.

**Response**: Defendant/Counterplaintiff denies this statement.

26.      Admit that you are not aware of any government investigation or agency determination that any Counterdefendant engaged in money laundering.

**Response**: Defendant/Counterplaintiff denies this statement.

27.      Admit that you have not reported any transaction involving a Counterdefendant to the Financial Crimes Enforcement Network (FinCEN), the Department of Justice, or any law enforcement agency as a suspected instance of money laundering.

**Response**: Defendant/Counterplaintiff admits this statement.

28.      Admit that you do not know the source of funds for any transaction you allege to have been conducted by any Counterdefendant in your counterclaims.

**Response**: Defendant/Counterplaintiff denies this statement.

29.      Admit that you are not in possession of any blockchain analysis or cryptocurrency tracing report showing that any Counterdefendant used cryptocurrency for the purpose of concealing the proceeds of unlawful activity.

**Response**: Defendant/Counterplaintiff denies this statement.

30.      Admit that you do not possess any server log or digital forensic report showing unauthorized access by any Counterdefendant.

**Response**: Defendant/Counterplaintiff denies this statement.

31.      Admit that you do not possess any record showing that any Counterdefendant circumvented authentication mechanisms or security controls on your computer systems.

**Response**: Defendant/Counterplaintiff denies this statement.

32.      Admit that you did not report the alleged unauthorized access described in your Counterclaims to any law enforcement agency, cybersecurity incident response center, or governmental authority.

**Response**: Defendant/Counterplaintiff admits this statement.

33.      Admit that you cannot identify the username, IP address, or account credentials allegedly used by any Counterdefendant to commit a violation of 18 U.S.C. § 1030.

**Response**: Defendant/Counterplaintiff denies this statement.

34.      Admit that you have not incurred any documented economic loss resulting from any alleged unauthorized access by a Counterdefendant, as described in your Counterclaims.

**Response**: Defendant/Counterplaintiff denies this statement.

35.      Admit that you are not in possession of any consumer survey or customer complaint evidencing confusion or reliance on any allegedly false or misleading statement made by a Counterdefendant.

**Response**: Defendant/Counterplaintiff denies this statement.

36.      Admit that you have not identified any actual customer who was misled by a statement made by a Counterdefendant into believing false information about Defense Distributed.

**Response**: Defendant/Counterplaintiff denies this statement.

37.     Admit that you have not suffered any measurable loss of sales as a result of any allegedly false or misleading advertisement described in your Counterclaims.

**Response**: Defendant/Counterplaintiff denies this statement.

38.     Admit that none of the allegedly false or misleading statements were part of a paid advertisement or sponsored promotion.

**Response**: Defendant/Counterplaintiff denies this statement.

39.     Admit that you did not issue any retraction demand, takedown request, or cease-and-desist letter regarding the allegedly false statements at issue in your Counterclaims.

**Response**:. Defendant/Counterplaintiff admits this statement.

40.     Admit that you have not identified any specific contract or business agreement lost as a result of actions taken by any Counterdefendant.

**Response**: Defendant/Counterplaintiff denies this statement.

41.     Admit that you have not received any communication from a business partner or customer stating they terminated or declined a relationship with Defense Distributed because of a Counterdefendant's conduct.

**Response**: Defendant/Counterplaintiff denies this statement.

42.     Admit that you have not created or maintained any written record identifying the value of lost business opportunities allegedly caused by Counterdefendants.

**Response**: Defendant/Counterplaintiff denies this statement.

43.     Admit that you are not aware of any third party who refused to do business with
        you after viewing or hearing a communication made by a Counterdefendant.

**Response**: Defendant/Counterplaintiff denies this statement.

44.     Admit that no Counterdefendant communicated directly with any third party with
        whom you had a prospective business relationship in an attempt to dissuade them
        from working with you.

**Response**: Defendant/Counterplaintiff denies this statement.

45.     Admit that you have not identified any third party who declined to do business
        with you as a result of any statement made by a Counterdefendant.

**Response** Defendant/Counterplaintiff denies this statement.

46.     Admit that, prior to July 1, 2025, you have not retained any expert or issued any
        internal report to quantify reputational harm allegedly caused by
        Counterdefendants' statements.

**Response**: Defendant/Counterplaintiff denies this statement.

47.     Admit that you did not issue a takedown notice, retraction request, or cease-and-
        desist letter regarding any allegedly disparaging statement described in your
        counterclaims.

**Response**: Defendant/Counterplaintiff admits this statement.

48.     Admit that you did not notify any Counterdefendant that you believed their statements were false or disparaging prior to filing your Counterclaims.

**Response**: Defendant/Counterplaintiff denies this statement.

49.     Admit that no allegedly disparaging statement made by a Counterdefendant directly names Defense Distributed.

**Response**: Defendant/Counterplaintiff denies this statement.

50.     Admit that you (Defense Distributed) cannot show any damages stemming from what you describe as "the Fedcad trade libel".

**Response**: Defendant/Counterplaintiff denies this statement.

51.     Admit that you (Defense Distributed) were not named or referenced in what you describe in your counterclaim as "the Fedcad trade libel".

**Response**: Defendant/Counterplaintiff denies this statement.

52.     Admit that you (Defense Distributed) are not engaged in the business of trading firearms files.

**Response**: Defendant/Counterplaintiff denies this statement.

53.     Admit that you (Defense Distributed) do not host any firearm files online.

**Response**: Defendant/Counterplaintiff denies this statement.

54.     Admit that you (Defense Distributed) do not maintain a database at Defcad.com.

**Response**: Defendant/Counterplaintiff objects to this request as it is vague as to the term "database". Subject to this objection, Defendant/Counterplaintiff denies this statement.

55.    Admit that you have no documentary evidence showing that any Counterdefendant threatened or attempted to influence a witness in a criminal or civil proceeding.

**Response**: Defendant/Counterplaintiff denies this statement.

56.    Admit that you have not identified any specific judicial proceeding that was obstructed by a Counterdefendant's conduct.

**Response**: Defendant/Counterplaintiff denies this statement,

57.    Admit that you have not identified any witness who claims to have been threatened or intimidated by any Counterdefendant.

**Response**: Defendant/Counterplaintiff denies this statement.

58.    Admit that you are not aware of any ongoing criminal investigation into any Counterdefendant for obstruction of justice.

**Response**: Defendant/Counterplaintiff admits this statement.

59.    Admit that you do not possess any forensic evidence demonstrating that a Counterdefendant deleted or altered relevant files after the initiation of this lawsuit.

**Response**: Defendant/Counterplaintiff denies this statement.

60.     Admit that you do not possess any forensic evidence demonstrating that a
        Counterdefendant deleted or altered relevant files or documents after receipt of
        your litigation hold notice.

**Response**: Defendant/Counterplaintiff denies this statement.

61.     Admit that you cannot identify any specific document or piece of evidence that
        was lost or destroyed by a Counterdefendant.

**Response**: Defendant/Counterplaintiff denies this statement.

62.     Admit that you have not retained an expert to assess or quantify any alleged
        spoliation of evidence in this matter.

**Response** Defendant/Counterplaintiff objects to this request to the extent it seeks expert opinions
or reports before the deadline for expert disclosures established by the Court's Scheduling Order
and Rule 26(a)(2). Plaintiff will provide expert disclosures in accordance with those deadlines.

63.     Admit that no court has found any Counterdefendant to have engaged in
        spoliation of evidence in this case or any related proceeding.

**Response**:  Defendant/Counterplaintiff admits this statement.

64.     Admit that the footer of the Defcad.com webpage refers to "Defcad Inc." and not
        to Defense Distributed.

**Response**: Defendant/Counterplaintiff admits this statement.

65.     Admit that Defcad Inc. is owned primarily by Cody Wilson.

**Response**: Defendant/Counterplaintiff admits this statement.

66.     Admit that Defense Distributed is owned primarily by Cody Wilson.

**Response**: Defendant/Counterplaintiff admits this statement.

67.     Admit that John Elik is not an employee of Defense Distributed.

**Response**: Defendant/Counterplaintiff admits this statement.

68.     Admit that John Elik has never been an employee of Defense Distributed.

**Response:** Defendant/Counterplaintiff denies this statement.

69.     Admit that you are not in possession of any evidence that John Elik did, or

directed any other person, to engage in any "hacking" activities.

**Response**: Defendant/Counterplaintiff denies this statement.

70.     Admit that you (Defense Distributed) have never filed tax returns jointly with

Defcad Inc.

**Response**: Defendant/Counterplaintiff objects to this request as it seeks information irrelevant to

the case and is disproportionate to the needs of the case. Without waiving said objections,

Defendant/Counterplaintiff denies this statement.

71.     Admit that you (Defense Distributed) do not share bank accounts with Defcad Inc.

**Response**: Defendant/Counterplaintiff denies this statement.

72.    Admit that Defense Distributed and Defcad Inc. do not maintain a unified accounting system.

**Response** Defendant/Counterplaintiff objects to this request as it is vague as to the term "unified accounting system." Without waiving said objection, Defendant/Counterplaintiff denies this statement.

73.    Admit that no person other than Cody Wilson has final decision-making authority for both Defense Distributed and Defcad Inc.

**Response**: Defendant/Counterplaintiff admits this statement.

74.    Admit that Defcad Inc. operates under its own EIN, distinct from Defense Distributed.

**Response**: Defendant/Counterplaintiff admits this statement.

75.    Admit that you have no document identifying any person as a "member" of an organization called "The Gatalog."

**Response**: Defendant/Counterplaintiff denies this statement.

76.    Admit that you have never received any communication identifying "The Gatalog" as a legal or incorporated entity.

**Response**: Defendant/Counterplaintiff denies this statement.

77.    Admit that you are not in possession of any document—aside from those generated or citing yourself or Cody Wilson—listing the roles or responsibilities of any individual within "The Gatalog."

**Response**: Defendant/Counterplaintiff denies this statement.

78.    Admit that you have no evidence of any agreement between any Counterdefendant and any other person to commit racketeering activity.

**Response**: Defendant/Counterplaintiff denies this statement.

79.    Admit that you did not rely on the advice of legal counsel before asserting that any Counterdefendant violated the International Traffic in Arms Regulations.

**Response**: Defendant/Counterplaintiff denies this statement.

80.    Admit that you did not rely on the advice of legal counsel before asserting that any Counterdefendant violated the Export Administration Regulations.

**Response**: Defendant/Counterplaintiff denies this statement.

81.    Admit that you have no evidence that any Counterdefendant acted with knowledge that their conduct was unlawful under any statute cited in your Counterclaims.

**Response**: Defendant/Counterplaintiff denies this statement.

82.    Admit that prior to filing your Counterclaims, you did not conduct a reasonable prefiling inquiry under Rule 11(b) into the factual basis for your allegations of criminal conduct.

**Response**: Defendant/Counterplaintiff denies this statement.

83.    Admit that you have not retained any expert to assess whether the files at issue were subject to ITAR or EAR restrictions.

**Response**: Defendant/Counterplaintiff objects to this request to the extent it seeks expert opinions or reports before the deadline for expert disclosures established by the Court's Scheduling Order and Rule 26(a)(2). Plaintiff will provide expert disclosures in accordance with those deadlines.

84.    Admit that none of the allegedly disparaging statements directly name Defense Distributed.

**Response**:  Defendant/Counterplaintiff denies this statement.

85.    Admit that you cannot identify the author of at least one statement you allege constitutes trade libel or false advertising.

**Response**: Defendant/Counterplaintiff denies this statement.

86.    Admit that you have not received any customer complaint or inquiry referencing any Counterdefendant or any statement referenced in your Counterclaims.

**Response**: Defendant/Counterplaintiff denies this statement.

87.    Admit that you have not prepared or received any internal analysis, business report, or executive summary identifying measurable harm caused by any Counterdefendant's conduct.

**Response**: Defendant/Counterplaintiff objects to this request to the extent it seeks expert opinions or reports before the deadline for expert disclosures established by the Court's Scheduling Order and Rule 26(a)(2). Plaintiff will provide expert disclosures in accordance with those deadlines.

Respectfully submitted this 21st day of August 2025

F. Andino Reynal
areynal@frlaw.us
Texas Bar No. 24060482
The Reynal Law Firm, PC
917 Franklin, 6th Floor
Houston, Texas 77002
T (713) 228-5900

<u>Certificate of Service</u>

I certify on August 21, 2025  that I served the foregoing Responses to Requests for

Admissions on counsel of record via email.

_____

F. Andino Reynal

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


MATTHEW LAROSIERE,

*Plaintiff,*

v.

CODY RUTLEDGE WILSON, DEFCAD, Inc.,
DEFENSE DISTRIBUTED, and DIOSKOUROI
LLC,

*Defendants.*

_____

CASE No: 6:24-cv-01629


Defense Distributed,

Counterplaintiff/ Third
Party Plaintiff,

v.


The Gatalog, Matthew Larosiere, John Elik,
Alexander Holladay, Peter Celentano, Josh
Kiel Stroke, John Lettman, and MAF Corp.

Counterdefendants.

_____/


**DEFENSE DISTRIBUTED'S OBJECTIONS AND RESPONSES TO JOHN ELIK'S**
**REQUEST FOR PRODUCTION TO DEFENSE DISTRIBUTED**

To: Counterdefendant, John Elik, through his attorney of record, Matthew Larosiere, 6964

Houlton Circle Lake Worth, FL 33467.

Defendant/Counterplaintiff Defense Distributed serves these objections and answers to John

Elik's First Requests for Production to Defense Distributed.

General Objections

1. Defendant/Counterplaintiff Defense Distributed makes these objections and responses

   pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure. Each objection is

   made to the specific request set forth below. To the extent Defendant/Counterplaintiff

   produces documents, such production is made subject to and without waiving any

   objection.

Responses to Requests for Production

1. Produce all documents, communications, data, or other materials in your possession,

   custody, or control that refer to, relate to, or support your contention that "The Gatalog"

   constitutes a criminal enterprise within the meaning of the Racketeer Influenced and

   Corrupt Organizations Act, including but not limited to:

   a. Any materials supporting the existence, structure, hierarchy, or membership of

      "The Gatalog" as an "enterprise" as alleged in Paragraphs 1–4, 22, 139, and 140

      of your Counterclaims;

   b. Any materials that identify or describe the alleged purposes, objectives, or

      operations of such an enterprise;

   c. Any internal or external communications referencing "The Gatalog" in the

      context of racketeering, criminal activity, organized wrongdoing, or enterprise-

      related conduct;

    d.  Any materials relied upon in asserting that "The Gatalog" engaged in a "pattern of racketeering activity" as that term is used in 18 U.S.C. § 1961(5) and alleged in your Counterclaims.

**Response:** This Request improperly seeks non-existent, compiled, or organized evidence, i.e., "all documents supporting" a contention. It fails Rule 34's requirement of reasonable particularity and is objectionable per Middle District practice. Subject to this objection, see attached

2.  Produce all documents, communications, data, or other materials in your possession, custody, or control that refer to, relate to, or support your allegation that "The Gatalog" or any Counterdefendant violated the International Traffic in Arms Regulations ("ITAR"), including but not limited to:

    a.  Materials you contend show any export, attempted export, or facilitation of export of ITAR-controlled "technical data" as defined in 22 C.F.R. § 120.10; b. Documents supporting your allegations in Paragraphs 97, 101–103, and 140(a) of your Counterclaims;

    c.  Any chat logs, file logs, email, screenshots, or correspondence purporting to show transfers of ITAR-controlled data to foreign persons or locations;

    d.  Documents reflecting how you determined or identified that any specific file or data constituted "technical data" under ITAR;

    e.  Any communications with the Department of State or third parties regarding alleged ITAR violations by any Counterdefendant;

    f.  The basis for asserting that such transfers were criminal violations under 22

C.F.R. § 127.1(a)(1);

g. Any internal or external classification assessments of material you believe was

ITAR-controlled;

**Response**: This Request improperly seeks non-existent, compiled, or organized evidence, i.e., "all documents supporting" a contention. It fails Rule 34's requirement of reasonable particularity and is objectionable per Middle District practice. Subject to this objection, see attached

3.  Produce all documents, communications, data, or other materials in your possession, custody, or control that refer to, relate to, or support your allegation that any Counterdefendant violated the Export Administration Regulations ("EAR"), including but not limited to:

    a.  Materials showing dissemination or publication of files alleged to be "technology" or "software" as defined in 15 C.F.R. § 772.1;

    b.  Any communications or internal analysis purporting to classify any file under 15 C.F.R. § 734.7(c) or the Commerce Control List;

    c.  Documents reflecting or supporting the assertion that any license or other authorization was required;

    d.  All documents referenced in or supporting Paragraphs 104–109 and 140(a) of your Counterclaims;

    e.  Any agency correspondence, guidance, or legal opinions received regarding EAR applicability to the materials referenced in your pleading.

**Response**: This Request improperly seeks non-existent, compiled, or organized evidence, i.e., "all documents supporting" a contention. It fails Rule 34's requirement of reasonable particularity and is objectionable per Middle District practice. Subject to this objection, see attached

    4.   Produce all documents, messages, communications, metadata, or other materials in your possession, custody, or control that refer to, relate to, or support your allegation that any Counterdefendant or person affiliated with "The Gatalog" made a threat of murder or other physical violence against Cody Wilson, including but not limited to the message described in Paragraph 122 of your Counterclaims

**Response**: This Request improperly seeks non-existent, compiled, or organized evidence, i.e., "all documents supporting" a contention. It fails Rule 34's requirement of reasonable particularity and is objectionable per Middle District practice. Subject to this objection, see attached.

    5.   Produce all documents, server logs, digital forensic reports, IP records, screenshots, communications, or other materials in your possession, custody, or control that refer to, relate to, or support your allegation that any Counterdefendant conducted, attempted to conduct, or solicited others to conduct cyberattacks or distributed denial-of-service (DDoS) attacks against DEFCAD or any other asset owned or operated by Defense Distributed, as alleged in your Counterclaims.

**Response**: This Request improperly seeks non-existent, compiled, or organized evidence, i.e., "all documents supporting" a contention. It fails Rule 34's requirement of reasonable

particularity and is objectionable per Middle District practice. Subject to this objection, see attached.

6. Produce all documents, transaction records, cryptocurrency wallet logs, blockchain analyses, communications, or any other materials in your possession, custody, or control that refer to, relate to, or support your allegation that any Counterdefendant engaged in money laundering in violation of 18 U.S.C. § 1956, including any financial transactions with foreign nationals as alleged in your Counterclaims

**Response**: This Request improperly seeks non-existent, compiled, or organized evidence, i.e., "all documents supporting" a contention. It fails Rule 34's requirement of reasonable particularity and is objectionable per Middle District practice. Subject to this objection, see attached.

7. Produce all documents, server logs, user logs, authentication records, digital forensic analyses, communications, or any other materials in your possession, custody, or control that refer to, relate to, or support your allegation that any Counterdefendant accessed your computers, computer systems, or networks without authorization or exceeded authorized access, as alleged in your Counterclaims.

**Response**: This Request improperly seeks non-existent, compiled, or organized evidence, i.e., "all documents supporting" a contention. It fails Rule 34's requirement of reasonable particularity and is objectionable per Middle District practice. Subject to this objection, see attached.

8. Produce all documents, messages, posts, advertisements, website content, or other materials in your possession, custody, or control that refer to, relate to, or support your

allegation that any Counterdefendant made false or misleading statements of fact about Defense Distributed or DEFCAD in commercial advertising or promotion, as alleged in your Counterclaims. This request includes but is not limited to:

    a. Screenshots or archives of the allegedly false or misleading statements;

    b. Documents evidencing that such statements were made in commercial advertising;

    c. Communications referencing or analyzing the impact of such statements;

    d. Any surveys, complaints, or consumer reactions allegedly caused by the statements.

**Response**: This Request improperly seeks non-existent, compiled, or organized evidence, i.e., "all documents supporting" a contention. It fails Rule 34's requirement of reasonable particularity and is objectionable per Middle District practice. Subject to this objection, see attached

9. Produce all documents, messages, posts, emails, financial records, or other materials in your possession, custody, or control that refer to, relate to, or support your allegation that any Counterdefendant intentionally interfered with any of Defense Distributed's actual or prospective business relationships, contracts, or economic opportunities, as alleged in your Counterclaims. This includes but is not limited to:

    a. Communications with any current or potential customer, vendor, partner, or distributor referencing a Counterdefendant;

    b. Evidence of the underlying relationship;

    c. Evidence that any such relationship was terminated or altered;

 

 

d. Internal analyses, financial reports, or meeting notes discussing lost business;

e. Any public or private statements by Counterdefendants you contend caused interference.

**Response**: This Request improperly seeks non-existent, compiled, or organized evidence, i.e., "all documents supporting" a contention. It fails Rule 34's requirement of reasonable particularity and is objectionable per Middle District practice. Subject to this objection, see attached

10. Produce all documents, posts, messages, emails, or other materials that refer to, relate to, or support your allegation that any Counterdefendant published a false or disparaging statement about Defense Distributed or its products, as alleged in your Counterclaims. This includes but is not limited to:

a. The allegedly disparaging statements;

b. Evidence that such statements were published to third parties;

c. Communications referencing the statements;

d. Any analyses, reports, or internal communications regarding reputational harm or economic loss;

e. Any communications with vendors, customers, or third parties about the impact of the statements.

**Response**: This Request improperly seeks non-existent, compiled, or organized evidence, i.e., "all documents supporting" a contention. It fails Rule 34's requirement of reasonable particularity and is objectionable per Middle District practice. Subject to this objection, see attached as well as all documents previously produced in response to RFP 8.

11. Produce all documents, communications, audio/video recordings, social media content, or other materials that refer to, relate to, or support your allegations that any Counterdefendant attempted to obstruct justice or engaged in witness intimidation or tampering, as described in your Counterclaims. This includes but is not limited to:

    a.  Evidence of alleged threats, harassment, or efforts to influence testimony;

    b.  Communications with any law enforcement or judicial officials;

    c.  Records of any investigation into alleged obstruction;

    d.  Internal notes or memoranda documenting your theories of obstruction or witness intimidation;

    e.  Any related criminal referrals.

**Response**: This Request improperly seeks non-existent, compiled, or organized evidence, i.e., "all documents supporting" a contention. It fails Rule 34's requirement of reasonable particularity and is objectionable per Middle District practice. Subject to this objection, see attached

12. Produce all documents, communications, reports, or other materials that relate to, reference, or support your allegation that any Counterdefendant engaged in the destruction, alteration, or failure to preserve evidence relevant to this action, as alleged in your Counterclaims. This request includes, but is not limited to:

    a.  Evidence preservation letters (sent or received);

    b.  Any forensic analysis or expert reports concerning lost or altered evidence;

    c.  Internal communications regarding deletion, loss, or modification of documents or files;

    d.  Any communications with third parties concerning potential spoliation;

    e.  Any documents identifying what evidence was allegedly lost, when, and by whom.

**Response**: This Request improperly seeks non-existent, compiled, or organized evidence, i.e., "all documents supporting" a contention. It fails Rule 34's requirement of reasonable particularity and is objectionable per Middle District practice. Subject to this objection, see attached.

13. Produce all documents or other materials that relate to ownership of Defense Distributed, including but not limited to a complete list of its owners, how and when they acquired ownership, their ownership percentage, and their responsibilities with respect to Defense Distributed.

**Response**: Defendant/Counterplaintiff objects to this request for production as it is overly broad and vague pursuant to FRCP 34(b)(1)(A). All of Defense Distributed's documents could "relate to ownership" as the term is used in the request. In response to this request Defense Distributed affirms that Cody Wilson is its sole owner. See attached.

14. Produce all documents or other materials that relate to ownership of Defcad Inc., including but not limited to a complete list of its owners, how and when they acquired ownership, their ownership percentage, and their responsibilities with respect to Defcad Inc.

**Response**: Defendant/Counterplaintiff objects to this request for production as it is overly broad and vague pursuant to FRCP 34(b)(1)(A). All of DefCad's documents could "relate to

ownership" as to the term is used in the request. In response to this request, Defense Distributed affirms that Cody Wilson is DefCad's sole owner. See attached.

15. Produce all documents or other materials that relate to your alleged employment of John Elik.

**Response**: see attached.

16. Produce all documents, communications, data, or other materials in your possession, custody, or control that refer to, relate to, or support your contention that John Elik "has repeatedly directed and solicited others to Hack" the Defcad website or any other website.

**Response**: This Request improperly seeks non-existent, compiled, or organized evidence, i.e., "all documents supporting" a contention. It fails Rule 34's requirement of reasonable particularity and is objectionable per Middle District practice. Subject to this objection, see attached.

17. Produce all corporate governance documents, contracts, and tax filings from 2020–present in which Defense Distributed has treated Defcad Inc. as a distinct legal entity.

**Response**: None.

18. Produce all corporate governance documents, contracts, and tax filings from 2020–present in which Defense Distributed has treated Defcad Inc. as an integrated legal entity.

**Response**: Defendant/Counterplaintiff objects to this request for production as it is overly broad and disproportionate to the needs of the case. Defense Distributed is withholding its Tax Returns. Otherwise see attached.

19. Produce all internal communications or correspondence reflecting concern about, or planning related to, potential spoliation of evidence by any party.

**Response**: Defendant/Counterplaintiff objects to the question as overbroad because it is not limited to the time predating the filing of this lawsuit and would, therefore call for the production of information protected by the attorney-client and work-product privilege. For the time period pre-dating the filing of this lawsuit, none.

20. Produce any documents or materials relating to any operating agreement, leadership chart, mission statement, or formal or informal writings that establish The Gatalog as an ongoing formalized organization with distinct roles and continuity.

**Response**: This Request improperly seeks non-existent, compiled, or organized evidence, i.e., "all documents supporting" a contention. It fails Rule 34's requirement of reasonable particularity and is objectionable per Middle District practice. Subject to this objection, see attached.

21. Produce all domain registration information, server logs, hosting records, or third party contracts you rely upon to connect "The Gatalog"'s alleged web presence with any Counterdefendant.

**Response**: This Request improperly seeks non-existent, compiled, or organized evidence, i.e., "all documents supporting" a contention. It fails Rule 34's requirement of reasonable particularity and is objectionable per Middle District practice. Subject to this objection, see attached.

22. Produce forensic logs, security reports, or digital packet traces showing alleged denial-of-service attacks or geolocation masking related to access attempts from Iranian IP addresses.

**Response**: This Request improperly seeks non-existent, compiled, or organized evidence, i.e., "all documents supporting" a contention. It fails Rule 34's requirement of reasonable particularity and is objectionable per Middle District practice. Subject to this objection, none.

23. Produce forensic logs, security reports, or digital packet traces showing alleged denial-of-service attacks or geolocation masking related to alleged access attempts from any Counterdefendant.

**Response**: This Request improperly seeks non-existent, compiled, or organized evidence, i.e., "all documents supporting" a contention. It fails Rule 34's requirement of reasonable particularity and is objectionable per Middle District practice. Subject to this objection, see attached.

24. Produce all communications with the Directorate of Defense Trade Controls (DDTC) in which you raised concerns about any alleged "Gatalog" content or any materials created by any Counterdefendant.

**Response**: None.

25. Produce all financial records or business performance reports from 2022 to present that you contend show lost profits, diminished goodwill, or customer loss as a result of Counterdefendants' conduct.

**Response**: See attached.

26. Produce any and all correspondence, notices, or communications received from any person or entity concerning alleged copyright violations committed by you, including your agents and representatives, between January 1, 2020, and present.

**Response**: See attached.

27. Produce any recordings, transcripts, or video clips of statements made by any Counterdefendant that you contend constitute threats, admissions, or other statements against interest.

**Response:** None.

Respectfully submitted this 21st day of August 2025

F. Andino Reynal
areynal@frlaw.us
Texas Bar No. 24060482
The Reynal Law Firm, PC
917 Franklin, 6th Floor
Houston, Texas 77002
T (713) 228-5900

<u>Certificate of Service</u>

I certify on August 21, 2025  that I served the foregoing Responses to Requests for

Production on counsel of record via email.


_____

F. Andino Reynal

United States District Court
Middle District of Florida
Orlando Division

Matthew Larosiere,

Plaintiff,

v.

Cody Rutledge Wilson, DEFCAD, Inc.,

Defense Distributed, and Dioskouroi

LLC,

Defendants.

_____

Defense Distributed,

Counterplaintiff/ Third

Party Plaintiff,

v.

The Gatalog, Matthew Larosiere, John Elik,

Alexander Holladay, Peter Celentano, Josh

Kiel Stroke, John Lettman, and MAF Corp.

Counterdefendants.

CASE NO: 6:24-cv-01629

### CODY WILSON'S OBJECTIONS AND RESPONSES TO JOHN ELIK'S REQUEST FOR INTERROGATORIES TO CODY WILSON

To: Counterdefendant, John Elik, through his attorney of record, Matthew Larosiere, 6964

Houlton Circle Lake Worth, FL 33467.

Defendant Cody Wilson makes these objections and responses to John Elik's First Requests for

Interrogatories to Cody Wilson pursuant to Rules 26 and 33 of the Federal Rules of Civil

Procedure. Each objection is made to the specific request set forth below. To the extent

Defendant answers these interrogatories, the answer is made subject to and without waiving any objection.

## Interrogatories & Responses

1. Describe in detail all interactions you have had, either on your own behalf or on behalf of any business entity, with service providers based in Iran, including providers of servers, data hosting, domain brokers, and internet service providers.

**Response**: None

2. Describe, in detail, who else besides yourself exerts control over the business, financial, operational, or other actions of DEFCAD Inc.

Your response must include:

      a. The identity and contact information of any individual or entity that you claim exerts any control of DEFCAD Inc.;

      b. What powers and responsibilities that individual or entity has with regard to DEFCAD Inc.;

      c. When that individual or entity gained the power you assert exists;

      d. How that individual or entity gained the power you assert exists.

**Response**: Defendant objects to this request as vague as to the phrase "exerts control over the business". I am the sole owner of of DEFCAD, Inc. and manage its day-to-day operations through Defense Distributed. I have various employees who perform their roles and make

B-58

decisions within their respective spheres of responsibility. Sometimes, they consult with me before making a decision sometimes they don't. Ultimately, I am the leader and responsible managerially for the decisions they make.

3. Describe, in detail, who else besides yourself exerts control over the business, financial, operational, or other actions of Defense Distributed? Your response must include:

   a. The identity and contact information of any individual or entity that you claim exerts any control of Defense Distributed;

   b. What powers and responsibilities that individual or entity has with regard to Defense Distributed;

   c. When that individual or entity gained the power you assert they have with regard to Defense Distributed;

   d. How that individual or entity gained the power you assert they have with regard to Defense Distributed.

**Response**: Defendant objects to this request as vague as to the phrase "exerts control over the business". Defense Distributed has a Board Of Directors composed of the following members:

   a. Benjamin Denio, 22 Bishops Place, Little Rock Arkansas 72223. Mr. Denio sits on the Board of the Directors and was elected in 2021.

   b. Zachary Kubin, 122 W. Center St., Beebe, AR 72012, Mr. Kubin sits on the Board of Directors and was elected in 2013.

4. Describe, in detail, who else besides yourself exerts control over the business, financial, operational, or other actions of Dioskouroi LLC? Your response must include:

> a. The identity and contact information of any individual or entity that you claim exerts any control of Dioskouroi LLC;

> b. What powers and responsibilities that individual or entity has with regard to Dioskouroi LLC;

> c. When that individual or entity gained the power you assert they have with regard to Dioskouroi LLC;

> d. How that individual or entity gained the power you assert they have with regard to Dioskouroi LLC.

**Response**: Defendant objects to this request as vague as to the phrase "exerts control over the business". To the best of my knowledge, Doiskouri is owned and operated by:

> a. Thomas Odom, 397 Gaitan Ln, Kingsbury TX 78638

> b. Managing member

> c. 2024

5. Describe all interactions you have had with law enforcement, excluding minor traffic violations, from 2018 to present.

**Response**: Defendant objects to this request as it is vague and over broad as to the term "law enforcement". Defendant works in a highly regulated industry and is often in touch, in his

professional capacity, with various entities involved in the creation and enforcement of laws.  All contact with individuals directly involved in the enforcement of laws related to Defendant's businesses is handled by lawyers employed by Defense Distributed. According, Defendant will re-interpret the request as requesting only whether Cody Wilson, individually, has ever been the party to a criminal case. Subject to these objections, I was a party to the following criminal case in 2018: State v. Cody Wilson, D-1-DC-18-100208 (Travis County, Texas).

6. Identify all persons or entities who authored or contributed any content to the  "Black Flag White Paper".

**Response**: I wrote the "Black Flag White Paper". Pablo Diaz, a graphic designer, contributed content, styling.

7. Identify in detail, for each of the alleged infringements of the copyrighted works listed in the Complaint and subsequent pleadings, the date on which you, CODY WILSON, became personally aware that each work was copyrighted or claimed to be copyrighted, whichever is sooner. Your response must include the date you were aware of the copyrighted status of the works bearing the registration numbers:

    a.  TX0009358088

    b.  VA0002385899

    c.  VA0002381513

    d.  TX0009372196

    e.   TX0009372199

    f.  VA0002385901

    g.  VA0002381769

    h.  TX0009403056

    i.  TX0009413646

    j.  VA0002422527

    k.  VA0002412508

    l.  TX0009403054

    m.  TX0009417973

    n.  VA0002415259

    o.  TX0009412695

    p.  VA0002418947

    q.  VA0002418589

    r.  TX0009429254

    s.  TX0009429253

    t.  VA0002449545

    u.  VA0002449520

    v.  TX0009509700

    w.  TX0009509692

    x.  VA0002449526

    y.  TX0009503785

**Response**: Defendant states as follows:

    a.  TX0009358088 (6 September 2024)

    b.  VA0002385899 (6 September 2024)

    c.  VA0002381513 (6 September 2024)

    d.  TX0009372196 (6 September 2024)

    e.  TX0009372199 (6 September 2024)

    f.  VA0002385901 (3 June 2024)

    g.  VA0002381769 (6 September 2024)

    h.  TX0009403056 (6 September 2024)

    i.  TX0009413646 (6 September 2024)

    j.  VA0002422527. (July 2024)

    k.  VA0002412508 (6 September 2024)

    l.  TX0009403054 (I do not recognize this work)

    m.  TX0009417973 (I do not recognize this work)

    n.  VA0002415259 (I do not recognize this work)

    o.  TX0009412695. (10 July 2024)

    p.  VA0002418947 (10 July 2024)

    q.  VA0002418589 (6 September 2024)

    r.  TX0009429254 (I do not recognize this work)

    s.  TX0009429253 (I do not recognize this work)

    t.  VA0002449545 (I do not recognize this work)

    u.  VA0002449520 (I do not recognize this work)

    v.  TX0009509700 (I do not recognize this work)

    w.  TX0009509692 (I do not recognize this work)

    x.  VA0002449526 (I do not recognize this work)

    y.  TX0009503785 (I do not recognize this work)

8. Identify all cryptocurrency accounts/wallets/addresses you have control over—"control" being the ability to remove or send cryptocurrencies from the account, even if others share access, and where other entities or individuals share that access, identify them to the extent known.

**Response**: Defendant objects that any crypto wallet Defendant may have control over is irrelevant to any claim or defense in this litigation.

9. Describe, in detail, all interactions you have had in any capacity with DEFCAD user "Cyan" (https://DEFCAD.com/users/Cyan/).

**Response**: Defendant objects to this interrogatory as over broad because it is designed to force an exhaustive or oppressive catalogue of information: I have known Kieran Philo since at least 2023, we have communicated multiple times verbally and by text messages, and all of our communications have been friendly and professional.

10. Describe all interactions you have had in any capacity with Kieran Philo.

**Response**: Defendant objects to this interrogatory as over broad because it is designed to force an exhaustive or oppressive catalogue of information: I have known Kieran Philo since at least 2023, we have communicated multiple times verbally and by text messages, and all of our communications have been friendly and professional.

11. Describe in detail the creation, operation, and current control of PrecursorParts.com, including domain ownership, hosting, funding sources, and content publication authority.

**Response:** Defendant objects to this interrogatory as over broad because it is designed to force an exhaustive or oppressive catalogue of information. Defendant further objects to this request as it is vague as to the terms "operation" and "publication authority." Without waiving said objection, Defense Distributed registered the domain for precursorparts.com in 2021. Development sites were built and operated by Defense Distributed until 2023. The site was never

funded and is currently controlled by Dioskouroi LLC.

12. Describe in detail the creation, operation, and current control of FEDCAD.com, including domain ownership, hosting, funding sources, and content publication authority.

**Response:** Defense Distributed registered the domain FEDCAD.com to combat trade libel against DEFCAD and domain squatting. Garret Walliman uses the site as a personal project to track 3D2A copyright claims.

13. Describe in detail the creation, operation, and current control of DEFCAD.com, including domain ownership, hosting, funding sources, and content publication authority.

**Response**: Defendant objects to this interrogatory as over broad because it is designed to force an exhaustive or oppressive catalogue of information. Without waiving said objections, Defense Distributed registered DEFCAD.com in 2012 and has operated it ever since. There have been multiple versions of the DEFCAD legal entity. The site is funded by Defense Distributed. All content publication policies are developed by Defense Distributed in response to federal and state law and litigation. Ultimate content publication authority is restricted to a group that includes Garret Walliman, Thomas Odom, and Cody Wilson.

14. Identify the person(s) or entity(ies) that operate the webserver located at 194.147.222.183.

**Response:** I don't know.

15. Identify the person(s) or entity(ies) that operate the webserver located at 65.109.192.74.

**Response** I don't know.

B-65

16. Describe your sale of the property and real estate at 18209 MARSHALLS POINT DR BLDG

   3, TX 78645 to Cheyenne Morgan. Your response must include:

       a. Why the property was sold;

       b. How much it was sold for;

       c. Why you continued to maintain this address as the registered address for one of
          your businesses after the sale.

**Response:** Defendant objects to this request as it seeks information irrelevant to the case, and

asks for information not reasonably calculated to lead to discoverable evidence.

17. Identify all agents and members of DEFCAD Inc., along with their roles and responsibilities.

**Response**: Defendant objects that the term "agents" is over broad because it would include

independent contractors such as attorneys and accountants; therefore Defendant re-interprets the

word as employees and answers as follows: Cody Wilson and Benjamin Denio have been

member managers and Thomas Odom is a paid employee.

18. Identify all agents and members of Defense Distributed, along with their roles and

   responsibilities.

**Response**: Defendant objects to this interrogatory as over broad because it is designed to force

an exhaustive or oppressive catalogue of information. Defendant objects that the term "agents" is

over broad because it would include independent contractors such as attorneys and accountants;

therefore Defendant re-interprets the word as employees and answers as follows: Defense

Distributed has no members. It employs 12 people in diverse roles such as customer service,

sales, and manufacturing. Its managers include: Cody Wilson, Director; Stephen Sheftall,

Director of Sales and Support; and Caleb Tapp, Director of Manufacturing.

19. Identify all agents and members of Dioskouroi, along with their roles and responsibilities.

**Response**: Defendant objects that the term "agents" is over broad because it would include independent contractors such as attorneys and accountants. Tom Odom is the managing member of Dioskouroi.

20. Identify the complete contents of any packages sent from you or your companies (including packages sent from the 2320 Donley Drive Suite C Austin, TX 78758) which were addressed to counterdefendant John Elik between the dates of June 1st, 2024 and June 30th, 2024.

**Response**: The book "Copyright for Dummies", with a postcard used as a bookmark,

21. Explain the purpose of any packages sent from you or your companies (including packages sent from 2320 Donley Drive Suite C Austin, TX 78758) which were addressed to counterdefendant John Elik between the dates of June 1st, 2024 and June 30th, 2024.

**Response**: For approximately one year, Mr. Elik had been tweeting that the Gatalog would sue me for copyright infringement in connection with files he developed and published. When I saw that he was fraudulently registering the files with the copyright office and including intentionally deficient notices, I sent him the book as a suggestion that he read up on copyright law because he would be a participant in any litigation filed by the Gatalog, would likely be deposed, and would have to preserve documents.

22. Identify any and all real estate or other real property in which you, either directly or indirectly—including through a non-publicly traded business entity you had direct or indirect

B-67

control of, and through straw or nominee transactions—have had any ownership interest in from January 1, 2016 onward. Include both property in which you gained AND property in which you already held ownership interest from  January 1, 2016.

**Response:** Defendant objects to this request as it is overly broad as to the time period, is vague as to the terms "indirect control" and "straw or nominee transactions", is irrelevant to the case, is disproportionate to the needs of the case, and seeks information not likely to lead to discoverable evidence.

23. Identify all instances where security vulnerabilities with DEFCAD.com have been detected, addressed, or corrected. Include details about how these vulnerabilities were detected, what data could have been accessed by an intruder who used them, what measures were taken to correct the vulnerabilities, and what compensation, if any, was given to those responsible for either finding, addressing, or correcting any such vulnerabilities.

**Response**: Garrett Walliman has detected and correct various routine security vulnerabilities over the years, none of which ever resulted in a security breach. Additionally, in 2023 and 2024, we retained Mandiant for digital threat monitoring and vulnerability reports, which have been provided in discovery.

24. Describe in detail the corporate governance policies of Defense Distributed, DEFCAD, and FEDCAD as of the time the files were uploaded, including how content was selected for publication.

**Response**: Defendant objects to this interrogatory as over broad because it is designed to force an exhaustive or oppressive catalogue of information. Subject thereto, Defendant responds as

follows: Defense Distributed will produce all of its written corporate governance policies and work instructions. Furthermore, the files at issue in this case were selected for publication by third parties who uploaded them to DEFCAD.com.

25. Identify each individual who assisted in uploading or approving the upload of CAD files authored by any Counterdefendant, and describe your relationship to each individual.

**Response** I do not recognize the CAD files as authored by the Counterdefendents, nor as works of authorship for purposes of the Copyright Act.

Verification

I, Cody Wilson, Defendant in the above entitled case, do solemnly declare and affirm under the penalty of perjury that the foregoing Responses to Interrogatories are true and correct to the best of my knowledge, information, and belief.

Executed on August 25, 2025

Cody Wilson

Defendant

25 August 2025

F. Andino Reynal

areynal@frlaw.us

The Reynal Law Firm, PC

917 Franklin, 6th Floor

Houston, Texas 77002

T (713) 228-5900

Admitted Pro Hoc Vice

Counsel for Cody Wilson

<u>Certificate of Service</u>

I certify on August 25, 2025  that I served the foregoing Responses to Requests for

Interrogatories on counsel of record via email.

F. Andino Reynal

United States District Court
Middle District of Florida
Orlando Division

Matthew Larosiere,

Plaintiff,

v.

Cody Rutledge Wilson, DEFCAD, Inc.,

Defense Distributed, and Dioskouroi

LLC,

Defendants.

_____

Defense Distributed,

Counterplaintiff/ Third

Party Plaintiff,

v.

The Gatalog, Matthew Larosiere, John Elik,

Alexander Holladay, Peter Celentano, Josh

Kiel Stroke, John Lettman, and MAF Corp.

Counterdefendants.

CASE NO: 6:24-cv-01629

**CODY WILSON'S OBJECTIONS AND RESPONSES TO JOHN ELIK'S REQUEST
FOR ADMISSIONS TO CODY WILSON**

To: Counterdefendant, John Elik, through his attorney of record, Matthew Larosiere, 6964

Houlton Circle Lake Worth, FL 33467.

Defendant Cody Wilson makes these objections and responses to John Elik's First Requests for

Admissions to Cody Wilson pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure.

Each objection is made to the specific request set forth below.

B-71

**Requests for Admission**

1. Admit cryptocurrency assets from DEFCAD were transferred to an account you control on or about August 16, 2018.

Deny

2. Admit cryptocurrency assets from Defense Distributed were transferred to an account you control on or about August 16, 2018.

Deny

3. Admit assets from DEFCAD have been comingled with your personal assets in the past.

Deny

4. Admit assets from Defense Distributed have been comingled with your personal assets in the past.

Deny

5. Admit you have used a vehicle belonging to Defense Distributed for personal matters unrelated to the course of ordinary business, such as on August 15, 2018.

Admit that at some point in the last 5 years Defendant has used a company vehicle for personal errands. Otherwise, deny.

6. Admit your use of company vehicles for personal matters has included meeting a 16-year-old girl at Bennu Coffee on 515 South Congress Avenue, Austin Texas.

Deny

7. Admit your use of company vehicles for personal matters has included taking a 16-year-old girl to the Archer Hotel, located at 3121 Palm Way, Austin Texas.

Deny

8. Admit your use of company vehicles for personal matters has included taking a 16-year-old girl to the Whataburger restaurant on 3400 West Slaughter Lane.

Deny

9. Admit your use of company assets includes paying a 16-year-old girl 500 dollars for reasons unrelated to business activities on at least one occasion.

Deny

10. Admit your use of company assets includes booking a hotel room at the Archer Hotel located at 3121 Palm Way, Austin Texas for reasons unrelated to business activities.

Deny

11. Admit you were aware that the Hitchhiker's build guide and the images it contained were all subject to copyright protections on or before August 9, 2024.

Admit that Defendant knew the Hitchhikers build guide and the images it contains were copyrightable. Otherwise deny.

12. Admit Defense Distributed's company letterhead is different than Cody Wilson's personal

B-73

letterhead.

Defendant denies that he has letterhead for correspondence unrelated to Defense Distributed.

13. Admit you have made unilateral business decisions in controlling assets belonging to DEFCAD.

Admit

14. Admit you have made unilateral business decisions in diverting assets belonging to DEFCAD.

Deny

15. Admit you have made unilateral business decisions in controlling assets belonging to Defense Distributed.

Admit

16. Admit you have made unilateral business decisions in diverting assets belonging to Defense Distributed.

Deny

17. Admit you directly approved of making some or all the works from "the Amigo Grande infringement" (Doc. 43 ¶ 106) available for download on DEFCAD's website(s).

Deny

18. Admit you directly approved of making some or all the works from "the BUBAR

infringement" (Doc. 43 ¶ 114) available for download on DEFCAD's website(s).

Deny

19. Admit you directly approved of making some or all the works from "the KF5 infringement" (Doc. 43 ¶ 117) available for download on DEFCAD's website(s).

Deny

20. Admit you directly approved of making some or all the works from "the SF5 infringement" (Doc. 43 ¶ 122) available for download on DEFCAD's website(s).

Deny

21. Admit you directly approved of making some or all the works from "the PV4 infringement" (Doc. 43 ¶ 159) available for download on DEFCAD's website(s).

Deny

22. Admit you directly approved of making some or all the works from "the Hitchhiker infringement" (Doc. 43 ¶ 201) available for download on DEFCAD's website(s).

Deny

23. Admit you directly approved of making some or all the works from "the TaxiDriver infringement" (Doc. 43 ¶ 250) available for download on DEFCAD's website(s).

Deny

24. Admit you directly approved of making some or all the works from the "New infringements"

(Doc. 94 §(i)(c)) available for download on DEFCAD's website(s).

Deny

25. Admit you indirectly approved of making some or all the works from "the Amigo Grande infringement" (Doc. 43 ¶ 106) available for download on DEFCAD's website(s).

Deny

26. Admit you indirectly approved of making some or all the works from "the BUBAR infringement" (Doc. 43 ¶ 114) available for download on DEFCAD's website(s).

Deny

27. Admit you indirectly approved of making some or all the works from "the KF5 infringement" (Doc. 43 ¶ 117) available for download on DEFCAD's website(s).

Deny

28. Admit you indirectly approved of making some or all the works from "the SF5 infringement" (Doc. 43 ¶ 122) available for download on DEFCAD's website(s).

Deny

29. Admit you indirectly approved of making some or all the works from "the PV4 infringement" (Doc. 43 ¶ 159) available for download on DEFCAD's website(s).

Deny

30. Admit you indirectly approved of making some or all the works from "the Hitchhiker

infringement" (Doc. 43 ¶ 201) available for download on DEFCAD's website(s).

Deny

31. Admit you indirectly approved of making some or all the works from "the TaxiDriver infringement" (Doc. 43 ¶ 250) available for download on DEFCAD's website(s).

Deny

32. Admit you indirectly approved of making some or all the works from the "New infringements" (Doc. 94 §(i)(c)) available for download on DEFCAD's website(s).

Deny

33. Admit you were personally involved in making all or some of the files which have been accessible from (https://DEFCAD.com/library/plastikov-v4/), starting from May 23rd, 2024, available for download on DEFCAD's website(s).

Deny

34. Admit you were personally aware that, prior to the filing of the instant action, all or some of the files which have been accessible from (https://DEFCAD.com/library/plastikov-v4/), starting from May 23rd, 2024, were available for download on DEFCAD's website(s).

Admit

35. Admit you claimed credit for your personal involvement in making the "Plastikov v4" available for download on DEFCAD's website(s) (https://DEFCAD.com/library/plastikov-v4/), knowing that at least some of the works therein were subject to copyright protections.

B-77

Deny

36. Admit you acknowledged that at least some elements of the Plastikov v4 infringement were subject to copyright protections in the "Black Flag White Paper".

Deny

37. Admit you removed or caused the removal of one or more copyright notices from a design named "Plastikov v4."

Deny

38. Admit you characterized your removal of one or more copyright notices from "the Plastikov" as being "vandalism".

Deny

39. Admit that, despite acknowledging that at least some elements of the Plastikov v4 infringement were subject to copyright protections, you copied or directed the copying of them anyway.

Deny

40. Admit that, on or before April 25, 2024, you were aware that some or all of the files accessible at (https://DEFCAD.com/library/the-sf5/) were subject to copyright registration.

Deny

41. Admit you created or caused the creation of FEDCAD.com.

Admit Defense Distributed registered the domain FEDCAD.com, otherwise deny.

42. Admit you are aware of the contents of and information presented at FEDCAD.com.

Admit

43. Admit you have characterized yourself as being a "pirate" on at least one of your blogs.

Deny

44. Admit you have characterized yourself as being a "pirate" in the Black Flag White Paper.

Deny

45. Admit you have characterized your activity in copying some or all of works at issue in this case as "plunder[ing]".

Deny

46. Admit you removed or caused the removal of one or more copyright notices from a design named "Hitchhiker".

Deny

47. Admit you did not publish a manifesto celebrating your removal of any copyright notices from a design named "Hitchhiker".

Defendant admits that no such manual exists and that therefore he could not have published one.

48. Admit you personally wrote all or some of the answer / counterclaim in this action.

Ex. B - COMPOSITE DEFENDANTS' DISCOVERY RESPONSES

Objection: Attorney client and work product privilege.

49. Admit you personally wrote all or some of the first amended answer / counterclaim in this action.

Objection: Attorney client and work product privilege.

50. Admit you personally wrote all or some of the second amended answer / counterclaim in this action.

Objection: Attorney client and work product privilege.

51. Admit all or some of the typographical issues corrected in the amendments to the answer / counterclaim were necessitated due to things you had written.

Objection: Attorney client and work product privilege.

52. Admit all or some of the remaining typographical issues corrected in the second amended answer / counterclaim are present because you wrote them.

Objection: Attorney client and work product privilege.

53. Admit that you have never observed corporate formalities in maintaining separation between yourself and Defense Distributed, DEFCAD, or Dioskouroi LLC.

Deny

54. Admit that prior to making any of the allegedly infringing works available on DEFCAD.com, you did not seek the advice of an attorney regarding whether doing so would violate copyright

law.

Objection: Attorney client privilege.

55.Admit that no third party granted you or your companies a license to upload or distribute the

allegedly infringing works described in the Complaint.

Deny

56.Admit that FEDCAD.com was operated under your direction during 2024.

Deny

57.Admit that one of your purposes in filing this action was to deter, punish, or retaliate  against

individuals critical of you or your organizations.

Deny

58.Admit that you reviewed or approved at least one item made available on DEFCAD.com that

is alleged to infringe Plaintiff's copyrights.

Deny

59.Admit that you did not conduct a copyright search before publishing any of the works

identified in Plaintiff's complaint.

Deny

60.Admit that you believed Plaintiff would object to the republication of his work at the time it

was uploaded.

Deny

61. Admit that you did not ask for or receive permission from Plaintiff to use any of the works referenced in the First Amended Complaint.

Deny

62. Admit that you have never entered into a license agreement with Plaintiff regarding any of the works you are alleged to have infringed.

Admit that Defendant never sought a license agreement with Plaintiff because Plaintiff had already licensed the work to the public.

63. Admit that you believed Plaintiff would be harmed by the republication of his work.

Deny

64. Admit that you intended to cause Plaintiff reputational or professional harm by your actions.

Deny

65. Admit that you have referred to Plaintiff online using derogatory or demeaning language.

Admit that Defendant has made fun of Plaintiff and not used respectful language.

66. Admit that you have previously stated that you use litigation or legal threats as a tool for retaliation.

Deny

67. Admit that you have drafted or edited at least one of the pleadings or filings in this case.

Objection: Attorney client and work product privilege.

68. Admit that you filed your counterclaims in part to retaliate against Plaintiff and Counterdefendants for criticism or disagreement.

Deny

69. Admit that you use Defense Distributed assets for personal benefit.

Deny

70. Admit that you do not maintain formal meeting minutes or records for Defense Distributed.

Deny

71. Admit that you have paid for personal expenses using Defense Distributed funds.

Deny

72. Admit that you do not maintain formal meeting minutes or records for DEFCAD, Inc.

Deny

73. Admit that you have paid for personal expenses using DEFCAD, Inc. funds.

Deny

74. Admit that you maintain a blacklist on Precursorparts.com in part to frustrate claims for copyright infringement against you.

Deny

75. Admit that you had the ability to unilaterally remove any file from DEFCAD.com at any time
during 2024.

Deny

76. Admit that you have previously threatened litigation against individuals for reasons unrelated
to the enforcement of a legal right.

Deny

77. Admit that you have transferred company assets to entities or individuals under your control
in order to avoid legal scrutiny.

Deny.

25 August 2025

F. Andino Reynal
areynal@frlaw.us
The Reynal Law Firm, PC
917 Franklin, 6th Floor
Houston, Texas 77002
T (713) 228-5900
Admitted Pro Hoc Vice
Counsel for Cody Wilson

Certificate of Service

I certify on August 25, 2025  that I served the foregoing Responses to Requests for

Admissions on counsel of record via email.


F. Andino Reynal

United States District Court
Middle District of Florida
Orlando Division

Matthew Larosiere,

Plaintiff,

v.

Cody Rutledge Wilson, DEFCAD, Inc.,

Defense Distributed, and Dioskouroi

LLC,

Defendants.                                    CASE NO: 6:24-cv-01629

_____

Defense Distributed,

Counterplaintiff/ Third

Party Plaintiff,

v.

The Gatalog, Matthew Larosiere, John Elik,

Alexander Holladay, Peter Celentano, Josh

Kiel Stroke, John Lettman, and MAF Corp.

Counterdefendants.

**CODY WILSON'S OBJECTIONS AND RESPONSES TO JOHN ELIK'S**

**REQUEST FOR PRODUCTION**

To: Counterdefendant, John Elik, through his attorney of record, Matthew Larosiere, 6964

Houlton Circle Lake Worth, FL 33467.


Defendant Cody Wilson serves these objections and answers to John Elik's First Requests for

Production to Cody Wilson.

## General Objections

1. Defendant Defense Distributed makes these objections and responses pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure. Each objection is made to the specific request set forth below. To the extent Defendant/Counterplaintiff produces documents, such production is made subject to and without waiving any objection.

2. Defendant will withhold from production communications protected by the attorney–client privilege and/or work product doctrine. Defendant will identify such withheld documents in a privilege log to the extent required by Fed. R. Civ. P. 26(b)(5) and the Court's rules and orders, and reserves the right to provide such identification on a categorical basis.

3. Defendant reserves the right to supplement these responses as discovery progresses pursuant to FRCP 26(e).

## Responses to Requests for Production

1. Produce all documents and other materials that relate to ownership of DEFCAD Inc., including but not limited to a complete list of its owners, how they acquired ownership, their ownership percentage, and their responsibilities with respect to DEFCAD Inc.

**Response**: Defendant objects to this request for production as it is overbroad. All of DEFCAD's documents could "relate to ownership of DEFCAD." Without waiving said objection, Defendant will produced corporate formation documents, all amendments thereto, current written corporate policies, and minutes of board meetings, resolutions, or other records reflecting formal corporate governance actions for Defense Distributed and DEFCAD.

2. Produce all documents and other materials that relate to ownership of Defense Distributed,

including but not limited to a complete list of its owners, how they  acquired ownership, their ownership percentage, and their responsibilities with  respect to Defense Distributed.

**Response**: Defendant objects to this request for production as it is overbroad. All of Defense Distributed's documents could "relate to ownership of Defense Distributed." Without waiving said objection, Defendant will produced corporate formation documents, all amendments thereto, current written corporate policies, and minutes of board meetings, resolutions, or other records reflecting formal corporate governance actions for Defense Distributed and DEFCAD.

3. Produce all documents and other materials that relate to ownership of Dioskouroi LLC, including but not limited to a complete list of its owners, how they acquired ownership, their ownership percentage, and their responsibilities with respect to Dioskouroi LLC.

**Response**: None.

4. Produce all documents and other materials in your possession that relate in any way to the transfer of any assets with a market value of $500 or more to Cheyenne  Morgan, including but not limited to sales contracts, real estate transfers, and  discussions of those transactions.

**Response**: Defendant objects to this request for production because it seeks irrelevant information not designed to lead to the discovery of admissible evidence.  Cheyenne Morgan is Cody Wilson's sister. She is not employed by or otherwise connected to any of the entities involved in this litigation and has no knowledge of any facts at issue in this litigation.

5. From January 1, 2018 onward, produce all documents, communications, and materials which include any mention or discussion of copyright.

**Response**: Defendant objects to this request for production as it is overly broad as to time and

subject matter, unduly burdensome, and disproportionate to the needs of discovery.

- Wilson is a First Amendment activist who has discussed "copyright" extensively in both private and public forums—he has both written about it and given speeches on the topic.

- Wilson's ESI is voluminous, consisting of millions of documents and communications.

- Almost every email newsletter and transactional email Wilson receives contains the word "copyright" in the footer, leading to voluminous false positives.

Defendant further objects that the Request, as drafted, is overbroad, unduly burdensome, and not proportional to the needs of the case, insofar as it facially encompasses voluminous attorney client privileged communications

Subject to and without waiving these objections, Defendant will produce responsive, non-privileged communications in its possession, custody, or control, mentioning or discussing the Counterdefendants or the works at issue in this litigation in a rolling fashion beginning on 25 August 2025 and concluding on 25 September 2025.

6. Produce all communications which include any mention or discussion of the allegedly infringed works, including the works purported to bear the registration numbers TX0009358088, VA0002385899, VA0002381513, TX0009372196, TX0009372199, VA0002385901, VA0002381769, TX0009403056, TX0009413646, VA0002422527, VA0002412508, TX0009403054, TX0009417973, VA0002415259, TX0009412695, VA0002418947, VA0002418589, TX0009429254, TX0009429253, VA0002449545, VA0002449520, TX0009509700, TX0009509692, VA0002449526, TX0009503785.

**Response**: Objection vague to the extent the request suggests that their are other allegedly

infringed works beyond those listed in the question. Regarding the listed registration numbers, complying with the request will require Defendant to search by registration number and by name (e.g. "Amigo Grande" or "Regular 10/22"). Defendant's ESI is voluminous, consisting of millions of messages and documents contained on diverse platforms. Despite best efforts, Defendant has not been able to review all the necessary documents; therefore, Defendant will produce responsive, non-privileged communications in its possession, custody, or control, in a rolling fashion beginning on 25 August 2025 and concluding on 25 September 2025.

7. Produce all materials and information used in the creation of the "Black Flag White Paper".

**Response**: Defendant will produce responsive documents.

8. Produce all drafts, working copies, and preliminary versions of the "Black Flag White Paper".

**Response**: Defendant will produce responsive documents.

9. Produce all documents and materials, including but not limited to preliminary versions, drafts, working copies, correspondence, and otherwise in any way referring or relating to the April 22, 2025 post "On Raids And Raiding" on the DDLegio blog.

**Response**: Defendant will produce responsive documents.

10. Produce all documents and materials, including but not limited to preliminary versions, drafts, working copies, correspondence, and otherwise in any way referring or relating to the January 23, 2025 post "Benchy, IP, and 3D Guns" on  the DDLegio blog.

**Response**: Defendant will produce responsive documents.

11. Produce all documents and materials, including but not limited to preliminary versions, drafts, working copies, correspondence, and otherwise in any way referring or relating to the November 20, 2024 post "The Fuddness Unto Death" on the DDLegio blog.

**Response**: Defendant objects to this request vague as to the term "otherwise" as it could include drafts and communications with counsel regarding the counterclaim in this case. Without waiving said objection, Defendant will produce responsive documents. .

12. Produce all materials, communications, records, and instructions involved in the removal of any copyright notices from any work, whether the removal or obfuscation of any copyright notice was done or directed by yourself.

**Response**: Defendant's ESI is voluminous, consisting of millions of messages and documents contained on diverse platforms. Despite best efforts, Defendant has not been able to review all the necessary documents; therefore, Defendant will produce responsive, non-privileged communications in its possession, custody, or control, in a rolling fashion beginning on 25 August 2025 and concluding on 25 September 2025.

13. Produce all documents and communications concerning the "Amigo Verde".

**Response**: Defendant's ESI is voluminous, consisting of millions of messages and documents contained on diverse platforms. Despite best efforts, Defendant has not been able to review all the necessary documents; therefore, Defendant will produce responsive, non-privileged communications in its possession, custody, or control, in a rolling fashion beginning on 25 August 2025 and concluding on 25 September 2025.

14. Produce all documents and communications with the following groups/entities:   Brady,

Giffords, Everytown for Gun Safety, Mom's Demand Action, MAF Corporation, Newtown Action Alliance, Sandy Hook Promise, Gatalog Foundation, The Trace, and The United Methodist Church. Attorneys, employees, agents and associates of the law firms represented by the FACT coalition, including but not limited to the firms: Arnold & Porter LLP, Bilzin Sumberg Baena Price & Axelrod LLP, Cooley LLP, Covington & Burling LLP, Dentons USLLP, Gibson Dunn And Crutcher LLP, Hogan Lovells US LLP, Keker, Van Nest & Peters LLP, Mayer Brown LLP, Morrison & Foerster LLP, Morvillo Abramowitz Grand Iason & Anello PC, Munger Tolles & Olson LLP, O'Melveny & Myers LLP, Paul, Weiss, Rifkind, Wharton & Garrison LLP, and Simpson Thacher & Bartlett LLP. Attorneys, employees, agents and associates of the law firms Venable, LLP and Keker, Van Nest & Peters.

**Response**: Defendant objects to this request as it is overly broad, seeks information irrelevant to the case, and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, Defendant's ESI is voluminous, consisting of millions of messages and documents contained on diverse platforms. Despite best efforts, Defendant has not been able to review all the necessary documents; therefore, Defendant will produce responsive, non-privileged communications in its possession, custody, or control relating to MAF and The Gatalog Foundation in a rolling fashion beginning on 25 August 2025 and concluding on 25 September 2025.

15. Produce all documents and materials concerning, comprising, or relating to communications you have had with foreign governments from January 1, 2016 onward.

**Response**: Defendant objects to this request for production as it is irrelevant and unlikely to lead

to the discovery of admissible evidence.   Without waiving said objections, Defendant has no communications with foreign governments related to Counterdefendants in his possession, custody, or control.

16. Produce all documents and communications with lobbyists pertaining to 3D printed guns and copyright.

**Response**: None.

17. Produce all documents and communications with elected government officials pertaining to 3D printed guns and copyright.

**Response**: None

18. Produce all documents and communications with government officials pertaining to 3D printed guns and copyright.

**Response**: Defendant will produce responsive documents.

19. Produce all documents and communications with US government agencies pertaining to 3D printed guns and copyright.

**Response**: Defendant will produce responsive documents.

20. Produce all licenses, contracts, assignments, or agreements that authorize you to copy works protected or purported to be protected by by any of the following: TX0009358088, VA0002385899, VA0002381513, TX0009372196, TX0009372199, VA0002385901, VA0002381769, TX0009403056, TX0009413646, VA0002422527, VA0002412508, TX0009403054, TX0009417973, VA0002415259, TX0009412695, VA0002418947,

VA0002418589, TX0009429254, TX0009429253, VA0002449545, VA0002449520, TX0009509700, TX0009509692, VA0002449526, TX0009503785.

 **Response**: Defendant will produce responsive documents.

21. Produce all licenses for which you claim the defense of license, including those issued by the United States federal government, which permit the copying of works protected or purported to be protected by any of the following: TX0009358088, VA0002385899, VA0002381513, TX0009372196, TX0009372199,    VA0002385901, VA0002381769, TX0009403056, TX0009413646,    VA0002422527, VA0002412508, TX0009403054, TX0009417973, VA0002415259, TX0009412695, VA0002418947, VA0002418589, TX0009429254, TX0009429253, VA0002449545, VA0002449520, TX0009509700, TX0009509692, VA0002449526, TX0009503785.

**Response**: Defendant will produce responsive documents.

22. Produce all materials you have obtained, solicited, or otherwise acquired from private investigators concerning any counterdefendant in this case, including all invoices and communications.

**Response**: Defendant's ESI is voluminous, consisting of millions of messages and documents contained on diverse platforms.  Despite best efforts, Defendant has not been able to review all the necessary documents; therefore, Defendant will produce responsive, non-privileged communications in its possession, custody, or control, in a rolling fashion beginning on 25 August 2025 and concluding on 25 September 2025.

23. Produce all materials, including conversation histories, contracts, materials, and

communications with Jim Blackburn which pertain or relate in any way to any counterdefendant in this case.

**Response**: Defendant's ESI is voluminous, consisting of millions of documents and messages contained on diverse platforms. Despite best efforts, Defendant has not been able to review all the necessary documents; therefore, Defendant will produce responsive, non-privileged communications in its possession, custody, or control, in a rolling fashion beginning on 25 August 2025 and concluding on 25 September 2025.

24. Produce all materials, including conversation histories, contracts, materials, and communications with Destin Investigations which pertain or relate in any way to any counterdefendant in this case.

**Response**: Defendant's ESI is voluminous, consisting of millions of documents and messages contained on diverse platforms. Despite best efforts, Defendant has not been able to review all the necessary documents; therefore, Defendant will produce responsive, non-privileged communications in its possession, custody, or control, in a rolling fashion beginning on 25 August 2025 and concluding on 25 September 2025.

25. Produce all documents, communications and materials relating in any way to Gary Flowers, whom you may know as "FDMArms".

**Response**: Defendant will produce responsive documents.

26. Produce all documents, records, and communications relating in any way to the web server at 194.147.222.183.

**Response**: None.

27. Produce all documents, records, and communications relating in any way to the web server at 65.109.192.74.

**Response**: None.

28. Produce all documents and materials concerning metrics, click-through information, user information collected, tracking pixel data, including view counts and IP records, for all emails concerning updates to the DEFCAD blog.

**Response**: None

29. Produce all documents and materials concerning metrics, click-through information, user information collected, tracking pixel data, including view counts and IP records, for all emails concerning updates to the DD Legio blog.

**Response**: Defendant objects to this request as it is irrelevant, overly burdensome, and is disproportionate to the needs of the case because (1) it is not related to any claim or defense in this litigation; (2) it is not time limited and (3) it would require Wilson to acquire information that neither he nor Defense Distributed commonly tracks.

30. Produce all documents and materials concerning metrics, click-through information, user information collected, tracking pixel data, including view counts and IP records, for each post on the DD Legio blog.

**Response**: Defendant objects to this request as it is irrelevant, overly burdensome, and is disproportionate to the needs of the case because (1) it is not related to any claim or defense in this litigation; (2) it is not time limited and (3) it would require Wilson to acquire information that neither he nor Defense Distributed commonly tracks.

31. Produce all documents and materials concerning metrics, click-through information, user information collected, tracking pixel data, including view counts records, for all DEFCAD blog posts.

**Respones:** Defendant objects to this request as it is irrelevant, overly burdensome, and is disproportionate to the needs of the case because (1) it is not related to any claim or defense in this litigation; (2) it is not time limited and (3) it would require Wilson to acquire information that neither he nor DEFCAD commonly tracks.

32. Produce all unedited footage used to create the "GunCAD: History and Value" video (https://www.youtube.com/watch?v=V7iuyS5WMEs).

**Response**: Defendant will produce responsive documents.

33. Produce all materials used to aid in the creation of the "GunCAD: History and Value" video (https://www.youtube.com/watch?v=V7iuyS5WMEs).

**Response:** Defendant will produce responsive documents.

34. Produce all documents and material relating to the real estate history, including sales, ownership, and lease records concerning 18209 MARSHALLS POINT DR BLDG 3, TX 78645.

**Response:** Defendant objects to this request for production as it seeks information irrelevant to the case, and asks for information not reasonably calculated to lead to discoverable evidence.

35. Produce all documents and material relating to the real estate history, including sales, ownership, and lease records concerning 2320 Donley Drive Suite C Austin, TX 78758.

**Response**: Defendant objects to this request for production as it seeks information irrelevant to the case, and asks for information not reasonably calculated to lead to discoverable evidence.

36. Produce all documents and material relating to the real estate history, including sales, ownership, and lease records concerning 4610 CRESTWAY DR, AUSTIN TX 78731.

**Response**: Defendant objects to this request for production as it seeks information irrelevant to the case, and asks for information not reasonably calculated to lead to discoverable evidence.

37. Produce all documents and material relating to any real estate owned by you or your sister, Cheyenne Morgan, or any entity in which you, directly or indirectly, have control over.

**Response**: Defendant objects to this request as it is overbroad, seeks information irrelevant to the case, and asks for information not reasonably calculated to lead to discoverable evidence.

38. Produce all real estate history, including sales, ownership, and lease records for Defense Distributed, including 2320 Donley Drive Suite C Austin, TX 78758 and   18209 MARSHALLS POINT DR BLDG 3, TX 78645 as well as any address used as a registered address or principal address since 2018.

**Response**: Defendant objects to this request for production as it seeks information irrelevant to the case, and asks for information not reasonably calculated to lead to discoverable evidence.

39. Produce all real estate history, including sales, ownership, and lease records for DEFCAD, including 2320 Donley Drive Suite C Austin, TX 78758, and 4610 CRESTWAY DR, AUSTIN TX 78731 as well as any address used as a registered address or principal address since 2018.

**Response**: Defendant objects to this request for production as it seeks information irrelevant to

the case, and asks for information not reasonably calculated to lead to discoverable evidence.

40. Produce all real estate history, including sales, ownership, and lease records for Dioskouroi, including any address used as a registered address or principal address since 2018.

**Response**: Defendant objects to this request for production as it seeks information irrelevant to the case, and asks for information not reasonably calculated to lead to discoverable evidence.

41. Produce a complete accounting for every unit of currency or cryptocurrency that was deposited into (https://www.blockchain.com/explorer/addresses/btc/1Q6b2KUaHnPTD153K2rrr BKm2s4bt5TiQx) from 7/15/2018 to 9/5/2018.

**Response**: Defendant objects to this request as irrelevant to the case, and asking for information not reasonably calculated to lead to discoverable evidence; subject to these objections: None.

42. Produce documents sufficient to create a complete picture of the assets held by Defense Distributed, including bank account statements, cryptocurrency account balances, and inventory records.

**Response**: Defendant objects to this request for production because (1) it is vague as to what would constitute a "complete picture of the assets held by Defense Distributed"; (2) requires Defendant to create documents not otherwise in existence; (3) is overly broad, in effect requiring Defendant to produce the complete accounting records for Defense Distributed for all time, and (4) seeks information irrelevant to the case and not reasonably calculated to lead to discoverable evidence.

43. Produce documents sufficient to create a complete picture of the assets held by DEFCAD, Inc., including bank account statements, cryptocurrency account balances, and inventory

records.

**Response**: Defendant objects to this request for production because (1) it is vague as to what would constitute a "complete picture of the assets held by Defense Distributed"; (2) requires Defendant to create documents not otherwise in existence; (3) is overly broad, in effect requiring Defendant to produce the complete accounting records for Defense Distributed for all time, and (4) seeks information irrelevant to the case and not reasonably calculated to lead to discoverable evidence.

44. Produce documents sufficient to create a complete picture of the assets held by Dioskouroi LLC, including bank account statements, cryptocurrency account balances, and inventory records.

**Response**: Defendant has no responsive documents.

45. Produce a complete assessment of how much he has and where it came from.

**Response**: Defendant objects to this request for production as it is overly broad as there is no time period given, vague as to who "he" is and what what is being requested, calls for counsel or Defendant to create a document otherwise not in existence, and irrelevant to any claim or defense in this matter.

46. Produce all documents and communications relating to the payment of cryptocurrency from any of your companies to yourself. "Your companies" means Defense Distributed, DEFCAD, Inc., and Dioskouroi, and any other company in which you have direct control of personnel or operations.

**Response**: Defendant objects to this request for production as it is overly broad, seeks

information irrelevant to the case, disproportionate to the needs of discovery and asks for information not reasonably calculated to lead to the discovery of admissible evidence.

47. Produce all documents and communications relating to the payment of legal currency from any of your companies to yourself. "Your companies" means Defense Distributed, DEFCAD, Inc., and Dioskouroi, and any other company in which you have direct control of personnel or operations.

**Response**: Defendant objects to this request for production as it is overly broad, seeks information irrelevant to the case, disproportionate to the needs of discovery and asks for information not reasonably calculated to lead to the discovery of admissible evidence.

48. Produce all documents and communications in your possession referencing, from, to, or in any way relating to "Guard Denver."

**Response**: Defendant will produce responsive documents.

49. Produce all records concerning any packages you or your companies have sent to Counterdefendant John Elik.

**Response:** None.

50. Produce all documents and communications concerning or relating in any way to security breaches on DEFCAD.com.

**Response**: Defendant objects to this request as it is vague as to the term "security breach". Without waiving said objection, Defendant will produce responsive documents.

51. Produce all documents and communications concerning or relating in any way to payments,

bounties, rewards, or other compensation given to any entities or individuals relating to security breaches or vulnerabilities on DEFCAD.com.

**Response**: Defendant will produce responsive documents.

52. Produce all records, including user account information, administrative actions taken, password changes, access logs including IP addresses, view counts, uploads, uploading IP addresses, and all other metrics that DEFCAD.com has relating to any of the counterdefendants. Include an assessment of how much DEFCAD's payout system has paid out and to whom for each file that DEFCAD.com associates with any of the counterdefendants.

**Response:** Defendant objects to the portion of the question requiring him to make "an assessment of how much DEFCAD's payout system has paid out and to whom for each file that DEFCAD.com associates with any of the counterdefendants." Subject to the limitation that Defendant will not create documents or perform assessments, Defendant will produce responsive documents.

53. Produce all documents and communications relating to any payment of compensation of any kind to any DEFCAD users whose payout calculations have relied on any of the allegedly infringing works (Regular 10/22, MPP99, Amigo Grande, BUBAR, KF5, SF5, PV4, NS3, Hitchhiker).

**Response**: Defendant will produce responsive documents.

54. Produce all documents and communications relating in any way to the payment of compensation of any kind to any individual or entity relating in any way to any files,

documents, images, models, or otherwise uploaded to DEFCAD.com.

**Response**: Defendant objects to this request for production as it is overly broad and disproportionate to the needs of the case because it would require production of every payment made by Defense Distributed to any individual ever uploaded files to DEFCAD.com. Defendant will produce payment records regarding the works at issue in this case.

55. Produce all minutes of board meetings, resolutions, or other records reflecting formal corporate governance actions for Defense Distributed, DEFCAD, or Dioskouroi LLC.

**Response**: Defendant objects to this request as overbroad because it is not time bound. Defendant will produce responsive documents beginning in 2020.

56. Produce all communications you had with any person concerning your desire to file your counterclaims in this litigation as a response to criticism, online speech, or perceived disrespect.

**Response**: Defendant objects to this request for production as it is vague as to the terms "criticism" "online speech" and "perceived disrespect". Without waiving said objection, Defendant has no responsive documents.

57. Produce all documents reflecting any inquiry into whether the CAD files authored by any Counterdefendant were protected by copyright.

**Response**: Defendant does not recognize the CAD files as authored by the Counterdefendents, nor as works of authorship for purposes of the Copyright Act. Subject to and without waiving these objections, Defendant's ESI is voluminous, consisting of millions of messages and documents contained on diverse platforms. Despite best efforts, Defendant has not been able to

review all the necessary documents; therefore, Defendant will produce responsive, non-privileged communications in his possession, custody, or control, mentioning or discussing the Counterdefendants or works at issue in this litigation in a rolling fashion beginning on 25 August 2025 and concluding on 25 September 2025.

58. Produce all communications referencing any Counterdefendant's name, "The Gatalog," or any usernames you believe to be associated with them.

**Response**: Defendant will produce responsive, non-privileged communications in its possession, custody, or control, mentioning or discussing the Counterdefendants or works at issue in this litigation. Defendant's ESI is voluminous, consisting of millions of messages and documents contained on diverse platforms. Despite best efforts, Defendant has not been able to review all the necessary documents; therefore, Defendant will produce responsive, non-privileged communications in its possession, custody, or control, in a rolling fashion beginning on 25 August 2025 and concluding on 25 September 2025.

59. Produce all posts, statements, messages, or communications in which you expressed anger, frustration, or hostility toward any Counterdefendant.

**Response**: Defendant objects to this request as it is vague as to the terms "anger" "frustration" and "hostility." Subject to and without waiving these objections, Defendant will produce responsive, non-privileged communications in its possession, custody, or control, mentioning or discussing the Counterdefendants or works at issue in this litigation. Defendant's ESI is voluminous, consisting of millions of messages and documents contained on diverse platforms. Despite best efforts, Defendant has not been able to review all the necessary documents;

therefore, Defendant will produce responsive, non-privileged communications in its possession, custody, or control, in a rolling fashion beginning on 25 August 2025 and concluding on 25 September 2025.

60. Produce all documents and communications including posts, drafts, outlines, or strategy documents relating to your use of litigation or the legal process as a form of retaliation.

**Response**: Defendant objects to this request for production because it is vague as to the term "retaliation". To the extent the request is for documents and communications reflecting that Defendant has ever filed a lawsuit for an improper purpose, answer none. To the extent the request is for all documents and communications about filing a lawsuit for legitimate purposes, such as compensatory damages, the question is overbroad and would facially call for the production of attorney-client privileged documents.

61. Produce all documents and communications in which you discuss the possibility of harming any Counterdefendant in any way.

**Response**: Defendant objects to this request because the term "harming" is vague. To the extent Counter-Defendant is asking about physical harm, answer none.

62. Produce all documents and communications related to "blacklisting," as you admit to in your answer and counterclaims, on any or your commerce websites, including all information on individuals on the blacklist, when they were placed on the blacklist, and the blacklist itself.

**Response**: Defendants' Second Amended Answer with Counterclaims does not contain the word "blacklisting" or "blacklist".

63. Produce all documents and communications related to the ghostguns.com BTC pay server,

EX-B-COMPOSITE DEFENDANTS DISCOVERY RESPONSES

including all transaction logs from January 1, 2018, to present.

**Response**: Defendant objects to this request for production as irrelevant to the claims and defenses in this litigation as it would require Defendant's to produce all transactions from an unrelated e-commerce website, and overbroad and disproportionate to the needs of the case as it would require defendant to produce information unrelated to Counterdefendants claimed works for all time.

64. Produce all internal communications discussing how to respond to the DMCA notices or copyright complaints related to Plaintiff's works.

**Response**: Defendant will produce responsive, non-privileged communications in its possession, custody, or control, mentioning or discussing the Counterdefendants or works at issue in this litigation. Defendant's ESI is voluminous, consisting of millions of messages and documents contained on diverse platforms. Despite best efforts, Defendant has not been able to review all the necessary documents; therefore, Defendant will produce responsive, non-privileged communications in its possession, custody, or control, in a rolling fashion beginning on 25 August 2025 and concluding on 25 September 2025.

65. Produce all moderation logs or backend content management records from DEFCAD.com showing administrator actions concerning the files at issue is the underlying complaint.

**Response**: Defendant will produce responsive documents.

Respectfully submitted this 25th day of August 2025

F. Andino Reynal
areynal@frlaw.us
Texas Bar No. 24060482
The Reynal Law Firm, PC
917 Franklin, 6th Floor
Houston, Texas 77002
T (713) 228-5900

Certificate of Service

I certify on August 25, 2025  that I served the foregoing Responses to Requests for

Production on counsel of record via email.

F. Andino Reynal