UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.:  6:24-CV-1629


MATTHEW LAROSIERE,

       Plaintiff,

vs.

CODY RUTLEDGE WILSON, DEFCAD,
Inc., DEFENSE DISTRIBUTED, and
DIOSKOUROI LLC,

       Defendants.

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *


MEET-AND-CONFER

DATE TAKEN:          SEPTEMBER 4, 2025
TIME:                1:00 P.M.
PLACE:               VIA ZOOM
REPORTED BY:         ELIZABETH ANNE SMITH,
                      STENOGRAPHER AND NOTARY PUBLIC

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

A P P E A R A N C E S:

ZACHARY Z. ZERMAY, ESQUIRE
Zermay Law
3000 Coral Way
Suite 1115
Miami, Florida 33145
APPEARING ON BEHALF OF THE PLAINTIFF
(239) 699-3107

FEDERICO ANDINO REYNAL, ESQUIRE and
CHARLES FLORES, ESQUIRE
The Reynal Law Firm, P.C.
917 Franklin Street
Sixth Floor
Houston, Texas 77002
APPEARING PRO HAC VICE ON BEHALF OF THE DEFENDANTS
(713) 228-5900

MATTHEW LAROSIERE, ESQUIRE
6964 Houlton Circle
Fort Worth, Florida 33467
APPEARING ON BEHALF OF THE COUNTER-DEFENDANTS
(561) 452-7575

GARY CHARLES DEPURY, ESQUIRE
Law Offices of Gary De Pury, P.A.
21035 Leonard Road
Lutz, Florida  33558
APPEARING ON BEHALF OF THE COUNTER-DEFENDANTS
(813) 607-6911

```
 1              P R O C E E D I N G S
 2         MR. REYNAL:  As I mentioned before, we have a
 3    motion for the Court to appoint a special master to
 4    oversee discovery in this case.  Our position is that
 5    a special master is necessary because of the opposing
 6    side's filing of serial grievances against defense
 7    counsel, destruction of documents, and evasive to the
 8    point of non-existent discovery responses.
 9         I also, before I included in my motion, wanted
10    to ask Mr. Larosiere whether he's been leaving me bad
11    Google reviews.
12         MR. LAROSIERE:  No, sir.
13         MR. REYNAL:  Okay.  Well, that is -- that is
14    the motion we intend to file.  And so for purposes
15    of satisfying our conference obligations, I wanted
16    to bring it to your attention and get your position
17    on it.
18         MR. DEPURY:  Who is going to go first?
19         MR. ZERMAY:  Yeah.  I guess I have some
20    questions regarding the factual basis of whatever
21    motion you intend to file related to the destruction
22    of evidence, because I saw a screen shot of something
23    that Mr. Flores sent over a little bit prior to this
24    conference stating that, you know, there's a, I
25    believe it's Rocket.Chat issues.  So I'm interested
```

1          to hear the factual basis of the allegations in that

2          motion.

3               And, I guess, looking a little bit more closely

4          at the requested relief in the motion, it appears

5          that you're asking for briefing and an evidentiary

6          hearing.  So I'm a little bit interested to hear what

7          basis, in fact, you have to be making those

8          assertions.

9               MR. REYNAL:  Excuse me.  I'm sorry.  Are you

10          done, Mr. Zermay?

11               MR. ZERMAY:  Yes.

12               MR. REYNAL:  Before we turn to that motion,

13          which Mr. Flores will address, may I put you all

14          down as agreed or opposed to the motion to appoint

15          a special master?

16               MR. LAROSIERE:  Mr. Reynal, if I may interject

17          for a moment.  I think that we have to more

18          substantively confer on these matters.  And I think

19          we're all a little confused, at least on our side,

20          given the framing and timing of this conference and

21          what has been exchanged up to this point.  So I think

22          we have to discuss a little more to understand your

23          position before we can take a formal position.

24               As said in our email exchanges, there's been

25          some pretty clear positions taken and I don't -- so I

 1          guess are you saying, Mr. Reynal, that you want to

 2          first focus on the motion to appoint a special

 3          master?  Should we discuss only that for now?

 4               MR. REYNAL:  Yes.  I would like to get your

 5          position on the appointment of a special master for

 6          purposes of our conference.  We would like one.  If

 7          you would -- don't think that one would be

 8          appropriate in the case, say so.  If you think that

 9          one would, say so.

10               MR. LAROSIERE:  Mr. Reynal, thank you.  The

11          question is, you know, special masters are often

12          appointed by agreement.  And when they're not

13          appointed by agreement it's because of some extreme

14          circumstances.  The case law where special masters

15          are appointed over one party's objection include

16          situations where there are 20, 30, 40 pending

17          motions concerning discovery issues.

18               And I guess my question is, in this case,

19          arguably there may have been one, perhaps two, in a

20          very technical sense, discovery motions.  So it

21          doesn't seem like that type of case.

22               And, additionally, I wonder what the

23          substantive disagreements about discovery are

24          because, as you remember, and our emails reflect

25          this, last conference was intended to be global and

```
 1          at that time no issues with any of our side's

 2          discovery obligations and responses were raised and

 3          we've asked repeatedly for such positions in those

 4          minor areas where we've immediately agreed to -- to

 5          remedy.

 6               I guess we're a little confused as to what

 7          these -- at least I can speak for my clients -- are

 8          a little confused as to what these non-responsive

 9          to the point of incompleteness issues are because

10          we feel they haven't been addressed.

11               Zach -- I think maybe Zach and then Gary should

12          point out their feelings on the special master

13          appointment.

14               I'll say it's my client's positions, the

15          out-of-state counter-defendants, who have a pending

16          motion to dismiss, which would be completely

17          dispositive as to their involvement in the case, one,

18          cannot afford a special master, cannot afford to pay

19          the cost of a special master, and, additionally,

20          don't feel it's warranted and do feel this is

21          calculated to use the differential financial

22          positions of the party as a litigation advantage in

23          violation of rule one.  So, that would be our

24          position, I guess, Zach.

25               MR. ZERMAY:  Yes.  To echo what Mr. Larosiere
```

1        said, my client is in agreement with what

2        Mr. Larosiere has said.

3            Moreover, we would like to know the particular

4        nature of the order and request that you're seeking.

5        For example, who would you propose the special master

6        be?  And who would bear the cost of such appointment?

7        Are you?  Because you're the requesting party, would

8        you agree to bear all the costs of the special

9        master?  Is that what you're proposing?

10           MR. REYNAL:  Did you want to say something,

11       Gary?

12           I can answer that very quickly.  The answer

13       is, no, we believe that as the group that has

14       necessitated the appointment of a special master

15       that the plaintiffs/counter-defendants should bear

16       the entire cost.

17           If the Court wants to, as it suggested, that

18       we split the cost and then at the end of the case

19       apportion it, then that's within the Court's

20       discretion.

21            But we think that the -- you all should bear

22       the entire cost of the special master since the

23       necessity was caused by your litigation conduct and

24       extra litigation conduct in the form of the Bar

25       grievances, and I guess you're denying it, or

1      Google reviews, and the other conduct that your

2      clients have taken the case, destruction of

3      evidence, et cetera.

4          MR. ZERMAY:  Could you go a little bit more

5      into detail?  The specific acts that you would

6      submit to the Court warrants what, in affect, would

7      be a terminating financial sanction against my

8      client such that you're going to make a argument to

9      the Court that Mr. Larosiere and the

10     counter-defendants should be forced to bear the

11     cost of a special master that your client is

12     requesting.

13         MR. REYNAL:  It was your client's decision to

14     file five Bar grievances, to destroy evidence, and

15     to not substantively respond to our discovery

16     requests.  And those requests are the factors that

17     we're going to be placing before the Court.

18         It sounds to me like you all are opposed to

19     the requested relief.

20         MR. ZERMAY:  Yes.

21         MR. REYNAL:  So, that is what it is.  We'll

22     let the Judge decide what she would like to do.

23         MR. LAROSIERE:  Gary, I think you haven't

24     spoken on this.

25         MR. DEPURY:  Go get it offline.  Get it off

1          the computer, off the email.  I'm sorry, guys.  I'm

2          trying to transition to my office.

3              MR. LAROSIERE:  It's okay.  I think I might

4          just say one thing, just to be clear:  Mr. Reynal,

5          we're declining to respond to your assertions of

6          Bar grievances.

7              Under the Florida Rules, it is considered

8          clearly improper to use such to gain any sort of

9          litigation advantage.  So we are declining to

10          discuss that, especially to the extent that, as

11          you're well aware, this was not one-way conduct,

12          and would also point out that if a Florida attorney

13          sees something that is a rule violation they are

14          obligated under the Florida rules to file a

15          grievance.

16              But in observation of the Florida Ethics

17          opinions, we are deliberately not responding to

18          your repeated invocations of Bar grievances for

19          that reason.  I don't know if you want to echo that

20          or not, my fellow counsel.

21              MR. ZERMAY:  Yes.  It's my understanding of

22          the Florida Rules of Professional Conduct that one

23          cannot use Bar proceedings for litigation

24          advantage.

25              MR. REYNAL:  I mean, not to -- are you trying

1          to log back in, Gary?

2               MR. DEPURY:  I'm trying to log in from my

3          desk so I can hear.

4               MR. REYNAL:  I'm going to admit you, but

5          you're going to have to mute yourself so we don't

6          get this crazy --

7               MR. DEPURY:  I'm going to cancel this one.

8               MR. REYNAL:  Okay.  Can you participate?  Are

9          you okay, Gary?  Can you hear us?

10              MR. DEPURY:  (Indicating.)

11              MR. REYNAL:  Okay.  I'm getting a thumbs up.

12              So, not to belabor the point, so you're

13         saying I'm not going to talk about the Bar

14         grievances because I don't want to implicate myself

15         in using a Bar grievance to gain a litigation

16         advantage?

17              Because it sounds to me that that's exactly

18         what you all have done by filing Bar grievances

19         against opposing counsel during ongoing litigation,

20         raising frivolous claims that we have somehow

21         violated our Bar rules by filing pleadings with the

22         Court in discovery.

23              So it seems that if you're saying I don't

24         want to answer those questions because they would

25         inculpate me in violating the Florida Bar Rules.

```
 1              I mean, I don't know, that's up to you.  But
 2         clearly that decision, in our view, was
 3         inappropriate and makes the handling of this case
 4         in a civil and professional manner impossible
 5         without having a special master appointed, in
 6         addition to your willful destruction of evidence
 7         and failure to substantively respond to our
 8         discovery requests.
 9              MR. ZERMAY:  Mr. Reynal, I believe you
10         mischaracterized what Mr. Larosiere and I said.
11              Madam Court Reporter, can you please read
12         back what I said prior to Mr. Reynal's colloquy.
13              THE STENOGRAPHER:  You'll have to give me a
14         minute to find it, please.
15              MR. ZERMAY:  Thank you.
16              MR. REYNAL:  Do you think this is really
17         necessary, Mr. Zermay, for purposes of you all
18         saying that you're opposed to my motion?
19              (Portions were read back.)
20              MR. ZERMAY:  Okay.  I think we can move on.
21         It's all right.  I don't believe that was the exact
22         phrase I was referring that to, but we have it on
23         the record.
24              MR. REYNAL:  I agree.
25              MR. DEPURY:  If I may.  The way -- as I
```

1    understood my colleagues, they were arguing and I

2    would agree that it's improper to attempt to bring

3    up any Bar grievance inside of the litigation.

4    That is, to use your phase, Mr. Reynal, it's extra.

5    And if you're arguing that a special master would

6    have some sort of jurisdiction over a Bar issue, I

7    would disagree.

8        Further, I would think that it's wholly

9    improper to bring it up inside of this litigation.

10    If it happened, if the Bar complaint was levied

11    against you, then that's for you to work out with

12    the Bar.

13        And so I find it shocking, frankly, to state

14    that the -- that my client should have to pay for a

15    special master that you desire because of a Bar

16    issue levied against you.  If that's your position,

17    I would ask that you clarify that, please.

18        MR. REYNAL:  So, I can say that,

19    unfortunately, Mr. Lettman is tied to Mr. Larosiere

20    and his clients.  I know Mr. Lettman, himself, has

21    not filed a Bar complaint against me, but

22    Mr. Larosiere and his clients have filed no less

23    than five Bar complaints throughout the course of

24    this litigation.

25        And that type of behavior is the behavior

```
 1        that the Court should be able to take into account

 2        in deciding whether a special master is

 3        appropriate, especially when taken in conjunction

 4        with the destruction of evidence and the failure to

 5        substantively respond to discovery.

 6            So, I agree, Mr. Depury, you have not filed a

 7        Bar complaint against me nor has your client,

 8        sorry -- and your client is not Mr. Lettman; your

 9        client is Mr. Holladay, I apologize -- nor has

10        Mr. Holladay.

11            But Mr. Lettman, Mr. Elik, Mr. Larosiere seem

12        to find it amusing in their spare time to file Bar

13        complaints against me and Mr. Gingras.  And that, I

14        don't think, is in keeping with the fine traditions

15        of the Bar.  I don't think it's civil behavior.  I

16        don't think it's appropriate, and it stands in the

17        way of us being able to work collaboratively in

18        this case.

19            So I apologize if you are being brought along

20        for the ride, but I don't think that there's a way

21        to have a special master that isn't going to

22        oversee everything.

23            MR. DEPURY:  I would disagree, and I feel

24        like you're couching the argument, because that's

25        what you led off with, the Bar issues, and those
```

1        are, unfortunately, between you and the Bar.  A

2        special master has no jurisdiction over the Florida

3        Bar, nor does the judge.  The only thing the judge

4        can do is refer someone to the Bar and not rule on

5        it.

6              And I'm involved in a case in Hillsborough

7        County right now where the other side has had

8        several Bar complaints filed against her, not by my

9        client or myself, but I understand from other

10       parties that she keeps bringing these things up in

11       a court of law in the other cases.

12             And I've been warned about this particular

13       person and in that -- yeah, I've seen why people

14       are filing Bar complaints against her. I haven't

15       done it.  I don't intend to.  But I certainly see

16       why people are doing it.

17             My point being is that she keeps bringing

18       this up.  In that area of law, there's only three

19       judges in that area of law in Hillsborough, and

20       they're all well aware that she likes to bring

21       these grievances up.  Frankly, it's making my job

22       easier because she's losing credibility.

23             So I would agree with my colleagues that this

24       is not a proper venue to -- it's not proper to ask

25       the plaintiffs to spend money on a special master

1          because of that issue.

2               As far as the other issues, I would like for

3          you to go into more detail about those as far as

4          the destruction of property or destruction of

5          evidence that you keep referencing, please.

6               MR. REYNAL:  It sounds to me like everybody

7          is opposed to the appointment of a special master

8          and that you would like to hear more about

9          conferencing on the issue of spoliation.  So I will

10         turn that over to Mr. Flores.

11              MR. FLORES:  Ms. Smith, can you still hear us

12         okay?

13              THE STENOGRAPHER:  Yes, sir.

14              MR. FLORES:  Thank you.

15              This is Chad Flores.  My conference item is a

16         motion to have the Court issue an order that

17         delivers two forms of relatively simple relief.

18         The motion is to set a briefing schedule and to

19         have an evidentiary hearing on the question of

20         whether Defense Distributed is entitled to relief

21         under Federal Rule of Civil Procedure 37(e).

22              The object is to make sure that everyone is

23         fairly noticed of what exactly the issues are and

24         we have -- we endeavor to give the Court a preview

25         of that and want everyone to be able to file full

```
 1        length briefs rather than the mere 500-word short

 2        form motions.

 3             The request is based on what I have shown

 4        everyone already with an introduction to the issues

 5        about the duty to preserve and when our side --

 6        when Defense Distributed that arose and evidence

 7        that electronic information is gone and that we

 8        need to get to the bottom of that and figure out

 9        what the remedy is.

10             So the motion now doesn't request sanctions.

11        What we're asking for is a briefing schedule and an

12        evidentiary hearing.

13             For particularity about some of the

14        spoliation issue you can look to the Rocket.Chat,

15        the website at chat.deterrencedispensed.com which

16        has been the subject of discovery.

17             And you can also look, for example, at

18        Mr. Elik's deletion of a Reddit account.  That is

19        sworn to by his own discovery responses.

20             We expect there to be some dispute between

21        the parties about what was deleted or what was

22        allowed to be deleted and when that happened and

23        why it happened.  And our view is that those

24        disputes don't need to be resolved now for this

25        motion.
```

```
 1              This motion just wants a briefing schedule

 2         and an evidentiary hearing to figure that out.

 3         So that's what we are going to put before the

 4         Court, and we'd like to know if that's an agreeable

 5         order for the briefing schedule and the hearing or

 6         if there's disagreement.

 7              MR. ZERMAY:  So I'll take the first questions

 8         from our side.  So I read the screen shots of the

 9         motion you emailed to us before the conference and

10         I have a question about the factual basis that

11         you're relying upon to ask the Court to set

12         extensive briefing and hold an evidentiary hearing

13         on this matter.

14              The text report file, for example, I'm not

15         quite sure looking at the face of that document

16         where you're getting that data from, and nor do I

17         know who drafted the report and it doesn't

18         delineate how those numbers were reached.

19              And so if you can speak to that a little,

20         that might help clarify why you're asking for what

21         is, in affect, discovery on discovery, which is a

22         sub meta issue in this litigation.

23              MR. FLORES:  Okay.  So, that goes to one of

24         the two exemplified reasons.  The second one is the

25         easier one.  Right.
```

1          We have Elik swearing in a discovery

2     response, signed also by his attorney, that says he

3     deleted his Reddit account and he removed certain

4     posts from Twitter.

5          As a matter of fact, in the case, ESI is

6     gone, and there's a reasonable dispute about why

7     that happened and there's a reasonable dispute

8     about perhaps the existence of a duty to -- a duty

9     to preserve at that point, but I think that you all

10    are fairly informed about that basis.

11         The other basis is the Rocket.Chat and that

12    is backed by a declaration that we'll have prepared

13    and filed that we'll specify the particular beta

14    rooms that were observed in existence and that are

15    now gone.

16         I don't think it's necessary for us to

17    granulate exactly what that is, but I'm happy to

18    give you now some exemplary rooms that were deleted

19    in the view of our declarant.

20         MR. LAROSIERE:  If I may get ahead of you a

21    little bit, might save some time.  Mr. Flores, I'm

22    sorry for interrupting.

23         MR. FLORES:  Well, I don't know what you're

24    going to say, but go ahead.

25         MR. LAROSIERE:  So, we've read this report,

1          and as you know, my client served upon you

2          discovery requesting all documents that evidenced

3          your spoliation claim.  And you mentioned in what

4          you just said, Rocket.Chat, Twitter, and Reddit.

5               The interesting thing that I notice is we

6          haven't gotten any specific requests about this

7          information.

8               And, additionally, in your response to our

9          request for the basis of your spoliation claim, you

10         provided the contents of the Reddit account and the

11         tweets.

12              The only other thing that was provided was

13         this unsigned doc text file that simply asserts X

14         number of messages were deleted.  I don't think

15         that's articulating a factual basis to the extent

16         we can even properly confer about the allegation

17         much less fully brief.

18              And if it's my understanding that you have

19         more information, I wonder why it wasn't provided

20         in discovery when we were trying to get ahead of

21         this issue to begin with, if you will.

22              MR. FLORES:  I don't know that text file

23         you're referring to, but I don't intend to submit

24         that as the basis for the motion.  We have work

25         product and are in the process of preparing the

 1          motion and are not obligated to disclose to you our

 2          work product as we prepare a motion.

 3              I'm happy to give you all some more specific

 4          information.  I do understand and our position is

 5          that the materials at issue were requested in

 6          discovery already.  And if they weren't, you can

 7          oppose on that ground.  It's fine.  I just want to

 8          be able to brief it and have a hearing.

 9              And so the position is that, for example,

10          instead of doing this in 500 words, we be allowed

11          to file standard briefs, whatever the standard

12          length is, you know, summary judgment style length

13          briefs in whatever length the Court deems

14          appropriate to actually supply those details and go

15          from there.

16              MR. LAROSIERE:  I think Mr. Zermay is going

17          to say something, but I would just like to point

18          out, Mr. Flores, I don't want to belabor the point,

19          but in response to that request for production for

20          those documents underlying the spoliation claim

21          and -- I would just like to observe that your

22          client has been speaking about spoliation since the

23          beginning of this lawsuit while constantly refusing

24          to articulate any factual basis.

25              You didn't assert a work product objection in

1          response to that request for production.  And so

2          that's very concerning to me that -- I would also

3          point out that a couple of weeks ago we had

4          another, a global conference, where your side

5          brought up very few issues.

6               You did bring up a spoliation issue and when

7          we asked about the factual basis, when we asked

8          about who had deleted what, why they should have

9          known it was part of et cetera, et cetera,

10         basically the elements of what you're asserting,

11         you asserted that you don't need to explain your

12         motion.  I would just like to resist that.

13              I think it's the purpose of meet-and-confer

14         for us to understand one another's positions and

15         then be able to resolve it between us without

16         involving the Court.  And I'm just a little

17         concerned that you're refusing to articulate the

18         factual basis much less how it's a rule violation.

19         I understand -- you -- I'll step aside and let Zach

20         talk now.

21              MR. REYNAL:  Before you get started, Zach,

22         it's now the second time that you have referred to

23         our meet-and-confer as being some kind of a global,

24         our meet-and-confer of last week as being some kind

25         of a global discussion.

 1              Before that, I disagree with that

 2         characterization wholeheartedly.  The

 3         meet-and-confer we had last week was limited in

 4         scope to your motion to compel, which you have now

 5         filed related to Mr. Wilson and Defense

 6         Distributed's responses.  So it was by no means a

 7         global meet-and-confer.

 8              And my recollection is that during our

 9         meeting we even discussed the fact that Defense

10         Distributed had, in fact, concerns about your

11         discovery and would bring those up at the

12         appropriate time.

13              So, I just want, since we have Ms. Smith

14         keeping a record here, I don't want there to be any

15         confusion about the nature of the meet-and-confer

16         that we had last week which was not global in any

17         sense of the word.

18              MR. LAROSIERE:  Mr. Reynal, thank you for

19         limiting that.  And I will also, just to echo your

20         point, you never indicated that there were no

21         issues, in fact, just to show I think what you said

22         and this is not a quote, I'm not -- there's no

23         evidentiary value, was that you weren't filing --

24         contemplating filing a motion, but were still

25         reviewing.

1          You said nothing at that meet-and-confer to

2     suggest that you were never going to take an

3     adverse position.  The reason I use the word

4     'global' is because that was how you had referred

5     to it in response to our request for

6     meet-and-confer.

7          But we don't need to litigate the contents of

8     the emails, we have the contents of the emails, but

9     I'd just say, yes, I understand and appreciate your

10    limitation and it's fully respected.

11         Mr. Zermay.

12         MR. ZERMAY:  Okay.  So, the second issue or

13    more appropriately stated question I have about

14    your correspondence regarding your request for

15    briefing is your assertions as to the plaintiff and

16    counter-defendants' status as, I believe the term

17    used in the communication is administrators or

18    admins of the Rocket.Chat.

19         And there are some sweeping assertions made

20    as to administrative powers, duties, abilities,

21    privileges, of that nature, that relate to

22    allegations regarding duties to preserve

23    electronically stored information.

24         I'm wondering what is the factual basis for

25    those assertions that a person that has the title

```
 1        of admin or administrator of a Rocket.Chat has the
 2        ability to preserve, maintain, or has control over
 3        those, or, sorry, that electronically stored
 4        information.
 5            MR. FLORES:  Well, the factual basis comes
 6        from, I think, publically available information
 7        about the nature of the Rocket.Chat platform and
 8        how it operates.  Our motion will supply some
 9        evidence about that.  And if you all want to
10        disagree in your response to the motion, that's
11        fine.
12            The question is just whether there's enough
13        here to warrant more than 500 words on the
14        question.  And we submit the answer is yes because
15        of the sweeping nature of the discovery responses
16        that say in their own terms, people hold, quote,
17        administrative privileges for the website, unquote,
18        without qualification.  So it's broad on that side.
19            And because the authorities we cite, like the
20        one you've seen already, don't do the kind of
21        factual parsing that you're requiring us to do.
22        But that's going to be the basis for the motion, so
23        you all know.  It will involve things like common
24        levels of administrator control, abilities to
25        delete messages, to control what users can do,
```

 1      those varieties of facts.

 2          If you all want to oppose in your 500 words

 3      and say it doesn't work like that, or if you want

 4      to oppose this motion and say we haven't proven the

 5      nature of the, you know, website at issue

 6      sufficiently enough to warrant more briefing,

 7      that's okay.  I understand.  You can oppose if you

 8      want.

 9          But I've given you almost a new final version

10      of the motion to show you exactly what we're

11      asserting.  And I will tell you that we will supply

12      to the Court, as the local rules require, the

13      discovery requests and responses that are pertinent

14      so it can read them.  So that will be part of the

15      basis, as well.

16          All I need is a position on them, a motion

17      for a briefing schedule, for the full briefs, and

18      an evidentiary hearing.  It sounds like everyone is

19      opposed.

20          MR. ZERMAY:  I guess one follow-up question.

21      Wouldn't in the course of a reasonable inquiry

22      prior to attempting to set extensive briefing on a

23      meta-discovery on discovery issue include

24      propounding a written interrogatory about the

25      administrative privileges that the targets of the

1      motion maintained before putting the issue before

2      the Court?

3          MR. FLORES:  Our position is, no, that's not

4      required and that we propounded sufficient requests

5      already.

6          We, for example, asked about any records that

7      Mr. Elik had regarding deletions or alterations and

8      he said he had none.  So, I don't think we have to

9      do that and I think we -- that's our position.

10     MR. LAROSIERE:  So, I guess I would also just

11     ask, for one, I resist that characterization and

12     I'd refer you to Elik's discovery responses, but I

13     would ask, have you attempted to engage in any

14     informal attempts to resolve this?  Have you

15     emailed any of us asking for clarifying information

16     before this?

17     MR. FLORES:  I haven't.  We issued

18     interrogatories that make the matter pretty clear.

19       If you all are now saying that you have

20     records that, for example, Mr. Elik swore not to

21     have, that would be a rather surprising revelation

22     that I don't think the rules require us to

23     contemplate and ask about.

24       But the answer is, no, I didn't call

25     separately from the conferrals that we've had.

1    We've given you the information that we had in the

2    last conference and in this conference with

3    particularity, specified the sources of the ESI

4    question.

5        I have, with particularity, identified the

6    dates at which we think the duty to preserve

7    evidence has arisen.  And I've identified a

8    relatively low ask that we just brief it like one

9    would brief any other standard major motion in the

10   case, which doesn't burden folks that much.  That's

11   our position.

12       MR. LAROSIERE:  The question is why we're

13   involving the Court, I think.  And I would like to,

14   just because you said you didn't have it, this was

15   response to request for production 12 to Defense

16   Distributed, this was the question of the

17   documentary evidence of forced spoliation for which

18   you did not assert any such objection of work

19   product.

20       There is a -- in addition to the materials

21   which are in your possession and is not an

22   appropriate target of spoliation, there is a report

23   on thegatalogchat.deterrencedispensed.com.txt,

24   which indicates it was prepared August 17, 2025.

25       And it asserts, again, as Mr. Zermay pointed

1     out, that 26,000 messages were deleted.  The screen

2     shot of your motion asserts that 71,000 messages

3     were deleted.  I guess aside from flighting that

4     concern immediately as to why we don't understand

5     that, can you tell us who prepared the report on

6     thegatalogchat.deterrencedispensed.com.txt?

7         MR. FLORES:  Mr. Larosiere, I'm done

8     conferring on this.  We've given you enough detail,

9     and I really don't think there's anything more to

10    tell about this motion.  If you want to oppose and

11    say we didn't confer sufficiently by telling you

12    who the declarant is, go ahead.

13        MR. LAROSIERE:  I mean, you're asking for full

14    briefing, Mr. Flores, and I'm not one to oppose

15    full briefing, but we have to know what we're

16    briefing.

17         And you've provided in your signed responses

18    to request for production several images which are

19    clearly in your possession and report on

20    thegatalogchat.deterrencedispensed.com.txt prepared

21    August 17, 2025, which appears to be the basis of

22    your contention, and -- or at least a substantial

23    part of it.  And it's concerning that we aren't

24    being allowed to even understand where this came

25    from.

1          Do you understand my position?  If we're to

2     brief this, shouldn't we be able to explore it.

3          MR. FLORES:  Sure.  Yeah.  You can explore it

4     all you want in 500 words in opposition.  That's

5     great.

6          MR. LAROSIERE:  I'm a little surprised, but I

7     understand you don't want to talk about this

8     anymore, but I'm just surprised you won't tell us

9     the source of the --

10         MR. FLORES:  I have conferral fatigue, guys, I

11    really do.  I think the motion would stand on its

12    own with just the Reddit issue.

13         MR. LAROSIERE:  Where you have the Reddit

14    posts.

15         MR. FLORES:  No.  The question is whether the

16    party complied with their obligations.  And that, I

17    think, merits exploration.  We can also talk about

18    harm, but the first side also matters.  So that's

19    our position.

20         MR. LAROSIERE:  I don't think those are the

21    elements of the issue and we need to cover them.  I

22    just don't feel that we would be prepared to fully

23    brief this, like even in 500 words, it's not very

24    satisfying to the Court to say -- throw up our

25    hands and say, I don't know what he's talking

1    about.

2         MR. FLORES:  Okay.  I understand your

3    position.  I'm not --

4         MR. LAROSIERE:  I would just like to point out

5    one small thing.

6         I'm so sorry, Madam Court Reporter, for

7    talking over him.

8         I'm just very confused because you referred

9    to the allegations in the complaint when you first

10   wanted to meet and confer about the issue of

11   spoliation, and in the allegations of your

12   complaint you allege that the primary component of

13   materials that were deleted were deleted before you

14   sent a litigation hold notice by over a week.

15        And then on top of that, I'm even more

16   confused because the litigation hold notice was not

17   sent to everyone you appear to allege to be

18   involved.

19        And, additionally, the litigation hold notice

20   considered only the copyright action.  So this is

21   just very hard to understand how, for example,

22   jen.ghostgunner spaceprivateer junkversion2, would

23   be, you know, something that one of my clients

24   should have preserved.  Do you understand?  We're

25   very confused.

1          MR. FLORES:  I have articulated the basis for

2     our motion by showing you the motion we're going to

3     file.  If you think that doesn't suffice, you can

4     say you're opposed and then oppose the motion.

5     That's all we're really here to do.

6          MR. LAROSIERE:  I don't know if we've fully

7     satisfied our conferral obligations, but I feel

8     we're at an impasse as to whether we are.  So, is

9     that all the subjects you have.

10          MR. FLORES:  Yes.

11          MR. DEPURY:  If I may, briefly, I think we're

12     trying to ask the same very obvious questions that

13     the Court is going to ask.  For instance, who is

14     the author of that document?

15          But if I can backtrack, briefly, Mr. Reynal

16     started this with, we had three items, one being

17     this was about appointing a special master.

18          Then, two, he went to the destruction of

19     evidence, which we're now calling spoliation,

20     appropriately calling spoliation.  Then the Google

21     reviews, and he's also throwing in the Bar issue.

22          When we got past, when I asked questions

23     about the special master and if this was whether, I

24     didn't use the word retribution, but it's starting

25     to seem that way, for the Bar issue, when I asked

1          to go further he passed it along to you,

2          Mr. Flores, then your opening statement was

3          effectively, here's the issues as we see them,

4          spoliation, and then you said, but we're not going

5          to settle any of that today.

6               So this is -- to me, that states this is

7          truly just about whether or not we're opposed to

8          your motion because you want to get the motion

9          forward in order to get the special master

10         appointed, which in turn is simply litigation in my

11         pocket, for lack of a better term.

12              Am I -- I know you're not going to agree with

13         that point, as I see it, but am I correct in that

14         that is how things went, were articulated here,

15         that Mr. Reynal had those issues.  When I asked him

16         to move forward and discuss the spoliation, you

17         started that and you addressed it by saying, and

18         we're not going to resolve it here today, we just

19         want to find out if we're going to go forward with

20         this motion.  Is that correct?

21              MR. REYNAL:  So, Mr. Depury, I think that and

22         maybe there was some confusion as to our -- our

23         conferencing.  I thought it was clear, but these

24         are two separate issues.

25              One is a motion to appoint a receiver, and

1       one is the spoliation issue.  There's a little --

2            MR. DEPURY:  I'm sorry.  You said receiver.

3       Did you mean special master?

4            MR. REYNAL:  Special master, yes.  Special

5       master.

6            There's a little bit of overlap in the sense

7       that we feel that the spoliation issue supports the

8       larger motion or the collateral motion to appoint a

9       special master, but they're two different motions.

10      When you were --

11           MR. DEPURY:  I agree.

12           MR. REYNAL:  So when you were talking to me

13      and you were seeking more detail on the spoliation

14      I handed it over because I -- I thought you wanted

15      to hear about that and that we were done talking

16      about the special master, that you all were opposed

17      on grounds of either disproportionate financial

18      burden as well, I am sure, differences related to

19      whether, you know, these grievances, as been filed,

20      as a form of retaliation in order to gain some kind

21      of tactical advantage.

22           And I'm sure you're opposed to, you know, the

23      idea of spoliation, and I'm sure you suggest that

24      your answers to discovery were fulsome and well

25      within the rules.

1           So I thought that we were done conferring on

2      the special master, and that's why I handed it over

3      to Mr. Flores so that he could conference with you

4      all on the separate motion related to the

5      spoliation issue.

6           So, hopefully that helps clear up the board

7      and what's on the board.  These are two separate

8      requests.

9           MR. DEPURY:  But it doesn't really clear it

10     up because as you characterize it as they're

11     somewhat -- there's some overlay.  I would say that

12     they're so intertwined that there is nothing but

13     overlay because you're using the failure to be able

14     to work through this in this meet-and-confer as

15     your -- part of your basis for a special master.

16          And I believe your true basis for a special

17     master is simply to punish our clients.  And I

18     don't know that the Court will appoint one, whether

19     they do or not, but I feel that you are one

20     thousand percent ready to go forward and try to get

21     a special master no matter -- even if we could

22     figure these things out today, that just seems to

23     be the case.

24          And that's why the question I was asking, I

25     understand there's two separate motions, but the

1        question I was asking is, when you did turn it over

2        to Mr. Flores he said in basically his brief

3        opening, we're not going to be able to resolve this

4        today so we're really just getting to how well are

5        we going to be able to argue the motion.  That's

6        what I'm -- that's as I understand it.

7            MR. FLORES:  And, Mr. Depury, our motion does

8        not seek an award of sanctions.  The motion is for

9        a briefing schedule and a hearing because local

10        rules say that discovery disputes have to start

11        first with a short form motion, and so this is our

12        short form that says in 500 words, we believe

13        there's enough of an issue to warrant full briefs.

14            We're not in this motion seeking an order

15        about whether sanctions should be imposed or not.

16        The only relief we're asking for is an order that

17        sets a briefing schedule and an evidentiary

18        hearing.

19            MR. DEPURY:  And there's no ulterior motive

20        on your part at all to encourage the Court with

21        this motion to appoint a special master.

22            MR. FLORES:  No, that's not a motive.  I

23        mean --

24            MR. DEPURY:  Okay.

25            MR. FLORES:  -- if our discussion reveals

 1        that, like, the website at issue is technical and

 2        is a complicated topic that may -- you may argue on

 3        the other motion something about that, but this

 4        motion is about exactly what it says it is.  I

 5        don't know how rare it is but we've literally shown

 6        you the motion that we're going to file.

 7             I just need to know if you're opposed to the

 8        request for a briefing schedule and a hearing date,

 9        and that people are saying they don't think that's

10        warranted because we haven't given enough detail,

11        and I hear that, and we still will submit the

12        motion this way.  So we would mark you as opposed.

13             I'm happy for you to explain to the Court

14        that our motion should be denied because you think

15        that we should first have, for example, given you a

16        granular, you know, more  granular version of our

17        argument.  I understand that.

18             MR. LAROSIERE:  Mr. Flores, thank you so much

19        for that.  Can I -- can I just make sure that I'm

20        right about this, the screen shots of the motion

21        that you included for the briefing schedule, do you

22        have those?

23             MR. FLORES:  Yeah.

24             MR. LAROSIERE:  Simply a yes or no question.

25        Do those discuss the appointment of a special

1          master?

2               MR. FLORES:  The last sentence says that we

3          should have a hearing and it can include a special

4          master, if need be.  If that is a sticking point,

5          I'll pull it out because --

6               MR. LAROSIERE:  I was just asking -- no.  I

7          was asking a simple question, Mr. Flores.  I just

8          wanted to make sure I was right in that, you know,

9          the second motion, right, the briefing schedule

10         motion that you circulated a draft of, did

11         reference a special master.  I was just making sure

12         I had that right.

13              MR. FLORES:  Correct.  It referenced it, but

14         the relief does not seek that.

15              MR. LAROSIERE:  Understood.

16              I think -- so, you can put my clients as

17         opposed to both relief.  We feel that this is

18         really actually one motion that we feel that this

19         is in response to the Court  indicating that it

20         would consider appointing a special master, what we

21         feel is urging us to engage fully and discharge our

22         obligations under discovery.

23              We feel that this is your side attempting to

24         force the issue of a special master.  So my opposal

25         is on the record.  Zach?

```
 1            MR. ZERMAY:  Yes.  I echo what Mr. Larosiere
 2      said on behalf of my client.
 3            MR. DEPURY:  Agreed.  We feel this is an
 4      unnecessary step in its attempt to drive up the
 5      litigation costs when we would be able to resolve
 6      this.
 7            MR. LAROSIERE:  Okay.  So, I think we can move
 8      on.  So thank you, Mr. Flores.  Thank you,
 9      Mr. Reynal for presenting your points.
10            Of course, we have two minor points that we
11      would like to bring up.  The first is your -- your
12      designation of responsive materials in Mr. Wilson's
13      response to -- Cody Wilson, Mr. Cody Wilson's
14      response to Mr. Elik's request for production.
15            You've designated certain materials as
16      confidential, attorneys eyes only.  And we -- these
17      are summary of findings which, of course, we won't
18      read the contents of governing interpretations of
19      ITAR and EAR, which were provided to your client
20      and Corporate Compliance and Ethics programs, et
21      cetera.
22            I think that fairly describes all of these
23      files, and we don't feel that these are the
24      extremely sensitive items that the protective order
25      contemplates being classified as attorneys eyes
```

```
 1           only documents.
 2                So we would seek to challenge these
 3           designations so that these documents can be, of
 4           course, not publically disseminated.  We have no
 5           intention of doing such, but used in dispositive
 6           filings.
 7                MR. REYNAL:  So, just so that I can -- well,
 8           first, let me ask, when you -- what is your working
 9           definition of what should be classified as
10           confidential, attorneys eyes only?
11                MR. LAROSIERE:  So this is extremely
12           sensitive information is what the agreed order,
13           because remember we're operating under an agreed
14           order.
15                MR. REYNAL:  So to the extent that these
16           documents -- if your requested relief is simply to
17           be able to use these documents in dispositive
18           filings, but to otherwise maintain the other
19           protections in the protective order, other than
20           filing them under seal, we would have no
21           opposition.
22                MR. LAROSIERE:  So you have no opposition to
23           us filing these, just to be a hundred percent
24           clear, filing these documents in the public docket.
25                MR. REYNAL:  Under seal.
```

```
 1              MR. LAROSIERE:  Okay.  So, no, that's the
 2       whole point.
 3              MR. REYNAL:  Okay.  Understood.
 4              We -- no.  We would object to that, these
 5       are, you know, important proprietary internal
 6       documents that lay out how Defense Distributed and
 7       DEFCAD does business, and they are of great value
 8       to my client.
 9              And their free dissemination to -- in the
10       public domain would absolutely cause my client
11       irreparable harm.  And so in that sense.  They are
12       confidential.
13              I'm, you know, willing to work with you guys
14       in terms of what kind of protections you guys think
15       would be appropriate, and I'd be happy to review
16       them with my client and see if they fit that and
17       modify the protective order as to these documents
18       specifically if you suggest what modifications you
19       would like to see, but they are important.  They
20       are confidential.  That's our position.
21              MR. LAROSIERE:  So just to make it clear,
22       these are predominantly, some are prepared by
23       attorneys, right, so I understand that there's an
24       inherent, you know, issue there, fully appreciated.
25              But these really deal with interpretations of
```

1          ITAR and EAR, which are the regulatory networks

2          that you allege counter-defendants violated.

3               And it's our position that the

4          interpretations that your client was provided in

5          these completely disprove the claims that your

6          client is bringing, or at least undermines Rule 11

7          compliance issue.

8               And so that's -- just so you know, that's

9          kind of where we're going with this, is that

10         there's nothing, you know, there's no financial

11         information, this is all about how your client

12         interprets the final rules as they apply here.

13              So that's -- we're just not sure -- again,

14         how about this, we're not going to do any motion

15         practice on this right now.  Let's continue to

16         meet-and-confer informally and see if we can

17         resolve this, maybe to some documents and not

18         others.

19              How does that sound, Mr. Reynal.

20              MR. REYNAL:  Sounds fine to me,

21         Mr. Larosiere.

22              MR. LAROSIERE:  Okay.  So, let's move on to

23         the final point that we have is, and, again, I'm

24         not sure that we need to confer with you on this,

25         but we're going to anyway.  Your client has taken

1          more -- no, actually, one second.

2              MR. ZERMAY:  Okay.  Well, I guess the one

3          agenda item remaining is just an issue stemming

4          from the defendants' publication of more

5          copyrighted materials belonging to the plaintiff,

6          in particular referring to the 10/22 unrelated

7          documentation which is much like the other files

8          that were published and taken without permission

9          contains 3-D models, documents and images, and we

10         plan on bringing that to the Court's attention in

11         another notice.  So, that's the final agenda item

12         that plaintiff has on the docket.

13             And, again, we are not sure if we are

14         specifically required under the rules to confer

15         about that, but in an abundance of caution and the

16         spirit of good faith we're bringing it to you,

17         Counsel, for defendants attention prior to

18         notifying the Court.

19             MR. REYNAL:  I guess my only question is, is

20         there any part -- are you guys going to amend your

21         petition?  Is there any particular relief that you

22         would like our position on, or are you just

23         notifying us?

24             MR. ZERMAY:  Just a notification at the

25         moment.

```
 1              MR. REYNAL:  Okay.  So noted.

 2              MR. ZERMAY:  Okay.  Well, for the sake of

 3         good order, is there anything else that anybody

 4         wishes to discuss prior to termination of this

 5         conferral?

 6              MR. REYNAL:  Nothing from Mr. Reynal.

 7              MR. LAROSIERE:  Nothing from Larosiere or his

 8         clients.

 9              MR. DEPURY:  Nothing on my side.

10              MR. FLORES:  Thank you, Ms. Smith, for your

11         professionalism.  We appreciate that.

12              MR. LAROSIERE:  Thank you, Ms. Smith.

13              THE STENOGRAPHER:  Yes, sir.  Thank you,

14         guys.

15              MR. ZERMAY:  Thank you very much.

16              MR. REYNAL:  Thank you, Madam Smith.  Do you

17         need anything from us before he terminates,

18         Madam Smith?

19              THE STENOGRAPHER:  I do not.  I have

20         everybody's name, and I'll look you up on the Bar

21         to get your information.

22              MR. REYNAL:  I'm admitted pro hac vice, and

23         so is Mr. Flores.  If you would like to reach me,

24         the email is areynal, a-r-e-y-n-a-l, @frlaw.us.

25         Phone number, 713-228-5900.
```

1              THE STENOGRAPHER:  Great.  Thank you.

2              MR. REYNAL:  Thank you, Ms. Smith.  Good bye.

3              (Proceedings were concluded at 2:25 p.m.)

C E R T I F I C A T E

STATE OF FLORIDA

COUNTY OF ORANGE


    I, Elizabeth Anne Smith, Court Reporter, do hereby
certify that I was authorized to and did report the
foregoing proceedings, and that the transcript, pages 3
through 45, is a true and correct record of my
stenographic notes.

    I further certify that I am not a relative, employee,
attorney or counsel of any of the parties, nor relative or
employee of such attorney or counsel, nor financially
interested in the foregoing action.

    Dated this 17th day of September, 2025, Volusia
County, Florida.



_____
Elizabeth Anne Smith
Stenographer

**'global'** - 23:4
**10/22** - 42:6
**11** - 41:6
**12** - 27:15
**17** - 27:24; 28:21
**20** - 5:16
**2025** - 27:24; 28:21
**26,000** - 28:1
**2:25** - 44:3
**3-D** - 42:9
**30** - 5:16
**37(e)** - 15:21
**40** - 5:16
**500** - 20:10; 24:13; 25:2; 29:4, 23; 35:12
**500-word** - 16:1
**71,000** - 28:2
**713-228-5900** - 43:25
**abilities** - 23:20; 24:24
**ability** - 24:2
**able** - 13:1, 17; 15:25; 20:8; 21:15; 29:2; 34:13; 35:3, 5; 38:5; 39:17
**absolutely** - 40:10
**abundance** - 42:15
**account** - 13:1; 16:18; 18:3; 19:10
**action** - 30:20
**acts** - 8:5
**addition** - 11:6; 27:20
**additionally** - 5:22; 6:19; 19:8; 30:19
**address** - 4:13
**addressed** - 6:10; 32:17
**admin** - 24:1
**administrative** - 23:20; 24:17; 25:25
**administrator** - 24:1, 24
**administrators** - 23:17
**admins** - 23:18
**admit** - 10:4
**admitted** - 43:22
**advantage** - 6:22; 9:9, 24; 10:16; 33:21
**adverse** - 23:3
**affect** - 8:6; 17:21
**afford** - 6:18
**agenda** - 42:3, 11
**agree** - 7:8; 11:24; 12:2; 13:6; 14:23; 32:12; 33:11
**agreeable** - 17:4
**agreed** - 4:14; 6:4; 39:12
**Agreed** - 38:3
**agreement** - 5:12; 7:1
**ahead** - 18:20; 19:20
**allegation** - 19:16
**allegations** - 4:1; 23:22; 30:9, 11
**allege** - 30:12, 17; 41:2
**allowed** - 16:22; 20:10;

28:24
**almost** - 25:9
**alterations** - 26:7
**amend** - 42:20
**amusing** - 13:12
**another's** - 21:14
**answer** - 7:12; 10:24; 24:14; 26:24
**answers** - 33:24
**apologize** - 13:9, 19
**appear** - 30:17
**apply** - 41:12
**appoint** - 3:3; 4:14; 5:2; 32:25; 33:8; 34:18; 35:21
**appointed** - 5:12, 15; 11:5; 32:10
**appointing** - 31:17; 37:20
**appointment** - 5:5; 6:13; 7:6, 14; 15:7; 36:25
**apportion** - 7:19
**appreciate** - 23:9; 43:11
**appreciated** - 40:24
**appropriate** - 5:8; 13:3, 16; 20:14; 22:12; 27:22; 40:15
**appropriately** - 23:13; 31:20
**area** - 14:18
**areas** - 6:4
**areynal** - 43:24
**AREYNAL** - 43:24
**arguably** - 5:19
**argue** - 35:5; 36:2
**arguing** - 12:1, 5
**argument** - 8:8; 13:24; 36:17
**arisen** - 27:7
**arose** - 16:6
**articulate** - 20:24; 21:17
**articulated** - 31:1; 32:14
**articulating** - 19:15
**aside** - 21:19; 28:3
**assert** - 20:25; 27:18
**asserted** - 21:11
**asserting** - 21:10; 25:11
**assertions** - 4:8; 9:5; 23:15, 19, 25
**asserts** - 19:13; 27:25; 28:2
**attempt** - 12:2; 38:4
**attempted** - 26:13
**attempting** - 25:22; 27:23
**attempts** - 26:14
**attention** - 3:16; 42:10, 17
**attorney** - 9:12; 18:2
**attorneys** - 38:16, 25; 39:10; 40:23
**August** - 27:24; 28:21

**author** - 31:14
**authorities** - 24:19
**available** - 24:6
**award** - 35:8
**aware** - 9:11; 14:20
**backed** - 18:12
**backtrack** - 31:15
**bad** - 3:10
**Bar** - 7:24; 8:14; 9:6, 18, 23; 10:13, 15, 18, 21; 12:3, 6, 10, 12, 15, 23; 13:7, 12, 15, 25; 14:1, 4, 8, 14; 31:21, 25; 43:20
**based** - 16:3
**basis** - 3:20; 4:1, 7; 17:10; 18:10; 19:9, 15, 24; 20:24; 21:7, 18; 23:24; 24:5, 22; 25:15; 28:21; 31:1; 34:15
**bear** - 7:6, 8, 15, 21; 8:10
**begin** - 19:21
**beginning** - 20:23
**behalf** - 38:2
**behavior** - 12:25; 13:15
**belabor** - 10:12; 20:18
**belonging** - 42:5
**beta** - 18:13
**better** - 32:11
**between** - 14:1; 16:20; 21:15
**bit** - 3:23; 4:3, 6; 8:4; 18:21; 33:6
**board** - 34:6
**bottom** - 16:8
**brief** - 19:17; 20:8; 27:8; 29:2, 23; 35:2
**briefing** - 4:5; 15:18; 16:11; 17:1, 5, 12; 23:15; 25:6, 17, 22; 28:14-16; 35:9, 17; 36:8, 21; 37:9
**briefly** - 31:11, 15
**briefs** - 16:1; 20:11, 13; 25:17; 35:13
**bring** - 3:16; 12:2, 9; 14:20; 21:6; 22:11; 38:11
**bringing** - 14:10, 17; 41:6; 42:10, 16
**broad** - 24:18
**brought** - 13:19; 21:5
**burden** - 27:10; 33:18
**business** - 40:7
**bye** - 44:2
**calculated** - 6:21
**cancel** - 10:7
**cannot** - 6:18; 9:23
**case** - 3:4; 5:8, 14, 18, 21; 6:17; 7:18; 8:2; 11:3; 13:18; 14:6; 18:5; 27:10; 34:23
**cases** - 14:11
**caused** - 7:23
**caution** - 42:15
**certain** - 18:3; 38:15

**certainly** - 14:15
**Chad Flores** - 15:15
**challenge** - 39:2
**characterization** - 22:2; 26:11
**characterize** - 34:10
**chat. deterrencedispensed. com** - 16:15
**circulated** - 37:10
**circumstances** - 5:14
**cite** - 24:19
**Civil** - 15:21
**civil** - 11:4; 13:15
**claim** - 19:3, 9; 20:20
**claims** - 10:20; 41:5
**clarify** - 12:17; 17:20
**clarifying** - 26:15
**classified** - 38:25; 39:9
**clear** - 4:25; 9:4; 26:18; 32:23; 34:6, 9; 39:24; 40:21
**clearly** - 9:8; 11:2; 28:19
**client** - 7:1; 8:8, 11; 12:14; 13:7-9; 14:9; 19:1; 20:22; 38:2, 19; 40:8, 10, 16; 41:4, 6, 11, 25
**client's** - 6:14; 8:13
**clients** - 6:7; 8:2; 12:20, 22; 30:23; 34:17; 37:16; 43:8
**closely** - 4:3
**Cody** - 38:13
**Cody Wilson** - 38:13
**collaboratively** - 13:17
**collateral** - 33:8
**colleagues** - 12:1; 14:23
**colloquy** - 11:12
**common** - 24:23
**communication** - 23:17
**complaint** - 12:10, 21; 13:7; 30:9, 12
**complaints** - 12:23; 13:13; 14:8, 14
**completely** - 6:16; 41:5
**compliance** - 41:7
**complicated** - 36:2
**complied** - 29:16
**component** - 30:12
**computer** - 9:1
**concern** - 28:4
**concerned** - 21:17
**concerning** - 5:17; 21:2; 28:23
**concerns** - 22:10
**concluded** - 44:3
**conduct** - 7:23; 8:1; 9:11
**confer** - 4:18; 19:16; 21:13, 23-24; 22:3, 7, 15; 23:1, 6; 28:11; 30:10; 34:14; 41:16, 24; 42:14
**conference** - 3:15, 24;

**certainly** 4:20; 5:6, 25; 15:15; 17:9; 21:4; 27:2; 34:3
**conferencing** - 15:9; 32:23
**conferral** - 29:10; 31:7; 43:5
**conferrals** - 26:25
**conferring** - 28:8; 34:1
**confidential** - 38:16; 39:10; 40:12, 20
**confused** - 4:19; 6:6, 8; 30:8, 16, 25
**confusion** - 22:15; 32:22
**conjunction** - 13:3
**consider** - 37:20
**considered** - 9:7; 30:20
**constantly** - 20:23
**contains** - 42:9
**contemplate** - 26:23
**contemplates** - 38:25
**contemplating** - 22:24
**contention** - 28:22
**contents** - 19:10; 23:7; 38:18
**continue** - 41:15
**control** - 24:2, 24
**copyright** - 30:20
**copyrighted** - 42:5
**Corporate Compliance and Ethics** - 38:20
**correct** - 32:13
**Correct** - 37:13
**correspondence** - 23:14
**cost** - 6:19; 7:6, 16, 18, 22; 8:11
**costs** - 7:8; 38:5
**couching** - 13:24
**Counsel** - 42:17
**counsel** - 3:7; 9:20; 10:19; 23:16; 41:2
**counter** - 6:15; 8:10; 23:16; 41:2
**counter-defendants** - 6:15; 8:10; 41:2
**counter-defendants'** - 23:16
**couple** - 21:3
**course** - 12:23; 25:21; 38:10, 17; 39:4
**court** - 14:11
**Court's** - 7:19; 42:10
**cover** - 29:21
**crazy** - 10:6
**credibility** - 14:22
**data** - 17:16
**date** - 36:8
**dates** - 27:6
**deal** - 40:25
**decide** - 8:22
**deciding** - 13:2

**decision** - 8:13; 11:2
**declarant** - 18:19; 28:12
**declaration** - 18:12
**declining** - 9:5, 9
**deems** - 20:13
**DEFCAD** - 40:7
**defendants** - 6:15; 7:15; 8:10; 41:2; 42:17
**defendants'** - 23:16; 42:4
**defense** - 3:6
**Defense Distributed** - 15:20; 16:6; 22:9; 27:15; 40:6
**Defense Distributed's** - 22:5
**definition** - 39:9
**delete** - 24:25
**deleted** - 16:21; 18:3, 18; 19:14; 21:8; 28:1, 3; 30:13
**deletion** - 16:18
**deletions** - 26:7
**deliberately** - 9:17
**delineate** - 17:18
**delivers** - 15:17
**denied** - 36:14
**denying** - 7:25
**describes** - 38:22
**designated** - 38:15
**designation** - 38:12
**designations** - 39:3
**desire** - 12:15
**desk** - 10:3
**destroy** - 8:14
**destruction** - 3:7, 21; 8:2; 11:6; 13:4; 15:4; 31:18
**detail** - 8:5; 15:3; 28:8; 33:13; 36:10
**details** - 20:14
**differences** - 33:18
**different** - 33:9
**differential** - 6:21
**disagree** - 12:7; 13:23; 22:1; 24:10
**disagreement** - 17:6
**disagreements** - 5:23
**discharge** - 37:21
**disclose** - 20:1
**discovery** - 3:4, 8; 5:17, 20, 23; 6:2; 8:15; 10:22; 11:8; 13:5; 16:16, 19; 17:21; 18:1; 19:2, 20; 20:6; 22:11; 24:15; 25:13, 23; 26:12; 33:24; 35:10; 37:22
**discretion** - 7:20
**discuss** - 4:22; 5:3; 9:10; 32:16; 36:25; 43:4
**discussed** - 22:9
**discussion** - 21:25; 35:25
**dispositive** - 6:17; 39:5,

17
**disproportionate** - 33:17
**disprove** - 41:5
**dispute** - 16:20; 18:6
**disputes** - 16:24; 35:10
**disseminated** - 39:4
**dissemination** - 40:9
**doc** - 19:13
**docket** - 39:24; 42:12
**document** - 17:15; 31:14
**documentary** - 27:17
**documentation** - 42:7
**documents** - 3:7; 19:2; 20:20; 39:1, 3, 16-17, 24; 40:6, 17; 41:17; 42:9
**domain** - 40:10
**done** - 4:10; 10:18; 14:15; 28:7; 33:15; 34:1
**down** - 4:14
**draft** - 37:10
**drafted** - 17:17
**drive** - 38:4
**during** - 10:19; 22:8
**duties** - 23:20, 22
**duty** - 16:5; 18:8; 27:6
**EAR** - 38:19; 41:1
**easier** - 14:22; 17:25
**echo** - 6:25; 9:19; 22:19; 38:1
**effectively** - 32:3
**either** - 33:17
**electronic** - 16:7
**electronically** - 23:23; 24:3
**elements** - 21:10; 29:21
**Elik** - 13:11; 18:1
**Elik's** - 26:12
**email** - 4:24; 9:1; 43:24
**emailed** - 17:9; 26:15
**emails** - 5:24; 23:8
**encourage** - 35:20
**end** - 7:18
**endeavor** - 15:24
**engage** - 26:13; 37:21
**entire** - 7:16, 22
**entitled** - 15:20
**ESI** - 18:5; 27:3
**especially** - 9:10; 13:3
**et cetera** - 8:3; 21:9; 38:20
**Ethics** - 9:16
**evasive** - 3:7
**evidence** - 3:22; 8:3, 14; 11:6; 13:4; 15:5; 16:6; 24:9; 27:7, 17; 31:19
**evidenced** - 19:2
**evidentiary** - 4:5; 15:19; 16:12; 17:2, 12; 22:23; 25:18; 35:17
**exact** - 11:21

**exactly** - 10:17; 15:23; 18:17; 25:10; 36:4
**example** - 7:5; 16:17; 17:14; 20:9; 26:6, 20; 30:21; 36:15
**exchanged** - 4:21
**exchanges** - 4:24
**Excuse** - 4:9
**exemplary** - 18:18
**exemplified** - 17:24
**existence** - 18:8, 14
**existent** - 3:8
**expect** - 34:6
**explain** - 21:11; 36:13
**exploration** - 29:17
**explore** - 29:2
**extensive** - 17:12; 25:22
**extent** - 9:10; 19:15; 39:15
**extra** - 7:10; 19:15
**extreme** - 5:13
**extremely** - 38:24; 39:11
**eyes** - 38:16, 25; 39:10
**face** - 17:15
**fact** - 18:5; 22:9
**factors** - 8:16
**facts** - 25:1
**factual** - 3:20; 4:1; 17:10; 19:15; 20:24; 21:7, 18; 23:24; 24:5, 21
**failure** - 11:7; 13:4; 34:13
**fairly** - 15:23; 18:10; 38:22
**faith** - 42:16
**far** - 15:2
**fatigue** - 29:10
**Federal** - 15:21
**feelings** - 6:12
**fellow** - 9:20
**few** - 21:5
**figure** - 16:8; 17:2; 34:22
**file** - 3:14, 21; 8:14; 9:14; 13:12; 15:25; 17:14; 19:13, 22; 20:11; 31:3; 36:6
**filed** - 12:21; 13:6; 14:8; 18:13; 22:5; 33:19
**files** - 38:23; 42:7
**filing** - 3:6; 10:18, 21; 14:14; 22:23; 39:20, 23
**filings** - 39:6, 18
**final** - 25:9; 41:12, 23; 42:11
**financial** - 6:21; 8:7; 33:17; 41:10
**findings** - 38:17
**fine** - 13:14; 20:7; 24:11; 41:20
**first** - 3:18; 5:2; 17:7; 29:18; 30:9; 35:11; 36:15; 38:11; 39:8
**fit** - 40:16

**five** - 8:14; 12:23
**flighting** - 28:3
**Flores** - 36:18; 43:23
**FLORES** - 15:11; 26:3; 29:10; 35:22; 37:2
**Florida** - 9:7, 12, 14, 16
**Florida Bar** - 10:25; 14:2
**Florida Rules of Professional Conduct** - 9:22
**focus** - 5:2
**folks** - 27:10
**follow** - 25:20
**follow-up** - 25:20
**force** - 37:24
**forced** - 8:10; 27:17
**form** - 7:24; 16:2; 33:20; 35:11
**formal** - 4:23
**forms** - 15:17
**forward** - 32:9, 16, 19; 34:20
**framing** - 4:20
**Frankly** - 14:21
**frankly** - 12:13
**free** - 40:9
**frivolous** - 10:20
**frlaw.us** - 43:24
**full** - 15:25; 25:17; 28:13, 15; 35:13
**fully** - 19:17; 23:10; 29:22; 31:6; 37:21; 40:24
**fulsome** - 33:24
**gain** - 9:8; 10:15; 33:20
**Gary** - 6:11; 7:11; 8:23; 10:1, 9
**given** - 4:20; 25:9; 27:1; 28:8; 36:10, 15
**global** - 5:25; 21:4, 23, 25; 22:7, 16
**go ahead** - 18:24; 28:12
**Google** - 3:11; 8:1; 31:20
**governing** - 38:18
**granular** - 36:16
**granulate** - 18:17
**great** - 29:5; 40:7
**Great** - 44:1
**grievance** - 9:15; 10:15; 12:3
**grievances** - 3:6; 7:25; 8:14; 9:6, 18; 10:14, 18; 14:21; 33:19
**ground** - 20:7
**grounds** - 33:17
**group** - 7:13
**guess** - 3:19; 4:3; 5:1, 18; 6:6, 24; 7:25; 25:20; 26:10; 28:3; 42:2, 19
**guys** - 9:1; 29:10; 40:13; 42:20; 43:14
**handed** - 33:14; 34:2

**handling** - 11:3
**hands** - 29:25
**happy** - 18:17; 20:3; 36:13; 40:15
**hard** - 30:21
**harm** - 29:18; 40:11
**hear** - 4:1, 6; 10:3, 9; 15:8, 11; 33:15; 36:11
**hearing** - 4:6; 15:19; 16:12; 17:2, 5, 12; 20:8; 25:18; 35:9, 18; 36:8; 37:3
**help** - 17:20
**helps** - 34:6
**Hillsborough** - 14:19
**Hillsborough County** - 14:6
**himself** - 12:20
**hold** - 17:12; 24:16; 30:14, 16, 19
**Holladay** - 13:9
**hopefully** - 34:6
**hundred** - 39:23
**I don't know** - 9:19; 11:1; 18:23; 19:22; 29:25; 31:6; 34:17; 36:4
**idea** - 33:23
**identified** - 27:5, 7
**images** - 28:18; 42:9
**immediately** - 6:4; 28:4
**impasse** - 31:8
**implicate** - 10:14
**important** - 40:5, 19
**imposed** - 35:15
**impossible** - 11:4
**improper** - 9:8; 12:2, 9
**in fact** - 4:7; 22:10, 21
**inappropriate** - 11:3
**include** - 5:15; 25:23; 37:3
**included** - 3:9; 36:21
**incompleteness** - 6:9
**inculpate** - 10:25
**indicated** - 22:20
**indicates** - 27:24
**Indicating** - 10:10
**indicating** - 37:19
**informal** - 26:14
**informally** - 41:16
**information** - 16:7; 19:7, 19; 20:4; 23:23; 24:4, 6; 26:15; 27:1; 39:12; 41:11; 43:21
**informed** - 18:10
**inherent** - 40:24
**inquiry** - 25:21
**inside** - 12:3, 9
**instance** - 31:13
**instead** - 20:10
**intend** - 3:14, 21; 14:15; 19:23
**intended** - 5:25

**intention** - 39:5
**interested** - 3:25; 4:6
**interesting** - 19:5
**interject** - 4:16
**internal** - 40:5
**interpretations** - 38:18; 40:25; 41:4
**interprets** - 41:12
**interrogatories** - 26:18
**interrogatory** - 25:24
**interrupting** - 18:22
**intertwined** - 34:12
**introduction** - 16:4
**invocations** - 9:18
**involve** - 24:23
**involved** - 14:6; 30:18
**involvement** - 6:17
**involving** - 21:16; 27:13
**irreparable** - 40:11
**Is that correct** - 32:20
**issue** - 12:6, 16; 15:1, 9, 16; 16:14; 17:22; 19:21; 20:5; 21:6; 23:12; 25:5, 23; 26:1; 29:12, 21; 30:10; 31:21, 25; 33:1, 7; 34:5; 35:13; 36:1; 37:24; 40:24; 41:7; 42:3
**issued** - 26:17
**issues** - 3:25; 5:17; 6:1, 9; 13:25; 15:2, 23; 16:4; 21:5; 22:21; 32:3, 15, 24
**ITAR** - 38:19; 41:1
**item** - 15:15; 42:3, 11
**items** - 31:16; 38:24
**jen.ghostgunner** - 30:22
**job** - 14:21
**judge** - 14:3
**Judge** - 18:22
**judges** - 14:19
**junkversion2** - 30:22
**jurisdiction** - 12:6; 14:2
**keep** - 15:5
**keeping** - 13:14; 22:14
**keeps** - 14:10, 17
**kind** - 21:23; 24:20; 33:20; 40:14; 41:9
**known** - 21:9
**lack** - 32:11
**larger** - 33:8
**LAROSIERE** - 4:16; 18:25; 28:13; 41:22; 43:7
**Larosiere** - 28:7; 43:7
**last** - 5:25; 21:24; 22:3, 16; 27:2; 37:2
**law** - 5:14; 14:11, 18
**lawsuit** - 10:7
**lay** - 40:6
**least** - 4:19; 6:7; 28:22; 41:6
**leaving** - 3:10

**led** - 13:25
**length** - 16:1; 20:12
**less** - 12:22; 19:17; 21:18
**levels** - 24:24
**levied** - 12:10, 16
**limitation** - 13:10
**limited** - 22:3
**limiting** - 22:19
**literally** - 36:5
**litigate** - 23:7
**litigation** - 6:22; 7:23; 9:9, 23; 10:15, 19; 12:3, 9, 24; 17:22; 30:14, 16, 19; 32:10; 38:5
**local** - 25:12; 35:9
**log** - 10:1
**look** - 16:14, 17; 43:20
**looking** - 4:3; 17:15
**losing** - 14:22
**low** - 27:8
**Madam Court Reporter** - 11:11; 30:6
**Madam Smith** - 43:16, 18
**maintain** - 24:2; 39:18
**maintained** - 26:1
**major** - 27:9
**manner** - 11:4
**mark** - 36:12
**masters** - 5:11, 14
**materials** - 20:5; 27:20; 30:13; 38:12, 15; 42:5
**matter** - 17:13; 18:5; 26:18; 34:21
**matters** - 4:18; 29:18
**mean** - 9:25; 11:1; 28:13; 33:3; 35:23
**means** - 22:6
**meet** - 21:13, 23-24; 22:3, 7, 15; 23:1, 6; 30:10; 34:14; 41:16
**meet-and-confer** - 21:13, 23-24; 22:3, 7, 15; 23:1, 6; 34:14; 41:16
**meeting** - 22:9
**mentioned** - 3:2; 19:3
**mere** - 16:1
**merits** - 29:17
**messages** - 19:14; 24:25; 28:1
**meta** - 17:22; 25:23
**meta-discovery** - 25:23
**might** - 9:3; 17:20; 18:21
**minor** - 6:4; 38:10
**minute** - 11:14
**mischaracterized** - 11:10
**models** - 42:9
**modifications** - 40:18
**modify** - 40:17
**moment** - 4:17; 42:25

**money** - 14:25
**Moreover** - 7:3
**motion** - 3:3, 9, 14, 21; 4:2, 4, 12, 14; 5:2; 11:18; 15:16, 18; 16:10, 25; 17:1, 9; 19:24; 20:1; 21:12; 22:24; 24:8, 10, 22; 25:4, 10, 16; 26:1; 27:9; 28:2, 10; 29:11; 31:2, 4; 32:8, 20, 25; 33:8; 34:4; 35:5, 7-8, 11, 14, 21; 36:3, 6, 12, 14, 20; 37:9, 18; 41:14
**motion to compel** - 22:4
**motion to dismiss** - 6:16
**motions** - 5:17, 20; 16:2; 33:9; 34:25
**motive** - 35:19, 22
**move** - 11:20; 32:16; 38:7; 41:22
**Mr. Depury** - 3:18; 8:25; 10:2, 7, 10; 11:25; 13:6, 23; 31:11; 32:21; 33:2, 11; 34:9; 35:7, 19, 24; 38:3; 43:9
**Mr. Elik** - 26:7, 20
**Mr. Elik's** - 16:18; 38:14
**Mr. Flores** - 3:23; 4:13; 15:10, 14; 17:23; 18:21, 23; 19:22; 20:18; 24:5; 26:17; 28:7, 14; 29:3, 15; 30:2; 31:1, 10; 32:2; 34:3; 35:2, 7, 25; 36:23; 37:7, 13; 38:8; 43:10
**Mr. Gingras** - 13:13
**Mr. Holladay** - 13:13
**Mr. Larosiere** - 3:10, 12; 5:10; 6:25; 7:2; 8:9, 23; 9:3; 11:10; 12:19, 22; 13:11; 18:20; 26:18; 26:10; 27:12; 29:6, 13, 20; 30:4; 31:6; 36:18, 24; 37:6, 15; 38:1, 7; 39:11, 22; 40:1, 21; 41:3; 43:17
**Mr. Lettman** - 12:19; 13:8, 11
**Mr. Reynal** - 3:2, 13; 4:9, 12, 16; 5:1, 4; 7:10; 8:13, 21; 9:4, 25; 10:4, 8, 11; 11:16, 24; 12:4, 18; 15:6; 21:21; 31:15; 32:15; 33:12; 38:9; 39:7, 15; 40:3; 41:19; 43:1, 6, 16, 22; 44:2
**Mr. Reynal's** - 11:12
**Mr. Zermay** - 3:19; 4:10; 6:25; 8:20; 9:21; 11:9, 15, 17, 20; 17:7; 20:16; 23:11; 25:20; 27:25; 38:1; 42:2, 24; 43:2, 15
**Ms. Smith** - 15:11; 22:13; 43:10, 12; 44:2
**mute** - 10:5
**name** - 43:20
**nature** - 7:4; 22:15; 23:21;

24:7, 15; 25:5
**necessary** - 3:5; 11:17; 18:16
**necessitated** - 7:14
**necessity** - 7:23
**need** - 16:8, 24; 21:11; 23:7; 25:16; 29:21; 36:7; 37:4; 41:24; 43:17
**networks** - 41:1
**never** - 22:20; 23:2
**new** - 25:9
**non** - 3:8; 6:8
**non-existent** - 3:8
**non-responsive** - 6:8
**none** - 26:8
**noted** - 43:1
**nothing** - 23:1; 34:12; 41:10
**Nothing** - 43:6, 9
**notice** - 19:5; 30:14, 16, 19; 42:11
**noticed** - 15:23
**notification** - 42:24
**notifying** - 42:18, 23
**number** - 19:14
**numbers** - 17:18
**object** - 15:22; 40:4
**objection** - 5:15; 20:25; 27:18
**obligated** - 9:14; 20:1
**obligations** - 3:15; 6:2; 29:16; 31:7; 37:22
**observation** - 9:16
**observe** - 20:21
**observed** - 18:14
**obvious** - 31:12
**office** - 9:2
**offline** - 8:25
**often** - 5:11
**One** - 32:25
**one** - 5:6, 9, 15, 19; 6:17, 23; 9:4, 11, 22; 10:7; 17:23-25; 21:14; 24:20; 25:20; 26:11; 27:8; 28:14; 30:5, 23; 31:16; 33:1; 34:18; 37:18; 42:1
**one-way** - 9:11
**ongoing** - 10:19
**opening** - 32:2; 35:3
**operates** - 24:8
**operating** - 39:13
**opinions** - 9:17
**opposal** - 37:24
**oppose** - 20:7; 25:2, 4, 7; 28:10, 14; 31:4
**opposed** - 4:14; 8:18; 11:18; 15:7; 25:19; 31:4; 32:7; 33:16, 22; 36:7, 12; 37:17
**opposing** - 3:5; 10:19
**opposition** - 29:4; 39:21

**order** - 7:4; 15:16; 17:5; 32:9; 33:20; 35:14, 16; 39:12, 14; 43:3
**otherwise** - 39:18
**out-of-state** - 6:15
**overlap** - 33:6
**overlay** - 34:11, 13
**oversee** - 3:4; 13:22
**own** - 16:19; 24:16; 29:12
**parsing** - 24:21
**part** - 21:9; 25:14; 28:23; 34:15; 35:20; 42:20
**participate** - 10:8
**particular** - 7:3; 14:12; 18:13; 42:6, 21
**particularity** - 16:13; 27:3, 5
**parties** - 14:10; 16:21
**party** - 6:22; 7:7; 29:16
**party's** - 5:15
**passed** - 32:1
**past** - 31:22
**pay** - 6:18; 12:14
**pending** - 5:16; 6:15
**people** - 14:13, 16; 24:16; 36:9
**percent** - 34:20; 39:23
**perhaps** - 5:19; 18:8
**permission** - 42:8
**person** - 14:13; 23:25
**pertinent** - 25:13
**petition** - 42:21
**phase** - 12:4
**Phone number** - 43:25
**phrase** - 11:22
**placing** - 8:17
**plaintiff** - 23:15; 42:5, 12
**plaintiffs** - 14:25
**plaintiffs/counter** - 7:15
**plaintiffs/counter-defendants** - 7:15
**plan** - 42:10
**platform** - 24:7
**pleadings** - 10:21
**pocket** - 32:11
**point** - 3:8; 4:21; 6:9, 12; 9:12; 10:12; 14:17; 18:9; 20:17; 21:3; 22:20; 30:4; 32:13; 37:4; 40:2; 41:23
**pointed** - 27:25
**points** - 38:9
**Portions** - 11:19
**position** - 3:4, 16; 4:23; 5:5; 6:24; 12:16; 20:4, 9; 23:3; 25:16; 26:3, 9; 27:11; 29:1, 19; 30:3; 40:20; 41:3; 42:22
**positions** - 4:25; 6:3, 14, 22; 21:14
**possession** - 27:21; 28:19

**posts** - 18:4; 29:14
**powers** - 23:20
**practice** - 41:15
**predominantly** - 40:22
**prepare** - 20:2
**prepared** - 18:12; 27:24; 28:5, 20; 29:22; 40:22
**preparing** - 19:25
**presenting** - 38:9
**preserve** - 16:5; 18:9; 23:22; 24:2; 27:6
**preserved** - 30:24
**pretty** - 4:25; 26:18
**preview** - 15:24
**primary** - 30:12
**privileges** - 23:21; 24:17; 25:25
**pro hac vice** - 43:22
**Procedure** - 15:21
**Proceedings** - 44:3
**proceedings** - 9:23
**process** - 19:25
**production** - 20:19; 21:1; 27:15; 28:18; 38:14
**professional** - 11:4
**professionalism** - 43:11
**programs** - 38:20
**proper** - 14:24
**properly** - 19:16
**property** - 15:4
**propose** - 7:5
**proposing** - 7:9
**propounded** - 26:4
**propounding** - 25:24
**proprietary** - 40:5
**protections** - 39:19; 40:14
**protective order** - 38:24; 39:19; 40:17
**proven** - 25:4
**provided** - 19:10, 12, 19; 28:17; 38:19; 41:4
**public** - 39:24; 40:10
**publically** - 24:6; 39:4
**publication** - 42:4
**published** - 42:8
**pull** - 37:5
**punish** - 34:17
**purpose** - 21:13
**purposes** - 3:14; 5:6; 11:17
**put** - 4:13; 17:3; 37:16
**putting** - 26:1
**qualification** - 24:18
**questions** - 3:20; 10:24; 17:7; 31:12, 22
**quickly** - 7:12
**quite** - 17:15
**quote** - 22:22; 24:16
**raised** - 6:2

**raising** - 10:20
**rare** - 36:5
**rather** - 16:1; 26:21
**reach** - 43:23
**reached** - 17:18
**read** - 11:11, 19; 17:8; 18:25; 25:14; 38:18
**ready** - 34:20
**really** - 11:16; 28:9; 29:11; 31:5; 34:9; 35:4; 37:18; 40:25
**reason** - 9:19; 23:3
**reasonable** - 18:6; 25:21
**reasons** - 17:24
**receiver** - 32:25; 33:2
**recollection** - 22:8
**record** - 11:23; 22:14; 37:25
**records** - 26:6, 20
**Reddit** - 16:18; 18:3; 19:4, 10; 29:12
**refer** - 14:4; 26:12
**reference** - 37:11
**referenced** - 37:13
**referencing** - 15:5
**referred** - 21:22; 23:4; 30:8
**referring** - 11:22; 19:23; 42:6
**reflect** - 5:24
**refusing** - 20:23; 21:17
**regarding** - 3:20; 23:14, 22; 26:7
**regulatory** - 41:1
**relate** - 23:21
**related** - 3:21; 22:5; 33:18; 34:4
**relatively** - 15:17; 27:8
**relief** - 4:4; 8:19; 15:17, 20; 35:16; 37:14, 17; 39:16; 42:21
**relying** - 17:11
**remaining** - 42:3
**remedy** - 6:5; 16:9
**remember** - 5:24; 39:13
**removed** - 18:3
**repeated** - 9:18
**repeatedly** - 6:3
**report** - 17:14, 17; 18:25; 27:22; 28:5, 19
**request** - 7:4; 16:3, 10; 19:9; 20:19; 21:1; 23:5, 14; 27:15; 28:18; 36:8; 38:14
**requested** - 4:4; 8:19; 20:5; 39:16
**requesting** - 7:7; 8:12; 19:2
**requests** - 8:16; 11:8; 19:6; 25:13; 26:4; 34:8
**require** - 25:12; 26:22
**required** - 26:4; 42:14

**requiring** - 24:21
**resist** - 21:12; 26:11
**resolve** - 21:15; 26:14; 32:18; 35:3; 38:5; 41:17
**resolved** - 16:24
**respected** - 23:10
**respond** - 8:15; 9:5; 11:1; 13:5
**responding** - 9:17
**response** - 18:2; 19:8; 20:19; 21:1; 23:5; 24:10; 27:15; 37:19; 38:13
**responses** - 3:8; 6:2; 16:19; 22:6; 24:15; 25:13; 26:12; 28:17
**responsive** - 6:8; 38:12
**retaliation** - 33:20
**retribution** - 31:24
**reveals** - 35:25
**revelation** - 26:21
**review** - 40:15
**reviewing** - 22:25
**reviews** - 3:11; 8:1; 31:21
**Reynal** - 5:10; 11:9; 22:18
**REYNAL** - 32:21; 33:4; 39:25; 41:20; 42:19
**ride** - 13:20
**Rocket.Chat** - 3:25; 16:14; 18:11; 19:4; 23:18; 24:1, 7
**rooms** - 18:14, 18
**Rule** - 15:21; 41:6
**rule** - 6:23; 9:13; 14:4; 21:18
**Rules** - 9:7; 10:25
**rules** - 9:14; 10:21; 25:12; 26:22; 33:25; 35:10; 41:12; 42:14
**sake** - 43:2
**sanction** - 8:7
**sanctions** - 16:10; 35:8, 15
**satisfied** - 31:7
**satisfying** - 3:15; 29:24
**save** - 18:21
**saw** - 3:22
**schedule** - 15:18; 16:11; 17:1, 5; 25:17; 35:9, 17; 36:8, 21; 37:9
**scope** - 22:4
**screen** - 3:22; 28:1
**screen shots** - 17:8; 36:20
**seal** - 39:20, 25
**second** - 17:24; 21:22; 23:12; 37:9; 42:1
**see** - 14:15; 32:3, 13; 40:16, 19; 41:16
**seek** - 35:8; 37:14; 39:2
**seeking** - 7:4; 33:13; 35:14
**seem** - 5:21; 13:11; 31:25

**sees** - 9:13
**sense** - 5:20; 22:17; 33:6; 40:11
**sensitive** - 38:24; 39:12
**sent** - 3:23; 30:14, 17
**sentence** - 37:2
**separate** - 32:24; 34:4, 7, 25
**separately** - 26:25
**serial** - 3:6
**served** - 19:1
**set** - 15:18; 17:11; 25:22
**sets** - 35:17
**settle** - 32:5
**several** - 14:8; 28:18
**shocking** - 12:13
**short** - 16:1; 35:11
**shot** - 3:22; 28:2
**show** - 22:21; 25:10
**showing** - 31:2
**shown** - 16:3; 36:5
**side** - 4:19; 14:7; 16:5; 17:8; 21:4; 24:18; 29:18; 37:23; 43:9
**side's** - 3:6; 6:1
**signed** - 18:2; 28:17
**simple** - 15:17; 37:7
**Simply** - 36:24
**simply** - 19:13; 32:10; 34:17; 39:16
**situations** - 5:16
**small** - 30:5
**someone** - 14:4
**somewhat** - 34:11
**sorry** - 4:9; 9:1; 13:8; 18:22; 24:3; 30:6; 33:2
**sort** - 9:8; 12:6
**sound** - 41:19
**sounds** - 8:18; 10:17; 15:6; 25:18
**Sounds** - 41:20
**source** - 29:9
**sources** - 27:3
**spaceprivateer** - 30:22
**spare** - 13:12
**speaking** - 20:22
**special** - 5:11, 14
**special master** - 3:3, 5; 4:15; 5:2, 5; 6:12, 18-19; 7:5, 8, 14, 22; 8:11; 11:5; 12:5, 15; 13:2, 21; 14:2, 25; 15:7; 31:17, 23; 32:9; 33:3, 9, 16; 34:2, 15-16, 21; 35:21; 36:25; 37:3, 11, 20, 24
**specific** - 8:5; 19:6; 20:3
**specifically** - 40:18; 42:14
**specified** - 27:3
**specify** - 18:13
**spend** - 14:25

**spirit** - 42:16
**split** - 7:18
**spoken** - 8:24
**spoliation** - 15:9; 16:14; 19:3, 9; 20:20, 22; 21:6; 27:17, 22; 30:11; 31:19; 32:4, 16; 33:1, 7, 13, 23; 34:5
**stand** - 29:11
**standard** - 20:11; 27:9
**stands** - 13:16
**start** - 35:10
**started** - 21:21; 31:16; 32:17
**starting** - 31:24
**state** - 6:15; 12:13
**statement** - 32:2
**states** - 32:6
**stating** - 3:24
**status** - 21:16
**stemming** - 42:3
**STENOGRAPHER** - 11:13; 15:13; 43:13, 19; 44:1
**step** - 21:19; 38:4
**sticking** - 37:4
**stored** - 23:23; 24:3
**style** - 20:12
**sub** - 17:22
**subject** - 16:16
**subjects** - 31:9
**submit** - 8:6; 19:23; 24:14; 36:11
**substantial** - 28:22
**substantive** - 5:23
**substantively** - 4:18; 8:15; 11:7; 13:5
**suffice** - 31:3
**sufficient** - 26:4
**sufficiently** - 25:6; 28:11
**suggest** - 23:2; 33:23; 40:18
**suggested** - 7:17
**summary** - 38:17
**summary judgment** - 20:12
**supply** - 20:14; 24:8; 25:11
**supports** - 33:7
**surprised** - 29:6, 8
**surprising** - 26:21
**swearing** - 18:1
**sweeping** - 23:19; 24:15
**swore** - 26:20
**sworn** - 16:19
**tactical** - 33:21
**target** - 27:22
**targets** - 25:25
**technical** - 5:20; 36:1
**term** - 23:16; 32:11
**terminates** - 43:17

**terminating** - 8:7
**termination** - 43:4
**terms** - 24:16; 40:14
**text** - 17:14; 19:13, 22
**THE** - 11:13; 15:13; 43:13, 19; 44:1
**the Court** - 3:3; 7:17; 8:6, 9, 17; 10:21; 13:1; 15:16, 24; 17:3, 11; 20:13; 21:16; 25:12; 26:2; 27:13; 29:24; 31:13; 34:18; 35:20; 36:13; 37:19; 42:18
**thegatalogchat. deterrencedispensed. com.txt** - 27:23; 28:6, 20
**thousand** - 34:20
**three** - 14:18; 31:16
**throughout** - 12:23
**throw** - 29:24
**throwing** - 31:21
**thumbs** - 10:11
**tied** - 12:19
**timing** - 4:20
**title** - 23:25
**today** - 32:5, 18; 34:22; 35:4
**top** - 30:15
**topic** - 36:2
**traditions** - 13:14
**transition** - 9:2
**true** - 34:16
**truly** - 32:7
**try** - 34:20
**trying** - 9:2, 25; 10:2; 19:20; 31:12
**turn** - 4:12; 15:10; 32:10; 35:1
**tweets** - 19:11
**Twitter** - 18:4; 19:4
**two** - 5:19; 15:17; 17:24; 31:18; 32:24; 33:9; 34:7, 25; 38:10
**type** - 5:21; 12:25
**ulterior** - 35:19
**under** - 9:14; 15:21; 37:22; 39:13, 20; 42:14
**Under** - 9:7; 39:25
**underlying** - 20:20
**undermines** - 41:6
**understood** - 12:1
**Understood** - 37:15; 40:3
**unfortunately** - 12:19; 14:1
**unnecessary** - 38:4
**unquote** - 24:17
**unrelated** - 42:6
**unsigned** - 19:13
**urging** - 37:21
**users** - 24:25
**value** - 22:23; 40:7

**varieties** - 25:1
**venue** - 14:24
**version** - 25:9; 36:16
**view** - 11:2; 16:23; 18:19
**violated** - 10:21; 41:2
**violating** - 10:25
**violation** - 6:23; 9:13; 21:18
**wants** - 7:17; 17:1
**warned** - 14:12
**warrant** - 24:13; 25:6; 35:13
**warranted** - 6:20; 36:10
**warrants** - 8:6
**website** - 16:15; 24:17; 25:5; 36:1
**week** - 21:24; 22:3, 16; 30:14
**weeks** - 21:3
**whole** - 40:2
**wholeheartedly** - 22:2
**wholly** - 12:8
**willful** - 11:6
**willing** - 40:13
**Wilson** - 22:5
**Wilson's** - 38:12
**wishes** - 43:4
**wonder** - 5:22; 19:19
**wondering** - 23:24
**word** - 22:17; 23:3; 31:24
**words** - 20:10; 24:13; 25:2; 29:4, 23; 35:12
**work product** - 19:24; 20:2, 25; 27:18
**written** - 25:24
**yourself** - 10:5
**Zach** - 6:11, 24; 21:19, 21; 37:25
**ZERMAY** - 4:11; 8:4; 23:12