Ex. G COMPOSITE DEFENDANTS' PRODUCTION

## TABLE OF CONTENTS

Responses to RFP 15: Employment of Elik...............………... G -2

Responses to RFP 16: Alleged Direction of H acking by Elik.... G -11

Responses to RFP 22: Alleged DDoS  Attacks From Iran…...... G -15

Responses to RFP 23: Alleged Attacks from Any C-Def....…… G -17

DEFENSE DISTRIBUTED'S RESPONSES TO ELIK'S
REQUEST FOR PRODUCTION 15:

SEEKING DOCUMENTS
SUPPORTING EVIDENCE OF ELIK'S EMPLOYMENT
BY DEFENSE DISTRIBUTED

# Confidentiality Agreement

This Confidentiality Agreement (the "Agreement"), effective as of 5/19/2019 (the "Effective Date"), is entered into by and between Defense Distributed, a nonprofit corporation under the laws of Texas having its principal place of business at 2320 Donley Drive Ste. C, Austin, TX 78758 ("DD"), and John Elik, an individual residing at 1446 Seiler Road, Alton IL (the "Recipient," and together with DD, the "Parties," and each, a "Party").

WHEREAS, in connection with discussions of present or future matters under existing or future business arrangements (the "Purpose"), the Recipient desires to receive certain information from DD that is non-public, confidential or proprietary in nature; and

WHEREAS, DD desires to disclose such information to the Recipient, subject to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

    1.    <u>Confidential Information</u>. Except as set forth in Section 2 below, "Confidential Information" means all non-public, confidential or proprietary information disclosed before, on, or after the Effective Date, by DD to the Recipient or its Affiliates, or to any of such Recipient's Affiliates' employees, officers, directors, partners, shareholders, agents, attorneys, accountants or advisors (collectively, "Representatives"), whether disclosed orally or disclosed or accessed in written, electronic or other form or media, and whether or not marked, designated or otherwise identified as "confidential." "Affiliate" means, with respect to any Party, any person or entity that is directly or indirectly Controlling, Controlled by or under common Control with such Party, where "Control" and derivative terms mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such person or entity, whether through the ownership of voting securities, by contract or otherwise.

    Confidential Information includes, without limitation:

    (a)    All information concerning the past, present and future business affairs of DD and its Affiliates and their customers, suppliers and other third parties, including, without limitation, finances, customer information, supplier information, products, services, organizational structure and internal practices, forecasts, sales and other financial results, records and budgets, and business, marketing, development, sales and other commercial strategies;

    (b)    unpatented inventions, ideas, methods, and discoveries, trade secrets, know-how, unpublished patent applications and other confidential intellectual property of DD and its Affiliates;

    (c)    all designs, specifications, documentation, components, source code, object code, images, icons, audiovisual components and objects, schematics, drawings, protocols, processes and other visual depictions, in whole or in part, of any of the foregoing;

    (d)    all third-party confidential information (including, without limitation, any Personal Information as defined in Section 5 below) included with, or incorporated in, any information provided by DD to the Recipient or its Representatives;

    (e)    other information that would reasonably be considered non-public, confidential or proprietary given the nature of the information and DD's business; and

    (f)    that portion of all notes, analyses, compilations, reports, forecasts, studies, samples, data, statistics, summaries, interpretations and other materials (the "Notes") prepared by or for the Recipient or its Representatives that contain, are based on, or otherwise reflect or are derived from, in whole or in part, any of the foregoing.

    2.    <u>Exclusions from Confidential Information</u>. Except as required by applicable federal, state or local law or regulation, the term "Confidential Information" as used in this Agreement shall not include information that:

EX. G - COMPOSITE DEFENDANTS' PRODUCTION I

(a)    at the time of disclosure is, or thereafter becomes, generally available to and known by the public other than as a result of, directly or indirectly, any breach of this Agreement or act or omission by the Recipient or any of its Representatives;

(b)    at the time of disclosure is, or thereafter becomes, available to the Recipient on a non-confidential basis from a third-party source, provided that such third party, is not and was not prohibited from disclosing such Confidential Information to the Recipient;

(c)    was known by or in the possession of the Recipient or its Representatives before being disclosed by or on behalf of DD pursuant to this Agreement;

(d)    was or is independently developed by the Recipient without reference to or use of, in whole or in part, any of DD's Confidential Information.

The Recipient shall have the burden of proving by clear and convincing evidence that one of the exclusions under Section 2 applies.

3.    <u>Recipient Obligations</u>. The Recipient shall:

(a)    hold any Confidential Information in the strictest confidence;

(b)    take all reasonable steps to protect and safeguard the confidentiality of all Confidential Information;

(c)    not use DD's Confidential Information, or permit it to be accessed or used, for any purpose other than the Purpose, or otherwise in any manner to DD's detriment;

(d)    not disclose any such Confidential Information to any person or entity, except to the Recipient's Representatives who: (i) need to know the Confidential Information to assist the Recipient, or act on its behalf, in relation to the Purpose; (ii) are informed in writing by the Recipient of the confidential nature of the Confidential Information; and (iii) are subject to confidentiality duties or obligations to the Recipient that are no less restrictive than the terms and conditions of this Agreement;

(e)    comply with all applicable on-site access, remote access and related security rules and procedures of DD;

(f)    immediately notify DD of any unauthorized access, disclosure, loss or misuse of Confidential Information, or other breaches of this Agreement by the Recipient or its Representatives, of which the Recipient has knowledge;

(g)    use its best efforts to immediately contain and remedy any such unauthorized access, disclosure, loss or misuse;

(h)    fully cooperate with DD in any effort undertaken by DD to enforce its rights related to any such unauthorized disclosure; and

(i)    be responsible for any breach of this Agreement caused by any of its Representatives.

4.    <u>Additional Confidentiality Obligations</u>.

(a)    Except as required by applicable federal, state or local law or regulation, the Recipient shall not, and shall not permit its Representatives to, disclose to any person: (i) that the Confidential Information has been made available to the Recipient or its Representatives, or that it has inspected any portion of the Confidential Information; (ii) that discussions or negotiations may be, or are, underway between the Parties regarding the Confidential Information or the Purpose, including the status thereof; or (iii) any terms, conditions or other arrangements that are being discussed or negotiated in relation to the Confidential Information, the Purpose or this Confidentiality Agreement, including the existence of such agreement.

Page 2 of 7

G-4

Ex. G COMPOSITE DEFENDANTS' PRODUCTION II

(b)      Except with the prior written consent of DD, neither the Recipient nor its Representatives shall contact any Representative, customer or supplier of DD with respect to the Confidential Information or the Purpose, other than Chad Flores at Beck Redden in Houston, Texas.

5.      <u>Recipient Representations, Warranties and Covenants</u>. The Recipient represents, warrants and covenants that:

(a)      it does and will comply, and will require its Representatives to comply, with all applicable federal, state and local privacy and data protection laws, regulations and directives in the maintenance, disclosure, use and disposal of all Personal Information contained in any Confidential Information that is disclosed to the Recipient or its Representatives hereunder. For purposes of this Agreement, "Personal Information" means information that: (i) relates to an individual person; and (ii) identifies or can be used to identify, locate or contact that individual alone or when combined with other personal or identifying information that is or can be associated with that specific individual;

(b)      Recipient will not transfer any Confidential Information to servers or persons located outside the United States of America.

(c)      the performance of its obligations herein does not and will not violate any other contract or obligation to which the Recipient is a party, including covenants not to compete and confidentiality agreements;

(d)      it is not legally or contractually prohibited from: (i) discussing a potential relationship with DD; (ii) receiving information about a potential relationship with DD; or (iii) entering into a principal agreement with DD;

(e)      it has implemented and will continue to use its best efforts to maintain information security protocols to secure and protect the confidentiality of all Confidential Information in the Recipient's or its Representatives' possession or control from unauthorized access, disclosure, loss or misuse;

(f)      it will, at Recipient's sole cost and expense: (i) notify all local, state and federal departments and agencies required to receive notice under applicable law as a result of unauthorized access or disclosure of Personal Information, and all persons whose Personal Information has been accessed or disclosed; and (ii) pay all associated claims and fines; and

(g)      reimburse DD for all costs and expenses incurred by DD in connection with or resulting from any unauthorized access or disclosure, including all costs of notice, remediation, claims and fines.

6.      <u>Required Disclosure</u>. Any disclosure by the Recipient or its Representatives of any of DD's Confidential Information pursuant to applicable federal, state or local law, regulation or a valid order issued by a court or governmental agency of competent jurisdiction (a "Legal Order") shall be subject to the terms of this Section. Prior to making any such disclosure, the Recipient shall provide DD with:

(a)      immediate written notice of such requirement so that DD may seek a protective order or other remedy; and

(b)      reasonable assistance in opposing such disclosure or seeking a protective order or other limitations on disclosure.

If, after providing such notice and assistance as required herein, the Recipient remains subject to a Legal Order to disclose any Confidential Information, the Recipient shall disclose, and, if applicable, shall require its Representatives or other persons to whom such Legal Order is directed to disclose, no more than that portion of the Confidential Information which, on the advice of the Recipient's legal counsel, such Legal Order specifically requires, and shall use commercially reasonable efforts to obtain assurances from the applicable court or agency that such Confidential Information will be afforded confidential treatment.

7.      <u>Return or Destruction of Confidential Information</u>. Upon the expiration or termination of this Agreement, or at DD's request at any time during the term of this Agreement, the Recipient and its Representatives shall promptly return to DD all copies, whether in written, electronic or other form or media, of DD's Confidential Information, or destroy all such copies (including those stored in electronic form on systems and data storage services

Page 3 of 7

Ex. G COMPOSITE DEFENDANTS' PRODUCTION II

provided by third parties) and certify in writing to DD that such Confidential Information has been destroyed. In addition, the Recipient shall also destroy all copies of any Notes created by the Recipient or its Representatives and certify in writing to DD that such copies have been destroyed.

8.   Term and Termination. The term of this Agreement shall commence on the Effective Date and shall expire 2 year[s] from the Effective Date, provided that either Party may terminate this Agreement at any time by providing written notice to the other Party. Notwithstanding anything to the contrary herein, each Party's rights and obligations under this Agreement shall survive the expiration or termination of this Agreement for a period of 3 years from the date of such expiration or termination, even after the return or destruction of Confidential Information by the Recipient (the "Survival Period"), provided that for any and all:

(a)   Personal Information disclosed by DD hereunder, the Survival Period shall last for the period of time required under applicable federal, state and/or local law; and

(b)   trade secrets of DD, the Survival Period shall last for as long as such Confidential Information qualifies as a trade secret under applicable federal, state and/or local law.

9.   Export Administration. U.S. export control laws and the export and import control laws of other countries may govern the use of Confidential Information, including Personal Information.  Recipient agrees to comply fully with all relevant export laws and regulations, including the U.S. Export Administration Act and Regulations, to assure that no such information or any portion thereof is exported, directly or indirectly, in violation of such laws.

10.   Indemnification. The Recipient shall defend, indemnify and hold harmless DD, its Affiliates and their respective shareholders, partners, officers, directors, employees, agents, successors and permitted assigns from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs or expenses of whatever kind, including reasonable attorneys' fees and costs, in connection with any third party claim, suit, action or proceeding arising out of or resulting from a breach of this Agreement by the Recipient or any of its Representatives.

11.   No DD Representations or Warranties. Neither DD nor any of its Representatives makes any representation or warranty, expressed or implied, as to the accuracy or completeness of the Confidential Information disclosed to the Recipient hereunder. Neither DD nor any of its Representatives shall be liable to the Recipient or any of its Representatives relating to or resulting from the Recipient's use of any of the Confidential Information or any errors therein or omissions therefrom.

12.   No Transfer of Rights, Title or Interest. DD hereby retains its entire right, title and interest, including all intellectual property rights, in and to all Confidential Information. Any disclosure of such Confidential Information hereunder shall not be construed as an assignment, grant, option, license or other transfer of any such right, title or interest whatsoever to the Recipient or any of its Representatives.

13.   No Other Obligation. The Parties agree that DD shall not be under any legal obligation of any kind whatsoever, or otherwise be obligated to disclose any Confidential Information or enter into any business or contractual relationship, investment or transaction, by virtue of this Agreement, except for the matters specifically agreed to herein. Either Party may at any time, at its sole discretion with or without cause, terminate discussions and negotiations with the other Party, in connection with the Purpose or otherwise.

14.   Remedies. The Recipient acknowledges and agrees that money damages might not be a sufficient remedy for any breach or threatened breach of this Agreement by the Recipient or its Representatives. Therefore, in addition to all other remedies available at law (which DD does not waive by the exercise of any rights hereunder), DD shall be entitled to specific performance and injunctive and other equitable relief as a remedy for any such breach or threatened breach, and the Recipient hereby waives any requirement for the securing or posting of any bond or the showing of actual monetary damages in connection with such claim, and further agrees not to oppose the granting of such relief on the basis DD has an adequate remedy at law. In the event that either Party institutes any legal suit, action or proceeding against the other Party arising out of or relating to this Agreement, the prevailing Party in the suit, action or proceeding shall be entitled to receive in addition to all other damages to which it may be entitled, the costs incurred by such Party in conducting the suit, action or proceeding, including reasonable attorneys' fees and expenses and court costs.

15.   Governing Law, Jurisdiction, and Venue. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas without giving effect to any choice or conflict of law provision

or rule that would cause the application of laws of any jurisdiction other than those of the State of Texas. Any legal suit, action or proceeding arising out of or related to this Agreement or the matters contemplated hereunder shall be instituted exclusively in the courts of the State of Texas in each case located in the city of Austin and Travis County, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding and waives any objection based on improper venue or *forum non conveniens*. Service of process, summons, notice or other document by mail to such Party's address set forth herein shall be effective service of process for any suit, action or other proceeding brought in any such court.

16.  <u>Notices</u>. All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and in English and shall be deemed to have been given:

(a)  when delivered by hand (with written confirmation of receipt);

(b)  when received by the addressee if sent by a nationally recognized overnight courier (receipt requested);

(c)  on the date sent by facsimile or e-mail (with oral or written confirmation of receipt) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or

(d)  on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.

Such communications must be sent to the respective parties at the addresses set forth on the first page of this Agreement (or to such other address that may be designated by a Party from time to time in accordance with this Section).

17.  <u>Entire Agreement</u>. This Agreement constitutes the sole and entire agreement between the Parties regarding the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, regarding such subject matter. This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each Party hereto. Each Party acknowledges that in entering into this Agreement it does not rely on any statement, representation or warranty other than those expressly set out in this Agreement.

18.  <u>Costs</u>. Except as expressly provided in this Agreement each Party shall bear and pay its own costs, fees and expenses incurred in connection with the negotiation, preparation, execution and delivery of this Agreement.

19.  <u>Severability</u>. If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

20.  <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

21.  <u>Assignment: No Third Party Rights</u>. Neither Party may assign any of its rights or delegate any of its obligations hereunder without the prior written consent of the other Party, provided that DD may assign any of its rights and delegate any of its obligations hereunder to any person or entity that acquires substantially all of DD's assets. Any purported assignment or delegation in violation of this Section shall be null and void. No assignment or delegation shall relieve the assigning or delegating Party of any of its obligations hereunder. This Agreement is for the sole benefit of the Parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer on any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

22.  <u>Waivers</u>. No waiver by any Party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the Party so waiving. No waiver by any Party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof;

nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

23.    <u>No Partnership or Agency</u>. Nothing contained in this Agreement shall be construed as creating any agency, partnership, joint venture or other form of joint enterprise, employment, or fiduciary relationship between the parties. Neither party, by virtue of this Agreement, will have any right, power, or authority to act or create an obligation, express or implied, on behalf of the other party.

24.    <u>Language</u>. If this agreement is translated into any language other than English, the English language version shall prevail.

SIGNATURE PAGE FOLLOWS

Ex. G COMPOSITE DEFENDANTS' PRODUCTION II

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the Effective Date.

Defense Distributed, a Texas corporation

By: _____
    Cody Wilson, Owner

John Elik

By: _____
Name: John Elik
Title: N/A



Ex. G COMPOSITE DEFENDANTS' PRODUCTION II

DEFENSE DISTRIBUTED'S RESPONSES TO ELIK'S
REQUEST FOR PRODUCTION 16:

SEEKING DOCUMENTS
SUPPORTING THE CONTENTION THAT ELIK "DI-
RECTED" HACKING


Generated by Gataleaks.org
File ID: GLS-8jd0l8fk0w1x229



← **Post**

**Navi of Boomhandia** ✔ @NaviGoBoom · 1h
woah

💬    🔁    ♡ 22    📊 321    🔖  ⬆️

**Anon** ✔ @n0wayyy_no · 50m
How kind

💬    🔁    ♡ 1    📊 114    🔖  ⬆️

**NightTrace** @nighttrace · 51m
Not going to lie, if I were going to be hosting files about Ghost Guns on the internet I simply don't think I would put that shit in Germany. Pretty sure they have some real fucked up laws about that.

| # | IP ADDRESS | COUNTRY | LOCATION (CITY,REGION) | ISP | ORG | ASN |
|---|------------|---------|------------------------|-----|-----|-----|
| 1 | 128.140.46.27 | Germany | Nuremberg, Bavaria | Hetzner Online GmbH | Hetzner Online GmbH | AS24940 |
| 2 | 65.109.205.112 | Finland | Helsinki, South Finland | Hetzner Online GmbH | Hetzner Online GmbH | AS24940 |
| 3 | 141.94.2.52 | France | Gravelines, Hauts-de-France | OVH SAS | OVH SAS | AS16276 |
| 4 | 158.180.57.165 | Germany | Frankfurt, Hesse | Oracle Corporation | Oracle Corporation | AS31898 |
| 5 | 65.109.192.74 | Finland | Helsinki, South Finland | Hetzner Online GmbH | Hetzner Online GmbH | AS24940 |
| 6 | 116.203.234.64 | Germany | Nuremberg, Bavaria | Hetzner Online GmbH | Hetzner Online GmbH | AS24940 |

💬    🔁    ♡ 11    📊 139    🔖  ⬆️


Generated by Gataleaks.org
File ID: GLS—8hn821d3522pi8i



 Generated by Gataleaks.org
File ID: GLS—aondxpuz16ceojz

 **jny the human** ✔
@jnyboy

I don't trust Cloudflare because they act as TLS termination to prevent DDoS, effectively becoming a man-in-the-middle, able to see all traffic and potentially service government requests for information.

So, here's the direct IPs without that anti-DDoS stuff spying on you :3



2:29 PM · Aug 14, 2024 · **5,143** Views

💬 16        ↻ 33        ♡ 250        🔖 55

Exh. G — COMPOSITE DEFENDANTS' PRODUCTION II

DEFENSE DISTRIBUTED'S RESPONSES TO ELIK'S
REQUEST FOR PRODUCTION 22:

SEEKING DOCUMENTS
SUPPORTING ALLEGED DENIAL OF SERVICE
ATTACKS OR ACCESS ATTEMPTS FROM IRA-
NIAN IP ADDRESS





DDOS attacks can be seen on the following dates:

- May 24th, 2024
    - 88% CPU usage
    - 5x normal network in bytes
    - Correlates with publication of the Black Flag White Paper. Higher levels of traffic
      continue all through the remainder of the year.
- July 25th, 2024
    - 10x the normal network in bytes
- August 29th, 2024 – August 31st, 2024
    - 88% CPU usage
    - 5x normal network in bytes

All three of these spikes required significant expenditure of time and money to restore website
functionality.

EXHIBIT G—COMPOSITE DEFENDANTS' PRODUCTION II

DEFENSE DISTRIBUTED'S RESPONSES TO ELIK'S
REQUEST FOR PRODUCTION 23:

SEEKING DOCUMENTS
SUPPORTING THE CONTENTION OF ALLEGED
DENIAL OF SERVICE ATTACKS OR ACCESS AT-
TEMPTS RELATING TO ANY COUNTERDEFEN-
DANT





DDOS attacks can be seen on the following dates:

- May 24th, 2024
    - 88% CPU usage
    - 5x normal network in bytes
    - Correlates with publication of the Black Flag White Paper. Higher levels of traffic continue all through the remainder of the year.
- July 25th, 2024
    - 10x the normal network in bytes
- August 29th, 2024 – August 31st, 2024
    - 88% CPU usage
    - 5x normal network in bytes

All three of these spikes required significant expenditure of time and money to restore website functionality.

Ex G COMPOSITE DEFENDANTS' PRODUCTION II



IP Details For: 96.35.6.0

| | |
|---|---|
| Decimal: | 1612908032 |
| Hostname: | syn-096-035-006-000.res.spectrum.com |
| ASN: | 20115 |
| ISP: | Charter Communications LLC |
| Services: | None detected |
| Country: | United States |
| State/Region: | Illinois |
| City: | Roxana |
| Latitude: | 38.8484 (38° 50′ 54.17″ N) |
| Longitude: | -90.0762 (90° 4′ 34.38″ W) |

**CLICK TO CHECK BLACKLIST STATUS**

Latitude and Longitude are often near the center of population. These values are not precise enough to be used to identify a specific address, individual, or for legal purposes. IP data from IP2Location.





Generated by Gataleaks.org
File ID: GLS-06rti08pgdl7pme





Generated by Gataleaks.org
File ID: GLS-fizr44afhwh3ov1

