## <u>AFFIDAVIT OF JOHN LETTMAN</u>

**Table of Contents**

Table of Contents ........................................................................................ 1

Reference to Tweet on October 22, 2024 ...................................................... 2

Repeated Accusation of Distributed Denial of Service (DDoS) Attacks .......................... 4

Examining Defendant's Lack of Evidence in John Elik's Request for Production to
Defense Distributed, Responses to Request 23 ............................................ 5

Examining Defendant's Lack of Evidence in John Elik's Request for Production to
Defense Distributed, Responses to Request 5 ............................................ 17

I, John Lettman, state as follows:

1.      I am John Lettman, a resident of the Commonwealth of Pennsylvania.

2.      I am a former Counterdefendant in this action.

### Reference to Tweet on October 22, 2024

3.      Counsel for Defendant has repeatedly referenced me by creating baseless insinuations concerning a social media post I authored on October 22, 2024, which                                                                    read:

*"Consider destroying or relocating anything spicy you possess if you ever made fun of a certain pedophile. He has already informed on a person in our community as retribution."*

4.      At the time of the post, I was aware of unrelated legal proceedings involving Peter Celentano, a social media user with whom I had previously interacted.

5.       Mr. Celentano was publicly charged on October 17, 2024, in United States v. Celentano, Case No. 1:24-mj-01204, in the Western District of New York, for alleged possession of a machine gun.

6.      To the best of my knowledge, Mr. Celentano expressed publicly his negative views of Defendant. Around the time those views were made, Mr. Celentano was investigated and charged. I suspected that Defendant may have used his resources to surveil Mr. Celentano as retribution for these public disagreements.

7.      My reference to "destroying or relocating anything spicy" was directed at the public and referred to firearms and firearm mechanisms.

8.      In such cases, it is often unclear whether the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) has an enforcement interest or may later change its interpretation as to whether an item is lawful to possess.

9.      In my view, well-intentioned individuals could inadvertently violate the law under these shifting or uncertain standards.

10.     My intent was to advise the public to exercise caution, particularly if they had negatively interacted with Mr. Wilson, whom I regard as petty and vindictive.

11.     My post was not aimed at any party in this litigation. It was not a "coded message," nor was it intended to encourage the destruction of evidence.

12.     The timing, five days after Mr. Celentano's public charging, makes the context clear and unrelated to this case, which began more than two months earlier.

13.     Furthermore, at the time of my post, this case remained a straightforward copyright dispute. It had not yet been transformed by Defendant's sprawling Counterclaims, which advanced numerous unsupported allegations and drew in unrelated third parties who had previously expressed public criticism of Defendant's conduct, me included.

14. If Defendant's counsel sought clarification about the meaning of the tweet, he could have inquired with my counsel before presenting further unfounded assumptions to the Court.

**Repeated Accusation of Distributed Denial of Service (DDoS) Attacks**

15. A Distributed Denial of Service (DDoS) attack is a malicious attempt to disrupt the normal functioning of a targeted computer system, service, or network by overwhelming it with a flood of Internet traffic from multiple sources, with the intention to cause the targeted system to slow down or become completely unavailable to legitimate users.

16. In Defendant's prior Counterclaims, he raises accusations that I "implement Distributed Denial of Service (DDoS) attacks against DEFCAD's servers" (Doc 40, p. 41, #139) that I had "claim[ed] credit for some of the most recent attacks" (Doc 40, p. 41, ¶142).

17. I have never engaged in any actions that could constitute a DDoS attack against any portion of DEFCAD's infrastructure.

18. I have never claimed credit for such actions.

**Examining Defendant's Lack of Evidence in John Elik's Request for Production to
Defense Distributed, Responses to Request 23**

19.    To understand the origin of Defendant's claim, John Elik's Request for
Production to Defense Distributed includes for request 23:
"*Produce forensic logs, security reports, or digital packet traces showing
alleged denial-of-service attacks or geolocation masking related to alleged
access attempts from any Counterdefendant.*"

20.    Defense Distributed produced:

1.  An image named "defcad_ddos_visualization.png" – an apparent screenshot of a server dashboard containing graphs of CPU and network utilization with additional commentary from an unknown party:





DDOS attacks can be seen on the following dates:

- May 24th, 2024
  - 88% CPU usage
  - 5x normal network in bytes
  - Correlates with publication of the Black Flag White Paper. Higher levels of traffic continue all through the remainder of the year.
- July 25th, 2024
  - 10x the normal network in bytes
- August 29th, 2024 – August 31st, 2024
  - 88% CPU usage
  - 5x normal network in bytes

All three of these spikes required significant expenditure of time and money to restore website functionality.

2. An image named "Screenshot 2025-08-20 at 2.52.03 PM.png" – an apparent
   screenshot of a video stream containing comments on an unknown website
   with two camera shots of the participants in the video stream, Mr. Larosiere
   with a "Matt" nametag and Sean Martin with a "Potentially Criminal" nametag
   ("Potentially Criminal" being the namesake of his YouTube channel):



3.  An image named "Elik_Gguns_IP.png" – an apparent screenshot of a website
    providing "IP Details For: 96.35.6.0" with information about the assumed
    Autonomous System Number (ASN), Internet Service Provider (ISP), Country,
    State, City, Latitude, and Longitude associated with the IP address listed in the
    header:



4. An                                    image                                named
"screenshot_2024_12_21_at_9_40_dn_cwg_zc_mu_r_8b4vx5k9be.48PM_ta
gged.png" – an apparent screenshot from my video submitted to the Office of
the Export Enforcement (OEE), Office of Foreign Assets Control (OFAC), and
Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) demonstrating
evidence of my concerns that a system hosted in the Islamic Republic of Iran
was          serving          DEFCAD's          website          to          the          public:

Generated by Gataleaks.org
File ID: GLS-06rti08pgdl7pme



5. An image named
"screenshot_2024_12_21_at_9_40_iih_wp_oz9_jp_fxcaig89ja.15PM_tagged.
png" – an apparent screenshot from my video submitted to the OEE, OFAC,
and ATF demonstrating evidence of my concerns that a system hosted in the
Islamic Republic of Iran was serving DEFCAD's website to the public.
Importantly, this screenshot shows me highlighting "IRAN, ISLAMIC
REPUBLIC OF" from a simple query to the Internet Assigned Numbers
Authority (IANA) as to the ownership of the computer system:



21.    The sum of the responses provided does not demonstrate that I or any other
       party to the previous Counterclaim conducted or induced DDoS attacks against
       DEFCAD infrastructure.

22.    ¶20.1 shows graphs, but for what system and whether it is relevant to
       DEFCAD's infrastructure is impossible to ascertain.

23.    The unsigned commentary from an unknown individual speculates a correlation
       to the release of Mr. Wilson's Black Flag White Paper to be responsible for the
       alleged May 24th, 2024, incident.

24.    As with any Internet content, a new, highly anticipated, or highly advertised
       release of new content could invoke interest and activity from the broader
       Internet public, leading to higher computer system loads.

25.    Defendant never dispels this rational explanation.

26.    Indeed, Mr. Wilson advertises the Black Flag White Paper in an e-mail titled,
       "The Plastikov v4 and Back Flag White Paper" sent to his mailing list *twice*, on
       May 23rd, 2024, and May 24th, 2024 (the day of the alleged DDoS attack):

| May 2024 | | |
| --- | --- | --- |
| The Plastikov v4 and Back Flag White Paper | DEFCAD <operations@defcad.com> | Fri May 24 12:34:29 2024 |
| The Plastikov v4 and Back Flag White Paper | DEFCAD <operations@defcad.com> | Thu May 23 21:22:35 2024 |

05/23/2024                                                                    Sign Up

# DEFCAD

## PLASTIKOV v4: NOW COPYRIGHT FREE



The Plastikov v4 is now on DEFCAD. The Plastikov v4 documentation and images are also available.

This file release, which I'm told is related to the AKM, is a landmark moment in the history of guncad. Now that it's outside the scope of copyright, we proudly present it to you.

Apparently a team will be showing it off at PSA's AK Masters event on June 10th. We'll see about sponsoring one of the shooters.

## A PRIMER ON COPYRIGHT AND 3D GUNS

# BLACK FLAG
# WHITE PAPER

A PRIMER ON COPYRIGHT AND 3D GUNS

12

27.    Mr. Wilson hosts a blog, named "DDLegio," which operates under Defense
Distributed branding and appears to reside on similar computer systems to
DEFCAD.

28.    On the day of the second alleged incident, July 25th, 2024, Mr. Wilson wrote a
blog post containing a large PDF download for the House Bill at the center of
his                                                    discussion:



29.    As with interest in other content, blog posts about highly contentious and timely
political events can generate traffic to computer systems.

30.    The large and prominent "DOWNLOAD" button for the PDF likely induced many
visitors to download the content, causing a higher than usual amount of normal
network activity.

31.    Defendant never dispels this rational explanation.

32.    In fact, Defendant never provides any evidence suggesting any individual or
group inside or outside of action is responsible. He merely shows a computer
system working harder and assumes this must be the actions of people who he
has encountered past disagreements with, using only that system load as
evidence.

33.    In ¶20.3, Defendant provides information about an IP address absent from any
context. It is impossible for an outside observer to divine what, if anything, this
screenshot demonstrates.

34.    In ¶20.2, Defendant provides a screenshot of a video containing two
participants with comments on a blog absent any context. The blog does not
appear to have the same stylization of any Internet properties of Defendant.
The screenshot does not demonstrate "hacking" (intrusion into a computer
system) or DDoS attacks (denial of computer system resources to authorized
users).

35.    In ¶20.4 and ¶20.5, Defendant provides screenshots of my video submitted to
the United States government outlining evidence of an Iranian computer
system hosting the DEFCAD website, a probable contravention of U.S.
sanctions against the Islamic Republic of Iran.

36.     In ¶20.4, I have a web browser window open to website hosted by the computer system in Iran, showing the contents of the DEFCAD website. I also have a computer terminal window open for my computer. In the computer terminal, I had run the UNIX command "whois 194.147.222.183" and highlighted the IP address portion of the command: "194.147.222.183".

37.     In the ¶20.5 screenshot, I have the same layout, but the response from the command is displayed. I highlight "IRAN, ISLAMIC REPUBLIC OF" from the output.

38.     The UNIX "whois" command is a tool used to query databases that store information about registered computer systems and users of Internet resources, such as domain names and IP addresses. It provides details like ownership, registration dates, and contact information in a human-readable format. It does not interact with the computer system being investigated, rather it contacts and queries a third party, non-government authority, such as the Internet Assigned Numbers Authority (IANA).

39.     The video was a demonstration that a computer system at the IP address "194.147.222.183" and residing in the Islamic Republic of Iran is hosting the DEFCAD website.

40.     In John Elik's Request for Production to Cody Wilson, Request 26 asks for:

15

*"Produce all documents, records, and communications relating in any way to the web server at 194.147.222.183."*

41.    In Cody Wilson's Objections and Responses to John Elik's Request for Production, Mr. Wilson, without objection, responds with "*None.*"

42.    Yet, Defendant produces screenshots from a video examining the ownership of an Iranian server in response to a request to *"produce forensic logs, security reports, or digital packet traces showing alleged denial-of-service attacks or geolocation masking related to alleged access attempts from any Counterdefendant."*

43.    The combination of responses demonstrates Defendant feels basic web browsing and third-party ownership inquiries with this Iranian server, that Defendant simultaneously disclaims knowledge of, constitutes an attack on DEFCAD infrastructure.

44.    Buying a server in Iran violates U.S. economic sanctions. Americans cannot export, import, or invest in Iranian goods or services without a license from OFAC.

45.    Hosting firearms-related material in Iran may trigger the International Traffic in Arms Regulations or the Export Administration Regulations.

46.    This contradiction is why I collected this video evidence to share with the appropriate U.S. government authorities to investigate further.

**Examining Defendant's Lack of Evidence in John Elik's Request for Production to
Defense Distributed, Responses to Request 5**

47.     In John Elik's Request for Production to Defense Distributed, Request 5 asks
to:

> *"Produce all documents, server logs, digital forensic reports, IP records,
> screenshots, communications, or other materials in your possession,
> custody, or control that refer to, relate to, or support your allegation that any
> Counterdefendant conducted, attempted to conduct, or solicited others to
> conduct cyberattacks or distributed denial-of-service (DDoS) attacks
> against DEFCAD or any other asset owned or operated by Defense
> Distributed, as alleged in your Counterclaims."*

17

48.    Defense Distributed produced:

1.    An image named "defcad_ddos_visualization.png" – an identical screenshot to
¶20.1 in this affidavit.

2.    An                                                      image                                                      named
"gingras_hack_img_7811_fkkz_ag_x1um_tagged_i4avgogd6n.png"      –      an
apparent  screenshot  of  a  Twitter  message  by  me  to  an  unknown  party,
containing a joke:



3. An image named "gingras_hack_img_7841_ya_hd9_i5c_sw_tagged_k3h9vkbf0m.png" – an apparent screenshot of a Twitter conversation between individuals who were never party to this case, pointing out a comment they found elsewhere:



4.  An                          image                          named
"gingras_hack_trade_libel_img_7814_rb9_r5_of_aru_tagged_sx5ogntgsg.png
" showing a comment left on "Gingras Law Office, PLLC" under the name "Cody
Wilson"



5.  An                    image                    named
    "gingras_hack_zona_img_7816_og1w3bv_wh_w_tagged_wfi1mgjlrc.png"    –
    an apparent screenshot of a Twitter post by "ZONA" stating, *"Cody's internet lawyer has a pretty good blog."* with an apparent link to "gringaslaw.com" and
    an        apparent        image        of        the        blog        attached:



6.  An image named "gingras_zona_hack_img_7925_o_fz_vdsogr4_tagged_45ukc7b81s.png" – an apparent screenshot of a Twitter post by "ZONA" stating, "Yes, indeed." with an emoji picture attached:



7. An image named "ivan_whoa_nighttrace_screenshot_2024_08_14_at_3_40_5_iwez_pe_sl8_gri856j1dq.01PM_tagged.png" – an apparent screenshot of a conversation on Twitter between several users. One user comments, *"Not going to lie, if I were going to be hosting files about Ghost Guns on the internet I simply don't think I would put that shit in Germany. Pretty sure they have some real fucked up laws about that."* and includes an attachment listing IP addresses of computer systems with their apparent Location, ISPs, Owners, and ASNs:



8. Two images named

"jny_ip_ivan_repost_screenshot_2024_08_14_at_3_37_g_wqq_o1o_kx_v_wlj

nw3o6wm.35PM_tagged.png" and

"jny_ip_screenshot_2024_08_14_at_3_39_j3gc_fgu_wx3_vrfij4tspl.51PM_tag

ged.png" – an apparent screenshot of my post regarding the privacy

implications of Cloudflare's anti-DDoS services and methods of accessing

DEFCAD without Cloudflare systems:



49.    ¶48.1 is identical to ¶20.1 of this affidavit and contains the same issues discussed earlier in ¶22 to ¶32 of this affidavit.

50.    ¶48.2 is not relevant to *"documents, server logs, digital forensic reports, IP records, screenshots, communications, or other materials in [Defendant's] possession, custody, or control that refer to, relate to, or support [Defendant's] allegation that any Counterdefendant conducted, attempted to conduct, or solicited others to conduct cyberattacks or distributed denial-of-service (DDoS) attacks against DEFCAD or any other asset owned or operated by Defense Distributed, as alleged in [Defendant's] Counterclaims."*

51.    A random joke regarding Defendant's proclivity to engage in "lawfare" in response to negative feedback on a blog is not relevant to the core issue of computer crimes.

52.    The "blog" I refer to is *"Gingras Law Office PLLC,"* it is not apparent this is *"DEFCAD or any other asset owned or operated by Defense Distributed."*

53.    ¶48.3 contains discussions by third parties about a comment and "goodness on his attorney's blog," with no relevance to the central question of *"cyberattacks or distributed denial-of-service (DDoS) attacks against DEFCAD or any other asset owned or operated by Defense Distributed, as alleged in [Defendant's] Counterclaims."*

54.  Assuming this "attorney's blog" the third party refers to is *"Gingras Law Office
PLLC,"* it is not apparent this is *"DEFCAD or any other asset owned or operated
by Defense Distributed."*

55.  ¶48.4 contains a screenshot of a website that does not appear to be *"DEFCAD
or any other asset owned or operated by Defense Distributed."*

56.  The user comment in the screenshot is from *"Cody Wilson"* on October 16th,
2024. It contains a wall of text regarding the topic Hebephilia.

57.  It is unclear whether this comment is Mr. Wilson discussing his opinions and
experiences on the topic of "Hebephilia" or whether this is an imposter;
however, it is not apparent how this interaction, absent any evidence that
someone other than Mr. Wilson made the comment, is relevant to the central
question of "*cyberattacks or distributed denial-of-service (DDoS) attacks
against DEFCAD or any other asset owned or operated by Defense Distributed,
as alleged in [Defendant's] Counterclaims."*

58.  ¶48.5 shows Twitter user "ZONA" commenting that "Cody's internet lawyer has
a pretty good blog" with a link to the blog.

59.  It is not apparent how *"Gingras Law Office PLLC"* is *"DEFCAD or any other
asset owned or operated by Defense Distributed."*

60.  Furthermore, it stretches the imagination to view a positive message on social
media about *"Gingras Law Office PLLC"* as a computer crime of any kind.

61.    ¶48.6 shows Twitter user "ZONA" commenting *"Yes, indeed."* with a picture of
       an emoji.

62.    A random, out-of-context public social media message containing two words of
       agreement escapes the imagination as to how it relates to a computer crime of
       any kind.

63.    ¶48.7. shows a conversation between various
       Twitter users with the apparent focus on a third-party user "NightTrace" who
       posted an image containing ownership information for various computer
       system IP addresses along with commentary about the legal risk of hosting
       "Ghost Guns" in Germany.

64.    The user "NightTrace" is not a party to Defendant's Counterclaims.

65.    Nowhere in the screenshot are there any calls to conduct "*cyberattacks or
       distributed denial-of-service (DDoS) attacks*" against those systems.

66.    The user "NightTrace" merely expresses an opinion about the legal risk of
       hosting firearms content in Germany.

67.    ¶48.8 show a post of mine outlining how one of DEFCAD's service providers,
       Cloudflare, causes privacy concerns due to the way their "anti-DDoS" service
       operates.

68.    The Cloudflare "anti-DDoS" service functions by placing Cloudflare computer
       systems in between the user and the service they intend to browse.

69.    As a result of this design, user communications are transparent and readable
to Cloudflare, allowing them to intercept all user actions (hence, the "man-in-
the-middle").

70.    Many individuals online are privacy conscious and share my views about
services like Cloudflare, concerned that large organizations have the ability to
collect a wealth of information on Internet user behaviors.

71.    On social media, many of the individuals I interact with share my views
regarding online privacy.

72.    In addition, some of those individuals use DEFCAD services.

73.    I wanted to share an alternative method of using DEFCAD services for those
who wished to avoid providing their personal and private information to
Cloudflare.

74.    At the time, I was investigating whether DEFCAD could be violating ITAR, EAR,
and Iranian sanctions for the reasons mentioned in ¶44.

75.    Notably, I intended to subtly point out that DEFCAD systems appear to be in
foreign countries, as recognized by the user "NightTrace" with his comment in
¶49.7.

76.    Defendant admits to ownership of these foreign computer systems through his
response.

77.    Nowhere in my message or attachment do I induce or suggest anyone should
conduct a DDoS attack against these foreign DEFCAD systems nor was it my
intention that any viewer of the post do the same.

78.    The acronym "DDoS" only appears in my post because Cloudflare advertises
their    services    as    "anti-DDoS"    or    "DDoS    protection."



# Distributed denial-of-service (DDoS) protection

**DDoS protection that mitigates the biggest, most advanced attacks**

DDoS attacks can slow or shut down services, but Cloudflare
stops them all. With 405 Tbps of network capacity, Cloudflare
has mitigated some of the largest DDoS attacks ever recorded,
without slowing down performance for customers.



79.    The Tweet, which was made on August 14th, 2024, occurs after two of the three claimed DDoS incidents in the image from ¶20.1 of this affidavit.

80.    The Tweet predates the last of the three claimed DDoS incidents by fifteen days, making it unreasonable to suggest it inspired anyone to conduct any attack, especially given that is never encouraged or alluded to.

81.    None of Defendant's responses provide an articulable connection between any individual and any alleged "*cyberattacks or distributed denial-of-service (DDoS)*

**BENEFITS OF CLOUDFLARE DDOS PROTECTION**



**Massive network capacity**

Cloudflare has 405 Tbps of network capacity, which is 23x larger than the biggest DDoS attack ever recorded



**Set up in minutes**

Turning on DDoS protection is as easy as flipping a switch. Under attack? Use our Under Attack hotline to get protection in minutes: +1 (888) 99 FLARE.

*attacks against DEFCAD or any other asset owned or operated by Defense Distributed, as alleged in [Defendant's] Counterclaims."*

82.    As with many other matters in this action, if Defendant's counsel sought clarification about the meaning of my public communications, he could have inquired with my counsel before presenting further unfounded assumptions to the Court.

83.     I would be remiss if I did not mention that I feel presenting innuendo without seeking clarification was intentional as Defendant and their counsel knew the answers would immediately dispel their creative interpretation.

84.     Furthermore, I believe this pattern of intentional misrepresentation and obfuscation is designed to harass rather than present any meaningful claims or evidence of wrongdoing.

Under penalty of perjury, under the laws of the United States, I swear that the foregoing statement is true.

DATED THIS 24th day of September, 2024.


_____

JOHN LETTMAN