UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| Matthew Larosiere,<br><br>        Plaintiff,<br><br>    vs.<br><br>Cody Wilson, *et al*.,<br><br>        Defendants.<br><br>────────────<br><br>And Related Claims. | Case No: 6:24-cv-1629<br><br>DECLARATION OF<br>NON-PARTY DAVID S. GINGRAS IN<br>SUPPORT OF HIS RESPONSE TO<br>COUNTERDEFENDANTS'<br>MOTION FOR SANCTIONS |

1.      My name is David S. Gingras.  I am a United States citizen, a resident of the State of Arizona, am over the age of 18 years, and if called to testify in court or other proceeding I could and would give the following testimony which is based upon my own personal knowledge.

2.      I am an attorney licensed to practice law in the States of California (since 2002) and Arizona (since 2004).

3.      I am an active member in good standing with the State Bars of Arizona and California and I am admitted to practice and in good standing with the United States Court of Appeals for the Sixth, Ninth and Tenth Circuits, the United States District Court for the District of Arizona and the United States District Courts for the Northern, Central, and Eastern Districts of California.

4.      My practice is generally 100% focused on civil litigation. In addition to other types of matters, I have significant experience handling copyright infringement and related claims (i.e., DMCA-related matters such as claims under 17 U.S.C. § 512(f)).

5.      I previously represented Cody Wilson and his company, Defense Distributed in this matter, *Larosiere v. Wilson*, *et al*.

6.      Before I became involved in this matter, I also represented Mr. Wilson and Defense Distributed in various other non-litigation matters for a period of several years (since at least 2018). Having represented Mr. Wilson for 6+ years before the current matter, it is fair to say I know him reasonably well (i.e., he is not a new client and not a stranger).

7.      Mr. Wilson initially retained me to represent him in this matter on August 21, 2024 (before this case was filed).

8.      I applied to appear *pro hac vice* in this case on October 8, 2024. *See* Doc. 14. That request was granted by the court on October 15, 2024. *See* Doc. 16.

9.      The next day (October 16, 2024), Mr. Wilson contacted me and told me that my law firm's website (GingrasLaw.com) had been "hacked". That allegation was, of course, greatly concerning. Fortunately, my website normally does not host any client files or other sensitive information. Instead, I mainly use the site for public relations and to occasionally post articles about cases on my blog page located here: https://gingraslaw.com/home/blog/

2

10.     When I post articles (generally referred to as "blog posts"), I have the option of allowing members of the public to make comments under each article. This typically does not require any sort of user account or subscription; people can simply post comments using a blank form which is built into the site.

11.     My website is based on a commonly used platform called WordPress. The site was originally built by a third-party web developer. Wordpress is a free, open-source content management system (CMS) that allows anyone to easily build and manage websites without needing to code.

12.     After Mr. Wilson told me my site had been hacked, on October 16, 2024, I logged into the site's back-end administration page to investigate. Among other things, the administration page allows me to view details regarding comments posted on the site by third parties, as well as information logged by the system including the IP address from which a specific comment was submitted.

13.     Looking at the administrator page, I quickly discovered numerous recently comments were posted under an article written about an unrelated case. Two of those comments are shown here:



| | David Gingras | In reply to Convicted Bredaphile. | Oops, I'm | 2024/10/16 at |
| | GingrasLaw.com | I hope that nigger is burning in hell. | Blogging Again | 3:00 pm |
| | David@GingrasLaw.com | | View Post | |
| | 69.132.198.80 | | | |



14.     Beyond the offensive nature of the comments, what initially concerned me was the comments appeared to have been posted <u>by me</u>. Specifically, when a user posts a comment on my site, they use a blank form which asks them to enter their name, email address, and website address (if they have one).

15.     When a third party (someone other than me) posts a comment using this form, the site will display the information typed into the form, but it will not show a "profile picture" beside the comment (when I post a comment, it does show my profile photo next to it to show that I am the person who wrote the comment). For anyone else, the site will normally display a simple grey silhouette or icon like the example shown below. NOTE – this person who submitted this comment typed the name "United States Copyright Office" into the comment submission form, and listed their email address as: registerofcopyrights@loc.gov; that information is displayed as-typed without being verified by the system.



16.    Wordpress logs the IP address associated with each comment. In the above example, the comment was posted from IP address: 69.132.198.80. That is the same IP address that submitted the other two comments (in my name) as shown above. However, the fact that this person was able to post comments using my name and photo *appeared* to suggest they had unlawfully gained access to the administrative portion of my website.[1]

17.    Prior to this happening, I had never seen any comments posted to my website like this. In other words, I had never seen anyone posting comments using my name/photo in this way. The only time I had ever seen my name/photo appearing as part of a comment is when I use my administrator credentials to post a comment using my own account and password. That fact, combined with Mr. Wilson's statement that my site had been "hacked", caused me to conclude someone had accessed the administrative area of the site without my permission.

18.    Shortly after finding the comments listed above, on October 17, 2024, I sent an email to Mr. Wilson and to my co-counsel, Andino Reynal and Chad Flores, a copy of which is attached hereto as Exhibit A. In this email, I told Mr. Wilson: "Just FYI – after I saw your comment about my blog being 'hacked', I went in and

---

[1] While this goes far beyond the scope of the current issues before the Court, I have since learned that it may be possible for a person to exploit a flaw in the Wordpress system which would allow them to post comments which contain my name/photo, but which does not require the author to actually know my administrator login/password.

sure enough – it looks like someone was able to hack into my USER account for the
site (not the ADMIN login)."

19.     Later that same day, Mr. Wilson responded to my email regarding the
website hack. In that message, Mr. Wilson told me that "he" (meaning Mr. Larosiere)
was "behind it" (meaning the hack).



20.     Mr. Wilson later informed me he had information showing that in addition
to Mr. Larosiere, evidence existed to suggest John Lettman (a former
Counterdefendant in this matter) was involved in the hack. Among other things, Mr.
Wilson told me Mr. Lettman operates various social media accounts using the name
"jny the human" or "jnyboy". This includes a Twitter/X account:
https://x.com/jnyboy

21.     Mr. Wilson warned me that he believed Mr. Lettman and/or Mr. Larosiere would likely use a variety of unethical methods to harass me and/or to seek to disqualify me from participating in this case by "making me a witness". Mr. Wilson was specifically concerned about Mr. Lettman and/or others contacting me under false pretenses (i.e., they would contact me pretending to be a prospective new client seeking legal advice) for the purpose of trying to create a conflict which might disqualify me from this matter.

22.     That is exactly what happened. In addition to several phone messages (which I believe were calls from Mr. Lettman) on October 16, 2024, Mr. Lettman sent me an email, shown below, in which he falsely identified himself as "James Nathan Yu". This email stated the author had information regarding "your Cody Wilson case."



23.    Later that same day (October 16, 2024), Mr. Lettman also sent me two
direct messages on Twitter using the screenname "jny the human/jnyboy":



**jny the human** ✔
@jnyboy

Anarcho-funposter 🏴 a representative of your intrusive thoughts.
my views = the views of your employer
professional hater

Joined August 2016 · 27.8K Followers


Followed by The Civil Rights Lawyer

David, I have information that may be in support of
your case.

Oct 16, 2024, 4:20 PM

It's about the copyright thing. It might be helpful.

Oct 16, 2024, 4:26 PM

24.    At this point, the Court may be wondering: "How do you know that Lettman is behind all this?"  The answer is simple – because he admitted as much.

25.    Specifically, on August 20, 2025, Mr. Lettman (or someone claiming to be Mr. Lettman) filed a complaint against me with the State Bar of Arizona. In his complaint (a portion of which is shown below), Mr. Lettman specifically referred to this matter, and he admitted: "The only message I sent him was a brief joking message unrelated to hacking, which he [Gingras] never answered."

## State Bar of Arizona
## Charge Against a Lawyer

| Consumer Information | Charged Entity |
|---|---|
| John Paul Lettman<br>29 Bon Air Avenue<br>Bradford, PA 16701<br>the@johnlettman.com<br>814-331-7157 | David Gingras<br>Lawyer<br>Gingras Law Office, PLLC<br>4802 E RAY RD STE 23-271<br>PHOENIX, AZ 85044-6417<br>Maricopa County |

1. **Does this individual represent you?** No
2. **How did you come into contact with this individual?** He is the opposing counsel in the case Larosiere v. Wilson (6:24-cv-01629) in the Federal District Court, Middle District of Florida. I am a counterdefendant party who has no justifiable relation to the matter, but was introduced in an impermissible shotgun counterclaim signed by Mr. Gingras designed to harass the perceived acquaintances of the original plaintiff.
3. **Is your charge of misconduct about conduct in a lawsuit?** Yes

**Case Number   Court**

6:24-cv-01629    District Court, M.D. Florida

I, John P. Lettman, submit this grievance against Arizona attorney David S. Gingras (Bar No. 021097; also California Bar No. 21879) for misconduct in Larosiere v. Wilson, Case No. 6:24-cv-1629 (M.D. Fla.). On January 3, 2025, Mr. Gingras signed and filed a "Second Amended Answer with Counterclaims" naming me as a counterdefendant in a baseless civil RICO claim and other unrelated causes of action. The pleading contains no factual allegations of wrongdoing on my part, no evidence of my involvement in any criminal enterprise, and no good-faith basis in law or fact. Most egregiously, Mr. Gingras falsely alleged that I "hacked" his website and admitted to it, despite the absence of any such communication. The only email I ever sent him was a brief, joking message unrelated to hacking, which he never answered. By fabricating claims of criminal conduct, Mr. Gingras has misrepresented facts to a federal court and forced me, a private individual with no connection to the case, to defend against frivolous allegations in a distant forum. I respectfully request that the State Bar of Arizona investigate this misconduct. Mr. Gingras' actions violate the Rules of Professional Conduct, including ER 3.1 (frivolous claims), ER 3.2 (burdening litigation), ER 4.4 (abuse of process), ER 8.4(c)

26.    In addition, Mr. Lettman posted a comment on Twitter, below a photo of me, in which he stated: "I need a lawyer a blogger is about to sue me for doing big doinks on his comments."



27.    While the statement "doing big doinks on his comments" is ambiguous, Mr. Lettman later clarified exactly what he meant – by posting a screenshot of my website which was defaced with code injected by Mr. Lettman and/or Mr. Larosiere:

https://x.com/jnyboy/status/1846681805383979421



28.    And again, the Court may ask: "Why do you think Mr. Larosiere was involved in this conduct?" The answer is simple – because Mr. Larosiere appeared in a <u>four-hour</u> YouTube video *laughing hysterically* about all this (Mr. Larosiere is shown on the right side of this image).

https://www.youtube.com/live/9ICNpBwGatU?si=XPgGSbcihH7_LWhA



29.    In sum, Mr. Larosiere's allegation that I "sign[ed] pleadings with personal knowledge they were false" is untrue. It is, in fact, an intentional and arguably fraudulent misrepresentation to the Court *by Mr. Larosiere*.

30.     As explained above, at the time the counterclaim was filed in this matter on November 19, 2024, I had a clear, good faith basis to believe that *someone* accessed my website without my authorization. In all seriousness, if this Court visited its own personal website and saw someone used the Court's name/photo to post a comment like: "***I hope that nigger is burning in hell***", what would a reasonable person believe had occurred? A reasonable person would assume their account had been hacked.



31.     As for the allegation Mr. Lettman was involved in this conduct, Mr. Wilson specifically told me he had grounds to believe that was true, and he provided at least *some* circumstantial evidence to support that claim. This belief was further supported by Mr. Lettman's subsequent admission to the State Bar of Arizona that on October 16, 2024 (the same day my site was hacked), that he sent me an email in which he lied about his name (calling himself James Nathan Yu).

32.     For each of these reasons, I absolutely reject Mr. Larosiere's claim that I signed a pleading *knowing* that it contained false allegations. That is simply not the case, and Mr. Larosiere knew, or should have known, as much before filing the instant motion.

33.     In addition to Mr. Larosiere's claim that I violated 28 U.S.C. § 1927 in ways unrelated to the "hacking" allegation, those claims are also false. I understand Mr. Larosiere's motion complains about a variety of other things such as discovery disputes and certain "doomed motions".

34.     To be clear – I had nothing to do with any of the other bases Mr. Larosiere complains about in his motion.

35.     My role in this case was *extremely* limited. The <u>only</u> matter of any substance I was involved in was assisting Mr. Wilson with preparing his Answer to the original Complaint. As the Court is aware, Mr. Larosiere's Complaint was *extremely* lengthy and prolix. It spanned 56 pages and contains 272 paragraphs of allegations, many of which contain multiple subparts. Because the primary allegations involved claims of copyright infringement, and because I have substantial experience litigating copyright infringement claims, that was the primary focus of my work on this case.

36.     The Answer filed by Mr. Wilson also includes a counterclaim. Beyond the single issue relating to my website being hacked, I had nothing whatsoever to do with the investigation of the facts alleged in the counterclaim, nor the legal merit of the causes of action asserted. In short, the counterclaim was investigated and drafted solely by my co-counsel, with the assistance of Mr. Wilson. I had literally no involvement of any kind in that aspect of the case.

37.     I also had no involvement of any kind in the discovery disputes and motion practice Mr. Larosiere complains about in his motion. I had nothing to do with the litigation strategy pursued by my co-counsel. I was not involved in their decision to issue subpoenas or notice depositions.

38.     In fact, as I explained to Mr. Larosiere on the phone during the meet-and-confer process which preceded his motion, I have not billed any time on this matter since December 2024. As a litigation attorney, I typically bill my clients on a per-hour basis, and I send monthly statements to each client reflecting the time spent on each matter.

39.     According to my records, the last invoice I sent relating to this matter was for time spent in December 2024. After that date, my work on this case essentially stopped. My only involvement after December 2024 was reviewing emails related to the case which were too insignificant to justify billing Mr. Wilson.

40.     In terms of the meet-and-confer process, I had one single Zoom meeting with Mr. Larosiere which took place on September 15, 2025. Prior to that date, Mr. Larosiere never contacted me to express any concerns regarding either Rule 11 issues, or anything else. Mr. Larosiere never (prior to September 15, 2025) told me that he believed counsel was engaged in conduct that was needlessly expanding the litigation in violation of 28 U.S.C. § 1927.

41.     If Mr. Larosiere had raised his concerns with me earlier, I would have immediately taken steps to determine whether any intervention was necessary. I did

not do so because Mr. Larosiere never made any effort to discuss his concerns with me until our discussion on September 15th (by which time I had already withdrawn from this matter).

42.    One final technical issue — for reasons which are not important, I am *extremely* disliked by a certain small group of social media commentators, primarily people who earn a living by posting videos on YouTube (as opposed to actually working for a living). Among other things, these folks believe it is funny to file groundless bar complaints/grievances against me as a form of harassment. As part of this, these individuals take great joy in parsing each and every pleading I file, looking for *any* error, omission, or misstatement which they think might be infinitesimally inaccurate in some way. They will then make multi-hour YouTube videos accusing me of lying to the Court. And, of course, they will instantly report my "misconduct" to the State Bar (followed by more videos in which they sit and read their own bar complaints, as if defamation law no longer exists).

43.    With those concerns in mind, and although it is technically irrelevant to this Court's task, I want to be extremely clear about one issue – my statements above describe certain acts of "hacking". I do not want to be accused of misleading the Court in any way, so I need to add a few clarifying remarks about what that term means to me.

44.    Although the term "hacking" has no technical legal definition, most laypeople understand what is commonly meant; i.e., if you say someone "hacked

15

your account" or "hacked your computer", that typically means an unknown bad guy has somehow gained access to something they shouldn't. This *might* happen if a bad guy is able to discover your login/password credentials. It may also happen if a bad guy is able to exploit a software flaw which allows him/her to gain access to a restricted account or computer without knowing the password.

45.    As a lawyer, I have personally litigated claims involving the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"). For instance, in *Xcentric Ventures, LLC v. Epifaniou*, Case No. 18-cv-366 (D.Ariz.) (docket available at: https://www.courtlistener.com/docket/8430244/xcentric-ventures-llc-v-epifaniou/), I pursued civil CFAA claims against an individual named Joshua Polloso Epifaniou who illegally hacked into a client's website, eventually using his stolen credentials in attempt to extort $90,000 from the client. This ultimately led to Mr. Epifaniou's indictment, prosecution, and conviction on various federal criminal charges. *See Cypriot hacker sentenced to federal prison for extorting website operators with stolen personal information* (available at: https://www.justice.gov/usao-ndga/pr/cypriot-hacker-sentenced-federal-prison-extorting-website-operators-stolen-personal)

46.    As this Court may be aware, the CFAA imposes civil and criminal penalties for, among other things, hacking, which the statute refers to as: "Fraud and related activity in connection with computers". *See* 18 U.S.C. § 1030. Under the CFAA, hacking *can* include the commonly understood practice of using someone's

16

password to gain access to their account without permission. But the CFAA's reach is not limited to using someone's password to access their account.

47.    Rather, the CFAA also prohibits a wide range of other computer-related crimes, including, "knowingly caus[ing] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caus[ing] damage without authorization, to a protected computer[.]" 18 U.S.C. § 1030(a)(5)(A). Merely *accessing* a computer without permission can violate the CFAA if it causes sufficient damage. *See* 18 U.S.C. § 1030(a)(4). And the CFAA's definition of "damage" is extremely broad. *See* 18 U.S.C. § 1030(e)(8) (defining "damage" to mean: "any impairment to the integrity or availability of data, a program, a system, or information.")

48.    Here, using these technical terms from the CFAA, I believe there is ample proof to show that Mr. Larosiere and/or Mr. Lettman "hacked" my law firm's website, *even assuming* they did not actually obtain my login/password credentials (although this certainly remains a possibility).

49.    To be clear about what I mean – both Mr. Lettman and Mr. Larosiere posted remarks on social media appearing to take responsibility for injecting code into my website that obscured some of the comments with black, streaky lines. This was shown both in the YouTube video linked above, and by a photo posted on Mr. Lettman's Twitter account. For ease of reference, another copy of that photo is shown below, with Mr. Larosiere childishly laughing in response.



50.    In his 1927 motion, Mr. Larosiere makes a veiled admission of responsibility for this act which he describes as: "far from hacking, this is inherent in Unicode text." Mot. at 15, n.3.

51.    I construe Mr. Larosiere's statement as an admission that the black, streaky lines in the screenshot above were caused by him (or Mr. Lettman) entering certain text or code into the comment section of my blog, thus obscuring the page as shown above.

52.    Putting aside whatever a layperson might understand the term "hacking" to mean, the CFAA would clearly deem this conduct unlawful, to the extent Mr. Larosiere and/or Mr. Lettman, "knowingly cause[d] the transmission of a program,

<u>information, code</u>, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer ..." 18 U.S.C. § 1030(a)(5).

53.    Mr. Larosiere may believe this conduct is funny. That is not a view I share.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United State of America and the State of Arizona that the foregoing is true and correct.

DATED September 30, 2025.

**GINGRAS LAW OFFICE, PLLC**

David S. Gingras

# EXHIBIT A

**From:** David Gingras
**Sent:** Thursday, October 17, 2024 9:57 AM
**To:** 'Cody Wilson' <crw@defdist.org>
**Cc:** Chad Flores <cf@chadflores.law>; Federico Reynal <areynal@frlaw.us>
**Subject:** RE: Laroserie (M.D. Fla.) - Agenda Items

Cody,

Just FYI – after I saw your comment about my blog being "hacked", I went in and
sure enough – it looks like someone was able to hack into my USER account for
the site (not the ADMIN login).

They used this to post some stupid comments….see below.

BUT, they appear to NOT be hiding their IP address. That's shown below and it
seems to go back to a real ISP.

Is this a CFAA violation? Not yet – because the CFAA only applies when the bad
guy causes at least $5k in damages.  So far, we're not at that level.

Still, I'm going to change ALL passwords and keep this info handy. Maybe we can
subpoena the ISP once the Florida case gets going to see if Larosiere is behind this
(I assume not).





David Gingras, Esq.
Gingras Law Office, PLLC
David@GingrasLaw.com
https://twitter.com/DavidSGingras
http://gingraslaw.com
Tel.: (480) 264-1400
Fax: (480) 248-3196

