UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №: 6:24-cv-01629

MATTHEW LAROSIERE,

    *Plaintiff*,

v.

CODY RUTLEDGE WILSON, DEFCAD, Inc., DEFENSE DISTRIBUTED, and DIOSKOUROI LLC,

    *Defendants*.

_____/

**PLAINTIFF LAROSIERE'S MEMORANDUM IN OPPOSITION TO DEFENSE DISTRIBUTED'S MOTION FOR RULE 37(e) SPOLIATION RELIEF WITH <u>APPOINTMENT OF A SPECIAL MASTER</u>**

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENTS .................................................................................... 3

ARGUMENT ............................................................................................................................ 4

   I.   DEFENSE DISTRIBUTED CANNOT SATISFY RULE 37(e) BECAUSE IT NEVER ATTEMPTED TO ACQUIRE THE INFORMATION IN THE FIRST PLACE .............. 4

   II.   DEFENSE DISTRIBUTED'S "ADMINISTRATOR" PREMISE IS UNSUPPORTED AND CONTRADICTED BY THE RECORD. ............................................................... 8

      A. Plaintiff's Interrogatory Responses Undercut the "Admin" Narrative ....................... 9

      B. Defendants Never Sought Discovery into Roles or Permissions ........................... 10

      C. Plaintiff Had No Access After July 2024 ................................................................ 11

      D. Defense Distributed's "Employment" Argument Has No Merit .............................. 11

III. NO DUTY-BREACH OR "INTENT TO DEPRIVE" IS SHOWN .............................. 12

      A. Third-Party Rooms and Projects Outside This Case ............................................. 12

      B. Scope of the Preservation Duty .............................................................................. 13

IV. THE EXTRAORDINARY RULE 53 RELIEF IS NOT WARRANTED ...................... 13

CONCLUSION ...................................................................................................................... 14

## SUMMARY OF THE ARGUMENTS

Defense Distributed's motion fails to show Rule 37(e)'s threshold elements of loss, irreplaceability, prejudice, and intent. Most importantly, Defense Distributed is seeking 37(e) relief for materials <u>it has never asked for, despite being offered</u>. Further, the motion misuses Rule 53 as a punitive shortcut to seize control of a third-party chat platform. In the span of days, Defense Distributed's numbers swung wildly (from 26,000~ to "73,000+" deletions) and its own evidentiary submissions concede uncertainty and contradictions about what (if anything) is gone and whether it is recoverable. Aside from the fact that the duty to preserve any data is only conclusorily asserted, the motion is premised on conjectural "administrator" powers that Defense Distributed declined to pursue in discovery and that the record contradicts. The extraordinary request to appoint a special master to "take charge" of the Rocket.Chat server—which the motion's target has no control of or access to—and shift costs to Plaintiff should be denied outright.

## LEGAL STANDARD

Rule 37(e) requires proof that ESI which (1) should have been preserved is (2) lost because (3) a party failed to take reasonable steps to preserve it, and (4) that it cannot be restored or replaced through additional discovery. Fed. R. Civ. P. 37(e). Rule 37 contemplates two types of relief. The first type, "measures no greater than necessary to cure the prejudice[,]" require evidence sufficient to support a finding of prejudice. Fed. R. Civ. P. 37(e)(1). More severe relief, such as adverse inferences or dismissal, requires a finding "that the party acted with the intent to deprive another party of the information's use in the litigation[.]" Fed. R. Civ. P. 37(e)(2). Nothing in the motion supports either type of relief.

## **ARGUMENT**

**I. DEFENSE DISTRIBUTED CANNOT SATISFY RULE 37(e) BECAUSE IT NEVER ATTEMPTED TO ACQUIRE THE INFORMATION IN THE FIRST PLACE**

At no point did Defense Distributed actually ask for the materials they accuse Plaintiff (and nonparty Elik) of destroying. Not formally in discovery. Not informally in correspondence. And not during any meet-and-confer. (Doc. 138 at 17–19; Ex. C at 26). Nor did Plaintiff attempt to withhold any information from Defense Distributed. The record is replete with offers that were ignored. Defense Distributed's claims that "[Larosiere and Elik's] discovery responses now disclaim possession or knowledge of the missing ESI" (Doc. 136 at 3) are unsupportable by the record.

Defense Distributed suggests it requested materials—presumably Rocket.Chat contents—"in various ways[,]" pointing to pages 14 and 15 of its Exhibit H. (Doc. 136 at 14). The pages it points to contain ten different requests for production that do not unambiguously seek the contents of a third-party chatroom, and even if they did, nothing in the record—aside from the *ipse dixit* assertions of Defense Distributed's employee—support the contention that they were in Larosiere's possession or control. The only request for production beyond the pages Defense Distributed identifies is Request for Production 1, which seeks specific communications between specific individuals relating to specific topics, to which Larosiere objected, and Defense Distributed did not follow up. Defense Distributed also identified Larosiere's nonproduction of documents in response to a request for production for materials about "the management, deletion, or alteration of records or communications during the 6 months preceding the filing of this lawsuit" as somehow supporting its theory. (Doc. 136 at 14). That an individual party did not produce, over objection, certain materials in no way supports that the individual deleted anything.

4

On the contrary, it supports the idea that individual people don't tend to have written document retention policies or whatever it is Defense Distributed imagined would have been responsive. (Doc. 136-5 at 15)[1].

Whether or not this is an attempt to excuse their failure to request, Defense Distributed has mischaracterized Plaintiff's objections as disclaimers of possession. Plaintiff objected to vague and overbroad wording and explained he lacked knowledge sufficient to identify administrators. Those are Rule 26(b)(1) objections, not disclaimers of possession. Even so, subject to objections, Plaintiff *offered categories of information that he felt may have been helpful*.

> Subject to and without waiving the foregoing objections, Counterdefendant is willing to produce pre-publication drafts and original sketches relating to certain of the copyrighted designs identified in the Complaint, but the size and complexity of the files renders production excessively difficult given the speculative nature of their responsiveness. However, if requesting counsel confirms these would be helpful, these materials will be produced in an independent document production

(Doc. 136-5 at 14).

Defendants never clarified, never narrowed, and never moved to compel. When Plaintiff's counsel offered to informally provide documents, Defendants refused to cooperate. This omission undermines their Rule 37(e) claim. Rule 37(e) sanctions require a showing that the information "cannot be restored or replaced through additional

---

[1] Defense Distributed omitted form its quote of this response that Larosiere objected to "the extent the Request seeks to imply the improper destruction or concealment of evidence, Counterdefendant objects to its prejudicial framing and reserves the right to seek appropriate protective relief if the Request is used to advance unsupported accusations. The Request is also objectionable to the extent it seeks to compel production of materials not within Counterdefendant's possession, custody, or control." (Doc. 135-5 at 15).

discovery." By definition, a showing concerning "additional" discovery cannot be made when if no discovery was ever attempted.

It is not incumbent on Plaintiff to scour the record to reverse-engineer a basis for their Rule 37(e) request. Defense Distributed was on notice that Counterdefendants had no idea what it was talking about when this motion targeted all Counterdefendants, but pressed on with filing anyway.

> MR. ZERMAY: Wouldn't in the course of a reasonable inquiry prior to attempting to set extensive briefing on a meta-discovery on discovery issue include propounding a written interrogatory about the administrative privileges that the targets of the motion maintained before putting the issue before the Court?
>
> MR. FLORES: Our position is, no, that's not required and that we propounded sufficient requests already. We, for example, asked about any records that Mr. Elik had regarding deletions or alterations and he said he had none.[2] So, I don't think we have to do that[.]
>
> MR. LAROSIERE: So, I guess I would also just ask…have you attempted to engage in any informal attempts to resolve this? Have you emailed any of us asking for clarifying information before this?
>
> MR. FLORES: I haven't. We issued interrogatories that make the matter pretty clear.[3]
>
> …
>
> MR. LAROSIERE: The question is why we're involving the Court[.] [Of the documents you produced to support your spoliation contention, i]n addition to [] materials…in your possession and [thus] not an appropriate target of spoliation, there is a [text report of August 17]. And it asserts…that 26,000 messages were deleted. [Y]our motion asserts that 71,000 messages were deleted. I guess aside from [flagging] that concern immediately as to why we don't understand [your motion], can you tell us who prepared the [text report]?
>
> MR. FLORES: Mr. Larosiere, I'm done conferring on this. We've given you enough detail, and I really don't think there's anything more to tell about this motion. If you

---

[2] In actuality, Mr. Elik provided a detailed response in good faith, subject to objection. (Doc. 136-3 at 13-14, Response to Request for Production No. 11). The components of this transcript where this is discussed are excluded for brevity.

[3] *But see* (Doc. 136) (not identifying a single interrogatory or response, pointing only to several pages of requests for production without specificity).

> want to oppose and say we didn't confer sufficiently by telling you who the declarant is, go ahead.
>
> MR. LAROSIERE: [Y]ou're asking for full briefing…we have to know what we're briefing. And you've provided in your [response materials] … [the text report], which appears to be the basis of your contention, and…it's concerning that we aren't being allowed to even understand where this came from…. If we're to brief this, shouldn't we be able to explore it?
>
> MR. FLORES: Sure. Yeah. You can explore it all you want in 500 words in opposition. That's great.
>
> MR. LAROSIERE: I'm a little surprised, but I understand you don't want to talk about this anymore, but I'm just surprised you won't tell us the source of the –
>
> MR. FLORES: I have conferral fatigue, guys, I really do. I think the motion would stand on its own with just the Reddit issue.
>
> MR. LAROSIERE: Where you have the Reddit posts.
>
> MR. FLORES: No. The question is whether the party complied with their obligations. And that, I think, merits exploration. We can also talk about harm, but the first side also matters. So that's our position.
>
> MR. LAROSIERE: I don't think those are the elements of the issue and we need to cover them. I just don't feel that we would be prepared to fully brief this, [] even in 500 words, it's not very satisfying to the Court to…throw up our hands and say, I don't know what he's talking about.

(Ex. C pp.25-30). With that, the undersigned, regrettably, can do little more than throw up his hands and say "I don't know what he's talking about."

In sum, Defense Distributed is asking this Court to make an "inferential leap" based on a self-serving affidavit of their employee, but "[t]he Court will not award sanctions where a party's argument that spoliation occurred is based on no more than inference and suggestion, and explanations other than misconduct are equally as likely." *Morris-Huse v. GEICO*, No. 8:16-CV-1353-T-36AEP, 2018 WL 6040288, at *3 (M.D. Fla. Jan. 30, 2018) (quoting *Ward v. Casual Restaurant Concepts, Inc.*, No. 8:10-CV-2640-T-17TGW, 2011 WL 4908863, at *1-2 (M.D. Fla. Oct. 14, 2011) (denying a motion for

7

sanctions because the plaintiff requested the Court to make an inferential leap based on the absence of the desired evidence, but produced no evidence of misconduct)).

## II. DEFENSE DISTRIBUTED'S "ADMINISTRATOR" PREMISE IS UNSUPPORTED AND CONTRADICTED BY THE RECORD.

A central premise of Doc. 136 is that Plaintiff Matthew Larosiere and ex-co-defendant John Elik "had administrative privileges sufficient to preserve" Rocket.Chat data. (Doc. 136-2 ¶¶26–27). That premise is baseless. The record shows (1) Defendants never sought discovery into what administrative powers any individual possessed (Ex. C at 25-26); (2) sworn responses affirm lack of knowledge or access (Ex. B at 12); (3) their own *ipse dixit* declaration conflates a room-level "moderator" tag with system-wide administrator powers and admits uncertainty as to what happened to the materials (Doc. 136-9 ¶¶8-9), (Doc. 136-2 ¶ 23) ("[Hitchhiker room] appears to still exist but is hidden…we find it likely that its contents have been pruned") *cf*. (Doc. 136 at 16) ("evidence…suggests spoliation of [Hitchhiker room]") *and* (Ex. A at 496) ("[Hitchhiker room] was deleted following receipt of the litigation hold letter"); (4) a complete lack of evidence Plaintiff or Elik had the ability to control or access to the purportedly spoiled information; and (5) Plaintiff had not accessed the chat for months before the lawsuit was filed (Ex. B ¶61).

Defendants' linchpin is the declaration of Defense Distributed's own employee Garret Walliman, whose sole qualification is that he is "a competent adult." (Doc. 136-2; Doc. 136-9). Walliman asserts:

> 26. Matthew Larosiere (username 'MattLaAtLaw') had administrative privileges sufficient to preserve all of the Rocket.Chat data at issue in this motion.
>
> 27. John Elik (username 'Ivan') had and still has administrative privileges sufficient to preserve all of the Rocket.Chat data at issue in this motion."

(Doc. 136-2 at ¶¶26–27)

But Walliman provides no foundation for these claims. His declaration conflates a channel-level "moderator" badge with instance-wide administrator powers. However, an affidavit with first-hand knowledge counters that "[t]here has been no role changes for Mr. Larosiere's account. He has always been a 'user.'" (Ex. B at ¶47). Walliman had access to see both that Larosiere was just a "user" and that he had not accessed the rocketchat since July of 2024. A channel "moderator" designation confers only the ability to manage that room's participants, not system-wide retention or preservation functions. Even so, "administrators" are never exposed to the contents of a channel unless they deliberately enter it. (*Id.* ¶¶9–13, 38-70).

Furthermore, the Walliman declaration undermines the entirety of the spoliation theory. Message counts of the kind Walliman invokes are obtainable only through exports that also reveal message content, meaning Defendants themselves possessed the very materials they claim were destroyed. (*Id.* ¶¶9–17). This makes sense, given Defense Distributed has suggested from the beginning that it *does* have this material, and acquired it at great expense. *See, e.g.*, (Doc. 29 at ¶ 186). However, the fact that Defense Distributed chose to acquire materials (regardless of the actual relevance of these materials) through backdoor means completely defeats a central prerequisite to Rule 37 relief: unavailability. *See also* (Ex. C at 29-30) (After being reminded he already possessed the information he claimed was spoliated, "Mr. Flores: No. The question is whether the party complied with their obligations.").

In short, Walliman's testimony is *ipse dixit*, lacking personal knowledge of Plaintiff's account configuration, and contradicts both itself and the Doc. 136 motion.

A. <u>Plaintiff's Interrogatory Responses Undercut the "Admin" Narrative</u>

Discovery responses underscore that Plaintiff never confirmed any administrator role. In interrogatories, Defendants specifically asked Plaintiff to identify any sites where he held "administrative privileges" and to identify all administrators of chat.deterrencedispensed.com. Plaintiff objected to this as vague and overbroad (undefined "administrative privileges," unlimited scope) and stated he was "unable to respond" for lack of knowledge. (Doc. 136-5 at 6). When responding to an interrogatory asking him to identify all administrators: Plaintiff again objected and explained he lacked knowledge sufficient to identify administrators. He added that he had once been told he may have had such status but never accessed it and could not access his account to verify. (*Id*.)

These responses were clear: Plaintiff did not have, and could not verify, administrator privileges.[4] Under Rule 26(g), that was the limit of his knowledge. If Defendants doubted or disputed those answers, their remedy was a targeted discovery request or a motion to compel. They did neither. Instead, they simply invented "facts" favorable to their desired motion practice.

B. <u>Defendants Never Sought Discovery into Roles or Permissions</u>

---

[4] As for why ex-parties thought Larosiere may have been an administrator, it was because Larosiere had been added to a private chatroom. (Ex. B at ¶46) ("Mr. Larosiere does participate in a private administrator channel; however, Mr. Larosiere *does not* have administrator privileges for [the chat], despite my mistaken belief that he did due to his…presence in the private administrator channel.").

Despite making "administrator" status the centerpiece of their spoliation theory, Defendants never sought discovery into Rocket.Chat roles or permissions.[5] Instead, they *created* this conjectural document *after receiving those discovery responses*, and chose to rely on Walliman's conjecture, unsupported by records, while ignoring sworn statements to the contrary. Had they bothered to inquire, Defendants may have learned that Plaintiff never had the power to control data with respect to any room. (Ex. B ¶¶45-60).

C. <u>Plaintiff Had No Access After July 2024</u>

Even if one accepted Walliman's unfounded assertion that Plaintiff once held administrative powers, the timeline forecloses any spoliation theory. Plaintiff's account ceased accessing Rocket.Chat by July 2024, months before this lawsuit was filed and before any hold letters were sent. (Ex. B at ¶61). A person who had no access to the platform during the period of alleged deletions could not have performed them.

D. <u>Defense Distributed's "Employment" Argument Has No Merit</u>

Defense Distributed makes several references to Larosiere's employment of Elik. Larosiere's employment of Elik is relevant only to the creation of several of the works at issue in this lawsuit. Elik is not some sort of data custodian of a Rocket.Chat server at Larosiere's employ. As explained above, Elik and Larosiere each preserved ESI relevant to the creation of the works at issue, and they indicated as such in their discovery

---

[5] MR. ZERMAY: Wouldn't in the course of a reasonable inquiry prior to attempting to set extensive briefing on a meta-discovery on discovery issue include propounding a written interrogatory about the administrative privileges that the targets of the motion maintained before putting the issue before the Court?
MR. FLORES: Our position is, no, that's not required and that we propounded sufficient requests already. (Ex. C at 25-26).

responses. Defendant was offered the specifics of their employment agreement, but didn't bother to ask for it. (Doc. 138 at 16). That Defense Distributed chose anyway to misrepresent Plaintiff's employment of Elik as somehow requiring Elik to preserve communications on a third party website, somehow including communications that neither Plaintiff or Elik had ever seen, is unsupported.

### III. NO DUTY-BREACH OR "INTENT TO DEPRIVE" IS SHOWN.

Even if Defendants' loss allegations had evidentiary support (they do not), the materials they identify are irrelevant to any claim or defense and are supported only by incompetent declarations. As already thoroughly briefed, Plaintiff has no control of or access to the Rocket.Chat, which is an online network of tens of thousands of individuals.

#### A. Third-Party Rooms and Projects Outside This Case

Defendants' room lists read like a roll call of unrelated projects: "CM-1," "ROGUE-9," "foobadoo_GGGR" "space_privateer_SPACEJUNKV2," and others. These are private chatrooms involving people and projects not pled in any complaint, counterclaim, or defense. They are neither Plaintiff's works nor subjects of this litigation. Defendants never explain how chatter in those rooms could bear on the ownership or authorship of the copyrighted works actually at issue.

Indeed, the one example they highlight—the CM-1 room—undermines their theory. Defense Distributed's declaration points to the CM-1 room as being "substantially similar" to the other rooms they mention.[6] Yet, Defense Distributed itself had access to the CM-1 room - and took screenshots to prove it. Despite having complete access to the

---

[6] Bear in mind, however, that the CM-1 is a third-party project, unrelated to Plaintiff's asserted works.

12

room, the messages they point to as representative involve chatter and technical troubleshooting, not ESI relevant to authorship claims. Even if those messages were unavailable to Defense Distributed (they were not) (Ex. B ¶¶62-89) (detailing Walliman's scraping and storing the complained-of data), they would not factor in to the outcome of a copyright dispute, as the excerpts they highlight as exemplary could not possibly bear on copyright authorship. (Doc. 136-9 at 2-4).

Rule 26(b)(1) requires that discovery be relevant to claims and proportional to the needs of the case. By demanding preservation of unrelated third-party chat rooms, Defendants stretch relevance past the breaking point. A party cannot be sanctioned for failing to preserve what it had no duty or ability to preserve.

### B. Scope of the Preservation Duty

Defendants invoke broad "litigation hold" language to argue Plaintiff was obliged to preserve every corner of a Rocket.Chat server. That is incorrect. A party's duty to preserve arises only for materials relevant to a "party's claim or defense." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217–18 (S.D.N.Y. 2003). Here, Plaintiff's claims concern copyright ownership and misuse of specific works. That duty does not extend to the unrelated internet chatter of third parties.

### IV. THE EXTRAORDINARY RULE 53 RELIEF IS NOT WARRANTED

The most aggressive part of Doc. 136 is not its Rule 37(e) rhetoric but its invocation of Rule 53. Defendants asked the Court to "appoint a special master to take charge of the Rocket.Chat server," and "assess the special master's costs against Plaintiff." (Doc. 136 at 16–20). Rule 53 permits appointment only with party consent, to address an exceptional condition, or to manage matters that cannot be effectively and timely handled

by the Court. Fed. R. Civ. P. 53(a)(1). Defense Distributed shows none of these. Further, Rule 53(g)(3) disfavors cost-shifting where the moving party's own litigation choices precipitated the reference—Defense Distributed refused ordinary discovery and conferral, making its punitive cost request improper.

Defendants cited *Trump v. United States*, 54 F.4th 689, 696 (11th Cir. 2022), and *Ecolab v. Ridley*, 2023 WL 11762828 (E.D. Tenn. Aug. 1, 2023). Neither supports their position. *Trump* involved appointment of a special master in a unique context involving presidential records and criminal investigation—not ordinary civil discovery. *Ecolab* addressed tailored e-discovery management with party consent, not a punitive cost-shift. Neither case provides a reasonable basis for asking this Court to appoint a master over a Rocket.Chat server *Plaintiff has no access to* and shift costs to Plaintiff because Defendant has asserts, without investigation, a spoliation issue while refusing to engage in ordinary discovery.

## **CONCLUSION**

Defendants first injected spoliation into the case in their counterclaim, long before serving a single discovery request or informal inquiry. (Doc. 29 at ¶¶273-275). They alleged destruction of evidence without ever asking for it. The chronology is telling: rather than pursue targeted requests for whatever materials Defendants seek, Defendants leapt directly to sanctions rhetoric *in their first filing*. These filings were not about obtaining information; they were about creating litigation risk and expense for Plaintiff.

For the foregoing reasons, Plaintiff requests this Honorable Court deny the motion in its entirety.

Respectfully submitted,

DATED: October 3, 2025

/s/ Zachary Z. Zermay
Zachary Z. Zermay, Esq.
Fla. Bar № 1002905
*Zermay Law, P.A.*
3000 Coral Way Ste 1115
Coral Gables, FL 33145
Email: zach@zermaylaw.com
Telephone: (305) 767-3529
*Lead Counsel for Plaintiff Matthew Larosiere*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 3rd day of October, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Zachary Z. Zermay
Zachary Z. Zermay, Esq.
Fla. Bar № 1002905