```
            UNITED STATES DISTRICT COURT
             MIDDLE DISTRICT OF FLORIDA
                 ORLANDO DIVISION

            CASE NO.:  6:24-CV-1629


MATTHEW LAROSIERE,

        Plaintiff,

vs.

CODY RUTLEDGE WILSON, DEFCAD,
Inc., DEFENSE DISTRIBUTED, and
DIOSKOUROI LLC,

        Defendants.

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *



MEET-AND-CONFER

DATE TAKEN:            SEPTEMBER 4, 2025
TIME:                  1:00 P.M.
PLACE:                 VIA ZOOM
REPORTED BY:           ELIZABETH ANNE SMITH,
                        STENOGRAPHER AND NOTARY PUBLIC


*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

A P P E A R A N C E S:

ZACHARY Z. ZERMAY, ESQUIRE
Zermay Law
3000 Coral Way
Suite 1115
Miami, Florida 33145
APPEARING ON BEHALF OF THE PLAINTIFF
(239) 699-3107

FEDERICO ANDINO REYNAL, ESQUIRE and
CHARLES FLORES, ESQUIRE
The Reynal Law Firm, P.C.
917 Franklin Street
Sixth Floor
Houston, Texas 77002
APPEARING PRO HAC VICE ON BEHALF OF THE DEFENDANTS
(713) 228-5900

MATTHEW LAROSIERE, ESQUIRE
6964 Houlton Circle
Fort Worth, Florida 33467
APPEARING ON BEHALF OF THE COUNTER-DEFENDANTS
(561) 452-7575

GARY CHARLES DEPURY, ESQUIRE
Law Offices of Gary De Pury, P.A.
21035 Leonard Road
Lutz, Florida  33558
APPEARING ON BEHALF OF THE COUNTER-DEFENDANTS
(813) 607-6911

```
 1                  P R O C E E D I N G S

 2            MR. REYNAL:  As I mentioned before, we have a

 3       motion for the Court to appoint a special master to

 4       oversee discovery in this case.  Our position is that

 5       a special master is necessary because of the opposing

 6       side's filing of serial grievances against defense

 7       counsel, destruction of documents, and evasive to the

 8       point of non-existent discovery responses.

 9            I also, before I included in my motion, wanted

10       to ask Mr. Larosiere whether he's been leaving me bad

11       Google reviews.

12            MR. LAROSIERE:  No, sir.

13            MR. REYNAL:  Okay.  Well, that is -- that is

14       the motion we intend to file.  And so for purposes

15       of satisfying our conference obligations, I wanted

16       to bring it to your attention and get your position

17       on it.

18            MR. DEPURY:  Who is going to go first?

19            MR. ZERMAY:  Yeah.  I guess I have some

20       questions regarding the factual basis of whatever

21       motion you intend to file related to the destruction

22       of evidence, because I saw a screen shot of something

23       that Mr. Flores sent over a little bit prior to this

24       conference stating that, you know, there's a, I

25       believe it's Rocket.Chat issues.  So I'm interested
```

1          to hear the factual basis of the allegations in that

2          motion.

3                And, I guess, looking a little bit more closely

4          at the requested relief in the motion, it appears

5          that you're asking for briefing and an evidentiary

6          hearing.  So I'm a little bit interested to hear what

7          basis, in fact, you have to be making those

8          assertions.

9                MR. REYNAL:  Excuse me.  I'm sorry.  Are you

10         done, Mr. Zermay?

11               MR. ZERMAY:  Yes.

12               MR. REYNAL:  Before we turn to that motion,

13         which Mr. Flores will address, may I put you all

14         down as agreed or opposed to the motion to appoint

15         a special master?

16               MR. LAROSIERE:  Mr. Reynal, if I may interject

17         for a moment.  I think that we have to more

18         substantively confer on these matters.  And I think

19         we're all a little confused, at least on our side,

20         given the framing and timing of this conference and

21         what has been exchanged up to this point.  So I think

22         we have to discuss a little more to understand your

23         position before we can take a formal position.

24               As said in our email exchanges, there's been

25         some pretty clear positions taken and I don't -- so I

1        guess are you saying, Mr. Reynal, that you want to

2        first focus on the motion to appoint a special

3        master?  Should we discuss only that for now?

4            MR. REYNAL:  Yes.  I would like to get your

5        position on the appointment of a special master for

6        purposes of our conference.  We would like one.  If

7        you would -- don't think that one would be

8        appropriate in the case, say so.  If you think that

9        one would, say so.

10           MR. LAROSIERE:  Mr. Reynal, thank you.  The

11       question is, you know, special masters are often

12       appointed by agreement.  And when they're not

13       appointed by agreement it's because of some extreme

14       circumstances.  The case law where special masters

15       are appointed over one party's objection include

16       situations where there are 20, 30, 40 pending

17       motions concerning discovery issues.

18           And I guess my question is, in this case,

19       arguably there may have been one, perhaps two, in a

20       very technical sense, discovery motions.  So it

21       doesn't seem like that type of case.

22           And, additionally, I wonder what the

23       substantive disagreements about discovery are

24       because, as you remember, and our emails reflect

25       this, last conference was intended to be global and

```
 1          at that time no issues with any of our side's
 2          discovery obligations and responses were raised and
 3          we've asked repeatedly for such positions in those
 4          minor areas where we've immediately agreed to -- to
 5          remedy.
 6               I guess we're a little confused as to what
 7          these -- at least I can speak for my clients -- are
 8          a little confused as to what these non-responsive
 9          to the point of incompleteness issues are because
10          we feel they haven't been addressed.
11               Zach -- I think maybe Zach and then Gary should
12          point out their feelings on the special master
13          appointment.
14               I'll say it's my client's positions, the
15          out-of-state counter-defendants, who have a pending
16          motion to dismiss, which would be completely
17          dispositive as to their involvement in the case, one,
18          cannot afford a special master, cannot afford to pay
19          the cost of a special master, and, additionally,
20          don't feel it's warranted and do feel this is
21          calculated to use the differential financial
22          positions of the party as a litigation advantage in
23          violation of rule one.  So, that would be our
24          position, I guess, Zach.
25               MR. ZERMAY:  Yes.  To echo what Mr. Larosiere
```

1      said, my client is in agreement with what

2      Mr. Larosiere has said.

3           Moreover, we would like to know the particular

4      nature of the order and request that you're seeking.

5      For example, who would you propose the special master

6      be?  And who would bear the cost of such appointment?

7      Are you?  Because you're the requesting party, would

8      you agree to bear all the costs of the special

9      master?  Is that what you're proposing?

10          MR. REYNAL:  Did you want to say something,

11     Gary?

12          I can answer that very quickly.  The answer

13     is, no, we believe that as the group that has

14     necessitated the appointment of a special master

15     that the plaintiffs/counter-defendants should bear

16     the entire cost.

17          If the Court wants to, as it suggested, that

18     we split the cost and then at the end of the case

19     apportion it, then that's within the Court's

20     discretion.

21           But we think that the -- you all should bear

22     the entire cost of the special master since the

23     necessity was caused by your litigation conduct and

24     extra litigation conduct in the form of the Bar

25     grievances, and I guess you're denying it, or

1          Google reviews, and the other conduct that your

2          clients have taken the case, destruction of

3          evidence, et cetera.

4               MR. ZERMAY:  Could you go a little bit more

5          into detail?  The specific acts that you would

6          submit to the Court warrants what, in affect, would

7          be a terminating financial sanction against my

8          client such that you're going to make a argument to

9          the Court that Mr. Larosiere and the

10         counter-defendants should be forced to bear the

11         cost of a special master that your client is

12         requesting.

13              MR. REYNAL:  It was your client's decision to

14         file five Bar grievances, to destroy evidence, and

15         to not substantively respond to our discovery

16         requests.  And those requests are the factors that

17         we're going to be placing before the Court.

18              It sounds to me like you all are opposed to

19         the requested relief.

20              MR. ZERMAY:  Yes.

21              MR. REYNAL:  So, that is what it is.  We'll

22         let the Judge decide what she would like to do.

23              MR. LAROSIERE:  Gary, I think you haven't

24         spoken on this.

25              MR. DEPURY:  Go get it offline.  Get it off

1          the computer, off the email.  I'm sorry, guys.  I'm

2          trying to transition to my office.

3              MR. LAROSIERE:  It's okay.  I think I might

4          just say one thing, just to be clear:  Mr. Reynal,

5          we're declining to respond to your assertions of

6          Bar grievances.

7              Under the Florida Rules, it is considered

8          clearly improper to use such to gain any sort of

9          litigation advantage.  So we are declining to

10         discuss that, especially to the extent that, as

11         you're well aware, this was not one-way conduct,

12         and would also point out that if a Florida attorney

13         sees something that is a rule violation they are

14         obligated under the Florida rules to file a

15         grievance.

16             But in observation of the Florida Ethics

17         opinions, we are deliberately not responding to

18         your repeated invocations of Bar grievances for

19         that reason.  I don't know if you want to echo that

20         or not, my fellow counsel.

21             MR. ZERMAY:  Yes.  It's my understanding of

22         the Florida Rules of Professional Conduct that one

23         cannot use Bar proceedings for litigation

24         advantage.

25             MR. REYNAL:  I mean, not to -- are you trying

1          to log back in, Gary?

2                MR. DEPURY:  I'm trying to log in from my

3          desk so I can hear.

4                MR. REYNAL:  I'm going to admit you, but

5          you're going to have to mute yourself so we don't

6          get this crazy --

7                MR. DEPURY:  I'm going to cancel this one.

8                MR. REYNAL:  Okay.  Can you participate?  Are

9          you okay, Gary?  Can you hear us?

10               MR. DEPURY:  (Indicating.)

11               MR. REYNAL:  Okay.  I'm getting a thumbs up.

12               So, not to belabor the point, so you're

13         saying I'm not going to talk about the Bar

14         grievances because I don't want to implicate myself

15         in using a Bar grievance to gain a litigation

16         advantage?

17               Because it sounds to me that that's exactly

18         what you all have done by filing Bar grievances

19         against opposing counsel during ongoing litigation,

20         raising frivolous claims that we have somehow

21         violated our Bar rules by filing pleadings with the

22         Court in discovery.

23               So it seems that if you're saying I don't

24         want to answer those questions because they would

25         inculpate me in violating the Florida Bar Rules.

```
 1              I mean, I don't know, that's up to you.  But
 2         clearly that decision, in our view, was
 3         inappropriate and makes the handling of this case
 4         in a civil and professional manner impossible
 5         without having a special master appointed, in
 6         addition to your willful destruction of evidence
 7         and failure to substantively respond to our
 8         discovery requests.
 9              MR. ZERMAY:  Mr. Reynal, I believe you
10         mischaracterized what Mr. Larosiere and I said.
11              Madam Court Reporter, can you please read
12         back what I said prior to Mr. Reynal's colloquy.
13              THE STENOGRAPHER:  You'll have to give me a
14         minute to find it, please.
15              MR. ZERMAY:  Thank you.
16              MR. REYNAL:  Do you think this is really
17         necessary, Mr. Zermay, for purposes of you all
18         saying that you're opposed to my motion?
19              (Portions were read back.)
20              MR. ZERMAY:  Okay.  I think we can move on.
21         It's all right.  I don't believe that was the exact
22         phrase I was referring that to, but we have it on
23         the record.
24              MR. REYNAL:  I agree.
25              MR. DEPURY:  If I may.  The way -- as I
```

1    understood my colleagues, they were arguing and I

2    would agree that it's improper to attempt to bring

3    up any Bar grievance inside of the litigation.

4    That is, to use your phase, Mr. Reynal, it's extra.

5    And if you're arguing that a special master would

6    have some sort of jurisdiction over a Bar issue, I

7    would disagree.

8        Further, I would think that it's wholly

9    improper to bring it up inside of this litigation.

10   If it happened, if the Bar complaint was levied

11   against you, then that's for you to work out with

12   the Bar.

13       And so I find it shocking, frankly, to state

14   that the -- that my client should have to pay for a

15   special master that you desire because of a Bar

16   issue levied against you.  If that's your position,

17   I would ask that you clarify that, please.

18       MR. REYNAL:  So, I can say that,

19   unfortunately, Mr. Lettman is tied to Mr. Larosiere

20   and his clients.  I know Mr. Lettman, himself, has

21   not filed a Bar complaint against me, but

22   Mr. Larosiere and his clients have filed no less

23   than five Bar complaints throughout the course of

24   this litigation.

25       And that type of behavior is the behavior

1    that the Court should be able to take into account

2    in deciding whether a special master is

3    appropriate, especially when taken in conjunction

4    with the destruction of evidence and the failure to

5    substantively respond to discovery.

6        So, I agree, Mr. Depury, you have not filed a

7    Bar complaint against me nor has your client,

8    sorry -- and your client is not Mr. Lettman; your

9    client is Mr. Holladay, I apologize -- nor has

10   Mr. Holladay.

11       But Mr. Lettman, Mr. Elik, Mr. Larosiere seem

12   to find it amusing in their spare time to file Bar

13   complaints against me and Mr. Gingras.  And that, I

14   don't think, is in keeping with the fine traditions

15   of the Bar.  I don't think it's civil behavior.  I

16   don't think it's appropriate, and it stands in the

17   way of us being able to work collaboratively in

18   this case.

19       So I apologize if you are being brought along

20   for the ride, but I don't think that there's a way

21   to have a special master that isn't going to

22   oversee everything.

23       MR. DEPURY:  I would disagree, and I feel

24   like you're couching the argument, because that's

25   what you led off with, the Bar issues, and those

1          are, unfortunately, between you and the Bar.  A

2          special master has no jurisdiction over the Florida

3          Bar, nor does the judge.  The only thing the judge

4          can do is refer someone to the Bar and not rule on

5          it.

6               And I'm involved in a case in Hillsborough

7          County right now where the other side has had

8          several Bar complaints filed against her, not by my

9          client or myself, but I understand from other

10         parties that she keeps bringing these things up in

11         a court of law in the other cases.

12              And I've been warned about this particular

13         person and in that -- yeah, I've seen why people

14         are filing Bar complaints against her. I haven't

15         done it.  I don't intend to.  But I certainly see

16         why people are doing it.

17              My point being is that she keeps bringing

18         this up.  In that area of law, there's only three

19         judges in that area of law in Hillsborough, and

20         they're all well aware that she likes to bring

21         these grievances up.  Frankly, it's making my job

22         easier because she's losing credibility.

23              So I would agree with my colleagues that this

24         is not a proper venue to -- it's not proper to ask

25         the plaintiffs to spend money on a special master

1          because of that issue.

2              As far as the other issues, I would like for

3          you to go into more detail about those as far as

4          the destruction of property or destruction of

5          evidence that you keep referencing, please.

6              MR. REYNAL:  It sounds to me like everybody

7          is opposed to the appointment of a special master

8          and that you would like to hear more about

9          conferencing on the issue of spoliation.  So I will

10         turn that over to Mr. Flores.

11             MR. FLORES:  Ms. Smith, can you still hear us

12         okay?

13                 THE STENOGRAPHER:  Yes, sir.

14             MR. FLORES:  Thank you.

15             This is Chad Flores.  My conference item is a

16         motion to have the Court issue an order that

17         delivers two forms of relatively simple relief.

18         The motion is to set a briefing schedule and to

19         have an evidentiary hearing on the question of

20         whether Defense Distributed is entitled to relief

21         under Federal Rule of Civil Procedure 37(e).

22             The object is to make sure that everyone is

23         fairly noticed of what exactly the issues are and

24         we have -- we endeavor to give the Court a preview

25         of that and want everyone to be able to file full

1    length briefs rather than the mere 500-word short

2    form motions.

3        The request is based on what I have shown

4    everyone already with an introduction to the issues

5    about the duty to preserve and when our side --

6    when Defense Distributed that arose and evidence

7    that electronic information is gone and that we

8    need to get to the bottom of that and figure out

9    what the remedy is.

10        So the motion now doesn't request sanctions.

11    What we're asking for is a briefing schedule and an

12    evidentiary hearing.

13        For particularity about some of the

14    spoliation issue you can look to the Rocket.Chat,

15    the website at chat.deterrencedispensed.com which

16    has been the subject of discovery.

17        And you can also look, for example, at

18    Mr. Elik's deletion of a Reddit account.  That is

19    sworn to by his own discovery responses.

20        We expect there to be some dispute between

21    the parties about what was deleted or what was

22    allowed to be deleted and when that happened and

23    why it happened.  And our view is that those

24    disputes don't need to be resolved now for this

25    motion.

1           This motion just wants a briefing schedule

2      and an evidentiary hearing to figure that out.

3      So that's what we are going to put before the

4      Court, and we'd like to know if that's an agreeable

5      order for the briefing schedule and the hearing or

6      if there's disagreement.

7           MR. ZERMAY:  So I'll take the first questions

8      from our side.  So I read the screen shots of the

9      motion you emailed to us before the conference and

10     I have a question about the factual basis that

11     you're relying upon to ask the Court to set

12     extensive briefing and hold an evidentiary hearing

13     on this matter.

14          The text report file, for example, I'm not

15     quite sure looking at the face of that document

16     where you're getting that data from, and nor do I

17     know who drafted the report and it doesn't

18     delineate how those numbers were reached.

19          And so if you can speak to that a little,

20     that might help clarify why you're asking for what

21     is, in affect, discovery on discovery, which is a

22     sub meta issue in this litigation.

23          MR. FLORES:  Okay.  So, that goes to one of

24     the two exemplified reasons.  The second one is the

25     easier one.  Right.

1          We have Elik swearing in a discovery

2      response, signed also by his attorney, that says he

3      deleted his Reddit account and he removed certain

4      posts from Twitter.

5          As a matter of fact, in the case, ESI is

6      gone, and there's a reasonable dispute about why

7      that happened and there's a reasonable dispute

8      about perhaps the existence of a duty to -- a duty

9      to preserve at that point, but I think that you all

10     are fairly informed about that basis.

11         The other basis is the Rocket.Chat and that

12     is backed by a declaration that we'll have prepared

13     and filed that we'll specify the particular beta

14     rooms that were observed in existence and that are

15     now gone.

16         I don't think it's necessary for us to

17     granulate exactly what that is, but I'm happy to

18     give you now some exemplary rooms that were deleted

19     in the view of our declarant.

20         MR. LAROSIERE:  If I may get ahead of you a

21     little bit, might save some time.  Mr. Flores, I'm

22     sorry for interrupting.

23         MR. FLORES:  Well, I don't know what you're

24     going to say, but go ahead.

25         MR. LAROSIERE:  So, we've read this report,

1    and as you know, my client served upon you

2    discovery requesting all documents that evidenced

3    your spoliation claim.  And you mentioned in what

4    you just said, Rocket.Chat, Twitter, and Reddit.

5         The interesting thing that I notice is we

6    haven't gotten any specific requests about this

7    information.

8         And, additionally, in your response to our

9    request for the basis of your spoliation claim, you

10    provided the contents of the Reddit account and the

11    tweets.

12         The only other thing that was provided was

13    this unsigned doc text file that simply asserts X

14    number of messages were deleted.  I don't think

15    that's articulating a factual basis to the extent

16    we can even properly confer about the allegation

17    much less fully brief.

18         And if it's my understanding that you have

19    more information, I wonder why it wasn't provided

20    in discovery when we were trying to get ahead of

21    this issue to begin with, if you will.

22         MR. FLORES:  I don't know that text file

23    you're referring to, but I don't intend to submit

24    that as the basis for the motion.  We have work

25    product and are in the process of preparing the

```
 1          motion and are not obligated to disclose to you our

 2          work product as we prepare a motion.

 3               I'm happy to give you all some more specific

 4          information.  I do understand and our position is

 5          that the materials at issue were requested in

 6          discovery already.  And if they weren't, you can

 7          oppose on that ground.  It's fine.  I just want to

 8          be able to brief it and have a hearing.

 9               And so the position is that, for example,

10          instead of doing this in 500 words, we be allowed

11          to file standard briefs, whatever the standard

12          length is, you know, summary judgment style length

13          briefs in whatever length the Court deems

14          appropriate to actually supply those details and go

15          from there.

16               MR. LAROSIERE:  I think Mr. Zermay is going

17          to say something, but I would just like to point

18          out, Mr. Flores, I don't want to belabor the point,

19          but in response to that request for production for

20          those documents underlying the spoliation claim

21          and -- I would just like to observe that your

22          client has been speaking about spoliation since the

23          beginning of this lawsuit while constantly refusing

24          to articulate any factual basis.

25               You didn't assert a work product objection in
```

1          response to that request for production.  And so

2          that's very concerning to me that -- I would also

3          point out that a couple of weeks ago we had

4          another, a global conference, where your side

5          brought up very few issues.

6               You did bring up a spoliation issue and when

7          we asked about the factual basis, when we asked

8          about who had deleted what, why they should have

9          known it was part of et cetera, et cetera,

10          basically the elements of what you're asserting,

11          you asserted that you don't need to explain your

12          motion.  I would just like to resist that.

13               I think it's the purpose of meet-and-confer

14          for us to understand one another's positions and

15          then be able to resolve it between us without

16          involving the Court.  And I'm just a little

17          concerned that you're refusing to articulate the

18          factual basis much less how it's a rule violation.

19          I understand -- you -- I'll step aside and let Zach

20          talk now.

21               MR. REYNAL:  Before you get started, Zach,

22          it's now the second time that you have referred to

23          our meet-and-confer as being some kind of a global,

24          our meet-and-confer of last week as being some kind

25          of a global discussion.

```
1              Before that, I disagree with that
2         characterization wholeheartedly.  The
3         meet-and-confer we had last week was limited in
4         scope to your motion to compel, which you have now
5         filed related to Mr. Wilson and Defense
6         Distributed's responses.  So it was by no means a
7         global meet-and-confer.
8              And my recollection is that during our
9         meeting we even discussed the fact that Defense
10        Distributed had, in fact, concerns about your
11        discovery and would bring those up at the
12        appropriate time.
13             So, I just want, since we have Ms. Smith
14        keeping a record here, I don't want there to be any
15        confusion about the nature of the meet-and-confer
16        that we had last week which was not global in any
17        sense of the word.
18             MR. LAROSIERE:  Mr. Reynal, thank you for
19        limiting that.  And I will also, just to echo your
20        point, you never indicated that there were no
21        issues, in fact, just to show I think what you said
22        and this is not a quote, I'm not -- there's no
23        evidentiary value, was that you weren't filing --
24        contemplating filing a motion, but were still
25        reviewing.
```

```
 1          You said nothing at that meet-and-confer to
 2     suggest that you were never going to take an
 3     adverse position.  The reason I use the word
 4     'global' is because that was how you had referred
 5     to it in response to our request for
 6     meet-and-confer.
 7          But we don't need to litigate the contents of
 8     the emails, we have the contents of the emails, but
 9     I'd just say, yes, I understand and appreciate your
10     limitation and it's fully respected.
11          Mr. Zermay.
12          MR. ZERMAY:  Okay.  So, the second issue or
13     more appropriately stated question I have about
14     your correspondence regarding your request for
15     briefing is your assertions as to the plaintiff and
16     counter-defendants' status as, I believe the term
17     used in the communication is administrators or
18     admins of the Rocket.Chat.
19          And there are some sweeping assertions made
20     as to administrative powers, duties, abilities,
21     privileges, of that nature, that relate to
22     allegations regarding duties to preserve
23     electronically stored information.
24          I'm wondering what is the factual basis for
25     those assertions that a person that has the title
```

1         of admin or administrator of a Rocket.Chat has the

2         ability to preserve, maintain, or has control over

3         those, or, sorry, that electronically stored

4         information.

5             MR. FLORES:  Well, the factual basis comes

6         from, I think, publically available information

7         about the nature of the Rocket.Chat platform and

8         how it operates.  Our motion will supply some

9         evidence about that.  And if you all want to

10        disagree in your response to the motion, that's

11        fine.

12            The question is just whether there's enough

13        here to warrant more than 500 words on the

14        question.  And we submit the answer is yes because

15        of the sweeping nature of the discovery responses

16        that say in their own terms, people hold, quote,

17        administrative privileges for the website, unquote,

18        without qualification.  So it's broad on that side.

19            And because the authorities we cite, like the

20        one you've seen already, don't do the kind of

21        factual parsing that you're requiring us to do.

22        But that's going to be the basis for the motion, so

23        you all know.  It will involve things like common

24        levels of administrator control, abilities to

25        delete messages, to control what users can do,

1      those varieties of facts.

2          If you all want to oppose in your 500 words

3      and say it doesn't work like that, or if you want

4      to oppose this motion and say we haven't proven the

5      nature of the, you know, website at issue

6      sufficiently enough to warrant more briefing,

7      that's okay.  I understand.  You can oppose if you

8      want.

9          But I've given you almost a new final version

10     of the motion to show you exactly what we're

11     asserting.  And I will tell you that we will supply

12     to the Court, as the local rules require, the

13     discovery requests and responses that are pertinent

14     so it can read them.  So that will be part of the

15     basis, as well.

16         All I need is a position on them, a motion

17     for a briefing schedule, for the full briefs, and

18     an evidentiary hearing.  It sounds like everyone is

19     opposed.

20         MR. ZERMAY:  I guess one follow-up question.

21     Wouldn't in the course of a reasonable inquiry

22     prior to attempting to set extensive briefing on a

23     meta-discovery on discovery issue include

24     propounding a written interrogatory about the

25     administrative privileges that the targets of the

1        motion maintained before putting the issue before

2        the Court?

3            MR. FLORES:  Our position is, no, that's not

4        required and that we propounded sufficient requests

5        already.

6            We, for example, asked about any records that

7        Mr. Elik had regarding deletions or alterations and

8        he said he had none.  So, I don't think we have to

9        do that and I think we -- that's our position.

10            MR. LAROSIERE:  So, I guess I would also just

11        ask, for one, I resist that characterization and

12        I'd refer you to Elik's discovery responses, but I

13        would ask, have you attempted to engage in any

14        informal attempts to resolve this?  Have you

15        emailed any of us asking for clarifying information

16        before this?

17            MR. FLORES:  I haven't.  We issued

18        interrogatories that make the matter pretty clear.

19            If you all are now saying that you have

20        records that, for example, Mr. Elik swore not to

21        have, that would be a rather surprising revelation

22        that I don't think the rules require us to

23        contemplate and ask about.

24            But the answer is, no, I didn't call

25        separately from the conferrals that we've had.

1      We've given you the information that we had in the

2      last conference and in this conference with

3      particularity, specified the sources of the ESI

4      question.

5          I have, with particularity, identified the

6      dates at which we think the duty to preserve

7      evidence has arisen.  And I've identified a

8      relatively low ask that we just brief it like one

9      would brief any other standard major motion in the

10     case, which doesn't burden folks that much.  That's

11     our position.

12         MR. LAROSIERE:  The question is why we're

13     involving the Court, I think.  And I would like to,

14     just because you said you didn't have it, this was

15     response to request for production 12 to Defense

16     Distributed, this was the question of the

17     documentary evidence of forced spoliation for which

18     you did not assert any such objection of work

19     product.

20         There is a -- in addition to the materials

21     which are in your possession and is not an

22     appropriate target of spoliation, there is a report

23     on thegatalogchat.deterrencedispensed.com.txt,

24     which indicates it was prepared August 17, 2025.

25         And it asserts, again, as Mr. Zermay pointed

1    out, that 26,000 messages were deleted.  The screen

2    shot of your motion asserts that 71,000 messages

3    were deleted.  I guess aside from flighting that

4    concern immediately as to why we don't understand

5    that, can you tell us who prepared the report on

6    thegatalogchat.deterrencedispensed.com.txt?

7        MR. FLORES:  Mr. Larosiere, I'm done

8    conferring on this.  We've given you enough detail,

9    and I really don't think there's anything more to

10   tell about this motion.  If you want to oppose and

11   say we didn't confer sufficiently by telling you

12   who the declarant is, go ahead.

13       MR. LAROSIERE:  I mean, you're asking for full

14   briefing, Mr. Flores, and I'm not one to oppose

15   full briefing, but we have to know what we're

16   briefing.

17       And you've provided in your signed responses

18   to request for production several images which are

19   clearly in your possession and report on

20   thegatalogchat.deterrencedispensed.com.txt prepared

21   August 17, 2025, which appears to be the basis of

22   your contention, and -- or at least a substantial

23   part of it.  And it's concerning that we aren't

24   being allowed to even understand where this came

25   from.

```
 1            Do you understand my position?  If we're to

 2       brief this, shouldn't we be able to explore it.

 3            MR. FLORES:  Sure.  Yeah.  You can explore it

 4       all you want in 500 words in opposition.  That's

 5       great.

 6            MR. LAROSIERE:  I'm a little surprised, but I

 7       understand you don't want to talk about this

 8       anymore, but I'm just surprised you won't tell us

 9       the source of the --

10            MR. FLORES:  I have conferral fatigue, guys, I

11       really do.  I think the motion would stand on its

12       own with just the Reddit issue.

13            MR. LAROSIERE:  Where you have the Reddit

14       posts.

15            MR. FLORES:  No.  The question is whether the

16       party complied with their obligations.  And that, I

17       think, merits exploration.  We can also talk about

18       harm, but the first side also matters.  So that's

19       our position.

20            MR. LAROSIERE:  I don't think those are the

21       elements of the issue and we need to cover them.  I

22       just don't feel that we would be prepared to fully

23       brief this, like even in 500 words, it's not very

24       satisfying to the Court to say -- throw up our

25       hands and say, I don't know what he's talking
```

1           about.

2                MR. FLORES:  Okay.  I understand your

3           position.  I'm not --

4                MR. LAROSIERE:  I would just like to point out

5           one small thing.

6                I'm so sorry, Madam Court Reporter, for

7           talking over him.

8                I'm just very confused because you referred

9           to the allegations in the complaint when you first

10          wanted to meet and confer about the issue of

11          spoliation, and in the allegations of your

12          complaint you allege that the primary component of

13          materials that were deleted were deleted before you

14          sent a litigation hold notice by over a week.

15               And then on top of that, I'm even more

16          confused because the litigation hold notice was not

17          sent to everyone you appear to allege to be

18          involved.

19               And, additionally, the litigation hold notice

20          considered only the copyright action.  So this is

21          just very hard to understand how, for example,

22          jen.ghostgunner spaceprivateer junkversion2, would

23          be, you know, something that one of my clients

24          should have preserved.  Do you understand?  We're

25          very confused.

1           MR. FLORES:  I have articulated the basis for

2       our motion by showing you the motion we're going to

3       file.  If you think that doesn't suffice, you can

4       say you're opposed and then oppose the motion.

5       That's all we're really here to do.

6           MR. LAROSIERE:  I don't know if we've fully

7       satisfied our conferral obligations, but I feel

8       we're at an impasse as to whether we are.  So, is

9       that all the subjects you have.

10          MR. FLORES:  Yes.

11          MR. DEPURY:  If I may, briefly, I think we're

12      trying to ask the same very obvious questions that

13      the Court is going to ask.  For instance, who is

14      the author of that document?

15          But if I can backtrack, briefly, Mr. Reynal

16      started this with, we had three items, one being

17      this was about appointing a special master.

18          Then, two, he went to the destruction of

19      evidence, which we're now calling spoliation,

20      appropriately calling spoliation.  Then the Google

21      reviews, and he's also throwing in the Bar issue.

22          When we got past, when I asked questions

23      about the special master and if this was whether, I

24      didn't use the word retribution, but it's starting

25      to seem that way, for the Bar issue, when I asked

1       to go further he passed it along to you,

2       Mr. Flores, then your opening statement was

3       effectively, here's the issues as we see them,

4       spoliation, and then you said, but we're not going

5       to settle any of that today.

6              So this is -- to me, that states this is

7       truly just about whether or not we're opposed to

8       your motion because you want to get the motion

9       forward in order to get the special master

10      appointed, which in turn is simply litigation in my

11      pocket, for lack of a better term.

12             Am I -- I know you're not going to agree with

13      that point, as I see it, but am I correct in that

14      that is how things went, were articulated here,

15      that Mr. Reynal had those issues.  When I asked him

16      to move forward and discuss the spoliation, you

17      started that and you addressed it by saying, and

18      we're not going to resolve it here today, we just

19      want to find out if we're going to go forward with

20      this motion.  Is that correct?

21             MR. REYNAL:  So, Mr. Depury, I think that and

22      maybe there was some confusion as to our -- our

23      conferencing.  I thought it was clear, but these

24      are two separate issues.

25             One is a motion to appoint a receiver, and

1          one is the spoliation issue.  There's a little --

2               MR. DEPURY:  I'm sorry.  You said receiver.

3          Did you mean special master?

4               MR. REYNAL:  Special master, yes.  Special

5          master.

6               There's a little bit of overlap in the sense

7          that we feel that the spoliation issue supports the

8          larger motion or the collateral motion to appoint a

9          special master, but they're two different motions.

10         When you were --

11              MR. DEPURY:  I agree.

12              MR. REYNAL:  So when you were talking to me

13         and you were seeking more detail on the spoliation

14         I handed it over because I -- I thought you wanted

15         to hear about that and that we were done talking

16         about the special master, that you all were opposed

17         on grounds of either disproportionate financial

18         burden as well, I am sure, differences related to

19         whether, you know, these grievances, as been filed,

20         as a form of retaliation in order to gain some kind

21         of tactical advantage.

22              And I'm sure you're opposed to, you know, the

23         idea of spoliation, and I'm sure you suggest that

24         your answers to discovery were fulsome and well

25         within the rules.

1          So I thought that we were done conferring on

2     the special master, and that's why I handed it over

3     to Mr. Flores so that he could conference with you

4     all on the separate motion related to the

5     spoliation issue.

6          So, hopefully that helps clear up the board

7     and what's on the board.  These are two separate

8     requests.

9          MR. DEPURY:  But it doesn't really clear it

10    up because as you characterize it as they're

11    somewhat -- there's some overlay.  I would say that

12    they're so intertwined that there is nothing but

13    overlay because you're using the failure to be able

14    to work through this in this meet-and-confer as

15    your -- part of your basis for a special master.

16          And I believe your true basis for a special

17    master is simply to punish our clients.  And I

18    don't know that the Court will appoint one, whether

19    they do or not, but I feel that you are one

20    thousand percent ready to go forward and try to get

21    a special master no matter -- even if we could

22    figure these things out today, that just seems to

23    be the case.

24          And that's why the question I was asking, I

25    understand there's two separate motions, but the

1      question I was asking is, when you did turn it over

2      to Mr. Flores he said in basically his brief

3      opening, we're not going to be able to resolve this

4      today so we're really just getting to how well are

5      we going to be able to argue the motion.  That's

6      what I'm -- that's as I understand it.

7              MR. FLORES:  And, Mr. Depury, our motion does

8      not seek an award of sanctions.  The motion is for

9      a briefing schedule and a hearing because local

10     rules say that discovery disputes have to start

11     first with a short form motion, and so this is our

12     short form that says in 500 words, we believe

13     there's enough of an issue to warrant full briefs.

14             We're not in this motion seeking an order

15     about whether sanctions should be imposed or not.

16     The only relief we're asking for is an order that

17     sets a briefing schedule and an evidentiary

18     hearing.

19             MR. DEPURY:  And there's no ulterior motive

20     on your part at all to encourage the Court with

21     this motion to appoint a special master.

22             MR. FLORES:  No, that's not a motive.  I

23     mean --

24             MR. DEPURY:  Okay.

25             MR. FLORES:  -- if our discussion reveals

```
 1        that, like, the website at issue is technical and

 2        is a complicated topic that may -- you may argue on

 3        the other motion something about that, but this

 4        motion is about exactly what it says it is.  I

 5        don't know how rare it is but we've literally shown

 6        you the motion that we're going to file.

 7            I just need to know if you're opposed to the

 8        request for a briefing schedule and a hearing date,

 9        and that people are saying they don't think that's

10        warranted because we haven't given enough detail,

11        and I hear that, and we still will submit the

12        motion this way.  So we would mark you as opposed.

13            I'm happy for you to explain to the Court

14        that our motion should be denied because you think

15        that we should first have, for example, given you a

16        granular, you know, more  granular version of our

17        argument.  I understand that.

18            MR. LAROSIERE:  Mr. Flores, thank you so much

19        for that.  Can I -- can I just make sure that I'm

20        right about this, the screen shots of the motion

21        that you included for the briefing schedule, do you

22        have those?

23            MR. FLORES:  Yeah.

24            MR. LAROSIERE:  Simply a yes or no question.

25        Do those discuss the appointment of a special
```

1           master?

2                MR. FLORES:  The last sentence says that we

3           should have a hearing and it can include a special

4           master, if need be.  If that is a sticking point,

5           I'll pull it out because --

6                MR. LAROSIERE:  I was just asking -- no.  I

7           was asking a simple question, Mr. Flores.  I just

8           wanted to make sure I was right in that, you know,

9           the second motion, right, the briefing schedule

10          motion that you circulated a draft of, did

11          reference a special master.  I was just making sure

12          I had that right.

13               MR. FLORES:  Correct.  It referenced it, but

14          the relief does not seek that.

15               MR. LAROSIERE:  Understood.

16               I think -- so, you can put my clients as

17          opposed to both relief.  We feel that this is

18          really actually one motion that we feel that this

19          is in response to the Court  indicating that it

20          would consider appointing a special master, what we

21          feel is urging us to engage fully and discharge our

22          obligations under discovery.

23               We feel that this is your side attempting to

24          force the issue of a special master.  So my opposal

25          is on the record.  Zach?

1           MR. ZERMAY:  Yes.  I echo what Mr. Larosiere

2       said on behalf of my client.

3           MR. DEPURY:  Agreed.  We feel this is an

4       unnecessary step in its attempt to drive up the

5       litigation costs when we would be able to resolve

6       this.

7           MR. LAROSIERE:  Okay.  So, I think we can move

8       on.  So thank you, Mr. Flores.  Thank you,

9       Mr. Reynal for presenting your points.

10          Of course, we have two minor points that we

11      would like to bring up.  The first is your -- your

12      designation of responsive materials in Mr. Wilson's

13      response to -- Cody Wilson, Mr. Cody Wilson's

14      response to Mr. Elik's request for production.

15          You've designated certain materials as

16      confidential, attorneys eyes only.  And we -- these

17      are summary of findings which, of course, we won't

18      read the contents of governing interpretations of

19      ITAR and EAR, which were provided to your client

20      and Corporate Compliance and Ethics programs, et

21      cetera.

22          I think that fairly describes all of these

23      files, and we don't feel that these are the

24      extremely sensitive items that the protective order

25      contemplates being classified as attorneys eyes

1    only documents.

2         So we would seek to challenge these

3    designations so that these documents can be, of

4    course, not publically disseminated.  We have no

5    intention of doing such, but used in dispositive

6    filings.

7         MR. REYNAL:  So, just so that I can -- well,

8    first, let me ask, when you -- what is your working

9    definition of what should be classified as

10   confidential, attorneys eyes only?

11        MR. LAROSIERE:  So this is extremely

12   sensitive information is what the agreed order,

13   because remember we're operating under an agreed

14   order.

15        MR. REYNAL:  So to the extent that these

16   documents -- if your requested relief is simply to

17   be able to use these documents in dispositive

18   filings, but to otherwise maintain the other

19   protections in the protective order, other than

20   filing them under seal, we would have no

21   opposition.

22        MR. LAROSIERE:  So you have no opposition to

23   us filing these, just to be a hundred percent

24   clear, filing these documents in the public docket.

25        MR. REYNAL:  Under seal.

1          MR. LAROSIERE:  Okay.  So, no, that's the

2     whole point.

3          MR. REYNAL:  Okay.  Understood.

4          We -- no.  We would object to that, these

5     are, you know, important proprietary internal

6     documents that lay out how Defense Distributed and

7     DEFCAD does business, and they are of great value

8     to my client.

9          And their free dissemination to -- in the

10    public domain would absolutely cause my client

11    irreparable harm.  And so in that sense.  They are

12    confidential.

13         I'm, you know, willing to work with you guys

14    in terms of what kind of protections you guys think

15    would be appropriate, and I'd be happy to review

16    them with my client and see if they fit that and

17    modify the protective order as to these documents

18    specifically if you suggest what modifications you

19    would like to see, but they are important.  They

20    are confidential.  That's our position.

21         MR. LAROSIERE:  So just to make it clear,

22    these are predominantly, some are prepared by

23    attorneys, right, so I understand that there's an

24    inherent, you know, issue there, fully appreciated.

25         But these really deal with interpretations of

1           ITAR and EAR, which are the regulatory networks

2           that you allege counter-defendants violated.

3                And it's our position that the

4           interpretations that your client was provided in

5           these completely disprove the claims that your

6           client is bringing, or at least undermines Rule 11

7           compliance issue.

8                And so that's -- just so you know, that's

9           kind of where we're going with this, is that

10          there's nothing, you know, there's no financial

11          information, this is all about how your client

12          interprets the final rules as they apply here.

13               So that's -- we're just not sure -- again,

14          how about this, we're not going to do any motion

15          practice on this right now.  Let's continue to

16          meet-and-confer informally and see if we can

17          resolve this, maybe to some documents and not

18          others.

19                How does that sound, Mr. Reynal.

20                MR. REYNAL:  Sounds fine to me,

21          Mr. Larosiere.

22                MR. LAROSIERE:  Okay.  So, let's move on to

23          the final point that we have is, and, again, I'm

24          not sure that we need to confer with you on this,

25          but we're going to anyway.  Your client has taken

```
 1          more -- no, actually, one second.
 2              MR. ZERMAY:  Okay.  Well, I guess the one
 3          agenda item remaining is just an issue stemming
 4          from the defendants' publication of more
 5          copyrighted materials belonging to the plaintiff,
 6          in particular referring to the 10/22 unrelated
 7          documentation which is much like the other files
 8          that were published and taken without permission
 9          contains 3-D models, documents and images, and we
10          plan on bringing that to the Court's attention in
11          another notice.  So, that's the final agenda item
12          that plaintiff has on the docket.
13              And, again, we are not sure if we are
14          specifically required under the rules to confer
15          about that, but in an abundance of caution and the
16          spirit of good faith we're bringing it to you,
17          Counsel, for defendants attention prior to
18          notifying the Court.
19              MR. REYNAL:  I guess my only question is, is
20          there any part -- are you guys going to amend your
21          petition?  Is there any particular relief that you
22          would like our position on, or are you just
23          notifying us?
24              MR. ZERMAY:  Just a notification at the
25          moment.
```

1           MR. REYNAL:  Okay.  So noted.

2           MR. ZERMAY:  Okay.  Well, for the sake of

3      good order, is there anything else that anybody

4      wishes to discuss prior to termination of this

5      conferral?

6           MR. REYNAL:  Nothing from Mr. Reynal.

7           MR. LAROSIERE:  Nothing from Larosiere or his

8      clients.

9           MR. DEPURY:  Nothing on my side.

10           MR. FLORES:  Thank you, Ms. Smith, for your

11      professionalism.  We appreciate that.

12           MR. LAROSIERE:  Thank you, Ms. Smith.

13           THE STENOGRAPHER:  Yes, sir.  Thank you,

14      guys.

15           MR. ZERMAY:  Thank you very much.

16           MR. REYNAL:  Thank you, Madam Smith.  Do you

17      need anything from us before he terminates,

18      Madam Smith?

19           THE STENOGRAPHER:  I do not.  I have

20      everybody's name, and I'll look you up on the Bar

21      to get your information.

22           MR. REYNAL:  I'm admitted pro hac vice, and

23      so is Mr. Flores.  If you would like to reach me,

24      the email is areynal, a-r-e-y-n-a-l, @frlaw.us.

25      Phone number, 713-228-5900.

1              THE STENOGRAPHER:  Great.  Thank you.

2              MR. REYNAL:  Thank you, Ms. Smith.  Good bye.

3              (Proceedings were concluded at 2:25 p.m.)

C E R T I F I C A T E

STATE OF FLORIDA

COUNTY OF ORANGE


    I, Elizabeth Anne Smith, Court Reporter, do hereby certify that I was authorized to and did report the foregoing proceedings, and that the transcript, pages 3 through 45, is a true and correct record of my stenographic notes.

    I further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor relative or employee of such attorney or counsel, nor financially interested in the foregoing action.

    Dated this 17th day of September, 2025, Volusia County, Florida.



                        *Elizabeth Anne Smith*

              _____
              Elizabeth Anne Smith
              Stenographer

'global' - 23:4
10/22 - 42:6
11 - 41:6
12 - 27:15
17 - 27:24; 28:21
20 - 5:16
2025 - 27:24; 28:21
26,000 - 28:1
2:25 - 44:3
3-D - 42:9
30 - 5:16
37(e) - 15:21
40 - 5:16
500 - 20:10; 24:13; 25:2;
29:4, 23; 35:12
500-word - 16:1
71,000 - 28:2
713-228-5900 - 43:25
abilities - 23:20; 24:24
ability - 24:2
able - 13:1, 17; 15:25;
20:8; 21:15; 29:2; 34:13;
35:3, 5; 38:5; 39:17
absolutely - 40:10
abundance - 42:15
account - 13:1; 16:18;
18:3; 19:10
action - 30:20
acts - 8:5
addition - 11:6; 27:20
additionally - 5:22; 6:19;
19:8; 30:19
address - 4:13
addressed - 6:10; 32:17
admin - 24:1
administrative - 23:20;
24:17; 25:25
administrator - 24:1, 24
administrators - 23:17
admins - 23:18
admit - 10:4
admitted - 43:22
advantage - 6:22; 9:9,
24; 10:16; 33:21
adverse - 23:3
affect - 8:6; 17:21
afford - 6:18
agenda - 42:3, 11
agree - 7:8; 11:24; 12:2;
13:6; 14:23; 32:12; 33:11
agreeable - 17:4
agreed - 4:14; 6:4; 39:12
Agreed - 38:3
agreement - 5:12; 7:1
ahead - 18:20; 19:20
allegation - 19:16
allegations - 4:1; 23:22;
30:9, 11
allege - 30:12, 17; 41:2
allowed - 16:22; 20:10;

28:24
almost - 25:9
alterations - 26:7
amend - 42:20
amusing - 13:12
another's - 21:14
answer - 7:12; 10:24;
24:14; 26:24
answers - 33:24
apologize - 13:9, 19
appear - 30:17
apply - 41:12
appoint - 3:3; 4:14; 5:2;
32:25; 33:8; 34:18; 35:21
appointed - 5:12, 15;
11:5; 32:10
appointing - 31:17;
37:20
appointment - 5:5; 6:13;
7:6, 14; 15:7; 36:25
apportion - 7:19
appreciate - 23:9; 43:11
appreciated - 40:24
appropriate - 5:8; 13:3,
16; 20:14; 22:12; 27:22;
40:15
appropriately - 23:13;
31:20
area - 14:18
areas - 6:4
areynal - 43:24
AREYNAL - 43:24
arguably - 5:19
argue - 35:5; 36:2
arguing - 12:1, 5
argument - 8:8; 13:24;
36:17
arisen - 27:7
arose - 16:6
articulate - 20:24; 21:17
articulated - 31:1; 32:14
articulating - 19:15
aside - 21:19; 28:3
assert - 20:25; 27:18
asserted - 21:11
asserting - 21:10; 25:11
assertions - 4:8; 9:5;
23:15, 19, 25
asserts - 19:13; 27:25;
28:2
attempt - 12:2; 38:4
attempted - 26:13
attempting - 25:22;
27:23
attempts - 26:14
attention - 3:16; 42:10,
17
attorney - 9:12; 18:2
attorneys - 38:16, 25;
39:10; 40:23
August - 27:24; 28:21

author - 31:14
authorities - 24:19
available - 24:6
award - 35:8
aware - 9:11; 14:20
backed - 18:12
backtrack - 31:15
bad - 3:10
Bar - 7:24; 8:14; 9:6, 18,
23; 10:13, 15, 18, 21; 12:3,
6, 10, 12, 15, 23; 13:7,
12, 15, 25; 14:1, 4, 8, 14;
31:21, 25; 43:20
based - 16:3
basis - 3:20; 4:1, 7; 17:10;
18:10; 19:9, 15, 24; 20:24;
21:7, 18; 23:24; 24:5, 22;
25:15; 28:21; 31:1; 34:15
bear - 7:6, 8, 15, 21; 8:10
begin - 19:21
beginning - 20:23
behalf - 38:2
behavior - 12:25; 13:15
belabor - 10:12; 20:18
belonging - 42:5
beta - 18:13
better - 32:11
between - 14:1; 16:20;
21:15
bit - 3:23; 4:3, 6; 8:4;
18:21; 33:6
board - 34:6
bottom - 16:8
brief - 19:17; 20:8; 27:8;
29:2, 23; 35:2
briefing - 4:5; 15:18;
16:11; 17:1, 5, 12; 23:15;
25:6, 17, 22; 28:14-16;
35:9, 17; 36:8, 21; 37:9
briefly - 31:11, 15
briefs - 16:1; 20:11, 13;
25:17; 35:13
bring - 3:16; 12:2, 9;
14:20; 21:6; 22:11; 38:11
bringing - 14:10, 17;
41:6; 42:10, 16
broad - 24:18
brought - 13:19; 21:5
burden - 27:10; 33:18
business - 40:7
bye - 44:2
calculated - 6:21
cancel - 10:7
cannot - 6:18; 9:23
case - 3:4; 5:8, 14, 18, 21;
6:17; 7:18; 8:2; 11:3;
13:18; 14:6; 18:5; 27:10;
34:23
cases - 14:11
caused - 7:23
caution - 42:15
certain - 18:3; 38:15

certainly - 14:15
Chad Flores - 15:15
challenge - 39:2
characterization - 22:2;
26:11
characterize - 34:10
chat.
deterrencedispensed.
com - 16:15
circulated - 37:10
circumstances - 5:14
cite - 24:19
Civil - 15:21
civil - 11:4; 13:15
claim - 19:3, 9; 20:20
claims - 10:20; 41:5
clarify - 12:17; 17:20
clarifying - 26:15
classified - 38:25; 39:9
clear - 4:25; 9:4; 26:18;
32:23; 34:6, 9; 39:24; 40:21
clearly - 9:8; 11:2; 28:19
client - 7:1; 8:8, 11;
12:14; 13:7-9; 14:9; 19:1;
20:22; 38:2, 19; 40:8, 10,
16; 41:4, 6, 11, 25
client's - 6:14; 8:13
clients - 6:7; 8:2; 12:20,
22; 30:23; 34:17; 37:16;
43:8
closely - 4:3
Cody - 38:13
Cody Wilson - 38:13
collaboratively - 13:17
collateral - 33:8
colleagues - 12:1; 14:23
colloquy - 11:12
common - 24:23
communication - 23:17
complaint - 12:10, 21;
13:7; 30:9, 12
complaints - 12:23;
13:13; 14:8, 14
completely - 6:16; 41:5
compliance - 41:7
complicated - 36:2
complied - 29:16
component - 30:12
computer - 9:1
concern - 28:4
concerned - 21:17
concerning - 5:17; 21:2;
28:23
concerns - 22:10
concluded - 44:3
conduct - 7:23; 8:1; 9:11
confer - 4:18; 19:16;
21:13, 23-24; 22:3, 7, 15;
23:1, 6; 28:11; 30:10;
34:14; 41:16, 24; 42:14
conference - 3:15, 24;

4:20; 5:6, 25; 15:15; 17:9;
21:4; 27:2; 34:3
conferencing - 15:9;
32:23
conferral - 29:10; 31:7;
43:5
conferrals - 26:25
conferring - 28:8; 34:1
confidential - 38:16;
39:10; 40:12, 20
confused - 4:19; 6:6, 8;
30:8, 16, 25
confusion - 22:15; 32:22
conjunction - 13:3
consider - 37:20
considered - 9:7; 30:20
constantly - 20:23
contains - 42:9
contemplate - 26:23
contemplates - 38:25
contemplating - 22:24
contention - 28:22
contents - 19:10; 23:7;
38:18
continue - 41:15
control - 24:2, 24
copyright - 30:20
copyrighted - 42:5
Corporate
Compliance and
Ethics - 38:20
correct - 32:13
Correct - 37:13
correspondence -
23:14
cost - 6:19; 7:6, 16, 18,
22; 8:11
costs - 7:8; 38:5
couching - 13:24
Counsel - 42:17
counsel - 3:7; 9:20; 10:19
counter - 6:15; 8:10;
23:16; 41:2
counter-defendants -
6:15; 8:10; 41:2
counter-defendants' -
23:16
couple - 21:3
course - 12:23; 25:21;
38:10, 17; 39:4
court - 14:11
Court's - 7:19; 42:10
cover - 29:21
crazy - 10:6
credibility - 14:22
data - 17:16
date - 36:8
dates - 27:6
deal - 40:25
decide - 8:22
deciding - 13:2

**decision** - 8:13; 11:2
**declarant** - 18:19; 28:12
**declaration** - 18:12
**declining** - 9:5, 9
**deems** - 20:13
**DEFCAD** - 40:7
**defendants** - 6:15; 7:15; 8:10; 41:2; 42:17
**defendants'** - 23:16; 42:4
**defense** - 3:6
**Defense Distributed** - 15:20; 16:6; 22:9; 27:15; 40:6
**Defense Distributed's** - 22:5
**definition** - 39:9
**delete** - 24:25
**deleted** - 16:21; 18:3, 18; 19:14; 21:8; 28:1, 3; 30:13
**deletion** - 16:18
**deletions** - 26:7
**deliberately** - 9:17
**delineate** - 17:18
**delivers** - 15:17
**denied** - 36:14
**denying** - 7:25
**describes** - 38:22
**designated** - 38:15
**designation** - 38:12
**designations** - 39:3
**desire** - 12:15
**desk** - 10:3
**destroy** - 8:14
**destruction** - 3:7, 21; 8:2; 11:6; 13:4; 15:4; 31:18
**detail** - 8:5; 15:3; 28:8; 33:13; 36:10
**details** - 20:14
**differences** - 33:18
**different** - 33:9
**differential** - 6:21
**disagree** - 12:7; 13:23; 22:1; 24:10
**disagreement** - 17:6
**disagreements** - 5:23
**discharge** - 37:21
**disclose** - 20:1
**discovery** - 3:4, 8; 5:17, 20, 23; 6:2; 8:15; 10:22; 11:8; 13:5; 16:16, 19; 17:21; 18:1; 19:2, 20; 20:6; 22:11; 24:15; 25:13, 23; 26:12; 33:24; 35:10; 37:22
**discretion** - 7:20
**discuss** - 4:22; 5:3; 9:10; 32:16; 36:25; 43:4
**discussed** - 22:9
**discussion** - 21:25; 35:25
**dispositive** - 6:17; 39:5,

17
**disproportionate** - 33:17
**disprove** - 41:5
**dispute** - 16:20; 18:6
**disputes** - 16:24; 35:10
**disseminated** - 39:4
**dissemination** - 40:9
**doc** - 19:13
**docket** - 39:24; 42:12
**document** - 17:15; 31:14
**documentary** - 27:17
**documentation** - 42:7
**documents** - 3:7; 19:2; 20:20; 39:1, 3, 16-17, 24; 40:6, 17; 41:17; 42:9
**domain** - 40:10
**done** - 4:10; 10:18; 14:15; 28:7; 33:15; 34:1
**down** - 4:14
**draft** - 37:10
**drafted** - 17:17
**drive** - 38:4
**during** - 10:19; 22:8
**duties** - 23:20, 22
**duty** - 16:5; 18:8; 27:6
**EAR** - 38:19; 41:1
**easier** - 14:22; 17:25
**echo** - 6:25; 9:19; 22:19; 38:1
**effectively** - 32:3
**either** - 33:17
**electronic** - 16:7
**electronically** - 23:23; 24:3
**elements** - 21:10; 29:21
**Elik** - 13:11; 18:1
**Elik's** - 26:12
**email** - 4:24; 9:1; 43:24
**emailed** - 17:9; 26:15
**emails** - 5:24; 23:8
**encourage** - 35:20
**end** - 7:18
**endeavor** - 15:24
**engage** - 26:13; 37:21
**entire** - 7:16, 22
**entitled** - 15:20
**ESI** - 18:5; 27:3
**especially** - 9:10; 13:3
**et cetera** - 8:3; 21:9; 38:20
**Ethics** - 9:16
**evasive** - 3:7
**evidence** - 3:22; 8:3, 14; 11:6; 13:4; 15:5; 16:6; 24:9; 27:7, 17; 31:19
**evidenced** - 19:2
**evidentiary** - 4:5; 15:19; 16:12; 17:2, 12; 22:23; 25:18; 35:17
**exact** - 11:21

**exactly** - 10:17; 15:23; 18:17; 25:10; 36:4
**example** - 7:5; 16:17; 17:14; 20:9; 26:6, 20; 30:21; 36:15
**exchanged** - 4:21
**exchanges** - 4:24
**Excuse** - 4:9
**exemplary** - 18:18
**exemplified** - 17:24
**existence** - 18:8, 14
**existent** - 3:8
**expect** - 16:20
**explain** - 21:11; 36:13
**exploration** - 29:17
**explore** - 29:2
**extensive** - 17:12; 25:22
**extent** - 9:10; 19:15; 39:15
**extra** - 7:24; 19:15
**extreme** - 5:13
**extremely** - 38:24; 39:11
**eyes** - 38:16, 25; 39:10
**face** - 17:15
**fact** - 18:5; 22:9
**factors** - 8:16
**facts** - 25:1
**factual** - 3:20; 4:1; 17:10; 19:15; 20:24; 21:7, 18; 23:24; 24:5, 21
**failure** - 11:7; 13:4; 34:13
**fairly** - 15:23; 18:10; 38:22
**faith** - 42:16
**far** - 15:2
**fatigue** - 29:10
**Federal** - 15:21
**feelings** - 6:12
**fellow** - 9:20
**few** - 21:5
**figure** - 16:8; 17:2; 34:22
**file** - 3:14, 21; 8:14; 9:14; 13:12; 15:25; 17:14; 19:13, 22; 20:11; 31:3; 36:6
**filed** - 12:21; 13:6; 14:8; 18:13; 22:5; 33:19
**files** - 38:23; 42:7
**filing** - 3:6; 10:18, 21; 14:14; 22:23; 39:20, 23
**filings** - 39:6, 18
**final** - 25:9; 41:12, 23; 42:11
**financial** - 6:21; 8:7; 33:17; 41:10
**findings** - 38:17
**fine** - 13:14; 20:7; 24:11; 41:20
**first** - 3:18; 5:2; 17:7; 29:18; 30:9; 35:11; 36:15; 38:11; 39:8
**fit** - 40:16

**five** - 8:14; 12:23
**flighting** - 28:3
**Flores** - 36:18; 43:23
**FLORES** - 15:11; 26:3; 29:10; 35:22; 37:2
**Florida** - 9:7, 12, 14, 16
**Florida Bar** - 10:25; 14:2
**Florida Rules of Professional Conduct** - 9:22
**focus** - 5:2
**folks** - 27:10
**follow** - 25:20
**follow-up** - 25:20
**force** - 37:24
**forced** - 8:10; 27:17
**form** - 7:24; 16:2; 33:20; 35:11
**formal** - 4:23
**forms** - 15:17
**forward** - 32:9, 16, 19; 34:20
**framing** - 4:20
**Frankly** - 14:21
**frankly** - 12:13
**free** - 40:9
**frivolous** - 10:20
**frlaw.us** - 43:24
**full** - 15:25; 25:17; 28:13, 15; 35:13
**fully** - 19:17; 23:10; 29:22; 31:6; 37:21; 40:24
**fulsome** - 33:24
**gain** - 9:8; 10:15; 33:20
**Gary** - 6:11; 7:11; 8:23; 10:1, 9
**given** - 4:20; 25:9; 27:1; 28:8; 36:10, 15
**global** - 5:25; 21:4, 23, 25; 22:7, 16
**go ahead** - 18:24; 28:12
**Google** - 3:11; 8:1; 31:20
**governing** - 38:18
**granular** - 36:16
**granulate** - 18:17
**great** - 29:5; 40:7
**Great** - 44:1
**grievance** - 9:15; 10:15; 12:3
**grievances** - 3:6; 7:25; 8:14; 9:6, 18; 10:14, 18; 14:21; 33:19
**ground** - 20:7
**grounds** - 33:17
**group** - 7:13
**guess** - 3:19; 4:3; 5:1, 18; 6:6, 24; 7:25; 25:20; 26:10; 28:3; 42:2, 19
**guys** - 9:1; 29:10; 40:13; 42:20; 43:14
**handed** - 33:14; 34:2

**handling** - 11:3
**hands** - 29:25
**happy** - 18:17; 20:3; 36:13; 40:15
**hard** - 30:21
**harm** - 29:18; 40:11
**hear** - 4:1, 6; 10:3, 9; 5:8, 11; 33:15; 36:11
**hearing** - 4:6; 15:19; 16:12; 17:2, 5, 12; 20:8; 25:18; 35:9, 18; 36:8; 37:3
**help** - 17:20
**helps** - 34:6
**Hillsborough** - 14:19
**Hillsborough County** - 14:6
**himself** - 12:20
**hold** - 17:12; 24:16; 30:14, 16, 19
**Holladay** - 13:9
**hopefully** - 34:6
**hundred** - 39:23
**I don't know** - 9:19; 11:1; 18:23; 19:22; 29:25; 31:6; 34:17; 36:4
**idea** - 33:23
**identified** - 27:5, 7
**images** - 28:18; 42:9
**immediately** - 6:4; 28:4
**impasse** - 31:8
**implicate** - 10:14
**important** - 40:5, 19
**imposed** - 35:15
**impossible** - 11:4
**improper** - 9:8; 12:2, 9
**in fact** - 4:7; 22:10, 21
**inappropriate** - 11:3
**include** - 5:15; 25:23; 37:3
**included** - 3:9; 36:21
**incompleteness** - 6:9
**inculpate** - 10:25
**indicated** - 22:20
**indicates** - 27:24
**Indicating** - 10:10
**indicating** - 37:19
**informal** - 26:14
**informally** - 41:16
**information** - 16:7; 19:7, 19; 20:4; 23:23; 24:4, 6; 26:15; 27:1; 39:12; 41:11; 43:21
**informed** - 18:10
**inherent** - 40:24
**inquiry** - 25:21
**inside** - 12:3, 9
**instance** - 31:13
**instead** - 20:10
**intend** - 3:14, 21; 14:15; 19:23
**intended** - 5:25

**intention** - 39:5
**interested** - 3:25; 4:6
**interesting** - 19:5
**interject** - 4:16
**internal** - 40:5
**interpretations** - 38:18; 40:25; 41:4
**interprets** - 41:12
**interrogatories** - 26:18
**interrogatory** - 25:24
**interrupting** - 18:22
**intertwined** - 34:12
**introduction** - 16:4
**invocations** - 9:18
**involve** - 24:23
**involved** - 14:6; 30:18
**involvement** - 6:17
**involving** - 21:16; 27:13
**irreparable** - 40:11
**Is that correct** - 32:20
**issue** - 12:6, 16; 15:1, 9, 16; 16:14; 17:22; 19:21; 20:5; 21:6; 23:12; 25:5, 23; 26:1; 29:12, 21; 30:10; 31:21, 25; 33:1, 7; 34:5; 35:13; 36:1; 37:24; 40:24; 41:7; 42:3
**issued** - 26:17
**issues** - 3:25; 5:17; 6:1, 9; 13:25; 15:2, 23; 16:4; 21:5; 22:21; 32:3, 15, 24
**ITAR** - 38:19; 41:1
**item** - 15:15; 42:3, 11
**items** - 31:16; 38:24
**jen.ghostgunner2** - 30:22
**job** - 14:21
**judge** - 14:3
**Judge** - 18:22
**judges** - 14:19
**junkversion2** - 30:22
**jurisdiction** - 12:6; 14:2
**keep** - 15:5
**keeping** - 13:14; 22:14
**keeps** - 14:10, 17
**kind** - 21:23; 24:20; 33:20; 40:14; 41:9
**known** - 21:9
**lack** - 32:11
**larger** - 33:8
**LAROSIERE** - 4:16; 18:25; 28:13; 41:22; 43:7
**Larosiere** - 28:7; 43:7
**last** - 5:25; 21:24; 22:3, 16; 27:2; 37:2
**law** - 5:14; 14:11, 18
**lawsuit** - 20:23
**lay** - 40:6
**least** - 4:19; 6:7; 28:22; 41:6
**leaving** - 3:10

**led** - 13:25
**length** - 16:1; 20:12
**less** - 12:22; 19:17; 21:18
**levels** - 24:24
**levied** - 12:10, 16
**limitation** - 23:10
**limited** - 22:3
**limiting** - 22:19
**literally** - 36:5
**litigate** - 23:7
**litigation** - 6:22; 7:23; 9:9, 23; 10:15, 19; 12:3, 9, 24; 17:22; 30:14, 16, 19; 32:10; 38:5
**local** - 25:12; 35:9
**log** - 10:1
**look** - 16:14, 17; 43:20
**looking** - 4:3; 17:15
**losing** - 14:22
**low** - 27:8
**Madam Court Reporter** - 11:11; 30:6
**Madam Smith** - 43:16, 18
**maintain** - 24:2; 39:18
**maintained** - 26:1
**major** - 27:9
**manner** - 11:4
**mark** - 36:12
**masters** - 5:11, 14
**materials** - 20:5; 27:20; 30:13; 38:12, 15; 42:5
**matter** - 17:13; 18:5; 26:18; 34:21
**matters** - 4:18; 29:18
**mean** - 9:25; 11:1; 28:13; 33:3; 35:23
**means** - 22:6
**meet** - 21:13, 23-24; 22:3, 7, 15; 23:1, 6; 30:10; 34:14; 41:16
**meet-and-confer** - 21:13, 23-24; 22:3, 7, 15; 23:1, 6; 34:14; 41:16
**meeting** - 22:9
**mentioned** - 3:2; 19:3
**mere** - 16:1
**merits** - 29:17
**messages** - 19:14; 24:25; 28:1
**meta** - 17:22; 25:23
**meta-discovery** - 25:23
**might** - 9:3; 17:20; 18:21
**minor** - 6:4; 38:10
**minute** - 11:14
**mischaracterized** - 11:10
**models** - 42:9
**modifications** - 40:18
**modify** - 40:17
**moment** - 4:17; 42:25

**money** - 14:25
**Moreover** - 7:3
**motion** - 3:3, 9, 14, 21; 4:2, 4, 12, 14; 5:2; 11:18; 15:16, 18; 16:10, 25; 17:1, 9; 19:24; 20:1; 21:12; 22:24; 24:8, 10, 22; 25:4, 10, 16; 26:1; 27:9; 28:2, 10; 29:11; 31:2, 4; 32:8, 20, 25; 33:8; 34:4; 35:5, 7-8, 11, 14, 21; 36:3, 6, 12, 14, 20; 37:9, 18; 41:14
**motion to compel** - 22:4
**motion to dismiss** - 6:16
**motions** - 5:17, 20; 16:2; 33:9; 34:25
**motive** - 35:19, 22
**move** - 11:20; 32:16; 38:7; 41:22
**Mr. Depury** - 3:18; 8:25; 10:2, 7, 10; 11:25; 13:6, 23; 31:11; 32:21; 33:2, 11; 34:9; 35:7, 19, 24; 38:3; 43:9
**Mr. Elik** - 26:7, 20
**Mr. Elik's** - 16:18; 38:14
**Mr. Flores** - 3:23; 4:13; 15:10, 14; 17:23; 18:21, 23; 19:22; 20:18; 24:5; 26:17; 28:7, 14; 29:3, 15; 30:2; 31:1, 10; 32:2; 34:3; 35:2, 7, 25; 36:23; 37:7, 13; 38:8; 43:10
**Mr. Gingras** - 13:13
**Mr. Holladay** - 13:13
**Mr. Larosiere** - 3:10, 12; 5:10; 6:25; 7:2; 8:9, 23; 9:3; 11:10; 12:19, 22; 13:11; 18:20; 20:11; 26:10; 27:12; 29:6, 13, 20; 30:4; 31:6; 36:18, 24; 37:6, 15; 38:1, 7; 39:11, 22; 40:1, 21; 42:13; 43:9
**Mr. Lettman** - 12:19; 13:8, 11
**Mr. Reynal** - 3:2, 13; 4:9, 12, 16; 5:1, 4; 7:10; 8:13, 21; 9:4, 25; 10:4, 8, 11; 11:16, 24; 12:4, 18; 15:6; 21:21; 31:15; 32:15; 33:12; 38:9; 39:7, 15; 40:3; 41:19; 43:1, 6, 16, 22; 44:2
**Mr. Reynal's** - 11:12
**Mr. Zermay** - 3:19; 4:10; 6:25; 8:20; 9:21; 11:9, 15, 17, 20; 17:7; 20:16; 23:11; 25:20; 27:25; 38:1; 42:2, 24; 43:2, 15
**Ms. Smith** - 15:11; 22:13; 43:10, 12; 44:2
**mute** - 10:5
**name** - 43:20
**nature** - 7:4; 22:15; 23:21;

24:7, 15; 25:5
**necessary** - 3:5; 11:17; 18:16
**necessitated** - 7:14
**necessity** - 7:23
**need** - 16:8, 24; 21:11; 23:7; 25:16; 29:21; 36:7; 37:4; 41:24; 43:17
**networks** - 41:1
**never** - 22:20; 23:2
**new** - 25:9
**non** - 3:8; 6:8
**non-existent** - 3:8
**non-responsive** - 6:8
**none** - 26:8
**noted** - 43:1
**nothing** - 23:1; 34:12; 41:10
**Nothing** - 43:6, 9
**notice** - 19:5; 30:14, 16, 19; 42:11
**noticed** - 15:23
**notification** - 42:24
**notifying** - 42:18, 23
**number** - 19:14
**numbers** - 17:18
**object** - 15:22; 40:4
**objection** - 5:15; 20:25; 27:18
**obligated** - 9:14; 20:1
**obligations** - 3:15; 6:2; 29:16; 31:7; 37:22
**observation** - 9:16
**observe** - 20:21
**observed** - 18:14
**obvious** - 31:12
**office** - 9:12
**offline** - 8:25
**often** - 5:11
**One** - 32:25
**one** - 5:6, 9, 15, 19; 6:17, 23; 9:4, 11, 22; 10:7; 17:23-25; 21:14; 24:20; 25:20; 26:11; 27:8; 28:14; 30:5, 23; 31:16; 33:1; 34:18; 37:18; 42:1
**one-way** - 9:11
**ongoing** - 10:19
**opening** - 32:2; 35:3
**operates** - 24:8
**operating** - 39:13
**opinions** - 9:17
**opposal** - 37:24
**oppose** - 20:7; 25:2, 4, 7; 28:10, 14; 31:4
**opposed** - 4:14; 8:18; 11:18; 15:7; 25:19; 31:4; 32:7; 33:16, 22; 36:7, 12; 37:17
**opposing** - 3:5; 10:19
**opposition** - 29:4; 39:21

**order** - 7:4; 15:16; 17:5; 32:9; 33:20; 35:14, 16; 39:12, 14; 43:3
**otherwise** - 39:18
**out-of-state** - 6:15
**overlap** - 33:6
**overlay** - 34:11, 13
**oversee** - 3:4; 13:22
**own** - 16:19; 24:16; 29:12
**parsing** - 24:21
**part** - 21:9; 25:14; 28:23; 34:15; 35:20; 42:20
**participate** - 10:8
**particular** - 7:3; 14:12; 18:13; 42:6, 21
**particularity** - 16:13; 27:3, 5
**parties** - 14:10; 16:21
**party** - 6:22; 7:7; 29:16
**party's** - 5:15
**passed** - 32:1
**past** - 31:22
**pay** - 6:18; 12:14
**pending** - 5:16; 6:15
**people** - 14:13, 16; 24:16; 36:9
**percent** - 34:20; 39:23
**perhaps** - 5:19; 18:8
**permission** - 42:8
**person** - 14:13; 23:25
**pertinent** - 25:13
**petition** - 42:21
**phase** - 12:4
**Phone number** - 43:25
**phrase** - 11:22
**placing** - 8:17
**plaintiff** - 23:15; 42:5, 12
**plaintiffs** - 14:25
**plaintiffs/counter** - 7:15
**plaintiffs/counter-defendants** - 7:15
**plan** - 42:10
**platform** - 24:7
**pleadings** - 10:21
**pocket** - 32:11
**point** - 3:8; 4:21; 6:9, 12; 9:12; 10:12; 14:17; 18:9; 20:17; 21:3; 22:20; 30:4; 32:13; 37:4; 40:2; 41:23
**pointed** - 27:25
**points** - 38:9
**Portions** - 11:19
**position** - 3:4, 16; 4:23; 5:5; 6:24; 12:16; 20:4, 9; 23:3; 25:16; 26:3, 9; 27:11; 29:1, 19; 30:3; 40:20; 41:3; 42:22
**positions** - 4:25; 6:3, 14, 22; 21:14
**possession** - 27:21; 28:19

**posts** - 18:4; 29:14
**powers** - 23:20
**practice** - 41:15
**predominantly** - 40:22
**prepare** - 20:2
**prepared** - 18:12; 27:24; 28:5, 20; 29:22; 40:22
**preparing** - 19:25
**presenting** - 38:9
**preserve** - 16:5; 18:9; 23:22; 24:2; 27:6
**preserved** - 30:24
**pretty** - 4:25; 26:18
**preview** - 15:24
**primary** - 30:12
**privileges** - 23:21; 24:17; 25:25
**pro hac vice** - 43:22
**Procedure** - 15:21
**Proceedings** - 44:3
**proceedings** - 9:23
**process** - 19:25
**production** - 20:19; 21:1; 27:15; 28:18; 38:14
**professional** - 11:4
**professionalism** - 43:11
**programs** - 38:20
**proper** - 14:24
**properly** - 19:16
**property** - 15:4
**propose** - 7:5
**proposing** - 7:9
**propounded** - 26:4
**propounding** - 25:24
**proprietary** - 40:5
**protections** - 39:19; 40:14
**protective order** - 38:24; 39:19; 40:17
**proven** - 25:4
**provided** - 19:10, 12, 19; 28:17; 38:19; 41:4
**public** - 39:24; 40:10
**publically** - 24:6; 39:4
**publication** - 42:4
**published** - 42:8
**pull** - 37:5
**punish** - 34:17
**purpose** - 21:13
**purposes** - 3:14; 5:6; 11:17
**put** - 4:13; 17:3; 37:16
**putting** - 26:1
**qualification** - 24:18
**questions** - 3:20; 10:24; 17:7; 31:12, 22
**quickly** - 7:12
**quite** - 17:15
**quote** - 22:22; 24:16
**raised** - 6:2

**raising** - 10:20
**rare** - 36:5
**rather** - 16:1; 26:21
**reach** - 43:23
**reached** - 17:18
**read** - 11:11, 19; 17:8; 18:25; 25:14; 38:18
**ready** - 34:20
**really** - 11:16; 28:9; 29:11; 31:5; 34:9; 35:4; 37:18; 40:25
**reason** - 9:19; 23:3
**reasonable** - 18:6; 25:21
**reasons** - 17:24
**receiver** - 32:25; 33:2
**recollection** - 22:8
**record** - 11:23; 22:14; 37:25
**records** - 26:6, 20
**Reddit** - 16:18; 18:3; 19:4, 10; 29:12
**refer** - 14:4; 26:12
**reference** - 37:11
**referenced** - 37:13
**referencing** - 15:5
**referred** - 21:22; 23:4; 30:8
**referring** - 11:22; 19:23; 42:6
**reflect** - 5:24
**refusing** - 20:23; 21:17
**regarding** - 3:20; 23:14, 22; 26:7
**regulatory** - 41:1
**relate** - 23:21
**related** - 3:21; 22:5; 33:18; 34:4
**relatively** - 15:17; 27:8
**relief** - 4:4; 8:19; 15:17, 20; 35:16; 37:14, 17; 39:16; 42:21
**relying** - 17:11
**remaining** - 42:3
**remedy** - 6:5; 16:9
**remember** - 5:24; 39:13
**removed** - 18:3
**repeated** - 9:18
**repeatedly** - 6:3
**report** - 17:14, 17; 18:25; 27:22; 28:5, 19
**request** - 7:4; 16:3, 10; 19:9; 20:19; 21:1; 23:5, 14; 27:15; 28:18; 36:8; 38:14
**requested** - 4:4; 8:19; 20:5; 39:16
**requesting** - 7:7; 8:12; 19:2
**requests** - 8:16; 11:8; 19:6; 25:13; 26:4; 34:8
**require** - 25:12; 26:22
**required** - 26:4; 42:14

**requiring** - 24:21
**resist** - 21:12; 26:11
**resolve** - 21:15; 26:14; 32:18; 35:3; 38:5; 41:17
**resolved** - 16:24
**respected** - 23:10
**respond** - 8:15; 9:5; 11:1; 13:5
**responding** - 9:17
**response** - 18:2; 19:8; 20:19; 21:1; 23:5; 24:10; 27:15; 37:19; 38:13
**responses** - 3:8; 6:2; 16:19; 22:6; 24:15; 25:13; 26:12; 28:17
**responsive** - 6:8; 38:12
**retaliation** - 33:20
**retribution** - 31:24
**reveals** - 35:25
**revelation** - 26:21
**review** - 40:15
**reviewing** - 22:25
**reviews** - 3:11; 8:1; 31:21
**Reynal** - 5:10; 11:9; 22:18
**REYNAL** - 32:21; 33:4; 39:25; 41:20; 42:19
**ride** - 13:20
**Rocket.Chat** - 3:25; 16:14; 18:11; 19:4; 23:18; 24:1, 7
**rooms** - 18:14, 18
**Rule** - 15:21; 41:6
**rule** - 6:23; 9:13; 14:4; 21:18
**Rules** - 9:7; 10:25
**rules** - 9:14; 10:21; 25:12; 26:22; 33:25; 35:10; 41:12; 42:14
**sake** - 43:2
**sanction** - 8:7
**sanctions** - 16:10; 35:8, 15
**satisfied** - 31:7
**satisfying** - 3:15; 29:24
**save** - 18:21
**saw** - 3:22
**schedule** - 15:18; 16:11; 17:1, 5; 25:17; 35:9, 17; 36:8, 21; 37:9
**scope** - 22:4
**screen** - 3:22; 28:1
**screen shots** - 17:8; 36:20
**seal** - 39:20, 25
**second** - 17:24; 21:22; 23:12; 37:9; 42:1
**see** - 14:15; 32:3, 13; 40:16, 19; 41:16
**seek** - 35:8; 37:14; 39:2
**seeking** - 7:4; 33:13; 35:14
**seem** - 5:21; 13:11; 31:25

**sees** - 9:13
**sense** - 5:20; 22:17; 33:6; 40:11
**sensitive** - 38:24; 39:12
**sent** - 3:23; 30:14, 17
**sentence** - 37:2
**separate** - 32:24; 34:4, 7, 25
**separately** - 26:25
**serial** - 3:6
**served** - 19:1
**set** - 15:18; 17:11; 25:22
**sets** - 35:17
**settle** - 32:5
**several** - 14:8; 28:18
**shocking** - 12:13
**short** - 16:1; 35:11
**shot** - 3:22; 28:2
**show** - 22:21; 25:10
**showing** - 31:2
**shown** - 16:3; 36:5
**side** - 4:19; 14:7; 16:5; 17:8; 21:4; 24:18; 29:18; 37:23; 43:9
**side's** - 3:6; 6:1
**signed** - 18:2; 28:17
**simple** - 15:17; 37:7
**Simply** - 36:24
**simply** - 19:13; 32:10; 34:17; 39:16
**situations** - 5:16
**small** - 30:5
**someone** - 14:4
**somewhat** - 34:11
**sorry** - 4:9; 9:1; 13:8; 18:22; 24:3; 30:6; 33:2
**sort** - 9:8; 12:6
**sound** - 41:19
**sounds** - 8:18; 10:17; 15:6; 25:18
**Sounds** - 41:20
**source** - 29:9
**sources** - 27:3
**spaceprivateer** - 30:22
**spare** - 13:12
**speaking** - 20:22
**special** - 5:11, 14
**special master** - 3:3, 5; 4:15; 5:2, 5; 6:12, 18-19; 7:5, 8, 14, 22; 8:11; 11:5; 12:5, 15; 13:2, 21; 14:2, 25; 15:7; 31:17, 23; 32:9; 33:3, 9, 16; 34:2, 15-16, 21; 35:21; 36:25; 37:3, 11, 20, 24
**specific** - 8:5; 19:6; 20:3
**specifically** - 40:18; 42:14
**specified** - 27:3
**specify** - 18:13
**spend** - 14:25

**spirit** - 42:16
**split** - 7:18
**spoken** - 8:24
**spoliation** - 15:9; 16:14; 19:3, 9; 20:20, 22; 21:6; 27:17, 22; 30:11; 31:19; 32:4, 16; 33:1, 7, 13, 23; 34:5
**stand** - 29:11
**standard** - 20:11; 27:9
**stands** - 13:16
**start** - 35:10
**started** - 21:21; 31:16; 32:17
**starting** - 31:24
**state** - 6:15; 12:13
**statement** - 32:2
**states** - 32:6
**stating** - 3:24
**status** - 21:15
**stemming** - 42:3
**STENOGRAPHER** - 11:13; 15:13; 43:13, 19; 44:1
**step** - 21:19; 38:4
**sticking** - 37:4
**stored** - 23:23; 24:3
**style** - 20:12
**sub** - 17:22
**subject** - 16:16
**subjects** - 31:9
**submit** - 8:6; 19:23; 24:14; 36:11
**substantial** - 28:22
**substantive** - 5:23
**substantively** - 4:18; 8:15; 11:7; 13:5
**suffice** - 31:3
**sufficient** - 26:4
**sufficiently** - 25:6; 28:11
**suggest** - 23:2; 33:23; 40:18
**suggested** - 7:17
**summary** - 38:17
**summary judgment** - 20:12
**supply** - 20:14; 24:8; 25:11
**supports** - 33:7
**surprised** - 29:6, 8
**surprising** - 26:21
**swearing** - 18:1
**sweeping** - 23:19; 24:15
**swore** - 26:20
**sworn** - 16:19
**tactical** - 33:21
**target** - 27:22
**targets** - 25:25
**technical** - 5:20; 36:1
**term** - 23:16; 32:11
**terminates** - 43:17

**terminating** - 8:7
**termination** - 43:4
**terms** - 24:16; 40:14
**text** - 17:14; 19:13, 22
**THE** - 11:13; 15:13; 43:13, 19; 44:1
**the Court** - 3:3; 7:17; 8:6, 9, 17; 10:21; 13:1; 15:16, 24; 17:3, 11; 20:13; 21:16; 25:12; 26:2; 27:13; 29:24; 31:13; 34:18; 35:20; 36:13; 37:19; 42:18
**thegatalogchat. deterrencedispensed. com.txt** - 27:23; 28:6, 20
**thousand** - 34:20
**three** - 14:18; 31:16
**throughout** - 12:23
**throw** - 29:24
**throwing** - 31:21
**thumbs** - 10:11
**tied** - 12:19
**timing** - 4:20
**title** - 23:25
**today** - 32:5, 18; 34:22; 35:4
**top** - 30:15
**topic** - 36:2
**traditions** - 13:14
**transition** - 9:2
**true** - 34:16
**truly** - 32:7
**try** - 34:20
**trying** - 9:2, 25; 10:2; 19:20; 31:12
**turn** - 4:12; 15:10; 32:10; 35:1
**tweets** - 19:11
**Twitter** - 18:4; 19:4
**two** - 5:19; 15:17; 17:24; 31:18; 32:24; 33:9; 34:7, 25; 38:10
**type** - 5:21; 12:25
**ulterior** - 35:19
**under** - 9:14; 15:21; 37:22; 39:13, 20; 42:14
**Under** - 9:7; 39:25
**underlying** - 20:20
**undermines** - 41:6
**understood** - 12:1
**Understood** - 37:15; 40:3
**unfortunately** - 12:19; 14:1
**unnecessary** - 38:4
**unquote** - 24:17
**unrelated** - 42:6
**unsigned** - 19:13
**urging** - 37:21
**users** - 24:25
**value** - 22:23; 40:7

**varieties** - 25:1
**venue** - 14:24
**version** - 25:9; 36:16
**view** - 11:2; 16:23; 18:19
**violated** - 10:21; 41:2
**violating** - 10:25
**violation** - 6:23; 9:13; 21:18
**wants** - 7:17; 17:1
**warned** - 14:12
**warrant** - 24:13; 25:6; 35:13
**warranted** - 6:20; 36:10
**warrants** - 8:6
**website** - 16:15; 24:17; 25:5; 36:1
**week** - 21:24; 22:3, 16; 30:14
**weeks** - 21:3
**whole** - 40:2
**wholeheartedly** - 22:2
**wholly** - 12:8
**willful** - 11:6
**willing** - 40:13
**Wilson** - 22:5
**Wilson's** - 38:12
**wishes** - 43:4
**wonder** - 5:22; 19:19
**wondering** - 23:24
**word** - 22:17; 23:3; 31:24
**words** - 20:10; 24:13; 25:2; 29:4, 23; 35:12
**work product** - 19:24; 20:2, 25; 27:18
**written** - 25:24
**yourself** - 10:5
**Zach** - 6:11, 24; 21:19, 21; 37:25
**ZERMAY** - 4:11; 8:4; 23:12