UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №: 6:24-cv-01629

MATTHEW LAROSIERE,

      *Plaintiff*,

v.

CODY RUTLEDGE WILSON, DEFCAD, Inc., DEFENSE DISTRIBUTED, and DIOSKOUROI LLC,

      *Defendants*.

_____/

**MATTHEW LAROSIERE, JOHN ELIK, ALEXANDER HOLLADAY, JOSH KIEL STROKE, JOHN LETTMAN, AND MAF CORP'S (COLLECTIVELY, "MOVANTS") REPLY TO DAVID S. GINGRAS' DOC. 141 RESPONSE IN OPPOSITION**

At the outset, Movants see that Mr. Gingras ceased signing pleadings after January 31, 2025. (Doc. 79 at 23). To the extent Mr. Gingras represents he was not involved in any other way after that date, (Doc. 141 at 15), Movants do not contest it. Movants here briefly respond to an erroneous legal conclusions and allegations.

### I. § 1927 CLEARLY APPLIES TO COUNTERCLAIMS, AND CERTAINLY TO AMENDED COUNTERCLAIMS

Mr. Gingras argues that §1927 does not apply to "[c]omplaints or other claim-initiating pleadings[.]" (Doc. 141 at 3). All of the cases he cites for this proposition deal with motions targeting an initial complaint. However, "[Gingras'] sanctioned filings did not initiate this litigation. It was already underway." *R. Prasad Indus. v. Douglas*, 673 F. App'x 676, 677 (9th Cir. 2016) (affirming §1927 sanctions for claims asserted in an FAACC, which "unreasonably prolonged and complicated the litigation.").

Contrary to Mr. Gingras' claims, Courts in this very district have sanctioned counterclaims under §1927. *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, No. 5:04-CV-12-OC-10GRJ, 2008 WL 906739, at *14 (M.D. Fla. Apr. 2, 2008) ("In short,

1

Silverman's actions in bringing this counterclaim and then continuing to prosecute it without any factual basis to support it, constitutes bad faith and is the quintessential type of conduct § 1927 is designed to deter."). *American Honda* is significantly analogous to this case, as is *Riddle & Assocs., P.C. v. Kelly*, where the Seventh Circuit observed:

> Again, we find that a reasonably careful attorney should have known that the counterclaim against Ross & Hardies was without merit. The claim multiplied the proceedings unreasonably and vexatiously, and those who create unnecessary costs must also bear them. In fact, so clear is it that Edelman filed a frivolous counterclaim in order to complicate this already far too complicated and absurdly protracted litigation, to the cost of Riddle and its counsel, that the district judge committed an abuse of discretion in refusing to sanction Edelman under § 1927.

414 F.3d 832, 837 (7th Cir. 2005) (cleaned up).

Mr. Gingras' assertion that Rule 11 is the exclusive avenue for unsupported pleadings filed for improper purposes is incorrect. Movants gained concrete evidence that Defense Distributed and its counsel had no factual basis for their claims after discovery. If it were as Mr. Gingras asserts, there would be no recourse for a baseless counterclaim that was filed then voluntarily abandoned after forcing expensive discovery and motion practice. That type of conduct "is the quintessential type of conduct § 1927 is designed to deter" with respect to counterclaims, and with respect to initiating claims, the Court's inherent authority fills the gap. *Am. Honda Motor Co.*, 2008 WL 906739 at *14.

## II.  MR GINGRAS' RESPONSE EVINCES HIS MISCONDUCT

In his response, Mr. Gingras points to reprehensible things written on his blog. (Doc. 141 at 10). Movants share Mr. Gingras' disgust with the posts, however, his attempt to use them to shield his hacking allegations makes no sense. "At a time when the federal courts—which are a scarce dispute resolution resource, indeed—are straining under the pressure of an ever-increasing caseload, we simply cannot tolerate this type of litigation.

2

Particularly with regard to civil RICO claims, plaintiffs must *stop and think* before filing them." *Pelletier v. Zweifel*, 921 F.2d 1465, 1522 (11th Cir. 1991).

On November 19, 2024, Gingras signed a pleading alleging that "Lettman is so rabidly devoted to The Gatalog enterprise that he hacked attorney Gingras' own website after Larosiere filed his action to interrupt the case. What's baffling is that Lettman immediately advertised to Gingras, and this court, that he had done this, and all with the approval of Counterdefendants Larosiere and Elik" (Doc. 29 at 19).

First, Mr. Gingras argues that his website "appeared to have been hacked" because comments on his website were made using his name. (Doc. 141 at 10). Mr. Gingras' comments section does not require a user to log in, and will post a comment using whatever name and email address an individual comments with.[1] (Doc. 141-1 ¶ 14-15). Although he references in passing that he is disliked online (Doc. 141-1 ¶ 42) he neglects to mention that his Blog was routinely laden with mean comments long before his involvement in this case.[2] Mr. Gingras further asserts he knew the site was "hacked" because his site only shows a "profile picture" when Mr. Gingras himself posts (Doc. 141-1 ¶15), but his own motion shows other "profile pictures" next to comments. (Doc. 141 p.11). Additionally, a quick look at any of his previous blog posts reveals plenty of profile

---

[1]Gingras Law Office Blog, "LO v CE – Post Trial Update," Jun. 19, 2024 (https://web.archive.org/web/20240620201008/https://gingraslaw.com/lo-v-ce-post-trial-update/) (archived Jun. 20, 2024) (showing unrestricted comment field, as well as dozens of comments including many from "David Gingras," "Gingras JR," *et al.*).
[2] *Supra* Note 1. Mr. Gingras gained a significant reputation online stemming from his representation of Laura Owens against former *Bachelor* star Clayton Echard, which is likely why his comments were so active and vitriolic. *See* "Attorney for Laura Owens Speaks Out Following Her Indictment in Clayton Echard Case" , *Muzique Magazine*, May 12, 2025, https://muziquemagazine.com/exclusive-attorney-for-laura-owens-speaks-out-following-her-indictment-in-clayton-echard-case/.

pictures, because—as Mr. Gingras would know if he had engaged in a reasonable pre-suit inquiry—his website fetches the "profile picture" based on the email address provided.[3] (Ex. A ¶¶ 32-44).

In sum, the only pre-filing support Mr. Gingras offers is that on October 16, 2024, an individual he believes to be Mr. Lettman sent him an email; and then on October 17, 2024, Mr. Wilson told him that Mr. Larosiere was "behind" the "hack" (Doc. 141-1 at 6); and that same day Mr. Gingras observed an individual in North Carolina who "appear[s] to NOT be hiding their IP address" "post some stupid comments" which were "[n]ot yet" a CFAA violation which he "assume[d Larosiere was] not" "behind[;]" (Doc. 141-1 at 21).

That Mr. Wilson told Mr. Gingras that the Floridian Mr. Larosiere was "behind" the "hack" (which Mr. Gingras knew or reasonably should have known was a North Carolinian simply typing mean things and unusual text characters into Gingras' unrestricted comment section) is not sufficient to allege in good faith that the Pennsylvanian Lettman "hacked" Mr. Gingras' website in a RICO action.

As for the "streaky lines," the motion identifies these as combined Unicode diacritical marks, which are a common feature of digital plain text. (Ex. A ¶¶ 7-31). That Mr. Gingras viewed the motion identifying what the "streaky lines" were as "a veiled admission of responsibility" evinces Mr. Gingras a continued disregard for a reasonable pre-filing inquiry. (Doc. 141-1 ¶ 49-52).

The post-filing materials citied by Mr. Gingras do not cure his repeated signing of pleadings when he "should have known that the counterclaim[s] against [Movants] w[ere]

---

[3] *Supra* note 1, *see* comment section in referenced post, including several users with profile pictures.

4

without merit." *Riddle & Assocs.*, 414 F.3d 837. These materials include a still image of Plaintiff Larosiere taken from a video aired November 22, 2024, which Mr. Gingras places great emphasis on. (Doc. 141-1 ¶ 28). As the attached affidavit of Sean Martin explains, Mr. Gingras misrepresents the video's context. (Ex. B). Whatever "big doinks" (Doc. 141-1 ¶ 26-27) actually are, Mr. Gingras should have taken the time to "stop and think" before signing on to the counterclaims. *Pelletier*, 921 F.2d at 1522.

### III. CONCLUSION

The motion should be granted.   DATED:  October 10, 2025

Respectfully submitted,

| /s/ Gary C. De Pury | /s/Matthew Larosiere | /s/ Zachary Z. Zermay |
|---|---|---|
| Gary C. De Pury | Matthew Larosiere, Esq. | Zachary Z. Zermay, Esq. |
| Florida Bar No: 126588 | Fla. Bar. No. 1005581 | Fla. Bar № 1002905 |
| Law Offices of Gary De Pury, P.A. | The Law Offices of Matthew Larosiere | Zermay Law, P.A. |
| 21035 Leonard Road | 6964 Houlton Circle | 3000 Coral Way Ste 1115 |
| Lutz, Florida 33558 | Lake Worth, FL 33467 | Coral Gables, FL 33145 |
| Tel: (813) 607-6404 | Email: Larosieremm@gmail.com | Email: zach@zermaylaw.com |
| Email: Gary@DePury.com | Tel: (561) 452-7575 | Tel: (305) 767-3529 |
| *Lead Counsel for Alex Holladay and MAF Corp.* | *Lead Counsel for Elik, Stroke, and Lettman* | *Lead Counsel for Plaintiff Matthew Larosiere* |

### **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of October, 2025, I electronically filed the foregoing document using CM/ECF, which transmitted a notice of electronic filing to all counsel of record and opposing, which included all but Federico A. Reynal. I further certify that today a courtesy copy of this document was e-mailed to Mr. Reynal and served to him via U.S. mail under Rule 5(b)(2)(C).

*/s/ Zachary Z. Zermay*
Zachary Z. Zermay