UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №: 6:24-cv-01629

MATTHEW LAROSIERE,

*Plaintiff*,

v.

CODY RUTLEDGE WILSON, DEFCAD, Inc.,
DEFENSE DISTRIBUTED, and DIOSKOUROI
LLC,

*Defendants*.

_____/

**PLAINTIFF'S RULE 11 MOTION FOR SANCTIONS REGARDING DEFENDANT'S
DOC. 136 MOTION FOR RULE 37 AND 53 RELIEF AND INCORPORATED
<u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

1

**TABLE OF CONTENTS**

**INTRODUCTION AND SUMMARY OF ARGUMENTS**................................................3

**I.    DEFENSE DISTRIBUTED AND CHAD FLORES' CONDUCT VIOLATES RULE 11** ...............................................................................................................5

**II.   THE MOTION IS DEVOID OF ANY EVIDENCE LAROSIERE OR ELIK ACTUALLY HELD ADMINISTRATIVE POWERS, AND DEFENDANT FAILED TO REASONABLY INQUIRE AS TO WHETHER THEY DID**..............................6

    A. The Walliman Declarations Border on Absurdity.........................................7

    B. Plaintiff's Interrogatory Responses Undercut the "Admin" Narrative ......................8

    C. Defendants Never Sought Discovery into Roles or Permissions ...........................9

    D. Plaintiff Had No Access After July 2024.................................................10

**III.   THE MOTION IS INTERNALLY CONTRADICTORY AS TO WHETHER AND WHAT EVIDENCE HAS BEEN SPOLIATED, AND DEFENDANTS FAILED TO CONDUCT A REASONABLE PRE-FILING INQUIRY**.................................11

    A. The "26,010" vs. "73,000+" Contradiction ...............................................12

    B. Admissions of Uncertainty About Recoverability ......................................13

    C. Plaintiff Preserved Relevant Materials and Defendants Already Possess The Material they Complain Of..............................................................13

    D. Defendants Never Asked for the Allegedly Lost Materials ...................................14

**IV.   DEFENDANTS HAVE FAILED TO ARTICULATE RELEVANCE OR COMPETENT EVIDENTIARY BASIS, LARGELY BECAUSE THE MOTION WAS FILED FOR AN IMPROPER PURPOSE**.............................................................15

    A. Third-Party Rooms and Projects Outside This Case.............................................15

    B. Scope of the Preservation Duty ...........................................................16

**V.    THE MOTION HAS NO REASONABLE LEGAL CHANCE OF SUCCESS**.......17

    A. Rule 37(e): Essential Elements Are Missing ...........................................17

    B. Rule 53: Extraordinary Relief Misused as a Punitive Weapon .............................19

**VI.   THE MOTION WAS BROUGHT FOR AN IMPROPER PURPOSE: TO HARASS, RAISE LITIGATION COST, AND INCREASE COMPLEXITY**......................................20

    A. Spoliation Was Pled Before Any Discovery.............................................21

    B. Meet-and-Confer Admissions Confirm the Tactical Objective ..............................21

    C. Irrelevant Policy Citations and Subject-Matter Drift.............................................21

**VII.   SANCTIONS ARE WARRANTED** ......................................................22

    A. Striking and Denying Defendants' Rule 53 Relief .............................................22

B. Denying Rule 37(e)(2) Sanctions .......................................................... 22

C. Awarding Plaintiff His Reasonable Fees and Expenses ....................... 23

D. The Need for Deterrence ...................................................................... 23

VIII.    CONCLUSION ....................................................................................... 23

CERTIFICATE OF RULE 11 SAFE HARBOR SERVICE .......................... 25

## <u>INTRODUCTION AND SUMMARY OF ARGUMENTS</u>

To understand the absurdity of Defendant's motion, one needs only realize the

Rocket.Chat is not like an internal business chat or email, but primarily third-party chatter

in semi-public online chatrooms. (Doc. 138-3 ¶¶24-30). On February 28, Defendant

Defense Distributed counsel Chad Flores filed Doc. 136, "Motion for Rule 37(e) Spoliation

Relief with Appointment of a Special Master". Styled as a spoliation motion under Rule

37(e), the filing went further, expressly invoking Rule 53(b) and asking this Court to

appoint a special master to seize control of an online chat platform, conduct forensic

inquiry, and assess the master's costs against Plaintiff (Doc. 136 at 16–21).

That filing is sanctionable under Federal Rule of Civil Procedure 11. While Rule

11(d) exempts motions made "pursuant to Rules 26–37," Defendant's combined Rule

37(e)/Rule 53 filing falls outside this exemption. By asking the Court to appoint and shift

the costs of a special master, Defendants triggered Rule 11's substantive obligations, and

those obligations were not met. The motion is sanctionable for three independent

reasons:

First, Defendants lacked a reasonable factual basis for their claims that evidence

was not preserved or rendered irrecoverable, or that a duty to preserve the information

existed. That Defense Distributed failed to conduct any formal or informal inquiry as to

these issues makes the motion obviously frivolous.

3

Second, Defendants lack legal basis for both their Rule 37 arguments and their Rule 53 arguments. Rule 37(e) requires proof of loss, non-restorability, prejudice, and as to Rule 37(e)(2), intent. Defendants offered none. Their own exhibits concede uncertainty about recoverability and admit some of the material claimed to be spoliated may "still exist." Additionally, Rule 37(e) necessarily requires proof of how and why a duty to preserve particular ESI exists – and the motion offers none. Rule 53, in turn, is an extraordinary device for neutral assistance in complex cases—not a means for a party who failed to engage in good faith discovery to outsource it as a punitive measure. This attempt to leverage Rule 53 to force the appointment of a special master to "take control" of a system the target of the motion has no control over, because of materials movants never sought in discovery, is so frivolous as to be tantamount to bad faith on its own.

Third, Defendant's motion was brought for an improper purpose. Defendants raised spoliation before serving any discovery (Doc. 29 at 92) and never requested the supposedly lost data (Doc. 138 at 17-20). When opposing parties sought to make sense of Defendant's claim, Counsel Flores declared, "I'm done conferring on this… You can explore it all you want in 500 words in opposition… I have conferral fatigue." (*Id*. at 29). These statements, coupled with inflated and contradictory metrics, show the filing was a tactical weapon to harass, multiply proceedings, and waste this court's time in a bid to entice the appointment of a special master with the goal of unduly burdening the Plaintiff.

Rule 11 sanctions are necessary where counsel deliberately disregards obvious facts or refuses to make a reasonable inquiry. As the Eleventh Circuit has stressed, "[i]f the attorney failed to make a reasonable inquiry, then the court must impose sanctions

despite the attorney's good faith belief that the claims were sound." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). That standard is squarely met here.

## ARGUMENT

### I. DEFENSE DISTRIBUTED AND CHAD FLORES' CONDUCT VIOLATES RULE 11

Rule 11 "imposes an affirmative duty on an attorney to conduct a reasonable inquiry into both the facts and the law before filing a pleading or motion." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991). Counsel cannot hide behind subjective good faith; the test is objective reasonableness.

The Eleventh Circuit recently summarized the controlling principles in *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 941–43 (11th Cir. 2022): Sanctions are warranted when a filing "(1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." Id. at 942 (quoting *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1314 (11th Cir. 2021)).

Courts apply a two-step inquiry: "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). A factual claim is frivolous when it has no reasonable factual basis; a legal claim is frivolous when it has no reasonable chance of success. *Id.* Weak evidence is not sanctionable if it reasonably supports a claim, but "deliberate indifference to obvious facts" is. *Id.*

The duty is ongoing. An attorney must correct or withdraw contentions once they become untenable. "That the contentions contained in the complaint were not frivolous at

the time it was filed does not prevent the district court from sanctioning [counsel] for his continued advocacy of them after it should have been clear that those contentions were no longer tenable." *Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1422 (11th Cir. 1996).

Rule 11(d) exempts "disclosures and discovery requests, responses, objections, and motions under Rules 26–37." But Doc. 136 was not a pure Rule 37 motion. It explicitly invoked Rule 53(b) and asked the Court to "appoint a special master to take charge of the Rocket.Chat server… and assess the special master's costs against Plaintiff" (Doc. 136 at 16–20). Because Rule 11(d)'s carve-out does not extend to Rule 53 relief, and because Defendants' request for Rule 53 relief is intertwined with the assertions it makes in support of Rule 37 relief, Defendants' filing as a whole is subject to Rule 11.

## II. THE MOTION IS DEVOID OF ANY EVIDENCE LAROSIERE OR ELIK ACTUALLY HELD ADMINISTRATIVE POWERS, AND DEFENDANT FAILED TO REASONABLY INQUIRE AS TO WHETHER THEY DID

A central premise of Doc. 136 is that Plaintiff Matthew Larosiere and ex-co-defendant John Elik "had administrative privileges sufficient to preserve" Rocket.Chat data. (Doc. 136-2 ¶¶26–27). That premise is baseless. The record shows (1) Defendants never sought discovery into what administrative powers any individual possessed (Doc. 138-4 at 25-26); (2) Plaintiff's sworn responses affirm lack of knowledge or access (Doc. 138-3 at 12); (3) their own *ipse dixit* declaration conflates a room-level "moderator" tag with system-wide administrator powers and admits uncertainty as to what happened to the materials (Doc. 136-9 ¶¶8-9), (Doc. 136-2 ¶ 23) ("[Hitchhiker room] appears to still exist but is hidden…we find it likely that its contents have been pruned") *cf.* (Doc. 136 at 16) ("evidence…suggests spoliation of [Hitchhiker room]") *and* (Doc. 138-1 at 496)

6

("[Hitchiker room] was deleted following receipt of the litigation hold letter"); (4) a complete lack of evidence Plaintiff or Elik had the ability to control of or access to the purportedly spoiled information; and (5) Plaintiff had not accessed the chat for months before the lawsuit was filed (Doc. 138-3 ¶61). Accusing Plaintiff of spoliation on this foundation reflects precisely the "deliberate indifference to obvious facts" that Rule 11 condemns. *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

A. <u>The Walliman Declarations Border on Absurdity</u>

Defendants' linchpin is the declaration of Defense Distributed's own employee Garret Walliman, whose sole qualification is that he is "a competent adult." (Doc. 136-2; Doc. 136-9). Walliman asserts:

> 26. Matthew Larosiere (username 'MattLaAtLaw') had administrative privileges sufficient to preserve all of the Rocket.Chat data at issue in this motion.
> 27. John Elik (username 'Ivan') had and still has administrative privileges sufficient to preserve all of the Rocket.Chat data at issue in this motion."

(Doc. 136-2 at ¶¶26–27)

But Walliman provides no foundation for these sweeping claims. His declaration conflates a channel-level "moderator" badge with instance-wide administrator powers. However, an affidavit with first-hand knowledge counters that "[t]here has been no role changes for Mr. Larosiere's account. He has always been a 'user.'" (Doc. 138-3 at ¶47). Walliman had access to see both that Larosiere was just a "user" and that he had not accessed the rocketchat since July of 2024. A channel "moderator" designation confers only the ability to manage that room's participants, not system-wide retention or preservation functions. Even so, "administrators" are never exposed to the contents of a channel unless they deliberately enter it. (*Id*. ¶¶9–13, 38-70).

7

Furthermore, the Walliman declaration undermines the entirety of the spoliation theory. Message counts of the kind Walliman invokes are obtainable only through exports that also reveal message content, meaning Defendants themselves possessed the very materials they claim were destroyed. (*Id*. ¶¶9–17). This makes sense, given Defense Distributed has suggested from the beginning that it *does* have this material, and acquired it at great expense. *See, e.g.*, (Doc. 29 at ¶ 186). However, the fact that Defense Distributed chose to acquire some amount of materials (regardless of the actual relevance of these materials, which will be addressed later) through their backdoor means completely defeats a central prerequisite to Rule 37 relief: unavailability. *See also* (Doc. 138-4 at 29-30) (After being reminded he already possessed the information he claimed was spoliated, "Mr. Flores: No. The question is whether the party complied with their obligations."). Additionally, Defendants failed to produce

In short, Walliman's testimony is *ipse dixit*, lacking personal knowledge of Plaintiff's account configuration, and contradicts both itself and the Doc. 136 motion. Rule 11 required Defendants to resolve these discrepancies and attempt to acquire the information before accusing Plaintiff of spoliation. They did not. Attorney Flores should have - and as evinced by the meet-and-confer transcript - did know of these defects.

B. <u>Plaintiff's Interrogatory Responses Undercut the "Admin" Narrative</u>

Discovery responses underscore that Plaintiff never confirmed any administrator role. In interrogatories, Defendants specifically asked Plaintiff to identify any sites where he held "administrative privileges" and to identify all administrators of chat.deterrencedispensed.com. Plaintiff objected to this as vague and overbroad (undefined "administrative privileges," unlimited scope) and stated he was "unable to

respond" for lack of knowledge. (Doc. 136-5 at 6). When responding to an interrogatory asking him to identify all administrators: Plaintiff again objected and explained he lacked knowledge sufficient to identify administrators. He added that he had once been told he may have had such status but never accessed it and could not access his account to verify. (*Id.*)

These responses were clear: Plaintiff did not have, and could not verify, administrator privileges.[1] Under Rule 26(g), that was the limit of his knowledge. If Defendants doubted or disputed those answers, their remedy was a targeted discovery request or a motion to compel. They did neither. Instead, they simply invented "facts" favorable to their desired motion practice.

C. Defendants Never Sought Discovery into Roles or Permissions

Despite making "administrator" status the centerpiece of their spoliation theory, Defendants never sought discovery into Rocket.Chat roles or permissions.[2] They did not: Serve a document request for system role/permission logs; Depose any administrator or server operator; or move to compel when Plaintiff objected to vague interrogatories. Instead, they *created* this conjectural document *after receiving those discovery*

---

[1] As for why ex-parties thought Larosiere may have been an administrator, it was because Larosiere had been added to a private chatroom. (Doc 138-3 at ¶46) ("Mr. Larosiere does participate in a private administrator channel; however, Mr. Larosiere *does not* have administrator privileges for [the chat], despite my mistaken belief that he did due to his…presence in the private administrator channel.").

[2] MR. ZERMAY: Wouldn't in the course of a reasonable inquiry prior to attempting to set extensive briefing on a meta-discovery on discovery issue include propounding a written interrogatory about the administrative privileges that the targets of the motion maintained before putting the issue before the Court?
MR. FLORES: Our position is, no, that's not required and that we propounded sufficient requests already. (Doc. 138-4 at 25-26).

*responses*, and chose to rely on Walliman's conjecture, unsupported by records, while ignoring sworn statements to the contrary. Had they bothered to inquire, Defendants may have learned that Plaintiff never had the power to control data with respect to any room. (Doc. 138-3 ¶¶45-60). That choice is definitionally a failure to make reasonable inquiry. *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991).

D. <u>Plaintiff Had No Access After July 2024</u>

Even if one accepted Walliman's unfounded assertion that Plaintiff once held administrative powers, the timeline forecloses any spoliation theory. Plaintiff's account ceased accessing Rocket.Chat by July 2024, months before this lawsuit was filed and before any hold letters were sent. (Doc. 138-3 at ¶61). A person who had no access to the platform during the period of alleged deletions could not have performed them.

The fatal flaw is not merely that Defendants were wrong about Plaintiff's role—it is that they never tried to find out. Rule 11(b) requires "reasonable inquiry into both the facts and the law before filing." *Bus. Guides*, 498 U.S. at 551. Here, Defendants did not "engage in any informal attempts" to resolve of clarify these factual issues (Doc. 138-4 at 26); and declined to engage in any discovery "about the administrative privileges that the targets of the motion maintained before putting the issue before the Court" (*Id*., at 25-26). Instead, they moved straight to sanctions, citing their lay employee's whole-cloth declaration.

The "administrator privileges" theory is objectively frivolous. It contradicts sworn discovery responses, mischaracterizes and hallucinates platform roles, and collapses under the timeline. Under *Gulisano* and *Baker*, sanctions are warranted because the filing lacked a reasonable factual basis and counsel should have known this.

F. Defense Distributed's "Employment" Argument Has No Merit

Defense Distributed makes several references to Larosiere's employment of Elik. Larosiere's employment of Elik is relevant only to the creation of several of the works at issue in this lawsuit. Elik is not some sort of data custodian of a rocket.chat server. As explained above, Elik and Larosiere each preserved ESI relevant to the creation of the works at issue, and they indicated as such in their discovery responses. Defendant was offered the specifics of their employment agreement, but didn't bother to ask for it. (Doc. 138 at 16). That chose anyway to misrepresent Plaintiff's employment of Elik as somehow requiring Elik to preserve communications on a third party website, somehow including communications that neither Plaintiff or Elik had ever seen, is unsupported and sanctionably frivolous.

## III. THE MOTION IS INTERNALLY CONTRADICTORY AS TO WHETHER AND WHAT EVIDENCE HAS BEEN SPOLIATED, AND DEFENDANTS FAILED TO CONDUCT A REASONABLE PRE-FILING INQUIRY

Defendants' second pillar is the claim that "over 73,000 messages" and "at least 89 beta rooms" were deleted from Rocket.Chat, including rooms allegedly central to Plaintiff's copyright claims. (Doc. 136-2 at ¶¶19–23, 25). They further assert those deletions were "truly irrecoverable." (Id. ¶18) *but see* (*Id*. ¶23) ("still exists but is hidden"). None of these assertions withstand scrutiny. The record shows (A) Defendants' own exhibits contradict each other, swinging from 26,010 deletions to over 73,000 by unexplained "extrapolation"; (B) their declarant admits uncertainty about recoverability; (C) they concede that rooms they once allege had been deleted, such as "Hitchhiker" still exist; and (D) they never requested the supposedly missing data, never tested whether it could be restored, and never moved to compel production. Additionally, the motion itself

was clearly not reviewed. (Doc. 136 at 9-10) (Referring to a Reddit account, pointing to an exhibit that says nothing about Reddit). On this record, their loss claims are sanctionably frivolous.

A. The "26,010" vs. "73,000+" Contradiction

The first inconsistency is numerical. In response to a request for production seeking the basis of the spoliation they claimed since their initial counterclaims, prior to the filing of Doc. 136, Defendants presented an unsigned, unsworn text file asserting "26,010 messages have been deleted" since August 2024. (Doc. 138-1 at A-496). That file lacked any specificity as to its author, methods used to create it, or authentication of what it claimed. That file was created after the discovery request seeking it was sent. When pressed about this file in conferral, counsel refused to identify the source, instead stating: "I'm done conferring on this… You can explore it all you want in 500 words in opposition." (Doc. 138-4 at 31–35).

Yet in Doc. 136, the figure balloons to "over 73,000" deletions. No methodology is disclosed, and no audit trail provided. It is arithmetic by assertion. Furthermore, Defendants and their counsel have refused to articulate what any of these purported rooms could have to do with the copyright infringement case. *See* (Doc. 138-4 30-31) (Mr. Larosiere: "[It's] hard to understand how, for example, jen.ghostgunner spaceprivateer junkversion 2 would be…something that one of my clients should have preserved." Mr. Flores: "If you think that doesn't suffice, you can say you're opposed and then oppose the motion. That's all we're really here to do."). Rule 11 requires counsel to verify that factual contentions have evidentiary support. *Bus. Guides*, 498 U.S. at 551. Presenting an

12

unsigned text file one day and a tripled "extrapolation" the next, without explanation, is

the opposite of reasonable inquiry. It is deliberate indifference to obvious contradictions.

### B. Admissions of Uncertainty About Recoverability

Even as they claimed irrecoverability, Defendants' declarant admitted uncertainty:

> "Without further insight into Gatalog Rocket.Chat's configuration, we cannot be certain how many deleted messages, if any, can be recovered… [but] administrator-deleted messages and messages purged or pruned from deleted rooms are, to the best of our knowledge, truly irrecoverable."

(Doc. 136-2 ¶18). This is not evidence of irrecoverability—it is speculation coupled with

acknowledged ignorance. The Advisory Committee Notes to Rule 37(e) emphasize that

sanctions require proof that ESI "cannot be restored or replaced through additional

discovery." Here, Defendants never tried initial, much less additional discovery. They

never asked Plaintiff to attempt restoration, never requested server logs. They went

straight to sanctions. That is sanctionable under Rule 11(b)(3).

### C. Plaintiff Preserved Relevant Materials and Defendants Already Possess The Material they Complain Of

Even setting aside the contradictions, Defendants cannot show prejudice. Plaintiff

preserved and offered to Defendants all drafts, documents, and working papers related

to the copyrighted works at issue. Defendants themselves already possess complete

histories of the non-party Reddit accounts they claim were "deleted." In fact, the Reddit

account in question was deleted before this lawsuit was filed, and Defendants produced

the full archive. (§1927 Mot. at 18–19). That history shows no relevance to copyright

authorship or ownership. No prejudice arises from "loss" of materials Defendants already

hold.

D. <u>Defendants Never Asked for the Allegedly Lost Materials</u>

Most damning, Defendants never requested the materials they claim were spoliated. As Plaintiff's §1927 motion explains:

> At no point did Defense Distributed actually ask for the materials they accused Counterdefendants of destroying. Not formally in discovery. Not informally in correspondence. And not during any meet-and-confer. Likely because responsive information was not what they sought. What they sought were subjects for motion practice.

(Doc. 138 at 17–19; Ex. D at 26). This omission eviscerates their Rule 37(e) claim. Rule 37(e) sanctions require a showing that the information "cannot be restored or replaced through additional discovery." By definition, that showing cannot be made if no discovery was ever attempted. "The Court will not award sanctions where a party's argument that spoliation occurred is based on no more than inference and suggestion, and explanations other than misconduct are equally as likely." *Morris-Huse v. GEICO*, No. 8:16-CV-1353-T-36AEP, 2018 WL 6040288, at *3 (M.D. Fla. Jan. 30, 2018). Defendants' decision to bypass discovery altogether underscores their improper purpose.

The through-line is clear: Defendants accused Plaintiff of destroying tens of thousands of messages without ever seeking them. They speculated about irrecoverability without testing restoration. This is the antithesis of reasonable inquiry.

To excuse their failure to request, Defendants mischaracterize Plaintiff's objections as disclaimers of possession. In Doc. 136, they cite Plaintiff's interrogatory responses as some kind of admission. In fact, Plaintiff objected to vague and overbroad wording and explained he lacked knowledge sufficient to identify administrators. Those are proper Rule 26(b)(1) objections, not disclaimers of possession. Defendants never clarified, never

narrowed, and never moved to compel. When Plaintiff's counsel offered to informally provide documents, Defendants refused to cooperate.

Rule 11 is designed precisely for such situations. As the Eleventh Circuit explained in *Worldwide Primates*, "[i]f the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound." 87 F.3d at 1254. No amount of subjective belief can save Defendants' motion when they deliberately ignored obvious gaps that could have been resolved by routine discovery.

The "loss" narrative in Doc. 136 is objectively frivolous. The numbers are contradictory, the claims of irrecoverability are speculative, the relevant materials were preserved, and Defendants never even asked for what they claim was lost. By filing sanctions accusations on this foundation, Defendants violated Rule 11(b)(3).

## IV. DEFENDANTS HAVE FAILED TO ARTICULATE RELEVANCE OR COMPETENT EVIDENTIARY BASIS, LARGELY BECAUSE THE MOTION WAS FILED FOR AN IMPROPER PURPOSE

Even if Defendants' loss allegations had evidentiary support (they do not), the materials they identify are irrelevant to any claim or defense and are supported only by incompetent declarations. Rule 11 sanctions are appropriate when counsel advances contentions that have no reasonable chance of affecting the outcome of the case or when the "evidence" is speculation, not knowledge. See *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942 (11th Cir. 2022).

A. <u>Third-Party Rooms and Projects Outside This Case</u>

Defendants' room lists read like a roll call of unrelated projects: "CM-1," "ROGUE-9," "foobadoo_GGGR" "space_privateer_SPACEJUNKV2," and others. These are private chatrooms involving people and projects not pled in any complaint, counterclaim, or defense. They are neither Plaintiff's works nor subjects of this litigation. Defendants never explain how chatter in those rooms could bear on the ownership or authorship of the copyrighted works actually at issue.

Indeed, the one example they highlight—the CM-1 room—undermines their theory. Defense Distributed's declaration points to the CM-1 room as being "substantially similar" to the other rooms they mention.[3] Yet, Defense Distributed itself had access to the CM-1 room - and took screenshots to prove it. Despite having complete access to the room, the messages they point to as representative involve chatter and technical troubleshooting, not ESI relevant to authorship claims. Even if those messages were unavailable to Defense Distributed (they were not) (Doc. 138-3 ¶¶62-89) (detailing Walliman's scraping and storing the complained-of data), they would not factor in to the outcome of a copyright dispute, as the excerpts they highlight as exemplary could not possibly bear on copyright authorship. (Doc. 136-9 at 2-4).

Rule 26(b)(1) requires that discovery be relevant to claims and proportional to the needs of the case. By demanding preservation of unrelated third-party chat rooms, Defendants stretch relevance past the breaking point. A party cannot be sanctioned for failing to preserve what it had no duty or ability to preserve.

B. Scope of the Preservation Duty

---

[3] Bear in mind, however, that the CM-1 is a third-party project, unrelated to Plaintiff's asserted works.

16

Defendants invoke broad "litigation hold" language to argue Plaintiff was obliged to preserve every corner of a Rocket.Chat server. That is incorrect. A party's duty to preserve arises only for materials relevant to a "party's claim or defense." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217–18 (S.D.N.Y. 2003). Here, Plaintiff's claims concern copyright ownership and misuse of specific works. That duty does not extend to the unrelated unrelated internet chatter of third parties.

By conflating third party user-created rooms with Plaintiff's obligation to preserve, Defendants expanded the duty far beyond Rule 26(b). Worse, they accused Plaintiff of violating a duty that never existed. Expanding the preservation duty to cover unrelated third-party chat rooms is not a reasonable extension of law. It is an unreasonable distortion. Rule 11 forbids such overreach.

## V.  THE MOTION HAS NO REASONABLE LEGAL CHANCE OF SUCCESS

Even setting aside their lack of factual basis, Defendants' motion had no reasonable chance of succeeding under the governing law. Their theories under both Rule 37(e) and Rule 53 collapse once the required elements are applied to the record. Filing a motion premised on legal theories that cannot succeed is sanctionable under Rule 11(b)(2). *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942 (11th Cir. 2022).

A. Rule 37(e): Essential Elements Are Missing

Rule 37(e) authorizes sanctions for failure to preserve electronically stored information ("ESI") only where the moving party proves: (1) ESI "that should have been preserved" was lost; (2) the loss occurred because a party failed to take reasonable steps to preserve it; (3) the ESI cannot be restored or replaced through additional

discovery; and (4) Prejudice resulted. Severe sanctions (adverse inference, dismissal) require proof of intent to deprive. Defendants cannot establish a single element.

**Loss**: Defendants themselves had access and even provided the contents of some of the complained-of communications in discovery, and their declaration shows they most likely possess *all* of the material asserted to be lost. They have made no showing of actual loss, and have made no attempt to acquire the purportedly lost information. Further, they fail even to coherently state why the ESI they complain of (unrelated communications between third parties) should have been preserved.

**Reasonable steps**. Plaintiff preserved all drafts, documents, and working papers for his works, and has offered these to Defendants. Defendants never clarified their requests concerning the materials they bemoan the speculative loss of. A duty cannot be violated when it was never triggered.

**Non-restorability**. Walliman admits: "we cannot be certain how many deleted messages, if any, can be recovered." (Doc. 136-2 ¶18). That admission alone precludes a finding of irrecoverability. Moreover, Defendants never tried acquisition, much less restoration or replacement through discovery.

**Prejudice**. No prejudice arises when the evidence is in their possession.

**Intent**. Plaintiff had no access after July 2024, before the suit and hold letters. Intent to deprive is impossible on that timeline. Furthermore, Plaintiff did not even have ownership of any Rocket.Chat channels. (Doc. 138-3 ¶54).

The motion's failure on all four elements meant it had no chance of success. Courts in the Eleventh Circuit repeatedly stress that Rule 37(e) sanctions require concrete proof

of loss and prejudice, not speculation. *See Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184–85 (11th Cir. 2020) (no sanctions absent evidence of prejudice and bad faith); *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (sanctions require bad faith, not negligence). Doc. 136 disregarded those principles.

### B. Rule 53: Extraordinary Relief Misused as a Punitive Weapon

The most aggressive part of Doc. 136 is not its Rule 37(e) rhetoric but its invocation of Rule 53. Defendants asked the Court to "appoint a special master to take charge of the Rocket.Chat server," and "assess the special master's costs against Plaintiff." (Doc. 136 at 16–20).

Rule 53 appointments are reserved for extraordinary cases: complex trials, consent decrees, or highly technical monitoring. They are not punitive devices for ordinary discovery disputes. See Fed. R. Civ. P. 53 advisory committee note (2003 amendment). By asking to outsource control of a third-party server to a court-appointed master and shift the costs to Plaintiff, Defendants attempted to weaponize Rule 53 to gain strategic leverage.

Defendants cited *Trump v. United States*, 54 F.4th 689, 696 (11th Cir. 2022), and *Ecolab v. Ridley*, 2023 WL 11762828 (E.D. Tenn. Aug. 1, 2023). Neither supports their position. *Trump* involved appointment of a special master in a unique context involving presidential records and criminal investigation—not ordinary civil discovery. *Ecolab* addressed tailored e-discovery management with party consent, not a punitive cost-shift. Neither case provides a reasonable basis for asking this Court to appoint a master over a Rocket.Chat server *Plaintiff has no access to* and shift costs to Plaintiff because

Defendant has hallucinated a spoliation issue while stubbornly refusing to engage in ordinary discovery. The analogy is facially frivolous.

The relief as it relates to a special master evinces yet another improper purpose. The purportedly spoliated material—which Defense Distributed has not articulated are irrecoverable nor has it attempted to acquire—is clearly pretextual in light of their request for "a special master to take charge of the Rocket.Chat server[.]" (Doc. 136 at 22). This is not the first time Defendants have sought to improperly access the entirety of this particular chat server and its communications between third parties. It was this same information that Defendants previously attempted to acquire by a non-noticed subpoena–where Defendants were warned that further "games" would not be tolerated. (Doc. 113 at 57). Here, they've taken the Magistrate's warning concerning the appointment of a special master–a clear direction that the parties undertake their discovery obligations dutifully and civilly–and turned it into yet another game, where the "prize" they seek is the appointment of a special master as either a terminating financial sanction or a means to harass Plaintiff and unrelated third parties.

## VI. THE MOTION WAS BROUGHT FOR AN IMPROPER PURPOSE: TO HARASS, RAISE LITIGATION COST, AND INCREASE COMPLEXITY

Rule 11(b)(1) prohibits filings made "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Defendants' conduct in connection with Doc. 136 exemplifies that abuse. From the outset, they weaponized "spoliation" rhetoric not to advance discovery but to multiply proceedings and extract leverage. The record shows (A) spoliation allegations were raised before any discovery; (B) counsel's own conferral statements suggested heavily their tactical

purpose; (C) the motion followed a pattern of inflated numbers and theatrics; and (D) the filing contained irrelevant flourishes meant to embarrass rather than inform.

### A. Spoliation Was Pled Before Any Discovery

Defendants first injected spoliation into the case in their counterclaim, long before serving a single discovery request or informal inquiry. (Doc. 29 at ¶¶273-275). They alleged destruction of evidence without ever asking for it. The chronology is telling: rather than pursue targeted requests for whatever materials Defendants seek, Defendants leapt directly to sanctions rhetoric *in their first filing*. Their filing was not about obtaining information; it was about creating litigation risk and expense for Plaintiff.

### B. Meet-and-Confer Admissions Confirm the Tactical Objective

The most direct evidence of improper purpose comes from counsel's own words during conferral. (Doc. 138 at 20). These statements strip away any pretense of good faith. Counsel openly admitted that their purpose was not to resolve discovery disputes, but to generate briefing. They refused to share methodology or articulate relevance, even though Rule 3.01(g) of this Court requires meaningful conferral. When asked about informal clarification and exchange of information, counsel refused categorically. This was not an effort to obtain discovery; it was a calculated maneuver to multiply costs and force the appointment of a special master.

### C. Irrelevant Policy Citations and Subject-Matter Drift

The motion also included flourishes untethered to the claims, such as citation to a terrorism-studies article (Dass, 3D-Printed Firearms: Global Proliferation Trends and Analyses (2025)). That article has nothing to do with copyright authorship, the issue in this case. Similarly, the motion claimed the Rocket.Chat server was "configured to

facilitate evidence destruction," without any tie to Plaintiff's copyright claims or to Rule 37(e)'s requirements. These rhetorical additions served no discovery purpose. Their aim was to cast Plaintiff in a negative light, distract the Court, and escalate costs. That is quintessential Rule 11(b)(1) misconduct.

Doc. 136 was not a genuine attempt to address discovery. It was an instrument of harassment, designed to dramatize allegations and burden Plaintiff with a costly sanctions defense. From the premature spoliation rhetoric in pleadings, to counsel's invocation of "conferral fatigue," to the irrelevant policy citations, the record demonstrates improper purpose under Rule 11(b)(1). Sanctions are required to deter repetition.

## VII.    SANCTIONS ARE WARRANTED

Rule 11(c)(4) authorizes "an appropriate sanction" sufficient to deter repetition of the conduct. Sanctions may include striking the offending paper, awarding attorneys' fees and expenses, or nonmonetary directives. The sanction must be tailored to the violation but robust enough to deter similar abuses in the future.

### A. Striking and Denying Defendants' Rule 53 Relief

At a minimum, this Court should strike and deny Defendants' requests for appointment of a special master and cost-shifting under Rule 53. Those requests are sanctionably frivolous: they rest on contradictory factual claims, expand preservation duties beyond Rule 26(b)(1), and misuse Rule 53 as a punitive device.

### B. Denying Rule 37(e)(2) Sanctions

The Court should also deny Defendants' requests for adverse inference instructions or other Rule 37(e)(2) sanctions. Continuing to advocate for adverse

inference in the face of contradictions and admissions of uncertainty violates *Turner v.*
*Sungard Bus. Sys.*, Inc., 91 F.3d 1418, 1422 (11th Cir. 1996).

      C. <u>Awarding Plaintiff His Reasonable Fees and Expenses</u>

      Rule 11(c)(4) authorizes monetary sanctions where necessary to deter repetition.
Here, fees and expenses are warranted for three categories of work: Plaintiff's counsel
spent hours attempting to secure an explanation of Defendants' deletion metrics, only to
be met with "I'm done conferring." As for Doc. 136, Plaintiff incurred substantial fees
preparing an opposition, marshalling evidence, and addressing the baseless spoliation
claims. Plaintiff incurred additional expense investigating the contradictions, compiling the
record, and drafting this Rule 11 motion. An award of fees in these categories will shift
the costs of Defendants' misconduct back to the parties responsible and deter future
abuse.

      D. <u>The Need for Deterrence</u>

      Sanctions serve not only to remedy harm but to protect the integrity of judicial
proceedings. Without sanctions, Defendants will be emboldened to continue to pursue
motion practice without inquiry and seek the appointment of a special master as a tactical
weapon. The Eleventh Circuit has emphasized that "if the attorney failed to make a
reasonable inquiry, then the court must impose sanctions." *Worldwide Primates, Inc. v.*
*McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996).

     **VIII.**   **CONCLUSION**

      Plaintiff respectfully requests that the Court:

1)  Strike and deny Defendants' requests for Rule 53 and Rule 37(e) sanctions; and

2) Award Plaintiff his reasonable attorneys' fees and expenses incurred as a result of
   the Doc. 136 motion; and

3) Directing Plaintiff to submit sworn declarations of fees and expenses within a time
   certain so the Court may determine the precise award; and

4) Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,


DATED:  November 1, 2025

/s/ Zachary Z. Zermay
Zachary Z. Zermay, Esq.
Fla. Bar № 1002905
*Zermay Law, P.A.*
3000 Coral Way Ste 1115
Coral Gables, FL 33145
Email:
zach@zermaylaw.com
Tel: (305) 767-3529
*Lead Counsel for Plaintiff*
*Matthew Larosiere*

## <u>CERTIFICATE OF RULE 11 SAFE HARBOR SERVICE</u>

I HEREBY CERTIFY on this 29th day of September, 2025, I served the foregoing via e-mail to all of Defense Distributed's counsel of record. I will not file this motion with the Court for 21 days.

<i>/s/ Zachary Z. Zermay</i>

Zachary Z. Zermay, Esq.<br>Fla. Bar № 1002905

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of November, 2025, I electronically filed the foregoing document using CM/ECF, which transmitted a notice of electronic filing to all counsel of record there registered for service, which included all relevant opposing counsel. I further certify this filing is identical in substance to the motion served on opposing counsel on September 29, 2025, having added only this certificate of service.

<i>/s/ Zachary Z. Zermay</i>

Zachary Z. Zermay, Esq.<br>Fla. Bar № 1002905