United States District Court
Middle District of Florida
Orlando Division

Matthew Larosiere,
    Plaintiff,

v.                                              No. 6:24-cv-1629

Cody Rutledge Wilson, DEFCAD, Inc.,
Defense Distributed, and Dioskouroi LLC,
    Defendants.

---

**Defense Distributed's Reply in Support of its
Motion for Rule 37(e) Spoliation Relief with
Appointment of a Special Master**

**I.    Rule 37(e) relief is warranted.**

    **A.    Larosiere and Elik had a duty to preserve.**

Larosiere's preservation duty attached by September 6, 2024, and Elik's by September 20, 2024. *See* Doc. 136 at 5–7. From that point, both had to preserve ESI concerning Larosiere's "design and development of firearms technologies" and related works. *Id.*

The response's answer is to call this duty point "conclusory." Doc. 146 at 3, But the motion cited Wright & Miller § 2284.2 and multiple cases—*Point Blank Solutions*, *Zubulake*, *du Pont*, *Chan*, *Turnage*, and *Arista Records*—holding that preservation arises when litigation is foreseeable *and extends to a party's employees*. Doc. 136 at 5–7. None of those key authorities are grappled with. The duty to preserve plainly existed as to both Larosiere and all of his employees.

### B.   Severe spoliation occurred.

Next, the motion proved the fact of spoliation through two declarations from Garret Walliman—each technically sound and internally consistent. *See* Doc. 136 at 7–10 (citing Docs. 136-2, 136-9). Facing this, the response never disputes the core fact that these mass deletions occurred. It just quibbles over issues like how the deletions have been asked about. That it never once denies the core fact that tens of thousands of deletions occurred is a huge silent concession.

The attacks on Walliman's credibility fail and at worst just invite an evidentiary hearing. Both declarations detail his expertise with Rocket.Chat architecture, permissions, deletion logs, and forensic methods. *Id.* None of this is "ipse dixit." The response's "swinging numbers" critique (26,000 vs. 73,000 deletions) is easily answered: different methods captured different datasets at different time periods. *See* Doc. 136-2 at 14. Multiple confirmations of mass deletions are a feature of this work, not a bug. If any doubts remain, Walliman is fully prepared to testify to all of these conclusions in full detail at an evidentiary hearing. His analysis is that of a 15-year web engineer in dev-ops, security, and API development. It identifies 68 deleted private channels via the "Check if Room Name Exists" API call, and shows that its administrators had full preservation authority. Multiple studies of public and private rooms (utilizing different API calls, cross-referenced with the litigation timeline) all converge on one result: widespread, litigation-timed spoliation. This is circumstantial proof of intent under Rule 37(e)(2): a deliberate purge, not accident or system error.

### C. Larosiere is responsible for the spoliation.

The motion established Larosiere's responsibility for the Rocket.Chat spoliation by showing that he and Elik held administrator roles. *See* Doc. 136 at 7-10. That proof came from (1) sworn discovery responses by Larosiere and his co-parties, and (2) a detailed supporting declaration—none of it rebutted.

Critically, Elik openly admitted he "held administrative privileges" on the Gatalog Rocket.Chat. Doc. 136 at 12; Doc. 136-3 at 5. He also swore that Larosiere had "an administrative role or privileges," Doc. 136-3 at 6, which Lettman independently confirmed, Doc. 136-4 at 6. Larosiere signed both as counsel and later conceded he "recalls being told he had administrative privileges." *Id.* at 10.

Now Larosiere claims that Elik and Lettman "mistakenly believed" he was an administrator because he appeared in a private admin channel. Doc. 146 at 10 n.4. But that contradicts the sworn Rule 26 responses Larosiere himself prepared and signed. The two witnesses did not "mistakenly" make identical statements. The supposed correction admits he "participate[d] in a private administrator channel," confirming privileged access. *Id.* Screenshots show he retained Rocket.Chat access through late 2024. The four proofs—two interrogatories, his own admission, and documentary evidence—stand unrebutted.

The claim that the declarations "conflate moderator and administrator roles," Doc. 146 at 8, is false. Walliman's analysis shows how administrator and moderator privileges operated on the Rocket.Chat server; and it reveals that Larosiere's employees and collaborators—Elik and Holladay—are confirmed

3

Rocket.Chat administrators working for him or his company, with the server registered and billed to his address. Docs. 136-2, 136-9. Whether acting personally or through his agents, Larosiere had the authority and the means to prevent deletions that occurred. *See id.* By any definition, he was—and remains—an administrator responsible for the spoliation that occurred on his watch. At a minimum, this record constitutes the kind of prima facie showing that warrants an evidentiary hearing and full investigation by a special master.

    **D.**    **The ESI at issue is relevant.**

The response calls the destroyed ESI "mere chatter and technical troubleshooting." Doc. 146 at 13. But the motion showed the Rocket.Chat data contained contemporaneous communications documenting how Plaintiff and his employee conceived, created, modified, published, and licensed the very files he now claims. Doc. 136 at 15.

The beta rooms were not "third-party" projects but development hubs for Plaintiff's claimed works—Amigo Grande, MPP-99, SF-5, KF-5, BUBAR, Plastikov v4, NS3, and Hitchhiker—each matching a copyrighted file in his amended complaint. *See* Doc. 136-2; Doc. 43 at 14–44. For example, "beta.Ivan.Amigo_Grande_CETME_C" tracked publication and development of the registered Amigo Grande design. Doc. 136 at 8. Messages here showed who conceived, published and directed each project and how the designs evolved—core authorship and publication evidence under copyright and work-for-hire law. Calling this "technical troubleshooting" trivializes key proof of ownership,

4

publication and licensing. These were not random chats but the design and publication record of the works in this suit.

Lettman's claim that Defense Distributed "already has all the messages" is wrong. Defense Distributed does not have all the deleted public messages, and has none of the deleted private messages. The API calls used to verify the destruction of private rooms do not return their content, which proves these messages no longer exist on the server. Visual mapping of the deletions shows they violate Gatalog's own policies and coincide precisely with milestones in this litigation—proof of a coordinated purge, not coincidence.

### E. The ESI at issue was sought repeatedly to no avail.

Defense Distributed having jumped through all requisite hoops and then some, it is now clear that the deleted ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). In this respect, Defense Distributed *did* ask for the ESI at issue, to no avail. *Contra* Doc. 146 at 3 ("Defense Distributed is seeking 37(e) relief for materials it has never asked for, despite being offered.").

The motion cited clear proof of Defense Distributed's requests about the now-spoliated ESI, Doc. 136 at 14, as just the tip of the iceberg. In other discovery exchanges proving this point, Larosiere was asked by Defense Distributed to

- "Produce Any Material Relating to 'beta rooms' or private chat rooms operated by you or any other Counterdefendant, including membership records, file transfers, and message content"
- "Produce Any Material Relating to websites on which you or any other Counterdefendant host or have hosted 3D printable gun files"

- "Produce Any Material Relating to servers owned and/or managed by you or any other Counterdefendant to discuss or distribute 3D printable gun files."

Ex. 3 at 7 (requests 21, 22, 23). Yet Larosiere responded by objecting, asserting attorney-client privileges, and calling requested ESI "material that could not, on its own terms, be in respondent's possession." Ex. 4 at 8.

Even more confirmation that the lost ESI "cannot be restored or replaced through additional discovery," Fed. R. Civ. P. 37(e), comes from Larosiere's response to the instant motion, which says that Larosiere "has no control of or access to" the Rocket.Chat. Doc. 146 at 3, 12. This too shows that Larosiere will not now supply the deleted material even if asked yet again.

Does Plaintiff Larosiere currently possess any of the Gatalog Rocket.Chat's ESI, such as the ESI described by Document 136-02's paragraphs 21-23 (the Walliman Declaration's specific laundry list)? Did Plaintiff Larosiere possess any of the Gatalog Rocket.Chat's ESI at or after September 6, 2024? Defense Distributed asked these simple questions once more before filing this reply, Ex. 1, and Larosiere again refused to give a meaningful answer, Ex. 2.

Larosiere's silence on the central fact of deletion speaks volumes. He has never denied that the Rocket.Chat records were wiped—an omission that functions as a tacit admission of spoliation. And when pressed to say whether he still possesses any of those files, he refuses to answer. That refusal is itself revealing: if he had them, he would say so. His continued evasion confirms what the evidence

6

already shows—vast ESI is gone and will not now be produced in discovery. These are the harms that Rule 37 exists to address.

## II. The Court should appoint a special master.

Defense Distributed's request is modest: appoint a special master to examine the Rocket.Chat server, determine the extent of spoliation, and assess those costs to Plaintiff under Rule 53(b). Doc. 136 at 17–20. Only if that investigation finds an "intent to deprive," Fed. R. Civ. P. 37(e)(2)(A), would it then seek an adverse presumption. Doc. 136 at 20–22. This is restraint, not overreach. The motion asks first for a neutral expert to establish exactly what happened—who deleted what, when, and how—before any sanctions issue.

## Conclusion

The motion should be granted.

Respectfully submitted,

/s/ Chad Flores
Chad Flores
cf@chadflores.law
Texas Bar No. 24059759
Flores Law PLLC
917 Franklin Street
Suite 600
Houston, Texas 77002
T (713) 364-6640
F (832) 645-2496

Counsel for Defense Distributed