UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MATTHEW LAROSIERE

       Plaintiff,

vs.                             Case No:  6:24-CV-01629

CODY RUTLEDGE WILSON, DEFCAD, INC.,
DEFENSE DISTRIBUTED and
DIOSKOUROI LLC,

       Defendants.
_____/

## DEFENDANT, CODY WILSON'S TIME-SENSITIVE MOTION FOR PROTECTIVE ORDER WITH INCORPORATED MEMORANDUM OF LAW

Defendant, Cody Wilson, respectfully moves for a protective order under Federal Rules of Civil Procedure 26(b)(1), 26(c), and 30(d)(3) precluding Plaintiff, Matthew Larosiere, from seeking discovery, including deposition questioning and written discovery, on any topics, documents, communications, or information that concern or are directed to (i) Defense Distributed's recently dismissed Counterclaim, *see generally, e.g.* Docs. 29, 123, and 129 (the "Counterclaim"), and (ii) the RICO Complaint, which was filed separately in the United States District Court, Southern District of Florida, West Palm Beach, Florida Division, *Defense Distributed, DD Foundation, LLC and DEFCAD, Inc. v. John Elik, Matthew Larosiere, Alexander Holladay, Peter Celentano, Josh Kiel Stroke, and John Lettman,* Case No. 95-cv-81197-DMM, and filed on or around September 25, 2025 (the "RICO Complaint"), and in support thereof, states as follows:

Good cause exists to grant this motion because the Plaintiff's proposed inquiry into facts and circumstances in discovery demands that Mr. Wilson provide information

323850399v.1

outside the above-styled cause (the "Pleadings at Issue"), and thus, it is not relevant to any claim or defense properly before this Court. It invites the risk of harassment and confusion, as well as cross-case gamesmanship. End-runs around orderly case management in separate forums and is designed to extract litigation strategy and privileged or work-product information rather than admissible evidence. The facts and circumstances concerning the Counterclaim are no longer relevant because the Claims were dismissed. The facts and circumstances concerning the RICO Complaint are unrelated to the claims asserted in the Pleadings at Issue.

Thus, the Defendant respectfully requests an order limiting the scope of discovery and any deposition examination to exclude the Counterclaim, RICO Complaint, and any related topics, and instead focus on the facts and circumstances raised in the Pleadings at issue.

I.    **INTRODUCTION**

Plaintiff noticed Mr. Wilson's deposition, in his individual capacity[1], on November 14, 2025, at 10:00 a.m., and propounded discovery that, as presently framed, would compel Defendant to testify about and produce information concerning the recently

---

[1] Defense Counsel requested that the Corporate Representative depositions for Defendants, DEFCAD Inc., Dioskouroi, LLC, and Defense Distributed ("Defendant Entities"), and Cody Wilson's deposition be taken at the same time for efficiency purposes – depending on the topics, Mr. Wilson is likely the Corporate Representative designee for the Defendant Entities. However, Plaintiff's Counsel insisted that Mr. Wilson's deposition be taken on an individual basis first and will then take the corporate representative's deposition of the Defendant Entities at a later time.

Given the Plaintiff's Counsel's discovery tactics, we now believe that the Plaintiff's deposition scheduling was done intentionally to obtain information and testimony for the separately filed RICO Complaint. Attached as **<u>Exhibit A</u>** is a true and accurate copy of the parties' scheduling of Mr. Wilson's deposition in his individual capacity.

323850399v.1

dismissed Counterclaim, *see e.g.*, Docs. 129 and 130, and the factual bases, drafting, filing, and strategy of the RICO Complaint—separately filed in the Southern District of Florida.  These lines of inquiry are facially untethered to the claims and defenses that this Court will adjudicate in this case. They seek to litigate collateral lawsuits within this one, to probe privileged mental impressions and attorney work product associated with pleading decisions, and to leverage discovery burdens instead of supporting Plaintiff's claims raised in the Pleadings at Issue. This is improper.

The Federal Rules do not permit such fishing expeditions.  Rule 26 authorizes this Court to cabin discovery to what is relevant, proportional, and non-harassing, and to issue a protective order upon a showing of good cause. *See* Fed. R. Civ. P. 26(b)(1)(requiring the scope of discovery regarding any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.") That standard is met here, requiring a motion for protective order to limit the topics at Mr. Wilson's deposition in his individual capacity on November 14, 2025, at 10:00 a.m., for purposes of preventing Plaintiff's Counsel to seek information and testimony for the dismissed Counterclaim and/or RICO Complaint is warranted here – limiting the topics to the Pleadings at Issue.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

On December 11, 2024, Plaintiff filed the operative Complaint[2] asserting copyright

---

[2] On September 6, 2024, Plaintiff initiated this lawsuit by filing a Complaint asserting copyright infringement, false designation of origin and unfair competition pursuant to 15 U.S.C. § 501, false designation and origin and unfair competition pursuant to 15 U.S.C. § 1125(a), and unjust enrichment under Florida common law against Defendants, Cody Wilson, DEFCAD, Inc., Defense Distributed and Dioskouroi LLC (collectively referred herein as "Defendants"). *See generally,* Doc. 1. Defendants filed a Motion to Dismiss and an Answer to the Complaint. *See generally,* Docs. 28, 29. However, the Court denied Defendants' Motion to Dismiss as moot based on the Answer that was subsequently filed with the Motion to Dismiss.  *See generally,* Doc. 38.

323850399v.1

infringement, false designation of origin and unfair competition pursuant to 15 U.S.C. §
501, false designation and origin and unfair competition pursuant to 15 U.S.C. § 1125(a),
and unjust enrichment under Florida common law against Defendants, Cody Wilson,
DEFCAD, Inc., Defense Distributed, and Dioskouroi LLC (collectively referred herein as
"Defendants"). *See generally,* Doc. 43.

The crux of the Complaint centers on Plaintiff's claims that Defendant Cody
Rutledge Wilson and three entities—DEFCAD, Inc., Defense Distributed, and Dioskouroi
LLC—engaged in a coordinated scheme to reproduce, distribute, and sell Plaintiff's
copyrighted works without authorization, while also misusing Plaintiff's name and likeness
and falsely suggesting affiliation. *Id.*

On December 27, 2024, Defendant filed an Amended Answer and Affirmative
Defenses and counterclaims and third-party claims against a group called, "The Gatalog"
and its alleged principals: Matthew Larosiere, John "Ivan the Troll" Elik, Alexander
Holladay, Peter Celentano, Josh Kiel Stroke, John Lettman, The Gatalog Foundation, and
MAF Corp (collectively referred to as "The Gatalog"), *see generally,* Doc. 29 (the
"Counterclaim").

In the Counterclaim, Defense Distributed alleged these parties formed and
operated an association-in-fact enterprise that competes with DEFCAD in distributing
3D-printed firearm files and related content, but does so through unlawful means in
violation of numerous statutes, including, Civil RICO (18 U.S.C. § 1962(b)), false
advertising/unfair competition under the Lanham Act, (15 U.S.C. § 1125(a)), Computer
Fraud and Abuse Act (18 U.S.C. § 1030), DMCA misrepresentation (17 U.S.C. § 512(f)),

---

tortious interference, trade libel, and Florida Deceptive and Unfair Trade Practices Act (FDUTPA) ("Counterclaim"). *Id.*

On December 16, 2025, Plaintiff filed a Motion to Dismiss Defendant-Counter-Plaintiff Defense Distributed's Counterclaim, *see e.g.,* Doc. 47, which the parties fully briefed. *See generally,* Doc. 50. Thereafter, on September 5, 2025, Defense Distributed voluntarily dismissed the Counterclaim under Fed. R. Civ. P. 41(a)(1)(A)(i). Doc. 123. Instead, Defense Distributed filed its RICO claim in the separately filed RICO Complaint in the Southern District of Florida.

The parties participated in a Rule 26 discovery conference to commence discovery and exchange of information to support the claims and defenses for the Pleadings at Issue. In the course of discovery, however, Plaintiff's first round of discovery was served on Mr. Wilson[3], which indicates Plaintiff's intention to ask questions and seek documents relating to the RICO Action and/or the dismissed Counterclaim, including but not limited to: the factual and legal bases for allegations stated therein; the identity of persons involved in drafting, reviewing, or approving those pleadings; communications with counsel and third parties about those pleadings; materials considered in connection with their preparation; and the status, strategy, and litigation objectives associated with those separate actions.

A motion for a protective order is needed to prevent the discovery of topics that are unrelated to the merits and defenses presented at Mr. Wilson's deposition on November 14, 2025. These topics are also inherently prone to eliciting privileged

---

[3] Plaintiff served its first round of discovery to Mr. Wilson on September 28, 2025 – one year and 22 days after filing this lawsuit.

communications, attorney work product, and protected trial preparation materials in the RICO Complaint, which should be prohibited at Mr. Wilson's deposition.

## III.    LEGAL STANDARD ON MOTIONS FOR PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 26(c), a court may "issue a protective order upon a finding of good cause." *In re Chiquita Brands Int'l, Inc.*, 965 F.3d at 1249. The party seeking such an order bears the burden of establishing that good cause exists. *See id.* at 1250. Good cause usually requires a particular demonstration of fact, as distinguished from stereotyped and conclusory statements. *See United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978); 8A Richard L. Marcus. Fed. Prac. & Proc. § 2035 (3d ed. & June 2024 update). As explained below, Defendant has met the good cause requirement in light of Plaintiff's discovery tactics, gamesmanship, and motion practice.

## IV.    ARGUMENT AND AUTHORITIES

The instant motion should be granted for three main reasons. First, Plaintiff's over-reaching discovery demands requesting information about the Counter defendants and Counterclaim, and the RICO Complaint show Plaintiff's intent to request information outside the scope of the claims and defenses raised in the Pleadings at Issue at deposition. Second, the facts and circumstances surrounding the causes of action asserted in the Pleadings at Issue and the RICO Complaint are separate and distinct. Any inquiry into the drafting, legal strategy, or reasons why the RICO Complaint was filed is protected by the work-product privilege and, thus, should not be a topic for discussion or "fair game" at deposition. And, finally, a motion for a protective order is warranted to limit the topics to the Pleadings at Issue at Mr. Wilson's deposition to limit the risk of harassment, confusion, and Cross-Case Gamesmanship.

323850399v.1

A.    **The Information Sought in Plaintiff's Discovery Demands to Cody Wilson Go Beyond the Scope of the Pleadings At Issue Served on September 28, 2025.**

As discussed above, the First Amended Complaint targets a finite set of sixteen (16) copyright registrations (collectively referred to as "Subject Works") and alleged conduct tied to DEFCAD/Defense Distributed. However, on September 28, 2025 Plaintiff served discovery demands range far beyond those claims, requesting information about twenty-five (25) copyright registrations (citing additional nine (9) copyright registrations that were not pled in the First Amended Complaint) defining them as the "Works at Issue," and seeking broad personal, financial, third-party, and character evidence untethered to the pleaded issues and disproportionate under Rule 26(b)(1), as explained below:

Interrogatories Nos. 1-7, including subparts to Cody Wilson:

- Interrogatories 1–7 (asset-finding and personal history): Requests for all crypto wallets since 2018, all real estate since 2016, aliases, residential addresses, DD Foundation LLC purpose/ownership changes, and details of a private home sale lacks a nexus to infringement liability or damages and resemble post judgment asset discovery without any pleaded basis (fraudulent transfer, alter ego, veil piercing).

Request for Productions Nos. 1-114, including subparts to Cody Wilson:

- RFPs 1–3, 22–27, 87–99, 100–107 (financial/tax/hosting dragnet): Demands for transfers to family, complete real estate histories, all current assets, corporate governance for multiple entities, server IPs/domains/mirrors/foreign logs, and full tax returns/bank statements and income since 2018 are overbroad in subject matter and time, seek

highly sensitive personal and third party data, and are not tied to the Subject Works.

- RFPs 4–8, 32–38, 63–66, 73–74 (untailored "all documents" on copyright/DMCA): Calls for every document mentioning "copyright," materials about blog posts, any removal of copyright notices, and inquiries into whether each work is protected, invade privileged legal analyses and mental impressions and are not limited to the pleaded works, custodians, systems, or timeframe.

- RFPs 5, 9, 19–21, 33–35, 48, 50–52, 55–62, 75–81, 89–91, 108–114 (media, reputational, and community monitoring fishing): "All communications" about registration numbers/works, Amigo Verde, Fuddbusters, IvanTheTroll, named individuals, hostility/"harm" toward Plaintiff, and journalist/third party outreach are harassment leaning, minimally probative, and raise First Amendment and associational concerns; handle/account inventories and exposure to wide online fora are intrusive and untethered.

- RFPs 10–18, 28–31, 39–47, 82–86, 92–97 (investigators, global comms, governance sprawl): Sweeping demands for PI materials, years of communications with investigators/journalists/professionals, compensation records for "any files" on Defcad, all board minutes/resolutions across entities, bitcoin histories, and staffing/termination records are not confined to the pleaded infringements, Subject Works, custodians, or period and implicate

8

privilege and work product protections.

- RFPs 49, 66–72 (workflow chain of custody and device imaging): Requests for corporate governance policies at upload time, exhaustive uploader/reviewer/approver/editor identities with PII, technical logs and IP/browser data, and forensic images of Wilson's personal and business devices are vastly overbroad, invade innumerable nonparty privacy interests, and demand device level discovery without predicate or proportionality. Any discovery should be narrowed to nonprivileged intake/posting policies during the pleaded period, specific custodians for the Subject Works, and targeted server-side collections under an ESI Protocol[4].

<u>Request for Admissions Nos. 1-13, including subparts to Cody Wilson:</u>

- Requests for Admission ("RFA") Nos. 1–13 (legal conclusions and privilege): RFAs probe anticipation of litigation, beliefs about copyright notice removal, license interpretations, absence of signed authorizations, and pre-suit discussions with individuals, calling for legal conclusions and privileged work product rather than material, discrete facts tied to the works at issue. However, only tightly tailored RFAs on written licenses for the pleaded works, if any, are appropriate.

---

[4] Defendants' Counsel circulated a proposed ESI Counsel to Plaintiff to identify key search terms and connectors to make document production efficient and easy; however, Plaintiff's Counsel states that he does not feel one is necessary. Attached hereto as **Exhibit C** is a true and correct copy of the parties' emails discussing ESI protocol.

Attached hereto as **Composite Exhibit B** are Plaintiffs' First Set of Interrogatories, Request for Production, Request for Admissions ("Discovery Demands") to Cody Wilson served on September 28, 2025[5].

As shown above, Plaintiff is seeking information outside the claims and defenses raised in the Pleadings at Issue, including, but not limited:

- Mr. Wilson's real estate transactions with his family members without a nexus to infringement liability or damages and resemble post judgment asset discovery without any pleaded basis;

- Current assets, corporate governance for multiple entities, server IPs/domains/mirrors/foreign logs, and full tax returns/bank statements and income since 2018 are overbroad in subject matter and time, seek highly sensitive personal and third party data, and are not tied to the Subject Works;

- Every document mentioning "copyright," materials about blog posts, any removal of copyright notices, and inquiries into whether each work is protected, invade privileged legal analyses and mental impressions and are not limited to the pleaded works, custodians, systems, or timeframe;

- Handle/account inventories and exposure to wide online fora are intrusive and untethered to the Subject Works;'

- Anticipation of litigation, beliefs about copyright notice removal, license

---

[5] It is worth noting that Plaintiff served the Discovery Demands on September 28, 2025, requesting information about the Counterclaim *after* it was dismissed on September 5, 2025, and the RICO Complaint *after* it was separately filed in the Southern District of Florida on September 25, 2025.

interpretations, absence of signed authorizations, and pre-suit discussions with individuals, which is privileged work-product information.

Given the timing and scope of Plaintiff's over-reaching discovery demands served after the Counterclaim was dismissed and the RICO Complaint filed in the Southern District of Florida, Defendant can only assume that Plaintiff's deposition questions will mirror the same type of over-reaching questions and inquiries at deposition. As such, Defendant respectfully requests that the topics be limited to the Pleadings at Issue at deposition pursuant to Fed. R. Civ. P. 26(b)(1).

**B.    Discovery Into the RICO Claim Is Irrelevant And Disproportionate To The Needs Of This Case Pursuant to Fed. R. Civ. P. 26(b)(1)**

It is important to reiterate that discovery must be tailored to the claims and defenses that will be adjudicated here, rather than being used as a platform to explore allegations and litigation strategy in other pleadings pending in this or another court. *See* Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is *relevant to any party's claim or defense* . . . " (emphasis added). *Builders Flooring Connection, LLC v. Brown Chambless Architects*, No. 2:11cv373-MHT (WO), 2014 U.S. Dist. LEXIS 60476 (M.D. Ala. May 1, 2014). The Committee Comments to Fed. R. Civ. P. 26 confirms that requiring relevance to a claim or defense "signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." *Id. (*quoting GAP Report of Advisory Committee to 2000 amendments to Rule 26).

11

Applying the authorities above, Plaintiff's exploration of the RICO Claim or Counterclaim (which included a RICO count) would not prove or disprove any element, damages theory, or defense in this case. To be sure, a comparison of the differences of the factual allegations and causes of actions raised in the Pleadings at Issue and the RICO Claim is outlined below:

| | Larosiere v. Wilson/Entities | DEFCAD/Defense Distributed v. Larosiere, et. all. |
|---|---|---|
| Forum/Date | M.D. Fla., Orlando Division; filed Dec. 10–11, 2024 (First Amended Complaint) | S.D. Fla., West Palm Beach Division; filed Sept. 25, 2025 |
| Parties | Plaintiff: Matthew Larosiere. Defendants: Cody Wilson, DEFCAD, Inc., Defense Distributed, Dioskouroi LLC | Plaintiffs: Defense Distributed, DD Foundation, LLC, DEFCAD, Inc. Defendants: Matthew Larosiere and five others (Elik, Holladay, Celentano, Stroke, Lettman) |
| Core theory | Systematic, willful copyright infringement (and related misconduct) by Wilson and entities; false designation/unfair competition; unauthorized use of name/likeness | Coordinated disinformation campaign by Larosiere and others to harm DEFCAD's business; alleged RICO conspiracy via wire fraud; false advertising; tortious interference; Florida false advertising |
| Factual nucleus | Alleged unauthorized reproduction/distribution of Plaintiff's registered works (3D models, photos, documentation) on Defcad.com and via USB sales; removal of copyright notices; blog posts and a "manifesto" acknowledging/encouraging infringement; subscription gating via Legio; use of multiple corporate entities as alter egos; | Alleged false claims that DEFCAD was "hacked," customer lists "dumped/doxxed," site hosted in Iran; dissemination via "FEDCAD" meme and social media; intent to divert customers to The Gatalog/MAF; embedding meme in guides and large forums; claimed revenue loss and partner defections |

|  | targeted harassment and ToS/CFAA leverage |  |
|---|---|---|
| Alleged timeline highlights | Infringements spanning 2023–2024+ (Amigo Grande, MPP99, BUBAR, KF5, SF5, Plastikov V4, Hitchhiker, NS3, TaxiDriver); blog posts in Dec. 2023–May 2024; USB sales May–Aug. 2024; edits to Defcad To Oct. 2024 | Disinformation campaign beginning 2019–2024+, with "FEDCAD" meme starting May 2023; widespread posting through 2023–2024; embedding in December 2023 guides; pinning in April 2024 to r/fosscad |
| Claimed admissions/knowledge | Cites Wilson blog posts and "Black Flag White Paper" as acknowledgments of Plaintiff's copyright registrations and removal of notices; references to Defcad/DDLegio blogs admitting uploads | Alleges Defendants knowingly spread false claims to damage DEFCAD and steer customers; points to coordination and funding through MAF; market sensitivity to privacy as context for materiality |
| Corporate/alter-ego allegations | Extensive alter-ego/single enterprise allegations: Defcad, Defense Distributed (nonprofit), Dioskouroi LLC used by Wilson to control operations, commingle assets, process payments (PrecursorParts), and shield assets | RICO "enterprise" alleged through MAF Corp. (Florida), with Larosiere directing co-defendants' roles to execute a pattern of wire fraud |
| Statutory causes of action | Copyright infringement (17 U.S.C. § 501) against all defendants; Lanham Act false designation/unfair competition (15 U.S.C. § 1125(a)); Florida right of publicity (§ 540.08, Fla. Stat.) | Civil RICO conspiracy (18 U.S.C. § 1962(d)) predicated on wire fraud; Lanham Act false advertising (15 U.S.C. § 1125(a)); tortious interference (Florida, against FL defendants); Florida false advertising (Fla. Stat. § 817.41) |
| Specific acts emphasized | Uploading and pay walling Plaintiff's copyrighted files on Defcad; selling USBs with copies; removal/restoration of copyright notices; misattribution to "The Gatalog"; edited NDA post; alleged harassment (bar complaint; letters); ToS/CFAA threat to block access | Creating and amplifying "FEDCAD" meme; posting across Reddit/Twitter/Facebook; embedding meme in competitor materials; targeting partners; asserting Iran hosting and doxxing; steering to TheGatalog.com |

13

| Harm alleged | Lost revenue from infringing sales; reputational harm; need for enhanced statutory damages; ongoing infringement | At least $1 million in lost sales; lost partners and goodwill; ongoing online harms necessitating injunctive relief |
| --- | --- | --- |
| Remedies sought | Injunctions against copying, false designation, and use of name/likeness; statutory damages with willfulness enhancement; profits; attorneys' fees (Copyright Act) and royalties (right of publicity) | Treble damages (RICO), injunctive relief (RICO/Lanham/Florida § 817.41), disgorgement of profits, fees/costs |

Both the Pleadings at Issue and the RICO Complaint contain overlapping parties and issues; however, there are key differences in legal framing between the Pleadings at Issue and the RICO Complaint. The Pleadings at Issue center on intellectual property rights and business torts tied to authorship and attribution; the RICO Complaint centers on competitive speech in commerce and business torts escalated to a RICO conspiracy.

Thus, given the parties' framing of the issues and distinctions in causes of actions in both actions, Defendant requests that Plaintiff refrain from raising the topics at deposition of the RICO Complaint, which include, but are not limited to:

- Enterprise formation or operation, predicate acts, pattern, or damages theories unique to RICO;

- Any mention of the "FEDCAD" meme – a graphic stating "FRIENDS DON'T LET FRIENDS USE FED CAD";

- DEFCAD's customer identities and other personal information;

- Counter-Defendants: John Elik, Alexander Holladay, Peter Celentano, Josh Kiel Stroke (aka "Zona"), John Lettman, and any involvement with the publication of the FEDCAD meme on Reddit, Twitter, (X), Facebook, and other social media forums in commercial contexts that direct users to TheGatalog.com;

- Non-parties: Barret Collier and Eric Goldhaber;

- DEFCAD is being hacked, its data is dumped, and hosted in Iran;

- DD Foundation LLC purpose/ownership changes;

- Mr. Wilson's crypto wallets since 2018, all real estate since 2016, aliases, residential addresses;

- Communications with investigators/journalists/professionals concerning the Counter-Defendants;

- Any topics concerning Mr. Wilson's entities that are non-parties, including, but not limited to: Gunspring, LLC, Federal Consolidated, LLC, DD Foundation, LLC, Coast Runner, Inc., Ghost Gunner, Inc., UPLSN, Inc., Zero Percent Arms, LLC and The Glen Rose Library Company.

Any topics concerning the anticipation of litigation, beliefs about copyright-notice removal, license interpretations, absence of signed authorizations, and pre-suit discussions with individuals untethered to the subject copyright registrations. Despite these key distinctions in legal framing, it appears that the Plaintiff seeks to litigate various cases by serving discovery demands designed to interrogate the Defendant on factual allegations, legal positions, and pleading decisions related to the dismissed Counterclaim and RICO Complaint. *See* Comp. Ex. A.; attached hereto as Composite **Exhibit D** are true and correct copies of Plaintiff's Counsel's letters dated October 29, 2025, where Plaintiff insists on obtaining information outside the claims and defenses raised in the Pleadings at Issue. Such collateral discovery is neither relevant nor proportional to the copyright infringement and business tort claims raised in the Pleadings at Issue. *See* Fed. R. Civ. P. 26.

### C.    The Requested Topics Intrinsically Call For Privileged Communications And Work Product Concerning the RICO Complaint.

Additionally, a protective order is warranted to prevent recurring privilege disputes and to avoid placing witnesses and counsel in the untenable position of repeatedly

323850399v.1

asserting privilege on a question-by-question basis on plainly improper subject matter. Rule 26(b)(3) protects an attorney's work product. *N.F.A. Corp. v. Riverview Narrow Fabrics*, 117 F.R.D. 83, at 85 (M.D.N.C. 1987); *In re Alexander Grant & Co. Litigatio*n, 110 F.R.D. 545, 548 (S.D. Fla.1986) (Gonzalez, J.). The work product rule applies to items prepared in anticipation of litigation by a party's attorney. *In re Alexander Grant*, 110 F.R.D. at 548. "Upon a proper showing that (items) were prepared . . . . in anticipation of litigation . . . . (a party) may invoke the work product privilege." *Id.*

Courts have consistently held that a party's motivation for bringing a lawsuit is irrelevant. *See, e.g.*, *Crystal Lagoons U.S. Corp. v. Oasis Amenities, LLC*, No. 8:23-cv-519-TPB-AEP, 2025 LX 339717 (M.D. Fla. Aug. 7, 2025); (citing *Tallman v. Freedman Anselmo Lindberg, L.L.C.*, No. 11-3201, 2013 U.S. Dist. LEXIS 82768, 2013 WL 2631754, at \*3 (C.D. Ill. June 12, 2013). Even if the Court accepted the premise that some nonprivileged factual information related to separate pleadings could be relevant, the topics as articulated are overbroad. *See* Fed. R. Civ. P. 26(b)(1). The information sought would almost invariably elicit protected trial-preparation materials and counsel's mental impressions. *In re Alexander Grant*, 110 F.R.D. at 548.

As discussed above, Plaintiff's Request for Admissions to Mr. Wilson probe anticipation of litigation, beliefs about copyright notice removal, license interpretations, absence of signed authorizations, and pre-suit discussions with individuals, calling for legal conclusions and privileged work product rather than material, discrete facts tied to the works at issue. Based on Plaintiff's discovery demands, Defendant can only presume that this type of questioning will be presented at deposition; thus, Defendant seeks to proactively prohibit this line of questioning before the deposition (and requiring counsel

16

to stop the deposition and call chambers for a ruling on the same), as the information sought is privileged under the attorney-work product privilege. *In re Alexander Grant*, 110 F.R.D. at 548.

Thus, at Mr. Wilson's deposition, Defendant respectfully requests that Plaintiff refrain from discussing the following topics at deposition, including, without limitation: i) the drafting, editing, review, approval, filing, amendment, or withdrawal of those pleadings; ii) the factual or legal bases for allegations or claims asserted in the RICO Complaint; iii) Communications (internal or external) concerning those pleadings, including with counsel, consultants, agents, or third parties for the RICO Complaint; iv) Materials considered or relied upon in connection with those pleadings; and v) Litigation strategy, objectives, settlement considerations, or case status for the RICO Complaint, based on the work-product privilege. *Id.*

### D. Inquiry Into Other Lawsuits Risks Harassment, Confusion, And Cross-Case Gamesmanship.

Lastly, the Defendant moves for a protective order limiting the scope of his deposition to what he personally observed with respect to the Pleadings at Issue that are separate and do not bind the Defendant Entities. *See Oakley v. MSG Networks, Inc.*, No. 17-cv-6903 (RJS), 2025 LX 161300 (S.D.N.Y. Jan. 15, 2025) (finding good cause to limit a party's deposition to the scope of the claims and defenses raised in the action). For example, in *Oakley,* the plaintiff made no secret of his intention to ask questions about a deponent's termination after the subject incident that went beyond the scope of the pleadings. *Id.* The deponent filed a motion for a protective order to limit the deposition topics to what he personally observed and what individuals told him about an incident that occurred on February 8, 2017. *Id.* The court granted the motion for a protective order

limiting the deposition to the deponent's personal observations, finding that any attempts
to question about the deponent's termination (issues outside the claims and defenses)
for purposes of harassment or to generate negative publicity for Defendants would not be
tolerated. *Id.*

Just as the plaintiff in *Oakley*, the Plaintiff has made it no secret of his intentions
to ask Mr. Wilson about the dismissed Counterclaim and the RICO Complaint based on
the discovery demands served on September 28, 2025, and subsequent meet and confer
letter(s) dated October 30, 2025. *Id.* But neither the facts surrounding the Counterclaim
nor the RICO Complaint are relevant to the issues in the Pleadings at Issue – namely,
whether Mr. Wilson personally directed any individual or entity to upload, distribute, and
sell unauthorized copies of Plaintiff's Subject Works (photographic visual arts, 3D models,
and literary documentation) on several of the Defendant Entities' platforms.

Alternatively, whether Mr. Wilson, in the capacity of a corporate officer, was
derivatively liable for plaintiff's copyright infringement and business tort claims asserted
in the Pleadings at Issue. *See Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1358 (Fed.
Cir. 2021)\(quoting *Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*, 609
F.3d 1308 (Fed. Cir. 2010)) (finding that for derivative liability, it remained that "a
corporate officer — or perhaps only a corporate owner — cannot be found derivatively
liable for the corporation's infringement without piercing the corporate veil.).  Thus, as in
*Oakley,* we request that this Court limit Mr. Wilson's deposition, in his individual capacity,
to the topics asserted in the Pleadings at Issue regarding any actions personally directed
by Mr. Wilson and prohibit questions about the Counterclaim and RICO Complaint.

Allowing the Plaintiff to question witnesses and demand documents regarding the dismissed Counterclaim and/or RICO Complaint would blur the lines between distinct cases, foster harassment, and invite discovery end-runs around the supervising courts in those matters. The Court should not tolerate any of Plaintiff's attempts to use Mr. Wilson's deposition for harassment or to generate negative publicity for either Mr. Larosiere or Mr. Wilson, DEFCAD, Inc., Defense Distributed, or Dioskouroi LLC. It would also create severe practical burdens, including duplicative document searches and depositions that are not tethered to the issues.

In sum, Mr. Wilson requests that Plaintiff be allowed to question regarding what he personally observed concerning the Subject Works and any statements regarding the Subject Works, including such statements made by employees of DEFCAD, Inc., Defense Distributed, or Dioskouroi LLC. But a more general discussion about the dismissed Counterclaim, Counter-defendants, and RICO Complaint should be off limits.

### E.    A Narrow, Targeted Protective Order Is Appropriate

Defendant does not seek to foreclose relevant, nonprivileged discovery regarding the claims and defenses actually joined in this case. They seek only to exclude examination and requests that target the dismissed Counterclaim and/or RICO Complaint and their underlying drafting, content, purpose, and prosecution. The relief requested is tightly tailored to the problem presented, avoids prejudice to the Plaintiff, and preserves the integrity of case management across forums.

### V.    CERTIFICATION OF CONFERRAL

Pursuant to M.D. Fla. Rule 3.01 (g),  the undersigned counsel certifies that Counsel for the parties met and conferred in good faith on October 31, 2025, at 4:00 p.m. EST by

323850399v.1

Zoom, regarding the relief sought herein. Despite those efforts, the Plaintiff is unopposed to the Motion; and, therefore, the parties were unable to resolve the dispute. Attached hereto as Composite **Exhibit E** are true and correct copies of the parties' memorializing the meet and confer letter concerning the instant motion for protective order before the motion was filed..

**WHEREFORE**, Defendant, CODY WILSON, respectfully requests that the Court enter a protective order as to Mr. Wilson's deposition, in his individual capacity, scheduled for November 14, 2025, at 10:00 a.m. EST, as follows: Plaintiff, Matthew Larosiere ("Plaintiff") shall not, in any deposition, interrogatory, request for production, request for admission, or other discovery device in this action, seek testimony, documents, or information concerning, reflecting, or relating to the dismissed Counterclaim and the RICO Complaint, including without limitation:

a) the drafting, editing, review, approval, filing, amendment, or withdrawal of those pleadings;

b) the factual or legal bases for allegations or claims asserted therein;

c) communications (internal or external) concerning those pleadings, including with counsel, consultants, agents, or third parties;

d) materials considered or relied upon in connection with those pleadings; and

e) litigation strategy, objectives, settlement considerations, or case status related to those claims; and for such other further relief this Court deems fair and just.

323850399v.1

Dated: November 10, 2025                    Respectfully submitted,

**WILSON ELSER MOSKOWITZ
EDELMAN& DICKER LLP**

By:   *s/Leia V. Leitner*
                Leia V. Leitner
                Florida Bar No:  105621
                111 North Orange Avenue
                Suite 1200
                Orlando,  FL  32801
                Telephone: 407-423-7287
                Facsimile:  407-648-1376
                2
                Cheryl.Kujawski@wilsonelser.com

                Jura C. Zibas
                Florida Bar No:  124571
                Amaris C. Gyebi, Esq.
                Florida Bar No:  1019361
                2063 Main Street - Suite 100
                Sarasota, FL 34237
                Telephone:       941-866-8561
                Facsimile: 941-210-5979
                Jura.Zibas@wilsonelser.com
                Amaris.Gyebi@wilsonelser.com
                Cheryl.Kujawski@wilsonelser.com

                *Co-Counsel for Defendants*
                *Cody Rutledge Wilson*
                *DEFCAD, Inc. and Defense Distributed*

**<u>CERTIFICATE OF SERVICE</u>**

    I HEREBY CERTIFY that on the 10th day of November, 2025, a true and correct

copy of the foregoing document has been electronically filed with the Clerk of the Court

using the  CM/ECF E-Filing Portal, which will serve an electronic copy of the foregoing on

the following: Zachary Z. Zermay, Esq., Florida Bar No:  1002905; Zermay Law, P.A.,

323850399v.1

*Counsel for Plaintiff*, 1200 Fourth Street, #1102, Key West, Florida 33040; Telephone: 305-767-3529; Zach@Zermaylaw.com and info@Zermaylaw.com ; Charles (Chad) Flores, Esq., Flores Law PLLC, *Counsel for Defendants, Cody Rutledge Wilson, DEFCAD, Inc., Defense Distributed and Dioskouroi LLC,* 917 Franklin Street, Suite 600, Houston, Texas 77002, Telephone: 713-364-6440, CF@ChadFlores.law; service@ChadFlores.law.

*s/Leia V. Leitner*
Leia V. Leitner