```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        ORLANDO DIVISION

                     CASE NO:  6:24 CV 1629


MATTHEW LAROSIERE,

       Plaintiff,

vs.

CODY RUTLEDGE WILSON, DEFCAD,
INC., DEFENSE DISTRIBUTED, and
DIOSKOUROI LLC,

       Defendants.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *




MEET-AND-CONFER

DATE TAKEN:     October 31, 2025
TIME:           4:00 p.m.
PLACE:          VIZ ZOOM
REPORTED BY:    LINDE BLOSSER, STENOGRAPHER, NOTARY PUBLIC




* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

BULMER COURT REPORTING
407 324 1599
www.bulmerreporting.com

Page 2

A P P E A R A N C E S:

ZACHARY Z. ZERMAY, ESQUIRE
Zermay Law
3000 Coral Way
Suite 1115
Miami, Florida 33145
APPEARING ON BEHALF OF PLAINTIFF

MATTHEW LAROSIERE, ESQUIRE
6964 Houlton Circle
Fort Worth, Florida 33467
APPEARING *PRO SE*

LEIA V. LEITNER, ESQUIRE
AMARIS GYEBI, ESQUIRE
Wilson Elser Moscowitz Edelman & Dicker, LLP
111 North Orange Avenue
Suite 1200
Orlando, Florida 32801
APPEARING ON BEHALF OF DEFENDANT CODY RUTLEDGE WILSON

Case 6:24-cv-01629-AGM-LHP    Document 165-1    Filed 11/17/25    Page 3 of 108 PageID
A - TRANSCRIPT OF OCTOBER 31 CONFERENCE
4263

Page 3

```
 1                    P R O C E E D I N G S

 2                         - - - - -

 3          MS. LEITNER:  Okay.  Before we get started, I

 4     just wanted to go over a couple of housekeeping

 5     matters.

 6          I see that Mr. Larosiere is participating, or is

 7     attending this meet-and-confer.  I just want to

 8     clarify that he's attending as far as what his

 9     capacity is and role that he's attending this meeting

10     as.

11          MR. ZERMAY:  He's a party.

12          MS. LEITNER:  Understood.  But is he going to be

13     participating with respect to the discovery dispute?

14     And if so, then I need to know whether he is or not.

15          MR. ZERMAY:  Oh.  I mean, if we have a question

16     for him, we could certainly ask him and get it

17     straight from the horse's mouth.  You know, I'm not

18     calling Mr. Larosiere a horse, but he's right here.

19          MS. LEITNER:  Okay.  So now that we've clarified

20     that he's attending as a party, I just want to make

21     sure that we're all under the understanding that it

22     would be defendant's position, with respect to any

23     topics that you have declared as attorney-client

24     privilege, that that's now been waived because of the

25     presence of a third party.
```

 1          MR. ZERMAY:  I don't agree with that.  But

 2     anyway, if that can be your position, it could be

 3     your position, but I don't think attorney client

 4     privilege has been waived.

 5          MS. LEITNER:  Okay.  So I just wanted to say

 6     that moving forward so that we're all on the same

 7     page.

 8          The other issue is, I know that you -- you guys

 9     just sent over a meet-and-confer with respect to the

10     discovery responses that we served on October 28th,

11     which was essentially a -- a couple days ago -- or I

12     believe it was Tuesday of this week, and then we

13     received your meet-and-confer letter on the 29th with

14     respect to that.  And we've indicated that we would

15     like to write a substantive reply before we discuss

16     that.

17          So I just wanted to make sure that this

18     meet-and-confer would be tabled with respect to those

19     topics.

20          MR. ZERMAY:  Well, we want to discuss them.

21     It's -- you know, we laid out our position

22     thoroughly, and I have a copy of the letter in my

23     possession that I intend to introduce as an exhibit

24     and attach to the transcript.

25          So, I mean, it's -- it's all there.  It's --

Case 6:24-cv-01629-AGM-LHP    Document 165-1    Filed 11/17/25    Page 5 of 108 PageID
A - TRANSCRIPT OF OCTOBER 31 CONFERENCE
4263

Page 5

```
 1          it's one of the -- what is it? -- roughly 18 pages.
 2          You know, like nine pages a day to get through.
 3               So I'm hopeful that, you know, it's   our
 4          position is clear regarding the -- everything.  But
 5          it's all laid out there in the letters, is our
 6          position.
 7               MS. LEITNER:  Okay.  So I just wanted to, for
 8          the record, just state that it's our position that we
 9          would like to table that and discuss that for -- at a
10          later time, because we gave you the courtesy of not
11          scheduling this meet-and-confer with respect to our
12          outstanding discovery issues that we've identified so
13          that you can prepare and/or submit a substantive rely
14          to the same.
15               MR. ZERMAY:  Oh.  Well, yeah.  I mean, it -- the
16          standard is we have a meet-and-confer and discuss.
17               And if you guys have any questions about the
18          letter, we're happy to, you know, field the
19          discussion today as to what they are.
20               It's a -- I -- I think there's four things that
21          we really wanted to discuss regarding -- at least in
22          the letter, or at least in the responses.
23               The issue we have is Mr. Wilson saying that,
24          "Well, this is an ineffective way.  It should be
25          direct to my corporation," I suppose to himself.
```

Case 6:24-cv-01629-AGM-LHP    Document 165-1    Filed 11/17/25    Page 6 of 108 PageID
4268
A - TRANSCRIPT OF OCTOBER 31 CONFERENCE

Page 6

1   And, you know, that's not a proper objection.

2        And if the documents are in his possession,

3   custody, or control, that's    you know, he has to

4   produce the documents.  He can scan, and point out

5   one of his corporations say that the corporation

6   could produce the two.

7        So, I mean, we have four delineated topics that

8   we wanted to discuss, and that was a big one of them.

9   So hopefully, we can through that today.  Or we hope

10  to get through that today, because we have the

11  deposition coming up on the 14th, and that's -- yeah.

12  We got to get through this.

13       MS. LEITNER:  I -- I understand that,

14  Mr. Zermay.  I appreciate that and for the

15  clarification.

16       But I wanted to just make sure that it's our

17  position that we are not having a substantive

18  meet-and-confer with respect to the issues that

19  you've identified in your October 29th, 2025, letter,

20  and we are asking to just -- we receive the same

21  courtesy that we presented to you in that before we

22  were served these responses, your side, the

23  plaintiff, was asked for Mr. Wilson's deposition in

24  his individual capacity before -- you provided dates

25  before our deadline to respond to these discoveries.

Case 6:24-cv-01629-AGM-LHP    Document 165-1    Filed 11/17/25    Page 7 of 108 PageID
A - TRANSCRIPT OF OCTOBER 31 CONFERENCE
#2769

Page 7

1          So I just want to make sure that that's for the

2     record.  And -- and then if we can proceed with

3     respect to the topics I've outlined, since on the

4     on several of the emails, that you're aware and the

5     October 7th letter.

6          So does that work for you guys?

7          MR. ZERMAY:  Well, I guess just to -- to

8     clarify, we sent an email and asked to confer about

9     these topics, and, you know, we didn't receive

10    pushback on that.

11         So it's -- we'd say that it's our position that

12    you guys acquiesced to having this discussion today.

13         But to the extent we're not having discussion

14    today -- or it's your position that we're not

15    substantially discussing the topic today, are you

16    guys refusing to meet and confer about the topics

17    raised in the October 29, 2025, letter, which we said

18    we may need to file a motion to compel based upon the

19    discovery responses, compel better responses?

20         MS. LEITNER:  Okay.  And just for the record, I

21    wanted to clarify that we are not refusing to meet

22    and confer with respect to those issues, and we've

23    asked to table them to discuss them at a later time

24    so that we can respond and prepare a written response

25    to your October 7, 2025, as we had provided the same

Case 6:24-cv-01629-AGM-LHP    Document 165-1    Filed 11/17/25    Page 8 of 108 PageID
A - TRANSCRIPT OF OCTOBER 31 CONFERENCE
4270

Page 8

 1    courtesy.

 2          And to the other point with respect to that we

 3    agreed to it, that was because, as I mentioned, our

 4    firm is -- is -- had issues with applications on

 5    Microsoft.

 6          And to that -- to that -- when I received your

 7    email, I did not receive the letter, the 18-page

 8    letter that you were discussing outlining the issues

 9    that you have with our discovery responses until

10    after the fact.

11          And I have a -- I have written you via email

12    right after I realized that to let you know that.  So

13    I think that that's something that's also missing in

14    the time sequence with respect to our -- your request

15    to meet and confer.

16          So I hope that that covers everything and that

17    we can reschedule.  We are not saying we're not

18    meeting with you today -- we're not going to meet and

19    confer at all.  We're asking to reschedule to a later

20    time that's mutually agreeable, because we've asked

21    to -- we've asked to discuss these issues with you

22    for quite some time.

23          So moving forward with respect to that, if we

24    can discuss the discovery, that would be great as far

25    as if you guys want to keep moving forward with --

Case 6:24-cv-01629-AGM-LHP    Document 165-1    Filed 11/17/25    Page 9 of 108 PageID
A - TRANSCRIPT OF OCTOBER 31 CONFERENCE
4271

Page 9

1    effectively and efficiently.

2        MR. ZERMAY:  Yeah.  Well, if I can just -- you

3    know, jumping off that   that point, you know,

4    we're -- again, if -- if -- again, it's our position

5    that this is an effective way to meet and confer

6    regarding the discovery disputes.

7        And we're always happy to avoid motion practice.

8    You know, it would be our position that through -- by

9    and through the letters we've submitted and this

10   conversation we're having today, that the conferral

11   requirements would be satisfied.

12       That's not to say we're still not willing to

13   talk with you to avoid a motion to compel, but again,

14   given the November 14th deposition deadline, we -- we

15   got to -- we got to, you know, get moving forward on

16   this.

17       But I guess as a jumping off point from that,

18   if -- you know, when would you be available to

19   discuss this issue sometime next week?  Because

20   it's -- next Friday is going to be the 7th, and then

21   we only have another four -- or five business days to

22   review the -- or four business day to review the

23   material before Mr. Wilson's deposition.

24       So if you can't -- if you're saying you're

25   not -- don't have the ability to confer now despite

Case 6:24-cv-01629-AGM-LHP    Document 165-1    Filed 11/17/25    Page 10 of 108
A - TRANSCRIPT OF MOTION CONFERENCE
PageID #: 7231

Page 10

1    the emails and substantial letters, when -- when

2    would you be able to?

3         MS. LEITNER:  And so because you mentioned other

4    things, I have to establish for the record that we've

5    asked for authority requesting why your objec--- not

6    "your" -- our objections or responses have -- are

7    not -- are unfounded or without merit, and that was

8    not provided.

9         And secondly, it's your position that we have

10   not had a substantive conversation with respect to

11   the specific requests at issue.

12        One, namely because it appears that all of the

13   requests that you've identified are at issue.  So

14   I -- I would need some authority or case law statutes

15   or anything with respect to why our responses are not

16   sufficient.

17        And I think that that would give us an

18   opportunity to discuss that and narrow the issues

19   before -- you know, at a meet-and-confer, and that

20   this meet-and-confer today does not meet that

21   requirement to discuss that, because we have not

22   talked about a specific request, we have not talked

23   about a specific interrogatory or a request for

24   admission or any of those responses.

25        So I just wanted to make sure that that's clear

1 for the record.

2   As far as timing, I'd have to confer with our

3 side.  As you know, we have three attorneys at Wilson

4 Elser that are working on it, and as well as one

5 other attorney, Chuck Flores, who's at another law

6 firm.

7   So they would need to -- you know, I would have

8 to coordinate with their schedules, because I'm

9 actually out of office the 5th through the 7th, in

10 Denver, and I have other cases that are going to

11 trial in November.

12   So I -- I would have to confer on our side with

13 respect to a date to meet and confer with respect to

14 these issues.

15   MR. ZERMAY:  Okay.  Well, it seems like there is

16 a -- the -- the term of phrase is too many cooks in

17 the kitchen over there.

18   It's -- but in any event, our position is

19 delineated in the meet-and-confer letter and, you

20 know, the -- the letters speak for themselves, and

21 we'll be attaching the letter so the -- as an exhibit

22 to the record that's being generated today, so . . .

23   MS. LEITNER:  Understood.

24   And our response is that we haven't responded to

25 your substantive letter, haven't replied or sent over

Case 6:24-cv-01629-AGM-LHP    Document 165-1    Filed 11/17/25    Page 12 of 108
A - TRANSCRIPT OF STATUS CONFERENCE    PageID #: 2431

Page 12

1    by email any response to the substantive issues.

2        Okay.  So moving forward, the -- the topics I

3    want to discuss specifically   it's my understanding

4    that -- and that is something that I -- I was not

5    aware of, that request for production numbers 1 to 58

6    were withdrawn.  So we agree that that's a nonissue.

7    We'll move forward with respect to that.

8        We do -- we understand that the request for

9    production numbers 1 to 11 were served on July 4th,

10    2025, as well as the interrogatories that I had

11    identified in the October 7th, 2025, letter.  And I

12    believe we've identified one, three, and nine as the

13    issue.

14        So what I want to do is start with the

15    interrogatories, then.  And just so it's clear for

16    the court reporter, I'm just going to read it off,

17    because there's only like a   a few questions I had

18    issues with.

19        All right.  All right.  So the document I'm

20    referring to -- and I can go ahead and share my

21    screen if I -- so it will be a little bit easier.

22        MR. LAROSIERE:  And Madam Leitner?  It's -- it's

23    Mr. Larosiere.

24        MS. LEITNER:  Yes.

25        MR. LAROSIERE:  If you like, we have all of

```
 1        them.  So if you just want to let us know which page
 2        of which document you're talking about, we can follow
 3        along, if that's easier.
 4            MS. LEITNER:  Sure.  And if you call me
 5        "Mrs. Leitner," that would be helpful.
 6            Okay.  Sure.  Interrogatory No. 3 -- and I do
 7        want to pull it up, but we'll just identify that as
 8        Defense Exhibit 1.
 9            And that interrogatory specifically requests,
10        "Specify the date and website on which each of the
11        copyrights at issue in this case were first
12        published."
13            And in response to that and from the documents
14        that we received, I understand that these are your
15        responses -- and correct me if I'm wrong, because,
16        again, you know, we -- we've subbed into this, so
17        we're relying on the documents we received that
18        and I understand are served.
19            So with respect to the response, it says, "The
20        counter-defendant objects to this interrogatory to
21        the extent it presumes that each copyrighted work was
22        first published via a website or that such
23        information is necessary or relevant to any claim or
24        defense in this action.  The interrogatory also seeks
25        information already in counter-plaintiff's
```

1    possession, custody, or control, specifically the

2    dates of first publication, which are stated on the

3    copyright registration certificates filed in this

4    case.

5         "Subject to and without waiving the foregoing

6    objections, counter-defendant states that the dates

7    of first publication are accurately reflected in the

8    copyright registration certificates previously filed

9    with the copyright office and submitted in this

10   litigation.

11        "Counter-defendant further states that he did

12   not personally publish the works at issue on any

13   website and is not in possession of specific website

14   publication data.

15        "To the extent the works were later mirrored or

16   uploaded by others, including by or at the direction

17   of counter plaintiff or its associates,

18   counter-defendant lacks knowledge sufficient to

19   identify the date and website of such publication."

20        So with respect to that response, I think our

21   issue is -- I mean, I understand you're relying on

22   the publication dates, which, essentially, the

23   registration information occurred from 2023 to the

24   present for the works at issue.

25        But you also say you don't know how -- the

Case 6:24-cv-01629-AGM-LHP   Document 165-1   Filed 11/17/25   Page 15 of 108
A - TRANSCRIPT OF STATUS CONFERENCE   PageID #:27731

Page 15

```
 1      plaintiff indicates that he doesn't know how they
 2      were published, if they were published on a website.
 3           I think that what we think may be missing is
 4      you -- you also -- the plaintiff also filed a
 5      declaration with respect to his preliminary
 6      injunction motion stating that he -- as far as
 7      paragraph 10 for the works concerning the NF3, which
 8      is a work at issue.  "I created the works myself and
 9      published them pseudonymously as John Elik, pseudonym
10      Ivan The Troll."
11           So to the extent that you have information with
12      respect to this infringement -- the -- excuse me --
13      the subject works, you should have that information
14      as to how it was being published and the date and
15      whether it was published on a website.
16           And I guess my questions are, are you going to
17      supplement that with respect to this information, now
18      that the declaration Mr. Larosiere has filed on -- on
19      record, or are you still, I guess, going with this
20      response?
21           Any other thing with respect to have -- not
22      having any knowledge with respect to the website,
23      there is also sworn testimony that Mr. Larosiere is
24      an administrator of the website, where he states that
25      some of the subject works were published.
```

Case 6:24-cv-01629-AGM-LHP    Document 165-1    Filed 11/17/25    Page 16 of 108
A - TRANSCRIPT OF STATUS CONFERENCE  PageID #:7331

Page 16

 1          So I guess my -- I mean, I just wanted to get

 2     clarity.  I mean, it's the same thing with

 3     interrogatory 9, No. 9.  It's the same issue, that

 4     you basically say you don't know.  And -- and I could

 5     go into detail with respect to that.

 6          But essentially, are you still relying on the

 7     fact that you have no knowledge as to where the --

 8     the subject works were published and that it -- you

 9     can't identify what website it was published at?

10          And if not, are you going to supplement those,

11     that -- that rog, that interrogatory No. 3?

12          MR. LAROSIERE:  Sorry.  Would you like me to

13     just respond directly so that you don't have to go

14     through Zach?  Because I feel like that may be more

15     efficient.

16          MR. ZERMAY:  Yeah.  There's a -- there's a lot

17     to unpack there.

18          MS. LEITNER:  I just need to know if you're

19     supplementing it or if there's -- that's what -- if

20     that's the response you guys are relying on or

21     maintaining.

22          MR. LAROSIERE:  The response is complete, madam,

23     and I'd be more than willing to chat about why.

24     Because I think there's a couple misapprehensions

25     baked in.

```
 1            So the -- the short answer is, the response is
 2       compete.  If you'd like to discuss why, we'd be happy
 3       to.
 4            MS. LEITNER:  No.  I mean, it sounds pretty --
 5       pretty clear.  It's your position.  So no.  I can
 6       keep moving.
 7            Same thing with interrogatory No. 9, the
 8       responses.  Sorry.  It's one of those things where
 9       it's like the responses and the requests are not on
10       the same page.
11            So -- okay.  Interrogatory 9, No. 9 states,
12       "Identify any website where 3D printable firearm
13       files and accessories are discussed or shared for
14       which you maintain administrative privileges."
15            And then I believe your response is
16       interrogatory 9, No. 9.  And there's a -- after
17       "Objection," you then answer, "Subject to and without
18       waiving the foregoing objections, counter-defendant
19       states that he is without knowledge sufficient to
20       identify any website on which 3D-printible firearm
21       files or accessories are discussed or shared and for
22       which he maintains administrative privileges, and is
23       therefore unable to respond."
24            So same question with respect to that.  Is it
25       complete or are you supplementing this response?
```

Case 6:24-cv-01629-AGM-LHP    Document 165-1    Filed 11/17/25    Page 18 of 108
A - TRANSCRIPT OF STATUS CONFERENCE    PageID #: 82831

Page 18

 1          MR. LAROSIERE:  That is complete.

 2          And again, to the extent there's an assumption

 3     baked in, we would be happy to explain to clarify,

 4     but I would be happy to represent that that response

 5     is complete.

 6          MS. LEITNER:  Okay.  There was one other

 7     question, and I didn't really identify, but I just

 8     though with -- and it's identified in the October 7,

 9     2025, letter.

10          But with respect to interrogatory No. 1, which

11     basically asks for the handles that you used -- or

12     the plaintiff uses.  And one of them is Fuddbuster.

13     Is it --

14          THE COURT REPORTER:  What?  One more time?  What

15     was it?  What buster?

16          MS. LEITNER:  Fuddbuster.  Fudd,

17     F u d d b u s t e r.

18          THE COURT REPORTER:  F-u-d-d-s-t-e-r?

19          MS. LEITNER:  F-u-d-d, b, as in boy, u, as in

20     umbrella, s, as in Sam, t, like Tom, e, like Erika,

21     r.

22          THE COURT REPORTER:  Got it.

23          MS. LEITNER:  I just want to clear -- questions

24     just to -- just a question for clarification.  Is it

25     Fuddbuster or Fuddbusters?

Case 6:24-cv-01629-AGM-LHP    Document 165-1    Filed 11/17/25    Page 19 of 108
A - TRANSCRIPT OF JULY 31 CONFERENCE    PageID #: 2631

Page 19

```
 1            MR. LAROSIERE:  For sure.  And, you know, feel
 2       free -- for the purpose of this discussion, I think
 3       Mr. Zermay has given you permission to speak directly
 4       to me -- we're interested in efficiency and in
 5       resolving these things amicably.  So feel free to
 6       address your questions directly to me for the
 7       purposes of this conference.  I know that was kind of
 8       awkward for you to deal with linguistically, so let's
 9       take that off of your shoulders.
10            So yeah.  It's -- so the -- the YouTube channel
11       is Fuddbusters in the plural.
12            MS. LEITNER:  Okay.
13            MR. LAROSIERE:  So singularly, I am indeed the
14       Fuddbuster.
15            MS. LEITNER:  Okay.  I just wanted -- I mean,
16       that's exactly the point.  I -- I -- it looked -- it
17       was different than what I have viewed online.
18            Okay.  Those -- that was really my issues with
19       the interrogatories.  I understand the request for
20       production numbers 1 to 11 were served.  Let me know
21       if that's not accurate.
22            Can you guys confirm?
23            MR. LAROSIERE:  Sorry.  I can -- I can tell you
24       I'm not sure what you're talking about.  I'm looking
25       through my files that -- do you have the date of the
```

1       document you're talking about?

2            MS. LEITNER:  Yeah.  My understanding, it was

3       served July 4th, 2025, but if it wasn't, then I will

4       take that as a topic of discussion and we can --

5       obviously, if they weren't served on your end, they

6       weren't served.

7            MR. LAROSIERE:  One moment, please.

8            So there are two, one through eleven requests?

9            MS. LEITNER:  Yes.

10           MR. LAROSIERE:  And so the ones in your letter

11      concern the withdrawn ones.  And so --

12           MS. LEITNER:  Yes.  Understood.

13           MR. LAROSIERE:  And so there are -- hold on.

14           It's confusing because Mr. Zermay and I use

15      multiple different emails when we send things around.

16           So I guess to the extent you're -- we -- we

17      can't be too sure what you're talking about, because

18      your letter referred to the withdrawn requests one

19      through eleven.

20           But I guess if you want to -- I'm not sure

21      because it would have been Mr. Zermay who handled any

22      requests that were served to me --

23           MR. ZERMAY:  One through eleven?

24           MR. LAROSIERE:  -- but I guess any questions you

25      have -- might have about those, we're happy to field.

```
 1            MS. LEITNER:  Okay.  I mean, if they are at
 2      issue, we did receive responses.  I just have a
 3      question with respect to No. 9, which basically you
 4      guys said you would send over documents and haven't.
 5      So that's my main problem with respect to that one.
 6            But we can talk about this at a later time, you
 7      guys.  Feel free to write a substantive response with
 8      respect to that because I know I didn't discuss this
 9      in advance.
10            But again, if you can -- it's really a quick
11      issue of are you going to -- when are you -- are you
12      supplementing it, and if -- if not, when -- and if
13      you were, when.
14            MR. LAROSIERE:  Thank you so much.  And I do
15      think it would be really great going forward, you
16      know, issues like that, we can just email about them,
17      right?  Just say, "Hey.  Where"   "This is missing.
18      Is this" -- you know, whatever.  And it makes it way
19      easier, because there's all of these things.
20            But yeah.  If you can -- especially, it would be
21      massively appreciated just because it was implied
22      before --
23            MS. LEITNER:  Sure.
24            MR. LAROSIERE:  -- if you can send a
25      communication on that, and so we can -- you know,
```

 1      we'd be happy to handle that.

 2              MS. LEITNER:  Sounds good.  Perfect.

 3          The next topic I have are plaintiff's initial

 4      disclosures.  We did receive -- we did acknowledge

 5      receipt with respect to the initial disclosures that

 6      we received from the counter-defendant.  However,

 7      they all are -- A, they're not in the format of

 8      Federal Rules of Civil Procedure 26(a)(1).

 9          And B, they do not concern the copyright claims,

10      the unfair competition, and name and likeness claims

11      that are at issue in this lawsuit.

12          So I guess my question is, when are you going to

13      supplement that?  It was due January.  And if you are

14      going to supplement it, when should we receive it?

15              MR. ZERMAY:  Yeah.  So I have a copy of the

16      initial disclosed in front of me right now.  It's --

17      served them on or about January 2025.

18          And so I'm trying to boil down to what issue

19      that the defendants have with this.  At least from my

20      initial review of it, the form of it -- it relates to

21      the copyright plans.

22          Is -- is the issue you guys have regarding,

23      like, the title of it being counter-defendants,

24      plural, Matthew Larosiere, John Elik, Alexander

25      Holliday, Josh Stroke, John Lettman, Matt are

Case 6:24-cv-01629-AGM-LHP   Document 165-1   Filed 11/17/25   Page 23 of 108
A - TRANSCRIPT OF STATUS CONFERENCE   PageID #:2531

Page 23

1    consolidated in disclosures?

2         Does -- I had a discussion with my clients

3    regarding the initial disclosures, and they    they

4    disclosed what relates to copyright lawsuit.

5         MS. LEITNER:  Sure.  I can explain.  So

6    generally, the format would be you would -- under --

7    it would be exactly how Rule 26(a) lays out, like you

8    would -- you know, the name -- your witnesses --

9    26(1)(a)(1) would be your witnesses, a name,

10   addresses, and telephone number; two, a copy of the

11   categories and location of document; and three, the

12   computation of damages; and four, insurance

13   agreement, with which we wouldn't obviously have an

14   issue.  You guys -- you wouldn't have.

15        But with respect to the format as far as

16   26(a)(1)(a), the missing items are two and three with

17   respect to what documents you're relying on to prove

18   your copyright claim, and three, what damages are you

19   discussing.

20        And usually what we've seen and what we're

21   missing here is, you know, are you electing actual

22   damages, disgorgement of profits?  What -- I mean,

23   people usually -- or sometimes people use -- I've

24   seen a specific amount.

25        So the -- the documents that you're relying on

Case 6:24-cv-01629-AGM-LHP    Document 165-1    Filed 11/17/25    Page 24 of 108
A - TRANSCRIPT OF MOTION TO COMPEL CONFERENCE
PageID #: 3631

Page 24

 1    and the damages that you're claiming are the two main

 2    issues that we're missing with respect to the initial

 3    disclosures.

 4        So I guess -- so at this point, are you

 5    supplementing it, and if you are, what date are you

 6    going to supplement it?

 7        MR. ZERMAY:  So I -- looking at the initial

 8    disclosures -- and just to complete the loop on

 9    this -- we're -- I'm looking at page 4 and 5 of the

10    initial disclosures.  Could you tell me what issue

11    you have with the disclosure as it relates to the

12    document?

13        MS. LEITNER:  Can you send me -- or share your

14    screen on what exactly you're looking at?  Because I

15    just want to be sure that we have everything that

16    you're looking at.

17        Like I said, there's   we had a transfer, ,you

18    know, we obviously subbed into this.  So we're trying

19    to obtain all the documents that prior counsel had.

20        And I -- the only ones that we have, like I

21    said, and that I've looked at, they have much on a

22    copyright.

23        And so essentially, what we normally see when we

24    see documents, it -- it's like a -- a copyright

25    registration, then a DMCA take- -- take-down notices,

 1          or, you know, mandatory deposit copies, you know,

 2          things like that.  And I don't see that listed as

 3          part of your support of your claim, and I just want

 4          to see if maybe -- if that's what you're not relying

 5          on, then that's fine.  I just want to be clear.

 6              MR. ZERMAY:  Let's see here if I could share

 7          the -- how do I do this?  Host tools --

 8              MS. LEITNER:  Or you can email, because I -- the

 9          ones, the things that I -- the documents that I'm

10          looking at didn't have that information.

11              MR. LAROSIERE:  If I may, there was only one

12          substantive document, so I think probably the best

13          thing would be just exchange them.

14              MR. LAROSIERE:  Oh.  You got it.  Okay.

15              MR. ZERMAY:  Okay.  I'm on the bottom of page 4.

16          Let me roll through the documents.

17              MS. LEITNER:  Okay.  So I see some of those.

18          That looks like the counterclaim stuff.  But keep

19          going down.

20              (Scrolling.)

21              MS. LEITNER:  Okay.  And I think the other --

22          okay.  And mean, I see some that may pertain to this,

23          the direct claims.

24              But the issue is identifying the computation of

25          categories, then, would be for Rule 26(a)(1)(3) --

Case 6:24-cv-01629-AGM-LHP    Document 165-1    Filed 11/17/25    Page 26 of 108
A - TRANSCRIPT OF STATUS CONFERENCE    PageID #:6283

Page 26

 1    (1)(3).

 2          I mean, it's -- you know, I need some kind of --

 3    shed some light on what claims for damages you are

 4    I mean, it's essentially a general, like,

 5    categorization of -- I don't see anything with

 6    respect to the damages, I guess.

 7          MR. ZERMAY:  Okay.  You want supplementation of

 8    the damages?

 9          MS. LEITNER:  Yeah.  How you guys are

10    calculating that, how -- you know, the computation

11    orders.  I mean, literally the rule.  Computation of

12    each category of damages claimed by the disclosing

13    party.  So that is what we would need.

14          And obviously, the documents that you're relying

15    on that you've listed there.

16          MR. LAROSIERE:  And just for clarity, the --

17    documents are primarily those attached to the

18    complaint?

19          MS. LEITNER:  Okay.

20          MR. ZERMAY:  Okay.  So is that the issue you

21    have with the initial disclosures related to

22    plaintiff's claim?

23          MS. LEITNER:  Yes.  The damages portion.  And if

24    you're saying that the documents, including this USB

25    drive that you refer, were attached to the complaint,

```
 1        then we have them.

 2             MR. ZERMAY:  Okay.

 3             MS. LEITNER:  I have two more things on my

 4        agenda.  The other one was I know we briefly talked

 5        about this last time, about ESI protocol.  We were

 6        an- -- just anticipating providing documents.  We

 7        have 13,000 documents, just to give you an idea,

 8        which would then translate to a million documents on

 9        our -- and we're in the process of -- I understand

10        that ano- -- the other law firm was using another

11        database.  We now are in the process of spending a

12        month and a half to try to convert it to another ESI

13        vendor, which is taking some time.

14             So we suggested search terms to narrow the

15        documents or any responsive documents with respect to

16        what you guys were requesting, but I just want to get

17        clarity as to whether you believe that ESI protocol

18        is necessary, or if not, whether you plan on going

19        over through a million documents -- a million pages

20        of documents.

21             MR. ZERMAY:  So at this juncture, we don't think

22        there is a need for ESI protocol, one delineated.  I

23        mean, it's a -- heart and soul to the claim is

24        copyright.

25             And you know, it's a -- and, you know, I -- I --
```

 1    know you referenced and said there might be -- we're

 2    not even through millions of documents, but you know,

 3    we anticipate going through the discovery.

 4        MS. LEITNER:  Okay.  I just wanted to be clear

 5    with respect to that, because I was just -- you say

 6    it's protocol.  It just generally makes the -- most

 7    of the parties more efficient with respect to

 8    documents and reviewing and -- and getting the

 9    discovery more productive.  But if you find it

10    unnecessary, that's -- that's totally fine.

11        The other -- the last thing that I wanted to

12    discuss today is that upcoming deposition.  So

13    assuming that you guys are proceeding with it on

14    November 14th, based on your discovery demands that

15    were served after the counterclaim was dismissed and

16    the RICO claims that were filed separately after -- I

17    mean, shortly before the discovery demands were

18    served, we want to know whether you plan on

19    discussing -- or limiting the topics to the pleadings

20    at issue or whether you intend to ask questions about

21    the RICO claim or the counterclaim.

22        And the topics that I'm referring to are -- were

23    outlined in the discovery demands, including, just

24    generally, real estate transactions with the -- the

25    Wilsons, just general documents on copyright and DMC

 1        activity without referring to the subject work,

 2        investigators, Bitcoin histories, and staff and

 3        termination periods unrelated to the subject works or

 4        tying into it, and media, reputation, community

 5        monitoring, fishing.

 6             And there was also questions about personal --

 7        like Mr. Wilson's personal business devices, which

 8        didn't have a relationship or a predicate or

 9        proportionality to the claims and defenses.

10             So I just want to know -- I guess my simple

11        question to simplify it is, are you going to ask

12        about questions about the counterclaim or the RICO

13        claim at the deposition?

14             MR. ZERMAY:  So our intent is to discover

15        evidence that we could use at trial.  That's what

16        we're trying to get to.  We're trying to get to the

17        bottom of what happened.

18             And frankly, with regards to the alterego

19        allegations, with just the nature of how Mr. Wilson

20        has been conducting his business and running his

21        company, the topics of inquiry regarding just the --

22        how he has been using his corporations.  He's put

23        that at issue by denying that they're alteregos of

24        his corporations.

25             So while we're not anticipating on specifically

```
 1        targeting questions regarding the counterclaims,
 2        we're not saying that the topics won't bleed over.
 3        It's    you know, it's    that    that's our
 4        intention, at least just get to the bottom of what
 5        happened and get Mr. Wilson's testimony as permitted
 6        by the rules.
 7            MS. LEITNER:  Okay.  My understanding is as a
 8        part of the counterclaim, there was that RICO claim.
 9        So it sounds like that you may also have an intention
10        to ask about the RICO claim as well.
11            So -- and I -- just because we received these
12        discovery demands asking about all of these other
13        over- -- in our opinion, again, and our position is
14        overbroad and beyond the scope, we intend to file a
15        motion for protective order with respect to limiting
16        the topics to just the pleadings at issue.
17            So I just wanted to see if you agree or don't
18        agree to the consent that -- the requests we will be
19        seeking in that motion.
20            MR. ZERMAY:  Well, this is news to me regarding
21        a protective order.  I think we have to specifically
22        meet and confer about that, wouldn't we?
23            MS. LEITNER:  I think I sent you at least
24        advanced notice with respect to this topic.  If you
25        want to come back to me next week and let me know.
```

```
 1        You know, let me know by Wednesday or something, then
 2        let me know what your position is.  If you need more
 3        time, that's perfectly reasonable.
 4             But that is something that -- based on just
 5        reviewing the discovery demands, that seems like we
 6        want to make the deposition as productive as
 7        possible, and if it's going to be asked -- we don't
 8        want -- we don't want to have a deposition where
 9        we're just objecting to every request.  And we want
10        to just make sure it's streamlined.  So that is our
11        idea of trying to resolve that.
12             So again, if you want to take some time and let
13        me know your position so I can note that on the --
14        you know, the conferral agreement, or provision under
15        35.01(g), that's fine too.
16        MR. ZERMAY:  Yeah.  Because I'm looking at the
17        email correspondence.  I believe the only thing that
18        can be construed as covering what was just mentioned
19        is the sentence, "Mr. Wilson's topics will be limited
20        to the claims at issue."
21             And that sort of confused me, because if this
22        was a corporate representative deposition where there
23        are specifically delineated topics of inquiry, then
24        that's one thing.
25             We're asking him as -- you know, his personal
```

```
 1        capacity, because he's not binding the corporation.

 2             MS. LEITNER:  Right.

 3             I    I just wanted to get an understanding,

 4        because, again, there is a separately filed RICO

 5        claim, and there are going to be some -- with

 6        another -- different other attorneys, and he's going

 7        to be filing drafts, or has, like, mental impressions

 8        with respect to some of his legal strategy.

 9             And so some of that information would be

10        considered privileged because -- it would be

11        privileged, and attorney-client privilege would stay

12        with Cody, Mr. Wilson.  So I just wanted to just put

13        that out there.

14             And again, I don't want to ambush you.  You

15        know, I'm -- you know, I'm -- if you want to give it

16        a couple days here to consider whether you are

17        opposed or unopposed to that motion, and then we will

18        note that accordingly.

19             MR. ZERMAY:  And you know, it's probably not

20        surprising that we don't intend on asking questions

21        regarding the attorney-client privilege.  There are

22        things that are covered by the attorney-client or

23        work-product privilege.  I have never, when taking

24        depositions, say, "Oh.  What did you tell your

25        lawyer," or you know, "What did your lawyer say to
```

     1          you," and their mental impressions.

     2               So I'll represent to you that that I -- I won't

     3          be asking questions regarding, you know, specific

     4          discussions with Mr. Reynal or the attorney that's

     5          tasked regarding the narrative of a RICO lawsuit

     6          against Mr. Larosiere and his friends.

     7               MS. LEITNER:  Okay.  I guess my question, then,

     8          would be do you have a position with respect to if

     9          you're opposed or unopposed to this motion, and if

    10          not, let me know by Wednesday.

    11               MR. ZERMAY:  Okay.  We'll get back to you on

    12          that.

    13               MS. LEITNER:  And I will send over -- I'll

    14          circu- -- I'll get back to our team and circulate the

    15          issues we've discussed, our responses to your

    16          discovery demands, so we can have a meet-and-confer

    17          with respect to that.

    18               And if there's any -- that's -- I mean,

    19          literally that's all I have for today.  And now it's

    20          almost -- it's 4:48.  So if there is nothing else --

    21               MR. ZERMAY:  Let's -- let's just pencil in a

    22          time to confer about the -- the protective order

    23          again.  And, you know, if you need more time or --

    24          you know, that -- that would give you some leave time

    25          to work the (indiscernible) or regarding the

```
 1    meet-and-confer letter of October 29, 2025.

 2         And we could pencil in the discussion regarding

 3    the protective order in a   you know, it's our

 4    position we've satisfied the meet-and-confer

 5    obligation regarding the motion to compel.  But to

 6    the extent that you disagree and want to chat about

 7    it again, let's discuss it at the same time as the

 8    motion for protective order.

 9         MS. LEITNER:  Okay.  Sounds good.  I can look at

10    the week of the 10th, because I will be in Florida.

11    So I can look in those dates.  I should be good the

12    12th.  Let's see.

13         Yeah.  I should be good the 12th and then the

14    11th from -- is that Veterans's Day?  -- from one to

15    three Eastern Time.

16         Does it work for you, Amaris?

17         MS. GYEBI:  The 11th is out.  The 12th I can

18    make it work.

19         MS. LEITNER:  What's that?

20         MS. GYEBI:  The 11th is out for me, but the 12th

21    I can make work.

22         MS. LEITNER:  Okay.  Cool.

23         Yeah.  I can make any time on the 12th.  Or I

24    have a meeting from twelve to one, but that shouldn't

25    affect anything here.
```

```
 1            MR. ZERMAY:  Yeah.  I'm just -- because the
 2       deposition is set for the 14th, so that's where -- I
 3       was hoping to have this done sometime next week.
 4            MS. LEITNER:  I know.  I'm really tight next
 5       week.  I'm traveling, so I can -- the best I can do
 6       is reach out to our other side of the team and see
 7       when they're available that week of the 3rd and
 8       circulate these dates by email.
 9            So, I mean, we can circulate it, and that
10       would -- that would be helpful.  Or the 11th works
11       for us.  Whatever time.
12            MR. ZERMAY:  Okay.  Well, I was hopeful we'd be
13       able to accommodate the schedule, but it looks like
14       in light of the depo going -- the depo date and just
15       how tight everything is, we might have to, you know,
16       file on the motion to compel to get an order on it.
17       Because again, we sent two conferral letters
18       regarding it, so we were anticipating, and discussed
19       today.
20            So I think the Rule 3.01(g) requirements are
21       satisfied, and, you know, it's -- again, we were
22       helping to avoid a motion, but it's -- just the
23       timing of this is -- again, I -- I -- I'm always
24       happy to accommodate, but this is a situation where I
25       just can't do it lest it hurts my client.
```

```
 1              MS. LEITNER:  Well, understood.  We don't want

 2         any -- anything like that.  The issue is that we have

 3         not discussed this substantively with you with

 4         respect to the discovery responses.

 5              We haven't done a meet-and-confer under

 6         the 3.10(g) -- 1(g).  Judge Hoffman's rules are that

 7         you have to meet and confer by phone or in person.

 8         And we haven't done that with respect to that.

 9              So exchanging letters and emails about it,

10         that's not sufficient under the rules, and that's our

11         position.

12              MR. ZERMAY:  Okay.  I understand your position.

13         You know, we're on the phone now, and I -- I don't --

14         you know, I would respectfully agree to disagree with

15         regarding the satisfaction of the -- Judge

16         Hoffman-Price's rules.

17              But I guess

18              (Overspeaking)

19              MS. LEITNER:  -- and assuming an order on that.

20         And we haven't received any authority with respect to

21         overruling our objections.  We just received a --

22         your comments with respect to what you think we may

23         have.

24              And so I think that that -- the authority and

25         the case law, statutes, case law, or anything with
```

```
 1      respect to why our objections are -- should be

 2      overruled or -- overruled, essentially, should be

 3      forthcoming by your side, and    and then we can look

 4      at that and have a productive and efficient

 5      conversation with respect to that.

 6           And we'll be happy to narrow any issues before

 7      you move to compel with respect to that.

 8           But otherwise, at this juncture, since we've --

 9      you know, we've asked for this meet-and-confer to

10      discuss these topics for quite some time now.

11           We only allotted -- and now it has taken an hour

12      to discuss this, that we made ourselves available on

13      last Saturday to discuss this at 11:30 and today at

14      4:00 on a Friday.

15           And so I think that, you know, we had the -- we

16      appreciate the courtesy of you guys having this

17      meeting to discuss this, but we would also appreciate

18      the courtesy in return, that we would provide a

19      substantive reply with respect to your October 29th,

20      2025, letters and for you to also, if you can, to

21      make it a more efficient and productive meeting with

22      respect to the objections and why they're without

23      merit, provide the authority so we can have a

24      discussion, and then table that for either the week

25      of the 3rd, when one of our team members are
```

1    available and I'm not traveling to Denver, and/or the

2    week -- or of November 11th.  Or I'm sorry.  November

3    12th.

4        So I think -- I appreciate your guys coming on

5    here.  Those are all the topics I have.  And if you

6    have nothing else, I think we can conclude this and

7    reschedule for another time.

8        MR. ZERMAY:  Yeah.  Let me just -- you know,

9    it's -- I'll do a depo move before the depo move and

10   attach the -- I'm going to email the court reporter

11   the copies of the conferral letters I transmitted to

12   your office.

13       And so we'll attach the first one as Exhibit 1,

14   and the second one as Exhibit 2, to the record here

15   just so we have it on record as to our authority that

16   we've propounded and written correspondence with your

17   office regarding why we think we are entitled to

18   better responses and discussion of Rule 34

19   obligations.  But in any event . . .

20       MS. LEITNER:  Thank you.

21       And I just want to then reiterate that we have

22   not had a substantive discussion with respect to

23   those discovery responses that we just -- that are

24   outlined in your October 29th, '25, letter because

25   Judge Hoffman's standing order is to meet and confer

```
 1        by telephone or in person, and that those letters --

 2        the October 29th, '25, letters are not sufficient

 3        with respect to meeting, conferring, and outlining

 4        with respect to those requests and responses.

 5             So again, I thank you guys so much.  I hope you

 6        have a great weekend.  Happy Halloween.  And I am

 7        sure we'll hear from you guys soon.

               (The meet-and-confer was concluded at 4:00 p.m.)
```

CERTIFICATE OF REPORTER

STATE OF FLORIDA :

COUNTY OF ORANGE :


        I, Linde Blosser, Court Reporter and Notary Public
for the State of Florida at Large, do hereby certify that
I was authorized to and did stenographically report the
foregoing remote meet-and-confer; and that the foregoing
transcript, pages 4 through 39, is a true record of my
stenographic notes.

        I further certify that I am not a relative,
employee, attorney or counsel of any of the parties, nor
am I a relative or employee of any of the parties'
attorney or counsel connected with the action, nor am I
financially interested in the action.

        Dated this 6th day of November 2025.




                                    LINDE R. BLOSSER

**1** - 12:5, 9; 18:10; 19:20

**1(g)** - 36:6

**1)(3)** - 26:1

**10** - 15:7

**10th** - 34:10

**11** - 12:9; 19:20

**11:30** - 37:13

**11th** - 34:14, 17, 20; 35:10

**12th** - 34:12, 17, 20, 23

**13,000** - 27:7

**14th** - 6:11; 9:14; 28:14; 35:2

**18** - 5:1

**18-page** - 8:7

**2023** - 14:23

**2025** - 6:19; 7:17, 25; 12:10; 18:9; 20:3; 22:17; 34:1; 37:20

**26(1)(a)(1** - 23:9

**26(a** - 23:14

**26(a)(1)** - 22:8

**26(a)(1)(3** - 25:25

**26(a)(1)(a** - 23:16

**28th** - 4:10

**29** - 7:17; 34:1

**29th** - 4:13; 6:19; 37:19

**3** - 13:6; 16:11

**3.01(g** - 35:20

**3.10(g** - 36:6

**35.01(g** - 31:15

**3D** - 17:12, 20

**3D-printible** - 17:20

**3rd** - 35:7; 37:25

**4** - 24:9; 25:15

**4:00** - 37:14

**4:48** - 33:20

**4th** - 12:9; 20:3

**5** - 24:9

**58** - 12:5

**5th** - 11:9

**7** - 7:25; 18:8

**7th** - 7:5; 9:20; 11:9; 12:11

**9** - 16:3; 17:7, 11, 16; 21:3

**ability** - 9:25

**able** - 10:2; 35:13

**accessories** - 17:13, 21

**accommodate** - 35:13, 24

**accordingly** - 32:18

**accurate** - 19:21

**accurately** - 14:7

**acknowledge** - 22:4

**acquiesced** - 7:12

**action** - 13:24

**activity** - 29:1

**actual** - 23:21

**address** - 19:6

**addresses** - 23:10

**administrative** - 17:14, 22

**administrator** - 15:24

**admission** - 10:24

**advance** - 21:9

**advanced** - 30:24

**affect** - 34:25

**agenda** - 27:4

**agree** - 4:1; 12:6; 30:17; 36:14

**agreeable** - 8:20

**agreed** - 8:3

**agreement** - 23:13; 31:14

**Alexander** - 22:24

**allegations** - 29:19

**allotted** - 37:11

**almost** - 33:20

**alterego** - 29:18

**alteregos** - 29:23

**Amaris** - 34:16

**ambush** - 32:14

**amicably** - 19:5

**amount** - 23:24

**ano** - 27:10

**answer** - 17:1, 17

**anticipate** - 28:3

**anticipating** - 27:6; 29:25; 35:18

**applications** - 8:4

**appreciate** - 6:14; 37:16

**appreciated** - 21:21

**associates** - 14:17

**assuming** - 28:13; 36:19

**assumption** - 18:2

**attach** - 4:24

**attached** - 26:17, 25

**attaching** - 11:21

**attorney** - 4:3; 11:5; 32:11, 21-22; 33:4

**attorney-client** - 32:22

**attorney-client privilege** - 4:3; 32:11, 21

**attorneys** - 11:3; 32:6

**authority** - 10:5, 14; 36:20, 24; 37:23

**available** - 9:18; 35:7; 37:12

**avoid** - 9:7, 13; 35:22

**aware** - 7:4; 12:5

**awkward** - 19:8

**baked** - 16:25; 18:3

**based** - 7:18; 28:14; 31:4

**best** - 25:12; 35:5

**better** - 7:19

**beyond** - 30:14

**big** - 6:8

**binding** - 32:1

**bit** - 12:21

**Bitcoin** - 29:2

**bleed** - 30:2

**boil** - 22:18

**bottom** - 25:15; 29:17; 30:4

**boy** - 18:19

**briefly** - 27:4

**business** - 9:21; 29:7, 20

**buster** - 18:15

**cadres** - 13:11

**calculating** - 26:10

**capacity** - 6:24; 32:1

**case** - 10:14; 13:11; 14:4; 36:25

**cases** - 11:10

**categories** - 23:11; 25:25

**categorization** - 26:5

**category** - 26:12

**certificates** - 14:3, 8

**channel** - 19:10

**chat** - 16:23; 34:6

**Chuck Flores** - 11:5

**circu** - 33:14

**circulate** - 33:14; 35:8

**Civil** - 22:8

**claim** - 13:23; 23:18; 25:3; 26:22; 27:23; 28:21; 29:13; 30:8, 10; 32:5

**claimed** - 26:12

**claiming** - 24:1

**claims** - 22:9; 25:23; 26:3; 28:16; 29:9; 31:20

**clarification** - 6:15; 18:24

**clarify** - 7:8, 21; 18:3

**clarity** - 16:2; 26:16; 27:17

**clear** - 5:4; 10:25; 12:15; 17:5; 18:23; 25:5; 28:4

**client** - 4:3; 32:11, 21-22; 35:25

**clients** - 23:2

**Cody** - 32:12

**coming** - 6:11

**comments** - 36:22

**communication** - 21:25

**community** - 29:4

**company** - 29:21

**compel** - 7:19; 37:7

**compete** - 17:2

**competition** - 22:10

**complaint** - 26:18, 25

**complete** - 16:22; 17:25; 18:1, 5; 24:8

**computation** - 23:12; 25:24; 26:10

**concern** - 20:11; 22:9

**concerning** - 15:7

**conducting** - 29:20

**confer** - 4:9, 13, 18; 5:11, 16; 6:18; 7:8; 9:25; 10:19; 11:2, 12, 19; 33:16, 22; 34:1, 4; 36:5; 37:9

**conference** - 19:7

**conferral** - 9:10; 31:14; 35:17

**confirm** - 19:22

**confused** - 31:21

**confusing** - 20:14

**consent** - 30:18

**consider** - 32:16

**considered** - 32:10

**consolidated** - 32:22

**construed** - 31:18

**control** - 6:3; 14:1

**conversation** - 9:10; 10:10; 37:5

**convert** - 27:12

**cooks** - 11:16

**cool** - 34:22

**coordinate** - 11:8

**copies** - 25:1

**copy** - 4:22; 22:15; 23:10

**copyright** - 14:3, 8-9; 22:9, 21; 23:4, 18; 24:22, 24; 27:24; 28:25

**copyrighted** - 13:21

**corporate** - 31:22

**corporation** - 5:25; 6:5; 32:1

**corporations** - 6:5; 29:22, 24

**correct** - 13:15

**correspondence** - 31:17

**counsel** - 24:19

**counter** - 13:20, 25; 14:6, 17-18; 17:18; 22:6, 23

**Counter** - 14:11

**counter-defendant** - 13:20; 14:6, 18; 17:18; 22:6

**Counter-defendant** - 14:11

**counter-defendants** - 22:23

**counter-plaintiff** - 14:17

**counter-plaintiff's** - 13:25

**counterclaim** - 25:18; 28:15, 21; 29:12; 30:8

**counterclaims** - 30:1

**couple** - 4:11; 16:24; 32:16

**courtesy** - 5:10; 6:21; 8:1; 37:16, 18

**covered** - 32:22

**covering** - 31:18

**covers** - 8:16

**created** - 15:8

**custody** - 6:3; 14:1

**damages** - 23:12, 18, 22; 24:1; 26:3, 6, 8, 12, 24

**data** - 14:14

**database** - 27:11

**date** - 11:13; 13:10; 14:19; 15:14; 19:25; 24:5; 35:14

**dates** - 6:24; 14:2, 6, 22; 34:11; 35:8

**days** - 4:11; 9:21; 32:16

**deadline** - 6:25; 9:14

**deal** - 19:8

**declaration** - 15:5, 18, 11, 18; 17:18; 22:6

**defendant** - 13:20; 14:6, 11, 18; 17:18; 22:6

**defendants** - 22:19, 23

**defense** - 13:24

**Defense Exhibit 1** - 13:8

**defenses** - 29:9

**delineated** - 6:7; 11:19; 27:22; 31:23

**demands** - 28:14, 17, 23; 30:12; 31:5; 33:16

**Denver** - 11:10

**denying** - 29:23

**depo** - 35:14

**deposit** - 25:1

**deposition** - 6:11, 23; 9:14, 23; 28:12; 29:13; 31:6, 8, 22; 35:2

**depositions** - 32:24

**despite** - 9:25

**detail** - 16:5

**devices** - 29:7

**different** - 19:17; 20:15; 32:6

**direct** - 5:25; 25:23

**direction** - 14:16

**directly** - 16:13; 19:3, 6

**disagree** - 34:6; 36:14

**disclosed** - 22:16; 23:4

**disclosing** - 26:12

**disclosure** - 24:11

**disclosures** - 22:4; 23:1, 3; 24:3, 8, 10; 26:21

**discover** - 29:14

**discoveries** - 6:25

**discovery** - 4:10; 5:12; 7:19; 8:9, 24; 9:6; 28:3, 9, 14, 17, 23; 30:12; 31:5; 33:16; 36:4

**discuss** - 4:15, 20; 5:9, 16, 21; 6:8; 7:23; 8:21, 24; 9:19; 10:18, 21; 12:3; 17:2; 21:8; 28:12; 34:7; 37:10, 12-13, 17

**discussed** - 17:13, 21; 33:15; 35:18; 36:3

**discussing** - 7:15; 8:8; 23:19; 28:19

**discussion** - 5:19; 7:12; 19:2; 20:4; 23:2; 34:2; 37:24

**discussions** - 33:4

**disgorgement** - 23:22

**dismissed** - 28:15

**disputes** - 9:6

**DMC** - 28:25
**DMCA** - 24:25
**document** - 12:19; 13:2; 20:1; 23:11; 24:12; 25:12
**documents** - 6:2, 4; 13:13, 17; 21:4; 23:17, 25; 24:19, 24; 25:9, 16; 26:14, 17, 24; 27:6-8, 15, 19-20; 28:2, 8, 25
**done** - 35:3; 36:5, 8
**down** - 22:18; 24:25; 25:19
**drafts** - 32:7
**drive** - 26:25
**due** - 22:13
**easier** - 12:21; 13:3; 21:19
**Eastern** - 34:15
**effective** - 9:5
**effectively** - 9:1
**efficiency** - 19:4
**efficient** - 16:15; 28:7; 37:4, 21
**efficiently** - 9:1
**either** - 37:24
**electing** - 23:21
**eleven** - 20:8, 19, 23
**Elik** - 15:9; 22:24
**email** - 7:8; 8:7, 11; 12:1; 21:16; 25:8; 31:17; 35:8
**emails** - 7:4; 10:1; 20:15; 36:9
**end** - 20:5
**Erika** - 18:20
**ESI** - 27:5, 12, 17, 22
**especially** - 21:20
**essentially** - 4:11; 14:22; 16:6; 24:23; 26:4; 37:2
**establish** - 10:4
**event** - 11:18
**evidence** - 29:15
**exactly** - 19:16; 23:7; 24:14
**exchange** - 25:13
**exchanging** - 36:9
**excuse** - 15:12
**exhibit** - 4:23; 11:21
**explain** - 18:3; 23:5
**extent** - 7:13; 13:21; 14:15; 15:11; 18:2; 20:16; 34:6
**F-u-d-d-b-u-s-t-e-r** - 18:17
**fact** - 8:10; 16:7
**far** - 8:24; 11:2; 15:6; 23:15
**Federal** - 3:14
**few** - 12:17
**field** - 5:18; 20:25
**file** - 7:18; 30:14; 35:16
**filed** - 14:3, 8; 15:4, 18;

28:16; 32:4
**files** - 17:13, 21; 19:25
**filing** - 32:7
**fine** - 25:5; 28:10; 31:15
**firearm** - 17:12, 20
**firm** - 8:4
**first** - 13:11, 22; 14:2, 7
**fishing** - 29:5
**five** - 9:21
**Florida** - 34:10
**follow** - 13:2
**foregoing** - 14:5; 17:18
**form** - 22:20
**format** - 22:7; 23:6, 15
**forthcoming** - 37:3
**forward** - 4:6; 8:23, 25; 9:15; 12:2, 7; 21:15
**four** - 5:20; 6:7; 9:21; 23:12
**frankly** - 29:18
**free** - 19:2, 5; 21:7
**Friday** - 9:20; 37:14
**friends** - 33:6
**front** - 22:16
**fudd** - 18:16
**FUDD** - 18:19
**Fuddbuster** - 18:12, 25; 19:14
**fuddbuster** - 18:16
**Fuddbusters** - 18:25; 19:11
**FUDDSTER** - 18:18
**general** - 26:4; 28:25
**generally** - 23:6; 28:6, 24
**generated** - 11:22
**given** - 9:14; 19:3
**go ahead** - 12:20
**great** - 8:24; 21:15
**guess** - 7:7; 9:17; 15:16, 19; 16:1; 20:16, 20, 24; 22:12; 24:4; 26:6; 29:10; 33:7; 36:17
**guys** - 4:8; 5:17; 7:6, 12, 16; 8:25; 16:20; 19:22; 21:4, 7; 22:22; 23:14; 26:9; 27:16; 28:13; 37:16
**GYEBI** - 34:17, 20
**half** - 27:12
**handle** - 22:1
**handled** - 20:21
**handles** - 18:11
**happy** - 5:18; 9:7; 17:2; 18:3; 20:25; 22:1; 35:24; 37:6
**heart** - 27:23
**helpful** - 13:5; 35:10
**helping** - 35:22
**himself** - 5:25
**histories** - 29:2
**Hoffman** - 36:16
**hold** - 20:13

**Holliday** - 22:25
**hope** - 6:9; 8:16
**hopeful** - 5:3; 35:12
**hopefully** - 6:9
**hoping** - 35:3
**Host** - 25:7
**hour** - 37:11
**hurts** - 35:25
**idea** - 27:7; 31:11
**identified** - 5:12; 6:19; 10:13; 12:11; 18:8
**identify** - 13:7; 14:19; 16:9; 17:20; 18:7
**Identify** - 17:12
**identifying** - 25:24
**implied** - 21:21
**impressions** - 32:7; 33:1
**including** - 11:16; 26:24; 28:23
**indeed** - 19:13
**indicated** - 4:14
**indicates** - 15:1
**indiscernible** - 33:25
**individual** - 6:24
**ineffective** - 5:24
**information** - 13:23, 25; 14:23; 15:11, 13, 17; 25:10; 32:9
**infringement** - 15:12
**initial** - 22:3, 5, 16, 20; 23:3; 24:2, 7, 10; 26:21
**injunction** - 15:6
**inquiry** - 29:21; 31:23
**insurance** - 23:12
**intend** - 4:23; 28:20; 30:14; 32:20
**intent** - 29:14
**intention** - 30:4, 9
**interested** - 19:4
**interrogatories** - 12:10, 15; 19:19
**interrogatory** - 10:23; 13:6, 9, 20, 24; 16:3, 11; 17:7, 11, 16; 18:10
**introduce** - 4:23
**investigators** - 29:2
**issue** - 4:8; 5:23; 9:19; 10:11, 13; 12:13; 13:11; 14:12, 21, 24; 15:8; 16:3; 21:2, 11; 22:11, 18, 22; 23:14; 24:10; 25:24; 26:20; 28:20; 29:23; 30:16; 31:20; 36:2
**issues** - 5:12; 6:18; 7:22; 8:4, 8, 21; 10:18; 11:14; 12:1, 18; 19:18; 21:16; 24:2; 33:15; 37:6
**items** - 23:16
**Ivan The Troll** - 15:10
**January** - 22:13, 17
**John** - 15:9; 22:24
**Josh** - 22:25

**Judge Hoffman's** - 36:6
**Judge Hoffman-Price's** - 36:15
**July** - 12:9; 20:3
**jumping** - 9:3, 17
**jumping-off** - 9:17
**juncture** - 27:21; 37:8
**keep** - 8:25; 17:6; 25:18
**kind** - 19:7; 26:2
**kitchen** - 11:17
**knowledge** - 14:18; 15:22; 16:7; 17:19
**lacks** - 14:18
**laid** - 4:21; 5:5
**Larosiere** - 22:24
**last** - 27:5; 28:11; 37:13
**law** - 10:14; 36:25
**law firm** - 11:5; 27:10
**lawsuit** - 22:11; 23:4; 33:5
**lawyer** - 32:25
**lays** - 23:7
**least** - 5:21; 22:19; 30:4, 23
**leave** - 33:24
**legal** - 32:8
**LEITNER** - 12:24
**lest** - 35:25
**letter** - 4:13, 22; 5:18, 22; 6:19; 7:5, 17; 8:7; 11:19, 21, 25; 12:11; 18:9; 20:10, 18; 34:1
**letters** - 5:5; 9:9; 10:1; 11:20; 35:17; 36:9; 37:20
**Lettman** - 22:25
**light** - 26:3; 35:14
**likeness** - 22:10
**limited** - 31:19
**limiting** - 28:19; 30:15
**linguistically** - 19:8
**listed** - 25:2; 26:15
**literally** - 26:11; 33:19
**litigation** - 14:10
**location** - 23:11
**look** - 34:9, 11; 37:3
**looked** - 19:16; 24:21
**looking** - 19:24; 24:7, 9, 14, 16; 25:10; 31:16
**looks** - 25:18; 35:13
**loop** - 24:8
**madam** - 16:22
**Madam Leitner** - 12:22
**main** - 21:5; 24:1
**maintain** - 17:14
**maintaining** - 16:21
**maintains** - 17:22
**mandatory** - 25:1
**massively** - 21:21
**material** - 9:23
**Matt** - 22:25

**Matthew** - 22:24
**mean** - 4:25; 5:15; 6:7; 14:21; 16:1; 17:4; 19:15; 21:1; 23:22; 25:22; 26:2, 4, 11; 27:23; 28:17; 33:18; 35:9
**media** - 29:4
**meet** - 4:9, 13, 18; 5:11, 16; 6:18; 10:19; 11:19; 33:16; 34:1, 4; 36:5; 37:9
**meet and confer** - 7:16, 21; 8:15, 18; 9:5; 11:13; 30:22; 36:7
**meet-and-confer** - 4:9, 13, 18; 5:11, 16; 6:18; 10:19; 11:19; 33:16; 34:1, 4; 36:5; 37:9
**meeting** - 8:18; 34:24; 37:17, 21
**members** - 37:25
**mental** - 32:7; 33:1
**mentioned** - 8:3; 10:3; 31:18
**merit** - 10:7; 37:23
**Microsoft** - 8:5
**might** - 20:25; 28:1; 35:15
**million** - 27:8, 19
**millions** - 28:2
**mirrored** - 14:15
**misapprehensions** - 16:24
**missing** - 8:13; 15:3; 21:17; 23:16, 21; 24:2
**moment** - 20:7
**monitoring** - 29:5
**month** - 27:12
**most** - 28:6
**motion** - 9:7; 15:6; 30:19; 32:17; 33:9; 35:22
**motion for protective order** - 30:15; 34:8
**motion to compel** - 7:18; 9:13; 34:5; 35:16
**move** - 12:7; 37:7
**moving** - 4:6; 8:23, 25; 9:15; 12:2; 17:6
**Mr. Larosiere** - 12:22, 25; 15:18, 23; 16:12, 22; 18:1; 19:1, 13, 23; 20:7, 10, 13, 24; 21:14, 24; 25:11, 14; 26:16; 33:6
**Mr. Reynal** - 33:4
**Mr. Wilson** - 29:19
**Mr. Wilson's** - 6:23; 9:23; 29:7; 30:5; 31:19
**Mr. Zermay** - 4:1, 20; 5:15; 6:14; 7:7; 9:2, 11:15; 16:16; 19:3; 20:14, 21, 23; 22:15; 24:7; 25:6, 15; 26:7, 20; 27:2, 21; 29:14; 30:20; 31:16; 32:19; 33:11, 21; 35:1, 12; 36:12
**Mrs. Leitner** - 13:5

**MS. LEITNER** - 4:5; 5:7; 6:13; 7:20; 10:3; 11:23; 13:4; 16:18; 17:4; 18:6, 16, 19, 23; 19:12, 15; 20:2, 9, 12; 21:1, 23; 22:2; 23:5; 24:13; 25:8, 17, 21; 26:9, 19, 23; 27:3; 28:4; 30:7, 23; 32:2; 33:7, 13; 34:9, 19, 22; 35:4; 36:1, 19
**multiple** - 20:15
**mutually** - 8:20
**name** - 22:10; 23:8
**namely** - 10:12
**narrative** - 33:5
**narrow** - 10:18; 27:14; 37:6
**nature** - 29:19
**necessary** - 13:23; 27:18
**need** - 7:18; 10:14; 11:7; 16:18; 26:2, 13; 27:22; 31:2; 33:23
**never** - 32:23
**news** - 31:4
**next** - 9:19; 22:3; 30:25; 35:3
**NF3** - 15:7
**nine** - 5:2; 12:12
**nonissue** - 12:6
**normally** - 24:23
**note** - 31:13; 32:18
**nothing** - 33:20
**notice** - 30:24
**notices** - 24:25
**November** - 9:14; 11:11; 28:14
**numbers** - 12:5, 9; 19:20
**objec** - 10:5
**objecting** - 31:9
**Objection** - 17:17
**objection** - 6:1
**objections** - 10:6; 14:6; 17:18; 36:21; 37:1, 22
**objects** - 13:20
**obligation** - 34:5
**obtain** - 24:19
**obviously** - 20:5; 23:13; 24:18; 26:14
**occurred** - 14:23
**October** - 4:10; 6:19; 7:5, 17, 25; 12:11; 18:8; 34:1; 37:19
**office** - 11:9; 14:9
**one** - 5:1; 6:5, 8; 10:12; 11:4; 12:12; 17:8; 18:6, 12, 14; 20:7, 18, 23; 21:5; 25:11; 27:4, 22; 31:24; 34:14, 24; 37:25
**ones** - 20:10; 24:20; 25:9
**online** - 19:17
**opinion** - 30:13
**opportunity** - 10:18
**opposed** - 32:17; 33:9

**order** - 35:16; 36:19
**orders** - 26:11
**otherwise** - 37:8
**ourselves** - 37:12
**outlined** - 7:3; 28:23
**outlining** - 8:8
**outstanding** - 5:12
**overbroad** - 30:14
**overruled** - 37:2
**overruling** - 36:21
**overspeaking** - 36:18
**page** - 4:7; 13:1; 17:10; 24:9; 25:15
**pages** - 5:1; 27:19
**paragraph** - 15:7
**part** - 25:3; 30:8
**parties** - 28:7
**party** - 26:13
**pencil** - 33:21; 34:2
**people** - 23:23
**perfect** - 22:2
**perfectly** - 31:3
**periods** - 29:3
**permission** - 19:3
**permitted** - 30:5
**person** - 36:7
**personal** - 29:6; 31:25
**personally** - 14:12
**pertain** - 25:22
**phone** - 36:7, 13
**phonetic** - 13:11
**phrase** - 11:16
**plaintiff** - 6:23; 14:17; 15:1, 4; 18:12
**plaintiff's** - 13:25; 22:3; 26:22
**plan** - 27:18; 28:18
**plans** - 22:21
**pleadings** - 28:19; 30:16
**plural** - 19:11; 22:24
**point** - 6:4; 8:2; 9:3, 17; 19:16; 24:4
**portion** - 26:23
**position** - 4:2, 21; 5:4, 6, 8; 6:17; 7:11, 14; 9:4, 8; 10:9; 11:18; 17:5; 30:13; 31:2, 13; 33:8; 34:4; 36:11
**possession** - 4:23; 6:2; 14:1, 13
**possible** - 31:7
**practice** - 9:7
**predicate** - 29:8
**preliminary** - 15:5
**prepare** - 5:13; 7:24
**present** - 14:24
**presented** - 6:21
**presumes** - 13:21
**pretty** - 17:4
**previously** - 14:8
**Price's** - 36:16

**primarily** - 26:17
**printable** - 17:12
**printible** - 17:20
**privileged** - 32:10
**privileges** - 17:14, 22
**problem** - 21:5
**Procedure** - 22:8
**proceed** - 7:2
**proceeding** - 28:13
**process** - 27:9, 11
**produce** - 6:4, 6
**product** - 32:23
**production** - 12:5, 9; 19:20
**productive** - 28:9; 31:6; 37:4, 21
**profits** - 23:22
**proper** - 6:1
**proportionality** - 29:9
**protective order** - 30:21; 33:22; 34:3
**protocol** - 27:5, 17, 22; 28:6
**prove** - 23:17
**provide** - 37:18, 23
**provided** - 6:24; 7:25; 10:8
**providing** - 27:6
**provision** - 31:14
**pseudonym** - 15:9
**pseudonymously** - 15:9
**publication** - 14:2, 7, 14, 19, 22
**publish** - 14:12
**published** - 13:12, 22; 15:2, 9, 14-15, 25; 16:8
**pull** - 13:7
**purpose** - 19:2
**purposes** - 19:7
**pushback** - 7:10
**put** - 29:22; 32:12
**questions** - 5:17; 12:17; 15:16; 18:23; 19:6; 20:24; 28:20; 29:6, 12; 30:1; 32:20; 33:3
**quick** - 21:10
**quite** - 8:22; 37:10
**raised** - 7:17
**reach** - 35:6
**read** - 12:16
**real estate** - 28:24
**realized** - 8:12
**really** - 5:21; 18:7; 19:18; 21:10, 15; 35:4
**reasonable** - 31:3
**receipt** - 22:5
**receive** - 6:20; 7:9; 8:7; 21:2; 22:4, 14
**received** - 4:13; 8:6; 13:14, 17; 22:6; 30:11;

36:20
**record** - 5:8; 7:2, 20; 10:4; 11:1, 22; 15:19
**refer** - 26:25
**referenced** - 28:1
**referred** - 20:18
**referring** - 12:20; 28:22; 29:1
**reflected** - 14:7
**refusing** - 7:16, 21
**regarding** - 5:4, 21; 9:6; 22:22; 23:3; 29:21; 30:1, 20; 32:21; 33:3, 5, 25; 34:2, 5; 35:18; 36:15
**regards** - 29:18
**registration** - 14:3, 8, 23; 24:25
**related** - 26:21
**relates** - 22:20; 23:4; 24:11
**relationship** - 29:8
**relevant** - 13:23
**rely** - 5:13
**relying** - 13:17; 14:21; 16:6, 20; 23:17, 25; 25:4; 26:14
**replied** - 11:25
**reply** - 4:15; 37:19
**REPORTER** - 18:14, 18, 22
**reporter** - 12:16
**represent** - 18:4; 33:2
**representative** - 31:22
**reputation** - 29:4
**request** - 8:14; 10:22; 12:5, 8; 19:19; 31:9
**requesting** - 10:5; 27:16
**requests** - 10:11, 13; 13:9; 17:9; 20:8, 18, 22; 30:18
**requirement** - 10:21
**requirements** - 9:11; 35:20
**reschedule** - 8:17, 19
**resolve** - 31:11
**resolving** - 19:5
**respect** - 4:9, 14, 18; 5:11; 6:18; 7:3, 22; 8:2, 14, 23; 10:10, 15; 11:13; 12:7; 13:19; 14:20; 15:5, 12, 17, 21-22; 16:5; 17:24; 18:10; 21:3, 5, 8; 22:5; 23:15, 17; 24:2; 26:6; 27:15; 28:5, 7; 30:15, 24; 32:8; 33:8, 17; 36:4, 8, 20, 22; 37:1, 5, 7, 19, 22
**respectfully** - 36:14
**respond** - 6:25; 7:24; 16:13; 17:23
**responded** - 11:24
**response** - 7:24; 11:24; 12:1; 13:13, 19; 14:20; 15:20; 16:20, 22; 17:1, 15,

25; 18:4; 21:7
**responses** - 4:10; 5:22; 6:22; 7:19; 8:9; 10:6, 15, 24; 13:15; 17:8; 21:2; 33:15; 36:4
**responsive** - 27:15
**return** - 37:18
**review** - 9:22; 22:20
**reviewing** - 28:8; 31:5
**RICO** - 28:16, 21; 29:12; 30:8, 10; 32:4; 33:5
**rog** - 16:11
**roll** - 25:16
**roughly** - 5:1
**Rule** - 23:7; 25:25; 35:20
**rule** - 26:11
**Rules** - 22:7
**rules** - 30:6; 36:6, 10, 16
**running** - 29:20
**Sam** - 18:20
**satisfaction** - 36:15
**satisfied** - 9:11; 34:4; 35:21
**Saturday** - 37:13
**scan** - 6:4
**schedule** - 35:13
**schedules** - 11:8
**scheduling** - 5:11
**scope** - 30:14
**screen** - 12:21; 24:14
**scrolling** - 35:20
**search** - 27:14
**secondly** - 10:9
**see** - 24:23; 25:2, 4, 6, 17, 22; 26:5; 30:17; 34:12; 35:6
**seeking** - 30:19
**seeks** - 13:24
**send** - 20:15; 21:4, 24; 24:13; 33:13
**sent** - 4:9; 7:8; 11:25; 30:23; 35:17
**sentence** - 31:19
**separately** - 28:16; 32:4
**sequence** - 8:14
**served** - 4:10; 6:22; 12:9; 13:18; 19:20; 20:3, 5-6, 22; 22:17; 28:15, 18
**set** - 35:2
**several** - 7:4
**share** - 12:20; 24:13; 25:6
**shared** - 17:13, 21
**shed** - 26:3
**short** - 17:1
**shortly** - 28:17
**shoulders** - 19:9
**side** - 6:22; 11:3, 12; 35:6; 37:3
**simple** - 29:10
**simplify** - 29:11
**singularly** - 19:13
**situation** - 35:24

**sometime** - 9:19; 35:3
**sometimes** - 23:23
**sorry** - 16:12; 17:8; 19:23
**sort** - 31:21
**soul** - 27:23
**sounds** - 17:4; 22:2; 30:9; 34:9
**specific** - 10:11, 22-23; 14:13; 23:24; 33:3
**specifically** - 12:3; 13:9; 14:1; 29:25; 30:21; 31:23
**Specify** - 13:10
**spending** - 27:11
**staff** - 29:2
**standard** - 5:16
**start** - 12:14
**state** - 5:8
**states** - 14:6, 11; 15:24; 17:11, 19
**stating** - 15:6
**statutes** - 10:14; 36:5
**stay** - 32:11
**strategy** - 32:8
**streamlined** - 31:10
**Stroke** - 22:25
**stuff** - 25:18
**subbed** - 13:16; 24:18
**subject** - 15:13, 25; 16:8; 29:1, 3
**Subject** - 14:5; 17:17
**submit** - 5:13
**submitted** - 9:9; 14:9
**substantial** - 10:1
**substantially** - 7:15
**substantive** - 4:15; 5:13; 6:17; 10:10; 11:25; 12:1; 21:7; 25:12; 37:19
**substantively** - 36:3
**sufficient** - 10:16; 14:18; 17:19; 36:10
**suggested** - 27:14
**supplement** - 15:17; 16:10; 22:13; 24:6
**supplementation** - 26:7
**supplementing** - 16:19; 17:25; 21:12; 24:5
**support** - 25:3
**suppose** - 5:25
**surprising** - 32:20
**sworn** - 15:23
**table** - 5:9; 7:23; 37:24
**tabled** - 4:18
**take-down** - 24:25
**targeting** - 30:1
**tasked** - 33:5
**team** - 33:14; 35:6; 37:25
**telephone number** - 23:10
**term** - 11:16
**termination** - 29:3
**terms** - 27:14

**testimony** - 15:23; 30:5
**the court** - 12:16; 18:14, 18, 22
**themselves** - 11:20
**thoroughly** - 4:22
**three** - 11:3; 12:12; 23:11, 16, 18; 34:15
**tight** - 35:4, 15
**timing** - 11:2; 35:23
**title** - 22:23
**today** - 5:19; 6:9; 7:12, 14-15; 8:18; 9:10; 10:20; 11:22; 28:12; 33:19; 35:19; 37:13
**Tom** - 18:20
**tools** - 25:7
**topic** - 7:15; 20:4; 22:3; 30:24
**topics** - 4:19; 6:7; 7:3, 9, 16; 12:2; 28:19, 22; 29:21; 30:2, 16; 31:19, 23; 37:10
**totally** - 28:10
**transactions** - 28:24
**transcript** - 4:24
**transfer** - 24:17
**translate** - 27:8
**traveling** - 35:5
**trial** - 11:11; 29:15
**try** - 27:12
**trying** - 22:18; 24:18; 29:16; 31:11
**Tuesday** - 4:12
**twelve** - 34:24
**two** - 6:6; 20:8; 23:10, 16; 24:1; 27:3; 35:17
**tying** - 29:4
**umbrella** - 18:20
**unable** - 17:23
**under** - 23:6; 31:14; 36:5, 10
**understood** - 11:23; 20:12; 36:1
**unfair** - 22:10
**unfounded** - 10:7
**unnecessary** - 28:10
**unopposed** - 32:17; 33:9
**unpack** - 16:17
**unrelated** - 29:3
**upcoming** - 28:12
**uploaded** - 14:16
**USB** - 26:24
**uses** - 18:12
**vendor** - 27:13
**Veterans's** - 34:14
**via** - 8:11; 13:22
**viewed** - 19:17
**waived** - 4:4
**waiving** - 14:5; 17:18
**website** - 13:10, 22; 14:13, 19; 15:2, 15, 22, 24; 16:9; 17:12, 20

**Wednesday** - 31:1; 33:10
**week** - 4:12; 9:19; 30:25; 34:10; 35:3, 5, 7; 37:24
**willing** - 9:12; 16:23
**Wilson** - 5:23; 32:12
**Wilson Elser** - 11:3
**Wilsons** - 28:25
**withdrawn** - 12:6; 20:11, 18
**witnesses** - 23:8
**work-product privilege** - 32:23
**works** - 14:12, 15, 24; 15:7, 13, 25; 16:8; 29:3; 35:10
**write** - 4:15; 21:7
**written** - 7:24; 8:11
**YouTube** - 19:10
**Zach** - 16:14



# ZERMAY LAW, P.A.

3000 Coral Way, Suite 1115
Coral Gables, Florida 33145
Telephone: (305) 767-3529
Facsimile: (844) 894-6204
e-Mail: zach@zermaylaw.com

Zachary Z. Zermay, Esq.
e-Mail: zach@zermaylaw.com

October 29, 2025

**VIA EMAIL ONLY**

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
Leia V. Leitner, Esq.
*Leia.Leitner@wilsonelser.com*
Amaris Gyebi, Esq.
*Amaris.Gyebi@wilsonelser.com*
Jura C Zibas, Esq.
*Jura.Zibas@wilsonelser.com*

**FLORES LAW PLLC**
Chad Flores, Esq.
*cf@chadflores.law*

    Re: *Larosiere v. Wilson, et al.*: Case No.: 6:24-cv-01629-WWB-LHP:
       Discovery Dispute

Dear Counsel:

  Below are the specific deficiencies that we have identified in Defendants Defcad, Inc.'s and Cody Rutlidge Wilson's discovery responses.

### <u>DISCOVERY RESPONSE DEFICIENCIES – DEFCAD</u>
October 28, 2025
<u>Defcad's Responses to Interrogatories</u>
1. Please provide a complete response. "Control" is not ill-defined.

4. You clearly stated that Defcad shared profits with Defense Distributed and DD Foundation LLC. No legal conclusion is sought, you made the statement, and we simply ask now for an explanation. We asked for "all businesses, individuals, and entities" that engage in the "sharing" you claimed to exist. Your answer only indicates that, in contradiction to your claims in the DD v Elik case, the business entities here do not share profits.

5. Is this your complete response? We asked for anyone who uploaded *or* published. We are not using "published" as a copyright term of art, but instead meaning it in the common sense -

1

making available through your site, as you frequently advertised on your blog. Please confirm if this response is complete, or if you ignored the term "uploaded."

### Defcad's Responses to RFPs

1. we suspect that Defendant may have hidden assets gained by their copyright infringement. hiding assets is pled in the complaint. This sort of behavior can be established from the period preceding this lawsuit, as this shows how long this behavior has existed. We believe this real estate is a part of the asset hiding exercise. We are not interested in a narrower request; we need a response to the request that was served upon you.

2. The question is simple and clear. We suspect that Defendant may have hidden assets gained by their copyright infringement or commingled assets with Wilson to conceal them. Hiding and commingling assets is pled in the complaint. This sort of behavior can be established from the period preceding this lawsuit, as this shows how long this behavior has existed. We believe that cryptocurrency has been used to hide assets. How is it possible there is something to confer about this, when your answers to ROGs stated you don't have or control any such thing?

3. The question is simple and clear. We suspect that Defendant may have hidden assets gained by their copyright infringement or commingled assets with Wilson to conceal them. Hiding and commingling assets is pled in the complaint. This sort of behavior can be established from the period preceding this lawsuit, as this shows how long this behavior has existed. We are not interested in a narrower request; we need a response to the request that was served upon you.

4. This request is made in pursuit of information concerning the assets Defendants has paid for or gained in connection with their copyright infringement and other pled activities. This is obviously related to the claims at issue. We are not interested in a narrower request; we need a response to the request that was served upon you.

5. This request is made in pursuit of information concerning the assets Defendants has paid for or gained in connection with their copyright infringement and other pled activities. This is obviously related to the claims at issue. We are not interested in a narrower request; we need a response to the request that was served upon you.

7. This request is made in pursuit of information concerning the assets Defendants has paid for or gained in connection with their copyright infringement and other pled activities. This is obviously related to the claims at issue. We are not interested in a narrower request; we need a response to the request that was served upon you.

8. This request is made in pursuit of information concerning the assets Defendants has paid for or gained in connection with their copyright infringement and other pled activities. This is obviously related to the claims at issue. We are not interested in a narrower request; we need a response to the request that was served upon you.

9. This request is made in pursuit of information concerning the assets Defendants has paid for or gained in connection with their copyright infringement and other pled activities. This is obviously related to the claims at issue. We are not interested in a narrower request; we need a

2

response to the request that was served upon you.

10. This request is made in pursuit of information concerning the assets Defendants has paid for or gained in connection with their copyright infringement and other pled activities. This is obviously related to the claims at issue. We are not interested in a narrower request; we need a response to the request that was served upon you.

11. This request is made in pursuit of information concerning the assets Defendants has paid for or gained in connection with their copyright infringement and other pled activities. This is obviously related to the claims at issue. We are not interested in a narrower request; we need a response to the request that was served upon you.

12. This request is made in pursuit of information concerning the assets Defendants has paid for or gained in connection with their copyright infringement and other pled activities. This is obviously related to the claims at issue. We are not interested in a narrower request; we need a response to the request that was served upon you.

13. This request is made in pursuit of information concerning the assets Defendants has paid for or gained in connection with their copyright infringement and other pled activities. This is obviously related to the claims at issue. We are not interested in a narrower request; we need a response to the request that was served upon you.

14. This request is made in pursuit of information concerning the assets Defendants has paid for or gained in connection with their copyright infringement and other pled activities. This is obviously related to the claims at issue. We are not interested in a narrower request; we need a response to the request that was served upon you.

15. This request is made in pursuit of information concerning the assets Defendants has paid for or gained in connection with their copyright infringement and other pled activities. This is obviously related to the claims at issue. We are not interested in a narrower request; we need a response to the request that was served upon you.

16. This request is made in pursuit of information concerning the assets Defendants has paid for or gained in connection with their copyright infringement and other pled activities. This is obviously related to the claims at issue. We are not interested in a narrower request; we need a response to the request that was served upon you.

17. This request is made in pursuit of information concerning the assets Defendants has paid for or gained in connection with their copyright infringement and other pled activities. The arbitrary timeframe stipulated by Defendants is unacceptable, as conduct is complained of which took place before then.

18. This request is made in pursuit of information concerning the assets Defendants has paid for or gained in connection with their copyright infringement and other pled activities. The arbitrary timeframe stipulated by Defendants is unacceptable, as conduct is complained of which took place before then.

3

19. This request is made in pursuit of information concerning the assets Defendants has paid for or gained in connection with their copyright infringement and other pled activities. The arbitrary timeframe stipulated by Defendants is unacceptable, as conduct is complained of which took place before then.

20. This request is made in pursuit of information concerning the assets Defendants has paid for or gained in connection with their copyright infringement and other pled activities. The arbitrary timeframe stipulated by Defendants is unacceptable, as conduct is complained of which took place before then.

## DISCOVERY RESPONSE DEFICIENCIES – CODY WILSON
### October 28, 2025

### Wilson's Responses to Interrogatories

1: these accounts are relevant to our alter-ego allegations. These accounts evince co-mingling that may have occurred (which is part of a claim) as well as any/all profits made as a result of the complained-of conduct. Defendants asked this same question of the ex-counterdefendants and the Plaintiff, and all answered.

2: Real estate records are relevant to disputed alter-ego and commingling allegations. Discovery responses thus far have indicated that Wilson may have been hiding assets that were diverted from his companies in real estate.

3: Mr. Wilson either knows these things, or he doesn't. He may not object and say that his companies might know better.

4: You are required to undertake a diligent search. Absent any explanation besides that offered, there is no indication that a diligent search was undertaken.

5: DD Foundation is believed to be a haven for asset diversion and warehousing. Refusing to answer this makes it seem as though an alter-ego shell game is going on, as claimed in the complaint. He lists this as a company he owns. In a separate lawsuit, this company has sworn that it shares profits with Defcad and Defense Distributed.

6: Real estate records are relevant to our alter-ego allegations. discovery responses thus far have indicated that Wilson may have been hiding assets that were diverted from his companies in real estate. We have reason to believe this real estate is involved in this. Meeting about a "narrow request" is not valid. A complete response is necessary.

7: DD Foundation is believed to be a haven for asset diversion. Refusing to answer this makes it seem as though an alter-ego shell game is going on, as claimed in the complaint. The timing of these events in light of the filing of this lawsuit make it clear these requests are calculated to

4

A - TRANSCRIPT OF OCTOBER 31 CONFERENCE

lead to the discovery of admissible evidence. Meeting about a "narrow request" is not valid. A complete response is necessary.

**Wilson's Responses to RFPs**

Across the board: lots of boilerplate objections that don't apply. Confusion about what is meant by "copyright" seems disingenuous. Rule 34(a)(1) clearly states that the duty to produce is possession, custody "OR" control, not possession, custody, "AND" control as mixed up nine separate times, only when most helpful to your refusal to produce. You also sometimes suggest that the duty to produce is tied to what Defendant Wilson "has". You also consistently suggest that the duty to produce is tied only to what Defendant Wilson has in his person capacity, which is plainly not what the Rules state. As an officer and owner of businesses, their records are in his custody and control.

1. We suspect that Wilson may have used his sister to hide assets gained by his copyright infringement. Hiding his assets is pled and contested. This behavior can be established from the period preceding this lawsuit, as this shows how long this behavior has existed. A complete response is required.

2. We suspect that Wilson may have used his father to hide assets gained by his copyright infringement. Hiding his assets is pled and contested. This behavior can be established from the period preceding this lawsuit, as this shows how long this behavior has existed.

3. We suspect that Wilson may have hidden assets gained by his copyright infringement generally. Hiding his assets is pled and contested. This behavior can be established from the period preceding this lawsuit, as this shows how long this behavior has existed. Any requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of and thus are in Wilson's custody and control, and must be produced. No call for a legal conclusion can reasonably be said to exist.

4. The misapprehension about what "copyright" is, we fear smacks of bad faith. Your re-definition to "the subject Works" is not what was asked. This request is extremely clear, copyright is the nature of this case, and the requested information concerning copyright speaks not only to the defendants' conduct concerning copyright generally, but is fundamental to showing each of the defendants' levels of awareness, willfulness, cognizance, and understanding of copyright infringement. The time frame is entirely reasonable, as your client began copying the works well before the 2023 window you divined.

5. Produce a privilege log. This request isn't unduly burdensome in any understanding of that term. Discussion of the things you are alleged to have stolen are all entirely relevant to this case. A complete response is required.

6. This blog post was intended to harass Plaintiff, his friends, and his employees. this conduct is a serious indication of willfulness. Unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of defendants in harassing Plaintiff,

5

Plaintiff's friends, and Plaintiff's employees remains related to an essential and contested question of material fact. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

7. Defendant previously produced the drafts and working copies of other blog posts he authored. He is the author of the post asked about here. If Defendant does not have the requested materials, a definite statement regarding what happened to them, where they are, or why he lacks them is required.

8. The misapprehension about what "copyright" is, we fear smacks of bad faith. Your re-definition to "the subject Works" is not what was asked. This request is extremely clear, copyright is the nature of this case, and the requested information concerning copyright speaks not only to the defendants' conduct concerning copyright generally, but is fundamental to showing each of the defendants' levels of awareness, willfulness, cognizance, and understanding of copyright infringement. Defendant has already admitted to having a role in the conduct this request asks about. Bad faith is manifest in asserting that asking about your client's removal of copyright notices is somehow not relevant to this case - which is a copyright action, where this sort of behavior is complained of with detail. The arbitrary timeframe is inexplicable - the pattern of behavior involved with the removal of copyright notices is immensely relevant to the question of willfulness. The only appropriate timeframe for the intentional removal of copyright notices is "ever", given the state of mind that such an action speaks to.

9. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated. Wilson has previously produced materials concerning the "Amigo Verde", which we fear smacks of bad faith.

10. Defendant's use of private investigators was intended to harass Plaintiff, his friends, and his employees. This conduct is a serious indication of willfulness. Unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, then the conduct of defendants in harassing Plaintiff, Plaintiff's friends, and Plaintiff's employees remains related to an essential and contested question of material fact.

11. Defendant's interactions with Jim Blackburn were intended to harass Plaintiff, his friends, and his employees. This conduct is a serious indication of willfulness. unless Defendants are willing to cede the issue of willfulness for all the work, and for all defendants, the conduct of defendants in harassing Plaintiff, Plaintiff's friends, and Plaintiff's employees remains related to an essential and contested question of material fact.

 12. Defendant's interactions with Destin Investigations were intended to harass Plaintiff, his friends, and his employees. This conduct is a serious indication of willfulness. unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of

6

defendants in harassing Plaintiff, Plaintiff's friends, and Plaintiff's employees remains related to an essential and contested question of material fact.

13. Defendant's interactions with Eric Nathan were intended to harass Plaintiff, his friends, and his employees. This conduct is a serious indication of willfulness. unless Defendants are willing to cede the issue of willfulness for all the works and for all defendants, the conduct of defendants in harassing Plaintiff, Plaintiff's friends, and Plaintiff's employees remains related to an essential and contested question of material fact.

14. Defendant's interactions with Nathan Mayer were intended to harass Plaintiff, his friends, and his employees. This conduct is a serious indication of willfulness. unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of defendants in harassing Plaintiff, Plaintiff's friends, and Plaintiff's employees remains related to an essential and contested question of material fact.

15. Defendant's interactions with Thomas Gibbons-Neff were intended to harass Plaintiff, his friends, and his employees. This conduct is a serious indication of willfulness. unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of defendants in harassing Plaintiff, Plaintiff's friends, and Plaintiff's employees remains related to an essential and contested question of material fact.

16. Defendant's interactions with Lizzie Dearden were intended to harass Plaintiff, his friends, and his employees. This conduct is a serious indication of willfulness. unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of defendants in harassing Plaintiff, Plaintiff's friends, and Plaintiff's employees remains related to an essential and contested question of material fact.

17. Defendant's interactions with Rajan Basra were intended to harass Plaintiff, his friends, and his employees. This conduct is a serious indication of willfulness. unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of defendants in harassing Plaintiff, Plaintiff's friends, and Plaintiff's employees remains related to an essential and contested question of material fact.

18. We have evidence of Defendant reaching out to multiple journalists, and he has already admitted to such in earlier discovery. Defendant's interactions with these journalists were intended to harass Plaintiff, his friends, and his employees. This conduct is a serious indication of willfulness. Unless defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of defendants in harassing Plaintiff, Plaintiff's friends, and Plaintiff's employees remains related to an essential and contested question of material fact.

19. Defendant's invocations of Plaintiff were intended to harass Plaintiff, his friends, and his employees. This conduct is a serious indication of willfulness. Unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of defendants in harassing Plaintiff, Plaintiff's friends, and Plaintiff's employees remains related to an essential

7

and contested question of material fact. Additionally, defendant has both attributed his copyright theft to having been endorsed by Plaintiff (false designation), and has repeatedly mentioned Plaintiff in the context of his copyright infringement. It's beyond bad faith to suggest that defendant's records concerning Plaintiff aren't relevant. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

20. Defendant's invocations of Plaintiff were intended to harass Plaintiff, his friends, and his employees. This conduct is a serious indication of willfulness. unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of defendants in harassing Plaintiff, Plaintiff's friends, and Plaintiff's employees remains related to an essential and contested question of material fact. Additionally, defendant has both attributed his copyright theft to having been endorsed by Plaintiff (false designation), and has repeatedly mentioned Plaintiff in the context of his copyright infringement. It's beyond bad faith to suggest that defendant's records concerning Plaintiff aren't relevant.

21. Defendant's invocations of Plaintiff's employee were intended to harass Plaintiff, his friends, and his employees. This conduct is a serious indication of willfulness. unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of defendants in harassing Plaintiff, Plaintiff's friends, and Plaintiff's employees remains related to an essential and contested question of material fact. The harassment of Plaintiff's employee are already partially in the record. Defendant engaged in a campaign to intimidate and harass Plaintiff's employee, including by sending him death threats, in a failed bid to frighten Plaintiff's employee. Documents concerning this is quite relevant to the issue of willfulness.

22. We suspect that Wilson may have hidden assets gained by his copyright infringement and otherwise obfuscated and commingled assets of his entities. Hiding his assets is pled. We believe this property is involved in this asset hiding.

23. We suspect that Wilson may have hidden assets gained by his copyright infringement and otherwise obfuscated and commingled assets of his entities. Hiding his assets is pled. We believe this property is involved in this asset hiding.

24. We suspect that Wilson may have hidden assets gained by his copyright infringement and otherwise obfuscated and commingled assets of his entities. Hiding his assets is pled. We believe this property is involved in this asset hiding.

25. We suspect that Wilson may have hidden assets gained by his copyright infringement and otherwise obfuscated and commingled assets of his entities. Hiding his assets is pled. We believe that individuals are involved in aiding him in this quest to hide assets. We believe the two individuals listed are involved in this due to their names showing up in corporate records for defendant's companies, including companies that have sworn to share assets with defendants here.

8

26. We suspect that Wilson may have hidden assets gained by his copyright infringement and otherwise obfuscated and commingled assets of his entities. Hiding his assets is pled. Hiding assets using cryptocurrency is pled. This behavior can be established from the period preceding this lawsuit, as this shows how long this behavior has existed.

27. We suspect that Wilson may have hidden assets gained by his copyright infringement and otherwise obfuscated and commingled assets of his entities. Hiding his assets is pled. Defendant has produced no documents responsive to this request. Due to the nature of defendant's obfuscation of assets, we need a complete response to the request as asked.

28. It is shocking to suggest that defendant has no record whatsoever of what his companies have paid him. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

29. It is shocking to suggest that defendant has no record whatsoever of what his companies have paid him. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

30. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

31. It is shocking to suggest this. He's an owner of officer of each of these entities. He has custody and control of these records, if not physical possession as well.

32. The misapprehension about what "copyright" is, we fear smacks of bad faith. Your re-definition to "the subject Works" is not what was asked. This request is extremely clear, copyright is the nature of this case, and the requested information concerning copyright speaks not only to the defendants' conduct concerning copyright generally, but is fundamental to showing each of the defendants' levels of awareness, willfulness, cognizance, and understanding of copyright infringement. The arbitrary 2023 timeframe is not acceptable. Some of the complained-of infringement dates before 2023.

33. Defendant's invocations of Plaintiff in a negative light were intended to harass Plaintiff. This conduct is a serious indication of willfulness. Unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of defendants in harassing Plaintiff is very relevant. We need a complete response, not a future discussion of what you would have rather we asked for.

34. Are you sure? We gently remind you that payment of our fees for proving this wrong are mandatory in this district. It seems odd you can be sure about this, yet require a rolling production for other, less complicated requests.

9

35. Respectfully, you admitted to this. It is not proper to now throw up your hands and pretend that you don't know what it means. The blacklist in question is explicitly included in the claims, is a smoking gun of willfulness, and it's shocking to suggest it isn't relevant. Unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of defendants in trying to frustrate a lawsuit against their copyright infringement remains important information relevant to a contested issue of material fact.

36. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

37. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

38. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

39. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated. We suspect Wilson may have hidden assets gained by his copyright infringement. Hiding his assets is pled. Hiding assets using cryptocurrency is pled. This behavior can be established from the period preceding this lawsuit, as this shows how long this behavior has existed.

40. We suspect Wilson may have hidden assets gained by his copyright infringement. Hiding his assets is pled. Hiding assets using cryptocurrency is pled. This behavior can be established from the period preceding this lawsuit, as this shows how long this behavior has existed.

41. We suspect Wilson may have hidden assets gained by his copyright infringement. Hiding his assets is pled. Hiding assets using cryptocurrency is pled. This behavior can be established from the period preceding this lawsuit, as this shows how long this behavior has existed.

42. We suspect that Wilson may have paid JG with proceeds from his copyright infringement. We believe that Wilson may have discussed copyright and vulnerabilities of his websites with JG. These conversation records are extremely relevant to willfulness and claims of asset diversion.

43. We suspect that Wilson may have hidden and commingled assets gained by his copyright infringement. Hiding his assets is pled. We believe that, through Thomas Odom, who is involved in the copyright infringement in this case, Wilson may be using Gunspring to hide assets.

44. Records between defendant and his employee (who he indicates is in charge of Dioskouroi, a defendant entity) are extremely relevant to the claims concerning the copyright infringement that defendants and this employee are involved in.

10

45. Records between defendant and his employee about a defendant entity are extremely relevant to the claims concerning the copyright infringement that defendants and this employee are involved in.

46. Records between defendant and his employee about a defendant entity are extremely relevant to the claims concerning the copyright infringement that defendants and this employee are involved in.

47. Records between defendant and his employee about copyright, to include discussions of copyright infringement, are extremely relevant. How can a discussion between you and an employee be privileged?

48. You have produced materials already in discovery that detail a conversation with Sara Westman that seems to have involved the copying of the works at issue. Defendant knows for a fact that these conversations exist, that they discuss the works at issue, and that they are relevant.

49. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

50. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

51. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

52. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

53. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

54. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

55. All of these materials are directly relevant to willfulness. unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of defendants when talking about these topics remains an important subject of discovery.

11

56. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

57. Defendant's invocations of Plaintiff's employee were intended to harass Plaintiff, his friends, and his employees. This conduct is a serious indication of willfulness. Unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of defendants in harassing Plaintiff, Plaintiff's friends, and Plaintiff's employees remains related to an essential and contested question of material fact. The harassment of Plaintiff's employee are already partially in the record. Defendant engaged in a campaign to intimidate and harass Plaintiff's employee, including by sending him death threats, in a failed bid to frighten Plaintiff's employee. Documents relating to this is quite relevant to the issue of willfulness.

58. Defendant's invocations of Plaintiff's friend were intended to harass Plaintiff, his friends, and his employees. This conduct is a serious indication of willfulness. unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of defendants in harassing Plaintiff, Plaintiff's friends, and Plaintiff's employees remains related to an essential and contested question of material fact.

59. Defendant's invocations of Plaintiff's friend were intended to harass Plaintiff, his friends, and his employees. This conduct is a serious indication of willfulness. unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of defendants in harassing Plaintiff, Plaintiff's friends, and Plaintiff's employees remains related to an essential and contested question of material fact.

60. Defendant's invocations of Plaintiff's friend were intended to harass Plaintiff, his friends, and his employees. This conduct is a serious indication of willfulness. unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of defendants in harassing Plaintiff, Plaintiff's friends, and Plaintiff's employees remains related to an essential and contested question of material fact.

61. Defendant's invocations of Plaintiff's unrelated company were intended to harass Plaintiff, his friends, his employees, and harm the company. This conduct is a serious indication of willfulness. unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of defendants in harassing remains related to an essential and contested question of material fact.

62. Defendant's invocations of Plaintiff's friend were intended to harass Plaintiff, his friends, and his employees. This conduct is a serious indication of willfulness. unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of defendants in harassing Plaintiff, Plaintiff's friends, and Plaintiff's employees remains related to an essential and contested question of material fact.

12

63. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

64. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

65. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

66. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

67. How could copies of the work at issue not be relevant to the case? This request clearly speaks to willfulness and knowledge. No narrowing of scope is appropriate. Produce a complete response and privilege log.

68. How could copies of the work at issue not be relevant to the case? This request clearly speaks to willfulness and knowledge. No narrowing of scope is appropriate. Produce a complete response and privilege log.

69. How could copies of the work at issue not be relevant to the case? This request clearly speaks to willfulness and knowledge. No narrowing of scope is appropriate. Produce a complete response and privilege log.

70. How could copies of the work at issue not be relevant to the case? This request clearly speaks to willfulness and knowledge. No narrowing of scope is appropriate. Produce a complete response and privilege log.

71. How could copies of the work at issue not be relevant to the case? This request clearly speaks to willfulness and knowledge. No narrowing of scope is appropriate. produce a privilege log.

73. The request is clear. It asks for evidence that the defense of fair use applies to any of the works at issue. The fact that you don't have this handy to produce for another month is deeply concerning, seeing as you raised it as an affirmative defense.

74. The request is clear. It asks for evidence that the defense of fair use applies to any of the works at issue. The fact that you don't have this handy to produce for another month is deeply concerning, seeing as you raised it as an affirmative defense.

75. Are you sure? Defendants ran advertisements for them, which featured in Defendant's blogs and email blasts. Due to no objections being raised, we must ask what happened to these records.

13

76. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated. It seems odd that any of the Defendant Entities would have access to the personal communications of Defendant Wilson. What Wilson does or does not "have" is not what the rules contemplate. What is in his possession, custody, or control is.

77. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated. It seems odd that any of the Defendant Entities would have access to the personal communications of Defendant Wilson. What Wilson does or does not "have" is not what the rules contemplate. What is in his possession, custody, or control is.

78. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated. It seems odd that any of the Defendant Entities would have access to the personal communications of Defendant Wilson. What Wilson does or does not "have" is not what the rules contemplate. What is in his possession, custody, or control is.

79. We can prove this is untrue. Will you supplement this response?

80. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated. It seems odd that any of the Defendant Entities would have access to the personal communications of Defendant Wilson. What Wilson does or does not "have" is not what the rules contemplate. What is in his possession, custody, or control is.

81. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated. It seems odd that any of the Defendant Entities would have access to the personal communications of Defendant Wilson.

82. Defendant is an officer of DD Foundation LLC. DD Foundation LLC has sworn that it shares profits with Defendant entities in this case. We have claimed that assets are being hidden by defendants, so it should be rather clear why Defendant's role in DD Foundation LLC is relevant.

83. Defendant is an officer of DD Foundation LLC. DD Foundation LLC has sworn that it shares profits with Defendant entities in this case. We have claimed that assets are being hidden by defendants, so it should be rather clear why Defendant's role in DD Foundation LLC is relevant.

14

84. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

85. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

86. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

87. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

88. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

89. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

90. Nothing about "your employees" is unintelligible, as you understood the term in  RFP 89. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

91. Nothing about "your employees" is unintelligible, as you understood the term on RFP 89. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

92. Defendant's interactions with Nathan Mayer were intended to harass Plaintiff, his friends, and his employees. This conduct is a serious indication of willfulness. unless Defendants are willing to cede the issue of willfulness for all the works, and for all defendants, the conduct of defendants in harassing Plaintiff, Plaintiff's friends, and Plaintiff's employees remains related to an essential and contested question of material fact.

93. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated. The information requested to suspected to be related to a server and computer infrastructure which Defendants used to carry out their copyright infringement.

15

94. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

95. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

96. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

97. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

98. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

99. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

100. We suspect that Wilson may have hidden assets gained by his copyright infringement generally. hiding his assets is pled. This behavior can be established from the period preceding this lawsuit, as this shows how long this behavior has existed. Additionally, any money he commingled or made from his infringement is relevant to this case.

101. We suspect that Wilson may have hidden assets gained by his copyright infringement generally. hiding his assets is pled. This behavior can be established from the period preceding this lawsuit, as this shows how long this behavior has existed. Additionally, any money he commingled or made from his infringement is relevant to this case.

102. We suspect that Wilson may have hidden assets gained by his copyright infringement generally. hiding his assets is pled. This behavior can be established from the period preceding this lawsuit, as this shows how long this behavior has existed. Additionally, any money he commingled or made from his infringement is relevant to this case.

103. We suspect that Wilson may have hidden assets gained by his copyright infringement generally. hiding his assets is pled. This behavior can be established from the period preceding this lawsuit, as this shows how long this behavior has existed. Additionally, any assets he commingled or gained from his infringement is relevant to this case.

104. We suspect that Wilson may have hidden assets gained by his copyright infringement generally. hiding his assets is pled. This behavior can be established from the period preceding

16

this lawsuit, as this shows how long this behavior has existed. Additionally, any money he commingled or made from his infringement is relevant to this case.

105. We suspect that Wilson may have hidden assets gained by his copyright infringement generally. hiding his assets is pled. This behavior can be established from the period preceding this lawsuit, as this shows how long this behavior has existed. Additionally, any money or assets he commingled or made from his infringement is relevant to this case.

106. We suspect that Wilson may have hidden assets gained by his copyright infringement generally. hiding his assets is pled. This behavior can be established from the period preceding this lawsuit, as this shows how long this behavior has existed. Additionally, any money or assets he commingled or made from his infringement is relevant to this case.

107. We suspect that Wilson may have hidden assets gained by his copyright infringement generally. hiding his assets is pled. This behavior can be established from the period preceding this lawsuit, as this shows how long this behavior has existed. Additionally, any money or assets he commingled or made from his infringement is relevant to this case.

108. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

109. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

110. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated. How could it be possible that these companies were actually the ones reaching out to journalists, independent of Wilson? Especially where Wilson has previously produced some such documents?

111. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated. How could it be possible that these companies were actually the ones reaching out to journalists, independent of Wilson? Especially where Wilson has previously produced some such documents?

112. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated. How could it be possible that these companies were actually the ones reaching out to journalists, independent of Wilson? Especially where Wilson has previously produced some such documents?

113. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control,

17

and must be produced, and if they are not, must be definitely stated. How could it be possible that these companies were actually the ones reaching out to journalists, independent of Wilson? Especially where Wilson has previously produced some such documents?

114. Any materials subject to requests that you suggest "may be better directed" to the Defendant Entities which Wilson owns and/or is an officer of are in Wilson's custody and control, and must be produced, and if they are not, must be definitely stated.

Please indicate your willingness to fix these deficiencies by October 31, 2025, or we will have no choice but to move the Court to compel better responses. We look forward to hearing from you. Thanks.

Sincerely,

Zachary Z. Zermay, Esq.
**ZERMAY LAW, P.A.**
e-Mail: zach@zermaylaw.com
Telephone: (305) 767-3529

18



# ZERMAY LAW, P.A.

3000 Coral Way, Suite 1115
Coral Gables, Florida 33145
Telephone: (305) 767-3529
Facsimile: (844) 894-6204
e-Mail: zach@zermaylaw.com

Zachary Z. Zermay, Esq.
e-Mail: zach@zermaylaw.com

October 29, 2025

**VIA EMAIL ONLY**

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
Leia V. Leitner, Esq.
*Leia.Leitner@wilsonelser.com*
Amaris Gyebi, Esq.
*Amaris.Gyebi@wilsonelser.com*
Jura C Zibas, Esq.
*Jura.Zibas@wilsonelser.com*

**FLORES LAW PLLC**
Chad Flores, Esq.
*cf@chadflores.law*

> Re: *Larosiere v. Wilson, et al.*: Case No.: 6:24-cv-01629-WWB-LHP:
> Discovery Dispute

Dear Counsel:

I have reviewed your email of October 29, 2025 that was transmitted on or about 7:18 P.M. eastern standard time in which you state that you had received my "18-page meet-and-confer letter regarding Plaintiff's substantive issues with Defendants' discovery responses/objections to Plaintiff's discovery demands" and your contention that Friday October 31, 2025 is "<u>not</u> [*sic*] feasible to discuss these issues." We disagree. Your email attempting to punt a discussion regarding your clients' flagrant discovery violations, which have been thoroughly explained in the letter that I transmitted, is not well taken. And the issue is very much ripe for discussion as you admitted shortly before your email of 7:18 P.M. when you wrote:

> We are happy to address Plaintiff's concerns with Defendants' discovery responses to Plaintiff's discovery responses on Friday; however, to make this an efficient and productive meeting, please identify the specific Defendants' requests/interrogatories numbers (aside from RFP Nos. 89, 90, and 91) that you are referring to below so that we can determine whether the Defendants are supplementing or amending these responses to resolve these issues between the parties.

1

Your clients knew about their discovery obligations thirty days ago. Your clients elected to produce nothing, not even evidence of the affirmative defenses that they pled. We fear that the responses we have received were drafted in bad faith, such that responsive materials would be kept unavailable to Plaintiff until after the date of Defendant Wilson's deposition.

At the very least, we insist on discussing these four topics at the conference of October 31, 2025. The first two represent complete defiance of Rule 34, specifically Rule 34(a)(1). The third deals with a bad faith "interpretation" of what copyright means. Defendant Wilson literally wrote a manifesto detailing the aspects of his copyright infringement. What we seek when asking about copyright is very clear. If he's willing to admit to every aspect of willful copyright infringement publicly, it's very reasonable to suspect that there are further materials to this effect in his possession, custody, or control. Finally, we would like to discuss that refusing to produce anything because you know you have identified the responsive materials we seek, but desire to "narrow" our question before you turn them over is wholly inappropriate. Nothing in Rule 34(b)(2) suggests that you may withhold responsive materials in the hope that a meeting with us at some point in the future might allow you to get us to narrow our requests. This is especially concerning considering we are now attempting to meet and confer with you about these very things, and you are indicating that you are unable to meet about them. We must at least discuss the following:

1. Saying that Wilson does not have things "in his individual capacity" to avoid production or answer is not supportable by the rules. Saying that any request to Wilson would be "better directed" to a company that Wilson owns is improper. The rules enable access to any material in his possession, custody, or control. He is an officer and owner of the corporate co-defendants. The requested information, documents, *etc.* are in his custody and control, or he is knowledgeable about them. This issue is present in over half of the responses, and we fear it may be calculated to frustrate discovery.

2. Several times, you indicate that Wilson doesn't "have" documents, without touching on the relevant questions of control or custody, nor the required diligent search. Several times, we fear you confuse the standard as being one where production only applies to items that are in possession, custody, AND control. In fact, each time the "AND" connector (which is not in the rules) would be most useful to you, it is present in your response, compared to the fifty-plus times your responses use the correct "OR" connector. These errors must be corrected without delay. The fact that the overwhelming majority of your responses cite the rule correctly, but whenever production of documents is avoided, they are re-written, gives us concern that this was done intentionally. Whether it was inadvertent or intentional, this must be corrected immediately.

3. Your assertion that "copyright" is "an undefined term." This is not a proper objection, as you know, words are to be given their ordinary meaning. Copyright does not mean "only the works at issue". Defendants' discussion of copyright will speak not only to willfulness of their infringement, but their relevant levels of awareness of copyright infringement, their reactions to and understanding of the infringement, and who and what factors drove the defendants to conduct themselves as they have. We fear the assertion that you are confused as to what "copyright" means may be an attempt to arbitrarily narrow the scope of the question and risks obfuscating this extremely relevant material. Given Mr. Wilson wrote a manifesto detailing his contempt for copyright, and detailed the aspects of his

2

infringement as to at least one of Plaintiff's works in said manifesto, documents and communications in his possession concerning the subject are clearly relevant to the question of willfulness. Unless you are willing to cede that all infringement was completely willful on behalf of all Defendants, and that each Defendant was completely aware of the infringement, and that they all did it anyway, and that it was at the direction of Defendant Wilson that the corporate defendants intentionally engaged in this infringement, the information sought must be provided as requested.

4. In many responses, you indicate a desire to "meet and confer" about a "narrowing" of questions. We are confused, as this is not how we understand the discovery process works. It is our understanding that you must provide complete answers, subject to objection where appropriate, to the questions asked. Trying in good faith, we could not identify a single instance where this response was proper. We fear that these responses are calculated to cause delay. Each time this was asserted, the question was unambiguous. We need complete responses to the questions we asked 30 days ago, not a future conference about the questions you would have preferred we asked.

It is unacceptable for your clients not to have prepared these materials over the past 30 days in the hope that they could withhold them until after Mr. Wilson's deposition date. As such, if your clients fail to meet their discovery obligations, we will move to compel complete responses, will need to confer regarding sanctions given the manifest Rule 34 violations and how they forced us to reschedule and delay Mr. Wilson's deposition, and will need to schedule a conference of counsel regarding the need to reschedule Mr. Wilson's deposition until your clients meet their obligations under Rule 34.

We look forward to hearing from you. Thanks.

Sincerely,

Zachary Z. Zermay, Esq.
**ZERMAY LAW, P.A.**
e-Mail: zach@zermaylaw.com
Telephone: (305) 767-3529

3

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №: 6:24-cv-01629

MATTHEW LAROSIERE,

*Plaintiff,*

v.

CODY RUTLEDGE WILSON, DEFCAD, Inc.,
DEFENSE DISTRIBUTED, and DIOSKOUROI
LLC,

*Defendants.*

_____

Defense Distributed,

Counterplaintiff/ Third-
Party Plaintiff,

v.

The Gatalog, Matthew Larosiere, John Elik,
Alexander Holladay, Peter Celentano, Josh
Kiel Stroke, John Lettman, and MAF Corp.

Counterdefendants.

_____/

## MATTHEW LAROSIERE'S RESPONSES TO DEFENSE DISTRIBUTED'S FIRST SET OF INTERROGATORIES

### General Objections to Definitions

**Objection to Definition No. 1 ("Person"):**
Counterdefendant objects to the definition of "person" as vague, overbroad, and inconsistent with the usage and scope contemplated by the Federal Rules of Civil Procedure. To the extent this definition purports to expand the meaning of "person" beyond that which is recognized in Rule 17(b) and Rule 34(a)(1), or includes informal associations or non-juridical entities not subject to suit, Counterdefendant objects. Counterdefendant will interpret "person" consistent with its ordinary legal usage under the Federal Rules unless otherwise specified in an individual request.

**Objection to Definition No. 2 ("Communication"):** Counterdefendant objects to the definition of "communication" as vague and overbroad to the extent it encompasses internal thoughts or fails to distinguish between formal and informal modes of transmittal, and to the extent it includes irrelevant or speculative inquiries not reasonably calculated to lead to the discovery of admissible evidence under Rule 26(b)(1). Counterdefendant will interpret "communication" as a tangible or documentable transmission of information between two or more persons.

**Objection to Definition No. 4 ("Relating"):** Counterdefendant objects to the definition of "relating" as overbroad and impermissibly vague. As defined, the term fails to place reasonable limits on the scope of discovery and risks encompassing irrelevant information that is neither proportional to the needs of the case nor reasonably calculated to lead to the discovery of admissible evidence under Rule 26(b)(1). Counterdefendant will interpret "relating to" as requiring a direct and substantial connection to the subject matter at issue.

**Objection to Definition No. 5 ("Social media"):** Counterdefendant objects to the definition of "social media" as vague, overinclusive, and ambiguous as to temporal and functional scope. The definition fails to distinguish between personal and professional accounts, private and public communications, or material reasonably accessible under Rule 26(b)(2)(B). To the extent the definition seeks materials from platforms not used by Counterdefendant or not within his possession, custody, or control, it is also burdensome and irrelevant. Counterdefendant will interpret "social media" as limited to content affirmatively published or made publicly available by Counterdefendant on an account he controls.

## OBJECTION TO INSTRUCTIONS

Respondent objects to the "Definitions" and "Instructions" set forth in Defense Distributed's interrogatories to the extent they are vague, overbroad, unduly burdensome, inconsistent with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Middle District of Florida, and improperly expand the scope of what might otherwise be straightforward discovery requests. *See* Middle District Discovery (2021), § IV.A. The definitions and instructions purport to impose obligations not required under Rule 33 or applicable case law, including multipronged requirements for "identifying" persons, documents, or acts that convert single interrogatories into improper compound subparts. These definitions and instructions threaten to and do convert what might otherwise be discrete interrogatories into improper multipronged compound questions, violating Rule 33(a)(1)'s numerical limit and the proportionality mandate of Rule 26(b)(1). Counterdefendant will interpret the interrogatories using the ordinary meaning of the words used, subject to specific objections where appropriate.

### Response to Interrogatory No. 1

**Objection:** Counterdefendant objects to this interrogatory on the grounds that it is overbroad, not reasonably limited to the claims or defenses in this action, and not

proportional to the needs of the case as required by Rule 26(b)(1), Federal Rules of Civil Procedure. The request for *all* usernames and/or handles used over a multi-year period—regardless of platform, context, or subject matter—seeks irrelevant and potentially private information with no bearing on the claims asserted in the pleadings. It is also vague in its use of "handles" without limiting the scope to specific types of platforms or public usage. This interrogatory is further objectionable because it invades the privacy interests of Counterdefendant, including in unrelated personal or anonymous online activity, and is not appropriately tailored to discovery of relevant facts.

Subject to and without waiving the foregoing objection, respondent states: Fuddbuster, MattLaAtLaw, Matt La, IvanTheTroll.

**Response to Interrogatory No. 2**

**Objection.** Larosiere objects to this interrogatory on the grounds that it is vague, ambiguous, and overbroad. The interrogatory does not define "The Gatalog," "policies," or "procedures," and appears to assume that "The Gatalog" is a formally organized entity capable of adopting or implementing such measures. Mr. Larosiere denies that "The Gatalog" is or ever was a legal entity or any type of structured association. To the extent the interrogatory seeks identification of persons who have casually or informally contributed ideas within decentralized, online hobbyist spaces, it is unduly burdensome and not proportional to the needs of the case under Rule 26(b)(1).

**Subject to and without waiving the foregoing objections**, Larosiere states: To the best of my knowledge, "The Gatalog" as alleged in your Counterclaims does not exist, and thus I am without knowledge and unable to respond.

**Response to Interrogatory No. 3:**
**Objection:**
Counterdefendant objects to this Interrogatory to the extent it presumes that each copyrighted work was first published via a website or that such information is necessary or relevant to any claim or defense in this action. The Interrogatory also seeks information already in Counterplaintiff's possession, custody, or control — specifically the dates of first publication, which are stated on the copyright registration certificates filed in this case.

Subject to and without waiving the foregoing objections, Counterdefendant states that the dates of first publication are accurately reflected in the copyright registration certificates previously filed with the Copyright Office and submitted in this litigation. Counterdefendant further states that he did not personally publish the works at issue on any website and is not in possession of specific website publication data. To the extent the works were later mirrored or uploaded by others — including by or at the direction of Counterplaintiff or its associates — Counterdefendant lacks knowledge sufficient to identify the date and website of such publication.

**Response to Interrogatory No. 4:**
**Objection:**
Counterdefendant Matthew Larosiere objects to this Interrogatory on the grounds that it is vague, ambiguous, and based on unfounded assumptions. The Interrogatory presumes the existence of a formal approval process governing uploads to unspecified "branded Odysee channels," but fails to identify which channels are at issue, what constitutes a "branded Odysee channel," or how "The Gatalog's" alleged branding or approval process is defined. The Interrogatory is further objectionable as it is not reasonably tailored to elicit relevant or proportional information, as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure.

**Answer:**
Subject to and without waiving the foregoing objections, Counterdefendant states that he is not aware of any formal approval process for uploading files to any so-called Gatalog-branded Odysee channels, nor does he have knowledge of any individual who would be responsible for administering such a process.

**Response to Interrogatory No. 5:**
**Objection:**
Counterdefendant Matthew Larosiere objects to this Interrogatory on the grounds that it is vague, ambiguous, and based on assumptions unsupported by fact. The Interrogatory presumes the existence of identifiable persons "responsible for receiving or making payments" in connection with 3D-printable firearm files hosted on unspecified "branded Odysee channels" allegedly associated with "The Gatalog." It fails to define or specify what constitutes "The Gatalog's branded Odysee channels," what payments are at issue, or the nature of any alleged financial relationship. The Interrogatory is further objectionable as not reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the needs of the case under Rule 26(b)(1).

**Answer:**
Subject to and without waiving the foregoing objections, Counterdefendant states that he lacks knowledge of any person responsible for receiving or making payments relating to 3D-printable firearm files hosted on any so-called Gatalog-branded Odysee channels. To the best of Counterdefendant's knowledge and belief, no such payment system or responsible person exists.

**Response to Interrogatory No. 6:**
**Objection:**
Counterdefendant Matthew Larosiere objects to this Interrogatory on the grounds that it is vague, ambiguous, and overbroad, particularly in its use of the phrase "used in connection with," which is undefined and susceptible to multiple interpretations. The Interrogatory is further objectionable to the extent it assumes a financial or transactional nexus between cryptocurrency wallets and 3D-printable firearm files or components without factual basis. It is not reasonably limited in scope or time, and seeks information not proportional to the needs of the case under Rule 26(b)(1) of the Federal Rules of Civil Procedure.

**Answer:**
Subject to and without waiving the foregoing objections, Counterdefendant states that he has never used any cryptocurrency wallet to transact in connection with 3D-printable firearm files or components. However, Counterdefendant acknowledges that the Bitcoin wallet address bc1qt6hlqrr9nrz0vvw03h765pcq3jzzq3k6gqpm69 was included in one or more publications attributed to him as a donation address. To the best of his knowledge, no cryptocurrency has ever been deposited into that wallet.

**Response to Interrogatory No. 7:**
**Objection:**
Counterdefendant Matthew Larosiere objects to this Interrogatory on the grounds that it is vague, overbroad, and not reasonably limited in time or scope. The term "public forum" is undefined and could encompass an unbounded range of contexts, including social media, private groups, comment threads, or informal discussions, making the request ambiguous and unduly burdensome. The Interrogatory also seeks information of marginal relevance, if any, to any claim or defense and is not proportional to the needs of the case under Rule 26(b)(1) of the Federal Rules of Civil Procedure.
**Answer:**
Subject to and without waiving the foregoing objections, Counterdefendant states that he has discussed this lawsuit in general terms in one or more appearances on YouTube, including the "Potentially Criminal" channel, and on the social media platform Twitter (now known as X). To the best of his recollection, such discussions were surface-level and largely critical of what he views as the unsupported and internally inconsistent nature of Defense Distributed's counterclaims, including the fact that Defense Distributed mooted its own motion to dismiss on three separate occasions. Counterdefendant does not recall the specific dates or additional public forums, if any, in which such discussion occurred.

**Response to Interrogatory No. 8:**
**Objection:**
Counterdefendant Matthew Larosiere objects to this Interrogatory to the extent it seeks information protected by the attorney–client privilege, the attorney work product doctrine, or other applicable legal protections. The Interrogatory is also vague and overbroad insofar as it fails to define the scope of "contact" or the types of "law enforcement" entities contemplated, and is not limited in time or jurisdiction. Subject to and without waiving these objections:
**Answer:**
Outside of privileged communications and conduct undertaken in the course of his legal practice—which are unrelated to this litigation and protected from disclosure—Counterdefendant has had no contact with law enforcement regarding 3D-printable firearm files.

**Response to Interrogatory No. 9:**
**Objection:**
Counterdefendant Matthew Larosiere objects to this Interrogatory on the grounds that it

is vague and ambiguous as to the phrases "administrative privileges" and "website," which are undefined and may encompass a broad and indeterminate range of digital platforms, including forums, chat applications, hosting services, or social media sites, each of which may confer varying degrees of administrative access that are neither uniform nor clearly understood. The Interrogatory is further objectionable as overbroad and not reasonably limited in time, scope, or subject matter, and appears designed to elicit speculative responses regarding potential associations with unknown platforms. To the extent the Interrogatory seeks information about websites where others may have discussed or shared 3D-printable firearm files without Counterdefendant's knowledge or involvement, it exceeds the bounds of reasonable discovery and is not proportional to the needs of the case under Rule 26(b)(1) of the Federal Rules of Civil Procedure.

**Answer:**
Subject to and without waiving the foregoing objections, Counterdefendant states that he is without knowledge sufficient to identify any website on which 3D-printable firearm files or accessories are discussed or shared and for which he maintains administrative privileges, and is therefore unable to respond.


**Response to Interrogatory No. 10:**
**Objection:**
Counterdefendant Matthew Larosiere objects to this Interrogatory on the grounds that it is vague and assumes facts not in evidence. The Interrogatory presumes that Counterdefendant has knowledge of, or access to, administrative records or personnel lists associated with the website chat.deterrencedispensed.com, without any basis to believe that he is connected to that domain or has ever had such knowledge. The Interrogatory is further objectionable as overbroad and not reasonably limited in time or scope, and seeks information outside of Counterdefendant's possession, custody, or control. As phrased, the Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1).

**Answer:**
Subject to and without waiving the foregoing objections, Counterdefendant states that he is without knowledge sufficient to identify any past or present administrators of chat.deterrencedispensed.com and is therefore unable to respond. Larosiere adds that he recalls being told he had administrative privileges on the chat page, but has not ever accessed them or seen such for himself, and was unable to access his account to verify.


Under penalty of perjury, I swear the foregoing responses are true and correct to the best of my knowledge.


/s/ Matthew Larosiere


/s/ Zachary Z. Zermay
*Attorney for Matthew Larosiere*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №: 6:24-cv-01629

MATTHEW LAROSIERE,

*Plaintiff*,

v.

CODY RUTLEDGE WILSON, DEFCAD, Inc.,
DEFENSE DISTRIBUTED, and DIOSKOUROI
LLC,

*Defendants*.

_____

Defense Distributed,

Counterplaintiff/ Third-
Party Plaintiff,

v.

The Gatalog, Matthew Larosiere, John Elik,
Alexander Holladay, Peter Celentano, Josh
Kiel Stroke, John Lettman, and MAF Corp.

Counterdefendants.

_____/

<u>MATTHEW LAROSIERE'S RESPONSES TO DEFENSE DISTRIBUTED'S FIRST SET
OF REQUESTS FOR PRODUCTION</u>

**OBJECTION TO INSTRUCTIONS AND DEFINITIONS**

Counterdefendant objects to the "Instructions" and "Definitions" accompanying these
Requests for Production on the grounds that they are vague, overbroad, unduly
burdensome, and inconsistent with the discovery obligations established by the Federal
Rules of Civil Procedure, the Local Rules of the Middle District of Florida, and the Middle
District Discovery Handbook. These provisions improperly attempt to expand the scope

of discovery well beyond the limits set by Rule 26(b)(1) and Rule 34(a), particularly given that Respondent is a private individual, not a corporate or institutional party.

The definition of "Parties" is objectionable to the extent that it purports to include a wide array of non-parties such as agents, representatives, officers, subsidiaries, and affiliates. Respondent is not part of any corporate entity with such relationships, and this definition improperly attempts to draw in documents or communications not within his possession, custody, or control, contrary to the limits of Rule 34. Similarly, the definitions of "You" and "Your," which purport to include not only Respondent but also his attorneys, experts, and "other persons acting or purporting to act" on his behalf, are vague and imprecise. This language creates ambiguity and inappropriately assigns responsibility or access to materials that are not within Respondent's control or legal obligation to produce.

The definitions relating to documents, electronically stored information (ESI), and communications are also impermissibly broad. The term "Material," as defined, encompasses all drafts, deleted files, temporary files, metadata, internet history, caches, cookies, and other forms of system-generated or forensic data, regardless of relevance or accessibility. These demands exceed what is reasonably proportional in a dispute involving an individual counterdefendant and impose obligations more suitable for institutional litigants engaged in commercial litigation. The reference to Sedona Conference definitions does not cure the overbreadth and does not constitute binding authority in this district. Moreover, the definition of "Communication," which includes not only verbal and written exchanges but also symbols, imagery, and emojis, is so expansive and ambiguous as to be unmanageable in application and ripe for abuse.

The interpretive definitions for words like "any," "and," and "or" purport to require the most inclusive possible construction of every request, regardless of context. While some flexibility in construing discovery requests is appropriate, the one-sided imposition of maximal breadth violates the principle of proportionality and leads to ambiguity in determining what is actually being requested.

The instructions themselves compound these problems. Instruction No. 1 demands a level of labeling and categorization of documents that is infeasible for an individual litigant who does not maintain records in a formal or structured manner. Instruction No. 2 calls for production "as kept in the ordinary course of business," which is simply inapplicable to Respondent, who does not operate a business. Instruction No. 3 is especially objectionable in that it mandates native file production of ESI, the creation of a discovery log detailing the type, source, and electronic ID of each file, the generation of load files compatible with commercial document review platforms, and the use of secure file transfer protocols. These technical and labor-intensive requirements are vastly disproportionate to the needs of this case and are not appropriate for discovery directed to an individual, particularly one who has not engaged in any commercial activity relating to the subject matter of the lawsuit.

Instruction No. 4 improperly shifts the burden of identifying non-searched sources of potentially responsive information onto Respondent, in contravention of Rule 26(g), which only requires a reasonable inquiry and good faith search. Instruction No. 6 seeks a hyper-technical privilege log that exceeds the reasonable requirements outlined in the Discovery Handbook, demanding information such as file format, job titles, and the physical location of every person involved in a privileged communication. Instruction No. 7 imposes an excessive burden by requiring a detailed explanation of the circumstances under which any responsive document might no longer exist, including the identification of every person with knowledge of its loss and any other materials that might touch on the loss. This is wholly disproportionate and far beyond what the rules require.

Accordingly, Counterdefendant objects to these definitions and instructions in their entirety and will respond to the individual Requests for Production in a manner consistent with the applicable discovery rules. Where appropriate, specific objections will be interposed, and responsive documents within Respondent's possession, custody, or control that are relevant and proportional to the claims and defenses in this matter will be identified or produced. To the extent these definitions and instructions purport to impose broader obligations, they are expressly rejected.

Counterdefendant believes the instructions and definitions render each and every request for production vague, overbroad, and disproportionate to the needs of discovery. As such, Counterdefendant declines to respond to any request covered by the abusive, boilerplate instructions provided. Subject to and without waiving that objection, Respondent proceeds now to the requests, giving words their plain meaning and ignoring all of Defense Distributed's abusive, boilerplate definitions and instructions:

**Response to Request for Production No. 1:**
**Objection:**
Counterdefendant Matthew Larosiere objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case under Rule 26(b)(1) of the Federal Rules of Civil Procedure. The Request spans nearly four years and seeks communications with numerous individuals—some identified only by pseudonyms—on a broad range of topics, many of which are vaguely defined or irrelevant to any claim or defense in this action. The Request also impermissibly seeks materials protected by the attorney–client privilege and attorney work product doctrine.
Specifically, this Request seeks communications between Mr. Larosiere and his legal clients in this matter—namely, co-defendants Josh Kiel Stroke, John Elik, and John Lettman—which are plainly protected from disclosure. Additionally, to the extent this Request encompasses communications made in anticipation of litigation, or relating to legal strategy, mental impressions, or case theory, such materials are protected under the work product doctrine.
The terms "communications," "relating to," and "business relationship" are vague and overinclusive, and the Request fails to limit the subject matter to any specific causes of action or factual allegations in the pleadings. To the extent the Request calls for identification of individuals associated with pseudonyms such as "Pla.boi," "Dr. Death,"

"UberClay," "ArmedJOy," or "Bloblems," Counterdefendant objects on the grounds that he lacks sufficient knowledge to identify those persons and that the Request seeks speculative associations.

Subject to and without waiving the foregoing objections, and excluding materials protected by the attorney–client privilege and/or attorney work product doctrine:

**Response:**

a. Counterdefendant has no responsive communications concerning DEFCAD.

b. Counterdefendant has no responsive communications concerning Defense Distributed.

c. Counterdefendant has no responsive communications concerning Cody Wilson.

d. Counterdefendant has no responsive communications concerning Dioskouri.

e. Counterdefendant has no responsive communications concerning the development or creation of any file alleged to be infringed upon in the Complaint.

f. Responsive communications, to the extent they exist, are protected by the attorney–client privilege and/or attorney work product doctrine.

g. Counterdefendant has no responsive communications concerning The Gatalog, its website, Odysee presence, submission process, or bounty payments.

h. Counterdefendant objects to the production of communications regarding litigation hold notices as protected under the work product doctrine.

i. Counterdefendant has no responsive communications concerning the deletion of files or communications relating to printable firearm frames and receivers.

j. Counterdefendant has no responsive communications concerning any business relationship relating to printable firearm frames and receivers.

k. Counterdefendant has no responsive communications concerning chat.deterrencedispensed.com, including any selection or delegation of Rocketchat administrative responsibilities.

l. Counterdefendant has no responsive communications concerning the "FEDCAD" meme.

m. Counterdefendant has no responsive communications concerning the *Everytown for Gun Safety v. DEFCAD* lawsuit.

**Statement of Withholding:**

Pursuant to Rule 34(b)(2)(C), Counterdefendant affirms that responsive documents and communications are being withheld to the extent they are protected by the attorney–client privilege or attorney work product doctrine.


**Response to Request for Production No. 2:**

**Objection:**

Counterdefendant Matthew Larosiere objects to this Request as overbroad, vague, and not proportional to the needs of the case under Rule 26(b)(1) of the Federal Rules of Civil Procedure. The phrase "digital firearm file transfers to foreign entities or individuals" is not defined and is susceptible to multiple interpretations, including speculative or hypothetical transfers not known to or associated with Counterdefendant. The Request further identifies a non-exhaustive list of named and pseudonymous individuals or groups—some of whom may be unidentifiable or associated with political entities—without articulating any nexus to the claims or defenses in this action.

To the extent the Request seeks information concerning alleged transfers by others, without Counterdefendant's knowledge or involvement, it exceeds the permissible scope of discovery. Counterdefendant also objects to the extent the Request seeks materials not within his possession, custody, or control.

**Response:**

Subject to and without waiving the foregoing objections, Counterdefendant states that after a diligent search, he has no materials responsive to this Request in his possession, custody, or control.

**Response to Request for Production No. 3:**

**Objection:**

Counterdefendant Matthew Larosiere objects to this Request on the grounds that it is vague, overbroad, and not proportional to the needs of the case under Rule 26(b)(1) of the Federal Rules of Civil Procedure. The Request fails to define the term "Material," which could encompass an indeterminate range of documents, communications, or metadata. It also assumes, without foundation, that Counterdefendant has knowledge of or involvement in the payment of hosting fees for domains that are not alleged to be under his ownership, control, or administration.

To the extent the Request seeks financial or transactional records concerning third-party platforms or domains—including chat.deterrencedispensed.com, the Odysee channel at https://odysee.com/@TheGatalog-PrintableFramesReceivers:9, and thegataloq.com—with which Counterdefendant has no affiliation, it seeks information beyond Counterdefendant's possession, custody, or control and is not reasonably tailored to any claim or defense in this action.

**Response:**

Subject to and without waiving the foregoing objections, Counterdefendant states that after a diligent search, he has no materials responsive to this Request in his possession, custody, or control.

**Response to Request for Production No. 4:**

**Objection:**

Counterdefendant Matthew Larosiere objects to this Request on the grounds that it is based on a false premise and seeks information that is neither relevant nor proportional to the needs of the case under Rule 26(b)(1) of the Federal Rules of Civil Procedure. The Request presumes that Counterdefendant has asserted a claim that DEFCAD failed to properly encrypt or securely store its data, which he has not. As such, the Request is not reasonably calculated to lead to the discovery of admissible evidence and appears intended to impose burden rather than elicit relevant discovery.

**Response:**

Subject to and without waiving the foregoing objections, Counterdefendant states that he has not made any claim in this action that DEFCAD failed to properly encrypt or securely store its data, and therefore has no materials responsive to this Request.

**Response to Request for Production No. 5:**
**Objection:**
Counterdefendant Matthew Larosiere objects to this Request on the grounds that it is based on a false factual premise and seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case under Rule 26(b)(1) of the Federal Rules of Civil Procedure. The Request incorrectly presumes that Counterdefendant has alleged or asserted that DEFCAD has been "hacked and dumped multiple times," which he has not. As such, the Request is not reasonably calculated to lead to the discovery of admissible evidence.
**Response:**
Subject to and without waiving the foregoing objections, Counterdefendant states that he has not made any claim in this action that DEFCAD has been hacked or dumped, and therefore has no materials responsive to this Request.

**Response to Request for Production No. 6:**
**Objection:**
Counterdefendant Matthew Larosiere objects to this Request on the grounds that it is vague and compound, including the undefined phrase "stole from you or any other Counterdefendant," which lacks specificity and legal clarity. The Request is also cumulative and unduly burdensome to the extent it demands production of materials already in Counterplaintiff's possession, custody, or control. Responsive materials have been filed publicly in this case, including in the Complaint, the Motion for Preliminary Injunction, and other pleadings, and are therefore equally accessible to Counterplaintiff. Additionally, this Request seeks to compel production of materials that, in part, derive from statements and admissions made by Counterplaintiff itself—such as the "Black Flag White Paper" and related blog posts authored or published by Cody Wilson—which are not within the exclusive possession of Counterdefendant and are publicly accessible.
**Response:**
Subject to and without waiving the foregoing objections, Counterdefendant refers Counterplaintiff to the Complaint, the Motion for Preliminary Injunction, and other filings in this action, which incorporate all material supporting the claim that DEFCAD misappropriated intellectual property from Counterdefendant Larosiere and others. Counterdefendant is not withholding any additional responsive materials beyond those already produced or filed with the Court.

**Response to Request for Production No. 7:**
**Objection:**
Counterdefendant Matthew Larosiere objects to this Request on the grounds that it is vague, ambiguous, and overbroad. The Request fails to identify with reasonable specificity who constitutes the "moderators of r/Fosscad," a Reddit community whose moderators may include anonymous or pseudonymous individuals not reasonably identifiable by Counterdefendant. Without identification of specific individuals or accounts, the Request seeks information beyond what is reasonably accessible under Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure.

Counterdefendant further objects on the grounds that the Request is not proportional to the needs of the case under Rule 26(b)(1). It seeks all communications over a period of nearly four years with an undefined and potentially large group of individuals, on three broad and unrelated topics: "DEFCAD," "The Gatalog," and "the parties involved in this case." Each of these topics lacks clear boundaries and may encompass speculative, incidental, or irrelevant communications. The phrase "the parties involved in this case" is particularly problematic, as it could include discussions entirely unrelated to the claims or defenses in this litigation and places an unreasonable burden on Counterdefendant to comb through voluminous data for materials with no clear connection to any disputed fact. To the extent the Request seeks informal, off-platform, or private communications with unidentified Reddit users, it also improperly demands the production of materials not within Counterdefendant's possession, custody, or control, and may intrude upon the privacy expectations of third parties who are not parties to this litigation.

**Response:**

Subject to and without waiving the foregoing objections Counterdefendant states that after a diligent search, he has no materials responsive to this Request in his possession, custody, or control.


**Response to Request for Production No. 8:**
**Objection:**

Counterdefendant Matthew Larosiere objects to this Request on the grounds that it is vague, overbroad, and not proportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1). The Request seeks "any Material" relating to "payment agreements" with companies "including, but not limited to" a list of four named entities, over a nearly four-year period. The lack of limitation in subject matter, scope, or context renders the Request overinclusive and burdensome.

Additionally, the term "payment agreements" is ambiguous and undefined—it may refer to formal contracts, informal arrangements, sponsorships, one-time transactions, donations, or indirect financial relationships—none of which are clarified in the Request. The Request is further objectionable to the extent it seeks materials relating to third parties not alleged to be directly involved in the claims or defenses of this action, including companies with no established connection to the alleged copyright infringement, tortious interference, or counterclaims asserted.

To the extent the Request seeks commercially sensitive information or communications with third parties who are not parties to this litigation, the Request may also implicate confidentiality or privacy concerns and is subject to appropriate protections under Rule 26(c).

**Response:**

Subject to and without waiving the foregoing objections, Counterdefendant states that after a diligent search, he has no materials responsive to this Request in his possession, custody, or control.

**Response to Request for Production No. 9:**
**Objection:**
Counterdefendant Matthew Larosiere objects to this Request on the grounds that it is vague, ambiguous, and overly broad, particularly in its use of the phrase "development of the files on which you claim copyright in your Complaint." The Request fails to identify which specific files are at issue, or what constitutes "development"—a term that could encompass a wide range of documents, including drafts, sketches, software tools, internal notes, correspondence, or unrelated preliminary materials. Without clarification, the scope of this Request is unclear and would require speculative interpretation of both the files referenced and the nature of "development," making compliance unreasonably burdensome and disproportionate under Rule 26(b)(1).

To the extent this Request seeks documents created in anticipation of litigation or protected by the work product doctrine—particularly internal design discussions, case preparation notes, or legal strategy—it is subject to withholding under applicable privilege doctrines.

**Response:**
Subject to and without waiving the foregoing objections, Counterdefendant is willing to produce pre-publication drafts and original sketches relating to certain of the copyrighted designs identified in the Complaint, but the size and complexity of the files renders production excessively difficult given the speculative nature of their responsiveness. However, if requesting counsel confirms these would be helpful, these materials will be produced in an independent document production, to the extent they exist and can be located through a reasonable search. Counterdefendant expressly reserves all rights to withhold privileged materials and to seek a protective order as to any confidential technical content that may require restriction under Federal Rule of Civil Procedure 26(c).


**Response to Request for Production No. 10:**
**Objection:**
Counterdefendant Matthew Larosiere objects to this Request on the grounds that it is vague, speculative, and based on an unfounded factual premise. The Request presumes, without any factual basis, that Counterdefendant has engaged in or discussed efforts to "disrupt" the website of Attorney David Gingras, a non-party to this action. The phrase "how that website could be disrupted" is ambiguous, prejudicial, and improperly suggestive of wrongdoing, and the Request is not reasonably calculated to lead to the discovery of admissible evidence.

The Request is further objectionable under Rule 26(b)(1) of the Federal Rules of Civil Procedure because it is not proportional to the needs of the case. It seeks information about conduct that is entirely unrelated to the claims or defenses asserted in this action and appears intended to harass or burden the Counterdefendant. To the extent the Request seeks "communications," it is also overbroad in time, scope, and subject matter, and lacks any nexus to the underlying copyright, tort, or contract disputes.

**Response:**
Subject to and without waiving the foregoing objections, Counterdefendant states that he has no documents or materials responsive to this Request in his possession, custody, or control.

**Response to Request for Production No. 11:**
**Objection:**
Counterdefendant Matthew Larosiere objects to this Request on the grounds that it is vague, overbroad, and not reasonably limited in scope or subject matter. The terms "management," "deletion," and "alteration" of "records or communications" are undefined and may encompass an unreasonably broad range of activity—including benign file organization or routine digital maintenance—that has no relevance to the claims or defenses in this action. The Request further lacks specificity as to the type of records or communications sought, the persons involved, or the purpose of the alleged "management" or "alteration," and it is not reasonably tailored to discover admissible evidence under Rule 26(b)(1) of the Federal Rules of Civil Procedure.

To the extent the Request seeks to imply the improper destruction or concealment of evidence, Counterdefendant objects to its prejudicial framing and reserves the right to seek appropriate protective relief if the Request is used to advance unsupported accusations. The Request is also objectionable to the extent it seeks to compel production of materials not within Counterdefendant's possession, custody, or control.

**Response:**
Subject to and without waiving the foregoing objections, and after conducting a diligent search, Counterdefendant states that he is not aware of any materials responsive to this Request.

/s/ Zachary Z. Zermay
*Attorney for Matthew Larosiere*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №: 6:24-cv-01629

MATTHEW LAROSIERE,

*Plaintiff*,

v.

CODY RUTLEDGE WILSON, DEFCAD, Inc.,
DEFENSE DISTRIBUTED, and DIOSKOUROI
LLC,

*Defendants*.

_____

Defense Distributed,

Counterplaintiff/ Third-
Party Plaintiff,

v.

The Gatalog, Matthew Larosiere, John Elik,
Alexander Holladay, Peter Celentano, Josh
Kiel Stroke, John Lettman, and MAF Corp.

Counterdefendants.

_____/

<u>MATTHEW LAROSIERE'S RESPONSES TO DEFENSE DISTRIBUTED'S FIRST SET
OF REQUESTS FOR ADMISSION</u>

1. **Objection.** Counterdefendant objects to this request on the grounds that it is improper under Rule 36 of the Federal Rules of Civil Procedure. The request seeks admission of an entire paragraph that is compound**,** vague, and replete with legal conclusions, argumentative assertions, and editorialized language. Terms such as "criminal racketeering enterprise," "run-of-the-mill," "associated principals," "dealing illegally," and "handles legally" are undefined and assume facts not admitted or proven. The paragraph also mischaracterizes Plaintiff's claims and misstates the nature of this litigation. Counterdefendant further objects to the definitions of "you,"

"The Gatalog," and "parties" as overbroad, vague, and improperly attributing the alleged conduct of unrelated third parties to Counterdefendant.

Subject to and without waiving these objections, Counterdefendant denies the allegations in Paragraph 1 of the Counterclaim. Counterdefendant further specifically denies:

- That any criminal racketeering enterprise exists as alleged;
- That "The Gatalog" is an enterprise;
- That he or any associated individual has engaged in any illegal conduct;
- That Defense Distributed operates in compliance with the law;
- And that this case involves anything other than a standard civil copyright dispute.

2. **Objection.** Counterdefendant objects to this request on the grounds that it is improper under Rule 36 of the Federal Rules of Civil Procedure. The request seeks admission of an entire paragraph that is compound, vague, and laden with legal conclusions and scandalous, argumentative language, including but not limited to the terms "black-market operator," "illegal ends," "criminal wire fraud," "money laundering," "extortion," "threatened murder," "stealing business," and "compliance market." These are not factual allegations susceptible to admission or denial but rhetorical characterizations and legal accusations. Counterdefendant further objects to the definitions of "you" and "The Gatalog" as impermissibly overbroad, and specifically objects to any implication that "The Gatalog" is an enterprise or has legal, financial, or operational structure as alleged.

Subject to and without waiving these objections, Counterdefendant denies the allegations in Paragraph 2 of the Counterclaim. Counterdefendant specifically denies:
- That "The Gatalog" is or has ever been a "black-market operator" or enterprise of any kind;
- That he or anyone associated with him committed or attempted wire fraud, money laundering, extortion, or threatened murder;
- That any business was "stolen" from Defense Distributed;
- And that the digital firearms information market was distorted in any way by Counterdefendant's actions.

3. **Objection.** Counterdefendant objects to this request as improper under Rule 36 of the Federal Rules of Civil Procedure. The request seeks admission of an entire paragraph that is compound, speculative, inflammatory, and replete with legal conclusions and rhetorical hyperbole. It contains scandalous and prejudicial assertions — including that Counterdefendant is somehow linked to a homicide, that an undefined entity called "The Gatalog" violated federal export laws, and that unnamed "members" engaged in a "coverup" involving mass deletion of social media posts. The allegations are framed to inflame rather than elicit proper

admissions. Counterdefendant further objects to the definitions of "you," "The Gatalog," and "parties" as overbroad, vague, and improperly attributing conduct by unknown third parties to Counterdefendant.

Subject to and without waiving these objections, Counterdefendant denies the allegations in Paragraph 3 of the Counterclaim. Specifically:
- Counterdefendant denies having any involvement in the killing referenced;
- Denies that "The Gatalog," which Counterdefendant asserts does not exist as an entity, provided any such files;
- Denies any violation of the EAR or ITAR;
- Denies that he or anyone known to him deleted social media posts in connection with this matter;
- And denies participating in or having knowledge of any alleged "coverup."

4. **Objection.** Counterdefendant objects to this request as improper under Rule 36 of the Federal Rules of Civil Procedure. The request incorporates a paragraph that is compound, vague, conclusory, and argumentative, and which improperly calls for admissions regarding legal conclusions and speculative future conduct. Terms such as "key principals," "economic harms," "racketeering enterprise," and "more terrible crimes" are not defined and assume facts that are in dispute. Counterdefendant further objects to the definitions of "you," "The Gatalog," and "parties" as impermissibly overbroad and vague, and specifically objects to any characterization of "The Gatalog" as a legal entity or enterprise capable of liability or of causing economic harm.

Subject to and without waiving these objections, Counterdefendant denies the allegations in Paragraph 4 of the Counterclaim. Specifically:
- Denies that "The Gatalog" constitutes an enterprise;
- Denies that he or anyone associated with him is a "key principal" of such an enterprise;
- Denies that Defense Distributed has suffered any economic harm as a result of Counterdefendant's conduct;
- And denies that this litigation involves racketeering or poses any threat of "terrible crimes."

5. **Objection.** Counterdefendant objects to this request on the ground that it calls for a pure legal conclusion, namely whether subject matter jurisdiction exists under 28 U.S.C. § 1331. Requests for admission under Rule 36 are not properly used to compel admissions on questions of law.

Subject to and without waiving this objection, Counterdefendant does not dispute that the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 based on the claims asserted under federal law.

6. **Objection.** Counterdefendant objects to this request on the ground that it calls for a legal conclusion, specifically whether diversity jurisdiction exists under 28 U.S.C. §

1332. Rule 36 of the Federal Rules of Civil Procedure does not require parties to admit or deny abstract legal conclusions, particularly regarding jurisdiction.

Subject to and without waiving this objection, Counterdefendant does not dispute that the Court has original jurisdiction under 28 U.S.C. § 1332 based on the amount in controversy and the diversity of citizenship between the parties.

7. **Objection.** Counterdefendant objects to this request on the ground that it calls for a legal conclusion regarding the existence of subject matter jurisdiction under 28 U.S.C. § 1331. Specifically, the request asks for an admission that jurisdiction exists by virtue of claims brought under the Racketeer Influenced and Corrupt Organizations Act (RICO) and the Lanham Act — both of which are disputed on the merits. Rule 36 does not require parties to admit or deny such legal determinations.

Subject to and without waiving this objection, Counterdefendant does not dispute that the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, but denies that the counterclaims asserted under RICO or the Lanham Act have legal or factual merit.

8. **Objection.** Counterdefendant objects to this request as improper under Rule 36 because it calls for multiple legal conclusions regarding the existence and scope of supplemental jurisdiction under 28 U.S.C. § 1367. It also requires admission of speculative legal assertions and factual characterizations — including whether state law claims "substantially predominate," whether they "raise novel or complex issues," and whether they arise from the same "case or controversy" under Article III — all of which are disputed and subject to legal briefing. The request is compound, argumentative, and seeks to force admissions about legal issues better addressed in motions practice.

Subject to and without waiving these objections, Counterdefendant denies that the Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law counterclaims asserted by Counterplaintiff, and further denies that those claims arise from the same case or controversy or satisfy the statutory requirements for the exercise of supplemental jurisdiction.

9. **Objection.** Counterdefendant objects to this request on the ground that it calls for a legal conclusion regarding whether venue is proper under 18 U.S.C. § 1965(a), including the interpretation and application of a federal venue statute to the facts of this case. The request also contains imprecise and compound language, including the undefined and disputed term "The Gatalog," which is not a juridical person or enterprise capable of "residing," "being found," or "transacting affairs." Rule 36 does not compel admission of such abstract legal determinations or vague composite factual assertions.

Subject to and without waiving these objections, Counterdefendant does not presently contest that the Middle District of Florida is a proper venue for this action, but expressly denies the existence of "The Gatalog" as an enterprise or legal entity as described by Counterplaintiff and further denies that the venue assertion in Paragraph 9 is factually accurate as framed.

10. **Objection.** Counterdefendant objects to this request on the grounds that it (a) calls for a legal conclusion regarding the propriety of venue under 28 U.S.C. § 1391, and (b) misstates the law, as 28 U.S.C. § 1391(e)(1)(B) applies solely to civil actions against officers or agencies of the United States and is entirely inapplicable to private-party litigation such as this action. The request also incorporates vague and composite allegations about the occurrence of unspecified "events or omissions" without identifying any specific conduct alleged to have taken place in this District. Furthermore, the reference to "The Gatalog" is misleading and improper, as Counterdefendant denies that any such enterprise exists or is capable of engaging in conduct that would affect venue.

Subject to and without waiving these objections, Counterdefendant denies that a substantial part of the events or omissions giving rise to Counterplaintiff's claims occurred in the Middle District of Florida, and further denies that 28 U.S.C. § 1391(e)(1)(B) provides any basis for venue in this action.

11. **Objection.** Counterdefendant objects to this request on the ground that it calls for a legal conclusion regarding the applicability of 28 U.S.C. § 1391(b)(2) and mischaracterizes both the nature and location of any "property that is subject to the action." The request also relies on vague, unsupported assertions and presumes facts not in evidence, namely that property relevant to this action exists in the Middle District of Florida. Counterdefendant further objects to the implicit reference to "The Gatalog," which is not a juridical entity or enterprise capable of owning, situating, or controlling property for venue purposes.

Subject to and without waiving these objections, Counterdefendant denies that any substantial part of the property at issue in the counterclaims is located in the Middle District of Florida and further denies that 28 U.S.C. § 1391(b)(2) supports venue in this action.

12. **Objection.** Counterdefendant objects to this request to the extent it seeks admissions about the corporate organization, structure, or operations of third parties over which Counterdefendant has no control, and which are not alleged to be alter egos or otherwise legally relevant to Counterdefendant's individual liability. Counterdefendant further objects to the request as irrelevant to the claims or defenses at issue and not directed to the acts or omissions of the party to whom the request is addressed.

Subject to and without waiving these objections, Counterdefendant lacks knowledge or information sufficient to admit or deny the allegations in request 12 and therefore denies them on that basis pursuant to Rule 36(a)(4).

13. **Admitted**.

14. **Admitted**, except that Counterdefendant objects to the use of the term "The Gatalog" to the extent it implies the existence of a juridical entity or enterprise capable of being sued. Counterdefendant maintains that "The Gatalog" does not exist in the manner alleged and is not a proper party to this action.

15. **Objection.** Counterdefendant objects to this request as calling for a legal conclusion, including issues of standing, corporate structure, and real-party-in-interest status, which are not properly the subject of a request for admission. Counterdefendant further objects that the request is vague and compound, incorporating both procedural posture and factual assertions about the relationship between Defense Distributed and Defcad, Inc. The embedded footnote attempts to selectively disregard corporate separateness for strategic litigation purposes, while reserving it elsewhere — a tactic that underscores the speculative and self-serving nature of the claim.

Subject to and without waiving these objections, Counterdefendant denies that Defense Distributed is properly asserting claims on behalf of Defcad, Inc., and denies that it has sufficiently alleged any basis for doing so. Counterdefendant further states that he presently lacks knowledge as to the actual corporate relationship between Defense Distributed and Defcad, Inc., but explicitly reserves the right to assert that both entities are alter egos of Cody Wilson and are being used to obscure personal liability.

16. **Objection.** Counterdefendant objects to this request to the extent it improperly presumes the existence of a juridical entity called "The Gatalog" capable of being named as a third-party defendant. Counterdefendant further objects that the term "The Gatalog" is vague, undefined, and used inconsistently throughout the counterclaims to refer variously to alleged individuals, a supposed enterprise, a brand, or a non-existent legal person. As used by Counterplaintiff, "The Gatalog" is a fictive label with no recognized structure, assets, membership, or corporate form, and therefore cannot be properly referred to as a "Third-Party Defendant" in any legally meaningful way.

Subject to and without waiving these objections, Counterdefendant denies that "The Gatalog" is a third-party defendant in the sense of being a real or suable entity and denies that the term can properly be used to describe a juridical person in this action.

17. **Objection.** Counterdefendant objects to this request to the extent it presumes that "The Gatalog" is a recognized unincorporated association under Florida law or any other law. The term is vague and undefined, and Counterplaintiff has not identified any organizing documents, membership criteria, leadership structure, shared assets, or continuity of operation that would support the classification of "The Gatalog" as an association with legal capacity. This request improperly calls for a legal conclusion, which is not a proper subject for a request for admission under Rule 36.

Subject to and without waiving these objections, Counterdefendant denies that "The Gatalog" is an unincorporated association under the laws of Florida or that it has the capacity to be sued.

18. **Objection.** Counterdefendant objects to this request on the ground that it assumes the existence of a juridical entity or unincorporated association called "The Gatalog" with a principal place of business, when no such entity exists. The term "The Gatalog" is vague and used inconsistently by Counterplaintiff to refer alternately to a website, a group of individuals, or an alleged enterprise. This request also calls for a legal conclusion and is not susceptible to a straightforward factual admission or denial.

Subject to and without waiving these objections, Counterdefendant denies that "The Gatalog" has a principal place of business in Florida, or anywhere, because it does not exist as a juridical person or business organization.

19. **Objection.** Counterdefendant objects to this request on the grounds that it assumes the existence of a juridical entity called "The Gatalog" with the legal capacity to be served with process. The request further assumes facts not in evidence — namely, that The Gatalog has agents or representatives in Florida who are authorized to accept service — and therefore calls for a legal conclusion, which is improper under Rule 36. The term "The Gatalog" remains vague and undefined, and Counterplaintiff has not identified any individual or office authorized to receive service on its behalf.

Subject to and without waiving these objections, Counterdefendant denies that "The Gatalog" can be reached for service of process in Florida, or anywhere, because it does not exist as a legal entity or have any agents or offices capable of accepting service.

20. **Objection.** Counterdefendant objects to this request as it calls for a legal conclusion regarding personal jurisdiction, which is not a proper subject of a request for admission under Rule 36. Counterdefendant further objects that the request presumes the existence of a juridical entity called "The Gatalog," capable of being domiciled or residing in a state — an assertion that has not been established and is

affirmatively denied. The term "The Gatalog" is vague, undefined, and used inconsistently throughout the Counterclaim.

Subject to and without waiving these objections, Counterdefendant denies that "The Gatalog" resides in or is domiciled in the State of Florida, or that this Court has general personal jurisdiction over it.

21. **Objection.** Counterdefendant objects to this request on the grounds that it calls for a legal conclusion regarding specific personal jurisdiction, which is not a proper subject for a request for admission under Rule 36. Counterdefendant further objects to the extent the request presumes the existence of a juridical entity called "The Gatalog" capable of availing itself of any privileges or conducting activities in any state. The term "The Gatalog" is vague, undefined, and not shown to have conducted any activity in Florida or elsewhere. Moreover, the Counterclaim fails to allege specific conduct occurring in Florida that would support specific jurisdiction.

Subject to and without waiving these objections, Counterdefendant denies that this action arises out of any conduct by which "The Gatalog" purposefully availed itself of the privilege of conducting activities within the State of Florida, or that this Court has specific personal jurisdiction over it.

22. **Objection.** Counterdefendant objects to this request on the grounds that it assumes the existence of an "enterprise" within the meaning of RICO or any other legal framework, which is a legal conclusion and not a proper subject for a request for admission under Rule 36. The term "The Gatalog" is vague, undefined, and not shown to exist as an entity, and the phrase "The Gatalog Principals" is similarly undefined and overbroad. The request improperly assumes that Counterdefendant or any third party participated in or agreed to any common objective or scheme.

Subject to and without waiving these objections, Counterdefendant denies that "The Gatalog" constitutes an enterprise or that it is comprised of individuals who agreed or cooperated to further any objective, including any relating to 3D printable gun files. Counterdefendant further denies that any group exists or existed that may properly be referred to as "The Gatalog Principals."

23. **Admitted**, subject to the objection that this request seeks information not material to any element of a claim or defense, and that personal jurisdiction over Counterdefendant Larosiere is not disputed for purposes of these proceedings.

24. **Admitted**, subject to the objection that this request calls for information that is a matter of public record and not in dispute. Counterdefendant has been served and has appeared in this action.

25. **Objection.** Counterdefendant objects to this request on the grounds that it calls for legal conclusions regarding personal jurisdiction, which are not proper subjects for a request for admission under Rule 36. Counterdefendant further objects to the extent the request is compound, assumes facts not established, and misstates the applicable legal standards for specific jurisdiction. While Counterdefendant resides in Florida, he denies that any alleged conduct giving rise to this action occurred in or was directed at Florida.

Subject to and without waiving these objections, Counterdefendant admits that he resides in the State of Florida but denies that any alleged conduct giving rise to the counterclaims occurred in Florida or that he purposefully availed himself of the privilege of conducting activities within the state as alleged.

26. **Objection.** Counterdefendant objects to this request on the grounds that it is compound, vague, and assumes the existence of an organized "enterprise" referred to as "The Gatalog" and a defined group of "Gatalog Principals," neither of which have been shown to exist. The request also improperly calls for legal conclusions and contains pejorative characterizations of Counterdefendant's alleged conduct. The phrase "knowingly agreed to and did in fact substantially further The Gatalog's objectives" is ambiguous, undefined, and calls for speculation about intent and group purpose, which Counterdefendant denies.

Subject to and without waiving these objections, Counterdefendant denies that he is or ever was a "Gatalog Principal" as that term is undefined and misused. While Counterdefendant has interacted with a loose online collective of firearm design enthusiasts colloquially referred to as "The Gatalog," he has never held any formal role, exercised administrative authority, or undertaken activities on behalf of any organized entity. Counterdefendant further denies ever agreeing to or substantially furthering any alleged "objectives" of "The Gatalog," and denies that such objectives exist in any coherent or coordinated form.

27. Objection. Counterdefendant objects to this request as compound, vague, and misleading. It improperly assumes that Counterdefendant has ownership, control, or legal responsibility for multiple platforms, including public or third-party websites not operated by him. The terms "publication," "administration," and "maintenance" are undefined, overbroad, and ambiguous in the context of internet platforms where many users may post content without any centralized coordination. The request also improperly calls for legal conclusions and falsely presumes the existence of a structured "enterprise" with which Counterdefendant is affiliated.

Subject to and without waiving these objections, Counterdefendant denies that he is or ever was responsible for the publication, administration, or maintenance of any 3D-printable firearm file content on thegatalog.com, Odysee.com, or chat.deterrencedispensed.com. Counterdefendant further denies that he holds or held

any administrative, editorial, or content management role for those platforms. While Counterdefendant has administrative access to the "Fuddbusters" Discord server, that server is not used to distribute or publish 3D-printable firearm files, and any administrative role there is unrelated to the allegations in this action. Counterdefendant denies that he has ever operated or directed any coordinated publication or enterprise concerning such files as alleged.

28. Objection. Counterdefendant objects to this request as compound, vague, and misleading. It improperly conflates distinct websites and legal entities and falsely assumes Counterdefendant's control, authorship, or responsibility for content across multiple unrelated platforms. The terms "responsible for," "publication," "administration," and "maintenance" are ambiguous and undefined, and the request improperly calls for legal conclusions. The phrasing also presumes the existence of a structured publishing enterprise which Counterdefendant denies.

Subject to and without waiving these objections, Counterdefendant denies that he is or was responsible for the publication, administration, or maintenance of any 3D-printable firearm file content on deterrencedispensed.com, gatalog.com, maf-arms.com, or ctrlpew.com. Counterdefendant has never owned or operated deterrencedispensed.com, gatalog.com, or ctrlpew.com, and has never had administrative, editorial, or technical responsibilities for those domains. While Counterdefendant is the president of MAF Corporation, MAF has never published, distributed, or hosted any 3D-printable firearm files, and Counterdefendant's limited role there is entirely unrelated to the allegations in this action.

29. **Objection.** Counterdefendant objects to this request to the extent it implies or suggests that the use of the alias "Fuddbuster" carries any legal significance, implies criminal conduct, or supports any element of the claims asserted in the counterclaim. The request is irrelevant, misleading, and intended to improperly imply an association between innocuous personal or professional branding and the alleged "enterprise."

Subject to and without waiving these objections, Counterdefendant admits that he is sometimes referred to by the alias "Fuddbuster," particularly in public-facing educational or commentary work unrelated to the allegations in this action.

30. **Objection:** Counterdefendant Matthew Larosiere objects to this Request to Admit on the grounds that it is compound, argumentative, vague, assumes facts not in evidence, and mischaracterizes the nature of The Gatalog and Mr. Larosiere's role, if any, therein. The request further improperly attributes legal conclusions, such as "acting on behalf of The Gatalog" or "furthering The Gatalog's objectives," to factual subcomponents, rendering the request improper under Federal Rule of Civil Procedure 36(a)(4). Mr. Larosiere additionally objects to the extent the request incorporates unauthenticated or irrelevant third-party hearsay (including

declarations filed in unrelated litigation), and to the extent it misstates the content or significance of such material.

Subject to and without waiving these objections, Mr. Larosiere denies that he acted on behalf of any criminal enterprise or racketeering organization as alleged in the Counterclaim. Specifically:

- He did not exercise control over any "Gatalog" Odysee.com page (¶30a);
- He did not serve as an administrator of any chat service associated with "The Gatalog" (¶30b);
- He did not employ or partner with Mr. Elik in relation to "The Gatalog" as described (¶30c);
- While he acknowledges helping to form a nonprofit entity styled "The Gatalog Foundation" (¶30d), it has taken no action, holds no assets, and was contemplated only for purposes unrelated to the allegations in this case;
- He serves as director of MAF Corp. (¶30f), which has never trafficked in or distributed 3D firearm files, and is unrelated to the alleged conduct;
- Mr. Larosiere does not admit or adopt the contents of any third-party declaration filed in unrelated litigation, including the statement purporting to describe his role in "representing" The Gatalog or its affiliates (¶30g);
- He has never created or implemented any compliance policies for The Gatalog, including under ITAR or EAR (¶30h–i);
- He lacks knowledge of who DEFCAD's CTO is (¶30j). To the extent any message was sent, it was not followed by any "fraudulent" copyright applications;
- Mr. Larosiere has had a personal and professional relationship with John Elik (a/k/a Ivan the Troll), including an employment agreement unrelated to this matter, and has used Ivan's pseudonym in select contexts as a literary and rhetorical device. He disputes and denies any fraudulent intent or misrepresentation in any copyright application.

Mr. Larosiere denies the implication that any of the foregoing acts give rise to liability or support any claim under RICO, the Lanham Act, or state law, and reserves all rights to challenge the sufficiency and propriety of the claims based on these alleged facts.

31. **Objection.** Counterdefendant objects to this request to the extent it seeks disclosure of privileged attorney-client communications, including the timing and substance of any agreement for legal representation. Counterdefendant further objects on the grounds that the request is vague, compound, and calls for a legal conclusion regarding the status of representation.

Subject to and without waiving these objections, Counterdefendant admits that he presently serves as counsel of record for John Elik in this action.

32. **Objection.** Counterdefendant objects to this request on the grounds that it seeks disclosure of information protected by the attorney-client privilege, including the timing, existence, and terms of any agreement for legal representation.

Counterdefendant further objects that the request is compound, calls for a legal conclusion.

Subject to and without waiving the foregoing objections, Counterdefendant admits that he is currently serving as counsel of record for Josh Stroke in this action.

33. **Objection.** Counterdefendant objects to this request on the grounds that it seeks information protected by the attorney-client privilege, including the timing, existence, and terms of any agreement for legal representation. Counterdefendant further objects that the request is compound, calls for a legal conclusion.

Subject to and without waiving these objections, Counterdefendant admits that he is currently serving as counsel of record for John Lettman in this action.

34. **Objection.** Counterdefendant objects to this request to the extent it seeks an admission of an imprecise or conclusory definition and to the extent it incorporates or relies on definitions improperly set forth in the preamble to the Requests for Admission, which are not agreed to and are expressly rejected. Counterdefendant further objects to the request as vague and ambiguous, particularly regarding the intended meaning of "hosted" and whether this encompasses domain ownership, content control, or server operations.

Subject to and without waiving these objections, Counterdefendant states that he lacks sufficient knowledge or information to admit or deny the allegations of paragraph 85, and on that basis, denies them.

35. **Objection**: Responding party objects to this Request on the grounds that it is compound, vague as to the term "legal responsibility," and assumes facts not in evidence concerning the historical and ongoing ownership and control of "DEFCAD." The Request also purports to characterize a third party's business practices and future intentions, to which this party has no knowledge or access. The temporal phrasing "was, is, and will remain" is speculative and improper in a Request for Admission. Responding party further objects to the extent this Request seeks to support an improper attempt to reverse-engineer standing or claim ownership on behalf of Defense Distributed over claims that may belong to another party, if they exist at all.

Subject to and without waiving these objections, and based on information presently known, Responding party denies the allegations in paragraph 86 of the Counterclaim and states that he lacks sufficient knowledge to admit the claims regarding the corporate structure or business intentions of Defense Distributed or Defcad, Inc., and that those entities' use of the DEFCAD platform, and any asserted "legal responsibility" therefor, remains unsubstantiated and in dispute.

36. **Objection**: Defendant objects to this request to the extent it assumes facts not in evidence, calls for a legal conclusion, or mischaracterizes the function and purpose of "DEFCAD." Defendant further objects on the grounds that the term "digital firearms information" is vague, overbroad, and undefined, and that the paragraph improperly presumes the nature and scope of DEFCAD's operations as if they were established fact.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Defendant lacks knowledge or information sufficient to admit or deny the allegations in paragraph 87 and therefore denies them. Defendant further denies any implication that he has ever used or interacted with the DEFCAD platform in a manner relevant to this litigation, and does not concede the factual accuracy of Counterplaintiff's description of DEFCAD or its operations.

37. **Objection**: Defendant objects to this request on the grounds that it calls for a legal conclusion, presumes facts not in evidence, and mischaracterizes the nature of "digital firearms information," a term which is vague and undefined. Defendant further objects to the extent this request seeks to impose upon him the burden of establishing or confirming the compliance of a third party (DEFCAD) with legal or regulatory obligations, where Defendant lacks the authority, access, or basis to make such determinations.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Defendant lacks knowledge or information sufficient to admit or deny the allegations in paragraph 88 and therefore denies them.

38. **Objection.** This request calls for a legal conclusion regarding the regulatory compliance of a third party (DEFCAD), and it is not reasonably within Counterdefendant Larosiere's personal knowledge. It also assumes facts not admitted and is not limited to Larosiere's conduct or statements.

Subject to and without waiving these objections, Counterdefendant Larosiere responds as follows:
Denied**.** Counterdefendant lacks sufficient knowledge to admit the regulatory status or legal compliance of DEFCAD, which is not an entity or operation he controls or has access to internal compliance records for.

39. **Objection.** This request calls for a legal conclusion and improperly seeks an admission concerning the regulatory compliance of a third party (DEFCAD), a matter outside the personal knowledge of Counterdefendant Larosiere. It also compounds two distinct claims—compliance with federal ITAR regulations and with specific state laws—making the request vague, ambiguous, and overbroad.

Subject to and without waiving these objections, Counterdefendant Larosiere responds as follows:

Denied. Counterdefendant lacks sufficient knowledge to admit or deny the legal compliance of DEFCAD with either the ITAR regime or the state laws cited, and specifically denies any implication that he possesses or should possess such knowledge.

40. **Objection.** This request is vague, compound, and calls for speculation about the purpose, functions, and business operations of a purported entity—"The Gatalog"—whose existence, structure, and activities are expressly denied. It also presumes facts not in evidence, including the existence of monetization, competition, and formal administration.

Subject to and without waiving these objections, Counterdefendant Larosiere responds as follows:

Denied. Counterdefendant denies that "The Gatalog" exists as an enterprise capable of having functions, administration, or monetization. Further denies that Counterdefendant has ever competed with Defense Distributed in any commercial capacity, or that any such competition exists.

41. **Objection.** This request is vague, compound, assumes the existence of "The Gatalog" as an organized entity, and improperly presumes the truth of disputed legal and factual allegations, including the existence of "principals" or coordinated control. It also calls for speculation regarding third parties.

Subject to and without waiving the foregoing objections: Denied. Counterdefendant denies that "The Gatalog" operates in any organized fashion, or that it performs the alleged functions through a network of websites, chat platforms, or social media accounts. Further denies the existence of "The Gatalog Principals" or that any such persons exercise coordinated control over such a network.

42. **Objection.** This request is vague, compound, and misleading, and it presumes the existence of a structured organization called "The Gatalog" with defined "channels" and coordinated activity. It also improperly aggregates multiple websites and services and assumes they serve a unified or common purpose. The request is further objectionable to the extent it attributes functions or conduct to Counterdefendant without specificity or evidentiary basis.

Subject to and without waiving the foregoing objections: Denied. Counterdefendant denies that "The Gatalog" is or ever has been an organized entity with "main channels" for any coordinated activity. Counterdefendant further denies that the listed websites and platforms were ever used in concert to carry out any function on behalf of "The Gatalog," and denies that maf-arms.com has ever hosted or distributed 3D printable gun files or been involved in any "Gatalog"-related activity.

43. **Objection:** This request is vague, compound, and assumes the existence of a unified enterprise called "The Gatalog" as alleged in the counterclaims, which Counterdefendant denies exists in any legal or structured form. The request further

improperly presumes commercial coordination or directive authority that is not established by the allegations or supported by evidence.

Subject to and without waiving the foregoing objections: Denied. Counterdefendant denies that "The Gatalog," as described in the counterclaims, directed patrons to maf-arms.com or ctrlpew.com for any purpose. To the extent individuals affiliated with the informal hobbyist community sometimes called "The Gatalog" have independently promoted or linked to projects involving parts that are also sold by MAF or Ctrl+Pew, such activity does not reflect coordination or direction by an "enterprise," nor does it suggest that Counterdefendant, in any capacity, directed others in the manner alleged.

44. **Objection:** Larosiere objects to this request as vague, compound, and assuming facts not in evidence, including the existence of "The Gatalog" as an entity capable of offering money transfers or incentives. The request also improperly conflates independent actions by third parties with conduct purportedly attributable to the loosely affiliated group Defense Distributed calls "The Gatalog." The request is also overbroad and lacks temporal limitation.

Subject to and without waiving these objections, Larosiere responds as follows: Denied. Larosiere is not aware of "The Gatalog," whether as an entity or group, offering money transfers or financial incentives to developers. While the Ctrl+Pew website has at times advertised "bounties" to encourage certain hobbyist accomplishments, Larosiere has no involvement in those offerings, and they are not attributable to "The Gatalog" as alleged.

45. **Objection**: Larosiere objects to this request as vague, misleading, and argumentative—particularly the phrase "de facto bank," which is undefined and improperly suggests regulated financial activity. Larosiere further objects to the compound nature of the request and to its assumption of facts not in evidence, including the implication of a coordinated financial structure between MAF Corp. and any alleged entity called "The Gatalog."

Subject to and without waiving the foregoing objections, Larosiere denies that MAF Corp. serves as a "de facto bank" for any activity related to "The Gatalog" as alleged. MAF Corp. employs Matthew Larosiere and Alexander Holladay, who are paid salaries for their work at MAF Corp., which is an independent business. MAF Corp. does not make payments to any of the other individuals named in the request, and it does not serve as a financial intermediary for any collaborative or enterprise-related activity.

46. **Objection**. This request calls for a legal conclusion, is vague and overbroad, and fails to specify what acts constitute the alleged "pattern of racketeering activity." The phrase "acting by and through The Gatalog Principals" is also vague and undefined. To the extent it purports to characterize the actions of Mr. Larosiere or others as criminal or as part of a criminal enterprise, it is a prejudicial legal conclusion not susceptible to admission or denial.

Subject to and without waiving the foregoing objections, denied. Mr. Larosiere denies that he has committed or conspired to commit any criminal acts, and further denies knowledge of any such acts committed by any purported "Gatalog Principals." Mr. Larosiere specifically denies the existence of any formal association or enterprise meeting the definition of "The Gatalog" as alleged by Defense Distributed.

47. **Objection**: Responding party objects to this request as vague, ambiguous, compound, and calling for a legal conclusion. The request improperly attributes legal positions and mental states to a loosely described collective that the requesting party elsewhere characterizes as an unincorporated association, yet fails to define in a coherent or consistent manner. The request further mischaracterizes the scope and applicability of the International Traffic in Arms Regulations ("ITAR") in a manner unintelligible to any attorney trained in reading the law.

Subject to and without waiving these objections, and expressly preserving the position that "The Gatalog" is not a legally cognizable entity and cannot form legal positions or intent. Given "The Gatalog" does not exist in the capacity articulated, the request is denied for want of knowledge.

48. **Objection**: The request is vague, compound, and calls for speculation regarding the intent or legal posture of an undefined collective ("The Gatalog"), which Counterdefendants deny is an existing entity or association with capacity to act or form legal intent. The term improperly aggregates conduct and positions of multiple individuals, and assumes the existence of shared intent or understanding of export compliance obligations among them.

Subject to and without waiving these objections:
Respondent lacks knowledge of whether any entity or person self-identifying as "The Gatalog" has or has ever had an export license under the ITAR regime, or whether such a license is intended to be obtained. Accordingly, Respondent denies any implication that he has willfully taken a position deeming the ITAR inapplicable or acted in knowing defiance of it.

49. **Objection**: This request is vague, assumes facts not in evidence, and calls for speculation about the actions or intentions of a purported entity ("The Gatalog") which Respondent denies exists as an organized association capable of holding or promoting views. The phrase "this view" is also ambiguous and undefined, rendering the request compound and unintelligible without further clarification.

Subject to and without waiving these objections:
Respondent denies that any real or legal entity known as "The Gatalog" exists to "advertise" or hold unified views, or that he has ever advertised the alleged view as a "feature" of any service or work. To the extent any individual hobbyist may have expressed opinions about export controls in public or online, those statements cannot be attributed to Respondent or any coordinated enterprise.

50. **Objection**: This request is vague, compound, and calls for a legal conclusion, including as to the interpretation and application of the International Traffic in Arms Regulations (ITAR) and 18 U.S.C. § 1343. It also assumes the existence of a "position" held by "The Gatalog," which Respondent denies exists as a cognizable legal entity. The request further presumes the commission of a federal crime and frames that presumption as a factual statement, which is improper in a request for admission.

Subject to and without waiving these objections:
Respondent denies that he or any purported association referred to as "The Gatalog" has committed wire fraud or violated ITAR or the Arms Export Control Act, and further denies that he or any such association has ever engaged in conduct indictable under 18 U.S.C. § 1343. Respondent also denies the existence of a unified or coordinated "position" on ITAR attributable to any collective enterprise.

51. **Objection:** Respondent objects to this request as compound, argumentative, and improper under Rule 36. It contains multiple subparts and assumes disputed facts and legal conclusions.

Subject to and without waiving the foregoing objections, Respondent denies any involvement in or knowledge of the alleged activities described in subparts (a) through (d). Respondent has no knowledge of the cited Product Development Lifecycle wiki page and expressly reserves all rights to challenge the authenticity, admissibility, and legal relevance of the alleged chat records and other materials referenced. Respondent reiterates that "The Gatalog" is not a legal entity, has no structure or leadership, and does not operate in the manner described.

52. **Objection**: Respondent objects that this Request is compound, vague, and calls for speculation regarding the alleged intent and statements of third parties. Respondent further objects to the inclusion of a purported quote lacking attribution or context.

Subject to and without waiving the foregoing objections, Respondent responds as follows: Denied. Respondent denies any involvement with or knowledge of the alleged ITAR violations or intent to promote the same. Respondent does not recognize the alleged statement attributed to Mr. Elik and has no knowledge of such a statement being made.

53. **Objection**: Respondent objects that this Request is compound, vague, and assumes facts not in evidence, including the existence of "The Gatalog" as a legal entity, and Respondent's participation in or knowledge of its purported internal decision-making. The Request also improperly attributes collective legal conclusions and intentions to Respondent individually.

Subject to and without waiving these objections, Respondent responds as follows:

Denied. Respondent denies holding or acting upon any such position regarding the applicability of the Commerce Department's EAR regulations, and has never taken any such position knowingly or intentionally, whether individually or on behalf of any group.

54. **Objection**: Respondent objects to this request as vague, compound, and argumentative. It improperly assumes the existence of an "EAR-compliant license or permission" regime applicable to "The Gatalog" without specifying what activities allegedly require such licensure. The request further presumes that "The Gatalog" is a legal entity capable of licensure, which Respondent denies.

Subject to and without waiving the foregoing objections, Respondent denies that he has ever acted in violation of the Export Administration Regulations or that he has engaged in any activity requiring a license under the EAR on behalf of "The Gatalog," which does not exist as an entity.

55. **Objection:** Respondent objects to this Request for Admission on the grounds that it is vague, overbroad, compound, and assumes facts not in evidence, including the existence of a legal entity or enterprise known as "The Gatalog," and the existence of "services" offered by such an entity. The Request further assumes legal conclusions regarding the applicability and nature of the EAR regime, and purports to characterize expressive activity in a misleading manner.

Subject to and without waiving these objections, Respondent denies that he has ever advertised any "view" regarding the EAR as a feature of any services, particularly not on behalf of a nonexistent enterprise.

56. **Objection.** This request is compound, argumentative, and calls for a legal conclusion regarding the applicability of federal regulations and the existence of alleged criminal conduct. It is also vague in its reference to "The Gatalog's position" and improperly assumes the existence of an organized legal entity. The request conflates regulations under the Export Administration Regulations (EAR) with those under the International Traffic in Arms Regulations (ITAR), despite the paragraph's stated focus on EAR applicability.

Subject to and without waiving the foregoing objections, Respondent denies that he or anyone he knows to be associated with "The Gatalog" has engaged in conduct that constitutes wire fraud under 18 U.S.C. § 1343 or violated ITAR. Respondent further states that he lacks knowledge sufficient to confirm whether the EAR regulations apply to the alleged conduct and specifically denies any personal involvement in the acts described.

57. **Objection:** Respondent objects to this request for admission as vague, compound, overly broad, and not susceptible to a simple admission or denial as required by Rule 36 of the Federal Rules of Civil Procedure. The request improperly assumes legal and factual conclusions—such as that "The Gatalog" is a legal entity, that any

particular content falls within 15 C.F.R. § 734.7(c), or that such content was distributed by Respondent—without identifying specific facts or evidence. The request also references third-party conduct and publications (e.g., "Rogue 9") with no foundation that Respondent had any involvement or knowledge.

Subject to and without waiving the foregoing objections, Respondent denies any knowledge of or involvement in the publication or distribution of the so-called "Rogue 9" files, denies that any files with which he has been involved have ever been found to fall under 15 C.F.R. § 734.7(c), and denies that he has committed any act constituting wire fraud under 18 U.S.C. § 1343. Respondent further denies the existence of "The Gatalog" as a legal entity capable of action, regulation, or liability.

58. **Objection**: Respondent objects to this request as compound, vague, speculative, and improper under Rule 36 of the Federal Rules of Civil Procedure. The request attempts to bundle multiple factual and legal conclusions—including intent, knowledge, and the conduct of third parties—into a single admission. It further calls for speculation about alleged statements made by another person and improperly characterizes Respondent's purported state of mind.

Subject to and without waiving these objections, Respondent denies having any knowledge or involvement in the alleged transfers, denies any recollection of the alleged statement by Mr. Elik, and denies that he expressed any belief that he or anyone else would not face consequences under the EAR. Respondent further denies the existence of any entity called "The Gatalog" as capable of forming intent or acting in concert as described.

59. **Objection**: Respondent objects to this request as vague, conclusory, and improper under Rule 36. It calls for a legal conclusion regarding whether alleged conduct constitutes "wire fraud" under 18 U.S.C. § 1343 and fails to specify any particular statements, timing, or participants. It also presumes the existence of a legally cognizable entity called "The Gatalog" with the capacity to devise or execute a scheme.

Subject to and without waiving these objections, Respondent denies any involvement in or knowledge of any scheme to defame or falsely disparage DEFCAD's business practices, and further denies that any such conduct occurred.

60. **Objection.** Respondent objects to this request as compound, argumentative, and improper under Rule 36. It seeks admission of numerous distinct factual assertions—each capable of being admitted or denied separately—under the guise of a single request. It also relies heavily on conclusory and inflammatory language, such as "defamatory," "false disparagement," and "tortiously interfere," which improperly presuppose legal conclusions. Subject to and without waiving these objections, Respondent states:

Denied**.** Respondent denies any participation in or coordination with any alleged scheme to defame DEFCAD or promote a "FEDCAD" meme as described. Respondent does not recall personally using the term "FEDCAD" and had no role in the creation, promotion, or commercial use of any such material. Respondent denies knowledge or involvement in any hacking attempts or security breaches related to DEFCAD and disputes the existence or applicability of any purported "Chief of Propaganda" position.

61. **Objection**. Respondent objects to this request on the grounds that it is vague and ambiguous, particularly as to the phrases "so consistent and successful" and "publicly received as the 'FEDCAD lawsuit,'" which lack any objective meaning or clear referent. Respondent further objects that the request is compound, incorporating multiple distinct assertions—including alleged trade libel, public reception, and encouragement to support third parties—making it improper under Rule 36(a)(2) of the Federal Rules of Civil Procedure. Respondent also objects on the ground that the request is argumentative and calls for speculation, especially with respect to public perception and intent of third parties unknown to Respondent.

Subject to and without waiving these objections, and based solely on present recollection and personal knowledge, Respondent states: Respondent does not recall the lawsuit being referred to as the "FEDCAD lawsuit," is not aware of any such consistent or successful trade libel campaign as alleged, and is not aware of any public encouragement to thank or support Respondent or MAF Corp in relation to this action.

62. **Objection:** Respondent objects to this request as vague, overbroad, compound, and improper under Rule 36. It bundles multiple alleged statements by a third party (John Elik) into one request, without specifying the exact language or platform used, and improperly seeks admission from Respondent about statements he did not make. It also calls for speculation and assumes facts not in evidence, including alleged motivations, the truth or falsity of third-party statements, and legal conclusions about defamation or trade libel. The request further mischaracterizes a lawsuit filed by Respondent as related to actions of other individuals, conflating the actions of various third parties with those of Respondent.

Subject to and without waiving the foregoing objections, Respondent states: Respondent did not publish the statements described in this paragraph and lacks knowledge sufficient to admit or deny whether the described statements were published by Mr. Elik or anyone else. Respondent does not recall any such posts or deletions, and does not understand the allegations as presented, as they are confusing, internally contradictory, and improperly framed for a request for admission.

63. **Objection:** Respondent objects to this Request on the grounds that it is vague, lacks specificity as to what precise statements are alleged, and impermissibly assumes facts not in evidence, including that Elik was acting "on behalf of The Gatalog." The Request also improperly seeks an admission based on statements

allegedly made by another person without providing a verbatim quote, citation, or context, and as such calls for speculation. The Request further fails to distinguish between conduct of third parties and any conduct or knowledge attributable to Respondent.

Subject to and without waiving the foregoing objections, and limiting response to matters within Respondent's personal knowledge: Respondent does not recall any such statement being made.

64. **Objection:** Respondent objects to this Request on the grounds that it is vague, compound, and assumes facts not in evidence, including the existence of a coordinated action by "The Gatalog," that Respondent was involved in any such act, and that the referenced image was "doctored." The Request fails to identify who specifically acted, what was said, or how the alleged coordination occurred. It improperly seeks an admission regarding the conduct of others without identifying the statements or conduct with sufficient specificity. The Request further mischaracterizes a Twitter post and its purported viewership and reactions without providing a citation or copy.

Subject to and without waiving the foregoing objections, and limiting response to matters within Respondent's personal knowledge: Respondent denies any personal involvement in creating any such image or message and lacks knowledge sufficient to admit or deny the remainder.

65. **Objection:** Respondent objects to this Request as vague, compound, and lacking specificity as to the alleged statements made, the medium in which they were made, and how they were "malicious" or "false." The Request improperly seeks an admission regarding the motives and conduct of a third party (Elik) and attributes those statements to "The Gatalog" without identifying any agency relationship or factual basis for attribution. The characterization of DEFCAD's legal positions and compliance measures as legitimate or not is a legal conclusion not properly the subject of a request for admission. The Request also calls for speculation and contains argumentative phrasing. Subject to and without waiving these objections, and limiting response to matters within Respondent's personal knowledge:

Response**:** Respondent lacks knowledge sufficient to admit or deny the statements allegedly made by Elik or the context in which they were made, and denies having made or authorized any such statements.

66. **Objection**: Respondent objects to this request on the grounds that it is vague, compound, and improperly assumes facts not in evidence, including that the alleged statement was made "on behalf of The Gatalog," that it concerned a specific and legally cognizable "round of EAR regulatory changes," and that Holladay had the

authority to speak for The Gatalog. Respondent further objects that the request seeks admission of a legal conclusion regarding the applicability of export control regulations and improperly attributes third-party statements to Respondent. Subject to and without waiving these objections, Respondent responds as follows:

Respondent lacks knowledge sufficient to admit or deny whether Holladay made any such statement in September 2024. Respondent denies having made such a statement himself or having authorized any such statement. Respondent further denies that any such statement, if made, was done on behalf of "The Gatalog" as a legal entity, and denies that such an entity exists.

67. **Objection**: Respondent objects to this Request for Admission on the grounds that it is vague, compound, and calls for a legal conclusion, including the improper demand for an admission to criminal conduct, in violation of Federal Rule of Civil Procedure 36(a)(5). The term "extortion" as used in the request is undefined, conclusory, and wrong. The request also improperly seeks to compel admissions regarding legal conclusions reserved for the Court.

Subject to and without waiving the foregoing objections, Respondent denies that "The Gatalog" exists as alleged or that any counterdefendant engaged in extortion as defined under 18 U.S.C. § 1951 or under any reasonable interpretation of that statute.

68. **Objection**. Respondent objects to this request as compound, vague, and not the proper subject of a request for admission under Rule 36. The request improperly attempts to summarize multiple allegations involving third parties—none of whom are alleged to be agents or representatives of Respondent—in a conclusory and legally charged manner. The request further seeks admission to statements and events allegedly involving John Elik and Jacob Duygu (a/k/a JStark) without any basis to assert that Respondent has personal knowledge or responsibility for them.

Subject to and without waiving the foregoing objections, Respondent denies having any knowledge of the alleged communications, threats, or conduct described, and denies participating in or authorizing any such actions.

69. **Objection**. Respondent objects to this request as compound, argumentative, and not the proper subject of a request for admission under Federal Rule of Civil Procedure 36(a)(1)(A). The request contains multiple factual allegations, characterizations, and legal conclusions that are improper for a single RFA and appear calculated to harass a third party.

Subject to and without waiving these objections, Respondent denies that Stroke is employed by MAF Corp, that she is compensated for any activity related to The Gatalog or DEFCAD, or that she engaged in any conduct on behalf of The Gatalog as alleged. Stroke is a personal friend of Respondent. Respondent believes that she has been

improperly targeted in this action so that Cody Wilson and his counsel can harass and misgender her.

Respondent further denies any knowledge of or involvement in any alleged campaign against DEFCAD users, denies any direction or control over Stroke's independent activity, and specifically denies any involvement in any alleged threats, harassment, or conduct described in this request.

Respondent has personal knowledge that a Defense Distributed employee, at the direction of Wilson and his attorney, filed a fraudulent workplace harassment injunction in Arizona based on false claims that Stroke was employed by Defense Distributed. That injunction was obtained through fraud and is not evidence of any wrongdoing by Respondent.

70. **Objection**: Respondent objects to this request as vague, compound, and argumentative, and to the extent it presumes the existence of "The Gatalog" as a cognizable legal entity or organized association-in-fact enterprise. Respondent further objects to the extent the request seeks to impute to Respondent responsibility for the independent speech or conduct of third parties. Subject to and without waiving the foregoing objections, Respondent states as follows:

Respondent denies having made or participated in any threats involving a crime of violence, including murder, against Cody Wilson. Respondent further denies any knowledge of any such threats by any person, and specifically denies that any conduct by Respondent was intended to intimidate or instill fear in Cody Wilson or interfere with his business activities.

71. **Objection**: Respondent objects to this request as vague, compound, assumes facts not in evidence, and is improper to the extent it seeks an admission concerning the conduct, knowledge, or intent of third parties not identified with reasonable specificity. Respondent further objects to the extent the request presumes the existence of "The Gatalog" as an enterprise or legal entity capable of agency, which Respondent denies. Respondent also objects to the extent the request seeks to impute statements of third parties to Respondent without any factual basis or legal justification.

Subject to and without waiving the foregoing objections, Respondent states as follows: Respondent denies knowledge of any such message being sent to Cody Wilson, denies directing or encouraging any such message, and denies that any individual is or was acting as Respondent's agent or on Respondent's behalf in connection with such communication.

72. **Objection**: Respondent objects to this request as vague, argumentative, speculative, and not the proper subject of a request for admission under Rule 36 of the Federal Rules of Civil Procedure. The request calls for a legal conclusion and seeks to characterize the subjective meaning or effect of an alleged third-party

statement, the authenticity and context of which are not established. Respondent also objects to the extent the request presumes the existence of "The Gatalog" as a unified entity capable of intent or agency, which Respondent denies.

Subject to and without waiving the foregoing objections, Respondent states as follows: Respondent lacks knowledge or information sufficient to admit or deny the characterization of the referenced message and denies that any such message was made at Respondent's direction, on Respondent's behalf, or by anyone acting as Respondent's agent.

73. **Objection**: Respondent objects to this request as vague, speculative, argumentative, and not the proper subject of a request for admission under Rule 36 of the Federal Rules of Civil Procedure. The request seeks a legal conclusion regarding criminal conduct and intent, relies on an unverified communication of unknown authorship, and improperly attributes the alleged conduct to Respondent through an entity—"The Gatalog"—whose existence and structure Respondent disputes. It further calls for speculation regarding the mental state of an unidentified third party and improperly assumes facts not in evidence.

Subject to and without waiving the foregoing objections, Respondent denies that they sent or directed the message described, and denies that any such conduct was taken on Respondent's behalf or by anyone acting as their agent. Respondent further denies that they or anyone acting for them threatened Cody Wilson or engaged in any conduct constituting a crime of violence.

74. **Objection**: Respondent objects to this request as vague, overbroad, speculative, and improper under Rule 36 of the Federal Rules of Civil Procedure. The request seeks an admission regarding an undefined "broader pattern" of conduct by a purported entity—"The Gatalog enterprise"—whose existence, structure, and legal coherence Respondent disputes. It is further objectionable to the extent it assumes facts not in evidence, lacks specificity as to time, actors, or acts, and seeks a legal conclusion regarding alleged criminal or tortious activity.

Subject to and without waiving these objections, Respondent denies any involvement in or knowledge of any such pattern of intimidation, and denies that any threat was made on Respondent's behalf or at their direction.

75. **Objection**: Respondent objects to this request as vague, compound, speculative, argumentative, and improper under Rule 36 of the Federal Rules of Civil Procedure. The request impermissibly assumes the existence of a legally cognizable "Gatalog enterprise," an "ongoing pattern of racketeering activity," and specific criminal acts including "coordinated campaigns of online harassment" and "doxxing" without identifying any actors, timeframes, or specific conduct attributable to Respondent. It

also seeks a legal conclusion regarding alleged RICO violations and uses inflammatory language more suited to advocacy than discovery.

Subject to and without waiving these objections, Respondent denies any participation in or knowledge of such alleged conduct and further denies that any such activity, if it occurred, was done at Respondent's direction, encouragement, or on Respondent's behalf.

76. **Objection**: Respondent objects to this request as legally improper, vague, compound, argumentative, and calling for a legal conclusion in violation of Rule 36 of the Federal Rules of Civil Procedure. The request mischaracterizes the law, presumes facts not in evidence, and asks Respondent to admit the legal applicability of 18 U.S.C. § 1959 to third-party conduct. It also improperly assumes the existence of a "racketeering enterprise," that any alleged threat was made "as consideration" for pecuniary value, and that Respondent had any knowledge of or involvement in such acts.

Subject to and without waiving these objections, Respondent denies any involvement in, knowledge of, or legal responsibility for any threat as described, and further denies the existence of a racketeering enterprise as alleged.

77. **Objection**: Respondent objects to this request as vague, compound, assumes facts not in evidence, and calls for a legal conclusion in violation of Fed. R. Civ. P. 36. It improperly assumes: (1) that "The Gatalog" exists as a legal entity capable of employing individuals; (2) that John Lettman is employed as an "IT Director" by such an entity; and (3) that any alleged actions constitute "hacking" or a violation of 18 U.S.C. § 1030(a)(5)(A). The request also presumes Respondent's knowledge or control over alleged conduct of a third party, which is not supported.

Subject to and without waiving these objections, Respondent denies any knowledge of or involvement in the alleged conduct.

78. **Objection:** Respondent objects to this Request as vague, overly broad, and improperly compound, combining multiple distinct factual assertions and legal conclusions into a single request. Respondent further objects to the extent the Request calls for speculation about the conduct or intent of third parties or imputes their conduct to Respondent without foundation. Subject to and without waiving the foregoing objections, and limited to Respondent's personal knowledge:

Response: Denied. Respondent lacks knowledge of Elik directing or soliciting others to hack the DEFCAD website, or of him falsely or maliciously reporting such hacking. Respondent also denies any such conduct occurred on behalf of "The Gatalog" as alleged.

79. **Objection**: Respondent objects to this Request on the grounds that it is vague, compound, and assumes the existence of an entity called "The Gatalog" as a singular, legally cognizable actor capable of executing cyberattacks. It further assumes as true that Distributed Denial of Service (DDoS) attacks occurred, and that Respondent or any Counterdefendant had any involvement. The Request also calls for speculation regarding the motivations of third parties and includes legal conclusions about causation and intent. Subject to and without waiving the foregoing objections, Respondent responds as follows:

Respondent denies any involvement in, or knowledge of, any DDoS attacks against Mr. Wilson, his websites, or his so-called "Black Flag White Paper." Respondent further denies that any Counterdefendant directed or participated in such acts. Respondent is aware that Mr. Wilson published a manifesto under that title containing an incorrect and sophomoric reading of *Star Athletica* to justify his unlawful copying of digital content, but this has no bearing on the conduct alleged. Respondent denies the allegations to the extent they attribute any such actions to him or any Counterdefendant.

80. **Objection**: Respondent objects to this request as vague, conclusory, and speculative, particularly in its use of the phrase "claims credit," which is undefined and could encompass sarcasm, misrepresentation, or secondhand allegations. The request also improperly assumes facts not in evidence and appears to be based on hearsay.

Subject to and without waiving the foregoing objections, Respondent states that he lacks knowledge or information sufficient to admit or deny whether John Lettman has ever claimed credit for any cyberattacks, and on that basis denies the request.

81. **Objection:** Respondent objects to this request as vague, overly broad, and not properly limited to matters within Respondent's personal knowledge. It also improperly assumes facts not in evidence and calls for admission of conduct by third parties over whom Respondent has no control or authority. Subject to and without waiving these objections, Respondent further responds as follows:

Response: Denied. Respondent has no knowledge of any such conduct by John Lettman and has never approved, encouraged, or participated in any hacking of David Gingras's website.

82. **Objection:** Respondent objects to this Request for Admission as improper under Federal Rule of Civil Procedure 36. The request is compound and contains numerous discrete factual and legal assertions, each of which should have been separately stated. The request further calls for legal conclusions, including the existence of an "enterprise," "racketeering activity," and "joint and several

responsibility," which are not proper subjects of a request for admission. The request is also vague and ambiguous in its use of the phrase "the activities of The Gatalog," which lacks a fixed or coherent meaning and presumes the existence of a defined entity where none has been established. Subject to and without waiving these objections, and limiting the response to matters within Respondent's personal knowledge, Respondent denies the request. Subpart (a): Denied. Respondent has not conducted or participated in the conduct of any so-called Gatalog enterprise through any alleged pattern of racketeering activity. Respondent has not operated as part of any unified business enterprise with the named individuals or entities. Respondent denies any shared unlawful objectives or commingling of assets. Respondent did not act in concert with the named individuals or entities to interfere with Defense Distributed's business.

83. **Objection:** Respondent objects to this request as vague, speculative, and improperly compound. It assumes the existence of "The Gatalog" and "The Gatalog Principals" as cohesive legal entities engaged in unspecified "wrongdoing," which Respondent denies. It further presumes personal knowledge of Defense Distributed's finances and internal accounting, which Respondent lacks. The request improperly calls for legal conclusions regarding causation and damages, which are not appropriate for requests for admission under Rule 36.

Subject to and without waiving the foregoing objections: Respondent lacks knowledge sufficient to admit or deny any assertion regarding Defense Distributed's alleged financial losses, and specifically denies having engaged in or directed any conduct that caused Defense Distributed to suffer financial damages. Respondent also does not recognize "The Gatalog" as a distinct legal entity or enterprise, and rejects the characterization of any activity attributed to it as "wrongdoing." Accordingly, the request is denied to the extent it implies that Respondent is responsible for any such damages.

84. **Objection:** Respondent objects to this request as vague, speculative, and improperly compound. It presupposes the existence of "The Gatalog" and "The Gatalog Principals" as organized entities capable of wrongdoing, which Respondent does not concede. It also calls for legal conclusions regarding causation, irreparable harm, and market effects—matters not properly the subject of a request for admission under Rule 36. Additionally, the terms "damaged market reputation," "goodwill," "disruption of business relationships," and "lost competitive advantages" are undefined, subjective, and overly broad.

Subject to and without waiving the foregoing objections: Respondent lacks knowledge sufficient to admit or deny the specific allegations of harm to Defense Distributed and denies engaging in any conduct intended to or that could reasonably be expected to

cause irreparable harm. Respondent further denies responsibility for any such alleged harms.

85. **Objection:** Respondent objects to this request as vague, speculative, and calling for legal conclusions regarding the appropriateness of injunctive relief, the existence of a "pattern of wrongful conduct," and the nature of future harm. These are not proper subjects for a request for admission under Rule 36. The request also improperly presupposes the existence of "The Gatalog" as an organized legal entity acting through Respondent, which is not conceded. Terms such as "repeated disruptions," "irreparable harm," and "escalating risk" are subjective, undefined, and overly broad.

Subject to and without waiving the foregoing objections: Respondent denies engaging in any wrongful conduct and denies that any conduct attributable to Respondent poses an ongoing threat of harm to Defense Distributed. Respondent lacks knowledge sufficient to admit or deny the alleged future harms described and denies any responsibility for such alleged consequences.

/s/ Zachary Z. Zermay
*Attorney for Matthew Larosiere*