UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE No.: 6:24-cv-01629-AGM-LHP

MATTHEW LAROSIERE,

*Plaintiff*,

v.

CODY RUTLEDGE WILSON, DEFCAD, Inc., DEFENSE DISTRIBUTED, and DIOSKOUROI LLC,

*Defendants*.

_______________________________________/

**JOINT NOTICE RE: CONFERRAL ATTEMPTS CONCERNING PLAINTIFF'S DOC. 156 MOTION TO COMPEL**

The parties, Plaintiff Matthew Larosiere and Defendants Cody Rutledge Wilson, DEFCAD, Inc., and Defense Distributed (collectively referred to as "Defendants"), met and conferred at Defendants' Counsel's office in Orlando, Florida. The conference began on November 24, 2025, at approximately 11:06 a.m. and continued until approximately 4:47 PM, after which the parties agreed to continue the conference the following day. The conference continued on November 25, 2025, and concluded at approximately 2:23 PM. Defendants agreed to produce additional documents on December 1, 2025. Unfortunately, the parties were only able to resolve a handful of the requests at issue. Those requests still at issue are from Defendants' responses to Plaintiff's interrogatories and requests for production.[1]

## ISSUES REMAINING FOR THIS COURT'S RESOLUTION

Following the Court-ordered in-person conferral, a significant number of Plaintiffs' Requests for Production remain in dispute across all three Defendants. The disputed requests fall into one or more of four recurring categories of objection asserted by Defendants: (1) relevance and proportionality; (2) temporal scope; (3) Defendants' unilateral re-definition of the terms "copyright" and "works"; (4) refusal to produce documents or answer interrogatories based on an asserted lack of possession in a respondent's "personal capacity," resulting in Wilson pointing to a Defendant Entity, and entities pointing to one another, as well as other, non-categorical issues. It is Plaintiff's position that Defendants' responses to all

[1] For purposes of brevity, the parties will refer to the responses by an abbreviation for the party ("W" for Wilson, "DD" for Defense Distributed, and "DC" for DEFCAD, Inc.), followed by an abbreviation for the type of response ("ROG" for interrogatories, and "RFP" for requests for production), followed by the request number. As an example, Wilson's response to request for production Number 1 would be W-RFP-1.

of the below-identified requests are deficient. Defendants' position that their objections are valid as written.

## I. RELEVANCE AND PROPORTIONALITY (Issue 1)

Defendants have raised Issue 1 objections to the following requests:

a. W-RFP-1–5, 8–27, 33–34, 39–45, 55, 57–62, 67–71, 82–83, 100–107, 110–113; W-ROG-1, 2, 5-7;
b. DD-RFP-1–11, 13, 17; DD-ROG-1–3;
c. DC-RFP-1–4, 6–14, 16–17, 19–20; DC-ROG-1–5.

## II. TEMPORAL SCOPE DISPUTES (Issue 2)

Defendants have raised Issue 2 objections to the following requests:

a. W-RFP-1–5, 8, 10–13, 17, 19–27, 33, 39–42, 48, 55, 57–62, 67–71, 82, 83, 100–107, 110–113; W-ROG-2, 6;
b. DD-RFP-1–11, 13, 17; DD-ROG-1–3;
c. DC-RFP-1–4, 6–14, 16, 17, 19, 20; DC-ROG-2, 3.

## III. REDEFINITION OF "COPYRIGHT" AND "WORKS" (Issue 3)

Defendants have raised Issue 3 objections to W-RFP-4, 5, 8, 32, and 33.

## IV. POSSESSION, CUSTODY, OR CONTROL (Issue 4)

Defendants have raised Issue 4 objections to the following requests:

a. W-RFP-4, 5, 8–32, 36–38, 39–47, 49–57, 58–62, 63–66, 67–72, 73–78, 79–93, 94–99, 110–114; W-ROG-1, 3, 5, 7;
b. DD-RFP-11; DD-ROG-1–3;
c. DC-RFP-14. DC-ROG-1-5

## V. OTHER ISSUES

In addition to the request-specific disputes above, Defendants' December 1 production consisted of over 1,500 unindexed PDF files, with no indication of which documents correspond to which requests[2]. As a result, plaintiff was forced to spend substantial time to carefully comb through these documents and associate them with specific requests. Defendant

[2] Defendants indicated they would provide a chart which would relate the 1,500 unindexed files two weeks ago, and maintain that this chart is still forthcoming. Plaintiff maintains this fails Rule 34(b)(2)(E).

Wilson's answers also raise work product and privilege objections, some of which Plaintiff believes to be unsupportable.

**PLAINTIFF'S POSITION**[3]

All above-identified responses are deficient. Even after combing through Defendants' unsorted, unitary production of more than 1,500 documents, only twenty-one requests for production across all Defendants were satisfied. Defendants' heretofore complete non-production and evasive, incomplete responses unfairly force Plaintiff to endeavor, at great expense, to compel the most basic discovery. Plaintiff cannot, within the space allotted, analyze each deficient request. However, because each non-response and non-production contained the same above-identified objections, resolution of the issues by the objection category identified above will resolve the matter. If full briefing on the deficiencies is required, Plaintiff respectfully requests this Honorable court order it.

Plaintiff's discovery requests seek core categories of information necessary to prosecute his claims, including: (1) records to establish Defendants' gross revenue; (2) communications concerning the Works and Plaintiff; (3) documents reflecting control among Defendants' entities; (4) materials concerning knowledge and intent; (5) records of Defendants' use of the Works; and (6) documents bearing on alter-ego factors.

Though only 21 requests appear to have been responded to, few responses contain a 26(g) certification[4]. Plaintiff further believes several requests are simply not answered. W-

---

[3] Plaintiff notes he provided Defendants with his draft of this notice on December 10th, 2025. Defendants sent a 24-page document, with their position section being over 10 pages long, on 4:35 PM on December 15, the due date, and asked that it be returned in an hour. Then, at 5:29PM, Defendants sent updated interrogatory responses, which maintain the same deficiencies as the earlier responses, but now stating they lack information "related to the works at issue." As to the ESI protocol Defendants suddenly invoke, Defendants offered a self-serving ESI protocol, which Plaintiffs did not agree to, believing the rules are sufficient.

[4] W-RFP-4, 5, 8, 10-18, 20, 21, 32, 38, 42, 55, 57, 62; DC-RFP-20; DD-RFP-17.

ROG-4 is based on Defendant's "recollection, which will not allow a complete answer," (Doc. 156-1 at 3). Various other requests, such as W-RFP-55, W-RFP-57, W-RFP-62, W-RFP-73, W-RFP-74, W-RFP-93, and DD-RFP-14, purport to have had supplemental materials produced, but after Plaintiff's multi-day effort to decipher Defendant's unsorted, uncategorized production, no materials responsive to these requests were located.

## A. DEFENDANTS' RELEVANCE OBJECTIONS ARE IMPROPER (ISSUE 1)

> Relevance in the context of discovery has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. … The Rules strongly favor full discovery whenever possible.

*Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1274 (11th Cir. 2021) (cleaned up). The Supreme Court has likewise held that the outer limit of discovery bars only inquiries conducted in bad faith or encroaching on privileged domains. *Hickman v. Taylor*, 329 U.S. 495, 507–08 (1947). None of those concerns apply here.

Defendants' relevance objections also fail because the evidence Plaintiff seeks goes directly to willfulness—a core element of Plaintiff's claims and a matter the Eleventh Circuit has held must be proven through an examination of the defendant's conduct, and motives. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 851 (11th Cir. 1990) ("defendants must not be able to sneer in the face of copyright owners and copyright laws."; "'Willfully,' in the context of § 504(c)(2), means that the defendant 'knows his actions constitute an infringement'"). Wilson wrote a manifesto detailing his contempt for copyright and, after demonstrating he had actual notice of the infringement, engaged in a harassment campaign against Plaintiff and his friends. Yet, Defendants refuse to produce documents concerning these actions. These requests relate to Plaintiff's alter-ego claims. The extent to which Wilson directed the complained-of actions by his co-defendants, his knowledge of the

complained-of conduct, the steps he took after learning of that conduct, and conduct concerning asset diversion and dissipation all relate to alter-ego claims. Plaintiff offered repeatedly to narrow and clarify the requests at the conference to no avail. *See*, *e.g.*, Nov. 25 Tr. at 46:20-50:17. Finally, the requests seek financial records necessary to establish gross revenue and examine the deductions and attributions Defendants may later claim—core elements of 17 U.S.C. § 504(b). *See Montgomery v. Noga*, 168 F.3d 1282 (11th Cir. 1999).

## B. DEFENDANTS' TEMPORAL OBJECTIONS ARE IMPROPER (ISSUE 2)

Defendants insist on a 2022 cutoff, but the Amended Complaint alleges conduct beginning in 2018—including Wilson's commingling of funds, shared cryptocurrency accounts, and structural consolidation among the Defendant entities. These allegations form the basis of the alter-ego theory and describe a continuous pattern that cannot be truncated without distorting the evidence. *See Robbins v. Camden City Bd. Of Educ.*, 105 F.R.D. 49 at 63 (D. N.J. 1985) ("Courts have commonly extended the scope of discovery to a reasonable number of years prior to the [] alleged illegal action.") (collecting cases).

Here, discovery back to 2018 is asked only in specific requests directly tied to alter-ego, and willfulness. 2018 is well within the normal temporal scope recognized by courts. Insofar as some discovery requests are not specifically date-limited, the substance of the requests sufficiently limit them.[5] Defendants unreasonably assert a blanket cutoff.[6]

## C. DEFENDANTS' REDEFINITIONS ARE IMPROPER (ISSUE 3)

---

[5] For example, Defendants objected on this ground to requests for copies of the works at issue in Defendants' possession, custody, or control. Nov. 24 Tr. pp. 13-14 ("We're asking for copies of the works at issue. The works that existed for a definite period of time.").

[6] *See*, (Nov. 24 Tr. at 36:13-19). (When asked whether Defendant emailing one of his employees to ignore the copyright act because "that law does not apply to me," on December 31, 2021 would reasonably bear on the claims at issue, Defense counsel responded "I don't think it does.").

Defendants' responses are improper because they do not answer the discovery requests as written. Defendants rewrote the terms "copyright" and "Works" to impose self-serving limitations not found in the requests. Under Rule 37(a)(4), an evasive or incomplete response is treated precisely the same as a failure to respond. Defendants' unilateral narrowing fits squarely within Rule 37(a)(4)'s text: they have answered different requests of their own creation. The absurdity of Defendants' redefinition is manifest in W-RFP-32, which asks for documents "reflecting any inquiry into whether each work at issue in this case[] was, is, or could be, protected by copyright." Defendants' re-definitions transformed this into the absurd question of whether the works at issue were protected by the works at issue. *See* (Nov. 24 Tr. pp. 113:19–117).

### D. DEFENDANTS' REDIRECTION IS IMPROPER (ISSUE 4)

Wilson, in response to many requests, asserts he lacks material "in his individual capacity" and points to the business entity Defendants, who then sometimes point to one-another. Defendant Wilson also objected on this ground to interrogatories, suggesting he—as principal of the entities he admits to owning[7]—may divorce what he knows in his individual and business capacities.[8] With respect to both, this is improper.

i. *Defendants May Not Avoid Production*

Defendants cite the unpublished *Green v. Fiveash*, ignoring that opinion "finds no authority to support [their] position that [their] discovery obligations are limited to information [they] learned outside of [their] role as a shareholder or director of [the entities.]"

---

[7] *See* W-ROG-3, *see also* Doc. 121-4 pp 2 ("I am the sole owner of of [*sic*] DEFCAD, Inc., and manage its day-to-day operations through Defense Distributed. … Ultimately, I am the leader and responsible managerially for the decisions they make.").

[8] See Nov. 25 tr. Pp. 133:9-138. (LAROSIERE: "Is it your position that a human person can have separate cases of knowledge in their capacity as a corporate representative and as an individual?" LEITNER: "It depends on the corporation or the entity.").

No. 3:18CV2393-MCR-HTC, 2019 WL 8063985, at *3 (N.D. Fla. Sept. 11, 2019). *Green* concerned a shareholder where the documents were not "[hers] to produce." This case is different. Wilson admits to owning each defendant, and has categorically refused to identify anyone else who may maintain records. To suggest an individual who controls a web of entities can force a Plaintiff into an expensive game of "red rover" with discovery would "thwart[] the broad discovery scope of Rule 26 to say the least" and cannot be correct. *Commodity Futures Trading Comm'n v. Midland Rare Coin Exchange Inc.*, No. 97-7422-CIV, 1999 WL 35148749 (S.D. Fla. July 30, 1999).

"Under Fed.R.Civ.P. 34, control is the test with regard to the production of documents. Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand." *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984); *Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 470–71 (S.D. Fla. 2011) (allowing discovery based on a "practical ability to obtain" responsive documents).

*Searock* concerned documents which were lost in a sunken vessel, and the Court held "that the primary dispositive issue is whether Stripling made a good faith effort to obtain the documents over which he may have indicated he had 'control' in whatever sense, and whether after making such a good faith effort he was unable to obtain and thus produce them." *Id*. at 654. Unlike the Defendant in *Searock*, Defendant Wilson made no representations regarding his attempt to obtain anything the subject of any request he felt "better directed" to one of his companies he admits he owns. *See* W-ROG-3. This is not a good faith discharge of his discovery obligations, especially where Wilson has previously turned over materials from his entities. (Doc. 138-2 B-86–107), *supra* n. 7.

This is especially important to W-RFP-28–31, 36, 37, 53, 54, 56, 66, 72, 87–91, 94–99, and 114, where Defendants produced nothing and did not object on any ground other than suggesting the request was "better directed" elsewhere. Most critically, W-RFP-66, which requests information for every work at issue in the case concerning how exactly the underlying files wound up on Defendants' website(s). Defendants waived objections by failing to assert them timely, despite Defendants asserting unparticularized overbreadth and "beyond the scope" objections for the first time at the conference. *See* Nov. 25 Tr. 55:23–56:19.

ii. *Defendants May Not Avoid Interrogatories*[9]

Defendant's response that, "in his individual capacity," he lacks information about his own business entities, and that the interrogatory is "better directed to the entities," is inconsistent with Rule 33(b)(1)(A). Courts uniformly hold that the rules require a party provide all information reasonably obtainable to it. *See Cont'l Illinois Nat. Bank & Tr. Co. of Chicago v. Caton*, 136 F.R.D. 682, 684 (D. Kan. 1991) ("The answering party cannot limit his answers to matters within his own knowledge and ignore information immediately available to him or under his control.").

Defendants' only concession during the conference was that they would produce responsive documents *only* to the entities the law firm Wilson Elser represents.[10] *See* Nov. 25 Tr. 31:9–23. But this is not what the rules require. Because the Defendant controls the entities, the information is in his control for discovery purposes.

**E. OTHER ISSUES**

i. *Privilege and Work Product*

[9] Defendants' counsel indicated they would withdraw these objections as they relate to interrogatories in their December 1 production, but before December 15, 2025, never did.

[10] After reviewing the unsorted documents provided on December 1, not even this was done.

Wilson asserts attorney-client privilege and work product privilege for communications between himself and his employee, Garret Walliman. Attorney–client privilege does not attach to communications that occur solely among non-lawyers. *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). In any event, the privilege log is facially deficient, as its two-word descriptions of withheld documents do not "enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5).

Wilson asserts his communications with graphic artist Sara Westman are work product. However, Westman is mentioned nowhere in the privilege log, and this contradicts Wilson's response to Elik's RFP 13, where Wilson mentions to Westman "continued discussion" of Plaintiff's copyrighted works. "A party that fails to submit a privilege log is deemed to waive the underlying privilege claim." *In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001).

ii. *Missing Items Previously Indicated*

An additional issue, relates to Defendant's previous responses to RFPs served by ex-counterdefendant Elik. On these, former counsel Reynal indicated that Defendants possessed millions of messages on their Slack chat which may be responsive to certain requests. *See* (Doc. 138-2 B86–107). Because Defendants mooted Elik's motion to compel, many of these requests were reiterated in Plaintiff's RFPs. Yet Defendants did not produce a *single* message from its Slack chat, with many requests Defendants previously claimed "voluminous" documentation were left unresponded. *Compare, e.g.*, (Doc. 138-2 at B89, 90) *with* W-RFP-5. Plaintiff is left with no explanations other than that a diligent search was not performed, or that these materials were intentionally withheld.

## **F. CONCLUSION**

Plaintiff respectfully requests that the Court overrule Defendants' objections and enter an order compelling full and complete responses to each request identified above.

**DEFENDANT'S POSITION - Introduction**

Defendants submit this response to Plaintiff's Motion to Compel to clarify what remains in dispute and to explain why Plaintiff's sweeping demands should be largely denied, narrowed to what is relevant and proportional, and sequenced under Federal Rule of Civil Procedure 26(b)(1). After two days of conferrals and a 1,500-page production, only four requests were resolved. Plaintiff refuses to narrow or sequence discovery and continues to pursue broad personal, financial, third-party, and character evidence untethered to the pleadings and disproportionate to the needs of this case. *Id.; see also In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-MD-2924-ROSENBERG/REINHART, 2020 U.S. Dist. LEXIS 172695, at *19 (S.D. Fla. Sep. 16, 2020).("The court... has the authority to confine discovery to the claims and defenses **asserted in the pleadings**, and... the parties... have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.")(emphasis added).

Plaintiff identifies five overarching issues: relevance and proportionality, temporal scope, definitions of "copyright" and "Works," party-specific discovery obligations and control, and privilege logging. Each is addressed below, along with the status of production organization, ESI, and a practical path forward.

I. Relevance and Proportionality

Discovery must be both relevant to the claims and defenses as pleaded and proportional to the needs of the case. Rule 26(b)(1) authorizes courts to confine discovery to the claims and defenses asserted in the pleadings and makes clear there is no entitlement to

discovery to develop new claims or defenses. This action concerns claims of copyright infringement under 17 U.S.C. § 501 based on alleged reproduction, distribution, and sale of Plaintiff's registered works through Defcad.com, Ghostguns.com, and related channels. Plaintiff also pleads willfulness against all defendants and asserts false designation of origin and unfair competition under 15 U.S.C. § 1125(a) and unauthorized publication of name or likeness under Fla. Stat. § 540.08. Doc. 43. Despite these discrete pleaded theories, Plaintiff invokes broad discovery maxims and pursues subject areas that bear no meaningful connection to the specific works, alleged infringement periods, or claimed damages.

Defendants have produced extensively and conferred in good faith. What remains at issue are categories of requests that are facially overbroad in subject matter and time, seek highly sensitive personal and third-party information, and are not tied to the works at issue, the alleged infringement periods, the relevant custodians or systems, or any cognizable damages theory. Appendix summarizes the overreach. Here, any financial discovery should be phased and limited initially to high-level revenue summaries tied to the works and periods at issue, with any expansion considered only after targeted conferral. Likewise, any ESI searching should be conducted under a targeted protocol that identifies proportional custodians, channels, date ranges, and search terms calibrated to the pleaded works and timeframes. Plaintiff offers no tailoring, and demands unbounded production.

II. Temporal Scope

Plaintiff seeks to expand the timeframe to 2018 based on broad allegations rather than work-specific needs. The operative pleading identifies sixteen copyright registrations—VA0002381513, TX0009358088, VA0002385899, VA0002381769, VA0002385901, TX0009372199, TX0009372196, TX0009403056, TX0009413646, VA0002412508,

VA0002422527, TX0009412695, VA0002418947, VA0002418589, TX0009429254, and TX0009429253—that Plaintiff allegedly owns and that Defendants allegedly displayed without permission. The subject works were created and/or published in 2022. Discovery should therefore track the alleged infringement periods for those discrete works with reasonable margins, not a blanket pre-2022 expansion. A wholesale 2018–2022 timeframe is disproportionate, particularly for categories divorced from any claimed damages or conduct.

III. Definitions of "Copyright" and "Works"

Plaintiff contends Defendants "redefined" terms like "copyright" and "Works." Defendants properly anchored definitions to the pleaded works and claims to avoid ambiguity and overbreadth. Plaintiff's definitions, by contrast, attempt to expand discovery beyond the sixteen registrations he pleaded by injecting nine additional registrations into the definitions. *See e.g.,* Doc. 43 at ¶¶104–259. The Rules permit objection to vague or overbroad definitions, and discovery should be tethered to the pleaded "copyrights-in-suit."

IV. Possession, Custody, or Control; Personal vs. Entity Responses

As it concerns the Requests for Production, Plaintiff seeks to treat all Defendants as a single responder and to compel Mr. Wilson, in his individual capacity, to retrieve corporate materials beyond his personal custody and control. That position is incorrect. Courts deny efforts to obtain entity documents through an individual shareholder or officer sued solely in an individual capacity. *See Green v. Malinda Fiveash HKD Props.*, U.S. Dist. LEXIS 228196 at *9-10 (N.D. Fla. Sept. 11, 2019). Defendants have identified responding parties, explained custodial sources, and proposed reasonable custodians proportional to the issues. Plaintiff has declined every offer of resolution. Specifically, in an effort to resolve this issue, Defendants offered to produce responsive materials from Defense Distributed and DEFCAD, Inc., both

named parties represented by the same counsel. Plaintiff refused, insisting that Mr. Wilson must produce across any corporation, business, or entity "irrespective of capacity."

With respect to interrogatories, Mr. Wilson has withdrawn any objections premised on a lack of information in his individual capacity and has served amended answers. A November 25, 2025, email memorializing that withdrawal is attached as **Exhibit A.** It is unclear why Plaintiff is re-raising the issue.

V. Organization and Labeling of Production

Plaintiff criticizes Defendants' December 1 production as "unindexed" and duplicative. Rule 34 authorizes production as kept in the ordinary course, which is how Defendants produced. During the December 2, 2025, meet-and-confer call, Defendants agreed to provide a reasonable directory-level mapping of which document families are responsive to which requests. Plaintiff's omission of that agreement from his submission to the Court is disappointing, particularly given the Court's prior addressal of this type of issue. *See* Dkt. 113 at 9:17-21; 13:12-23:25.

As for duplication, the absence of an agreed ESI protocol necessarily increases the number of duplicative artifacts; files with even minor metadata variations cannot be reliably deduplicated across disparate sources. Defendants have repeatedly requested that Plaintiff engage in a reasonable ESI protocol; Plaintiff has refused, asserting an unfounded belief that an ESI protocol would be used to avoid production. The lack of protocol is the principal driver of any duplication issues.

VI. Privilege, Work Product, and the Privilege Log

Plaintiff raises privilege-log concerns for the first time in this Notice. The issue was not raised in prior conferrals and the parties have not met and conferred on this topic.

Substantively, Defendants properly asserted attorney-client privilege and work product under Rule 26(b)(3), including where non-lawyer agents assisted counsel in rendering legal advice. Communications generated for the purpose of obtaining or transmitting legal advice are not stripped of privilege because their authors or recipients are not attorneys. *In re Denture Cream Prod. Liab. Litig*., 2012 U.S. Dist. LEXIS 151014 at *13 (S.D. Fla. Oct. 18, 2012). Nor is it unusual to see non-attorney communications on a corporate privilege log; corporate decision-making often involves sharing privileged communications among multiple employees, including non-lawyers, without waiver. *Id*. Further, the log entries are not "two-word" placeholders. Most entries reflect communications between Mr. Wilson and legal counsel regarding case strategy, with sufficient detail to assess the claim without revealing privileged substance. If the Court desires enhancements to particular entries, Defendants are prepared to meet and confer promptly and supplement as needed.

VII. Slack and Other ESI

Defendants have not refused to collect Slack or other ESI. Discovery is ongoing, and Defendants understand their obligation to supplement promptly. Nevertheless, Plaintiff's refusal to engage in proportional parameter, including search terms, tied to the pleaded works and alleged infringement periods has greatly hindered timely and efficient production. Defendants have circulated a proposed ESI protocol designed to facilitate an efficient, targeted production that addresses Slack exports and other collaborative platforms. Plaintiff has refused to enter any protocol, which has made collection and de-duplication less efficient and more burdensome without any countervailing benefit.

**VII CONCLUSION.**

Defendants have conferred extensively and produced in good faith. Plaintiff's motion discards proportionality and seeks undifferentiated, expansive discovery across personal, financial, third-party, and device-level domains untethered to the pleaded works, timeframes, Defendants respectfully submit denial of the motion is warranted and further submits that production is not feasible without a targeted scope, sequencing, and safeguards outlined above: phased financial discovery, temporal limits aligned to the alleged infringement periods, definitions anchored to the pleadings, party-specific search and certification obligations, and a negotiated, proportional ESI protocol governing production.

Respectfully submitted,

DATED: December 15, 2025

*/s/ Zachary Z. Zermay*
Zachary Z. Zermay, Esq.
Fla. Bar № 1002905
*Zermay Law, P.A.*
1200 Fourth Street, #1102
Key West, FL 33040
Email:
zach@zermaylaw.com
Tel: (305) 767-3529
*Lead Counsel for Plaintiff Matthew Larosiere*

*/s/ Leia V. Leitner*
Leia V. Leitner, Esq.
Fla. Bar № 105621
*Wilson Elser Moskowitz Edelman & Dicker*
111 N Orange Ave Ste 1200
Orlando, FL 32801-2361
Email:
leia.leitner@wilsonelser.com
Tel: 407-203-7599
*Counsel for Cody Wilson, et al.*