Page 1

1                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
2                     ORLANDO DIVISION
3                CASE NO:  6:24-CV-01629
4    MATTHEW LAROSIERE,
5         Plaintiff,
6    vs.
7    CODY RUTLEDGE WILSON, DEFCAD, INC.,
     DEFENSE DISTRIBUTED, DIOSKOUROI, LLC,
8    DAVID SCOTT GINGRAS, FEDERICO REYNAL
     and CHARLES FLORES,
9
          Defendants.
10
     _____/
11
                   ATTORNEY MEET AND CONFER
12
13   DATE:               NOVEMBER 24, 2025
14   TIME:               11:06 A.M. - 4:47 P.M.
15   PLACE:              111 NORTH ORANGE AVENUE, SUITE 1200
                         ORLANDO, FLORIDA 32801
16
     REPORTED BY:        JOANNE HAHN, COURT STENOGRAPHER
17                       NOTARY PUBLIC
18
19
20
21
22
23
24
25

```
                                                     Page 2

 1    A P P E A R A N C E S:
 2    MATTHEW LAROSIERE, ESQUIRE
      OF: 6964 Houlton Circle
 3        Lake Worth, Florida  33647-8744
          larosieremm@gmail.com
 4
      AND
 5
      ZACHARY ZERMAY, ESQUIRE
 6    OF: Zermay Law
          2000 Coral Way, Apartment 1115
 7        Coral Gables, Florida  33145-3239
          zach@zermaylaw.com
 8
            APPEARING ON BEHALF OF THE PLAINTIFF
 9
      LEIA LEITNER, ESQUIRE
10    AMARIS GYEBI, ESQUIRE
      OF: Wilson Elser Moskowitz Edelman & Dicker
11        111 North Orange Avenue, Suite 1200
          Orlando, Florida  32801
12        leia.leitner@wilsonelser.com
13          APPEARING ON BEHALF OF THE DEFENDANTS
14
15
16
17
18
19
20
21
22
23
24
25
```

1             P R O C E E D I N G S

2                  - - - - -

3        MS. LEITNER:  It's your motion so I feel like

4    you guys should let us know which ones you want to

5    discuss.  But I was wondering if you guys were able

6    to narrow some of the requests, because it sounds

7    like it was everything.

8        MR. ZERMAY:  Whatever you want to begin with,

9    it's --

10       MR. LAROSIERE:  I think first we should address

11   the additional subjects that they sent out.

12       MR. ZERMAY:  You guys sent a meet-and-confer

13   letter two business days before.  So it's -- I

14   believe it was in anticipation of your guys' Motion

15   to Compel.  We had a brief chance to review it.  We

16   don't believe that we're entirely up to speed, but

17   we are happy to have a chat about it when we're we

18   finished discussing the topics at hand, which we are

19   ordered by the Court to discuss, which is our

20   discovery that's subject of the Motion to Compel.

21       MS. LEITNER:  Since we're all here, what date

22   works best for you this week or next week?

23       MR. LAROSIERE:  Isn't that premature?  I think

24   we're offering -- so I think what Zach is doing is

25   kind of as an olive branch offering; once we get

Page 4

1    through the topics that the Court ordered us to

2    discuss today, we'd be happy to talk about that.

3         MS. LEITNER:  Right.  I'm trying to reschedule

4    the time to talk about our meet-and-confer letter.

5         MR. LAROSIERE:  We're offering to talk about it

6    today, because your letter asked to talk about it

7    today.

8         MS. LEITNER:  You guys are ready.  I guess I

9    misunderstood.  You guys are ready to go talk about

10   it today?

11        MR. LAROSIERE:  We're ready.  And we're doing

12   this as, you remember, when we sent you a letter on

13   this very subject five days ahead, you insisted that

14   you weren't able to properly confer after conferring

15   twice.  We are willing to, as a good-will gesture,

16   show you we are willing to review all those matters

17   and talk about those.  The only issue is we need to

18   handle the issues that the Court ordered us to

19   discuss first.

20        MS. LEITNER:  That works with us.  Just for

21   clarification, with respect to the last meet and

22   confer when you asked us to discuss your discovery

23   responses, you gave us two business days.  However,

24   they are related to three business entities and they

25   all had three different sets of discovery requests.

Page 5

1      That's why we tabled the discussion for a later

2      date.  I just wanted to clarify that for the record.

3          MR. LAROSIERE:  In any event, we sincerely

4      appreciate that.  If we run out of time or you have

5      a hard dead stop, we'll be happily to reschedule.

6          MS. LEITNER:  I got this all day.

7          MR. LAROSIERE:  I think as a matter of

8      housekeeping, we should talk about workflow, just to

9      kind of keep things fast.  What I imagine would be

10     most efficient would be once we get to each request,

11     should we read off the original request, we then

12     read off -- would you feel better if we read off the

13     entire objection and response; or just kind of

14     categorized it, as you suggested, under these

15     issues, so then we can read off our response to

16     those issues, then discuss.

17         MS. LEITNER:  I need to know the specific

18     request numbers.  To the extent you categorize them,

19     then I would need to know what objections and which

20     request specifically, if you want to do it by

21     category.

22         Do you have thoughts with respect to that?

23         MS. GYEBI:  Are we confirming that all the

24     requests are at issue?  I think that brings us back

25     to Leia's original question as to whether or not all

Page 6

1     the requests are at issue, or if there are specific

2     requests you have narrowed it down to.

3          MR. LAROSIERE:  No.  All the requests are at

4     issue, because every single request was either a

5     nonproduction or a blanket objection.  That's the

6     problem.  So I have identified five common themes

7     that they all have.  I'm offering two options.  We

8     can talk about the common themes, then go and apply

9     it line by line.  Or we can say, Request No. 1, here

10    is what we said, here is what you said and then talk

11    about every single one.  Totally up to you.  I'm

12    just trying to enable efficiency here.

13         MS. GYEBI:  From just an efficiency standpoint,

14    I understand your categorization of things.  I think

15    we're going to end up missing some requests if we do

16    it that way.

17         MS. LEITNER:  We need to do it by request

18    numbers.

19         MR. LAROSIERE:  To be clear, I'm not saying we

20    resolve it all at once.  What I'm saying is we talk

21    about the categories globally.  Then as we go down,

22    we can have a shorthand for each thing.  And if you

23    agree that it fits under the shorthand that we

24    resolved, then we can say, okay, that's resolved.

25    If not, we discuss it on the particular request.

1           MS. GYEBI:  I think it's up to you guys.  It's

2      your motion.  If you think this is the best way to

3      go about it, either option, I think works.  As long

4      as we're getting to the heart of each request so

5      when we do produce documents -- I believe that was

6      in the responses that we were doing a production on

7      December 1st, that we have a clear mind as to where

8      the parties stand as to each request and we'll avoid

9      further motions practice, or having to do this

10     again.  Works?

11          MR. LAROSIERE:  Sure.  I guess I feel like we

12     still don't have an answer on whether we can go by

13     category.  That's fine.  We'll go ahead and read

14     each request, aside from one that happens about 30

15     times and usually when it happens, there's no other

16     objection.  And that is major issues with regard to

17     Rule 34's requirement for a party to produce things

18     that are in its custody and control.

19          Again, I'm not asking for a response to any

20     particular request here.  I'm going to talk about,

21     abstractly, many of your responses state that our

22     request would be better directed at a subsequent

23     date.  In one instance -- again, I'm not talking

24     about any particular issue, just globally -- the

25     entity Wilson points to, then pointed to another

Page 8

1          entity when we asked it that question.

2                 So the Eleventh Circuit has spoken on this

3          issue.  The case is called C. Rock v. Stripling.  I

4          know we're not going to litigate that case right

5          now.

6                 MS. LEITNER:  Please send it to me, because

7          we've been asking for authority for several weeks

8          before this, so we can be more efficient with the

9          meet and confer.

10                MR. LAROSIERE:  I sincerely appreciate that.  I

11         very much appreciate that.  However, the rules are

12         self-executing, as the judge has repeatedly told us.

13                MS. LEITNER:  I understand that the Court's

14         order said -- she points out that A, you didn't

15         include any specific requests to respond to, and

16         there's no authority with respect to it.  I'm just

17         pointing to the Court's order.

18                MR. LAROSIERE:  That's fine.

19                So Searock v. Stripling with respect to

20         production, says that -- would you like the case

21         cite?

22                MS. LEITNER:  Yes.

23                MR. LAROSIERE:  736 F2d, 650.

24                With respect to production, control is defined

25         not only as possession --

Page 9

1          MS. LEITNER:  I'm sorry to interrupt; what was

2     the full cite, what year?

3          MR. LAROSIERE:  One moment, ma'am.  I see

4     that's material, one second.

5          Searock d/b/a Allied Marine versus Greg

6     Stripling, S-t-r-i-p-l-i-n-g; 732 F2d, Eleventh

7     Circuit, July 17, 1984.

8          MS. LEITNER:  Thank you.

9          MR. LAROSIERE:  Absolutely.  Control is defined

10    not only as possession, but as the legal right to

11    obtain the documents requested upon demand.  It

12    should go without saying that Mr. Wilson has the

13    legal right to obtain the documents requested from

14    his own company.  In fact, earlier in our

15    discussions, you may remember while we tried to set

16    Mr. Miller's deposition, your position was that such

17    a deposition had to occur simultaneously for all the

18    Defendant entities.

19         Additionally, and while I understand that

20    there's been issues with the document handling

21    stuff, in the past Mr. Wilson has produced

22    responsive documents to earlier Requests for

23    Production from each entity.  And if you look at

24    Searock -- and again, I'm not sure why we need to

25    get into the case law, but we're happy to because

Page 10

1      the rules are pretty clear that the documents have
2      to be in the possession, custody or control.
3          Searock was interesting because they weren't
4      dealing with stuff of his own companies, but
5      something that the individual subject to the Request
6      for Production could obtain by writing a letter to a
7      third party.  Now, there's other cases that we will
8      be happy to send you if you're still not convinced
9      that Mr. Wilson has the possession, custody or
10     control over documents retained by the companies
11     that he wholly owns.
12         Do you think that sufficiently covers this?
13         MS. LEITNER:  Yeah.  You don't have to go in
14     the weeds, as long as we have the case cite and your
15     position with respect to control.
16         I do want to say, just to back up -- and I
17     forgot to ask about this earlier; I understand
18     Mr. Larosiere, you're here -- and so just for
19     clarity purposes, are you here in appearance as a
20     party or as an attorney?  Because if you're an
21     attorney giving us legal case citations and
22     essentially discussing why the objection should be
23     overruled, then are you here as an attorney or a
24     party?  I just need clarification.  If so, then
25     Mr. Zermay would be your representative.

Page 11

1          MR. LAROSIERE:  Do you have a rule or case cite

2     for the proposition --

3          MS. LEITNER:  Yes.

4          MR. LAROSIERE:  I haven't made my proposition.

5          MS. LEITNER:  Okay.  I'll tell the local rules

6     requires an appearance to be filed by each attorney

7     that's going to go discussing any of the legal

8     issues.  I can't -- I don't want to misquote the

9     local rule.  But I can tell you that that's

10     something that's required under this district.

11          MR. LAROSIERE:  So earlier you asked

12     Mr. Zermay -- and Mr. Zermay, correct me if I am

13     wrong -- to direct me to file a Notice of Appearance

14     on behalf of myself.

15          MS. LEITNER:  As required the Middle District

16     local rules, correct.

17          MR. LAROSIERE:  Ma'am, I looked and I believe

18     that would actually be improper.  If I can call your

19     attention one moment -- because we did look into

20     this -- 28 USC 1654 offers a binary choice.  Parties

21     may proceed by themselves -- this is in terms of

22     appearances -- or through counsel.  That's as it

23     governs appearances.  Under Rules 11(a) and Local

24     Rule 2.02, which contemplates parties' discussions.

25     And, indeed, the order this Court directs the

Page 12

1    parties to confer.  A party may participate

2    personally in conference without filing any Notice

3    of Appearance.  And in fact, it would be improper --

4    at least it's our position that it would be improper

5    for an attorney to attempt to notice an appearance

6    on behalf of himself.

7         Now, parties routinely attend conferences.  And

8    in fact, it's calculated to facilitate easier

9    resolution of disputes unless -- in fact, nothing in

10   the rule prohibits this.  I haven't found any

11   authority that would permit you to demand otherwise.

12   But I think Mr. Zermay had a thought about this

13   issue in terms of efficiency.

14        MR. ZERMAY:  And I reviewed the order of Judge

15   Hoffman Price.  And Judge Hoffman Price ordered the

16   parties to appear.  And Mr. Larosiere, who is a

17   party to the litigation, is here and participating

18   in good faith regarding efficiencies.  And I would

19   note that -- and the court reporter's record will

20   reflect that Mr. Wilson and the corporate

21   representatives of the corporate defendants are not

22   physically present here; which in our position would

23   be a contradiction of the plain, unambiguous and at

24   least the spirit of the order for him to be here.

25   That's our position regarding hopefulness regarding

Page 13

```
 1          efficiencies to cut to the chase and get it from the
 2          proverbial horse's mouth.
 3              But unfortunately, Mr. Wilson and whoever the
 4          corporate representatives would be are not here.  So
 5          unfortunately, we're deprived of that at this
 6          moment.
 7              MR. LAROSIERE:  To be clear, we're not
 8          suggesting any impropriety by that.  But the simple
 9          answer is we think it's far better instead of you,
10          for example, suggesting would this production or
11          proposed whatever be okay with your client, then
12          waiting for Mr. Zermay to go and then fill me in.
13          Especially given the Court has ordered us to
14          identify all issues that remain outstanding within
15          seven days of this meeting.
16              I guess the question I would ask is, are you
17          objecting to the party's presence in directly
18          resolving the dispute with permission of their
19          counsel?
20              MS. LEITNER:  No, no.  I just had a moment of
21          clarification.  But I have two points with respect
22          to that in response to what you just mentioned;
23          first, if you expected this meeting to require
24          counsel and all parties, that was not indicated in
25          any of the notices and it wasn't required.  And it
```

Page 14

1       kind of puts us at a disadvantage, because

2       Mr. Wilson is not here.

3               Secondly, the other issue is, as you mentioned,

4       that Judge Hoffman Price's order with respect to

5       your appearance on the record, she did note

6       accordingly that it may be an ethical violation with

7       respect to you jumping between either a party

8       representative and counsel.  So she made that and

9       highlighted that in the transcript at your last

10      discovery motion hearing.  I just wanted to clarify,

11      you know, just for, A, efficiency and B

12      clarification as to who is actually appearing in

13      this case and what your position is; and especially

14      with respect to the ethical issues appearing as a

15      party sometimes and maybe sometimes as a lawyer.

16              MR. ZERMAY:  I'll take that, because I'm well

17      versed in the Florida Bar ethical rules.  The

18      Florida Bar rules only prohibit an attorney witness

19      from proceeding at trial.  So we're not currently at

20      trial.  We're in the pretrial proceedings.  So

21      Mr. Larosiere couldn't start making opening

22      statements or interrogate a witnesses at trial,

23      because that may throw of the trier of fact if there

24      was a jury in this matter, for example.  It would

25      just be procedurally wrong.  I've seen attorneys

Page 15

1       proceed as witnesses in a case in pretrial

2       proceedings.

3              MS. LEITNER:  Understood.  I just wanted to

4       clarify it for the record.

5              Amaris, do yo have anything to add?

6              MS. GYEBI:  I think it's clarified.  To the

7       extent -- my understanding is that you,

8       Mr. Larosiere -- how do you pronounce your name?

9              MR. LAROSIERE:  You can just call me Matt.

10             MS. GYEBI:  Matt, it's our understanding that

11      in terms of Plaintiff, there's no issue that

12      Plaintiffs see with Matt, the Plaintiff in this

13      case, participating in this meet and confer and

14      other out-of-court proceedings without filing a

15      Notice of Appearance.

16             MR. LAROSIERE:  Again, in interest of the

17      record, the Florida Bar rule that you mentioned, is

18      it the one that discusses what an attorney may do at

19      trial, the title of the rule being Attorney as a

20      Witness; or is there some other Florida Bar rule

21      that you found that we might not be aware of.

22             MR. LEITNER:  It's the one that Judge Hoffman

23      Price was discussing --

24             MR. LAROSIERE:  Attorneys as a witness.

25             MR. ZERMAY:  I believe I have it here.  It's

Page 16

1      Rule 4-3.7, Lawyer as Witness, Subsection A; when a

2      lawyer may testify.  A lawyer shall not act as an

3      advocate at a trial which the lawyer is likely to be

4      a necessary witness on behalf of the client,

5      unless -- and then it lists some exceptions.  But

6      that's qualify by at a trial and we're not at trial

7      yet.

8          MR. LAROSIERE:  Are we all in agreement that

9      this case has not proceeded to trial?

10          MS. GYEBI:  I think we're treatment the case

11      hasn't proceeded to trial.  I think the disagreement

12      is whether or not you can participate in this

13      out-of-court proceeding on behalf of yourself

14      without filing a Notice of Appearance.

15          MS. LEITNER:  Yes, that's the issue.  So we

16      have your position on the record.  We can keep it

17      moving with respect to the other topics, because I'm

18      sure we have a lot.  I wanted to clarify that.  I'm

19      sorry I sidestepped that.  As I sat here, I wanted

20      to clarify that for the record.

21          I understand your point with respect to control

22      and single entity.  Just responding with respect to

23      the deposition scheduling, that was only with

24      respect to -- as I mentioned in my e-mail and the

25      the writing, that it was based on efficiency

Page 17

1    purposes.  Because generally speaking, we did not

2    get the topics for depositions, but we would assume

3    it could be Mr. Wilson.  But again, he's not the --

4    you're assuming he controls all the entities, and

5    that's a fact that's not accurate, not in evidence

6    and should not be assumed.

7         So that's the position with respect to control

8    here.  And if you -- again, we have to look at the

9    specific facts of the case too.  Because I recall

10   some of the case law with respect to control among

11   other entities that they would have to -- you know,

12   there was a lot of factors that were involved to

13   determine whether it was a single entity that was

14   controlled by one person.

15        So again, I would have to look at that.  I got

16   the case citation and we can now look and that now

17   that we received the authority, even though we've

18   asked for it for several weeks.  We appreciate

19   receiving that now.  We can take a look at that.

20        One thing I wanted to ask you before we

21   continue is, once we discuss your issues with

22   respect to each objection, are you providing a time

23   to supplement and/or respond to us; or are you

24   just -- is the purpose for you here just to give us

25   the authority, tell us beyond what was said in the

Page 18

1      meet and confer, and that's it?  Or are you willing

2      for us to resolve and narrow these issues?  Or are

3      you just going to discuss this here and simply find

4      that this is sufficient to move to compel the

5      issues?

6              MR. ZERMAY:  I have to take an emergency phone

7      call, but you can continue speaking to my client.

8              MS. LEITNER:  Okay.

9              MR. LAROSIERE:  Thank you for asking.  The

10     purpose and intent of our meeting today is to

11     resolve everything that's outstanding.

12             MS. LEITNER:  Okay.  But given that we have

13     only received some of this information now, I think

14     it would be only fair and within good faith to

15     resolve this to give us some time; simply in the

16     same regard that we sent over the meet-and-confer

17     letter with respect to your -- Plaintiff's

18     responses, or your responses, that we gave you

19     until, I think, ten days to resolve it and/or

20     change, amend the responses before moving to compel.

21             So I guess my understanding, then, here, I'm

22     not sure if what you're discussing is that we would

23     discuss it today, then you would move to compel even

24     though you're not giving us time to amend it or

25     discuss the issues.  But please let me know if I'm

Page 19

1      speaking out of turn.

2           MR. LAROSIERE:  Certainly not out of turn,

3      ma'am.  That's absolutely not what I said or meant.

4           MS. LEITNER:  Okay.

5           MR. LAROSIERE:  Let me clarify.  I expect that

6      if we could agree that certain answers need to be

7      made that we could agree on a reasonable time to do

8      so.  We're not expecting you to have had all of

9      these answers prepared to dump during this meeting.

10     That's not reasonable.

11          MS. LEITNER:  No, but we could have if you had

12     given us the authority in advance.

13          MR. LAROSIERE:  Ma'am, you keep suggesting

14     that.  And I would just like to ask that we stop

15     circling that particular point.  I couldn't find any

16     case law to suggest that the requirements of the

17     rules are suspended until the requesting party fully

18     briefs the producing party.  That would render the

19     rulings not self-executing, but suggestive.  The

20     rules are what they are.  It's our position that

21     these requests -- except for some of them, which

22     we'll get to.  I do think there are some requests

23     where you have made a good point about how they were

24     written.  And we can talk about how to construe

25     them.  That's like eight of them.

Page 20

1          The rest of the stuff here, let's just be

2     transparent, many of them have the same objection

3     literally -- I don't know who prepared it.  I don't

4     want to use the word copied and pasted;

5     extraordinarily similar.  It would seem very strange

6     that your requirements to produce documents are

7     completely forestalled until we find a case where

8     somebody identically refused to comply with their

9     obligation.

10          Let's not keep dueling over that.  I see you're

11    preparing to respond.  We're not litigating this

12    issue right now.  Let's got to the requests.

13          MS. LEITNER:  We're not litigating, but we need

14    to put our position on the record.  The position is

15    that we have complied with the local rules with

16    respect to setting a date as to our production date,

17    which was December 1st.  And the reason being is

18    because we're new no counsel on this case.  We just

19    appeared in September.  We have a huge ESI vendor

20    with a million documents that we had to convert.

21    And it took another company to help us with respect

22    to that.

23          I think that's reasonable with respect to just

24    another -- our responses were due October 28th, so

25    another month and a week or so to provide the

Page 21

1      documents.  And that's based on, again, the change

2      in counsel and our ESI vendor and our resources.

3      And that's compliant with respect to the Middle

4      District local rules and what it requires.

5             But again, I understand we're going to

6      specifics.  And that's the whole point about going

7      into specifics, because objections require

8      specificity with respect to each request.  I want to

9      also explain that I I'm not requesting to --

10     requiring you to brief everything.  What we've

11     simply asked is just for -- there are specific

12     requests -- and the authority that could help us

13     move this along so we are not here just learning

14     about this now and as required by the Court's order.

15     That's why the Court ordered us to meet here and

16     confer in person.  Because we're not getting into

17     the specifics.  We don't receive, I mean, any of the

18     information that's the support as to why you're

19     overruling our objections.

20            That's just what I wanted to clarify here.

21            MR. LAROSIERE:  Ma'am, at what point did I

22     mention your December 1st proposed production?

23            MS. LEITNER:  You didn't, but I wanted to

24     clarify because you're saying that we did not comply

25     with the rules.

Page 22

1          MR. LAROSIERE:  Ma'am, we have no issue with

2     your proposed production date.

3          MS. LEITNER:  You just said -- I'm just

4     clarifying what you said.  You said that the

5     Defendants didn't respond -- or comply with the

6     rules when responding to your discovery requests,

7     and that's not accurate.

8          MR. LAROSIERE:  Ma'am, I understand.  I

9     appreciate that.  Your rolling productions aren't

10    contemplated by the rules.  They were never

11    mentioned in any of our prior conferences by us.  We

12    take no issue with that.  I think it would be best

13    for us to now go request by request, talk about what

14    each of us said.

15          So if I may, let's start with Cody Wilson's

16    response to Plaintiff's Request for Production.

17          MS. LEITNER:  Okay.  I'm with you.

18          MS. GYEBI:  I'm sorry, before we start, I know

19    it was talked about reading the requests and

20    objections onto the record.  And I understand, like,

21    for posterity that would be great.  But we're

22    working with, I think, as total of 130 requests, and

23    we may be here all day.  If you're unopposed, we can

24    make these exhibits to the transcript and stipulate

25    that, you know, one is actually one, if you would,

Page 23

1     like if there's no objection.

2          MR. LAROSIERE:  No objection whatsoever.

3          So because this has been a theme in the past,

4     I'm going to refer generally to what I see in the

5     requests.  I would like for us not to litigate that.

6     The requests will be attached.

7          MS. GYEBI:  I think that's fine.

8          MR. LAROSIERE:  So Request No. 1 basically asks

9     for transfer of assets for market value over $500 to

10    a certain individual.  You responses are also

11    included in this.  You say it's not reasonably

12    limited in time or scope.  And then you assert

13    disproportionality.  Our response to that is

14    January 1, 2018 is reasonably limited in the time

15    and scope.  And if you would like us to articulate a

16    theory of relevance, I would be happy to.

17         MS. GYEBI:  I think that would be great.

18         MR. LAROSIERE:  We suspect Wilson has used his

19    sister Cheyenne Morgan to hid assets.  Additionally

20    his hiding assets was specifically pled and

21    contested.  It's relevant to our claims.  His

22    behavior can be established from the period

23    immediately preceding the lawsuit, as this shows how

24    long the behavior has existed.  So a complete

25    response is required.

Page 24

1          That said, we don't want any scrap of paper or
2     little shred of data, just documents -- and we can
3     reframe all documents and other materials that
4     relate to documents sufficient to identify, right.
5     Because that's -- I think that would solve any
6     breadth of problems.  That's what the Middle
7     District generally does with all documents and other
8     materials.  It's kind of like an old lawyer phrase.
9     And the Middle District generally when it sees that
10    will reinterpret as documents sufficient to
11    establish, or something like that.  And we would be
12    happy to do that just to avoid the Court having to
13    go and do that.
14          MS. LEITNER:  Just to note our position with
15    respect to overbreadth, and it's based on the time
16    frame.  It's our understanding, and based on the
17    attachments and the documents that are produced in
18    the record, including in the motion -- the
19    preliminary injunction motion, the Certificate of
20    Registrations for your subject works, they all
21    reflect publication dates of 2022 and/or to the
22    present.  So if you're discussing infringing
23    conduct -- and the other issue is DEFCAD was just
24    created in 2023.  So anything prior to 2022 doesn't
25    have any bearing to the claims and defenses in this

Page 25

1     case.  So we're -- we don't understand why you're

2     going all the way back to 2018.  And that's what our

3     position is with respect to that.

4          MR. LAROSIERE:  That is one point where we know

5     it happened.  And again, because this is going to be

6     a theme -- at least I anticipate it might; let's

7     just look at Rule 26(b) together real quick.  Just

8     to make sure we're are on the same page.

9          MS. LEITNER:  I guess I don't understand.  I

10    think this will be helpful for us; what is your

11    understanding of the damages of this case?

12          MR. LAROSIERE:  Ma'am, that's not --

13          MS. LEITNER:  Yes, it does.  Because the issue

14    is if it's relating to the infringement conduct,

15    then it's related to what flows with respect to how

16    any of the -- Mr. Wilson or the Defendants

17    disgorgement of profits were realized.  And so our

18    understanding, based on this would be, if anything,

19    DEFCAD subscription fees for that.  If you're going

20    to conflate Mr. Wilson's business entities and his

21    financial dealings with respect to anything beyond

22    that, then yes, I think that's way beyond the scope.

23          MR. LAROSIERE:  If I could call your attention

24    to Rule 26(b).

25          MS. LEITNER:  Okay.

Page 26

1           MR. LAROSIERE:  We're entitled to material

2     regarding any nonprivileged matter relevant to any

3     party's claim or defense and proportional pleadings

4     in the case.  So we may be talking about

5     proportionality?

6           MS. LEITNER:  Yes.  That's why I brought up the

7     whole damages part.  Because that relates to

8     26(b)(1) with respect to how it's relevant to the

9     case here.  And so it sounds like you're just -- I

10    guess the time period doesn't reflect what the

11    claims and the defenses were based on the

12    allegations of the First Amended Complaint.

13          MR. LAROSIERE:  The judge has directed us to

14    State Farm v. Silver Star; which states -- this was

15    in the order denying Wilson's Motion for Protective

16    order.

17          MS. LEITNER:  With respect to a deposition that

18    hasn't occurred.

19          MR. LAROSIERE:  Why do you say that?

20          MS. LEITNER:  Because the basis of the Motion

21    for Protective Order was that the questions and

22    answers haven't been presented yet for her to make a

23    ruling.

24          MR. LAROSIERE:  The quote the judge pointed us

25    to as, used in Rule 26(b)(1); relevance has been

Page 27

1        construed broadly to encompass any matter that bears

2        on or that reasonably could lead to other matters

3        that could bear on any issue that is or may be in

4        the case.  Thus, courts must employ a liberal

5        discovery standard in keeping the spirit and purpose

6        of the discovery rules.

7            It's our position that a pattern of practice of

8        diverting and hiding assets, which again, maybe the

9        discovery will bear out, maybe it won't.  But where

10       these are contested issues of material fact as to

11       liability and as to profit from the infringement,

12       what happened to them.  We're not talking about ten

13       years before.  We're talking about 2018 on.  It's

14       not an unreasonable period of time.

15           MS. LEITNER:  So we'll note your position.

16       Then how about this; with anything with respect to

17       overbroad and on the timeline of January 2018 to

18       2022, just note our objection it's -- we're standing

19       by our objections with respect to the time frame.

20           MR. LAROSIERE:  Just so we're clear, you're

21       declining to further address your objections

22       relative to time frame.  You feel it's adequately

23       stated?

24           MS. LEITNER:  Yes.  I feel like with respect

25       to -- yes, correct.

Page 28

1           MR. LAROSIERE:  Thank you.

2           MS. GYEBI:  Before we move on, I just want to

3       get a little bit of clarity.  So you're looking for

4       any transfers of $500 or more to Cheyenne Morgan.

5       Who is Cheyenne Morgan?

6           MR. LAROSIERE:  Mr. Wilson's sister.

7           MS. GYEBI:  Starting back in 2018?

8           MR. LAROSIERE:  January 1, 2018.

9           MS. GYEBI:  And Plaintiff wants this

10      information because it believes Mr. Wilson has a

11      history of diverting assets from the corporation?

12          MR. LAROSIERE:  From the corporation, yes.

13          MS. GYEBI:  How is that relevant to your case?

14          MR. LAROSIERE:  Should I bring up the

15      Complaint?

16          MS. GYEBI:  Sure.

17          MR. LAROSIERE:  I point you to Paragraph 3

18      through 42.  This all has to do with Wilson's

19      attempts -- our belief that Wilson is hiding the

20      money his company made by diverting it to third

21      parties.

22          MS. GYEBI:  My question is how does that affect

23      any of the claims that you brought?

24          MR. LAROSIERE:  Thank you so much for

25      clarifying.  It affects liability.  And then also,

Page 29

1    remember, one of the categories of damages and
2    copyright, disgorgement.  To be able to assess where
3    this money went, that's very relevant.  And then
4    again, we have pled alter ego liability; what you do
5    with your company's assets.  It's one of the most
6    important factors.  Then just not in terms of
7    relevance, but in terms of proportionality.
8         Mr. Wilson is the only one who has these
9    records.  We need them.  So again, I understand
10   using relevance is a shorthand, right.  Relevance
11   isn't actually part of the standard.  Discoverable
12   information can be not admissible for relevance
13   reasons, just to put that on the record.  I'm not
14   receiving you when you say relevance as limited to
15   the ultimate legal issue.  Does that sufficiently
16   answer your question.
17        MS. GYEBI:  It does.  So I understand,
18   Plaintiff's position is that the information is
19   relevant in the global sense, because they have a
20   belief that Mr. Wilson has diverted assets,
21   potentially, to his sister.  And thus, that's why
22   they're seeking this information?
23        MR. LAROSIERE:  Yes, ma'am.
24        MS. GYEBI:  Second question is, is Plaintiff
25   interested -- let's say Mr. Wilson gifted his sister

```
                                              Page 30

 1        $505 for Christmas.  Does Plaintiff want that

 2        information, in December of 2018?

 3              MR. LAROSIERE:  Yes.

 4              MS. GYEBI:  Okay.  Let's say Mr. Wilson gave

 5        his sister a thousand dollars to help her repair her

 6        car; plaintiff also wants that information?

 7              MR. LAROSIERE:  Yes.  So to clarify, that

 8        information may be responsive.  What if he gave her

 9        a thousand dollars every month?  And what if we

10        found matching debits of a thousand dollars from one

11        of the companies?  You have to understand, you can't

12        look at these things in a vacuum.  We're looking for

13        patterns and practices.  So while I understand the

14        parade of horribles you're suggesting, it's not

15        convincing.

16              MS. GYEBI:  Okay.

17              MR. LAROSIERE:  Thank you so much.

18              Now, Request for Production No. 2 is

19        essentially the same thing.  Can we agree it's the

20        same thing except to Dennis K. Wilson, who is his

21        father?

22              MS. LEITNER:  Yes.

23              MR. LAROSIERE:  Do you think we're going to

24        have the same positions on this?

25              MS. LEITNER:  Same.
```

Page 31

1          MR. LAROSIERE:  So your position is -- your

2    response is complete and compliant?

3          MS. LEITNER:  We're standing by our objection

4    with respect to the 2018 through 2022, that it's

5    beyond the scope pursuant to 26(b)(1).

6          MR. LAROSIERE:  You're -- okay.  No. 3, same

7    thing.  However, this one does not identify a

8    specific family member.  It says, related to

9    transfers of any assets with a market value of $500

10   or more to any entity where any part of the

11   intention behind said transfer was to divert assets

12   away from the originating entity to make them harder

13   to trace or recover.

14         Now, do we still feel the same way; again, the

15   time frame -- you're keeping the time frame

16   objection.  You then say --

17         MS. LEITNER:  There's no time frame at all

18   specified.  I think this is even more broad.  So

19   we're still standing by our objection with respect

20   to beyond the scope pursuant to 26(b)(1).  You also

21   have not alleged fraudulent transfer.  I'm just

22   very -- not understanding why this is -- one to

23   three is even in here, but keep going.

24         MR. LAROSIERE:  I will notice you also said

25   that in response to Request No. 3, which again asks

Page 32

1      for materials about the transfer of assets where any

2      part of the intention behind said transfer was to

3      divert assets away form the originating entity so as

4      to make them harder to trace or recover.

5          THE COURT STENOGRAPHER:  Can you please slow

6      down when you're reading?

7          MR. LAROSIERE:  Sorry.

8          You stated, this request is better directed to

9      the Defendant entities.  What did you mean by that?

10         MS. GYEBI:  Well your request is asking for a

11     diversion of assets away from the originating

12     entity.  Mr. Wilson is not an entity; he's a person.

13         MS. LEITNER:  So that's the reason why we

14     included that.  I think it's the request -- the way

15     the request is phrased.

16         MR. LAROSIERE:  And so even if we limited this

17     to a certain time frame, would you still decline to

18     produce?

19         MS. GYEBI:  I'm not sure what could be

20     produced.  You're asking for diversion from the

21     originating entity.  Mr. Wilson is not and entity.

22     I'm not sure how we would produce documents on

23     behalf of Mr. Wilson.

24         MR. ZERMAY:  I think that goes to the initial

25     discussion that Mr. Larosiere had regarding the

Page 33

1       control aspect of a person that has control over an
2       entity's documents.
3              MS. GYEBI:  But what entity?  It just says
4       originating entity.
5              MR. ZERMAY:  The Defendant entities in this
6       case.
7              MS. LEITNER:  Now I would object with respect
8       to legal conclusion.  For us to respond to that,
9       then that means that we would assume that Mr. Wilson
10      does control and have -- controls these entities
11      under a single entity theory.  That's not accurate.
12      So as your request is phrased, I think is the major
13      issue with respect to Request No. 3.
14             MR. LAROSIERE:  The way the request is phrased;
15      what do you mean.
16             MR. LEITNER:  As Amaris was explaining, you say
17      produced all documents and other materials in your
18      possession that relate in any way to the transfer of
19      any assets with a market value of $500 or more to
20      any entity where any part of the intention behind
21      such transfer was to divert assets away from the
22      originating entity, so as to make them harder to
23      trace or recover.
24             You're directing this to Mr. Wilson; you
25      haven't even defined entity.

Page 34

1        MR. LAROSIERE:  We'll withdraw Request No. 3.

2        MS. GYEBI:  I think that works.

3        MR. LAROSIERE:  Request No. 4, one-line

4    request; from January 1st onward produce all

5    documents, communications and materials which

6    include any mention or discussion of copyright.

7        Very simple.  Our problem here is that you then

8    redefine copyright, not only the time frame, right;

9    appeared I think here -- I think we have to revisit

10   the time frame issue here because willfulness is at

11   issue.  We allege that he willfully infringed our

12   copyright.  So a pattern and practice of ignoring

13   copyright, especially where Mr. Wilson wrote a book

14   called The Black Flag White Paper.  A pattern and

15   practice of doing that would be quite relevant to an

16   infringement that happened a couple years ago.

17       MS. GYEBI:  Okay.  So the request is a lot

18   broader than we're talking about here.  If you want

19   just to limit the request to matters with

20   discussions of disregarding others' copyright

21   rights, I think that's materially different than

22   asking for all documents, communications and

23   materials which include any mention or discussion of

24   copyright.  Are you looking to narrow the request?

25       MR. LAROSIERE:  We can narrow that.  Again,

1        we're not asking for any little scraps, right?  The

2        big problem here is the misapprehension about what

3        copyright is.  You redefine copyright to the subject

4        works.  That doesn't work for us.

5            MS. LEITNER:  Because this question is not

6        attenuated to anything related to the subject works

7        of the Complaint.  And so just any discussion of

8        copyright is just way too broad.  I think not only

9        is the time frame too broad, but also because it's

10       not related to the subject works that are identified

11       in the First Amended Complaint.  And so what really

12       is the time frame issue is -- let's just be logical

13       here.

14           You guys registered and/or created these works

15       in 2022, '23 to the present.  He can't infringe

16       anything.  Willfulness has to do with knowledge of

17       the registration of your subject works, and that was

18       between 2022 to the present.  And then actually

19       infringing on those works.  So anything beyond

20       before 2022 is not -- again, just for the record,

21       just not relevant here under 26(b)(1).  We're going

22       to stand by our objection with respect to that.  And

23       we can -- if you want to narrow Request No. 4 to

24       what you discussed earlier with Ms. Gyebi, then

25       fine.  Otherwise, we're going to have to stand on

Page 36

1      our objection.  The definition of copyright doesn't

2      relate to the First Amended Complaint and subject

3      works and the time frame.

4           MR. LAROSIERE:  Let me be clear.  You're saying

5      the only way you will respond to this is if you

6      redefine the word copyright to mean the registered

7      works at issue?

8           MS. LEITNER:  No.  The word copyright wasn't

9      defined.  So based on our responses, we defined it,

10     under our understanding, and based on the claims and

11     defenses that were raised in the First Amended

12     Complaint.  That's all that response says.

13          MR. LAROSIERE:  Let me pose the argument;

14     December 31, 2021, Mr. Wilson e-mails one of his

15     employees, subject, how to handle copyright

16     materials.  Because, ignore it, it's not real, that

17     law does not apply to me, send.  You think that

18     doesn't reasonably bear on the claims at issue here?

19          MS. LEITNER:  Correct.  I don't think it does.

20     Because based upon the facts of this case that

21     whether he had knowledge of that would either be

22     through your registration with the copyright office

23     or you guys sending over a copyright notice or a

24     DNCA takedown, something to that affect.  But if you

25     guys don't cite that with respect to just a nebulous

Page 37

1          request about copyrights in general, I think this

2          request is too broad.

3                MR. LAROSIERE:  So now we did get to the thing

4          you're actually talking about.

5                MS. LEITNER:  I'll say, though, the definitions

6          include nine additional copyright registrations that

7          weren't identified in the Complaint.  So that was

8          the only thing that I had issue with with respect to

9          the copyright registrations mentioned in Request No.

10         5.

11               MR. LAROSIERE:  You didn't raise that in your

12         responses.

13               MS. LEITNER:  I raised it in my -- in the

14         response to the request.  It's in the footnote or

15         something to that effect.

16               MR. LAROSIERE:  No.

17               MS. LEITNER:  Well, that's --

18               MR. LAROSIERE:  I can read it to you.

19               MR. LEITNER:  I don't need to be read to.  I

20         thought I put it somewhere there.  If I didn't, I'm

21         mentioning it now.

22               MR. LAROSIERE:  I don't think you get to amend

23         your objections.  And for clarity, Request No. 5

24         states, for clarity, these are copyright

25         registrations numbers that Plaintiff currently

Page 38

1          holds.  Then, it's not permissible to assert

2          unfamiliarity with what works these numbers pertain

3          to, as the Complaint and supplement to the MPI

4          relate these numbers to the specific works, and the

5          only remaining numbers not specifically listed in

6          the Complaint.

7               MS. LEITNER:  Yes, I did.  There's Footnote 1

8          where it says on Page 1, at all times material

9          herein, the term works refers to the copyright and

10         registrations Plaintiff referenced in the Fist

11         Amended Complaint that Defendant allegedly used

12         without authorization.  Doc 43 at Paragraphs 104 to

13         259.

14              So every time I capitalize the W in subject

15         works, that's what is being defined throughout this

16         whole response.

17              MR. LAROSIERE:  I don't know if you get to do

18         that.

19              MS. LEITNER:  We can agree to disagree.

20              MR. LAROSIERE:  Request 5 specifically

21         delineates which works.

22              MS. LEITNER:  I'm saying in my response, my

23         understanding is, and what I'm responding to, that's

24         why I put subject works with a capital W.  That's

25         all.  I just wanted to clarify.

Page 39

1      MR. LAROSIERE:  So you're clarifying that your

2      response was not responsive to the works concerning

3      the Amigo Verde, which Defendant has already

4      admitted to being aware of and previously produced

5      documents concerning those registration numbers?

6      MS. LEITNER:  My response is that I was

7      responding to the copyright registrations that we're

8      alleged in the First Amended Complaint.  And

9      anything beyond that needs to be alleged in another

10     amendment.  Otherwise, it's not at issue here.

11     MR. LAROSIERE:  Okay.  How can we get this

12     response or this request to simply cover the

13     communications in Defendants' possession, custody or

14     control specifically related to the works at issue?

15     MS. LEITNER:  I can respond to that.  First of

16     all, you've already admitted in your responses to

17     Mr. Wilson's discovery requests that you guys --

18     that we've already produced that to you.  Second of

19     all, if you can agree that the subject works in

20     Request No. 5 relate to the copyright registrations

21     identified in the First Amended Complaint, we can

22     fully respond.  Otherwise, we're maintaining our

23     objections with respect to that.

24     MR. LAROSIERE:  The only way you will

25     respond -- I want to make this clear.  I want to

Page 40

1    make sure we're on the same page.  The only way you

2    will respond is if we exclude the works that were

3    mentioned in the MPI and other works that Plaintiff

4    owns and Defendant has admitted to being aware of.

5    We never said that we already have these documents,

6    is why we're asking for it.  Wilson is the only one

7    who has his communications concerning the works.

8          So we just want the communications specifically

9    discussing these works, Plaintiff's works; how can

10   we get there together?

11         MS. LEITNER:  We're happy -- we're working to

12   produce that document -- those documents to you by

13   December 1st.  But the issue, again, is we are happy

14   to produce any documents related to anything in the

15   First Amended Complaint.  Because it's my

16   understanding once you litigate it, it shouldn't be

17   in a Complaint to provide the Defendant notice with

18   respect to the issues and not in discovery -- not

19   issues that were just submitted in discovery.

20   Otherwise, it's not in the record.

21         MR. ZERMAY:  Well, it's stuff that's reasonably

22   calculated to lead to discoverable evidence for use

23   at trial.  That's the discovery standard.

24         MS. LEITNER:  Are you guys going to amend your

25   Complaint, or as for move for leave to amend to

Page 41

1      include to these nine additional copyright

2      registrations.

3            MR. ZERMAY:  I don't think we've agreed to

4      amend the Complaint and reopen the pleadings.  But

5      I'm just reciting the discovery standards or

6      reasonably calculated to lead to discoverable

7      evidence for use at trial.

8            MS. LEITNER:  I agree to disagree.  Because

9      it's not going to lead to admissible evidence if

10     it's not related to any of the copyright

11     registrations that are identified in First Amended

12     Complaint.  So if you guys are going to amend it,

13     please let us know.  We can discuss that here.

14           MR. LAROSIERE:  No. 6, this is about stuff

15     Wilson had help in preparing a specific blog post.

16     You can't complain about time and scope, because the

17     post happened in 2025, right?  So but you do assert

18     time and scope?

19           MS. LEITNER:  I'm sorry.  I guess -- can we go

20     back to No. 5?  I don't think we closed the gap.

21     I'm not understanding --

22           MR. LAROSIERE:  What I wrote down here is you

23     refused to provide information regarding anything

24     not identified in the First Amended Complaint, any

25     works not identified in the First Amended Complaint.

Page 42

1          MS. LEITNER:  We're producing documents --
2     yeah, that accurately reflects it.  That's fine.
3          MR. ZERMAY:  So you're producing documents
4     subject to your objection?
5          MS. LEITNER:  Unless you're amending the
6     Complaint, yes.  That's just standard practice.
7          MR. LAROSIERE:  Are you aware that the
8     pleadings have closed?
9          MS. LEITNER:  The deadline for a Motion for
10    Leave to Amend has been closed a long time ago.
11    Bringing this in discovery is actually a surprise to
12    us.
13          MR. LAROSIERE:  So the blog post, we just want
14    to see the drafts and his communications concerning
15    that particular blog post, because it's relevant to
16    several issues.
17          MS. GYEBI:  Can we take a break?
18          MR. LAROSIERE:  We'll probably need a lunch
19    break.
20          (A lunch break was taken.)
21          MR. LAROSIERE:  I believe we left off on
22    Request for Production No. 6; does that line up for
23    you?
24          MS. LEITNER:  Yes.
25          MR. LAROSIERE:  Basically this was concerning a

Page 43

1    blog post.  We talked about temporal -- the other
2    thing is, in light of the foregoing objections, we
3    end this with, Defendant in his individual capacity
4    does not have the documents and/or information
5    responsive to this request.  As we discussed
6    earlier, this whole individual capacity thing, we're
7    not sure what's meant by that.  So I guess the
8    answer is are we going to be producing something
9    subject to objection, or are we refusing to produce
10   standing on the objection as written?
11        MS. GYEBI:  Quick question; what's the
12   relevance of the On Raids and Raiding post?
13        MR. LAROSIERE:  Again, we're using relevance
14   broadly.
15        MS. GYEBI:  Yes.
16        MR. LAROSIERE:  The blog was intended to harass
17   Plaintiff, his friends and employees.  That's a
18   serious indication of willfulness.  And of course,
19   it began after the copyright infringement conduct
20   started occurring.  So we think this is material as
21   to the question of willfulness, which is a disputed
22   issue of material fact.
23        MR. GYEBI:  How is the post meant to harass
24   you?
25        MR. LAROSIERE:  Do we need to read the post

Page 44

1     again?

2          MS. LEITNER:  Do you happen to have a summary?

3     It wasn't attached to the request.

4          MR. LAROSIERE:  It was referenced in the

5     Complaint.  So if you would like -- so the general

6     subject of the post on Raids and Raiding was about

7     how Mr. Wilson used private investigators and law

8     enforcement to harass Plaintiff and what were then

9     Counter-Defendants.  So this happened, again, after

10    the lawsuit had begun.  So we think the real

11    touchstone here is whether there's a scintilla of

12    relevance.  And we think that's here because of the

13    parties.  Do we need to more thoroughly discuss

14    that?

15         MS. GYEBI:  No.  I think my understanding is

16    that you-all want the drafts of this posting or this

17    article because you believe the intention was to

18    harass Plaintiff, yes?

19         MR. LAROSIERE:  Sure.  The intention doesn't

20    really matter.  The question is whether or not it's

21    discoverable material.  We're asking for the working

22    copies and then also correspondence about it.

23    Again, we're happy to limit all documents and

24    materials to documents sufficient to events or

25    identify, right, those questions -- the material

Page 45

1      questions that we're asking here; which is what led

2      up to the drafting and when you talked to people

3      about this particular post.

4          MS. GYEBI:  This relates to your claim how, any

5      of the claims?

6          MR. LAROSIERE:  Shall we bring up the

7      Complaint?

8          MS. GYEBI:  Sure.  Just to clarify, I think

9      that we can agree -- maybe this is where the

10     disconnect is the coming from.  Just because you put

11     something in the Complaint doesn't make it relevant

12     automatically.

13         MR. ZERMAY:  It goes to willfulness.

14         MS. GYEBI:  Okay.  So that's Plaintiff's

15     position, that this post then speaks to the

16     willfulness of the copyright infringement?

17         MR. ZERMAY:  The evidence -- at a minimum could

18     lead to evidence that would be admissible at trial

19     to demonstrate that there was willfulness as to the

20     infringements at issue.  Because it goes to he's

21     harassing the people that are, for lack of a better

22     term, victims of copyright infringement by way of

23     blog pots.  And that could evidence, or at least

24     lead to evidence that could be used at trial to

25     demonstrate willfulness.

Page 46

1          MS. GYEBI:  Something that was posted after the

2     lawsuit was filed.

3          MR. ZERMAY:  You can do a lot of crazy things

4     after a lawsuit is filed.  If you all say, I did

5     this intentionally, for example, that would be

6     evidence of willfulness.  That's more of an extreme

7     example of it.  But necessarily, it doesn't matter

8     if it happened before the lawsuit was filed or

9     after.

10          MS. LEITNER:  I just pulled it up really quick,

11     the blog.  I think my issue is that it's still

12     attenuated.  It's not really related to the subject

13     works.  Had there been some discussion with respect

14     to the works that are described in the First Amended

15     Complaint, then I would have a better understanding

16     as to the relevance.  It just generally talks about

17     raids to the community and raids -- yeah, and so I

18     think that's where our -- at least any disconnect is

19     with respect to this question and the relevance.

20          MR. ZERMAY:  So are you going to be producing

21     any documents subject to the objection, or are you

22     just going to produce --

23          MS. LEITNER:  To the extent there's anything

24     related to the subject works, as I mentioned in the

25     response, then we'll produce that.  But otherwise,

Page 47

```
 1        just a global -- it's also so broad it's hard to
 2        actually understand what exactly you're requesting.
 3              MR. ZERMAY:  Do you have any suggestions on how
 4        to narrow it to what you would be comfortable with
 5        producing subjected to objection?
 6              MS. LEITNER:  It was something to the effect of
 7        the blog and the copyright registrations that you've
 8        identified then, yeah, I think that it would be
 9        relevant here with respect to willfulness.
10              MR. LAROSIERE:  Let me ask you a hypothetical.
11              MS. LEITNER:  Sorry, this is going to take too
12        long for hypotheticals.  We have to work with the
13        facts that are here.  I think that's the problem
14        here, is that you're looking for, like, nebulous and
15        broad things to fit here.  And that's what we're
16        trying to bring back and relate to.  If you can
17        bring it back with respect to the facts here, then
18        yeah, that would be helpful.
19              MR. ZERMAY:  Well, we're trying to uncover the
20        facts in discovery.  We're trying to discover the
21        facts to bring forth at trial.  We don't know all
22        the facts.  As Donald Rumsfeld once famously said,
23        there are no knowns, no unknowns, unknown unknowns.
24        Right now we're dealing with the known unknowns of
25        this blog post.
```

Page 48

1          MS. LEITNER:  I'll just say based on my

2     experience in the Middle District practice, is that

3     as Plaintiff, you should already been have this

4     evidence already there once you've asserted the

5     claims.  It shouldn't be a fishing expedition in

6     discovery to find the evidence to support the facts

7     alleged in the Complaint.  It should have already

8     been there and provided in the initial disclosures.

9          MR. LAROSIERE:  Are you suggesting that

10    Defendants correspondence concerning this blog post,

11    which we suggest is about Plaintiff and his personal

12    friends, is something that we have somehow precluded

13    by not having access to, when Defendant is the only

14    one who has it.

15         MR. LEITNER:  That's not what I'm saying.  What

16    I'm saying is, one, the question is not tied to the

17    subject works.  And two, I'm saying that even when

18    you look at the DDLegio blog that was referred to in

19    the request doesn't even mention the subject works

20    at issue.

21         MR. LAROSIERE:  Is it your position that we can

22    only request materials that on their face relate to

23    Plaintiff's registered works?

24         MS. LEITNER:  Yes, if you're claiming

25    willfulness with respect to the copyright, under

Page 49

1    copyright law, yes.

2        MR. LAROSIERE:  I just want to make that clear.

3    Because I think this will make this conferral go a

4    lot faster.  Respectfully, I don't think that's a

5    defensible position.  I'm trying to be clear for the

6    record as we want to say it today.  It's your

7    position that any material which doesn't on its face

8    reference one of the particular registered works

9    present in the First Amended Complaint is not

10   discoverable evidence?

11       MS. LEITNER:  Can you repeat that?

12       MR. LAROSIERE:  Sure.

13       MR. ZERMAY:  Madam Court Reporter, can you

14   please repeat it?

15       MS. LEITNER:  There's so many double-negatives

16   in there.

17       (Question read by the court stenographer.)

18       MS. LEITNER:  I think it has to have some

19   causal link to the subject works if you're claiming

20   willfulness, yes.  Absolutely.  It has to do with

21   knowledge, notice of the registration of the subject

22   works, and then doing -- and continuing to publish

23   it, even with this knowledge.

24       MR. LAROSIERE:  Do we remember that Rule 26

25   covers any claim or defense?

Page 50

```
 1          MS. LEITNER:  I understand that's your
 2     position, but this is my position.
 3          MR. LAROSIERE:  Can you read Rule 26 to me?
 4          MS. LEITNER:  I'm not reading anything for you.
 5     I know what the rule says.  This is the Defendants'
 6     position with respect to that.
 7          MR. ZERMAY:  Okay.  I guess we sufficiently
 8     conferred about this one.  We have a disagreement
 9     regarding it.
10          MR. LAROSIERE:  I do think that this is going
11     to facilitate a much faster conference, given that
12     your position is that we can only ask for things
13     which on their face relate to registered works.
14          MS. GYEBI:  That's not what she said.
15          MS. LEITNER:  That's not what I said.
16          MR. LAROSIERE:  We won't play this game.
17          MS. LEITNER:  You're using word choices.  I'm
18     saying it has to be sufficiently related.  Does it
19     have to say specifically the exact registration
20     number?  No, but it has to be related to the subject
21     works that you've identified.  Otherwise, we
22     wouldn't have an idea what you're discussing or be
23     able to plausibly respond or defend accordingly.
24          MR. LAROSIERE:  Madam Leitner --
25          MS. LEITNER:  I'm not Madam, I'm Mrs.  I know
```

Page 51

1     we've had this discussion.

2         MR. LAROSIERE:  I'm sorry.  We've never had

3     this discussion.  English is not my first language.

4     I apologize.  I ask you to please bear with me.  In

5     my native tongue that is how we refer to people we

6     are unfamiliar with.  So if you would please bear

7     with me and not continue to stress that point if I

8     reflexively refer to you as Madam Leitner, I

9     don't --

10        MS. LEITNER:  I know, but my preference -- and

11    I said this before -- my preference is Mrs.  But go

12    ahead.  And I apologize if that's not your

13    understanding of our previous conversation, but

14    that's what I have asked for before.

15        MR. LAROSIERE:  I struggle -- I've never had

16    this become an issue.  I'm so sorry if I've offended

17    you by referring to you in what I understand to be

18    the polite and precise -- I just ask that you

19    forgive me if I do it again, because it is how I

20    speak.

21        MS. LEITNER:  Understood.

22        MR. LAROSIERE:  Thank you so much.

23        So I'm trying to facilitate a more rapid

24    conference.  Please understand that this is a theme.

25    We have a lot of requests to go through.  If it's

Page 52

1     your position -- let me take a step back.  Can I

2     accurately reflect an understanding of your position

3     by saying that any request that does not directly

4     refer, not necessarily by registration number, but

5     to one of the registered works at issue, it's

6     outside the scope of discovery?  Because if that's

7     what it is, we can speed through this pretty fast.

8          MS. LEITNER:  I mean, if it's a question about

9     anything related to a blog that doesn't discuss

10    either the Hitchhiker or its copyright registration

11    number, anything that you identified in the

12    Complaint to give us notice; that's the purpose of

13    noticed pleadings; for us to understand.  Anything

14    beyond that, yes, it's outside the scope and that's

15    why 26(b)(1) says what it says.

16         MR. LAROSIERE:  I'm going to read 26(b)(1).

17    I'm very concerned we're not on the same page and I

18    don't want to spend all day here.

19         MS. LEITNER:  Okay.  Do as you may.

20         MR. LAROSIERE:  Thank you so much.  And again,

21    I appreciate you bearing with me.  Now, you cite

22    (b)(1).

23         MS. LEITNER:  Whatever rule you find relevant,

24    please cite it.

25         MR. LAROSIERE:  I didn't bring this up.

Page 53

1      Respectfully, you're the one who is refusing to

2      produce the documents.

3          MS. LEITNER:  That's not accurate.  We have a

4      date stating that we are going to produce documents

5      on or before December 1, 2025.  With respect to

6      requests that are so overly broad that we can't --

7      we're trying to narrow, and we can't respond

8      accordingly.  We're here to discuss that.

9          MR. LAROSIERE:  Are you aware that you only

10     stated that with respect to a single-digit number of

11     Requests for Production and the rest of the Requests

12     for Production you did not state anything?

13         MS. LEITNER:  Okay.  Here is our chance to

14     discuss it and we'll amend our discovery responses

15     accordingly.

16         MR. LAROSIERE:  This is the first time you're

17     saying that.

18         MS. LEITNER:  Because this is the first meet

19     and confer that we're discussing the substantive

20     requests.  So yes, you can say that.

21         MR. LAROSIERE:  Rule 26(b)(1), Discovery Scope

22     and Limits, Scope in General:  Unless otherwise

23     limited by court order, the scope of discovery is as

24     follows:  Parties may obtain discovery regarding any

25     nonprivileged matter that's relevant to any party's

Page 54

1    claim or defense and proportional to the needs of

2    the case, considering the importance of the issues

3    at stake in the action, the amount in controversy --

4    I stress -- the party's relative access to relevant

5    information -- I stress -- the party's resources --

6    I stress -- the importance of the discovery in

7    resolving the issues and whether the burden or

8    expense of the proposed discovery outweighs its

9    likely benefit.  Information within the scope of

10   discovery -- I stress -- need not be admissible in

11   evidence to be discovery.

12        And we've already talked about control, which

13   is what really matters here, because possession is

14   unambiguous; you either have it or not.  But control

15   is what really matters here.  Our honorable judge

16   has pointed us to a case which delineates this.  So

17   you're saying this is why 26(b)(1) says what it says

18   for the position that everything has to be -- what

19   I'm trying to nail down is directly related to the

20   works at issue.

21        I remind you, as you indicate in your response,

22   Plaintiff claimed copyright infringement under 17

23   USC 501 false designation of origin and unfair

24   competition under 15 USC 1125, and unauthorized

25   publication of name or likeness in violation of

Page 55

1      Section 540.08 Florida Statutes.  So we're asking

2      for some material about a blog post that we believe

3      directly related to concerted attempt to harass

4      Plaintiff, his personal friends and employees;

5      which, by the way, the Defendant has sent multiple

6      death threats to following the initiation of this

7      action.

8            Now, I don't need you to address the death

9      threats.  But one of the many things this conduct

10     relates to or bears on or may bear on is the issue

11     of willfulness as to all the works regarding all of

12     the Defendants, which we assert, and Defendant

13     admits in his answer, he has primary command and

14     control of.  We're just asking you, how can we get

15     these documents that only you have and that we need

16     in order to fully prove the issue of willfulness

17     that you dispute?  Please help me.

18            MS. LEITNER:  Sure.  I'm happy to respond.  Two

19     things.  First, with respect to your reading of

20     26(b)(1), I think the key and operative term is

21     claims and defenses.  What we're agreeing to

22     disagree on is proportionality and how it relates

23     to -- your request to this lawsuit.  We're saying

24     it's not proportional because it's not connected to

25     either -- any of the copyrights that are discussed,

Page 56

1       the copyright registration numbers.

2           And secondly, we've already answered this.  We

3       said we don't have this.  To the extent that you

4       would like us to search again and confirm, that's

5       fine.  But otherwise, we're not supplementing a

6       document request that we said we don't have.

7           MR. LAROSIERE:  Thank you so much for your

8       response.

9           MS. LEITNER:  I'm not finished.

10          MR. LAROSIERE:  Sorry.

11          MS. LEITNER:  Being that it's 1:30 and we're at

12      No. 6 and you're reading the rules for us, I think

13      that we should set a time limit for five o'clock,

14      because we can't go any past that time limit.  So if

15      we can agree to -- if we don't continue today, to

16      continue this meet and confer for another day.  And

17      we can let the Court know accordingly and we can

18      file a joint notice with respect to that.

19          MR. LAROSIERE:  It's our position that the

20      Court has ordered us to fully confer on this matter.

21          MS. LEITNER:  She didn't say one day only.

22          MR. LAROSIERE:  We are happy to continue day by

23      day, so we can continue tomorrow.

24          MS. LEITNER:  If you want to come back

25      tomorrow, that's fine.  But I'm just saying as far

Page 57

1      as today's purposes, I don't see us finishing by

2      five.

3              MR. LAROSIERE:  That's entirely up to you.

4              MS. GYEBI:  Well, it's also up to our court

5      reporter.  We didn't anticipate a six-hour meet and

6      confer.  Maybe that should have been discussed

7      beforehand.  But again, if you have any suggestions

8      on how to move this along a bit quicker, we're open

9      to it.

10             MR. LAROSIERE:  Yes.  My large suggestion would

11     be us understanding this issues that we're jousting

12     over right now, because that's probably about

13     40 percent of the requests.

14             MS. LEITNER:  I think I stated the position is

15     that we're agreeing to disagree with respect to

16     proportionality under Rule 26(b)(1) and how the

17     requests are proportional to the claims and defenses

18     that are raised in this lawsuit.

19             MR. LAROSIERE:  Let's -- hold on.  Before we

20     get to that, I have an idea for how we can apply

21     this going forward.  But one thing that I think is

22     important is you just said you don't have it.

23             MS. LEITNER:  It says does not have the

24     documents and/or information responsive to this

25     request.

Page 58

1          MR. LAROSIERE:  Can you read me what was on the

2     line immediately above what you just said?

3          MS. GYEBI:  You can't read it?

4          MR. LAROSIERE:  I would like you to read it for

5     me, if you would.

6          MS. GYEBI:  She's is not going to read anything

7     for you.

8          MR. LAROSIERE:  I'll read it.  I want to make

9     sure we're on the same page.  I'm very sad that we

10    can't be on the same page together.

11         And in light of the foregoing objections,

12    Defendant in his individual capacity does not have

13    the documents and/or information responsive to that

14    request.

15         MS. LEITNER:  I can't produce documents that he

16    doesn't have.

17         MR. LAROSIERE:  You have qualified by in his

18    individual capacity clearly based an

19    misunderstanding of possession, custody and control.

20         MS. LEITNER:  That's based on your opinion.

21         MR. LAROSIERE:  So we can move on, will you

22    produce anything subject to these objections; or

23    will you be standing on the objections as written?

24         MS. LEITNER:  I can't produce documents that he

25    doesn't have.  I've already stated what our response

Page 59

1      is.  And actually, can we agree to discuss requests

2      that we've agreed to at least produce then,

3      because -- or at least ones that we said we don't

4      have?  Because it's -- I think it should be clear

5      with respect to the controlling case law that we

6      can't produce documents we don't have.  And we've

7      already stated we don't have any.  I don't know what

8      other position you can compel.

9           MR. LAROSIERE:  I understand your frustration,

10     I do.

11          MS. LEITNER:  We have already respond to that.

12          MR. LAROSIERE:  I understand your frustration.

13     I really do.

14          MS. LEITNER:  I guess my question is can we

15     skip the questions that say there are none?

16          MR. LAROSIERE:  That would be great if you ever

17     said that.  So what I tell you is every time you

18     declined to produce you said, Defendant in his

19     personal capacity.  What you're doing there, we feel

20     is refusing to disclose the things that he has

21     control over from the Defendant entities.  In fact,

22     there's multiple times where you expressly

23     articulate that that's what you're doing.  It's our

24     position that this isn't a code-compliant response.

25     Code-Complaint response is after a reasonable search

Page 60

```
 1        and diligent effort, you couldn't discover anything
 2        in your possession, custody or control.
 3              MS. LEITNER:  I guess I'm just not
 4        understanding where it says none.  Do you want me to
 5        write none?  We're happy to supplement and say none.
 6              MR. LAROSIERE:  What you wrote was that
 7        Defendant, comma, in his individual capacity.  What
 8        was meant by that is that no responsive documents
 9        exist, period, understanding that Mr. Wilson has
10        primary command and control of, as admitted in the
11        answer, these entities.  That no documents exist
12        concerning any of this stuff?  You can represent
13        that.  We feel it would be shocking that no
14        documents would exist, you know, for this thing
15        that's on the company website.  Do you understand.
16              MS. LEITNER:  I do understand.  I think we can
17        agree to disagree.
18              MR. LAROSIERE:  Agreeing to disagree,
19        unfortunately, doesn't give us positions.  So we're
20        happy to take your position as if your position
21        is --
22              Mr. Zermay, do you have a better way of
23        conveying that?
24              MR. ZERMAY:  I guess given the foregoing, are
25        you standing on the objection in its entirety, or
```

Page 61

```
 1      are you stating that --
 2           MS. LEITNER:  We'll withdraw the time or scope
 3      objection.  But with respect to the objections,
 4      we're standing by it with respect to our response
 5      that he doesn't have documents, we are also standing
 6      by that.
 7           MR. ZERMAY:  That he doesn't have documents in
 8      his individual capacity.
 9           MS. LEITNER:  Correct.  It's directed to
10      Mr. Wilson, correct?
11           MR. ZERMAY:  Yeah, for documents in his
12      possession, custody and control; which again, not to
13      beat a dead horse here, but it's our position he
14      controls his companies that are the Defendant
15      entities in this matter.  So any documents that
16      Defendant entities that he would necessarily have
17      control overlay.
18           MS. LEITNER:  Understood.
19           MR. LAROSIERE:  No. 7 -- so I'll note that
20      you're withdrawing as to time and scope.  But you
21      stand as to the remaining without any further
22      editorialization.
23           MS. LEITNER:  Correct.
24           MR. LAROSIERE:  No. 7 is effectively the same
25      thing with respect to a different blog post.  Do you
```

1      think we have the same position there?

2           MS. LEITNER:  Let me just pull it up real

3      quick.

4           MS. LAROSIERE:  Relating to the post Benchy, IP

5      and 3D Guns.

6           MS. GYEBI:  Is the relevance of this post the

7      same as the relevance of the On Raids and Raiding

8      post of Request No. 6?

9           MR. LAROSIERE:  I think we very thoroughly

10     discussed 6 and I think this is identical.  If you

11     want to represent you have the same answers, I think

12     that would be complete.

13          MS. GYEBI:  No.  I'm asking if the relevance is

14     the same for 6 and 7.

15          MR. LAROSIERE:  Yes.

16          MS. LEITNER:  Then I want to give a complete

17     answer with respect to 6 and 7.  We're objecting --

18     sorry, we're responding with respect the Mr. Cody

19     Wilson doesn't have the documents in his individual

20     capacity.  However, we are producing these documents

21     from Defendant entities based on the discovery

22     requests that were propounded to each of these

23     entities accordingly.

24          MR. LAROSIERE:  So you will not produce

25     anything that -- I'm struggling here.  So Wilson has

Page 63

1      previously produced the drafts and working

2      copies of other blog posts that he authored.  He

3      produced those to former Counter-Defendant John

4      Elik.  Those requests were directed to Wilson in his

5      personal capacity, and they came in on DEFCAD, or

6      whatever letterhead.  He's the author of the post.

7      He admitted that.  So let's just be clear.

8              You're saying if Mr. Wilson says he doesn't

9      have it in his individual capacity, that's excluding

10      something that one of the orgs might have?

11              MS. LEITNER:  No.

12              Amaris, can you explain it a little bit more?

13              MS. GYEBI:  Sure.  My understanding is that we

14      have some level of disagreement on whether or not

15      Wilson has the documents in his capacity.  Your

16      position is whether or not he has it in his

17      individual capacity, to the extent he has control,

18      possession -- I know there's a third on, it's

19      escaping me right now -- we should be producing.

20      Our position originally was -- or as stated was that

21      he doesn't have the documents in his individual

22      capacity, and you-all served these requests on him

23      in his individual capacity.

24              I think we can meet in the middle here.

25      Because the Defendant entities is not a situation of

Page 64

1      them not being parties in this case.  So we

2      represent DEFCAD and we represent Defense

3      Distributed.  To the extent that we find responsive

4      documents in either Defendant DEFCAD or Defense

5      Distributed, we can produce them.

6           MS. LEITNER:  As a courtesy, in good faith to

7      respond to your request.

8           MR. LAROSIERE:  So thank you for coming a

9      little bit.  The question is what is in his

10     possession, custody and control.  And so we don't

11     get to limit that to the entities that you prefer we

12     limit it that to.  The question is does he have any

13     responsive documents in his possessions, custody or

14     control.  If he answers owns -- again, if we look at

15     the case law, if he has a right to legally obtain,

16     it's in his possession, custody and control.  If you

17     want to say, we'll do a reasonable search and

18     diligent effort for materials in his possession,

19     custody and control, that's great.  We don't have to

20     move to compel on that at this point.

21          But if your position is that we have to reframe

22     the question to suggest specific entities that you

23     would have preferred we suggested, that's not

24     complete.  I'm sorry.

25          MS. GYEBI:  No.  Our position is that the

Page 65

1    baseline is relevance.  This man may own a million

2    and one companies.  It's not reasonable or

3    proportional to search these million and one

4    companies for information that you're looking for;

5    particularly considering that the information sought

6    is not even limited to the copyright works that are

7    at issue in this case.  What we're saying is that we

8    understand that DEFCAD and Defense Distributed are

9    parties in this case to.  The extent there are

10   responsive documents to these requests directed to

11   Mr. Wilson in his individual capacity, we will go

12   ahead and produces them.

13        But to the extent that Plaintiff is taking the

14   position of any company that this man has -- that

15   Mr. Wilson has any type of control, possession,

16   could have access, might have access over a million

17   and one, X number of companies, we would say that's

18   not proportional.  And that's not relevant.

19        MR. ZERMAY:  Well, I mean --

20        MS. LEITNER:  That's our position.  If you want

21   to agree to disagree, that's fine.  We can keep it

22   moving.

23        MR. ZERMAY:  We'll have to disagree.  It seems

24   like you're inviting us to play a game of Red Rover,

25   Red Rover, where you call X, Y, Z Corp. over

Page 66

1    whatever corporation or entities he has control

2    over.  I mean, it's not us to play the guessing

3    game.

4        MS. LEITNER:  You're operating as if you're

5    asking us to assume -- agree to a legal conclusion

6    that Mr. Wilson is operating his companies as an

7    alter ego or single enterprise theory, which we

8    absolutely cannot do.

9        MR. LAROSIERE:  Do you suggest that any

10   individual who owns an enterprise is necessarily an

11   alter ego.

12       MS. LEITNER:  Never said that.

13       MR. LAROSIERE:  I don't think we ever said

14   that.  Wilson admitted he has primarily control over

15   these entities.  That doesn't follow that they're

16   alter egos immediately, right?  That's something we

17   think and that we're trying to prove.  But he's

18   admitted he has primary command and control over

19   these entities.  We're not asking for all documents

20   reflecting money.  We're asking for materials

21   specifically related to an April 22, 2025 blog post.

22       MS. LEITNER:  Which we said he doesn't have.

23       MR. LAROSIERE:  You said that he, in his

24   individual capacity -- which invites the Red Rover

25   game, which is not appropriate.

Page 67

1          MS. LEITNER:  What's not appropriate is,

2      again -- and I'll state it here -- is agreeing to a

3      legal conclusion that he is operating his companies

4      the way you say he is under the alter ego theory.

5      That's not accurate.  That's not appropriate under

6      the rules.  And so we've already responded

7      accordingly saying none.  To the extent that, again,

8      DEFCAD may have the documents, then yes, we will

9      produce it.  But otherwise, we've already responded.

10          MR. LAROSIERE:  Okay.  So is it okay with you

11      if I, for my notes, put the identical response for 6

12      and 7?

13          MS. LEITNER:  Yes.

14          MR. LAROSIERE:  Thank you so much.

15          No. 8, this is about the removal of copyright

16      notices from works.  We have a litany of objections

17      to time and scope, relevance, work product.  And

18      then we do have an agreement to produce on a rolling

19      basis by December 1st.  So this is one of the few

20      issues you answered.  So our question here is, are

21      we going to have the same -- to use the shorthand --

22      Red Rover issue?  Or will we go through all of the

23      things in his possession, custody and control

24      concerning the removal of copyright notices from any

25      work, and to narrow it as far as time and scope?

Page 68

1      You're right, that wasn't mentioned.  We can say
2      January 1, 2018.
3             MS. LEITNER:  Again, we would request to narrow
4      it from January 1, 2022 to the present, based on the
5      reasons stated earlier.  With respect to the
6      production, we'll produce any documents responsive
7      to Request No. 8 on the 1st.  And again, we limited
8      it to subject works with the capital W, as defined
9      that the works that are identified in the Complaint.
10            MR. LAROSIERE:  And you refuse to --
11            MS. LEITNER:  There's no refusal.  We're
12     producing documents that are not -- documents that
13     are responsive to the claim -- it's a straight
14     fishing expedition for any and all documents
15     relating to copyright.
16            MR. LAROSIERE:  Involved in the removal of any
17     copyright notices from any work, is what we asked
18     for.
19            MS. LEITNER:  Any work is too broad.
20            MR. LAROSIERE:  It's your position that any --
21     some work that Plaintiff does not own, if
22     Plaintiff -- if Defendant Wilson said, take out the
23     copyright notice, who cares, that law doesn't apply
24     to me, it's your position that's not discoverable?
25            MS. LEITNER:  I said it's not relevant here.

Page 69

1          MR. LAROSIERE:  Okay.  Thank you.

2          No. 9, documents and communication -- the word

3     concerning, I'll say right now, it should say

4     containing.

5          MS. GYEBI:  Okay.

6          MR. LAROSIERE:  Containing the word Amigo

7     Verde, would be a lot easier.  Then you can just --

8          MS. LEITNER:  Wait, you said what.

9          MS. GYEBI:  Concerning is supposed to be

10    containing.

11         MR. LAROSIERE:  Concerning the Amigo Verde is

12    probably too vague.

13         So would you agree -- well, in response to this

14    it said, Defendant in his individual capacity does

15    not have the documents and/or information responsive

16    to this request.  This request is better directed to

17    Defendant entities.  And I think we've beaten that

18    horse hard enough.  Will you be making production

19    subject -- production in response to this request

20    which you have not objected to?

21         MS. LEITNER:  It said none.

22         MR. LAROSIERE:  No.  You said Defendant in his

23    individual capacity --

24         MS. LEITNER:  I know what it says.  But it says

25    none.

Page 70

1          MR. LAROSIERE:  Then you said, this request is
2     better directed to the Defendant entities, which
3     Wilson has admitted he has primary command and
4     control of each.
5          MS. LEITNER:  I'll clarify.  Request No. 9 says
6     none.  Essentially, as we said earlier, as a
7     courtesy we're producing documents, to the extent
8     the Defendant entities have them, by December 1,
9     2025.  But otherwise, these are requests directed to
10    Mr. Wilson.  So to the extent he doesn't have it,
11    then he doesn't have it in his possession, custody
12    or control.
13         MR. LAROSIERE:  For this one you will produce
14    any documents --
15         MS. LEITNER:  Yeah, DEFCAD, Defense
16    Distributed --
17         MR. LAROSIERE:  Or Dioskouroi?
18         MS. LEITNER:  We don't represent Dioskouroi.
19         MR. LAROSIERE:  It doesn't matter if you
20    represent them or not.  You represent Wilson.  If he
21    has it --
22         MS. LEITNER:  But the requests aren't directed
23    to Dioskouroi either.  They were to Defense
24    Distributed, DEFCAD and Mr. Wilson.
25         MR. LAROSIERE:  Again, the question is whether

Page 71

1      he has it in his possession, custody and control.

2      And that would include --

3            MS. LEITNER:  Dioskouroi?  I can just tell you

4      right now, they don't have anything, has nothing to

5      do with the lawsuit.

6            MR. LAROSIERE:  Well, unfortunately, the

7      unsworn, unverified representations of counsel don't

8      mean much in this context.

9            MS. LEITNER:  When you get Mr. Wilson's

10     deposition, he'll confirm that.  Again, I can't

11     speak for Dioskouroi, because we don't represent

12     them.  And you didn't serve discovery requests with

13     respect to Dioskouroi, LLC.

14           MR. LAROSIERE:  We served discovery requests on

15     Defendant Wilson, who owns multiple entities --

16           MS. LEITNER:  I'm just clarifying that with

17     respect to Dioskouroi, our firm does not represent

18     it.  I can't give a position with respect to whether

19     it has it or not.  And you didn't serve discovery

20     requests to Dioskouroi.  That's it.

21           MR. LAROSIERE:  How about this; in our notice

22     to the Court, which we're to file seven days after

23     the conclusion of our conference, let's submit to

24     the Court for resolution whether, you know, this

25     question of possession, custody or control.  It's

Page 72

1     our position that even when you offer the limited

2     concession of DEFCAD and Defense Distributed, that

3     that's still not complete.  It would be just as

4     important if it was owned by something else that he

5     had in his possession, custody and control.

6          Do you think that's a way for us to go forward

7     and not keep having this discussion, if we could

8     agree that the Court needs to resolve this question

9     of possession, custody and control?

10         MS. LEITNER:  You mean control under 26(b)(1),

11    yes, and proportionality.

12         MS. GYEBI:  I would have to look back and see

13    exactly what the Court ordered.  I don't want to

14    overstep what the Court ordered.  But to the extent

15    the order permits us to submit additional questions

16    to the Court for resolution.

17         MS. LEITNER:  Just for the record, I'm going

18    to submit -- mark this as an exhibit, Defendants'

19    Exhibit 1, which is to order in dated November 12,

20    2025.

21         (Defendants' Exhibit No. 1 was marked for

22    identification.)

23         MS. GYEBI:  Can we take a quick five minutes?

24    My laptop just died.

25         (A break was taken.)

Page 73

1          MR. LAROSIERE:  I don't remember where we left

2      off with No. 9.  I think the position we're at is

3      it's your position that his individual capacity has

4      some limitation as to where we might search.  And

5      it's our position that any entities he owns that he,

6      you know, can -- legally has the right to that

7      information.  And that's where our difference is.

8          MS. LEITNER:  Yes.

9          MR. LAROSIERE:  I'm going to think of a

10     shorthand for that.  And let's just call that entity

11     control.  And so from now on when we say entity

12     control, we're referring to whole discussion we had,

13     instead of repeating it for every question.

14         MS. GYEBI:  Entity control will essentially

15     mean our objection or the discussion, the entirety

16     of the discussion?

17         MR. LAROSIERE:  Dozens and dozens of times you

18     say the same thing in your responses, in his

19     individual capacity.  So we fully discussed that.

20     And I think we know each other's positions.  Just so

21     we can go faster, how about I just say that's the

22     entity control problem?  And then if I say that and

23     you guys say yes, then we're basically saying we had

24     this discussion, it's covered by the same thing.

25         MS. LEITNER:  I think it would make more sense

Page 74

1          if we said it's a control issue with respect to

2          Mr. Wilson, not the entities.  Because that's what

3          we're really establishing.  So the control issue,

4          then, as to Mr. Wilson and we can shorten to the

5          control issue.

6                  MR. LAROSIERE:  Okay.  The control issue,

7          that's fine.

8                  MS. LEITNER:  Yeah.

9                  MR. LAROSIERE:  That's the bulk it of.

10                 So No. 10 -- then I'm also going to do the same

11         thing for the January 1, 2018.  I don't think we

12         need to relitigate this between ourselves.  Let's

13         just say the 2018 issue.

14                 MS. LEITNER:  Because really it's 2018 to 2022.

15                 MR. LAROSIERE:  You suggested that the earliest

16         registration date is 2022, so that's the time that

17         should be subject to discovery.

18                 MS. LEITNER:  I think it's -- from my

19         recollection, it's based on Certificates of

20         Registration.  Yeah, the copyright registrations and

21         the Deeds of Creation.

22                 MR. LAROSIERE:  I'm just trying to avoid us

23         circling the drain, because it happens a lot.  Do

24         you agree that we can do the same thing?

25                 MS. LEITNER:  Can we just call it the time

Page 75

1     frame issue?

2          MR. LAROSIERE:  Absolutely.

3          MS. LEITNER:  Okay.

4          MR. LAROSIERE:  So when you mentioned the

5     Protective Order, you're referring to the one -- the

6     agreed Protective Order; is that correct?

7          MS. LEITNER:  Did I mention it?

8          MR. LAROSIERE:  In all of the single-digit

9     responses where there was a --

10         MS. LEITNER:  Yeah, the protective order, I

11    think there was something --

12         MR. LAROSIERE:  There was an agreed-upon

13    Protective Order.

14         MR. LEITNER:  Yeah.  There was a specific

15    docket the Court created.

16         MR. LAROSIERE:  Actually, it was interesting

17    that the Court never actually took action on it, but

18    it's a contract.  That will be an attachment to the

19    notice regarding compliance.

20         MS. LEITNER:  Yeah, because I don't think the

21    District requires to you file a stipulated

22    Protective Order, as long as the parties have an

23    agreement.  Whatever I related -- I think I

24    identified the doc number -- I didn't.  It would be

25    --

Page 76

1          MR. LAROSIERE:  There's only been one.

2          MS. LEITNER:  It's the only Protective Order

3     that's been entered, yes.

4          MR. LAROSIERE:  Which is an agreement between

5     the parties.  Okay.  That's fine.  And do we -- I

6     think the control issue is at play.  The control

7     issue is going to be at play with respect to any

8     things that are produced here?

9          MS. LEITNER:  Yes.

10          MR. LAROSIERE:  So then 11 is a subset of 10.

11     So 11 Jim Blackburn is a private investigator.  And

12     so the response to that is such information does not

13     lead to admissible evidence concerning Plaintiff's

14     claims, which is not the standard.

15          MS. LEITNER:  We're standing by the objections

16     with respect to Jim Blackburn, who is a nonparty.

17     And our other position is that if you find documents

18     that are relevant, you can subpoena him.

19          MS. GYEBI:  I have a quick question.  Why is

20     Plaintiff not limiting this request to this case?

21          MR. LAROSIERE:  I'm not sure what you mean.

22          MS. GYEBI:  You're asking for all conversation

23     history, contracts, materials, communication with

24     Jim Blackburn without limitation, except for the

25     fact of the date on January 1, 2018 onward.  My

Page 77

1      question is why?  Why is this breadth of information

2      being requested?

3           MR. LAROSIERE:  I'm not sure how many

4      individuals Defendant paid Jim Blackburn to stalk.

5      But we know that he paid him to stalk some of

6      Plaintiff's personal friends.

7           MS. LEITNER:  I guess, are you correlating this

8      to willfulness again?

9           MR. LAROSIERE:  Sure.  It is -- Defendants'

10     interactions with Jim Blackburn were intended to

11     harass Plaintiff's friends and his employees.  This

12     conduct is --

13          THE COURT STENOGRAPHER:  Slow down, please.

14          MR. LAROSIERE:  Sorry.

15          THE COURT STENOGRAPHER:  Go ahead.

16          MR. LAROSIERE:  That's it.

17          MR. ZERMAY:  To add the other side of the coin,

18     it's my go-to, and perhaps does go to Mr. Wilson's

19     defenses, for example -- I'm not saying this is the

20     case.  But if there's some communications between

21     anybody saying they don't license to have the

22     copyright information that was in Mr. Blackburn's

23     possession, then we have to know that to be able to

24     anticipate or refute that at trial.  So it cuts both

25     ways, just to prove our case and to defend against

1      any affirmative defenses or anticipatory defenses.

2          MS. GYEBI:  I guess my question is why is this

3      so broad?  Why is the request to broad?  Because the

4      examples that you're giving, while I don't quite see

5      your point, I can understand why it's being made.

6      This request seeks everything in the kitchen sink

7      from January 1, 2018 until now.  If the goal and/or

8      belief of Plaintiff is this there's some level of

9      evidence in the communications or other documents

10     with Jim Blackburn that concern Plaintiff or his

11     friends, why is it that everything is being

12     requested without limitation, without reference to

13     Plaintiff or his friends from January 1, 2018

14     onward?

15         MR. ZERMAY:  The suggested qualifier that you

16     presented would constitute a legal conclusion, when

17     you say regarding the claims at issue in this case,

18     or whatever.  Again, whether or not the claim is the

19     at issue in this case would perhaps be a legal

20     conclusion.  So just using --

21         MS. GYEBI:  Is Plaintiff looking for

22     information just relating to claims in this case?

23         MR. LAROSIERE:  Let me answer that.  Let's say

24     there's a ton of information responsive from Jim

25     Blackburn -- we don't expect to be the case.  If

Page 79

1    there were a ton of investigations he ordered from

2    Blackburn, well, that would actually tend to

3    disprove the willfulness element.  That relates to

4    willfulness.  We anticipate it's going to go the

5    opposite direction.  But if we did limit it to only,

6    you know, concerning these people, and we made the

7    argument saying, obviously he only contracted this

8    guy to harass these people, what's the obvious

9    counterargument?  We'll, you've only asked about

10   documents about yourself, right.

11        I guess it's kind of -- I'm a little taken

12   aback by the suggestion that there's this massive

13   universe of contracts with Jim Blackburn.  But I

14   think that -- I hope that answers your question.

15        MS. LEITNER:  I guess, I -- to Amaris' point,

16   if you believe there was a commingling of the

17   assets, how come these questions weren't directed to

18   the entities?

19        MR. LAROSIERE:  So the rules allow us to

20   conduct discovery --

21        MS. LEITNER:  I understand what the rules are.

22   I'm just trying to understand what -- I mean, you

23   can do discovery as is.  I'm just trying to

24   understand why these were crafted the way they were.

25        MR. LAROSIERE:  I think we're trying to avoid

Page 80

1      the Red Rover game; which is already evident in

2      those very responses, where Wilson says, ask one of

3      my entities.  And then we'll get there and one of

4      the entities in response to that very information

5      points to a different entity.  That's -- it's not

6      very common in civil litigation where you have all

7      these entities that are admittedly controlled by one

8      person, but we have that here.

9            So for the sake of efficiency, thought it made

10     the most sense to go to the horse's mouth -- not to

11     suggest anyone is a horse.  I know we used that

12     analogy several times.

13           MS. LEITNER:  I guess, how do you shoe that

14     Dioskouroi is an operated by a single -- by

15     Mr. Wilson?

16           MR. LAROSIERE:  I'm confused that you keep

17     bringing up the single entity thing.

18           MS. LEITNER:  Because you alleged it in the

19     Complaint.

20           MR. LAROSIERE:  We have.  And we haven't

21     submitted any saying produce the documents that say

22     you're a single entity.  We're getting at that and

23     we expect to build that from the documents we have

24     requested.  And I think it would be improper for us

25     to demand documents specifically to support our

1    legal conclusion.  So none of -- these requests were

2    tailored not to rely on that legal conclusion.  Does

3    that make sense?

4         MS. LEITNER:  It does, but it doesn't, sorry.

5    I detract, sorry.  I just had those questions in my

6    head.

7         MR. LAROSIERE:  Thank you for asking.

8         So I think Destin Investigations, Eric Nathan

9    and those are all basically the same situations.  Do

10   we represent that we have the same -- we would wind

11   up having the same conversations and come to the

12   same conclusions with respect to that?

13        MS. LEITNER:  With respect to time frame and

14   nonparty.

15        MR. LAROSIERE:  Then we can subpoena him.

16        MS. LEITNER:  Yes.

17        MR. LAROSIERE:  Same thing with 14.  This is

18   with Nathan Mayer; do we agree that's about the

19   same?

20        MS. LEITNER:  Yes.

21        MR. LAROSIERE:  Same thing with 15, which

22   relates to Thomas Gibbons-Neff.  The only difference

23   is Gibbons-Neff is -- as we go down from here, these

24   aren't PIs.  These are authors and researchers.

25        MS. GYEBI:  As we go down from where; starting

Page 82

1    with No. 15?

2         MR. LAROSIERE:  Yes.  They're worded the same

3    way.

4         MS. GYEBI:  Just to I understand, you want

5    communications with authors that Mr. Wilson may

6    have?

7         MR. LAROSIERE:  No.  The idea here is that

8    Defendants' interactions with Thomas Gibbons-Neff

9    were intended to harass Plaintiff.  We know that

10   because of the articles that Gibbons-Neff ultimately

11   wrote, which -- right?  And so we're asking for

12   conversations with Gibbons-Neff in this time period;

13   contracts and any documents that he exchanged with

14   Gibbons-Neff.  We're not asking for the articles

15   that Gibbons-Neff wrote.  We have it.  We're asking

16   for conversations, contracts, material.  And so it's

17   written the same way as the PI stuff.  It really

18   gets to the same issue.

19        MS. GYEBI:  I apologize if you answered it

20   before.  But I think that, at least I'm still not

21   understanding that if the goal and/or the

22   Plaintiff's belief is that these are meant to harass

23   Plaintiff or the former Co-Defendants or Plaintiff's

24   friends, why is the request not, in turn, narrowed

25   to this belief?

Page 83

```
 1          MR. LAROSIERE:  For the same reasons we talked
 2     about with the PIs.  The idea is, let's say you hand
 3     over dozens of e-mails with Gibbons-Neff
 4     concerning --
 5          MS. GYEBI:  His favorite color.
 6          MR. LAROSIERE:  Yeah, and cars, right.  Then
 7     that tends against our claim.  You get what I'm
 8     saying.  But ultimately, I'm not saying that changes
 9     your response.  But I think it means in material
10     they are the same thing.
11          MS. GYEBI:  So you would agree that
12     communications with between Mr. Wilson and, let's
13     take, Thomas Gibbons-Neff, if they are having a
14     conversation about the fact that Mr. Wilson's
15     favorite color is purple and Mr. Gibbons-Neff likes
16     pink, you still want that communication because you
17     believe it's relevant to prove the point you're
18     trying to make?
19          MR. LAROSIERE:  So I appreciate your word
20     crafting, but, no.  We are asking this because it's
21     calculated to lead to the evidence which bears on
22     the issues of willfulness and Wilson's awareness of
23     his infringement, and otherwise the behaviors that
24     are listed in the Complaint; or that it may lead us
25     to other individuals that he has communicated with
```

Page 84

1    where he has made such aversions.

2         I'm telling you the reason we asked for

3    everything with him is because we expect that most

4    things will be directly responsive, and that then we

5    can make the representation exactly as it is; that

6    most things were about that.

7         MS. GYEBI:  I guess maybe you're answering it.

8    I'm going to try one more time.  If not, we'll leave

9    the cards where they fall.  I think you're

10   acknowledging that the way the request is written

11   will necessarily bring in irrelevant information

12   about Mr. Wilson's favorite color or his favorite

13   car or even Thomas Gibbons-Neff's favorite movie.

14   And you're saying that's fine, we want that

15   information.  And the basis is that you want the

16   information because it will then show, potentially,

17   that most of the conversations between Mr. Neff and

18   Mr. Wilson concerned harassment versus other topics,

19   or the reverse that it concerned other topics versus

20   harassment?

21        MR. LAROSIERE:  We're just trying to get to the

22   bottom of it.

23        MR. ZERMAY:  I mean, the term in the discovery

24   proportionality is qualified by the term reasonably

25   calculated.  So to the extent there's stuff that may

Page 85

1    be swept up that is --

2          MS. GYEBI:  Irrelevant.

3          MR. ZERMAY:  Again, that's qualified by the

4    term reasonable.  And again, a lot of stuff is very

5    like, you know, the color purple or my favorite dog.

6    Well, then to borrow a phrase in my favorite

7    19th-Century English detective (indiscernible) it's

8    like the Curious Case of the Dog that Didn't Bark or

9    the Adventure of Silver Blaze where the proof that

10   the dog didn't bark in the night is, itself,

11   evidence that leads to the person that stole the

12   horse Silver Blaze.  If there's no there there, then

13   that is evidence that would support your claim that

14   it wouldn't go to willfulness.

15         MS. GYEBI:  I don't think we need to support

16   our claim, but sure, if that's the position

17   Plaintiff is taking.

18         MR. LAROSIERE:  And so I'm going to -- what I'm

19   going to write in my notes is the same thing I wrote

20   for 13 sand 14, which is you're standing by your

21   objections and you're suggesting that this person

22   could be subpoenaed if we felt it was relevant.  I

23   didn't put you're directing us to do it.  I'm not

24   putting words in your mouth.

25         MS. GYEBI:  They're your notes.  You can

Page 86

1    honestly write anything.

2         MR. LAROSIERE:  I would like it to be easy for

3    us to then get together and give our report.  I

4    don't want us to then have to have a pitched bayonet

5    battle over what goes in the report.

6         MS. GYEBI:  I think that's the goal all around.

7         MR. LAROSIERE:  16, same thing to respect to

8    Lizzie Dearden.  Shall I put the same thing?

9         MS. GYEBI:  Yes.

10        MS. LEITNER:  Yes.

11        MR. LAROSIERE:  Thank you.  17, same thing with

12   respect to Rajan Basra; can I put the same thing?

13        MS. GYEBI:  Yes.  Just for clarity, they're

14   still talking about writers and authors of certain

15   articles?

16        MR. LAROSIERE:  Yes.

17        No. 18, might have to talk about this one for a

18   minute.  So this basically combines an earlier

19   request, but without specific mention of a

20   journalist.  So because of that, we narrow it to

21   specifically say that the conversation with the

22   media representative relates to this litigation,

23   Plaintiff himself, any other former

24   Counter-Defendants, copyright or any of his claims

25   or defenses brought in this litigation.

Page 87

1           MS. GYEBI:  You don't think copyright is

2       overbroad?

3           MR. LAROSIERE:  No, I don't.  And the reason I

4       don't think it's overbroad is because he wrote a

5       book titled Black Flag White Paper.  And he invites

6       people to donate money to him to support his legal

7       efforts in uncovering the truth about copyright.

8       And so the way this man represents to others about

9       copyright is pretty important, in our opinion.

10          MS. GYEBI:  Why?

11          MR. ZERMAY:  Again, it would go to willfulness.

12      If he's -- for example, to use -- it's probably

13      evident what I would say regarding proving our case;

14      if the guy is saying, to heck with copyright law,

15      it's not a real area of law, it's unconstitutional,

16      it's unethical, that would go to willfulness or at

17      least lead to potentially the discovery of

18      admissible evidence.

19          But also if he is skittish about copyright law

20      and says, my God, we're trying our best to comply

21      with this stuff, we're not breaking copyright law;

22      we're trying to potentially avoid Mr. Larosiere's

23      copyright because we so deeply intrinsically respect

24      his right to his intellectual property, and trying

25      to facilitate the law.  Well, that would to undercut

Page 88

1        our narrative that he's willfully and intentionally

2        recklessly discarding copyright law.  It's a knife

3        that cuts both ways.  That would be our position

4        regarding that.

5            MS. GYEBI:  So you're asking for any

6        communications relating to the subject of copyright,

7        but you only want it for his stance on copyright?

8            MR. LAROSIERE:  No.  It's anything regarding

9        copyright.  It would be odd, certainly, to have a

10       conversation with a journalist about the topic of

11       copyright that doesn't cover anything that would be

12       in some way relevant to our claims and defenses,

13       right?  Especially when, again, willfulness is a

14       cornerstone here.  And there's other claims, as

15       well, right, the publicity and things like that that

16       are generally caught up in this broader intellectual

17       property -- people often, and Defendant very often

18       as a public figure goes out and speaks about that.

19            So again, I think that the reason it's phrased

20       the way it's phrased is because we don't expect

21       there would be too much, right?  I mean, I don't

22       know how many hours there are in the day to talk to

23       journalists.  We wrote it this way to be limiting.

24       We don't want to hear everything he ever said to a

25       journalist.  We want to see things he said to a

Page 89

1          journalist concerning this litigation; Plaintiff,

2          former Counter-Defendants, copyright.  And then E is

3          really -- honestly, you can forget E because it

4          concerns this litigation.  It's part of it.  I think

5          it's pretty clear what we're are getting at there.

6                  MS. GYEBI:  And the relation of the former

7          Counter-Defendants?

8                  MS. LEITNER:  Why are you guys still asking

9          about that?

10                 MR. LAROSIERE:  Sure.  We have evidence that

11         Defendant has reached out to multiple journalists

12         and that he already admitted to such in earlier

13         discovery.  So his interactions with these

14         journalists were directly intended to harass

15         Plaintiff, his friends and employees.  And we

16         believe many of these happened before the filing of

17         the lawsuit to specifically frustrate any attempts

18         that might happen in this action.  So that's the

19         thing there.

20                 MS. LEITNER:  I guess my question would be what

21         Eleventh Circuit case law are you relying on as far

22         as your definition of willfulness?

23                 MR. LAROSIERE:  Sure.

24                 MS. LEITNER:  So we can get an understanding as

25         to why you believe it defines the information that

Page 90

1      you're requesting here.

2            MR. LAROSIERE:  Again, the standard of

3      discoverable information is extraordinarily broad.

4            MS. LEITNER:  I understand that, but the

5      definition of willfulness is not broad.

6            MR. LAROSIERE:  Yeah, one second.

7            We'd be happy to hand you some Eleventh Circuit

8      cases, but it's --

9            MS. LEITNER:  Just so I can understand.

10           MR. LAROSIERE:  It's similar to intentional.

11           MS. LEITNER:  I want to know what the Eleventh

12     Circuit says about it.

13           MR. LAROSIERE:  Sure.

14           MS. LEITNER:  If you want to send it later --

15           MR. LAROSIERE:  Yeah, absolutely.

16           MS. LEITNER:  -- Unless you have the section

17     now.

18           MS. LAROSIERE:  I have 17 US Code Section 504.

19     Says that, again, it's the copyright owner's burden

20     to prove that the infringement was committed

21     willfully.  So it turns on 504, then the Eleventh

22     Circuit, there's a series of cases describing, which

23     we can go over tonight and send you before tomorrow

24     morning.  But the only subsection under 504

25     specifically states that nothing in this paragraph

Page 91

1    limits what may be considered willful infringement.

2    It's a very -- I don't want to say broad because

3    it's not really broad.  But it's a very fact

4    intensive inquiry, right?  So where it's our burden

5    to establish this, we need access to the information

6    to carry that burden.

7        So in your response to Request No. 18 you said

8    that Defendant is willing to meet and confer

9    regarding a narrow request as to information sought

10   for this litigation and Plaintiff.  And I don't

11   really understand what you meant by that.

12       MS. LEITNER:  Because this litigation, you

13   appeared to expand the definition into the

14   counterclaim, which has been dismissed.  Then

15   Plaintiff because -- again, just to verify.  So the

16   Plaintiff and/or Counter-Defendant because, it seems

17   like you -- although the requests were served after

18   the counterclaims were dismissed, you seemed to make

19   it in play with respect to Request No. 18.

20       So I just wanted to clarify as to who Plaintiff

21   and Counter-Defendants in this litigation refers to.

22       MR. LAROSIERE:  Plaintiff is Plaintiff.

23   There's only one Plaintiff.  Counter-Defendants is

24   the former Counter-Defendants.  And this is not

25   asking for material specifically supporting any

Page 92

1          claims as to the Counter-Defendants.  It's asking

2          for communications with journalists regarding these

3          people.

4               MS. LEITNER:  They are no longer named in the

5          lawsuit.  Why is this relevant under 26(b)(1)?

6               MR. LAROSIERE:  Because some --

7               MS. LEITNER:  I think it's willfulness, but

8          just I need to know.

9               MS. LAROSIERE:  It's willfulness, but it also

10         is calculated to include general discussions on

11         how -- with these specific people, which may lead us

12         to discoverable additional practices that he has

13         undertaken with respect to copyright and his

14         treatment of people's copyrights.  Because it's also

15         our position that most of the Counter-Defendants

16         were people who he was concerned he may have been

17         violating the copyright of.

18              MS. LEITNER:  So we're going to agree to

19         disagree.  Because I understand if we're defining

20         this litigation as this litigation, and then the

21         Counter-Defendants aren't going to be at play.

22         Plaintiff would be you.  We understand that.  We'll

23         be able to produce documents with respect to this

24         request.  But we would ask that you narrow it again.

25         We're going to have this TFI issue with a January

Page 93

1    time frame issue.  And how it's not -- the requests
2    are not attenuated to subject works.  Those are the
3    two main things; subject matter, time frame and
4    proportionality under 26(b)(1).
5        MR. ZERMAY:  It's almost 2:30 can we take a
6    seven and a half minute break?
7        (A break was taken.)
8        MR. LAROSIERE:  Now 19 is a -- so we talked
9    about 18.  19, we're asking in the period that you
10   have identified, right, January 1, 2022; we're
11   asking for conversation, histories, contracts and
12   communications that directly concern Fuddbusters;
13   which as we know is the Plaintiff.  It's one way of
14   referring to Plaintiff.  We got, you know, the copy
15   paste -- we got similar objections that were in the
16   response to everything else.  And then a response
17   saying that Defendant in his individual capacity
18   does not have the documents, and that it's better
19   directed to the Defendant entities.
20       MS. LEITNER:  I mean, I stand by the
21   objections.  We would likely have -- as a courtesy,
22   I'm sure DEFCAD likely have documents responsive to
23   this request, so we'll produce them.
24       MR. LAROSIERE:  Exclusive to DEFCAD?
25       MS. LEITNER:  I don't know about exclusive.

Page 94

1     We're still going through everything.  We're almost

2     done.  At some point -- and we need to discuss ESI

3     terms, but if not we'll go with what it is.

4          MR. LAROSIERE:  We're going to go with the

5     rules.  So again, we -- so are we going to submit

6     this to the judge to resolve -- what was our

7     shorthand?

8          MS. GYEBI:  Control issue.

9          MS. LEITNER:  Yeah, the control issue.

10          MR. LAROSIERE:  We don't have the time frame

11     issue here; we can agree this is a control issue.

12          MS. LEITNER:  Correct.

13          MR. LAROSIERE:  Same thing but Matthew

14     Larosiere; same thing, control issue?

15          MS. LEITNER:  I think I have a TFI issues

16     because it's not 2022.  And then -- so we're

17     producing documents December 1st.  To the extent

18     those documents on the 1st aren't full and complete,

19     you can raise an issue at that point.

20          MR. LAROSIERE:  So we do have -- it will be the

21     1st -- I think what we'll do is represent -- because

22     we won't have time to review your production on the

23     1st, because that's the date that our report to the

24     Court on outstanding issues is due.  I think we'll

25     just say the control issue still pertains to this.

1    Because I anticipate that Defendants will attempt to

2    invoke some kind of shield as to any of the other

3    entities that might have -- especially giving the

4    -- whatever.

5         Anyway, 21, same thing but about Plaintiff's

6    employee John Elik, who as we know was the

7    contracted author of several of the works at issue.

8         MS. LEITNER:  Okay.  I don't know if you've

9    defined Ivan the Troll, but there are some responses

10   with respect to Mr. -- your responses -- Plaintiff's

11   responses that you have published some documents

12   under this handle, not just John Elik.  So I just

13   wanted to make sure we stated that.  And I think

14   that's why there's also an overbroad objection, just

15   because we wanted to clarify with respect to the

16   handle.

17        MR. LAROSIERE:  And there's a separate request

18   that names his individual name.  This is why there's

19   two separate requests is to prevent this type of

20   gamesmanship.  Not accusing you of gamesmanship.

21   Would be gamesmanship is saying, oh, when I wrote

22   Ivan the Troll, I actually meant whatever.  That's

23   why it was brought this way.

24        MS. LEITNER:  I guess our issue is with respect

25   to the definition of Ivan the Troll, that would have

Page 96

1    solved at least our understanding of who you're

2    asking for.  But I think --

3        MR. LAROSIERE:  The answer says information

4    seeks information concerning John Elik's handle Ivan

5    the Troll.

6        MS. LEITNER:  At that time we hadn't received

7    your response to our interrogatories where you state

8    sometimes the Plaintiff publishes or provides

9    documents under -- or information under Ivan the

10   Troll.

11       MR. LAROSIERE:  That was in the Complaint.  And

12   it one specific work that Plaintiff authored under

13   the pseudonym of his best friend because they

14   thought it would be funny.

15       MS. LEITNER:  Let me check the Complaint,

16   because I don't remember -- that was not based on my

17   understanding.  That's why the responses are the way

18   they are.  To the extent it is alleged that way, we

19   are happy to amend this response.

20       MR. LAROSIERE:  We should expect an amended

21   response, not necessarily with the complete

22   production, understanding you may make time to do

23   so.  But should we expect a reframed response --

24   again, not saying you have to provide all the

25   documents -- within seven days so we can identify

Page 97

1       whether or not this has been resolved?

2            MS. LEITNER:  We can produce it on the 1st with

3       all the responses.  But I just want -- now that

4       we've clarified it could be John Elik, it could be

5       you, then we have more of an understanding how to

6       respond to this request.  We would at least amend it

7       as far as information -- our responses relating to

8       information concerning John Elik and also include

9       Plaintiff.  Otherwise, we'll produce any documents

10      responsive to this request on December 1st, but also

11      stand by our objections that -- the TFI objection.

12           MR. LAROSIERE:  22 is asking specifically for

13      documents sufficient to, again, narrow, identify the

14      real estate transactions involving this particular

15      piece of real estate.  You say, this seeks

16      information concerning real estate property which

17      has no bearing on the claims and defenses in this

18      action.  I think we've very -- you know, earlier in

19      the beginning we talked about what the theory is

20      here specifically with respect to transactions

21      involving the family members.  Should we represent

22      this is the same issue as those requests regarding

23      the gifts to family members?

24           MS. GYEBI:  Are you saying 8209 Marshalls Point

25      Drive was a gift?

1          MR. LAROSIERE:  I don't know.

2          MS. GYEBI:  Why are you asking about this

3     address?

4          MR. LAROSIERE:  Because we know it was

5     transferred to his sister.  And also, to be frank,

6     we have some information that's been given to us

7     that Mr. Wilson gloats about hiding his assets.  And

8     so we think it's relevant, again, to the same issues

9     we talked about.  This is all asset diversion stuff.

10    Why his sister who lives in Arkansas would wind up

11    with a jetty in Austin, or whenever it is, we think

12    is calculated to lead to materials that relate to

13    those allegations.

14         MS. GYEBI:  So Plaintiff's contention is that

15    Mr. Wilson gave this property or the property

16    located at address to his sister, and that that

17    constitutes a diversion of assets?

18         MR. LAROSIERE:  Not necessarily the contention.

19    Plaintiff is asking for documents sufficient to

20    identify the real estate transactions involving this

21    particular property.  We are telling you the reason

22    we want them; which is, at least you know -- I

23    forget what the word the Eleventh Circuit uses, but

24    it's something like shred of relevance or something

25    like that.

Page 99

```
1          MS. GYEBI:  Okay.  So I believe this was
2     stated, that you know that he transferred -- that
3     Mr. Wilson transferred this property to who?
4          MR. LAROSIERE:  We believe -- that doesn't
5     really matter.  We believe he transferred it to a
6     family member, and we believe he did this to hide
7     it, and we believe he did it without being paid for
8     it.
9          MS. GYEBI:  This relates to your lawsuit
10    because?
11         MR. LAROSIERE:  Because Mr. Wilson in 2018 took
12    all of the assets of the business entity Defendants
13    and consolidated them.  We believe that he took the
14    results of that consolidation and began hiding
15    assets.  And we believe that he has continued to do
16    this up to now with the specific intent -- on an
17    ongoing basis with the specific intent of avoiding
18    judgments and hiding behind the corporate shells.
19         MS. GYEBI:  And it's Plaintiff's belief that
20    they would be entitled to whatever -- I guess asset,
21    18209 Marshalls Point Drive if they succeed in this
22    lawsuit?
23         MR. LAROSIERE:  No idea.  I don't think we're
24    there yet.
25         MS. GYEBI:  We're talking about a diversion of
```

Page 100

1       assets, which really is neither here nor there to
2       your suit; unless it is your claim that you are
3       entitled to this asset.
4            MR. ZERMAY:  It goes to commingling of assets,
5       which would be an alter ego thing.
6            MS. GYEBI:  Is that applying?
7            MS. LEITNER:  I think the main two points are,
8       one, we don't agree because it's beyond the scope.
9       You haven't alleged fraudulent transfer and you
10      haven't provided support for financial discovery.
11      You're saying that your damages claim is related to
12      disgorgement of profits.  I don't see how profits
13      are related to real estate transactions.
14           MR. LAROSIERE:  If he's continuing to take, for
15      example, crypto occurrence payments, which we know
16      he's doing; and these are being funneled through
17      whatever they call it in the crypto context, then
18      being pumped into some real estate trust, it's
19      pretty relevant.  That's our belief of what's going
20      on.
21           MS. LEITNER:  I think if you had narrowed it to
22      something to either the subscription, like I
23      mentioned earlier, either for payment for crypto
24      and/or any monetary issue or payment, then I think
25      that would make sense here.  But it's too broad.

Page 101

1          MR. LAROSIERE:  23 is the same thing concerning

2     Donley Drive.  Would you agree this is -- you're

3     representing this is too broad?

4          MS. LEITNER:  Yeah, same.

5          MS. GYEBI:  I think it also goes to our prior

6     discussion.  There's no relevance, there's no --

7     it's to too broad in the time frame.  I think the

8     same could be said for 24, which is another address.

9          MR. LAROSIERE:  Okay.

10         THE WITNESS:  So I'm going to put down here --

11    again, I'm trying to confirm so we can -- because

12    what I'd like to do is after this we are going to

13    say, too broad, no relevance and time frame as to...

14    That way we don't have to fight about it.

15         So we agree that I can put that down for 22, 23

16    and 24?

17         MS. GYEBI:  That the discussion is the same as

18    Request No. 22.

19         MR. LAROSIERE:  Okay.  So too broad, time frame

20    and, what was the last one you said?

21         MS. GYEBI:  Relevance.

22         MR. LAROSIERE:  25 is more pointed, again, to

23    real estate transfers, it's also limited to

24    documents in his possession.  Any real estate owned

25    by you or your sister or your father or any entity

Page 102

1      in which you directly or indirectly have control.

2      So this is, again, we suspect hidden assets gained

3      by his (indiscernible).  It's more or less the same

4      thing.  Do you think your objections change with

5      respect to that one?  Because they didn't on the

6      text.

7           MS. LEITNER:  Same principle as No. 22.

8           MR. LAROSIERE:  We're actually starting to move

9      along.

10          MS. LEITNER:  Can we suggest that even if you

11     categorize this to make it smoother tomorrow, just

12     identify the specific requests that you're putting

13     the category to.  That's just a suggestion if we

14     want to make it go faster.  As long as the request

15     as the order has identified are identified, then

16     that can streamline this.

17          MR. LAROSIERE:  That's what I was suggesting at

18     the beginning.  We say, these are the things, and

19     then TFI, et cetera.  And then we can say 26, TFI,

20     this that and the other thing.

21          MS. LEITNER:  As long as we identify the

22     specific request numbers.

23          MR. LAROSIERE:  That's what I was saying.  I

24     was saying let's fight about these subjects, then

25     we've got our positions on them.  Then to the extent

Page 103

1      -- there's been a couple where we've agreed to do a
2      little bit more.  We withdrew one.  Let's just keep
3      going.
4           26, this is kind of getting to the crescendo of
5      the commingling.  This is all specifically pled.
6      This is -- and we've to narrowed time frame, but
7      it's not where you want it.  We want to know what
8      happened with what we alleged to be the
9      consolidating transfer that you guys denied; which
10     is the basis of our alter ego theory.  And you're
11     saying it's not relevant.  Do you want to say in
12     shorthand what your reasons for not producing
13     anything in response that is for 26?
14          MS. LEITNER:  I think it's time frame, TFI.
15     And again, it's not tied to the subject works at
16     issue.
17          MR. LAROSIERE:  Okay.  27, we're asking for
18     documents sufficient to create a picture of
19     financial assets currently held by Defendant Wilson.
20     Personal possessions worth more than $500 might be a
21     little rough.  If we were willing to cut that off,
22     would that change your response?
23          MS. GYEBI:  I guess the relationship just seems
24     a little entangled.  Maybe you can provide clarity
25     on that.  You're claiming disgorgement, but your

Page 104

1      request is seeking the totality of assets unrelated

2      to the copyright infringement that you're alleging,

3      or anything that you're alleging.  So how is it that

4      Plaintiff is tying the breadth of the assets

5      Mr. Wilson may or may not have to the damages

6      Plaintiff claims to be entitled to in this action?

7           MR. ZERMAY:  Again, it goes back to the scope

8      of discovery.  Mr. Wilson could say, well, we

9      actually only made five bucks -- goes to the

10     defenses where it's, like, all this money I made is

11     completely unrelated to the copyright works at

12     issue; which would go to mitigation of damages,

13     where it's, well, I didn't cause this damage, I

14     didn't profit from this.  You can't claim

15     disgorgement because this came from something

16     completely different.

17          And so it -- again, counterfactually we have to

18     show the trace of the assets.  Again, it's a knife

19     that cuts both ways, where it's the defense is,

20     well, I didn't make this money selling The

21     Hitchhiker or Amigo Grande, or whatever work was at

22     issue.  I made this selling my book Black Flag White

23     Paper available on Amazon for 19.99.  It's

24     completely different and you can't get the source of

25     (indiscernible).  Well, is it reasonably calculated

Page 105

1     to lead to that discoverable evidence where, again,

2     sometimes the absence of evidence is itself

3     evidence.  That's what we're getting at there.

4          MS. LEITNER:  I concede Amaris' point.  I don't

5     see how it's connected to the lawsuit.  Our

6     understanding is that you alleged copyright, unfair

7     competition and also name and likeness.  And under

8     the Copyright Act, you can either elect for actual

9     damages, which would be your information,

10    Plaintiff's actual damages, or Defendants profits.

11    And the assets don't fall under the profits.

12         I guess my question, then, is, like, what is

13    your understanding of the damages flowing from the

14    copyright?  If it's not subscriptions, do you think

15    it's just all of his assets?  That's where I'm

16    trying to understand.  Because we're trying to apply

17    it as to copyright -- the Copyright Act.  How are

18    you -- what is your understanding of, like, his

19    disgorgement of profits?

20         MR. LAROSIERE:  You're asking us -- we're in

21    the dark poking around and we're saying, we'd like a

22    little bit of light, please.  And you're saying

23    where would you like the light?

24         MS. LEITNER:  I'm asking based on the facts of

25    the case, my understanding of the facts is you

Page 106

1      obtain a subscription to DEFCAD and you then you pay

2      the subscription fee to access these copyrighted

3      files.  So the subscription fee, based on our

4      understanding and understanding of copyright law,

5      that would be the profit.  And then it would be

6      limited from the date of creation and/or publication

7      as identified in the Copyright Registration to the

8      present.

9          And there's case law with respect to how much

10     you can obtain post-registration under the Copyright

11     Act.  That's why I'm trying to understand.  It

12     sounds like you guys have a much broader

13     understanding of what the damages are.

14         MR. ZERMAY:  Well, I guess you're asking us a

15     question that would best be answered by an expert

16     witness.

17         MS. LEITNER:  I don't think so.

18         MR. ZERMAY:  Well, you use the subscription mad

19     model.  Let's say --

20         MS. LEITNER:  But you guys have not identified

21     an expert witness, correct?  That's what you guys

22     responded to and said none.

23         MR. ZERMAY:  We need the facts so we can go

24     ahead and consult the appropriate --

25         MS. LEITNER:  You have the facts.

Page 107

1          MR. ZERMAY:  We're trying to get them in

2     discovery from Mr. Wilson, who, you know, lack of a

3     better term, lodged a lot of objections.  So to use

4     an analogy, it's like somebody puts -- let's say

5     Netflix doesn't have a license to the Harry Potter

6     series, and then Netflix charges, you know, 25 bucks

7     a month subscription level.  They throw Harry Potter

8     on the subscription service.  They still charge 25

9     bucks a month.  We need information regarding these

10    subscriptions, how many they have, how much their

11    income has had.

12         Me, as an attorney sitting here looking at

13    these numbers, I don't know what that means.  I'm

14    not an economist.  I'm not a forensic accountant.

15    I'm not a person who can directly attribute those

16    profits.  That's what an expert witness would do, is

17    look at the data that would be provided in that

18    context and look and say, well, wouldn't you know

19    it, their profits went up 2 to 3 percent because

20    they started ripping off J.K. Rowling's Harry Potter

21    series.

22         MS. LEITNER:  I completely agree with you.  But

23    understanding the facts in this case, your responses

24    to interrogatories are that you don't have a

25    license.  You don't have a history of license and

Page 108

1    you've never used the Copyright Registrations for a

2    commercial purpose.  So for actual damages,

3    generally speaking we usually look at the history

4    for licensing, but it's not here.

5         So we're looking for another avenue.  That's

6    why we're asking you, how do you attribute damages?

7         MR. ZERMAY:  That would be the profits.

8         MS. LEITNER:  I guess my understanding, then,

9    from what you're saying is that you're going to

10   defer the damages amount to an expert.

11        MR. LAROSIERE:  Hold on.  We're not saying any

12   of that.  We're asking for discoverable information.

13   This is very simple.  We're asking for documents

14   sufficient to have a picture of his financial

15   situation, why it's him and not the entities is

16   clear from the face of the Complaint.  We believe

17   that he's syphoning the money that the entities are

18   making, right?  So this combined with other

19   documents that we anticipate we'll ultimately get in

20   discovery will paint a complete picture of where

21   that money went.  It's that simple.

22        And again, we have an agreed Protective Order

23   I.  To the extent we're worried about sensitive

24   information, that can be handled.  This isn't a

25   question of burden.  And you assert an

Page 109

1     attorney-client or work product privilege, which

2     very confusing.  And also assert that Plaintiff

3     already has the documents that are requested.

4     That's -- these objections are pretty boilerplate.

5     We just want to know a snapshot of his financial

6     situation so we can reverse engineer and figure out

7     what happened.  That's it.

8          MS. LEITNER:  That's not how it works here.

9     We're going to agree to disagree.

10          MR. LAROSIERE:  When you say agree to disagree,

11     what I'm going to write down is that you're standing

12     on your objections as written.

13          MS. LEITNER:  Yes.  Because you're having a

14     complete misunderstanding of copyright law damages.

15          MR. LAROSIERE:  That's okay.  That's your

16     position.  It's our position that at the remedy

17     stage, we will get to choose between disgorgement of

18     profits that are attributable to the infringement or

19     actual damages or statutory damages.  Okay.  To make

20     an informed decision when we get there, we need

21     information.

22          MS. LEITNER:  Okay.  But profits don't all

23     include all of Mr. Wilson's bank account statements

24     and his crypto account, currency account balances

25     and all of his real estate holdings or interest and

Page 110

1      personal possessions.  They have to be causally

2      linked to the subject works.  That's what we're

3      missing here.  That's all we're saying.

4           MR. ZERMAY:  That's where we pull in an expert

5      witness.

6           MS. LEITNER:  I know what you're going to do.

7      But I'm saying we can only do so much based on how

8      the requests are phrased, so we object accordingly.

9      And because they're so broad, we don't know --

10     that's why you have to assert all these objections.

11     Because some of -- it's unclear as to what you're

12     asking.  So we've asserted these objections because

13     it's so broad.  I think that's my main point.

14          MR. LAROSIERE:  Your response to the requests

15     that asks for documents sufficient to complete

16     picture of the financial assets currently held by

17     Cody Wilson, and you assert attorney-client and/or

18     work product privilege.  You didn't note that you

19     would be producing a privilege log.  Should we

20     expect that?

21          MS. LEITNER:  Anything that's going to be

22     marked as privileged, a privilege log is

23     forthcoming, along with our December 1st production.

24          MR. LAROSIERE:  That's not what you wrote.  So

25     will you be producing documents subject to

Page 111

1          objection, or do we need to compel responses?

2              MS. LEITNER:  I wrote that because it was so

3          unclear.  Yes, at this point if we have any

4          documents responsive to this -- but I'd like to

5          narrow this question.  And you can note that we

6          disagree as far as proportionality again.  It's not

7          related to the subject works.  At the end the day,

8          liability for subject works has to causally link to

9          the damages that you're seeking in this case.

10             MR. LAROSIERE:  Can you propose a shorthand for

11         subject works at issue?

12             MS. LEITNER:  Sure.  And I can -- for the

13         record -- say that it's the definition that's under

14         Footnote 1, Page 1 that says, at all times material

15         herein, the term works with a capital W refers to

16         the Copyright Registrations Plaintiff referenced in

17         the First Amended Complaint the Defendant used

18         without authorization.  And it cited Doc 43 and

19         Paragraphs 104 to 259.

20             MR. LAROSIERE:  So that's fantastic.  However,

21         you didn't use the term works with a capital W.  I'm

22         not sure what that has to do with Request No. 27.

23             MS. LEITNER:  I'm saying here we are meeting

24         and conferring to try to understand what you're

25         asking for.  We're here and now we understand what

Page 112

1    you're asking for.  If we find any documents

2    responsive to this request, we will provide them now

3    that we understand.  And we still agree to disagree

4    that they are overly broad and not related to the

5    claims and defenses under 26(b)(1).

6         MR. LAROSIERE:  What I'm going to write down as

7    a shorthand for that colloquy is, must be related to

8    capital W works and I'll put it in quotes.  That way

9    we can have a shorthand for that.  Does that work

10   for you?  In the final thing, we'll refer back to

11   that definition.

12        MS. LEITNER:  Why don't we just say it does not

13   include the definition of works under Footnote 1.

14        MR. LAROSIERE:  I would like to have a

15   shorthand.

16        MS. LEITNER:  Footnote 1.

17        MR. LAROSIERE:  Okay.  Footnote 1.

18        THE COURT STENOGRAPHER:  Can we take five

19   minutes, please?

20        MS. GYEBI:  Sure.

21        (A break was taken.)

22        MR. LAROSIERE:  So now 19 (sic) is the same

23   thing regarding to legal currency.  And again, no

24   objections.  So are we going to stand by the

25   response with control issue as with 28?

```
                                        Page 113
 1          MS. GYEBI:  Just for the record, it's 29.  You
 2     said 19.
 3          MR. LAROSIERE:  Thanks.
 4          MS. LEITNER:  Yes as to 29.
 5          MR. LAROSIERE:  Thank you.  30.
 6          MS. LEITNER:  Same situation.  31 same.
 7          MR. LAROSIERE:  While I'm doing this, if you
 8     want to look ahead and see if it keeps going.
 9          MS. LEITNER:  No, it stops.
10          MR. LAROSIERE:  This says produce documents
11     reflecting any inquiry into whether each work at
12     issue could be protected by copyright.  And here the
13     main issue is we have the misapprehension of
14     copyright, the redefinition of the subject works;
15     which, you know, we've talked about many times.
16          MS. GYEBI:  I don't think we have the issue in
17     this case.  It says each work at issue in this case.
18     Would that not be our definition of --
19          MR. LAROSIERE:  But then in the response you
20     redefine -- yeah, you're right.  So the question is
21     with No. 32, are you saying, you know, with your
22     redefinition of copyright to the subject root works;
23     are you saying we're asking to produce all documents
24     relating to whether each work at issue in the case
25     is protected by a work at issue in the case?
```

Page 114

1    Because that's the only time we use the word

2    copyright, is was, is or could be protected by

3    copyright.  You redefine it to the works at issue in

4    the case.

5        MS. GYEBI:  I don't think I'm following your

6    question.

7        MR. LAROSIERE:  So you redefined in the

8    response copyright to refer to the subject works,

9    the first time we talk about copyright is asking

10   whether the subject works were protected by

11   copyright.  So with your redefinition of the

12   question, the question becomes, are the subject

13   works protected by the subject works.

14       MS. GYEBI:  I think the redefinition of

15   copyright -- although I don't think it's necessary

16   to redefine it.  We're just setting parameters

17   around it.  You're using the word copyright, but

18   we're looking to ensure that we're on the same page

19   as to the definition.  Because I believe you have

20   work defined as -- I think work is defined in a

21   larger --

22       MS. LEITNER:  There's, like, 25 Copyright

23   Registrations defined in the work under your

24   definition and there's only 16 that were identified

25   in the First Amended Complaint.  That's why I was

Page 115

1    just trying to narrow it.

2         MS. GYEBI:  So at the point you say each work

3    at issue in this case, we're unsure if you mean work

4    at issue in this case with respect to -- as alleged

5    in the Complaint, or work at issue in this case with

6    respect to how you defined it in this request.

7         MR. LAROSIERE:  So as far as each work at

8    issue, that would be as defined in the request.  But

9    then it says -- it's a very simple request.  We're

10   looking for documents to establish inquiry that

11   Defendant took to figure out whether each of those

12   works was, is or could be protected by copyright.

13   And then in your response you say, based on its

14   understanding that the term copyright refers to the

15   subject works.  So that would literally suggest that

16   subject works were protected by the subject works.

17        MR. GYEBI:  I don't agree with the way you're

18   reading it.  I think the response is simply saying

19   the subject works, as we define them, are only the

20   works identified in the Complaint.  The way you've

21   taken on the meaning of works in the discovery

22   responses are a total of 25 works, which would mean

23   that's that nine additional.  So there are nine

24   additional Copyright Registrations that you now

25   included in your discovery responses.  Those are not

Page 116

1          works at issue from our perspective; which is why we
2          defined subject works.
3               I think the question here is when you're saying
4          each work at issue in this case, are you referring
5          to the 25 works referred to in the discovery
6          responses, or are we talking about the 16 works
7          identified in your Complaint?
8               MR. LAROSIERE:  We're talking about the 25
9          works identified in this document, which are
10         substantially delineated.  And so that's fine.  And
11         I'm sure you're asserting the Footnote 1 there.
12              MS. GYEBI:  Yes.
13              MR. LAROSIERE:  And the control issue.  So
14         you're not willing to clarify this response, again,
15         given the literal reading that -- I guess I'll ask
16         this; do you want to stand on your response as it's
17         written?
18              MS. GYEBI:  I think you're just misinterpreting
19         it.  Yeah, we're standing on the fact that there's
20         two different definitions that we're working with.
21         Our definition and our scope that we believe to be
22         appropriate are the works that actually have been
23         identified by Plaintiff in the Complaint, not the 25
24         works in totality that Plaintiff has now sought
25         discovery on.

Page 117

1          MR. LAROSIERE:  Just for shorthand we'll refer

2     to the Footnote 1 issue.

3          MS. GYEBI:  Sure.

4          MR. LAROSIERE:  33, this is -- we ask for

5     posts, statements, messages or communications in

6     which you express anger, frustration or hostility

7     towards Plaintiff.  And then you said that this

8     seeks privileged information, overly broad and

9     disproportionate.  And the only response is that in

10    light of the foregoing objections, Defendant is

11    willing to meet and confer regarding a narrower

12    request.  I think we want what was requested.

13         MS. GYEBI:  I think we can amend this response

14    to give you the responsive documents.

15         MR. LAROSIERE:  Subject to the control issue?

16         MS. GYEBI:  And the time frame issue.

17         MR. LAROSIERE:  Well, so represent in your

18    response that the time frame is narrowed to

19    January 1, 2018 -- no, Plaintiff specifically.

20    January 1, 2022; so does that solve the time frame

21    issue?

22         MS. GYEBI:  Yeah.

23         MR. LAROSIERE:  We just have the control issue

24    on that?

25         MS. GYEBI:  Yes.

```
                                        Page 118
```

1          MR. LAROSIERE:  34, this is -- and so the
2     reason this is written this way is because
3     previously we asked this exact question.  And we
4     asked to produce all documents, communications which
5     you discuss harming the Plaintiff in any way.  The
6     answer was that harm was too unclear, the term harm.
7     So we asked again now and provided every synonym for
8     the word harm.  The answer is, Defendant has no
9     responsive documents to this request in his
10    possession, custody and control.
11         This is the only time you say it this way.  So
12    is this -- do we still have the control issue here?
13    Because every other time it refers to the individual
14    capacity.  So we just want to gently remind you
15    that --
16         MS. GYEBI:  You want us to amend it to say none
17    in his individual capacity to keep it consistent?
18         MR. LAROSIERE:  No.  Because we asked the
19    question we asked, which would include that he
20    looked at the things he controlled.  Our position is
21    that he includes the things he looks through in the
22    companies.  If you're going to amend it to say in
23    his individual capacity, that would make it
24    compatible with the other questions that we've
25    asked.  I'm perfectly okay with you making that

Page 119

1    amendment to avoid making a big fuss about

2    disproving this.  So is that what we're going to do

3    there; we're going to add to your response in his

4    individual capacity; and then we're subject to the

5    control issue?

6         MS. GYEBI:  Well, I think it's also stated like

7    this because there's no need for that caveat.

8    You're asking whether Mr. Wilson -- and this is one

9    of the few requests, maybe the only request that

10   you're asking for him as an individual.  So there

11   would be no need to make a clarifying statement

12   that, you know, individual capacity versus documents

13   in his possession, control -- well, possession,

14   custody or control.  This one is simply asking

15   whether he has any documents or communications in

16   which you, Mr. Wilson, discussed the possibility of

17   harming Plaintiff in any way.  Mr. Wilson is able to

18   say he has no documents.

19        MR. LAROSIERE:  That's fine.  If you want to

20   stand as written, that's fine.  I want to be clear,

21   because you said you might want to clarify it to his

22   individual capacity.

23        MS. GYEBI:  No, that's not what I said.

24        MR. LAROSIERE:  If you want to stand with that

25   issue, that's fine.  I just want to gently remind

Page 120

1      that if we find these types of documents that

2      there's going to be fee chipping (ph) problems.

3           MS. GYEBI:  There's a couple things there.

4      Let's unpack it one at a time.

5           MR. LAROSIERE:  We're inviting to avoid this

6      problem by having the Court solve the control issue,

7      is what I think we're offering here.  We're inviting

8      you to amend this response to say in his personal

9      capacity so we can get that whole thing off of the

10     table.  If you want to leave it as written, that's

11     fine.  But we expect, given the way the previous

12     response was, there are going to be documents that

13     involved Mr. Wilson did do these things.  So that's

14     the -- again, we're trying to do this to avoid

15     friction and nonsense.  We're are inviting you to

16     literally narrow your response so that we can have

17     the Court solve the control problem.  If you want to

18     do that, that's fine.  If you want to leave it

19     exactly as written, that's totally fine as well.

20     You can let me know which is your choice.

21          MS. LEITNER:  Yeah, I mean --

22          MS. GYEBI:  The response is fine as written.  I

23     understand the Plaintiff is inviting us to change

24     it.  We're saying that this control issue is not

25     pertinent to the request.

Page 121

1          MS. LEITNER:  I think the issue of finding
2     document that are harmful, which we said we don't
3     have.  I think that's the operative term, harming
4     Plaintiff.  I understand you guys have defined it,
5     but I think it's not limited in time and scope.  You
6     know, we just don't have anything that's harmful.
7          MR. LAROSIERE:  You didn't object.  We'll just
8     say it's your position that this is the way it's
9     written, and we'll suggest that we couldn't get to a
10     result as to whether the control issue permeated
11     this response.
12          MS. GYEBI:  We're saying the response is
13     complete.  Defendant does not have responsive
14     documents, not to the extent that Plaintiff feels
15     that there are responsive documents.  That, I
16     believe, is a different issue.  We cannot produce
17     things that we do not have.
18          MR. LAROSIERE:  It literally makes no
19     difference as far as how we proceed.  It was an
20     olive branch to avoid future motion practice.  We'll
21     move on, having the olive branch summarily rejected.
22          No. 35, this is as relates to the blacklist, as
23     Defendant admits to in Docket 52, Paragraph 389.  So
24     we would like to have the individual information on
25     who's on the blacklist, when they got there and the

Page 122

1    blacklist itself.  We have a lot of objections and a

2    suggestion that we meet and confer for a narrower

3    request.

4         MS. GYEBI:  Taking a look at this request

5    specifically, and we're actually going to be

6    producing an amended response to highlight that

7    there's no Docket 52, Paragraph 389.

8         MR. LAROSIERE:  So you're unable to identify

9    the blacklist without that?

10        MS. GYEBI:  I don't see how we could if it

11   doesn't exist.

12        MR. LAROSIERE:  One moment, please.

13        So the allegation is Doc 43 of 225.  So it's

14   not the admission, though, that's the allegation.

15   Then Doc 52 -- you're right, it says -- one second.

16        Withdraw the issue.  Yeah, that's easier.

17        Thank you for that.  36 -- we should get back

18   to the ones that we can go through quickly --

19   documents, communications related to the

20   ghostguns.com BTC pay servers, processing of

21   transactions that concern any of the works at issue,

22   including all transaction logs of such, from

23   January 1, 2018 to present.  No objections,

24   suggesting that Defendant in his individual capacity

25   does not have it and it's better directed to the

Page 123

1    entities.

2         How do we shorthand this, control issue?  I

3    think the only question is whether you would agree

4    that time frame wouldn't matter because it's only to

5    the works; so even if it is a little bit before that

6    time, it would only cover the things that were in

7    existence during that time frame?

8         MS. GYEBI:  So do you want to change your date

9    from January 1, 2018 to January 1, 2022?

10        MR. LAROSIERE:  No.  I don't think we need to.

11   I think it's sufficiently defined in time and scope,

12   right?

13        MS. GYEBI:  You don't want to limit it to after

14   the Copyright Registration date?

15        MR. LAROSIERE:  No, the Silver Blaze problem

16   again.

17        MS. GYEBI:  Okay.

18        MR. LAROSIERE:  Just control issue and

19   (indiscernible) issue?

20        MS. GYEBI:  I think we have a time frame issue.

21        MR. LAROSIERE:  So you're asserting time frame?

22        MS. GYEBI:  Yes.

23        MR. LAROSIERE:  For 37, are you going to say

24   the same thing?

25        MS. LEITNER:  Yeah.  The time frame and based

Page 124

1          on our definition of works.

2                  MR. LAROSIERE:  And control.

3                  MS. LEITNER:  Yes.

4                  MR. LAROSIERE:  Do you want to look forward and

5          tell us when we can -- because the next couple --

6                  MS. LEITNER:  I think it's 35, 36, 37 and 38.

7                  MR. LAROSIERE:  I agree.

8                  MS. LEITNER:  With the Copyright Act, 36 to 38,

9          as courtesy if we do find documents responsive from

10         the Defendant entities, we will produce it in that

11         capacity.

12                 MR. LAROSIERE:  Which --

13                 MS. LEITNER:  Which would be under the --

14                 MR. LAROSIERE:  -- control issue.

15                 MS. GYEBI:  Also for 37.

16                 MS. LEITNER:  All from 36 to 38, yeah.

17                 MR. LAROSIERE:  Okay.  39, a transaction log

18         for a very specific bitcoin address.  You assert

19         TFI, and then again, you're referring to Defendant

20         entities.  So I don't think we have a works problem.

21         I think that we just be TFI and control; do you

22         agree?

23                 MS. GYEBI:  What's the relevance of this

24         bitcoin address?

25                 MR. LAROSIERE:  You didn't assert that -- no,

Page 125

1    you asserted disproportionate.  We believe that's

2    one of the addresses that money was funneled into

3    from the corporations for Wilson to then --

4    specifically we've seen this address -- contents

5    were dumped from this address into a personal wallet

6    of Wilson in Taiwan after the contents of all of the

7    addresses which specifically took payment for the

8    Defendant entities were dumped into a different

9    address that Wilson controlled.  So basically we're

10   asking for all of these.

11        MS. GYEBI:  Understood.

12        MR. LAROSIERE:  Shall we say the same thing for

13   40, TFI and control?

14        MS. GYEBI:  And relevance.

15        MS. LEITNER:  39, TFI, control, relevance.

16        MR. LAROSIERE:  You actually asserted

17   proportionality, which folds in.

18        MS. LEITNER:  Right.

19        MR. LAROSIERE:  41, same thing; should we

20   agree, the same thing?

21        MS. GYEBI:  Yes.

22        MR. LAROSIERE:  42, I think that's the same

23   thing, a different subject but same moving parts and

24   you assert the same objection?

25        MS. GYEBI:  Who is Joe G?

Page 126

1              MR. LAROSIERE:  Joe G is -- how do I explain

2      this?  This is someone we believe that was involved

3      in helping set up Wilson's website for doing the

4      things that we're complaining of and who may have

5      advised him on -- well, one thing is that -- sorry.

6      I'm getting a little brain fog on that.  But it's

7      calculated to lead to evidence concerning how this

8      website was set up and administered, run, where the

9      money goes, et cetera.  And we believe that this

10     individual helped establish some of these lanes of

11     financial travel.

12             MS. GYEBI:  When you're saying the way the

13     website was set up, are you talking about the

14     website which Plaintiff contends displayed the

15     copyrighted works?

16             MR. LAROSIERE:  Yes.

17             MS. GYEBI:  Why is the request from January 1,

18     2018 onward?

19             MR. LAROSIERE:  Because, again, this is about

20     patterns and practices and the Silver Blaze problem.

21             MS. GYEBI:  Why does Plaintiff need information

22     about payments, including those concerning any

23     payments sent to them along with the purpose for

24     that payment?

25             MR. LAROSIERE:  So for example, if he was

Page 127

1    helping to set up ways of diverting crypto

2    currencies away from the account and he was paid to

3    do that, that would be very relevant, right?  We

4    suspect that's what's going on here so we would like

5    to see it.

6        MS. GYEBI:  So Plaintiff's contention it Joe G

7    set up the website and also aided in Plaintiff's

8    alleged diversion of assets?

9        MR. LAROSIERE:  Plaintiff suggest from January

10   1, 2018 to present communications -- again, we'll

11   narrow.  We don't want little scraps and nothing,

12   right?  We want stuff that evinces content and

13   character of his interactions with this person,

14   including those things that he paid this person to

15   set up in this time period.  I don't anticipate that

16   there would be hundreds and hundreds of things that

17   this person was paid to set up, but we believe they

18   would be relevant.

19       MS. GYEBI:  You don't want -- I forget the

20   wording you used.

21       MR. LAROSIERE:  I'm trying to avoid the --

22   concerning or involving, like, butterfly wings

23   issues, right?  That's not what we're after.  We're

24   after the contracts, the documents, the actual

25   payment logs, right?  These are things sufficient to

Page 128

1     show the existence and character of these

2     interactions.  We don't need, like, the cell cite

3     location data, stuff like that.  Reasonably limited,

4     in terms of what subject --

5        MS. GYEBI:  Is Plaintiff going to narrow this

6     request and let us know how they're narrowing it, or

7     do you expect us to narrow it based on our removal

8     of what we deem to be minutiae or relevance?

9        MR. LAROSIERE:  We're trying to have the Court

10    not have to do what the Court does every single time

11    they are in this situation; which is when this old

12    legal phrase of all documents and communications.

13    We don't want the Court to have to bother to sit

14    there and say, okay, what that actually means is

15    stuff sufficient to evince and establish.  We're

16    inviting that up front.  So you can you start -- if

17    you were going to supplement or provide an amended

18    response, you could start it with saying documents

19    are limited to those sufficient to establish, and

20    that you're not providing minutiae.

21       MS. GYEBI:  For this one we're willing to do an

22    amended response subject to time frame.  To the

23    extent Mr. Wilson doesn't have responsive documents,

24    we'll go ahead and search the Defendant entities

25    that we also represent and produce on their behalf.

Page 129

1           MR. LAROSIERE:  This is time frame and control?

2           MS. GYEBI:  Correct.  And the subject matter.

3      I forget the -- Footnote 1.

4           MR. LAROSIERE:  We didn't talk about the works.

5      This isn't about the works.

6           MS. GYEBI:  We objected because it was too

7      broad because it has no relation to the works.

8           MR. LAROSIERE:  Okay.

9           MS. LEITNER:  Can we take a break pretty soon,

10     like a five-minute break.

11          MR. LAROSIERE:  Sure.  Let's do it now.

12          (A break was taken.)

13          MR. LAROSIERE:  43 we wanted communications

14     between Wilson and Thomas Odom concerning Gunspring.

15     You lodge a bunch of objections.  And then again,

16     we -- I think this has the control issue, right?

17          MS. LEITNER:  Yeah.  This is TFI, control

18     relevance.

19          MR. LAROSIERE:  44, same thing just a different

20     company; same request, different company.

21          MS. GYEBI:  Go back to 43.  I'm just curious

22     what Plaintiff claims the relevance is.

23          MR. LAROSIERE:  I don't want to waste too much

24     time with us talking about the terminal question of

25     relevance.  That doesn't matter.  I'll be happy to

Page 130

1    send you some case law where both the Middle

2    District and the Eleventh Circuit have repeatedly

3    said the question of relevance is completely

4    immaterial at this stage.  I don't wanted to keep

5    jousting back and forth.

6         I can give you a one-sentence assertion, which

7    is more than enough for tiniest scintilla that we

8    need for it to be discoverable.  But I don't want us

9    to spend hours talking about an inapplicable concern

10   of a terminal question of admissibility.

11        MS. LEITNER:  I think it helps as far as

12   efficiency purposes, that's why Amaris is bringing

13   this up.  Because I know it's not -- it's outside

14   the -- you don't think it's in compliance with the

15   rules or something.  But it helps us trying to

16   narrow the issues, as far as why you're asking some

17   of these questions that are related to us as framed

18   to either the nonparties and Counter-Defendants that

19   are no longer at issue.

20        MR. LAROSIERE:  So what I'm going to do is give

21   you a one-sentence articulation which I have

22   prepared for each and every one of these in the

23   event you asked for it.  But I think we're going to

24   decline to joust back and forth on relevance because

25   it doesn't matter.

Page 131

1           MS. LEITNER:  We understand what 26(b)(1) says

2      with respect to broad discovery.  But I think as far

3      as big picture, as far as this lawsuit and

4      progressing to get the information we need by the

5      discovery deadline, I think it's helpful for us to

6      understand your thinking as far as why this is

7      relevant practically.

8           MR. ZERMAY:  I guess we've beat the horse to

9      death and are proceeding to beat the horse

10     postmortem about the scope of discovery and all that

11     stuff.  I think that's the point that Matt was

12     trying to get at, where it's like here is our

13     response --

14          MS. GYEBI:  That you can seek it just because

15     you can?

16          MR. LAROSIERE:  Here's what I'm going to do.

17     I'm going to give you an example of -- any time you

18     ask about relevance, I'm going to read off from a

19     statement that I prepared for each one.  But we're

20     going to decline to joust back and forth about that

21     because it's a waste of time.  I'm going to read it,

22     which should help for all the reasons you're saying,

23     but I'm not going to argue about it.

24          43, we suspect that Wilson may have hidden and

25     commingled assets hiding his assets as pled.  We

Page 132

1        believe that through Thomas Odom, who was involved

2        in the copyright infringement in this case, Wilson

3        may be using Gunspring to hide assets.  That's it.

4             MS. LEITNER:  Why didn't you name Gunspring in

5        this case?  To us it's not relevant because it's not

6        named, he's a nonparty.

7             MR. LAROSIERE:  This is not material.  If you

8        want a response to that -- which frankly we're

9        wasting time -- we didn't know until Defendant

10       admitted it after the close of pleadings.  So now

11       we're trying to figure out what happened.  So for 43

12       we have TFI, control and proportionality.

13            I'd like to move to 44.  Again, this is same

14       question concerning Dioskouroi.  Unless there's any

15       reason your response would be different, I'll put

16       down that you represented this as an issue of TFI,

17       control and proportionality.

18            MS. LEITNER:  Fair.

19            MR. LAROSIERE:  Thank you so much.  45 is the

20       exact same thing concerning ghostguns.com; TFI,

21       control and proportionality?

22            MS. LEITNER:  Yes.

23            MR. LAROSIERE:  Thank you.  46, exact same

24       thing concerning DEFCAD; you can just say same.

25            MS. LEITNER:  Not same.  It's similar, but

```
                                                Page 133
 1      we've identified the questions related to DEFCAD.
 2      That would be better directed to DEFCAD, so that's
 3      control essentially, but --
 4           MR. LAROSIERE:  Not proportionality, just TFI
 5      and control?
 6           MS. LEITNER:  No.  Proportionality, as well as
 7      TFI -- I guess it's the same, but it just has
 8      nothing to do with Mr. Wilson.
 9           MR. LAROSIERE:  It's the exact same question
10      except it's concerning the subject of copyright.
11           MS. LEITNER:  It's too broad.  Copyright in
12      general -- I mean, it's like saying anything related
13      to trademark that he has, and it's like it could be
14      anything.  It's undefined.  If you said copyright to
15      the works and defined works as the works identified
16      in the First Amended Complaint, then that would be
17      different.  But as framed, it's too broad.
18           MR. ZERMAY:  Are you going to produce anything
19      subject to that qualification you just made?
20           MS. LEITNER:  Not with respect to Mr. Wilson.
21           MR. LAROSIERE:  That's because of the control
22      issue.
23           MS. LEITNER:  Correct.
24           MR. LAROSIERE:  Okay.
25           MS. GYEBI:  Is this the end of Plaintiff's
```

Page 134

1    refusal to discuss relevance, or is going to --

2         MR. LAROSIERE:  If you're going to bring up

3    relevance, we'll continue to -- I have these written

4    for every single request.  I'll be happy to give you

5    our articulation, our theory of terminal relevance

6    for each and every one; whatever you want.

7         MS. LEITNER:  I think we should, because it is

8    at issue.

9         MR. LAROSIERE:  It's not at issue, because it's

10   not relevant.  It doesn't matter, in terms of

11   whether or not it's discoverable information.  We're

12   not talking about amending this at trial.  We're

13   talking about getting discovery.

14        MS. LEITNER:  It does, though.

15        MS. GYEBI:  Correct me if I am wrong, you're

16   taking the position that relevance plays no role in

17   whether Plaintiff can ask discovery requests.

18        MR. ZERMAY:  Well, it goes to whether it's

19   reasonably calculated to lead to discoverable

20   evidence at trial -- I mean admissible evidence at

21   trial, sorry.  You know, again, I would say it's

22   not --

23        MS. GYEBI:  So what --

24        MR. ZERMAY:  -- where I would say it's

25   reasonably calculated to lead to discoverable

Page 135

1          evidence is, like, explain to me in detail why his
2          favorite color is purple.  I couldn't see how that
3          would lead to discoverable evidence; or tell me
4          about your trip to the Philippines Thailand,
5          something of that nature.  It's like some --
6          wouldn't say Taiwan because that's relevant, or may
7          be relevant.  Anyway, something like that; you know,
8          where did you go in Latin America, Argentina, how
9          did you like the steak, for example.  That's not
10         reasonably calculated to lead to admissible evidence
11         at trial.

12             What he's asking could, depending on the
13         answer.  It would be, like, okay, then that will
14         lead us to another thing which may, in fact, lead to
15         something that is admissible at trial.  Whether or
16         not it helps us in facilitating our claims and
17         prosecuting our claims or it defeats our claims,
18         where, hey, you know, if there's a silver bullet in
19         our case, then we have to abandon it, golly gee, we
20         want to know that beforehand.

21             MR. LAROSIERE:  I'll be happy to continue to
22         articulate the theory of relevance.  I'm just really
23         cautious that it's probably a waste of time.  And
24         I'll be happy to articulate it to you, but I'm not
25         going to go back and forth with these parades of

Page 136

1    horribles that, you know, we've shot back and forth

2    at each other because I don't think it's really

3    helpful.

4         MS. GYEBI:  That's your prerogative.  I just

5    don't want to keep asking a question that you're

6    going to refuse to answer.

7         MR. LAROSIERE:  I will read you exactly what we

8    wrote down, the articulation if you want.

9         Ms. GYEBI:  If you want to send it to me, I can

10   read it there.  But if you're not going to engage in

11   a conversation with me, I think it's a waste of

12   everyone's time.

13        MR. ZERMAY:  We've been using shorthand for

14   some of your responses, TFI, all that good stuff.

15   Maybe we use the explanation I just gave regarding

16   the reasonably calculated to lead to admissible

17   evidence at trial just as the admissible evidence

18   response; is that fair?

19        MS. GYEBI:  If that's what you want to do.

20        MR. ZERMAY:  I think that sufficiently

21   covers --

22        MR. LAROSIERE:  Certainly, if you are

23   legitimately confused as to why we're asking, I'll

24   tell you.

25        MS. GYEBI:  I don't ask illegitimate questions.

1          MR. LAROSIERE:  Never in a million years --
2     I'll put it on record, never in a million years
3     would I imagine that you would ask an illegitimate
4     question.  You're an upstanding member of our
5     profession.  Never in a million years.
6          So anyway if you're legitimately concerned, I
7     have them written down.  I'm just not going to go
8     back and forth.
9          MS. LEITNER:  We just want clarification.  We
10     won't go back and forth.
11          MR. LAROSIERE:  As we go back and forth about
12     going back and forth.
13          I'll read to you No. 47, which is records
14     between Defendant and his employees about copyright
15     to include discussion of copyright infringement are
16     extremely relevant.  Then we ask this question,
17     because we assert privilege; how can a discussion
18     between you and an employee be privileged?  That's
19     what we wrote down.
20          I think we're ready to go on to 48.  This is
21     all communications exchanged between you, Defendant
22     and Sarah Westman from January 1, 2021 onward.  You
23     objected as overbroad and disproportionate.  And you
24     request to -- object to TFI, which you've already
25     produced materials in discovery that detail a

Page 138

1     conversation with Sarah Westman.  That seems to have
2     involved asking her to help with the copying of
3     works at issue.  So we know for a fact that these
4     conversations exist and that they discuss the works
5     at issue and they are relevant.  So we want all of
6     them; again, for the Silver Blaze issue.
7          MS. LEITNER:  And so who is Sarah Westman in
8     your eyes?
9          MR. LAROSIERE:  An artist.
10         MS. LEITNER:  Yeah, but -- okay.  Then I think
11    that -- I mean, it's not the time frame issue and
12    we've already produced documents with respect to
13    that.
14         Sorry.  Amaris, can you clarify?
15         MS. GYEBI:  Did you say documents produced
16    regarding Sarah Westman prior?
17         MR. LAROSIERE:  It was in response to a --
18    because we didn't ask anything about Sarah Westman.
19    We asked something else.  And he produced one thing
20    that was a snippet from a conversation.
21         MS. LEITNER:  What does it relate to?
22         MR. LAROSIERE:  Specifically one of the works
23    at issue.  Again, we're reverse engineering an
24    inference from a snippet of an e-mail that he
25    intentionally cut off.

Page 139

1          MS. GYEBI:  I'm following.  You had a snippet

2     from a conversation that Mr. Wilson had with Sarah

3     Westman.  And the request here seeks the production

4     of all information, or are you just looking for the

5     full document?

6          MR. LAROSIERE:  We want the conversations and

7     contracts and stuff that he -- if he hired her to do

8     work, we would like to see that.  I would like to

9     see the communications that led to whatever he hired

10    her for, because it seems to be relevant based on

11    what we found.

12         MS. GYEBI:  I think we still have a time frame

13    issue, unless there's an explanation why we need to

14    start from January 21, 2021.

15         MR. LAROSIERE:  The reason for that is we know

16    when the works were out there, right?  And so where

17    do we cast our net, right?  Do we feel like it's

18    appropriate to cast your net -- for the written

19    transcript, I'm holding my arms out in front of me

20    in a circle and I'm holding in it a reasonably sized

21    circle, then I'm just opening them up a little bit

22    more to encompass the circle that was inside and the

23    periphery of it.  Does that make sense?

24         When the works existed for a period of time, to

25    ensure we get everything that would be relevant to

Page 140

1          the lead-up and the policies and practices, we want
2          to ask about the edges, the periphery.  Does that
3          make sense?
4                  MS. GYEBI:  Yes.
5                  MR. LAROSIERE:  Do you still assert the TFI
6          objection?
7                  MS. GYEBI:  Yes.
8                  MS. LEITNER:  TFI and -- to the extent we do
9          have any documents and Mr. Wilson of Sarah Westman,
10         which -- that are responsive to Request No. 48 we'll
11         produce to that extent on December 1st.
12                 MR. LAROSIERE:  Subject to the control issue?
13                 MS. LEITNER:  Yes, and the Protective Order.
14                 MR. LAROSIERE:  We don't have to talk about
15         subject to the Protective Order.  It's part of the
16         case.  We're trying to deal with our objections.
17                 MR. ZERMAY:  Just with the TFI objection, what
18         time frame would you be limiting the production to?
19                 MS. LEITNER:  Same time, from January 1, 2022
20         to present.  We also object with respect to Sarah
21         Westman being a nonparty.  Again, you can on obtain
22         that through other discovery methods.  You can
23         subpoena her directly.
24                 MR. LAROSIERE:  You didn't raise that.
25                 MS. LEITNER:  I didn't say that, but that's why

Page 141

1      26(b)(1) is relevant here.

2          MR. LAROSIERE:  Should we include -- you know,

3      we're going to separate our articulations in our

4      ultimate report to Judge Hoffman Price.  And you'll

5      have a section where you can include things that we

6      don't agree with, and we'll have a section where we

7      can include things that you don't agree with.  So

8      we'll have the main section that says, we agree that

9      these issues apply here, and we'll all agree.  Then

10     there will be the sections where we're, like,

11     actually, blah, blah, blah.  And we'll say,

12     actually, blah, blah, blah, in fairness.  You can

13     represent however you want with respect to those.

14         MS. LEITNER:  I think that might work.  I just

15     have to see -- she want everything concise, so I

16     want to make sure we use a proper format.

17         MR. LAROSIERE:  I think the best way to do this

18     is going to be, these are issues and these are the

19     numbers that are subject to it.

20         MR. ZERMAY:  Just an aside, I find the

21     suggestion to get it from the third parties by way

22     of subpoena to be just interesting.  Because sending

23     a subpoena and my client's reaction was get it from

24     a party in the litigation.  And I'm, like, that's

25     not really a valid objection.  We got to produce it

Page 142

1    anyway.  Because we're trying to crosscheck to see

2    if the party is hiding anything.  That's my, you

3    know, just little response to that is, like, well,

4    sure, we could also get it from them.  But you know,

5    that's the discovery process to uncover to see if

6    there's anything that's either unintentionally being

7    withheld by way of some accidental deletion or

8    something.  Not saying there's anything going wrong

9    on your side.  That's the idea there, is we get it

10   from the different people and cross-check the

11   records, make sure there's nothing there and no

12   stone unturned in that respect.

13        MS. LEITNER:  That's fine.  So I guess to the

14   extent for request for No. 48, now that we've

15   narrowed the issues and it's our understanding we'll

16   be producing documents from January 1, 2022 to the

17   present, we'll produce any documents -- not

18   privileged -- documents responsive to that request

19   on December 1st.

20        MR. LAROSIERE:  To be clear, we're not

21   accepting that.  We articulated the time frames for

22   a reason.

23        MS. LEITNER:  Then you've amended your

24   "concerning" into "containing" on some of these

25   questions, and we've been okay with that.  So I

Page 143

1    mean, if you're not making concessions here and not

2    acknowledging that we will amend our responses at a

3    later time, which we can do under Federal

4    Rule 26(e), then as soon as we receive the documents

5    and supplement accordingly, then, you know, our

6    position is we're going to amend it if we see the

7    documents.

8        MR. LAROSIERE:  The rules contemplate rolling

9    production.  This is the third time you've suggested

10   that we've taken some issue with your rolling

11   production.  Why do you keep doing that?

12       MS. LEITNER:  I never said that.  I'm saying

13   we'll produce documents we are responsive to No. 48

14   within the confines of the time frame we suggested,

15   and we will produce the documents on December 1st.

16   I'm just saying now that we met and conferred, we

17   understand your communications and now that we have

18   understood the tame frame, we are willing to

19   actually concede and look to see if any documents --

20   any nonprivileged documents are responsive to this

21   request.

22       MR. LAROSIERE:  The problem is we asked for

23   from January 1, 2021, then we had a nice discussion

24   about why and I explained it.  And then you're

25   response is, okay, well, we'll -- is the thing you

Page 144

1    have to remember; you were obligated to provide

2    complete responses, which at least identify what was

3    contemplated to be produced.

4        MS. LEITNER:  Pursuant to the claims and the

5    defenses in the case.

6        MR. LAROSIERE:  Under the rules.  And you

7    produced nothing.  You identified in a single digit

8    increment things that you would produce eventually.

9    And we have no issue with that.  What we're dealing

10   with right now is the objections that you stated and

11   things that you have indicated you won't be

12   producing.  Now for 48 you said TFI, control and you

13   suggested we subpoena this third party, but you will

14   produce something -- you'll provide whatever after

15   January 1, 2022.  We're still going to tell the

16   Court the problem is that we asked for 2021.

17       I think it's going to be -- I don't think that

18   this one issue is going to change the way it gets

19   handled.  The question is going to be can we ask for

20   stuff going all the way back to 2018.  Once that's

21   handled, I think it will be handled for everything,

22   really.  I don't think it really matters with

23   respect to this one particular issue.  Does that

24   make sense?

25       MS. LEITNER:  No.  That's why we asserted the

Page 145

1    objection.  But we'll just stand by the objection

2    and then -- on TFI and go from there.

3                MR. LAROSIERE:  I think that's the same result.

4                49, we asked to the corporate governance

5    policies of Defense Distributed, DEFCAD and FEDCAD

6    as of the time each of the works at issue were

7    uploaded, including how content was selected,

8    prioritized, scheduled, modified, inspected and

9    approved for publication.  The only objection is

10   that you said, Plaintiff already has the documents

11   requested for prior production, which this is

12   Plaintiff's First Request for Production.

13               MS. LEITNER:  I think 49 says they don't have

14   the documents.

15               MR. LAROSIERE:  No.  It says Defendant objects

16   to the extent that Plaintiff already has the

17   documents requested for a prior production.

18   Defendant, in his individual capacity, does not have

19   the documents in his possession, custody and control

20   for Defense Distributed, DEFCAD and FEDCAD.  This

21   request is better directed to DEFCAD.

22               MS. LEITNER:  Because my understanding is that

23   DEFCAD produced documents in response to Elik's

24   Request for Production before we got into this

25   lawsuit.  That's why the response is posed the way

1      it is.  And it should be directed -- if you're

2      asking for the Defendant entities, then this is a

3      proper response that should be directed to DEFCAD.

4           MR. LAROSIERE:  So we'll review the response to

5      Elik, which I believe was stonewalled.  That was

6      before you guys were involved, I understand.  But I

7      don't think we got, really, what we needed from

8      that.  We'll review it.  But I understand you're

9      asserting the control issue.  That's really all

10     that's at play here.  You said it's better directed

11     at them.  Just the control issue, which matters for

12     almost everything, so it doesn't -- this is similar

13     to the Thomas Odom one, where you asserted TFI,

14     control, proportionality.  This is -- well, Request

15     50, this time you didn't object.  You're just

16     bringing up the control issue and suggesting that we

17     direct it to the (indiscernible) at issue.  Do we

18     just put down control issue?

19          MS. LEITNER:  Yes.

20          MR. LAROSIERE:  Same thing for 51?

21          MS. LEITNER:  Yes.  I think this is 51 until

22     54.

23          MR. LAROSIERE:  Including 54 or including --

24     yeah, including 54.

25          55 simply asked for discussions, e-mails and

Page 147

1    texts that are not privileged concerning the

2    lawsuit, including previous counterclaims, including

3    the dismissal of those counterclaims and either

4    public or private communications, besides those for

5    which you can rightly claim privilege.  In that

6    respect, we're even asking for a privilege log with

7    respect to those.  You assert unrelation, time

8    frame, the proportionality and work product, et

9    cetera.  Can we agree that privilege is not an issue

10   here?

11        MS. GYEBI:  Are you accepting whatever we

12   designated as privileged -- our definition of

13   attorney-client privilege.

14        MS. LEITNER:  Attorney-client and work product.

15        MR. LAROSIERE:  Honestly, we don't want that.

16   We don't even want a privilege log with respect to

17   this question because that would be way too much.

18   That's why we disclaimed that.  That would be

19   basically a list of all of your conversations with

20   your client.  That's not what -- that's why we

21   disclaimed it.  What this is really getting at is

22   willfulness, state of mind as to all of the claims

23   and defenses here.  And when somebody openly talks

24   to journalists about their --

25        MS. LEITNER:  So you say you disclaim

Page 148

1          attorney-client privilege, but you ask for

2          correspondence including the dismissal of those

3          counterclaims.  Those documents could include the

4          strategy in which -- the counterclaims were

5          dismissed here.  That's why -- although you assert

6          it, you still ask for the documents in our

7          perspective.  That's why -- if you don't want us to

8          write a privilege log in this sense, then you're

9          actually accepting our definition of what

10         attorney-client, work product privilege is what

11         Amaris was kind of explaining.

12              MR. LAROSIERE:  I think in good faith we're

13         willing to do that to facilitate an easier response,

14         really.  Because we don't want anything that was

15         prepared by lawyer or was communicated to a lawyer.

16         We want things that were communicated to third

17         parties, anyone but a lawyer.  So I don't think we

18         want to quibble with you about work product or

19         attorney-client privilege.  I think that, you

20         know -- I think that those issues shouldn't really

21         come up here.

22              MS. LEITNER:  I'm trying to think.  I think

23         there should be non-outside attorney -- yeah, we can

24         produce any documents -- nonprivileged documents

25         responsive to Request No. 55.  And are we -- just to

Page 149

```
 1        close the gap, then, you're agreeing that we don't
 2        need to provide a privilege log with respect to 55?
 3              MR. LAROSIERE:  With respect to 55, no.
 4        However, if -- you know, I'll tell you right now if
 5        you come back and say there are no responsive
 6        documents, we know that's not the truth.  So then
 7        we'll ask again and we will ask for a privilege log.
 8        But you know, if in good faith we can get the
 9        communications with third parties concerning the
10        lawsuit that are discoverable and nonprivileged,
11        that's not going to be a problem.
12              MS. GYEBI:  I think we're willing to produce
13        specifically subject to the objections.  Because if
14        the point that you're seeking -- you're seeking
15        private communications.  So I mean, I think it's a
16        little weird that you want Mr. Wilson's pillow talk.
17        But I think that goes well beyond the scope of this
18        case, and it's unnecessarily and unduly burdensome.
19              MR. LAROSIERE:  Pillow talk concerning
20        copyright cases is something beyond the scope of my
21        mental comprehension, so I don't know if --
22              MS. GYEBI:  It says public or private
23        communications.  You're literally placing no
24        parameters around it.
25              MR. ZERMAY:  Well, I mean, with public
```

Page 150

1       conversations it would be, like, a blog post or
2       something of that nature where it's accessible on
3       the internet.  Private communications would be,
4       like, Instagram messages to an employee or some
5       journalist being, like, hey, didn't I pull a fast
6       one on Mr. Larosiere when I did that thing that's
7       not to the lawyers, ha, ha, ha.  I really drove up
8       the cost of litigation there.  I mean, that wouldn't
9       be pillow talk.  That would be, you know, just a
10      nonprivileged conversation with a third party
11      regarding it.
12          MS. GYEBI:  I just mean a private conversation,
13      not necessarily laying down on a pillow and talking
14      to someone in bed.  I thought that would go without
15      saying.
16          MR. ZERMAY:  I see this come up in my personal
17      injury cases, where the insurance company hires a
18      private eye to go follow people around.  And it's,
19      like, oh, wouldn't you know it, the Plaintiff
20      actually doesn't have back issues and is in Scotland
21      growing Christmas trees.
22          MS. LEITNER:  In that extent the Plaintiff is
23      putting his injuries at issue.  Here we don't know
24      all the discussions are related to the subject
25      works.  I mean, yes -- I mean, if you want to apply

Page 151

1      your nebulous definition of copyright, that could

2      include some of these communications.  But we're

3      not, you know -- I think that's why we were willing

4      to meet and confer to narrow this request.  I think

5      it's the way the request is worded as phrased is how

6      we're having issues with responding to these.

7          MR. LAROSIERE:  So understanding that what we

8      want is non-work product and nonprivileged

9      communications about this lawsuit, how would you

10     suggest we narrow it?

11         MS. GYEBI:  I think the problem is this can't

12     be narrowed.  This is something you need to get out

13     of deposition.  We can certainly put forth efforts

14     to find this information, but the breadth of this --

15     we're talking about public and private

16     communications simply concerning the lawsuit.  I'm

17     not sure why the previous counterclaims are

18     included, but it's included in this request,

19     including the dismissals of those counterclaims.

20     You're asking for a very broad set of responsive

21     documents over a course of what would now be four

22     years.

23         MR. LAROSIERE:  You're aware that your client

24     did ask for literally the same thing.

25         MS. GYEBI:  And Plaintiff is more than welcome

Page 152

1      to object to that to the extent it has that breadth

2      of documents to go through.

3              MR. LAROSIERE:  We did produce it.

4              MS. GYEBI:  We haven't received any production.

5              MS. LEITNER:  We haven't received any documents

6      responsive to that request.  Even if you produced it

7      previously, you haven't identified the Bates

8      numbers.  I don't know if there was any Bates

9      numbers in the prior production.  Either way, they

10     have to be identified based on the rule, and based

11     on if you're going to produce by category as to each

12     request in response to that accordingly.

13             MR. LAROSIERE:  So all of that aside, the point

14     is, clearly, your client -- and I know this was

15     before your involvement -- was comfortable enough

16     with these types of requests to ask them of others

17     and receive them.  We're asking the same thing in

18     return.

19             MS. GYEBI:  Of others being who?

20             MR. LAROSIERE:  Plaintiff and former

21     Counter-Defendant.  And but none of that matters in

22     terms of scope or discoverability.  So previously

23     you started to suggest that you would produce

24     something; where are we at on 55.

25             MS. GYEBI:  We'll provide a response producing

Page 153

1         what we believe to be relevant and properly limited

2         to the scope of this lawsuit.  Now, if you're

3         unsatisfied with that production and believe it

4         should be from January 1, 2021 and include

5         essentially every discussion, document,

6         conversation, e-mail and text about this lawsuit,

7         then you can revisit the issue then.  But --

8              MR. LAROSIERE:  Are you saying right now you

9         will not -- you won't go back to 2021?

10             MS. GYEBI:  No.

11             MR. LAROSIERE:  That's fine.  That's a time

12        frame issue.  And you don't think that text messages

13        and e-mails that Mr. Wilson sent about this lawsuit

14        to people who weren't his attorneys, those won't all

15        be provided?

16             MS. GYEBI:  We can do e-mails and texts.  I

17        think our problem is all documents, discussions,

18        conversations.

19             MR. LAROSIERE:  Now we're getting somewhere.

20        So let's --

21             MS. LEITNER:  I think that's what was in our

22        response.

23             MR. LAROSIERE:  It was not.

24             MS. LEITNER:  It says in that it seeks all

25        documents concerning your previous counterclaims.

Page 154

1          MR. LAROSIERE:  Let me Control F those exact

2     words.

3          MR. LEITNER:  Response 55 says, Defendant

4     objects to the extent that Request No. 55 is in

5     contravention of FRCP 26(b)(1) and that it seeks all

6     documents concerning your previous counterclaims and

7     seeks information unrelated to the claims being

8     litigated and regardless of the relevant time

9     period.

10         MR. LAROSIERE:  And so how does that relate to

11    your question of texts and e-mails?

12         MS. LEITNER:  Because all documents -- we're

13    trying to marrow down all documents based on your

14    request.  And so we're saying that that's

15    obviously --

16         MR. LAROSIERE:  That's fine.  I think we're

17    kind of struggling with this for several reasons.  I

18    think we were getting somewhere.

19         MS. GYEBI:  We can do e-mails and texts.

20         MR. LAROSIERE:  The only other thing is we're

21    going to understand texts includes DMs on the major,

22    you know, whatever; Twitter, Instagram, WhatsApp.

23    So we're not looking for little scraps or sticky

24    notes, things like that; stuff that you can

25    reasonably search.

Page 155

1          MS. GYEBI:  Is text defined?  And this is not

2     to push back on it, but for me to actually run the

3     search, I need to know what the definition is.

4          MR. LAROSIERE:  I would trust you to be

5     reasonable under the rules and look through those

6     types of communications.  Again, we're not asking

7     you to find scraps.

8          MR. ZERMAY:  I guess by text message --

9          MS. GYEBI:  That's what I understand a text to

10    be.

11         MR. ZERMAY:  It would be short message services

12    and multimedia message services; SMS, MMS.  That's

13    the formal lingo under the Telecommunications Acts.

14         MS. GYEBI:  Are you employing that definition

15    now?

16         MR. ZERMAY:  Yes.  Short message services,

17    messages, multimedia messages, those being text

18    messages.  And then direct messages being those,

19    like, Twitter, Instagram, WhatsApp, Slack.  You

20    know, that would be encompassing, like, the text

21    message universe that we would be -- not that --

22    like, if there's other messaging platforms they use

23    as --

24         MS. GYEBI:  We're running back into the

25    territory of undue burden.  You're asking for

Page 156

1    Plaintiff to look under every rock to find
2    information where he simply discusses this lawsuit,
3    the dismissal of the counterclaims and the
4    counterclaims themselves.
5        MR. ZERMAY:  I guess that's like the Red Rover
6    issue, where we're, like, we don't know what
7    messaging platforms he uses to communicate with.  He
8    should hopefully know he uses, like, a text message
9    service, being SMS and MMS.  I don't know if he uses
10   Twitter.  I don't know if he uses Reddit.
11       MR. LAROSIERE:  How about this; e-mails, texts
12   and DMs.  And that should cover everything and
13   not -- is that good enough?
14       MS. LEITNER:  Texts defined as MMS, SMS and
15   what else?
16       MR. LAROSIERE:  DMs are the platform specific
17   stuff.  Text are what's on here.
18       MS. GYEBI:  What platforms are we looking for?
19       MR. LAROSIERE:  You're the one who knows what
20   he has.  We don't know.
21       MS. GYEBI:  That's what I'm saying; the breadth
22   of it is so wide that we're going to end up going on
23   a running goose chase.  I understand that
24   Plaintiff's position is that, well, we're entitled
25   to it under the rules.  I'm entitled to everything

Page 157

1   as long as it has a scintilla of relevance or

2   evidence that can possibly be leading Plaintiff to

3   admissible evidence at trial.

4        I disagree with that understanding.  I do not

5   think that the rules are put in place to then put

6   the next party to search through millions and

7   trillions of documents in order to just potentially

8   find something that Plaintiff may use in this case.

9   If there's something that you're specifically

10  looking for, I'll work with you.  Let me know and

11  I'll look for that.

12       MR. LAROSIERE:  So we are good with texts and

13  e-mails.  The only thing we're missing is the --

14       MS. GYEBI:  The DMs.  Could be a direct

15  message.  It's any platform.

16       MR. LAROSIERE:  Let's have a good-faith

17  understanding of that.  And in your amended

18  response, just outline how you did it.  That's it.

19  And you know, because you got access to the stuff,

20  you know what he actually uses.  We don't want to

21  tell you go look for a WeChat if he doesn't use it.

22  If he sits there and he has a thousand messages on

23  WeChat, we expect you to look through it.  If he has

24  one message on WeChat that's the Welcome to WeChat,

25  we don't expect you to try to, you know --

Page 158

1          MS. GYEBI:  Right.  I think that's where the

2     issue is going to come in at, where we're just

3     saying undue burden.  That's where we disagree on.

4     And I understand your point, and this may be

5     something to note to the judge.  At what point do we

6     get to -- these are too many documents to be fishing

7     through in order to get just one thing.

8          MR. LAROSIERE:  I understand what you're saying

9     for sure.  And I don't know, frankly.  You know,

10    when it comes to messaging, it's really easy to

11    search, right, through keywords.

12         MS. GYEBI:  Does Plaintiff want to provide

13    keywords?

14         MS. LEITNER:  We asked for that.

15         MR. LAROSIERE:  We talked about it.  And

16    remember where we left off is we can't because

17    Defendant loves coming up with weird ways of

18    referring to things.  He's referred to -- like, he's

19    referred to Plaintiff and the former

20    Counter-Defendants as Zoroastrian apes, some weird

21    invocations of Zion.  This is something he does

22    constantly.  He's referred to John Elik as the

23    oracle (indiscernible).  So we don't know how to

24    give you those keywords, unfortunately.

25         MS. GYEBI:  Okay.

Page 159

1          MR. LAROSIERE:  We talked about it, I believe

2     you were going to try to find a middle ground.  And

3     if you find that, we will be --

4          MS. LEITNER:  I sent an e-mail for search terms

5     but I got no response.

6          MR. LAROSIERE:  I never saw it.  If you could

7     send it again, it would be amazing.  Just outline

8     what your methodology was, and that's good.

9          MS. GYEBI:  That works.

10         MR. ZERMAY:  One thing SMS and MMS, I hope --

11    it obviously includes the little iPhone thing.

12    Because there was a really funny issue or -- one of

13    my friends was trying to (indiscernible) bar about

14    direct messaging services versus texting and saying,

15    iMessaging is not SMS services because it uses wifi

16    or something.  And the bar is, like, no, you can't

17    just direct message to people.  So it's iMessages or

18    text messages, just to clarify that.

19         MR. LAROSIERE:  So this is all communications

20    concerning the Fuddbusters discord servers.  There's

21    no objections, just the control issue.  I'll just

22    put down control issue.  I don't think there's

23    anything for us to litigate there because there's no

24    objection.

25         Then we have documents and communications which

Page 160

1      you mentioned or referenced John Elik, Plaintiff's

2      employee.  Understanding the work product and

3      privilege objections, we'd like to -- I don't know.

4      What shall we put down for these?  It's similar.

5      The only difference is that this directly

6      references Elik; TFI, right?

7             MS. LEITNER:  Yes.

8             MR. LAROSIERE:  And the proportionality.

9             MR. LEITNER:  I know he was mentioned in the

10     counterclaim, but to the extent that it was alleged

11     that he was your employee that worked for hire.  I

12     don't recall seeing that.

13            MR. LAROSIERE:  It was also in your discovery

14     request.

15            MS. GYEBI:  You willing to limit the date?

16            MR. LAROSIERE:  No.  Wait --

17            MS. GYEBI:  The time frame, excuse me.

18            MR. LAROSIERE:  There's a reason that we

19     articulated 2018 for this one.

20            MS. GYEBI:  Can we get confirmation that you're

21     not looking for any communications with counsel?

22            MR. LAROSIERE:  Correct.

23            MS. GYEBI:  Also no work product?

24            MR. LAROSIERE:  Correct.

25            MS. GYEBI:  Are you willing to limit it to

Page 161

1      statements, messages or communications concerning

2      the copyrighted works?

3              MR. LAROSIERE:  No.

4              MS. GYEBI:  Okay.  So for this one we'll issue

5      an amended response to the objections.

6              MR. LAROSIERE:  What about with respect to 58

7      and 59, 60 and 61, which are -- 58 to 62, which all

8      ask the same questions, but refer to a different

9      former Counter-Defendant?  None of those were an

10     employee or drafted this specific works.

11             MS. LEITNER:  How is this related?

12             MR. LAROSIERE:  So Defendants' invocation of

13     Plaintiff's friends were intended to harass

14     Plaintiff, his friends and employees.

15             MS. LEITNER:  Willfulness, right?

16             MR. LAROSIERE:  Yes.  And it also leads to --

17     connected to harassment of Plaintiff, Plaintiff's

18     friends and his employees remains related to a

19     contested question of material fact.

20             MS. GYEBI:  We are -- I think these -- I agree

21     these are all pretty much related to each other.

22     For all of these, January 1, 2018 there's no

23     movement on the date; that's the date that Plaintiff

24     wants?

25             MR. LAROSIERE:  58 to 63.  That date is very

Page 162

1          specific as to Elik, but it doesn't matter as much

2          to the others.  But again, we need it at least from

3          January 1, 2021.

4               MS. LEITNER:  January 1, 2021.

5               MS. GYEBI:  Are you willing to limit these

6          Requests 58 through 62 -- correct me if I am

7          wrong -- 63 willing to limit to the requests -- are

8          you willing to limit the requests to being just with

9          regard to harassment and/or mention of the

10         Plaintiff?  And of the reason why I'm asking is I

11         believe that's the reason why you're asking for

12         these communications.

13              MR. LAROSIERE:  I feel like it would be just as

14         difficult to filter that out as just get the

15         communications concerning these people.  In fact, I

16         think it would be harder.  So I don't see why we

17         would do that.

18              MS. GYEBI:  It wouldn't be harder.  It would

19         just keep it relevant to the case.  And I know

20         there's an issue with the word relevancy.  But in

21         our conversation, my understanding -- correct me if

22         I'm wrong -- is that you're only looking for these

23         communications because you believe the

24         communications potentially show a pattern of

25         harassment or an intention to harass Plaintiff.  I'm

Page 163

1    asking whether -- based on that representation

2    whether you would be willing to limit 58 through 62

3    to statements, messages or communications which

4    mention or reference Josh Stroke in connection with

5    harassment or an intent to harass Plaintiff?

6         MR. LAROSIERE:  I'm not willing to put it on

7    you to do that.

8         MS. GYEBI:  I'm offering to do this.

9         MR. LAROSIERE:  Right.  But that's a very

10   slippery slope problem, right?

11        Zack, do you have a response to that?  That

12   just feels wrong.

13        MS. GYEBI:  I'm trying to compromise.  Our

14   original position was this is overbroad, it's unduly

15   burdensome and really has no relevance to the case.

16   Now you've explained the relevance to us.  I am

17   trying to kind of get a middle ground here where, A,

18   we limit the date and, B, we make it specific to the

19   reasons that you're looking for the information.

20        You're more than free to say, no, I think the

21   request is good as written; in which case we'll

22   revert to our original response and say, no, the

23   request is not okay.

24        MR. LAROSIERE:  There's something that prevents

25   me from accepting an opposing counsel from saying,

1       oh, I'll only -- it's basically like saying, I'll

2       only give you the materials where my client is

3       guilty.  That's wild.

4           MS. GYEBI:  It's not coming from that

5       standpoint.  It's coming from the standpoint that,

6       frankly, the Court -- I'm trying to actually limit

7       the things that the Court is going to have to go

8       through and get through.  Because then, we as the

9       parties, are going to have to explain to the judge

10      at some point, why is it we could we not agree to

11      this, why was no middle ground offered, why was

12      there no intent to compromise.  I am putting out

13      there, listen, I'm willing to compromise on this and

14      provide -- even though we believe it's irrelevant,

15      we believe it's overbroad, if you're willing to just

16      narrow it to the reason why you want the

17      information, which is to show an intent to harass

18      and/or actual harassment of Plaintiff, and to the

19      date, which we would say January 1, 2022.  Then we

20      can move forward.

21          MR. LAROSIERE:  We said -- for those we said

22      January 1, 2021.

23          MR. GYEBI:  I'm looking at January 21, 2018.

24          MR. LAROSIERE:  We just -- in our discussions,

25      we offered that.

Page 165

1          MS. LEITNER:  I think it's arbitrary.  I think
2     January 1, 2022 is what we still agree to as the
3     relevant time period based on the Copyright
4     Registration, publication dates and creation dates
5     and registration dates.
6          MR. LAROSIERE:  Middle ground is 2021.  And I
7     think you just don't believe there's going to be so
8     many -- now that you know what we're getting at, I
9     don't believe there's going to be so many
10    discussions of these people that there's a material
11    difference between the two requests.
12         MS. GYEBI:  The issue isn't volume as much as
13    relevance.  So I understand that we have a
14    disagreement.  I fully understand now where you're
15    coming from; it's, like, why does it matter, just
16    produce the documents, it won't be that many.  And
17    our position is that we are not under an obligation
18    under the rules or any obligation from the Court,
19    from my understanding, to produce documents that
20    have nothing to do with this case.
21         MS. LEITNER:  I concur with that.
22         MR. LAROSIERE:  I think if that's the position,
23    then we need to get that figured out.  This is going
24    to -- yeah.
25         MS. GYEBI:  Just so we have it clear, so for

Page 166

1     Request No. 58, 59, 60, 61 and 62, we have reached

2     an impasse.

3          MR. LAROSIERE:  Do you want to say impasse;

4     that's fine.  Let's just do that.

5          MR. ZERMAY:  Now we're approaching five

6     o'clock.  I think given we have a Representation on

7     the record that we were conferring today, and

8     there's a date impact for when we completed the

9     conclusion of this discussion for the transcript and

10    report to be filed.  I don't know if we want to come

11    together with some language to notify the Court that

12    this is being carried on until tomorrow right now,

13    just with the remaining time we have, or what

14    everybody's thoughts are on that.  We can do it off

15    the record or on the record.

16         MS. LEITNER:  Do we amend our joint notice?

17         MR. LAROSIERE:  We just file notice.

18         MS. GYEBI:  I'm not familiar with exactly what

19    the order requires.  My understanding was the Court

20    wanted us to meet and confer, so they don't

21    necessarily care --

22         MS. LEITNER:  Date, time and court reporter and

23    transcript.

24         MR. LAROSIERE:  The other thing is seven days

25    after the conference if the conference is going on,

Page 167

1     that matters to the Court.

2           MS. LEITNER:  Yes.  We can agree to amend the

3     joint notice to say that it's November 24, 2025 to

4     November 25, 2025 starting at ten.

5           MR. LAROSIERE:  Sure.

6           MS. LEITNER:  If you want to circulate that,

7     that's fine.

8           MR. LAROSIERE:  It's your home turf.  You have

9     computers here.  Do you think you could --

10          MS. GYEBI:  I'll throw it together.

11          MS. LEITNER:  Yes, we can do that.  And we've

12    already reserved a court reporter through Veritext

13    for tomorrow.

14          MR. LAROSIERE:  And we do the rush?

15          MS. LEITNER:  Yes.  We would need it by what

16    date again?

17          MR. LAROSIERE:  The 1st would be if we got done

18    today.  So seven days after the conference --

19          MS. LEITNER:  We still need Volume I.  So, yes,

20    December 1st.

21          THE COURT STENOGRAPHER:  And you both need it?

22          MR. LAROSIERE:  Yes.

23          (Proceedings concluded at 4:47 p.m.)

24                         - - - - -

25

Page 168

1                          CERTIFICATE OF REPORTER

2

   STATE OF FLORIDA          )

3                            )

   COUNTY OF ORANGE          )

4

5

6        I, JOANNE HAHN, COURT STENOGRAPHER, Notary

7   Public, State of Florida, I was authorized to and did

8   stenographically report the foregoing proceedings; and

9   that the transcript, pages ^ START PG through ^ END

10  PAGE, is a true and accurate record of my stenographic

11  notes.

12

13       I FURTHER CERTIFY that I am not a relative, or

14  employee, or attorney, or counsel of any of the parties,

15  nor am I a relative or employee of any of the parties'

16  attorney or counsel connected with the action, nor am I

17  financially interested in the action.

18       Dated this 1st day of December, 2025.

19

20

21

                     _____

22                   JOANNE HAHN, COURT STENOGRAPHER

23

24

25

**[& - 28th]**

| & |
|---|
| **&**  2:10 |

| **0** |
|---|
| **01629**  1:3 |

| **1** |
|---|

**1**  6:9 23:8,14
26:8,25 28:8
31:5,20 35:21
38:7,8 52:15,16
52:22 53:5,21
54:17 55:20
57:16 68:2,4
70:8 72:10,19
72:21 74:11
76:25 78:7,13
92:5 93:4,10
111:14,14 112:5
112:13,16,17
116:11 117:2,19
117:20 122:23
123:9,9 126:17
127:10 129:3
131:1 137:22
140:19 141:1
142:16 143:23
144:15 153:4
154:5 161:22
162:3,4 164:19
164:22 165:2
**10**  74:10 76:10
**104**  38:12
111:19

**11**  11:23 76:10
76:11
**111**  1:15 2:11
**1115**  2:6
**1125**  54:24
**11:06**  1:14
**12**  72:19
**1200**  1:15 2:11
**13**  85:20
**130**  22:22
**14**  81:17 85:20
**15**  54:24 81:21
82:1
**16**  86:7 114:24
116:6
**1654**  11:20
**17**  9:7 54:22
86:11 90:18
**18**  86:17 91:7,19
93:9
**18209**  99:21
**19**  93:8,9 112:22
113:2
**19.99.**  104:23
**1984**  9:7
**19th**  85:7
**1:30**  56:11
**1st**  7:7 20:17
21:22 34:4
40:13 67:19
68:7 94:17,18
94:21,23 97:2
97:10 110:23
140:11 142:19

143:15 167:17
167:20 168:18

| **2** |
|---|

**2**  30:18 107:19
**2.02**  11:24
**2000**  2:6
**2018**  23:14 25:2
27:13,17 28:7,8
30:2 31:4 68:2
74:11,13,14
76:25 78:7,13
99:11 117:19
122:23 123:9
126:18 127:10
144:20 160:19
161:22 164:23
**2021**  36:14
137:22 139:14
143:23 144:16
153:4,9 162:3,4
164:22 165:6
**2022**  24:21,24
27:18 31:4
35:15,18,20
68:4 74:14,16
93:10 94:16
117:20 123:9
140:19 142:16
144:15 164:19
165:2
**2023**  24:24
**2025**  1:13 41:17
53:5 66:21 70:9

72:20 167:3,4
168:18
**21**  95:5 139:14
164:23
**22**  66:21 97:12
101:15,18 102:7
**225**  122:13
**22668**  168:21
**23**  35:15 101:1
101:15
**24**  1:13 101:8,16
167:3
**25**  101:22 107:6
107:8 114:22
115:22 116:5,8
116:23 167:4
**259**  38:13
111:19
**26**  25:7,24 26:8
26:25 31:5,20
35:21 49:24
50:3 52:15,16
53:21 54:17
55:20 57:16
72:10 92:5 93:4
102:19 103:4,13
112:5 131:1
141:1 143:4
154:5
**27**  103:17
111:22
**28**  11:20 112:25
**28th**  20:24

**29** 113:1,4
**2:30** 93:5

**3**

**3** 28:17 31:6,25
33:13 34:1
107:19
**30** 7:14 113:5
**31** 36:14 113:6
**32** 113:21
**32801** 1:15 2:11
**33** 117:4
**33145-3239** 2:7
**33647-8744** 2:3
**34** 118:1
**34's** 7:17
**35** 121:22 124:6
**36** 122:17 124:6
124:8,16
**37** 123:23 124:6
124:15
**38** 124:6,8,16
**389** 121:23
122:7
**39** 124:17
125:15
**3d** 62:5

**4**

**4** 34:3 35:23
**4-3.7** 16:1
**40** 57:13 125:13
**41** 125:19
**42** 28:18 125:22

**43** 38:12 111:18
122:13 129:13
129:21 131:24
132:11
**44** 129:19
132:13
**45** 132:19
**46** 132:23
**47** 137:13
**48** 137:20
140:10 142:14
143:13 144:12
**49** 145:4,13
**4:47** 1:14
167:23

**5**

**5** 37:10,23 38:20
39:20 41:20
**50** 146:15
**500** 23:9 28:4
31:9 33:19
103:20
**501** 54:23
**504** 90:18,21,24
**505** 30:1
**51** 146:20,21
**52** 121:23 122:7
122:15
**54** 146:22,23,24
**540.08** 55:1
**55** 146:25
148:25 149:2,3
152:24 154:3,4

**58** 161:6,7,25
162:6 163:2
166:1
**59** 161:7 166:1

**6**

**6** 41:14 42:22
56:12 62:8,10
62:14,17 67:11
**60** 161:7 166:1
**61** 161:7 166:1
**62** 161:7 162:6
163:2 166:1
**63** 161:25 162:7
**650** 8:23
**6964** 2:2
**6:24** 1:3

**7**

**7** 61:19,24 62:14
62:17 67:12
**732** 9:6
**736** 8:23

**8**

**8** 67:15 68:7
**8209** 97:24

**9**

**9** 69:2 70:5 73:2

**a**

**a.m.** 1:14
**aback** 79:12
**abandon** 135:19
**able** 3:5 4:14
29:2 50:23

77:23 92:23
119:17
**above** 58:2
**absence** 105:2
**absolutely** 9:9
19:3 49:20 66:8
75:2 90:15
**abstractly** 7:21
**accepting**
142:21 147:11
148:9 163:25
**access** 48:13
54:4 65:16,16
91:5 106:2
157:19
**accessible** 150:2
**accidental**
142:7
**account** 109:23
109:24,24 127:2
**accountant**
107:14
**accurate** 17:5
22:7 33:11 53:3
67:5 168:10
**accurately** 42:2
52:2
**accusing** 95:20
**acknowledging**
84:10 143:2
**act** 16:2 105:8
105:17 106:11
124:8

action  54:3 55:7
  75:17 89:18
  97:18 104:6
  168:16,17
acts  155:13
actual  105:8,10
  108:2 109:19
  127:24 164:18
actually  11:18
  14:12 22:25
  29:11 35:18
  37:4 42:11 47:2
  59:1 75:16,17
  79:2 95:22
  102:8 104:9
  116:22 122:5
  125:16 128:14
  141:11,12
  143:19 148:9
  150:20 155:2
  157:20 164:6
add  15:5 77:17
  119:3
additional  3:11
  37:6 41:1 72:15
  92:12 115:23,24
additionally
  9:19 23:19
address  3:10
  27:21 55:8 98:3
  98:16 101:8
  124:18,24 125:4
  125:5,9

addresses  125:2
  125:7
adequately
  27:22
administered
  126:8
admissibility
  130:10
admissible
  29:12 41:9
  45:18 54:10
  76:13 87:18
  134:20 135:10
  135:15 136:16
  136:17 157:3
admission
  122:14
admits  55:13
  121:23
admitted  39:4
  39:16 40:4
  60:10 63:7
  66:14,18 70:3
  89:12 132:10
admittedly  80:7
advance  19:12
adventure  85:9
advised  126:5
advocate  16:3
affect  28:22
  36:24
affects  28:25
affirmative  78:1

ago  34:16 42:10
agree  6:23 19:6
  19:7 30:19
  38:19 39:19
  41:8 45:9 56:15
  59:1 60:17
  65:21 66:5
  69:13 72:8
  74:24 81:18
  83:11 92:18
  94:11 100:8
  101:2,15 107:22
  109:9,10 112:3
  115:17 123:3
  124:7,22 125:20
  141:6,7,8,9
  147:9 161:20
  164:10 165:2
  167:2
agreed  41:3
  59:2 75:6,12
  103:1 108:22
agreeing  55:21
  57:15 60:18
  67:2 149:1
agreement  16:8
  67:18 75:23
  76:4
ahead  4:13 7:13
  51:12 65:12
  77:15 106:24
  113:8 128:24
aided  127:7

allegation
  122:13,14
allegations
  26:12 98:13
allege  34:11
alleged  31:21
  39:8,9 48:7
  80:18 96:18
  100:9 103:8
  105:6 115:4
  127:8 160:10
allegedly  38:11
alleging  104:2,3
allied  9:5
allow  79:19
alter  29:4 66:7
  66:11,16 67:4
  100:5 103:10
amaris  2:10
  15:5 33:16
  63:12 79:15
  105:4 130:12
  138:14 148:11
amazing  159:7
amazon  104:23
amend  18:20,24
  37:22 40:24,25
  41:4,12 42:10
  53:14 96:19
  97:6 117:13
  118:16,22 120:8
  143:2,6 166:16
  167:2

[amended - asking]                                                          Page 172

**amended**  26:12
  35:11 36:2,11
  38:11 39:8,21
  40:15 41:11,24
  41:25 46:14
  49:9 96:20
  111:17 114:25
  122:6 128:17,22
  133:16 142:23
  157:17 161:5
**amending**  42:5
  134:12
**amendment**
  39:10 119:1
**america**  135:8
**amigo**  39:3 69:6
  69:11 104:21
**amount**  54:3
  108:10
**analogy**  80:12
  107:4
**anger**  117:6
**answer**  7:12
  13:9 29:16 43:8
  55:13 60:11
  62:17 78:23
  96:3 118:6,8
  135:13 136:6
**answered**  56:2
  67:20 82:19
  106:15
**answering**  84:7
**answers**  19:6,9
  26:22 62:11

64:14 79:14
**anticipate**  25:6
  57:5 77:24 79:4
  95:1 108:19
  127:15
**anticipation**
  3:14
**anticipatory**
  78:1
**anybody**  77:21
**anyway**  95:5
  135:7 137:6
  142:1
**apartment**  2:6
**apes**  158:20
**apologize**  51:4
  51:12 82:19
**appear**  12:16
**appearance**
  10:19 11:6,13
  12:3,5 14:5
  15:15 16:14
**appearances**
  11:22,23
**appeared**  20:19
  34:9 91:13
**appearing**  2:8
  2:13 14:12,14
**apply**  6:8 36:17
  57:20 68:23
  105:16 141:9
  150:25
**applying**  100:6

**appreciate**  5:4
  8:10,11 17:18
  22:9 52:21
  83:19
**approaching**
  166:5
**appropriate**
  66:25 67:1,5
  106:24 116:22
  139:18
**approved**  145:9
**april**  66:21
**arbitrary**  165:1
**area**  87:15
**argentina**  135:8
**argue**  131:23
**argument**  36:13
  79:7
**arkansas**  98:10
**arms**  139:19
**article**  44:17
**articles**  82:10
  82:14 86:15
**articulate**  23:15
  59:23 135:22,24
**articulated**
  142:21 160:19
**articulation**
  130:21 134:5
  136:8
**articulations**
  141:3
**artist**  138:9

**aside**  7:14
  141:20 152:13
**asked**  4:6,22 8:1
  11:11 17:18
  21:11 51:14
  68:17 79:9 84:2
  118:3,4,7,18,19
  118:25 130:23
  138:19 143:22
  144:16 145:4
  146:25 158:14
**asking**  7:19 8:7
  18:9 32:10,20
  34:22 35:1 40:6
  44:21 45:1 55:1
  55:14 62:13
  66:5,19,20
  76:22 81:7
  82:11,14,15
  83:20 88:5 89:8
  91:25 92:1 93:9
  93:11 96:2
  97:12 98:2,19
  103:17 105:20
  105:24 106:14
  108:6,12,13
  110:12 111:25
  112:1 113:23
  114:9 119:8,10
  119:14 125:10
  130:16 135:12
  136:5,23 138:2
  146:2 147:6
  151:20 152:17

**[asking - based]** Page 173

155:6,25 162:10
162:11 163:1
**asks** 23:8 31:25
110:15
**aspect** 33:1
**assert** 23:12
38:1 41:17
55:12 108:25
109:2 110:10,17
124:18,25
125:24 137:17
140:5 147:7
148:5
**asserted** 48:4
110:12 125:1,16
144:25 146:13
**asserting**
116:11 123:21
146:9
**assertion** 130:6
**assess** 29:2
**asset** 98:9 99:20
100:3
**assets** 23:9,19
23:20 27:8
28:11 29:5,20
31:9,11 32:1,3
32:11 33:19,21
79:17 98:7,17
99:12,15 100:1
100:4 102:2
103:19 104:1,4
104:18 105:11
105:15 110:16

127:8 131:25,25
132:3
**assume** 17:2
33:9 66:5
**assumed** 17:6
**assuming** 17:4
**attached** 23:6
44:3
**attachment**
75:18
**attachments**
24:17
**attempt** 12:5
55:3 95:1
**attempts** 28:19
89:17
**attend** 12:7
**attention** 11:19
25:23
**attenuated** 35:6
46:12 93:2
**attorney** 1:11
10:20,21,23
11:6 12:5 14:18
15:18,19 107:12
109:1 110:17
147:13,14 148:1
148:10,19,23
168:14,16
**attorneys** 14:25
15:24 153:14
**attributable**
109:18

**attribute** 107:15
108:6
**austin** 98:11
**author** 63:6
95:7
**authored** 63:2
96:12
**authority** 8:7,16
12:11 17:17,25
19:12 21:12
**authorization**
38:12 111:18
**authorized**
168:7
**authors** 81:24
82:5 86:14
**automatically**
45:12
**available**
104:23
**avenue** 1:15
2:11 108:5
**aversions** 84:1
**avoid** 7:8 24:12
74:22 79:25
87:22 119:1
120:5,14 121:20
127:21
**avoiding** 99:17
**aware** 15:21
39:4 40:4 42:7
53:9 151:23
**awareness**
83:22

**b**

**b** 9:5 14:11 25:7
25:24 26:8,25
31:5,20 35:21
52:15,16,22
53:21 54:17
55:20 57:16
72:10 92:5 93:4
112:5 131:1
141:1 154:5
163:18
**back** 5:24 10:16
25:2 28:7 41:20
47:16,17 52:1
56:24 72:12
104:7 112:10
122:17 129:21
130:5,24 131:20
135:25 136:1
137:8,10,11,12
144:20 149:5
150:20 153:9
155:2,24
**balances** 109:24
**bank** 109:23
**bar** 14:17,18
15:17,20 159:13
159:16
**bark** 85:8,10
**based** 16:25
21:1 24:15,16
25:18 26:11
36:9,10,20 48:1

**[based - break]**                                             Page 174

58:18,20 62:21
68:4 74:19
96:16 105:24
106:3 110:7
115:13 123:25
128:7 139:10
152:10,10
154:13 163:1
165:3
**baseline** 65:1
**basically** 23:8
42:25 73:23
81:9 86:18
125:9 147:19
164:1
**basis** 26:20
67:19 84:15
99:17 103:10
**basra** 86:12
**bates** 152:7,8
**battle** 86:5
**bayonet** 86:4
**bear** 27:3,9
36:18 51:4,6
55:10
**bearing** 24:25
52:21 97:17
**bears** 27:1
55:10 83:21
**beat** 61:13
131:8,9
**beaten** 69:17
**bed** 150:14

**began** 43:19
99:14
**beginning** 97:19
102:18
**begun** 44:10
**behalf** 2:8,13
11:14 12:6 16:4
16:13 32:23
128:25
**behavior** 23:22
23:24
**behaviors** 83:23
**belief** 28:19
29:20 78:8
82:22,25 99:19
100:19
**believe** 3:14,16
7:5 11:17 15:25
42:21 44:17
55:2 79:16
83:17 89:16,25
99:1,4,5,6,7,13
99:15 108:16
114:19 116:21
121:16 125:1
126:2,9 127:17
132:1 146:5
153:1,3 159:1
162:11,23
164:14,15 165:7
165:9
**believes** 28:10
**benchy** 62:4

**benefit** 54:9
**best** 3:22 7:2
22:12 87:20
96:13 106:15
141:17
**better** 5:12 7:22
13:9 32:8 45:21
46:15 60:22
69:16 70:2
93:18 107:3
122:25 133:2
145:21 146:10
**beyond** 17:25
25:21,22 31:5
31:20 35:19
39:9 52:14
100:8 149:17,20
**big** 35:2 119:1
131:3
**binary** 11:20
**bit** 28:3 57:8
63:12 64:9
103:2 105:22
123:5 139:21
**bitcoin** 124:18
124:24
**black** 34:14
87:5 104:22
**blackburn**
76:11,16,24
77:4,10 78:10
78:25 79:2,13
**blackburn's**
77:22

**blacklist** 121:22
121:25 122:1,9
**blah** 141:11,11
141:11,12,12,12
**blanket** 6:5
**blaze** 85:9,12
123:15 126:20
138:6
**blog** 41:15
42:13,15 43:1
43:16 45:23
46:11 47:7,25
48:10,18 52:9
55:2 61:25 63:2
66:21 150:1
**boilerplate**
109:4
**book** 34:13 87:5
104:22
**borrow** 85:6
**bother** 128:13
**bottom** 84:22
**brain** 126:6
**branch** 3:25
121:20,21
**breadth** 24:6
77:1 104:4
151:14 152:1
156:21
**break** 42:17,19
42:20 72:25
93:6,7 112:21
129:9,10,12

**[breaking - certain]**                                              Page 175

**breaking** 87:21
**brief** 3:15 21:10
**briefs** 19:18
**bring** 28:14
  45:6 47:16,17
  47:21 52:25
  84:11 134:2
**bringing** 42:11
  80:17 130:12
  146:16
**brings** 5:24
**broad** 31:18
  35:8,9 37:2 47:1
  47:15 53:6
  68:19 78:3,3
  90:3,5 91:2,3
  100:25 101:3,7
  101:13,19 110:9
  110:13 112:4
  117:8 129:7
  131:2 133:11,17
  151:20
**broader** 34:18
  88:16 106:12
**broadly** 27:1
  43:14
**brought** 26:6
  28:23 86:25
  95:23
**btc** 122:20
**bucks** 104:9
  107:6,9
**build** 80:23

**bulk** 74:9
**bullet** 135:18
**bunch** 129:15
**burden** 54:7
  90:19 91:4,6
  108:25 155:25
  158:3
**burdensome**
  149:18 163:15
**business** 3:13
  4:23,24 25:20
  99:12
**butterfly** 127:22

**c**

**c** 2:1 3:1 8:3
**calculated** 12:8
  40:22 41:6
  83:21 84:25
  92:10 98:12
  104:25 126:7
  134:19,25
  135:10 136:16
**call** 11:18 15:9
  18:7 25:23
  65:25 73:10
  74:25 100:17
**called** 8:3 34:14
**capacity** 43:3,6
  58:12,18 59:19
  60:7 61:8 62:20
  63:5,9,15,17,22
  63:23 65:11
  66:24 69:14,23

73:3,19 93:17
118:14,17,23
119:4,12,22
120:9 122:24
124:11 145:18
**capital** 38:24
  68:8 111:15,21
  112:8
**capitalize** 38:14
**car** 30:6 84:13
**cards** 84:9
**care** 166:21
**cares** 68:23
**carried** 166:12
**carry** 91:6
**cars** 83:6
**case** 1:3 8:3,4,20
  9:25 10:14,21
  11:1 14:13 15:1
  15:13 16:9,10
  17:9,10,16
  19:16 20:7,18
  25:1,11 26:4,9
  27:4 28:13 33:6
  36:20 54:2,16
  59:5 64:1,15
  65:7,9 76:20
  77:20,25 78:17
  78:19,22,25
  85:8 87:13
  89:21 105:25
  106:9 107:23
  111:9 113:17,17
  113:24,25 114:4

115:3,4,5 116:4
130:1 132:2,5
135:19 140:16
144:5 149:18
157:8 162:19
163:15,21
165:20
**cases** 10:7 90:8
  90:22 149:20
  150:17
**cast** 139:17,18
**categories** 6:21
  29:1
**categorization**
  6:14
**categorize** 5:18
  102:11
**categorized**
  5:14
**category** 5:21
  7:13 102:13
  152:11
**caught** 88:16
**causal** 49:19
**causally** 110:1
  111:8
**cause** 104:13
**cautious** 135:23
**caveat** 119:7
**cell** 128:2
**century** 85:7
**certain** 19:6
  23:10 32:17
  86:14

**[certainly - comfortable]**                                    Page 176

certainly  19:2
  88:9 136:22
  151:13
certificate  24:19
  168:1
certificates
  74:19
certify  168:13
cetera  102:19
  126:9 147:9
chance  3:15
  53:13
change  18:20
  21:1 102:4
  103:22 120:23
  123:8 144:18
changes  83:8
character
  127:13 128:1
charge  107:8
charges  107:6
charles  1:8
chase  13:1
  156:23
chat  3:17
check  96:15
  142:10
cheyenne  23:19
  28:4,5
chipping  120:2
choice  11:20
  120:20
choices  50:17

choose  109:17
christmas  30:1
  150:21
circle  2:2
  139:20,21,22
circling  19:15
  74:23
circuit  8:2 9:7
  89:21 90:7,12
  90:22 98:23
  130:2
circulate  167:6
citation  17:16
citations  10:21
cite  8:21 9:2
  10:14 11:1
  36:25 52:21,24
  128:2
cited  111:18
civil  80:6
claim  26:3 45:4
  49:25 54:1
  68:13 78:18
  83:7 85:13,16
  100:2,11 104:14
  147:5
claimed  54:22
claiming  48:24
  49:19 103:25
claims  23:21
  24:25 26:11
  28:23 36:10,18
  45:5 48:5 55:21
  57:17 76:14

78:17,22 86:24
  88:12,14 92:1
  97:17 104:6
  112:5 129:22
  135:16,17,17
  144:4 147:22
  154:7
clarification
  4:21 10:24
  13:21 14:12
  137:9
clarified  15:6
  97:4
clarify  5:2 14:10
  15:4 16:18,20
  19:5 21:20,24
  30:7 38:25 45:8
  70:5 91:20
  95:15 116:14
  119:21 138:14
  159:18
clarifying  22:4
  28:25 39:1
  71:16 119:11
clarity  10:19
  28:3 37:23,24
  86:13 103:24
clear  6:19 7:7
  10:1 13:7 27:20
  36:4 39:25 49:2
  49:5 59:4 63:7
  89:5 108:16
  119:20 142:20
  165:25

clearly  58:18
  152:14
client  13:11
  16:4 18:7 109:1
  110:17 147:13
  147:14,20 148:1
  148:10,19
  151:23 152:14
  164:2
client's  141:23
close  132:10
  149:1
closed  41:20
  42:8,10
code  59:24,25
  90:18
cody  1:7 22:15
  62:18 110:17
coin  77:17
colloquy  112:7
color  83:5,15
  84:12 85:5
  135:2
combined
  108:18
combines  86:18
come  56:24
  79:17 81:11
  148:21 149:5
  150:16 158:2
  166:10
comes  158:10
comfortable
  47:4 152:15

**[coming - concession]**                                        Page 177

**coming**  45:10
64:8 158:17
164:4,5 165:15
**comma**  60:7
**command**  55:13
60:10 66:18
70:3
**commercial**
108:2
**commingled**
131:25
**commingling**
79:16 100:4
103:5
**committed**
90:20
**common**  6:6,8
80:6
**communicate**
156:7
**communicated**
83:25 148:15,16
**communication**
69:2 76:23
83:16
**communicatio...**
34:5,22 39:13
40:7,8 42:14
77:20 78:9 82:5
83:12 88:6 92:2
93:12 117:5
118:4 119:15
122:19 127:10
128:12 129:13

137:21 139:9
143:17 147:4
149:9,15,23
150:3 151:2,9
151:16 155:6
159:19,25
160:21 161:1
162:12,15,23,24
163:3
**community**
46:17
**companies**  10:4
10:10 30:11
61:14 65:2,4,17
66:6 67:3
118:22
**company**  9:14
20:21 28:20
60:15 65:14
129:20,20
150:17
**company's**  29:5
**compatible**
118:24
**compel**  3:15,20
18:4,20,23 59:8
64:20 111:1
**competition**
54:24 105:7
**complain**  41:16
**complaining**
126:4
**complaint**  26:12
28:15 35:7,11

36:2,12 37:7
38:3,6,11 39:8
39:21 40:15,17
40:25 41:4,12
41:24,25 42:6
44:5 45:7,11
46:15 48:7 49:9
52:12 59:25
68:9 80:19
83:24 96:11,15
108:16 111:17
114:25 115:5,20
116:7,23 133:16
**complete**  23:24
31:2 62:12,16
64:24 72:3
94:18 96:21
108:20 109:14
110:15 121:13
144:2
**completed**
166:8
**completely**  20:7
104:11,16,24
107:22 130:3
**compliance**
75:19 130:14
**compliant**  21:3
31:2 59:24
**complied**  20:15
**comply**  20:8
21:24 22:5
87:20

**comprehension**
149:21
**compromise**
163:13 164:12
164:13
**computers**
167:9
**concede**  105:4
143:19
**concern**  78:10
93:12 122:21
130:9
**concerned**
52:17 84:18,19
92:16 137:6
**concerning**  39:2
39:5 40:7 42:14
42:25 48:10
60:12 67:24
69:3,9,11 76:13
79:6 83:4 89:1
96:4 97:8,16
101:1 126:7,22
127:22 129:14
132:14,20,24
133:10 142:24
147:1 149:9,19
151:16 153:25
154:6 159:20
161:1 162:15
**concerns**  89:4
**concerted**  55:3
**concession**  72:2

**[concessions - control]**

**concessions**
143:1
**concise**  141:15
**concluded**
167:23
**conclusion**  33:8
66:5 67:3 71:23
78:16,20 81:1,2
166:9
**conclusions**
81:12
**concur**  165:21
**conduct**  24:23
25:14 43:19
55:9 77:12
79:20
**confer**  1:11 3:12
4:4,14,22 8:9
12:1 15:13 18:1
18:16 21:16
53:19 56:16,20
57:6 91:8
117:11 122:2
151:4 166:20
**conference**  12:2
50:11 51:24
71:23 166:25,25
167:18
**conferences**
12:7 22:11
**conferral**  49:3
**conferred**  50:8
143:16

**conferring**  4:14
111:24 166:7
**confines**  143:14
**confirm**  56:4
71:10 101:11
**confirmation**
160:20
**confirming**  5:23
**conflate**  25:20
**confused**  80:16
136:23
**confusing**  109:2
**connected**  55:24
105:5 161:17
168:16
**connection**
163:4
**considered**  91:1
**considering**
54:2 65:5
**consistent**
118:17
**consolidated**
99:13
**consolidating**
103:9
**consolidation**
99:14
**constantly**
158:22
**constitute**  78:16
**constitutes**
98:17

**construe**  19:24
**construed**  27:1
**consult**  106:24
**containing**  69:4
69:6,10 142:24
**contemplate**
143:8
**contemplated**
22:10 144:3
**contemplates**
11:24
**contends**  126:14
**content**  127:12
145:7
**contention**
98:14,18 127:6
**contents**  125:4,6
**contested**  23:21
27:10 161:19
**context**  71:8
100:17 107:18
**continue**  17:21
18:7 51:7 56:15
56:16,22,23
134:3 135:21
**continued**  99:15
**continuing**
49:22 100:14
**contract**  75:18
**contracted**  79:7
95:7
**contracts**  76:23
79:13 82:13,16
93:11 127:24

139:7
**contradiction**
12:23
**contravention**
154:5
**control**  7:18
8:24 9:9 10:2,10
10:15 16:21
17:7,10 33:1,1
33:10 39:14
54:12,14 55:14
58:19 59:21
60:2,10 61:12
61:17 63:17
64:10,14,16,19
65:15 66:1,14
66:18 67:23
70:4,12 71:1,25
72:5,9,10 73:11
73:12,14,22
74:1,3,5,6 76:6
76:6 94:8,9,11
94:14,25 102:1
112:25 116:13
117:15,23
118:10,12 119:5
119:13,14 120:6
120:17,24
121:10 123:2,18
124:2,14,21
125:13,15 129:1
129:16,17
132:12,17,21
133:3,5,21

[control - court]                                                      Page 179

140:12 144:12
145:19 146:9,11
146:14,16,18
154:1 159:21,22
**controlled**
17:14 80:7
118:20 125:9
**controlling** 59:5
**controls** 17:4
33:10 61:14
**controversy**
54:3
**conversation**
51:13 76:22
83:14 86:21
88:10 93:11
136:11 138:1,20
139:2 150:10,12
153:6 162:21
**conversations**
81:11 82:12,16
84:17 138:4
139:6 147:19
150:1 153:18
**convert** 20:20
**conveying** 60:23
**convinced** 10:8
**convincing**
30:15
**copied** 20:4
**copies** 44:22
63:2
**copy** 93:14

**copying** 138:2
**copyright** 29:2
34:6,8,12,13,20
34:24 35:3,3,8
36:1,6,8,15,22
36:23 37:6,9,24
38:9 39:7,20
41:1,10 43:19
45:16,22 47:7
48:25 49:1
52:10 54:22
56:1 65:6 67:15
67:24 68:15,17
68:23 74:20
77:22 86:24
87:1,7,9,14,19
87:21,23 88:2,6
88:7,9,11 89:2
90:19 92:13,17
104:2,11 105:6
105:8,14,17,17
106:4,7,10
108:1 109:14
111:16 113:12
113:14,22 114:2
114:3,8,9,11,15
114:17,22
115:12,14,24
123:14 124:8
132:2 133:10,11
133:14 137:14
137:15 149:20
151:1 165:3

**copyrighted**
106:2 126:15
161:2
**copyrights** 37:1
55:25 92:14
**coral** 2:6,7
**cornerstone**
88:14
**corp** 65:25
**corporate** 12:20
12:21 13:4
99:18 145:4
**corporation**
28:11,12 66:1
**corporations**
125:3
**correct** 11:12,16
27:25 36:19
61:9,10,23 75:6
94:12 106:21
129:2 133:23
134:15 160:22
160:24 162:6,21
**correlating** 77:7
**correspondence**
44:22 48:10
148:2
**cost** 150:8
**counsel** 11:22
13:19,24 14:8
20:18 21:2 71:7
160:21 163:25
168:14,16

**counter** 44:9
63:3 86:24 89:2
89:7 91:16,21
91:23,24 92:1
92:15,21 130:18
152:21 158:20
161:9
**counterargum...**
79:9
**counterclaim**
91:14 160:10
**counterclaims**
91:18 147:2,3
148:3,4 151:17
151:19 153:25
154:6 156:3,4
**counterfactually**
104:17
**county** 168:3
**couple** 34:16
103:1 120:3
124:5
**course** 43:18
151:21
**court** 1:1,16
3:19 4:1,18
11:25 12:19
13:13 15:14
16:13 21:15
24:12 32:5
49:13,17 53:23
56:17,20 57:4
71:22,24 72:8
72:13,14,16

**[court - defcad]**

75:15,17 77:13
77:15 94:24
112:18 120:6,17
128:9,10,13
144:16 164:6,7
165:18 166:11
166:19,22 167:1
167:12,21 168:6
168:22
**court's** 8:13,17
21:14
**courtesy** 64:6
70:7 93:21
124:9
**courts** 27:4
**cover** 39:12
88:11 123:6
156:12
**covered** 73:24
**covers** 10:12
49:25 136:21
**crafted** 79:24
**crafting** 83:20
**crazy** 46:3
**create** 103:18
**created** 24:24
35:14 75:15
**creation** 74:21
106:6 165:4
**crescendo** 103:4
**cross** 142:10
**crosscheck**
142:1

**crypto** 100:15
100:17,23
109:24 127:1
**curious** 85:8
129:21
**currencies**
127:2
**currency** 109:24
112:23
**currently** 14:19
37:25 103:19
110:16
**custody** 7:18
10:2,9 39:13
58:19 60:2
61:12 64:10,13
64:16,19 67:23
70:11 71:1,25
72:5,9 118:10
119:14 145:19
**cut** 13:1 103:21
138:25
**cuts** 77:24 88:3
104:19
**cv** 1:3

### d

**d** 3:1 9:5
**damage** 104:13
**damages** 25:11
26:7 29:1
100:11 104:5,12
105:9,10,13
106:13 108:2,6

108:10 109:14
109:19,19 111:9
**dark** 105:21
**data** 24:2
107:17 128:3
**date** 1:13 3:21
5:2 7:23 20:16
20:16 22:2 53:4
74:16 76:25
94:23 106:6
123:8,14 160:15
161:23,23,25
163:18 164:19
166:8,22 167:16
**dated** 72:19
168:18
**dates** 24:21
165:4,4,5
**david** 1:8
**day** 5:6 22:23
52:18 56:16,21
56:22,23 88:22
111:7 168:18
**days** 3:13 4:13
4:23 13:15
18:19 71:22
96:25 166:24
167:18
**ddlegio** 48:18
**dead** 5:5 61:13
**deadline** 42:9
131:5
**deal** 140:16

**dealing** 10:4
47:24 144:9
**dealings** 25:21
**dearden** 86:8
**death** 55:6,8
131:9
**debits** 30:10
**december** 7:7
20:17 21:22
30:2 36:14
40:13 53:5
67:19 70:8
94:17 97:10
110:23 140:11
142:19 143:15
167:20 168:18
**decision** 109:20
**decline** 32:17
130:24 131:20
**declined** 59:18
**declining** 27:21
**deeds** 74:21
**deem** 128:8
**deeply** 87:23
**defcad** 1:7
24:23 25:19
63:5 64:2,4 65:8
67:8 70:15,24
72:2 93:22,24
106:1 132:24
133:1,2 145:5
145:20,21,23
146:3

[defeats - direct]                                                    Page 181

| | | | |
|---|---|---|---|
| **defeats** 135:17 | 91:21,23,24 | 111:13 112:11 | **designation** |
| **defend** 50:23 | 92:1,15,21 95:1 | 112:13 113:18 | 54:23 |
| 77:25 | 99:12 105:10 | 114:19,24 | **destin** 81:8 |
| **defendant** 9:18 | 130:18 158:20 | 116:21 124:1 | **detail** 135:1 |
| 32:9 33:5 38:11 | 161:12 | 147:12 148:9 | 137:25 |
| 39:3 40:4,17 | **defense** 1:7 26:3 | 151:1 155:3,14 | **detective** 85:7 |
| 43:3 48:13 55:5 | 49:25 54:1 64:2 | **definitions** 37:5 | **determine** 17:13 |
| 55:12 58:12 | 64:4 65:8 70:15 | 116:20 | **detract** 81:5 |
| 59:18,21 60:7 | 70:23 72:2 | **deletion** 142:7 | **dicker** 2:10 |
| 61:14,16 62:21 | 104:19 145:5,20 | **delineated** | **died** 72:24 |
| 63:3,25 64:4 | **defenses** 24:25 | 116:10 | **difference** 73:7 |
| 68:22 69:14,17 | 26:11 36:11 | **delineates** 38:21 | 81:22 121:19 |
| 69:22 70:2,8 | 55:21 57:17 | 54:16 | 160:5 165:11 |
| 71:15 77:4 | 77:19 78:1,1 | **demand** 9:11 | **different** 4:25 |
| 88:17 89:11 | 86:25 88:12 | 12:11 80:25 | 34:21 61:25 |
| 91:8,16 93:17 | 97:17 104:10 | **demonstrate** | 80:5 104:16,24 |
| 93:19 103:19 | 112:5 144:5 | 45:19,25 | 116:20 121:16 |
| 111:17 115:11 | 147:23 | **denied** 103:9 | 125:8,23 129:19 |
| 117:10 118:8 | **defensible** 49:5 | **dennis** 30:20 | 129:20 132:15 |
| 121:13,23 | **defer** 108:10 | **denying** 26:15 | 133:17 142:10 |
| 122:24 124:10 | **define** 115:19 | **depending** | 161:8 |
| 124:19 125:8 | **defined** 8:24 9:9 | 135:12 | **difficult** 162:14 |
| 128:24 132:9 | 33:25 36:9,9 | **deposition** 9:16 | **digit** 53:10 75:8 |
| 137:14,21 | 38:15 68:8 95:9 | 9:17 16:23 | 144:7 |
| 145:15,18 146:2 | 114:20,20,23 | 26:17 71:10 | **diligent** 60:1 |
| 152:21 154:3 | 115:6,8 116:2 | 151:13 | 64:18 |
| 158:17 161:9 | 121:4 123:11 | **depositions** 17:2 | **dioskouroi** 1:7 |
| **defendants** 1:9 | 133:15 155:1 | **deprived** 13:5 | 70:17,18,23 |
| 2:13 12:21 22:5 | 156:14 | **described** 46:14 | 71:3,11,13,17 |
| 25:16 39:13 | **defines** 89:25 | **describing** | 71:20 80:14 |
| 44:9 48:10 50:5 | **defining** 92:19 | 90:22 | 132:14 |
| 55:12 72:18,21 | **definition** 36:1 | **designated** | **direct** 11:13 |
| 77:9 82:8,23 | 89:22 90:5 | 147:12 | 146:17 155:18 |
| 86:24 89:2,7 | 91:13 95:25 | | 157:14 159:14 |

[direct - distributed]                                                    Page 182

159:17
**directed**  7:22
  26:13 32:8 61:9
  63:4 65:10
  69:16 70:2,9,22
  79:17 93:19
  122:25 133:2
  145:21 146:1,3
  146:10
**directing**  33:24
  85:23
**direction**  79:5
**directly**  13:17
  52:3 54:19 55:3
  84:4 89:14
  93:12 102:1
  107:15 140:23
  160:5
**directs**  11:25
**disadvantage**
  14:1
**disagree**  38:19
  41:8 55:22
  57:15 60:17,18
  65:21,23 92:19
  109:9,10 111:6
  112:3 157:4
  158:3
**disagreement**
  16:11 50:8
  63:14 165:14
**discarding**  88:2
**disclaim**  147:25

**disclaimed**
  147:18,21
**disclose**  59:20
**disclosures**  48:8
**disconnect**
  45:10 46:18
**discord**  159:20
**discover**  47:20
  60:1
**discoverability**
  152:22
**discoverable**
  29:11 40:22
  41:6 44:21
  49:10 68:24
  90:3 92:12
  105:1 108:12
  130:8 134:11,19
  134:25 135:3
  149:10
**discovery**  3:20
  4:22,25 14:10
  22:6 27:5,6,9
  39:17 40:18,19
  40:23 41:5
  42:11 47:20
  48:6 52:6 53:14
  53:21,23,24
  54:6,8,10,11
  62:21 71:12,14
  71:19 74:17
  79:20,23 84:23
  87:17 89:13
  100:10 104:8

107:2 108:20
  115:21,25 116:5
  116:25 131:2,5
  131:10 134:13
  134:17 137:25
  140:22 142:5
  160:13
**discuss**  3:5,19
  4:2,19,22 5:16
  6:25 17:21 18:3
  18:23,25 41:13
  44:13 52:9 53:8
  53:14 59:1 94:2
  118:5 134:1
  138:4
**discussed**  35:24
  43:5 55:25 57:6
  62:10 73:19
  119:16
**discusses**  15:18
  156:2
**discussing**  3:18
  10:22 11:7
  15:23 18:22
  24:22 40:9
  50:22 53:19
**discussion**  5:1
  32:25 34:6,23
  35:7 46:13 51:1
  51:3 72:7 73:12
  73:15,16,24
  101:6,17 137:15
  137:17 143:23
  153:5 166:9

**discussions**  9:15
  11:24 34:20
  92:10 146:25
  150:24 153:17
  164:24 165:10
**disgorgement**
  25:17 29:2
  100:12 103:25
  104:15 105:19
  109:17
**dismissal**  147:3
  148:2 156:3
**dismissals**
  151:19
**dismissed**  91:14
  91:18 148:5
**displayed**
  126:14
**disproportion...**
  23:13
**disproportion...**
  117:9 125:1
  137:23
**disprove**  79:3
**disproving**
  119:2
**dispute**  13:18
  55:17
**disputed**  43:21
**disputes**  12:9
**disregarding**
  34:20
**distributed**  1:7
  64:3,5 65:8

**[distributed - efficiencies]**                                                    Page 183

70:16,24 72:2
145:5,20
**district**  1:1,1
  11:10,15 21:4
  24:7,9 48:2
  75:21 130:2
**diversion**  32:11
  32:20 98:9,17
  99:25 127:8
**divert**  31:11
  32:3 33:21
**diverted**  29:20
**diverting**  27:8
  28:11,20 127:1
**division**  1:2
**dms**  154:21
  156:12,16
  157:14
**dnca**  36:24
**doc**  38:12 75:24
  111:18 122:13
  122:15
**docket**  75:15
  121:23 122:7
**document**  9:20
  40:12 56:6
  116:9 121:2
  139:5 153:5
**documents**  7:5
  9:11,13,22 10:1
  10:10 20:6,20
  21:1 24:2,3,4,7
  24:10,17 32:22
  33:2,17 34:5,22

39:5 40:5,12,14
42:1,3 43:4
44:23,24 46:21
53:2,4 55:15
57:24 58:13,15
58:24 59:6 60:8
60:11,14 61:5,7
61:11,15 62:19
62:20 63:15,21
64:4,13 65:10
66:19 67:8 68:6
68:12,12,14
69:2,15 70:7,14
76:17 78:9
79:10 80:21,23
80:25 82:13
92:23 93:18,22
94:17,18 95:11
96:9,25 97:9,13
98:19 101:24
103:18 108:13
108:19 109:3
110:15,25 111:4
112:1 113:10,23
115:10 117:14
118:4,9 119:12
119:15,18 120:1
120:12 121:14
121:15 122:19
124:9 127:24
128:12,18,23
138:12,15 140:9
142:16,17,18
143:4,7,13,15

143:19,20
145:10,14,17,19
145:23 148:3,6
148:24,24 149:6
151:21 152:2,5
153:17,25 154:6
154:12,13 157:7
158:6 159:25
165:16,19
**dog**  85:5,8,10
**doing**  3:24 4:11
  7:6 34:15 49:22
  59:19,23 100:16
  113:7 126:3
  143:11
**dollars**  30:5,9
  30:10
**donald**  47:22
**donate**  87:6
**donley**  101:2
**double**  49:15
**dozens**  73:17,17
  83:3
**drafted**  161:10
**drafting**  45:2
**drafts**  42:14
  44:16 63:1
**drain**  74:23
**drive**  97:25
  99:21 101:2
**drove**  150:7
**due**  20:24 94:24
**dueling**  20:10

**dump**  19:9
**dumped**  125:5,8

**e**

**e**  2:1,1 3:1,1
  16:24 36:14
  83:3 89:2,3
  138:24 143:4
  146:25 153:6,13
  153:16 154:11
  154:19 156:11
  157:13 159:4
**earlier**  9:14,22
  10:17 11:11
  35:24 43:6 68:5
  70:6 86:18
  89:12 97:18
  100:23
**earliest**  74:15
**easier**  12:8 69:7
  122:16 148:13
**easy**  86:2
  158:10
**economist**
  107:14
**edelman**  2:10
**edges**  140:2
**editorialization**
  61:22
**effect**  37:15
  47:6
**effectively**  61:24
**efficiencies**
  12:18 13:1

**[efficiency - event]**                                    Page 184

**efficiency** 6:12
  6:13 12:13
  14:11 16:25
  80:9 130:12
**efficient** 5:10
  8:8
**effort** 60:1
  64:18
**efforts** 87:7
  151:13
**ego** 29:4 66:7,11
  67:4 100:5
  103:10
**egos** 66:16
**eight** 19:25
**either** 6:4 7:3
  14:7 36:21
  52:10 54:14
  55:25 64:4
  70:23 100:22,23
  105:8 130:18
  142:6 147:3
  152:9
**elect** 105:8
**element** 79:3
**eleventh** 8:2 9:6
  89:21 90:7,11
  90:21 98:23
  130:2
**elik** 63:4 95:6,12
  97:4,8 146:5
  158:22 160:1,6
  162:1

**elik's** 96:4
  145:23
**elser** 2:10
**emergency** 18:6
**employ** 27:4
**employee** 95:6
  137:18 150:4
  160:2,11 161:10
  168:14,15
**employees**
  36:15 43:17
  55:4 77:11
  89:15 137:14
  161:14,18
**employing**
  155:14
**enable** 6:12
**encompass** 27:1
  139:22
**encompassing**
  155:20
**enforcement**
  44:8
**engage** 136:10
**engineer** 109:6
**engineering**
  138:23
**english** 51:3
  85:7
**ensure** 114:18
  139:25
**entangled**
  103:24

**entered** 76:3
**enterprise** 66:7
  66:10
**entire** 5:13
**entirely** 3:16
  57:3
**entirety** 60:25
  73:15
**entities** 4:24
  9:18 17:4,11
  25:20 32:9 33:5
  33:10 59:21
  60:11 61:15,16
  62:21,23 63:25
  64:11,22 66:1
  66:15,19 69:17
  70:2,8 71:15
  73:5 74:2 79:18
  80:3,4,7 93:19
  95:3 108:15,17
  123:1 124:10,20
  125:8 128:24
  146:2
**entitled** 26:1
  99:20 100:3
  104:6 156:24,25
**entity** 7:25 8:1
  9:23 16:22
  17:13 31:10,12
  32:3,12,12,21
  32:21 33:3,4,11
  33:20,22,25
  73:10,11,14,22
  80:5,17,22

  99:12 101:25
**entity's** 33:2
**eric** 81:8
**escaping** 63:19
**esi** 20:19 21:2
  94:2
**especially** 13:13
  14:13 34:13
  88:13 95:3
**esquire** 2:2,5,9
  2:10
**essentially**
  10:22 30:19
  70:6 73:14
  133:3 153:5
**establish** 24:11
  91:5 115:10
  126:10 128:15
  128:19
**established**
  23:22
**establishing**
  74:3
**estate** 97:14,15
  97:16 98:20
  100:13,18
  101:23,24
  109:25
**et** 102:19 126:9
  147:8
**ethical** 14:6,14
  14:17
**event** 5:3 130:23

events  44:24
eventually
  144:8
everybody's
  166:14
everyone's
  136:12
evidence  17:5
  40:22 41:7,9
  45:17,18,23,24
  46:6 48:4,6
  49:10 54:11
  76:13 78:9
  83:21 85:11,13
  87:18 89:10
  105:1,2,3 126:7
  134:20,20 135:1
  135:3,10 136:17
  136:17 157:2,3
evident  80:1
  87:13
evince  128:15
evinces  127:12
exact  50:19
  118:3 132:20,23
  133:9 154:1
exactly  47:2
  72:13 84:5
  120:19 136:7
  166:18
example  13:10
  14:24 46:5,7
  77:19 87:12
  100:15 126:25

131:17 135:9
examples  78:4
except  19:21
  30:20 76:24
  133:10
exceptions  16:5
exchanged
  82:13 137:21
exclude  40:2
excluding  63:9
exclusive  93:24
  93:25
excuse  160:17
executing  8:12
  19:19
exhibit  72:18,19
  72:21
exhibits  22:24
exist  60:9,11,14
  122:11 138:4
existed  23:24
  139:24
existence  123:7
  128:1
expand  91:13
expect  19:5
  78:25 80:23
  84:3 88:20
  96:20,23 110:20
  120:11 128:7
  157:23,25
expected  13:23
expecting  19:8

expedition  48:5
  68:14
expense  54:8
experience  48:2
expert  106:15
  106:21 107:16
  108:10 110:4
explain  21:9
  63:12 126:1
  135:1 164:9
explained
  143:24 163:16
explaining
  33:16 148:11
explanation
  136:15 139:13
express  117:6
expressly  59:22
extent  5:18 15:7
  46:23 56:3
  63:17 64:3 65:9
  65:13 67:7 70:7
  70:10 72:14
  84:25 94:17
  96:18 102:25
  108:23 121:14
  128:23 140:8,11
  142:14 145:16
  150:22 152:1
  154:4 160:10
extraordinarily
  20:5 90:3
extreme  46:6

extremely
  137:16
eye  150:18
eyes  138:8

**f**

f  154:1
f2d  8:23 9:6
face  48:22 49:7
  50:13 108:16
facilitate  12:8
  50:11 51:23
  87:25 148:13
facilitating
  135:16
fact  9:14 12:3,8
  12:9 14:23 17:5
  27:10 43:22
  59:21 76:25
  83:14 91:3
  116:19 135:14
  138:3 161:19
  162:15
factors  17:12
  29:6
facts  17:9 36:20
  47:13,17,20,21
  47:22 48:6
  105:24,25
  106:23,25
  107:23
fair  18:14
  132:18 136:18

**[fairness - forensic]**                                          Page 186

**fairness**  141:12
**faith**  12:18
  18:14 64:6
  148:12 149:8
  157:16
**fall**  84:9 105:11
**false**  54:23
**familiar**  166:18
**family**  31:8
  97:21,23 99:6
**famously**  47:22
**fantastic**  111:20
**far**  13:9 56:25
  67:25 89:21
  97:7 111:6
  115:7 121:19
  130:11,16 131:2
  131:3,6
**farm**  26:14
**fast**  5:9 52:7
  150:5
**faster**  49:4
  50:11 73:21
  102:14
**father**  30:21
  101:25
**favorite**  83:5,15
  84:12,12,13
  85:5,6 135:2
**fedcad**  145:5,20
**federal**  143:3
**federico**  1:8
**fee**  106:2,3
  120:2

**feel**  3:3 5:12
  7:11 27:22,24
  31:14 59:19
  60:13 139:17
  162:13
**feels**  121:14
  163:12
**fees**  25:19
**felt**  85:22
**fight**  101:14
  102:24
**figure**  88:18
  109:6 115:11
  132:11
**figured**  165:23
**file**  11:13 56:18
  71:22 75:21
  166:17
**filed**  11:6 46:2,4
  46:8 166:10
**files**  106:3
**filing**  12:2 15:14
  16:14 89:16
**fill**  13:12
**filter**  162:14
**final**  112:10
**financial**  25:21
  100:10 103:19
  108:14 109:5
  110:16 126:11
**financially**
  168:17
**find**  18:3 19:15
  20:7 48:6 52:23

  64:3 76:17
  112:1 120:1
  124:9 141:20
  151:14 155:7
  156:1 157:8
  159:2,3
**finding**  121:1
**fine**  7:13 8:18
  23:7 35:25 42:2
  56:5,25 65:21
  74:7 76:5 84:14
  116:10 119:19
  119:20,25
  120:11,18,19,22
  142:13 153:11
  154:16 166:4
  167:7
**finished**  3:18
  56:9
**finishing**  57:1
**firm**  71:17
**first**  3:10 4:19
  13:23 26:12
  35:11 36:2,11
  39:8,15,21
  40:15 41:11,24
  41:25 46:14
  49:9 51:3 53:16
  53:18 55:19
  111:17 114:9,25
  133:16 145:12
**fishing**  48:5
  68:14 158:6

**fist**  38:10
**fit**  47:15
**fits**  6:23
**five**  4:13 6:6
  56:13 57:2
  72:23 104:9
  112:18 129:10
  166:5
**flag**  34:14 87:5
  104:22
**flores**  1:8
**florida**  1:1,15
  2:3,7,11 14:17
  14:18 15:17,20
  55:1 168:2,7
**flowing**  105:13
**flows**  25:15
**fog**  126:6
**folds**  125:17
**follow**  66:15
  150:18
**following**  55:6
  114:5 139:1
**follows**  53:24
**footnote**  37:14
  38:7 111:14
  112:13,16,17
  116:11 117:2
  129:3
**foregoing**  43:2
  58:11 60:24
  117:10 168:8
**forensic**  107:14

**[forestalled - given]**

**forestalled** 20:7
**forget** 89:3
  98:23 127:19
  129:3
**forgive** 51:19
**forgot** 10:17
**form** 32:3
**formal** 155:13
**format** 141:16
**former** 63:3
  82:23 86:23
  89:2,6 91:24
  152:20 158:19
  161:9
**forth** 47:21
  130:5,24 131:20
  135:25 136:1
  137:8,10,11,12
  151:13
**forthcoming**
  110:23
**forward** 57:21
  72:6 124:4
  164:20
**found** 12:10
  15:21 30:10
  139:11
**four** 151:21
**frame** 24:16
  27:19,22 31:15
  31:15,17 32:17
  34:8,10 35:9,12
  36:3 75:1 81:13
  93:1,3 94:10

101:7,13,19
103:6,14 117:16
117:18,20 123:4
123:7,20,21,25
128:22 129:1
138:11 139:12
140:18 143:14
143:18 147:8
153:12 160:17
**framed** 130:17
  133:17
**frames** 142:21
**frank** 98:5
**frankly** 132:8
  158:9 164:6
**fraudulent**
  31:21 100:9
**frcp** 154:5
**free** 163:20
**friction** 120:15
**friend** 96:13
**friends** 43:17
  48:12 55:4 77:6
  77:11 78:11,13
  82:24 89:15
  159:13 161:13
  161:14,18
**front** 128:16
  139:19
**frustrate** 89:17
**frustration** 59:9
  59:12 117:6
**fuddbusters**
  93:12 159:20

**full** 9:2 94:18
  139:5
**fully** 19:17
  39:22 55:16
  56:20 73:19
  165:14
**funneled** 100:16
  125:2
**funny** 96:14
  159:12
**further** 7:9
  27:21 61:21
  168:13
**fuss** 119:1
**future** 121:20

**g**

**g** 3:1 9:6 125:25
  126:1 127:6
**gables** 2:7
**gained** 102:2
**game** 50:16
  65:24 66:3,25
  80:1
**gamesmanship**
  95:20,20,21
**gap** 41:20 149:1
**gee** 135:19
**general** 37:1
  44:5 53:22
  92:10 133:12
**generally** 17:1
  23:4 24:7,9
  46:16 88:16

108:3
**gently** 118:14
  119:25
**gesture** 4:15
**getting** 7:4
  21:16 80:22
  89:5 103:4
  105:3 126:6
  134:13 147:21
  153:19 154:18
  165:8
**ghostguns.com**
  122:20 132:20
**gibbons** 81:22
  81:23 82:8,10
  82:12,14,15
  83:3,13,15
  84:13
**gift** 97:25
**gifted** 29:25
**gifts** 97:23
**gingras** 1:8
**give** 17:24 18:15
  52:12 60:19
  62:16 71:18
  86:3 117:14
  130:6,20 131:17
  134:4 158:24
  164:2
**given** 13:13
  18:12 19:12
  50:11 60:24
  98:6 116:15
  120:11 166:6

**[giving - gyebi]**

| | | | |
|---|---|---|---|
| **giving** 10:21 | 88:18 100:4 | 142:8 143:6 | 77:7 78:2 79:11 |
| 18:24 78:4 95:3 | 101:5 104:7,9 | 144:15,17,18,19 | 79:15 80:13 |
| **gloats** 98:7 | 126:9 134:18 | 144:20 149:11 | 84:7 89:20 |
| **global** 29:19 | 149:17 | 152:11 154:21 | 95:24 99:20 |
| 47:1 | **going** 6:15 7:20 | 156:22,22 158:2 | 103:23 105:12 |
| **globally** 6:21 | 8:4 11:7 18:3 | 159:2 164:7,9 | 106:14 108:8 |
| 7:24 | 21:5,6 23:4 25:2 | 165:7,9,23 | 116:15 131:8 |
| **gmail.com** 2:3 | 25:5,19 30:23 | 166:25 | 133:7 142:13 |
| **go** 4:9 6:8,21 7:3 | 31:23 35:21,25 | **golly** 135:19 | 155:8 156:5 |
| 7:12,13 9:12 | 40:24 41:9,12 | **good** 4:15 12:18 | **guessing** 66:2 |
| 10:13 11:7 | 43:8 46:20,22 | 18:14 19:23 | **guilty** 164:3 |
| 13:12 22:13 | 47:11 50:10 | 64:6 136:14 | **guns** 62:5 |
| 24:13 41:19 | 52:16 53:4 | 148:12 149:8 | **gunspring** |
| 49:3 51:11,25 | 57:21 58:6 | 156:13 157:12 | 129:14 132:3,4 |
| 56:14 65:11 | 67:21 72:17 | 157:16 159:8 | **guy** 79:8 87:14 |
| 67:22 72:6 | 73:9 74:10 76:7 | 163:21 | **guys** 3:4,5,12,14 |
| 73:21 77:15,18 | 79:4 84:8 85:18 | **goose** 156:23 | 4:8,9 7:1 35:14 |
| 77:18 79:4 | 85:19 92:18,21 | **governance** | 36:23,25 39:17 |
| 80:10 81:23,25 | 92:25 94:1,4,5 | 145:4 | 40:24 41:12 |
| 85:14 87:11,16 | 100:19 101:10 | **governs** 11:23 | 73:23 89:8 |
| 90:23 94:3,4 | 101:12 103:3 | **grande** 104:21 | 103:9 106:12,20 |
| 102:14 104:12 | 108:9 109:9,11 | **great** 22:21 | 106:21 121:4 |
| 106:23 122:18 | 110:6,21 112:6 | 23:17 59:16 | 146:6 |
| 128:24 129:21 | 112:24 113:8 | 64:19 | **gyebi** 2:10 5:23 |
| 135:8,25 137:7 | 118:22 119:2,3 | **greg** 9:5 | 6:13 7:1 15:6,10 |
| 137:10,11,20 | 120:2,12 122:5 | **ground** 159:2 | 16:10 22:18 |
| 145:2 150:14,18 | 123:23 127:4 | 163:17 164:11 | 23:7,17 28:2,7,9 |
| 152:2 153:9 | 128:5,17 130:20 | 165:6 | 28:13,16,22 |
| 157:21 164:7 | 130:23 131:16 | **growing** 150:21 | 29:17,24 30:4 |
| **goal** 78:7 82:21 | 131:17,18,20,21 | **guess** 4:8 7:11 | 30:16 32:10,19 |
| 86:6 | 131:23 133:18 | 13:16 18:21 | 33:3 34:2,17 |
| **god** 87:20 | 134:1,2 135:25 | 25:9 26:10 | 35:24 42:17 |
| **goes** 32:24 | 136:6,10 137:7 | 41:19 43:7 50:7 | 43:11,15,23 |
| 45:13,20 86:5 | 137:12 141:3,18 | 59:14 60:3,24 | 44:15 45:4,8,14 |

[gyebi - highlight]                                                        Page 189

46:1 50:14 57:4
58:3,6 62:6,13
63:13 64:25
69:5,9 72:12,23
73:14 76:19,22
78:2,21 81:25
82:4,19 83:5,11
84:7 85:2,15,25
86:6,9,13 87:1
87:10 88:5 89:6
94:8 97:24 98:2
98:14 99:1,9,19
99:25 100:6
101:5,17,21
103:23 112:20
113:1,16 114:5
114:14 115:2,17
116:12,18 117:3
117:13,16,22,25
118:16 119:6,23
120:3,22 121:12
122:4,10 123:8
123:13,17,20,22
124:15,23
125:11,14,21,25
126:12,17,21
127:6,19 128:5
128:21 129:2,6
129:21 131:14
133:25 134:15
134:23 136:4,9
136:19,25
138:15 139:1,12
140:4,7 147:11

149:12,22
150:12 151:11
151:25 152:4,19
152:25 153:10
153:16 154:19
155:1,9,14,24
156:18,21
157:14 158:1,12
158:25 159:9
160:15,17,20,23
160:25 161:4,20
162:5,18 163:8
163:13 164:4,23
165:12,25
166:18 167:10

**h**

**ha**  150:7,7,7
**hahn**  1:16 168:6
  168:22
**half**  93:6
**hand**  3:18 83:2
  90:7
**handle**  4:18
  36:15 95:12,16
  96:4
**handled**  108:24
  144:19,21,21
**handling**  9:20
**happen**  44:2
  89:18
**happened**  25:5
  27:12 34:16
  41:17 44:9 46:8

89:16 103:8
109:7 132:11
**happens**  7:14,15
74:23
**happily**  5:5
**happy**  3:17 4:2
  9:25 10:8 23:16
  24:12 40:11,13
  44:23 55:18
  56:22 60:5,20
  90:7 96:19
  129:25 134:4
  135:21,24
**harass**  43:16,23
  44:8,18 55:3
  77:11 79:8 82:9
  82:22 89:14
  161:13 162:25
  163:5 164:17
**harassing**  45:21
**harassment**
  84:18,20 161:17
  162:9,25 163:5
  164:18
**hard**  5:5 47:1
  69:18
**harder**  31:12
  32:4 33:22
  162:16,18
**harm**  118:6,6,8
**harmful**  121:2,6
**harming**  118:5
  119:17 121:3

**harry**  107:5,7
107:20
**he'll**  71:10
**head**  81:6
**hear**  88:24
**hearing**  14:10
**heart**  7:4
**heck**  87:14
**held**  103:19
  110:16
**help**  20:21
  21:12 30:5
  41:15 55:17
  131:22 138:2
**helped**  126:10
**helpful**  25:10
  47:18 131:5
  136:3
**helping**  126:3
  127:1
**helps**  130:11,15
  135:16
**hey**  135:18
  150:5
**hid**  23:19
**hidden**  102:2
  131:24
**hide**  99:6 132:3
**hiding**  23:20
  27:8 28:19 98:7
  99:14,18 131:25
  142:2
**highlight**  122:6

**[highlighted - indiscernible]**                                    Page 190

**highlighted**
  14:9
**hire**  160:11
**hired**  139:7,9
**hires**  150:17
**histories**  93:11
**history**  28:11
  76:23 107:25
  108:3
**hitchhiker**
  52:10 104:21
**hoffman**  12:15
  12:15 14:4
  15:22 141:4
**hold**  57:19
  108:11
**holding**  139:19
  139:20
**holdings**  109:25
**holds**  38:1
**home**  167:8
**honestly**  86:1
  89:3 147:15
**honorable**
  54:15
**hope**  79:14
  159:10
**hopefully**  156:8
**hopefulness**
  12:25
**horribles**  30:14
  136:1
**horse**  61:13
  69:18 80:11

85:12 131:8,9
**horse's**  13:2
  80:10
**hostility**  117:6
**houlton**  2:2
**hour**  57:5
**hours**  88:22
  130:9
**housekeeping**
  5:8
**huge**  20:19
**hundreds**
  127:16,16
**hypothetical**
  47:10
**hypotheticals**
  47:12

**i**

**idea**  50:22 57:20
  82:7 83:2 99:23
  142:9
**identical**  62:10
  67:11
**identically**  20:8
**identification**
  72:22
**identified**  6:6
  35:10 37:7
  39:21 41:11,24
  41:25 47:8
  50:21 52:11
  68:9 75:24
  93:10 102:15,15

106:7,20 114:24
  115:20 116:7,9
  116:23 133:1,15
  144:7 152:7,10
**identify**  13:14
  24:4 31:7 44:25
  96:25 97:13
  98:20 102:12,21
  122:8 144:2
**ignore**  36:16
**ignoring**  34:12
**illegitimate**
  136:25 137:3
**imagine**  5:9
  137:3
**imessages**
  159:17
**imessaging**
  159:15
**immaterial**
  130:4
**immediately**
  23:23 58:2
  66:16
**impact**  166:8
**impasse**  166:2,3
**importance**
  54:2,6
**important**  29:6
  57:22 72:4 87:9
**improper**  11:18
  12:3,4 80:24
**impropriety**
  13:8

**inapplicable**
  130:9
**include**  8:15
  34:6,23 37:6
  41:1 71:2 92:10
  97:8 109:23
  112:13 118:19
  137:15 141:2,5
  141:7 148:3
  151:2 153:4
**included**  23:11
  32:14 115:25
  151:18,18
**includes**  118:21
  154:21 159:11
**including**  24:18
  122:22 126:22
  127:14 145:7
  146:23,23,24
  147:2,2 148:2
  151:19
**income**  107:11
**increment**  144:8
**indicate**  54:21
**indicated**  13:24
  144:11
**indication**  43:18
**indirectly**  102:1
**indiscernible**
  85:7 102:3
  104:25 123:19
  146:17 158:23
  159:13

**[individual - ip]**                                                        Page 191

**individual**  10:5
  23:10 43:3,6
  58:12,18 60:7
  61:8 62:19 63:9
  63:17,21,23
  65:11 66:10,24
  69:14,23 73:3
  73:19 93:17
  95:18 118:13,17
  118:23 119:4,10
  119:12,22
  121:24 122:24
  126:10 145:18
**individuals**  77:4
  83:25
**inference**
  138:24
**information**
  18:13 21:18
  28:10 29:12,18
  29:22 30:2,6,8
  41:23 43:4 54:5
  54:9 57:24
  58:13 65:4,5
  69:15 73:7
  76:12 77:1,22
  78:22,24 80:4
  84:11,15,16
  89:25 90:3 91:5
  91:9 96:3,4,9
  97:7,8,16 98:6
  105:9 107:9
  108:12,24
  109:21 117:8

  121:24 126:21
  131:4 134:11
  139:4 151:14
  154:7 156:2
  163:19 164:17
**informed**
  109:20
**infringe**  35:15
**infringed**  34:11
**infringement**
  25:14 27:11
  34:16 43:19
  45:16,22 54:22
  83:23 90:20
  91:1 104:2
  109:18 132:2
  137:15
**infringements**
  45:20
**infringing**  24:22
  35:19
**initial**  32:24
  48:8
**initiation**  55:6
**injunction**
  24:19
**injuries**  150:23
**injury**  150:17
**inquiry**  91:4
  113:11 115:10
**inside**  139:22
**insisted**  4:13
**inspected**  145:8

**instagram**  150:4
  154:22 155:19
**instance**  7:23
**insurance**
  150:17
**intellectual**
  87:24 88:16
**intended**  43:16
  77:10 82:9
  89:14 161:13
**intensive**  91:4
**intent**  18:10
  99:16,17 163:5
  164:12,17
**intention**  31:11
  32:2 33:20
  44:17,19 162:25
**intentional**
  90:10
**intentionally**
  46:5 88:1
  138:25
**interactions**
  77:10 82:8
  89:13 127:13
  128:2
**interest**  15:16
  109:25
**interested**  29:25
  168:17
**interesting**  10:3
  75:16 141:22
**internet**  150:3

**interrogate**
  14:22
**interrogatories**
  96:7 107:24
**interrupt**  9:1
**intrinsically**
  87:23
**investigations**
  79:1 81:8
**investigator**
  76:11
**investigators**
  44:7
**invites**  66:24
  87:5
**inviting**  65:24
  120:5,7,15,23
  128:16
**invocation**
  161:12
**invocations**
  158:21
**invoke**  95:2
**involved**  17:12
  68:16 120:13
  126:2 132:1
  138:2 146:6
**involvement**
  152:15
**involving**  97:14
  97:21 98:20
  127:22
**ip**  62:4

**iphone** 159:11
**irrelevant** 84:11
  85:2 164:14
**issue** 4:17 5:24
  6:1,4 7:24 8:3
  12:13 14:3
  15:11 16:15
  20:12 22:1,12
  24:23 25:13
  27:3 29:15
  33:13 34:10,11
  35:12 36:7,18
  37:8 39:10,14
  40:13 43:22
  45:20 46:11
  48:20 51:16
  52:5 54:20
  55:10,16 65:7
  67:22 74:1,3,5,6
  74:13 75:1 76:6
  76:7 78:17,19
  82:18 92:25
  93:1 94:8,9,11
  94:11,14,19,25
  95:7,24 97:22
  100:24 103:16
  104:12,22
  111:11 112:25
  113:12,13,16,17
  113:24,25 114:3
  115:3,4,5,8
  116:1,4,13
  117:2,15,16,21
  117:23 118:12

119:5,25 120:6
120:24 121:1,10
121:16 122:16
122:21 123:2,18
123:19,20
124:14 129:16
130:19 132:16
133:22 134:8,9
138:3,5,6,11,23
139:13 140:12
143:10 144:9,18
144:23 145:6
146:9,11,16,17
146:18 147:9
150:23 153:7,12
156:6 158:2
159:12,21,22
161:4 162:20
165:12
**issues** 4:18 5:15
  5:16 7:16 9:20
  11:8 13:14
  14:14 17:21
  18:2,5,25 27:10
  40:18,19 42:16
  54:2,7 57:11
  67:20 83:22
  94:15,24 98:8
  127:23 130:16
  141:9,18 142:15
  148:20 150:20
  151:6
**ivan** 95:9,22,25
  96:4,9

**j**

**j.k.** 107:20
**january** 23:14
  27:17 28:8 34:4
  68:2,4 74:11
  76:25 78:7,13
  92:25 93:10
  117:19,20
  122:23 123:9,9
  126:17 127:9
  137:22 139:14
  140:19 142:16
  143:23 144:15
  153:4 161:22
  162:3,4 164:19
  164:22,23 165:2
**jetty** 98:11
**jim** 76:11,16,24
  77:4,10 78:10
  78:24 79:13
**joanne** 1:16
  168:6,22
**joe** 125:25 126:1
  127:6
**john** 63:3 95:6
  95:12 96:4 97:4
  97:8 158:22
  160:1
**joint** 56:18
  166:16 167:3
**josh** 163:4
**journalist** 86:20
  88:10,25 89:1

150:5
**journalists**
  88:23 89:11,14
  92:2 147:24
**joust** 130:24
  131:20
**jousting** 57:11
  130:5
**judge** 8:12
  12:14,15 14:4
  15:22 26:13,24
  54:15 94:6
  141:4 158:5
  164:9
**judgments**
  99:18
**july** 9:7
**jumping** 14:7
**jury** 14:24

**k**

**k** 30:20
**keep** 5:9 16:16
  19:13 20:10
  31:23 65:21
  72:7 80:16
  103:2 118:17
  130:4 136:5
  143:11 162:19
**keeping** 27:5
  31:15
**keeps** 113:8
**key** 55:20

**keywords**
158:11,13,24
**kind**   3:25 5:9,13
14:1 24:8 79:11
95:2 103:4
148:11 154:17
163:17
**kitchen**   78:6
**knife**   88:2
104:18
**know**   3:4 5:17
5:19 8:4 14:11
17:11 18:25
20:3 22:18,25
25:4 38:17
41:13 47:21
50:5,25 51:10
56:17 59:7
60:14 63:18
69:24 71:24
73:6,20 77:5,23
79:6 80:11 82:9
85:5 88:22
90:11 92:8
93:13,14,25
95:6,8 97:18
98:1,4,22 99:2
100:15 103:7
107:2,6,13,18
109:5 110:6,9
113:15,21
119:12 120:20
121:6 128:6
130:13 132:9

134:21 135:7,18
135:20 136:1
138:3 139:15
141:2 142:3,4
143:5 148:20
149:4,6,8,21
150:9,19,23
151:3 152:8,14
154:22 155:3,20
156:6,8,9,10,20
157:10,19,20,25
158:9,9,23
160:3,9 162:19
165:8 166:10
**knowledge**
35:16 36:21
49:21,23
**known**   47:24
**knowns**   47:23
**knows**   156:19

**l**

**l**   9:6
**lack**   45:21 107:2
**lake**   2:3
**lanes**   126:10
**language**   51:3
166:11
**laptop**   72:24
**large**   57:10
**larger**   114:21
**larosiere**   1:4 2:2
3:10,23 4:5,11
5:3,7 6:3,19

7:11 8:10,18,23
9:3,9 10:18 11:1
11:4,11,17
12:16 13:7
14:21 15:8,9,16
15:24 16:8 18:9
19:2,5,13 21:21
22:1,8 23:2,8,18
25:4,12,23 26:1
26:13,19,24
27:20 28:1,6,8
28:12,14,17,24
29:23 30:3,7,17
30:23 31:1,6,24
32:7,16,25
33:14 34:1,3,25
36:4,13 37:3,11
37:16,18,22
38:17,20 39:1
39:11,24 41:14
41:22 42:7,13
42:18,21,25
43:13,16,25
44:4,19 45:6
47:10 48:9,21
49:2,12,24 50:3
50:10,16,24
51:2,15,22
52:16,20,25
53:9,16,21 56:7
56:10,19,22
57:3,10,19 58:1
58:4,8,17,21
59:9,12,16 60:6

60:18 61:19,24
62:4,9,15,24
64:8 66:9,13,23
67:10,14 68:10
68:16,20 69:1,6
69:11,22 70:1
70:13,17,19,25
71:6,14,21 73:1
73:9,17 74:6,9
74:15,22 75:2,4
75:8,12,16 76:1
76:4,10,21 77:3
77:9,14,16
78:23 79:19,25
80:16,20 81:7
81:15,17,21
82:2,7 83:1,6,19
84:21 85:18
86:2,7,11,16
87:3 88:8 89:10
89:23 90:2,6,10
90:13,15,18
91:22 92:6,9
93:8,24 94:4,10
94:13,14,20
95:17 96:3,11
96:20 97:12
98:1,4,18 99:4
99:11,23 100:14
101:1,9,19,22
102:8,17,23
103:17 105:20
108:11 109:10
109:15 110:14

[larosiere - leitner]                                                    Page 194

| | | | |
|---|---|---|---|
| 110:24 111:10 | 152:13,20 153:8 | 99:9,22 105:5 | **legally** 64:15 |
| 111:20 112:6,14 | 153:11,19,23 | 131:3 145:25 | 73:6 |
| 112:17,22 113:3 | 154:1,10,16,20 | 147:2 149:10 | **legitimately** |
| 113:5,7,10,19 | 155:4 156:11,16 | 151:9,16 153:2 | 136:23 137:6 |
| 114:7 115:7 | 156:19 157:12 | 153:6,13 156:2 | **leia** 2:9 |
| 116:8,13 117:1 | 157:16 158:8,15 | **lawyer** 14:15 | **leia's** 5:25 |
| 117:4,15,17,23 | 159:1,6,19 | 16:1,2,2,3 24:8 | **leia.leitner** 2:12 |
| 118:1,18 119:19 | 160:8,13,16,18 | 148:15,15,17 | **leitner** 2:9 3:3 |
| 119:24 120:5 | 160:22,24 161:3 | **lawyers** 150:7 | 3:21 4:3,8,20 |
| 121:7,18 122:8 | 161:6,12,16,25 | **laying** 150:13 | 5:6,17 6:17 8:6 |
| 122:12 123:10 | 162:13 163:6,9 | **lead** 27:2 40:22 | 8:13,22 9:1,8 |
| 123:15,18,21,23 | 163:24 164:21 | 41:6,9 45:18,24 | 10:13 11:3,5,15 |
| 124:2,4,7,12,14 | 164:24 165:6,22 | 76:13 83:21,24 | 13:20 15:3,22 |
| 124:17,25 | 166:3,17,24 | 87:17 92:11 | 16:15 18:8,12 |
| 125:12,16,19,22 | 167:5,8,14,17 | 98:12 105:1 | 19:4,11 20:13 |
| 126:1,16,19,25 | 167:22 | 126:7 134:19,25 | 21:23 22:3,17 |
| 127:9,21 128:9 | **larosiere's** | 135:3,10,14,14 | 24:14 25:9,13 |
| 129:1,4,8,11,13 | 87:22 | 136:16 140:1 | 25:25 26:6,17 |
| 129:19,23 | **larosieremm** | **leading** 157:2 | 26:20 27:15,24 |
| 130:20 131:16 | 2:3 | **leads** 85:11 | 30:22,25 31:3 |
| 132:7,19,23 | **latin** 135:8 | 161:16 | 31:17 32:13 |
| 133:4,9,21,24 | **law** 2:6 9:25 | **learning** 21:13 | 33:7,16 35:5 |
| 134:2,9 135:21 | 17:10 19:16 | **leave** 40:25 | 36:8,19 37:5,13 |
| 136:7,22 137:1 | 36:17 44:7 49:1 | 42:10 84:8 | 37:17,19 38:7 |
| 137:11 138:9,17 | 59:5 64:15 | 120:10,18 | 38:19,22 39:6 |
| 138:22 139:6,15 | 68:23 87:14,15 | **led** 45:1 139:9 | 39:15 40:11,24 |
| 140:5,12,14,24 | 87:19,21,25 | **left** 42:21 73:1 | 41:8,19 42:1,5,9 |
| 141:2,17 142:20 | 88:2 89:21 | 158:16 | 42:24 44:2 |
| 143:8,22 144:6 | 106:4,9 109:14 | **legal** 9:10,13 | 46:10,23 47:6 |
| 145:3,15 146:4 | 130:1 | 10:21 11:7 | 47:11 48:1,15 |
| 146:20,23 | **lawsuit** 23:23 | 29:15 33:8 66:5 | 48:24 49:11,15 |
| 147:15 148:12 | 44:10 46:2,4,8 | 67:3 78:16,19 | 49:18 50:1,4,15 |
| 149:3,19 150:6 | 55:23 57:18 | 81:1,2 87:6 | 50:17,24,25 |
| 151:7,23 152:3 | 71:5 89:17 92:5 | 112:23 128:12 | 51:8,10,21 52:8 |

**[leitner - little]**

| | | | |
|---|---|---|---|
| 52:19,23 53:3 | 109:8,13,22 | **letterhead** 63:6 | **limiting** 76:20 |
| 53:13,18 55:18 | 110:6,21 111:2 | **level** 63:14 78:8 | 88:23 140:18 |
| 56:9,11,21,24 | 111:12,23 | 107:7 | **limits** 53:22 |
| 57:14,23 58:15 | 112:12,16 113:4 | **liability** 27:11 | 91:1 |
| 58:20,24 59:11 | 113:6,9 114:22 | 28:25 29:4 | **line** 6:9,9 34:3 |
| 59:14 60:3,16 | 120:21 121:1 | 111:8 | 42:22 58:2 |
| 61:2,9,18,23 | 123:25 124:3,6 | **liberal** 27:4 | **lingo** 155:13 |
| 62:2,16 63:11 | 124:8,13,16 | **license** 77:21 | **link** 49:19 111:8 |
| 64:6 65:20 66:4 | 125:15,18 129:9 | 107:5,25,25 | **linked** 110:2 |
| 66:12,22 67:1 | 129:17 130:11 | **licensing** 108:4 | **list** 147:19 |
| 67:13 68:3,11 | 131:1 132:4,18 | **light** 43:2 58:11 | **listed** 38:5 83:24 |
| 68:19,25 69:8 | 132:22,25 133:6 | 105:22,23 | **listen** 164:13 |
| 69:21,24 70:5 | 133:11,20,23 | 117:10 | **lists** 16:5 |
| 70:15,18,22 | 134:7,14 137:9 | **likely** 16:3 54:9 | **litany** 67:16 |
| 71:3,9,16 72:10 | 138:7,10,21 | 93:21,22 | **literal** 116:15 |
| 72:17 73:8,25 | 140:8,13,19,25 | **likeness** 54:25 | **literally** 20:3 |
| 74:8,14,18,25 | 141:14 142:13 | 105:7 | 115:15 120:16 |
| 75:3,7,10,14,20 | 142:23 143:12 | **likes** 83:15 | 121:18 149:23 |
| 76:2,9,15 77:7 | 144:4,25 145:13 | **limit** 34:19 | 151:24 |
| 79:15,21 80:13 | 145:22 146:19 | 44:23 56:13,14 | **litigate** 8:4 23:5 |
| 80:18 81:4,13 | 146:21 147:14 | 64:11,12 79:5 | 40:16 159:23 |
| 81:16,20 86:10 | 147:25 148:22 | 123:13 160:15 | **litigated** 154:8 |
| 89:8,20,24 90:4 | 150:22 152:5 | 160:25 162:5,7 | **litigating** 20:11 |
| 90:9,11,14,16 | 153:21,24 154:3 | 162:8 163:2,18 | 20:13 |
| 91:12 92:4,7,18 | 154:12 156:14 | 164:6 | **litigation** 12:17 |
| 93:20,25 94:9 | 158:14 159:4 | **limitation** 73:4 | 80:6 86:22,25 |
| 94:12,15 95:8 | 160:7,9 161:11 | 76:24 78:12 | 89:1,4 91:10,12 |
| 95:24 96:6,15 | 161:15 162:4 | **limited** 23:12,14 | 91:21 92:20,20 |
| 97:2 100:7,21 | 165:1,21 166:16 | 29:14 32:16 | 141:24 150:8 |
| 101:4 102:7,10 | 166:22 167:2,6 | 53:23 65:6 68:7 | **little** 24:2 28:3 |
| 102:21 103:14 | 167:11,15,19 | 72:1 101:23 | 35:1 63:12 64:9 |
| 105:4,24 106:17 | **letter** 3:13 4:4,6 | 106:6 121:5 | 79:11 103:2,21 |
| 106:20,25 | 4:12 10:6 18:17 | 128:3,19 153:1 | 103:24 105:22 |
| 107:22 108:8 | | | 123:5 126:6 |

**[little - matt]**                                                    Page 196

127:11 139:21
142:3 149:16
154:23 159:11
**lives** 98:10
**lizzie** 86:8
**llc** 1:7 71:13
**local** 11:5,9,16
11:23 20:15
21:4
**located** 98:16
**location** 128:3
**lodge** 129:15
**lodged** 107:3
**log** 110:19,22
124:17 147:6,16
148:8 149:2,7
**logical** 35:12
**logs** 122:22
127:25
**long** 7:3 10:14
23:24 42:10
47:12 75:22
102:14,21 157:1
**longer** 92:4
130:19
**look** 9:23 11:19
17:8,15,16,19
25:7 30:12
48:18 64:14
72:12 107:17,18
108:3 113:8
122:4 124:4
143:19 155:5
156:1 157:11,21

157:23
**looked** 11:17
118:20
**looking** 28:3
30:12 34:24
47:14 65:4
78:21 107:12
108:5 114:18
115:10 139:4
154:23 156:18
157:10 160:21
162:22 163:19
164:23
**looks** 118:21
**lot** 16:18 17:12
34:17 46:3 49:4
51:25 69:7
74:23 85:4
107:3 122:1
**loves** 158:17
**lunch** 42:18,20

**m**

**ma'am** 9:3
11:17 19:3,13
21:21 22:1,8
25:12 29:23
**mad** 106:18
**madam** 49:13
50:24,25 51:8
**made** 11:4 14:8
19:7,23 28:20
78:5 79:6 80:9
84:1 104:9,10

104:22 133:19
**mail** 16:24
138:24 153:6
159:4
**mails** 36:14 83:3
146:25 153:13
153:16 154:11
154:19 156:11
157:13
**main** 93:3 100:7
110:13 113:13
141:8
**maintaining**
39:22
**major** 7:16
33:12 154:21
**make** 22:24
25:8 26:22
31:12 32:4
33:22 39:25
40:1 45:11 49:2
49:3 58:8 73:25
81:3 83:18 84:5
91:18 95:13
96:22 100:25
102:11,14
104:20 109:19
118:23 119:11
139:23 140:3
141:16 142:11
144:24 163:18
**makes** 121:18
**making** 14:21
69:18 108:18

118:25 119:1
143:1
**man** 65:1,14
87:8
**marine** 9:5
**mark** 72:18
**marked** 72:21
110:22
**market** 23:9
31:9 33:19
**marrow** 154:13
**marshalls** 97:24
99:21
**massive** 79:12
**matching** 30:10
**material** 9:4
26:1 27:10 38:8
43:20,22 44:21
44:25 49:7 55:2
82:16 83:9
91:25 111:14
132:7 161:19
165:10
**materially**
34:21
**materials** 24:3,8
32:1 33:17 34:5
34:23 36:16
44:24 48:22
64:18 66:20
76:23 98:12
137:25 164:2
**matt** 15:9,10,12
131:11

matter 5:7
14:24 26:2 27:1
44:20 46:7
53:25 56:20
61:15 70:19
93:3 99:5 123:4
129:2,25 130:25
134:10 162:1
165:15
matters 4:16
27:2 34:19
54:13,15 144:22
146:11 152:21
167:1
matthew 1:4 2:2
94:13
mayer 81:18
mean 21:17
32:9 33:15 36:6
52:8 65:19 66:2
71:8 72:10
73:15 76:21
79:22 84:23
88:21 93:20
115:3,22 120:21
133:12 134:20
138:11 143:1
149:15,25 150:8
150:12,25,25
meaning 115:21
means 33:9 83:9
107:13 128:14
meant 19:3 43:7
43:23 60:8

82:22 91:11
95:22
media 86:22
meet 1:11 3:12
4:4,21 8:9 15:13
18:1,16 21:15
53:18 56:16
57:5 63:24 91:8
117:11 122:2
151:4 166:20
meeting 13:15
13:23 18:10
19:9 111:23
member 31:8
99:6 137:4
members 97:21
97:23
mental 149:21
mention 21:22
34:6,23 48:19
75:7 86:19
162:9 163:4
mentioned
13:22 14:3
15:17 16:24
22:11 37:9 40:3
46:24 68:1 75:4
100:23 160:1,9
mentioning
37:21
message 155:8
155:11,12,16,21
156:8 157:15,24
159:17

messages 117:5
150:4 153:12
155:17,17,18,18
157:22 159:18
161:1 163:3
messaging
155:22 156:7
158:10 159:14
met 143:16
methodology
159:8
methods 140:22
middle 1:1
11:15 21:3 24:6
24:9 48:2 63:24
130:1 159:2
163:17 164:11
165:6
miller's 9:16
million 20:20
65:1,3,16 137:1
137:2,5
millions 157:6
mind 7:7 147:22
minimum 45:17
minute 86:18
93:6 129:10
minutes 72:23
112:19
minutiae 128:8
128:20
misapprehens...
35:2 113:13

misinterpreting
116:18
misquote 11:8
missing 6:15
110:3 157:13
misunderstan...
58:19 109:14
misunderstood
4:9
mitigation
104:12
mms 155:12
156:9,14 159:10
model 106:19
modified 145:8
moment 9:3
11:19 13:6,20
122:12
monetary
100:24
money 28:20
29:3 66:20 87:6
104:10,20
108:17,21 125:2
126:9
month 20:25
30:9 107:7,9
morgan 23:19
28:4,5
morning 90:24
moskowitz 2:10
motion 3:3,14
3:20 7:2 14:10
24:18,19 26:15

[motion - notice]                                                    Page 198

26:20 42:9
121:20
**motions** 7:9
**mouth** 13:2
80:10 85:24
**move** 18:4,23
21:13 28:2
40:25 57:8
58:21 64:20
102:8 121:21
132:13 164:20
**movement**
161:23
**movie** 84:13
**moving** 16:17
18:20 65:22
125:23
**mpi** 38:3 40:3
**multimedia**
155:12,17
**multiple** 55:5
59:22 71:15
89:11

**n**

**n** 2:1 3:1 9:6
**nail** 54:19
**name** 15:8
54:25 95:18
105:7 132:4
**named** 92:4
132:6
**names** 95:18

**narrative** 88:1
**narrow** 3:6 18:2
34:24,25 35:23
47:4 53:7 67:25
68:3 86:20 91:9
92:24 97:13
111:5 115:1
120:16 127:11
128:5,7 130:16
151:4,10 164:16
**narrowed** 6:2
82:24 100:21
103:6 117:18
142:15 151:12
**narrower**
117:11 122:2
**narrowing**
128:6
**nathan** 81:8,18
**native** 51:5
**nature** 135:5
150:2
**nebulous** 36:25
47:14 151:1
**necessarily** 46:7
52:4 61:16
66:10 84:11
96:21 98:18
150:13 166:21
**necessary** 16:4
114:15
**need** 4:17 5:17
5:19 6:17 9:24
10:24 19:6

20:13 29:9
37:19 42:18
43:25 44:13
54:10 55:8,15
74:12 85:15
91:5 92:8 94:2
106:23 107:9
109:20 111:1
119:7,11 123:10
126:21 128:2
130:8 131:4
139:13 149:2
151:12 155:3
162:2 165:23
167:15,19,21
**needed** 146:7
**needs** 39:9 54:1
72:8
**neff** 81:22,23
82:8,10,12,14
82:15 83:3,13
83:15 84:17
**neff's** 84:13
**negatives** 49:15
**neither** 100:1
**net** 139:17,18
**netflix** 107:5,6
**never** 22:10
40:5 51:2,15
66:12 75:17
108:1 137:1,2,5
143:12 159:6
**new** 20:18

**nice** 143:23
**night** 85:10
**nine** 37:6 41:1
115:23,23
**non** 148:23
151:8
**nonparties**
130:18
**nonparty** 76:16
81:14 132:6
140:21
**nonprivileged**
26:2 53:25
143:20 148:24
149:10 150:10
151:8
**nonproduction**
6:5
**nonsense**
120:15
**north** 1:15 2:11
**notary** 1:17
168:6
**note** 12:19 14:5
24:14 27:15,18
61:19 110:18
111:5 158:5
**notes** 67:11
85:19,25 154:24
168:11
**notice** 11:13
12:2,5 15:15
16:14 31:24
36:23 40:17

**[notice - opinion]**

49:21 52:12
56:18 68:23
71:21 75:19
166:16,17 167:3
**noticed** 52:13
**notices** 13:25
67:16,24 68:17
**notify** 166:11
**november** 1:13
72:19 167:3,4
**number** 50:20
52:4,11 53:10
65:17 75:24
**numbers** 5:18
6:18 37:25 38:2
38:4,5 39:5 56:1
102:22 107:13
141:19 152:8,9

**o**

**o** 3:1
**o'clock** 56:13
166:6
**object** 33:7
110:8 121:7
137:24 140:20
146:15 152:1
**objected** 69:20
129:6 137:23
**objecting** 13:17
62:17
**objection** 5:13
6:5 7:16 10:22
17:22 20:2 23:1

23:2 27:18 31:3
31:16,19 35:22
36:1 42:4 43:9
43:10 46:21
47:5 60:25 61:3
73:15 95:14
97:11 111:1
125:24 140:6,17
141:25 145:1,1
145:9 159:24
**objections** 5:19
21:7,19 22:20
27:19,21 37:23
39:23 43:2
58:11,22,23
61:3 67:16
76:15 85:21
93:15,21 97:11
102:4 107:3
109:4,12 110:10
110:12 112:24
117:10 122:1,23
129:15 140:16
144:10 149:13
159:21 160:3
161:5
**objects** 145:15
154:4
**obligated** 144:1
**obligation** 20:9
165:17,18
**obtain** 9:11,13
10:6 53:24
64:15 106:1,10

140:21
**obvious** 79:8
**obviously** 79:7
154:15 159:11
**occur** 9:17
**occurred** 26:18
**occurrence**
100:15
**occurring** 43:20
**october** 20:24
**odd** 88:9
**odom** 129:14
132:1 146:13
**offended** 51:16
**offer** 72:1
**offered** 164:11
164:25
**offering** 3:24,25
4:5 6:7 120:7
163:8
**offers** 11:20
**office** 36:22
**oh** 95:21 150:19
164:1
**okay** 6:24 11:5
13:11 18:8,12
19:4 22:17
25:25 30:4,16
31:6 34:17
39:11 45:14
50:7 52:19
53:13 67:10,10
69:1,5 74:6 75:3
76:5 95:8 99:1

101:9,19 103:17
109:15,19,22
112:17 118:25
123:17 124:17
128:14 129:8
133:24 135:13
138:10 142:25
143:25 158:25
161:4 163:23
**old** 24:8 128:11
**olive** 3:25
121:20,21
**once** 3:25 5:10
6:20 17:21
40:16 47:22
48:4 144:20
**ones** 3:4 59:3
122:18
**ongoing** 99:17
**onward** 34:4
76:25 78:14
126:18 137:22
**open** 57:8
**opening** 14:21
139:21
**openly** 147:23
**operated** 80:14
**operating** 66:4
66:6 67:3
**operative** 55:20
121:3
**opinion** 58:20
87:9

**[opposing - payment]**                                                    Page 200

**opposing**
  163:25
**opposite**  79:5
**option**  7:3
**options**  6:7
**oracle**  158:23
**orange**  1:15
  2:11 168:3
**order**  8:14,17
  11:25 12:14,24
  14:4 21:14
  26:15,16,21
  53:23 55:16
  72:15,19 75:5,6
  75:10,13,22
  76:2 102:15
  108:22 140:13
  140:15 157:7
  158:7 166:19
**ordered**  3:19
  4:1,18 12:15
  13:13 21:15
  56:20 72:13,14
  79:1
**orgs**  63:10
**origin**  54:23
**original**  5:11,25
  163:14,22
**originally**  63:20
**originating**
  31:12 32:3,11
  32:21 33:4,22
**orlando**  1:2,15
  2:11

**outline**  157:18
  159:7
**outside**  52:6,14
  130:13 148:23
**outstanding**
  13:14 18:11
  94:24
**outweighs**  54:8
**overbreadth**
  24:15
**overbroad**
  27:17 87:2,4
  95:14 137:23
  163:14 164:15
**overlay**  61:17
**overly**  53:6
  112:4 117:8
**overruled**  10:23
**overruling**
  21:19
**overstep**  72:14
**own**  9:14 10:4
  65:1 68:21
**owned**  72:4
  101:24
**owner's**  90:19
**owns**  10:11 40:4
  64:14 66:10
  71:15 73:5

**p**

**p**  2:1,1 3:1 9:6
**p.m.**  1:14
  167:23

**page**  25:8 38:8
  40:1 52:17 58:9
  58:10 111:14
  114:18 168:10
**pages**  168:9
**paid**  77:4,5 99:7
  127:2,14,17
**paint**  108:20
**paper**  24:1
  34:14 87:5
  104:23
**parade**  30:14
**parades**  135:25
**paragraph**
  28:17 90:25
  121:23 122:7
**paragraphs**
  38:12 111:19
**parameters**
  114:16 149:24
**part**  26:7 29:11
  31:10 32:2
  33:20 89:4
  140:15
**participate**  12:1
  16:12
**participating**
  12:17 15:13
**particular**  6:25
  7:20,24 19:15
  42:15 45:3 49:8
  97:14 98:21
  144:23

**particularly**
  65:5
**parties**  7:8
  11:20,24 12:1,7
  12:16 13:24
  28:21 44:13
  53:24 64:1 65:9
  75:22 76:5
  141:21 148:17
  149:9 164:9
  168:14,15
**parts**  125:23
**party**  7:17 10:7
  10:20,24 12:1
  12:17 14:7,15
  19:17,18 141:24
  142:2 144:13
  150:10 157:6
**party's**  13:17
  26:3 53:25 54:4
  54:5
**past**  9:21 23:3
  56:14
**paste**  93:15
**pasted**  20:4
**pattern**  27:7
  34:12,14 162:24
**patterns**  30:13
  126:20
**pay**  106:1
  122:20
**payment**  100:23
  100:24 125:7
  126:24 127:25

**[payments - please]**                                      Page 201

**payments**
  100:15 126:22
  126:23
**people**  45:2,21
  51:5 79:6,8 87:6
  88:17 92:3,11
  92:16 142:10
  150:18 153:14
  159:17 162:15
  165:10
**people's**  92:14
**percent**  57:13
  107:19
**perfectly**  118:25
**period**  23:22
  26:10 27:14
  60:9 82:12 93:9
  127:15 139:24
  154:9 165:3
**periphery**
  139:23 140:2
**permeated**
  121:10
**permissible**
  38:1
**permission**
  13:18
**permit**  12:11
**permits**  72:15
**person**  17:14
  21:16 32:12
  33:1 80:8 85:11
  85:21 107:15
  127:13,14,17

**personal**  48:11
  55:4 59:19 63:5
  77:6 103:20
  110:1 120:8
  125:5 150:16
**personally**  12:2
**perspective**
  116:1 148:7
**pertain**  38:2
**pertains**  94:25
**pertinent**
  120:25
**pg**  168:9
**ph**  120:2
**philippines**
  135:4
**phone**  18:6
**phrase**  24:8
  85:6 128:12
**phrased**  32:15
  33:12,14 88:19
  88:20 110:8
  151:5
**physically**  12:22
**pi**  82:17
**picture**  103:18
  108:14,20
  110:16 131:3
**piece**  97:15
**pillow**  149:16
  149:19 150:9,13
**pink**  83:16
**pis**  81:24 83:2

**pitched**  86:4
**place**  1:15 157:5
**placing**  149:23
**plain**  12:23
**plaintiff**  1:5 2:8
  15:11,12 28:9
  29:24 30:1,6
  37:25 38:10
  40:3 43:17 44:8
  44:18 48:3,11
  54:22 55:4
  65:13 68:21,22
  76:20 78:8,10
  78:13,21 82:9
  82:23 85:17
  86:23 89:1,15
  91:10,15,16,20
  91:22,22,23
  92:22 93:13,14
  96:8,12 97:9
  98:19 104:4,6
  109:2 111:16
  116:23,24 117:7
  117:19 118:5
  119:17 120:23
  121:4,14 126:14
  126:21 127:9
  128:5 129:22
  134:17 145:10
  145:16 150:19
  150:22 151:25
  152:20 156:1
  157:2,8 158:12
  158:19 161:14

  161:17,23
  162:10,25 163:5
  164:18
**plaintiff's**  18:17
  22:16 29:18
  40:9 45:14
  48:23 76:13
  77:6,11 82:22
  82:23 95:5,10
  98:14 99:19
  105:10 127:6,7
  133:25 145:12
  156:24 160:1
  161:13,17
**plaintiffs**  15:12
**platform**  156:16
  157:15
**platforms**
  155:22 156:7,18
**plausibly**  50:23
**play**  50:16
  65:24 66:2 76:6
  76:7 91:19
  92:21 146:10
**plays**  134:16
**pleadings**  26:3
  41:4 42:8 52:13
  132:10
**please**  8:6 18:25
  32:5 41:13
  49:14 51:4,6,24
  52:24 55:17
  77:13 105:22
  112:19 122:12

**[pled - pretty]**                                                    Page 202

**pled**   23:20 29:4
   103:5 131:25
**point**   16:21
   19:15,23 21:6
   21:21 25:4
   28:17 51:7
   64:20 78:5
   79:15 83:17
   94:2,19 97:24
   99:21 105:4
   110:13 111:3
   115:2 131:11
   149:14 152:13
   158:4,5 164:10
**pointed**   7:25
   26:24 54:16
   101:22
**pointing**   8:17
**points**   7:25 8:14
   13:21 80:5
   100:7
**poking**   105:21
**policies**   140:1
   145:5
**polite**   51:18
**pose**   36:13
**posed**   145:25
**position**   9:16
   10:15 12:4,22
   12:25 14:13
   16:16 17:7
   19:20 20:14,14
   24:14 25:3 27:7
   27:15 29:18

31:1 45:15
   48:21 49:5,7
   50:2,2,6,12 52:1
   52:2 54:18
   56:19 57:14
   59:8,24 60:20
   60:20 61:13
   62:1 63:16,20
   64:21,25 65:14
   65:20 68:20,24
   71:18 72:1 73:2
   73:3,5 76:17
   85:16 88:3
   92:15 109:16,16
   118:20 121:8
   134:16 143:6
   156:24 163:14
   165:17,22
**positions**   30:24
   60:19 73:20
   102:25
**possession**   8:25
   9:10 10:2,9
   33:18 39:13
   54:13 58:19
   60:2 61:12
   63:18 64:10,16
   64:18 65:15
   67:23 70:11
   71:1,25 72:5,9
   77:23 101:24
   118:10 119:13
   119:13 145:19

**possessions**
   64:13 103:20
   110:1
**possibility**
   119:16
**possibly**   157:2
**post**   41:15,17
   42:13,15 43:1
   43:12,23,25
   44:6 45:3,15
   47:25 48:10
   55:2 61:25 62:4
   62:6,8 63:6
   66:21 106:10
   150:1
**posted**   46:1
**posterity**   22:21
**posting**   44:16
**postmortem**
   131:10
**posts**   63:2 117:5
**potentially**
   29:21 84:16
   87:17,22 157:7
   162:24
**pots**   45:23
**potter**   107:5,7
   107:20
**practically**
   131:7
**practice**   7:9
   27:7 34:12,15
   42:6 48:2
   121:20

**practices**   30:13
   92:12 126:20
   140:1
**preceding**   23:23
**precise**   51:18
**precluded**   48:12
**prefer**   64:11
**preference**
   51:10,11
**preferred**   64:23
**preliminary**
   24:19
**premature**   3:23
**prepared**   19:9
   20:3 130:22
   131:19 148:15
**preparing**   20:11
   41:15
**prerogative**
   136:4
**presence**   13:17
**present**   12:22
   24:22 35:15,18
   49:9 68:4 106:8
   122:23 127:10
   140:20 142:17
**presented**   26:22
   78:16
**pretrial**   14:20
   15:1
**pretty**   10:1 52:7
   87:9 89:5
   100:19 109:4
   129:9 161:21

[prevent - prohibit]                                        Page 203

**prevent**  95:19
**prevents**  163:24
**previous**  51:13
   120:11 147:2
   151:17 153:25
   154:6
**previously**  39:4
   63:1 118:3
   152:7,22
**price**  12:15,15
   15:23 141:4
**price's**  14:4
**primarily**  66:14
**primary**  55:13
   60:10 66:18
   70:3
**principle**  102:7
**prior**  22:11
   24:24 101:5
   138:16 145:11
   145:17 152:9
**prioritized**
   145:8
**private**  44:7
   76:11 147:4
   149:15,22 150:3
   150:12,18
   151:15
**privilege**  109:1
   110:18,19,22
   137:17 147:5,6
   147:9,13,16
   148:1,8,10,19
   149:2,7 160:3

**privileged**
   110:22 117:8
   137:18 142:18
   147:1,12
**probably**  42:18
   57:12 69:12
   87:12 135:23
**problem**  6:6
   34:7 35:2 47:13
   73:22 120:6,17
   123:15 124:20
   126:20 143:22
   144:16 149:11
   151:11 153:17
   163:10
**problems**  24:6
   120:2
**procedurally**
   14:25
**proceed**  11:21
   15:1 121:19
**proceeded**  16:9
   16:11
**proceeding**
   14:19 16:13
   131:9
**proceedings**
   14:20 15:2,14
   167:23 168:8
**process**  142:5
**processing**
   122:20
**produce**  7:5,17
   20:6 32:18,22

34:4 40:12,14
43:9 46:22,25
53:2,4 58:15,22
58:24 59:2,6,18
62:24 64:5 67:9
67:18 68:6
70:13 80:21
92:23 93:23
97:2,9 113:10
113:23 118:4
121:16 124:10
128:25 133:18
140:11 141:25
142:17 143:13
143:15 144:8,14
148:24 149:12
152:3,11,23
165:16,19
**produced**  9:21
   24:17 32:20
   33:17 39:4,18
   63:1,3 76:8
   137:25 138:12
   138:15,19 144:3
   144:7 145:23
   152:6
**produces**  65:12
**producing**
   19:18 42:1,3
   43:8 46:20 47:5
   62:20 63:19
   68:12 70:7
   94:17 103:12
   110:19,25 122:6

142:16 144:12
152:25
**product**  67:17
   109:1 110:18
   147:8,14 148:10
   148:18 151:8
   160:2,23
**production**  7:6
   8:20,24 9:23
   10:6 13:10
   20:16 21:22
   22:2,16 30:18
   42:22 53:11,12
   68:6 69:18,19
   94:22 96:22
   110:23 139:3
   140:18 143:9,11
   145:11,12,17,24
   152:4,9 153:3
**productions**
   22:9
**profession**
   137:5
**profit**  27:11
   104:14 106:5
**profits**  25:17
   100:12,12
   105:10,11,19
   107:16,19 108:7
   109:18,22
**progressing**
   131:4
**prohibit**  14:18

[prohibits - questions]                                              Page 204

| | | | q |
|---|---|---|---|

**prohibits** 12:10
**pronounce** 15:8
**proof** 85:9
**proper** 141:16
  146:3
**properly** 4:14
  153:1
**property** 87:24
  88:17 97:16
  98:15,15,21
  99:3
**proportional**
  26:3 54:1 55:24
  57:17 65:3,18
**proportionality**
  26:5 29:7 55:22
  57:16 72:11
  84:24 93:4
  111:6 125:17
  132:12,17,21
  133:4,6 146:14
  147:8 160:8
**propose** 111:10
**proposed** 13:11
  21:22 22:2 54:8
**proposition**
  11:2,4
**propounded**
  62:22
**prosecuting**
  135:17
**protected**
  113:12,25 114:2
  114:10,13

115:12,16
**protective** 26:15
  26:21 75:5,6,10
  75:13,22 76:2
  108:22 140:13
  140:15
**prove** 55:16
  66:17 77:25
  83:17 90:20
**proverbial** 13:2
**provide** 20:25
  40:17 41:23
  96:24 103:24
  112:2 128:17
  144:1,14 149:2
  152:25 158:12
  164:14
**provided** 48:8
  100:10 107:17
  118:7 153:15
**provides** 96:8
**providing** 17:22
  128:20
**proving** 87:13
**pseudonym**
  96:13
**public** 1:17
  88:18 147:4
  149:22,25
  151:15 168:7
**publication**
  24:21 54:25
  106:6 145:9
  165:4

**publicity** 88:15
**publish** 49:22
**published** 95:11
**publishes** 96:8
**pull** 62:2 110:4
  150:5
**pulled** 46:10
**pumped** 100:18
**purple** 83:15
  85:5 135:2
**purpose** 17:24
  18:10 27:5
  52:12 108:2
  126:23
**purposes** 10:19
  17:1 57:1
  130:12
**pursuant** 31:5
  31:20 144:4
**push** 155:2
**put** 20:14 29:13
  37:20 38:24
  45:10 67:11
  85:23 86:8,12
  101:10,15 112:8
  132:15 137:2
  146:18 151:13
  157:5,5 159:22
  160:4 163:6
**puts** 14:1 107:4
**putting** 85:24
  102:12 150:23
  164:12

**q**

**qualification**
  133:19
**qualified** 58:17
  84:24 85:3
**qualifier** 78:15
**qualify** 16:6
**question** 5:25
  8:1 13:16 28:22
  29:16,24 35:5
  43:11,21 44:20
  46:19 48:16
  49:17 52:8
  59:14 64:9,12
  64:22 67:20
  70:25 71:25
  72:8 73:13
  76:19 77:1 78:2
  79:14 89:20
  105:12 106:15
  108:25 111:5
  113:20 114:6,12
  114:12 116:3
  118:3,19 123:3
  129:24 130:3,10
  132:14 133:9
  136:5 137:4,16
  144:19 147:17
  154:11 161:19
**questions** 26:21
  44:25 45:1
  59:15 72:15
  79:17 81:5

[questions - references]                                    Page 205

118:24 130:17
133:1 136:25
142:25 161:8
**quibble**  148:18
**quick**  25:7
    43:11 46:10
    62:3 72:23
    76:19
**quicker**  57:8
**quickly**  122:18
**quite**  34:15 78:4
**quote**  26:24
**quotes**  112:8

**r**

**r**  2:1 3:1 9:6
**raiding**  43:12
    44:6 62:7
**raids**  43:12 44:6
    46:17,17 62:7
**raise**  37:11
    94:19 140:24
**raised**  36:11
    37:13 57:18
**rajan**  86:12
**rapid**  51:23
**reached**  89:11
    166:1
**reaction**  141:23
**read**  5:11,12,12
    5:15 7:13 37:18
    37:19 43:25
    49:17 50:3
    52:16 58:1,3,4,6

58:8 131:18,21
136:7,10 137:13
**reading**  22:19
32:6 50:4 55:19
56:12 115:18
116:15
**ready**  4:8,9,11
137:20
**real**  25:7 36:16
44:10 62:2
87:15 97:14,15
97:16 98:20
100:13,18
101:23,24
109:25
**realized**  25:17
**really**  35:11
44:20 46:10,12
54:13,15 59:13
74:3,14 82:17
89:3 91:3,11
99:5 100:1
135:22 136:2
141:25 144:22
144:22 146:7,9
147:21 148:14
148:20 150:7
158:10 159:12
163:15
**reason**  20:17
32:13 84:2 87:3
88:19 98:21
118:2 132:15
139:15 142:22

160:18 162:10
162:11 164:16
**reasonable**  19:7
19:10 20:23
59:25 64:17
65:2 85:4 155:5
**reasonably**
23:11,14 27:2
36:18 40:21
41:6 84:24
104:25 128:3
134:19,25
135:10 136:16
139:20 154:25
**reasons**  29:13
68:5 83:1
103:12 131:22
154:17 163:19
**recall**  17:9
160:12
**receive**  21:17
143:4 152:17
**received**  17:17
18:13 96:6
152:4,5
**receiving**  17:19
29:14
**reciting**  41:5
**recklessly**  88:2
**recollection**
74:19
**record**  5:2
12:19 14:5 15:4
15:17 16:16,20

20:14 22:20
24:18 29:13
35:20 40:20
49:6 72:17
111:13 113:1
137:2 166:7,15
166:15 168:10
**records**  29:9
137:13 142:11
**recover**  31:13
32:4 33:23
**red**  65:24,25
66:24 67:22
80:1 156:5
**reddit**  156:10
**redefine**  34:8
35:3 36:6
113:20 114:3,16
**redefined**  114:7
**redefinition**
113:14,22
114:11,14
**refer**  23:4 51:5
51:8 52:4
112:10 114:8
117:1 161:8
**reference**  49:8
78:12 163:4
**referenced**
38:10 44:4
111:16 160:1
**references**
160:6

**referred**  48:18
116:5 158:18,19
158:22
**referring**  51:17
73:12 75:5
93:14 116:4
124:19 158:18
**refers**  38:9
91:21 111:15
115:14 118:13
**reflect**  12:20
24:21 26:10
52:2
**reflecting**  66:20
113:11
**reflects**  42:2
**reflexively**  51:8
**reframe**  24:3
64:21
**reframed**  96:23
**refusal**  68:11
134:1
**refuse**  68:10
136:6
**refused**  20:8
41:23
**refusing**  43:9
53:1 59:20
**refute**  77:24
**regard**  7:16
18:16 162:9
**regarding**  12:18
12:25,25 26:2
32:25 41:23

50:9 53:24
55:11 75:19
78:17 87:13
88:4,8 91:9 92:2
97:22 107:9
112:23 117:11
136:15 138:16
150:11
**regardless**
154:8
**registered**  35:14
36:6 48:23 49:8
50:13 52:5
**registration**
35:17 36:22
39:5 49:21
50:19 52:4,10
56:1 74:16,20
106:7,10 123:14
165:4,5
**registrations**
24:20 37:6,9,25
38:10 39:7,20
41:2,11 47:7
74:20 108:1
111:16 114:23
115:24
**reinterpret**
24:10
**rejected**  121:21
**relate**  24:4
33:18 36:2 38:4
39:20 47:16
48:22 50:13

98:12 138:21
154:10
**related**  4:24
25:15 31:8 35:6
35:10 39:14
40:14 41:10
46:12,24 50:18
50:20 52:9
54:19 55:3
66:21 75:23
100:11,13 111:7
112:4,7 122:19
130:17 133:1,12
150:24 161:11
161:18,21
**relates**  26:7
45:4 55:10,22
79:3 81:22
86:22 99:9
121:22
**relating**  25:14
62:4 68:15
78:22 88:6 97:7
113:24
**relation**  89:6
129:7
**relationship**
103:23
**relative**  27:22
54:4 168:13,15
**relevance**  23:16
26:25 29:7,10
29:10,12,14
43:12,13 44:12

46:16,19 62:6,7
62:13 65:1
67:17 98:24
101:6,13,21
124:23 125:14
125:15 128:8
129:18,22,25
130:3,24 131:18
134:1,3,5,16
135:22 157:1
163:15,16
165:13
**relevancy**
162:20
**relevant**  23:21
26:2,8 28:13
29:3,19 34:15
35:21 42:15
45:11 47:9
52:23 53:25
54:4 65:18
68:25 76:18
83:17 85:22
88:12 92:5 98:8
100:19 103:11
127:3,18 131:7
132:5 134:10
135:6,7 137:16
138:5 139:10,25
141:1 153:1
154:8 162:19
165:3
**relitigate**  74:12

**rely** 81:2
**relying** 89:21
**remain** 13:14
**remaining** 38:5
  61:21 166:13
**remains** 161:18
**remedy** 109:16
**remember** 4:12
  9:15 29:1 49:24
  73:1 96:16
  144:1 158:16
**remind** 54:21
  118:14 119:25
**removal** 67:15
  67:24 68:16
  128:7
**render** 19:18
**reopen** 41:4
**repair** 30:5
**repeat** 49:11,14
**repeatedly** 8:12
  130:2
**repeating** 73:13
**report** 86:3,5
  94:23 141:4
  166:10 168:8
**reported** 1:16
**reporter** 49:13
  57:5 166:22
  167:12 168:1
**reporter's** 12:19
**represent** 60:12
  62:11 64:2,2
  70:18,20,20

71:11,17 81:10
94:21 97:21
117:17 128:25
141:13
**representation**
84:5 163:1
166:6
**representations**
71:7
**representative**
10:25 14:8
86:22
**representatives**
12:21 13:4
**represented**
132:16
**representing**
101:3
**represents** 87:8
**request** 5:10,11
5:18,20 6:4,9,17
6:25 7:4,8,14,20
7:22 10:5 21:8
22:13,13,16
23:8 30:18
31:25 32:8,10
32:14,15 33:12
33:13,14 34:1,3
34:4,17,19,24
35:23 37:1,2,9
37:14,23 38:20
39:12,20 42:22
43:5 44:3 48:19
48:22 52:3

55:23 56:6
57:25 58:14
62:8 64:7 68:3,7
69:16,16,19
70:1,5 76:20
78:3,6 82:24
84:10 86:19
91:7,9,19 92:24
93:23 95:17
97:6,10 101:18
102:14,22 104:1
111:22 112:2
115:6,8,9
117:12 118:9
119:9 120:25
122:3,4 126:17
128:6 129:20
134:4 137:24
139:3 140:10
142:14,18
143:21 145:12
145:21,24
146:14 148:25
151:4,5,18
152:6,12 154:4
154:14 160:14
163:21,23 166:1
**requested** 9:11
9:13 77:2 78:12
80:24 109:3
117:12 145:11
145:17
**requesting**
19:17 21:9 47:2

90:1
**requests** 3:6
4:25 5:24 6:1,2
6:3,15 8:15 9:22
19:21,22 20:12
21:12 22:6,19
22:22 23:5,6
39:17 51:25
53:6,11,11,20
57:13,17 59:1
62:22 63:4,22
65:10 70:9,22
71:12,14,20
81:1 91:17 93:1
95:19 97:22
102:12 110:8,14
119:9 134:17
152:16 162:6,7
162:8 165:11
**require** 13:23
21:7
**required** 11:10
11:15 13:25
21:14 23:25
**requirement**
7:17
**requirements**
19:16 20:6
**requires** 11:6
21:4 75:21
166:19
**requiring** 21:10
**reschedule** 4:3
5:5

**[researchers - reviewed]**

| | | | |
|---|---|---|---|
| **researchers** 81:24 | 62:18 68:5 71:13,17,18 | 37:14 38:16,22 39:2,6,12 46:25 | 95:10,11 96:17 97:3,7 107:23 |
| **reserved** 167:12 | 74:1 76:7,16 | 54:21 56:8 | 111:1 115:22,25 |
| **resolution** 12:9 | 81:12,13 86:7 | 58:25 59:24,25 | 116:6 136:14 |
| 71:24 72:16 | 86:12 87:23 | 61:4 67:11 | 143:2 144:2 |
| **resolve** 6:20 | 91:19 92:13,23 | 69:13,19 76:12 | **responsive** 9:22 |
| 18:2,11,15,19 | 95:10,15,24 | 80:4 83:9 91:7 | 30:8 39:2 43:5 |
| 72:8 94:6 | 97:20 102:5 | 93:16,16 96:7 | 57:24 58:13 |
| **resolved** 6:24,24 | 106:9 115:4,6 | 96:19,21,23 | 60:8 64:3,13 |
| 97:1 | 131:2 133:20 | 103:13,22 | 65:10 68:6,13 |
| **resolving** 13:18 | 138:12 140:20 | 110:14 112:25 | 69:15 78:24 |
| 54:7 | 141:13 142:12 | 113:19 114:8 | 84:4 93:22 |
| **resources** 21:2 | 144:23 147:6,7 | 115:13,18 | 97:10 111:4 |
| 54:5 | 147:16 149:2,3 | 116:14,16 117:9 | 112:2 117:14 |
| **respect** 4:21 | 161:6 | 117:13,18 119:3 | 118:9 121:13,15 |
| 5:22 8:16,19,24 | **respectfully** | 120:8,12,16,22 | 124:9 128:23 |
| 10:15 13:21 | 49:4 53:1 | 121:11,12 122:6 | 140:10 142:18 |
| 14:4,7,14 16:17 | **respond** 8:15 | 128:18,22 | 143:13,20 |
| 16:21,22,24 | 17:23 20:11 | 131:13 132:8,15 | 148:25 149:5 |
| 17:7,10,22 | 22:5 33:8 36:5 | 136:18 138:17 | 151:20 152:6 |
| 18:17 20:16,21 | 39:15,22,25 | 142:3 143:25 | **rest** 20:1 53:11 |
| 20:23 21:3,8 | 40:2 50:23 53:7 | 145:23,25 146:3 | **result** 121:10 |
| 24:15 25:3,15 | 55:18 59:11 | 146:4 148:13 | 145:3 |
| 25:21 26:8,17 | 64:7 97:6 | 152:12,25 | **results** 99:14 |
| 27:16,19,24 | **responded** 67:6 | 153:22 154:3 | **retained** 10:10 |
| 31:4,19 33:7,13 | 67:9 106:22 | 157:18 159:5 | **return** 152:18 |
| 35:22 36:25 | **responding** | 161:5 163:11,22 | **reverse** 84:19 |
| 37:8 39:23 | 16:22 22:6 | **responses** 4:23 | 109:6 138:23 |
| 40:18 46:13,19 | 38:23 39:7 | 7:6,21 18:18,18 | **revert** 163:22 |
| 47:9,17 48:25 | 62:18 151:6 | 18:20 20:24 | **review** 3:15 |
| 50:6 53:5,10 | **response** 5:13 | 23:10 36:9 | 4:16 94:22 |
| 55:19 56:18 | 5:15 7:19 13:22 | 37:12 39:16 | 146:4,8 |
| 57:15 59:5 61:3 | 22:16 23:13,25 | 53:14 73:18 | **reviewed** 12:14 |
| 61:4,25 62:17 | 31:2,25 36:12 | 75:9 80:2 95:9 | |

**[revisit - scope]**

**revisit** 34:9
153:7
**reynal** 1:8
**right** 4:3 8:4
9:10,13 20:12
24:4 29:10 34:8
35:1 41:17
44:25 47:24
57:12 63:19
64:15 66:16
68:1 69:3 71:4
73:6 79:10
82:11 83:6
87:24 88:13,15
88:21 91:4
93:10 108:18
113:20 122:15
123:12 125:18
127:3,12,23,25
129:16 139:16
139:17 144:10
149:4 153:8
158:1,11 160:6
161:15 163:9,10
166:12
**rightly** 147:5
**rights** 34:21
**ripping** 107:20
**rock** 8:3 156:1
**role** 134:16
**rolling** 22:9
67:18 143:8,10
**root** 113:22

**rough** 103:21
**routinely** 12:7
**rover** 65:24,25
66:24 67:22
80:1 156:5
**rowling's**
107:20
**rule** 7:17 11:1,9
11:24 12:10
15:17,19,20
16:1 25:7,24
26:25 49:24
50:3,5 52:23
53:21 57:16
143:4 152:10
**rules** 8:11 10:1
11:5,16,23
14:17,18 19:17
19:20 20:15
21:4,25 22:6,10
27:6 56:12 67:6
79:19,21 94:5
130:15 143:8
144:6 155:5
156:25 157:5
165:18
**ruling** 26:23
**rulings** 19:19
**rumsfeld** 47:22
**run** 5:4 126:8
155:2
**running** 155:24
156:23

**rush** 167:14
**rutledge** 1:7

**s**

**s** 2:1 3:1 9:6
**sad** 58:9
**sake** 80:9
**sand** 85:20
**sarah** 137:22
138:1,7,16,18
139:2 140:9,20
**sat** 16:19
**saw** 159:6
**saying** 6:19,20
9:12 21:24 36:4
38:22 48:15,16
48:17 50:18
52:3 53:17
54:17 55:23
56:25 63:8 65:7
67:7 73:23
77:19,21 79:7
80:21 83:8,8
84:14 87:14
93:17 95:21
96:24 97:24
100:11 102:23
102:24 103:11
105:21,22 108:9
108:11 110:3,7
111:23 113:21
113:23 115:18
116:3 120:24
121:12 126:12

128:18 131:22
133:12 142:8
143:12,16
150:15 153:8
154:14 156:21
158:3,8 159:14
163:25 164:1
**says** 8:20 31:8
33:3 36:12 38:8
50:5 52:15,15
54:17,17 57:23
60:4 63:8 69:24
69:24 70:5 80:2
87:20 90:12,19
96:3 111:14
113:10,17 115:9
122:15 131:1
141:8 145:13,15
149:22 153:24
154:3
**scheduled** 145:8
**scheduling**
16:23
**scintilla** 44:11
130:7 157:1
**scope** 23:12,15
25:22 31:5,20
41:16,18 52:6
52:14 53:21,22
53:23 54:9 61:2
61:20 67:17,25
100:8 104:7
116:21 121:5
123:11 131:10

**[scope - silver]**

149:17,20
152:22 153:2
**scotland** 150:20
**scott** 1:8
**scrap** 24:1
**scraps** 35:1
127:11 154:23
155:7
**search** 56:4
59:25 64:17
65:3 73:4
128:24 154:25
155:3 157:6
158:11 159:4
**searock** 8:19 9:5
9:24 10:3
**second** 9:4
29:24 39:18
90:6 122:15
**secondly** 14:3
56:2
**section** 55:1
90:16,18 141:5
141:6,8
**sections** 141:10
**see** 9:3 15:12
20:10 23:4
42:14 57:1
72:12 78:4
88:25 100:12
105:5 113:8
122:10 127:5
135:2 139:8,9
141:15 142:1,5

143:6,19 150:16
162:16
**seeing** 160:12
**seek** 131:14
**seeking** 29:22
104:1 111:9
149:14,14
**seeks** 78:6 96:4
97:15 117:8
139:3 153:24
154:5,7
**seem** 20:5
**seemed** 91:18
**seems** 65:23
91:16 103:23
138:1 139:10
**seen** 14:25
125:4
**sees** 24:9
**selected** 145:7
**self** 8:12 19:19
**selling** 104:20
104:22
**send** 8:6 10:8
36:17 90:14,23
130:1 136:9
159:7
**sending** 36:23
141:22
**sense** 29:19
73:25 80:10
81:3 100:25
139:23 140:3
144:24 148:8

**sensitive** 108:23
**sent** 3:11,12
4:12 18:16 55:5
126:23 153:13
159:4
**sentence** 130:6
130:21
**separate** 95:17
95:19 141:3
**september**
20:19
**series** 90:22
107:6,21
**serious** 43:18
**serve** 71:12,19
**served** 63:22
71:14 91:17
**servers** 122:20
159:20
**service** 107:8
156:9
**services** 155:11
155:12,16
159:14,15
**set** 9:15 56:13
126:3,8,13
127:1,7,15,17
151:20
**sets** 4:25
**setting** 20:16
114:16
**seven** 13:15
71:22 93:6
96:25 166:24

167:18
**several** 8:7
17:18 42:16
80:12 95:7
154:17
**shells** 99:18
**shield** 95:2
**shocking** 60:13
**shoe** 80:13
**short** 155:11,16
**shorten** 74:4
**shorthand** 6:22
6:23 29:10
67:21 73:10
94:7 103:12
111:10 112:7,9
112:15 117:1
123:2 136:13
**shot** 136:1
**show** 4:16 84:16
104:18 128:1
162:24 164:17
**shows** 23:23
**shred** 24:2
98:24
**sic** 112:22
**side** 77:17 142:9
**sidestepped**
16:19
**signature**
168:21
**silver** 26:14
85:9,12 123:15
126:20 135:18

**[silver - start]**

138:6
**similar** 20:5
90:10 93:15
132:25 146:12
160:4
**simple** 13:8 34:7
108:13,21 115:9
**simply** 18:3,15
21:11 39:12
115:18 119:14
146:25 151:16
156:2
**simultaneously**
9:17
**sincerely** 5:3
8:10
**single** 6:4,11
16:22 17:13
33:11 53:10
66:7 75:8 80:14
80:17,22 128:10
134:4 144:7
**sink** 78:6
**sister** 23:19 28:6
29:21,25 30:5
98:5,10,16
101:25
**sit** 128:13
**sits** 157:22
**sitting** 107:12
**situation** 63:25
108:15 109:6
113:6 128:11

**situations** 81:9
**six** 57:5
**sized** 139:20
**skip** 59:15
**skittish** 87:19
**slack** 155:19
**slippery** 163:10
**slope** 163:10
**slow** 32:5 77:13
**smoother**
102:11
**sms** 155:12
156:9,14 159:10
159:15
**snapshot** 109:5
**snippet** 138:20
138:24 139:1
**solve** 24:5
117:20 120:6,17
**solved** 96:1
**somebody** 20:8
107:4 147:23
**soon** 129:9
143:4
**sorry** 9:1 16:19
22:18 32:7
41:19 47:11
51:2,16 56:10
62:18 64:24
77:14 81:4,5
126:5 134:21
138:14
**sought** 65:5
91:9 116:24

**sounds** 3:6 26:9
106:12
**source** 104:24
**speak** 51:20
71:11
**speaking** 17:1
18:7 19:1 108:3
**speaks** 45:15
88:18
**specific** 5:17 6:1
8:15 17:9 21:11
31:8 38:4 41:15
64:22 75:14
86:19 92:11
96:12 99:16,17
102:12,22
124:18 156:16
161:10 162:1
163:18
**specifically** 5:20
23:20 38:5,20
39:14 40:8
50:19 66:21
80:25 86:21
89:17 90:25
91:25 97:12,20
103:5 117:19
122:5 125:4,7
138:22 149:13
157:9
**specificity** 21:8
**specifics** 21:6,7
21:17

**specified** 31:18
**speed** 3:16 52:7
**spend** 52:18
130:9
**spirit** 12:24 27:5
**spoken** 8:2
**stage** 109:17
130:4
**stake** 54:3
**stalk** 77:4,5
**stance** 88:7
**stand** 7:8 35:22
35:25 61:21
93:20 97:11
112:24 116:16
119:20,24 145:1
**standard** 27:5
29:11 40:23
42:6 76:14 90:2
**standards** 41:5
**standing** 27:18
31:3,19 43:10
58:23 60:25
61:4,5 76:15
85:20 109:11
116:19
**standpoint** 6:13
164:5,5
**star** 26:14
**start** 14:21
22:15,18 128:16
128:18 139:14
168:9

**[started - suggest]**

| | | | |
|---|---|---|---|
| **started**  43:20 | **stenographica...** | 157:19 | 141:22,23 |
| 107:20 152:23 | 168:8 | **subject**  3:20 | 144:13 |
| **starting**  28:7 | **step**  52:1 | 4:13 10:5 24:20 | **subpoenaed** |
| 81:25 102:8 | **sticky**  154:23 | 35:3,6,10,17 | 85:22 |
| 167:4 | **stipulate**  22:24 | 36:2,15 38:14 | **subscription** |
| **state**  7:21 26:14 | **stipulated**  75:21 | 38:24 39:19 | 25:19 100:22 |
| 53:12 67:2 96:7 | **stole**  85:11 | 42:4 43:9 44:6 | 106:1,2,3,18 |
| 147:22 168:2,7 | **stone**  142:12 | 46:12,21,24 | 107:7,8 |
| **stated**  27:23 | **stonewalled** | 48:17,19 49:19 | **subscriptions** |
| 32:8 53:10 | 146:5 | 49:21 50:20 | 105:14 107:10 |
| 57:14 58:25 | **stop**  5:5 19:14 | 58:22 68:8 | **subsection**  16:1 |
| 59:7 63:20 68:5 | **stops**  113:9 | 69:19 74:17 | 90:24 |
| 95:13 99:2 | **straight**  68:13 | 88:6 93:2,3 | **subsequent**  7:22 |
| 119:6 144:10 | **strange**  20:5 | 103:15 110:2,25 | **subset**  76:10 |
| **statement** | **strategy**  148:4 | 111:7,8,11 | **substantially** |
| 119:11 131:19 | **streamline** | 113:14,22 114:8 | 116:10 |
| **statements** | 102:16 | 114:10,12,13 | **substantive** |
| 14:22 109:23 | **stress**  51:7 54:4 | 115:15,16,16,19 | 53:19 |
| 117:5 161:1 | 54:5,6,10 | 116:2 117:15 | **succeed**  99:21 |
| 163:3 | **stripling**  8:3,19 | 119:4 125:23 | **sufficient**  18:4 |
| **states**  1:1 26:14 | 9:6 | 128:4,22 129:2 | 24:4,10 44:24 |
| 37:24 90:25 | **stroke**  163:4 | 133:10,19 | 97:13 98:19 |
| **stating**  53:4 | **struggle**  51:15 | 140:12,15 | 103:18 108:14 |
| 61:1 | **struggling** | 141:19 149:13 | 110:15 127:25 |
| **statutes**  55:1 | 62:25 154:17 | 150:24 | 128:15,19 |
| **statutory** | **stuff**  9:21 10:4 | **subjected**  47:5 | **sufficiently** |
| 109:19 | 20:1 40:21 | **subjects**  3:11 | 10:12 29:15 |
| **steak**  135:9 | 41:14 60:12 | 102:24 | 50:7,18 123:11 |
| **stenographer** | 82:17 84:25 | **submit**  71:23 | 136:20 |
| 1:16 32:5 49:17 | 85:4 87:21 98:9 | 72:15,18 94:5 | **suggest**  19:16 |
| 77:13,15 112:18 | 127:12 128:3,15 | **submitted**  40:19 | 48:11 64:22 |
| 167:21 168:6,22 | 131:11 136:14 | 80:21 | 66:9 80:11 |
| **stenographic** | 139:7 144:20 | **subpoena**  76:18 | 102:10 115:15 |
| 168:10 | 154:24 156:17 | 81:15 140:23 | 121:9 127:9 |

**[suggest - territory]**                                      Page 213

| | | | |
|---|---|---|---|
| 151:10 152:23 | **supposed** 69:9 | **taiwan** 125:6 | 134:12,13 |
| **suggested** 5:14 | **sure** 7:11 9:24 | 135:6 | 150:13 151:15 |
| 64:23 74:15 | 16:18 18:22 | **take** 14:16 | **talks** 46:16 |
| 78:15 143:9,14 | 25:8 28:16 | 17:19 18:6 | 147:23 |
| 144:13 | 32:19,22 40:1 | 22:12 42:17 | **tame** 143:18 |
| **suggesting** 13:8 | 43:7 44:19 45:8 | 47:11 52:1 | **telecommunic...** |
| 13:10 19:13 | 49:12 55:18 | 60:20 68:22 | 155:13 |
| 30:14 48:9 | 58:9 63:13 | 72:23 83:13 | **tell** 11:5,9 17:25 |
| 85:21 102:17 | 76:21 77:3,9 | 93:5 100:14 | 59:17 71:3 |
| 122:24 146:16 | 85:16 89:10,23 | 112:18 129:9 | 124:5 135:3 |
| **suggestion** | 90:13 93:22 | **takedown** 36:24 | 136:24 144:15 |
| 57:10 79:12 | 95:13 111:12,22 | **taken** 42:20 | 149:4 157:21 |
| 102:13 122:2 | 112:20 116:11 | 72:25 79:11 | **telling** 84:2 |
| 141:21 | 117:3 129:11 | 93:7 112:21 | 98:21 |
| **suggestions** | 141:16 142:4,11 | 115:21 129:12 | **temporal** 43:1 |
| 47:3 57:7 | 151:17 158:9 | 143:10 | **ten** 18:19 27:12 |
| **suggestive** | 167:5 | **talk** 4:2,4,5,6,9 | 167:4 |
| 19:19 | **surprise** 42:11 | 4:17 5:8 6:8,10 | **tend** 79:2 |
| **suit** 100:2 | **suspect** 23:18 | 6:20 7:20 19:24 | **tends** 83:7 |
| **suite** 1:15 2:11 | 102:2 127:4 | 22:13 86:17 | **term** 38:9 45:22 |
| **summarily** | 131:24 | 88:22 114:9 | 55:20 84:23,24 |
| 121:21 | **suspended** | 129:4 140:14 | 85:4 107:3 |
| **summary** 44:2 | 19:17 | 149:16,19 150:9 | 111:15,21 |
| **supplement** | **swept** 85:1 | **talked** 22:19 | 115:14 118:6 |
| 17:23 38:3 60:5 | **synonym** 118:7 | 43:1 45:2 54:12 | 121:3 |
| 128:17 143:5 | **syphoning** | 83:1 93:8 97:19 | **terminal** 129:24 |
| **supplementing** | 108:17 | 98:9 113:15 | 130:10 134:5 |
| 56:5 | | 158:15 159:1 | **terms** 11:21 |
| **support** 21:18 | **t** | **talking** 7:23 | 12:13 15:11 |
| 48:6 80:25 | **t** 9:6 | 26:4 27:12,13 | 29:6,7 94:3 |
| 85:13,15 87:6 | **table** 120:10 | 34:18 37:4 | 128:4 134:10 |
| 100:10 | **tabled** 5:1 | 86:14 99:25 | 152:22 159:4 |
| **supporting** | **tailored** 81:2 | 116:6,8 126:13 | **territory** 155:25 |
| 91:25 | | 129:24 130:9 | |

[testify - think]    Page 214

| | | | |
|---|---|---|---|
| **testify** 16:2 | **themes** 6:6,8 | 84:6 88:15,25 | 73:9,20,25 |
| **text** 102:6 153:6 | **theory** 23:16 | 93:3 102:18 | 74:11,18 75:11 |
| 153:12 155:1,8 | 33:11 66:7 67:4 | 118:20,21 120:3 | 75:20,23 76:6 |
| 155:9,17,20 | 97:19 103:10 | 120:13 121:17 | 79:14,25 80:24 |
| 156:8,17 159:18 | 134:5 135:22 | 123:6 126:4 | 81:8 82:20 83:9 |
| **texting** 159:14 | **thing** 6:22 17:20 | 127:14,16,25 | 84:9 85:15 86:6 |
| **texts** 147:1 | 30:19,20 31:7 | 141:5,7 144:8 | 87:1,4 88:19 |
| 153:16 154:11 | 37:3,8 43:2,6 | 144:11 148:16 | 89:4 92:7 94:15 |
| 154:19,21 | 57:21 60:14 | 154:24 158:18 | 94:21,24 95:13 |
| 156:11,14 | 61:25 73:18,24 | 164:7 | 96:2 97:18 98:8 |
| 157:12 | 74:11,24 80:17 | **think** 3:10,23,24 | 98:11 99:23 |
| **tfi** 92:25 94:15 | 81:17,21 83:10 | 5:7,24 6:14 7:1 | 100:7,21,24 |
| 97:11 102:19,19 | 85:19 86:7,8,11 | 7:2,3 10:12 | 101:5,7 102:4 |
| 103:14 124:19 | 86:12 89:19 | 12:12 13:9 15:6 | 103:14 105:14 |
| 124:21 125:13 | 94:13,14 95:5 | 16:10,11 18:13 | 106:17 110:13 |
| 125:15 129:17 | 100:5 101:1 | 18:19 19:22 | 113:16 114:5,14 |
| 132:12,16,20 | 102:4,20 112:10 | 20:23 22:12,22 | 114:15,20 |
| 133:4,7 136:14 | 112:23 120:9 | 23:7,17 24:5 | 115:18 116:3,18 |
| 137:24 140:5,8 | 123:24 125:12 | 25:10,22 30:23 | 117:12,13 119:6 |
| 140:17 144:12 | 125:19,20,23 | 31:18 32:14,24 | 120:7 121:1,3,5 |
| 145:2 146:13 | 126:5 129:19 | 33:12 34:2,9,9 | 123:3,10,11,20 |
| 160:6 | 132:20,24 | 34:21 35:8 | 124:6,20,21 |
| **thailand** 135:4 | 135:14 138:19 | 36:17,19 37:1 | 125:22 129:16 |
| **thank** 9:8 18:9 | 143:25 146:20 | 37:22 41:3,20 | 130:11,14,23 |
| 28:1,24 30:17 | 150:6 151:24 | 43:20 44:10,12 | 131:2,5,11 |
| 51:22 52:20 | 152:17 154:20 | 44:15 45:8 | 134:7 136:2,11 |
| 56:7 64:8 67:14 | 157:13 158:7 | 46:11,18 47:8 | 136:20 137:20 |
| 69:1 81:7 86:11 | 159:10,11 | 47:13 49:3,4,18 | 138:10 139:12 |
| 113:5 122:17 | 166:24 | 50:10 55:20 | 141:14,17 |
| 132:19,23 | **things** 5:9 6:14 | 56:12 57:14,21 | 144:17,17,21,22 |
| **thanks** 113:3 | 7:17 30:12 46:3 | 59:4 60:16 62:1 | 145:3,13 146:7 |
| **theme** 23:3 25:6 | 47:15 50:12 | 62:9,10,11 | 146:21 148:12 |
| 51:24 | 55:9,19 59:20 | 63:24 66:13,17 | 148:17,19,20,22 |
| | 67:23 76:8 84:4 | 69:17 72:6 73:2 | 148:22 149:12 |

**[think - travel]**                                                    Page 215

149:15,17 151:3
151:4,11 153:12
153:17,21
154:16,18 157:5
158:1 159:22
161:20 162:16
163:20 165:1,1
165:7,22 166:6
167:9
**thinking** 131:6
**third** 10:7 28:20
63:18 141:21
143:9 144:13
148:16 149:9
150:10
**thomas** 81:22
82:8 83:13
84:13 129:14
132:1 146:13
**thoroughly**
44:13 62:9
**thought** 12:12
37:20 80:9
96:14 150:14
**thoughts** 5:22
166:14
**thousand** 30:5,9
30:10 157:22
**threats** 55:6,9
**three** 4:24,25
31:23
**throw** 14:23
107:7 167:10

**tied** 48:16
103:15
**time** 1:14 4:4
5:4 17:22 18:15
18:24 19:7
23:12,14 24:15
26:10 27:14,19
27:22 31:15,15
31:17 32:17
34:8,10 35:9,12
36:3 38:14
41:16,18 42:10
53:16 56:13,14
59:17 61:2,20
67:17,25 74:16
74:25 81:13
82:12 84:8 93:1
93:3 94:10,22
96:6,22 101:7
101:13,19 103:6
103:14 114:1,9
117:16,18,20
118:11,13 120:4
121:5 123:4,6,7
123:11,20,21,25
127:15 128:10
128:22 129:1,24
131:17,21 132:9
135:23 136:12
138:11 139:12
139:24 140:18
140:19 142:21
143:3,9,14
145:6 146:15

147:7 153:11
154:8 160:17
165:3 166:13,22
**timeline** 27:17
**times** 7:15 38:8
59:22 73:17
80:12 111:14
113:15
**tiniest** 130:7
**title** 15:19
**titled** 87:5
**today** 4:2,6,7,10
18:10,23 49:6
56:15 166:7
167:18
**today's** 57:1
**together** 25:7
40:10 58:10
86:3 166:11
167:10
**told** 8:12
**tomorrow** 56:23
56:25 90:23
102:11 166:12
167:13
**ton** 78:24 79:1
**tongue** 51:5
**tonight** 90:23
**took** 20:21
75:17 99:11,13
115:11 125:7
**topic** 88:10
**topics** 3:18 4:1
16:17 17:2

84:18,19
**total** 22:22
115:22
**totality** 104:1
116:24
**totally** 6:11
120:19
**touchstone**
44:11
**towards** 117:7
**trace** 31:13 32:4
33:23 104:18
**trademark**
133:13
**transaction**
122:22 124:17
**transactions**
97:14,20 98:20
100:13 122:21
**transcript** 14:9
22:24 139:19
166:9,23 168:9
**transfer** 23:9
31:11,21 32:1,2
33:18,21 100:9
103:9
**transferred**
98:5 99:2,3,5
**transfers** 28:4
31:9 101:23
**transparent**
20:2
**travel** 126:11

[treatment - understanding]

**treatment** 16:10
  92:14
**trees** 150:21
**trial** 14:19,20
  14:22 15:19
  16:3,6,6,9,11
  40:23 41:7
  45:18,24 47:21
  77:24 134:12,20
  134:21 135:11
  135:15 136:17
  157:3
**tried** 9:15
**trier** 14:23
**trillions** 157:7
**trip** 135:4
**troll** 95:9,22,25
  96:5,10
**true** 168:10
**trust** 100:18
  155:4
**truth** 87:7 149:6
**try** 84:8 111:24
  157:25 159:2
**trying** 4:3 6:12
  47:16,19,20
  49:5 51:23 53:7
  54:19 66:17
  74:22 79:22,23
  79:25 83:18
  84:21 87:20,22
  87:24 101:11
  105:16,16
  106:11 107:1

115:1 120:14
127:21 128:9
130:15 131:12
132:11 140:16
142:1 148:22
154:13 159:13
163:13,17 164:6
**turf** 167:8
**turn** 19:1,2
  82:24
**turns** 90:21
**twice** 4:15
**twitter** 154:22
  155:19 156:10
**two** 3:13 4:23
  6:7 13:21 48:17
  55:18 93:3
  95:19 100:7
  116:20 165:11
**tying** 104:4
**type** 65:15
  95:19
**types** 120:1
  152:16 155:6

|   u   |
|-------|

**ultimate** 29:15
  141:4
**ultimately** 82:10
  83:8 108:19
**unable** 122:8
**unambiguous**
  12:23 54:14

**unauthorized**
  54:24
**unclear** 110:11
  111:3 118:6
**unconstitutional**
  87:15
**uncover** 47:19
  142:5
**uncovering** 87:7
**undefined**
  133:14
**under** 5:14 6:23
  11:10,23 33:11
  35:21 36:10
  48:25 54:22,24
  57:16 67:4,5
  72:10 90:24
  92:5 93:4 95:12
  96:9,9,12 105:7
  105:11 106:10
  111:13 112:5,13
  114:23 124:13
  143:3 144:6
  155:5,13 156:1
  156:25 165:17
  165:18
**undercut** 87:25
**understand**
  6:14 8:13 9:19
  10:17 16:21
  21:5 22:8,20
  25:1,9 29:9,17
  30:11,13 47:2
  50:1 51:17,24

52:13 59:9,12
60:15,16 65:8
78:5 79:21,22
79:24 82:4 90:4
90:9 91:11
92:19,22 105:16
106:11 111:24
111:25 112:3
120:23 121:4
131:1,6 143:17
146:6,8 154:21
155:9 156:23
158:4,8 165:13
165:14
**understanding**
  15:7,10 18:21
  24:16 25:11,18
  31:22 36:10
  38:23 40:16
  41:21 44:15
  46:15 51:13
  52:2 57:11 60:4
  60:9 63:13
  82:21 89:24
  96:1,17,22 97:5
  105:6,13,18,25
  106:4,4,13
  107:23 108:8
  115:14 142:15
  145:22 151:7
  157:4,17 160:2
  162:21 165:19
  166:19

**understood**
15:3 51:21
61:18 125:11
143:18
**undertaken**
92:13
**undue** 155:25
158:3
**unduly** 149:18
163:14
**unethical** 87:16
**unfair** 54:23
105:6
**unfamiliar** 51:6
**unfamiliarity**
38:2
**unfortunately**
13:3,5 60:19
71:6 158:24
**unintentionally**
142:6
**united** 1:1
**universe** 79:13
155:21
**unknown** 47:23
**unknowns**
47:23,23,24
**unnecessarily**
149:18
**unopposed**
22:23
**unpack** 120:4
**unreasonable**
27:14

**unrelated** 104:1
104:11 154:7
**unrelation**
147:7
**unsatisfied**
153:3
**unsure** 115:3
**unsworn** 71:7
**unturned**
142:12
**unverified** 71:7
**uploaded** 145:7
**upstanding**
137:4
**usc** 11:20 54:23
54:24
**use** 20:4 40:22
41:7 67:21
87:12 106:18
107:3 111:21
114:1 136:15
141:16 155:22
157:8,21
**used** 23:18
26:25 38:11
44:7 45:24
80:11 108:1
111:17 127:20
**uses** 98:23 156:7
156:8,9,10
157:20 159:15
**using** 29:10
43:13 50:17
78:20 114:17

132:3 136:13
**usually** 7:15
108:3

| **v** |
|---|

**v** 8:3,19 26:14
**vacuum** 30:12
**vague** 69:12
**valid** 141:25
**value** 23:9 31:9
33:19
**vendor** 20:19
21:2
**verde** 39:3 69:7
69:11
**verify** 91:15
**veritext** 167:12
**versed** 14:17
**versus** 9:5 84:18
84:19 119:12
159:14
**victims** 45:22
**violating** 92:17
**violation** 14:6
54:25
**volume** 165:12
167:19
**vs** 1:6

| **w** |
|---|

**w** 38:14,24 68:8
111:15,21 112:8
**wait** 69:8
160:16

**waiting** 13:12
**wallet** 125:5
**want** 3:4,8 5:20
10:16 11:8 20:4
21:8 24:1 28:2
30:1 34:18
35:23 39:25,25
40:8 42:13
44:16 49:2,6
52:18 56:24
58:8 60:4 62:11
62:16 64:17
65:20 72:13
82:4 83:16
84:14,15 86:4
88:7,24,25
90:11,14 91:2
97:3 98:22
102:14 103:7,7
103:11 109:5
113:8 116:16
117:12 118:14
118:16 119:19
119:20,21,24,25
120:10,17,18
123:8,13 124:4
127:11,12,19
128:13 129:23
130:8 132:8
134:6 135:20
136:5,8,9,19
137:9 138:5
139:6 140:1
141:13,15,16

**[want - wilson]**                                                                  Page 218

147:15,16 148:7
148:14,16,18
149:16 150:25
151:8 157:20
158:12 164:16
166:3,10 167:6
**wanted**  5:2
14:10 15:3
16:18,19 17:20
21:20,23 38:25
91:20 95:13,15
129:13 130:4
166:20
**wants**  28:9 30:6
161:24
**waste**  129:23
131:21 135:23
136:11
**wasting**  132:9
**way**  2:6 6:16 7:2
25:2,22 31:14
32:14 33:14,18
35:8 36:5 39:24
40:1 45:22 55:5
60:22 67:4 72:6
79:24 82:3,17
84:10 87:8
88:12,20,23
93:13 95:23
96:17,18 101:14
112:8 115:17,20
118:2,5,11
119:17 120:11
121:8 126:12

141:17,21 142:7
144:18,20
145:25 147:17
151:5 152:9
**ways**  77:25 88:3
104:19 127:1
158:17
**we've**  8:7 17:17
21:10 39:18
41:3 51:1,2
54:12 56:2 59:2
59:6 67:6,9
69:17 97:4,18
102:25 103:1,6
110:12 113:15
118:24 125:4
131:8 133:1
136:1,13 138:12
142:14,25
143:10 167:11
**website**  60:15
126:3,8,13,14
127:7
**wechat**  157:21
157:23,24,24
**weeds**  10:14
**week**  3:22,22
20:25
**weeks**  8:7 17:18
**weird**  149:16
158:17,20
**welcome**  151:25
157:24

**went**  29:3
107:19 108:21
**westman**  137:22
138:1,7,16,18
139:3 140:9,21
**whatsapp**
154:22 155:19
**whatsoever**
23:2
**white**  34:14
87:5 104:22
**wholly**  10:11
**wide**  156:22
**wifi**  159:15
**wild**  164:3
**willful**  91:1
**willfully**  34:11
88:1 90:21
**willfulness**
34:10 35:16
43:18,21 45:13
45:16,19,25
46:6 47:9 48:25
49:20 55:11,16
77:8 79:3,4
83:22 85:14
87:11,16 88:13
89:22 90:5 92:7
92:9 147:22
161:15
**willing**  4:15,16
18:1 91:8
103:21 116:14
117:11 128:21

143:18 148:13
149:12 151:3
160:15,25 162:5
162:7,8 163:2,6
164:13,15
**wilson**  1:7 2:10
7:25 9:12,21
10:9 12:20 13:3
14:2 17:3 23:18
25:16 28:10,19
29:8,20,25 30:4
30:20 32:12,21
32:23 33:9,24
34:13 36:14
40:6 41:15 44:7
60:9 61:10
62:19,25 63:4,8
63:15 65:11,15
66:6,14 68:22
70:3,10,20,24
71:15 74:2,4
80:2,15 82:5
83:12 84:18
98:7,15 99:3,11
103:19 104:5,8
107:2 110:17
119:8,16,17
120:13 125:3,6
125:9 128:23
129:14 131:24
132:2 133:8,20
139:2 140:9
153:13

**[wilson's - year]**                                            Page 219

**wilson's**  22:15
 25:20 26:15
 28:6,18 39:17
 71:9 77:18
 83:14,22 84:12
 109:23 126:3
 149:16
**wilsonelser.co...**
 2:12
**wind**  81:10
 98:10
**wings**  127:22
**withdraw**  34:1
 61:2 122:16
**withdrawing**
 61:20
**withdrew**  103:2
**withheld**  142:7
**witness**  14:18
 15:20,24 16:1,4
 101:10 106:16
 106:21 107:16
 110:5
**witnesses**  14:22
 15:1
**wondering**  3:5
**word**  20:4 36:6
 36:8 50:17 69:2
 69:6 83:19
 98:23 114:1,17
 118:8 162:20
**worded**  82:2
 151:5

**wording**  127:20
**words**  85:24
 154:2
**work**  35:4 47:12
 67:17,25 68:17
 68:19,21 96:12
 104:21 109:1
 110:18 112:9
 113:11,17,24,25
 114:20,20,23
 115:2,3,5,7
 116:4 139:8
 141:14 147:8,14
 148:10,18 151:8
 157:10 160:2,23
**worked**  160:11
**workflow**  5:8
**working**  22:22
 40:11 44:21
 63:1 116:20
**works**  3:22 4:20
 7:3,10 24:20
 34:2 35:4,6,10
 35:14,17,19
 36:3,7 38:2,4,9
 38:15,21,24
 39:2,14,19 40:2
 40:3,7,9,9 41:25
 46:13,14,24
 48:17,19,23
 49:8,19,22
 50:13,21 52:5
 54:20 55:11
 65:6 67:16 68:8

 68:9 93:2 95:7
 103:15 104:11
 109:8 110:2
 111:7,8,11,15
 111:21 112:8,13
 113:14,22 114:3
 114:8,10,13,13
 115:12,15,16,16
 115:19,20,21,22
 116:1,2,5,6,9,22
 116:24 122:21
 123:5 124:1,20
 126:15 129:4,5
 129:7 133:15,15
 133:15 138:3,4
 138:22 139:16
 139:24 145:6
 150:25 159:9
 161:2,10
**worried**  108:23
**worth**  2:3
 103:20
**write**  60:5 85:19
 86:1 109:11
 112:6 148:8
**writers**  86:14
**writing**  10:6
 16:25
**written**  19:24
 43:10 58:23
 82:17 84:10
 109:12 116:17
 118:2 119:20
 120:10,19,22

 121:9 134:3
 137:7 139:18
 163:21
**wrong**  11:13
 14:25 134:15
 142:8 162:7,22
 163:12
**wrote**  34:13
 41:22 60:6
 82:11,15 85:19
 87:4 88:23
 95:21 110:24
 111:2 136:8
 137:19

---
**x**
---

**x**  65:17,25

---
**y**
---

**y**  65:25
**yeah**  10:13 42:2
 46:17 47:8,18
 61:11 70:15
 74:8,20 75:10
 75:14,20 83:6
 90:6,15 94:9
 101:4 113:20
 116:19 117:22
 120:21 122:16
 123:25 124:16
 129:17 138:10
 146:24 148:23
 165:24
**year**  9:2

**[years - zoroastrian]**                                    Page 220

**years** 27:13
  34:16 137:1,2,5
  151:22
**yo** 15:5

### z

**z** 65:25
**zach** 2:7 3:24
**zachary** 2:5
**zack** 163:11
**zermay** 2:5,6
  3:8,12 10:25
  11:12,12 12:12
  12:14 13:12
  14:16 15:25
  18:6 32:24 33:5
  40:21 41:3 42:3
  45:13,17 46:3
  46:20 47:3,19
  49:13 50:7
  60:22,24 61:7
  61:11 65:19,23
  77:17 78:15
  84:23 85:3
  87:11 93:5
  100:4 104:7
  106:14,18,23
  107:1 108:7
  110:4 131:8
  133:18 134:18
  134:24 136:13
  136:20 140:17
  141:20 149:25
  150:16 155:8,11

  155:16 156:5
  159:10 166:5
**zermaylaw.com**
  2:7
**zion** 158:21
**zoroastrian**
  158:20