Page 1

1              UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
2                   ORLANDO DIVISION
3                CASE NO.: 6:24-CV-01629
4

    MATTHEW LAROSIERE,

5
            Plaintiff,

6

    vs.

7

    CODY RUTLEDGE WILSON, DEFCAD, INC.,
8   DEFENSE DISTRIBUTED, and
    DIOSKOUROI, LLC

9
            Defendants.

10

    _____/

11

    LOCATION:    Wilson Elser Moskowitz Edelman &
12               Dicker LLP
                 111 North Orange Avenue, Suite 1200
13               Orlando, Florida 32801
14  DATE:        November 25, 2025
15  TIME:        10:15 a.m. - 2:23 p.m.
16
17
18                  MEET AND CONFER
19
20
21
22          Taken before Julie Giordano, Florida
23  Professional Reporter, Notary Public in and for the
24  State of Florida at Large, pursuant to Notice of
25  Taking Deposition filed in the above case.

Page 2

1    APPEARANCES:
2    ZACHARY Z. ZERMAY, ESQUIRE
     OF: ZERMAY LAW, P.A.
3        3000 Coral Way, Apartment 1115
         Coral Gables, Florida 33145
4        zach@zermaylaw.com
5        Counsel for the Plaintiff
6
     AMARIS LILLY-JOY CHRISTINA GYEBI, ESQUIRE
7    LEIA VILLASENOR LEITNER, ESQUIRE
     OF: WILSON ELSER MOSKOWITZ EDELMAN & DICKER
8        111 North Orange Avenue, Suite 1200
         Orlando, Florida 32801
9        amaris.gyebi@wilsonelser.com
         leia.leitner@wilsonelser.com
10
         Counsel for the Defendants
11
12   ALSO PRESENT:
13   Matthew Larosiere, Plaintiff
14
15
16
                          -   -   -
17
18
19
20
21
22
23
24
25

Page 3

1                     E X H I B I T S

2   EXHIBIT                                        PAGE

3   Exhibit No. 1                                   176
        DEFCAD's Answers to Request for
4       Production

    Exhibit No. 2                                   176
5       Defense Distributed's Answers to
        Request for Production

6   Exhibit No. 3                                   177
        Wilson's Answers to Interrogatories
7   Exhibit No. 4                                   177
        Defense Distributed's Answers to
8       Interrogatories

    Exhibit No. 5                                   177
9       DEFCAD's Answers to Interrogatories

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                        Page 4

 1              MR. LAROSIERE:  So we're picking up at

 2       request for production to Mr. Wilson, No.

 3       63.  This is the same defendant in his

 4       individual capacity, as I have the

 5       documents.  And it's better requested to

 6       DEFCAD.

 7              And so are we continuing to assert the

 8       same control issue that we were asserting

 9       before?

10              MS. GYEBI:  Same control issue.

11              And just to clarify, to the extent

12       it's not clear already, we are willing to

13       produce on behalf of the defendant entities

14       -- and this is a remaining problem that you

15       all believe that this is not limited to the

16       defendant entities.

17              So to the extent we're saying it's

18       better directed to DEFCAD, we will produce

19       on behalf of DEFCAD.

20              MR. LAROSIERE:  So then, as we

21       discussed before, the request is to Wilson

22       as to what is in his possession, custody

23       and control.  And so presumably, all of the

24       entities that he owns, he has control over.

25       So we're asking for the responsive

```
                                                  Page 5

 1           documents for those.

 2                 And previously, when you said

 3           defendant entities, you specifically said

 4           DEFCAD and Defense Distributed and leaving

 5           out the other defendant entity, Dioskouroi.

 6                 Is that still your position?

 7                 MS. GYEBI:  That is our position.

 8                 Would producing on -- or asking if

 9           Dioskouroi has responsive documents resolve

10           this issue or is that a nonstarter?

11                 MR. LAROSIERE:  I think the problem

12           is, is that we're asking Wilson for things

13           that are in his possession, custody and

14           control.

15                 And as we've already discussed, we

16           think that we have case law to support the

17           same thing.

18                 This is questions concerning periodic

19           reviews for project files that may be or

20           are currently subject to copyright

21           protection.

22                 This one, I think we have the same

23           issue that needs to be resolved.

24                 MS. GYEBI:  So then we can say again

25           the control issues?
```

Page 6

1                    MR. LAROSIERE:  Control.  Uh-huh.

2              65, we have the same response.  Would

3          you agree that's the same issue?

4                    MS. GYEBI:  Yes.  That we have the

5          control issue.

6                    MR. LAROSIERE:  Okay.

7                    MS. LEITNER:  Yeah.  I mean,

8          especially because it says "files on

9          DEFCAD."  And again, I know what your

10         position is with respect to that.  But, I

11         just want to reiterate these requests are

12         to Mr. Cody Wilson.

13                   MR. LAROSIERE:  Yes.  And we've

14         discussed that.  And thank you for bringing

15         that up again.

16                   Again, the question is, what's in his

17         possession, custody and control?  And so

18         for example, we want to avoid a situation

19         like we'll see when we actually get to the

20         request for production with DEFCAD, where

21         then DEFCAD points to another entity.

22                   So, I think that's why the Court needs

23         to resolve the control issue.

24                   So would you agree for 66, which asks

25         for similar things across DEFCAD's

Page 7

1      websites, right.  And this is, again, one
2      of the reasons that it's not sufficient
3      that only DEFCAD answer is because DEFCAD
4      and Defense Distributed have taken the
5      position in this litigation that these
6      websites are actually subproducts of
7      another one of his entities.
8          MS. LEITNER:  Where -- where are you
9      supporting that claim?
10         MR. LAROSIERE:  That's -- we can talk
11     about that more substantively later.  But
12     it is -- for example --
13         MS. LEITNER:  This is why we're here,
14     though.
15         MR. LAROSIERE:  Okay.  If you'd like
16     for us to -- just, we've only gotten
17     through 66 out of a lot.  Okay?
18         And so the response is still, subject
19     to no objection.  So no objection has been
20     made to this request.
21         Defendant, in his individual capacity
22     does not have.  And then we're directed to
23     DEFCAD, Inc.  It's not on plaintiff to
24     divine where in defendants' control this
25     might be.  And so I don't think there's any

1           point to us debating where this might be

2           right now.

3                 The simple answer is, is there

4           anything in his possession, custody and

5           control?  And if there is responsive, then

6           we'd like it.

7                 MS. LEITNER:  And our response is that

8           the request as phrased asks for information

9           from DEFCAD.  And so, that's why the

10          response directs you to request that

11          information from DEFCAD, Inc.

12                MR. LAROSIERE:  So the request says:

13          Produce all data that shows how exactly the

14          underlying files ended up accessible on

15          DEFCAD's websites.  Okay?  That's a little

16          bit more broad than just asking DEFCAD,

17          which is why we asked Mr. Wilson.

18                And, again there have been filings.

19          And in the interest of time, I can -- we

20          can memorialize that to you in a

21          communication afterward.

22                Zach, can you take note that we'll

23          send them the time when Wilson asserted

24          that these were sub entities?

25                MR. ZERMAY:  Yes.

1          MR. LAROSIERE:  We'll be happy to get

2     that to you.

3          But again, I don't think that we

4     really even need to because the only

5     question is, whether it's in Wilson's

6     possession, custody or control.

7          But again, being that the only

8     response is identical to the other ones, I

9     think the control problem is the same thing

10    that we're litigating here.

11         Do you agree?

12         MS. LEITNER:  Yes.

13         MR. LAROSIERE:  Thank you.

14         MS. LEITNER:  And just for the record,

15    Mr. Larosiere, are you appearing on behalf

16    of yourself as an attorney or as a party?

17    I just want to make sure and clarify for

18    the record for out-of-court appearances.

19         MR. ZERMAY:  We'd just repeat and

20    restate what the previous discussion

21    regarding this issue was.

22         MS. LEITNER:  Okay.  And I just want

23    to just remind ourselves from yesterday

24    that I understand that you guys were going

25    to produce authority to support your

Page 10

1          understanding of willfulness under the

2          Copyright Act, or at least 11th Circuit

3          authority.  So.

4              I just wanted to just add a reminder

5          because we haven't received that yet.

6              MR. LAROSIERE:  Request No. 67:

7          Produce all copies of any of the works at

8          issue which are present on mobile device

9          which belongs to Wilson personally.

10             And then --

11             MS. GYEBI:  I'm sorry.  I think we

12         skipped 66.

13             MR. LAROSIERE:  No.  66 was the --

14             MS. GYEBI:  Sorry.

15             MS. LEITNER:  We're on 67.

16             MR. LAROSIERE:  67, which I believe

17         you had concerns about this, which you

18         suggest we were requesting imaging.

19             I don't think that's what we're

20         requesting.  We're requesting copies of the

21         works at issue which are present on the

22         devices which belong to Wilson.

23             And we want to add, you know, the time

24         basis metadata so that we can know when

25         those files got onto his devices.

Page 11

1             And then you put a litany of

2      objections.  You say that it is

3      irrespective of time period.

4             And you say that the copies of the

5      devices on his personal -- the copies of

6      the files on his personal devices are

7      subject to privilege.

8             So, what -- I guess what do we have to

9      do, given your suggestion that we need to

10     narrow this request?  What do we have to do

11     to get the copies of the works at issue

12     which are on Wilson's devices?

13            MS. LEITNER:  I think the issue is,

14     the earlier issue about the definition of

15     works and how we have defined it.

16            And based under our understanding,

17     under the federal rule one, under our

18     responses, as the subject works identified

19     in the First Amended Complaint.

20            So I think the first issue is "works"

21     is undefined and, therefore, vague and

22     overbroad and unintelligible for us to

23     respond to the request.

24            We have a 26(b)(1) objection with

25     respect to all copies because it's just for

Page 12

1          the works at issue, based on the undefined

2          term "works."  And it's not limited in time

3          and scope.

4               We just want to be clear that this

5          information would be from 2023 to the

6          present.

7               Do you have anything extra to --

8               MS. GYEBI:  No.

9               MR. LAROSIERE:  Well, that's all you

10         asserted.  So -- and just to be clear,

11         you're asserting that copies of the actual

12         copyrighted works that are at the subject

13         of this litigation -- of course with the

14         Footnote 1 issue that we've discussed

15         previously and that, you know, we've

16         shorthanded it as the Footnote 1 issue.

17         Total understood.  We don't agree, but we

18         understand that that's your position.

19              Your position is still that copies of

20         the works, if they're before 2023, are

21         beyond the scope of the litigation?

22              MS. LEITNER:  Well, there's no time

23         limit.  That's the issue.

24              MR. LAROSIERE:  Okay.

25              MS. LEITNER:  At all.

Page 13

1              MR. LAROSIERE:  Okay.

2              MS. LEITNER:  And so whatever you

3        believe, then we can look into whether we

4        have documents responsive to that.

5        Otherwise, this question is too broad.

6              MR. LAROSIERE:  Understood.  So for

7        68, this is the same exact question but --

8              MS. LEITNER:  I'm sorry.  I don't want

9        to miss that.

10             But do you have a suggestion with

11       respect to a time frame?

12             MR. LAROSIERE:  We're asking for

13       copies of the works at issue.  The works

14       that existed for a definite period of time.

15             MS. LEITNER:  Yeah.  Three years.

16             MR. LAROSIERE:  I don't think that --

17       I think that the request itself is

18       sufficiently limited because presumably,

19       copies of this work didn't exist in 1862 or

20       1981.  I'd be surprised if he found copies

21       of the works that existed before 2018.  If

22       he have them, we'd very much like to see

23       them because that would undercut our -- the

24       theory of creation part of this case.

25             So I think 2018, as has been common,

Page 14

1          would be reasonable.  But I think for a

2          request like this, on its own terms, is

3          sufficiently limited.

4               MS. LEITNER:  Okay.  And again, we --

5          to the extent the certificate of

6          registrations and the documents supporting

7          the creation dates and publication dates

8          dated between 2022 to the present, we would

9          find that that would be the relevant time

10         period for this request.

11              MR. LAROSIERE:  I don't want to joust

12         back and forth.  But the creation dates

13         were as to the final published copy.

14              If Mr. Wilson somehow got his hands on

15         a prepublication version, that would be

16         relevant and actually complicate issues

17         substantially.  And so we would need to see

18         that.  And that's why we think that the

19         request as written is sufficiently

20         tailored.

21              And again, you are not waiving

22         anything.  I understand.  I would just like

23         us to move on.  And I think that the

24         Footnote 1 issue and your assertion of time

25         and scope are fully understood.

Page 15

1          So do you think you have the same

2     objections to 68, which asks for the same

3     thing except on a laptop computer?

4          MS. LEITNER:  Same issue.  Same

5     objections.

6          I think the issue would be, you know,

7     that we've asked for you the time frame

8     because it's your allegation that you've

9     created these works either through a work

10    for hire agreement and/or through other

11    means.  So you would have the relevant time

12    period.

13         But that's -- you have admitted that

14    the time frame relates to the copyright

15    registrations in your own answers to

16    interrogatories.

17         MR. LAROSIERE:  There's no point to

18    jousting back and forth on this.  It's

19    taking up a lot of time.

20         MS. LEITNER:  I know what you think.

21    But that's why we talk about the

22    substantiative issues.

23         MR. LAROSIERE:  Okay.  And so let me

24    remind you --

25         MS. LEITNER:  So we try to narrow it

Page 16

1           and resolve it.

2                MS. GYEBI:  Hold on.  Just -- we're

3           talking over each other, and the court

4           reporter is not going to get it.  So...

5                MR. LAROSIERE:  Did you look at the

6           registration certificates?

7                MS. LEITNER:  I did.

8                MR. LAROSIERE:  Okay.  And so then you

9           know that there are some works at issue

10          which were created before 2021.

11               MS. LEITNER:  That's not what's

12          reflected on -- I've got to go by the

13          copyright registrations and what you see in

14          the answers to interrogatories and what's

15          submitted in evidence.

16               MR. LAROSIERE:  There are some works

17          at issue.

18               MS. LEITNER:  And it's in the motion

19          for protective order -- or excuse me -- the

20          motion for preliminary injunction.

21               MR. LAROSIERE:  There are some works

22          at issue that existed before then.  So

23          that's why we think that simply identifying

24          the works at issue is sufficient.

25               And again, your position is fully

Page 17

1          understood.  One of the reasons I want to
2          avoid jousting back and forth about this is
3          to create things off the record to suggest
4          that there's some -- that these -- that
5          these issues that don't actually exist.
6              I understand your position.  However,
7          I don't think we should be debating the
8          time issue when the requests are so narrow
9          as to specifically works at issue.
10             MS. LEITNER:  And again, just from --
11         I'm not going to take the unsworn testimony
12         of counsel and/or a party at this point
13         with respect to that.
14             MR. LAROSIERE:  Understood.
15             So 69 is the same question on a
16         desktop computer.  Would you say we have
17         the same issues for that one?
18             MS. LEITNER:  Yes.
19             MR. LAROSIERE:  Thank you.
20             MS. LEITNER:  Do you have suggestions
21         on like resolving these issues, or are we
22         just going to discuss what your -- what our
23         substantiative issues are?  Because they're
24         already on the responses, in our written
25         responses.

1              So I think the goal was to try to

2         resolve it.  Or if you're going to continue

3         saying that all of our requests are at

4         issue, then we can keep moving.

5              MR. LAROSIERE:  All of your requests

6         are at issue.

7              MS. LEITNER:  And -- okay.  I just

8         wanted to get that on record.

9              MR. LAROSIERE:  Because -- yes.  And

10        that's because -- one second.

11             MR. ZERMAY:  And so, you know, we just

12        want to provide some context regarding why

13        all the responses are at issue.  It's

14        because we perceive effectively objection

15        on the responses to all of the requests

16        that we propounded.

17             And so we're left with having to

18        explain every single request and why at

19        least we feel that we're entitled to if not

20        everything in the lion share of what we're

21        requesting, just because, again, the scope

22        of discovery, as we discussed ad nauseam

23        yesterday, is that it's -- requests are

24        reasonably calculated to lead to admissible

25        evidence at trial.

Page 19

1          And we believe that -- you know, for

2     example, with the previous discussion

3     regarding the issue or the works at issue

4     and temporal scope of the request.

5          I mean, again, going back to what

6     Mr. Larosiere said is that if these works

7     Mr. Wilson had possession of, you know,

8     documents regarding the works back in 2015,

9     2016, 2017, that would really devastate our

10    theory of creation, right, and would blow

11    up our case.

12         And so we would really like to know

13    that.  But if you guys don't have that,

14    then mazel tov there's nothing there.

15    We declare under penalty of perjury of

16    reasonable search and diligent inquiry it

17    doesn't exist.  That's what we're looking

18    for if -- it shouldn't be that difficult to

19    find such information related to the works

20    because, again, it is such a limited scope

21    of what's at issue regarding the delineated

22    works that we've listed in the complaint,

23    we've listed in the instructions.

24         So that's -- if we have to explain why

25    we're entitled to this, we'll do it.  And

Page 20

1              while we're happy to come to a compromise

2              on some of the issues when we're at the

3              margins, you know, at the end of the day,

4              at a certain point, we are entitled to what

5              we are entitled to.

6                    And again, we're not here to, you

7              know, stick a fork in anybody's eye and say

8              like "Hey, you know, give us everything

9              come hell or high water or we're running to

10             the Court."

11                   You know, we're here to resolve these

12             issues in good faith, which we're here and

13             ready and willing to do.

14                   But for certain issues, like the one

15             we just discussed, it's like, it's

16             literally about the works.  So, why can't

17             we get the information about the works.

18                   And we think we're entitled to

19             information about the works, and we think

20             it's under the rules we're entitled to the

21             information about the works, and we think

22             the Court would agree we're entitled to

23             information about the works because the

24             works at issue in the complaint.

25                   I understand that yesterday, there was

Page 21

1          some issues about discussions regarding

2          things that may have not been specifically

3          referenced in the complaint.  And there was

4          discussion regarding notice pleading, which

5          we think only relates to issues raised at

6          trial and unfair surprise.  The surprise

7          aspect of things, is more tailored for

8          trial and not towards the discovery phase.

9          Because what we're trying to do in the

10         discovery phase is get information, put the

11         things at issue at trial to know what you

12         guys have, what you guys are going to say,

13         what documents exist so we know what's

14         going to happen at trial.  And hopefully

15         resolve this thing before then.  And if we

16         can't resolve it, put before the trier of

17         fact without a trial by ambush.

18              Just -- anyway.  That's my little

19         colloquy regarding what we're here to do

20         and what we're trying to accomplish.

21              MS. LEITNER:  I just have to -- just

22         because you made that colloquy.  That in

23         response to that, I just want to clarify

24         that we complied -- the defendants complied

25         with the rules when they responded to the

Page 22

 1          request for production.
 2                 The issue is that we have provided a
 3          date of December 1st to provide our
 4          rolling production because of the
 5          voluminous amount of documents that we have
 6          that we are producing with respect to that.
 7                 And the other issue is that we are
 8          here because it's our position that the
 9          discovery is just -- it's far beyond the
10          scope under 26(b)(1).
11                 The First Amended Complaint targets a
12          finite set of works at issue that are 16
13          copyright registrations and the alleged
14          conduct by the defendants.
15                 But the discovery date is far beyond
16          those claims.  They seek -- and we're going
17          to go into it right now -- broad, personal
18          and financial information that are
19          untethered to the pleaded issues and,
20          again, disproportion under Rule 26(b)(1).
21                 So I just wanted to clarify that we're
22          here to resolve that.  We're trying to
23          respond to it accordingly.  But based on
24          the requests as phrased and as is overbroad
25          as it is, we're trying to narrow it so that

Page 23

```
1           we can produce documents and/or either
2           stand by our objections or based on how the
3           requests are or -- or try to work together
4           to resolve it.
5                MR. LAROSIERE:  Ma'am, we're asking
6           for copies of plaintiff's copyrighted
7           works.  When -- and I appreciate you asking
8           how we can move forward.  We're hoping that
9           we can.
10               Am I correct in suggesting that what
11          you have offered, one, is still subject to
12          this control problem, and, two, you're
13          arbitrarily limiting to 2023 when some of
14          the works were created -- and again, it's
15          our contention when some of the works were
16          created before that.
17               And additionally, again, the issue of
18          if he has copies that predate that, and
19          that comes up later, that would be very
20          devastating and important.  So we want to
21          know these things.
22               You're refusing to do that.  I don't
23          know what more we can ask for aside from,
24          please give us the copies of the works with
25          the time-based metadata so we can know when
```

Page 24

1           he got it.  That's all we're asking for

2           with these requests.

3                 And the fact that that request is

4           leading to this extended colloquy is

5           confusing.  And it may be confusing because

6           we're wrong about the rules, or it may be

7           confusing because you're wrong about the

8           rules.

9                 But given the fact that you won't

10          produce what we're asking for, I think we

11          have no choice but to ask the Court to

12          determine who is wrong about the rules.

13                No. 70 is similar to the previous

14          ones.  And again, the only difference is,

15          we're asking for a device which belongs to

16          Wilson.  Again, we're asking for the

17          contents -- not the contents -- copies of

18          the works on the device in his capacity as

19          the business entity.  Right?

20                So this is us specifically trying to

21          avoid the red rover problem.  And you've

22          raised the same objections that you did to

23          all the devices in his individual capacity.

24                And so would you agree that this is

25          the same problem, the Footnote 1 issue,

Page 25

1            that it's not limited in time and scope,

2            that there's no time limit plus the control

3            issue?

4                MS. LEITNER:  Yes.  I would agree.

5                So I just wanted to clarify.  You guys

6            are not going to agree with the definition

7            of subject works as far as the Footnote 1

8            defines it as the works in the First

9            Amended Complaint?

10                MR. LAROSIERE:  Ma'am, we discussed

11            that ad nauseam for over 45 minutes.  Okay?

12                And to put a clear little ribbon on

13            it, we identified the works belonging to

14            plaintiff, all of which defendant is aware

15            of and all of which we have materials

16            suggesting that he has a copy.

17                The fact that some of them were not

18            present in the complaint doesn't make them

19            not discoverable because the practices and

20            conduct surrounding them -- I see you're

21            shaking your head.  I don't know what I'm

22            doing wrong, but it's okay.

23                But the practices and conduct

24            surrounding those items are certainly

25            relevant to the issues we have here, which

Page 26

```
 1              is a contentious and willful copyright
 2              infringement, as we contended.  It's that
 3              simple.
 4                   MS. LEITNER:  And we are willing and
 5              able to compromise and produce the
 6              information with respect to the 16
 7              copyright registrations that are noticed in
 8              the First Amended Complaint.
 9                   MR. LAROSIERE:  And that's not good
10              enough.  And it's also not good enough in
11              that you are arbitrarily limiting it to
12              things that Mr. Wilson says are not in his
13              personal capacity.
14                   If -- again, if the response had been
15              code compliant after a reasonable search
16              and diligent effort, no responsive
17              documents exist, we wouldn't be having this
18              conversation.
19                   But that's not what you said.  You
20              said in light of the foregoing objections,
21              defendant is willing to meet and confer
22              regarding the narrow request.
23                   MS. LEITNER:  Understood.
24                   MR. LAROSIERE:  We're saying we are
25              asking for what we need.  And no
```

Page 27

1              narrowing -- we cannot -- we cannot devine

2              a reasonable narrowing aside from the one

3              we offered you, which is 2018.  And you've

4              rejected that.  So I believe that we just

5              have to keep going.

6                   MS. LEITNER:  Understood.

7                   MR. LAROSIERE:  Thank you.

8                   71 is identical with a different type

9              of device.  Would you say that you have the

10             identical issues to 70?

11                  MS. GYEBI:  Yes.

12                  MR. LAROSIERE:  Thank you.  72 is

13             identical to 71.  However, you did not

14             object.  So, would you say for this one, we

15             have only the control issue?

16                  MS. GYEBI:  We have a works issue, but

17             it doesn't seem like that would resolve it.

18                  MR. LAROSIERE:  And it was not

19             brought.  So...

20                  MS. GYEBI:  It's the footnote issue.

21             It applies to all requests.  I understand

22             that you don't agree with that, but that is

23             our position.

24                  MR. LAROSIERE:  So -- hold on one

25             second.

Page 28

1          You didn't assert that objection here,

2      though.  You simply said in the individual

3      capacity does not have and it's better

4      directed to the defendant entity.

5          So it's our position those objections

6      are waived with respect to Request No. 72.

7          MS. GYEBI:  At all times material

8      herein, the term "works" refers to the

9      copyright registrations plaintiff

10     referenced in the First Amended Complaint

11     and defendant allegedly used without

12     authorization.  Doc. 43 at paragraphs 104

13     to 259.

14         That is quite literally the footnote

15     issue that we raised.  We are again saying

16     that we are asserting this footnote issue.

17     You can disagree with that.

18         But for the record, that is an issue

19     for every single time that plaintiff

20     mentions works, that covers all 25 of the

21     registrations being in the discovery, when

22     only 16 have been named in the complaint.

23     That is an issue.

24         MR. LAROSIERE:  Okay.  Let me make

25     sure we're clear.

Page 29

```
 1              You're referring to Footnote 1, which
 2         we understand was the defined capitalized
 3         "W" works, correct?  The defined term
 4         "works" as you use in your responses.
 5              MS. GYEBI:  Yes.
 6              MR. LAROSIERE:  So Request No. 72 does
 7         not use your definition of works.  It says
 8         "the works at issue."  And there is no
 9         capitalized works anywhere in the request
10         or the response.
11              MS. GYEBI:  Yes.
12              MR. LAROSIERE:  So understanding that
13         you believe that your objection can amend
14         the request as it was written, I'm going to
15         write down that and that you're asserting
16         the control issue.
17              MR. ZERMAY:  Just for clarification,
18         are you guys going to be producing any
19         documents subject to those objections?
20              MS. GYEBI:  Yes.  And I thought that
21         was made clear at the beginning from day
22         one.  But it seems like it's a continuing
23         issue to day two.
24              So just for purposes of the record, we
25         are not refusing to produce documents.  We
```

Page 30

1          will produce the documents subject to the

2          objections.

3               To the extent that the requests cannot

4          be resolved in any way or there's no

5          movement on it from either side where we

6          cannot produce any documents, we are unable

7          to produce and the Court will resolve.

8               But we are producing an amended

9          response.  We are producing documents.

10         That is occurring on December 1st.  Not

11         only for Mr. Wilson but to the extent that

12         the defendant entities, Defense Distributed

13         and DEFCAD have responsive documents, we

14         will again produce them.

15              We are at an impasse right now because

16         there is no give on plaintiff's end --

17              MS. LEITNER:  Correct.

18              MS. GYEBI:  -- on any of these

19         requests.

20              MS. LEITNER:  That's what we're here

21         to establish.

22              MR. LAROSIERE:  So you don't recall us

23         withdrawing several requests yesterday?

24              MS. GYEBI:  One.

25              MS. LEITNER:  You withdrew one.

Page 31

1           MS. GYEBI:  Actually, I take it back.

2       You withdrew two out of 62 that we did

3       yesterday.

4           MR. LAROSIERE:  Okay.  So again, the

5       main issue here, I think, is the control

6       issue.  Okay.  I think that your

7       unwillingness to move as to the control

8       issue is what matters, but I don't --

9           MS. GYEBI:  We did move on the control

10      issue.  In fact, we said even though Wilson

11      doesn't have it in his individual capacity,

12      we're willing to produce on behalf of

13      defendant entities that we represent.

14           That is not enough for plaintiff.  And

15      that's fine.  But there's no point in

16      rehashing this if you're not -- if

17      plaintiff is not willing to make any

18      movement on this issue.

19          MR. LAROSIERE:  We're asking what's in

20      Wilson's custody and control.  Who you

21      represent doesn't matter.  And we represent

22      that we're entitled to things in his

23      custody and control.

24           I'd like to not keep circling this

25      drain.  And I think that the Court can

Page 32

1       resolve this handily when we present the

2       custody issue with the control issue, which

3       will be a unified thing.  I don't think the

4       Court is going to have to do it line by

5       line.

6            But I think that when the Court

7       addresses the control issue, it's going to

8       mean that many -- if it is resolved in our

9       way, it's going to mean that your

10      responses -- even if they do include the

11      entities which you've selected, if it's

12      resolved in our way, would still be

13      deficient.  If it's resolved in your way,

14      it would not be deficient.

15           So I think that's a clean thing to be

16      resolved.  Okay?

17           MS. LEITNER:  Yeah.  We just want to

18      establish for the record in good faith, we

19      are producing under the defendant entities,

20      even though these requests weren't directed

21      to the defendant entities, even though you

22      had the opportunity to do so.

23           MR. LAROSIERE:  And when you say

24      defendant entities, you mean which

25      entities?

Page 33

```
 1              MS. LEITNER:  The entities that Wilson
 2        Elser represents and DEFCAD and Defense
 3        Distributed.
 4              MR. LAROSIERE:  Okay.  Which is not
 5        all defendant entities.
 6              MS. GYEBI:  Well, we offered at the
 7        beginning of this to ask about Dioskouroi.
 8        And that still hasn't resolved the issue.
 9        Or is it -- are you now changing your
10        position?
11              If we've agreed to produce on behalf
12        of all the defendant entities, and to the
13        extent that it's in Wilson's possession,
14        will that now resolve your -- the control
15        issue?
16              MR. LAROSIERE:  You must produce all
17        documents that are in Wilson's possession,
18        custody or control.
19              MS. GYEBI:  So the answer to my
20        question is no?  Even producing on all
21        named defendants in this action will still
22        not resolve plaintiff's issue, correct?
23              MR. ZERMAY:  Well, I mean, again --
24              MS. GYEBI:  Correct or not?  I'm just
25        asking for a simple yes or no.
```

```
                                                      Page 34

 1                We are offering now to produce on all

 2           of the parties, all of the defendant

 3           parties in this action.

 4                Is that enough for plaintiff?  No?

 5                MR. ZERMAY:  I'm not going to be

 6           cross-examined at a meet --

 7                MS. GYEBI:  It's not

 8           cross-examination.  You're avoiding the

 9           question.  I'm asking --

10                MS. LEITNER:  We just need to know --

11                MR. ZERMAY:  I'm not going to be

12           cross-examined at a --

13                MS. GYEBI:  Okay.  So it's a refusal

14           to answer.  We'll note that for the record.

15           We just need to move on.

16                MR. ZERMAY:  I'm sure -- and in any

17           event, I do criminal defense.  I never put

18           my client on the stand for this reason.

19           And I'm not going to put myself to be

20           cross-examined --

21                MS. LEITNER:  You're not on the stand.

22                MS. GYEBI:  You're not on the stand --

23                (Reporter clarification.)

24                MR. ZERMAY:  Anyway.  That's a

25           roundabout way of -- I just want to
```

Page 35

```
1              reiterate just, you know, the standards at

2              issue here that Mr. Larosiere has

3              articulated, we're entitled to documents

4              and information from Mr. Wilson that is in

5              his possession, custody or control.

6                   And that's just what the rules permit.

7              And that's all we're asking for is that,

8              you know, this is a copyright, that

9              admittedly it involved one.  I think it's

10             fair to say that's involved.

11                  But, be that as it may, and despite

12             that, the rules are that we're entitled to

13             what's in his possession, custody or

14             control.  And if there's some corporation

15             in the Nevis Islands, for example, that we

16             don't know about, if there's information

17             that's responsive to it, then we're

18             entitled to it.

19                  We don't know what we don't know.  And

20             again, to reiterate the late Donald

21             Rumsfeld, as I said the other day, there

22             are no knowns known unknowns, none known

23             unknowns.  And we don't have a list of all

24             of Mr. Wilson's corporations.  My

25             understanding that he's a shell -- I don't
```

Page 36

1        want to say -- strike that.  We're not

2        moving to strike anything.

3              But he has a lot of companies that may

4        have.  And we don't want to necessarily

5        exclude something from the document

6        production because we didn't expressly name

7        them in the complaint.

8              And running back into the red rover,

9        red rover, we call shell corp over.  That

10       we may be missing some important

11       information.

12             And litigation is a -- at the end of

13       the day, a quest for truth.  And I pull

14       some case law regarding that.  And that's

15       what we're trying to do here, just trying

16       to get to the bottom of what happened to

17       resolve this controversy between

18       Mr. Larosiere and Mr. Wilson and his

19       companies.

20             MS. GYEBI:  Request No. 73.

21             MR. LAROSIERE:  73, we canceled

22       already.

23             MS. GYEBI:  Okay.

24             MR. LAROSIERE:  74 is -- the only

25       objection is that it calls for a legal

```
 1              conclusion.
 2                    And you've agreed to produce
 3              responsive documents to this one by
 4              December 1.  I think we can leave that one
 5              alone.  I don't think it calls for a legal
 6              conclusion, but we can safely say 74 is not
 7              an issue.
 8                   MS. LEITNER:  And if we're going to
 9              talk about the substantiative issues, it is
10              a legal conclusion.  You're asking us to
11              produce documents that are -- that you're
12              requiring us to determine are allegedly
13              infringing.  So yes.
14                   MR. LAROSIERE:  Okay.  So, then let's
15              actually discuss this.
16                   MS. LEITNER:  As the request is
17              phrased is objected based on the legal
18              conclusion that you're asking, again, us to
19              produce documents that are -- that
20              Mr. Wilson has infringed.  So that's what
21              the issue is.  I mean --
22                   MR. LAROSIERE:  Okay.  So let me read
23              Request No. 4 [sic].  Because I'm a little
24              confused.
25                    It asks for all evidence that Wilson
```

Page 38

1          believed the alleged infringement of any of

2          the works at issue to be non-infringing due

3          to a good faith belief in prior use, which

4          is an asserted affirmative defense.

5              So can you tell me where the legal

6          conclusion is?

7              MS. LEITNER:  All of them are legal

8          conclusions.  You're asking us to decipher

9          when it's infringing and non-infringing.

10             It's our position that he hasn't

11         infringed.  So any documents that were

12         produced shouldn't be defined in either one

13         of those categories.

14             MR. LAROSIERE:  Okay.  I'm going to

15         say this is at issue and that's going to

16         need to be resolved because you assert --

17         you assert prior use, which is, again, one

18         of the things -- one of the reasons we're

19         bringing up the time frame, because you're

20         asserting that there was prior use.  Okay?

21             And we didn't -- we deliberately

22         didn't say the infringed works because we

23         don't want to put those words in your

24         mouth.  We said the alleged infringement of

25         any of the works at issue.

Page 39

1           You asserted the affirmative defense

2       of non-infringing, that -- that it was

3       non-infringing, as you also just said --

4       due to a good-faith belief in prior use.

5           So I think the Court needs to resolve

6       whether this calls for a legal conclusion.

7           MS. LEITNER:  Sure.

8           I think, just to be clear, you're

9       asking, had the question been rephrased as

10      produce all facts sufficient to provide

11      evidence to show infringement or works at

12      issue.

13          But you're asking for us, the way it

14      is phrased, to -- to essentially categorize

15      this document and make a conclusion with

16      respect to the production.  So that's what

17      the issue is.

18          The question, again, as phrased is

19      deficient.  And we're trying to resolve it

20      because you should be asking about the

21      facts, this is a discovery, not just legal

22      conclusions.

23          The request is, again, overbroad and

24      just unintelligible for us to provide an

25      articulable response.

```
                                                    Page 40

 1            MR. LAROSIERE:  How can we -- okay.

 2       So you do have an obligation to, when you

 3       believe there are such problems, respond to

 4       it as reasonably -- you know, reasonably

 5       construed.

 6            So can we agree that instead of all

 7       evidence, we are asking for documents

 8       sufficient to substantiate a good-faith

 9       belief in prior use?

10            MS. LEITNER:  I'm going to stand my

11       objection because it's not written

12       correctly.

13            MR. LAROSIERE:  Okay.

14            MR. ZERMAY:  I guess let me ask a

15       question here because we are allowed to ask

16       contention questions in litigation.

17            MS. LEITNER:  But it's not phrased

18       that way.  You should have quoted the

19       complaint and then asked for sufficient

20       facts and evidence with respect to that

21       specific allegation.  But that's not how

22       it's phrased.

23            MR. ZERMAY:  Aren't we asking about an

24       affirmative defense there from prior use?

25       I mean, it's -- it's --
```

```
                                        Page 41

1              MS. LEITNER:  I'm just -- the bottom
2       line is the request as phrased is
3       completely objectionable based on a legal
4       conclusion.
5              MR. ZERMAY:  Well, the legal
6       conclusion -- correct me if I'm wrong --
7       would be prior use.
8              And again, it's my understanding of
9       the rules -- and perhaps somebody will
10      correct me.  But we're allowed to ask
11      contention questions.
12             And, you know, to the extent it's a
13      legal conclusion, I mean, I don't think
14      12(b)(6) is at issue here where we need to
15      plead sufficient facts to state a claim in
16      a discovery request.  I mean, it seems like
17      we're conflating the standards here.
18             MS. LEITNER:  That's not accurate.  I
19      agree -- 100 percent agree you can ask
20      contentious requests.  But that's not how
21      -- the request as phrased is not accurately
22      phrased for us to respond accordingly under
23      the rules.
24             MR. ZERMAY:  Yeah.  I'm sorry.  Maybe
25      I misspoke.  Maybe I just misheard.
```

Page 42

```
 1              My intention isn't to ask
 2       contentious requests.  It's a contention.
 3       Not contentious.  So, you know, if I said,
 4       ask contentious questions, I apologize
 5       because I don't mean to ask contentious
 6       questions.  But contention, like legal
 7       contention.
 8            MS. LEITNER:  Yes.  No.  I agree.
 9       That's what I was saying.  Sorry.  I may
10       have misspoke.
11            But I agree you can ask contention
12       questions.  But this Request No. 74, as
13       phrased, doesn't ask the way -- ask that.
14       So that's the issue.
15            I mean, the request as phrased is just
16       -- we have an issue.  If you want to -- I
17       can't respond to it accordingly the way it
18       is right now.
19            MR. LAROSIERE:  I am sorry for the
20       misspeaking.  Whoever actually did it, I
21       take responsibility.  Let's move on now.
22            76.  This is all communications with
23       Mr. Walliman with a large list of things,
24       to which you did not object.  And we have
25       the control issue, it appears.
```

Page 43

1              MS. GYEBI:  I'm sorry.  Did we do 75?

2              MR. LAROSIERE:  Did I skip that?  I'm

3         sorry.

4              Oh, that appears to be just the

5         control issue?

6              MS. GYEBI:  Well, no.  So 75, we will

7         be producing an amended response because we

8         have found responsive documents.  We would

9         just ask for a limiting time period of 2022

10        onward.

11             MR. LAROSIERE:  Okay.  So, you didn't

12        object to time period.  So please provide a

13        complete response.

14             MS. GYEBI:  Okay.  That's your

15        position?

16             MR. LAROSIERE:  Yes.

17             MS. GYEBI:  Okay.

18             MR. LAROSIERE:  Are you agreeing to

19        produce responsive documents to the request

20        you didn't object to?

21             MS. GYEBI:  This is --

22             MR. LAROSIERE:  We're on 75.

23             MS. GYEBI:  We're on No. 75.

24        Originally, we said defendant has no

25        responsive documents.

Page 44

```
1              That is not correct.  We are going to
2         produce responsive documents.  And we're
3         going to amend the response to reflect
4         that.
5              We are asking if plaintiff is willing
6         to take from 2022 onward.  My understanding
7         is that plaintiff is not willing to take
8         that because it was not objected to.  Is
9         that --
10             MR. LAROSIERE:  Yes.  So will you be
11        producing them as requested?
12             MS. GYEBI:  Subject to 2022 onward,
13        yes.  That would be in the amended
14        response.
15             MR. LAROSIERE:  Okay.  So we're still
16        going to have to move to compel to respond
17        to the question as it was asked.  Because
18        the 2022 issue is -- right.  We feel like
19        there's a reason we're getting so prickly.
20        Because this is not like ten years.  This
21        is a couple years -- this is one year.  We
22        asked for January 1, 2021.  And we asked
23        for that for a reason.
24             MS. GYEBI:  Okay.  How about this?
25        Because I don't know exactly when the
```

Page 45

1       communications are.  It may not be 2021
2       communications.  But I do know that there
3       are responsive documents because I've been
4       reviewing said documents.  So I know that
5       there needs to be an amended response to
6       state that.
7           I'm saying 2022 because that's our
8       position of what is relevant.  Now, if
9       there are 2021 documents, and it is
10      responsive, you know, for this, we will
11      produce as requested.
12          MR. LAROSIERE:  Thank you.
13          So No. 76, communications with Garret
14      Walliman which concern A through O
15      subjects.
16          There was no objection.  And we have
17      the control issue response.  And I think --
18      so should we just put down the control
19      issue?
20          MS. GYEBI:  Yes.
21          MR. LAROSIERE:  77, we have the same
22      issues with the Benjamin Denio, control
23      issue.  Agreed?
24          MS. GYEBI:  Yes.
25          MR. LAROSIERE:  78.  We have the same

Page 46

1           thing with Zachary Kubin, control issue.

2           Agreed?

3                   MS. GYEBI:  Yes.

4                   (Reporter clarification.)

5                   MR. LAROSIERE:  79.  Same thing,

6           control issue?

7                   MS. GYEBI:  Yes.

8                   MR. LAROSIERE:  80.  Same thing,

9           control issue?

10                  MR. ZERMAY:  Yes.

11                  MR. LAROSIERE:  81.  Same thing?

12                  MS. GYEBI:  Yes.

13                  MR. LAROSIERE:  Now we're at the end

14          of the easy part.

15                  So 82, we want to know about the

16          creation and foundation of DD Foundation

17          LLC -- concerning the creation of DD

18          Foundation LLC.

19                  (Reporter clarification.)

20                  MR. LAROSIERE:  A litany of

21          objections.  And again, you have your

22          proportionately objection, which we've

23          offered to, again, reconstrue all documents

24          and communications.

25                  I don't think that that -- would that

1         resolve your proportionately questions if

2         we -- you know, because you said all

3         documents and communications?  Just to be

4         clear, if we said you're right, that -- you

5         know, we talked the last time a lot about,

6         you know, the legal magic word, right.  The

7         document subpoena.

8              What we're actually asking for is

9         documents sufficient to establish the

10        circumstances of.  We don't want every

11        scrap of paper.

12             Does that solve the proportionality

13        issue of -- well, sorry.

14             Does that solve the proportionality

15        issue with respect to the phrasing, not

16        necessarily with respect to the scope?

17             MS. GYEBI:  I think we have a

18        preliminary issue of why plaintiff is even

19        asking for this.

20             MS. LEITNER:  Right.  It's way beyond

21        the scope.  That's what our problem is.

22             MR. LAROSIERE:  Sure.  So Wilson --

23        again, Wilson is an officer of this

24        foundation.  And that foundation has sworn

25        in separate litigation that it shares the

Page 48

1          profits with the defendant entities in this

2          case concerning the type of activities that

3          we're suing over.

4               So again, we've claimed, and it's

5          disputed, that these assets are being

6          hidden among the corporations.  And so we

7          feel it should be rather clear to

8          understand why defendants' role in the

9          foundation is relevant and the

10         foundation's, you know, structure is

11         relevant.

12              MS. GYEBI:  Is this going back to

13         plaintiff's idea that all of the profits,

14         irrespective of whether they are tried to

15         the copyrighted works, is discoverable and

16         obtainable by plaintiff?

17              MR. LAROSIERE:  I disagree with the

18         way you phrased that.

19              MS. GYEBI:  Rephrase it.

20              MR. LAROSIERE:  We think that the

21         question that we've asked is reasonably

22         calculated to lead to the discovery of

23         admissible evidence at trial, especially

24         where the big contention here is about

25         what's going on with these corporations,

Page 49

```
 1              where the money from the infringements are
 2              going.
 3                   And, you know, given the way they're
 4              structured, there's a substantial problem
 5              with all of the money that goes through
 6              because it's hard to divorce any payments
 7              that go to this entity from the
 8              infringement conduct because it's a
 9              database.
10                   MS. GYEBI:  On what basis are you
11              saying it's hard to divorce the payments
12              that are being made to a company that are
13              unrelated to the infringement versus
14              payments being made to the company related
15              to the infringement at issue?
16                   MR. LAROSIERE:  The company swears it
17              shares products with the infringing company
18              -- shares profits.
19                   MS. GYEBI:  That's your sole basis?
20                   MR. LAROSIERE:  That's a basis.  And
21              again, this isn't a complaint against them.
22              This is a discovery request.  All we want
23              is to know how it was founded, you know,
24              who the officer -- the general, basic
25              founding documents.  That's it.
```

Page 50

1        MS. LEITNER:  As for No. 82, I would

2    just say DD Foundation LLC was not

3    mentioned in the complaint.  It's outside

4    the First Amended Complaint.

5        And that's why we -- one of the bases

6    of -- that's why it's beyond the scope of

7    26(b)(1).

8        MR. LAROSIERE:  Okay.  Do you feel

9    comfortable moving on?

10        MS. LEITNER:  Yes.

11        MR. LAROSIERE:  Thank you.

12        So this is the same thing about DD

13    Foundation LLC.  Would you say it's the

14    same issue, outside the scope of the

15    complaint?

16        MS. LEITNER:  Yes.  Overbroad, vague,

17    outside the scope.

18        MR. LAROSIERE:  Okay.  Yeah.  So we'll

19    -- you know, just so -- because these are

20    all related.  So I think we'll be able to

21    articulate, you know, a theory as it

22    relates to this and then apply it to, you

23    know, the series of issues that are

24    similar.

25        Do you agree with that?  Like I don't

Page 51

1              think we're going to have to write in our
2              15-pager, this one, you know, 83 because of
3              this.  And then say the same thing with --
4              right?
5                   MS. GYEBI:  Correct.  Sorry.
6                   MR. LAROSIERE:  Yeah.  I'm just trying
7              to pregame that and why I'm trying to get
8              everything kind of unitary because it's
9              going to be -- I'm imagining that you're
10             going to assert X thing, and then there's
11             going to be a long list of numbers.
12                  MS. GYEBI:  Right.
13                  And to the extent that, again,
14             plaintiff has -- and I think we kind of
15             touched on it before.  We're fine with
16             categorizing it if you all have the numbers
17             that the categories go with.
18                  MR. LAROSIERE:  Yeah.
19                  MS. GYEBI:  Do we have that today?
20                  MR. LAROSIERE:  Well, we're doing that
21             now.
22                  MS. GYEBI:  Okay.
23                  MR. LAROSIERE:  And that's why I've
24             been asking for you to okay the way I
25             categorize it, because then we're going to

Page 52

1          give back to you basically the things I
2          wrote today so that, you know, we can agree
3          that -- that's why I keep asking for, okay?
4          Because I don't want us to then fight over
5          which categorizing we're putting them
6          under.
7              MS. GYEBI:  Okay.  I understand.
8              MR. LAROSIERE:  Yeah.  Okay.
9              So 84, we have no objection, but we
10         have the control issue.  Do you agree?
11             MS. GYEBI:  Yes.
12             MR. LAROSIERE:  85, same thing?
13             MS. GYEBI:  Yes.
14             MR. LAROSIERE:  86, same thing?
15             MS. GYEBI:  Yes.
16             MR. LAROSIERE:  87, same thing?
17             MS. GYEBI:  Yes.
18             MR. LAROSIERE:  Yeah.  It looked a
19         little different.
20             MS. GYEBI:  Yeah.
21             MR. LAROSIERE:  88, same thing?
22             MS. GYEBI:  Yes.
23             But question.  Why is plaintiff
24         looking for foreign IP addresses or
25         detection of foreign access attempts or

Page 53

```
 1              detection of foreign registrations?  What
 2              does that have to do with the complaint?
 3                   MR. LAROSIERE:  So plaintiff Wilson
 4              asserts the affirmative defense of
 5              illegality.  And this relates to conduct
 6              that he contends was illegal on the part of
 7              defendants.
 8                   89.  Same thing as the control issue?
 9                   MS. GYEBI:  Is plaintiff willing to
10              narrow at all the copyright and 3D printed
11              guns?
12                   (Reporter clarification.)
13                   MS. GYEBI:  At all the subsections,
14              copyright and 3D printed guns.
15                   And just for the record, the request
16              is seeking:  All discord account usernames
17              owned or used by yourself or your employees
18              which have been used at any point to
19              discuss, A, lawsuit, B, copyright, and C,
20              3D printed guns.
21                   So my question is, is plaintiff
22              willing to narrow at all its request for
23              any discussion on copyright and any
24              discussion on 3D printed guns?
25                   MR. LAROSIERE:  We just want the
```

Page 54

```
 1          discord username.  So we're not asking for
 2          the discussions themselves.
 3               MS. GYEBI:  Right.  But the discussion
 4          itself is going to dictate how we produce
 5          the username.  So, it -- the answer could
 6          be no.  I'm just asking.
 7               MR. LAROSIERE:  So, the answer is no.
 8          And we think that it's -- you know, it's
 9          calculated to lead to the discovery of
10          admissible evidence because we do know --
11          we do know that defendant has gone into
12          several of these communities to kind of
13          like sew a doubt or -- and we believe
14          actually encouraged people to copy
15          plaintiff's works and that the copyright
16          didn't apply to them.
17               And so, this is calculated to find --
18          to look more into that type of activity,
19          which is relevant to contributing
20          infringement, which is a claim that we
21          brought.
22               MS. GYEBI:  Okay.  And while I assume
23          the answer is no, I'm going to ask.
24               Is plaintiff willing to limit the
25          request to copyrights concerning the
```

Page 55

1          copyrighted works at issue in the

2          complaint, any discussion regarding those?

3               MR. LAROSIERE:  No.  But it may be

4          easier to -- so you don't have to go

5          through, to just produce the discord

6          account usernames used by him and his

7          employees.

8               You know, we could then go figure out

9          the rest from that, if it's a burden

10         problem.

11              MS. GYEBI:  It's not a burden problem.

12         It's an overbreadth issue.  But that's

13         fine.  We can move on.

14              MR. LAROSIERE:  Okay.  Well, you

15         didn't object.  So that's the problem.  So

16         I think we only have the control issue.

17              MS. GYEBI:  Well, I'm telling you that

18         it's overbroad.  Now we're discussing it.

19         Now, if your response to that is, well, you

20         didn't object to it, so we don't care,

21         that's fine.  But I'm letting you know it's

22         overbroad.

23              MR. ZERMAY:  Yeah.  I mean, that's my

24         understanding of discovery is that if it's

25         not raised in the response to it, it's

Page 56

1          deemed waived.

2                  MS. GYEBI:  Okay.

3                  MR. ZERMAY:  So...

4                  MS. LEITNER:  Well, our response with

5          respect to the fact that this request is

6          beyond the scope -- and actually all 114

7          requests are beyond the scope -- is that

8          the case law and authority is:  In re

9          Zantac (Ranitidine) Products Liability

10         Litigation.  It's 2020 U.S. District LEXIS

11         172695, wherein the Court states that:  The

12         Court...has the authority to confine

13         discovery to claims and defenses asserted

14         in the pleadings, and the parties...have no

15         entitlement to discovery to develop new

16         claims for defenses that are not already

17         identified in the pleadings.  See Fed. Rule

18         Civ. P. 26(b)(1).  It's the Advisory

19         Committee Note 2000.

20                 And I'm happy to send you a copy of

21         that.

22                 MR. LAROSIERE:  Yeah.  We don't have

23         LEXIS.  So if you could either print that

24         out or email us a copy, that would be

25         great.

Page 57

1           But, I don't think we're looking to

2       create new claims.  I think that these are

3       calculated to lead to the discovery of

4       admissible evidence relevant to the claims

5       that are before the Court.

6           MR. ZERMAY:  Actually, I do have

7       LEXIS.

8           MR. LAROSIERE:  Oh, yeah, you do.

9           MR. ZERMAY:  Thank you for -- what is

10      the cite again?

11          MS. LEITNER:  I'll just email it to

12      you guys.

13          MR. LAROSIERE:  Yeah, it's okay.  I

14      don't think it matters for right now.  It

15      certainly matters.

16          Okay.  So Request No. 90 is when --

17      so, in response to the earlier requests

18      about employee, you didn't object to that.

19      But then No. 90, suddenly defendant is

20      confused about the term "your employees."

21      And then you assert the control issue.

22          So, do we -- are we withdrawing the

23      objection as to "your employees"?

24          MS. LEITNER:  No.  Because it's

25      unclear as to which employees.  Like we

Page 58

1           mentioned, and as you've already

2           acknowledged, Mr. Wilson has several

3           entities.  And it hasn't been identified in

4           this request for us to produce the

5           documents accordingly.

6                MR. LAROSIERE:  And then the only

7           other issue is the control issue, correct?

8                MS. LEITNER:  So I guess with respect

9           to 90, are you going to -- can we narrow

10           the scope or --

11                MR. LAROSIERE:  The scope is his

12           employees, of which there are single digit,

13           which -- and again, he hasn't expressed

14           confusion about it in any of the other ones

15           where he responds about his employees.

16                MS. LEITNER:  But this one, we are.

17           And we're talking about this specific

18           request.

19                MR. LAROSIERE:  Okay.  So we're saying

20           that "his employees" is not unambiguous

21           because he doesn't have that many.

22                I guess we'd be willing to -- how

23           about this?  If we limited it to employees

24           and contractors of the defendant

25           entities --

Page 59

1              MS. LEITNER:  Of this lawsuit?

2              MR. LAROSIERE:  Of this lawsuit.

3         Would that be acceptable?

4              MS. GYEBI:  Well, contractors would be

5         different.

6              MR. LAROSIERE:  When you look above,

7         we have employees as defined as with

8         contractors.

9              MS. LEITNER:  Did you define it in

10        your request?

11             MR. LAROSIERE:  If we didn't, then

12        we'll have a different conversation.

13             MS. LEITNER:  The only definition I

14        see in your requests is the definition of

15        "works at issue," which, again, expands the

16        copyright registrations --

17             MR. LAROSIERE:  You're right.

18             MS. LEITNER:  -- to include --

19             MR. LAROSIERE:  Yeah.  You're right.

20        You're right.

21             So, yeah.  Let's just -- let's just

22        say "employees" and give that your -- you

23        know, your reasonable interpretation under

24        the rule.  And we'll limit that to the

25        defendant entities.

Page 60

1              Does that work for this one?

2         MS. LEITNER:  And what time and scope?

3         MR. LAROSIERE:  For this one, let's

4    say 2022, January 1, 2022.

5         MS. LEITNER:  Okay.  We can produce

6    that as an amended response to 90, to the

7    extent there are any documents.

8         MR. LAROSIERE:  Of course.  Yeah.  We

9    don't -- you don't have to produce any --

10   it goes without saying that you don't have

11   to produce anything that doesn't exist.

12            Although we would ask, if you could,

13   just to avoid any problems, could you

14   identify who you consider to be the

15   employees?  Just so -- because, again, we

16   have different incompatible requests then

17   at that point.

18         MS. LEITNER:  I mean, we can identify

19   the documents that are responsive to this

20   Request No. 90.  I think it --

21         MS. GYEBI:  Crossing into

22   interrogatories.

23         MR. LAROSIERE:  That's okay.  That's

24   okay.  That's fine.  Forget I said

25   anything.

Page 61

1           So we've agreed to limit that to

2       January 1, 2022, and to employees of

3       defendant entities.  And you'll produce

4       that within a reasonable time.

5           MS. LEITNER:  December 1st.

6           MR. LAROSIERE:  Okay.  You can have a

7       little more if you need it.

8           MS. GYEBI:  Our goal is to get all of

9       it out by December 1st.

10          MS. LEITNER:  We're working on it

11      hard.

12          MR. LAROSIERE:  Thank you.

13          Oh, housekeeping point.  Do you think

14      it might be a good idea for us to ask the

15      Court to continue our -- our report on

16      this?  Because if we're going to get

17      responses on December 1st.

18          MS. GYEBI:  Can we stop recording for

19      a second?

20          (A discussion was held off the

21      record.)

22          MR. LAROSIERE:  So, for 91, we have

23      kind of the same issues as 90.

24          Do you -- would you agree to limit it

25      in the same way, January 1, 2022, and to

Page 62

1          employees of the defendant entities?

2               MS. GYEBI:  Why does plaintiff want

3          information regarding contents of

4          chat.deterrencedispensed.com?

5               MR. LAROSIERE:  This is -- no.  91 is

6          rocket.chat and gitlab accounts -- oh,

7          yeah.  That have been exposed.  Okay.

8               MS. GYEBI:  To the contents of

9          chat.com?

10              MR. LAROSIERE:  Right.

11              So, this is -- -- basically, that chat

12         is, one, it's relevant to the defense of

13         the illegality and it's otherwise -- that's

14         the only thing that makes this different

15         from 90.  Everything else is the same stuff

16         we're seeking in 90, just on a different

17         platform.

18              Does that make sense?

19              MS. GYEBI:  Okay.

20              MR. LAROSIERE:  So would you agree to

21         limit it the same way you did on 90?

22              MS. GYEBI:  No.  Because I'm not

23         agreeing with the relation to the defense

24         of the legality.

25              The request is seeking:  Gitlab

Page 63

```
 1              account usernames owned or used
 2              by yourself or your employees which have
 3              been exposed to the contents of
 4              chat.deterrencedispensed.com.
 5                   So I think I'm not following what this
 6              has to do with illegality.
 7                   MR. LAROSIERE:  The exact same thing
 8              as 90.  I said this adds illegality.  So
 9              you can ignore the illegality question.
10              We're seeking the exact same information we
11              were seeking with respect to 90.
12                   MS. GYEBI:  Okay.  We will limit it to
13              the employees of defendant entities.
14                   MR. LAROSIERE:  And to January 1,
15              2022?
16                   MS. LEITNER:  To the extent they
17              exist.
18                   MR. LAROSIERE:  Yes.  You don't have
19              to say that, just to save time.
20                   Okay.  Nathan Mayer.  It's a little
21              different.  Nathan Mayer is -- this is
22              similar to the earlier ones, like Rajan
23              Basra and et cetera.  Should we assert the
24              same --
25                   MS. GYEBI:  Is Nathan Mayer also an
```

Page 64

1        author?

2               MS. LEITNER:  Kind of journalist.

3               MR. LAROSIERE:  I think so.

4               MS. GYEBI:  Okay.

5               MR. LAROSIERE:  Yeah.  So do you want

6        to treat this the same as the Rajan Basra

7        one?  Because your objections are the same.

8               MS. GYEBI:  Yes.

9               MR. LAROSIERE:  Okay.

10              MS. GYEBI:  And to confirm, plaintiff

11       is unwilling to limit this to the actual

12       copyright as listed in the First Amended

13       Complaint?

14              MR. LAROSIERE:  Correct.  Not as

15       listed in the complaint but as identified.

16       Right?

17              So, then, 93, I think that -- I think

18       we can withdraw this one.  I now see a

19       drafting problem.

20              MS. LEITNER:  93?

21              MR. LAROSIERE:  We're withdrawing 93.

22              94.  No objection.  Control issue.

23       Agreed?

24              MS. LEITNER:  Let's see.  Yes.

25              MR. LAROSIERE:  Okay.  95, same?

Page 65

1          MS. GYEBI:  I do think we have an
2     overbreadth issue for 95.  And, honestly,
3     for 94.  I understand that that wasn't
4     raised as an objection, and I understand
5     plaintiff's position that it not being
6     raised waives it.  But we just note it for
7     the record.
8          MR. LAROSIERE:  That's fine.
9          But do you want to agree, aside from
10     that, it's the same?
11          MS. GYEBI:  Yes.
12          MR. LAROSIERE:  97, the same.
13          MS. GYEBI:  I think we skipped 96.
14          MR. LAROSIERE:  Oh, sorry.  96, the
15     same?
16          MS. GYEBI:  Yes.
17          MR. LAROSIERE:  97, the same?
18          MS. GYEBI:  Yes.
19          MR. LAROSIERE:  And then 98, I think
20     we have to say same because you referred to
21     response -- you referred to 96.
22          MS. GYEBI:  Just for the record -- and
23     again, for 96, 97, and I believe you did
24     98 --
25          MR. LAROSIERE:  We haven't done that.

Page 66

1          I was about to.

2              MS. GYEBI:  Oh, we were about to?

3              Well, when we do 98, just so we don't

4      repeat it, there's a standing objection to

5      all of this being fairly overbroad with

6      plaintiff's noted position that the

7      objection was waived.

8              MR. LAROSIERE:  That's fine.

9              99, same?

10             MS. GYEBI:  Yes.

11             MR. LAROSIERE:  Okay.

12             So 100 is asking for tax returns.

13     Fairly standard question in this type of

14     case.

15             You object that it's not relevant to

16     the claims or defense and that it seeks

17     information that's not -- the tax returns

18     are not in his possession, custody or

19     control and that it's overbroad, burdensome

20     and not within the entire scope and

21     disproportionate and because the burden to

22     search for and gather his tax returns far

23     outweigh the relevance of such information.

24             Are you standing on those objections?

25             MS. LEITNER:  Yes.

Page 67

1            MS. GYEBI:  Yes.

2            MR. LAROSIERE:  And you're not willing

3      to produce -- or you're not willing to

4      narrow this in any way?

5            MS. GYEBI:  Well, it is your request.

6      You would have to narrow it.

7            MR. LAROSIERE:  It's state and income

8      tax -- federal and state income tax records

9      filed by you for the period we contend are

10     relevant to the lawsuit.

11           So I don't really know how we could

12     narrow that.  Because, again, we're trying

13     to figure out where the money from the

14     defendant is going.

15           So I don't -- is there anything you

16     can suggest?  It's okay if no.

17           MS. GYEBI:  Are you seeking the tax

18     returns for the purposes of damages?

19           MR. LAROSIERE:  As well as other

20     terminally admissible things that they may

21     relate to, yes.

22           MS. GYEBI:  Such as?

23           MR. ZERMAY:  Commingling.

24           MR. LAROSIERE:  Commingling.  Yeah.

25     Any other issues that are, again, at --

1           MR. ZERMAY:  Alter ego.

2           MS. GYEBI:  You think his federal and

3      state income tax returns supports the

4      theory of commingling funds?

5           MR. ZERMAY:  They might.  It's

6      reasonably calculated to lead to the

7      discovery of evidence regarding commingling

8      and alter ego.  Because, if all the money

9      is flowing from all the defendant entities

10     into Cody Wilson's pockets, well, then, you

11     know, there's no corporate barrier that

12     it's -- it's just all the money becomes

13     attributable to Mr. Wilson.

14          MR. LAROSIERE:  Or conversely.  If

15     they're not and instead the corporations

16     are being used as piggybanks, that's the

17     more traditional form of alter ego

18     liability, where you're not paying yourself

19     for various reasons.

20          So again, this is -- it's -- for the

21     reasons I've cited, we need the

22     information.

23          MS. GYEBI:  And there's no give on

24     2018 through present, correct?

25          MR. LAROSIERE:  2018 is picked for a

Page 69

1           specific reason, because that's when we

2           have the first evidence of the commingling.

3           And so it's necessary to tie things

4           together.

5                MS. LEITNER:  What is the evidence?

6                MR. LAROSIERE:  It's articulated in

7           the complaint.  And those are the

8           consolidated bank transfers.

9                MS. GYEBI:  We maintain the objection.

10               MS. LEITNER:  So your evidence is the

11          allegations based in the complaint.

12               Is that what you said?

13               MR. LAROSIERE:  I think we're going

14          beyond the scope of discoverable evidence.

15          And just in the interest of time, given we

16          have a hard stop, I don't want to --

17               MS. LEITNER:  I just want to clarify

18          that's what you said.

19               MR. LAROSIERE:  What I said will be

20          clear on the record.

21               101.  This is the same thing.  Do you

22          want to just -- is there anything different

23          about this objection?  Because all we're

24          asking for is other sources of income,

25          including W-2s, 1099s and K-1s.

Page 70

1           MS. GYEBI:  As long as plaintiff is

2       maintaining their position as to request

3       No. 100, it's the same as the position as

4       101.  We are maintaining the objection.

5           MR. LAROSIERE:  Okay.  I'll note

6       that's the same as 100.  Thank you.

7           And then 102.  Again, this is getting

8       at the same stuff.  The -- the account

9       statements, which we would like to line up

10      with this other stuff from the same time

11      periods.

12          Would we agree that this is the same

13      issues that you've raised in 100?

14          MS. GYEBI:  Plaintiff is maintaining

15      the refusal to limit production to any

16      asset or cash statement or account

17      statement that is tied to the copyright

18      works as identified in the complaint?

19          MR. LAROSIERE:  Correct.  We would not

20      put it on defendants to, you know, directly

21      state that these are the proceeds of the

22      infringement.  So I'm going to --

23          MS. GYEBI:  Objection is maintained.

24          MR. LAROSIERE:  Same as 100 is what

25      I'll put?  You think that's fair?

Page 71

1          MS. GYEBI:  Yes.

2          MR. LAROSIERE:  Thank you.

3          103.  Same as 100?  You think that's

4      fair?

5          MS. GYEBI:  Out of curiosity -- and

6      you don't have to answer this -- why does

7      it matter, his firearms?

8          MR. LAROSIERE:  Firearms are often a

9      store of value.  In fact, many people place

10     their liquid assets into firearms for

11     several reasons.  So that would be why.

12         MS. GYEBI:  I just wanted to know.

13         Objection maintained.

14         MS. LEITNER:  All right.  I have no

15     idea.

16         MR. LAROSIERE:  And same as 100.  You

17     agree?

18         MS. GYEBI:  Yes.

19         MR. LAROSIERE:  Okay.  And then 104 is

20     the inverse.  Would you agree that it's

21     sought for the same reasons as 100 as to

22     liability.  So would you agree your

23     objections and positions are the same as

24     100?

25         MS. GYEBI:  Agreed.

Page 72

1              MR. LAROSIERE:  105, same as 100?

2              MS. GYEBI:  Agreed.

3              MR. LAROSIERE:  106, same as 100?

4              MS. GYEBI:  We're going to submit an

5         amended response to cover the defendant

6         corporations.  But, beyond that, no.

7              MR. LAROSIERE:  Okay.  Thank you.

8              107.  Would you agree that's the same

9         as 100?  It's slightly different because

10        this is outgoing money.  But I don't think

11        that really necessitates an entire

12        different discussion.

13             MS. GYEBI:  Same objection.

14             MR. LAROSIERE:  Thank you.

15             108.  We're getting back now to the

16        control issue with no other objections.  Do

17        you agree?  Aside from the overbreadth that

18        you're asserting permeates the entire

19        document.

20             MS. GYEBI:  What's Gataleaks.org?

21        Specifically, how does that relate to your

22        claim?

23             (Reporter clarification.)

24             MR. LAROSIERE:  And that's

25        G-A-T-A-L-E-A-K-S.org.

Page 73

1               That's -- that came up in some

2          information that was turned over in

3          discovery.  It appears to be one of

4          Wilson's companies.  And all -- much of the

5          information he's turning over has a

6          Gataleaks logo on it.

7               And we believe that that has some

8          bearing on his encouraging other

9          individuals to participate in the

10         infringement because he's created a website

11         for which others can upload information for

12         him to then produce in discovery.

13              So, we want to know what is going on

14         with that Gataleaks.org website that he

15         produced materials about.

16              And also, there was no objection

17         asserted.  So I think -- I don't -- you

18         know, I'm happy to just tell you that for

19         your own information.  But I think the only

20         thing you said is it's better directed at

21         the defendant entities.

22              MS. GYEBI:  I'm raising the objection

23         now for proportionality, as discussing that

24         plaintiff has not identified any relation

25         to this lawsuit or raised any concerns

Page 74

```
 1          therein.
 2               MR. LAROSIERE:  You didn't raise that
 3          objection before.  And we've --
 4          understanding that you are raising it now,
 5          we believe it's waived.  We believe we did
 6          articulate its connection.  And in either
 7          event, your position is noted.
 8               110.
 9               MS. GYEBI:  109.
10               MR. LAROSIERE:  109?
11               MS. GYEBI:  We just did 108.
12               MR. LAROSIERE:  Oh, I'm sorry.
13               Would you agree that's the same thing
14          but asking about the records actually
15          stored on Gataleaks, which is his thing?
16          And you don't object.  And so the only
17          issue is the control issue?
18               MS. GYEBI:  Right.  And we're raising
19          a proportionality objection.  Still no
20          relation to any of the claims and defenses
21          in this lawsuit with the notation that
22          plaintiff finds that objection to be
23          waived.
24               MR. LAROSIERE:  110.  So, we're
25          getting back to the journalist concern.
```

Page 75

1              You say that this is better directed
2         to the defendant entities.  You assert
3         that, you know, there's a drafting problem.
4         You assert that this seeks information
5         already in plaintiff's possession or
6         available from public sources.
7              We don't agree that documents and
8         communications that you exchanged with
9         journalists, researchers or similar
10        professionals concerning this lawsuit are
11        in our possession.
12             We think it's proportional because
13        only you have them.  And again, they relate
14        back to the same reasons we were
15        discussing, the communications with
16        specific journalists earlier.
17             This is kind of a catchall to get the
18        actual documents and messages that were
19        sent to them.
20             That said, we're willing to limit this
21        to, again, state -- or we're only asking
22        for the communications and messages
23        exchanged.  Not for you to search for any
24        other, you know, evidence of the
25        communications and messages.

Page 76

1          Is that a sufficient limitation?

2          MS. GYEBI:  No.  Because you still

3     have the relevance issue.

4          MR. LAROSIERE:  Okay.  So we've talked

5     about relevance before.

6          And again, we've articulated the

7     theory of discoverability, right, in our

8     earlier discussion, such as with Rajan

9     Basra, et cetera.  This goes to

10     willfulness.

11          MS. LEITNER:  What is your definition

12     of willfulness?  What authority do you

13     provide with respect to support your

14     definition that expands to request such

15     information?

16          MR. LAROSIERE:  So, again, I don't

17     think we have to provide a terminal theory.

18          We believe that Mr. Wilson

19     communicated with journalists.  And we know

20     that he did because many of them have

21     admitted to it.  And we believe he did so

22     in an attempt to prejudice this matter or

23     otherwise put public pressure on the matter

24     or encourage third-party infringement.

25          Now, that doesn't matter ultimately

Page 77

1          because what we're trying to get at is the

2          truth of -- of the issue of his

3          communications with the journalists.

4               And so, it's calculated to lead to the

5          discovery of terminally admissible

6          evidence.  So...

7               MS. GYEBI:  Objections as stated are

8          maintained.

9               MR. LAROSIERE:  So the 110 is the same

10         thing.  But instead of this lawsuit, it's

11         concerning Matthew Larosiere.

12              Do you have the same response to 111

13         that you do to 110?

14              MS. GYEBI:  Yes.  With the note that

15         the request is not properly limited to the

16         lawsuit and calls for even general

17         discussions regarding Matthew Larosiere.

18              MR. LAROSIERE:  Who is plaintiff.

19              MS. LEITNER:  And is not tied to the

20         copyrighted registrations and such works,

21         as in the amended complaint.

22              MR. LAROSIERE:  Thank you.

23              MS. GYEBI:  I'm sure you exist outside

24         of being a plaintiff in this case.

25              MR. LAROSIERE:  Perhaps.  I appreciate

Page 78

 1              that.  It's good to be recognized.

 2                   MS. GYEBI:  Glad to provide that.

 3                   MR. ZERMAY:  And humanize the other

 4              party.

 5                   MR. LAROSIERE:  So 112 is the same

 6              thing asking for John Elik.  Do we want to

 7              say the same thing that we did for 110?

 8              And all you said for 110 is that your

 9              objections are as stated or maintained.

10                   MS. GYEBI:  With the addition of

11              irrelevance, as John Elik is not a party to

12              this action.

13                   MR. LAROSIERE:  Well, you wrote that.

14                   MS. GYEBI:  I'm just clarifying

15              because of what you just said, that I only

16              stated that the objection is as maintained.

17              So I'm clarifying, with the addition that

18              Mr. Elik is not a party to this action and

19              is, thus, irrelevant.

20                   MR. LAROSIERE:  Almost done.

21                   113.  This is the same thing but

22              concerning copyright.  Do we agree that

23              this -- are you going to stand on your

24              written objections on that?

25                   MS. GYEBI:  Are you willing to limit

Page 79

```
 1              it to the copyrighted works issues as
 2              identified in the First Amended Complaint?
 3                   (Reporter clarification.)
 4                   MR. LAROSIERE:  No.  And this is
 5              because, for example, we know that
 6              Mr. Wilson reached out to several
 7              journalists with a prewritten story that
 8              basically asserted that copyright could not
 9              exist in digital models.
10                   So, we're trying to get at those
11              informations as it relates to his state of
12              mind with the copyright and other issues,
13              including willfulness.
14                   So should we simply notate the same
15              thing that we have for the previous ones
16              concerning communications with journalists,
17              which is that your objections as written
18              are maintained, which you do indicate are
19              regardless of the relevant time period and
20              unrelated to the plaintiff's claims?
21                   MS. GYEBI:  Yes.
22                   MR. LAROSIERE:  Thank you.
23                   Okay.  And then number 114 is easy.
24              You have no objections but the control
25              issue?
```

```
                                                   Page 80
 1              MS. GYEBI:  Well, the request says:
 2         They have discussed the way in which DEFCAD
 3         works with regards to payments in order to
 4         access files, are we talking about files
 5         generally or the copyrighted works at issue
 6         as defined in the complaint or the
 7         copyright works at issue as defined in the
 8         document requests?
 9              MR. LAROSIERE:  So DEFCAD is the one
10         that has the files at issue.  Also, this
11         wasn't raised as an objection.  So that's
12         waived.  Four --
13              MS. GYEBI:  That's a question?
14              MR. LAROSIERE:  As a courtesy, I'm
15         happy to say that with -- payments in order
16         to access files would be the files that are
17         enabled to be accessed through paying
18         DEFCAD.
19              So being that we don't pay for DEFCAD,
20         we don't know all what files DEFCAD makes
21         available upon payment.  So the request as
22         written, which was not objected to, simply
23         says what it says.
24              MS. GYEBI:  Let me repeat my question.
25              When you are saying the way in which
```

Page 81

1              DEFCAD works with regards to payments in

2              order to access files, are we talking about

3              all files accessible on DEFCAD, are we

4              talking about the copyright works as

5              identified in the First Amended Complaint,

6              or are we talking about the copyrighted

7              works as identified in the discovery

8              responses?

9                   MR. LAROSIERE:  We're talking about

10             the files that people can access on DEFCAD

11             through payment.

12                  MS. GYEBI:  All files?

13                  MR. LAROSIERE:  So certainly, there's

14             files that are not paid or, you know,

15             whatever.  So it's the files that are

16             accessed through payment.

17                  MS. GYEBI:  All files accessible or

18             accessed by payment on DEFCAD?

19                  MR. LAROSIERE:  Correct.

20                  Okay.  That's the last of the RFPs for

21             Wilson.  We can move over to DEFCAD's RFPs,

22             of which there's only 20.

23                  MS. GYEBI:  And Julie, this is going

24             to be a different set.  And I'll email you

25             those.  So we're done with that first set

Page 82

1            that I sent you earlier today.

2                  (Reporter clarification.)

3                  MS. GYEBI:  Can we take five minutes?

4                  MR. LAROSIERE:  Sure.

5                  (A brief recess was taken from

6            12:13 p.m. to 12:20 p.m.)

7                  MR. LAROSIERE:  So now we're turning

8            to DEFCAD, Inc., response to plaintiff's

9            request for production.

10                  Let's look at Request No. 1.  And,

11            again, we're trying to get to the bottom of

12            the -- of this real estate.  So this covers

13            a couple of addresses that DEFCAD has used

14            in its business capacity that are also

15            linked to Mr. Wilson.

16                  And so, we want to know the sales and

17            lease records as it relates to these things

18            and the, of course, registered addresses

19            that the company uses.

20                  And in response, a litany of

21            objections.  And you suggest that you're

22            willing to meet and confer for a narrower

23            request.

24                  And so I guess what can we do here

25            to -- to narrow?  I think it's -- I guess

Page 83

```
 1              instead of all real estate history, just
 2              records of sales and leases for DEFCAD
 3              involving these addresses?
 4                   MS. GYEBI:  Just for clarification, if
 5              it's plaintiff's position that a request
 6              directed to Mr. Wilson necessarily requires
 7              him to look through the documents for any
 8              business control, and it's also plaintiff's
 9              position that he controls DEFCAD, Inc., why
10              is it that we have a request for Mr. Wilson
11              for this information and to DEFCAD?
12                   MR. ZERMAY:  Well, I mean, it's --
13              it -- again, getting back to my subpoena
14              defense thing, right, that if there's a
15              corporate veil and they are separate --
16              legal separate entities instead of just,
17              you know, alter egos of one another,
18              purportedly they might have different
19              responses.
20                   I mean, it's -- there is a legal
21              thinking that this defendant entity is a
22              different being.  And so, you know, again
23              getting back to the example of my subpoena
24              defense for, you know, they requested
25              documents from the defendant involving my
```

Page 84

1          client.

2                  And, you know, my client's position

3          is, well, why on earth am I being

4          subpoenaed?  Didn't they just ask the other

5          side for these same documents?  Don't they

6          have them?

7                  Well, it's because the -- in the event

8          that the original party that received the

9          discovery requests, that is a litigant in

10         the underlying litigation, may have omitted

11         something for one reason or the other,

12         whether it be a flub with ESI or a failure

13         to preserve or whatever.

14                 It's an opportunity for the subpoenaed

15         person or the other party receiving

16         discovery responses to have access to,

17         possession, custody and control of those

18         documents.

19                 And so, I guess, with respect to the

20         -- our argument, you know, with Mr. Wilson

21         having control of this entity, okay, fine.

22         That's our position, right, is that, okay,

23         he has control of those entities, so

24         therefore Mr. Wilson should produce it in

25         his individual capacity.

Page 85

1          But in the event that he doesn't

2      control it -- which, again, we don't

3      concede -- in the alternative, this entity

4      has control of it and needs to produce

5      what's in its possession, custody or

6      control such that the discovery request is

7      proper as to Mr. Wilson and this entity.

8          MS. GYEBI:  Okay.  I'm not sure that I

9      follow that logic, but at least we have

10     a --

11         MR. ZERMAY:  It's the belt and

12     suspenders thing, right, where if we're

13     right and Mr. Wilson controls this entity,

14     you know, then, wonderful.  We have the

15     documents.  And if everything is being

16     produced by Mr. Wilson, then wonderful.

17     Everything is being produced by Mr. Wilson.

18         The other controlling entity, well,

19     then we need to get the documents from that

20     other entity.

21         MR. LAROSIERE:  And of course, if that

22     had happened -- it didn't -- we were

23     produced nothing from both.  But if, for

24     example, Mr. Wilson had produced everything

25     that would have been responsive, DEFCAD

Page 86

```
1          could have said plaintiff's already in
2          possession of this.  And that would have
3          been a totally sufficient response because
4          it would have been disproportionate.
5              But that's not where we are right now.
6          We're at receiving nothing.
7              MS. GYEBI:  I disagree.  This whole
8          time, we've repeatedly stated that we will
9          issue an amended response and produce
10         documents subject to the objections.
11             The issue that we're having is that
12         that is not enough for plaintiffs.
13             MR. ZERMAY:  Oh.  I was just
14         responding to the question about why we're
15         asking this question of both Mr. Wilson and
16         the entity.
17             MS. GYEBI:  No.  Zach -- can I call
18         you Zach?
19             MR. ZERMAY:  Yeah.  Anything with a Z.
20             MS. GYEBI:  Okay.  I understand your
21         explanation.  It was more to Matt's point.
22         But we don't have to harp on that.  I just
23         noted my misunderstanding or -- or
24         continuous misunderstanding of how
25         plaintiff is maintaining both that
```

Page 87

1          defendants' responses to Wilson are

2          deficient because they did not search

3          through all entities, which plaintiff

4          contends to control -- that Wilson controls

5          and gets is now asking for this

6          information -- the same information which

7          they would deem necessarily needs to be

8          produced by Wilson from specifically one of

9          these entities.

10              But I think -- I think your

11         explanation --

12              MR. ZERMAY:  Yeah.

13              MS. GYEBI:  It clearly states

14         plaintiff's position on that one.

15              For this, I think we're still running

16         into the issue of the January 1st, 2018,

17         date.  We're also still having the

18         proportionality issue where these addresses

19         and the general request for assets

20         specifically at these addresses are

21         untethered and untied to any of the

22         copyright works at issue.

23              So the objection is maintained unless

24         plaintiff would like to narrow or provide

25         further explanation.

```
                                            Page 88

 1              MR. LAROSIERE:  Before, we were

 2         calling the --

 3              MS. GYEBI:  TFI.

 4              MR. LAROSIERE:  Thank you.

 5              That, and also, I just note the

 6         request specifically says for DEFCAD.  So

 7         this is a different request than that one

 8         for Wilson.  Of course, that doesn't get

 9         around your -- the other issues you raised,

10         right, the proportionality and the time

11         frame.

12              And again, this January 1, 2018, as we

13         discussed with all of the other requests

14         about these assets, there's a reason for

15         it.  And I feel we've sufficiently

16         articulated that.

17              I'm not saying that you agree with our

18         position, but I feel you understand that

19         position.  Correct?

20              MS. GYEBI:  Correct.

21              MR. LAROSIERE:  And so you said you

22         would produce documents.  Let me just be

23         clear.  There's -- there's been a few times

24         that we've agreed and we've noted here that

25         you will be producing documents.  But
```

Page 89

1          there's very few times in the actual

2          response that you indicate you will be

3          producing documents.

4               MS. GYEBI:  We will submit an amended

5          response in accordance with the rules with

6          the document production, which will all

7          occur on December 1st, 2025.

8               MR. LAROSIERE:  Okay.  For everything?

9               MS. GYEBI:  The amended response.

10              MR. LAROSIERE:  Yeah.  The amended

11         response.  Okay.  I understand what you're

12         saying.

13              So, we don't know -- the amended

14         response, I guess, doesn't immediately

15         solve the issues because we aren't sure

16         which responses are going to then have

17         responsive information.

18              MS. GYEBI:  The amended responses

19         won't resolve the issue because plaintiff

20         is not -- I don't want to say "not

21         budging."

22              But the issue is that we will produce,

23         subject to our objections.  And we -- as

24         the parties are having a fundamental

25         disagreement as to key parts that will

Page 90

1         control the production, namely the time

2         frame, and the scope in which -- whether

3         this has to encompass all of Wilson's

4         businesses versus, you know, Wilson himself

5         as an individual party and the defendant

6         entities.

7              MR. LAROSIERE:  And then also

8         proportionality?

9              MS. GYEBI:  And then also

10        proportionality.

11             So we're at an -- it's going to

12        control the production in terms of like

13        what we're going to produce.  But we are

14        going to produce subject to our objection.

15             MR. LAROSIERE:  Okay.  Number 2.  This

16        is the same thing for the cryptocurrency

17        that was deposited specifically into

18        DEFCAD's accounts.

19             This is a narrower time frame.  Again,

20        the 2018 to do with real estate is

21        identified for a reason.  The 2021 with

22        regard to the bitcoin is identified for a

23        reason.

24             Do you think we have the same issue as

25        1, globally that being time frame,

Page 91

```
 1              proportionality and -- what was the other
 2              one you raised?  I think -- I think time
 3              frame and proportionality covers it.  I
 4              think there was two subsets of the
 5              proportionality really -- oh, control.
 6              Yeah.  Which is the number of entities.
 7                   MS. GYEBI:  Yes.
 8                   MR. LAROSIERE:  And that's not an
 9              issue for 1.  It's an issue for 2 because 1
10              is for DEFCAD.  Or -- no.  So control is
11              not an issue with these because it's just
12              DEFCAD.  So it's just time frame and
13              proportionality, right?
14                   MS. GYEBI:  Control -- control in the
15              sense of that we are only searching for
16              DEFCAD is not as issue.
17                   MR. LAROSIERE:  Right.  Because we're
18              only asking for DEFCAD?
19                   MS. GYEBI:  Correct.
20                   MR. LAROSIERE:  Okay.  Would we say
21              the same thing with request to No. 3?  This
22              is requesting a snapshot of assets?
23                   MS. GYEBI:  Same thing, with the note
24              that and was discussed before.  But we just
25              want it specifically noted that we are in
```

Page 92

1          disagreement that the -- that we are

2          required to produce essentially a snapshot

3          of all assets within a company that are

4          unrelated or untied to any of the copyright

5          works that have no relation to them

6          whatsoever.

7               MR. LAROSIERE:  Okay.  And I think

8          that's baked into the proportionality

9          argument.

10              Okay.  And so then 4, we have similar

11         objections that you raise.  But it only

12         asks for records and reports for the past

13         12 months concerning payments for computer

14         infrastructure related to DEFCAD.

15              So the reason we bring that up, is

16         because defendants have asserted that

17         plaintiffs somehow caused massive data

18         issues.  This is asserted in the answer.

19              And then, of course, the counterclaims

20         are dropped.  However, the affirmative

21         defense of illegality and then some other

22         ones.  I think like -- basically, this is

23         designed to find out whether it's true that

24         plaintiff actually caused data load and

25         issues with the DEFCAD website.

Page 93

1              So it's only asking for documents for

2        the past 12 months for things that DEFCAD

3        has paid for with regard to computer

4        infrastructure.

5              MS. GYEBI:  Okay.  Based on what

6        you're explaining the relevance or is --

7        this request doesn't even relate to that.

8        It's asking for payments related for

9        computer infrastructure.  And you're

10       alleging that it's related to a defense

11       regarding plaintiff materially interfering

12       with the upload of documents onto DEFCAD?

13             MR. LAROSIERE:  So -- and again, we're

14       confusing the request with a terminal

15       issue.  I'm identifying as a courtesy what

16       the terminal issue is so you can understand

17       what the theory of discoverability is.

18             We're asking for payments that DEFCAD

19       made for computer infrastructure within the

20       last 12 months.  So I don't think that's

21       vague, ambiguous or unintelligible.

22       There's certainly not a time frame issue.

23       At least with respect to time frame, can we

24       agree?

25             MS. GYEBI:  Twelve months is way too

Page 94

1          overbroad.  But I guess the larger issue is
2          that plaintiff -- it's our position that
3          plaintiff has, to date, still not
4          communicated the relevance of this request.
5          And yes.  It is unproportional.
6               All objections are maintained.
7               MR. LAROSIERE:  Okay.  And I'm going
8          to -- just as a shorthand, I'm just going
9          to write OAW for "object as written," just
10         in case you see that in a later...
11              Five is, we're asking for the -- this
12         is, again, getting at the computer
13         infrastructure information.  And so these
14         are infrastructures where we're trying to
15         know where the works were stored and as
16         well as other things that are -- that may
17         ultimately relate to terminal issues of
18         material fact.
19              You call this disproportionate.  I
20         guess if we narrowed -- instead of
21         documents, communications, records, reports
22         and messages to the actual documents to and
23         from these entities, with DEFCAD, because
24         that's -- that's what we're asking for
25         here, all communications, documents,

Page 95

1          records, reports and messages.

2              If that's a little too broad, the

3          actual messages and documents that are

4          exchanged with these entities, would that

5          solve the problem?

6              MS. GYEBI:  I'm sorry.

7              MR. LAROSIERE:  Oh, never mind.

8              You say -- you said it's just not --

9          you said you don't have anything in its

10          possession, custody and control.

11              (Reporter clarification.)

12              MR. LAROSIERE:  So I'm going to put

13          for 5, not at issue.

14              Six is not at issue.

15              MS. GYEBI:  Are you withdrawing it?

16              MR. LAROSIERE:  No.  You responded

17          saying it's not in your possession, custody

18          and control.

19              MS. GYEBI:  That's the second thing.

20              MR. LAROSIERE:  See.  That's what

21          happened to me before.

22              Seven is asking for the federal and

23          state income tax returns filed by DEFCAD.

24          We're asking for the complete returns from

25          2019 through present, which reflects the

Page 96

1              time the organization has been in
2              operation.
3                   I think it's very clear that, you
4              know, this is about commingling, asset
5              hiding, et cetera, which are all pled.
6                   Your position is that you're willing
7              to meet and confer for a narrower request.
8                   We need the information from the tax
9              returns.  And that's the amount of time
10             that DEFCAD has been around.  So, I -- I
11             don't know how we could narrow that.
12                  MS. GYEBI:  And to confirm, plaintiff
13             is seeking this information for the
14             purposes of damages and commingling?
15                  MR. LAROSIERE:  We're seeking the
16             information looking for ultimately
17             terminally admissible evidence.
18                  MS. LEITNER:  Yeah.  But how does it
19             relate to the complaint?
20                  MR. LAROSIERE:  Sure.  The complaint
21             alleges alter ego liability.  It alleges
22             that assets were diverted through other
23             companies.  Additionally, DEFCAD is a named
24             defendant, which is alleged to be making
25             money from the infringement.  So we should

Page 97

1          be able to see where that money is going

2          and -- and what the totals are.

3               MS. LEITNER:  So it would be damages

4          with respect to the copyright claim but not

5          commingling because that is not -- it's not

6          at issue.  It's not a liability as to

7          whether he's commingling.

8               So I guess -- I guess we're just

9          trying to confirm that this is with respect

10         to damages and the date in which you want

11         to do that.  Because I think that date --

12         the time frame is overbroad in the sense

13         that -- for the reasons we explained

14         earlier, that the creation and publication

15         dates that are identified in the copyright

16         registrations indicate it's 2022 to the

17         present.  So therefore, anyone beyond that

18         that didn't exist shouldn't be relevant in

19         this case.

20              MR. ZERMAY:  Well, it's not just about

21         the damages.  It's intertwined with the

22         alter ego allegations and commingling.  So

23         it's not necessarily about damages.

24              So, in the sense that, for example,

25         was like shifting money to Mr. Wilson or

Page 98

1          perhaps even Mr. Wilson's sister or family
2          members or not sending it out at all, you
3          know, that's relevant to us in prosecuting
4          our claim and proving them up in court
5          before a trier of fact or, conversely, you
6          know, sort of torpedoing our claims that
7          there was commingling at all.
8               The entity is like, well, no.  We
9          issued dually noted shareholder dividends
10         every time and there was properly reported
11         receipts for reimbursements of stuff.  It's
12         like, oh, well, Mr. Wilson wasn't just
13         using the company credit card or something
14         like that to, you know, pay for his
15         groceries at Sam's club or Costco.
16              He was using it for specifically
17         delineated authorized travel as okayed by a
18         supervisor or a board of directors, then,
19         you know that would say, oh, wow, this
20         isn't commingling at all.  This is a big
21         corporation that maintained the
22         satisfaction and stock exchange in NVIDIA,
23         for example.  Or I don't want to use Tesla
24         because that's probably a bad example.
25         Perhaps Coca-Cola.

Page 99

1           But in any event, that's the
2     explanation there regarding why we think
3     that this is reasonably calculated to lead
4     to discoverable evidence.  And again, if
5     everything is up to snuff and the books are
6     good, then, you know, again, that sort of
7     cuts against our claim.
8           But if the money is being funneled to
9     assets or entities and closely related
10     persons to Mr. Wilson, then that supports
11     our theory.
12           MS. LEITNER:  I understand how it
13     relates as far as damages.  But as far as
14     your liability claim for alter ego, which
15     count are you associating this for?
16           MR. LAROSIERE:  You're making -- this
17     is admissibility questions you're asking.
18     This is discoverability is the stage we're
19     at.
20           And we're running short on time.  We
21     have -- I think we can get through this if
22     we don't have protracted arguments about
23     terminal admissibility.  This is
24     discoverability.  Very different standard.
25           MS. LEITNER:  No.

Page 100

1           MR. LAROSIERE:  The word "relevance"

2       should not be used here.  Okay?  As Judge

3       Hoffman twice indicated in her order that

4       we talked about yesterday.

5           MS. LEITNER:  No.  It does absolutely

6       relate here because of the case law that we

7       reference with respect to that discovery is

8       not -- it's broad in the sense of you can

9       ask for certain items and information

10      that's tangentially related to the claims

11      and defenses here.

12          But we're trying to understand how

13      your claims and your alter ego theory

14      relates to either count here.

15          And the case law does support that the

16      discovery should be confined within the

17      pleadings.  It states the pleadings.  It

18      does not say discovery.  And that's our

19      position.

20          MR. LAROSIERE:  Terminal liability.

21          MS. LEITNER:  It's beyond 26(b)(1).

22      And that's what our issues are.  And I'm

23      just trying to clarify that.

24          MR. LAROSIERE:  The question is as to

25      terminal liability.

Page 101

1           MS. LEITNER:  Which count, though?

2       You have three counts.  There's not a bunch

3       of counts.

4           MR. LAROSIERE:  When there's alter

5       ego.  So if we've proven alter ego, then

6       he's liable for the counts alleged in the

7       corporation, Mr. Wilson is.  Okay?

8           MS. LEITNER:  Is it a copyright

9       infringement, is it unfair competition or

10      is it name and likeness?  Which claim are

11      you associating the alter ego theory?

12          MR. ZERMAY:  It would be all of them.

13      I mean, it's the -- the alter ego

14      allegations aren't necessarily intertwined

15      in each and every temporally -- or each and

16      every count in the complaint.

17          I mean, if what we're alleging is

18      Mr. Wilson -- if these entities are liable

19      and if they're copyright and all the other

20      ones alleged, then necessarily Mr. Wilson

21      is liable for those corporate actions, and

22      he can't hide behind the corporate shell.

23          MS. LEITNER:  Okay.  That was all I

24      was trying to clarify.

25          MR. LAROSIERE:  Should we write OAW

Page 102

1           for this, that you're standing on exactly

2           what was written and you're not --

3               MS. LEITNER:  What does "OAW" stand

4           for?  I don't --

5               MR. LAROSIERE:  Object as written.

6               MS. LEITNER:  I don't know your

7           acronyms.

8               Okay.  Yeah.  Yes, please.

9               MR. LAROSIERE:  So I think 8 asks for

10          the same thing.  Should we repeat the

11          discussion or should we come to the same

12          conclusion, that we're at an impasse and

13          that you object as written?

14              MS. LEITNER:  Let me look at 8.

15              MR. LAROSIERE:  Financial statements.

16              MS. LEITNER:  Unless you're saying

17          statements.  The requests are the exact

18          same.  Okay...

19              MR. LAROSIERE:  No.

20              MS. GYEBI:  And to be clear, the

21          plaintiff is unwilling to narrow this at

22          all.  I mean, we're looking at annual,

23          quarterly, monthly financial statements for

24          DEFCAD from January 1st, 2019, including

25          but not limited to balance sheets, income

Page 103

1          sheets, profit and loss statements and cash

2          flow statements.

3               MR. LAROSIERE:  That's standard

4          account documents.

5               MS. GYEBI:  And plaintiff believes it

6          is entitled to it all?

7               MS. LEITNER:  Well, you said it's a

8          standard interrogatory?

9               MR. LAROSIERE:  Standard documents.

10              MS. LEITNER:  Okay.  Sorry.

11              MR. ZERMAY:  Standard account

12         documents.

13              MS. GYEBI:  I'm just looking to

14         confirm.  Not willing to limit this request

15         whatsoever?

16              MR. LAROSIERE:  The request is

17         sufficiently limited.  And again, it's --

18         maybe he doesn't produce quarterly

19         statements.  Maybe he's only yearly.  Maybe

20         he's only monthly.

21              MS. GYEBI:  The objection is

22         maintained.

23              MR. LAROSIERE:  Thank you.  Number 9

24         is the same thing for general ledgers,

25         trial balances and charts of accounts.

```
                                            Page 104

 1              MS. GYEBI:  Objection is maintained.

 2              MR. LAROSIERE:  No. 9 is the same

 3         thing for deposit slips, transfers,

 4         canceled checks.

 5              MS. GYEBI:  The objection is

 6         maintained.

 7              MR. LAROSIERE:  Number 11 is the same

 8         thing, but we're asking for a -- just more

 9         of a generalized snapshot here.  It's kind

10         of a catchall for the previous ones.

11              MS. GYEBI:  Objection is maintained.

12              MR. LAROSIERE:  Thank you.

13              Number 12.  Again, we're going in

14         reverse now to the liability side, that

15         being credit liability and not legal

16         liability.

17              MS. GYEBI:  Objection maintained.

18              MR. LAROSIERE:  Number 13 is similar

19         but to, you know, investors.

20              MS. GYEBI:  How is plaintiff defining

21         to related parties?

22              MR. LAROSIERE:  Related parties is

23         vague.  We'd invite you to ignore that if

24         that would allow you to respond.

25              MS. GYEBI:  There's also no time frame
```

Page 105

1              in here.

2                   MR. LAROSIERE:  Well, DEFCAD has only

3              existed since 2019.

4                   MS. GYEBI:  Is that why you're looking

5              for documents since 2019?

6                   MR. LAROSIERE:  Yes.

7                   MS. GYEBI:  Objection is maintain.

8                   MR. ZERMAY:  Well --

9                   MR. LAROSIERE:  Sorry.

10                  MR. ZERMAY:  Yeah.  Just -- so if

11             you're objecting to the time frame being

12             2019 from since it was incorporated, are

13             you producing documents subject to the

14             objection and to a different time frame?

15                  MS. GYEBI:  No.  For this specific

16             set, I have yet to see a request that would

17             require production.

18                  MR. LAROSIERE:  Okay.

19                  MR. ZERMAY:  So, you mean like just me

20             producing something from like -- I believe

21             the dates you're using was 2022.  You

22             wouldn't be just doing that to see if that

23             would set -- you know, producing that stuff

24             to where we only put an issue to the Court

25             from 2018 to 2021?

Page 106

1              MS. GYEBI:  I'm sorry.  I think I'm

2         losing your question.

3              MR. ZERMAY:  Yeah.  I'm saying

4         because, again, the number you guys were

5         throwing around was -- date was 2022.

6              So I'm wondering if you think the time

7         frame is too broad as to 2018, which is

8         what we are asking for, whether or not you

9         would be producing the documents from 2022

10        onward to narrow the issue for the Court to

11        determine whether or not 2018 to 2021 is

12        fine or if you're just saying you get

13        nothing.

14             MS. GYEBI:  Understood.

15             For this set, we have a larger issue.

16        And that plaintiff is truly going on a

17        fishing expedition and asking for well over

18        what they're entitled to.

19             So we will not endeavor to do 2022 and

20        forward until and unless plaintiff elects

21        to limit their production to what is

22        actually relevant to this case.

23             MR. ZERMAY:  Okay.  Your position

24        noted.

25             MS. GYEBI:  Okay.  We can continue.  I

Page 107

1          think we're on 14.

2               MR. LAROSIERE:  14.  You put objection

3          as written.

4               MS. GYEBI:  Okay.

5               MR. LAROSIERE:  15.  Same thing.

6          These are all -- we're asking for different

7          versions of financial documents in each one

8          of these.  So I think it would be expedient

9          if we -- and I think we pretty globally

10         covered that in our discussion.

11              So, for 15, I'd say that's the same

12         discussion.  Would you agree?

13              MS. GYEBI:  Agreed.

14              MR. LAROSIERE:  For 16, I would say

15         that's the same discussion.  Would you

16         agree?

17              MS. GYEBI:  Agreed.

18              MR. LAROSIERE:  For 17, I'd say --

19         well, the similar discussion.  And you

20         agreed to -- to this one, you agreed to

21         subject -- to do it on a rolling basis, and

22         you're only going to search from 2023 to

23         the present.

24              So here, you're only objecting --

25         well, you're raising all of your

Page 108

1          objections.  But what we're talking about

2          here is the transfer of funds between

3          related entities, affiliates or insiders.

4              And related entities to DEFCAD, I

5          think is pretty obvious.  It's the other

6          members of Wilson's web that it regularly

7          trades assets with.

8              And you're agreeing to produce

9          documents.  So I guess, can -- can we fix

10         the time frame issue on this?  Or, do you

11         think we're at an impasse with respect,

12         just like we were with the other issues?

13             MS. LEITNER:  I don't understand

14         why -- well, I guess -- can you explain the

15         basis as your January 1st, 2019, for the

16         these requests?

17             MR. LAROSIERE:  Sure.  That's when

18         DEFCAD started to exist.

19             MS. LEITNER:  Okay.  So it's based on

20         existence of an entity, not related to or

21         attenuating to the copyright registrations?

22             MR. LAROSIERE:  The entity is sued for

23         infringing the copyrights.

24             MS. LEITNER:  The copyright

25         registrations.  And the creation of the

1           subject works were created in 2022.  So

2           they didn't exist before 2022.

3                So I'm not understanding the relevance

4           between 2022 and prior to that.

5                MR. LAROSIERE:  And this is baked into

6           your time frame objection that, you know,

7           you've raised many times.

8                MS. LEITNER:  Correct.

9                MR. LAROSIERE:  So I don't think we

10          need to relitigate that together.

11               MS. LEITNER:  We're not relitigating.

12          We're just explaining our objections as to

13          -- for specificity as to each request based

14          on rules.

15               MR. ZERMAY:  Yeah.  I was just leading

16          off that.

17               And repeating my previous question.

18          Would you guys be producing documents

19          subject to that time objection?

20               MR. LAROSIERE:  They agreed to,

21          subject to objection, from 2023 to present.

22               MR. ZERMAY:  Oh.

23               MR. LAROSIERE:  Which we don't think

24          is enough.  So I'm just going to write

25          "OAW," including the fact that you have

```
                                          Page 110

 1          agreed to produce some documents.  Okay?
 2               MS. GYEBI:  Could we get clarification
 3          on what insider means on 17?
 4               MR. LAROSIERE:  One moment.
 5               Well, you don't raise that as an
 6          objection.  And I think just in
 7          the interest of time, we say that's waived.
 8          And --
 9               MS. GYEBI:  I'm not objecting to it.
10          I'm asking for clarification.  What does
11          insider mean?
12               MS. LEITNER:  Yeah.  This is our meet
13          and confer with respect to substantive
14          responses?
15               MR. LAROSIERE:  Right.
16               So insiders would be individuals
17          who -- there's a term in securities
18          context, right?
19               MR. ZERMAY:  Yeah.  I think so.  It's
20          like controlling shareholders is closely
21          related.  Yeah.  It's family members.
22               MS. GYEBI:  Just email me whatever
23          definition you want insider to mean.
24               MS. LEITNER:  Yes.  For the record,
25          you're giving us --
```

Page 111

1           MR. LAROSIERE:  Yeah.  We'll be happy

2      to email you.

3           MS. LEITNER:  You're giving us the

4      burden to guess what it means.

5           MR. LAROSIERE:  Yeah.  We'll be happy

6      to email you.  Of course.

7           Just take a note of that, please.  We

8      want to make sure we do everything we say

9      we're going to do.

10          MR. ZERMAY:  Please email defendant.

11          MR. LAROSIERE:  Okay.  18.  Insurance

12     policies maintained by DEFCAD that provide

13     coverage for liability, property or

14     business interruption since January 1st,

15     2019.

16          And you object that the term

17     "insurance policy" is unintelligible.

18          MS. LEITNER:  Yes.  It means various

19     items.  It could be the general.  It could

20     be so many different types of insurance

21     policies that you're referring to.

22          MR. LAROSIERE:  That covers liability,

23     property or business interruption?

24          MS. LEITNER:  Yeah.

25          MR. LAROSIERE:  Okay.  So I see that

Page 112

```
 1          you are agreeing to produce some documents
 2          from 2023 to the present.  And otherwise,
 3          you're objecting as written?
 4               MS. GYEBI:  This might not have the
 5          liability insurance policy under 1 under
 6          the initial disclosures.  Was an insurance
 7          liability policy not produced with the
 8          initial disclosures?
 9               MR. LAROSIERE:  Your law partner is
10          shaking her head at you.
11               MS. GYEBI:  Okay.  I'm asking if you
12          all have it.
13               MS. LEITNER:  Do you have it?  You
14          must've received it from --
15               MR. LAROSIERE:  Not in front of me
16          right now.
17               MS. LEITNER:  You may have received it
18          from. --
19               MR. LAROSIERE:  And I don't think so.
20               19 is communications with lenders,
21          investors or creditors concerning DEFCAD'S
22          financial condition, solvency or ability to
23          pay debt since 2019.
24               This is the -- I think we've got the
25          same here.  And, you know, you're producing
```

Page 113

1          from 2023 to present.  Of course we think

2          that 2023 is odd, given some of the works

3          were infringed before that and certainly

4          authored before that.

5               Are you willing to at least move this

6          forward to --

7               MS. LEITNER:  Which works are you

8          referring to that were -- existed and/or

9          authored before that so we have an idea?

10              MR. LAROSIERE:  Well, I don't think

11         that matters in terms of admissibility.

12              MS. LEITNER:  Yes, it does.

13              MR. LAROSIERE:  We have two hours

14         left.

15              MS. LEITNER:  It's based on relevancy.

16         We're trying to understand where you're

17         coming from.  Because again, we said your

18         requests are very vague.  We're trying to

19         produce and comply, but we can't comply

20         unless you provide more information.

21              MR. LAROSIERE:  I don't think -- I

22         don't agree with your characterization.

23              We're talking about a time frame.  You

24         previously mentioned 2022.  Are you willing

25         to at least open up your rolling production

Page 114

1              from 2022 to the present, or are you going

2              to stick to 2023 to the present?

3                   MS. LEITNER:  We can do 2022 to the

4              present.

5                   MR. LAROSIERE:  Okay.  Will you be

6              willing to do that for 17 and 18.

7                   MS. LEITNER:  Yes.

8                   MR. LAROSIERE:  Okay.  Thank you.

9                   MS. LEITNER:  We'll amend that.

10                  MR. LAROSIERE:  Yeah.  See, we're

11             making some progress.

12                  20.  Same thing, exact same thing as

13             19.  Obviously, we're asking for a

14             different class of information.  Do we want

15             to say the same thing, object as written

16             and you'll amend for 2022?  Because you

17             have substantively the same response.

18                  MS. LEITNER:  What is Xero?

19                  MR. LAROSIERE:  It's a type of

20             accounting software.  And if they don't use

21             it, then they don't need to produce it.

22                  MS. GYEBI:  And just to be clear,

23             plaintiff is seeking the entirety of the

24             system?  Like you want all files within the

25             system downloaded and produced?

Page 115

```
 1            MR. LAROSIERE:  You don't -- you
 2       didn't object to that component of it.  You
 3       said that account software is
 4       unintelligible.  So I think you've waived
 5       that objection.
 6            But to clarify --
 7            MS. LEITNER:  I don't think so because
 8       that's what we're clarifying with respect
 9       to files.
10            MR. LAROSIERE:  To clarify, you didn't
11       object to files.  You objected to
12       accounting software.
13            MS. LEITNER:  Accounting software
14       files.
15            MR. LAROSIERE:  No.  You said you
16       object to the extent that accounting
17       software -- so "accounting software" --
18            MS. LEITNER:  Right.  What does that
19       mean?
20            MR. LAROSIERE:  -- is undefined.
21            I trust your ability to, in good
22       faith, interpret the term "accounting
23       software."
24            As for files, we'll communicate to you
25       in good faith.  We don't want little
```

Page 116

1           scraps.  Right?  We want the actual -- the
2           actual documents which produce -- you know,
3           which relate to financial status of the
4           entity.  So not like the -- the install of
5           the software.
6                Do you understand what I'm saying?
7                MS. LEITNER:  No.
8                MR. LAROSIERE:  No?
9                MS. LEITNER:  Are you relating this to
10          damages or what --
11               MR. LAROSIERE:  I'm going to decline
12          to answer the relation to damage because
13          that is not material at all to the status
14          of discoverable information.
15               And again, understanding you didn't
16          object to files.  But I understand that
17          that may be problematic.  So we're willing
18          to say -- and given you've already agreed
19          to produce something here, it -- the only
20          thing really for us to discuss is whether
21          you'll extend it to 2022.
22               MS. LEITNER:  Absent the protective
23          order...
24               MR. LAROSIERE:  Just like with the
25          others.

Page 117

1              MS. GYEBI:  Okay.  And I'm not

2       necessarily stating this as an objection.

3              But the realities of the situation is,

4       is that we're going to have to get the

5       production.

6              So what I'm asking, does plaintiff

7       want all the files from these places simply

8       downloaded and produced?  I'm asking as

9       like -- like a -- I'm trying to see what

10      exactly it is that you want.  Because --

11             MS. LEITNER:  It's confusing.

12             MS. GYEBI:  -- my understanding now is

13      that you believe that you want files

14      reflecting the finances of the company?

15             MR. ZERMAY:  Yeah.  So it's like the

16      final generated reports that we're looking

17      for.  That's effectively what we're looking

18      for with the -- what's the exact phrase --

19      the accounting software files.

20             It's -- I know that could -- anyway.

21      That's essentially what we're looking for,

22      is the final --

23             MR. LAROSIERE:  So basically --

24             MS. LEITNER:  Oh, final.

25             MR. LAROSIERE:  Just so we don't

Page 118

1          quibble on the native or electronic format.

2          Most of these accounting software have an

3          option to generate the history and export

4          it as a CSV or a PDF.  Pick whichever you

5          want.  You don't have to do both.  Just

6          generate it and put it out.  That's it.

7               MS. GYEBI:  Okay.  So there was not an

8          agreement to produce documents.  We're

9          going to stand by that agreement.  We're

10         not stating that -- I'm just -- I think I'm

11         more so focused on the mechanics of how

12         that is supposed to be done.  And I'm not

13         sure because I do not work with computers

14         in that depthly.

15              So if we could just circle back on

16         Request No. 20.  I'll have an answer for

17         you today.  I'm just trying to figure out

18         whether or not --

19              MR. LAROSIERE:  No problem.

20              MS. LEITNER:  And I don't even know --

21         because a lot of this is when this

22         third-party accountant.  So --

23              MR. LAROSIERE:  Well, hey, if they

24         don't maintain an accounting software,

25         that's an answer.  Okay?

Page 119

1           MS. LEITNER:  Yeah.

2           MR. LAROSIERE:  So if they use a

3      third-party accountant and they don't have

4      an in-house accounting software -- I'd be

5      surprised.  But if that's the case, there's

6      your answer.

7           MS. GYEBI:  Okay.  I think we're done

8      with 20.  I'll have a definite answer to

9      you by the end of today.

10          MR. LAROSIERE:  I sincerely appreciate

11     it.

12          So with that, we're done with DEFCAD's

13     response to production.

14          We'll move on to Defense Distributed's

15     response to request for productions, of

16     which there are 20 -- or no -- only 17.

17          Now, these are going to be almost word

18     for word the same questions.  The only

19     things that are different is we don't ask

20     about -- yeah, there's one less request

21     about real estate.  But everything else is

22     substantively identical to the requests to

23     DEFCAD except to Defense Distributed.

24          Do you think we can agree that the

25     same issues permeate both, and the only

Page 120

1          thing that we'd agree here is that your

2          agreements to produce would -- where you

3          have agreed to produce, you're willing to

4          go back to '22?

5               MS. GYEBI:  And that's what I'm

6          looking for now.  Because I think that

7          would be the most effective way to get

8          through this.

9               MR. LAROSIERE:  I think so.

10              MS. GYEBI:  So if you just give me one

11         moment.

12              MR. LAROSIERE:  Because they are

13         substantively identical.

14              Is there one you've started looking

15         at?

16              MS. GYEBI:  20.

17              MR. LAROSIERE:  There shouldn't be a

18         22.

19              MS. GYEBI:  No.  No.

20              We're good.

21              MR. LAROSIERE:  Okay.

22              (Reporter clarification.)

23              MS. GYEBI:  Okay.

24              MR. LAROSIERE:  So here is what I'm

25         going to write down for our notes, is that

Page 121

1              these are substantiative identical and we

2              have substantially the same discussion.

3              The one change is we're going from '23 to

4              '22 where indicated.

5                    MS. GYEBI:  Yes.

6                    MS. LEITNER:  Correct.

7                    MR. LAROSIERE:  Thank you so much.

8                    MS. GYEBI:  And I will also get back

9              to you regarding Request No. 17 because

10             it's identical to Request No. 20.

11                   MR. LAROSIERE:  Thank you so much for

12             your thoroughness.

13                   (Reporter clarification.)

14                   MR. LAROSIERE:  So now we're going to

15             go to the answers to interrogatories.

16             There's not many interrogatories.

17                   MS. GYEBI:  Oh.

18                   MS. LEITNER:  We're still on this.

19                   (A discussion was held off the

20             record.)

21                   MR. LAROSIERE:  Wilson's response to

22             Plaintiff's Interrogatory No. 1.  Okay.

23             This is receiving the cryptocurrency

24             accounts that defendant had control over.

25             And we define control.

                                                    Page 122

 1              And just so it's known, the same
 2         request was propounded to plaintiff and was
 3         answered.
 4              So, one thing that is -- Wilson is
 5         saying that he doesn't, in his individual
 6         capacity, have it.  So I think we can just
 7         assert the control issue here.  Right?
 8              MS. GYEBI:  Yes.
 9              MR. LAROSIERE:  Okay.  As for the rest
10         of it, do we want to say proportionality
11         and time frame?  I think that gets at the
12         heart of what you're saying.
13              MS. GYEBI:  Yes.
14              MR. LAROSIERE:  Okay.  So for No. 2,
15         this is asking for the real estate
16         transactions where all the stuff went.
17         This does go back to 2016 for the first
18         time.
19              We have a nonresponse.  Would
20         narrowing the time frame to 2018 mean
21         anything?
22              MS. GYEBI:  I don't think it would
23         resolve the issue, no.
24              MR. LAROSIERE:  Okay.  So, the
25         reason -- is the -- so control is -- the

Page 123

1              suggestion that control is undefined, we

2              struggle, although the reason we had to

3              include through non-publically traded

4              business entities, you have direct or

5              indirect control of is because we know that

6              Wilson has purchased real estate which we

7              expect was to hide assets, which, you know,

8              came from conduct of defendants through

9              companies.

10                  And so that's why it had to be asked

11             that way.  We feel that Wilson is the one

12             who best knows what real estate he owns.

13             And so, that's -- that's why we're asking

14             this.

15                  Do you think there's some way we can

16             get the information as to what actual real

17             estate Wilson owns, or do you think this --

18             that we're going to be at an impasse with

19             respect to this one?

20                  MS. GYEBI:  I think that this request

21             or this interrogatory specifically -- it

22             suffers from the same issues as present in

23             the other request for production, where

24             plaintiff is just seeking any asset on this

25             basis and/or idea that it's tied to damages

Page 124

1           and/or liability and/or divergent of

2           assets, which we do not believe to be

3           relevant or proportional to this action.

4                So the objection is maintained as

5           stated.

6                MR. LAROSIERE:  And I'll indicate

7           that, you know, this is the same

8           substantive discussion we had about the

9           real estate with respect to the request for

10          production.

11               Would you agree?  Because we had an

12          extended discussion on that.

13               MS. LEITNER:  Yes.  From yesterday.

14               MS. GYEBI:  Yeah.

15               MR. LAROSIERE:  No issue with No. 3.

16          That was responded.

17               Well, actually, now there is an issue.

18          Sorry.  It's the control issue.  Okay?

19               So, you know, we asked about the

20          aliases for people in his company.  And

21          then he said:  Defendant in his individual

22          capacity does not have blah, blah, blah,

23          and that it's better directed to defendant

24          entities.

25               So I think that's just the control

Page 125

1             issue is present there, I think.

2                   MS. LEITNER:  Understood.

3                   But just so it's clear, the response

4             also indicates -- it refers to his previous

5             answers to John Elik's Interrogatories Nos.

6             3 and 4.  So it should also -- where he

7             lists the board members and things like

8             that.  So that should also be noted that

9             they -- it does include, as part of the

10            response, for Interrogatory No. 3.

11                  MR. LAROSIERE:  Thank you.

12                  MS. GYEBI:  Just to understand,

13            plaintiff is maintaining -- even though

14            these are interrogatories directed to

15            Wilson, plaintiff is maintaining their

16            position is that Wilson is responsible for

17            having knowledge of any entity that he

18            potentially controls?

19                  MR. LAROSIERE:  It's a binary question

20            with interrogatories.  You know or you

21            don't.  Okay?

22                  So by suggestion that you don't have

23            something in your personal capacity, we

24            believe that the suggestion is he knows of

25            this in his business capacity.  Okay?

1           And so if that's not the case, that's

2      fine.  He should simply say I don't know.

3      Right?  But he didn't.  So, I think that

4      needs to be resolved.

5           And that's the control issue, right,

6      that -- that terminally resolves all of

7      this personal capacity stuff.

8           MS. GYEBI:  I understand.

9           MR. LAROSIERE:  Thank you.

10          So No. 4.  We take issue with does --

11     does Wilson currently live in an industrial

12     building?  Because the only addresses to

13     present were industrial buildings.  And the

14     response indicates -- the question says the

15     response must include your current

16     residential addresses.

17          MS. LEITNER:  These are the -- I don't

18     -- I've never been to Texas or Austin or in

19     this area.  But these are what our client

20     has relied as responsive to this.  And I

21     can tell you it matches with what public

22     record states.

23          MR. LAROSIERE:  Just so you know, that

24     2320 Donley Drive is an industrial

25     warehouse where they do their business.

Page 127

```
 1              And then 8403 Cross Park Drive, Suite 3B is

 2         where some of the other companies are based

 3         off of, also in an industrial park.

 4              So the question was simply, is this

 5         complete.  If you're representing that it

 6         is, understood.

 7              MS. LEITNER:  It's complete as of

 8         October 15th, 2025.  I understand he may

 9         have moved since the responses have been

10         provided to you.

11              MR. LAROSIERE:  So will you be

12         supplementing the response to include his

13         current residence address?

14              MS. LEITNER:  Yes.

15              MR. LAROSIERE:  Thank you.

16              And to the extent that Wilson is

17         concerned about his address being made

18         publically, you can certainly provide that

19         information on a confidential basis.  We

20         have no interest in publicizing his

21         address.

22              MS. LEITNER:  Yeah.  You know what?  I

23         think we will have to do that under the

24         protective order based on the imminent

25         threats he's received by multiple
```

Page 128

1           individuals.
2                   MR. LAROSIERE:  That's fine.  Yeah.
3           We have the protective order in place.  And
4           again, we have no interest in
5           publicizing or -- you know, he's a public
6           figure.  So that's a very real concern.
7           And we have no interest in publicizing
8           them.
9                   MS. LEITNER:  Understood.
10                   MR. LAROSIERE:  Interrogatory No. 5,
11          we ask him to describe the purpose and
12          operation of one of his entities.
13                   And, I don't really understand your
14          objection, especially when you say:
15          Answering further, defendant, in his
16          individual capacity, objects to information
17          and/or knowledge concerning DD Foundation
18          LLC to respond to this interrogatory.
19                   Was that just a scrivener's error?
20          Did it mean to say that he didn't have it?
21                   MS. LEITNER:  Let me look at it.
22          Sorry.
23                   MR. LAROSIERE:  Yeah.
24                   MS. LEITNER:  Wait.  No. 5?  What's
25          wrong with it?

```
1              MR. LAROSIERE:  5.  So you say:
2         Answering further -- it's under "answering
3         further."  I don't need to read it again to
4         you.
5              MS. LEITNER:  That's correct.
6              MR. LAROSIERE:  Objects to information
7         and/or knowledge to respond?
8              MS. GYEBI:  Objects to the disclosure
9         of information.
10             MR. LAROSIERE:  Okay.  All right.  So,
11        he's just saying he's not disclosing?
12             MS. LEITNER:  He doesn't have the
13        information in his individual capacity.
14        And as far as I know, he doesn't control DD
15        Foundation LLC.  But I could be misquoting.
16        But he doesn't control every entity.
17             MR. LAROSIERE:  Okay.  Well, it's an
18        interrogatory.  So it's whatever he knows
19        about the formation of this entity.
20             You know, we -- we also want to know
21        about his role in the company, which,
22        again, was sworn to share profits from the
23        other defendant entities.
24             Will you be willing to provide a
25        response subject to these objections?  And
```

Page 130

1          again, if you're concerned about public

2          information, we're -- you know, we have a

3          protective order in place.

4               MS. GYEBI:  Just so I understand, the

5          relevance of this request or the

6          proportionality, whatever word you want to

7          use, is that you believe that there's sworn

8          testimony or some type of sworn affidavit

9          in which DD Foundation stated that it was

10         sharing profit with one or more of the

11         defendant entities in this case?

12              MR. LAROSIERE:  Hold on.  So if you

13         look at his response to Interrogatory

14         No. 3, he lists the companies that he

15         controls.  And he listed DD Foundation LLC.

16              MS. GYEBI:  Right.

17              MR. LAROSIERE:  So, then, for 5, we

18         want to know about DD Foundation LLC

19         because we believe it is related to this

20         copyright infringing operation he's got

21         going.  And he declined to respond.

22              So we -- this is about, you know, your

23         information, what you -- what he knows.

24         Okay?  So, I think the control issue aside

25         -- because I don't think you really get to

```
                                              Page 131

 1              say, Oh, I only know that in my capacity as

 2              a board member, and so I'm going to decline

 3              to put it on an interrogatory.

 4                   But you disagree?

 5                   MS. LEITNER:  Yeah.  Obviously, we

 6              disagree.  He can only provide information

 7              that's presently known to him in his

 8              individual capacity.

 9                   MR. LAROSIERE:  Okay.  But, so is it

10              your position -- just so we're clear --

11              that if he knows something in his capacity

12              as a board member or owner of the

13              corporation, that he can decline to provide

14              it in response to an interrogatory directed

15              at him?

16                   MS. LEITNER:  Wait.

17                   MR. LAROSIERE:  Let me say it again.

18                   So he says, I don't have this

19              knowledge in my personal capacity.  Okay?

20              So, if he has the knowledge in his capacity

21              as -- let's say the president of an

22              organization.  Not saying he's the

23              president of this one.  I'm talking broadly

24              about the control issue as it relates to

25              the interrogatories.
```

Page 132

1           Would it be your position that if he

2       gained the information only in his status

3       as the president of an entity, that he

4       would be eligible to say in my personal

5       capacity, I don't have this information?

6           MS. GYEBI:  I don't think that's what

7       the answer is saying.

8           MS. LEITNER:  No.

9           MS. GYEBI:  The answer is saying that

10      the defendant in his individual capacity

11      objects to the disclosure of information

12      and/or knowledge concerning DD Foundation

13      LLC to respond to this interrogatory.

14          So, the objection is to the disclosure

15      because it is beyond the scope.  So we are

16      maintaining the objection that this request

17      has absolutely nothing to do with this case

18      and, thus, does not need to be responded

19      to.

20          MR. LAROSIERE:  Okay.  So we talked

21      about that language in -- Leia, you and I

22      talked about it, that that was actually a

23      writing error and that what you were

24      actually trying to say is that you didn't

25      have the information.  Because that's what

Page 133

1           he said in No. 1.

2                   MS. LEITNER:  To the disclosure.

3                   MR. LAROSIERE:  Yes.  Right.  Right.

4                   So in No. 1, let's just -- I just want

5           to be clear so that we can have everything

6           flat.

7                   In No. 1, he says that -- which we

8           asserted the control issue.  He says that

9           in -- sorry.  I'll just read it.

10                  "Defendant states in his individual

11          capacity, he does not have the information

12          and/or knowledge concerning defendants'

13          entities.  This interrogatory is better

14          directed to the defendant entities."

15                  So just so that we understand,

16          interrogatories, as apart from the request

17          for production.

18                  Is it your position that a human

19          person can have separate cases of knowledge

20          in their capacity as a corporate

21          representative and as an individual?

22                  MS. LEITNER:  It depends on the

23          corporation or the entity.  I mean, for

24          example, Dioskouroi LLC is not controlled

25          by Mr. Wilson.  So he wouldn't have the

Page 134

1           information.  So it just depends.

2                 And because the request is not clear

3           with respect to each entity, then yes,

4           these are the responses that we have based

5           on the request as phrased.

6                 MR. ZERMAY:  So I guess as an analogy,

7           right, let's say I bungle this case.  I'm

8           committing aggressive malpractice, and Matt

9           turns to you and says I'm suing you and

10          issues interrogatories and he sues my law

11          firm and me for malpractice.

12                And then he issues interrogatories to

13          me, regarding, you know, the corporate

14          structure of my law firm.  And he -- then

15          my response is objection, I don't have

16          individual knowledge in my capacity as --

17          of my law firm's corporate structure.  You

18          have to direct that to Zermay Law and I'd

19          answer the question in my capacity as

20          corporate representative.  I think the

21          judge would be like what are you talking

22          about?

23                And similarly, if it would be -- you

24          know, you have to ask me questions about

25          what I personally know.  Well, tell me

Page 135

1          about what you did to prepare for this

2          case.  Well, objection, that's in my

3          capacity as an employee of my law firm, and

4          I'm not answering that in my individual or

5          as my corporate representative.  You can

6          subpoena me as an employee of my law firm.

7              It conceptually doesn't make any

8          sense, in my opinion.  So I don't follow

9          where you can compartmentalize and -- where

10         you say in my capacity as -- you know, what

11         you know with your -- you know, you

12         personally know.  Like what did you see

13         with your eyeballs, what did you hear with

14         your ears, what do you know consciously.

15             And that's where I'm struggling to

16         fundamentally understand the objection as

17         to what do you know in your individual

18         capacity versus what you know, period.

19             And again, the -- my understanding of

20         the rules is you have to conduct a

21         reasonable search and diligence or it's not

22         -- you know, whether or not me, if I was

23         sued like my law firm, well, my individual

24         capacity, well, I can't speak for my law

25         firm because I'm not speaking for my law

Page 136

1          firm individually.

2              Again, the interrogatory is directed

3          at Mr. Wilson, and so Mr. Wilson should be

4          required to answer to what he presently

5          knows, period.

6              MS. LEITNER:  I'm just going to say

7          that the hypothetical doesn't apply to the

8          facts here.  They're completely different.

9          And especially because you're trying to

10         analogize a sole practicer versus

11         Mr. Wilson's company that includes

12         different staff and board members.  Then,

13         yes.

14             The information wouldn't normally

15         just -- he wouldn't have all the

16         information presently known with respect to

17         all of the entities.  So I don't think

18         that's an apples-to-apples comparison.

19             So with respect to these requests, the

20         responses that we provided, that's -- have

21         been -- in our position, that they've been

22         fully addressed and/or responded to.

23             MR. ZERMAY:  Is it, though, if I sued

24         Tesla and --

25             MS. LEITNER:  Can we not do

Page 137

1          hypotheticals?  Can we just -- I don't

2          know.  I mean, I feel like --

3               MR. ZERMAY:  It's like, well, what do

4          you know, Elon Musk?

5               MR. LAROSIERE:  No.  I think this is

6          really, really important.

7               MS. LEITNER:  I feel like every time

8          we want to have a substantiative

9          discussion, you want to stop.  And then

10         when we -- when you want to, you want to

11         continue.  And we only have an hour and a

12         half, and I still have -- you guys agreed

13         to discuss plaintiff's responses to our

14         request for production and request -- and

15         our interrogatories.

16              MR. LAROSIERE:  Okay.  So, this is

17         really material, though, because -- so when

18         you guys have wanted to discuss stuff, it's

19         included both things that we've had

20         substantial conversations on, which I think

21         were very informative, and we really got to

22         learn each others' positions.

23              We agreed a couple times.  But most of

24         the times, we didn't.

25              This is one of those areas where, you

Page 138

1              know, we're going to have to go before the

2              Court.  And I think we've got to really

3              make sense of this.

4                   This is an interrogatory directed at

5              Mr. Wilson.  I understand that Mr. Zermay's

6              analogy might have been a little hard to

7              follow.  The reasoning by analogy is

8              annoying.  It's something I have to do

9              often as a Second Amendment litigator.

10                  And so the question that we're asking

11             is, can Mr. Wilson, as a human person, have

12             categories of knowledge that are separate

13             for purposes of an interrogatory in his

14             capacity as Cody Rutledge Wilson, the human

15             person, and Cody Rutledge Wilson, president

16             of a corporation?

17                  I don't think that's possible.  And

18             I -- if you think it is, that's fine.  I

19             would just like to know that.

20                  MS. GYEBI:  We'll look into the issue

21             further.  How about that?

22                  And in addition to the information

23             that we agreed to produce, the request for

24             production 17 and 20, we'll provide an

25             official position on that.

                                              Page 139

1           However, I think that we are getting
2       away from the larger issue, in that the
3       request itself is overbroad.  So whether
4       Mr. Wilson has this capacity of knowledge
5       in his individual capacity or his business
6       capacity, the request itself is not
7       properly raised.  It is overbroad, meaning
8       that Mr. Wilson, irrespective of knowledge,
9       has no obligation to answer it.
10          MR. ZERMAY:  Well, I guess what part
11      of it do you find broad?  I don't know if
12      you're raising a burden.  But whether
13      there's calculation on how much money it
14      costs to respond to it is the problem?
15          MS. GYEBI:  Let's go back to No. 1.
16          "Identify all cryptocurrency accounts,
17      wallets, addresses you have had control
18      over since January 1st, 2018.  Control
19      being the ability to remove or send
20      cryptocurrencies from the account, even if
21      others share access or whether other
22      entities or individuals share that access.
23      Identify them to the extent known."
24          We are saying that request -- and
25      likely, as we go through, the majority of

Page 140

1          these requests are overbroad.  They are

2          beyond the scope.  That is the threshold.

3               So we are dealing already with an

4          issue with a request, in and of itself, is

5          objectionable before we even reach the

6          issue of whether or not Mr. Wilson has to

7          answer in his individual capacity versus

8          knowledge that he's obtained as either a

9          director or shareholder or whatever or

10         whatever capacity he may or may not have.

11              Does that make that clear?

12              MR. ZERMAY:  Well, I guess take the

13         first step.  You are saying it's broad and

14         that it's, you know, overly broad.

15              MS. LEITNER:  It's not attenuated to

16         the copyrighted registration.  It's just

17         like what does he have in his wallet from

18         January 1st -- that is essentially the

19         request.  And so that's the issue with it.

20              And other issue is Mr. Wilson can only

21         respond to what he has presently known.

22         You're speculating as to what he does know

23         and his entities.  I mean, this is the

24         response he has provided.  We can go back,

25         and as a concession, and ask him to make

Page 141

1          sure that that's all he knows with respect
2          to that.  But that's what he provided.
3               That's what the -- the interrogatory
4          requests.  We responded to it.  And so your
5          speculation as to does he know more, that's
6          not -- that's beyond the scope and it's
7          beyond what the -- it's in contravention of
8          what the federal rules state.
9               MR. LAROSIERE:  I'm sorry.  Did -- I'm
10          sorry.  I'm just trying to understand.  Did
11          we speculate as to his potential knowledge?
12               MS. LEITNER:  Yes.  You were saying,
13          well, he should know or he doesn't know.
14          He's already provided what he knows on
15          written, sworn paper.
16               MR. LAROSIERE:  He swore that he
17          didn't have it, comma, in his individual
18          capacity, comma.
19               So what did you mean by that?
20               MS. LEITNER:  It's exactly what he
21          says he means from that.  And you can ask
22          him in the deposition, if you'd like to
23          explore that further.  But otherwise, this
24          is what he's stated.
25               MR. LAROSIERE:  So --

Page 142

1               MS. LEITNER:  I mean, and to be fair

2        and to be in good faith, we're happy to

3        supplement it if there is any additional

4        information that he has received from

5        October 15th to now.

6               But otherwise, this is what we've

7        responded to.  And you were literally

8        speculating on what he should or should not

9        know without either providing any documents

10       or anything in public records showing he

11       did know.

12              MR. ZERMAY:  Well, when you say you're

13       going to supplement, would it be in his --

14              MS. LEITNER:  Who did you direct the

15       request to?

16              MR. ZERMAY:  -- as a person -- as a

17       person with the capacity, you know, both be

18       a -- what he knows with his brain and --

19              MS. LEITNER:  Let's just state on the

20       record that these requests -- these

21       interrogatories could have been and should

22       have been directed to the defendant

23       entities.  But they were all directed to

24       Mr. Wilson.  So this is how he is

25       responding to.

Page 143

1              And again, you have the ability and
2        the vehicle to use a deposition to ask him
3        further with respect to this.
4              MR. ZERMAY:  Again, I think -- get
5        back to, are you supplementing with
6        dropping the "in his individual capacity"?
7              Because again, it's our position that
8        you can't just have like, hello, I'm -- you
9        know, get into a car accident driving my
10       vehicle when it's, well, actually, it's a
11       car accident with Zachary Zermay.  I got in
12       the accident with Zachary Zermay as a
13       corporate representative of Zermay Law
14       Firm.  It's both, right?  It's both.
15             MS. GYEBI:  Right.  And I've already
16       stated that we will get back to you on that
17       position.
18             But the larger issue is the request
19       itself and that it is improperly and
20       objectionably written.  You cannot get to
21       the deeper issue of knowledge if the
22       request, in and of itself, is overly broad
23       in scope, which is the exact issue that we
24       have right here.
25             MR. LAROSIERE:  So, when -- when

Page 144

1          Mr. Wilson asked plaintiff for all of the

2          cryptocurrency accounts that he possessed,

3          and plaintiff provided the cryptocurrency

4          account --

5               MS. GYEBI:  Did you object to doing

6          that?

7               MR. LAROSIERE:  No, because he asked

8          for something quite limited.

9               And so, is it the position that Wilson

10         has so many cryptocurrency accounts that he

11         can't possibly identify them all?  This

12         just doesn't make sense how you think it's

13         so broad.

14              MS. LEITNER:  That's not what

15         we're saying.  I don't think that's -- can

16         we just agree to disagree and move on?

17              I think that our positions have been

18         articulated on the record.

19              MR. LAROSIERE:  I -- so, just you went

20         back to 1.  And I --

21              MS. GYEBI:  We can move on to 5.  We

22         can move on to 6.  We can move on to 7.

23              But right now, the conversation is

24         being stalled because there's a fundamental

25         disagreement as to the scope of the

Page 145

1          request.  It does not matter whether he has

2          one account or 500 million accounts.

3               Plaintiff is not entitled to seek

4          information starting all the way back from

5          2018, when these copyrights were not even

6          in existence until 2022.

7               MR. LAROSIERE:  So again, if -- we're

8          alleging that defendant has a scheme to

9          knowingly violate copyrights to make money

10         and put them on his website.  Okay?  And

11         he's been doing this for a while.

12              And so, I guess I'm just really

13         confused, when we need to prove -- it's our

14         burden to prove all of these things,

15         especially when it comes down to

16         willfulment.

17              I'm just so confused as to how we

18         could possibly do that if we were limited

19         to the moment our work was registered,

20         especially when --

21              MS. LEITNER:  That's not what she's

22         saying.  Because in the registrations, the

23         creation of the works and in your affidavit

24         to the motion for preliminary injunction

25         says that these works were created in 2022

Page 146

1          to the present.

2               So based on the evidence in the

3          record -- and that is where we're basing

4          the time frame and why it's relevant here.

5               MR. LAROSIERE:  Okay.  So we can

6          understand each other, let's say January 1,

7          2022.  I don't think that's a real date,

8          but let's just say.  Okay?

9               And that would -- that's when the work

10         was first conceptual.  Right?  The work

11         first came to exist at all, the first work.

12         Okay?  Let's just say that for our purposes

13         of discussion.

14              We're saying this guy has a business

15         where he willfully takes people's works,

16         some on the internet, some on a USB thumb

17         drive, mails them out and he takes the

18         money.  Okay?

19              It sounds like you're suggesting that

20         the creation of that business, that the

21         things that led up to that conduct, don't

22         bear on the case.

23              MS. GYEBI:  That's not what your

24         request is asking for.  That is the issue.

25              Plaintiff is not a crusader for these

Page 147

1          unknown -- enumerable alleged individuals

2          which plaintiff has the idea, may or may

3          not have had their copyrights infringed.

4          And that's really what the issue is.

5              I understand plaintiff's ideology or

6          the beliefs that plaintiff has regarding

7          this case.

8              However, what you are limited to are

9          the actual claims and defenses in this

10         action, particularly with the financials.

11         We now also have the secondary issue of the

12         fact that you're looking for -- or

13         plaintiff is looking for the entire

14         landscape of Mr. Wilson's assets with no

15         tie whatsoever to the copyrighted works.

16             We're not even willing to get to an

17         agreement to produce documents to the

18         extent they are in any way tangentially

19         related to the copyrighted works.

20         Plaintiff just wants the kitchen sink and

21         more.  The answer is no.  That answer is

22         not going to change.

23             MR. LAROSIERE:  So, the problem is, is

24         that we're alleging the existence of this

25         enterprise, right, that we have to prove.

Page 148

 1          We have to prove that he's been willfully

 2          doing these things.

 3              But here is the thing about the

 4          finances.  Not only have we alleged the

 5          commingling, the distribution of assets,

 6          the hiding of assets -- not only are those

 7          disputed, but when we first moved for an

 8          MPI in the first case, and we said that

 9          there needed to be -- that the assets

10          needed to be held in bond, Wilson filed an

11          affidavit that he signed saying there's no

12          need to hold the assets in bond, because my

13          organizations have plenty of money.  Okay?

14              Whether a bond needs to exist is going

15          to come up, right, as this litigation

16          continues, whether he is currently

17          funneling money away to avoid judgment, as

18          we've alleged that he has wanted to do.

19          That's all super material.

20              MS. GYEBI:  That's all speculative.

21              MS. LEITNER:  That is very

22          speculative.  And another issue is it's

23          still not related to the copyrighted works

24          and the profit and losses.  If you're

25          claiming disgorgement or -- especially

Page 149

1          disgorgement, then that would be related to

2          the time frame of when the works were

3          created.

4               We're talking about specific works at

5          issue that are identified in the First

6          Amended Complaint.

7               You can't just go on some crusade just

8          discussing what you think could happen just

9          because you think it is, and it's not

10         alleged in the complaint.  That's not

11         how -- that's not how litigation works.

12              MR. ZERMAY:  Well, we know that he's

13         one to do this because he's done it before,

14         when he was arrested for having relations

15         with --

16              MR. LAROSIERE:  That --

17              MR. ZERMAY:  Anyway, he fled the

18         country to Taiwan and took all the

19         cryptocurrencies from all the accounts in

20         all of his companies, and he put them in

21         one wallet and out of the country.

22              And that's our concern, is, you know,

23         it also goes to the commingling and alter

24         ego allegations.  It goes, again,

25         purportedly with proper corporate protocol

Page 150

1          and corporate structure.  A person -- a
2          shareholder wouldn't be able to do that in
3          a normal corporation if it's not just an
4          alter ego or there's commingling involved.
5               MS. LEITNER:  So what does this
6          request relate to?  Which count?
7               MR. ZERMAY:  All of them.  Because
8          it's all about alter ego and commingling.
9               MS. LEITNER:  Okay.
10               MR. LAROSIERE:  And terminal liability
11          for all of the counts.
12               MS. LEITNER:  Okay.  I just wanted to
13          clarify that that was your position.
14               MR. LAROSIERE:  Okay.  I think we can
15          move on to No. 6.
16               So No. 6, we're asking Cody Wilson to
17          describe his sale of this particular
18          property to his sister.
19               The property was used -- and again, we
20          don't have to articulate this to you, but
21          we will as a courtesy.
22               We know that this property was used in
23          connection with his businesses, and we know
24          that he transferred it to his sister.
25          Well, his sister lives in Arkansas.

Page 151

1            It -- this very much smacks of asset

2       hiding.  Okay?  It's one of the things that

3       we claim is part of Wilson's distribution

4       of assets that he gets from his

5       corporations.

6            So we ask the simple interrogatory

7       that he describe the sale of the property.

8       And also, how come after the sale, he

9       continued to use the address in connection

10      with his businesses?  Okay.  There could be

11      plenty of innocent explanations for that.

12           Instead, you give us a series of

13      objections and you say you're willing to

14      meet and confer regarding a narrow

15      request -- narrow request for this

16      interrogatory.

17           I don't know what you want from us.

18      We just want to know why -- what went on

19      with the sale of this property because we

20      think -- obviously, you know what we think

21      it is.  We're giving you the opportunity to

22      rebut it, basically.

23           MS. LEITNER:  I mean, the issues are

24      what we discussed before.  It's beyond the

25      scope of Rule 26(b)(1) as far as you

Page 152

1          haven't alleged fraudulent transfer.

2              With respect to any of the real estate

3          transactions itself, it's not related to a

4          profit or sale from any of the

5          copyright-registered works that was

6          identified in the First Amended Complaint.

7              MR. LAROSIERE:  So how should we

8          articulate this?

9              MS. GYEBI:  Now that plaintiff has

10         revealed that they're engaging in a fishing

11         expedition to get everything from Defendant

12         Wilson without any basis or claim to their

13         lawsuit or any claim or defense raised in

14         this action, defendants note that this

15         request is overly broad, irrelevant,

16         unproportional and maintains the objections

17         as raised.

18             MR. ZERMAY:  I don't think we ever

19         said that we were on a fishing expedition.

20             MS. GYEBI:  Oh, no.  That's what I'm

21         saying.

22             MR. LAROSIERE:  Well, you said we

23         confirmed it.

24             MS. GYEBI:  Right.  Yes.  The

25         expedition confirms what -- my thought was

Page 153

1          that you were on a fishing expedition.

2          You've now confirmed it with this tail

3          end --

4              MR. ZERMAY:  No.  It's -- we're trying

5          to --

6              MS. GYEBI:  It's defense counsel's

7          opinion that plaintiff has confirmed that

8          they are on a fishing expedition for

9          Mr. Wilson's assets.

10             MR. LAROSIERE:  That's a very unusual

11         thing to say in a conference like this.

12             MS. LEITNER:  Well, it's not -- it's

13         not attenuing.  I mean, it's one thing

14         you're asking for profit and losses and

15         not -- and not information which does

16         relate to disgorgement of profits.  It's

17         another thing when you're asking for real

18         estate transactions that are not related.

19             I mean, again, you can ask for broad

20         -- discovery is broad in general, but it

21         has to be related to claims and the

22         defenses.  And that's what the operative

23         term is under Rule 26(b)(1).  That is our

24         position.  And I think we --

25             MR. LAROSIERE:  Okay.  Let me ask you

Page 154

1           a hypothetical, and you can answer yes or

2           no.  Not -- you can answer however you

3           want.  Okay?

4                Let's say -- and again, you are not

5           admitting anything I'm saying.  This is --

6                MS. LEITNER:  Can I just --

7                MR. LAROSIERE:  This is important.

8                MS. LEITNER:  Can I just say that --

9                MR. LAROSIERE:  Well --

10               MS. LEITNER:  -- we need to

11          delineate -- we need to stop talking about

12          the hypotheticals.  Because I think that's

13          where you're going away from the issues.

14          Because we've got to talk about the facts

15          in this case that support your claims and

16          defenses.

17               And I think that's why you guys are

18          going so beyond outside of the pleadings

19          because it's -- it's just -- it's not

20          attenuated to the copyright registrations.

21               So I think if we can agree to not talk

22          about hypotheticals and discuss the facts

23          applicable to this case, I think that would

24          be helpful.

25               MR. LAROSIERE:  Well, I don't think

Page 155

```
 1              it's possible to -- okay.  So, bear with
 2              me.  I'm trying to work with you in good
 3              faith.  One second.
 4                   I just want to understand.  Because
 5              you keep on objecting to the real estate
 6              conceptually.  And I want to make sure
 7              we're on the same page as to what we're
 8              looking for because especially with your
 9              indication of a fishing expedition.  And
10              that's concerning.  And I certainly don't
11              want that impression to be left with
12              opposing counsel.
13                   So, assuming arguendo the following
14              things were true, do you still maintain it
15              would be completely irrelevant?  If the
16              corporation bought a home or something, a
17              warehouse that was then transferred to
18              Wilson, who then gifted it to his sister,
19              and the corporation, in part, paid for the
20              warehouse with proceeds for the
21              infringement, would you understand a
22              connection and why it might be
23              discoverable?
24                   MS. LEITNER:  I'm not going to answer
25              your hypothetical.  It doesn't apply here.
```

Page 156

1           And first of all, it doesn't apply to
2       copyright law, unfair competition or name
3       and likeness.  So it just doesn't apply to
4       the facts here.
5           Can we just stick to the facts of the
6       case here that are alleged by you?
7           MR. ZERMAY:  Well, again, it's --
8       we're trying to uncover the facts.  I mean,
9       there's what the allegations are in the
10      complaint and then there's the facts.
11      There's only one truth.  I mean, we're
12      trying to get to the truth of what happened
13      here.
14          MS. LEITNER:  You guys have it.  It's
15      your claim.  It's your claim.
16          MR. ZERMAY:  Right.  But we're trying
17      to uncover --
18          MS. LEITNER:  And you should have
19      everything --
20          MR. ZERMAY:  -- discoverable evidence.
21          MS. LEITNER:  -- under the rules in
22      the Middle District of Florida.  You should
23      already have this evidence when you file
24      the complaint.  It shouldn't be asked in
25      the discovery if you hadn't already had it.

Page 157

1              And I'm just going to state for the
2       record that these requests are related to
3       the -- the dismissed counterclaim and the
4       repo claim that's filed in a separately
5       filed action.
6              And it likely also relates to the --
7       separately filed complaint that was
8       recently filed in the Middle District of
9       Orlando [sic].  And so I -- we don't
10      believe that this discovery -- the
11      discovery requests should be used as a
12      vehicle to support those claims or defenses
13      that were raised in different lawsuits.
14             We want to combine it with respect to
15      the complaint that's alleged based on the
16      case law.  The case law says that the
17      discovery has to be at least tangentially
18      related to the pleadings.  The pleadings
19      here.  Not discovery.  Pleadings.
20             So that's just our position.  I know
21      you disagree.  But that's what the issues
22      are.
23             MR. LAROSIERE:  Can you help me
24      understand how this is related to the RICO
25      action?

Page 158

1          MS. LEITNER:  A lot of the questions

2     are related to DEFCAD's publications,

3     who -- and/or there's also a blacklisting

4     question.  I mean, you're the ones that

5     wrote the questions.

6          But they generally relate to some of

7     the RICO's DEFCAD means and any of the

8     disinformation with respect to what was

9     published by the Gatalog.  And so they're

10     wholly irrelevant to the complaint in this

11     action.

12          MS. GYEBI:  Anything for No. 7?

13          MR. LAROSIERE:  What does that say?

14          MS. GYEBI:  I thought that's what we

15     were talking about.

16          MR. ZERMAY:  Okay.  Well, just jumping

17     off that note, what we are concerned about,

18     at least in this litigation, is Mr. Wilson.

19     Again, we're trying to determine terminal

20     liability here.

21          And what we're anticipating Mr. Wilson

22     is going to say is -- or at least one of

23     the defenses is going to be, to the extent

24     there was copyright infringement, that was

25     not done in my personal capacity.  That was

Page 159

1          done in my corporate capacity.  So

2          therefore, I'm not liable for this.  It was

3          my employees.  It wasn't me.  It was my

4          companies.  It wasn't me.

5               MS. LEITNER:  His responses are what

6          his responses state.  If he has any other

7          additional information, we'll either

8          supplement it or he'll discuss it at

9          deposition.  But otherwise, this is the

10         information that we have presently, and

11         we've provided it to you accordingly,

12         pursuant to the rules.

13              MR. LAROSIERE:  Amaris, if you could

14         please help me.  I know we finished

15         discussing 6.  But what I don't know how to

16         do is how to just point to our positions.

17         Can you help me in the shorthand way we've

18         been doing?

19              MS. GYEBI:  Objection is maintained as

20         written.  So OAW.

21              MR. LAROSIERE:  Thank you.

22              So for 7, we're asking about

23         September 10th, 2024, certificate of DD

24         Foundation specifically, as it relates to

25         the removal of Dennis K. Wilson and --

```
                                              Page 160

 1              (Reporter clarification.)

 2              MR. LAROSIERE:  -- Wilson and the

 3        addition of yourself being Cody Wilson,

 4        we're asking why that happened.

 5              If you want to know the theory of how

 6        it bears in the case, I think the date

 7        makes it pretty obvious that this happened

 8        immediately after Wilson was aware he was

 9        being sued for copyright infringement.

10              MS. LEITNER:  We have the same issues

11        with respect to this interrogatory.

12              Real estate transactions with his dad

13        are unrelated.

14              MR. LAROSIERE:  That's not what it

15        says.

16              MS. LEITNER:  DD Foundation, first of

17        all, it's a non-party.  And specifically --

18        and his dad is a non-party.  So why do you

19        want information with respect to this?

20              MR. LAROSIERE:  Because it's one of

21        his corporations that he identified in

22        response to Interrogatory No. 3.  And he

23        removed his father and replaced him with

24        himself immediately after being aware of

25        this lawsuit.
```

Page 161

1          MS. GYEBI:  And you're suggesting

2     relation based on that?

3          MR. LAROSIERE:  I would like to know

4     what happened.  And we think it's

5     calculated to lead to the discovery of

6     admissible evidence, perhaps as to the way

7     he funnels his assets through these

8     corporations, perhaps as to willfulness.

9          MS. LEITNER:  I believe that if you

10    cite a document or something with respect

11    to an interrogatory, you should have

12    included that.

13         So if you have that certificate of

14    amendment with respect to the DD

15    Foundation, we'll see if we can look at it

16    and either supplement it or stand by our

17    objections.  And we'll look at it again and

18    provide you more information or not or

19    confirm that our -- our answer is complete

20    on the first.

21         MR. LAROSIERE:  We're not asking for

22    the document.  We're --

23         MS. LEITNER:  I know you're not, but

24    you're referring to something that's not

25    attached to the interrogatories.  So we

Page 162

1          want the information with respect to what

2          was referenced.

3               MR. ZERMAY:  I don't think we are

4          required to attach documents to

5          interrogatories.

6               MS. GYEBI:  You're not required.

7          Okay?  What we are asking for is to just

8          get the document.  If you all have it, then

9          email it to us.  We just want to know.

10               MR. LAROSIERE:  Well, I don't think we

11          have it.  It's a Texas company.  And they

12          are really weird about how that stuff gets

13          done.  So we saw that -- like how do I

14          explain?  We saw, like, the public version.

15               MS. GYEBI:  Okay.

16               MR. LAROSIERE:  We saw that the result

17          was his removal of Dennis K. Wilson and the

18          addition of himself and then the timing.

19          Right?  And so this plus DD Foundation

20          saying I share profits, we want to know the

21          circumstances leading up to it

22          specifically.  Why did it happen?

23               And you said you're willing to meet

24          and confer regarding a narrower request.  I

25          don't know what that means.  We just want

Page 163

1           to know why that happened.

2                   MS. GYEBI:  Okay.  Sure.

3                   So we offered to meet and confer

4           because we really, to date, do not

5           understand why it is that the plaintiff is

6           seeking this information, what relation it

7           has at all to this case, how it is

8           proportional or otherwise relevant.

9                   And meeting and conferring now, we are

10          confirming that our confusion as to why

11          it's being asked, the relevance to the

12          proportionality, that confusion was caused

13          by the fact that -- and we're standing by

14          it.  I know that you disagree.

15                  But the confusion is caused by the

16          fact this has nothing to do with this

17          complaint or any of the claims and defenses

18          raised in this action.  Rather, plaintiff

19          has ideas and/or beliefs that it is looking

20          to further explore irrespective or

21          unrelated to the specific claims and

22          defenses in this suit.

23                  That was the purpose of us saying we

24          can meet and confer to narrow the request

25          because we're working off of the

Page 164

1          presumption that there was some type of

2          relevance that maybe we were missing.

3                It's been confirmed that there's no

4          relevance.  And, thus, the objections stand

5          as stated.

6                MR. LAROSIERE:  Okay.  That is the end

7          of the Cody Wilson's answers to

8          interrogatories.

9                Next we can pull up Defense

10         Distributed's answers to plaintiff's first

11         set of interrogatories, of which there are

12         only three.

13               MS. GYEBI:  Give me one second,

14         please.

15               MR. LAROSIERE:  Take your time.

16               Does anyone else need a comfort break?

17               (Reporter clarification.)

18               (A brief recess was taken from

19         1:54 p.m. to 2:02 p.m.)

20               MR. LAROSIERE:  Okay.  So now we have

21         Defense Distributed's answer to

22         interrogatories.

23               Okay.  So, this one is interesting.

24         We are wanting to understand -- because

25         control is an issue, right?  Control is

1          something we fought about a lot.  We want
2          to know who has control over Defense
3          Distributed.
4               And we have a non-answer but -- well,
5          no.  You said that instead, you'll opt to
6          produce responsive documents on a rolling
7          basis.  And again, then, arbitrarily limit
8          it to 2023.
9               I guess, why can't we just have a
10         narrative of who actually had this control,
11         what powers they have?  Like that's -- we
12         don't need to narrow it in time, right,
13         because it's a present question.
14              The question is now who exerts control
15         over the business financial, operational,
16         other actions of Defense Distributed.
17              And then we include the subparts, not
18         as discreet interrogatories but to clarify
19         to say this is what we want to know.  We're
20         going to need contact information, powers
21         and responsibility of that person or
22         entity, when they gained the power, and how
23         they gained the power.
24              That is a pretty straightforward
25         request.  So, I guess we don't really

Page 166

1          understand how it's ambiguous, how it goes

2          beyond the scope.  Because again, control

3          is materially at issue, both in the

4          complaint and now in all of conferrals up

5          to now.

6                So, how can we get this information?

7                MS. GYEBI:  Is plaintiff objecting to

8          the production of information via document

9          pursuant to the Federal Rule of Civil

10         Procedure 33?

11               MR. LAROSIERE:  Yes, because it's not

12         responsive.  So the documents that --

13               MS. LEITNER:  How is it not

14         responsive?  Because under the rules, you

15         can provide -- produce documents that are

16         responsive to an answer to an

17         interrogatory.

18               MR. LAROSIERE:  So the limitation, the

19         time limitation that you then impose with

20         2023 to the present.

21               MS. LEITNER:  We can agree to change

22         it to 2022.

23               MR. LAROSIERE:  Can you agree that

24         these documents would completely identify

25         the present control, as the interrogatory

Page 167

1          requests?  If we can confirm that, we

2          should be fine.

3                MS. LEITNER:  I -- I think the issue

4          too -- I mean, again, we don't understand

5          how it's relevant.  But is that -- sorry.

6          Oh, it's this one?  We're still on 1?

7                MS. GYEBI:  We're starting -- this is

8          the first set.

9                MS. LEITNER:  My apologies.  Strike

10         all that then.

11               Oh, yeah, we can provide documents.

12         And if that's like -- if you're -- that

13         could be in the form of an organizational

14         chart or something to that effect.  But we

15         can provide documents to respond to this.

16         And we did provide that response to you.

17         And that should be sufficient under -- as

18         Amaris said, Federal Rules of Civil

19         Procedure 33.

20               MR. LAROSIERE:  Certainly, as long as

21         that answers the interrogatories

22         completely.

23               The only concern we have, again, is

24         with the time period of limitations.  So if

25         somebody, right, gained the power before

Page 168

1          2023, and then you're -- it's just going to

2          be silent as to that.

3               So as long as you're representing that

4          this will completely answer the

5          interrogatory under the rules, then that's

6          fine.  I just wanted to confirm that.

7               MS. LEITNER:  Confirmed.

8               MS. GYEBI:  Do you also --

9          clarification.  I just want to make sure I

10         understood.

11              You're asking for control as of the

12         date that the requests were responded to?

13         Because I believe that's why we lodged the

14         objection to the time frame.

15              We're not sure if plaintiff is looking

16         for a control over the span of the life of

17         Defense Distributed as opposed to what

18         plaintiff -- whether we're talking about as

19         of the time of the response.

20              So is plaintiff talking about the

21         latter, as of the time of the response, is

22         the controlling time period of requests --

23         or excuse me -- Interrogatory No. 1?

24              MR. LAROSIERE:  I think the way it's

25         written, it has to be immediate.  Right?

1              So the date of response.

2                   MS. GYEBI:  Understood.

3                   MR. LAROSIERE:  Yeah.

4                   Thank you for clarifying that.  I

5         appreciate it.

6                   MS. GYEBI:  I appreciate it.

7                   MR. LAROSIERE:  So I think for 2, we

8         just have the TFI issue because you said

9         you'll produce it, but you're limiting it

10        to 2023.  Can we do the '22 for here so we

11        at least get that little bit?  So we'll do

12        OAW but '22, like we did before?

13                  MS. GYEBI:  Yeah.

14                  MR. LAROSIERE:  Thank you.

15                  And, No. 3, I think, would be the same

16        concern as No. 1, which is we just want to

17        make sure that this covers everybody for

18        now.  And so if the documents cover

19        everybody that exists now, great.

20                  MS. LEITNER:  That's fine.  I'll just

21        state for the record that we -- like, as we

22        indicated in our responses, we're producing

23        on December 1st, 2025.  So any -- the meet

24        and confer with respect to this is

25        essentially premature because you haven't

Page 170

1                 received the documents as of yet.

2                     MR. LAROSIERE:  So this is one of the

3                 few issues where we just had the clarifying

4                 question.

5                     So now that we've clarified this in

6                 No. 3, I don't think we have an issue yet.

7                     Let's move on to the DEFCAD rogs, of

8                 which there are five.

9                     So No 1.

10                    MS. GYEBI:  Give me one second.  I'm

11                sorry.  It's not opening for me.

12                    MR. LAROSIERE:  So, No. 1 is -- I'm

13                sorry.

14                    MS. GYEBI:  Go ahead.

15                    MR. LAROSIERE:  I didn't ask --

16                    MS. GYEBI:  It's open.

17                    MR. LAROSIERE:  No. 1, we're asking

18                the same questions as we did with Defense

19                Distributed's No 1.  And here, the only

20                objection you contend is that control is

21                vague and ill defined.

22                    And so then following that, the only

23                answer is that Thomas Odom assist with

24                day-to-day operation.  So that's not a

25                complete response.

Page 171

1            We asked for identity and contact

2       information, the powers and

3       responsibilities, when they gained the

4       power and how they gained power.

5            MS. LEITNER:  The power to a staff

6       member?

7            MR. LAROSIERE:  And so you can answer

8       that by, you know, presumably he was

9       employed on this date.

10           But, of course, the question is more

11      asking about who exerts control.  Right?

12      And the identity -- like the identity of

13      any individual or entity the claim exerts

14      any control --

15           MS. LEITNER:  What do you define as

16      power?

17           MR. LAROSIERE:  The ordinary meaning

18      of the term.  Right?  So the ability to

19      direct -- so you said direct who exerts

20      control over the business financial

21      operations or other actions of DEFCAD.

22           Then we -- and again, to clarify the

23      scope, we gave the elements that we thought

24      were most important.  So, the identity and

25      contact information of any individual or

Page 172

1          entity you claim is exerting control, their

2          power and responsibilities, when they

3          gained it and how they gained it.

4               And so, is the only thing you objected

5          to is control, which I -- I think you're --

6          you're required to give its plain and

7          ordinary meaning.  Right?

8               So, at least with respect to this one,

9          do you think we can get an amended answer?

10              MS. LEITNER:  Yeah.  We can -- we'll

11         supplement accordingly, if necessary,

12         but --

13              MR. LAROSIERE:  Well, do you agree

14         that this needs supplementation?  Because

15         the only thing written here is Thomas Odom,

16         who assists with the day-to-day operations

17         of DEFCAD.

18              Control is massively at issue.  We've

19         spent hours over the last few days talking

20         about control.

21              MS. LEITNER:  I'll confirm with DEFCAD

22         if that's complete.  But if it's not, our

23         position is we'll supplement it by the 1st.

24              MR. LAROSIERE:  2 is not at issue.

25              And then 3, I think, would be the same

Page 173

1           thing, right?  It's covered by the same

2           thing as 1.  If it's complete, it's

3           complete.

4                And the -- I think that the way the

5           response is written with regard to Thomas

6           Odom for 3, if he was complete -- you know,

7           if that was, it would be a complete answer.

8                But, you know, who -- do you

9           understand that it's -- because its agents

10          and employees.  Right?  So No. 1 would

11          necessarily include the director, owner or

12          whatever.

13               But 3, I guess what I'm saying is, if

14          it's only Thomas Odom, that would be fine.

15          So I think in light of whatever you do for

16          1, if you would just please take a look at

17          3.

18               MS. GYEBI:  We can take a look.

19               MR. LAROSIERE:  Okay.  Thank you.

20               MS. LEITNER:  We'll take a look and

21          supplement?  Is that the --

22               MR. LAROSIERE:  Well, if she has to.

23               MS. GYEBI:  If there needs to be a

24          supplementation.  But we'll take a look.

25               MR. LAROSIERE:  It could be -- if

Page 174

1              there's no other -- so, you know, 1 is

2              about everyone who has control.  So that's

3              pretty clear that needs to be supplemented.

4                   But 3 is just agents and employees and

5              stuff, which wouldn't necessarily be a

6              sublevel.  And so if it's only Odom, then

7              it's only Odom.

8                   MS. LEITNER:  That's my understanding.

9              But we'll -- again, just in good faith,

10             we'll double check.

11                  MR. LAROSIERE:  I sincerely appreciate

12             it.

13                  I think we're willing to leave 4 alone

14             for now, because it's -- you're not

15             withholding anything, correct?  You assert

16             a legal conclusion.  We don't agree that

17             we're asking for a legal conclusion, but

18             that's fine.  If -- as long as the answer

19             is complete subject to objection.

20                  MS. LEITNER:  It's complete.

21                  MR. LAROSIERE:  Thank you.

22                  So, then for 5, you limit it to 2023.

23             I think if we can get this amended to

24             include 2022, right, because that would

25             necessarily be the publication of some of

Page 175

1          the works.  Can we agree to that?

2                  MS. LEITNER:  Yes.

3                  MR. LAROSIERE:  Thank you so much.

4                  MS. LEITNER:  We done?

5                  MR. LAROSIERE:  Yep.

6                  MS. LEITNER:  All right.  Great.

7                  (A discussion was held off the

8          record.)

9                  MS. LEITNER:  Rough draft for tonight.

10         But the transcript by the 1st and to split

11         the cost between both parties pursuant to

12         the Court's order.  That's what the order

13         required.

14                 MR. LAROSIERE:  We'll attach the

15         order.

16                 (Reporter clarification.)

17                 MR. LAROSIERE:  So rough draft.  Final

18         transcript by the 1st.  That's conditional.

19         We think we might be able to get an

20         extension.  So we'll get back with Veritext

21         as to whether the 1st is needed.

22                 (Reporter clarification.)

23                 MS. GYEBI:  If we can just get that on

24         record really quick.

25                 So exhibits to this transcript are

Page 176

1           going to be Defense Distributed's answers

2           to interrogatories, DEFCAD's answers to

3           interrogatories, Wilson's answers to

4           interrogatories.

5                Sorry.  I don't remember the order.

6                MR. LAROSIERE:  I do.  So in order,

7           they will be, first, Wilson's answers to

8           request for production, followed by --

9                MS. GYEBI:  Wait.  We attached that to

10          the first one.  This is what's getting

11          attached as exhibits.  So you want to

12          attach it as an exhibit to this one?

13               MR. LAROSIERE:  So not that one.

14               (Reporter clarification.)

15               MS. GYEBI:  No.  It should be --

16               MR. LAROSIERE:  Let me get this open.

17               First, DEFCAD's answers to request for

18          production, No. 1.

19               (Exhibit No. 1 was marked for

20          identification.)

21               MR. LAROSIERE:  No. 2, Defense

22          Distributed's answers to request for

23          production.

24               (Exhibit No. 2 was marked for

25          identification.)

Page 177

1           MR. LAROSIERE:  No. 3, Wilson's

2     answers to interrogatories.

3           (Exhibit No. 3 was marked for

4     identification.)

5           MR. LAROSIERE:  No. 4, Defense

6     Distributed's answers to interrogatories.

7           (Exhibit No. 4 was marked for

8     identification.)

9           MR. LAROSIERE:  And No. 5, DEFCAD's

10    answers to interrogatories.

11          (Exhibit No. 5 was marked for

12    identification.)

13          MS. GYEBI:  The file that Matt emailed

14    over includes our --

15          MR. LAROSIERE:  Oops.

16          MS. GYEBI:  So I just don't want you

17    to get confused.  That has absolutely

18    nothing to do with this.

19          All the documents that you need are in

20    that file, but disregard the RFAs.

21          MS. LEITNER:  Disregard the one I sent

22    you because that was for the other motion.

23          (The proceedings were adjourned at

24    2:26 p.m.)

25

Page 178

1          CERTIFICATE OF SHORTHAND REPORTER

2

3   STATE OF FLORIDA  )

4                     ) SS.

5   COUNTY OF SEMINOLE)

6

7        I, JULIE GIORDANO, Florida Professional

8   Reporter-Certified, Notary Public, do hereby

9   certify that I was authorized to and did

10  stenographically report the foregoing

11  proceedings and that the transcript is a true

12  and correct transcription of my stenotype notes

13  of the proceedings.

14

15       Dated this 30th day of November, 2025.

16

17

18

19

20  _____

21  JULIE GIORDANO

22  Florida Professional Reporter - Certified

23

24

25

**[& - 2025]**                                                     Page 179

| **&** |
|---|
| **&**   1:11 2:7 |
| **0** |
| **01629**   1:3 |
| **1** |

**1**   3:3 11:24
12:14,16 14:24
22:10,20 24:25
25:7 29:1 37:4
44:22 50:7
56:18 60:4 61:2
61:25 63:14
82:10 88:12
90:25 91:9,9
100:21 112:5
121:22 133:1,4
133:7 139:15
144:20 146:6
151:25 153:23
167:6 168:23
169:16 170:9,12
170:17,19 173:2
173:10,16 174:1
176:18,19
**100**   41:19 66:12
70:3,6,13,24
71:3,16,21,24
72:1,3,9
**101**   69:21 70:4
**102**   70:7
**103**   71:3

**104**   28:12 71:19
**105**   72:1
**106**   72:3
**107**   72:8
**108**   72:15 74:11
**109**   74:9,10
**1099s**   69:25
**10:15**   1:15
**10th**   159:23
**11**   104:7
**110**   74:8,24 77:9
77:13 78:7,8
**111**   1:12 2:8
77:12
**1115**   2:3
**112**   78:5
**113**   78:21
**114**   56:6 79:23
**11th**   10:2
**12**   41:14 92:13
93:2,20 104:13
**1200**   1:12 2:8
**12:13**   82:6
**12:20**   82:6
**13**   104:18
**14**   107:1,2
**15**   51:2 107:5,11
**15th**   127:8
142:5
**16**   22:12 26:6
28:22 107:14
**17**   107:18 110:3
114:6 119:16
121:9 138:24

**172695**   56:11
**176**   3:3,4
**177**   3:6,7,8
**18**   111:11 114:6
**1862**   13:19
**19**   112:20
114:13
**1981**   13:20
**1:54**   164:19
**1s**   69:25
**1st**   22:3 30:10
61:5,9,17 87:16
89:7 102:24
108:15 111:14
139:18 140:18
169:23 172:23
175:10,18,21

| **2** |
|---|

**2**   3:4 90:15 91:9
122:14 169:7
172:24 176:21
176:24
**20**   81:22 114:12
118:16 119:8,16
120:16 121:10
138:24
**2000**   56:19
**2015**   19:8
**2016**   19:9
122:17
**2017**   19:9
**2018**   13:21,25
27:3 68:24,25

87:16 88:12
90:20 105:25
106:7,11 122:20
139:18 145:5
**2019**   95:25
102:24 105:3,5
105:12 108:15
111:15 112:23
**2020**   56:10
**2021**   16:10
44:22 45:1,9
90:21 105:25
106:11
**2022**   14:8 43:9
44:6,12,18 45:7
60:4,4 61:2,25
63:15 97:16
105:21 106:5,9
106:19 109:1,2
109:4 113:24
114:1,3,16
116:21 145:6,25
146:7 166:22
174:24
**2023**   12:5,20
23:13 107:22
109:21 112:2
113:1,2 114:2
165:8 166:20
168:1 169:10
174:22
**2024**   159:23
**2025**   1:14 89:7
127:8 169:23

**[2025 - accordance]**

178:15
**22** 120:4,18
121:4 169:10,12
**23** 121:3
**2320** 126:24
**25** 1:14 28:20
**259** 28:13
**26** 11:24 22:10
22:20 50:7
56:18 100:21
151:25 153:23
**2:02** 164:19
**2:23** 1:15
**2:26** 177:24
**2s** 69:25

**3**

**3** 3:6 91:21
124:15 125:6,10
130:14 160:22
169:15 170:6
172:25 173:6,13
173:17 174:4
177:1,3
**3000** 2:3
**30th** 178:15
**32801** 1:13 2:8
**33** 166:10
167:19
**33145** 2:3
**34254** 178:19
**3b** 127:1
**3d** 53:10,14,20
53:24

**4**

**4** 3:7 37:23
92:10 125:6
126:10 174:13
177:5,7
**43** 28:12
**45** 25:11

**5**

**5** 3:8 95:13
128:10,24 129:1
130:17 144:21
174:22 177:9,11
**500** 145:2

**6**

**6** 41:14 144:22
150:15,16
159:15
**62** 31:2
**63** 4:3
**65** 6:2
**66** 6:24 7:17
10:12,13
**67** 10:6,15,16
**68** 13:7 15:2
**69** 17:15
**6:24** 1:3

**7**

**7** 144:22 158:12
159:22
**70** 24:13 27:10
**71** 27:8,13

**72** 27:12 28:6
29:6
**73** 36:20,21
**74** 36:24 37:6
42:12
**75** 43:1,6,22,23
**76** 42:22 45:13
**77** 45:21
**78** 45:25
**79** 46:5

**8**

**8** 102:9,14
**80** 46:8
**81** 46:11
**82** 46:15 50:1
**83** 51:2
**84** 52:9
**8403** 127:1
**85** 52:12
**86** 52:14
**87** 52:16
**88** 52:21
**89** 53:8

**9**

**9** 103:23 104:2
**90** 57:16,19 58:9
60:6,20 61:23
62:15,16,21
63:8,11
**91** 61:22 62:5
**93** 64:17,20,21
**94** 64:22 65:3

**95** 64:25 65:2
**96** 65:13,14,21
65:23
**97** 65:12,17,23
**98** 65:19,24 66:3
**99** 66:9

**a**

**a.m.** 1:15
**ability** 112:22
115:21 139:19
143:1 171:18
**able** 26:5 50:20
97:1 150:2
175:19
**above** 1:25 59:6
**absent** 116:22
**absolutely**
100:5 132:17
177:17
**acceptable** 59:3
**access** 52:25
80:4,16 81:2,10
84:16 139:21,22
**accessed** 80:17
81:16,18
**accessible** 8:14
81:3,17
**accident** 143:9
143:11,12
**accomplish**
21:20
**accordance** 89:5

[account - allegations]                                                Page 181

account   53:16
  55:6 63:1 70:8
  70:16 103:4,11
  115:3 139:20
  144:4 145:2
accountant
  118:22 119:3
accounting
  114:20 115:12
  115:13,16,17,22
  117:19 118:2,24
  119:4
accounts   62:6
  90:18 103:25
  121:24 139:16
  144:2,10 145:2
  149:19
accurate   41:18
accurately
  41:21
acknowledged
  58:2
acronyms   102:7
act   10:2
action   33:21
  34:3 78:12,18
  124:3 147:10
  152:14 157:5,25
  158:11 163:18
actions   101:21
  165:16 171:21
activities   48:2
activity   54:18

actual   12:11
  64:11 75:18
  89:1 94:22 95:3
  116:1,2 123:16
  147:9
actually   6:19
  7:6 14:16 17:5
  31:1 37:15
  42:20 47:8
  54:14 56:6 57:6
  74:14 92:24
  106:22 124:17
  132:22,24
  143:10 165:10
ad   18:22 25:11
add   10:4,23
addition   78:10
  78:17 138:22
  160:3 162:18
additional
  142:3 159:7
additionally
  23:17 96:23
address   127:13
  127:17,21 151:9
addressed
  136:22
addresses   32:7
  52:24 82:13,18
  83:3 87:18,20
  126:12,16
  139:17
adds   63:8

adjourned
  177:23
admissibility
  99:17,23 113:11
admissible
  18:24 48:23
  54:10 57:4
  67:20 77:5
  96:17 161:6
admitted   15:13
  76:21
admittedly   35:9
admitting   154:5
advisory   56:18
affidavit   130:8
  145:23 148:11
affiliates   108:3
affirmative   38:4
  39:1 40:24 53:4
  92:20
afterward   8:21
agents   173:9
  174:4
aggressive
  134:8
agree   6:3,24
  9:11 12:17
  20:22 24:24
  25:4,6 27:22
  40:6 41:19,19
  42:8,11 50:25
  52:2,10 61:24
  62:20 65:9
  70:12 71:17,20

71:22 72:8,17
  74:13 75:7
  78:22 88:17
  93:24 107:12,16
  113:22 119:24
  120:1 124:11
  144:16 154:21
  166:21,23
  172:13 174:16
  175:1
agreed   33:11
  37:2 45:23 46:2
  61:1 64:23
  71:25 72:2
  88:24 107:13,17
  107:20,20
  109:20 110:1
  116:18 120:3
  137:12,23
  138:23
agreeing   43:18
  62:23 108:8
  112:1
agreement
  15:10 118:8,9
  147:17
agreements
  120:2
ahead   170:14
aliases   124:20
allegation   15:8
  40:21
allegations
  69:11 97:22

**[allegations - asked]**

101:14 149:24
156:9
**alleged** 22:13
38:1,24 96:24
101:6,20 147:1
148:4,18 149:10
152:1 156:6
157:15
**allegedly** 28:11
37:12
**alleges** 96:21,21
**alleging** 93:10
101:17 145:8
147:24
**allow** 104:24
**allowed** 40:15
41:10
**alter** 68:1,8,17
83:17 96:21
97:22 99:14
100:13 101:4,5
101:11,13
149:23 150:4,8
**alternative** 85:3
**amaris** 2:6
159:13 167:18
**amaris.gyebi**
2:9
**ambiguous**
93:21 166:1
**ambush** 21:17
**amend** 29:13
44:3 114:9,16

**amended** 11:19
22:11 25:9 26:8
28:10 30:8 43:7
44:13 45:5 50:4
60:6 64:12 72:5
77:21 79:2 81:5
86:9 89:4,9,10
89:13,18 149:6
152:6 172:9
174:23
**amendment**
138:9 161:14
**amount** 22:5
96:9
**analogize**
136:10
**analogy** 134:6
138:6,7
**annoying** 138:8
**annual** 102:22
**answer** 7:3 8:3
33:19 34:14
54:5,7,23 71:6
92:18 116:12
118:16,25 119:6
119:8 132:7,9
134:19 136:4
139:9 140:7
147:21,21 154:1
154:2 155:24
161:19 164:21
165:4 166:16
168:4 170:23
171:7 172:9

173:7 174:18
**answered** 122:3
**answering**
128:15 129:2,2
135:4
**answers** 3:3,5,6
3:7,9 15:15
16:14 121:15
125:5 164:7,10
167:21 176:1,2
176:3,7,17,22
177:2,6,10
**anticipating**
158:21
**anybody's** 20:7
**anyway** 21:18
34:24 117:20
149:17
**apart** 133:16
**apartment** 2:3
**apologies** 167:9
**apologize** 42:4
**appearances** 2:1
9:18
**appearing** 9:15
**appears** 42:25
43:4 73:3
**apples** 136:18
136:18
**applicable**
154:23
**applies** 27:21
**apply** 50:22
54:16 136:7

155:25 156:1,3
**appreciate** 23:7
77:25 119:10
169:5,6 174:11
**arbitrarily**
23:13 26:11
165:7
**area** 126:19
**areas** 137:25
**arguendo**
155:13
**argument** 84:20
92:9
**arguments**
99:22
**arkansas**
150:25
**arrested** 149:14
**articulable**
39:25
**articulate** 50:21
74:6 150:20
152:8
**articulated** 35:3
69:6 76:6 88:16
144:18
**aside** 23:23 27:2
65:9 72:17
130:24
**asked** 8:17 15:7
40:19 44:17,22
44:22 48:21
123:10 124:19
144:1,7 156:24

**[asked - based]**                                                                 Page 183

163:11 171:1
**asking** 4:25 5:8
  5:12 8:16 13:12
  23:5,7 24:1,10
  24:15,16 26:25
  31:19 33:25
  34:9 35:7 37:10
  37:18 38:8 39:9
  39:13,20 40:7
  40:23 44:5 47:8
  47:19 51:24
  52:3 54:1,6
  66:12 69:24
  74:14 75:21
  78:6 86:15 87:5
  91:18 93:1,8,18
  94:11,24 95:22
  95:24 99:17
  104:8 106:8,17
  107:6 110:10
  112:11 114:13
  117:6,8 122:15
  123:13 138:10
  146:24 150:16
  153:14,17
  159:22 160:4
  161:21 162:7
  168:11 170:17
  171:11 174:17
**asks** 6:24 8:8
  15:2 37:25
  92:12 102:9
**aspect** 21:7

**assert** 4:7 28:1
  38:16,17 51:10
  57:21 63:23
  75:2,4 122:7
  174:15
**asserted** 8:23
  12:10 38:4 39:1
  56:13 73:17
  79:8 92:16,18
  133:8
**asserting** 4:8
  12:11 28:16
  29:15 38:20
  72:18
**assertion** 14:24
**asserts** 53:4
**asset** 70:16 96:4
  123:24 151:1
**assets** 48:5
  71:10 87:19
  88:14 91:22
  92:3 96:22 99:9
  108:7 123:7
  124:2 147:14
  148:5,6,9,12
  151:4 153:9
  161:7
**assist** 170:23
**assists** 172:16
**associating**
  99:15 101:11
**assume** 54:22
**assuming**
  155:13

**attach** 162:4
  175:14 176:12
**attached** 161:25
  176:9,11
**attempt** 76:22
**attempts** 52:25
**attenuated**
  140:15 154:20
**attenuating**
  108:21
**attenuing**
  153:13
**attorney** 9:16
**attributable**
  68:13
**austin** 126:18
**author** 64:1
**authored** 113:4
  113:9
**authority** 9:25
  10:3 56:8,12
  76:12
**authorization**
  28:12
**authorized**
  98:17 178:9
**available** 75:6
  80:21
**avenue** 1:12 2:8
**avoid** 6:18 17:2
  24:21 60:13
  148:17
**avoiding** 34:8

**aware** 25:14
  160:8,24

**b**

**b** 3:1 11:24
  22:10,20 41:14
  50:7 53:19
  56:18 100:21
  151:25 153:23
**back** 14:12
  15:18 17:2 19:5
  19:8 31:1 36:8
  48:12 52:1
  72:15 74:25
  75:14 83:13,23
  118:15 120:4
  121:8 122:17
  139:15 140:24
  143:5,16 144:20
  145:4 175:20
**bad** 98:24
**baked** 92:8
  109:5
**balance** 102:25
**balances** 103:25
**bank** 69:8
**barrier** 68:11
**based** 11:16
  12:1 22:23 23:2
  23:25 37:17
  41:3 69:11 93:5
  108:19 109:13
  113:15 127:2,24
  134:4 146:2

**[based - capacity]**                                                           Page 184

157:15 161:2
**bases** 50:5
**basic** 49:24
**basically** 52:1
  62:11 79:8
  92:22 117:23
  151:22
**basing** 146:3
**basis** 10:24
  49:10,19,20
  107:21 108:15
  123:25 127:19
  152:12 165:7
**basra** 63:23
  64:6 76:9
**bear** 146:22
  155:1
**bearing** 73:8
**bears** 160:6
**beginning** 29:21
  33:7
**behalf** 4:13,19
  9:15 31:12
  33:11
**belief** 38:3 39:4
  40:9
**beliefs** 147:6
  163:19
**believe** 4:15
  10:16 13:3 19:1
  27:4 29:13 40:3
  54:13 65:23
  73:7 74:5,5
  76:18,21 105:20

117:13 124:2
125:24 130:7,19
157:10 161:9
168:13
**believed** 38:1
**believes** 103:5
**belong** 10:22
**belonging** 25:13
**belongs** 10:9
  24:15
**belt** 85:11
**benjamin** 45:22
**best** 123:12
**better** 4:5,18
  28:3 73:20 75:1
  124:23 133:13
**beyond** 12:21
  22:9,15 47:20
  50:6 56:6,7
  69:14 72:6
  97:17 100:21
  132:15 140:2
  141:6,7 151:24
  154:18 166:2
**big** 48:24 98:20
**binary** 125:19
**bit** 8:16 169:11
**bitcoin** 90:22
**blacklisting**
  158:3
**blah** 124:22,22
  124:22
**blow** 19:10

**board** 98:18
  125:7 131:2,12
  136:12
**bond** 148:10,12
  148:14
**books** 99:5
**bottom** 36:16
  41:1 82:11
**bought** 155:16
**brain** 142:18
**break** 164:16
**brief** 82:5
  164:18
**bring** 92:15
**bringing** 6:14
  38:19
**broad** 8:16 13:5
  22:17 95:2
  100:8 106:7
  139:11 140:13
  140:14 143:22
  144:13 152:15
  153:19,20
**broadly** 131:23
**brought** 27:19
  54:21
**budging** 89:21
**building** 126:12
**buildings**
  126:13
**bunch** 101:2
**bungle** 134:7
**burden** 55:9,11
  66:21 111:4

139:12 145:14
**burdensome**
  66:19
**business** 24:19
  82:14 83:8
  111:14,23 123:4
  125:25 126:25
  139:5 146:14,20
  165:15 171:20
**businesses** 90:4
  150:23 151:10

**c**

**c** 53:19
**calculated**
  18:24 48:22
  54:9,17 57:3
  68:6 77:4 99:3
  161:5
**calculation**
  139:13
**call** 36:9 86:17
  94:19
**calling** 88:2
**calls** 36:25 37:5
  39:6 77:16
**canceled** 36:21
  104:4
**capacity** 4:4
  7:21 24:18,23
  26:13 28:3
  31:11 82:14
  84:25 122:6
  124:22 125:23

**[capacity - clear]**                                    Page 185

125:25 126:7
128:16 129:13
131:1,8,11,19
131:20 132:5,10
133:11,20
134:16,19 135:3
135:10,18,24
138:14 139:4,5
139:6 140:7,10
141:18 142:17
143:6 158:25
159:1
**capitalized**  29:2
29:9
**car**  143:9,11
**card**  98:13
**care**  55:20
**case**  1:3,25 5:16
13:24 19:11
36:14 48:2 56:8
66:14 77:24
94:10 97:19
100:6,15 106:22
119:5 126:1
130:11 132:17
134:7 135:2
146:22 147:7
148:8 154:15,23
156:6 157:16,16
160:6 163:7
**cases**  133:19
**cash**  70:16
103:1

**catchall**  75:17
104:10
**categories**  38:13
51:17 138:12
**categorize**  39:14
51:25
**categorizing**
51:16 52:5
**caused**  92:17,24
163:12,15
**certain**  20:4,14
100:9
**certainly**  25:24
57:15 81:13
93:22 113:3
127:18 155:10
167:20
**certificate**  14:5
159:23 161:13
178:1
**certificates**  16:6
**certified**  178:8
178:22
**certify**  178:9
**cetera**  63:23
76:9 96:5
**change**  121:3
147:22 166:21
**changing**  33:9
**characterization**
113:22
**chart**  167:14
**charts**  103:25

**chat**  62:11
**chat.com**  62:9
**chat.deterrenc...**
62:4
**chat.deterrenc...**
63:4
**check**  174:10
**checks**  104:4
**choice**  24:11
**christina**  2:6
**circle**  118:15
**circling**  31:24
**circuit**  10:2
**circumstances**
47:10 162:21
**cite**  57:10
161:10
**cited**  68:21
**civ**  56:18
**civil**  166:9
167:18
**claim**  7:9 41:15
54:20 72:22
97:4 98:4 99:7
99:14 101:10
151:3 152:12,13
156:15,15 157:4
171:13 172:1
**claimed**  48:4
**claiming**  148:25
**claims**  22:16
56:13,16 57:2,4
66:16 74:20
79:20 98:6

100:10,13 147:9
153:21 154:15
157:12 163:17
163:21
**clarification**
29:17 34:23
46:4,19 53:12
72:23 79:3 82:2
83:4 95:11
110:2,10 120:22
121:13 160:1
164:17 168:9
175:16,22
176:14
**clarified**  170:5
**clarify**  4:11 9:17
21:23 22:21
25:5 69:17
100:23 101:24
115:6,10 150:13
165:18 171:22
**clarifying**  78:14
78:17 115:8
169:4 170:3
**class**  114:14
**clean**  32:15
**clear**  4:12 12:4
12:10 25:12
28:25 29:21
39:8 47:4 48:7
69:20 88:23
96:3 102:20
114:22 125:3
131:10 133:5

134:2 140:11
174:3
**clearly**  87:13
**client**  34:18
84:1 126:19
**client's**  84:2
**closely**  99:9
110:20
**club**  98:15
**coca**  98:25
**code**  26:15
**cody**  1:7 6:12
68:10 138:14,15
150:16 160:3
164:7
**cola**  98:25
**colloquy**  21:19
21:22 24:4
**combine**  157:14
**come**  20:1,9
102:11 148:15
151:8
**comes**  23:19
145:15
**comfort**  164:16
**comfortable**
50:9
**coming**  113:17
**comma**  141:17
141:18
**commingling**
67:23,24 68:4,7
69:2 96:4,14
97:5,7,22 98:7

98:20 148:5
149:23 150:4,8
**committee**
56:19
**committing**
134:8
**common**  13:25
**communicate**
115:24
**communicated**
76:19 94:4
**communication**
8:21
**communicatio...**
42:22 45:1,2,13
46:24 47:3 75:8
75:15,22,25
77:3 79:16
94:21,25 112:20
**communities**
54:12
**companies**  36:3
36:19 73:4
96:23 123:9
127:2 130:14
149:20 159:4
**company**  49:12
49:14,16,17
82:19 92:3
98:13 117:14
124:20 129:21
136:11 162:11
**comparison**
136:18

**compartmenta...**
135:9
**compel**  44:16
**competition**
101:9 156:2
**complaint**  11:19
19:22 20:24
21:3 22:11 25:9
25:18 26:8
28:10,22 36:7
40:19 49:21
50:3,4,15 53:2
55:2 64:13,15
69:7,11 70:18
77:21 79:2 80:6
81:5 96:19,20
101:16 149:6,10
152:6 156:10,24
157:7,15 158:10
163:17 166:4
**complete**  43:13
95:24 127:5,7
161:19 170:25
172:22 173:2,3
173:6,7 174:19
174:20
**completely**  41:3
136:8 155:15
166:24 167:22
168:4
**compliant**  26:15
**complicate**
14:16

**complied**  21:24
21:24
**comply**  113:19
113:19
**component**
115:2
**compromise**
20:1 26:5
**computer**  15:3
17:16 92:13
93:3,9,19 94:12
**computers**
118:13
**concede**  85:3
**conceptual**
146:10
**conceptually**
135:7 155:6
**concern**  45:14
74:25 128:6
149:22 167:23
169:16
**concerned**
127:17 130:1
158:17
**concerning**  5:18
46:17 48:2
54:25 75:10
77:11 78:22
79:16 92:13
112:21 128:17
132:12 133:12
155:10

**concerns** 10:17
73:25
**concession**
140:25
**conclusion** 37:1
37:6,10,18 38:6
39:6,15 41:4,6
41:13 102:12
174:16,17
**conclusions**
38:8 39:22
**condition**
112:22
**conditional**
175:18
**conduct** 22:14
25:20,23 49:8
53:5 123:8
135:20 146:21
**confer** 1:18
26:21 82:22
96:7 110:13
151:14 162:24
163:3,24 169:24
**conference**
153:11
**conferrals** 166:4
**conferring**
163:9
**confidential**
127:19
**confine** 56:12
**confined** 100:16

**confirm** 64:10
96:12 97:9
103:14 161:19
167:1 168:6
172:21
**confirmed**
152:23 153:2,7
164:3 168:7
**confirming**
163:10
**confirms** 152:25
**conflating** 41:17
**confused** 37:24
57:20 145:13,17
177:17
**confusing** 24:5
24:5,7 93:14
117:11
**confusion** 58:14
163:10,12,15
**connection** 74:6
150:23 151:9
155:22
**consciously**
135:14
**consider** 60:14
**consolidated**
69:8
**construed** 40:5
**contact** 165:20
171:1,25
**contend** 67:9
170:20

**contended** 26:2
**contends** 53:6
87:4
**contention**
23:15 40:16
41:11 42:2,6,7
42:11 48:24
**contentious**
26:1 41:20 42:2
42:3,4,5
**contents** 24:17
24:17 62:3,8
63:3
**context** 18:12
110:18
**continue** 18:2
61:15 106:25
137:11
**continued** 151:9
**continues**
148:16
**continuing** 4:7
29:22
**continuous**
86:24
**contractors**
58:24 59:4,8
**contravention**
141:7
**contributing**
54:19
**control** 4:8,10
4:23,24 5:14,25
6:1,5,17,23 7:24

8:5 9:6,9 23:12
25:2 27:15
29:16 31:5,7,9
31:20,23 32:2,7
33:14,18 35:5
35:14 42:25
43:5 45:17,18
45:22 46:1,6,9
52:10 53:8
55:16 57:21
58:7 64:22
66:19 72:16
74:17 79:24
83:8 84:17,21
84:23 85:2,4,6
87:4 90:1,12
91:5,10,14,14
95:10,18 121:24
121:25 122:7,25
123:1,5 124:18
124:25 126:5
129:14,16
130:24 131:24
133:8 139:17,18
164:25,25 165:2
165:10,14 166:2
166:25 168:11
168:16 170:20
171:11,14,20
172:1,5,18,20
174:2
**controlled**
133:24

**controlling**
85:18 110:20
168:22
**controls** 83:9
85:13 87:4
125:18 130:15
**controversy**
36:17
**conversation**
26:18 59:12
144:23
**conversations**
137:20
**conversely**
68:14 98:5
**copies** 10:7,20
11:4,5,11,25
12:11,19 13:13
13:19,20 23:6
23:18,24 24:17
**copy** 14:13
25:16 54:14
56:20,24
**copyright** 5:20
10:2 15:14
16:13 22:13
26:1,7 28:9 35:8
53:10,14,19,23
54:15 59:16
64:12 70:17
78:22 79:8,12
80:7 81:4 87:22
92:4 97:4,15
101:8,19 108:21

108:24 130:20
152:5 154:20
156:2 158:24
160:9
**copyrighted**
12:12 23:6
48:15 55:1
77:20 79:1 80:5
81:6 140:16
147:15,19
148:23
**copyrights**
54:25 108:23
145:5,9 147:3
**coral** 2:3,3
**corp** 36:9
**corporate** 68:11
83:15 101:21,22
133:20 134:13
134:17,20 135:5
143:13 149:25
150:1 159:1
**corporation**
35:14 98:21
101:7 131:13
133:23 138:16
150:3 155:16,19
**corporations**
35:24 48:6,25
68:15 72:6
151:5 160:21
161:8
**correct** 23:10
29:3 30:17

33:22,24 41:6
41:10 44:1 51:5
58:7 64:14
68:24 70:19
81:19 88:19,20
91:19 109:8
121:6 129:5
174:15 178:12
**correctly** 40:12
**cost** 175:11
**costco** 98:15
**costs** 139:14
**counsel** 2:5,10
17:12 155:12
**counsel's** 153:6
**count** 99:15
100:14 101:1,16
150:6
**counterclaim**
157:3
**counterclaims**
92:19
**country** 149:18
149:21
**counts** 101:2,3,6
150:11
**county** 178:5
**couple** 44:21
82:13 137:23
**course** 12:13
60:8 82:18
85:21 88:8
92:19 111:6
113:1 171:10

**court** 1:1 6:22
9:18 16:3 20:10
20:22 24:11
30:7 31:25 32:4
32:6 39:5 56:11
56:12 57:5
61:15 98:4
105:24 106:10
138:2
**court's** 175:12
**courtesy** 80:14
93:15 150:21
**cover** 72:5
169:18
**coverage** 111:13
**covered** 107:10
173:1
**covers** 28:20
82:12 91:3
111:22 169:17
**create** 17:3 57:2
**created** 15:9
16:10 23:14,16
73:10 109:1
145:25 149:3
**creation** 13:24
14:7,12 19:10
46:16,17 97:14
108:25 145:23
146:20
**credit** 98:13
104:15
**creditors** 112:21

[criminal - defense]

**criminal** 34:17
**cross** 34:6,8,12
  34:20 127:1
**crossing** 60:21
**crusade** 149:7
**crusader** 146:25
**cryptocurrenc...**
  139:20 149:19
**cryptocurrency**
  90:16 121:23
  139:16 144:2,3
  144:10
**csv** 118:4
**curiosity** 71:5
**current** 126:15
  127:13
**currently** 5:20
  126:11 148:16
**custody** 4:22
  5:13 6:17 8:4
  9:6 31:20,23
  32:2 33:18 35:5
  35:13 66:18
  84:17 85:5
  95:10,17
**cuts** 99:7
**cv** 1:3

**d**

**dad** 160:12,18
**damage** 116:12
**damages** 67:18
  96:14 97:3,10
  97:21,23 99:13

116:10 123:25
**data** 8:13 92:17
  92:24
**database** 49:9
**date** 1:14 22:3
  22:15 87:17
  94:3 97:10,11
  106:5 146:7
  160:6 163:4
  168:12 169:1
  171:9
**dated** 14:8
  178:15
**dates** 14:7,7,12
  97:15 105:21
**day** 20:3 29:21
  29:23 35:21
  36:13 170:24,24
  172:16,16
  178:15
**days** 172:19
**dd** 46:16,17
  50:2,12 128:17
  129:14 130:9,15
  130:18 132:12
  159:23 160:16
  161:14 162:19
**dealing** 140:3
**debating** 8:1
  17:7
**debt** 112:23
**december** 22:3
  30:10 37:4 61:5
  61:9,17 89:7

169:23
**decipher** 38:8
**declare** 19:15
**decline** 116:11
  131:2,13
**declined** 130:21
**deem** 87:7
**deemed** 56:1
**deeper** 143:21
**defcad** 1:7 4:6
  4:18,19 5:4 6:9
  6:20,21 7:3,3,23
  8:9,11,16 30:13
  33:2 80:2,9,18
  80:19,20 81:1,3
  81:10,18 82:8
  82:13 83:2,9,11
  85:25 88:6
  91:10,12,16,18
  92:14,25 93:2
  93:12,18 94:23
  95:23 96:10,23
  102:24 105:2
  108:4,18 111:12
  119:23 158:7
  170:7 171:21
  172:17,21
**defcad's** 3:3,9
  6:25 8:15 81:21
  90:18 112:21
  119:12 158:2
  176:2,17 177:9
**defendant** 4:3
  4:13,16 5:3,5

7:21 25:14
  26:21 28:4,11
  30:12 31:13
  32:19,21,24
  33:5,12 34:2
  43:24 48:1
  54:11 57:19
  58:24 59:25
  61:3 62:1 63:13
  67:14 68:9 72:5
  73:21 75:2
  83:21,25 90:5
  96:24 111:10
  121:24 124:21
  124:23 128:15
  129:23 130:11
  132:10 133:10
  133:14 142:22
  145:8 152:11
**defendants** 1:9
  2:10 7:24 21:24
  22:14 33:21
  48:8 53:7 70:20
  87:1 92:16
  123:8 133:12
  152:14
**defense** 1:8 3:5
  3:7 5:4 7:4
  30:12 33:2
  34:17 38:4 39:1
  40:24 53:4
  62:12,23 66:16
  83:14,24 92:21
  93:10 119:14,23

**[defense - discovery]**                    Page 190

152:13 153:6
164:9,21 165:2
165:16 168:17
170:18 176:1,21
177:5
**defenses**  56:13
56:16 74:20
100:11 147:9
153:22 154:16
157:12 158:23
163:17,22
**deficient**  32:13
32:14 39:19
87:2
**define**  59:9
121:25 171:15
**defined**  11:15
29:2,3 38:12
59:7 80:6,7
170:21
**defines**  25:8
**defining**  104:20
**definite**  13:14
119:8
**definition**  11:14
25:6 29:7 59:13
59:14 76:11,14
110:23
**deliberately**
38:21
**delineate**
154:11
**delineated**
19:21 98:17

**denio**  45:22
**dennis**  159:25
162:17
**depends**  133:22
134:1
**deposit**  104:3
**deposited**  90:17
**deposition**  1:25
141:22 143:2
159:9
**depthly**  118:14
**describe**  128:11
150:17 151:7
**designed**  92:23
**desktop**  17:16
**despite**  35:11
**detection**  52:25
53:1
**determine**  24:12
37:12 106:11
158:19
**devastate**  19:9
**devastating**
23:20
**develop**  56:15
**device**  10:8
24:15,18 27:9
**devices**  10:22,25
11:5,6,12 24:23
**devine**  27:1
**dicker**  1:12 2:7
**dictate**  54:4
**difference**  24:14

**different**  27:8
52:19 59:5,12
60:16 62:14,16
63:21 69:22
72:9,12 81:24
83:18,22 88:7
99:24 105:14
107:6 111:20
114:14 119:19
136:8,12 157:13
**difficult**  19:18
**digit**  58:12
**digital**  79:9
**diligence**  135:21
**diligent**  19:16
26:16
**dioskouroi**  1:8
5:5,9 33:7
133:24
**direct**  123:4
134:18 142:14
171:19,19
**directed**  4:18
7:22 28:4 32:20
73:20 75:1 83:6
124:23 125:14
131:14 133:14
136:2 138:4
142:22,23
**directly**  70:20
**director**  140:9
173:11
**directors**  98:18

**directs**  8:10
**disagree**  28:17
48:17 86:7
131:4,6 144:16
157:21 163:14
**disagreement**
89:25 92:1
144:25
**disclosing**
129:11
**disclosure**  129:8
132:11,14 133:2
**disclosures**
112:6,8
**discord**  53:16
54:1 55:5
**discoverability**
76:7 93:17
99:18,24
**discoverable**
25:19 48:15
69:14 99:4
116:14 155:23
156:20
**discovery**  18:22
21:8,10 22:9,15
28:21 39:21
41:16 48:22
49:22 54:9
55:24 56:13,15
57:3 68:7 73:3
73:12 77:5 81:7
84:9,16 85:6
100:7,16,18

**[discovery - easy]**                                           Page 191

153:20 156:25
157:10,11,17,19
161:5
**discreet** 165:18
**discuss** 17:22
37:15 53:19
116:20 137:13
137:18 154:22
159:8
**discussed** 4:21
5:15 6:14 12:14
18:22 20:15
25:10 80:2
88:13 91:24
151:24
**discussing**
55:18 73:23
75:15 149:8
159:15
**discussion** 9:20
19:2 21:4 53:23
53:24 54:3 55:2
61:20 72:12
76:8 102:11
107:10,12,15,19
121:2,19 124:8
124:12 137:9
146:13 175:7
**discussions** 21:1
54:2 77:17
**disgorgement**
148:25 149:1
153:16

**disinformation**
158:8
**dismissed** 157:3
**disproportion**
22:20
**disproportion...**
66:21 86:4
94:19
**disputed** 48:5
148:7
**disregard**
177:20,21
**distributed** 1:8
5:4 7:4 30:12
33:3 119:23
165:3,16 168:17
**distributed's**
3:5,7 119:14
164:10,21
170:19 176:1,22
177:6
**distribution**
148:5 151:3
**district** 1:1,1
56:10 156:22
157:8
**divergent** 124:1
**diverted** 96:22
**dividends** 98:9
**divine** 7:24
**division** 1:2
**divorce** 49:6,11
**doc** 28:12

**document** 36:5
39:15 47:7
72:19 80:8 89:6
161:10,22 162:8
166:8
**documents** 4:5
5:1,9 13:4 14:6
19:8 21:13 22:5
23:1 26:17
29:19,25 30:1,6
30:9,13 33:17
35:3 37:3,11,19
38:11 40:7 43:8
43:19,25 44:2
45:3,4,9 46:23
47:3,9 49:25
58:5 60:7,19
75:7,18 83:7,25
84:5,18 85:15
85:19 86:10
88:22,25 89:3
93:1,12 94:21
94:22,25 95:3
103:4,9,12
105:5,13 106:9
107:7 108:9
109:18 110:1
112:1 116:2
118:8 142:9
147:17 162:4
165:6 166:12,15
166:24 167:11
167:15 169:18
170:1 177:19

**doing** 25:22
51:20 105:22
144:5 145:11
148:2 159:18
**donald** 35:20
**donley** 126:24
**double** 174:10
**doubt** 54:13
**downloaded**
114:25 117:8
**draft** 175:9,17
**drafting** 64:19
75:3
**drain** 31:25
**drive** 126:24
127:1 146:17
**driving** 143:9
**dropped** 92:20
**dropping** 143:6
**dually** 98:9
**due** 38:2 39:4

**e**

**e** 3:1 72:25
**earlier** 11:14
57:17 63:22
75:16 76:8 82:1
97:14
**ears** 135:14
**earth** 84:3
**easier** 55:4
**easy** 46:14
79:23

**[edelman - evidence]**                                    Page 192

**edelman** 1:11
  2:7
**effect** 167:14
**effective** 120:7
**effectively** 18:14
  117:17
**effort** 26:16
**ego** 68:1,8,17
  96:21 97:22
  99:14 100:13
  101:5,5,11,13
  149:24 150:4,8
**egos** 83:17
**either** 15:9 23:1
  30:5 38:12
  56:23 74:6
  100:14 140:8
  142:9 159:7
  161:16
**electronic** 118:1
**elects** 106:20
**elements** 171:23
**eligible** 132:4
**elik** 78:6,11,18
**elik's** 125:5
**elon** 137:4
**elser** 1:11 2:7
  33:2
**email** 56:24
  57:11 81:24
  110:22 111:2,6
  111:10 162:9
**emailed** 177:13

**employed** 171:9
**employee** 57:18
  135:3,6
**employees**
  53:17 55:7
  57:20,23,25
  58:12,15,20,23
  59:7,22 60:15
  61:2 62:1 63:2
  63:13 159:3
  173:10 174:4
**enabled** 80:17
**encompass** 90:3
**encourage**
  76:24
**encouraged**
  54:14
**encouraging**
  73:8
**endeavor**
  106:19
**ended** 8:14
**engaging**
  152:10
**enterprise**
  147:25
**entire** 66:20
  72:11,18 147:13
**entirety** 114:23
**entities** 4:13,16
  4:24 5:3 7:7
  8:24 30:12
  31:13 32:11,19
  32:21,24,25

33:1,5,12 48:1
58:3,25 59:25
61:3 62:1 63:13
68:9 73:21 75:2
83:16 84:23
87:3,9 90:6 91:6
94:23 95:4 99:9
101:18 108:3,4
123:4 124:24
128:12 129:23
130:11 133:13
133:14 136:17
139:22 140:23
142:23
**entitled** 18:19
  19:25 20:4,5,18
  20:20,22 31:22
  35:3,12,18
  103:6 106:18
  145:3
**entitlement**
  56:15
**entity** 5:5 6:21
  24:19 28:4 49:7
  83:21 84:21
  85:3,7,13,18,20
  86:16 98:8
  108:20,22 116:4
  125:17 129:16
  129:19 132:3
  133:23 134:3
  165:22 171:13
  172:1

**enumerable**
  147:1
**error** 128:19
  132:23
**esi** 84:12
**especially** 6:8
  48:23 128:14
  136:9 145:15,20
  148:25 155:8
**esquire** 2:2,6,7
**essentially**
  39:14 92:2
  117:21 140:18
  169:25
**establish** 30:21
  32:18 47:9
**estate** 82:12
  83:1 90:20
  119:21 122:15
  123:6,12,17
  124:9 152:2
  153:18 155:5
  160:12
**et** 63:23 76:9
  96:5
**event** 34:17 74:7
  84:7 85:1 99:1
**everybody**
  169:17,19
**evidence** 16:15
  18:25 37:25
  39:11 40:7,20
  48:23 54:10
  57:4 68:7 69:2,5

**[evidence - filed]**                                                                    Page 193

69:10,14 75:24
77:6 96:17 99:4
146:2 156:20,23
161:6
**exact**  13:7 63:7
63:10 102:17
114:12 117:18
143:23
**exactly**  8:13
44:25 102:1
117:10 141:20
**examination**
34:8
**examined**  34:6
34:12,20
**example**  6:18
7:12 19:2 35:15
79:5 83:23
85:24 97:24
98:23,24 133:24
**except**  15:3
119:23
**exchange**  98:22
**exchanged**  75:8
75:23 95:4
**exclude**  36:5
**excuse**  16:19
168:23
**exerting**  172:1
**exerts**  165:14
171:11,13,19
**exhibit**  3:2,3,4,6
3:7,8 176:12,19
176:24 177:3,7

177:11
**exhibits**  175:25
176:11
**exist**  13:19 17:5
19:17 21:13
26:17 60:11
63:17 77:23
79:9 97:18
108:18 109:2
146:11 148:14
**existed**  13:14,21
16:22 105:3
113:8
**existence**  108:20
145:6 147:24
**exists**  169:19
**expands**  59:15
76:14
**expect**  123:7
**expedient**  107:8
**expedition**
106:17 152:11
152:19,25 153:1
153:8 155:9
**explain**  18:18
19:24 108:14
162:14
**explained**  97:13
**explaining**  93:6
109:12
**explanation**
86:21 87:11,25
99:2

**explanations**
151:11
**explore**  141:23
163:20
**export**  118:3
**exposed**  62:7
63:3
**expressed**  58:13
**expressly**  36:6
**extend**  116:21
**extended**  24:4
124:12
**extension**
175:20
**extent**  4:11,17
14:5 30:3,11
33:13 41:12
51:13 60:7
63:16 115:16
127:16 139:23
147:18 158:23
**extra**  12:7
**eye**  20:7
**eyeballs**  135:13

**f**

**fact**  21:17 24:3
24:9 25:17
31:10 56:5 71:9
94:18 98:5
109:25 147:12
163:13,16
**facts**  39:10,21
40:20 41:15

136:8 154:14,22
156:4,5,8,10
**failure**  84:12
**fair**  35:10 70:25
71:4 142:1
**fairly**  66:5,13
**faith**  20:12
32:18 38:3 39:4
40:8 115:22,25
142:2 155:3
174:9
**family**  98:1
110:21
**far**  22:9,15 25:7
66:22 99:13,13
129:14 151:25
**father**  160:23
**fed**  56:17
**federal**  11:17
67:8 68:2 95:22
141:8 166:9
167:18
**feel**  18:19 44:18
48:7 50:8 88:15
88:18 123:11
137:2,7
**fight**  52:4
**figure**  55:8
67:13 118:17
128:6
**file**  156:23
177:13,20
**filed**  1:25 67:9
95:23 148:10

**[filed - funneled]**

157:4,5,7,8
**files** 5:19 6:8
8:14 10:25 11:6
80:4,4,10,16,16
80:20 81:2,3,10
81:12,14,15,17
114:24 115:9,11
115:14,24
116:16 117:7,13
117:19
**filings** 8:18
**final** 14:13
117:16,22,24
175:17
**finances** 117:14
148:4
**financial** 22:18
102:15,23 107:7
112:22 116:3
165:15 171:20
**financials**
147:10
**find** 14:9 19:19
54:17 92:23
139:11
**finds** 74:22
**fine** 31:15 51:15
55:13,21 60:24
65:8 66:8 84:21
106:12 126:2
128:2 138:18
167:2 168:6
169:20 173:14
174:18

**finished** 159:14
**finite** 22:12
**firearms** 71:7,8
71:10
**firm** 134:11,14
135:3,6,23,25
136:1 143:14
**firm's** 134:17
**first** 11:19,20
22:11 25:8 26:8
28:10 50:4
64:12 69:2 79:2
81:5,25 122:17
140:13 146:10
146:11,11 148:7
148:8 149:5
152:6 156:1
160:16 161:20
164:10 167:8
176:7,10,17
**fishing** 106:17
152:10,19 153:1
153:8 155:9
**five** 82:3 94:11
170:8
**fix** 108:9
**flat** 133:6
**fled** 149:17
**florida** 1:1,13
1:22,24 2:3,8
156:22 178:3,7
178:22
**flow** 103:2

**flowing** 68:9
**flub** 84:12
**focused** 118:11
**follow** 85:9
135:8 138:7
**followed** 176:8
**following** 63:5
155:13 170:22
**footnote** 12:14
12:16 14:24
24:25 25:7
27:20 28:14,16
29:1
**foregoing** 26:20
178:10
**foreign** 52:24,25
53:1
**forget** 60:24
**fork** 20:7
**form** 68:17
167:13
**format** 118:1
**formation**
129:19
**forth** 14:12
15:18 17:2
**forward** 23:8
106:20 113:6
**fought** 165:1
**found** 13:20
43:8
**foundation**
46:16,16,18
47:24,24 48:9

50:2,13 128:17
129:15 130:9,15
130:18 132:12
159:24 160:16
161:15 162:19
**foundation's**
48:10
**founded** 49:23
**founding** 49:25
**four** 80:12
**frame** 13:11
15:7,14 38:19
88:11 90:2,19
90:25 91:3,12
93:22,23 97:12
104:25 105:11
105:14 106:7
108:10 109:6
113:23 122:11
122:20 146:4
149:2 168:14
**fraudulent**
152:1
**front** 112:15
**fully** 14:25
16:25 136:22
**fundamental**
89:24 144:24
**fundamentally**
135:16
**funds** 68:4
108:2
**funneled** 99:8

**funneling**
148:17
**funnels**  161:7
**further**  87:25
128:15 129:2,3
138:21 141:23
143:3 163:20

**g**

**g**  72:25
**gables**  2:3
**gained**  132:2
165:22,23
167:25 171:3,4
172:3,3
**garret**  45:13
**gataleaks**  73:6
74:15
**gataleaks.org**
72:20 73:14
**gatalog**  158:9
**gather**  66:22
**general**  49:24
77:16 87:19
103:24 111:19
153:20
**generalized**
104:9
**generally**  80:5
158:6
**generate**  118:3
118:6
**generated**
117:16

**getting**  44:19
70:7 72:15
74:25 83:13,23
94:12 139:1
176:10
**gifted**  155:18
**giordano**  1:22
178:7,21
**gitlab**  62:6,25
**give**  20:8 23:24
30:16 52:1
59:22 68:23
120:10 151:12
164:13 170:10
172:6
**given**  11:9 24:9
49:3 69:15
113:2 116:18
**giving**  110:25
111:3 151:21
**glad**  78:2
**globally**  90:25
107:9
**go**  16:12 22:17
49:7 51:17 55:4
55:8 120:4
121:15 122:17
138:1 139:15,25
140:24 149:7
170:14
**goal**  18:1 61:8
**goes**  49:5 60:10
76:9 149:23,24
166:1

**going**  9:24 16:4
17:11,22 18:2
19:5 21:12,14
22:16 25:6 27:5
29:14,18 32:4,7
32:9 34:5,11,19
37:8 38:14,15
40:10 44:1,3,16
48:12,25 49:2
51:1,9,10,11,25
54:4,23 58:9
61:16 67:14
69:13 70:22
72:4 73:13
78:23 81:23
89:16 90:11,13
90:14 94:7,8
95:12 97:1
104:13 106:16
107:22 109:24
111:9 114:1
116:11 117:4
118:9 119:17
120:25 121:3,14
123:18 130:21
131:2 136:6
138:1 142:13
147:22 148:14
154:13,18
155:24 157:1
158:22,23
165:20 168:1
176:1

**good**  20:12 26:9
26:10 32:18
38:3 39:4 40:8
61:14 78:1 99:6
115:21,25
120:20 142:2
155:2 174:9
**gotten**  7:16
**great**  56:25
169:19 175:6
**groceries**  98:15
**guess**  11:8 40:14
58:8,22 82:24
82:25 84:19
89:14 94:1,20
97:8,8 108:9,14
111:4 134:6
139:10 140:12
145:12 165:9,25
173:13
**guns**  53:11,14
53:20,24
**guy**  146:14
**guys**  9:24 19:13
21:12,12 25:5
29:18 57:12
106:4 109:18
137:12,18
154:17 156:14
**gyebi**  2:6 4:10
5:7,24 6:4 10:11
10:14 12:8 16:2
27:11,16,20
28:7 29:5,11,20

[gyebi - hypotheticals]                                    Page 196

| | | | |
|---|---|---|---|
| 30:18,24 31:1,9 | 89:4,9,18 90:9 | 177:13,16 | **helpful** 154:24 |
| 33:6,19,24 34:7 | 91:7,14,19,23 | **h** | **hey** 20:8 118:23 |
| 34:13,22 36:20 | 93:5,25 95:6,15 | **h** 3:1 | **hidden** 48:6 |
| 36:23 43:1,6,14 | 95:19 96:12 | **half** 137:12 | **hide** 101:22 |
| 43:17,21,23 | 102:20 103:5,13 | **handily** 32:1 | 123:7 |
| 44:12,24 45:20 | 103:21 104:1,5 | **hands** 14:14 | **hiding** 96:5 |
| 45:24 46:3,7,12 | 104:11,17,20,25 | **happen** 21:14 | 148:6 151:2 |
| 47:17 48:12,19 | 105:4,7,15 | 149:8 162:22 | **high** 20:9 |
| 49:10,19 51:5 | 106:1,14,25 | **happened** 36:16 | **hire** 15:10 |
| 51:12,19,22 | 107:4,13,17 | 85:22 95:21 | **history** 83:1 |
| 52:7,11,13,15 | 110:2,9,22 | 156:12 160:4,7 | 118:3 |
| 52:17,20,22 | 112:4,11 114:22 | 161:4 163:1 | **hoffman** 100:3 |
| 53:9,13 54:3,22 | 117:1,12 118:7 | **happy** 9:1 20:1 | **hold** 16:2 27:24 |
| 55:11,17 56:2 | 119:7 120:5,10 | 56:20 73:18 | 130:12 148:12 |
| 59:4 60:21 61:8 | 120:16,19,23 | 80:15 111:1,5 | **home** 155:16 |
| 61:18 62:2,8,19 | 121:5,8,17 | 142:2 | **honestly** 65:2 |
| 62:22 63:12,25 | 122:8,13,22 | **hard** 49:6,11 | **hopefully** 21:14 |
| 64:4,8,10 65:1 | 123:20 124:14 | 61:11 69:16 | **hoping** 23:8 |
| 65:11,13,16,18 | 125:12 126:8 | 138:6 | **hour** 137:11 |
| 65:22 66:2,10 | 129:8 130:4,16 | **harp** 86:22 | **hours** 113:13 |
| 67:1,5,17,22 | 132:6,9 138:20 | **he'll** 159:8 | 172:19 |
| 68:2,23 69:9 | 139:15 143:15 | **head** 25:21 | **house** 119:4 |
| 70:1,14,23 71:1 | 144:5,21 146:23 | 112:10 | **housekeeping** |
| 71:5,12,18,25 | 148:20 152:9,20 | **hear** 135:13 | 61:13 |
| 72:2,4,13,20 | 152:24 153:6 | **heart** 122:12 | **huh** 6:1 |
| 73:22 74:9,11 | 158:12,14 | **held** 61:20 | **human** 133:18 |
| 74:18 76:2 77:7 | 159:19 161:1 | 121:19 148:10 | 138:11,14 |
| 77:14,23 78:2 | 162:6,15 163:2 | 175:7 | **humanize** 78:3 |
| 78:10,14,25 | 164:13 166:7 | **hell** 20:9 | **hypothetical** |
| 79:21 80:1,13 | 167:7 168:8 | **hello** 143:8 | 136:7 154:1 |
| 80:24 81:12,17 | 169:2,6,13 | **help** 157:23 | 155:25 |
| 81:23 82:3 83:4 | 170:10,14,16 | 159:14,17 | **hypotheticals** |
| 85:8 86:7,17,20 | 173:18,23 | | 137:1 154:12,22 |
| 87:13 88:3,20 | 175:23 176:9,15 | | |

| i | | | |
|---|---|---|---|
| **idea** 48:13 61:14 71:15 113:9 123:25 147:2 | 92:21 **imaging** 10:18 **imagining** 51:9 **immediate** 168:25 | 95:23 102:25 **incompatible** 60:16 **incorporated** 105:12 | **information** 8:8 8:11 12:5 19:19 20:17,19,21,23 21:10 22:18 |
| **ideas** 163:19 | **immediately** 89:14 160:8,24 | **indicate** 79:18 89:2 97:16 124:6 | 26:6 35:4,16 36:11 62:3 |
| **identical** 9:8 27:8,10,13 119:22 120:13 121:1,10 | **imminent** 127:24 **impasse** 30:15 102:12 108:11 123:18 | **indicated** 100:3 121:4 169:22 **indicates** 125:4 126:14 | 63:10 66:17,23 68:22 73:2,5,11 73:19 75:4 76:15 83:11 |
| **identification** 176:20,25 177:4 177:8,12 | **important** 23:20 36:10 137:6 154:7 171:24 | **indication** 155:9 **indirect** 123:5 **individual** 4:4 | 87:6,6 89:17 94:13 96:8,13 96:16 100:9 |
| **identified** 11:18 25:13 56:17 58:3 64:15 70:18 73:24 79:2 81:5,7 90:21,22 97:15 149:5 152:6 160:21 | **impose** 166:19 **impression** 155:11 **improperly** 143:19 **include** 32:10 59:18 123:3 125:9 126:15 127:12 165:17 173:11 174:24 | 7:21 24:23 28:2 31:11 84:25 90:5 122:5 124:21 128:16 129:13 131:8 132:10 133:10 133:21 134:16 135:4,17,23 139:5 140:7 141:17 143:6 171:13,25 | 113:20 114:14 116:14 123:16 127:19 128:16 129:6,9,13 130:2,23 131:6 132:2,5,11,25 133:11 134:1 136:14,16 138:22 142:4 |
| **identify** 60:14 60:18 139:16,23 144:11 166:24 | **included** 137:19 161:12 | **individually** 136:1 | 145:4 153:15 159:7,10 160:19 161:18 162:1 |
| **identifying** 16:23 93:15 | **includes** 136:11 177:14 | **individuals** 73:9 110:16 128:1 139:22 147:1 | 163:6 165:20 166:6,8 171:2 171:25 |
| **identity** 171:1 171:12,12,24 | **including** 69:25 79:13 102:24 109:25 | **industrial** 126:11,13,24 127:3 | **informations** 79:11 **informative** 137:21 |
| **ideology** 147:5 | **income** 67:7,8 68:3 69:24 | | **infrastructure** 92:14 93:4,9,19 |
| **ignore** 63:9 104:23 | | | |
| **illegal** 53:6 | | | |
| **illegality** 53:5 62:13 63:6,8,9 | | | |

94:13
**infrastructures**
94:14
**infringed**  37:20
38:11,22 113:3
147:3
**infringement**
26:2 38:1,24
39:11 49:8,13
49:15 54:20
70:22 73:10
76:24 96:25
101:9 155:21
158:24 160:9
**infringements**
49:1
**infringing**  37:13
38:2,9,9 39:2,3
49:17 108:23
130:20
**initial**  112:6,8
**injunction**
16:20 145:24
**innocent**  151:11
**inquiry**  19:16
**insider**  110:3,11
110:23
**insiders**  108:3
110:16
**install**  116:4
**instructions**
19:23
**insurance**
111:11,17,20

112:5,6
**intention**  42:1
**interest**  8:19
69:15 110:7
127:20 128:4,7
**interesting**
164:23
**interfering**
93:11
**internet**  146:16
**interpret**  115:22
**interpretation**
59:23
**interrogatories**
3:6,8,9 15:16
16:14 60:22
121:15,16 125:5
125:14,20
131:25 133:16
134:10,12
137:15 142:21
161:25 162:5
164:8,11,22
165:18 167:21
176:2,3,4 177:2
177:6,10
**interrogatory**
103:8 121:22
123:21 125:10
128:10,18
129:18 130:13
131:3,14 132:13
133:13 136:2
138:4,13 141:3

151:6,16 160:11
160:22 161:11
166:17,25 168:5
168:23
**interruption**
111:14,23
**intertwined**
97:21 101:14
**inverse**  71:20
**investors**
104:19 112:21
**invite**  104:23
**involved**  35:9
35:10 150:4
**involving**  83:3
83:25
**ip**  52:24
**irrelevance**
78:11
**irrelevant**  78:19
152:15 155:15
158:10
**irrespective**
11:3 48:14
139:8 163:20
**islands**  35:15
**issue**  4:8,10
5:10,23 6:3,5,23
9:21 10:8,21
11:11,13,14,20
12:1,14,16,23
13:13 14:24
15:4,6 16:9,17
16:22,24 17:8,9

18:4,6,13 19:3,3
19:21 20:24
21:11 22:2,7,12
23:17 24:25
25:3 27:15,16
27:20 28:15,16
28:18,23 29:8
29:16,23 31:5,6
31:8,10,18 32:2
32:2,7 33:8,15
33:22 35:2 37:7
37:21 38:2,15
38:25 39:12,17
41:14 42:14,16
42:25 43:5
44:18 45:17,19
45:23 46:1,6,9
47:13,15,18
49:15 50:14
52:10 53:8 55:1
55:12,16 57:21
58:7,7 59:15
64:22 65:2
72:16 74:17,17
76:3 77:2 79:25
80:5,7,10 86:9
86:11 87:16,18
87:22 89:19,22
90:24 91:9,9,11
91:16 93:15,16
93:22 94:1
95:13,14 97:6
105:24 106:10
106:15 108:10

**[issue - knowledge]**

122:7,23 124:15
124:17,18 125:1
126:5,10 130:24
131:24 133:8
138:20 139:2
140:4,6,19,20
143:18,21,23
146:24 147:4,11
148:22 149:5
164:25 166:3
167:3 169:8
170:6 172:18,24
**issued** 98:9
**issues** 5:25
14:16 15:22
17:5,17,21,23
20:2,12,14 21:1
21:5 22:19
25:25 27:10
37:9 45:22
50:23 61:23
67:25 70:13
79:1,12 88:9
89:15 92:18,25
94:17 100:22
108:12 119:25
123:22 134:10
134:12 151:23
154:13 157:21
160:10 170:3
**items** 25:24
100:9 111:19

**j**

**january** 44:22
60:4 61:2,25
63:14 87:16
88:12 102:24
108:15 111:14
139:18 140:18
146:6
**john** 78:6,11
125:5
**journalist** 64:2
74:25
**journalists** 75:9
75:16 76:19
77:3 79:7,16
**joust** 14:11
**jousting** 15:18
17:2
**joy** 2:6
**judge** 100:2
134:21
**judgment**
148:17
**julie** 1:22 81:23
178:7,21
**jumping** 158:16

**k**

**k** 69:25 72:25
159:25 162:17
**keep** 18:4 27:5
31:24 52:3
155:5

**key** 89:25
**kind** 51:8,14
54:12 61:23
64:2 75:17
104:9
**kitchen** 147:20
**know** 6:9 10:23
10:24 12:15
15:6,20 16:9
18:11 19:1,7,12
20:3,7,8,11
21:11,13 23:21
23:23,25 25:21
34:10 35:1,8,16
35:19,19 40:4
41:12 42:3
44:25 45:2,4,10
46:15 47:2,5,6
48:10 49:3,23
49:23 50:19,21
50:23 51:2 52:2
54:8,10,11 55:8
55:21 59:23
67:11 68:11
70:20 71:12
73:13,18 75:3
75:24 76:19
79:5 80:20
81:14 82:16
83:17,22,24
84:2,20 85:14
89:13 90:4
94:15 96:4,11
98:3,6,14,19

99:6 102:6
104:19 105:23
109:6 112:25
116:2 117:20
118:20 123:5,7
124:7,19 125:20
126:2,23 127:22
128:5 129:14,20
129:20 130:2,18
130:22 131:1
134:13,24,25
135:10,11,11,12
135:14,17,18,22
137:2,4 138:1
138:19 139:11
140:14,22 141:5
141:13,13 142:9
142:11,17 143:9
149:12,22
150:22,23
151:17,18,20
157:20 159:14
159:15 160:5
161:3,23 162:9
162:20,25 163:1
163:14 165:2,19
171:8 173:6,8
174:1
**knowingly**
145:9
**knowledge**
125:17 128:17
129:7 131:19,20
132:12 133:12

**[knowledge - larosiere]**

| | | | |
|---|---|---|---|
| 133:19 134:16 | 15:17,23 16:5,8 | 66:11 67:2,7,19 | 115:1,10,15,20 |
| 138:12 139:4,8 | 16:16,21 17:14 | 67:24 68:14,25 | 116:8,11,24 |
| 140:8 141:11 | 17:19 18:5,9 | 69:6,13,19 70:5 | 117:23,25 |
| 143:21 | 19:6 23:5 25:10 | 70:19,24 71:2,8 | 118:19,23 119:2 |
| **known**  35:22,22 | 26:9,24 27:7,12 | 71:16,19 72:1,3 | 119:10 120:9,12 |
| 122:1 131:7 | 27:18,24 28:24 | 72:7,14,24 74:2 | 120:17,21,24 |
| 136:16 139:23 | 29:6,12 30:22 | 74:10,12,24 | 121:7,11,14,21 |
| 140:21 | 31:4,19 32:23 | 76:4,16 77:9,11 | 122:9,14,24 |
| **knowns**  35:22 | 33:4,16 35:2 | 77:17,18,22,25 | 124:6,15 125:11 |
| **knows**  123:12 | 36:18,21,24 | 78:5,13,20 79:4 | 125:19 126:9,23 |
| 125:24 129:18 | 37:14,22 38:14 | 79:22 80:9,14 | 127:11,15 128:2 |
| 130:23 131:11 | 40:1,13 42:19 | 81:9,13,19 82:4 | 128:10,23 129:1 |
| 136:5 141:1,14 | 43:2,11,16,18 | 82:7 85:21 88:1 | 129:6,10,17 |
| 142:18 | 43:22 44:10,15 | 88:4,21 89:8,10 | 130:12,17 131:9 |
| **kubin**  46:1 | 45:12,21,25 | 90:7,15 91:8,17 | 131:17 132:20 |
| **l** | 46:5,8,11,13,20 | 91:20 92:7 | 133:3 137:5,16 |
| | 47:22 48:17,20 | 93:13 94:7 95:7 | 141:9,16,25 |
| **l**  72:25 | 49:16,20 50:8 | 95:12,16,20 | 143:25 144:7,19 |
| **landscape** | 50:11,18 51:6 | 96:15,20 99:16 | 145:7 146:5 |
| 147:14 | 51:18,20,23 | 100:1,20,24 | 147:23 149:16 |
| **language** | 52:8,12,14,16 | 101:4,25 102:5 | 150:10,14 152:7 |
| 132:21 | 52:18,21 53:3 | 102:9,15,19 | 152:22 153:10 |
| **laptop**  15:3 | 53:25 54:7 55:3 | 103:3,9,16,23 | 153:25 154:7,9 |
| **large**  1:24 42:23 | 55:14 56:22 | 104:2,7,12,18 | 154:25 157:23 |
| **larger**  94:1 | 57:8,13 58:6,11 | 104:22 105:2,6 | 158:13 159:13 |
| 106:15 139:2 | 58:19 59:2,6,11 | 105:9,18 107:2 | 159:21 160:2,14 |
| 143:18 | 59:17,19 60:3,8 | 107:5,14,18 | 160:20 161:3,21 |
| **larosiere**  1:4 | 60:23 61:6,12 | 108:17,22 109:5 | 162:10,16 164:6 |
| 2:13 4:1,20 5:11 | 61:22 62:5,10 | 109:9,20,23 | 164:15,20 |
| 6:1,6,13 7:10,15 | 62:20 63:7,14 | 110:4,15 111:1 | 166:11,18,23 |
| 8:12 9:1,13,15 | 63:18 64:3,5,9 | 111:5,11,22,25 | 167:20 168:24 |
| 10:6,13,16 12:9 | 64:14,21,25 | 112:9,15,19 | 169:3,7,14 |
| 12:24 13:1,6,12 | 65:8,12,14,17 | 113:10,13,21 | 170:2,12,15,17 |
| 13:16 14:11 | 65:19,25 66:8 | 114:5,8,10,19 | 171:7,17 172:13 |

**[larosiere - lilly]**                                                    Page 201

172:24 173:19
173:22,25
174:11,21 175:3
175:5,14,17
176:6,13,16,21
177:1,5,9,15
**late**  35:20
**law**  2:2 5:16
36:14 56:8
100:6,15 112:9
134:10,14,17,18
135:3,6,23,24
135:25 143:13
156:2 157:16,16
**lawsuit**  53:19
59:1,2 67:10
73:25 74:21
75:10 77:10,16
152:13 160:25
**lawsuits**  157:13
**lead**  18:24 48:22
54:9 57:3 68:6
77:4 99:3 161:5
**leading**  24:4
109:15 162:21
**learn**  137:22
**lease**  82:17
**leases**  83:2
**leave**  37:4
174:13
**leaving**  5:4
**led**  146:21
**ledgers**  103:24

**left**  18:17
113:14 155:11
**legal**  36:25 37:5
37:10,17 38:5,7
39:6,21 41:3,5
41:13 42:6 47:6
83:16,20 104:15
174:16,17
**legality**  62:24
**leia**  2:7 132:21
**leia.leitner**  2:9
**leitner**  2:7 6:7
7:8,13 8:7 9:12
9:14,22 10:15
11:13 12:22,25
13:2,8,15 14:4
15:4,20,25 16:7
16:11,18 17:10
17:18,20 18:7
21:21 25:4 26:4
26:23 27:6
30:17,20,25
32:17 33:1
34:10,21 37:8
37:16 38:7 39:7
40:10,17 41:1
41:18 42:8
47:20 50:1,10
50:16 56:4
57:11,24 58:8
58:16 59:1,9,13
59:18 60:2,5,18
61:5,10 63:16
64:2,20,24

66:25 69:5,10
69:17 71:14
76:11 77:19
96:18 97:3
99:12,25 100:5
100:21 101:1,8
101:23 102:3,6
102:14,16 103:7
103:10 108:13
108:19,24 109:8
109:11 110:12
110:24 111:3,18
111:24 112:13
112:17 113:7,12
113:15 114:3,7
114:9,18 115:7
115:13,18 116:7
116:9,22 117:11
117:24 118:20
119:1 121:6,18
124:13 125:2
126:17 127:7,14
127:22 128:9,21
128:24 129:5,12
131:5,16 132:8
133:2,22 136:6
136:25 137:7
140:15 141:12
141:20 142:1,14
142:19 144:14
145:21 148:21
150:5,9,12
151:23 153:12
154:6,8,10

155:24 156:14
156:18,21 158:1
159:5 160:10,16
161:9,23 166:13
166:21 167:3,9
168:7 169:20
171:5,15 172:10
172:21 173:20
174:8,20 175:2
175:4,6,9
177:21
**lenders**  112:20
**letting**  55:21
**lexis**  56:10,23
57:7
**liability**  56:9
68:18 71:22
96:21 97:6
99:14 100:20,25
104:14,15,16
111:13,22 112:5
112:7 124:1
150:10 158:20
**liable**  101:6,18
101:21 159:2
**life**  168:16
**light**  26:20
173:15
**likely**  139:25
157:6
**likeness**  101:10
156:3
**lilly**  2:6

**[limit - makes]** Page 202

**limit** 12:23 25:2
54:24 59:24
61:1,24 62:21
63:12 64:11
70:15 75:20
78:25 103:14
106:21 165:7
174:22
**limitation** 76:1
166:18,19
**limitations**
167:24
**limited** 4:15
12:2 13:18 14:3
19:20 25:1
58:23 77:15
102:25 103:17
144:8 145:18
147:8
**limiting** 23:13
26:11 43:9
169:9
**line** 32:4,5 41:2
70:9
**linked** 82:15
**lion** 18:20
**liquid** 71:10
**list** 35:23 42:23
51:11
**listed** 19:22,23
64:12,15 130:15
**lists** 125:7
130:14

**litany** 11:1
46:20 82:20
**literally** 20:16
28:14 142:7
**litigant** 84:9
**litigating** 9:10
**litigation** 7:5
12:13,21 36:12
40:16 47:25
56:10 84:10
148:15 149:11
158:18
**litigator** 138:9
**little** 8:15 21:18
25:12 37:23
52:19 61:7
63:20 95:2
115:25 138:6
169:11
**live** 126:11
**lives** 150:25
**llc** 1:8 46:17,18
50:2,13 128:18
129:15 130:15
130:18 132:13
133:24
**llp** 1:12
**load** 92:24
**location** 1:11
**lodged** 168:13
**logic** 85:9
**logo** 73:6
**long** 51:11 70:1
167:20 168:3

174:18
**look** 13:3 16:5
54:18 59:6
82:10 83:7
102:14 128:21
130:13 138:20
161:15,17
173:16,18,20,24
**looked** 52:18
**looking** 19:17
52:24 57:1
96:16 102:22
103:13 105:4
117:16,17,21
120:6,14 147:12
147:13 155:8
163:19 168:15
**losing** 106:2
**loss** 103:1
**losses** 148:24
153:14
**lot** 7:17 15:19
36:3 47:5
118:21 158:1
165:1

**m**

**ma'am** 23:5
25:10
**made** 7:20
21:22 29:21
49:12,14 93:19
127:17

**magic** 47:6
**mails** 146:17
**main** 31:5
**maintain** 69:9
105:7 118:24
155:14
**maintained**
70:23 71:13
77:8 78:9,16
79:18 87:23
94:6 98:21
103:22 104:1,6
104:11,17
111:12 124:4
159:19
**maintaining**
70:2,4,14 86:25
125:13,15
132:16
**maintains**
152:16
**majority** 139:25
**make** 9:17
25:18 28:24
31:17 39:15
62:18 111:8
135:7 138:3
140:11,25
144:12 145:9
155:6 168:9
169:17
**makes** 62:14
80:20 160:7

**[making - name]**                                                     Page 203

**making** 96:24
99:16 114:11
**malpractice**
134:8,11
**margins** 20:3
**marked** 176:19
176:24 177:3,7
177:11
**massive** 92:17
**massively**
172:18
**matches** 126:21
**material** 28:7
94:18 116:13
137:17 148:19
**materially**
93:11 166:3
**materials** 25:15
73:15
**matt** 134:8
177:13
**matt's** 86:21
**matter** 31:21
71:7 76:22,23
76:25 145:1
**matters** 31:8
57:14,15 113:11
**matthew** 1:4
2:13 77:11,17
**mayer** 63:20,21
63:25
**mazel** 19:14
**mean** 6:7 19:5
32:8,9,24 33:23

37:21 40:25
41:13,16 42:5
42:15 55:23
60:18 83:12,20
101:13,17
102:22 105:19
110:11,23
115:19 122:20
128:20 133:23
137:2 140:23
141:19 142:1
151:23 153:13
153:19 156:8,11
158:4 167:4
**meaning** 139:7
171:17 172:7
**means** 15:11
110:3 111:4,18
141:21 158:7
162:25
**mechanics**
118:11
**meet** 1:18 26:21
34:6 82:22 96:7
110:12 151:14
162:23 163:3,24
169:23
**meeting** 163:9
**member** 131:2
131:12 171:6
**members** 98:2
108:6 110:21
125:7 136:12

**memorialize**
8:20
**mentioned** 50:3
58:1 113:24
**mentions** 28:20
**messages** 75:18
75:22,25 94:22
95:1,3
**metadata** 10:24
23:25
**middle** 1:1
156:22 157:8
**million** 145:2
**mind** 79:12 95:7
**minutes** 25:11
82:3
**misheard** 41:25
**misquoting**
129:15
**missing** 36:10
164:2
**misspeaking**
42:20
**misspoke** 41:25
42:10
**misunderstan...**
86:23,24
**mobile** 10:8
**models** 79:9
**moment** 110:4
120:11 145:19
**money** 49:1,5
67:13 68:8,12
72:10 96:25

97:1,25 99:8
139:13 145:9
146:18 148:13
148:17
**monthly** 102:23
103:20
**months** 92:13
93:2,20,25
**moskowitz** 1:11
2:7
**motion** 16:18,20
145:24 177:22
**mouth** 38:24
**move** 14:23 23:8
31:7,9 34:15
42:21 44:16
55:13 81:21
113:5 119:14
144:16,21,22,22
150:15 170:7
**moved** 127:9
148:7
**movement** 30:5
31:18
**moving** 18:4
36:2 50:9
**mpi** 148:8
**multiple** 127:25
**musk** 137:4
**must've** 112:14

**n**

**name** 36:6
101:10 156:2

**[named - objection]**

**named** 28:22
33:21 96:23
**narrative**
165:10
**narrow** 11:10
15:25 17:8
22:25 26:22
53:10,22 58:9
67:4,6,12 82:25
87:24 96:11
102:21 106:10
151:14,15
163:24 165:12
**narrowed** 94:20
**narrower** 82:22
90:19 96:7
162:24
**narrowing** 27:1
27:2 122:20
**nathan** 63:20,21
63:25
**native** 118:1
**nauseam** 18:22
25:11
**necessarily** 36:4
47:16 83:6 87:7
97:23 101:14,20
117:2 173:11
174:5,25
**necessary** 69:3
172:11
**necessitates**
72:11

**need** 9:4 11:9
14:17 26:25
34:10,15 38:16
41:14 61:7
68:21 85:19
96:8 109:10
114:21 129:3
132:18 145:13
148:12 154:10
154:11 164:16
165:12,20
177:19
**needed** 148:9,10
175:21
**needs** 5:23 6:22
39:5 45:5 85:4
87:7 126:4
148:14 172:14
173:23 174:3
**never** 34:17
95:7 126:18
**nevis** 35:15
**new** 56:15 57:2
**non** 38:2,9 39:2
39:3 123:3
160:17,18 165:4
**nonresponse**
122:19
**nonstarter** 5:10
**normal** 150:3
**normally**
136:14
**north** 1:12 2:8

**nos** 125:5
**notary** 1:23
178:8
**notate** 79:14
**notation** 74:21
**note** 8:22 34:14
56:19 65:6 70:5
77:14 88:5
91:23 111:7
152:14 158:17
**noted** 66:6 74:7
86:23 88:24
91:25 98:9
106:24 125:8
**notes** 120:25
178:12
**notice** 1:24 21:4
**noticed** 26:7
**november** 1:14
178:15
**number** 79:23
90:15 91:6
103:23 104:7,13
104:18 106:4
**numbers** 51:11
51:16
**nvidia** 98:22

**o**

**o** 45:14
**oaw** 94:9 101:25
102:3 109:25
159:20 169:12

**object** 27:14
42:24 43:12,20
55:15,20 57:18
66:15 74:16
94:9 102:5,13
111:16 114:15
115:2,11,16
116:16 144:5
**objected** 37:17
44:8 80:22
115:11 172:4
**objecting**
105:11 107:24
110:9 112:3
155:5 166:7
**objection** 7:19
7:19 11:24
18:14 28:1
29:13 36:25
40:11 45:16
46:22 52:9
57:23 64:22
65:4 66:4,7 69:9
69:23 70:4,23
71:13 72:13
73:16,22 74:3
74:19,22 78:16
80:11 87:23
90:14 103:21
104:1,5,11,17
105:7,14 107:2
109:6,19,21
110:6 115:5
117:2 124:4

[objection - opportunity]                                    Page 205

128:14 132:14
132:16 134:15
135:2,16 159:19
168:14 170:20
174:19
**objectionable**
41:3 140:5
**objectionably**
143:20
**objections**  11:2
15:2,5 23:2
24:22 26:20
28:5 29:19 30:2
46:21 64:7
66:24 71:23
72:16 77:7 78:9
78:24 79:17,24
82:21 86:10
89:23 92:11
94:6 108:1
109:12 129:25
151:13 152:16
161:17 164:4
**objects**  128:16
129:6,8 132:11
**obligation**  40:2
139:9
**obtainable**
48:16
**obtained**  140:8
**obvious**  108:5
160:7
**obviously**
114:13 131:5

151:20
**occur**  89:7
**occurring**  30:10
**october**  127:8
142:5
**odd**  113:2
**odom**  170:23
172:15 173:6,14
174:6,7
**offered**  23:11
27:3 33:6 46:23
163:3
**offering**  34:1
**officer**  47:23
49:24
**official**  138:25
**oh**  43:4 57:8
61:13 62:6
65:14 66:2
74:12 86:13
91:5 95:7 98:12
98:19 109:22
117:24 121:17
131:1 152:20
167:6,11
**okay**  6:6 7:15
7:17 8:15 9:22
12:24 13:1 14:4
15:23 16:8 18:7
25:11,22 28:24
31:4,6 32:16
33:4 34:13
36:23 37:14,22
38:14,20 40:1

40:13 43:11,14
43:17 44:15,24
50:8,18 51:22
51:24 52:3,7,8
54:22 55:14
56:2 57:13,16
58:19 60:5,23
60:24 61:6 62:7
62:19 63:12,20
64:4,9,25 66:11
67:16 70:5
71:19 72:7 76:4
79:23 81:20
84:21,22 85:8
86:20 89:8,11
90:15 91:20
92:7,10 93:5
94:7 100:2
101:7,23 102:8
102:18 103:10
105:18 106:23
106:25 107:4
108:19 110:1
111:11,25
112:11 114:5,8
117:1 118:7,25
119:7 120:21,23
121:22 122:9,14
122:24 124:18
125:21,25
129:10,17
130:24 131:9,19
132:20 137:16
145:10 146:5,8

146:12,18
148:13 150:9,12
150:14 151:2,10
153:25 154:3
155:1 158:16
162:7,15 163:2
164:6,20,23
173:19
**okayed**  98:17
**omitted**  84:10
**ones**  9:8 24:14
58:14 63:22
79:15 92:22
101:20 104:10
158:4
**onward**  43:10
44:6,12 106:10
**oops**  177:15
**open**  113:25
170:16 176:16
**opening**  170:11
**operation**  96:2
128:12 130:20
170:24
**operational**
165:15
**operations**
171:21 172:16
**operative**
153:22
**opinion**  135:8
153:7
**opportunity**
32:22 84:14

[opportunity - personally]                                      Page 206

151:21
**opposed**  168:17
**opposing**
  155:12
**opt**  165:5
**option**  118:3
**orange**  1:12 2:8
**order**  16:19
  80:3,15 81:2
  100:3 116:23
  127:24 128:3
  130:3 175:12,12
  175:15 176:5,6
**ordinary**  171:17
  172:7
**organization**
  96:1 131:22
**organizational**
  167:13
**organizations**
  148:13
**original**  84:8
**originally**  43:24
**orlando**  1:2,13
  2:8 157:9
**outgoing**  72:10
**outside**  50:3,14
  50:17 77:23
  154:18
**outweigh**  66:23
**overbreadth**
  55:12 65:2
  72:17

**overbroad**
  11:22 22:24
  39:23 50:16
  55:18,22 66:5
  66:19 94:1
  97:12 139:3,7
  140:1
**overly**  140:14
  143:22 152:15
**own**  14:2 15:15
  73:19
**owned**  53:17
  63:1
**owner**  131:12
  173:11
**owns**  4:24
  123:12,17

**p**

**p**  56:18
**p.a.**  2:2
**p.m.**  1:15 82:6,6
  164:19,19
  177:24
**page**  3:2 155:7
**pager**  51:2
**paid**  81:14 93:3
  155:19
**paper**  47:11
  141:15
**paragraphs**
  28:12
**park**  127:1,3

**part**  13:24
  46:14 53:6
  125:9 139:10
  151:3 155:19
**participate**  73:9
**particular**
  150:17
**particularly**
  147:10
**parties**  34:2,3
  56:14 89:24
  104:21,22
  175:11
**partner**  112:9
**parts**  89:25
**party**  9:16
  17:12 76:24
  78:4,11,18 84:8
  84:15 90:5
  118:22 119:3
  160:17,18
**past**  92:12 93:2
**pay**  80:19 98:14
  112:23
**paying**  68:18
  80:17
**payment**  80:21
  81:11,16,18
**payments**  49:6
  49:11,14 80:3
  80:15 81:1
  92:13 93:8,18
**pdf**  118:4

**penalty**  19:15
**people**  54:14
  71:9 81:10
  124:20
**people's**  146:15
**perceive**  18:14
**percent**  41:19
**period**  11:3
  13:14 14:10
  15:12 43:9,12
  67:9 79:19
  135:18 136:5
  167:24 168:22
**periodic**  5:18
**periods**  70:11
**perjury**  19:15
**permeate**
  119:25
**permeates**
  72:18
**permit**  35:6
**person**  84:15
  133:19 138:11
  138:15 142:16
  142:17 150:1
  165:21
**personal**  11:5,6
  22:17 26:13
  125:23 126:7
  131:19 132:4
  158:25
**personally**  10:9
  134:25 135:12

persons  99:10
phase  21:8,10
phrase  117:18
phrased  8:8
  22:24 37:17
  39:14,18 40:17
  40:22 41:2,21
  41:22 42:13,15
  48:18 134:5
phrasing  47:15
pick  118:4
picked  68:25
picking  4:1
piggybanks
  68:16
place  71:9 128:3
  130:3
places  117:7
plain  172:6
plaintiff  1:5 2:5
  2:13 7:23 25:14
  28:9,19 31:14
  31:17 34:4 44:5
  44:7 47:18
  48:16 51:14
  52:23 53:3,9,21
  54:24 62:2
  64:10 70:1,14
  73:24 74:22
  77:18,24 86:25
  87:3,24 89:19
  92:24 93:11
  94:2,3 96:12
  102:21 103:5

104:20 106:16
106:20 114:23
117:6 122:2
123:24 125:13
125:15 144:1,3
145:3 146:25
147:2,6,13,20
152:9 153:7
163:5,18 166:7
168:15,18,20
plaintiff's  23:6
  30:16 33:22
  48:13 54:15
  65:5 66:6 75:5
  79:20 82:8 83:5
  83:8 86:1 87:14
  121:22 137:13
  147:5 164:10
plaintiffs  86:12
  92:17
platform  62:17
plead  41:15
pleaded  22:19
pleading  21:4
pleadings  56:14
  56:17 100:17,17
  154:18 157:18
  157:18,19
please  23:24
  43:12 102:8
  111:7,10 159:14
  164:14 173:16
pled  96:5

plenty  148:13
  151:11
plus  25:2 162:19
pockets  68:10
point  8:1 15:17
  17:12 20:4
  31:15 53:18
  60:17 61:13
  86:21 159:16
points  6:21
policies  111:12
  111:21
policy  111:17
  112:5,7
position  5:6,7
  6:10 7:5 12:18
  12:19 16:25
  17:6 22:8 27:23
  28:5 33:10
  38:10 43:15
  45:8 65:5 66:6
  70:2,3 74:7 83:5
  83:9 84:2,22
  87:14 88:18,19
  94:2 96:6
  100:19 106:23
  125:16 131:10
  132:1 133:18
  136:21 138:25
  143:7,17 144:9
  150:13 153:24
  157:20 172:23
positions  71:23
  137:22 144:17

159:16
possessed  144:2
possession  4:22
  5:13 6:17 8:4
  9:6 19:7 33:13
  33:17 35:5,13
  66:18 75:5,11
  84:17 85:5 86:2
  95:10,17
possible  138:17
  155:1
possibly  144:11
  145:18
potential  141:11
potentially
  125:18
power  165:22
  165:23 167:25
  171:4,4,5,16
  172:2
powers  165:11
  165:20 171:2
practicer
  136:10
practices  25:19
  25:23
predate  23:18
pregame  51:7
prejudice  76:22
preliminary
  16:20 47:18
  145:24
premature
  169:25

**[prepare - property]**                                    Page 208

**prepare**  135:1
**prepublication**
  14:15
**present**  2:12
  10:8,21 12:6
  14:8 25:18 32:1
  68:24 95:25
  97:17 107:23
  109:21 112:2
  113:1 114:1,2,4
  123:22 125:1
  126:13 146:1
  165:13 166:20
  166:25
**presently**  131:7
  136:4,16 140:21
  159:10
**preserve**  84:13
**president**
  131:21,23 132:3
  138:15
**pressure**  76:23
**presumably**
  4:23 13:18
  171:8
**presumption**
  164:1
**pretty**  107:9
  108:5 160:7
  165:24 174:3
**previous**  9:20
  19:2 24:13
  79:15 104:10
  109:17 125:4

**previously**  5:2
  12:15 113:24
**prewritten**  79:7
**prickly**  44:19
**print**  56:23
**printed**  53:10
  53:14,20,24
**prior**  38:3,17,20
  39:4 40:9,24
  41:7 109:4
**privilege**  11:7
**probably**  98:24
**problem**  4:14
  5:11 9:9 23:12
  24:21,25 47:21
  49:4 55:10,11
  55:15 64:19
  75:3 95:5
  118:19 139:14
  147:23
**problematic**
  116:17
**problems**  40:3
  60:13
**procedure**
  166:10 167:19
**proceedings**
  177:23 178:11
  178:13
**proceeds**  70:21
  155:20
**produce**  4:13,18
  8:13 9:25 10:7
  23:1 24:10 26:5

29:25 30:1,6,7
30:14 31:12
33:11,16 34:1
37:2,11,19
39:10 43:19
44:2 45:11 54:4
55:5 58:4 60:5,9
60:11 61:3 67:3
73:12 84:24
85:4 86:9 88:22
89:22 90:13,14
92:2 103:18
108:8 110:1
112:1 113:19
114:21 116:2,19
118:8 120:2,3
138:23 147:17
165:6 166:15
169:9
**produced**  38:12
  73:15 85:16,17
  85:23,24 87:8
  112:7 114:25
  117:8
**producing**  5:8
  22:6 29:18 30:8
  30:9 32:19
  33:20 43:7
  44:11 88:25
  89:3 105:13,20
  105:23 106:9
  109:18 112:25
  169:22

**production**  3:4
  3:5 4:2 6:20
  22:1,4 36:6
  39:16 70:15
  82:9 89:6 90:1
  90:12 105:17
  106:21 113:25
  117:5 119:13
  123:23 124:10
  133:17 137:14
  138:24 166:8
  176:8,18,23
**productions**
  119:15
**products**  49:17
  56:9
**professional**
  1:23 178:7,22
**professionals**
  75:10
**profit**  103:1
  130:10 148:24
  152:4 153:14
**profits**  48:1,13
  49:18 129:22
  153:16 162:20
**progress**  114:11
**project**  5:19
**proper**  85:7
  149:25
**properly**  77:15
  98:10 139:7
**property**  111:13
  111:23 150:18

**[property - reached]**

150:19,22 151:7
151:19
**proportional**
75:12 124:3
163:8
**proportionality**
47:12,14 73:23
74:19 87:18
88:10 90:8,10
91:1,3,5,13 92:8
122:10 130:6
163:12
**proportionately**
46:22 47:1
**propounded**
18:16 122:2
**prosecuting**
98:3
**protection** 5:21
**protective** 16:19
116:22 127:24
128:3 130:3
**protocol** 149:25
**protracted**
99:22
**prove** 145:13,14
147:25 148:1
**proven** 101:5
**provide** 18:12
22:3 39:10,24
43:12 76:13,17
78:2 87:24
111:12 113:20
127:18 129:24

131:6,13 138:24
161:18 166:15
167:11,15,16
**provided** 22:2
127:10 136:20
140:24 141:2,14
144:3 159:11
**providing** 142:9
**proving** 98:4
**public** 1:23 75:6
76:23 126:21
128:5 130:1
142:10 162:14
178:8
**publically** 123:3
127:18
**publication**
14:7 97:14
174:25
**publications**
158:2
**publicizing**
127:20 128:5,7
**published** 14:13
158:9
**pull** 36:13 164:9
**purchased**
123:6
**purportedly**
83:18 149:25
**purpose** 128:11
163:23
**purposes** 29:24
67:18 96:14

138:13 146:12
**pursuant** 1:24
159:12 166:9
175:11
**put** 11:1 21:10
21:16 25:12
34:17,19 38:23
45:18 70:20,25
76:23 95:12
105:24 107:2
118:6 131:3
145:10 149:20
**putting** 52:5

**q**

**quarterly**
102:23 103:18
**quest** 36:13
**question** 6:16
9:5 13:5,7 17:15
33:20 34:9 39:9
39:18 40:15
44:17 48:21
52:23 53:21
63:9 66:13
80:13,24 86:14
86:15 100:24
106:2 109:17
125:19 126:14
127:4 134:19
138:10 158:4
165:13,14 170:4
171:10

**questions** 5:18
40:16 41:11
42:4,6,12 47:1
99:17 119:18
134:24 158:1,5
170:18
**quibble** 118:1
**quick** 175:24
**quite** 28:14
144:8
**quoted** 40:18

**r**

**raise** 74:2 92:11
110:5
**raised** 21:5
24:22 28:15
55:25 65:4,6
70:13 73:25
80:11 88:9 91:2
109:7 139:7
152:13,17
157:13 163:18
**raising** 73:22
74:4,18 107:25
139:12
**rajan** 63:22
64:6 76:8
**ranitidine** 56:9
**rather** 48:7
163:18
**reach** 140:5
**reached** 79:6

**[read - related]**                                                      Page 210

| | | | |
|---|---|---|---|
| **read** 37:22 | **reasons** 7:2 17:1 | 142:10 | **regards** 80:3 |
| 129:3 133:9 | 38:18 68:19,21 | **red** 24:21 36:8,9 | 81:1 |
| **ready** 20:13 | 71:11,21 75:14 | **reference** 100:7 | **registered** 82:18 |
| **real** 82:12 83:1 | 97:13 | **referenced** 21:3 | 145:19 152:5 |
| 90:20 119:21 | **rebut** 151:22 | 28:10 162:2 | **registration** |
| 122:15 123:6,12 | **recall** 30:22 | **referred** 65:20 | 16:6 140:16 |
| 123:16 124:9 | **receipts** 98:11 | 65:21 | **registrations** |
| 128:6 146:7 | **received** 10:5 | **referring** 29:1 | 14:6 15:15 |
| 152:2 153:17 | 84:8 112:14,17 | 111:21 113:8 | 16:13 22:13 |
| 155:5 160:12 | 127:25 142:4 | 161:24 | 26:7 28:9,21 |
| **realities** 117:3 | 170:1 | **refers** 28:8 | 53:1 59:16 |
| **really** 9:4 19:9 | **receiving** 84:15 | 125:4 | 77:20 97:16 |
| 19:12 67:11 | 86:6 121:23 | **reflect** 44:3 | 108:21,25 |
| 72:11 91:5 | **recently** 157:8 | **reflected** 16:12 | 145:22 154:20 |
| 116:20 128:13 | **recess** 82:5 | **reflecting** | **regularly** 108:6 |
| 130:25 137:6,6 | 164:18 | 117:14 | **rehashing** 31:16 |
| 137:17,21 138:2 | **recognized** 78:1 | **reflects** 95:25 | **reimbursements** |
| 145:12 147:4 | **reconstrue** | **refusal** 34:13 | 98:11 |
| 162:12 163:4 | 46:23 | 70:15 | **reiterate** 6:11 |
| 165:25 175:24 | **record** 9:14,18 | **refusing** 23:22 | 35:1,20 |
| **reason** 34:18 | 17:3 18:8 28:18 | 29:25 | **rejected** 27:4 |
| 44:19,23 69:1 | 29:24 32:18 | **regard** 90:22 | **relate** 67:21 |
| 84:11 88:14 | 34:14 53:15 | 93:3 173:5 | 72:21 75:13 |
| 90:21,23 92:15 | 61:21 65:7,22 | **regarding** 9:21 | 93:7 94:17 |
| 122:25 123:2 | 69:20 110:24 | 18:12 19:3,8,21 | 96:19 100:6 |
| **reasonable** 14:1 | 121:20 126:22 | 21:1,4,19 26:22 | 116:3 150:6 |
| 19:16 26:15 | 142:20 144:18 | 36:14 55:2 62:3 | 153:16 158:6 |
| 27:2 59:23 61:4 | 146:3 157:2 | 68:7 77:17 | **related** 19:19 |
| 135:21 | 169:21 175:8,24 | 93:11 99:2 | 49:14 50:20 |
| **reasonably** | **recording** 61:18 | 121:9 134:13 | 92:14 93:8,10 |
| 18:24 40:4,4 | **records** 67:8 | 147:6 151:14 | 99:9 100:10 |
| 48:21 68:6 99:3 | 74:14 82:17 | 162:24 | 104:21,22 108:3 |
| **reasoning** 138:7 | 83:2 92:12 | **regardless** | 108:4,20 110:21 |
| | 94:21 95:1 | 79:19 | 130:19 147:19 |

[related - requests]                                                                Page 211

148:23 149:1
152:3 153:18,21
157:2,18,24
158:2
**relates** 15:14
21:5 50:22 53:5
79:11 82:17
99:13 100:14
131:24 157:6
159:24
**relating** 116:9
**relation** 62:23
73:24 74:20
92:5 116:12
161:2 163:6
**relations** 149:14
**relevance** 66:23
76:3,5 93:6 94:4
100:1 109:3
130:5 163:11
164:2,4
**relevancy**
113:15
**relevant** 14:9,16
15:11 25:25
45:8 48:9,11
54:19 57:4
62:12 66:15
67:10 79:19
97:18 98:3
106:22 124:3
146:4 163:8
167:5

**relied** 126:20
**relitigate**
109:10
**relitigating**
109:11
**remaining** 4:14
**remember**
176:5
**remind** 9:23
15:24
**reminder** 10:4
**removal** 159:25
162:17
**remove** 139:19
**removed** 160:23
**repeat** 9:19 66:4
80:24 102:10
**repeatedly** 86:8
**repeating**
109:17
**rephrase** 48:19
**rephrased** 39:9
**replaced** 160:23
**repo** 157:4
**report** 61:15
178:10
**reported** 98:10
**reporter** 1:23
16:4 34:23 46:4
46:19 53:12
72:23 79:3 82:2
95:11 120:22
121:13 160:1
164:17 175:16

175:22 176:14
178:1,8,22
**reports** 92:12
94:21 95:1
117:16
**represent** 31:13
31:21,21
**representative**
133:21 134:20
135:5 143:13
**representing**
127:5 168:3
**represents** 33:2
**request** 3:3,5
4:2,21 6:20 7:20
8:8,10,12 10:6
11:10,23 13:17
14:2,10,19
18:18 19:4 22:1
24:3 26:22 28:6
29:6,9,14 36:20
37:16,23 39:23
41:2,16,21
42:12,15 43:19
49:22 53:15,22
54:25 56:5
57:16 58:4,18
59:10 60:20
62:25 67:5 70:2
76:14 77:15
80:1,21 82:9,10
82:23 83:5,10
85:6 87:19 88:6
88:7 91:21 93:7

93:14 94:4 96:7
103:14,16
105:16 109:13
118:16 119:15
119:20 121:9,10
122:2 123:20,23
124:9 130:5
132:16 133:16
134:2,5 137:14
137:14 138:23
139:3,6,24
140:4,19 142:15
143:18,22 145:1
146:24 150:6
151:15,15
152:15 162:24
163:24 165:25
176:8,17,22
**requested** 4:5
44:11 45:11
83:24
**requesting**
10:18,20,20
18:21 91:22
**requests** 6:11
17:8 18:3,5,15
18:23 22:24
23:3 24:2 27:21
30:3,19,23
32:20 41:20
42:2 56:7 57:17
59:14 60:16
80:8 84:9 88:13
102:17 108:16

**[requests - right]**                                                 Page 212

113:18 119:22
136:19 140:1
141:4 142:20
157:2,11 167:1
168:12,22
**require** 105:17
**required** 92:2
136:4 162:4,6
172:6 175:13
**requires** 83:6
**requiring** 37:12
**researchers**
75:9
**residence**
127:13
**residential**
126:16
**resolve** 5:9 6:23
16:1 18:2 20:11
21:15,16 22:22
23:4 27:17 30:7
32:1 33:14,22
36:17 39:5,19
47:1 89:19
122:23
**resolved** 5:23
30:4 32:8,12,13
32:16 33:8
38:16 126:4
**resolves** 126:6
**resolving** 17:21
**respect** 6:10
11:25 13:11
17:13 22:6 26:6

28:6 39:16
40:20 47:15,16
56:5 58:8 63:11
76:13 84:19
93:23 97:4,9
100:7 108:11
110:13 115:8
123:19 124:9
134:3 136:16,19
141:1 143:3
152:2 157:14
158:8 160:11,19
161:10,14 162:1
169:24 172:8
**respond** 11:23
22:23 40:3
41:22 42:17
44:16 104:24
128:18 129:7
130:21 132:13
139:14 140:21
167:15
**responded**
21:25 95:16
124:16 132:18
136:22 141:4
142:7 168:12
**responding**
86:14 142:25
**responds** 58:15
**response** 6:2
7:18 8:7,10 9:8
21:23 26:14
29:10 30:9

39:25 43:7,13
44:3,14 45:5,17
55:19,25 56:4
57:17 60:6
65:21 72:5
77:12 82:8,20
86:3,9 89:2,5,9
89:11,14 114:17
119:13,15
121:21 125:3,10
126:14,15
127:12 129:25
130:13 131:14
134:15 140:24
160:22 167:16
168:19,21 169:1
170:25 173:5
**responses** 11:18
17:24,25 18:13
18:15 29:4
32:10 61:17
81:8 83:19
84:16 87:1
89:16,18 110:14
127:9 134:4
136:20 137:13
159:5,6 169:22
**responsibilities**
171:3 172:2
**responsibility**
42:21 165:21
**responsible**
125:16

**responsive** 4:25
5:9 8:5 13:4
26:16 30:13
35:17 37:3 43:8
43:19,25 44:2
45:3,10 60:19
85:25 89:17
126:20 165:6
166:12,14,16
**rest** 55:9 122:9
**restate** 9:20
**result** 162:16
**returns** 66:12
66:17,22 67:18
68:3 95:23,24
96:9
**revealed** 152:10
**reverse** 104:14
**reviewing** 45:4
**reviews** 5:19
**rfas** 177:20
**rfps** 81:20,21
**ribbon** 25:12
**rico** 157:24
**rico's** 158:7
**right** 7:1 8:2
19:10 22:17
24:19 30:15
42:18 44:18
47:4,6,20 51:4
51:12 54:3
57:14 59:17,19
59:20 62:10
64:16 71:14

74:18 76:7
83:14 84:22
85:12,13 86:5
88:10 91:13,17
110:15,18
112:16 115:18
116:1 122:7
126:3,5 129:10
130:16 133:3,3
134:7 143:14,15
143:24 144:23
146:10 147:25
148:15 152:24
156:16 162:19
164:25 165:12
167:25 168:25
171:11,18 172:7
173:1,10 174:24
175:6
**rocket.chat** 62:6
**rogs** 170:7
**role** 48:8 129:21
**rolling** 22:4
107:21 113:25
165:6
**rough** 175:9,17
**roundabout**
34:25
**rover** 24:21
36:8,9
**rule** 11:17 22:20
56:17 59:24
151:25 153:23
166:9

**rules** 20:20
21:25 24:6,8,12
35:6,12 41:9,23
89:5 109:14
135:20 141:8
156:21 159:12
166:14 167:18
168:5
**rumsfeld** 35:21
**running** 20:9
36:8 87:15
99:20
**rutledge** 1:7
138:14,15

**s**

**s** 3:1
**s.org.** 72:25
**safely** 37:6
**sale** 150:17
151:7,8,19
152:4
**sales** 82:16 83:2
**sam's** 98:15
**satisfaction**
98:22
**save** 63:19
**saw** 162:13,14
162:16
**saying** 4:17 18:3
26:24 28:15
42:9 45:7 49:11
58:19 60:10
80:25 88:17

89:12 95:17
102:16 106:3,12
116:6 122:5,12
129:11 131:22
132:7,9 139:24
140:13 141:12
144:15 145:22
146:14 148:11
152:21 154:5
162:20 163:23
173:13
**says** 6:8 8:12
26:12 29:7 80:1
80:23,23 88:6
126:14 131:18
133:7,8 134:9
141:21 145:25
157:16 160:15
**scheme** 145:8
**scope** 12:3,21
14:25 18:21
19:4,20 22:10
25:1 47:16,21
50:6,14,17 56:6
56:7 58:10,11
60:2 66:20
69:14 90:2
132:15 140:2
141:6 143:23
144:25 151:25
166:2 171:23
**scrap** 47:11
**scraps** 116:1

**scrivener's**
128:19
**search** 19:16
26:15 66:22
75:23 87:2
107:22 135:21
**searching** 91:15
**second** 18:10
27:25 61:19
95:19 138:9
155:3 164:13
170:10
**secondary**
147:11
**securities**
110:17
**see** 6:19 13:22
14:17 16:13
25:20 56:17
59:14 64:18,24
94:10 95:20
97:1 105:16,22
111:25 114:10
117:9 135:12
161:15
**seek** 22:16
145:3
**seeking** 53:16
62:16,25 63:10
63:11 67:17
96:13,15 114:23
123:24 163:6
**seeks** 66:16 75:4

**[seem - specifically]**                                                    Page 214

**seem** 27:17
**seems** 29:22
  41:16
**selected** 32:11
**seminole** 178:5
**send** 8:23 56:20
  139:19
**sending** 98:2
**sense** 62:18
  91:15 97:12,24
  100:8 135:8
  138:3 144:12
**sent** 75:19 82:1
  177:21
**separate** 47:25
  83:15,16 133:19
  138:12
**separately**
  157:4,7
**september**
  159:23
**series** 50:23
  151:12
**set** 22:12 81:24
  81:25 105:16,23
  106:15 164:11
  167:8
**seven** 95:22
**several** 30:23
  54:12 58:2
  71:11 79:6
**sew** 54:13
**shaking** 25:21
  112:10

**share** 18:20
  129:22 139:21
  139:22 162:20
**shareholder**
  98:9 140:9
  150:2
**shareholders**
  110:20
**shares** 47:25
  49:17,18
**sharing** 130:10
**sheets** 102:25
  103:1
**shell** 35:25 36:9
  101:22
**shifting** 97:25
**short** 99:20
**shorthand** 94:8
  159:17 178:1
**shorthanded**
  12:16
**show** 39:11
**showing** 142:10
**shows** 8:13
**sic** 37:23 157:9
**side** 30:5 84:5
  104:14
**signature**
  178:19
**signed** 148:11
**silent** 168:2
**similar** 6:25
  24:13 50:24
  63:22 75:9

  92:10 104:18
  107:19
**similarly** 134:23
**simple** 8:3 26:3
  33:25 151:6
**simply** 16:23
  28:2 79:14
  80:22 117:7
  126:2 127:4
**sincerely** 119:10
  174:11
**single** 18:18
  28:19 58:12
**sink** 147:20
**sister** 98:1
  150:18,24,25
  155:18
**situation** 6:18
  117:3
**six** 95:14
**skip** 43:2
**skipped** 10:12
  65:13
**slightly** 72:9
**slips** 104:3
**smacks** 151:1
**snapshot** 91:22
  92:2 104:9
**snuff** 99:5
**software** 114:20
  115:3,12,13,17
  115:17,23 116:5
  117:19 118:2,24
  119:4

**sole** 49:19
  136:10
**solve** 47:12,14
  89:15 95:5
**solvency** 112:22
**somebody** 41:9
  167:25
**sorry** 10:11,14
  13:8 41:24 42:9
  42:19 43:1,3
  47:13 51:5
  65:14 74:12
  95:6 103:10
  105:9 106:1
  124:18 128:22
  133:9 141:9,10
  167:5 170:11,13
  176:5
**sort** 98:6 99:6
**sought** 71:21
**sounds** 146:19
**sources** 69:24
  75:6
**span** 168:16
**speak** 135:24
**speaking** 135:25
**specific** 40:21
  58:17 69:1
  75:16 105:15
  149:4 163:21
**specifically** 5:3
  17:9 21:2 24:20
  72:21 87:8,20
  88:6 90:17

**[specifically - sued]**                                                                 Page 215

91:25 98:16
123:21 159:24
160:17 162:22
**specificity**
109:13
**speculate**
141:11
**speculating**
140:22 142:8
**speculation**
141:5
**speculative**
148:20,22
**spent** 172:19
**split** 175:10
**ss** 178:4
**staff** 136:12
171:5
**stage** 99:18
**stalled** 144:24
**stand** 23:2
34:18,21,22
40:10 78:23
102:3 118:9
161:16 164:4
**standard** 66:13
99:24 103:3,8,9
103:11
**standards** 35:1
41:17
**standing** 66:4
66:24 102:1
163:13

**started** 108:18
120:14
**starting** 145:4
167:7
**state** 1:24 41:15
45:6 67:7,8 68:3
70:21 75:21
79:11 95:23
141:8 142:19
157:1 159:6
169:21 178:3
**stated** 77:7 78:9
78:16 86:8
124:5 130:9
141:24 143:16
164:5
**statement** 70:16
70:17
**statements** 70:9
102:15,17,23
103:1,2,19
**states** 1:1 56:11
87:13 100:17
126:22 133:10
**stating** 117:2
118:10
**status** 116:3,13
132:2
**stenographica...**
178:10
**stenotype**
178:12
**step** 140:13

**stick** 20:7 114:2
156:5
**stock** 98:22
**stop** 61:18 69:16
137:9 154:11
**store** 71:9
**stored** 74:15
94:15
**story** 79:7
**straightforward**
165:24
**strike** 36:1,2
167:9
**structure** 48:10
134:14,17 150:1
**structured** 49:4
**struggle** 123:2
**struggling**
135:15
**stuff** 62:15 70:8
70:10 98:11
105:23 122:16
126:7 137:18
162:12 174:5
**sub** 8:24
**subject** 5:20
7:18 11:7,18
12:12 23:11
25:7 29:19 30:1
44:12 86:10
89:23 90:14
105:13 107:21
109:1,19,21
129:25 174:19

**subjects** 45:15
**sublevel** 174:6
**submit** 72:4
89:4
**submitted** 16:15
**subparts** 165:17
**subpoena** 47:7
83:13,23 135:6
**subpoenaed**
84:4,14
**subproducts** 7:6
**subsections**
53:13
**subsets** 91:4
**substantial** 49:4
137:20
**substantially**
14:17 121:2
**substantiate**
40:8
**substantiative**
15:22 17:23
37:9 121:1
137:8
**substantive**
110:13 124:8
**substantively**
7:11 114:17
119:22 120:13
**suddenly** 57:19
**sued** 108:22
135:23 136:23
160:9

**[sues - thank]**                                                      Page 216

sues  134:10
suffers  123:22
sufficient  7:2
   16:24 39:10
   40:8,19 41:15
   47:9 76:1 86:3
   167:17
sufficiently
   13:18 14:3,19
   88:15 103:17
suggest  10:18
   17:3 67:16
   82:21
suggesting
   23:10 25:16
   146:19 161:1
suggestion  11:9
   13:10 123:1
   125:22,24
suggestions
   17:20
suing  48:3 134:9
suit  163:22
suite  1:12 2:8
   127:1
super  148:19
supervisor
   98:18
supplement
   142:3,13 159:8
   161:16 172:11
   172:23 173:21
supplementati...
   172:14 173:24

supplemented
   174:3
supplementing
   127:12 143:5
support  5:16
   9:25 76:13
   100:15 154:15
   157:12
supporting  7:9
   14:6
supports  68:3
   99:10
supposed
   118:12
sure  9:17 28:25
   34:16 39:7
   47:22 77:23
   82:4 85:8 89:15
   96:20 108:17
   111:8 118:13
   141:1 155:6
   163:2 168:9,15
   169:17
surprise  21:6,6
surprised  13:20
   119:5
surrounding
   25:20,24
suspenders
   85:12
swears  49:16
swore  141:16
sworn  47:24
   129:22 130:7,8

   141:15
system  114:24
   114:25

**t**

t  3:1 72:25
tail  153:2
tailored  14:20
   21:7
taiwan  149:18
take  8:22 17:11
   31:1 42:21 44:6
   44:7 82:3 111:7
   126:10 140:12
   164:15 173:16
   173:18,20,24
taken  1:22 7:4
   82:5 164:18
takes  146:15,17
talk  7:10 15:21
   37:9 154:14,21
talked  47:5 76:4
   100:4 132:20,22
talking  16:3
   58:17 80:4 81:2
   81:4,6,9 108:1
   113:23 131:23
   134:21 149:4
   154:11 158:15
   168:18,20
   172:19
tangentially
   100:10 147:18
   157:17

targets  22:11
tax  66:12,17,22
   67:8,8,17 68:3
   95:23 96:8
tell  38:5 73:18
   126:21 134:25
telling  55:17
temporal  19:4
temporally
   101:15
ten  44:20
term  12:2 28:8
   29:3 57:20
   110:17 111:16
   115:22 153:23
   171:18
terminal  76:17
   93:14,16 94:17
   99:23 100:20,25
   150:10 158:19
terminally
   67:20 77:5
   96:17 126:6
terms  14:2
   90:12 113:11
tesla  98:23
   136:24
testimony  17:11
   130:8
texas  126:18
   162:11
tfi  88:3 169:8
thank  6:14 9:13
   17:19 27:7,12

**[thank - time]**

45:12 50:11
57:9 61:12 70:6
71:2 72:7,14
77:22 79:22
88:4 103:23
104:12 114:8
121:7,11 125:11
126:9 127:15
159:21 169:4,14
173:19 174:21
175:3
**theory**  13:24
19:10 50:21
68:4 76:7,17
93:17 99:11
100:13 101:11
160:5
**thing**  5:17 9:9
15:3 21:15 32:3
32:15 46:1,5,8
46:11 50:12
51:3,10 52:12
52:14,16,21
53:8 62:14 63:7
69:21 73:20
74:13,15 77:10
78:6,7,21 79:15
83:14 85:12
90:16 91:21,23
95:19 102:10
103:24 104:3,8
107:5 114:12,12
114:15 116:20
120:1 122:4

148:3 153:11,13
153:17 172:4,15
173:1,2
**things**  5:12 6:25
17:3 21:2,7,11
23:21 26:12
31:22 38:18
42:23 52:1
67:20 69:3
82:17 93:2
94:16 119:19
125:7 137:19
145:14 146:21
148:2 151:2
155:14
**think**  5:11,16,22
6:22 7:25 9:3,9
10:11,19 11:13
11:20 13:16,17
13:25 14:1,18
14:23 15:1,6,20
16:23 17:7 18:1
20:18,19,21
21:5 24:10 31:5
31:6,25 32:3,6
32:15 35:9 37:4
37:5 39:5,8
41:13 45:17
46:25 47:17
48:20 50:20
51:1,14 54:8
55:16 57:1,2,14
60:20 61:13
63:5 64:3,17,17

65:1,13,19 68:2
69:13 70:25
71:3 72:10
73:17,19 75:12
76:17 82:25
87:10,10,15
90:24 91:2,2,4
92:7,22 93:20
96:3 97:11 99:2
99:21 102:9
106:1,6 107:1,8
107:9 108:5,11
109:9,23 110:6
110:19 112:19
112:24 113:1,10
113:21 115:4,7
118:10 119:7,24
120:6,9 122:6
122:11,22
123:15,17,20
124:25 125:1
126:3 127:23
130:24,25 132:6
134:20 136:17
137:5,20 138:2
138:17,18 139:1
143:4 144:12,15
144:17 146:7
149:8,9 150:14
151:20,20
152:18 153:24
154:12,17,21,23
154:25 160:6
161:4 162:3,10

167:3 168:24
169:7,15 170:6
172:5,9,25
173:4,15 174:13
174:23 175:19
**thinking**  83:21
**third**  76:24
118:22 119:3
**thomas**  170:23
172:15 173:5,14
**thoroughness**
121:12
**thought**  29:20
152:25 158:14
171:23
**threats**  127:25
**three**  13:15
101:2 164:12
**threshold**  140:2
**throwing**  106:5
**thumb**  146:16
**tie**  69:3 147:15
**tied**  70:17 77:19
123:25
**time**  1:15 8:19
8:23 10:23 11:3
12:2,22 13:11
13:14 14:9,24
15:7,11,14,19
17:8 23:25 25:1
25:2 28:19
38:19 43:9,12
47:5 60:2 61:4
63:19 69:15

**[time - understand]** Page 218

70:10 79:19
86:8 88:10 90:1
90:19,25 91:2
91:12 93:22,23
96:1,9 97:12
98:10 99:20
104:25 105:11
105:14 106:6
108:10 109:6,19
110:7 113:23
122:11,18,20
137:7 146:4
149:2 164:15
165:12 166:19
167:24 168:14
168:19,21,22
**times** 28:7 88:23
89:1 109:7
137:23,24
**timing** 162:18
**today** 51:19
52:2 82:1
118:17 119:9
**together** 23:3
69:4 109:10
**tonight** 175:9
**took** 149:18
**torpedoing** 98:6
**total** 12:17
**totally** 86:3
**totals** 97:2
**touched** 51:15
**tov** 19:14

**towards** 21:8
**traded** 123:3
**trades** 108:7
**traditional**
68:17
**transactions**
122:16 152:3
153:18 160:12
**transcript**
175:10,18,25
178:11
**transcription**
178:12
**transfer** 108:2
152:1
**transferred**
150:24 155:17
**transfers** 69:8
104:3
**travel** 98:17
**treat** 64:6
**trial** 18:25 21:6
21:8,11,14,17
48:23 103:25
**tried** 48:14
**trier** 21:16 98:5
**true** 92:23
155:14 178:11
**truly** 106:16
**trust** 115:21
**truth** 36:13 77:2
156:11,12
**try** 15:25 18:1
23:3

**trying** 21:9,20
22:22,25 24:20
36:15,15 39:19
51:6,7 67:12
77:1 79:10
82:11 94:14
97:9 100:12,23
101:24 113:16
113:18 117:9
118:17 132:24
136:9 141:10
153:4 155:2
156:8,12,16
158:19
**turned** 73:2
**turning** 73:5
82:7
**turns** 134:9
**twelve** 93:25
**twice** 100:3
**two** 23:12 29:23
31:2 91:4
113:13
**type** 27:8 48:2
54:18 66:13
114:19 130:8
164:1
**types** 111:20

**u**

**u.s.** 56:10
**uh** 6:1
**ultimately** 76:25
94:17 96:16

**unable** 30:6
**unambiguous**
58:20
**unclear** 57:25
**uncover** 156:8
156:17
**undefined** 11:21
12:1 115:20
123:1
**under** 10:1
11:16,17,17
19:15 20:20
22:10,20 32:19
41:22 52:6
59:23 112:5,5
127:23 129:2
153:23 156:21
166:14 167:17
168:5
**undercut** 13:23
**underlying** 8:14
84:10
**understand**
9:24 12:18
14:22 17:6
20:25 27:21
29:2 48:8 52:7
65:3,4 86:20
88:18 89:11
93:16 99:12
100:12 108:13
113:16 116:6,16
125:12 126:8
127:8 128:13

[understand - want]                                                      Page 219

130:4 133:15
135:16 138:5
141:10 146:6
147:5 155:4,21
157:24 163:5
164:24 166:1
167:4 173:9
**understanding**
10:1 11:16
29:12 35:25
41:8 44:6 55:24
74:4 109:3
116:15 117:12
135:19 174:8
**understood**
12:17 13:6
14:25 17:1,14
26:23 27:6
106:14 125:2
127:6 128:9
168:10 169:2
**unfair**  21:6
101:9 156:2
**unified**  32:3
**unintelligible**
11:22 39:24
93:21 111:17
115:4
**unitary**  51:8
**united**  1:1
**unknown**  147:1
**unknowns**
35:22,23

**unproportional**
94:5 152:16
**unrelated**  49:13
79:20 92:4
160:13 163:21
**unsworn**  17:11
**untethered**
22:19 87:21
**untied**  87:21
92:4
**unusual**  153:10
**unwilling**  64:11
102:21
**unwillingness**
31:7
**upload**  73:11
93:12
**usb**  146:16
**use**  29:4,7 38:3
38:17,20 39:4
40:9,24 41:7
98:23 114:20
119:2 130:7
143:2 151:9
**used**  28:11
53:17,18 55:6
63:1 68:16
82:13 100:2
150:19,22
157:11
**username**  54:1
54:5
**usernames**
53:16 55:6 63:1

**uses**  82:19
**using**  98:13,16
105:21

**v**

**vague**  11:21
50:16 93:21
104:23 113:18
170:21
**value**  71:9
**various**  68:19
111:18
**vehicle**  143:2,10
157:12
**veil**  83:15
**veritext**  175:20
**version**  14:15
162:14
**versions**  107:7
**versus**  49:13
90:4 135:18
136:10 140:7
**villasenor**  2:7
**violate**  145:9
**voluminous**
22:5
**vs**  1:6

**w**

**w**  29:3 69:25
**wait**  128:24
131:16 176:9
**waived**  28:6
56:1 66:7 74:5
74:23 80:12

110:7 115:4
**waives**  65:6
**waiving**  14:21
**wallet**  140:17
149:21
**wallets**  139:17
**walliman**  42:23
45:14
**want**  6:11,18
9:17,22 10:23
12:4 13:8 14:11
17:1 18:12
21:23 23:20
32:17 34:25
36:1,4 38:23
42:16 46:15
47:10 49:22
52:4 53:25 62:2
64:5 65:9 69:16
69:17,22 73:13
78:6 82:16
89:20 91:25
97:10 98:23
110:23 111:8
114:14,24
115:25 116:1
117:7,10,13
118:5 122:10
129:20 130:6,18
133:4 137:8,9
137:10,10
151:17,18 154:3
155:4,6,11
157:14 160:5,19

**[want - words]**                                                    Page 220

162:1,9,20,25
165:1,19 168:9
169:16 176:11
177:16
**wanted** 10:4
18:8 22:21 25:5
71:12 137:18
148:18 150:12
168:6
**wanting** 164:24
**wants** 147:20
**warehouse**
126:25 155:17
155:20
**water** 20:9
**way** 2:3 30:4
32:9,12,13
34:25 39:13
40:18 42:13,17
47:20 48:18
49:3 51:24
61:25 62:21
67:4 80:2,25
93:25 120:7
123:11,15 145:4
147:18 159:17
161:6 168:24
173:4
**we've** 5:15 6:13
7:16 12:14,15
15:7 19:22,23
33:11 46:22
48:4,21 61:1
74:3 76:4,6 86:8

88:15,24,24
101:5 112:24
137:19 138:2
142:6 148:18
154:14 159:11
159:17 170:5
172:18
**web** 108:6
**website** 73:10
73:14 92:25
145:10
**websites** 7:1,6
8:15
**weird** 162:12
**went** 122:16
144:19 151:18
**whatsoever**
92:6 103:15
147:15
**whichever**
118:4
**wholly** 158:10
**willful** 26:1
**willfully** 146:15
148:1
**willfulment**
145:16
**willfulness** 10:1
76:10,12 79:13
161:8
**willing** 4:12
20:13 26:4,21
31:12,17 44:5,7
53:9,22 54:24

58:22 67:2,3
75:20 78:25
82:22 96:6
103:14 113:5,24
114:6 116:17
120:3 129:24
147:16 151:13
162:23 174:13
**wilson** 1:7,11
2:7 4:2,21 5:12
6:12 8:17,23
10:9,22 14:14
19:7 24:16
26:12 30:11
31:10 33:1 35:4
36:18 37:20,25
47:22,23 53:3
58:2 68:13
76:18 79:6
81:21 82:15
83:6,10 84:20
84:24 85:7,13
85:16,17,24
86:15 87:1,4,8
88:8 90:4 97:25
98:12 99:10
101:7,18,20
122:4 123:6,11
123:17 125:15
125:16 126:11
127:16 133:25
136:3,3 138:5
138:11,14,15
139:4,8 140:6

140:20 142:24
144:1,9 148:10
150:16 152:12
155:18 158:18
158:21 159:25
160:2,3,8
162:17
**wilson's** 3:6 9:5
11:12 31:20
33:13,17 35:24
68:10 73:4 90:3
98:1 108:6
121:21 136:11
147:14 151:3
153:9 164:7
176:3,7 177:1
**wilsonelser.co...**
2:9,9
**withdraw** 64:18
**withdrawing**
30:23 57:22
64:21 95:15
**withdrew** 30:25
31:2
**withholding**
174:15
**wonderful**
85:14,16
**wondering**
106:6
**word** 47:6 100:1
119:17,18 130:6
**words** 38:23

**[work - zermaylaw.com]**                                       Page 221

| | | | |
|---|---|---|---|
| **work** 13:19 15:9 23:3 60:1 118:13 145:19 146:9,10,11 155:2<br>**working** 61:10 163:25<br>**works** 10:7,21 11:11,15,18,20 12:1,2,12,20 13:13,13,21 15:9 16:9,16,21 16:24 17:9 19:3 19:6,8,19,22 20:16,17,19,21 20:23,24 22:12 23:7,14,15,24 24:18 25:7,8,13 27:16 28:8,20 29:3,4,7,8,9 38:2,22,25 39:11 48:15 54:15 55:1 59:15 70:18 77:20 79:1 80:3 80:5,7 81:1,4,7 87:22 92:5 94:15 109:1 113:2,7 145:23 145:25 146:15 147:15,19 148:23 149:2,4 149:11 152:5 175:1 | **wow** 98:19<br>**write** 29:15 51:1 94:9 101:25 109:24 120:25<br>**writing** 132:23<br>**written** 14:19 17:24 29:14 40:11 78:24 79:17 80:22 94:9 102:2,5,13 107:3 112:3 114:15 141:15 143:20 159:20 168:25 172:15 173:5<br>**wrong** 24:6,7,12 25:22 41:6 128:25<br>**wrote** 52:2 78:13 158:5<br><br>**x**<br>**x** 3:1 51:10<br>**xero** 114:18<br><br>**y**<br>**yeah** 6:7 13:15 32:17 41:24 50:18 51:6,18 52:8,18,20 55:23 56:22 57:8,13 59:19 59:21 60:8 62:7 64:5 67:24 86:19 87:12 | 89:10 91:6 96:18 102:8 105:10 106:3 109:15 110:12 110:19,21 111:1 111:5,24 114:10 117:15 119:1,20 124:14 127:22 128:2,23 131:5 167:11 169:3,13 172:10<br>**year** 44:21<br>**yearly** 103:19<br>**years** 13:15 44:20,21<br>**yep** 175:5<br>**yesterday** 9:23 18:23 20:25 30:23 31:3 100:4 124:13<br><br>**z**<br>**z** 2:2 86:19<br>**zach** 2:4 8:22 86:17,18<br>**zachary** 2:2 46:1 143:11,12<br>**zantac** 56:9<br>**zermay** 2:2,2 8:25 9:19 18:11 29:17 33:23 34:5,11,16,24 40:14,23 41:5 41:24 46:10 | 55:23 56:3 57:6 57:9 67:23 68:1 68:5 78:3 83:12 85:11 86:13,19 87:12 97:20 101:12 103:11 105:8,10,19 106:3,23 109:15 109:22 110:19 111:10 117:15 134:6,18 136:23 137:3 139:10 140:12 142:12 142:16 143:4,11 143:12,13 149:12,17 150:7 152:18 153:4 156:7,16,20 158:16 162:3<br>**zermay's** 138:5<br>**zermaylaw.com** 2:4 |