```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                      ORLANDO DIVISION

                  CASE NO:  6:24-CV-1629


MATTHEW LAROSIERE,

     Plaintiff,

vs.

CODY RUTLEDGE WILSON, DEFCAD,
INC., DEFENSE DISTRIBUTED, and
DIOSKOUROI LLC,

     Defendants.

* * * * * * * * * * * * * * * * * * * * * * * * * * *




MEET-AND-CONFER:  DEFENDANT'S MOTION FOR LEAVE TO AMEND


DATE TAKEN:      December 30, 2025

TIME:            10:00 p.m.

PLACE:           VIZ ZOOM

REPORTED BY:     LINDE BLOSSER, STENOGRAPHER, NOTARY PUBLIC

* * * * * * * * * * * * * * * * * * * * * * * * * * *
```

A P P E A R A N C E S:

ZACHARY Z. ZERMAY, ESQUIRE
Zermay Law
3000 Coral Way
Suite 1115
Miami, Florida 33145
zach@zermaylaw.com
APPEARING ON BEHALF OF PLAINTIFF

LEIA V. LEITNER, ESQUIRE
AMARIS GYEBI, ESQUIRE
Wilson Elser Moscowitz Edelman & Dicker, LLP
111 North Orange Avenue
Suite 1200
Orlando, Florida 32801
leialeitner@wilsonelsner.com
amaris.gyebi@wilsonelsner.com
APPEARING ON BEHALF OF DEFENDANT CODY RUTLEDGE WILSON


ALSO PRESENT:

MATTHEW LAROSIERE, ESQUIRE
6964 Houlton Circle
Fort Worth, Florida 33467
larosieremm@gmail.com

```
 1                    P R O C E E D I N G S
 2                           - - - -
 3         MS. LEITNER:  Okay.  As you know, we are the
 4    defendants in this case, and we're here on a
 5    meet-and-confer with respect to defendant's proposed
 6    motion for leave to amend and their proposed answer
 7    and affirmative defenses.  We have circulated the
 8    proposed answer and the motion.
 9         We would just want to know plaintiff's position
10    with respect to two issues:
11         One, the relief sought in the motion for leave
12    to amend.  And, two, the motion to seal, as we'd like
13    to use -- provide the documents that were served to
14    us on November 25th as an exhibit to the motion.
15         So that would be pivoting to you guys with
16    respect to plaintiff's position with res- -- on the
17    leave for leave to amend and the exhibit as to, A,
18    whether you are planning on dedesignating it, because
19    it's currently in AEO, high -- a highly confidential
20    percent of the parties' stipulated protective order,
21    and/or if you are moving to seal, as we have provided
22    notice that we would use that document on December
23    18, 2025, the EMO.
24         MR. ZERMAY:  I guess the --
25         MR. LAROSIERE:  Yeah.  You go ahead, Zach.
```

1          MR. ZERMAY:  No.  You go ahead.

2          MR. LAROSIERE:  Yeah.  I was just going to say

3     preliminarily, we are also anticipating discussing

4     our motion to quash the third-party subpoenas.  We

5     gave you a copy of the motion and just sent an intent

6     to discuss this as well.

7          And so we gave you the affidavits that supported

8     the motion and the motion itself.  So, you know,

9     that's the agenda that we understand is going on

10    today.

11         MS. LEITNER:  That's fine.  Yeah.  I didn't

12    realize that once we downloaded the drop-offs, that

13    you provided the proposed motion.  So we're here to

14    discuss that today too.

15         MR. LAROSIERE:  I guess my -- my question would

16    be, I think when you're -- when you're wanting to

17    rely on the confidential information, you have to --

18    you know, the rules say you have to, you know, give a

19    compelling reason why a redaction wouldn't work.

20         So what's the reason a redacted employment

21    agreement wouldn't work?

22         MS. LEITNER:  I think because the -- it's

23    relevant with respect to all of the contents and

24    whether it's applicable under the re-factors with

25    respect to a valid work-for-hire agreement.

```
 1          MR. LAROSIERE:  And so have you -- have you
 2     asked us about a potential redacted version and
 3     whether, you know, we could -- we could make a
 4     redacted version that would work?
 5          MS. LEITNER:  Well, but I'm here to discuss
 6     that.  If that's an option, we can work on that.
 7          But I think the issue would be what portion we
 8     would redact, because I think every portion is
 9     relevant.
10          MR. LAROSIERE:  Yeah.  So I guess -- I guess,
11     that's a good -- a good jumping-off point.
12          So your -- your motion to -- for leave to amend
13     the answer includes adding, you know, about a dozen
14     things, most of which are, you know, like unclean
15     hands illegality, which was already in there.
16          But I -- I see a lot of the things you're
17     willing to add were already in the first answer and
18     affirmative defenses.
19          So I guess, what's the reason that we should --
20     you know, what's the reason we should consent for you
21     to reassert affirmative defenses that were abandoned
22     in the first answer over a year ago?
23          MS. LEITNER:  I think I -- at this point, I
24     mean, if you had notice of them a year ago, then we
25     can reassert them now that you've amended the
```

```
 1    complaint.
 2         MR. LAROSIERE:  We amended the complaint a year
 3    ago.  So they were -- they were -- they were asserted
 4    and then abandoned after the amendment.  And now
 5    it's, you know, four months before the close of
 6    discovery, and we're wanting to bring them back up.
 7         So that's the -- that's the concern, is that,
 8    you know, we -- we served all that discovery and
 9    we're -- we're still fighting over production of
10    that.  And now we're wanting to change the whole
11    answer.
12         I -- I -- you know, that -- of course, you know,
13    leave to amend should be liberally granted, but it --
14    it's just confusing when we're asserting things that
15    were abandoned a year ago, right?
16         MS. LEITNER:  Sure.
17         So two things.  One, I think it's -- I think we
18    added that in the motion that the -- newly added --
19    or not "newly" -- but I guess we are re-adding the
20    affirmative defenses.  But we've -- it's based on
21    newly discovered evidence.
22         MR. LAROSIERE:  So yeah.  You're suggesting
23    the -- so I see that's the thrust of your argument.
24    And Zach and I were talking about this, and, you
25    know, of course we've all seen the unredacted
```

```
 1    employment agreement and the assignment agreement.
 2         Can you explain how those bring up all these
 3    affirmative defenses?
 4         MS. LEITNER:  With respect (audio glitch) -- we
 5    don't -- (audio glitch) -- ownership.
 6         MR. LAROSIERE:  What?
 7         THE COURT REPORTER:  I'm sorry.  You broke up.
 8         MS. LEITNER:  Sure.
 9         We don't believe it's valid -- validly proved
10    ownership as a copyright, which is an affirmative
11    defense.
12         MR. LAROSIERE:  Can you give a little more?
13         MS. LEITNER:  Well --
14         MR. LAROSIERE:  Like, you know, was there a
15    defect in the agreement or --
16         MS. LEITNER:  I guess what -- I guess -- I mean,
17    you know -- yeah.  I mean, with respect to some of
18    the documents, we find that there is a -- an issue
19    with chain of title, i mean, as far as how you've
20    laid out the work-for-hire agreement and the
21    assignments.
22         And obviously, they're not -- we didn't receive
23    all of them with respect to all the -- the subject
24    copyright registrations, so that's an issue there.
25    So that's what we wanted to raise.
```

1     So the real question is, now that you have an
2  idea of our argument and position, are you opposed or
3  unopposed --
4     MR. LAROSIERE: So no. I -- I'm -- I would like
5  to understand it. But, you know, if -- if you don't
6  want to explain it further, it -- you know, we --
7  we'll have to oppose.
8     And I certainly don't think you -- you -- I
9  don't think under any circumstances you're going to
10 be able to file that -- that confidential agreement.
11    I think that we can absolutely get a redacted
12 version that -- you know, the main issue there is
13 almost everything that's been handed over that has
14 private information has wound up being posted
15 publically on defendant's website, right? I mean,
16 even the confidential settlement agreement was posted
17 on the website.
18    So we -- we really don't want the private, you
19 know, financial information to be -- you know, to
20 lose that protection.
21    So, you know, if we understand what you think
22 the defect is in the agreements, then we can -- you
23 know, we can appropriately redact it.
24    But it seems like you're just kind of vaguely
25 saying this is no good.

1    MS. LEITNER: Well, that's not accurate. What
2    I'm saying is --
3        MR. LAROSIERE: Okay.
4        MS. LEITNER: -- the documents you produced are
5    not -- they don't satisfy the *Reid* requirements, the
6    *Reid* factors, and that's the main thing.
7        MR. LAROSIERE: Okay. Which factors? If we can
8    know. Because, I mean, you know, we can -- we can,
9    you know, find that part that you say failed the
10   factor, and then make sure that's, you know,
11   sufficiently clear in the -- you know, when you --
12       MS. LEITNER: Yeah. Yeah. I'm happy to send
13   that over by email.
14       MR. LAROSIERE: Yeah. Yeah. Just be sure you,
15   you know, tell us which factor you think is not met,
16   and then we'll -- we'll form a redaction together
17   that --
18       MS. LEITNER: Sure.
19       And so in the meantime, because we need to file
20   this timely, our suggestion is if you guys -- it
21   sounds like you don't want to file it -- a motion to
22   seal, that you are willing to produce a redacted
23   version.
24       And so in the interim, what we're going to do is
25   put a slip sheet letting you -- letting the court

 1    know that we've provided you notice, with respect to
 2    these documents, that we plan on attaching to the
 3    court, or sending to the court.
 4         And then that's how we'll leave it, because
 5    we -- you know, we don't want to just -- we waited
 6    for a month, essentially. We've talked about this
 7    since November 25th. And so we don't -- we want to
 8    make sure that we file this motion timely.
 9         So we're happy to --
10         MR. LAROSIERE: Sure.
11         MS. LEITNER: -- look at that redacted version.
12    We'll look at that. But ultimately, we'll --
13         MR. LAROSIERE: Well, just also to be clear,
14    because you're -- you know, you've said a lot, right?
15         But to be clear, you're going to tell us which
16    of the factors is -- is failed so that we can help
17    you and -- and appropriately redact it to cover
18    that -- you know, so that -- that argument is visible
19    from the face of the document.
20         But you haven't told us what the issue is yet.
21    So once you tell us, then we can give you a redacted
22    version. Just to be super clear.
23         MS. LEITNER: I don't think it should be
24    contingent on it. You know, to put that --
25    (inaudible) -- let the court know it's your position.

```
 1        But the issue here is will you -- you know --
 2             MR. LAROSIERE:  I'm sorry.  I might not be -- I
 3        might not be being super clear.
 4             Zach, did what I say make sense?
 5             MR. ZERMAY:  I think we need to know what the
 6        Reid factor is at issue so we could narrowly tailor
 7        the redaction -- I mean, it --
 8             MS. LEITNER:  I mean, I don't -- you know, I
 9        feel like you can redact what you feel is necessary.
10        We've asserted our position in the motion for leave
11        to amend.
12             I can tell you exactly what the problem is, but
13        I feel like that's something you guys should be aware
14        of.
15             And so that is our position.  So from my
16        understanding, and just in summary, it -- it appears
17        that plaintiffs are opposed to motion -- the motion
18        for leave -- defendant's motion for leave to amend.
19             And that to solve the issue with respect to the
20        documents that are designated as AEO, highly
21        confidential, that you will send a redacted version
22        to us that you deem appropriate.
23             And then at that point, we will -- when we're
24        filing the motion, we'll again, like I mention, put
25        a -- either a footnote with respect to our discussion
```

```
 1     on the motion to seal, that we provided you notice
 2     with respect to that, and that we'll just put like a
 3     placeholder or slip sheet showing that we will file
 4     that eventually once we receive the redacted version.
 5          But that is my understanding of this motion for
 6     leave to amend.  If there's anything else, I think
 7     we're set with that.
 8          MR. LAROSIERE:  Great.
 9          MS. LEITNER:  Okay.
10          MR. LAROSIERE:  So what -- have you reviewed
11     the -- the EMB, the motion to quash, and the --
12          MS. LEITNER:  Yes.
13          MR. LAROSIERE:  -- attached affidavit?
14          MS. LEITNER:  Yes.  We will --
15          MR. LAROSIERE:  We want to know what's your
16     position.
17          MS. LEITNER:  We reviewed the motion to quash.
18     We -- again, I think I -- the issue is you can't
19     assert standing for a -- third-party subpoenas, and
20     we're opposed.
21          MR. LAROSIERE:  Yeah.  And if it -- if you had
22     read the motion, you would see we expressly do not
23     assert standing on the part of the plaintiff, so --
24          MS. LEITNER:  Yeah.  No.  I read it.  I
25     understand that.  But that's the main gist of
```

```
 1     asserting a motion, is whether you have standing, and
 2     our position is you don't, and we're opposed to the
 3     motion.  So that's --
 4          MR. LAROSIERE:  We're in agreement on that, that
 5     we don't have standing to assert third parties, but
 6     luckily, that's -- that's not the thrust of the
 7     motion.  But your position is noted.
 8          MS. LEITNER:  Okay.  Perfect.
 9          And then I just want to be clear, because the
10     last time we discussed your deposition and that you
11     were available February 10th to February 16th, is
12     that still accurate?
13          MR. LAROSIERE:  Sure.
14          MS. LEITNER:  Okay.  And then lastly is a
15     housekeeping matter.  I just want to be clear,
16     Mr. Larosiere, you've attended this meet-and-confer
17     and provided your legal opinions for the last 13
18     minutes.  Are you attending this meeting --
19     out-of-court meeting in -- in your role as an
20     attorney or as a party?
21          That was a question to you, Mr. Larosiere.  Just
22     a quick question.
23          Are you still there?
24          Linde, did I lose connection?
25          THE COURT REPORTER:  I don't know.  It's not my
```

```
 1    meeting, but I'm still here.
 2            MS. LEITNER:  Okay.
 3            THE COURT REPORTER:  I mean, I --
 4            MS. GYEBI:  I belive he's -- I'm sorry.  I
 5    didn't mean to interrupt the -- the court reporter.
 6            THE COURT REPORTER:  That's all right.
 7        I'm going to go off the record.  Is that all
 8    right?
 9            MS. GYEBI:  No.  We can -- no.  Let's stay on
10    the record.  Let's stay on the record.  It just
11    appears that there's a refusal to respond.  There's
12    been no disruption in connection.
13        Okay.  So the record would note that there's a
14    refusal to respond on behalf of Mr. Larosiere.
15        Mr. Zermay, would you like to respond on behalf
16    of your client?
17            MR. ZERMAY:  Well, preliminarily, this issue, or
18    at least nonissue had been brought up repeatedly over
19    the course of every single conference we've had.
20        And I think it's clear, our position, that a
21    party can attend a conference and state his position.
22    I mean, it's just my understanding of the rules, and
23    I believe that we've made our position clear that an
24    attorney may not make an appearance on behalf of
25    himself in general and file a notice of appearance on
```

```
 1      behalf of himself.
 2              So that's my thoughts on that.
 3              MS. LEITNER:  Okay.  Thank you, Mr. Zermay.
 4              Thank you.  That's all I have.
 5              MS. GYEBI:  Have a wonderful day, everyone.
 6              MR. ZERMAY:  Whoa.  We're -- Okay.  Well, okay.
 7              MS. LEITNER:  Well, did you have anything else?
 8              MR. ZERMAY:  I'm just waiting to see if
 9      Mr. Larosiere is disconnected because he's not here.
10      Let me go on mute quickly and see if he's -- what's
11      going on there.  Hold on.
12              (A pause in the proceedings.)
13              MR. ZERMAY:  Okay.  He told me he is having
14      technical difficulties and we're agreed to go off the
15      record, so all good.
16              MS. LEITNER:  Okay.
17              MR. ZERMAY:  We're done.
18              MS. LEITNER:  Okay.  Thank you.  Happy New Year.
19              MR. ZERMAY:  Yeah.  Happy New Year.  Thanks.
20              MS. LEITNER:  And, Linde, we'll let you know if
21      we'll order a copy.  We appreciate it.
22              THE COURT REPORTER:  Okay.  Thank you.
23              (The proceedings were concluded at 10:17 a.m.)
24                          *  *  *  *
25
```

CERTIFICATE OF REPORTER

STATE OF FLORIDA :

COUNTY OF ORANGE :

     I, Linde R. Blosser, Stenographer and Notary Public for the State of Florida at Large, do hereby certify that I was authorized to and did stenographically report the remote foregoing proceedings, and that the foregoing transcript, pages 1 through 15, is a true record of my stenographic notes.

     I further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in the action.

     Dated this 1st day of January 2026.

_____
LINDE R. BLOSSER

**10:17** - 15:23
**10th** - 13:11
**13** - 13:17
**16th** - 13:11
**18** - 3:23
**2025** - 3:23
**25th** - 3:14; 10:7
**abandoned** - 5:21; 6:4, 15
**able** - 8:10
**absolutely** - 8:11
**accurate** - 9:1; 13:12
**add** - 5:17
**added** - 6:18
**adding** - 5:13; 6:19
**AEO** - 3:19; 11:20
**affidavit** - 12:13
**affidavits** - 4:7
**affirmative defenses** - 3:7; 5:18, 21; 6:20; 7:3
**agenda** - 4:9
**agreed** - 15:14
**agreement** - 4:21, 25; 7:1, 15, 20; 8:10, 16; 13:4
**agreements** - 8:22
**almost** - 8:13
**amend** - 3:17; 5:12; 6:13
**amended** - 5:25; 6:2
**amendment** - 6:4
**answer** - 3:6, 8; 5:13, 17, 22; 6:11
**anticipating** - 4:3
**appearance** - 14:24
**applicable** - 4:24
**appreciate** - 15:21
**appropriate** - 11:22
**appropriately** - 8:23; 10:17
**argument** - 6:23; 8:2; 10:18
**assert** - 12:19, 23; 13:5
**asserted** - 6:3; 11:10
**asserting** - 6:14; 13:1
**assignment** - 7:1
**assignments** - 7:21
**attached** - 12:13
**attaching** - 10:2
**attend** - 14:21
**attended** - 13:16
**attending** - 13:18
**attorney** - 13:20; 14:24
**audio** - 7:4
**available** - 13:11
**aware** - 11:13
**based** - 6:20
**behalf** - 14:14, 24; 15:1
**belive** - 14:4
**bring** - 6:6; 7:2
**broke** - 7:7
**brought** - 14:18

**case** - 3:4
**certainly** - 8:8
**chain** - 7:19
**change** - 6:10
**circulated** - 3:7
**circumstances** - 8:9
**clear** - 9:11; 10:13, 15, 22; 11:3; 13:9, 15; 14:20, 23
**client** - 14:16
**close** - 6:5
**compelling** - 4:19
**complaint** - 6:1
**concern** - 6:7
**concluded** - 15:23
**confer** - 3:5; 13:16
**conference** - 14:19, 21
**confidential** - 3:19; 4:17; 8:10, 16; 11:21
**confusing** - 6:14
**connection** - 13:24; 14:12
**consent** - 5:20
**contents** - 4:23
**contingent** - 10:24
**copy** - 4:5; 15:21
**copyright** - 7:10, 24
**course** - 6:12, 25; 14:19
**court** - 13:19
**cover** - 10:17
**December** - 3:22
**dedesignating** - 3:18
**deem** - 11:22
**defect** - 7:15; 8:22
**defendant's** - 3:5; 8:15; 11:18
**defendants** - 3:4
**defense** - 7:11
**deposition** - 13:10
**designated** - 11:20
**difficulties** - 15:14
**disconnected** - 15:9
**discovered** - 6:21
**discovery** - 6:6, 8
**discuss** - 4:6, 14; 5:5
**discussed** - 13:10
**discussing** - 4:3
**discussion** - 11:25
**disruption** - 14:12
**document** - 3:22; 10:19
**documents** - 3:13; 7:18; 9:4; 10:2; 11:20
**done** - 15:17
**downloaded** - 4:12
**dozen** - 5:13
**drop** - 4:12
**drop-offs** - 4:12
**either** - 11:25
**email** - 9:13
**EMB** - 12:11
**EMO** - 3:23

**employment** - 4:20; 7:1
**essentially** - 10:6
**eventually** - 12:4
**evidence** - 6:21
**exactly** - 11:12
**exhibit** - 3:14, 17
**explain** - 7:2; 8:6
**expressly** - 12:22
**face** - 10:19
**factor** - 9:10, 15; 11:6
**factors** - 4:24; 9:6; 10:16
**failed** - 9:9; 10:16
**far** - 7:19
**February** - 13:11
**fighting** - 6:9
**file** - 8:10; 9:19, 21; 10:8; 12:3; 14:25
**filing** - 11:24
**financial** - 8:19
**fine** - 4:11
**first** - 5:17, 22
**footnote** - 11:25
**form** - 9:16
**four** - 6:5
**general** - 14:25
**gist** - 12:25
**glitch** - 7:4
**go ahead** - 3:25; 4:1
**granted** - 6:13
**great** - 12:8
**guess** - 3:24; 4:15; 5:10, 19; 6:19; 7:16
**guys** - 3:15; 9:20; 11:13
**GYEBI** - 14:4
**handed** - 8:13
**Happy** - 15:19
**happy** - 9:12; 10:9; 15:18
**help** - 10:16
**high** - 3:19
**highly** - 3:19; 11:20
**himself** - 14:25; 15:1
**hire** - 4:25; 7:20
**hold** - 15:11
**housekeeping** - 13:15
**i don't know** - 13:25
**idea** - 8:2
**illegality** - 5:15
**inaudible** - 10:25
**includes** - 5:13
**information** - 4:17; 8:14, 19
**intent** - 4:5
**interim** - 9:24
**interrupt** - 14:5
**issue** - 5:7; 7:18, 24; 8:12; 10:20; 11:1, 6, 19; 12:18; 14:17
**issues** - 3:10
**itself** - 4:8
**jumping** - 5:11

**jumping-off** - 5:11
**kind** - 8:24
**laid** - 7:20
**Larosiere** - 13:16; 14:14; 15:9
**LAROSIERE** - 3:25; 4:2, 15; 5:1, 10; 6:2, 22; 7:6, 12, 14; 8:4; 9:3, 7, 14; 10:10, 13; 11:2; 12:8, 10, 13, 15, 21; 13:4, 13
**larosiere** - 13:21
**last** - 13:10, 17
**lastly** - 13:14
**least** - 14:18
**leave** - 3:17; 5:12; 6:13; 10:4; 11:18
**legal** - 13:17
**LEITNER** - 7:4; 12:12
**letting** - 9:25
**liberally** - 6:13
**Linde** - 13:24; 15:20
**look** - 10:11
**lose** - 8:20; 13:24
**luckily** - 13:6
**main** - 8:12; 9:6; 12:25
**matter** - 13:15
**mean** - 5:24; 7:16, 19; 8:15; 9:8; 11:7; 14:3, 5, 22
**meantime** - 9:19
**meet** - 3:5; 13:16
**meet-and-confer** - 3:5; 13:16
**meeting** - 13:18; 14:1
**mention** - 11:24
**met** - 9:15
**might** - 11:2
**minutes** - 13:18
**month** - 10:6
**months** - 6:5
**most** - 5:14
**motion** - 3:8, 14; 4:5, 8, 13; 6:18; 10:8; 11:17, 24; 12:22; 13:1, 3, 7
**motion for leave to amend** - 3:6, 11; 11:10, 18; 12:5
**motion to** - 5:12
**motion to quash** - 4:4; 12:11, 17
**motion to seal** - 3:12; 9:21; 12:1
**moving** - 3:21
**Mr. Zermay** - 3:24; 4:1; 11:5; 14:15, 17; 15:3, 6, 8, 13, 17, 19
**MS. GYEBI** - 14:9; 15:5
**mS. LEITNER** - 3:3; 4:11, 22; 5:5, 23; 6:16; 7:8, 13, 16; 9:1, 4, 12, 18; 10:11, 23; 11:8; 12:9, 14, 17, 24; 13:8, 14; 14:2; 15:3, 7, 16, 18, 20

**mute** - 15:10
**narrowly** - 11:6
**necessary** - 11:9
**need** - 9:19; 11:5
**New** - 15:18
**newly** - 6:18, 21
**nonissue** - 14:18
**note** - 14:13
**noted** - 13:7
**notice** - 3:22; 5:24; 10:1; 12:1; 14:25
**November** - 3:14; 10:7
**obviously** - 7:22
**offs** - 4:12
**once** - 4:12; 10:21; 12:4
**one** - 3:11; 6:17
**opinions** - 13:17
**oppose** - 8:7
**opposed** - 8:2; 11:17; 12:20; 13:2
**option** - 5:6
**order** - 3:20; 15:21
**out-of-court** - 13:19
**ownership** - 7:5, 10
**part** - 9:9; 12:23
**parties'** - 3:20
**party** - 4:4; 12:19; 13:20; 14:21
**pause** - 15:12
**percent** - 3:20
**perfect** - 13:8
**pivoting** - 3:15
**placeholder** - 12:3
**plaintiff** - 12:23
**plaintiff's** - 3:9, 16
**plaintiffs** - 11:17
**plan** - 10:2
**planning** - 3:18
**point** - 5:11, 23; 11:23
**portion** - 5:7
**position** - 3:9, 16; 8:2; 10:25; 11:10, 15; 12:16; 13:2, 7; 14:20, 23
**posted** - 8:14, 16
**potential** - 5:2
**preliminarily** - 4:3; 14:17
**private** - 8:14, 18
**problem** - 11:12
**proceedings** - 15:12, 23
**produce** - 9:22
**produced** - 9:4
**production** - 6:9
**proposed** - 3:5, 8; 4:13
**protection** - 8:20
**protective** - 3:20
**proved** - 7:9
**provide** - 3:13
**provided** - 3:21; 4:13; 10:1; 12:1; 13:17
**publically** - 8:15

| | |
|---|---|
| **put** - 9:25; 10:24; 11:24; 12:2 | **sounds** - 9:21 |
| **quick** - 13:22 | **standing** - 12:19, 23; 13:1, 5 |
| **quickly** - 15:10 | **state** - 14:21 |
| **raise** - 7:25 | **stay** - 14:9 |
| **re** - 4:24; 6:19 | **stipulated** - 3:20 |
| **re-adding** - 6:19 | **subject** - 7:23 |
| **re-factors** - 4:24 | **subpoenas** - 4:4; 12:19 |
| **read** - 12:22, 24 | **sufficiently** - 9:11 |
| **real** - 8:1 | **suggesting** - 6:22 |
| **realize** - 4:12 | **suggestion** - 9:20 |
| **really** - 8:18 | **summary** - 11:16 |
| **reason** - 4:19; 5:19 | **super** - 10:22; 11:3 |
| **reassert** - 5:21, 25 | **supported** - 4:7 |
| **receive** - 7:22; 12:4 | **tailor** - 11:6 |
| **record** - 14:7, 10, 13; 15:15 | **technical** - 15:14 |
| **redact** - 5:8; 8:23; 10:17; 11:9 | **The court** - 7:7; 9:25; 10:2, 25; 13:25; 14:3, 5-6; 15:22 |
| **redacted** - 4:20; 5:2, 4; 8:11; 9:22; 10:11, 21; 11:21; 12:4 | **third** - 4:4; 12:19 |
| | **third parties** - 13:5 |
| **redaction** - 4:19; 9:16; 11:7 | **third-party** - 4:4; 12:19 |
| | **thoughts** - 15:2 |
| **refusal** - 14:11, 14 | **thrust** - 6:23; 13:6 |
| **registrations** - 7:24 | **timely** - 9:20; 10:8 |
| **Reid** - 9:5; 11:6 | **title** - 7:19 |
| **relevant** - 4:23; 5:9 | **today** - 4:10, 14 |
| **relief** - 3:11 | **together** - 9:16 |
| **rely** - 4:17 | **two** - 3:10, 12; 6:17 |
| **repeatedly** - 14:18 | **ultimately** - 10:12 |
| **reporter** - 14:5 | **unclean hands** - 5:14 |
| **REPORTER** - 7:7; 13:25; 14:3, 6; 15:22 | **under** - 4:24; 8:9 |
| | **unopposed** - 8:3 |
| **requirements** - 9:5 | **unredacted** - 6:25 |
| **res** - 3:16 | **vaguely** - 8:24 |
| **respect** - 3:5, 10, 16; 4:23, 25; 7:4, 17, 23; 10:1; 11:19, 25; 12:2 | **valid** - 4:25; 7:9 |
| | **validly** - 7:9 |
| | **version** - 5:2, 4; 8:12; 9:23; 10:11, 22; 11:21; 12:4 |
| **respond** - 14:11, 14 | |
| **reviewed** - 12:10, 17 | **visible** - 10:18 |
| **role** - 13:19 | **waited** - 10:5 |
| **rules** - 4:18; 14:22 | **waiting** - 15:8 |
| **satisfy** - 9:5 | **website** - 8:15, 17 |
| **seal** - 3:21 | **whoa** - 15:6 |
| **see** - 5:16; 6:23; 12:22; 15:8, 10 | **whole** - 6:10 |
| | **willing** - 5:17; 9:22 |
| **send** - 9:12; 11:21 | **wonderful** - 15:5 |
| **sending** - 10:3 | **work-for-hire** - 4:25; 7:20 |
| **sense** - 11:4 | |
| **sent** - 4:5 | **wound** - 8:14 |
| **served** - 3:13; 6:8 | **Year** - 15:18 |
| **set** - 12:7 | **year** - 5:22, 24; 6:2, 15 |
| **settlement** - 8:16 | **Zach** - 3:25; 6:24 |
| **showing** - 12:3 | **zach** - 11:4 |
| **single** - 14:19 | |
| **slip sheet** - 9:25; 12:3 | |
| **solve** - 11:19 | |
| **sorry** - 7:7; 11:2; 14:4 | |
| **sought** - 3:11 | |