UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №: 6:24-cv-01629

MATTHEW LAROSIERE,

    *Plaintiff*,

v.

CODY RUTLEDGE WILSON, DEFCAD, Inc., DEFENSE DISTRIBUTED, and DIOSKOUROI LLC,

    *Defendants*.

_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO AMEND ANSWER AND AFFIRMATIVE DEFENSES**

# **TABLE OF CONTENTS**

**INTRODUCTION AND SUMMARY OF ARGUMENT** .............................................. 1

**BACKGROUND** ........................................................................................................ 2

**LEGAL STANDARD** ................................................................................................ 3

**I.  DEFENDANTS CANNOT SHOW GOOD CAUSE UNDER 16(B)(4).** ........................................................................................................... 4

**II.  DEFENDANTS CANNOT SHOW EXCUSABLE NEGLECT UNDER RULE 6(B)(1)(B).** ............................................................................................. 5

**III. EVEN UNDER RULE 15, THE AMENDMENT SHOULD BE DENIED DUE TO UNDUE DELAY, PREJUDICE, AND OVERBREADTH** ............................ 6

  A. Defendants Face No Prejudice, But the Proposed Amendment Prejudices Plaintiff .................................................................................................... 6

  B. The Proposed Amendment is Overbroad and Changes Admissions to Denials .................................................................................................... 8

  C. The Proposed Amendment is Futile and Submitted in Bad Faith ...................................................................................................... 11

**CONCLUSION** ........................................................................................................ 12

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff Matthew Larosiere respectfully opposes Defendants' motion for leave to amend their Answer to add a sweeping set of new affirmative defenses nearly a year after the Court's amendment deadline. Defendants cannot satisfy Rule 16(b)(4)'s good-cause standard or Rule 6(b)(1)(B)'s excusable-neglect standard. Even if they could, Rule 15 does not require granting a belated amendment that is unduly delayed, prejudicial, and largely conclusory—and that improperly attempts to "reserve" a future right to add still more defenses, while changing 47 "previous admission to denials and add[ing entirely] new affirmative defenses at this late stage" to "significantly alter the landscape of the litigation." *St. Paul Fire & Cas. Ins. Co. v. Haskell Co.*, No. 3:08-CV-1014-J-16MCR, 2009 WL 10671209, at *3 (M.D. Fla. Aug. 27, 2009) (citing *Ferguson v. Roberts*, 11 F.3d 696, 706 (7th Cir. 1993).

Defendants' change of 47 previous admissions to denials, mentioned nowhere in the underlying motion, concerns Defendants' previous admissions as to sources of income, including those attributable to infringement; Defendants Wilson's ownership and control of business entities; Defendants' publication of their anti-copyright manifesto; venue being proper in this Court; Defendants' awareness of registrations for the works at issue; Defendants' attempts to frustrate Plaintiff's pre-suit investigations; Defendants' intentional use of Plaintiff's likeness; the duration of infringement; the parties responsible for the infringement; Defendant Wilson's intentional removal of copyright notices from the works at issue; the exactness of Defendants' copies of the works at issue, and more discussed *infra*.

1

## BACKGROUND

The Case Management and Scheduling Order set February 28, 2025 as the deadline for motions "to amend pleadings." (Doc. 58).

Defendants assert that they "never had any reason until November 25, 2025" to challenge ownership or validity and that Plaintiff "never produced written agreement(s)" until that date. (Doc. 182 at 5-6). That framing is contrary to the record.

In November of 2024, Defendants claimed that "Plaintiff knowingly misrepresented ownership of digital firearm files." (Doc. 29 at ¶ 417). In January of 2025—in a document attached to Defendants' motion—unconnected to any discovery request, Defendants spoke of the very same assignment and work-for-hire agreements in connection with the Court's inquiry into whether an evidentiary hearing was needed on the then-pending preliminary injunction motion. (Doc. 182-2 at 2). Plaintiff's counsel responded that the documents were irrelevant to the matter at hand but that he would entertain producing such agreements subject to a protective order given confidentiality concerns and Defendants' history of publicizing documents. *Id*. Defendants made no request for production, and did nothing to follow-up. Months later, in September 2025, Defendants again invoked the same documents, this time framing the issue as a purported "failure to produce." (Ex. A at 5). Plaintiff responded that he had reviewed Defendants' requests for production and could not find any request those documents would be responsive to—while nonetheless offering to provide them informally if Defendants simply made the request to the appropriate

2

counsel on the appropriate chain. (Ex. A at 6, email of Wed, Sep 3, 2025 at 1:58 PM). Defendants declined to do so.

Despite multiple opportunities to obtain them both formally and informally, Defendants did nothing to acquire the documents until November of 2025. Defendants now use this as a pretense to justify adding broad defenses about ownership, originality, allegations of fraud, "registration compliance," to convert previous admissions to denials, plus a "reservation of after-acquired defenses" tied to a separate spoliation dispute which has been pending since September.

## **LEGAL STANDARD**

Where a scheduling order sets a deadline to amend pleadings and the movant seeks amendment after the deadline, the movant must first satisfy Rule 16(b)(4) by showing good cause i.e., that the schedule could not be met despite the movant's diligence. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417 (11th Cir. 1998); *Green Island Holdings, LLC v. British Am. Isle of Venice (BVI), Ltd.*, 521 F. App'x 798 (11th Cir. 2013). The Eleventh Circuit likewise affirms denials where the moving party's own choices—delay in pursuing discovery, delay in acting on known issues—undercut diligence. *Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241–42 (11th Cir. 2009). If the motion is also, in substance, a request to extend an expired deadline, Rule 6(b)(1)(B) requires a showing of excusable neglect. Only if those thresholds are met does the Court reach Rule 15(a)(2).

## ARGUMENT

I.     **DEFENDANTS CANNOT SHOW GOOD CAUSE UNDER 16(B)(4).**

The record Defendants chose to attach to their motion defeats any showing of diligence. First, Defendants' own Exhibit B confirms they were raising the issue of the assignment and employment agreements in January 2025, before the amendment deadline—i.e., they had the "reason" they now claim did not exist until November 2025. They cannot simultaneously rely on that January 2025 record to claim "diligent requests" despite making no Rule 34 request until late 2025 and also insist they had "no reason" to pursue these defenses before February 28, 2025. Indeed, in November of 2024, in their first answer and affirmative defenses, Defendants claimed that "Plaintiff knowingly misrepresented ownership of digital firearm files." (Doc. 29 at ¶ 417). Defendants made this claim before any discovery, then declined multiple offers to receive the work-for-hire and transfer agreements, to now claim they had "no reason" to pursue the defenses of the very same breed they first brought over a year ago. Rule 16(b)(4) requires "good cause"—and in the Eleventh Circuit that means diligence, not after-the-fact opportunism. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417 (11th Cir. 1998) (upholding denial of leave to amend where movant waited four months after the amendment deadline to pursue written discovery, observing Counsel "left to chance a critical component" of the litigation).

Second, the January 2025 exchange was not a Rule 34 request. It was invoked amid discussion of compliance with this Court's order on a pending motion. Even so, Plaintiff's counsel expressly offered a path forward production subject to protective

4

order—and asked Defendants to identify actual material factual disputes, as directed by the Court. Defendants chose not to pursue the issue.

Third, the September 2025 chain attached hereto independently defeats diligence. (Ex. A). When Defendants asserted a "failure to produce" employment or transfer agreements, Plaintiff identified that Defendants' then-existing RFPs did not request them and invited an informal request on an appropriate chain with the appropriate counsel so the documents could be produced cleanly. Defendants declined to pursue this invitation, much less serve a written request seeking these documents.

Rule 16 is designed to make scheduling orders meaningful. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1418-19 (11th Cir. 1998) (If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless."). Defendants cannot sit on an issue they were raising since November of 2024, skip the available tools to obtain the documents, and then—ten months after the deadline—claim good cause because they finally pursued the issue.

## II. DEFENDANTS CANNOT SHOW EXCUSABLE NEGLECT UNDER RULE 6(b)(1)(B).

The reasons for the delay were within Defendants' control. They challenged ownership in November of 2024, raised the document categories in January 2025, were offered production subject to protective order, raised the topic again in September 2025, were told their RFPs did not request the documents and were nonetheless invited to them informally, and still did not pursue them. Their decision to wait until late 2025 to formalize the request does not constitute excusable neglect; it reflects a strategic or careless choice. *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*

5

*Ltd. P'ship*, 507 U.S. 380 (1993) (discussing excusable-neglect factors of prejudice, length of the delay, reason for the delay, and good faith). Despite being offered the documents multiple times, Defendants here did not ask for the information they claim justifies their filing until **ten months** after the pleadings were closed. Far more than the movant in *Sosa*.

The length of delay is substantial, and allowing the amendment would disrupt the orderly progression of the case by injecting nearly a dozen new, boilerplate defenses as well as changing 47 admissions with less than four months before the scheduled discovery deadline. (Doc. 58).

### III. EVEN UNDER RULE 15, THE AMENDMENT SHOULD BE DENIED DUE TO UNDUE DELAY, PREJUDICE, AND OVERBREADTH

If the Court reaches Rule 15, the motion should still be denied.

As to undue delay, defendants were on notice of the very issues they now hitch their relief to by at least January 2025, yet waited until after the deadline—and then waited further still—before seeking amendment.

A. <u>Defendants Face No Prejudice, But the Proposed Amendment Prejudices Plaintiff</u>

As to prejudice, the proposed defenses are not modest conforming amendments. They are boilerplate, unparticularized invocations that would broaden the case into satellite disputes over registration accuracy, unspecified allegations of fraud, unspecified "defects," and purported chain-of-title issues—requiring a host of discovery not previously contemplated when the pleadings were closed.

Defendants face no real prejudice where the issue is self-imposed. *Saewitz v. Lexington Ins. Co.*, No. 02-23248-CIV, 2003 WL 25669319, at *3 (S.D. Fla. Sept. 18,

6

2003) (declining to weigh prejudice in favor of a Defendant where "such prejudice is self-imposed" and "Defendant made no effort to conduct any discovery with respect to [the subject] in the eight months that followed [his awareness]."). Still more, many of the affirmative defenses Defendants attempt to bootstrap now were raised in the first answer, then abandoned in the first and second amended answer. *Compare* (Doc. 29) (asserting 10 affirmative defenses, including estoppel, fraud, illegality, laches, license, payment, release, waiver, good faith, and unclean hands) *with* (Doc. 52) (asserting affirmative defenses of fair use, illegality, and license) *and* (Doc. 182-3) (asserting defenses of fair use, illegality, license, defects in ownership or chain of title, defects in ownership and chain of title (again), allegations of inaccuracies with respect to registration, lack of protectable expression, improper designation, prerequisites to suit, fraud on the copyright office, then an "Eleventh Affirmative Defenses" which melds together unclean hands, copyright misuse, estoppel, waiver, and laches."). Defendants make no attempt to explain the sudden resurrection of these previously abandoned defenses, nor do they explain how re-addition of these defenses 10 months after the close of pleadings comports with the Rules.

On the other hand, "Plaintiff will be unduly prejudiced if, at this late hour, Defendant[s were] permitted to add [] additional affirmative defenses and completely change [their] responses to allegations previously admitted." *St. Paul Fire & Cas. Ins. Co.*, 2009 WL 10671209, at *3.

7

B. <u>The Proposed Amendment is Overbroad and Changes Admissions to Denials</u>

Defendants' motion and proposed answer further attempts to "reserve the right" to add additional defenses tied to a separate spoliation dispute. (Doc. 182-3 at 51). Pleadings are not a vehicle for indefinite placeholders. If Defendants later believe new facts justify a new defense, the rules already provide the mechanism: a motion showing the required standards. The "reservation" underscores that Defendants are using this amendment as a rolling opportunity to expand defenses without meeting the governing standards.

Additionally, the proposed amendment, without explanation, materially changes the admissions and denials upon which Plaintiff has based his discovery pursuits for a year. *Compare* (Doc. 52) *with* (Doc. 182-3). In particular, Defendants have moved from admitting and denying in unison, as they did in all three previous answers *see* (Docs. 29, 49, 52) to now asserting differences in position. Materially, Defendants have flipped from admitting to denying the Amended Complaint's paragraphs 57, 61, 62, 91, 107, 110, 115, 118, 122, 124, 144, 147, 150, 153, 156, 160, 168, 169, 170, 174, 181, 185, 189, 190, 191, 194, 196, 198, 211, 212, 213, 224, 280, 284, 286, 287, 288, 289, 290, 321, 322, 326, 327, 328, 329, 330, and 331.

Those previously admitted allegations, now denied in the proposed amendment, relate to venue being proper in this Court (¶ 91); Sources of income, including income attributable to the infringement (¶¶ 57, 62, 107, 110, 115, 118, 124, 160, 189, 190, 191, 194, 196, 198, 224); Defendants' profits from the infringement (¶¶ 57, 62, 107, 110, 115, 118, 124, 160, 189, 190, 191, 194, 196, 198, 224); Ownership and

8

control of the business entities (¶¶ 61, 198); The Alter-Ego theory, including Defendant Wilson's use of the business entities to perpetrate the infringement (¶¶ 61, 198); Defendants' publication of the anti-copyright manifesto (¶¶ 169, 170, 185, 191, 280); Defendants' knowledge of the copyright registrations for the works at issue (¶¶ 174, 181, 284, 286); Defendants' attempts to thwart Plaintiff's pre-suit investigation into the infringements (¶¶ 181, 287, 288, 289, 290); The financial relationship between the defendant business entities (¶ 198); Defendants' intentional use of Plaintiff's name and likeness (¶¶ 321, 322, 326, 327, 328, 329, 330, 331); Defendants' false designations of origin (¶¶ 196, 321, 322, 326, 327, 328, 329, 330, 331); the duration of the infringements (¶¶ 144, 147, 150, 153, 156); the parties responsible for the infringements (¶¶ 107, 110, 115, 118, 122, 124, 144, 147, 150, 153, 156, 160, 168, 169, 170, 189, 190, 191, 194, 196, 198, 211, 212, 213, 224, 280, 284, 286); Defendants' direct sale of the works at issue (¶¶ 189, 190, 191, 194, 196, 198, 224); the extent of the sale/offering for sale of the works at issue (¶¶ 107, 110, 115, 118, 124, 160, 189, 190, 191, 194, 196, 198, 224); Defendant Wilson's deliberate removal of copyright notices from the works at issue (¶ 211); and the exactness of the copies made available by Defendants. (¶¶ 212, 213).

Plaintiff has spent considerable effort pursuing discovery underlying each of the denials Defendants previously asserted. Manufacturing 47 new factual disputes mere months before the close of discovery is unsupported by any contention in the motion. *See St. Paul Fire & Cas. Ins. Co.*, 2009 WL 10671209, at *3 ("The Court finds allowing Defendant to change its previous admissions to denials and add three

9

entirely new affirmative defenses at this late stage will significantly alter the landscape of the litigation"); *Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992) (affirming district court's denial of plaintiff's motion to amend the complaint and stating that last minute additions are bound to produce delays that burden both the litigants and the court); *see also Acosta Mestre v. Hilton Inern. Of Puerto Rico, Inc.*, 156 F.3d 49 at 52–53 (1st Cir. 1998) (reasoning non-movant would be prejudiced by additional discovery and postponement of trial where non-movant might have to alter strategy and tactics to deal with amendments); *Cf. Christoff v. Inglese*, No. 2:20-CV-546-SPC-NPM, 2022 WL 18926770, at *1 (M.D. Fla. Dec. 22, 2022) (Allowing amendment where "defendants only changed previous denials to admissions or converted denials for lack of knowledge to outright denials; no prior admissions were changed to denials.").

    The documents Defendants rely upon simply do not justify the sprawl of new defenses and new denials. Defendants stake their amendment on the assignment and work-for-hire agreements. (Doc. 182-1). Their proposed amendment makes no direct reference to this, but rather suggests "[t]he purported transfers upon which Plaintiff relies are missing, ambiguous, or otherwise noncompliant with the statute," (Doc. 182-3 at 47, 48). The very documents identified as the justification for the late amendment, attached to the motion for leave to ament itself, facially do what Defendants claim was missing. (Doc 182-1). Defendants' characterization of "substantial defects" is not a substitute for pleading specific facts and does not justify such a late, sweeping amendment.

10

C. <u>The Proposed Amendment is Futile and Submitted in Bad Faith</u>

While a motion to amend does not test the amended pleading itself, the futility of the amendment is one of many reasons a court may deny leave to amend. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) ("denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal"). Defendants' attempt to allege fraud without satisfying Rule 9(b), the duplicative Fourth and Fifth "Affirmative Defenses" (Doc. 182-3 at 47-48), and the cumulative "Eleventh Affirmative Defenses" tend to show the amendment is designed to delay, or an improper attempt to suddenly rescind their material admissions.

Worse yet, many of the new defenses fail to make any mention of the agreement and work-for-hire agreements at all. The "Seventh Affirmative Defense" (Doc. 182-3 at 49) raises, for the first time, a boilerplate recitation that offers divergent theories of how the works at issue might lack protectable expression or originality – completely untethered to the purported justification Defendants offer in the motion. The "Twelfth Affirmative Defense," "Thirteenth Affirmative Defense," and "Fourteenth Affirmative Defense" (Doc. 182-3 at 51) each offer only boilerplate recitations, each having nothing to do with the purported justification of timeliness Defendants offer in the motion. If Defendants wished to use these defenses, they could have raised them at any point prior to the amendment deadline.

Additionally, Defendants' justification for their delay is pretextual. Defendants first intimated their desire to amend at the in-person conference ordered by this Court on November 24 by suggesting Plaintiff amend the complaint. (Doc. 175-1 at 40:24, 42:5). Plaintiff responded that the pleadings were closed and amendment

11

would be improper. *Id*. Defendant received the assignment and agreement documents on November 25, 2025. On November 26, 2025, Defendants sent an email asking for Plaintiff's position on a motion for leave to amend to assert undisclosed additional affirmative defenses "including, but not limited to, copyright validity and unclean hands," which Plaintiff could not take a position on without knowing what was sought to be asserted. On this record, Defendants' asserted justification holds no water, and is manifestly inconsistent with the swath of last-minute changes Defendants seek.

## CONCLUSION

Defendants have not shown good cause or excusable neglect to reopen pleadings after the Court's February 28, 2025 deadline, and the proposed amendment would unduly prejudice Plaintiff while adding largely conclusory defenses, changing multiple material admissions to denials, and injecting an improper "reservation" for future defenses. The motion should be denied.

Respectfully submitted,

DATED:  January 21, 2026

                                              */s/ Zachary Z. Zermay*
                                              Zachary Z. Zermay, Esq.
                                              Fla. Bar № 1002905
                                              *Zermay Law, P.A.*
                                              3000 Coral Way, Ste 1115
                                              Coral Gables, FL 33145
                                              Email: zach@zermaylaw.com
                                              Tel: (305) 767-3529
                                              *Lead Counsel for Plaintiff*
                                              *Matthew Larosiere*