UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**MATTHEW LAROSIERE,**             CASE №: 6:24-cv-01629-AGM-LHP

      *Plaintiff*,

v.

**CODY RUTLEDGE WILSON, DEFCAD,**
**Inc., DEFENSE DISTRIBUTED,**
**and DIOSKOUROI LLC,**

      *Defendants.*
_____/

## DEFENDANTS' SUPPLEMENTAL BRIEFING IN SUPPORT OF PLAINTIFF'S MOTION TO OVERRULE OBJECTIONS [DKT. 156]

Defendants submit this supplemental briefing pursuant to the Court's January 14, 2026, Order ("Court Order") directing targeted briefing in advance of the February 10, 2026, hearing. The Court has entered preliminary rulings streamlining objections and has identified discrete questions concerning alter ego, willfulness, temporal scope, financial discovery, and phasing, privilege and work product, production status, and the ESI protocol. Doc. 185 at pp. 1–5. Defendants address each issue consistent with the Court's Order, *see id*, at pp. 5–8.

**I.    Targeted Issues Identified by the Court's Order [Dkt. 156].**

    1.    <u>Alter Ego Discovery Is Not Relevant To The Pleaded Claims And Is Premature</u>.

Where no alter ego claim appears in the operative complaint, wide-ranging alter ego discovery into entities and nonparties is outside the scope of and risks disproportionate intrusion. *See* Fed. R. Civ. P. 26(b)(1). Discovery must be relevant to a claim or defense in the case. Parties are not entitled to discovery to develop new claims or defenses that are not already identified in the pleadings. *Builders Flooring Connection, LLC v. Brown Chambless Architects,* No. 2:11CV373-MHT, 2014 WL 1765102, at *1 (M.D. Ala. May 1, 2014) (quoting

1

GAP Report of Advisory Committee to 2000 amendments to Rule 26) Here, Plaintiff's alter ego allegations are conclusory and insufficient. Doc. 43 at ¶¶3–42. The Amended Complaint does not allege specific facts showing a unity of interest and ownership between the entity and the individual/affiliated defendants, nor does it plead facts demonstrating that an inequitable result would follow if the corporate form were respected. *Id; see also In re Tampa Hyde Park Café Props.*, LLC, 660 B.R. 322, 323 (Bankr. M.D. Fla. 2024)( outlining the "[e]lements of alter ego liability under Florida law are (1) the alleged alter ego was dominated and controlled to the extent it lacked an independent existence; (2) the alter ego's corporate form was used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the alter ego's corporate form caused harm.").

Absent such well-pled facts and causes of actions, Plaintiff has not made even a threshold showing that would justify piercing the corporate veil or treating the defendants as the same legal actor for purposes of liability on the pleaded claims. *Id; see also In re Takata Airbag Prods. Liab. Litig.*, No. 14-24009-CV, 2016 U.S. Dist. LEXIS 46206, at *2 (S.D. Fla. Mar. 1, 2016)(Rule 26(b)(1) "crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality).

Because Plaintiff's alter ego allegations are conclusory, the request for alter ego discovery amounts to an impermissible fishing expedition. Doc. 43 at ¶¶3–42. Discovery is not a license to search for facts to cure deficient pleadings; it must be proportional to the needs of the case and "tied to" the claims and defenses actually alleged. *See* Fed. R. Civ. 26(b)(1). Plaintiff's requested discovery is also not proportional because it seeks wide-ranging information about real estate transactions, ownership, finances, corporate formalities, and

intercompany dealings that bear no demonstrated connection to the copyrights in-suit[1] and the infringing conduct alleged. *See* Docs. 156–2. Without particularized factual allegations linking the requested alter ego topics to the copyrighted works-in-suit or plaintiff's claim for damages, the burdens of such discovery far outweigh any marginal benefit. *See* Fed. R. Civ. 26(b)(1).

At most, alter ego issues may be addressed in execution or proceedings supplementary if Plaintiff first obtains a judgment and then seeks to reach non-judgment debtors. "*Jaramillo v. Taurus Int'l Mfg.*, No. 1:23-CV-196 (LAG), 2024 LX 99454, at *30 (M.D. Ga. Sep. 27, 2024)(recognizing that, "[w]hether Defendant is indeed liable for its subsidiaries' conduct is "a question of the merits of Plaintiff's case, to be determined at a later stage in the litigation and **after discovery**.")(emphasis added); *see also Blevins-Ellington v. Coopersurgical, Inc.*, 2023 U.S. Dist. LEXIS 28936 at *11 (N.D. Ga. Jan. 17, 2023)(same proposition).

In addition, the Court's "possession, custody, or control" guidance in *Searock* confirms that control turns on a legal right to obtain documents on demand, not mere practical influence. *See Searock v. Stripling*, 736 F.2d 650, 651 (11th Cir. 1984 )(citations omitted). This further counsels against pre-judgment discovery of the alter ego of nonparties absent a demonstrated legal right. *Id.* Thus, Plaintiff bears the burden to prove control; speculation or a "mere hunch" is insufficient to compel production.

2.  <u>Willfulness Discovery Must Be Tethered To The Specific Works And Uses Actually At Issue</u>.

The Court has asked how the disputed discovery relates to "willfulness" for Plaintiff's claims under 17 U.S.C. §501, 15 U.S.C. §1125, and Fla. Stat. §540.08, noting what appears

---

[1] At all times material herein, the term "copyright-in-suit" refers to the 3D print gun models with copyright registrations alleged in the Amended Complaint. Doc. 43 at ¶¶104–259.

3

to be Plaintiff's pursuit of broad discovery into Defendants' alleged disregard of copyright, the Lanham Act, and Florida law "in general," rather than discovery tied to the alleged willful infringement of the specific works and alleged misconduct regarding Plaintiff's name, image, or likeness. Defendants agree with the Court's framing.

Under 17 U.S.C. § 504(c)(1), "the copyright owner may elect...to recover, instead of actual damages and profits, an award of statutory damages...in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). If the "infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of no more than $150,000." 17 U.S.C. §504(c)(2). For a defendant to infringe "willfully," means to "know[] his actions constitute an infringement; the action need not have been malicious." *Cable/Home Commun. Corp. v. Network Prods., Inc.*, 902 F.2d 829, 851-52 (11th Cir. 1990).

At the outset, this district bases its willfulness on the allegations in the Complaint when assessing the proper amount of statutory damages. *See Bork v. Quynh*, No. 2:19-cv-354-FtM-38MRM, 2020 U.S. Dist. LEXIS 138515, at *4 (M.D. Fla. Aug. 4, 2020) *See Bowers v. David Jacobs-Publ'g Grp*., LLC, No. 8:19-cv-1361-T-35TGW, 2019 U.S. Dist. LEXIS 231484, 2019 WL 8989845, at *3 (M.D. Fla. Oct. 31, 2019. Thus, willfulness discovery must focus on the specific acts and works pleaded in the First Amended Complaint, and the specific instances of alleged use of Plaintiff's name or likeness, not generalized corporate intent or historic attitudes toward intellectual property or publicity rights untethered to the accused conduct.

The Court has already limited "Copyright" and "Works" to those identified in the First Amended Complaint. Doc,. 185 at p. 5. Discovery into willfulness should therefore address the accused acts and time period for those defined items and alleged uses, rather than

enterprise-wide policies or unrelated projects as requested in Plaintiff's discovery requests. Doc. 156–2. This approach honors Rule 26(b)(1)'s relevance and proportionality constraints and the Court's preliminary ruling narrowing the operative definitions. *See* Fed. R. Civ. P. 26(b)(1); *see also In re Takata Airbag Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 46206, at *2 (discussing the proportionality requirement under Rule 26(b)(1)).

**II.     Temporal Scope Should Be Limited To 2022 Forward Based on the Pleadings.**

The Court has asked why discovery should extend to 2018, when the copyrights, works, and actions alleged in the First Amended Complaint occurred from 2022 forward. *See generally,* Doc. 43 at ¶¶104–259. Defendants submit that the temporal scope should be construed to run from 2022 to the present, consistent with the pleaded facts and effective dates of the copyright registrations referenced throughout the Complaint. *Id.*; *see also* Fed. R. Civ. P. 26(b)(1). The Amended Complaint alleges the filing dates and effective registrations for the copyrighted works in suit as follows:

- Amigo Grande: filed December 23, 2023; effective date December 23, 2023 (Doc. 43 at ¶ 142).

- MPP99: filed December 23, 2023; effective date December 23, 2023 (Doc. 43 at ¶¶ 145–146).

- BUBAR: filed December 23, 2023; effective date December 23, 2023. Doc. 43 at ¶¶ 148–149).

- KF5: filed December 23, 2023; effective date December 23, 2023. (Doc. 43 at ¶152-153)).

- SF5: filed December 23 and 24, 2023; effective dates December 23 and 24, 2023. (Doc. 43 at ¶152).

- Plastikov V4: filed June 8, 2024  Doc. 43 at ¶¶ 247–248)).

- NS3: filed September 9, 2024 (within three months of first publication); effective date September 9, 2024 (Doc. 43 at ¶¶ 247–248)).

329475065v.1

Plaintiff also asserts that the Defendants allegedly posted the copyrighted-in-suit without authorization between March 17, 2022, and April 25, 2024. (Doc. 43 at ¶¶ 104–259)). Extending by four years would capture non-accused activities, persons, and systems, thereby multiplying the burden with minimal probative value, especially given the Court's admonition that speculation or a "mere hunch" cannot justify compelled production. To the extent Plaintiff contends earlier materials are necessary, Plaintiff should make a targeted, non-speculative showing tied to a specific copyright-in-suit or act to justify any narrow exception.

### III.     Financial Discovery Should Be Narrowly Tailored And Phased.

The crux of the instant discovery dispute is whether Plaintiff's discovery quest goes too far by demanding sensitive financial information to ultimately prove ill-gotten profits damages. Doc. 156–2. Where a plaintiff wants to recover ill-gotten profits, it must establish the direct infringer's gross sales of the product. That defendant then must refute that amount and/or proffer costs that should be deducted from the gross sales. *Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1488 (11th Cir. 1987). Hence, "'[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.' 15 USC § 1117(a)." *Tiramisu Intern. LLC v. Clever Imports LLC*, 741 F. Supp. 2d 1279, 1290 (S.D. Fla. 2010).

Here, Plaintiff's core theory is that Wilson and his controlled entities willfully reproduced, distributed, and sold Plaintiff's registered works through a subscription site and USB sales while removing copyright notices and falsely signaling affiliation, causing ongoing economic and reputational harm. Doc. 43 at ¶¶298–301. In determining willfulness, the case law generally shows that "[i]f a [Defendant] were to steal your copyright and put it in a sales brochure, you could not just put a copy of [Defendant's] corporate income tax return in the

record and rest your case for an award of infringer's profits. *Coach, Inc. v. Hubert Keller, Inc.*, 911 F. Supp. 2d 1303, 1309 (S.D. Ga. 2012)(citing *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983). Put another way, Plaintiff must use a method to sort and sift wrongful product from underlying costs and related sales for the copyrights-in-suit. *See, e.g.,* Nike Inc. v. Variety Wholesalers, Inc., 274 F. Supp. 2d 1352 (S.D. Ga. 2003).

While the Eleventh Circuit has not ruled directly on this issue, courts within the Eleventh Circuit have found that virtually every other Court of Appeals to consider it has required some nexus between the infringing activity and the gross revenue figure proffered by the plaintiff. *See Ordonez-Dawes v. Turnkey Props., Inc.*, No. 06-60557-CIV-MARRA/JOHNSON, 2008 U.S. Dist. LEXIS 24320, at *8 (S.D. Fla. Mar. 26, 2008) (citing *see, e.g., Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) ("Thus, a copyright owner is required to do more initially than toss up an undifferentiated gross revenue number; the revenue stream must bear a legally significant relationship to the infringement."); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) ("In sum, we conclude that the Defendants could properly be awarded summary judgment. . .if. . .there exists no conceivable connection between the infringement and those revenues . . . ."); *On Davis v. The Gap, 246 F.3d 152, 160* (2d Cir. 2001) ("[W]e think the term 'gross revenue' under the statute means gross revenue reasonably related to the infringement, not unrelated revenues."); *The University of Colorado Foundation, Inc. v. American Cyanamid Co.*, 196 F.3d 1366, 1375 (Fed. Cir. 1999) (requiring the plaintiff to show a connection between defendant's gross revenues and the alleged infringement); *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983) ("It was not enough to show [Defendant]'s gross revenues from the sale of everything he sold . . . ."); *see also Andreas v. Volkswagen of America, Inc.*, 336 F.3d 789, 796 (8th Cir. 2003)

(explaining that the "burden of establishing that profits are attributable to the infringed work often gets confused with the burden of apportioning profits between various factors contributing to the profits").

Applying the above, the purported profits are derived from DEFCAD, Inc.'s subscription website and USB sales tied to the copyrights-in-suit. *See* Doc. 48 at ¶¶ 298–301. The Amended Complaint alleges that DEFCAD, Inc. charges a $60.00 to purchase a membership from ddlegio.com ("Legio Memberships") to access the website's fun repository of over 18,000 3D-print gun files (with 7 3D-print gun files at issue). Doc. 43 at ¶¶ 96–98. Thus, the defendant entities' financial statements and tax returns would contain evidence of sales of Legio Membership subscription fees sold using the copyrights-in-suit, or that the information would be sufficiently relevant to the plaintiff's claim for damages. *Drywall Systems Int'l, Inc. v. Polyform, Inc.,* 2005 WL 758257 at *2 (D. Or. Mar. 31, 2005) ("To obtain recovery of defendants' profits, plaintiff must prove defendants' sales. 15 U.S.C. § 1117.)

This indicates that, at this stage, any financial discovery should be phased and narrowly tailored to information necessary to resolve liability, and, only if necessary, to remedies. Phase 1 should exclude broad, enterprise-wide financials and be limited to: (i) whether any revenue is directly attributable to the accused works or the specific alleged uses of Plaintiff's name or likeness during the operative period; and (ii) identification of the systems or custodians that would contain such data, without underlying transaction-level production.

If the case proceeds past liability to the remedies phase, Phase 2 can address targeted financials (e.g., revenue attributable to the accused's works/uses, limited cost categories, and limited custodians) with agreed-upon guardrails. This phasing furthers proportionality and aligns with the Court's direction to focus on the specific works and alleged acts in the First

Amended Complaint.

### IV. Privilege And Work Product: Application And Privilege Log Compliance.

The Court directed that, to the extent Defendants assert attorney-client privilege and/or work product protection, they must provide legal authority and serve a privilege log compliant with the Court's Standing Order by February 4, 2026, and attach that log to their supplemental briefing. Defendants assert the attorney-client privilege and work product protection over confidential communications with counsel and materials prepared in anticipation of litigation, including communications with outside counsel, in-house counsel (where applicable), and counsel's agents engaged to assist counsel. Consistent with the Standing Order, Defendants attached a privilege log that identifies, for each withheld document, the information required by the Standing Order, and have attached as **Exhibit A** the privilege log to this brief as required by the Court's Order. Doc. 185 at p. 7

The attached privilege logs identify communications between Defendants and Counsel, and between Defendants' entities and their employees. *See* Ex. A. The attorney-client privilege covers communications between non-lawyers. "To conclude otherwise would result in a somewhat absurd finding that a document generated for purposes of obtaining and/or assisting in the transmission of legal advice would [lose its privilege] merely because the author and recipient were not attorneys." *In re Denture Cream Prod. Liab. Litig.*, No. 09-2051-MD, 2012 U.S. Dist. LEXIS 151014, 2012 WL 5057844, at *13 (S.D. Fla. Oct. 18, 2012). And it is not unusual, as Plaintiffs suggest, to see non-attorney communications on a corporate privilege log. Since a corporation's decision-making power is often shared, the circulation of privileged communications among several employees (including non-lawyers) is unavoidable. *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682 (1981).

In addition, the Court's "possession, custody, or control" framework confirms that Defendants are not obliged to obtain privileged materials from nonparties absent a legal right to secure such materials on demand. To the extent Plaintiff seeks privileged materials from third parties or non-party counsel, those are outside Defendants' control under *Searock* and outside the scope of Rule 26. *See Searock v. Stripling*, 736 F.2d at 651.

**V.   Status Of Production.**

The Court requested an update on the status of the document production that, per the parties' discussions, was to occur by December 1, 2025. Defendants provide the following update consistent with the Court's directive:

Search, collection, and review status: Defendants engaged a third-party eDiscovery vendor different from the vendor used in prior matters. The change in vendor was necessitated by the undersigned counsel's firm's capacity and the practical need for scalable infrastructure to process, host, and review a document set of this magnitude (e.g., 1,000,000 documents, ultimately culled to 400,000 pages; reviewed by four attorneys) within the required timelines. The selected vendor provided secure data intake, processing, review, hosting, analytics, and production capabilities consistent with industry standards.

Production to date: Attached as **Exhibit B** is an index/ description of documents Defendants produced on December 1, 2025. A copy of the same was served on Plaintiff on December 29, 2025, as agreed during the parties' December 2, 2025, meet and confer conference. Further discovery was served on December 15, 2025, in connection with Defendant Wilson's amended responses to Interrogatory No. 3 pursuant to Rule 33(d). A third round of production was served on January 20, 2026, comprising documents referring to the works at issue and communications concerning John Elik. Specific reference to the

329475065v.1

nature of the documents was made in the service chart accompanying the production, notwithstanding Plaintiff's deceptive implication that Defendants did not abide by the Rules of Procedure in identifying the production sufficiently to determine which requests the production was responsive to. *See* Dkt. 189 at p 4.

Remaining items and timetable: Defendants anticipate making a fourth production containing the "Slack" documents responsive to requests pertaining to the copyrighted works at issue, Defendants' intellectual property policies, DMCA/takedown notices, and commentary regarding the publication of the Black Flag White Paper. The fourth production will also include a chart reflecting the fees generated by any subscription from January 2022 to January 2025 that permitted the public to access the copyrighted works at issue. Subscription fees are the only source of revenue received by Defendants in connection with the works at issue. Thus, it is the Defendants' position that this production sufficiently meets their discovery obligations and the needs/ scope of this case. Defendants are working with their ESI vendor to ensure this production is served on Plaintiff today, February 4, 2026. Plaintiff has maintained his opposition to establishing an ESI protocol to govern further production and has provided no further explanation to justify the expansive time frame sought for discovery. Thus, at this time, Defendants are unable to determine what, if any, further production is needed, absent the Court's guidance.

Defendants have focused their collection and review on the specific works and alleged acts identified in the First Amended Complaint, consistent with the Court's preliminary rulings and the relevance and proportionality requirements of Rule 26.

**VI.   ESI Protocol.**

The Court requested that the parties explain why they are unable to agree on an ESI

11

protocol. Defendants' position is that an ESI protocol should be anchored in the Court's rulings narrowing scope and focus discovery on: (i) identified custodians most likely to possess information about the specific accused works and acts; (ii) a 2022 forward date range; (iii) negotiated search terms targeted to those works and acts; and (iv) standard deduplication, metadata fields, and production formats. To that end, Defendants propose the following framework:

Custodians: A small, targeted set of custodians directly involved with the accused's work or alleged uses from 2022 to the present, with a mechanism to add custodians upon a concrete showing.

Date range: 2022 present, subject to narrow exceptions upon specific, non-speculative need.

Search methodology: Search terms tailored to the defined "Copyright" and "Works" and to Plaintiff's name and alleged uses, with sampling and hit report exchanges to refine terms and avoid over collection.

Format and metadata: TIFF or native for spreadsheets; standard load files; deduplication across custodians; and production of basic system metadata (e.g., custodian, file path, date sent/received, from/to/cc/bcc, subject, file name, file size, hash). This framework should resolve the ESI impasse by aligning the protocol with the Court's narrowing rulings and proportionality principles.

## VII.  Possession, Custody, Or Control.

The Court has adopted the Eleventh Circuit's *Searock* definition of "control" and noted examples where control might or might not exist, while emphasizing that Plaintiff bears the burden of proving control and that a "mere hunch" is insufficient. Applying that guidance,

Defendants have searched and will produce documents within their possession, custody, or control as so defined. *See Searock v. Stripling*, 736 F.2d 650, 651; Doc. 185 at p. 3–5.

## VIII. Conclusion.

Defendants respectfully request that the Court: (i) hold that alter ego discovery is premature and outside the scope of the pleaded claims; (ii) limit willfulness discovery to the specific works and alleged acts in the First Amended Complaint; (iii) limit the temporal scope to 2022 present; (iv) phase any financial discovery and narrowly tailor it to revenues, if any, attributable to the accused works or alleged uses; (v) accept Defendants' privilege/work product assertions and attached the privilege log in compliance with the Standing Order, *see e.g.* Exhibit A; (vi) accept Defendants' production status update; and (vii) adopt or direct the parties to adopt an ESI protocol consistent with the framework above. These outcomes implement the Court's preliminary rulings and ensure discovery remains relevant and proportional to the needs of the case.

Dated: February 4, 2026

                                            Respectfully submitted,

                                            WILSON ELSER MOSKOWITZ
                                            EDELMAN& DICKER LLP

By:   *s/ Leia V. Leitner*
        Leia V. Leitner
        Florida Bar No: 105621
        111 North Orange Avenue
        Suite 1200
        Orlando, FL 32801
        Telephone: 407-423-7287
        Facsimile: 407-648-1376
        Leia.Leitner@wilsonelser.com
        Cheryl.Kujawski@wilsonelser.com

Jura C. Zibas  
Florida Bar No: 124571  
Amaris C. Gyebi, Esq.  
Florida Bar No: 1019361  
2063 Main Street - Suite 100  
Sarasota, FL 34237  
Telephone: 941-866-8561  
Facsimile:  941-210-5979  
Jura.Zibas@wilsonelser.com  
Amaris.Gyebi@wilsonelser.com  
Cheryl.Kujawski@wilsonelser.com  

*Co-Counsel for Defendants*  
*Cody Rutledge Wilson*  
*DEFCAD, Inc. and Defense Distributed*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of February, 2026, a true and correct copy of the foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF E-Filing Portal, which will serve an electronic copy of the foregoing on the following: Zachary Z. Zermay, Esq., Florida Bar No: 1002905; Zermay Law, P.A., *Counsel for Plaintiff*, 1200 Fourth Street, #1102, Key West, Florida 33040; Telephone: 305-767-3529; Zach@Zermaylaw.com and info@Zermaylaw.com; Charles (Chad) Flores, Esq., Flores Law PLLC, *Counsel for Defendants, Cody Rutledge Wilson, DEFCAD, Inc., Defense Distributed and Dioskouroi LLC,* 917 Franklin Street, Suite 600, Houston, Texas 77002, Telephone: 713-364-6440, CF@ChadFlores.law; chad-flores-7646@ecf.pacerpro.com and service@chadflores.law.

*s/Leia V. Leitner*  
Leia V. Leitner

329475065v.1