UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №: 6:24-cv-01629

MATTHEW LAROSIERE,

    *Plaintiff*,

v.

CODY RUTLEDGE WILSON, DEFCAD, Inc.,
DEFENSE DISTRIBUTED, and
DIOSKOUROI LLC,

    *Defendants*.

_____/

**PLAINTIFF MATTHEW LAROSIERE'S SUPPLEMENTAL BRIEF IN
RESPONSE TO THE COURT'S ORDER (DOC. 185)**

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Court ordered supplemental briefing on remaining discovery issues identified in the Joint Notice (Doc. 175), including (among other things) disputes concerning alter-ego-related discovery, willfulness-related discovery, temporal scope, financial discovery, privilege logging, status of production, and the parties' inability to agree on an ESI protocol. (Doc. 185 at 5–7.) Plaintiff's position is that the Court should compel complete responses and production—at minimum sufficient to establish Defendants' gross revenue and to determine the full extent to which each Defendant was involved in carrying out the infringement of Plaintiff's copyrights. Defendants have produced essentially nothing in a usable manner and resolution of these outstanding issues is necessary to ensure that discovery does not drift past the deadline. (Doc. 156 at 1 2; Doc. 185 at 6; Doc. 175 at 3; Ex. A at1.) Plaintiff further addresses Defendants' relevance and proportionality objections. Finally, to the extent the "possession, custody, and control" objections were not completely resolved by this Court's preliminary ruling, they are addressed herein.

## BACKGROUND

Plaintiff filed a motion to compel after Defendants served predominantly objection-only responses and repeatedly promised (but did not provide) substantive productions. (Doc. 156 at 1 2). Defendants' December 1 production is described in the Joint Notice as a dump of unindexed PDFs that did not tie documents to requests. (Doc. 175 at 3.) Since then, Defendants have continued to resist producing key categories of information, including those which are particularly relevant to each

1

Defendant's role in (and awareness of) the copyright infringement, as well as financial materials necessary to prove damages and profits. (Doc. 175 at 10; Ex. A).

## ARGUMENT

### A. WHY ALTER-EGO THEORIES ARE RELEVANT AT THIS STAGE OF THE LITIGATION

I. <u>The amended complaint pleads alter-ego facts and an alter-ego theory of liability.</u>

The First Amended Complaint alleges that the business-entity defendants are alter egos of Defendant Cody Wilson and that they are used as mere instrumentalities. The allegations include, among other things, commingling, disregard of corporate formalities, and use of entity structures to multiply torts against Plaintiff. (Doc. 43 at 2–3 ¶¶ 9–16). Those disputed allegations go directly to whether the corporate form should be disregarded for purposes of liability and equitable relief and whether "company" records are within the practical control of the individual defendant (and vice versa) for Rule 34 purposes. (Doc. 43 at 2–3 ¶¶ 9–16; Doc. 185 at 4–5).

Federal courts in Florida treat "alter ego" not as a freestanding cause of action but as a theory for imposing liability based on pleaded facts—i.e., it need not appear as a separately captioned "count" to be litigated and proven. *See, e.g.*, *Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1373 (S.D. Fla. 2011); *Tara Prods., Inc. v. Hollywood Gadgets*, Inc., No. 09-61436-CIV, 2010 WL 1531489, at *9 (S.D. Fla. Apr. 16, 2010) (Observing "alter ego is not a separate cause of action for which relief can be granted" while dismissing alter ego count with prejudice and

2

requiring plaintiff to re-plead allegations regarding alter ego in the body of the complaint).

    II.    <u>Alter-ego discovery is not categorically post-judgment; it is merits discovery when alter-ego facts bear on pleaded liability theories and control.</u>

The Court's concern appears to be that alter-ego discovery might be premature if it is being pursued solely as a mechanism to collect on a future judgment. (Doc. 185 at 5). But here, alter-ego facts are pleaded as part of the operative complaint's liability narrative and are intertwined with issues of damages and profits where business and personal finances are alleged to be commingled, as well as the scope of "possession, custody, or control." (Doc. 43 at 2–3 ¶¶ 9–16; Doc. 185 at 4–5).

Eleventh Circuit alter-ego standards confirm that the inquiry is fact-intensive and focuses on domination, improper use, and causation. See *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011); *United Steelworkers of Am., AFL-CIO-CLC v. Connors Steel Co.*, 855 F.2d 1499, 1506–07 (11th Cir. 1988). Those elements necessarily require discovery into ownership, control, commingling, and use of entities as conduits—facts Plaintiff pleaded and Defendants dispute. (Doc. 43 at 2–3 ¶¶ 9–16).

In short: the operative complaint does make an alter-ego theory part of the case (even if not as an independent "claim"), and discovery directed to those pleaded facts is appropriate now—not only after judgment. See *Unilin Beheer B.V. v. US Wood Flooring, Inc.*, No. 17-60107-CIV, 2017 WL 5953423, at *2 (S.D. Fla. June 22, 2017) (citing to *United Steelworkers* while making alter ego determination in first-instance judgment); *id.* ("Because the Defaulting Defendants have not responded to the

Complaint, Plaintiffs have not been able to conduct the necessary discovery to fully address all of the relevant factors related to alter ego liability."); *Jeld-Wen, Inc. v. Nebula Glass Int'l Inc.*, No. 07-22326-CIV, 2008 WL 11333314, at *4 (S.D. Fla. Feb. 26, 2008) (allowing alter-ego and financial worth discovery pre-judgment). Indeed, if alter ego discovery were simply a post-judgment matter, the Eleventh Circuit could have much more easily disposed of the question in *Butler v. Sukhoi*, but instead the Court underwent substantial analysis as to its utility in the case at the motion-to-dismiss stage. 579 F.3d 1307, 1314-15 (11th Cir. 2009).

To the extent Defendants argue certain financial materials are collection-type discovery, that label does not fit where, as here, the entity defendants are parties and their revenues and profits are directly relevant to statutory remedies and disgorgement while Plaintiff alleges commingling that makes certain records inseparable. (Doc. 43 at 2–3 ¶¶ 9–16; Doc. 156-4 at 3–5; Doc. 156-6 at 5–6, 11). *See also Jeld-Wen, Inc.*, No. 07-22326-CIV, 2008 WL 11333314, at *4 ("The need for the requested financial information stems directly from Plaintiff's claim for disgorgement of royalties (i.e., the patent counts) and the fact that no distinct documents exist regarding how royalties were paid.").

**B. HOW THE DISCOVERY AT ISSUE RELATES TO THE QUESTION OF WILFULLNES IN THE CONTEXT OF THE CLAIMS.**

  I. <u>Willfulness is a live issue because it affects statutory damages, equitable relief, and the scope of profits-related remedies.</u>

For copyright, willfulness bears directly on the availability and amount of enhanced statutory damages. 17 U.S.C. § 504(c)(2). It also bears on equitable considerations relevant to injunctive relief and fee-shifting. See 17 U.S.C. §§ 502–

505. For the Lanham Act claims, profits are an equitable remedy and the defendant's mental state remains a central equitable consideration even after *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492 (2020). See 15 U.S.C. § 1117(a). For Florida's unauthorized publication of name or likeness statute, the statute expressly authorizes injunctive relief and profit-based recovery. Fla. Stat. § 540.08.

Accordingly, discovery into knowledge, intent, and reckless disregard is not collateral. It is tied to remedies and to the factual issues the jury (or Court) may be asked to resolve.

    II.    <u>The proper frame is not "general respect for law," but whether Defendants knew (or recklessly disregarded) the legal and factual wrongfulness of the conduct at issue.</u>

The Court distinguishes between discovery about "copyright law in general" and that bearing on willful infringement of the specific works alleged. (Doc. 185 at 6). Plaintiff's position is that the information sought concerns Defendants' patterns and practices concerning copyright compliance (including discussions of infringement risk, takedowns, or removal of copyright management information) and are probative precisely because they tend to show knowledge and intent regarding the conduct alleged in this case  i.e., the copying, hosting, distribution, and promotion of the works at issue and the use of Plaintiff's name and likeness. (Doc. 43 at 2–3 ¶¶ 9–16; Doc. 175 at 10).

Eleventh Circuit authority recognizes that willfulness can be established through evidence reflecting knowledge and intent, including circumstantial evidence and reckless disregard of the possibility one may be infringing. *See Yellow Pages Photos, Inc. v. Ziplocal*, LP, 795 F.3d 1255, 1272 73 (11th Cir. 2015) ("willful

5

copyright infringement encompasses reckless disregard of the possibility that one's actions are infringing a copyright"); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 851 (11th Cir. 1990). To be sure, a general policy of ignoring copyright notices, for example, would evince "reckless disregard of the possibility that one's actions are infringing a copyright[,]" even if not directly tied to one of the works here at issue. *Id*. Discovery into communications about infringement risk and handling of copyrighted materials in general is therefore reasonably calculated to yield admissible evidence on both the substantive questions of infringement as well as whether that infringement was committed willfully, and by whom.

Plaintiff is not seeking an open-ended audit of Defendants' "respect for law." Plaintiff seeks Defendants' internal communications about Plaintiff and the works at issue, including directions to use Plaintiff's name or likeness and communications about the acquisition, copying, hosting, and promotion of the works at issue; and communications about copyright compliance and infringement risk insofar as they show knowledge, intent, or reckless disregard connected to the acts alleged in the complaint.

### C. TEMPORAL SCOPE ISSUES SHOULD TRACK THE SUBJECT MATTER OF THE REQUEST

The operative complaint's alleged creation and publication windows for specific works begin later, but Plaintiff also pleads alter-ego facts dating back to at least 2018, which are disputed. (Doc. 43 at 2–3 ¶¶ 9–16). Thus, for discovery directed to corporate form, domination, commingling, transfers, and routing of assets, 2018-forward is proportional because those issues necessarily require a multi-year lookback to

6

establish patterns and the mechanics of control and commingling. (Doc. 43 at 2–3 ¶¶ 9–16; *Molinos*, 633 F.3d at 1349; *Connors Steel*, 855 F.2d at 1506–07); *See Robbins v. Camden City Bd. Of Educ.*, 105 F.R.D. 49 at 63 (D. N.J. 1985) ("Courts have commonly extended the scope of discovery to a reasonable number of years prior to the [] alleged illegal action.") (collecting cases).

The complaint alleges facts showing a long-running pattern of using entities as instrumentalities and commingling finances. (Doc. 43 at 2–3 ¶¶ 9–16). Those allegations make pre-2022 records relevant because they illuminate whether revenues from the alleged infringing activity were commingled into broader streams and whether separations Defendants now claim are real.

By contrast, for requests strictly tied to the "works at issue" and their exploitation, Plaintiff agrees that 2022-forward is a reasonable limiter where the works did not exist before that time. Thus, a reasonable, proportional approach consistent with the pleadings would be 2022 onward for work-specific discovery, and 2018 onward for alter-ego discovery.

### D.    ATTORNEY-CLIENT PRIVILEGE OR WORK PRODUCT

Defendants have not yet provided a compliant privilege log and thus cannot properly brief this question. As the Joint Notice explains, Defendants have asserted privilege and work product for communications that appear to be solely among non-lawyers, which do not become privileged merely because they relate to litigation. (Doc. 175 at 10 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981)).

Should Defendants persist in asserting privilege on communications not involving counsel, Plaintiff requests that the Court order, at minimum, submission of exemplar documents for *in camera* review after a compliant log is served.

### E. THE DECEMBER 1 PRODUCTION HAS NOT BEEN SUPPLEMENTED

Defendants represented in multiple responses that they would produce documents on a rolling basis to be completed on or before December 1, 2025. (See, e.g., Doc. 156-6 at 11; Doc. 156-4 at 9.) The Joint Notice reflects a December 1 production consisting of approximately 1,500 PDFs that were not tied to requests, and Plaintiff contends it was not produced in a usable manner, nor one reflecting the ordinary course of business. (Doc. 175 at 3). Because no additional substantive production has occurred since the 1,500 PDF document dump which Plaintiff had combed through prior to the Doc. 175 notice, all requests identified in the notice remain at issue. Defendants did provide a "Production Chart" on December 29, 2025, which was meant to index the 1,500 PDF documents so that their relevance to a particular request could be divined, but this chart fails to clarify which documents are responsive to which request – leaving Plaintiff no option but to continue to try and guess. (Ex. B)

Since then, Defendants have refused to provide promised additional productions with only one exception (which Plaintiff has brought to this court's attention already) where Defendants only served responsive documents immediately before Defendants filed them with the Court. (Doc. 189 at 1). Plaintiff feels this

evinces that Defendants are withholding responsive materials, and Defendants have declined to provide any assurances to the contrary. (Ex. A at 1.)

Given the lack of usable production and the impending discovery deadlines, Plaintiff requests an order: (1) compelling completion of Phase 1 production (gross revenue materials and core communications, including Slack) by a date certain; (2) requiring Defendants to certify that a reasonable search was conducted for each category; and (3) requiring that production be in searchable form with preserved metadata (or native format where appropriate).

### F. WHY PARTIES COULD NOT AGREE ON AN ESI PROTOCOL

I. <u>Defendants' Only Attempt Was a Recycled, Complex Bespoke ESI Protocol</u>

Defendants circulated a "proposed ESI protocol" that contains examples and terminology not tailored to this case (e.g., references to unrelated company or product names), supporting Plaintiff's concern that the protocol is not designed to facilitate prompt production here but rather to impose barriers and wordplay around search terms. (Ex. C ¶ 27; Doc. 175 at 15 (Defendants asserting Plaintiff refused proportional parameters or search terms). Additionally, Defendants' recycled protocol, clearly created for a case involving "MiMedX" and "Osiris", large software conglomerates in a complex dispute, limiting searches to **fifteen search terms per side**. This was unacceptable to Plaintiff, as there are multiple works at issue, and Plaintiff does not want to play limited guessing games with regard to how Defendants refer to his him and work, especially given Defendants' propensity for wordplay and bizarre nomenclature.

9

The meet-and-confer record reflects that Defendants pressed Plaintiff to propose search terms and suggested Plaintiff simply guess at those search terms. (Doc. 175-1 at 158–159). Plaintiff suggested that Defendants—who control the relevant systems and have idiosyncratic terminology should identify the terms and nicknames they use internally for Plaintiff and the works to make any search-term negotiation meaningful, and Defendants refused to do so. *Id*.

Quite simply, this case involves small, closely held corporations and a limited number of custodians (in reality, one); Rule 26 and Rule 34 already require a reasonable search and production of responsive ESI. The real concern is not the absence of a protocol; it is the absence of production—particularly internal communications and financial records—despite Plaintiff's repeated requests.

### G. DEFENDANTS INSIST THEIR BOILERPLATE RELEVANCE AND PROPORTIONALITY OBJECTIONS ARE STILL LIVE

A pinpoint to the absurdity of Defendants' boilerplate relevance and proportionality objections are W-RFP-67 through 72, where Wilson was asked to produce all copies of the works at issue on his various devices. Their objection was that seeking copies of the works (where the Defendant in question claims to lack awareness of some of the works at issue) which are present on Defendant's electronic devices "may be irrelevant to the claims or defenses." Defendants are the only one who has access to these devices. Defendants further object, for example, to W-RFP-5, which seeks discussions concerning the works at issue, and W-RFP-8, which sought materials concerning the removal of copyright notices, as disproportionate, irrelevant, and unduly burdensome. While the court has already overruled the

10

burden objection, only Defendants have access to their own communications about these works and the removal of copyright notices from them, yet they objected for relevance and proportionality as well. These objections are unsupportable.

Rule 26(b)(1) permits discovery of any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case, considering (among other factors) the importance of the issues, the parties' relative access to information, the amount in controversy, the parties' resources, and whether the burden of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

Relevance at the discovery stage is construed broadly; discovery may reach information that "bears on" issues in the case or reasonably could lead to other matter that could bear on an issue. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The Federal Rules are to be applied "as broadly and liberally as possible" to allow robust discovery. *Hickman v. Taylor*, 329 U.S. 495, 506–07 (1947).

Critically, objections must be made with specificity; conclusory objections—without explaining why the request fails Rule 26(b)(1)'s factors or what burden is actually imposed—are improper and routinely overruled. *See Asphalt Paving Sys., Inc. v. Gen. Combustion Corp.*, No. 6:15-cv-49-Orl-41TBS, 2016 WL 3167712, at *2 (M.D. Fla. June 7, 2016) (rejecting "frivolous, conclusory, general, or boilerplate objections").

In its preliminary rulings, the Court held that objections not discussed in the Joint Notice are overruled—and it identified two categories expressly: (i) "undue burden" and (ii) objections that the documents are already in Plaintiff's possession or

11

can be found on public sources. (Doc. 185 at p. 2). The Court further cited authority requiring evidentiary support (affidavits or other evidence) to sustain an undue-burden position. (Doc. 185 at p. 2).

Yet defense counsel has taken the position that "the only objection overruled was the undue burden objection" and questioned where Plaintiff "found" that many objections were overruled (despite more than 30 separate objections for burden in Defendant's answers) (Ex. A at p. 7).

I. <u>Defendants' Objections Concerning Relevance and Proportionality are, In Substance, Boilerplate Attempts to Re-Litigate the Scope of the Case</u>

The Joint Notice confirms Defendants asserted Issue 1 objections across a sweeping range of Wilson RFPs, including many directly tied to profits, damages, infringement mechanics, and alter-ego topics. (Doc. 175 at 3). Plaintiff also identifies the "core categories of information" sought—gross revenue, communications about the works and Plaintiff, control among the entities, knowledge, use of the works, and alter-ego factors—as necessary to prosecute the claims. (Doc. 175 at 4).

But Wilson's written responses repeatedly use the same formula: they recite the causes of action, assert (without a request-specific proportionality analysis) that Plaintiff "allegedly displayed the subject Works without authorization from 2023 to the present," and then declare that requests "do[] not lead to admissible evidence" or are "disproportionate." (E.g., W-RFP-2, W-RFP-4, W-RFP-5, W-RFP-8, W-RFP-20, W-RFP-21, W-RFP-26, W-RFP-32 (Doc. 156-2 at 2–6, 12–13, 15–16, 18)).

Proportionality turns on the importance of the issues, the amount in controversy, the parties' relative access to the information, the parties' resources, the

12

importance of discovery in resolving the issues, and whether the burden or expense outweighs the likely benefit. Fed. R. Civ. P. 26(b)(1). Defendants' recurring "2023 to present" refrain is not a substitute for engaging those factors request-by-request—especially where Plaintiff's pleading affirmatively places earlier conduct in dispute.

On this record, the proportionality balance favors compelling production on the Issue 1 set, particularly where Plaintiff is seeking (as Plaintiff explained in the Joint Notice) foundational categories like gross revenue and usage evidence that Defendants control. (Doc. 175 at 4). The information is central to damages and remedies; Defendants have superior access to their own internal records and communications; and a protective order is already in place to address confidentiality concerns. (Doc. 175 at 4; Doc. 185 at 2–3).

In sum: Defendants' objections identified as the Issue 1 set in the Joint Notice operate as a blanket effort to narrow discovery by fiat, rather than a Rule 26(b)(1) proportionality showing. Under the Court's stated approach to boilerplate objections and Rule 34's specificity requirements, they should be overruled and the Court should compel complete responses.

### H. POSSESSION, CUSTODY, OR CONTROL

The Court's preliminary ruling "sustained in part" the objections identified in the Joint Notice as Issue 4, but the practical scope of that ruling is not entirely clear.

Because the Court sustained Issue 4 only "in part," and because Issue 4 is asserted across a broad range of requests (Doc. 175 at 3), Plaintiff submits that further clarification is warranted at the merits stage as to what portion of the "personal vs. entity" objection is sustained.

13

I.  The record supports a "reasonable deduction" that Wilson has "control," within the meaning of *Searock*, over documents held by at least DEFCAD (and operational records routed through Defense Distributed)

The Court applied *Searock*'s definition: "Control is defined not only as possession, but as the legal right to obtain documents requested upon demand." (Doc. 185 at 3 (quoting *Searock*, 736 F.2d at 653–54)). Plaintiff bears the burden to prove control (Doc. 185 at 4), and Plaintiff can meet that burden here with record evidence.

Wilson has admitted, under oath in discovery, that he is "the sole owner of DEFCAD, Inc." and that he "manage[s] its day-to-day operations through Defense Distributed." (Doc. 121-4 at 2). He further admits: "Ultimately, I am the leader and responsible managerially for the decisions [employees] make." (Doc. 121-4 at 2). Those admissions are strong evidence that Wilson has (at minimum) the practical and managerial authority to obtain DEFCAD's records upon demand, and therefore "control" as the Court has defined it for Rule 34 purposes. (Doc. 185 at 3–4; Doc. 121-4 at 2).

II.  *Green v. Fiveash* does not justify a functional black hole for records of party entities that Wilson owns and operates

Defendants rely on the notion that because Wilson is sued individually, he cannot be compelled to "retrieve corporate materials beyond his personal custody and control." (Doc. 175 at 13–14). The Court signaled some receptivity to *Green* for defining what Wilson must produce. (Doc. 185 at 4). But *Green* cannot be read to permit party corporate defendants to withhold their own records, nor can it be read to permit an individual who admits he is the sole owner and day-to-day manager of a party entity to disclaim "control" categorically. (Doc. 121-4 at 2; Doc. 185 at 3–4).

14

At most, *Green* supports a narrow proposition that a court should not automatically compel an individual defendant, solely by virtue of being a shareholder, to produce corporate records without a showing of control. Plaintiff has made that showing here with admissions establishing ownership and operational control. (Doc. 121-4 at 2). And even if the Court were to limit what Wilson must personally produce, the solution is not to deny discovery; it is to order the party entities to produce their records and to require Wilson to exercise his admitted operational authority to obtain responsive records within those entities' control where he has the right to do so. (Doc. 185 at 3–4; Doc. 121-4 at 2).

## **CONCLUSION**

The motion, in all respects, should be granted.

Respectfully submitted,

DATED: February 4, 2026

*/s/ Zachary Z. Zermay*
Zachary Z. Zermay, Esq.
Fla. Bar № 1002905
*Zermay Law, P.A.*
3000 Coral Way, Ste 1115
Coral Gables, FL 33145
Email: zach@zermaylaw.com
Tel: (305) 767-3529
*Lead Counsel for Plaintiff
Matthew Larosiere*
