UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MATTHEW LAROSIERE

    Plaintiff,

vs.                              Case No:  6:24-CV-01629

CODY RUTLEDGE WILSON, DEFCAD, INC.,
DEFENSE DISTRIBUTED and
DIOSKOUROI LLC,

    Defendants.
_____/

**[PROPOSED] ORDER REGARDING
PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

1. Plaintiff, Matthew Larosiere, and Defendants, Cody Rutledge Wilson, DEFCAD, Inc., Defense Distributed, and Dioskouroi, LLC ("Defendants"), have discussed the sources and scope of the production of electronically-stored information ("ESI") and agree that the following protocols and definitions shall control the production thereof.

2. This order supplements all other discovery rules and orders, and documents will be produced in accordance with the _____ Case Management Plan & Scheduling Order (Dkt. ____) and the Parties' Stipulated Protective Order (Dkt. ___).

3. It streamlines ESI production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

4. This order may be modified in the Court's discretion or by agreement of the Parties.

5. Except as expressly stated, nothing in this order affects the Parties' discovery obligations under the Federal or Local Rules. In particular, conducting keyword searches

1

for ESI information as set forth below does not replace, supersede, or otherwise obviate the Parties' obligations to produce ESI information reasonably known to it, or that otherwise would be available after a reasonably diligent search of information reasonably available to the Parties.

6.     <u>Email Search and Production.</u>

(a)     General document production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure order of this Court, shall include email or other forms of electronic correspondence (collectively "email").

(b)     <u>Custodians.</u>  The Parties will engage in initial discovery consisting of a reasonably diligent search for both hard copy and electronic documents. They will meet and confer within thirty days after the filing of this Order to discuss additional ESI searches to be conducted by the custodian and search term.  Within two weeks of that meet and confer, each Party will endeavor to jointly identify by name and title five (5) custodians who are most likely to have discoverable information in their possession, custody or control.  The Parties will also include as custodians the shared drives and other electronic storage in their possession, custody, or control that are most likely to contain discoverable information; however, these shared drives and other electronic storage will not count toward the five-custodian limit.

(c)     <u>Search Terms</u>.  Within two weeks of the meet and confer referenced in Section 6(b), the Parties will identify search terms to be used to search the email of custodians identified above in Section 6(b) and to identify electronic documents collected that will be reviewed for possible production.  During the course of the litigation, the Parties may modify the search terms by agreement.

(d) <u>Date Range</u>.  Within two weeks of the meet and confer referenced in Section 6(b), the Parties will designate the date range for which particular search terms shall be applied.  The Parties reserve their right to modify dates with regard to specific custodians identified in Section 6(b) and search terms identified in Section 6(c).

(e) If, after the meet and confer process described herein, a Party maintains an objection to the search terms, custodians, or date ranges sought by another Party, the objecting Party may seek a protective order, and Rules 26 and 37 will apply.  Pending resolution of any disagreement regarding ESI, the Parties shall be obligated to conduct ESI discovery on which there is no disagreement absent further order from the Court.

(f) Each side shall limit its ESI for emails to a total of five custodians per Producing Party.  The Parties may jointly agree to modify this limit without the Court's leave.  The Court shall consider contested requests for up to four additional custodians by each Producing Party, upon a showing of a good cause.

(g) Each Party shall limit its email searches to a total of fifteen search terms per side.  The Parties may jointly agree to modify this limit without the Court's leave.  The Court shall consider contested requests for up to five additional search terms, upon a showing of a distinct need and issues of this specific case.

(h) The additional search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system")

3

broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. For purposes of clarity, the Parties may use a disjunctive combination for their company names (*e.g.* "MiMedx or Osiris") or multiple product names (*e.g.* "EpiFix or Grafix"), which shall be considered permissible variant uses that do not alone constitute more than one request, provided the combination is used with additional narrowing search criteria (*e.g.*, "Epifix or Grafix w/10 MMP"). In all cases, the use of narrowing search criteria (e.g., "and," "but not," "w/[x words]") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

(i) The Parties and the Court recognize that despite the Parties' best efforts to agree on narrowly-tailored search terms, it may be difficult to determine in advance how many documents will be "hit" by a particular set of search terms until after the ESI searches are run. In the event that the Producing Party discovers that a search term or terms would result in a number of documents for review that would present an excessive or undue burden, the Parties are to meet and confer in good faith to determine whether additional modifications to those search terms (e.g., the addition of narrowing search criteria such as "and" and "but not") can be made. If the Parties are unable to reach an agreement, the Producing Party may file an appropriate motion with the Court requesting relief, but the Producing Party shall only be entitled relief upon a showing of good cause.

(j) The provisions of this protocol are intended to reduce the Producing Party's burden of collection and review of Email production. Following the completion of searches of a Party's custodians' email files using the agreed-upon search terms, that Party is entitled to review the documents that were "hit" for responsiveness and privilege.

The Producing Party is under no obligation to produce non-responsive or privileged ESI regardless of whether the document contains a particular search term.

(k)     Production of email documents shall proceed at such time, place, and in such sequence as may be agreed to by the Producing Party and the Receiving Party. In the event agreement cannot be reached, the Producing Party and the Receiving Party shall submit their respective positions to the Court, and the Court will issue further orders concerning the productions, as necessary.

7.     Shared Drive Search and Production.

This Section is not intended to replace or supersede the Parties' obligations to otherwise collect and produce electronic documents. For purposes of clarity, general document production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure order of this Court, includes shared drive documents or other electronic documents stored locally on hard drives.

8.     Production Format.

(a)     All documents, whether stored as paper or ESI, will be produced by the Parties as black-and-white, single-page, 300 dpi (minimum) Group IV TIFF images, with text and related path provided in document level text files, with a load file that references the images and text, and a .DAT file with delimiters that list the metadata fields as provided in Section 17. TIFF files shall be single page and shall be named with a unique production number followed by the appropriate file extension. Load files shall be provided to indicate the location and unitization of the TIFF files. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be

maintained as they existed in the original document. Any redacted material should be clearly labeled to show the redactions.

(b) No Party has an obligation to convert non-text-searchable material into text-searchable material. However, if a Party's documents already exist in text-searchable format independent of this litigation, or are converted to text-searchable format for use in this litigation, including for use by the Producing Party's counsel. In that case, such documents shall be produced in the same text-searchable format at no cost to the Receiving Party.

(c) Each document image shall contain a footer with a sequentially ascending production number.

(d) After production in this format is received, the Parties will meet and confer regarding any good faith request for the production of ESI in native file format, and agreement to produce a native file will not be unreasonably withheld. A Party may make a good faith request that a document produced in black-and-white be re-produced in color, if applicable, and such a request shall not be unreasonably denied.

(e) Notwithstanding the foregoing provisions of this Section, the Parties recognize that it may be appropriate for certain documents to be produced in native Format. Therefore, the Producing Party shall produce all .XLS spreadsheets in native format unless there is an agreement to the contrary. The Receiving Party may also request that the Producing Party produce additional file types of electronic documents in native format where the converted image format distorts or causes the information to be improperly displayed. Such documents shall be listed by the Receiving Party or a general agreement may be reached after meeting and conferring. Prior to producing any

confidential information as defined in any applicable protective order or order of confidentiality entered herein in native format, the Producing Party and the Receiving Party shall meet and confer to establish additional procedures, to the extent necessary, for the protection of the native information.

(f) Should a request for the production of documents by either Party call for the production of any document that are in a language other than English, such documents are not required to be produced as text searchable documents with extracted text or OCR. Such documents shall otherwise be produced in accordance with this ESI Protocol. With respect to such documents, the Producing Party and the Receiving Party will meet and confer to discuss the production of:

(i) all English translations of such documents that were prepared by or on behalf of the Producing Party before the filing of this litigation;

(ii) all certified English translations created during this litigation of documents written primarily or entirely in languages other than English that a Party intends to rely upon at trial or in motion practice; and

(iii) any text searchable versions of such documents created by the Producing Party in the same manner as required of English language documents.

(g) Documents that cannot be read because of imaging or formatting problems shall be identified by the Receiving Party as soon as reasonably possible after the issue has been discovered. The Producing Party and the Receiving Party shall meet and confer to attempt to resolve problem(s), to the extent the problem(s) are within the Parties' control.

9. <u>Waiver.</u>  The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.  In particular, pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.  Moreover, the Receiving Party shall not use ESI that the Producing Party asserts is attorney-client privileged or work product protected to challenge the privilege or protection

10. <u>Document Unitization.</u>  The relationship of documents in a document collection (*e.g.*, cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process from native format to TIFF.  Document images generated from attachments to e-mails stored in native format shall be produced contemporaneously and sequentially immediately after the parent e-mail to the extent such relationships are reasonably known to exist.  All hard copy documents imaged and produced electronically shall include a load file.

11. <u>De-Duplication.</u>  The Parties shall make reasonable efforts to de-duplicate ESI.  ESI may be de-duplicated vertically within each custodian, but not horizontally across custodians.  All ESI will be de-duplicated using accepted industry standard measures.  The Parties shall only produce one document image for duplicate ESI documents within a duplicate group.

12. <u>Email Thread Suppression.</u>  In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize "email thread suppression."  Email thread suppression as used in this Order means reducing duplicative production of email threads by producing the most comprehensive email containing the thread of emails, as

well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string. For purposes of this paragraph, only email messages in which the parent document and all attachments are exactly the same will be considered for duplicate purposes

13. <u>Costs of Production.</u> Agreement as to the form of production of ESI shall not be construed as an agreement that the costs of that production are recoverable pursuant to 28 U.S.C. § 1920 if they would otherwise not be recoverable in the absence of such agreement. A Party's meaningful compliance with or failure to comply with this order and efforts to promote efficiency and reduce costs will be considered in cost shifting determinations.

14. <u>Backup.</u> There is no obligation on the Parties to retain routine backup tapes of their internal computer systems, so long as each Party takes measures to ensure that all relevant electronically stored information has been preserved and that any relevant electronically stored information that will be created or received during the duration of this litigation will also be preserved. Absent a showing of good cause, no Party need restore any form of media upon which backup data is maintained in a Party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

15. <u>Voicemail and Mobile Devices.</u> Absent a showing of good cause, voicemails, PDAs and mobile phones are deemed not reasonably accessible and need not be collected and preserved.

16. <u>Production Format.</u> A Producing Party shall produce documents on a CD-ROM, DVD, external hard drive, FTP, or such other readily accessible computer or electronic

media as the Producing Party and the Receiving Party may hereafter agree upon (the "Production Media"). information that shall be identified on the face of the Production Media shall include: (1) the production date, and (2) the confidentiality notation required by the Stipulated Protective Order ("SPO") entered in this case, if the media contains Confidential Information, as defined in the Protective Order. The face of the Production Media shall also contain the Bates Number range(s) of the documents on the Production Media, or, where not practicable to do so, the relevant Bates Number range(s) may be provided in an accompanying letter. If the Producing Party encrypts or "locks" the production, the Producing Party shall include with the production an explanation of how to decrypt the files.

17. <u>Metadata.</u> The Producing Party shall produce the metadata information described below with each production and in the format described in Paragraph 6 above to the extent such metadata exists. For images generated from native electronic documents, a Producing Party shall produce with each production the following fields, where available. The field naming conventions shall be the following unless otherwise agreed and consistently applied for each production:

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| BEGINDOC# | Start Bates (including prefix) |
| ENDDOC# | End Bates (including prefix) |
| BEGATTACH | Parent Start Bates (including prefix) |
| ENDATTACH | Last Attachment End Bates (including prefix) |
| CUSTODIAN | Source of document (*i.e.*, custodian or shared area) |
| FILEEXTENSION | File extension of electronic document |
| FILENAME | File name of electronic document |
| DATE | Document Date (sent date for email, date created and last modified date for electronic documents, date displayed on hard copy documents, submission date for Regulatory submissions) |
| AUTHOR | Author |
| TO | Addressee/Recipient |

| FROM | From |
|---|---|
| CC | CC Field |
| BCC | BCC Field |
| E-MAIL SUBJECT | Email Subject |
| CONFIDENTIALITY | Level of Confidentiality per Protective Order |
| TEXT | Link to full text or OCR text |

18. <u>Databases.</u> To the extent discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the Producing Party shall produce exemplar reports from the database in image format as described in Paragraph 6, provided that the Receiving Party identifies specific fields of information to the Producing Party. Upon review of the reports, the Receiving Party may make reasonable requests for additional information to explain the database scheme, codes, abbreviations, and different report formats or to request specific data from identified fields.

19. Nothing herein shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time.

**SO ORDERED, this ____ day of _____, 2025**

_____
**U.S. MAGISTRATE JUDGE HOFFMAN PRICE**

IT IS SO STIPULATED, through counsel of record, this October ___, 2025.

| | |
|---|---|
| **Zermay Law, P.A.** | **Wilson Elser Moskowitz Edelman & Dicker LLP** |
| By: _____<br>Zachary Z. Zermay, Esq.<br>Florida Bar No: 1002905<br>1200 Fourth Street, #1102 | By: _s/_____<br>Leia V. Leitner, Esq.<br>Florida Bar No: 105621<br>111 North Orange Avenue<br>Suite 1200<br>Orlando, Florida 32801 |

11

| | |
|---|---|
| Key West, Florida 33040<br>Telephone: 305-767-3529<br>Zach@Zermaylaw.com<br><br>*Counsel for Plaintiff* | Telephone: 407-423-7287<br>Facsimile: 407-648-1376<br>Leia.Leitner@wilsonelser.com<br>Cheryl.Kujawski@wilsonelser.com<br><br>Jura C. Zibas, Esq.<br>Florida Bar No: 124571<br>Amaris C. Gyebi, Esq.<br>Florida Bar No: 1019361<br>2063 Main Street - Suite 100<br>Sarasota, Florida 34237<br>Telephone: 941-866-8561<br>Facsimile: 941-210-5979<br>Jura.Zibas@wilsonelser.com<br>Amaris C. Gyebi, Esq.<br>Cheryl.Kujawski@wilsonelser.com<br><br>*Co-Counsel for Defendants*<br>*Cody Rutledge Wilson*<br>*DEFCAD, Inc. and*<br>*Defense Distributed* |

**Flores Law PLLC**

By: *s/* _____
Charles (Chad) Flores, Esq.
917 Franklin Street
Suite 600
Houston, Texas 77002
Telephone: 713-364-6440
CF@ChadFlores.law

*Counsel for Defendants*
*Cody Rutledge Wilson,*
*DEFCAD, Inc.,*
*Defense Distributed and*
*Dioskouroi LLC*

**The Reynal Law Firm, P.C.**

By: *s/* _____
Federico Andino Reynal, Esq.
917 Franklin
Sixth Floor
Houston, Texas 77002

Telephone: 713-228-5900
Areynal@frlaw.us