# EXHIBIT D

## Gyebi, Amaris

| | |
|---|---|
| **From:** | Kujawski, Cheryl A. |
| **Sent:** | Monday, January 5, 2026 2:18 PM |
| **To:** | zach@zermaylaw.com; info@zermaylaw.com |
| **Cc:** | CF@ChadFlores.law; chad-flores-7646@ecf.pacerpro.com; service@chadflores.law; Zibas, Jura C.; Leitner, Leia V.; Gyebi, Amaris; Kujawski, Cheryl A. |
| **Subject:** | SERVICE OF DOCUMENTS  -  Larosiere  vs  Wilson, et al   26387.00008 |
| **Attachments:** | Subpoena - John Lettman.pdf |

**[EXTERNAL EMAIL]**

**SERVICE OF DOCUMENT(s)**

Good Afternoon –

We intend on having this subpoena served on or after January 19, 2026.  Thank you.

| | |
|---|---|
| **CAPTION:** | Matthew Larosiere  -vs-  Cody Rutledge Wilson, DEFCAD, Inc., Defense Distributed and Dioskouroi LLC. |
| **COURT:** | USDC – Middle District of Florida – Orlando Division |
| **COURT CASE NO.:** | 6:24-CV-01629-AGM-LHP |
| **DOCUMENTS SERVED:** | Subpoena – John Lettman |
| **SERVING PARTY:** | Defendants:<br>   Cody Rutledge Wilson  -  DEFCAD, Inc., -  Defense Distributed |
| **SERVING PARTY COUNSEL** | **Wilson Elser Moskowitz Edelman & Dicker**<br>2063 Main Street – Suite 100<br>Sarasota  FL  34237<br><br>**Jura C. Zibas, Esq.**<br>Jura.Zibas@wilsonelser.com<br>Direct Dial:  941-866-8561<br>Office Fax:   941-210-5979<br><br>**Leia V. Leitner, Esq.**<br>Leia.Leitner@wilsonelser.com<br>Tele:  407-423-7287<br>Fax:   407-648-1376 |
| **WILSON ELSER FILE NO:** | 26387.00008 |
| **NOTES:** | If you have any questions, please feel free to contact me on my direct line at 941-866-8562.  Thank you. |

Cheryl A. Kujawski
Legal Secretary
Wilson Elser Moskowitz Edelman & Dicker LLP
2063 Main Street, Suite 100
Sarasota, FL 34237
941.866.8562 (Direct)
941.210.5980 (Main)

1

941.210.5979 (Fax)
cheryl.kujawski@wilsonelser.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida ▼

| | |
|---|---|
| Matthew Larosiere<br>_____<br>*Plaintiff*<br>v.<br>Cody Rutledge Wilson, DEFACD, Inc., Defense<br>Distributed, and Dioskouroi, LLC<br>_____<br>*Defendant* | )<br>)<br>)<br>)  Civil Action No.  6:24-cv-1629<br>)<br>)<br>) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                       John Lettman
             29 Bon Air Ave.,Bradford, PA 16701
_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit 1 attached.

| Place: Wilson Elser Moskowitz Edelman & Dicker LLP<br>2063 Main Street Suite 100<br>Sarasota, FL 34237 | Date and Time:<br><br>02/27/2026 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    01/05/2026
         _____

          *CLERK OF COURT*
                                         OR
    _____        _____
    *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Defendant
DEFCAD, Inc._____ , who issues or requests this subpoena, are:
Jura C. Zibas, 2063 Main Street Suite 100 Sarasota, FL 34237, (941) 866-8561, jura.zibas@wilsonelser.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 6:24-cv-1629

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____  on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

**Exhibit 1**
**To Subpoena to Lettman**

The following documents and electronically stored information:

(i)    Documents sufficient to identify the name of all beta channels hosted and/ or maintained on the Deterrence Dispensed Chat and/or the domain, chat.deterrencedispensed.com from January 1, 2022 to present.

(ii)    Documents sufficient to identify the name, addresses, email addresses, and IP addresses of each individual who has at any point owned, operated, accessed, maintained, created, and/or participated in any beta channels hosted and/ or maintained on the Deterrence Dispensed Chat and/or the domain, chat.deterrencedispensed.com from January 1, 2022 to present.

(iii)    Documents sufficient to identify the name, addresses, email addresses, and IP addresses of each administrator of the Deterrence Dispensed Chat and/or the domain, chat.deterrencedispensed.com from January 1, 2022 to present.

(iv)    Documents sufficient to identify the name, addresses, email addresses, and IP addresses of each administrator, moderator, and/or individual with the power to override content decisions and/or take content moderation actions on the Deterrence Dispensed Chat and/or the domain, chat.deterrencedispensed.com, from January 1, 2022 to present.

(v)    All documents which relate to or reflect the upload, download, or publication, in full, or partially, of any work subject to the following US copyright registration numbers: VA0002381513; VA0002385899; VA0002381769; VA0002385901; VA0002412508; VA000242257; VA0002418947; VA0002418589.

(vi)    All documents which relate to or reflect the upload, download, and/or publication of any work, project, photo, file, build guide, technical writing, or technical drawing, incorporating, referencing, using and/or labeled, designated, and/or saved as "amigo grande", irrespective of form, and including without limitation capitalization and/or incorporation of any number, spacing, and/ or special character, i.e., AMIGO GRANDE, amigogrande, amigo_grande, amigo grande 1, Amigo Grande !, etc.

(vii)    All documents which relate to or reflect the upload, download, and/or publication of any work, project, photo, file, build guide, technical writing, or technical drawing, incorporating, referencing, using and/or labeled, designated, and/or saved as "KF5", irrespective of form, and including

without limitation capitalization and/or incorporation of any number and/ or special character, i.e., KF5_1, kf5, KF_5, Kf5$, etc.

(viii)    All documents which relate to or reflect the upload, download, and/or publication of any work, project, photo, file, build guide, technical writing, or technical drawing, incorporating, referencing, using and/or labeled, designated, and/or saved as "SF5", irrespective of form, and including without limitation capitalization and/or incorporation of any number and/ or special character, i.e., SF5_1, sf5, SF_5, Sf5&, etc.

(ix)    All documents which relate to or reflect the upload, download, and/or publication of any work, project, photo, file, build guide, technical writing, or technical drawing, incorporating, referencing, using and/or labeled, designated, and/or saved as "Plastikov V4", irrespective of form, and including without limitation capitalization and/or incorporation of any number and/ or special character, i.e., Plastikovv4, plastikov v4, PLASTIKOV_V4$, etc.

(x)    All documents which relate to or reflect the upload, download, and/or publication of any work, project, photo, file, build guide, technical writing, or technical drawing, incorporating, referencing, using and/or labeled, designated, and/or saved as "NS3", irrespective of form, and including without limitation capitalization and/or incorporation of any number and/ or special character, i.e., NS3_1, ns3, NS_3, ns3&, etc.

(xi)    All documents which relate to or reflect the upload, download, or publication, in full, or partially, of any work, project, photo, file, build guide, technical drawing, technical writing, or design that you believe was created and/or authored by John Elik, and/or any nickname, screen name, pseudonym, and/or alias he goes by or is known as, from January 1, 2022 to present.

(xii)    All documents which relate to or reflect the upload, download, or publication, in full, or partially, of any work, project, photo, file, technical writing, technical drawing, build guide, or design that you believe was created and/or authored by Matthew Larosiere, and/or any nickname, screen name, pseudonym, and/or alias he goes by or is known as, from January 1, 2022 to present .

(xiii)    All documents located in any private administrator channel located on, within, or associated with the Deterrence Dispensed Chat and/or the domain, chat.deterrencedispensed.com, which relate to and/or reference any work,

project, file, technical writing, build guide, photo, or technical drawing believed or known to be created by John Elik.

(xiv)    All documents located in any private administrator channel located on, within, or associated with the Deterrence Dispensed Chat and/or the domain, chat.deterrencedispensed.com, which relate to and/or reference any work, project, file, photo, build guide, technical writing, or technical drawing believed or known to be created by Matthew Larosiere.

(xv)    All documents located in any private administrator channel located on, within, or associated with the Deterrence Dispensed Chat and/or the domain, chat.deterrencedispensed.com, that Matthew Larosiere participated in, from January 1, 2022 to present—to include, without limitation, the contents of the private administrator channel  attested to in Paragraph 46 of the affidavit attached hereto.

(xvi)    All documents contained in any "finishing room", "doc assist room", "document assist room" and/or any other channel, platform, or online storage, hosting or holding area which relates to and/or references any work, technical drawing, document, file, video, build guide, technical writing, photo, or project believed and/or known to be created, authored and/or owned by John Elik from January 1, 2022 to present.

(xvii)    All documents contained in any "finishing room", "doc assist room", "document assist room" and/or any other channel, platform, or online storage, hosting or holding area which relates to and/or references any work, technical drawing, document, file, video, build guide, technical writing, photo, or project believed and/or known to be created, authored and/or owned by Matthew Larosiere from January 1, 2022 to present.

**NOTE: This subpoena does not request, and specifically excludes, communications exchanged between the recipient and his legal counsel. The recipient is advised to review all testimony made under oath, including his September 25, 2025 Affidavit—a copy of which is attached hereto—where clarity on any term or reference used herein is sought. For purposes of compliance and production, the recipient may rely on the definitions and understandings he held at the time he made representations under the penalties of perjury as it relates to any term used herein.**

## <u>AFFIDAVIT OF JOHN LETTMAN</u>

1.    I am John Lettman, a resident of the Commonwealth of Pennsylvania.

2.    I have previously been party to this action as a counterdefendant and I am continually referenced in Mr. Cody Wilson's filings despite not being party; however, I aim to provide a perspective without the aforementioned coloring my analysis.

3.    I am an Embedded Software Engineer and Site Reliability Engineer with 13 years of experience in related fields, particularly in the design, management, programming, deployment, and maintenance of computer software systems.

4.    I am intimately familiar with the Rocket Chat software at the core of this affidavit as a user, administrator, and server maintainer for various instances.

5.    Mr. Garret Walliman asserts to have analyzed "the Gatalog Rocket.Chat;" however I know it as the Deterrence Dispensed Chat, identifiable in the domain chat.deterrencedispensed.com.

6.    I have administrative access to Deterrence Dispensed Chat.

7.    The Deterrence Dispensed Chat operates on the Rocket Chat software.

8.    Rocket Chat does not provide any user interface function that publicly displays the number of messages within a channel, particularly when those channels are private and accessible only to members authorized by the channel owner.

1

9. Because Mr. Walliman fails to disclose the means or methods by which he reached his conclusions, beyond "[a] different method of analyzing the Gatalog Rocket.Chat" (Doc 136 Ex. B p. 6), "this method" (Doc 136 Ex. B p. 9), or "the various methods of analysis" (Doc 136 Ex. B p. 10), I can only infer the likely origin of his claims.

10. Rocket Chat includes a separate system called a "web API," or just "API," a technical interface designed for programmers and advanced users.

11. To access it, a person must already have permission to log in to a Rocket Chat server and generate a "Personal Access Token" (PAT).

12. This PAT functions like a key: it does not unlock new information, but instead allows the user to access information they already have permission to view through a different, automated, and machine-readable method. A user may typically use this alternative means of access for special software, bots, and tools.

13. One of the available API tools is located at the URL path "/api/v1/channels.info?roomName=XYZ", where "XYZ" is replaced with the actual name of the channel.

14. When this path is visited with a valid PAT, it returns details about that channel in a machine-readable format, including the number of messages it contains.

15. However, and this is critical, the same response also includes the full text of the channel's messages themselves.

2

16.     Thus, Rocket Chat never supplies a "message count" on its own; the only way to obtain it is in a format bundled together with the actual message content.

17.     Accordingly, Mr. Walliman's implication that he could determine the number of messages in a channel without also having access to the content is misleading. Both the standard user interface and the web API deliver message counts only in a way that necessarily exposes the underlying conversations. In either case, a user who can see the count can also see the content.

3

18.     I reviewed materials from Defendant in support of his assertion that the material was spoliated, in particular "nikolai-and-elik-conversation-on-jstark-and-the-gatalog-payments-pt.-2_tagged.png" produced in response to John Elik's Request for Production to Defense Distributed, Request 12:

```
behavior, as everyone has come to expect from fedcad — no greater offense than to ask them to honor their word, no
greater insult than to point out this fact.

Ivan (2024-03-02T22:55:36.099Z): Fedcad fumbled the entire notion of being a platform to monetize development (when
it came back, it was pitched to stark and I exclusively as a way to do this, basically a patreon for printed guns),
they made it clear right out of the gate that was a lie, and continued to contradict it to the point that we are
where we are today — developers seek to maintain their copyrights specifically so fedcad can't sell them, because
fedcad has made it abundantly clear that their model (really, their execution of it) is fundamentally incompatible
with the way this community actually works (works as in actually makes stuff that isn't just retarded gimmicks).

Ivan (2024-03-05T05:13:51.608Z): Not that I'm accusing you of being silly enough to take anything cody says at face
value or as being the whole truth, but hopefully that answers your questions @nikolai.romanov
        (Reaction: thumbsup by iwillnotcomply.fgc, mountainman1776)

sparquah (2024-03-04T14:15:00.969Z): Imagine taking anything Cody has to say seriously
        (Reaction: laughing by ctrlpew, freeman1337, gerald.katz, iwillnotcomply.fgc)

Ivan (2024-03-04T14:19:01.057Z): If understand your position correctly as "wait is gatalog selling stuff to fedcad?",
then you can rest assured that does not and will not happen. The MK2 was owned by Stark and to whatever extent I had
helped out, by me. This was what Stark and I were promised, denied, then verbally assaulted for bringing back up,
then chided for how stupid we were to ask him to honor his word, before he eventually capitulated (which evidently
was humiliating enough for him that he's very mad about a little bit of money years later). Stark and I both did NOT
want the MK2 to be sold on fedcad, but since cody insisted it must be there in order for him to shit up another legal
effort, we demanded he honor his words about using fedcad to pay developers. As far as my memory recalls the
conversation, we had brought back up the way the current payment system works, he had proposed a lump sum, in the end
he did both, before shitting up the way the payment system works horribly and driving the site completely into the
ground. Stark and I both appreciated the gravity of the MK2, and we did not want it to be something only accessible
behind a paywall, but it's important to remember that at this point in time, we both still had hope that fedcad could
become something worthwhile for the community (become an outlet for developers to get some form of monetization), and
idea which cody later pretended that he never proposed, saying that developers have to figure everything out on their
own (as he steals their files and sells them).
        (Reaction: point_up by Dr. Death, iwillnotcomply.fgc)

UberClay (2024-03-04T14:19:57.394Z): Fedcad is just throwing shit out there to take the heat off of them. What
happened 10 years ago isn't part of the conversation (or really shouldn't be). What's happening now very much is. And
what's happening now is a blight on the community at large and shouldn't be tolerated any longer. (IMO)

ctrlpew (2024-03-03T00:37:15.706Z): Indeed

UberClay (2024-03-04T14:22:59.785Z): 100% agree. I think the most pernicious thing Fedcad does is that they rope in
less-aware people by dominating Google searches and tricking them into paying for access to free documents.
Unfortunately, I don't know if there is a good or practical way to counter this.

nikolai.romanov (2024-03-03T02:21:16.866Z): That answers pretty much all of my questions

nikolai.romanov (2024-03-03T02:29:13.504Z): I am of course not blind to the idea that this is a misdirection, the
shit slinging will only continue as we grow closer to the problem

nikolai.romanov (2024-03-03T02:29:24.894Z): As we root out this corruption bit by bit

nikolai.romanov (2024-03-03T02:30:01.457Z): I will still be writing a dissertation including all of the information I
can find, and I would appreciate any perspective from anyone willing to share.

PaganGiraffe (2024-03-04T14:23:10.388Z): It's kind of sad to imagine all the money that has gone through that website
and not to the developers in this chat.

nikolai.romanov (2024-03-04T14:23:11.853Z): Sad that money is involved period

nikolai.romanov (2024-03-03T02:32:21.424Z): I get people wanting to profit from their designs, and surely I cannot
blame people like laffs for seeking such a thing, but it is not the act he did, but the company he keeps by doing so.
```

19.     The image makes it clear that Mr. Wilson, Mr. Walliman, or another employee of Defense Distributed is using the web API.

20.     Rocket Chat never produces messages in the pictured format.

21.     This is the format of custom software.

4

22.    Given Defendant is using custom software that functions via the Rocket Chat web API, he is exposed to the full contents of the channel.

23.    Any lack of visibility into those full contents of the channel would necessarily need to be a deliberate choice made by the custom software Defendant is using.

24.    It is also important to note the stark contrast between the Deterrence Dispensed Chat and DEFCAD's internal Slack.

25.    The Deterrence Dispensed Chat is a public, hobbyist social media platform built for a community of firearms designers. At the time of writing, it has approximately 24,300 users.

26.    By contrast, DEFCAD's Slack is a closed, private corporate communications tool, limited to its corporate participants (typically, employees).

27.    The Deterrence Dispensed Chat empowers its members in much the same way as other social media platforms such as X, Facebook, Telegram, or Signal. Users can create or delete rooms, send messages, start private conversations, and configure features such as message auto-pruning or end-to-end encryption. These functions are controlled entirely by the users themselves.

28.    These features have always existed and were always available to users in the Deterrence Dispensed Chat, including prior to the litigation.

5

29.   To alter or prevent these user-level features would require significant and fundamental modifications to the Rocket Chat software itself.

30.   Doing so would disrupt ordinary communication and run contrary to the platform's privacy-first principles. The administrators of the Deterrence Dispensed Chat do not change these settings arbitrarily.

31.   Importantly, many private channels are used for responsible purposes: for example, "beta" or experimental designs are tested and vetted by users who can demonstrate safe practices to the design owner before the project is made public.

32.   The channels cited in Mr. Walliman's analysis appear to include projects unrelated to this case and not connected to either the counter-defendants or the original copyright claim.

33.   Users of the Deterrence Dispensed Chat follow informal naming conventions, particularly for "beta" projects. Such channels are often named in the format "beta.USER.PROJECT" or "beta.USER_PROJECT," where "USER" identifies the developer and "PROJECT" identifies the design.

34.   I examined the list of channels provided by Mr. Walliman according to this informal naming convention.

35.   All of the beta channels and all of the users mentioned are **not** involved with this action.

6

36. The following usernames appear to belong to third parties who are not parties to this action: Ivan, ImmortalRevolt, szeth, Baconman121, tjb556, generalscorry, timbrewslice, American762, space_privateer, hotsauce, chairmonwon, sevenperforce, VanguardArms, bad_face, digitalnimbus, CJwelcome, foobadoo, vogels, Ze_Carioca, and NTTH.

37. Additionally, many of the associated projects are never named in the copyright pleadings or referenced in Mr. Wilson's counterclaim or discovery requests. These include: TacDaddy, CM-1, ROGUE-9, REBEL-9, SBAD22, COVID-22, Merlin, trudeau-sks-mag, bidenbuybackblaster, PartyPopper, SPACEJUNKV2, FGC9_Stingray_Edition, bigpp95, ChuckleButton, SingleShot22, epsilon-08, InvaderPDW, SaberToothMac-9, GGGR, Vuurwapen_HMC9, AssaultDolphin9, and Urutau.

38. Given the lack of service or notice to these third parties, it would be unreasonable to expect them to preserve data, particularly where the projects are not related to this case.

39. Many may not even know this case exists.

40. The administrators of the Deterrence Dispensed Chat must be invited to unencrypted user private channels or use a special tool and technique to enter them and view their contents.

41. Where channels are encrypted, no special tool or technique can reveal the contents of messages to administrators.

42. Without entering a channel, the administrators are never exposed to the contents of channels.

43. Many administrators and moderators with power to override content decisions are not party to this case and may independently take content moderation actions, particularly where abusive or harmful content is uploaded to the Deterrence Dispensed Chat.

44. Indeed **no** administrators are party to this case.

45. Due to Mr. Walliman's assertions regarding Mr. Matthew Larosiere, I decided to inspect Mr. Larosiere's account on the Deterrence Dispensed Chat instance.

46. I learned that Mr. Larosiere does participate in a private administrator channel; however, Mr. Larosiere *does not* have administrator privileges for the Deterrence Dispensed Chat instance, despite my mistaken belief that he did due to his aforementioned presence in the private administrator channel.

47. According to server-side logs available to me, there has been no role changes for Mr. Larosiere's account. He has always been a "user."

48. Rocket Chat uses a database for information called MongoDB.

49. Information in MongoDB can be queried to quickly ascertain details in ways not available or easy on the Rocket Chat interface.

8

50. MongoDB separates information into "collections." For example, information about rooms/channels may have a "channel" collection and information about users may have a "user" collection.

51. Within collections, there are "columns" which store bits of information for each object. For example, a "user" may have a "username" or "email" associated with them on their row.

52. Rocket Chat stores ownership information for channels under the "u" column inside the "rocketchat_room" collection.

53. For example, to find all channels owned by the user with the username "ctrlpew," I am able to search MongoDB with the text: *find { "t": "c", "u.username": "ctrlpew"}*



54.     When I searched for all channels owned by the Mr. Larosiere, who has the

username "MattLaAtLaw," I found that he owned no channels:



55.    Mr. Walliman states I granted Mr. Larosiere "administrative power" over the "general" channel, yet displays a picture where I gave him "moderator" privileges to the "general" channel (136, Ex. I p. 8) as demonstrated by the text *"jny set MattLaAtLaw as moderator."*

56.    Mr. Walliman implies a "moderator" in a channel is a "moderator" for the entire instance and "possibly other channels" (136, Ex. I p. 8). It is not.

57.    Mr. Walliman asserts the name of a role always carries certain privileges. It does not.

58.    Rocket Chat enables fine-grained controls for what each role does.

59.    For example, a server administrator could create a role called "administrator" that does nothing more than a "user" does.

60.    This may not be intuitive, but Rocket Chat enables administrators to define custom roles with custom powers in an abundance of flexibility to support any number of creative implementations for different communities.

61.    Mr. Larosiere has not logged in to the Deterrence Dispensed Chat instance since July 27, 2024:



62.     Mr. Walliman uses the e-mail address bb.msf.dd@gmail.com with multiple variations, such as bb.msf.dd+2@gmail.com and bb.msf.dd+3@gmail.com.

63.     Mr. Walliman's e-mail address is evinced by his public software code commits to Defense Distributed's public GitHub projects. For example, his account makes commit "b42f8e4" on the "grbl1v1g_GG3_GrBLDC3v0" at https://github.com/Defdist/grbl1v1g_GG3_GrBLDC3v0/commit/b42f8e461506e75b2d0b5d9014e64c323a49608d



64. According to information and belief, the "GW" username stands for "Garret Walliman."

65. On the Deterrence Dispensed Chat, Mr. Walliman possesses three separate accounts:

    1. Username "gw", real name "GW", e-mail [bb.msf.dd@gmail.com](mailto:bb.msf.dd@gmail.com), created January 13 2021, last logged in April 9 2021.

    2. Username "gw2", real name "gw", e-mail [bb.msf.dd+2@gmail.com](mailto:bb.msf.dd+2@gmail.com), created January 15 2021, last logged in May 23 2022.

    3. Username "gw3", real name "G W", e-mail [bb.msf.dd+3@gmail.com](mailto:bb.msf.dd+3@gmail.com), created May 24 2022, last logged in September 9 2025.

66. The suffix in the e-mail "+2" and "+3" is called "sub-addressing." It permits variations of the same e-mail address that will still be delivered to the same account.

67. As a result, all three accounts use the same e-mail address with sub-addressing.

68. All three accounts were verified via e-mail.

69. The latest account, "gw3", was active during this action.

70. Mr. Walliman also created a Personal Access Token for use with the "gw3" account.

14

71. Scraping the contents of channels via the web API with a Personal Access Token creates a distinct signature in the database with numerous "user join" messages (using the shorthand "uj").

72. It is likely Mr. Walliman wrote his software to quickly join channels, scrape their contents, and leave using his account and a Personal Access Token.

73. As a means of determining what changes, one would need to observe the state of channels at two points in time.

74. Mr. Walliman's software programming choices provide insight into these two points in time Defendant chose.

75. I queried for user joins from Mr. Walliman and limited my scope to relevant a relevant time period for this action and rapid-succession joins consistent with computer software automation using the query as follows: *{"u.username": "gw3", "t": "uj"}*

76.    This revealed two significant events where Mr. Wallimans account rapidly joined a large number of channels:



77.    On October 31 2024 at 6:59:55 PM UTC until 7:05:41 PM UTC, Mr. Walliman joined 39 channels. This is *event 1*.

78.    That is 5 minutes and 46 seconds for 39 channels or 8.872 seconds per channel.

79.    Joining a channel is a cheap operation for a computer system to perform, but serving their entire contents could explain the extra time required per channel.

80. On July 23 2025 at 9:29:45 PM UTC until 9:38:14 PM UTC, Mr. Walliman joined 10 channels. This is *event 2*.

81. That is 8 minutes and 29 seconds for 10 channels or 50.9 seconds per channel.

82. Once again, the extra time required per channel seems to suggest quite a bit more activity for this programmatic operation than simply joining.

83. I have reproduced event 1 below with a table of channels and the time they were joined by Mr. Walliman:

| Channel | Join Time |
|---|---|
| Model.RecessionRuger | 2024-10-31T18:59:55.551Z |
| beta.aveees.DDxx.3-a | 2024-10-31T19:00:03.336Z |
| Model.Ruger_P95 | 2024-10-31T19:00:12.208Z |
| beta.dakkax3.Spring_Winder | 2024-10-31T19:00:22.926Z |
| beta.spooky.spectre.Spitfire22 | 2024-10-31T19:01:12.742Z |
| beta.spookyspectre_thunderbolt | 2024-10-31T19:01:16.069Z |
| Model.waffle.mag | 2024-10-31T19:01:21.318Z |
| gen.3d_fdm_printing | 2024-10-31T19:02:01.856Z |
| gen.3d_resin_printing | 2024-10-31T19:02:21.646Z |
| gen.Launchers_37mm | 2024-10-31T19:02:28.468Z |
| gen.armor | 2024-10-31T19:02:41.819Z |
| gen.bounty | 2024-10-31T19:02:46.313Z |

17

| | |
|---|---|
| gen.cad101 | 2024-10-31T19:02:51.532Z |
| gen.california | 2024-10-31T19:03:01.919Z |
| gen.casting | 2024-10-31T19:03:07.806Z |
| gen.development | 2024-10-31T19:03:14.443Z |
| gen.ecm_rifling | 2024-10-31T19:03:18.824Z |
| gen.ministry_of_propaganda | 2024-10-31T19:03:39.511Z |
| gen.process-talk | 2024-10-31T19:03:47.944Z |
| gen.release | 2024-10-31T19:04:01.632Z |
| gen.vendors_deals_classifieds | 2024-10-31T19:04:08.678Z |
| gen.weekend_gunit | 2024-10-31T19:04:31.312Z |
| gen.wip_QA | 2024-10-31T19:04:35.519Z |
| gen.wip_photos | 2024-10-31T19:04:38.823Z |
| model.1022 | 2024-10-31T19:04:51.472Z |
| model.AK | 2024-10-31T19:04:56.369Z |
| model.accessory | 2024-10-31T19:05:03.104Z |
| model.ar10 | 2024-10-31T19:05:06.947Z |
| model.ar15 | 2024-10-31T19:05:15.532Z |
| model.diy-able | 2024-10-31T19:05:19.874Z |
| model.mac | 2024-10-31T19:05:27.279Z |
| model.magazines | 2024-10-31T19:05:31.381Z |
| model.semiautopistol | 2024-10-31T19:05:36.547Z |
| model.silencer | 2024-10-31T19:05:41.708Z |

84.    The alphabetical order of the joined channels demonstrates the computer automation present in this activity.

85.    I have reproduced event 2 below with a table of channels and the time they were joined by Mr. Walliman:

| Channel | Join Time |
| --- | --- |
| Beta.decimal.dot.CoreVent | 2025-07-23T21:29:45.620Z |
| Model.CAPI | 2025-07-23T21:29:58.755Z |
| Model.PocketPleaser | 2025-07-23T21:35:41.129Z |
| Model.Triton_9 | 2025-07-23T21:35:54.519Z |
| beta.Mr.Orkin.TheRyno | 2025-07-23T21:36:10.875Z |
| beta.UberClay.Akuto | 2025-07-23T21:36:14.389Z |
| beta.UberClay.OkZoomerV2 | 2025-07-23T21:36:25.290Z |
| beta.UberClay.MooreDakkaV2 | 2025-07-23T21:36:33.924Z |
| beta.UberClay.PlisskensPlinker | 2025-07-23T21:37:13.262Z |
| beta.decimal.dot.Decimator22V3 | 2025-07-23T21:38:14.226Z |

86.    As with event 1, the alphabetical order of the joined channels demonstrates the computer automation present in this activity.

87.    The channels are not relevant to the action, containing works by other third party users or general conversations on a variety of topics.

88.    Importantly, when a channel becomes private after being public or is archived by administrators, the message from the web API is the same as if it were

19

deleted. For an inexperienced programmer using a Personal Access Token, there is no way to ascertain the difference. It can lead to catastrophic misstatements of fact, as Mr. Walliman may now be aware of.

89.    Where two events are required to compare the state of channels, it is telling that Mr. Walliman chose to scrape irrelevant channels after Defense Distributed received it's first Requests for Production asking for the evidence of spoilation they asserted many months prior.

Under penalty of perjury, under the laws of the United States, I swear that the foregoing statement is true.

DATED THIS 25th day of September, 2025.

_____
JOHN LETTMAN

## Gyebi, Amaris

| | |
|---|---|
| **From:** | Gyebi, Amaris |
| **Sent:** | Wednesday, January 28, 2026 9:14 PM |
| **To:** | Zachary Zermay; Geraldine Phillips |
| **Cc:** | Leitner, Leia V.; Chad Flores; Zibas, Jura C.; Kujawski, Cheryl A. |
| **Subject:** | SERVICE OF DOCUMENTS - Larosiere vs Wilson, et al   26387.00008 |
| **Attachments:** | 1.28.26 Lettman.pdf |

**SERVICE OF DOCUMENT(s)**

Good Afternoon –

We intend on having this subpoena served on or after February 12, 2026.  Thank you.

| | |
|---|---|
| **CAPTION:** | Matthew Larosiere  -vs-  Cody Rutledge Wilson, DEFCAD, Inc., Defense Distributed and Dioskouroi LLC. |
| **COURT:** | USDC – Middle District of Florida – Orlando Division |
| **COURT CASE NO.:** | 6:24-CV-01629-AGM-LHP |
| **DOCUMENTS SERVED:** | Subpoena – John Lettman |
| **SERVING PARTY:** | Defendants:<br>   Cody Rutledge Wilson  -  DEFCAD, Inc., -  Defense Distributed |
| **SERVING PARTY COUNSEL** | **Wilson Elser Moskowitz Edelman & Dicker**<br>2063 Main Street – Suite 100<br>Sarasota  FL  34237<br><br>**Jura C. Zibas, Esq.**<br>Jura.Zibas@wilsonelser.com<br>Direct Dial:  941-866-8561<br>Office Fax:   941-210-5979<br><br>**Leia V. Leitner, Esq.**<br>Leia.Leitner@wilsonelser.com<br>Tele:  407-423-7287<br>Fax:   407-648-1376<br><br>Amaris C. Gyebi, Esq.<br>Amaris.Gyebi@wilsonelser.com<br>Tele:   941-210-5961<br>Office Fax:   941-210-5979 |
| **WILSON ELSER FILE NO:** | 26387.00008 |
| **NOTES:** | If you have any questions, please feel free to contact me on my direct line.  Thank you. |

Amaris Gyebi
Attorney At Law
Wilson Elser Moskowitz Edelman & Dicker LLP
2063 Main Street Suite 100
Sarasota, FL 34237
941.210.5961 (Direct)
407.616.6006 (Cell)

1

941.210.5980 (Main)
941.210.5979 (Fax)
amaris.gyebi@wilsonelser.com

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Florida ▾

| | |
|---|---|
| Matthew Larosiere <br> *Plaintiff* | ) ) ) |
| v. <br> Cody Rutledge Wilson, DEFACD, Inc., Defense Distributed, and Dioskouroi, LLC <br> *Defendant* | ) Civil Action No. 6:24-cv-1629 ) ) ) ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: John Lettman
29 Bon Air Ave.,Bradford, PA 16701

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit 1 attached.

| Place: Sargent's Court Reporting Services c/o <br> Wilson Elser Moskowitz Edelman & Dicker, LLP <br> Attn: Barb Pete 1001 State St # 1400, Erie, PA 16501 | Date and Time: <br><br> 02/27/2026 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 01/28/2026

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                 *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Defendant DEFCAD, Inc. , who issues or requests this subpoena, are:

Jura C. Zibas, 2063 Main Street Suite 100 Sarasota, FL 34237, (941) 866-8561, jura.zibas@wilsonelser.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 6:24-cv-1629

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

**Exhibit 1**
**To Subpoena to Lettman**

The following documents and electronically stored information:

(i)     Documents sufficient to identify the name of all beta channels hosted and/ or maintained on the Deterrence Dispensed Chat and/or the domain, chat.deterrencedispensed.com from January 1, 2022 to present.

(ii)    Documents sufficient to identify the name, addresses, email addresses, and IP addresses of each individual who has at any point owned, operated, accessed, maintained, created, and/or participated in any beta channels hosted and/ or maintained on the Deterrence Dispensed Chat and/or the domain, chat.deterrencedispensed.com from January 1, 2022 to present.

(iii)   Documents sufficient to identify the name, addresses, email addresses, and IP addresses of each administrator of the Deterrence Dispensed Chat and/or the domain, chat.deterrencedispensed.com from January 1, 2022 to present.

(iv)    Documents sufficient to identify the name, addresses, email addresses, and IP addresses of each administrator, moderator, and/or individual with the power to override content decisions and/or take content moderation actions on the Deterrence Dispensed Chat and/or the domain, chat.deterrencedispensed.com, from January 1, 2022 to present.

(v)     All documents which relate to or reflect the upload, download, or publication, in full, or partially, of any work subject to the following US copyright registration numbers: VA0002381513; VA0002385899; VA0002381769; VA0002385901; VA0002412508; VA000242257; VA0002418947; VA0002418589.

(vi)    All documents which relate to or reflect the upload, download, and/or publication of any work, project, photo, file, build guide, technical writing, or technical drawing, incorporating, referencing, using and/or labeled, designated, and/or saved as "amigo grande", irrespective of form, and including without limitation capitalization and/or incorporation of any number, spacing, and/ or special character, i.e., AMIGO GRANDE, amigogrande, amigo_grande, amigo grande 1, Amigo Grande !, etc.

(vii)   All documents which relate to or reflect the upload, download, and/or publication of any work, project, photo, file, build guide, technical writing, or technical drawing, incorporating, referencing, using and/or labeled, designated, and/or saved as "KF5", irrespective of form, and including

without limitation capitalization and/or incorporation of any number and/ or special character, i.e., KF5_1, kf5, KF_5, Kf5$, etc.

(viii)    All documents which relate to or reflect the upload, download, and/or publication of any work, project, photo, file, build guide, technical writing, or technical drawing, incorporating, referencing, using and/or labeled, designated, and/or saved as "SF5", irrespective of form, and including without limitation capitalization and/or incorporation of any number and/ or special character, i.e., SF5_1, sf5, SF_5, Sf5&, etc.

(ix)    All documents which relate to or reflect the upload, download, and/or publication of any work, project, photo, file, build guide, technical writing, or technical drawing, incorporating, referencing, using and/or labeled, designated, and/or saved as "Plastikov V4", irrespective of form, and including without limitation capitalization and/or incorporation of any number and/ or special character, i.e., Plastikovv4, plastikov v4, PLASTIKOV_V4$, etc.

(x)    All documents which relate to or reflect the upload, download, and/or publication of any work, project, photo, file, build guide, technical writing, or technical drawing, incorporating, referencing, using and/or labeled, designated, and/or saved as "NS3", irrespective of form, and including without limitation capitalization and/or incorporation of any number and/ or special character, i.e., NS3_1, ns3, NS_3, ns3&, etc.

(xi)    All documents which relate to or reflect the upload, download, or publication, in full, or partially, of any work, project, photo, file, build guide, technical drawing, technical writing, or design that you believe was created and/or authored by John Elik, and/or any nickname, screen name, pseudonym, and/or alias he goes by or is known as, from January 1, 2022 to present.

(xii)    All documents which relate to or reflect the upload, download, or publication, in full, or partially, of any work, project, photo, file, technical writing, technical drawing, build guide, or design that you believe was created and/or authored by Matthew Larosiere, and/or any nickname, screen name, pseudonym, and/or alias he goes by or is known as, from January 1, 2022 to present .

(xiii)    All documents located in any private administrator channel located on, within, or associated with the Deterrence Dispensed Chat and/or the domain, chat.deterrencedispensed.com, which relate to and/or reference any work,

project, file, technical writing, build guide, photo, or technical drawing believed or known to be created by John Elik.

(xiv)  All documents located in any private administrator channel located on, within, or associated with the Deterrence Dispensed Chat and/or the domain, chat.deterrencedispensed.com, which relate to and/or reference any work, project, file, photo, build guide, technical writing, or technical drawing believed or known to be created by Matthew Larosiere.

(xv)  All documents located in any private administrator channel located on, within, or associated with the Deterrence Dispensed Chat and/or the domain, chat.deterrencedispensed.com, that Matthew Larosiere participated in, from January 1, 2022 to present—to include, without limitation, the contents of the private administrator channel  attested to in Paragraph 46 of the affidavit attached hereto.

(xvi)  All documents contained in any "finishing room", "doc assist room", "document assist room" and/or any other channel, platform, or online storage, hosting or holding area which relates to and/or references any work, technical drawing, document, file, video, build guide, technical writing, photo, or project believed and/or known to be created, authored and/or owned by John Elik from January 1, 2022 to present.

(xvii)  All documents contained in any "finishing room", "doc assist room", "document assist room" and/or any other channel, platform, or online storage, hosting or holding area which relates to and/or references any work, technical drawing, document, file, video, build guide, technical writing, photo, or project believed and/or known to be created, authored and/or owned by Matthew Larosiere from January 1, 2022 to present.

**NOTE: This subpoena does not request, and specifically excludes, communications exchanged between the recipient and his legal counsel. The recipient is advised to review all testimony made under oath, including his September 25, 2025 Affidavit—a copy of which is attached hereto—where clarity on any term or reference used herein is sought. For purposes of compliance and production, the recipient may rely on the definitions and understandings he held at the time he made representations under the penalties of perjury as it relates to any term used herein.**

## AFFIDAVIT OF JOHN LETTMAN

1. I am John Lettman, a resident of the Commonwealth of Pennsylvania.

2. I have previously been party to this action as a counterdefendant and I am continually referenced in Mr. Cody Wilson's filings despite not being party; however, I aim to provide a perspective without the aforementioned coloring my analysis.

3. I am an Embedded Software Engineer and Site Reliability Engineer with 13 years of experience in related fields, particularly in the design, management, programming, deployment, and maintenance of computer software systems.

4. I am intimately familiar with the Rocket Chat software at the core of this affidavit as a user, administrator, and server maintainer for various instances.

5. Mr. Garret Walliman asserts to have analyzed "the Gatalog Rocket.Chat;" however I know it as the Deterrence Dispensed Chat, identifiable in the domain chat.deterrencedispensed.com.

6. I have administrative access to Deterrence Dispensed Chat.

7. The Deterrence Dispensed Chat operates on the Rocket Chat software.

8. Rocket Chat does not provide any user interface function that publicly displays the number of messages within a channel, particularly when those channels are private and accessible only to members authorized by the channel owner.

1

9. Because Mr. Walliman fails to disclose the means or methods by which he reached his conclusions, beyond "[a] different method of analyzing the Gatalog Rocket.Chat" (Doc 136 Ex. B p. 6), "this method" (Doc 136 Ex. B p. 9), or "the various methods of analysis" (Doc 136 Ex. B p. 10), I can only infer the likely origin of his claims.

10. Rocket Chat includes a separate system called a "web API," or just "API," a technical interface designed for programmers and advanced users.

11. To access it, a person must already have permission to log in to a Rocket Chat server and generate a "Personal Access Token" (PAT).

12. This PAT functions like a key: it does not unlock new information, but instead allows the user to access information they already have permission to view through a different, automated, and machine-readable method. A user may typically use this alternative means of access for special software, bots, and tools.

13. One of the available API tools is located at the URL path "/api/v1/channels.info?roomName=XYZ", where "XYZ" is replaced with the actual name of the channel.

14. When this path is visited with a valid PAT, it returns details about that channel in a machine-readable format, including the number of messages it contains.

15. However, and this is critical, the same response also includes the full text of the channel's messages themselves.

16.    Thus, Rocket Chat never supplies a "message count" on its own; the only way to obtain it is in a format bundled together with the actual message content.

17.    Accordingly, Mr. Walliman's implication that he could determine the number of messages in a channel without also having access to the content is misleading. Both the standard user interface and the web API deliver message counts only in a way that necessarily exposes the underlying conversations. In either case, a user who can see the count can also see the content.

18. I reviewed materials from Defendant in support of his assertion that the material was spoilated, in particular "nikolai-and-elik-conversation-on-jstark-and-the-gatalog-payments-pt.-2_tagged.png" produced in response to John Elik's Request for Production to Defense Distributed, Request 12:

19. The image makes it clear that Mr. Wilson, Mr. Walliman, or another employee of Defense Distributed is using the web API.

20. Rocket Chat never produces messages in the pictured format.

21. This is the format of custom software.

22. Given Defendant is using custom software that functions via the Rocket Chat web API, he is exposed to the full contents of the channel.

23. Any lack of visibility into those full contents of the channel would necessarily need to be a deliberate choice made by the custom software Defendant is using.

24. It is also important to note the stark contrast between the Deterrence Dispensed Chat and DEFCAD's internal Slack.

25. The Deterrence Dispensed Chat is a public, hobbyist social media platform built for a community of firearms designers. At the time of writing, it has approximately 24,300 users.

26. By contrast, DEFCAD's Slack is a closed, private corporate communications tool, limited to its corporate participants (typically, employees).

27. The Deterrence Dispensed Chat empowers its members in much the same way as other social media platforms such as X, Facebook, Telegram, or Signal. Users can create or delete rooms, send messages, start private conversations, and configure features such as message auto-pruning or end-to-end encryption. These functions are controlled entirely by the users themselves.

28. These features have always existed and were always available to users in the Deterrence Dispensed Chat, including prior to the litigation.

29.  To alter or prevent these user-level features would require significant and fundamental modifications to the Rocket Chat software itself.

30.  Doing so would disrupt ordinary communication and run contrary to the platform's privacy-first principles. The administrators of the Deterrence Dispensed Chat do not change these settings arbitrarily.

31.  Importantly, many private channels are used for responsible purposes: for example, "beta" or experimental designs are tested and vetted by users who can demonstrate safe practices to the design owner before the project is made public.

32.  The channels cited in Mr. Walliman's analysis appear to include projects unrelated to this case and not connected to either the counter-defendants or the original copyright claim.

33.  Users of the Deterrence Dispensed Chat follow informal naming conventions, particularly for "beta" projects. Such channels are often named in the format "beta.USER.PROJECT" or "beta.USER_PROJECT," where "USER" identifies the developer and "PROJECT" identifies the design.

34.  I examined the list of channels provided by Mr. Walliman according to this informal naming convention.

35.  All of the beta channels and all of the users mentioned are **not** involved with this action.

6

36.    The following usernames appear to belong to third parties who are not parties to this action: Ivan, ImmortalRevolt, szeth, Baconman121, tjb556, generalscorry, timbrewslice, American762, space_privateer, hotsauce, chairmonwon, sevenperforce, VanguardArms, bad_face, digitalnimbus, CJwelcome, foobadoo, vogels, Ze_Carioca, and NTTH.

37.    Additionally, many of the associated projects are never named in the copyright pleadings or referenced in Mr. Wilson's counterclaim or discovery requests. These include: TacDaddy, CM-1, ROGUE-9, REBEL-9, SBAD22, COVID-22, Merlin, trudeau-sks-mag, bidenbuybackblaster, PartyPopper, SPACEJUNKV2, FGC9_Stingray_Edition, bigpp95, ChuckleButton, SingleShot22, epsilon-08, InvaderPDW, SaberToothMac-9, GGGR, Vuurwapen_HMC9, AssaultDolphin9, and Urutau.

38.    Given the lack of service or notice to these third parties, it would be unreasonable to expect them to preserve data, particularly where the projects are not related to this case.

39.    Many may not even know this case exists.

40.    The administrators of the Deterrence Dispensed Chat must be invited to unencrypted user private channels or use a special tool and technique to enter them and view their contents.

41.    Where channels are encrypted, no special tool or technique can reveal the contents of messages to administrators.

42. Without entering a channel, the administrators are never exposed to the contents of channels.

43. Many administrators and moderators with power to override content decisions are not party to this case and may independently take content moderation actions, particularly where abusive or harmful content is uploaded to the Deterrence Dispensed Chat.

44. Indeed **no** administrators are party to this case.

45. Due to Mr. Walliman's assertions regarding Mr. Matthew Larosiere, I decided to inspect Mr. Larosiere's account on the Deterrence Dispensed Chat instance.

46. I learned that Mr. Larosiere does participate in a private administrator channel; however, Mr. Larosiere *does not* have administrator privileges for the Deterrence Dispensed Chat instance, despite my mistaken belief that he did due to his aforementioned presence in the private administrator channel.

47. According to server-side logs available to me, there has been no role changes for Mr. Larosiere's account. He has always been a "user."

48. Rocket Chat uses a database for information called MongoDB.

49. Information in MongoDB can be queried to quickly ascertain details in ways not available or easy on the Rocket Chat interface.

8

50.    MongoDB separates information into "collections." For example, information about rooms/channels may have a "channel" collection and information about users may have a "user" collection.

51.    Within collections, there are "columns" which store bits of information for each object. For example, a "user" may have a "username" or "email" associated with them on their row.

52.    Rocket Chat stores ownership information for channels under the "u" column inside the "rocketchat_room" collection.

53.    For example, to find all channels owned by the user with the username "ctrlpew," I am able to search MongoDB with the text: *find { "t": "c", "u.username": "ctrlpew"}*



54.     When I searched for all channels owned by the Mr. Larosiere, who has the username "MattLaAtLaw," I found that he owned no channels:



55. Mr. Walliman states I granted Mr. Larosiere "administrative power" over the "general" channel, yet displays a picture where I gave him "moderator" privileges to the "general" channel (136, Ex. I p. 8) as demonstrated by the text *"jny set MattLaAtLaw as moderator."*

56. Mr. Walliman implies a "moderator" in a channel is a "moderator" for the entire instance and "possibly other channels" (136, Ex. I p. 8). It is not.

57. Mr. Walliman asserts the name of a role always carries certain privileges. It does not.

58. Rocket Chat enables fine-grained controls for what each role does.

59. For example, a server administrator could create a role called "administrator" that does nothing more than a "user" does.

60. This may not be intuitive, but Rocket Chat enables administrators to define custom roles with custom powers in an abundance of flexibility to support any number of creative implementations for different communities.

61. Mr. Larosiere has not logged in to the Deterrence Dispensed Chat instance since July 27, 2024:



62.    Mr. Walliman uses the e-mail address bb.msf.dd@gmail.com with multiple variations, such as bb.msf.dd+2@gmail.com and bb.msf.dd+3@gmail.com.

63.    Mr. Walliman's e-mail address is evinced by his public software code commits to Defense Distributed's public GitHub projects. For example, his account makes commit "b42f8e4" on the "grbl1v1g_GG3_GrBLDC3v0" at https://github.com/Defdist/grbl1v1g_GG3_GrBLDC3v0/commit/b42f8e461506e75b2d0b5d9014e64c323a49608d



64.    According to information and belief, the "GW" username stands for "Garret Walliman."

65.    On the Deterrence Dispensed Chat, Mr. Walliman possesses three separate accounts:

1.    Username "gw", real name "GW", e-mail bb.msf.dd@gmail.com, created January 13 2021, last logged in April 9 2021.

2.    Username "gw2", real name "gw", e-mail bb.msf.dd+2@gmail.com, created January 15 2021, last logged in May 23 2022.

3.    Username "gw3", real name "G W", e-mail bb.msf.dd+3@gmail.com, created May 24 2022, last logged in September 9 2025.

66.    The suffix in the e-mail "+2" and "+3" is called "sub-addressing." It permits variations of the same e-mail address that will still be delivered to the same account.

67.    As a result, all three accounts use the same e-mail address with sub-addressing.

68.    All three accounts were verified via e-mail.

69.    The latest account, "gw3", was active during this action.

70.    Mr. Walliman also created a Personal Access Token for use with the "gw3" account.

14

71. Scraping the contents of channels via the web API with a Personal Access Token creates a distinct signature in the database with numerous "user join" messages (using the shorthand "uj").

72. It is likely Mr. Walliman wrote his software to quickly join channels, scrape their contents, and leave using his account and a Personal Access Token.

73. As a means of determining what changes, one would need to observe the state of channels at two points in time.

74. Mr. Walliman's software programming choices provide insight into these two points in time Defendant chose.

75. I queried for user joins from Mr. Walliman and limited my scope to relevant a relevant time period for this action and rapid-succession joins consistent with computer software automation using the query as follows: *{"u.username": "gw3", "t": "uj"}*

76. This revealed two significant events where Mr. Wallimans account rapidly joined a large number of channels:



77. On October 31 2024 at 6:59:55 PM UTC until 7:05:41 PM UTC, Mr. Walliman joined 39 channels. This is *event 1*.

78. That is 5 minutes and 46 seconds for 39 channels or 8.872 seconds per channel.

79. Joining a channel is a cheap operation for a computer system to perform, but serving their entire contents could explain the extra time required per channel.

80.  On July 23 2025 at 9:29:45 PM UTC until 9:38:14 PM UTC, Mr. Walliman joined 10 channels. This is *event 2*.

81.  That is 8 minutes and 29 seconds for 10 channels or 50.9 seconds per channel.

82.  Once again, the extra time required per channel seems to suggest quite a bit more activity for this programmatic operation than simply joining.

83.  I have reproduced event 1 below with a table of channels and the time they were joined by Mr. Walliman:

| Channel | Join Time |
| --- | --- |
| Model.RecessionRuger | 2024-10-31T18:59:55.551Z |
| beta.aveees.DDxx.3-a | 2024-10-31T19:00:03.336Z |
| Model.Ruger_P95 | 2024-10-31T19:00:12.208Z |
| beta.dakkax3.Spring_Winder | 2024-10-31T19:00:22.926Z |
| beta.spooky.spectre.Spitfire22 | 2024-10-31T19:01:12.742Z |
| beta.spookyspectre_thunderbolt | 2024-10-31T19:01:16.069Z |
| Model.waffle.mag | 2024-10-31T19:01:21.318Z |
| gen.3d_fdm_printing | 2024-10-31T19:02:01.856Z |
| gen.3d_resin_printing | 2024-10-31T19:02:21.646Z |
| gen.Launchers_37mm | 2024-10-31T19:02:28.468Z |
| gen.armor | 2024-10-31T19:02:41.819Z |
| gen.bounty | 2024-10-31T19:02:46.313Z |

17

| gen.cad101 | 2024-10-31T19:02:51.532Z |
|---|---|
| gen.california | 2024-10-31T19:03:01.919Z |
| gen.casting | 2024-10-31T19:03:07.806Z |
| gen.development | 2024-10-31T19:03:14.443Z |
| gen.ecm_rifling | 2024-10-31T19:03:18.824Z |
| gen.ministry_of_propaganda | 2024-10-31T19:03:39.511Z |
| gen.process-talk | 2024-10-31T19:03:47.944Z |
| gen.release | 2024-10-31T19:04:01.632Z |
| gen.vendors_deals_classifieds | 2024-10-31T19:04:08.678Z |
| gen.weekend_gunit | 2024-10-31T19:04:31.312Z |
| gen.wip_QA | 2024-10-31T19:04:35.519Z |
| gen.wip_photos | 2024-10-31T19:04:38.823Z |
| model.1022 | 2024-10-31T19:04:51.472Z |
| model.AK | 2024-10-31T19:04:56.369Z |
| model.accessory | 2024-10-31T19:05:03.104Z |
| model.ar10 | 2024-10-31T19:05:06.947Z |
| model.ar15 | 2024-10-31T19:05:15.532Z |
| model.diy-able | 2024-10-31T19:05:19.874Z |
| model.mac | 2024-10-31T19:05:27.279Z |
| model.magazines | 2024-10-31T19:05:31.381Z |
| model.semiautopistol | 2024-10-31T19:05:36.547Z |
| model.silencer | 2024-10-31T19:05:41.708Z |

84.    The alphabetical order of the joined channels demonstrates the computer automation present in this activity.

85.    I have reproduced event 2 below with a table of channels and the time they were joined by Mr. Walliman:

| Channel | Join Time |
|---|---|
| Beta.decimal.dot.CoreVent | 2025-07-23T21:29:45.620Z |
| Model.CAPI | 2025-07-23T21:29:58.755Z |
| Model.PocketPleaser | 2025-07-23T21:35:41.129Z |
| Model.Triton_9 | 2025-07-23T21:35:54.519Z |
| beta.Mr.Orkin.TheRyno | 2025-07-23T21:36:10.875Z |
| beta.UberClay.Akuto | 2025-07-23T21:36:14.389Z |
| beta.UberClay.OkZoomerV2 | 2025-07-23T21:36:25.290Z |
| beta.UberClay.MooreDakkaV2 | 2025-07-23T21:36:33.924Z |
| beta.UberClay.PlisskensPlinker | 2025-07-23T21:37:13.262Z |
| beta.decimal.dot.Decimator22V3 | 2025-07-23T21:38:14.226Z |

86.    As with event 1, the alphabetical order of the joined channels demonstrates the computer automation present in this activity.

87.    The channels are not relevant to the action, containing works by other third party users or general conversations on a variety of topics.

88.    Importantly, when a channel becomes private after being public or is archived by administrators, the message from the web API is the same as if it were

19

deleted. For an inexperienced programmer using a Personal Access Token, there is no way to ascertain the difference. It can lead to catastrophic misstatements of fact, as Mr. Walliman may now be aware of.

89.     Where two events are required to compare the state of channels, it is telling that Mr. Walliman chose to scrape irrelevant channels after Defense Distributed received it's first Requests for Production asking for the evidence of spoilation they asserted many months prior.

Under penalty of perjury, under the laws of the United States, I swear that the foregoing statement is true.

DATED THIS 25th day of September, 2025.

_____
JOHN LETTMAN

## Gyebi, Amaris

| | |
|---|---|
| **From:** | Kujawski, Cheryl A. |
| **Sent:** | Monday, February 23, 2026 2:28 PM |
| **To:** | zach@zermaylaw.com; info@zermaylaw.com |
| **Cc:** | CF@ChadFlores.law; chad-flores-7646@ecf.pacerpro.com; service@chadflores.law; Leitner, Leia V.; Gyebi, Amaris; Zibas, Jura C.; Kujawski, Cheryl A. |
| **Subject:** | SERVICE OF DOCUMENT - Larosiere - Wilson et al  26387.00008 |
| **Attachments:** | 2026.02.23  -  Certificate of Non-Objection.pdf |

**[EXTERNAL EMAIL]**

**SERVICE OF DOCUMENT(s)**

**Good Afternoon –**

| | |
|---|---|
| **CAPTION:** | Matthew Larosiere  -vs-  Cody Rutledge Wilson, DEFCAD, Inc., Defense Distributed and Dioskouroi LLC. |
| **COURT:** | USDC – Middle District of Florida – Orlando Division |
| **COURT CASE NO.:** | 6:24-CV-01629-AGM-LHP |
| **DOCUMENTS SERVED:** | DEFCAD, Inc.'s Certificate of Non-Objection |
| **SERVING PARTY:** | Defendant:    DEFCAD, Inc. |
| **SERVING PARTY COUNSEL** | **Wilson Elser Moskowitz Edelman & Dicker**<br><br>**Jura C. Zibas, Esq.**    **Amaris C. Gyebi, Esq.**<br>Jura.Zibas@wilsonelser.com    Amaris.Gyebi@wilsonelser.com<br>Direct Dial:  941-866-8561    Direct Dial:  941-210-5961<br><br>**Leia V. Leitner, Esq.**<br>Leia.Leitner@wilsonelser.com<br>Tele:  407-423-7287 |
| **WILSON ELSER FILE NO:** | 26387.00008 |
| **NOTES:** | If you have any questions, please feel free to contact me on my direct line at 941-866-8562.  Thank you. |

Cheryl A. Kujawski
Legal Secretary
Wilson Elser Moskowitz Edelman & Dicker LLP
2063 Main Street, Suite 100
Sarasota, FL 34237
941.866.8562 (Direct)
941.210.5980 (Main)
941.210.5979 (Fax)
cheryl.kujawski@wilsonelser.com

1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MATTHEW LAROSIERE

     Plaintiff,

vs.                                                        Case No:  6:24-CV-01629-AGM-LHP

CODY RUTLEDGE WILSON, DEFCAD, INC.,
DEFENSE DISTRIBUTED and
DIOSKOUROI LLC,

     Defendants.
_____/

## CERTIFICATE OF NON-OBJECTION

Defendant, **DEFCAD, Inc.** hereby certifies that no objection to production

under Federal Rules of Civil Procedure Rule 45 have been made upon the

undersigned following service of the Subpoenas to Produce Documents, Information

or Objects issued to the following:

1. **John Lettman**
   29 Bon Air Ave
   Bradford, PA  16701

2. **Etsy, Inc.**
   117 Adams Street
   Brooklyn, NY  11201

3. **Registered Agents Inc.**
   117 South Lexington Street
   Suite 100
   Harrisonville, MO  64701

4.   **Shopify, Inc.**
     151 O'Connor Street
     Ground Floor
     Ottawa, ON K2P 2L8 (Canada)

DATED:   February 23, 2026

Respectfully submitted,

**WILSON ELSER MOSKOWITZ
EDELMAN& DICKER LLP**

By:   *s/Amaris C. Gyebi*

Leia V. Leitner
Florida Bar No:  105621
111 North Orange Avenue
Suite 1200
Orlando,  FL  32801
Telephone:        407-423-7287
Facsimile: 407-648-1376
Leia.Leitner@wilsonelser.com
Cheryl.Kujawski@wilsonelser.com

Jura C. Zibas
Florida Bar No:  124571
Amaris C. Gyebi, Esq.
Florida Bar No:  1019361
2063 Main Street - Suite 100
Sarasota, FL 34237
Telephone:941-866-8561
Facsimile:  941-210-5979
Jura.Zibas@wilsonelser.com
Amaris.Gyebi@wilsonelser.com
Cheryl.Kujawski@wilsonelser.com

*Co-Counsel for Defendants
Cody Rutledge Wilson
DEFCAD, Inc. and Defense Distributed*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 23rd day of February, 2026 a true and correct copy of the foregoing document has been served by email to the following: Zachary Z. Zermay, Esq., Florida Bar No:  1002905; Zermay Law, P.A., *Counsel for Plaintiff*, 1200 Fourth Street, #1102, Key West, Florida  33040; Telephone:  305-767-3529; Zach@Zermaylaw.com and info@Zermaylaw.com; Charles (Chad) Flores, Esq., Flores Law PLLC, *Counsel for Defendants, Cody Rutledge Wilson, DEFCAD, Inc., Defense Distributed and Dioskouroi LLC,* 917 Franklin Street, Suite 600, Houston, Texas 77002, Telephone:  713-364-6440, CF@ChadFlores.law; chad-flores-7646@ecf.pacerpro.com and service@chadflores.law.

 s/Amaris C. Gyebi
Amaris C. Gyebi

## Gyebi, Amaris

| | |
|---|---|
| **From:** | Gyebi, Amaris |
| **Sent:** | Friday, March 20, 2026 10:52 AM |
| **To:** | Zachary Zermay |
| **Cc:** | Geraldine Phillips; Chad Flores; Kujawski, Cheryl A.; Leitner, Leia V.; Zibas, Jura C. |
| **Subject:** | RE: Larosiere v. Wilson- Notice of Service of Documents |

Correction, password is: ███████. Please confirm access.

Amaris Gyebi
Attorney At Law
Wilson Elser Moskowitz Edelman & Dicker LLP
2063 Main Street Suite 100
Sarasota, FL 34237
941.210.5961 (Direct)
407.616.6006 (Cell)
941.210.5980 (Main)
941.210.5979 (Fax)
amaris.gyebi@wilsonelser.com

**From:** Gyebi, Amaris
**Sent:** Thursday, March 19, 2026 11:02 PM
**To:** Zachary Zermay <zach@zermaylaw.com>
**Cc:** Geraldine Phillips <info@zermaylaw.com>; Chad Flores <cf@chadflores.law>; Kujawski, Cheryl A. <Cheryl.Kujawski@wilsonelser.com>; Leitner, Leia V. <Leia.Leitner@wilsonelser.com>; Zibas, Jura C. <Jura.Zibas@wilsonelser.com>
**Subject:** Larosiere v. Wilson- Notice of Service of Documents

**Good evening-**

| | |
|---|---|
| **CAPTION:** | Matthew Larosiere  -vs-  Cody Rutledge Wilson, DEFCAD, Inc., Defense Distributed and Dioskouroi LLC. |
| **COURT:** | USDC – Middle District of Florida – Orlando Division |
| **COURT CASE NO.:** | 6:24-CV-01629-AGM-LHP |
| **DOCUMENTS SERVED:** | Subpoena Responses and Related Documents<br><br>Link:<br>https://www.dropbox.com/████████████████<br>████████████████████<br><br>Password: ███████<br><br>Expiration Date: 3.26.26 |
| **SERVING PARTY:** | Defendants:<br>    Cody Rutledge Wilson  -  DEFCAD, Inc.,  -  Defense Distributed |

1

| | |
|---|---|
| **SERVING PARTY COUNSEL** | **Wilson Elser Moskowitz Edelman & Dicker**<br>2063 Main Street – Suite 100<br>Sarasota  FL  34237<br><br>**Jura C. Zibas, Esq.**<br>Jura.Zibas@wilsonelser.com<br>Direct Dial:  941-866-8561<br>Office Fax:    941-210-5979<br><br>**Leia V. Leitner, Esq.**<br>Leia.Leitner@wilsonelser.com<br>Tele:  407-423-7287<br>Fax:    407-648-1376<br><br>**Amaris C. Gyebi, Esq.**<br>Amaris.Gyebi@wilsonelser.com<br>Tele:    941-210-5961<br>Office Fax:    941-210-5979 |
| **WILSON ELSER FILE NO:** | 26387.00008 |
| **NOTES:** | If you have any questions, please feel free to contact me on my direct line.  Thank you. |

Amaris Gyebi
Attorney At Law
Wilson Elser Moskowitz Edelman & Dicker LLP
2063 Main Street Suite 100
Sarasota, FL 34237
941.210.5961 (Direct)
407.616.6006 (Cell)
941.210.5980 (Main)
941.210.5979 (Fax)
amaris.gyebi@wilsonelser.com

☰     ＋ New          🔍 Search                                          👤⁺

All files  /  Larosiere v. Wilson

⚙     ⬆ Upload ⌄     ⊞ New folder     🖥 Install app     🔗     ⬆ Share folder     AG   CK   JZ

Suggested for you  ⦸

🕐 Recents          ⭐ Starred                                    🔀   ⊞   ◧

☐  Name ↑                                              Last modified

☐   📄  2026-02-20 Subpoena to J        ✎    Share   🔗   •••   3/19/2026 10:47 pm

☐   PDF  Affidavit of Service - Clay Christensen served with sub…   3/19/2026 10:56 pm

☐   PDF  Affidavit of Service - Etsy served with subpoena on 3-6…   3/19/2026 10:56 pm

☐   PDF  Affidavit of Service - John Elik.pdf                3/19/2026 10:55 pm

☐   PDF  Affidavit of Service - Registered Agents served with su…   3/19/2026 10:56 pm

☐   ▬  GhostGunsMatter 2021.png                       3/19/2026 10:47 pm

☐   PDF  Microsoft Outlook - Memo Style 2.26.26.pdf          3/19/2026 10:55 pm

☐   PDF  Microsoft Outlook - Memo Style 3.13.26.pdf          3/19/2026 10:43 pm

☐   PDF  Microsoft Outlook - Memo Style 3.17.26.pdf          3/19/2026 10:55 pm

☐   🐞  signature.asc                                  3/19/2026 10:47 pm

☐   PDF  z.beta Room.pdf                                3/19/2026 10:47 pm