# COMPOSITE

# EXHIBIT A

**Leitner, Leia V.**

| | |
|---|---|
| **From:** | Leitner, Leia V. |
| **Sent:** | Friday, February 20, 2026 1:52 PM |
| **To:** | 'Zachary Zermay'; Gyebi, Amaris; Zibas, Jura C.; Chad Flores; Kujawski, Cheryl A. |
| **Cc:** | Geraldine Phillips; chad-flores-7646@ecf.pacerpro.com; service@chadflores.law |
| **Subject:** | RE: REQUEST TO MEET AND CONFER ON A MOTION TO OVERRULE OBJECTIONS AND COMPLETE RESPONSES AS TO DEFENSE DISTRIBUTED |

Dear Counsel:

Thank you for the responses below.

We note that many of Plaintiff's 91 requests directed to Defense Distributed, as drafted, had the same issues of overbreadth and scope as Plaintiff's first set of requests, which were addressed in the last motion to compel. We understand that the second requests were served before the February 10, 2026, hearing. However, the same defects in Plaintiff's requests have been repeated in this second set of requests that the Court resolved regarding temporal scope, control, and relevancy and proportionality, which the Court addressed and resolved at the February 10, 2026, hearing. Doc. 213, at pp. 6-10. To this end, the Defendants' responses and objections were prepared in accordance with the Federal Rules of Civil Procedure and this Court's Order on Plaintiff's Motion to Overrule Objections, concerning the temporal scope, control, and the claims and defenses raised in the First Amended Complaint. *See* Docs. 43, 213. Please identify the specific responses and requests to which Plaintiff would like to address at the meet-and-confer.

As you know, we produced thousands of documents in response to Plaintiff's First Set of Discovery Demands directed to Cody Wilson on or around December 1, 2025, on behalf of Mr. Wilson, and, in good faith, on behalf of the Defendant Entities – despite the fact that the Plaintiff's Requests were not directed to DEFCAD and Defense Distributed to resolve the discovery dispute (and were never requested before September 2025). That said, we continue to supplement the December 1, 2025, production with any additional non-privileged documents as required under Fed. R. Civ. P. 26(e).

We are available to discuss the issues you noted below on February 25, 2026 (except 3-4:30 p.m. EST) and on February 26, 2026 (except between 1:00-2:30 p.m. EST). Please let us know what date/time works best for you. We expect to receive the specific responses and corresponding responses by February 23, 2026, so we can have sufficient time to review these issues prior to the meet and confer.

Regards,

Leia V. Leitner
Attorney At Law
Wilson Elser Moskowitz Edelman & Dicker LLP
111 North Orange Avenue Suite 1200
Orlando, FL 32801
407.423.7287 (Direct)
407.973.2111 (Cell)
407.203.7599 (Main)
407.648.1376 (Fax)
leia.leitner@wilsonelser.com



**From:** Zachary Zermay <zach@zermaylaw.com>
**Sent:** Thursday, February 19, 2026 11:29 PM
**To:** Leitner, Leia V. <Leia.Leitner@wilsonelser.com>; Gyebi, Amaris <Amaris.Gyebi@wilsonelser.com>; Zibas, Jura C. <Jura.Zibas@wilsonelser.com>; Chad Flores <cf@chadflores.law>; Kujawski, Cheryl A. <Cheryl.Kujawski@wilsonelser.com>
**Cc:** Geraldine Phillips <info@zermaylaw.com>; chad-flores-7646@ecf.pacerpro.com; service@chadflores.law
**Subject:** REQUEST TO MEET AND CONFER ON A MOTION TO OVERRULE OBJECTIONS AND COMPEL COMPLETE RESPONSES AS TO DEFENSE DISTRIBUTED

> EXTERNAL EMAIL - This email originated from outside the organization.

Hello Counsel.

We have reviewed your discovery responses. We are disappointed to see many of the same issues that necessitated our previous motion to compel. For example, you state that materials requesting information on who accessed the works at issue in the Complaint are not related to the works at issue in the complaint.

We also note the only materials you produced were a composite of the exhibits you intended to file at the spoliation hearing. We are very confused by this, as we cannot comprehend what request the complaint filed in California could be responsive to. This does not pertain to the several categories of material you indicated you would produce responsive documents to, and your responses made no indication of when documents would be produced.

Additionally, we have noted that the following RFPs indicate that documents will be produced, but no responsive documents were sent: 7, 8, 9, 11, 12, 16, 24, 27, 28, 32, 33, 34, 35, 36, 37, 38, 39, 40, 43, 45, 46, 48, 57, 58, 59, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 87, 88, 90, 92.

Do you have time to talk about this? Over the next two days, we will provide a meet-and-confer letter delineating the specific issues with your client's responses.

Sincerely,
Zachary Z. Zermay, Esq.

**Zermay Law**
P (305) 767-3529 | W zermaylaw.com | E zach@zermaylaw.com |
A 3000 Coral Way, Suite 1115, Coral Gables, FL 33145

On Thu, Feb 19, 2026 at 11:21 PM Zachary Zermay <zach@zermaylaw.com> wrote:

> Hello Counsel.
>
> We have reviewed your discovery responses. We are disappointed to see many of the same issues that necessitated our previous motion to compel. For example, you state that materials requesting information on who accessed the works at issue in the Complaint are not related to the works at issue in the complaint.
>
> We also note the only materials you produced were a composite of the exhibits you intended to file at the spoliation hearing. We are very confused by this, as we cannot comprehend what request the complaint filed in California could be responsive to. This does not pertain to the several categories of material you indicated you would produce responsive documents to, and your responses made no indication of when documents would be produced.

Additionally, we have noted that the following RFPs indicate that documents will be produced, but no responsive documents were sent: 7, 8, 9, 11, 12, 15, 26, 33, 34, 35, 36, 37, 38, 39, 40, 43, 44, 45, 46, 48, 53, 58, 59, 60, 61, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 77, 78, 79, 80, 81, 82, 83, 88, 89, 90, 91, 92. We noticed that your numbering gets off in a few places, so please take note that we are using the numbers that you used, but that these don't always relate to the numbers used in the actual request due to your numbering errors.

Do you have time to talk about this? Over the next two days, we will provide a meet-and-confer letter delineating the specific issues with your client's responses.

Sincerely,
Zachary Z. Zermay, Esq.

### Zermay Law

P (305) 767-3529 | W zermaylaw.com | E zach@zermaylaw.com |
A 3000 Coral Way, Suite 1115, Coral Gables, FL 33145



On Tue, Feb 17, 2026 at 12:13 PM Leitner, Leia V. <Leia.Leitner@wilsonelser.com> wrote:

Dear Mr. Zermay:

I am reaching out to discuss the deposition topics for Mr. Wilson's upcoming deposition, currently scheduled for March 17, 2026, at 9:00 a.m. EST. We understand that you previously noticed Mr. Wilson's deposition on an individual basis. Please confirm whether you intend to proceed with Mr. Wilson's deposition on an individual basis or whether you now intend to depose Mr. Wilson on behalf of the corporate entities Defcad, Defense Distributed, and Dioskouroi, LLC (collectively, the "Defendant Entities").

If you intend to proceed with Mr. Wilson's deposition on an individual basis, we respectfully request that you provide the topics for the Rule 30(b)(6) corporate representative depositions for the Defendant Entities. Mr. Wilson will likely be designated as the 30(b)(6) witness for the Defendant Entities; however, that determination depends on the topics that Plaintiff proposes for these depositions. Accordingly, we ask that you provide the 30(b)(6) deposition topics so that we may properly distinguish between the topics to be covered in Mr. Wilson's individual deposition and those to be addressed in the 30(b)(6) depositions on behalf of the Defendant Entities.

Please provide the 30(b)(6) deposition topics for the Defendant Entities on or before **March 2, 2026**. Thank you for your attention to this matter. We look forward to your prompt response.

3

Sincerely,

Leia V. Leitner
Attorney At Law
Wilson Elser Moskowitz Edelman & Dicker LLP
111 North Orange Avenue Suite 1200
Orlando, FL 32801
407.423.7287 (Direct)
407.973.2111 (Cell)
407.203.7599 (Main)
407.648.1376 (Fax)
leia.leitner@wilsonelser.com



IMPORTANT NOTICE: Beware of Cyber Fraud.
You should NEVER wire money to any bank account that Wilson Elser
Moskowitz Edelman & Dicker LLP provides to you either in the body
of this or any email or in an attachment without first speaking
with the attorney in our office who is handling your transaction.
Further, DO NOT accept emailed wire instructions from anyone else
without voice verification. Even if an email looks like it has come
from this office or someone involved in your transaction,
CALL US FIRST AT A NUMBER YOU KNOW TO BE CORRECT FOR THIS OFFICE
to verify the information before wiring any money.
Failure to do so is at your own risk.
Be particularly wary of any request to change wire instructions
you have already received.

CONFIDENTIALITY NOTICE: This electronic message is intended to be
viewed only by the individual or entity to whom it is addressed.
It may contain information that is privileged, confidential and
exempt from disclosure under applicable law. Any dissemination,
distribution or copying of this communication is strictly prohibited
without our prior permission. If the reader of this message is not
the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, or if you have
received this communication in error, please notify us immediately by
return e-mail and delete the original message and any copies of it
from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman &
Dicker LLP, please see our website at www.wilsonelser.com or refer to
any of our offices.

Thank you.

## Leitner, Leia V.

| | |
|---|---|
| **From:** | Leitner, Leia V. |
| **Sent:** | Tuesday, March 10, 2026 11:06 PM |
| **To:** | 'Zachary Zermay' |
| **Cc:** | Geraldine Phillips; Gyebi, Amaris; Zibas, Jura C.; Kujawski, Cheryl A. |
| **Subject:** | RE: Larosiere v. Wilson, et. al.; Case No. 6:24-cv-01629: Meet and confer Summary on March 3, 2026 |

Dear Zermay:

Thank you for your email below.   We have reviewed the revised language and write to address certain definitional concerns that remain outstanding in Plaintiff's Second Set of Requests for Production, Interrogatories, and Request for Admissions served on or around January 13, 2026.

Specifically, we continue to object to the following terms as vague, ambiguous, and overbroad: "your website(s)," "your contractors," "posts," and "your blogs." As currently drafted, these terms lack the specificity and precision necessary to permit a meaningful and targeted response. Each of these terms is susceptible to multiple reasonable interpretations, and their undefined scope leaves far too much room for subjective construction.

By way of example, the term "your website(s)" fails to specify which specific websites are at issue, whether it encompasses websites owned, operated, maintained, hosted, or merely linked to by our client, and whether it includes archived or defunct web pages. The definition also appears to expand the term to include applications, including mobile applications.  Similarly, "your contractors" does not clarify whether the term is limited to independent contractors, subcontractors, or any third party performing services on behalf of our client, nor does it specify any relevant time period. The term "posts" is equally unclear, as it does not define the platform, medium, author, or time frame of the purported posts. Finally, "your blogs" suffers from the same deficiencies, failing to delineate the specific blogs at issue, the relevant authorship, or the applicable time period.

Without clear, agreed-upon definitions of these terms, any response would require our client to speculate about the intended meaning, which is neither appropriate nor consistent with the parties' obligations under Rule 34.  Thus, unless you can narrow the terms, we are left to define the terms based on our own interpretation in responding to Plaintiff's Second Request for Production.  We can only base the definitions on the operative pleadings, and note the following:

- "your website(s)" refer to "Defcad.com" and "Ghostguns.com" as alleged in the First Amended Complaint (Doc. 43)
- "your contractors," to refer to independent contractors on behalf of Defcad/Defense Distributed
- "your blogs" refer to https://ddlegio.com/blog ("the DDLegio blog") and the "Defcad.com blog" ("the Defcad blog") as alleged in the First Amended Complaint (Doc. 43)
- "Posts" to refer to uploads of posts on the DDLegio blog, as alleged in the First Amended Complaint (Doc. 43)

We remain willing to meet and confer on these issues to resolve this matter efficiently and in good faith. Please do not hesitate to contact us to arrange a mutually convenient time.

Regards,

Leia V. Leitner
Attorney At Law
Wilson Elser Moskowitz Edelman & Dicker LLP
111 North Orange Avenue Suite 1200

1

Orlando, FL 32801
407.423.7287 (Direct)
407.973.2111 (Cell)
407.203.7599 (Main)
407.648.1376 (Fax)
leia.leitner@wilsonelser.com



---

**From:** Zachary Zermay <zach@zermaylaw.com>
**Sent:** Saturday, March 7, 2026 10:33 AM
**To:** Leitner, Leia V. <Leia.Leitner@wilsonelser.com>
**Cc:** Geraldine Phillips <info@zermaylaw.com>; Gyebi, Amaris <Amaris.Gyebi@wilsonelser.com>; Zibas, Jura C.
<Jura.Zibas@wilsonelser.com>; Kujawski, Cheryl A. <Cheryl.Kujawski@wilsonelser.com>
**Subject:** Re: Larosiere v. Wilson, et. al.; Case No. 6:24-cv-01629: Meet and confer Summary on March 3, 2026

---

EXTERNAL EMAIL - This email originated from outside the organization.

---

Requested definitions for "vague terms":

1. The term "your website(s)" means any and all websites, web pages, web applications, or internet-accessible platforms that are owned, operated, controlled, maintained, administered, created, hosted, or used by You, in whole or in part, directly or indirectly, including through agents, employees, contractors, subsidiaries, affiliates, or other persons acting on Your behalf.

This term includes, without limitation:

All domains and subdomains registered to, used by, or associated with You.

All websites or web pages that You created, manage, edit, administer, or have the ability to modify.

All hosted content or web-based services provided through third-party hosting platforms or website builders (including but not limited to CMS platforms, blogging platforms, storefront platforms, or similar services).

Archived, prior, or inactive versions of any such websites or pages, including staging or development versions.

Associated administrative interfaces, dashboards, or backend systems used to manage such websites.

Any webpages or online profiles used to promote, distribute, display, or provide access to Your goods, services, works, or business activities.

For the avoidance of doubt, "Your Websites" includes all such websites within Your possession, custody, or control, including those hosted by third parties where You have the ability to access, modify, or obtain the content.

2. The term "your website" means any and all websites, web pages, web applications, or internet-accessible platforms that are owned, operated, controlled, maintained, administered, created, hosted, or used by You, in whole or in part, directly or indirectly, including through agents, employees, contractors, subsidiaries, affiliates, or other persons acting on Your behalf.

This term includes, without limitation:

All domains and subdomains registered to, used by, or associated with You.

All websites or web pages that You created, manage, edit, administer, or have the ability to modify.

2

All hosted content or web-based services provided through third-party hosting platforms or website builders (including but not limited to CMS platforms, blogging platforms, storefront platforms, or similar services).

Archived, prior, or inactive versions of any such websites or pages, including staging or development versions.

Associated administrative interfaces, dashboards, or backend systems used to manage such websites.

Any webpages or online profiles used to promote, distribute, display, or provide access to Your goods, services, works, or business activities.

For the avoidance of doubt, "Your Websites" includes all such websites within Your possession, custody, or control, including those hosted by third parties where You have the ability to access, modify, or obtain the content.

3. The term "employees" means any and all persons who are or were employed by You, whether on a full-time, part-time, temporary, seasonal, or contract basis, and any persons acting or purporting to act on Your behalf or under Your direction or control, including but not limited to:

Officers, directors, and managers.

Agents and representatives.

Independent contractors, consultants, or advisors performing work for You.

Temporary workers or leased employees supplied by staffing agencies.

Interns, trainees, or volunteers performing services for You.

Any other person who performs or performed services for You or who acts or acted at Your request, direction, or control.

The term includes both current and former Employees during the relevant time period.

4. The term "your contractors" means any and all persons who are or were employed by You, whether on a full-time, part-time, temporary, seasonal, or contract basis, and any persons acting or purporting to act on Your behalf or under Your direction or control, including but not limited to:

Officers, directors, and managers.

Agents and representatives.

Independent contractors, consultants, or advisors performing work for You.

Temporary workers or leased employees supplied by staffing agencies.

Interns, trainees, or volunteers performing services for You.

Any other person who performs or performed services for You or who acts or acted at Your request, direction, or control.

The term includes both current and former Employees during the relevant time period.

5. The term "posts" means any and all content published, uploaded, submitted, displayed, transmitted, or otherwise made available on the internet, including on websites, forums, social media platforms, blogs, comment sections, message boards, or similar online services.

3

This term includes, without limitation:

Original posts, threads, or entries initiating a discussion or topic.

Replies, comments, responses, or follow-up messages to any post or thread.

Edits, revisions, or updates to any post.

Captions, descriptions, titles, or accompanying text associated with uploaded content.

Content embedded in or attached to a post, including images, videos, audio files, documents, hyperlinks, or other media.

Direct or private messages transmitted through a website or platform if they relate to the subject matter of the action.

Deleted, removed, archived, or prior versions of any post, to the extent they are available or recoverable.

Metadata associated with such posts, including timestamps, usernames, account identifiers, IP address logs, and edit histories.

For the avoidance of doubt, "Posts" includes content created by You, Your Employees, agents, or other persons acting on Your behalf, as well as posts published through accounts or platforms owned, operated, or controlled by You.


6. The term "your blogs" means any and all internet-based journals, weblogs, blog-style publications, or similar online platforms through which entries, articles, commentary, or other content are published or made available on the internet, whether hosted on a standalone website or through a third-party service.

This term includes, without limitation:

All blogs owned, operated, administered, maintained, or controlled by You, in whole or in part.

All blog sections or blog-style portions of any website operated or controlled by You.

Blogs hosted on third-party platforms, including but not limited to blogging platforms, content-management systems, or publishing services used by You.

All entries, articles, or posts appearing on such blogs.

Drafts, edits, revisions, or prior versions of any blog entry or post.

Comments, responses, or discussion threads associated with any blog entry.

Associated media and attachments, including images, videos, audio files, documents, or hyperlinks contained in or attached to blog entries.

Administrative or backend interfaces used to create, edit, publish, or manage blog content.

For the avoidance of doubt, "Blogs" includes blogs created, maintained, or written by You, Your Employees, agents, contractors, or other persons acting on Your behalf, as well as blogs within Your possession, custody, or control.


7. The term "your blog" means any and all internet-based journals, weblogs, blog-style publications, or similar online platforms through which entries, articles, commentary, or other content are published or made available on the internet, whether hosted on a standalone website or through a third-party service.

This term includes, without limitation:

4

All blogs owned, operated, administered, maintained, or controlled by You, in whole or in part.

All blog sections or blog-style portions of any website operated or controlled by You.

Blogs hosted on third-party platforms, including but not limited to blogging platforms, content-management systems, or publishing services used by You.

All entries, articles, or posts appearing on such blogs.

Drafts, edits, revisions, or prior versions of any blog entry or post.

Comments, responses, or discussion threads associated with any blog entry.

Associated media and attachments, including images, videos, audio files, documents, or hyperlinks contained in or attached to blog entries.

Administrative or backend interfaces used to create, edit, publish, or manage blog content.

For the avoidance of doubt, "Blogs" includes blogs created, maintained, or written by You, Your Employees, agents, contractors, or other persons acting on Your behalf, as well as blogs within Your possession, custody, or control.


8. The term "resembling" means bearing a likeness to, appearing similar to, evoking, suggesting, or being recognizable as a particular person, character, image, or work, in whole or in part, whether directly or indirectly.

This term includes, without limitation:

Visual similarity in physical appearance, including facial features, body characteristics, hairstyle, clothing, posture, or other identifiable traits.

Depictions, illustrations, photographs, drawings, digital renderings, or other images that a reasonable observer would recognize as being similar to or derived from the referenced person or work.

Caricatures, stylized portrayals, parodies, or altered depictions that retain recognizable identifying characteristics.

Representations created through modification, manipulation, or transformation of an image or likeness, including cropping, filtering, compositing, or digital alteration.

Audio, textual, or audiovisual depictions that evoke or suggest the identity of the referenced person through distinctive characteristics, mannerisms, or other identifying attributes.

For the avoidance of doubt, "Resembling" includes depictions that are substantially similar, evocative, or recognizable to an ordinary observer, even if the likeness is not exact, complete, or intended to be an exact replica.

Sincerely,
Zachary Z. Zermay, Esq.


**Zermay Law**
P (305) 767-3529  |  W zermaylaw.com  |  E zach@zermaylaw.com |
A  3000 Coral Way, Suite 1115, Coral Gables, FL 33145



On Thu, Mar 5, 2026 at 6:25 PM Zachary Zermay <zach@zermaylaw.com> wrote:

Good evening,

I disagree with the characterization of what was discussed at the conference, and any attempts to backfill a record by way of emails.

Sincerely,
Zachary Z. Zermay, Esq.

**Zermay Law**

P (305) 767-3529 | W zermaylaw.com | E zach@zermaylaw.com|
A 3000 Coral Way, Suite 1115, Coral Gables, FL 33145



On Thu, Mar 5, 2026 at 9:38 AM Leitner, Leia V. <Leia.Leitner@wilsonelser.com> wrote:

Dear Mr. Zermay:

This is to memorialize the meet-and-confer on March 3, 2026, regarding the parties' respective discovery responses and objections ("conference"). Pursuant to Local Rule 3.01(g), the purpose of the conference was to address the issues identified below and to attempt to resolve the parties' dispute in good faith, without court intervention.  The topics discussed at the conference were (i) Plaintiff's claim with deficiencies in Defendants' document production for Plaintiffs' First Request for Production, and Wilson's Affidavit of Compliance submitted per the Court Order dated February 13, 2026 (Doc. 213 at pp. 10–11); (ii) Defendants, Wilson, DEFCAD, Inc., and Defense Distributed's responses and objections to Plaintiffs' Second Set of Request for Production and Interrogatories, Request for Production, and Request for Admissions; (iii) Plaintiff's responses and objections to Defendants' Second Request for Production Nos. 1 and 2; and (iv) summary of the February 23, 2026 meet and confer. Each topic is addressed in turn below:

**37(b) Issues:**

At the conference, Plaintiff's Counsel asserted several issues, claiming Defendants' production and affidavits submitted were noncompliant with the Court's Order.  First, Plaintiff asserted that Defendants' relevancy, overbreadth, and proportionality objections were overruled based on the Court's Order dated February 13, 2026 ("Court Order"). Given this ruling,  Plaintiff's claim that Wilson was required to provide documents for RFP Nos. 4-8, 20-21, 23-50, 57-62.  However, the Defendants' position is that the Court's Order did not overrule the objections identified, and when requested to identify what portion of the Order overruled these objections, Plaintiff could not. Thus, Defendants'

objections stand for these requests.  Defendants further maintain that they have produced all documents in their possession, custody, or control in response to these requests.  Defendants are not supplementing documents, are not withholding documents, and any documents withheld were identified in the Amended Privilege Log served on February 20, 2026.

Additionally, paragraph 4(g) of the Court Order dated February 13, 2026 (Doc. 213 at pp. 10–11), ordered Mr. Wilson to "submit an affidavit, fully executed under penalty of perjury and notarized, detailing the scope of this search for responsive documents, which shall demonstrate a reasonable and diligent search and include how and where he searched for responsive information (e.g., cell phone, email, house computer)." Doc. 213 at pp. 11.  Footnote 4 of the Court's Order states that "[a]s discussed with the parties at the hearing, there may be information related to the corporate Defendants on Mr. Wilson's personal devices (cellphone, computer, etc.) or personal email(s)."  Doc. 213 at p. 11, n4.  To this end, in full compliance with the Court's Order, Mr. Wilson submitted an affidavit, fully executed under penalty of perjury and notarized, detailing the scope of this search for responsive documents on his cell phone, email, and house computer.  At the conference, Plaintiff's Counsel stated that the Affidavit is not compliant with the Court's Order, claiming that the search was deficient, because Mr. Wilson did not identify the software and all documents, because the keyword searches used were insufficient, etc.

Thus, at this point, it appears that Plaintiff is now demanding that Defendants establish an ESI protocol on terms and conditions Plaintiff finds suitable, but couching it in terms of Defendants' noncompliance with the Court's Order.  At the conference, Defendants noted that they attempted to collaborate with Plaintiff on an ESI protocol before the searches were conducted, but Plaintiff flat out refused to participate.  Defendants also noted that, given Plaintiff's refusal, the Court is creating the parties' ESI protocol, so the question of whether Mr. Wilson searched with the proper key terms will likely be moot once the Court issues the protocol. Once the ESI protocol is issued by the Court, the Court will likely order the Defendants to use these terms to conduct another document search. Defendants believe that Plaintiff's claims are premature and wholly without merit.  However, to understand the argument better, Defendants asked to table this issue, and requested that Plaintiff articulate his position on the deficiencies with Mr. Wilson's Affidavit and send by writing by **Friday, March 6, 2026**, so that the Defendants can properly respond.

**Responses and objections to Plaintiffs' Second Set of Discovery Demands**

Regarding Defendants' responses and objections to Plaintiff's Second Set of Discovery Requests, the following issues were discussed at the conference:

1) Objections for vague and ambiguous terms, including, but not limited to, the following terms: "your website(s)", "web page(s) ", "blogs," etc., which were raised in the following requests:

- o DEFCAD RFP No. 28

- o Defense Distribtued ("DD") RFP No. 28; RFA Nos.:  1-11; 14-19; Rogg No. 1, 5:

- o Wilson Rogg 3; RFA: 5-8; 12-17 and 19

To resolve this issue, Plaintiff agreed to provide definitions for "your website(s)", "web page(s) ", and "blogs, identified in these requests, by **Friday, March 6, 2026.**

2) Objections as to Relevancy:

- o Defcad  RFP Nos. 1-7, 4-7, 8-10, 18-24, 33-35, 46-59; 60-61, 64

- o DD: RFP Nos. 1, 7, 8, 9, 10, 11, 12, 18, 24, 32, 33, 34, 35, 45, 46, 48, 57, 58, 59, 64

- o DD: Rogg 3 and 5

- o Wilson's RFP 1-9; Wilson's RFP 16-36

- o Wilson's Rogg 3

At the conference, Defendants stated that the objections stand because the requests were not tethered to the claims and defenses as required by Fed. R. Civ. P. 26(b)(1).  In response, Plaintiff agreed to narrow these requests such that they are tailored to the copyrights-in-suit.  Plaintiff also agreed to provide the definition of "your website(s)", "web page(s), ""blogs," etc., contained in these requests, by **Friday, March 6, 2026**

3)  For responses to certain requests, Defendants stated they will conduct a reasonable search for the documents, as noted below:

- o Defcad RFPS Nos. 11, 15, 43, 48, 53, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75, 80, 81, 82, 83, and 90

- o DD RFP 16, 27, 65, 67-69, 70-74, 80-83

- o Wilson's RFP 17, 19, 20-25, 28, 32, 35

To resolve this issue, Defendants agreed to amended responses to these requests by **Tuesday, March 10, 2026**.

8

4) Plaintiff stated that Defense Distributed controls DEFCAD, but the Defendants' responses are not consistent with these admissions; however, Plaintiff failed to identify the specific requests he was referring to support this assumption.  Thus, Defendants asked Plaintiff to identify the specific requests at issue in order to have a substantive conversation regarding the alleged deficiencies in Defendants' responses.

5)  Plaintiff stated that Defendants' responses were unresponsive to certain requests and maintains the issue is relevant based on the Plaintiff's alter ego claims:

  o  DEFCAD Rogg 3, 5;

  o  DEFCAD RFP Nos. 16, 18, 32, 62, 64

  o  DD RFP Nos. 1-3, 15, 16, 18, 19, 25, 47, 52

  o  Wilson RFP Nos. 11, 14, 16.

At the conference, Defendants agreed to review their responses and provide amended responses by **Tuesday, March 10, 2026**, to the extent necessary, but maintain that Plaintiff has not presented a cogent explanation as to how the information sought goes to support or otherwise relates to Plaintiff's alter ego theory.

**Request for Admissions**

Plaintiff asserted that the Defendants' objections were irrelevant and vague and ambiguous were without merit.  However, Defendants asserted these objections based on the vague definitions of your website(s), "web page(s), ""blogs," etc., contained in these requests.  Defendants also asserted these objections because the referenced attachments in these requests were not attached.  Rule 26(a)(2) states that "[e]ach matter must be separately stated. A request to admit the genuineness of a document **must be accompanied by a copy of the document** unless it is, or has been, otherwise furnished or made available for inspection and copying.") (emphasis added).  The requests that referenced material were not previously furnished or cited in the record where it had been previously furnished.  Thus, Defendants maintain their objections to these requests.

**Plaintiff's responses and objections to Defendants' Second Request for Production Nos. 1 and 2:**

On February 27, 2026, Defendants provided a good-faith letter outlining their concerns with Plaintiff's evasive and nonresponsive responses to Defendants' Second Request for Production Nos. 1 and 2.  These requests seek the metadata for the work-for-hire documents/assignments that purportedly show that Plaintiff owns the copyrights-in-suit at issue. In response, Plaintiff states that paper copies were provided, but this does not address whether Plaintiff has metadata for the original document or the document from which the paper copies were produced.   In addition, we noted that Plaintiff asserted privilege over various documents, but no privilege log has been provided to date.

9

**Summary of the February 23, 2026, Meet and Confer – Confirm by Friday, March 6, 2026**

On February 26, 2026, we sent correspondence summarizing the February 23, 2026, meet and confer conference discussing Plaintiff's deficient a) Amended Initial Disclosures; b) responses and objections to Defendants' discovery demands on July 4, 2025; and c) Plaintiff's deficient responses to Defendants' discovery demands served on October 15, 2025.  We asked you to confirm whether Plaintiff agrees or disagrees with the summary by March 2, 2026.  We did not hear back from Plaintiff regarding the summary.  Thus, at the conference, the undersigned requested confirmation for the same on or before 5:00 p.m. EST on **Friday, March 6, 2026**.

Please confirm that the foregoing accurately reflects our discussion during the March 3, 2026, meet-and-confer by **Tuesday, March 10, 2026**.  If you believe any corrections or additions are necessary, please submit them by **5:00 p.m. EST on Friday, March 6, 2026**.  To the extent any disputes remain unresolved, Defendants reserve all rights to seek appropriate relief from the Court.

We appreciate your cooperation in resolving these discovery matters and look forward to your response.

Regards,

Leia V. Leitner
Attorney At Law
Wilson Elser Moskowitz Edelman & Dicker LLP
111 North Orange Avenue Suite 1200
Orlando, FL 32801
407.423.7287 (Direct)
407.973.2111 (Cell)
407.203.7599 (Main)
407.648.1376 (Fax)
leia.leitner@wilsonelser.com



IMPORTANT NOTICE: Beware of Cyber Fraud.
You should NEVER wire money to any bank account that Wilson Elser
Moskowitz Edelman & Dicker LLP provides to you either in the body
of this or any email or in an attachment without first speaking
with the attorney in our office who is handling your transaction.
Further, DO NOT accept emailed wire instructions from anyone else
without voice verification. Even if an email looks like it has come
from this office or someone involved in your transaction,
CALL US FIRST AT A NUMBER YOU KNOW TO BE CORRECT FOR THIS OFFICE

to verify the information before wiring any money.
Failure to do so is at your own risk.
Be particularly wary of any request to change wire instructions
you have already received.

CONFIDENTIALITY NOTICE: This electronic message is intended to be
viewed only by the individual or entity to whom it is addressed.
It may contain information that is privileged, confidential and
exempt from disclosure under applicable law. Any dissemination,
distribution or copying of this communication is strictly prohibited
without our prior permission. If the reader of this message is not
the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, or if you have
received this communication in error, please notify us immediately by
return e-mail and delete the original message and any copies of it
from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman &
Dicker LLP, please see our website at www.wilsonelser.com or refer to
any of our offices.

Thank you.